

The Law Offices of

# PHILLIPS & BORDALLO

A Professional Corporation
410 West O'Brien Drive, Suite 102 Hagåtña, Guam 96910-5044
Tel: (671) 477-ABCD (2223) • Fax: (671) 477-2FAX (2329)
" I Erensia, Lina'Ia', Espiritu-ta"



FILED
DISTRICT COURT OF GUAM

JUL 1 4 2004

MARY L. M. MORAN
CLERK OF COURT

Attorneys for Petitioners

## DISTRICT COURT OF GUAM
## TERRITORY OF GUAM

CIVIL CASE NO. 04-00006

JULIE BABAUTA SANTOS, *et al.*,

　　　　Petitioners,

vs.

FELIX A. CAMACHO, etc., *et al.*,

　　　　Respondents.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION FOR AN ORDER APPOINTING CLASS COUNSEL, OR, IN THE ALTERNATIVE, FOR AN ORDER DESIGNATING INTERIM COUNSEL; FOR AN ORDER PRELIMINARILY APPROVING THE GRANTING OF ATTORNEYS' FEES; FOR AN ORDER APPROVING ADDITIONAL NOTICE TO THE PROPOSED CLASS MEMBERS; AND FOR AN ORDER CONTINUING THE HEARING ON FINAL APPROVAL OF THE SETTLEMENT AGREEMENT AND EXTENDING THE "OBJECTION AND OPT OUT DATE"**

## I. INTRODUCTION

On February 12, 2004, Petitioner brought this Class Action Petition for the recovery of unpaid refundable earned income tax refunds and to compel the full

implementation of the Earned Income Program. A Stipulation to Dismiss Attorney General Douglas B. Moylan as a named defendant was issued by this Court on March 9, 2004. On March 11, 2004, Respondents filed an Opposition to the Petition, denying various allegations and setting forth numerous affirmative defenses. This Court issued an expedited Scheduling Order on April 30, 2004, and held a Scheduling Conference on May 26, 2004.

The parties entered into a Settlement Agreement on June 14, 2004, subject to this Court's approval. The proposed Settlement Agreement created a settlement class, known as the "EIC Class," defined to include all persons who (a) filed Guam income tax returns and (b) were and are entitled to be paid refundable earned income tax credits under the Guam Territorial Income Tax and the Earned Income Program for any or all of the following tax years: 1996, 1998, 1999, 2000, 2001, 2002 and 2003. The proposed Settlement Agreement provided for a Settlement Amount of Sixty Million Dollars ($60,000,000) to be made available by the Government of Guam to pay for claims made by members of the EIC Class and other fees and expenses in accordance with the Settlement Agreement. The Government of Guam agreed to pay into an EIC Settlement Fund the amount of Three Million Dollars ($3,000,000) by July 17, 2004, and a total of Twenty Million Dollars ($20,000,000) by the end of June, 2005. Under the proposed agreement, the Government of Guam also agreed to pay an additional Forty Million Dollars ($40,000,000) over eight years into the fund, and to fully implement and pay refundable earned income taxes for tax years 2004 and beyond. The parties filed a Consent to the Exercise of Jurisdiction by a United States Magistrate Judge on June 15, 2004.

2

On June 17, 2004, this Court held a Settlement Conference and issued a Stipulated Order Granting Preliminary Approval of Class Action Settlement. The stipulated order included the preliminary approval of the certification of the EIC Class. The stipulated order also required that the notice informing class members of the class action and the proposed settlement be published in local newspapers periodically for three weeks ending on July 9, 2004. The stipulated order set a deadline of August 9, 2004 for class members to provide written objections to the settlement or to opt out of the EIC Class (the "Objection and Opt Out Date"). Finally, the stipulated order requested this Court set a hearing for final approval of the Settlement Agreement on a date approximately thirty (30) days after the Objection and Opt Out Date. On June 22, 2004, this Court issued an Order scheduling the hearing on final approval of the Settlement Agreement for Thursday, September 9, 2004. This Court issued an Order Approving Notice of Class Action and Proposed Settlement, and an Order Granting Attorneys Fees and Costs on June 24, 2004.

## II. Appointment of Class Counsel

The Federal Rules of Civil Procedure, Rule 23(g), requires that this Court appoint class counsel who must fairy and adequately represent the interests of the class. While the Court has recognized Attorney Michael F. Phillips of the law offices of Phillips & Bordallo, P.C. as representing the Class (Order Granting Preliminary Approval of Class Action Settlement, June 17, 2004; Order Granting Attorneys Fees and Costs, June 24, 2004; Order Approving Notice of Class Action and Proposed Settlement, June 24, 2004), Petitioner has not filed a separate motion nor has the Court issued a separate order specifically appointing class counsel. Not surprisingly, in light of the Court's

preliminary approval of the parties' Settlement Agreement, a number of attorneys are seeking to intervene and share in any recovery. In order to ensure a clear record in this matter, Petitioner asks that the Court now issue a specific order appointing Attorney Michael F. Phillips as class counsel.

When an action alleging inadequacy of representation or motion to intervene has been filed, the district court need not hold more elaborate proceedings than are necessary. "Where the district court knows of the adequacy of representation by class counsel, no hearing is necessary." The Court may dismiss the action sua sponte. McNeil v. Guthrie, 945 F.2d 1163, 1167 (10th Cir., 1991) (citing Neitzke v. Williams, 490 U.S. at 325).

> Because there is potential for abuse of class counsel, class representation can be assumed adequate unless the class member raises substantial issues in a new suit or by intervention. Class counsel is entitled to be free from harassment by class members. All of his judgments cannot be challenged in court. Thus, because the district court has a responsibility to protect both class members and class counsel, it must balance the interests of class members against the danger of harassment to class counsel.

