

The Law Offices of
# PHILLIPS & BORDALLO
A Professional Corporation
410 West O'Brien Drive, Suite 102 Hagåtña, Guam 96910-5044
Tel: (671) 477-ABCD (2223) • Fax: (671) 477-2FAX (2329)
" I Erensia, Lina'la', Espiritu-ta"

FILED
DISTRICT COURT OF GUAM
JUL 1 4 2004
MARY L. M. MORAN
CLERK OF COURT



Attorneys for Petitioners

## DISTRICT COURT OF GUAM
## TERRITORY OF GUAM

JULIE BABAUTA SANTOS, *et al.*,

Petitioners,

vs.

FELIX A. CAMACHO, etc., *et al.*,

Respondents.

CIVIL CASE NO. 04-00006

**DECLARATION OF MICHAEL F. PHILLIPS IN SUPPORT OF PETITIONER'S MOTION FOR AN ORDER APPOINTING CLASS COUNSEL, OR, IN THE ALTERNATIVE, FOR AN ORDER DESIGNATING INTERIM COUNSEL**

I, Michael F. Phillips, declare as follows:

1. I am the attorney of record for the above-named Petitioner and duly admitted to practice before the District Court of Guam. I make this declaration of my own knowledge, and, if called as a witness, I could and would testify to the facts set forth herein;

2. I am a local attorney from Guam, raised in the village of Santa Rita. I have worked my entire legal career here on Guam. I attended Cathedral Grade School

in Hagåtña, Mount Carmel School in Agat, and in 1980 graduated from George Washington High School in Mangilao. I immediately entered the University of Guam, and received a B.A. in Economics from the University of Hawaii at Manoa in 1984. I then attended the University of California at Los Angeles (UCLA) and received a Degree of Juris Doctor (JD) in 1987. I immediately returned to Guam and after completing a clerkship with the Superior Court of Guam, began the practice of law in 1988. I am licensed to practice in all courts on Guam, and before the Court of Appeals for the Ninth Circuit. I have extensive experience in criminal defense and civil litigation, and continue to represent clients before the Superior Court of Guam, District Court of Guam, Supreme Court of Guam, and Ninth Circuit Court of Appeals.

3. I was the first and most likely still the only attorney on Guam to win a "not guilty by reason of entrapment" defense case before a jury in the Superior Court of Guam, and did so very early in my career. I have defended many cases before juries, including murder and other first degree felony matters. I served as lead counsel in a number of jury trials lasting weeks at a time, and successfully defended and argued many "high profile" criminal and civil cases before the Supreme Court of Guam, District Court of Guam, and Ninth Circuit Court of Appeals. I served as lead counsel in the Chamorro Land Trust case, the first court case televised live from the Superior Court of Guam. Supreme Court justices and judges of the Superior Court continue to request I handle many of the more serious and sensitive court appointed criminal cases.

4. I have served as lead counsel in a number of extremely complex cases involving many thousands of discovery documents. I was lead counsel for EIE International in EIE Guam Corporation, et al. v. The Long Term Credit Bank of Japan, et

2

al., District Court of Guam Civil Case No. 00-00009, a complex international civil case with claims totaling in the hundreds of millions of dollars which commenced in the Superior Court and ended in the District Court of Guam. I was also lead counsel for the defense, representing one of two defendants in a recent discovery-intense case involving multi-million dollar claims, <u>Western Systems, Inc., Guam Cable TV, Southern media, Inc., Lee M. Holmes, Joan S. Holmes, Pacific Color Press, Holmes Management Company, Holmes Cliff Corporation, Holmes Enterprises and Guam Radio Services, Inc. v. Atkins Kroll, Inc., F/K/A Atkins (Guam) Ltd., and Aon Insurance Micronesia (Guam) Inc., F/K/A Atkins Kroll Insurance, Inc</u>. CV1314-01. Additionally, I have served as local counsel on other occasions for off-island firms.

5. For over a decade, I have continuously represented legislative committees or offices, and, likewise, have extensive experience representing other governmental entities. I served as counsel to the Territorial Board of Education and Department of Education. This involvement with the day to day operations of government has contributed to my extensive knowledge and experience dealing with government-related claims, government revenue projections, cash flow, debt, accounts, and the manner in which the executive branch receives and pays out tax dollars.

