1
Van de veld  Shimizu  Canto  &  Fisher
2
Attorneys At Law
Suite 101, Dela Corte Bldg.
3
167 East Marine Corps Drive
Hagåtña, Guam  96910
4
Office: (671) 472-1131
Facsimile: (671) 472-2886
5
**Attorneys for Petitioner/Intervenor :**
   **CHRISTINA MARIE SANTOS NAPUTI**
6

7

8
IN THE DISTRICT COURT OF GUAM
9
TERRITORY OF GUAM
10

11
JULIE BABAUTA SANTOS,                    )   Docket No. Civ.04-00006
Individually and on behalf of all those  )
12
similarly situated,                      )
                                         )
13
          Petitioner,                    )   **REPLY TO PETITIONER'S**
                                         )   **AND RESPONDENTS'**
14                                       )   **OPPOSITIONS TO**
            vs.                          )   **APPLICANT FOR**
15                                       )   **INTERVENTION NAPUTI'S**
FELIX CAMACHO, Governor of Guam,         )   **MOTION TO INTERVENE**
16
ART ILAGAN, Director of Department       )   **with MEMORANDUM OF**
17
of Revenue and Taxation, LOURDES M.      )   **POINTS AND AUTHORITIES.**
PEREZ, Director of Department of         )
18
Administration, and GOVERNMENT           )
19
OF GUAM,                                 )   ***Class Action***
                                         )
20
          Respondents,                   )
                                         )
21
CHRISTINA M. S. NAPUTI,                  )
22                                       )
          Petitioner/Intervenor.         )
23
                                         )
24

25
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
J.B. Santos, et al.  v.  Governor F.P. Camacho, et al., CHRISTINA M. S. NAPUTI, Petitioner/Intervenor.
REPLY TO OPPOSITIONS TO APPLICANT FOR INTERVENTION NAPUTI'S MOTION TO INTERVENE
with MEMORANDUM OF POINTS AND AUTHORITIES. Civil Case No. CIV04-00006
**Page  1**

ORIGINAL

### * * * REPLY TO OPPOSITION TO MOTION TO INTERVENE * * *

COMES NOW Petitioner/Intervenor CHRISTINA M.S. NAPUTI (hereinafter "Intervenor Naputi") through her counsel VAN DE VELD SHIMIZU CANTO & FISHER, by Curtis C. Van de veld, Esq., to reply to Petitioner Julie Babauta Santos' (hereinafter "Petitioner Santos") and Respondent Government of Guam's oppositions to Intervenor Naputi's motion to intervene, which Intervenor Naputi had filed on June 29, 2004. Without seeking leave of the court, counsel for Petitioner Santos filed a 34-page document without any Table of Authorities on July 23, 2004, in violation of District Court of Guam Local Rule LR 7.1(g). Petitioner Santos' counsel filed an amended opposition on July 26, 2004. On July 23, 2004, Respondent Government of Guam also filed a written opposition. As Petitioner Santos thoroughly exhausted all of Respondent's arguments in opposition, any arguments in this reply addressed to Petitioner Santos should also be read to reply to Respondent. Intervenor Naputi hereby replies to said oppositions before this court pursuant to <u>FRCP Rules 7, 8 and 11</u>, and <u>District Court of Guam Local Court Rules, LR 7.1, and LR 23.1</u>. This reply is supported by the following memorandum of points and authorities, the documents and pleadings on file, and such other further evidence as the court may permit these parties to submit at the hearing of this motion.

### * * * MEMORANDUM OF POINTS AND AUTHORITIES * * *

#### Introduction

Petitioner Santos accuses Intervenor Naputi of premising her argument for intervention solely on a desire for greater remuneration than that the proposed settlement agreement would allow. Adopting a righteously indignant tone, Petitioner Santos pejoratively characterizes Intervenor's motion to intervene as inaction followed by a rushing-in without any shame after Petitioner's counsel had so labored to concoct the proposed settlement agreement. Petitioner Santos would have this Court ignore the fact her attorney (without having conducted any discovery to ascertain the actual class) has acted in concert with the opposing party who is also his client, the Lieutenant Governor of Guam, to quickly craft a proposed settlement agreement which compels proper class members to wait 9 years to receive half of what they are legally entitled, while an estimated $30 million the Government of Guam would seek to make readily available to them is instead paid to individuals who have no legal right to it. Petitioner Santos

J.B. Santos, et al. v. Governor F.P. Camacho, et al., CHRISTINA M. S. NAPUTI, Petitioner/Intervenor.
REPLY TO OPPOSITIONS TO APPLICANT FOR INTERVENTION NAPUTI'S MOTION TO INTERVENE
with MEMORANDUM OF POINTS AND AUTHORITIES. Civil Case No. CIV04-00006
**Page 2**

Case 1:04-cv-00006     Document 64     Filed 07/30/2004     Page 2 of 22

claims Intervenor Naputi does not raise any issues she herself does not already preserve for the benefit of the class. Petitioner Santos neglects to recognize that she acted to disable legitimate class members as early as her initial description in her "Class Action Petition" of the "class" she purportedly represents, and only further attempts to damage the genuine class entitlees by virtue of the proposed settlement agreement. Intervenor Naputi has advanced this argument in her motion to intervene as one of several original issues regarding the jeopardy in which Petitioner Santos places the class, necessitating intervention by Intervenor Naputi. Whereas Petitioner Santos seeks to mislead this Court into thinking that Intervenor Naputi's only contention is with the amount to be paid to class members via the proposed settlement agreement, the truth as revealed by this and previous filings by Intervenor Naputi is that Intervenor Naputi seeks intervention due to more fundamental impairments of her interest by Petitioner Santos, and due to an integral inadequacy of class representation manifested by Petitioner Santos.

<div align="center">Argument</div>

**1.**      **<u>Intervenor Naputi Timely Filed Her Motion To Intervene.</u>**

Petitioner Santos argues the opportunity for a lawsuit to recover the Earned Income Credit has begged attention for so many years that she herself did not file her own petition for recovery until only 5 months ago. Intervenor Naputi moved to intervene at a stage in the proceedings inhering a pre-judgment, pretrial, pre-discovery posture and, contrary to posing any prejudice to the class, seeks to protect the class integrity.