McNeil, supra, at 1167.

According to Rule 23(g), the "attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class." 23(g)(1)(B). The Court must consider "the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, the resources counsel will commit to representing the class, and counsel's knowledge of the applicable law." 23(g)(1)(C)(i).

4

This Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. 23(g)(1)(C)(ii).

Michael F. Phillips is a local attorney from Guam, raised in the village of Santa Rita. He has worked his entire legal career here on Guam. Attorney Phillips attended Cathedral Grade School in Hagåtña, Mount Carmel School in Agat, and in 1980 graduated from George Washington High School in Mangilao. See Declaration of Michael F. Phillips in Support of Motion for an Order Appointing of Class Counsel, filed concurrently herewith ("Phillips Decl."), Par. 2. Phillips immediately entered the University of Guam, and received his B.A. in Economics from the University of Hawaii at Manoa in 1984. He then attended the University of California at Los Angeles (UCLA) and received his Degree of Juris Doctor (JD) in 1987. Phillips immediately returned to Guam and after completing a clerkship with the Superior Court of Guam, began the practice of law in 1988. He is licensed to practice in all courts on Guam, and before the Court of Appeals for the Ninth Circuit. Phillips has extensive experience in criminal defense and civil litigation, and continues to represent clients before the Superior Court of Guam, District Court of Guam, Supreme Court of Guam, and Ninth Circuit Court of Appeals. Phillips Decl, Par. 2.

Phillips was the first and most likely still the only attorney on Guam to win a "not guilty by reason of entrapment" defense case before a jury in the Superior Court of Guam, and did so very early in his career. Phillips has defended many cases before juries, including murder and other first degree felony matters. He has served as lead counsel in a number of jury trials lasting weeks at a time, and has successfully defended and argued many "high profile" criminal and civil cases before the Supreme

5

2

3

4

5

6

Court of Guam, District Court of Guam, and Ninth Circuit Court of Appeals. Phillips served as lead counsel in the Chamorro Land Trust case, the first court case televised live from the Superior Court of Guam. Supreme Court justices and judges of the Superior Court continue to request Attorney Phillips handle many of the more serious and sensitive court appointed criminal cases. Phillips Decl, Par. 3.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

Attorney Phillips has served as lead counsel in a number of extremely complex cases involving many thousands of discovery documents. Phillips was lead counsel for EIE International in EIE Guam Corporation, et al. v. The Long Term Credit Bank of Japan, et al., District Court of Guam Civil Case No. 00-00009, a complex international civil case with claims totaling in the hundreds of millions of dollars which commenced in the Superior Court and ended in the District Court of Guam. He was also lead counsel for the defense, representing one of two defendants in a recent discovery-intense case involving multi-million dollar claims, Western Systems, Inc., Guam Cable TV, Southern media, Inc., Lee M. Holmes, Joan S. Holmes, Pacific Color Press, Holmes Management Company, Holmes Cliff Corporation, Holmes Enterprises and Guam Radio Services, Inc. v. Atkins Kroll, Inc., F/K/A Atkins (Guam) Ltd., and Aon Insurance Micronesia (Guam) Inc., F/K/A Atkins Kroll Insurance, Inc. CV1314-01. Additionally, Phillips has served as local counsel on other occasions for off-island firms. Phillips Decl, Par. 4.

22

23

24

25

26

For over a decade, Phillips has continuously represented legislative committees or offices, and, likewise, has extensive experience representing other governmental entities. Phillips served as counsel to the Territorial Board of Education and Department of Education. This involvement with the day to day operations of government has contributed to his extensive knowledge and experience dealing with

27

28

PHILLIPS & BORDALLO

6

government-related claims, government revenue projections, cash flow, debt, accounts, and the manner in which the executive branch receives and pays out tax dollars. Phillips Decl, Par. 5.

Phillips' *pro bono* service to the community is unmatched in the Guam Bar. In addition to contributing an enormous amount of his time to direct legal representation of those that could not otherwise afford legal services, he has donated legal services in every possible manner, including hosting a Chamorro radio talk show wherein he explained the law and answered questions for the Chamorro speaking population. Phillips served as an instructor of law for the University of Guam, and for eleven years as a volunteer coach for high school mock trial, while one year coaching his team to second place in the entire United States. Phillips Decl, Par. 6.

Phillips is extremely active in civic and political organizations on Guam. Democrats have three times elected him as their party chair, and Phillips remains the youngest person ever elected to such a position on Guam. No person on Guam has held this position for more than three terms. Phillips is the President of the George Washington High School Class of 1980 Alumni Association and the first recipient of the University of Guam Alumni Association's "Achiever Award." He has received numerous awards and legislative commendations, including repeated recognition for his pro bono work and success in a number of landmark cases. Phillips Decl, Par. 7.

In the class action case of Rios et al. v. Ada, et al., respondents argued the Court should consider counsel's political notoriety and disapprove the appointment of Phillips & Bordallo as class counsel. While rejecting respondents' arguments, the Court certified Phillips & Bordallo as class counsel and commented on the firm's qualifications:

7

[T]he Court also stated that 'it would seem a bit anamolous that an individual whose uncle has developed a reputation as a competent securities lawyer should be prohibited from turning to his uncle for assistance if he has a legitimate legal claim.' Id.

In contrast to the relationships above which deny class certification, the relationship here is a remote one from which, even given the closer extended family ties of our island, Petitioner cannot reasonably expect to benefit from her grand nephew's salary. In terms of Fischer, it is not likely that Ms. Rios might have an interest in the legal fees of Mr. Bordallo. Nor is it likely, in terms of Kirby, that Ms. Rios would be unduly influenced by the possible benefit her grandnephew may receive in attorneys' fees. Also, based on Lewis v. Goldsmith, the relationship itself provides no indication of impropriety. The Court finds therefor that the indirect and three generation-spanning familial relationship between Petitioner and Mr. Bordallo is insufficient to warrant Bordallo and Phillips' dismissal as class counsel.