6. My *pro bono* service to the community is unmatched in the Guam Bar. In addition to contributing an enormous amount of my time to direct legal representation of those who could not otherwise afford legal services, I have donated legal services in every possible manner, including hosting a Chamorro radio talk show wherein I explained the law and answered questions for the Chamorro speaking population. I served as an instructor of law for the University of Guam, and for eleven years as a

3

volunteer coach for high school mock trial, while one year coaching my team to second place in the entire United States.

7. I am extremely active in civic and political organizations on Guam. Democrats have three times elected me as their party chair, and I remain the youngest person ever elected to such a position on Guam. No person on Guam has held this position for more than three terms. I am the President of the George Washington High School Class of 1980 Alumni Association and the first recipient of the University of Guam Alumni Association's "Achiever Award." I have received numerous awards and legislative commendations, including repeated recognition for my pro bono work and success in a number of landmark cases.

8. My firm, Phillips & Bordallo, was certified as class counsel in <u>Rios, et al. v. Ada</u>, et al., Special Proceedings Case No. SP0206-93. We pursued this class action in the Superior Court of Guam for over a decade and have battled three separate administrations on behalf of the class they represent.

9. I have filed numerous lawsuits over the last sixteen (16) years representing the public interest, various causes, and on behalf of myself, individual petitioners, or on behalf of a class of claimants. These cases include successful claims for arguably hundreds of millions of dollars worth of land for the indigenous Chamorros of Guam, and the Cost Of Living Allowance case (<u>Rios, et al. v. Ada, et al.</u>) estimated to entitle the class to over One Hundred Million Dollars (resulting in summary judgment in favor of class). I have pursued similar cases my entire career and as a result have prosecuted cases against numerous developers to enjoin the desecration of Chamorro

4

burial remains, various freedom of information actions against the Government of Guam, and a large number of constitutional (Organic Act) cases.

10. My civil litigation experience includes the following:

<u>Vicente C. Pangelinan, Senator, Individually and on behalf of the People of Guam v. Carl T.C. Gutierrez, Governor; John F. Tarantino, Attorney General of Guam, Guam Memorial Hospital Authority; Ann A. Muna, James Stadler, M.D., Rosemarie Trapp, Bevan Geslanie, M.D., Annie Make Peace and Edward M. Calvo, in their capacities as members of the Guam Memorial Hospital Authority Board of Trustees and Lillian P. Posadas, in her capacity as Acting Hospital Administrator</u>, Special Proceedings Case No. SP86-00 (Case brought on behalf of Senator and People of Guam to authorize the hiring of nurses at Guam Memorial Hospital);

<u>Angel Santos and The Chamorro Nation v. Joseph F. Ada, Governor of Guam</u>, SP83-92 (Claim by Chamorro people of Guam resulting in landmark decision mandating grant of tens of thousands of acres formerly in possession of the federal government and Government of Guam);

<u>Celestine C. Babauta, individually and on the behalf of all persons similarly situated; Estate Of Lorenzo C. Rosario by Lorenzo C. Rosario, Jr. and Judy M. Rosario; and Estates Of Bernabe And Trinidad Paulino by Ana Paulino Mafnas v. Government Of Guam</u>, SP0339-96 (Action to force Government of Guam to pay for lands taken for easements);

<u>Thomas C. Ada, Senator v. Guam Telephone Authority, Paul D. Untalan, Leslie D. Moreno, Pedro R. Martinez, Edward L.G. Aguon, Nora P. Hitosis, Rena B. Wang, and Roman L. Cepeda, personally and in their capacities as members of the Guam Telephone Authority Board of Directors, and Vicente M. Camacho, personally and in his capacity as the Guam Telephone Authority General Manager</u>, SP265-96 (Prosecution of taxpayer's action to enjoin Guam Telephone Company from expending local tax dollars in the CNMI and for the return of tax dollars improperly spent);

<u>Vincente C. Pangelinan, Senator, and Joseph C. Wesley, Mayor, on behalf of themselves and all those similarly situated v. Carl T.C. Gutierrez, Govenor, Y'Asela A. Pereira, Treasurer, the Government of Guam, and Does 1 through 10</u>, SP73-98 (Case filed on behalf of Senator, Mayor, and those similarly situated to block construction of incinerator);