Petitioner Santos cites five cases to support her proposition that Intervenor Naputi's intervention is untimely because it causes prejudice to the parties by delaying relief from long-standing inequities. The facts upon which these rulings are premised; however, are vastly divergent from the present analysis, and they demonstrate how Intervenor Naputi's motion is indeed timely in this context, and how the parties are by no means prejudiced therefrom. In <u>Calif. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.</u>, the 9th Circuit found putative intervenors untimely where they waited 6 years after litigation began to file, and where they were informed of settlement negotiations that had been ongoing for 4 years. 309 F.3d 1113, 1119-20 (9th Cir. 2002). The court held that "[a] party seeking to intervene must act as soon as he knows *or **has reason to know*** that his interests might be adversely

J.B. Santos, et al. v. Governor F.P. Camacho, et al., CHRISTINA M. S. NAPUTI, Petitioner/Intervenor.
REPLY TO OPPOSITIONS TO APPLICANT FOR INTERVENTION NAPUTI'S MOTION TO INTERVENE
with MEMORANDUM OF POINTS AND AUTHORITIES. Civil Case No. CIV04-00006
**Page** 3

Case 1:04-cv-00006    Document 64    Filed 07/30/2004    Page 3 of 22

affected by the **outcome of the litigation**." Id. at 11120 (citation omitted) (latter emphasis added). As it is knowledge of the *outcome* of litigation which points to timely intervention, it is of no relevance that Intervenor did not herself initiate the litigation, as Petitioner Santos would have this Court believe, despite that Petitioner Santos herself filed her class action petition only 5 months ago. In the present case, Intervenor Naputi filed for intervention only 4 months after litigation commenced and a mere 2 weeks after the announcement of a proposed settlement agreement, for which Attorney Phillips conducted negotiations over just a few days and in such secrecy that the Governor of Guam was not even informed or invited to participate in any negotiations. The remaining three cases cited by Petitioner Santos contain facts that further illustrate a complete lack of prejudice to the existing parties by a grant of Intervenor Naputi's intervention. In Presidential Life Ins. Co. v. Milken, 946 F. Supp. 267, 276-77 (S.D. N.Y. 1996), the court found a delay by intervenor of 3 years after final judgment on class settlement agreement, after parties had expended millions of dollars, constituted prejudicial untimeliness. In New York News v. Kheel, 972 F.2d 482, 487 (2d Cir.1992), the court denied *permissive* intervention (which does require impairment of interest) as prejudicial where intervenor did not seek to join the action as a party, but merely to request Rule 11 sanctions. In Farmland Dairies v. Commissioner of New York State Dep't of Agric. & Mkts., 847 F.2d 1038, 1044 (2d Cir. 1988), the court denied as prejudicially untimely a *post-judgment* intervention where intervenor had fully participated in pre-judgment proceedings beforehand. As is evident, Petitioner Santos' use of these cases only confirms that the factual circumstances of Intervenor Naputi's cause denote a timely intervention.

Petitioner Santos repeatedly trumpets her argument that the intervention by Intervenor Naputi would only serve to delay a "steady stream of payments" to class claimants and thereby prejudice parties by possibly preventing the proposed settlement agreement from becoming final. Petitioner Santos begs the question by presuming the proposed settlement agreement is beneficial to the class as a whole, although she purports in her Class Action Complaint to represent those who would deprive legitimate claimants of recovery and her counsel attempts to further impair Petitioner's *own stated* class members by expanding the scope of illegitimate claimants in the proposed settlement agreement. In Petitioner Santos' Class Action Complaint, she defines the claims of those she seeks to represent to include claimants of the

J.B. Santos, et al. v. Governor F.P. Camacho, et al., CHRISTINA M. S. NAPUTI, Petitioner/Intervenor.
REPLY TO OPPOSITIONS TO APPLICANT FOR INTERVENTION NAPUTI'S MOTION TO INTERVENE
with MEMORANDUM OF POINTS AND AUTHORITIES. Civil Case No. CIV04-00006
**Page** 4

Case 1:04-cv-00006    Document 64    Filed 07/30/2004    Page 4 of 22

years 1998 and 1999, whereas the proposed settlement agreement adds the year 1996 to effectively reduce the amount of recovery to the very individuals she claims she represents. This misportrayal of the proper definition of class members made by Petitioner Santos in her initial complaint, which works to deleteriously affect the actual class, is the fundamental basis for Intervenor Naputi's intervention, notwithstanding that the "steady stream of payments" promised by the proposed settlement agreement is but a trickle which would take 9 years to pool.

Petitioner Santos continues to argue prejudice to parties by an untimely intervention, by her misplaced reliance upon cases which are factually inapplicable to the present case. The Fifth Circuit court, in Corley v. Jackson Police Dep't, 755 F.2d 1207, 1209-10, (5th Cir. 1985), deemed as prejudicially untimely an intervention attempted over 5 years after litigation was first initiated, 4 years after a consent decree was entered into, and an additional 50 months after a new legal challenge rekindled the issue; especially given that implementation procedures upon the consent decree had already been occurring. In Scardeletti v. Debarr, 265 F.3d 195, 203-204 (4th Cir. 2001), the court denied intervention to an applicant who had waited over 2 years from the inception of litigation and 8 months after a settlement had been reached (which had been 19 months in the making), where the applicant had been participating in related litigation but had previously openly declined to participate in the case before the court. The court in Scardeletti, however, did point out that where intervention is sought as of right, the timeliness requirement should not be as strictly enforced as it would be for a permissive intervention. 265 F.3d at 203. The Ninth Circuit, in County of Orange v. Air California, 799 F.2d 535, 538 (9th Cir. 1986), ruled an intervenor was untimely when he moved to intervene 5 years after litigation began, and where a settlement which had taken 5 years to reach was "preceded by extensive and well-publicized negotiations." Such is not the situation presently before the court as pertains to Intervenor Naputi. Petitioner Santos also relies upon United States v. Pitney Bowes, Inc., 25 F.3d 66, 72 (2d Cir. 1994) for support, but there the court found untimeliness in an intervenor who had knowledge of his interest for 15 months before moving, and only after parties had devoted substantial time and money over 8 months to reach a settlement and had begun performing under the settlement agreement. Finally, Petitioner Santos looks to Sokaogon Chippewa Community v. Babbitt, 214 F.3d 941

J.B. Santos, et al. v. Governor F.P. Camacho, et al., CHRISTINA M. S. NAPUTI, Petitioner/Intervenor.
REPLY TO OPPOSITIONS TO APPLICANT FOR INTERVENTION NAPUTI'S MOTION TO INTERVENE
with MEMORANDUM OF POINTS AND AUTHORITIES. Civil Case No. CIV04-00006
**Page** 5

Case 1:04-cv-00006    Document 64    Filed 07/30/2004    Page 5 of 22

($7^{th}$ Cir. 2000) for support but this case is equally irrelevant to the present analysis before this Court. In Sokaogon, the court denied intervention to a would-be intervenor who filed 5 years after the initial complaint, and after 6 months and substantial money and effort were spent by parties to achieve settlement. Id. at 949-50. Moreover, the court concluded the denied intervenor was asserting only an indirect and speculative interest in the outcome of the lawsuit, and sought to block a settlement agreement between parties merely to prevent the introduction of a new business competitor into the market. Id. at 946-47.