Respondents' greater concern is that the shared political affiliations between Petitioner and class counsel require denial of class certification. According to Respondents, the lawsuit has 'the appearance of a political agenda,' and 'the potential for divergent views.' Respondents' Brief filed 29 April 1994, pp. 8, 9. Respondents posit that some potential class members may be reluctant to join because of a fear they would be perceived as being of the same political persuasion as Petitioner and her counsel. Respondents' Brief filed 29 April 22 1994, p. 9. At hearing the problem was more colorfully expressed by counsel for the Retirement Board:

THE COURT: Well, what is the conflict that you see?

MR. MOORE: Well, I can think of one very easily. In November, if the Democratic party succeeds in getting its feet, you know, planted in the public trough, there may be a complete –

THE COURT: -- The Court's there too, Mr. Moore, so...

MR. MOORE: I understand that, but just being totally blunt about this, if that happens, then we might find

8

ourselves with an executive branch of this government to take an entirely different view of this particular problem than they are right now since they would be in as opposed to being out, and then you're going to have people who have a divided loyalty.

THE COURT: Oh, I see, and you're saying that there's the possibility they'd drop the lawsuit then?

MR. MOORE: That's right. That's right.

In Bartelson v. Dean Witter & Co., 86 F.R.D. 657, 674 (1980), the Court held that the alleged conflict must go to the heart of the subject matter of the litigation. The bare assertion that such conflicts necessarily exist or might arise does not provide a sufficient legal basis on which to deny class certification. Therefore, Respondents' conjecture that the Democratic Party would drop the action in the event of a successful gubernatorial race is not sufficient to deny class certification.

In Gomez v. Illinois State Bd. of Education, 117 F.R.D. 394 (N.D.Ill. 1987) - plaintiff's counsel, the Mexican American Legal Defense Fund, Inc. (MALDEF), was a national civil rights legal organization which advocated and defended the rights of Hispanics in many civil rights cases, often in the context of class actions. In Gomez, the attorneys were found to be adequate in the past, which the court found to be persuasive evidence that they will be adequate again. There was no indication that the relationship between any of the named plaintiffs and MALDEF was such that it would undermine counsel's impartiality toward all of the class members in prosecuting the action. Nor was there any evidence that counsel's motivation in bringing the suit as a class action was improper, or that counsel had other professional commitments which were antagonistic to, or which would detract from its efforts to secure a favorable decision for the class in this case. Here, it is true Petitioner's counsel successfully completed a wide-sweeping class action, namely, the Chamorro Land Trust Act, against Governor Ada, but they also represent various government entities in this administration. (Petitioner's Reply Memorandum in Support of Class Certification and Attorneys' Fees, filed 15 March 1994, p. 9.) They have been in practice together for five years and have appeared in this court on a wide variety of causes. It is not likely that the

PHILLIPS & BORDALLO

> political affiliations of the Petitioner and class counsel will underline the counsel's impartiality and performance. Additionally, Petitioner's counsel already successfully argued what both sides concede to be the main issue of this case on 20 December l993. The decision by the Court illustrates counsels' competence in handling the type of litigation involved and their motivation in spite of additional political commitments.

Special Proceedings Case No. SP0206—93 (Decision and Order, August 8, 1994) pp. 5-8. (Emphasis added).

As can be seen from the Superior Court of Guam's Decision and Order, as far back as a decade ago counsel and his law firm had already developed a reputation for pursuing similar causes. More importantly, on at least one occasion, Guam Courts have certified Attorney Phillips and Phillips & Bordallo, P.C. as class counsel after entertaining objections and arguments from respondents and defendants. Phillips & Bordallo have pursued the above class action in the Superior Court of Guam for over a decade and have battled three separate administrations on behalf of the class they represent. Phillips Decl, Par. 8.

Petitioner's counsel has filed numerous lawsuits over the last sixteen (16) years representing the public interest, various causes, and on behalf of himself, individual petitioners, or on behalf of a class of claimants. These cases include successful claims for arguably hundreds of millions of dollars worth of land for the indigenous Chamorros of Guam, and the Cost Of Living Allowance case (Rios, et al. v. Ada, et al.) estimated to entitle the class to over One Hundred Million Dollars (resulting in summary judgment in favor of class). Phillips Decl, Par. 9. Phillips has pursued similar cases his entire career and as a result has prosecuted cases against numerous developers to enjoin the desecration of Chamorro burial remains, various freedom of information actions against

10

PHILLIPS & BORDALLO

the Government of Guam, and a large number of constitutional (Organic Act) cases.

Phillips' civil litigation experience includes the following:

Vicente C. Pangelinan, Senator, Individually and on behalf of the People of Guam v. Carl T.C. Gutierrez, Governor; John F. Tarantino, Attorney General of Guam, Guam Memorial Hospital Authority; Ann A. Muna, James Stadler, M.D., Rosemarie Trapp, Bevan Geslanie, M.D., Annie Make Peace and Edward M. Calvo, in their capacities as members of the Guam Memorial Hospital Authority Board of Trustees and Lillian P. Posadas, in her capacity as Acting Hospital Administrator, Special Proceedings Case No. SP86-00 (Case brought on behalf of Senator and People of Guam to authorize the hiring of nurses at Guam Memorial Hospital);

Angel Santos and The Chamorro Nation v. Joseph F. Ada, Governor of Guam, SP83-92 (Claim by Chamorro people of Guam resulting in landmark decision mandating grant of tens of thousands of acres formerly in possession of the federal government and Government of Guam);