<u>Pacita Aguon v. Carl T.C. Gutierrez, Governor of Guam, Michael J. Reidy, Acting Director of Administration; Y'Asela A. Pereira, Treasurer of Guam; John H. Rios, Director of the Governement of Guam Retirement Fund; Gerald S.A. Perez,</u>

5

<u>Odilla M. Bautista, Jennifer Muna-Aguon, Mark J. Heath and Paul M. Untalan, in their capacities as members of the Trustees of the Government of Guam Retirement Fund, and Does 1 through 50, inclusive</u>, SP207-97 (Class action prosecuted attempting to secure statutory supplement for retirees);

<u>Vicente C. Pangelinan and Joseph C. Wesley v. Carl T.C. Gutierrez, et al, Guam Resources Recovery Partners</u>, SP 0212-00 (Taxpayers' case brought against government and large developer to enjoin the expenditure of millions in tax dollars on an incinerator contract);

<u>Ignacio Tainatongo, et al. v. Territorial Board of Education, et al.</u>, SP114-95, CV1383-95, CV1856-95, SP24-96 (Successfully defended constitutionality of an elected school board resulting in landmark decision authorizing residents of Guam to elect representatives to school board);

<u>Glora B. Nelson, et al, v. Gus Diaz, Attorney General of Guam, et al.</u>, SP 254-98 (Landmark decision wherein Phillips successfully argued legislation violated Organic Act of Guam resulting in court ruling that children of Guam have a right to public education); and

<u>Ignacio J. Pangelinan, a.k.a. "Ike Pangelinan," on behalf of himself and all Government of Guam Employees v. Carl T.C. Gutierrez, I Maga'lahi; John F. Tarantino, Attorney General of Guam; and Rosie R. Tainatongo, Direktora, Depattamenton Edukasion</u>, SP98-00 (Prosecution of case attempting to enjoin Executive Order preventing government employees from speaking to Legislature).

11. I have spent virtually all my career defending clients prosecuted by the government and representing petitioners against the government. I take cases most attorneys will not accept without payment, and at times I am the only attorney willing and able to represent the "underdog" or litigants involved in controversial cases. I have represented plaintiffs against every sitting Governor of Guam since my admission to the practice of law approximately sixteen (16) years ago. As a result of my success as an attorney, Mayors and Senators of both political parties have retained my services for both consultation and litigation. Large, international, multi-billion dollar corporations have retained me to represent them in court and in negotiations with the Government of Guam (e.g. AT&T, Yamaha Motors of Japan, Aon Insurance Company). Both

6

Republican and Democratic Senators (and their legislative committees) have utilized my services for over a decade in every capacity ranging from the initiation of lawsuits to the conducting of oversight and investigative hearings. I have represented former Governors and Lt. Governors, and, just recently, filed an action against the Governor of Guam on behalf of the Republican Lt. Governor of Guam and the Office of the Lt. Governor of Guam. The Lt. Governor and his Office subsequently retained me to defend them against the Governor in an expedited case completed earlier this year before the Supreme Court of Guam.

12. Contrary to claims in the media by those wishing to intervene, I do not have an ongoing legal relationship with either the Lt. Governor (who is not a party to this case) or any of the named defendants in this case. Furthermore, I am no longer seeking to represent the Lt. Governor of Guam or his office, and limited my representation of the Lt. Governor to the recent trial and Supreme Court case which have since terminated.

13. The law offices of Phillips & Bordallo have researched and followed the EITC developments at the Department of Revenue and Taxation, Supreme Court of Guam, and the Guam Legislature from early 1998 to the present. Initially, the law firm intended to file this action in 1998 and then learned the administration at the time intended to (and did) pay EITC refunds that year for tax year 1997.

14. Although I was not officially involved in the Supreme Court case of <u>In re Request of I mina Bente Singko Na Liheslaturan Guahan Relative to the Application o the Earned Income Tax Credit Program to Guam Taxpayers, 2001 Guam 3</u> (2001), I had the benefit of presentations by both sides of the argument, attended the hearing,

7

reviewed all submissions and briefs, listened to arguments, and reviewed the Supreme Court decision.

15. Before completing the recent settlement of this case, I obtained information regarding the current Government of Guam deficit, debt, cash shortfall, economic and cash flow projections, and other information relating to the Government's ability to pay past refundable earned income tax refunds and commence full payment of all future refunds (e.g. GPA expected bond payments and projected individual taxpayer refunds).