Petitioner Santos complains that Intervenor Naputi does not give any *reason* for delay in filing her motion to intervene. The straightforward answer is there was no delay on the part of Intervenor Naputi to address by explanation. Nor was there any *length* of a delay which would beg description because Intervenor Naputi did not delay in her moving to intervene, rather she acted diligently according to law. "In a class action, the critical issue with respect to timeliness is whether the proposed intervenor moved to intervene as soon as it became clear that the interests of the unnamed class members would no longer be protected by the named class representatives." Hill v. Western Elec. Co., 672 F.2d 381, 386 ($4^{th}$ Cir. 1982) (internal quotation marks and alterations omitted). Not only did Intervenor Naputi file her motion to intervene a mere 4 months after the initial complaint, she filed it 2 weeks after, and on the heels of, the announcement of a swiftly and secretly arranged settlement agreement. This timeframe does not even generally approach the lumbering spans of time spoken to by the rulings which Petitioner Santos cites in attempt to support her argument.

### 2. Intervenor Naputi Bears A Significantly Protectable Interest Relating To The Subject Of This Class Action.

Petitioner Santos would prefer to believe the only interest claimed by Intervenor Naputi is for a higher amount of recovery under the proposed settlement agreement, an issue she argues is more appropriate for the forum of the fairness hearing. Petitioner Santos again seeks to blind this Court to the more intrinsic injury inflicted on the class by her defining assertion as to whom she claims to represent: legally disqualified claimants of years 1998 and 1999. The certainty of significant injury to those with legal entitlements to the Earned Income Tax Credit (EIC) by Petitioner Santos' improper class parameters clearly represents a subject-related, protectable interest of Intervenor Naputi and those similarly situated, apart from the

J.B. Santos, et al. v. Governor F.P. Camacho, et al., CHRISTINA M. S. NAPUTI, Petitioner/Intervenor.
REPLY TO OPPOSITIONS TO APPLICANT FOR INTERVENTION NAPUTI'S MOTION TO INTERVENE
with MEMORANDUM OF POINTS AND AUTHORITIES. Civil Case No. CIV04-00006
**Page 6**

Case 1:04-cv-00006    Document 64    Filed 07/30/2004    Page 6 of 22

possibility of disposition of compensation by settlement agreement or otherwise. Objecting at the Fairness Hearing on the proposed settlement agreement itself does not afford opportunity to alter the fact of Petitioner Santos and her counsel's inadequate representation of the class they allege to exemplify before any consideration of settlement, by virtue of antagonistic issues as well as Petitioner Santos counsel's class-imperiling performance and suspicious propinquity to the opposing party.

Cases whose facts completely belie those surrounding Intervenor Naputi continue to be trundled out by Petitioner Santos to prop up her argument that is based on a simultaneous misconstrual of Intervenor Naputi's significantly protectable interest in the action. The district court in Thompson v. Metropolitan Life Ins. Co. ruled that an interest justifying intervention is insufficient if merely to protect a right to appeal a final judgment on a settlement agreement from which intervenors chose not to exclude themselves, as it is unnecessary and unwarranted in order to preserve the right to appeal and renders intervention superfluous. 216 F.R.D. 55, 69 (S.D. N.Y. 2003). Petitioner Santos next offers Ring v. Metropolitan St. Louis Sewer District, 41 S.W.3d 487 (E.D. Mo. 2001), which does stand for the proposition that "The judgment of the trial court denying a motion to intervene will be reversed if it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. 41 S.W.3d at 491 (citation omitted). However, that court denied intervention where it found only a difference of opinion as to the amount that should be received from the settlement agreement and where the named class members represented all possible issues of all types of interests. Id. As stated, the interest of Intervenor Naputi is far more crucial than a mere opinion about the fairness of the settlement amount.

Two other cases emitting from Petitioner Santos to support her allegation regarding duplicative arguments put forth by current parties also fall flat as opposed to on all fours with Intervenor Naputi's asserted interests. The court's decision in Cajun Electric Power Cooperative v. Gulf States Utilities was narrowly applied to the fact in that case that a ratepayer regulatory body as putative intervenor could not posit a salient interest not already forwarded by the existing parties, the electric cooperative and the public utility, in a suit over fraud in a contract exclusively between those parties. 940 F.2d 117 (5th Cir. 1991). In Public Service Co. of New Hampshire v. Patch, the court decided that a ratepayer advocate

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
J.B. Santos, et al. v. Governor F.P. Camacho, et al., CHRISTINA M. S. NAPUTI, Petitioner/Intervenor. REPLY TO OPPOSITIONS TO APPLICANT FOR INTERVENTION NAPUTI'S MOTION TO INTERVENE with MEMORANDUM OF POINTS AND AUTHORITIES. Civil Case No. CIV04-00006
**Page 7**

Case 1:04-cv-00006    Document 64    Filed 07/30/2004    Page 7 of 22

intervenor's interest in lower electric rates expected by rate restructuring was an overly contingent and overly general economic interest that did not directly threaten a benefit presently enjoyed by the applicant, where the suit was between electric utilities and public utility commissioners over a plan to inject retail competition into the electric utility market. 136 F.3d 197 (1st Cir. 1998). Intervenor Naputi has emphatically and consistently asserted that the adversely antagonistic positions between Petitioner Santos and Intervenor Naputi as to the definition of the class they propound to epitomize contravenes the idea that Petitioner Santos has embodied and championed the entirety of interests of Intervenor Naputi and those similarly situated.