Celestine C. Babauta, individually and on the behalf of all persons similarly situated; Estate Of Lorenzo C. Rosario by Lorenzo C. Rosario, Jr. and Judy M. Rosario; and Estates Of Bernabe And Trinidad Paulino by Ana Paulino Mafnas v. Government Of Guam, SP0339-96 (Action to force Government of Guam to pay for lands taken for easements);

Thomas C. Ada, Senator v. Guam Telephone Authority, Paul D. Untalan, Leslie D. Moreno, Pedro R. Martinez, Edward L.G. Aguon, Nora P. Hitosis, Rena B. Wang, and Roman L. Cepeda, personally and in their capacities as members of the Guam Telephone Authority Board of Directors, and Vicente M. Camacho, personally and in his capacity as the Guam Telephone Authority General Manager, SP265-96 (Prosecution of taxpayer's action to enjoin Guam Telephone Company from expending local tax dollars in the CNMI and for the return of tax dollars improperly spent);

Vincente C. Pangelinan, Senator, and Joseph C. Wesley, Mayor, on behalf of themselves and all those similarly situated v. Carl T.C. Gutierrez, Govenor, Y'Asela A. Pereira, Treasurer, the Government of Guam, and Does 1 through 10, SP73-98 (Case filed on behalf of Senator, Mayor, and those similarly situated to block construction of incinerator);

Pacita Aguon v. Carl T.C. Gutierrez, Governor of Guam, Michael J. Reidy, Acting Director of Administration; Y'Asela A. Pereira, Treasurer of Guam; John H. Rios, Director of the Governement of Guam Retirement Fund; Gerald S.A. Perez, Odilla M. Bautista, Jennifer Muna-Aguon, Mark J. Heath and Paul M. Untalan, in their capacities as members of the Trustees of the Government of Guam

Retirement Fund, and Does 1 through 50, inclusive, SP207-97 (Class action prosecuted attempting to secure statutory supplement for retirees);

Vicente C. Pangelinan and Joseph C. Wesley v. Carl T.C. Gutierrez, et al, Guam Resources Recovery Partners, SP 0212-00 (Taxpayers' case brought against government and large developer to enjoin the expenditure of millions in tax dollars on an incinerator contract);

Ignacio Tainatongo, et al. v. Territorial Board of Education, et al., SP114-95, CV1383-95, CV1856-95, SP24-96 (Successfully defended constitutionality of an elected school board resulting in landmark decision authorizing residents of Guam to elect representatives to school board);

Glora B. Nelson, et al, v. Gus Diaz, Attorney General of Guam, et al., SP 254-98 (Landmark decision wherein Phillips successfully argued legislation violated Organic Act of Guam resulting in court ruling that children of Guam have a right to public education); and

Ignacio J. Pangelinan, a.k.a. "Ike Pangelinan," on behalf of himself and all Government of Guam Employees v. Carl T.C. Gutierrez, I Maga'lahi; John F. Tarantino, Attorney General of Guam; and Rosie R. Tainatongo, Direktora, Depattamenton Edukasion, SP98-00 (Prosecution of case attempting to enjoin Executive Order preventing government employees from speaking to Legislature). Phillips Decl, Par. 10.

Phillips has spent virtually all his career defending clients prosecuted by the government and representing petitioners against the government. Phillips takes cases most attorneys will not accept without payment, and at times is the only attorney able and willing to represent the "underdog" or litigants involved in controversial cases. He has represented plaintiffs against every sitting Governor of Guam since his admission to the practice of law approximately sixteen (16) years ago. As a result of his success as an attorney, Mayors and Senators of both political parties have retained Phillips' services for both consultation and litigation. Large, international, multi-billion dollar corporations have retained Phillips to represent them in court and in negotiations with the Government of Guam (e.g. AT&T, Yamaha Motors of Japan, Aon Insurance

Company). Both Republican and Democratic Senators (and their legislative committees) have utilized Phillips' services for over a decade in every capacity ranging from the initiation of law suits to the conducting of oversight and investigative hearings. He has represented former Governors and Lt. Governors, and, just recently, filed an action against the Governor of Guam on behalf of the Republican Lt. Governor of Guam and the Office of the Lt. Governor of Guam. The Lt. Governor and his Office subsequently retained Phillips to defend them against the Governor in an expedited case completed earlier this year before the Supreme Court of Guam. Phillips Decl, Par. 11.

Contrary to claims in the media by those wishing to intervene, Petitioner's counsel does not have an ongoing legal relationship with either the Lt. Governor (who is not a party to this case) or any of the named defendants in this case. Furthermore, Plaintiff's counsel is no longer seeking to represent the Lt. Governor of Guam or his office and limited his representation to the recent trial and Supreme Court case which have since terminated. Phillips Decl, Par. 12.

The law offices of Phillips & Bordallo have researched and followed the EITC developments at the Department of Revenue and Taxation, Supreme Court of Guam, and the Guam Legislature from early 1998 to the present. Initially, the law firm intended to file this action in 1998 and then learned the administration at the time intended to (and did) pay EITC refunds that year for tax year 1997, reversing their policy position and appearing to commit to compliance with EITC mandates. Phillips Decl, Par. 13. Since then, the Guam Legislature has mandated and authorized payment of the refunds on a yearly basis. In 2001, the Guam Legislature sued the Governor of Guam in the

13

Supreme Court and received a declaratory judgment interpreting the EITC program as applicable to Guam.

Nevertheless, even after allowing applications for EITC refunds for tax year 1998, and after the Supreme Court of Guam held in In re Request of I Mina Bente Singko Na Liheslaturan Guahan Relative to the Application of the Earned Income Tax Credit Program to Guam Taxpayers, 2001 Guam 3 (2001) that the substantive provisions of the Internal Revenue Code enlisted in the Organic Act, including the EITC, must be applied in mirrored fashion to Guam, and that the Governor is required to enforce and administer the EITC, the Government of Guam still failed to pay earned income tax refunds for tax years 1996, 1998 and subsequent years.