16. At the time of settlement negotiations, the cash deficit of the Government of Guam was estimated to be in excess of Two Hundred Million Dollars ($200,000,000). Public Law 27-19 authorized the Governor to issue bonds in excess of 200 million dollars necessary to pay a variety of government debts, including unpaid income tax refunds dating back to tax year 2000, unpaid corporate tax refunds, utility payments, payroll obligations, and a variety of past due payments to government vendors. However, none of the proposed bonds were earmarked to pay refundable earned income tax credits. With or without the Bond, Government revenue has decreased an average of over One Hundred Million Dollars ($100,000,000) per year since approximately the year 2000. In 2003 alone, the Government lost approximately 500 jobs as did the private sector.

17. In 2003, the administration had to reduce government spending by an estimated Eighty Four Million Dollars ($84,000,000). In order to avoid "payless paydays" and the financial collapse of the Government, the Legislature and Governor increased the Gross Receipts Tax ("GRT") by 50%. The administration implemented a

8

reduced 32-hour work week for most line agency employees of the Government of Guam. Taxpayers continue to wait for individual tax refunds not paid in years because of the unavailability of government revenue. As of January 2004, the Government was still attempting to make payments on individual tax refunds for tax years 2000 and 2001. Making matters worse, the Legislature and Governor terminated the additional stream of government revenue earlier this year resulting from the tax increase by repealing the 50% GRT increase.

18. Except for one payment months before a gubernatorial election, the Government has not paid EITC refunds in nearly a decade. In fact, while misleading taxpayers in 1998 by including a section on tax forms for EITC application, the Government still failed to pay out the refunds. The Government had consistently opposed paying the EITC since the middle 1990's. The Government's responses, whether in public, the Supreme Court of Guam, or even in the District Court, included defenses of the lack of federal or local appropriations (unfunded mandate), the financial inability of the Government to pay the EITC refunds, a lack of Congressional intent to have the EITC applicable to Guam, the EITC is inorganic as it undermines the Government's ability to control expenditures as provided in section 1423j of the Organic Act, statute of limitations issues, challenges to the Supreme Court of Guam's jurisdiction to make findings or issue an advisory opinion, the supremacy of local tax commissioner Revenue Rulings, and previous allegations that a remedy could not be secured from the District Court of Guam because it is not an Article III court. After the initial pleadings in this action and a Scheduling Conference, it certainly appeared that the Government of Guam intended to vigorously challenge the success of this class action.

9

19. As the parties proceeded with settlement negotiations, I had discussions with accountants, representatives of the administration, including administrators from the Department of Revenue and Taxation, and others regarding the estimated potential claims for unpaid refundable earned income tax credits, and the government's projected cash flow available to pay such claims.

20. During the Settlement Conference on June 17, 2004, I engaged in a thorough discussion with this Court and the Government of Guam, including representatives of the Department of Revenue and Taxation, regarding the Government of Guam's ability to provide the installment payments required by the Settlement Agreement.

21. Even if settlement had not proceeded in this class action, I was and continue to be prepared to try this matter. I successfully negotiated an expedited trial schedule with the Government of Guam. During the Scheduling Conference, I informed this Court that I was prepared to file a Motion for Summary Judgment. However, soon after the expedited scheduling order was issued by this Court, a change in policy by the administration occurred, and meaningful settlement negotiations commenced resulting in the Settlement Agreement preliminarily approved by this Court.

22. After the initial publication of the original notice in the Pacific Daily News and the Marianas Variety, our staff was contacted by the Pacific Daily News regarding further publications. As the Government of Guam was responsible for the publication, my staff instructed the Pacific Daily News to call the Attorney General's Office and the Department of Revenue and Taxation for authorization to publish the notice on two additional days for the following two weeks. Our office recently received a call from a

representative of the Department of Revenue and Taxation who stated that although payment was made to the Pacific Daily News, a lack of or miscommunication between Pacific Daily News and the government's representatives resulted in no further publication of the notice in the Pacific Daily News. The Marianas Variety published the notice on June 25th, July 9th and July 14th.

Respectfully submitted this 14th day of July, 2004.

_____
MICHAEL F. PHILLIPS