Petitioner Santos purports to claim that intervention would only increase transaction costs of the litigation, while it is painfully clear present parties have thus far failed to expend any significant costs or effort. The only real cost that has been suffered is by the class, whose interests have been threatened by this shortcoming of the parties. Petitioner Santos actually gets the holding wrong in one of the cases she presents on this point, Wilderness Society v. Morton, 463 F.2d 1261 (D.C. Cir. 1972), where she incorrectly states that court denied intervention. In fact, the court granted intervention to the applicant because sufficiently antagonistic issues required it, and in so holding, the court was never even asked to address litigation transaction costs as an issue. 463 F.2d at 1262-63. The other case offered for this point is Smuck v. Hobson, 408 F.2d 175, 179 (D.C. Cir. 1969) for the general proposition regarding the balance between resolving related issues in a single lawsuit and preventing the lawsuit from becoming fruitlessly complex or unending. In striking this balance, the Smuck court also stated: "The goal of 'disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process' may in certain circumstances be met by allowing parents whose only 'interest' is the education of their children to intervene." Id. The court goes on to wonder if the concept of 'sufficient interest' is too nebulous for consideration, but then states: "This does not imply that the need for an 'interest' in the controversy should or can be read out of the rule. But the requirement should be viewed as a prerequisite rather than relied upon as a determinative criterion for intervention. If barriers are needed to limit extension of the right to intervene, the criteria of practical harm to the applicant and the adequacy of representation by others are better suited to

J.B. Santos, et al. v. Governor F.P. Camacho, et al., CHRISTINA M. S. NAPUTI, Petitioner/Intervenor. REPLY TO OPPOSITIONS TO APPLICANT FOR INTERVENTION NAPUTI'S MOTION TO INTERVENE with MEMORANDUM OF POINTS AND AUTHORITIES. Civil Case No. CIV04-00006
Page 8

Case 1:04-cv-00006     Document 64     Filed 07/30/2004     Page 8 of 22

the task." Id. at 179-80. Incidentally, this case also does not deal with the issue of transaction costs which might frustrate efficiency.

Petitioner Santos futilely argues that Intervenor Naputi's interest in avoiding injury, due to Santos' class inclusion of claims invalidated by the statute of limitations, is not of consequence. By her own logic, not only does Petitioner Santos seek to represent individuals who are disqualified due to time-barred claims, but she would just as well represent anyone else who has no right to receive the Earned Income Credit whatsoever, arguably the entire taxpaying population of Guam. As previously submitted, the resultant injury to legally legitimate EIC claimants is direct, obvious and imminent, by whatever disposition of claims of Petitioner Santos' faulty class – whether by diluted settlement payments or by judgment on the merits. This issue bears a primacy of priority *a fortiori* to the proposed settlement agreement, and to the question of whether the Government of Guam would settle for a higher amount per claimant if the number of claimants were reduced.

Petitioner Santos erroneously claims Intervenor Naputi must assume that the statute of limitations issue is not legally questionable. Of course, besides any hints and conjecture offered by Petitioner Santos orally at a scheduling conference, she herself has not and cannot provide any substantive law to place the applicable statute of limitations into doubt. Intervenor Naputi makes no assumptions but firmly and knowingly relies upon the law. This is because the law on this topic is clear and absolute: 26 USCA §6511 and its federal case progeny flatly prohibit any claims not made within 3 years of filing a return. The allusions by Petitioner Santos to a history of frustration by the Respondent of the ability of the class to claim the EIC is completely without merit. Not only does Petitioner Santos exhibit her ignorance of the law by failing to recognize the difference between a "return" and a "claim" (see Treas. Reg. § 301.6402-3, 26 CFR §301.6402-3), but more importantly she wrongly assumes that some "equitable recoupment" would somehow sustain time-barred claimants, whereas the law plainly holds it does not. See United States v. Dalm, 494 U.S. 596, 110 S.Ct. 1361 (1990); see also Israel v. United States, 356 F.3d 221 (2d Cir. 2004) (Internal Revenue Code "look-back" provisions constrain EIC claims).

In direct contradiction to the allegation by Petitioner Santos that Intervenor Naputi misread the proposed settlement agreement, the agreement states in "**I. DEFINITIONS**" that

J.B. Santos, et al. v. Governor F.P. Camacho, et al., CHRISTINA M. S. NAPUTI, Petitioner/Intervenor.
REPLY TO OPPOSITIONS TO APPLICANT FOR INTERVENTION NAPUTI'S MOTION TO INTERVENE
with MEMORANDUM OF POINTS AND AUTHORITIES. Civil Case No. CIV04-00006
**Page** 9

Case 1:04-cv-00006   Document 64   Filed 07/30/2004   Page 9 of 22

the "EIC Class" is restricted to those who "*filed* Guam income tax returns" (Settlement Agreement p. 7, para. I) (emphasis added). Petitioner Santos indeed specifically seeks to exclude claimants who are able to file an amended return or a late return. While Petitioner Santos attempts to pervert Intervenor Naputi's concern about this exclusion to portray it as some kind of hypocrisy, the truth is that Intervenor Naputi's assertion of the true class definition has always been unequivocal: Only legally eligible claimants should comprise the proper class. The law regarding the statute of limitations on this subject holds sway, and if amended or late returns fall within the Internal Revenue Code look-back provisions, then they are legally qualified to make such claims for the EIC. Intervenor Naputi has never contradicted herself as to who should constitute the class.

### 3. Intervenor Naputi's Ability To Protect Her Interests Is Necessarily Impaired And Impeded By The Current Disposition Of The Class Action.