Although Phillips was not involved in an official capacity during the Supreme Court case above, he had the benefit of presentations by both sides of the argument, attended the hearing, reviewed all submissions and briefs, listened to arguments, and reviewed the Supreme Court decision. Phillips Decl, Par. 14. As can be seen from the Supreme Court decision, the issues and facts involved in that case are similar if not identical to the issues presented in this class action.

The Government of Guam's consistent position not to implement and pay refundable earned income taxes continued for almost a decade, despite specific direction from the Guam Legislature and the Supreme Court of Guam. Even the current administration pledged it would pay out the EITC refunds if elected, and in fact, both respondent Governor Camacho and Lt. Governor Moylan at one time or another sponsored legislative bills to pay these refunds. The administration reneged on this

14

promise and failed to pay the refunds in 2003. In the meantime, a continuing decline in the financial condition of the government occurred.

Before completing the recent settlement in this case, Phillips obtained information regarding the current Government of Guam deficit, debt, cash shortfall, economic and cash flow projections, and other information relating to the Government's ability to pay past refundable earned income tax refunds and commence full payment of all future refunds (e.g. GPA expected bond payments and projected individual taxpayer refunds). Phillips Decl, Par. 15.

At the time of settlement negotiations, the cash deficit of the Government of Guam was estimated to be in excess of Two Hundred Million Dollars ($200,000,000). Public Law 27-19 authorized the Governor to issue bonds in excess of 200 million dollars necessary to pay a variety of government debts, including unpaid income tax refunds dating back to tax year 2000, unpaid corporate tax refunds, utility payments, payroll obligations, and a variety of past due payments to government vendors. However, none of the proposed bonds were earmarked to pay refundable earned income tax credits. With or without the Bond, Government revenue has decreased an average of over One Hundred Million Dollars ($100,000,000) per year since approximately the year 2000. In 2003 alone, the Government lost approximately 500 jobs as did the private sector. Phillips Decl, Par. 16.

Respondent Governor Camacho described the sad state of government finances last year as a "crisis," and, while bracing our people for further reductions in services and government employment, stated, "The harsh reality of our economy and our government's financial state leaves us no choice. Our community must begin to

15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

understand that government cannot be all things to all people... that public employment is not an entitlement, but a service. The success of our own people can no longer be held back by the failure of government to deliver basic services." State of the Island Address, May 13, 2003.

In 2003, the administration had to reduce government spending by an estimated Eighty Four Million Dollars ($84,000,000). In order to avoid "payless paydays" and the financial collapse of the Government, the Legislature and Governor increased the Gross Receipts Tax ("GRT") by 50%. The administration implemented a reduced 32-hour work week for most line agency employees of the Government of Guam. Taxpayers continue to wait for individual tax refunds not paid in years because of the unavailability of government revenue. As of January 2004, the Government was still attempting to make payments on individual tax refunds for tax years 2000 and 2001. Making matters worse, the Legislature and Governor terminated the additional stream of government revenue earlier this year resulting from the tax increase by repealing the 50% GRT increase. Phillips Decl, Par. 17. The current Governor again addressed the government's financial condition in his State of the Island Address on February 3, 2004, a little more than a week prior to the filing of this class action:

> Not since the devastation of World War II, have our people faced extraordinary hardships as we did last year. And while the War was not of our doing, many of the problems we faced last year were due to the neglect of this government to fulfill its basic responsibilities. From water and power, to education and healthcare and across the wide spectrum of basic services, government failed and our people suffered.

> Last year, our community was in the midst of recovering from the most costly disaster in our island's history one that destroyed our homes and businesses,

16

1

2                          damaged our schools, crippled our utilities and further
                          devastated our weakened economy.

3          Except for one payment months before a gubernatorial election, the Government

4    has not paid EITC refunds in nearly a decade. In fact, while misleading taxpayers in

5    1998 by including a section on tax forms for EITC application, the Government still

6    failed to pay out the refunds. The Government had consistently opposed paying the
7
     EITC since the middle 1990's. The Government's responses, whether in public, the
8
     Supreme Court of Guam, or even in the District Court, included defenses of the lack of
9
10   federal or local appropriations (unfunded mandate), the financial inability of the

11   Government to pay the EITC refunds, a lack of Congressional intent to have the EITC

12   applicable to Guam, the EITC is inorganic as it undermines the Government's ability to

13   control expenditures as provided in section 1423j of the Organic Act, statute of

14   limitations issues, challenges to the Supreme Court of Guam's jurisdiction to make

15   findings or issue an advisory opinion, the supremacy of local tax commissioner
16
     Revenue Rulings, and previous allegations that a remedy could not be secured from the
17
     District Court of Guam because it is not an Article III court. After the initial pleadings in
18
19   this action and a Scheduling Conference, it certainly appeared that the Government of

20   Guam intended to vigorously challenge the success of this class action. Phillips Decl,

21   Par. 18.

22          It was within this climate of financial crisis that counsel for Petitioner negotiated

23   and completed a settlement of Sixty Million Dollars ($60,000,000) plus full

24   implementation of the EITC program estimated to cost the Government an additional
25
     $15,000,000 to $20,000,000 each year from now on. As a result of this settlement,
26
     EITC recipients will receive an estimated $150,000,000 to $200,000,000 over the next
27

28
                                                                                        17

ten (10) years. Payments of the EITC refunds will come from government revenue set aside in a special account for this purpose alone. Under the Settlement Agreement, the Government must deposit at least Three Million Dollars ($3,000,000) by July 17, 2004 and a total of Twenty Million Dollars ($20,000,000) by June, 2005 for the payment of previous EITC refunds. In addition, the Government of Guam agreed to pay an additional Forty Million Dollars ($40,000,000) over eight years.