Petitioner Santos attempts to dismiss the impairment of Intervenor Naputi's ability to protect her interest by virtue of the current class action disposition by stating she may simply "opt out" of the settlement agreement to no detriment. To preface, Petitioner Santos does not dispute the fact that those who opt out of the settlement agreement and litigate individually would be left with an unfunded judgment incapable of execution against the government. Whereas Petitioner Santos is unimpressed by this problem, it represents an absolute impairment of the ability of opters-out to protect their interest, in light of the fact that approximately $30 million dollars would have already been spent if not earmarked to pay people other than those legally entitled to that money -- money which is appropriated for the specific purpose of paying (presumably) legitimately entitled EIC claimants. The inherent defect in Petitioner Santos' class definition effectively causes a direct and tangible impairment of legitimate claimants' ability to protect their interests. Standing in line behind other judgment creditors to the government is not a speculative or overbroad impairment where the Government of Guam has identified and specifically carved out a $60 million fund for the sole purpose of refunding EIC claimants, yet one-half of this amount would be robbed from legitimate EIC claimants (because adding claimants from 1996, 1998 and 1999 to the class doubles the class size). Opting out of the settlement agreement would preclude the ability to

J.B. Santos, et al. v. Governor F.P. Camacho, et al., CHRISTINA M. S. NAPUTI, Petitioner/Intervenor.
REPLY TO OPPOSITIONS TO APPLICANT FOR INTERVENTION NAPUTI'S MOTION TO INTERVENE
with MEMORANDUM OF POINTS AND AUTHORITIES. Civil Case No. CIV04-00006
**Page** 10

Case 1:04-cv-00006   Document 64   Filed 07/30/2004   Page 10 of 22

1  legally challenge it, and opting in to the settlement agreement would condone the
2  disbursement of one-half the identified funds to others who do not legally deserve it. If
3  Petitioner Santos did not try so hard to pay more disqualified recipients (e.g., by expanding his
4  own class in the settlement agreement to benefit stale 1996 claims), then there would exist
   approximately $30 million more in the Government's coffers to pay judgments of opt-out
5  litigants, a waste which concretizes the impairment of Intervenor Naputi's ability to protect
6  her interest, as well as those similarly situated to her. "If an absentee would be substantially
7  affected in a practical sense by the determination made in an action, he should, as a general
8  rule, be entitled to intervene." Southwest Ctr. For Biological Diversity v. Berg, 268 F.3d 810,
   822 (9th Cir. 2001).
9          Once again, Petitioner Santos utilizes inapposite case law which does not support her
10 argument. The District Court, in In re Lorazepam, did find that intervenors there could opt out
11 of a settlement to preserve their rights, but only because the court found no colorable prejudice
12 to the intervenors' ability to protect their interest in the first place, regardless of whether they
   opted in or opted out of the settlement agreement, since the intervenors' basis for intervention
13 was merely to obtain discovery so they could decide whether to stay in or opt out of the
14 settlement agreement and since intervenors did not object to the settlement itself. 205 F.R.D.
15 363, 366-67 (D.C. Cir. 2001). The court also denied intervention due to untimeliness and a
16 determination that a refusal to grant non-party intervenors discovery by class counsel did not
17 constitute inadequate representation. Id. at 367-68. This case presents a very disparate
   situation than that of Intervenor Naputi, where her interest is already prejudiced by Petitioner
18 Santos' disposition of the class action, even before account is taken of the settlement
19 agreement; where she has in fact objected to the settlement agreement in her pleadings; where
20 her basis for intervention is far more than just to seek discovery; and where there is ample
21 evidence of failed performance and suspicion of collusion by Petitioner Santos' counsel to
   attest to inadequate representation of the class. These facts alone demand intervention to
22 protect significant interests of Intervenor Naputi, and for which opting out of a specious
23 settlement agreement could not possibly cure. Petitioner Santos also looks to In re Vitamins
24 Antitrust Class Actions, 215 F.3d 26 (D.C. Cir. 2000); however, the appellate court there
25 denied intervention because appellants essentially had no interest in the specifics of the

J.B. Santos, et al. v. Governor F.P. Camacho, et al., CHRISTINA M. S. NAPUTI, Petitioner/Intervenor.
REPLY TO OPPOSITIONS TO APPLICANT FOR INTERVENTION NAPUTI'S MOTION TO INTERVENE
with MEMORANDUM OF POINTS AND AUTHORITIES. Civil Case No. CIV04-00006
**Page** 11

Case 1:04-cv-00006    Document 64    Filed 07/30/2004    Page 11 of 22

settlement agreement, but only in the collateral effect upon them by one of its clauses. 215 F.3d at 29. Here again, the jeopardized ability of Intervenor Naputi to protect her interests lies in the misrepresentation of herself as a class member by Petitioner Santos, as an antecedent to going in on her behalf to negotiate any settlement. That misrepresentation inheres, of course, in the disfigurement by Petitioner Santos of the class member parameters, whereby Petitioner Santos sabotages the interests of Intervenor Naputi by lumping her in with illegitimate claimants. Opting out of the settlement stands far and apart from the analysis of this more ingrained impairment of interest.

Petitioner Santos also takes issue with Intervenor Naputi's assertion that intervention is additionally necessary to protect claims for refunds arising in tax year 2000. She accuses Intervenor Naputi of adopting a Janus-like mentality by arguing entitlement to claims within a year that she simultaneously argues is time-barred. By her misstatement of Intervenor Naputi's position, Petitioner Santos demonstrates an alarming ignorance of the law regarding statutes of limitation tolled by litigation. Intervenor Naputi even cited the seminal case on point, American Pipe and Construction Co. v. Utah, wherein the U.S. Supreme Court held "that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. 538, 554, 94 S.Ct. 756 (1974). This stands as yet another reason why opting out of the settlement agreement would impair Intervenor Naputi's ability to protect her interest (namely in claims arising from tax year 2000). Petitioner Santos purports to promote the interests of Intervenor Naputi as a class member and thusly, her filing of the class action petition on February 12, 2004 tolled the statute of limitations for tax year 2000, which would have otherwise run as of April 15, 2004. As Petitioner Santos would rather force Intervenor Naputi to opt out of the settlement agreement than intervene in the action, this would cause her plain legal prejudice by depriving her of her legal right to litigate that particular cause of action. As opposed to preserving the ability to protect an interest, opting out of the settlement would only serve to directly exterminate said interest.