Thus, despite the government's financial condition, the proposed Settlement Agreement provides immediate relief and creates an enforceable entitlement to a stream of payments to be made by the Government of Guam to qualified taxpayers. Considering the longstanding failure of the Government of Guam to not only pay refundable earned income tax refunds, but to even recognize the applicability of the program and to allow applications for the credit, the proposed settlement clearly demonstrates the competency and ability of Phillips to provide fair and exemplary representation of the interests of the class.

As the parties proceeded through settlement negotiations, Phillips had extensive discussions with representatives of the administration, accountants, and administrators from the Department of Revenue and Taxation regarding the estimated potential claims for unpaid refundable earned income tax credits, and the government's projected cash flow available to pay such claims. Phillips Decl, Par. 19.

During the Settlement Conference on June 17, 2004, a thorough discussion occurred between this Court and the parties, including representatives of the Department of Revenue and Taxation, regarding the Government of Guam's ability to provide the installment payments required by the Settlement Agreement. Phillips Decl,

18

Par. 20. The discussion of both the availability of government funds and the projected claims of refundable earned income tax credit refunds for the applicable tax years demonstrated that Phillips had thoroughly investigated the facts and circumstances of this class action and was acutely aware of the strength of the class claims and the risks associated with moving forward with the class action short of a settlement. Based on the financial figures discussed throughout the settlement process, it is fair to conclude that the government was moved to commit almost every available local fund to resolve this class action.

Even if settlement had not proceeded in this class action, Phillips was prepared early on to try this matter. Phillips successfully negotiated an expedited trial schedule with the Government of Guam. During the Scheduling Conference, Phillips informed this Court that he was prepared to file a Motion for Summary Judgment. However, soon after the expedited scheduling order was issued by this Court, a change in policy by the administration occurred, and meaningful settlement negotiations commenced resulting in the Settlement Agreement preliminarily approved by this Court. Phillips Decl, Par. 21.

Attorney Phillips and the law firm of Phillips & Bordallo, P.C. possess now and have possessed throughout this litigation the requisite competence, experience, dedication, knowledge, training, interest, objectivity and resources to adequately litigate the claims and defenses raised by the parties to this class action.

In Twelve John Does v. District of Columbia, 326 U.S. App. D.C. 17 (D.C. Cir., 1997), the Court addressed arguments from those wishing to splinter the class because of objections to the settlement reached. One tactic used by dissidents was an attempt to remove class counsel:

19

Here, of course, the district court's experience overseeing the case for nearly two decades has given it a unique familiarity with the issues and the performance of class counsel. See McNeil v. Guthrie, 945 F.2d 1163, 1167 (10th Cir. 1991) (noting that district court directly familiar with adequacy of class counsel's representation need not hold hearing on challenges to adequacy). To the extent that the would-be intervenors' point to the dispute over the scope of the February 26, 1996 Consent Order as evidence of unresponsiveness, the claim is weak. The district court observed:

At the hearing held on this motion on December 5, 1995, it became apparent to the Court that petitioners believed they could achieve concessions not contained in the consent decree including: preventing the out of state transfer of inmates; inmate participation in the Central Facility's food preparation and service; and, greater educational and vocational programs.

December 6, 1995 Order at 3 n.2. Although the movants point to general language in the Consent Decree calling for an 'effort to develop and to expand the institutionally-operated programs at Central,' see 'Memorandum of Points and Authorities in Support of Motion to Reconsider December 6, 1995 Order,' at 19 n.6 (quoting Consent Decree at 32), they appear to recognize that a ban on out-of-state transfers is no more than a possible subject for negotiations to modify the Consent Decree, which could be said of any issue. They see the food preparation proposal as pertinent to the decree only in the sense of lying within its general language on program development. Furthermore, the original lawsuit itself focussed on security issues, chiefly the prevention of inmate-on-inmate violence. See Complaint at 3, 26-28, PP 1, 84-92, Twelve John Does v. District of Columbia, Civ. Action No. 80-2136 (D.D.C. Aug. 20, 1980). Although the complaint described inadequate living conditions, including inadequate and unhygenic food facilities, it did so in the context of the anger that such conditions are likely to engender, with a resulting increase in the risk of violence. See Complaint at 23, P 75. Given class counsel's continuing efforts to secure the District's compliance with specific, numerical criteria provided in the Consent Decree that are directly linked to the original

lawsuit, its failure to embrace the dissidents' agenda--even the portions technically within the scope of the original complaint and the 1982 decree—hardly undermines the district court's findings as to adequacy of representation. This is especially true for the first item in the dissidents' proposed consent order, that the court require the District to set aside money specifically for Kemi Morten's Unfoldment program. Joint Appendix at 196-97. It is also true for the second, a food preparation or "culinary arts" program under which prisoners would be paid the minimum wage and the prison members of the Blacktop Coalition would choose the prison guards with whom inmates would work. Id. at 197. The movants have by no means shown that counsel's advocacy of the February 26, 1996 Consent Order in preference to the Coalition's agenda was not in the best interests of the class. Cf. Kincade v. General Tire and Rubber Co., 635 F.2d 501, 508 (5th Cir. 1981).

[W]hat sparked the Blacktop Coalition's intervention effort was news of an October 11, 1995 agreement in principle to resolve the dispute over the District's failure to comply with the 1982 decree, as amended. Apart from their attack on its substantive terms (already reviewed), the Coalition complains about inadequate advance consultation over the agreement. But class counsel explained that since the agreement was initially reached at a court hearing, it did not have an opportunity to present it to the class earlier.