**4. Petitioner Santos Inadequately Represents Intervenor Naputi And Those Similarly Situated.**

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
J.B. Santos, et al. v. Governor F.P. Camacho, et al., CHRISTINA M. S. NAPUTI, Petitioner/Intervenor.
REPLY TO OPPOSITIONS TO APPLICANT FOR INTERVENTION NAPUTI'S MOTION TO INTERVENE
with MEMORANDUM OF POINTS AND AUTHORITIES. Civil Case No. CIV04-00006
**Page** 12

Case 1:04-cv-00006    Document 64    Filed 07/30/2004    Page 12 of 22

The basic argument submitted by Petitioner Santos is that she and Intervenor Naputi share the same interest in being refunded some amount of money by the Government of Guam pursuant to the mandate of the EIC; and furthermore, the desire of Intervenor Naputi to receive a higher amount than the settlement agreement dictates is not severable from the identical interest shared by Petitioner Santos. Moreover, Petitioner Santos proclaims that this desire is better left for expression at the fairness hearing. While it is obvious that Petitioner Santos and Intervenor Naputi share the same interest in receiving EIC refunds, what Petitioner Santos continually hopes this Court will overlook is that the interests of each party as to **whom** should receive the EIC refunds are fundamentally antagonistic to each other. Intervenor Naputi and Petitioner Santos strongly disagree as to which claimants should constitute the proper class. The logic of Petitioner Santos' argument follows that if she saw fit to devise a definition of the class of EIC entitlees to include every man and woman on Guam, and then further expanded the "class" to include every child on Guam during the course of settlement negotiations, then any complaint raised by Intervenor Naputi regarding improper class parameters is merely a greedy ploy to increase her share of recovery by reducing the "class" size. Unfortunately for Petitioner Santos, this obtuse, self-serving argument is easily exposed for attempting to obscure the truth regarding the issues in contention.

The U.S. Supreme Court has stated that intervention as of right "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10 (1972). The test for adequacy of representation is assessed by three factors: 1) present party's interest will undoubtedly cause it to make all of intervenor's arguments; 2) present party is capable and willing to make said arguments; and 3) present party does not neglect necessary elements offered to proceeding by intervenor; the most important factor being how intervenor's interest compares with present party's interest. Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003) (citation omitted). By way of comparison, it is abundantly clear that Intervenor Naputi's and Petitioner Santos' interests in entitlement to class are directly contravening. Petitioner Santos' stated interest in class definition affirmatively restricts her from advancing the converse interest of Intervenor Naputi. Besides being incapable of arguing Intervenor Naputi's interest, Petitioner Santos showed she

J.B. Santos, et al. v. Governor F.P. Camacho, et al., CHRISTINA M. S. NAPUTI, Petitioner/Intervenor.
REPLY TO OPPOSITIONS TO APPLICANT FOR INTERVENTION NAPUTI'S MOTION TO INTERVENE
with MEMORANDUM OF POINTS AND AUTHORITIES. Civil Case No. CIV04-00006
**Page** 13

Case 1:04-cv-00006    Document 64    Filed 07/30/2004    Page 13 of 22

is also unwilling to so argue, as her counsel has instead succeeded to further despoil Intervenor Naputi's interest by expanding the "class" to add more illegitimate claimants during settlement negotiations. As for neglecting necessary elements offered by Intervenor Naputi, Petitioner Santos' characterizations in her written opposition to Naputi's motion to intervene stand as testament to a strident denial of Intervenor Naputi's position and interest, as opposed to just a mere neglect of them.

Petitioner Santos cites three cases for her proposition that she shares a common interest with Intervenor Naputi who only evinces a different motive, yet too, these cases miss the mark. The court, in In re NASDAQ Market-Makers Antitrust Litigation, found adequate representation but only where intervenor sought intervention as a vehicle to obtain payment in another unrelated case and to create a whole new lawsuit; and since his subject matter was too remote and he lacked sufficient common questions, denial of intervention would not prejudice him. 187 F.R.D. 465, 490-91 (S.D. N.Y. 1998). The court did note, however, that relevant factors to intervention are the **degree** to which intervenor's interests are adequately represented by present parties, and whether intervenor "will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." Id. at 491. The second case utilized by Petitioner Santos is Washington Elec. Coop., Inc. v. Mass. Municipal Wholesale Elec. Co., 922 F.2d 92 (2d Cir. 1990). Therein, the Circuit Court found an identical identity of interest between present party and intervenor where present party sought payment to its members and intervenor only sought to ensure members were paid a fair amount. Id. at 98. However, as previously expounded upon, the dispute between Intervenor Naputi and Petitioner Santos resides not in the amount of payment but in the more central issue of who should be paid. Petitioner Santos offers a third case, Blake v. Barnes, 554 F.2d 947 (9th Cir. 1977), to scoff at the idea that necessary elements are offered by proposed intervenors; however, in that case the intervenor simply did not choose to explain whether present party may or may not already be advancing intervenor's argument. 554 F.2d at 955.

Petitioner Santos continues to insist her interest sits squarely with that of putative intervenors, misrepresents Intervenor Naputi's position, and then incorrectly derides her for supposedly assuming that a difference of opinion regarding the amount of recovery settled for

J.B. Santos, et al. v. Governor F.P. Camacho, et al., CHRISTINA M. S. NAPUTI, Petitioner/Intervenor.
REPLY TO OPPOSITIONS TO APPLICANT FOR INTERVENTION NAPUTI'S MOTION TO INTERVENE
with MEMORANDUM OF POINTS AND AUTHORITIES. Civil Case No. CIV04-00006
**Page** 14

Case 1:04-cv-00006    Document 64    Filed 07/30/2004    Page 14 of 22

in the agreement would allow her intervention on the grounds of inadequate representation. Nothing could be further from the truth, yet Petitioner Santos persists in skirting around the true nature of Intervenor Naputi's interest. Whereas Intervenor Naputi's interest in class composition is antagonized as early as Petitioner Santos' complaint for class action, the settlement agreement only exacerbates the dissension from that interest. If anything, the settlement agreement serves to divorce Petitioner Santos' own interest from that of the class she herself claims to represent, by eliminating claimants of her own "class" who did not file a tax return. Intervenor Naputi has submitted she additionally stands for those who would file an amended or late return, thus her interests and those of whom she seeeks to represent are yet additional interests further rebuked by Petitioner Santos. Repeating her charge that Intervenor Naputi suffers a type of 'buyer's remorse' and nothing more, Petitioner Santos invokes <u>Linney v. Cellular Alaska Partnership</u> for the proposition that a fractional amount settled for by agreement does not *per se* denote a grossly inadequate settlement. 151 F.3d 1234, 1242 (9th Cir. 1998). More important to the present case than the court's assessment of the fairness of the settlement agreement is the court's finding that inadequate representation did not exist because appellants did not argue that class representatives were unqualified, were antagonistic to the class, or were in collusion with the defendant. <u>Id</u>. at 1241.