Before any opportunity for settlement rose, Petitioner's counsel willingly undertook the risk of a contingency and further, only asked for 10% of the recovery in attorneys fees notwithstanding any recovery from the Government being far from certain. See Petitioner's Complaint. Phillips has consistently requested attorneys fees in similar cases amounting to a fraction of what most firms request. See, e.g., Rios v. Ada, Special Proceedings Case No. SP0206—93.

In the Alternative, should this Court determine not to appoint Attorney Phillips as Class Counsel, Petitioner requests that this Court designate Mr. Phillips as interim counsel for the EIC Class pursuant to Rule 23(g)(2)(A), pending this Court's

21

determination on final approval of the proposed Settlement Agreement and certification of the EIC Class. As provided above, Petitioner and the EIC Class must respond to a variety of motions for intervention, and anticipate other challenges to the proposed Settlement Agreement prior to its final approval. Most importantly, Phillips and the EIC Class must be authorized to hold the Government of Guam to its obligations under the Settlement Agreement.

### III. Attorney Fees

During the Settlement Conference, Petitioner's counsel requested after the Court granted preliminary approval of the Settlement Agreement, attorney fees in the amount of 10% of the Settlement Amount. Petitioner's counsel did not ask the Court for a percentage of any refunds paid to EITC recipients as a result of the Government's obligation to fully implement the program for tax years 2004 and beyond. On June 24, this Court issued an order granting Petitioner counsel's request for an award of attorney fees in the amount of 10% of the Settlement Amount provided for in the Settlement Agreement. Rule 23(h) allows the court to award reasonable attorney fees and nontaxable costs pursuant to a motion for an award of attorney fees. According to the Advisory Committee Notes, Rule 23(h) applies to "cases in which there is a simultaneous proposal for class certification and settlement even though technically the class may not be certified unless the court approves the settlement pursuant to a review under Rule 23(e)". Thus, "[w]hen a settlement is proposed for Rule 23(e) approval . . . with a request for certification, notice to class members about class counsel's fee motion would ordinarily accompany the notice to the class about the settlement proposal itself." The Advisory Committee Notes also state that this Court should direct

22

when the fee motion must be filed, and for "motions by class counsel in cases subject to court review of a proposed settlement under Rule 23(e), it would be important to require the filing of at least the initial motion in time for inclusion of information about the motion in the notice to the class about the proposed settlement that is required by Rule 23(e)." In addition, Rule 23(h)(2) requires that class members have the opportunity to object to the motion. Rule 23(h)(3) allows, but does not require this Court to hold a hearing on the motion.

In this action, Petitioner presented this Court with a Settlement Agreement to be reviewed and approved under the standards of Rule 23(e) together with a request for class certification. As such, Petitioner requests that this Court consider and approve a motion for attorney fees pursuant to Rule 23(h), on a preliminary basis pending final approval of the Settlement Agreement and class certification, and any objections raised by class members.

Petitioner, pursuant to Federal Rules of Civil Procedure 54(d)(2) and Rule 23(h), requests reasonable attorney fees and court costs in the amount of ten percent (10%) of the Settlement Amount provided for in the Settlement Agreement. Petitioner requests that the recovery of attorney fees and court costs be from, and not in addition to, the Settlement Amount, and executed in such manner as provided in the Administration Plan to be approved by this Court, not inconsistent with the Settlement Agreement. Although the value of the benefit conferred by Petition and her counsel for the EIC Class to each member of the EIC Class cannot be determined with complete accuracy until all claims are presented, attorney fees awarded against the Settlement Amount will shift the costs of litigation to each member of the EIC Class in the exact proportion that

23

the value of each individual's claim bears to the total recovery and establishment of the common fund.

## IV. Additional Notice to the Class and Continuation of Hearing for Final Approval and Extension of Pertinent Dates

On June 24, 2004, this Court issued an Order Approving Notice of Class Action for publication in the local newspapers. The original notice informed potential class members of the terms of the proposed Settlement Agreement, the deadlines to provide written objections to the proposed Settlement Agreement or to opt out of the class, and other pertinent information. However, the notice also referred to the class as being certified by this Court and to this Court's order granting attorney fees to Petitioner's counsel. Prior to the hearing on final approval, and consistent with the Settlement Agreement, Petitioner intends to include an assertion of class certification under Rule 23(a) and (b)(3) with its motion for an Order of Approval and Final Judgment. For purposes of notifying the class, Petitioner requests, with the agreement of the Government of Guam, and consistent with the Settlement Agreement, that additional notice be published and mailed to potential class members on an individual basis, beginning immediately after approval by the Court. See Stipulation of the Parties Regarding Additional Notices to the Class, Extending the Objection and Opt Out Date, and Continuing the Hearing on Final Approval of the Settlement Agreement, filed concurrently herewith. The amended notice would clarify the existence and preliminary approval of a motion for attorney fees and court costs, and class members' opportunity to provide objections to such a motion, as is required under Rule 23(h). The proposed amended notice, attached hereto as Exhibit "A", would also refer to the outcome of this motion in relation to the appointment of Mr. Phillips as class counsel, or, in the

24

alternative, as interim counsel, and clarify that the EIC Class has been preliminarily approved pursuant to this Court's issuance of the Stipulated Order Granting Preliminary Approval of Class Action Settlement on June 17, 2004.

Petitioner also requests that in consideration of the above, and in order to provide potential class members with additional time to file objections or to opt out of the class, this Court extend the original "Objection and Opt Out Date" of August 9, 2004 to October 8, 2004. Petitioner anticipates that with the Government of Guam's consent and cooperation, the publication of the amended notice will proceed immediately upon approval and the distribution of individual notices will be completed by no later than August 9, 2004, thereby giving class members at least sixty (60) days from the date of receiving individual notices to provide written objections to the proposed settlement or to opt out of the class. Finally, Petitioner requests that in light of the above, this Court continue the scheduling of the hearing on final approval of the Settlement Agreement to November 9, 2004.