Petitioner Santos attempts to avoid blame for the fact that her counsel sought no actual discovery in the case by downplaying the necessity for it. Petitioner Santos again looks to <u>Linney</u> to excuse formal discovery "where the parties have sufficient information to make an informed decision about settlement." 151 F.3d 1234, 1239. However, the Ninth Circuit only made this ruling where they found that class counsel properly relied on the work product of former counsel, analogizing to discovery developed in prior or related proceedings. <u>Id</u>. at 1239-40. Such is not the case for Petitioner Santos' counsel; rather counsel relied on a single federal *projection* of economic growth rate analogized to Guam, as opposed to bothering to analyze any actual tax rolls. As opposed to having sufficient information for an informed decision about settlement, counsel for Petitioner Santos was evidently satisfied to operate on next to no information, which highlights her inadequate representation of Intervenor Naputi and the class as a whole.

1    Petitioner Santos proceeds to try to elude responsibility for her meagerly insufficient
2  notice to potential class members, another demonstration of her inability to adequately
3  represent the class and Intervenor Naputi. Petitioner Santos deigns to blame the judge for
   condoning her having spurned her duty to adequately provide notice to potential class
4  members according to law. It was only after Intervenor Naputi pointed to Petitioner Santos'
5  counsel's failure to protect the class by individual notice did counsel make any statements that
6  he would try to redeem his omission by effectuating mailed notice. It is unclear whether
7  counsel for Petitioner Santos has taken any steps to follow through on rectifying his error.
   Nevertheless, even after failing to individually notice the class members he failed to attempt to
8  ascertain in the first place, counsel for Petitioner Santos failed to follow the orders of the court
9  regarding notice by publication, by failing to ensure the second and third notices were
10  published as ordered (which they were not). Petitioner Santos' reliance on the utterance that
11  notice protections are purely procedural does not disguise her many examples of inadequate
12  representation. Petitioner Santos also attempts to minimize the factual inaccuracies of the
   singular published notice provided by putting a positive spin on her misstatement about what
13  was (not) ordered by the court concerning attorney's fees. Meanwhile, she ignores that the
14  notice inaccurately described the lawsuit as a certified class action, her attorney as designated
15  class counsel, and possessed a glaring absence of any contact information for her counsel that
16  bespoke of his inaccessibility to class members.

17    Finally, as to the uncomfortable closeness between Petitioner Santos's counsel and the
   defendant, she asserts that Intervenor Naputi cannot actually prove any conflict of interest. Yet
18  it remains odd that counsel negotiated a settlement relatively quickly with his former client,
19  the Lieutenant Governor of Guam, having represented him in litigation against the Governor
20  of Guam, and where counsel negotiated the settlement with his client functioning as the Acting
   Governor while the Lieutenant Governor's nemesis in said litigation, the Governor of Guam,
21  was briefly away from the jurisdiction. Intervenor Naputi relies upon case law previously
22  argued in her motion to intervene for the principle that adequate representation requires an
23  unlikelihood that the suit is collusive and that class counsel act at arm's length from the
24  defendant, and that courts look to counsel's demonstrated performance in the action itself.
25  Petitioner Naputi seeks again to defray the accountability of her counsel by attempting to draw

J.B. Santos, et al. v. Governor F.P. Camacho, et al., CHRISTINA M. S. NAPUTI, Petitioner/Intervenor.
REPLY TO OPPOSITIONS TO APPLICANT FOR INTERVENTION NAPUTI'S MOTION TO INTERVENE
with MEMORANDUM OF POINTS AND AUTHORITIES. Civil Case No. CIV04-00006
**Page** 16

Case 1:04-cv-00006    Document 64    Filed 07/30/2004    Page 16 of 22

suspicion to Intervenor Naputi's relationships. Petitioner Santos points to connections to the Attorney General of Guam, however he is not a party to the action. She also indicates one of Intervenor Naputi's attorneys is married to a Guam Senator, although the Guam Legislature is not a party to the action either. Lastly, Petitioner Santos declares that one of Intervenor Naputi's attorneys actively represents the Republican Party of Guam, which is as irrelevant as the fact that Petitioner Santos' counsel is the chairman of the Democratic Party of Guam. No conflicts of interest exist between Intervenor Naputi's counsel and any of the parties to this action.

### 5. **Intervenor Naputi Should Alternatively Be Permitted To Intervene**.

Petitioner Santos fails to raise anything of significance in her objection to the permissive intervention of Intervenor Naputi. Intervenor Naputi asks this Court look to legal arguments raised in Intervenor Naputi's motion to intervene for authority justifying her permissive intervention. Petitioner Santos raises one case to analogize why a perceived attempt to "scuttle" the proposed settlement agreement should warrant denial of permission to intervene. However, the court in Woodward v. Nor-Am Chemical Co. struck their balance of interests in favor of denying intervention where the intervenors lacked common questions of law and fact to present parties (i.e., claimed injury was a secondary exposure by spouses and relatives of class members to a substance from which the class suffered direct occupational exposure). 1996 WL 1094746 (S.D. Ala. 1996).

### Conclusion

Intervenor Naputi has previously demonstrated that her interests and position in this case necessitate her intervention in this class action as of right. Intervenor Naputi moved to intervene in a timely fashion; she possesses a significantly protectable interest relating to the subject of the action; her ability to protect her interest is necessarily impaired and impeded by the current disposition; and her interest is inadequately represented by Petitioner Santos. Petitioner Santos' specious arguments and inapposite case law do not alter this earned right to intervene. For the reasons as set forth above, and to achieve a just and proper outcome in this matter, the court should grant the motion for intervention submitted by Petitioner/Intervenor Christina M.S. Naputi. Petitioner/Intervenor Christina M. S. Naputi additionaly requests that an Article III federal judge hear this matter.

J.B. Santos, et al. v. Governor F.P. Camacho, et al., CHRISTINA M. S. NAPUTI, Petitioner/Intervenor. REPLY TO OPPOSITIONS TO APPLICANT FOR INTERVENTION NAPUTI'S MOTION TO INTERVENE with MEMORANDUM OF POINTS AND AUTHORITIES. Civil Case No. CIV04-00006
**Page** 17

Case 1:04-cv-00006 Document 64 Filed 07/30/2004 Page 17 of 22

Respectfully submitted this 29th day of July 2004.