## V. Conclusion

Petitioner requests that this Court appoint Attorney Michael F. Phillips of Phillips & Bordallo, P.C. as class counsel, or, in the alternative, to designate Attorney Phillips as interim counsel for the EIC Class pursuant to Rule 23(g)(2)(A). Petitioner also requests that this Court preliminarily approve Petitioner's motion under Rules 52(d)(2) and 23(h) for attorney fees in the amount of 10% of the Settlement Amount provided under the Settlement Agreement.

Petitioner requests that this Court approve the amended notice attached as Exhibit "A", to be published and mailed to potential EIC Class members on an individual

25

basis. Finally, Petitioner requests that this Court extend the "Objection and Opt Out Date" to October 8, 2004, and continue the hearing on final approval of the Settlement Agreement to November 9, 2004.

Respectfully submitted this 14th day of July, 2004.

PHILLIPS & BORDALLO, P.C.
Attorneys for Petitioner

By: _____
Michael F. Phillips

JULIE BABAUTA SANTOS, individually, )
and on behalf of all those similarly situated, )
)
Petitioner, )
)
vs. )
FELIX A. CAMACHO, Governor of Guam, )
ART ILAGAN, Director of Department of )
Revenue and Taxation, LOURDES M. )
PEREZ, Director of Department of )
Administration; and GOVERNMENT OF )
GUAM, )
Respondents. )
_____ )

# AMENDED NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT

**To:** **All individuals who filed Guam income tax returns and qualified for earned income tax credits for any or all of tax years 1996, 1998, 1999, 2000, 2001, 2002 or 2003.**

**Summary of the Lawsuit**. This lawsuit sought payment of refundable earned income tax credits for tax years 1996, 1998, 1999, 2000, 2001, 2002, and 2003 (the "applicable tax period"). This lawsuit has been preliminarily approved by the Court as a class action. The counsel for the petitioner and the class is Michael F. Phillips of Phillips & Bordallo, P.C. The counsel for the respondents is Douglas B. Moylan, Attorney General of Guam.

**Definition of the Class**. You are a member of the class if you (a) filed Guam income tax returns and (b) were and are entitled to be paid refundable earned income tax credits under the Guam Territorial Income Tax and the Earned Income Program for any or all of the following tax years: 1996, 1998, 1999, 2000, 2001, 2002 and 2003.

**Proposed Settlement**. The petitioner and the Government of Guam reached a Settlement of this lawsuit. The Court preliminarily approved the Settlement. The Settlement will provide payments, before Court-ordered deductions, to you of approximately fifty percent (50%) or more of the estimated refundable earned income tax credits you may have claimed for the applicable tax period. The Settlement Amount is **$60 Million Dollars**. The Settlement Amount will be deposited into an EIC Settlement Fund as follows: At least $3 Million Dollars by July 17, 2004; at least $17 Million Dollars over eleven months following the first installment; and at least Five Million Dollars on or before June 30th of each subsequent year, beginning on June 30, 2006 and ending June 30, 2013. The Settlement also provides that the Government of Guam will fully implement the earned income tax program for tax years 2004 and beyond. Petitioner has filed a motion for attorney fees and court costs in the amount of ten percent (10%) of the Settlement Amount. This motion has been preliminarily approved by the Court. You may file with the court any written objections to the motion by October 8, 2004. This Settlement will release the Government of Guam from all further liability for refundable earned income tax credits to Class Members for the applicable tax period.

**Procedures Concerning the Settlement**. On **November 9, 2004**, at 10:00a.m., the Court will hold a hearing at the District Court of Guam before Magistrate Judge Joaquin V.E. Manibusan, Jr. to determine whether the Settlement is fair and reasonable and should be given Final Approval.

**Objections to the Settlement and Requests for Exclusion.** If you believe the Court should not approve the Settlement, you may deliver or mail to the Court written objections to the Settlement no later than **October 8, 2004**, together with evidence of qualification for earned income tax credits for any tax year within the applicable tax period. You may also appear at the hearing on Final Approval, provided, however, that no Class member shall be heard unless he or she complies with the requirements to file written objections. If you do **NOT** want to participate in the Settlement Amount of $60 Million Dollars, or if you want to pursue separate claims, you may request exclusion from the class by delivering to the Court a written request to opt out of the class by **October 8, 2004**. All objections and requests for exclusion shall be personally signed by the Class member and delivered to EIC Settlement, c/o Clerk of Court, 4th Floor, U.S. Courthouse, 520 West Soledad Avenue, Hagatna, Guam 96910.

**Participation in Settlement**. If you want to participate in the Settlement Amount of $60 Million Dollars, you do not have to take any action at this time. If the Settlement becomes final, you will be mailed a notice informing you of the information that must be provided to the Department of Revenue and Taxation and all other procedures necessary to obtain your portion of the Settlement Amount. Those who do NOT request exclusion will be bound by the judgment in this Class Action and by the Settlement if it becomes final. Any person who provides false information in an attempt to obtain a portion of the settlement will be prosecuted to the fullest extent of the law.

**Further Information**. For further details of this Settlement, you may request further information from the Department of Revenue and Taxation at Bldg. 13-1, Mariner Avenue, Tiyan, Guam, 96913, or visit the Attorney General of Guam's website at www.guamattorneygeneral.com; or call the Offices of Phillips & Bordallo at 477-2223.

PLEASE FOLLOW THE PROCEDURES SET OUT ABOVE. DO NOT CONTACT THE COURT FOR QUESTIONS ABOUT THE SETTLEMENT.

# EXHIBIT A