VAN DE VELD SHIMIZU CANTO & FISHER

_____
Curtis C. Van de veld, Esq.
Attorneys for Petitioner/Intervenor Naputi

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

J.B. Santos, et al. v. Governor F.P. Camacho, et al., CHRISTINA M. S. NAPUTI, Petitioner/Intervenor.
REPLY TO OPPOSITIONS TO APPLICANT FOR INTERVENTION NAPUTI'S MOTION TO INTERVENE
with MEMORANDUM OF POINTS AND AUTHORITIES. Civil Case No. CIV04-00006
**Page** 18

Case 1:04-cv-00006    Document 64    Filed 07/30/2004    Page 18 of 22

**CERTIFICATE OF SERVICE**

I, CURTIS C. VAN DE VELD, certify that I caused a copy of the foregoing document here filed to be served on counsel for the parties and prospective party on July 30, 2004, via hand delivery at the following addresses:

Counsel for Petitioner

Michael F. Phillips, Esq.
Phillips & Bordallo, P.C.
410 West O'Brien Drive
Hagatna, Guam 96910

Counsel for Respondents

Douglas B. Moylan, Esq.
Office of the Attorney General of Guam
Suite 2-200E, Guam Judicial Center
120 West O'Brien Drive
Hagatna, Guam 96910

Counsel for Applicant For Intervention Torres

Ignacio C. Aguigui, Esq.
Lujan Aguigui & Perez LLP
Pacific News Building, Suite 300
238 Archbishop Flores Street
Hagatna, Guam 96910

Respectfully submitted this ___30 July 04___

VAN DE VELD SHIMIZU CANTO & FISHER

Curtis C. Van de veld, Esq.
Attorneys for Petitioner/Intervenor Naputi

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
J.B. Santos, et al. v. Governor F.P. Camacho, et al., CHRISTINA M. S. NAPUTI, Petitioner/Intervenor.
REPLY TO OPPOSITIONS TO APPLICANT FOR INTERVENTION NAPUTI'S MOTION TO INTERVENE
with MEMORANDUM OF POINTS AND AUTHORITIES. Civil Case No. CIV04-00006
**Page** 19

Case 1:04-cv-00006    Document 64    Filed 07/30/2004    Page 19 of 22

# TABLE OF AUTHORITIES

## Cases

American Pipe and Construction Co. v. Utah, 414 U.S. 538, 554,
94 S.Ct. 756 (1974)    .    .    .    .    .    .    .    .    12

Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003)   .    .    .    13

Blake v. Barnes, 554 F.2d 947, 955 (9th Cir. 1977)  .    .    .    .    14

Cajun Electric Power Cooperative v. Gulf States Utilities,
940 F.2d 117 (5th Cir. 1991)  .    .    .    .    .    .    .    7

Calif. Dep't of Toxic Substances Control v. Commercial
Realty Projects, Inc., 309 F.3d 1113, 1119-20 (9th Cir. 2002)    .    .    3, 4

Corley v. Jackson Police Dep't, 755 F.2d 1207, 1209-10
(5th Cir. 1985).    .    .    .    .    .    .    .    5

County of Orange v. Air California, 799 F.2d 535, 538
(9th Cir. 1986).    .    .    .    .    .    .    .    5

Farmland Dairies v. Commissioner of New York State
Dep't of Agric. & Mkts., 847 F.2d 1038, 1044 (2d Cir. 1988)    .    .    4

Hill v. Western Elec. Co., 672 F.2d 381, 386 (4th Cir. 1982).    .    .    6

In re Lorazepam, 205 F.R.D. 363, 366-68 (D.C. Cir. 2001)  .    .    .    11

In re NASDAQ Market-Makers Antitrust Litigation,
187 F.R.D. 465, 490-91 (S.D. N.Y. 1998)   .    .    .    .    .    14

In re Vitamins Antitrust Class Actions, 215 F.3d 26, 29
(D.C. Cir. 2000)    .    .    .    .    .    .    .    11, 12

Israel v. United States, 356 F.3d 221 (2d Cir. 2004) .    .    .    .    9

Linney v. Cellular Alaska Partnership, 151 F.3d 1234,
1241-42, 1239-40 (9th Cir. 1998)    .    .    .    .    .    15

New York News v. Kheel, 972 F.2d 482, 487 (2d Cir.1992) .    .    .    4

# TABLE OF AUTHORITIES (continued)

Presidential Life Ins. Co. v. Milken, 946 F. Supp. 267,
276-77 (S.D. N.Y. 1996) . . . . . . . 4

Public Service Co. of New Hampshire v. Patch,
136 F.3d 197 (1st Cir. 1998) . . . . . . 7, 8

Ring v. Metropolitan St. Louis Sewer District,
41 S.W.3d 487, 491 (E.D. Mo. 2001). . . . . . 7

Scardeletti v. Debarr, 265 F.3d 195, 203-204 (4th Cir. 2001). . . 5

Smuck v. Hobson, 408 F.2d 175, 179, 180 (D.C. Cir. 1969) . . . 8

Sokaogon Chippewa Community v. Babbitt,
214 F.3d 941, 946-50 (7th Cir. 2000) . . . . . 5, 6

Southwest Ctr. For Biological Diversity v. Berg,
268 F.3d 810, 822 (9th Cir. 2001) . . . . . . 11

Thompson v. Metropolitan Life Ins. Co.,
216 F.R.D. 55, 69 (S.D. N.Y. 2003) . . . . . 7

Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10,
92 S.Ct. 630, 636 n. 10 (1972) . . . . . 13

United States v. Dalm, 494 U.S. 596, 110 S.Ct. 1361 (1990) . . 9

United States v. Pitney Bowes, Inc., 25 F.3d 66, 72 (2d Cir. 1994) . . 5

Washington Elec. Coop., Inc. v. Mass. Municipal Wholesale
Elec. Co., 922 F.2d 92, 98 (2d Cir. 1990) . . . . 14

Wilderness Society v. Morton, 463 F.2d 1261, 1262
(D.C. Cir. 1972) . . . . . . . 8

Woodward v. Nor-Am Chemical Co.,
1996 WL 1094746 (S.D. Ala. 1996) . . . . . 17

## Statutes

26 USCA §6511 . . . . . . . . 9

# TABLE OF AUTHORITIES (continued)

## Rules

FRCP Rules 7 .   .   .   .   .   .   .   .   .   2

FRCP Rule 8 .   .   .   .   .   .   .   .   .   2

FRCP Rule 11 .   .   .   .   .   .   .   .   .   2

Local Court Rule LR 7.1   .   .   .   .   .   .   .   2

Local Court Rule LR 23.1   .   .   .   .   .   .   2

## Regulations

Treas. Reg. § 301.6402-3, 26 CFR §301.6402-3   .   .   .   .   9