ORIGINAL

FILED
DISTRICT COURT OF GUAM
AUG - 5 2004
MARY L. M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, *et al.*, | Civil Case No. 04-00006 |
| Petitioners, | |
| vs. | |
| FELIX A. CAMACHO, etc., *et al.*, | ORDER |
| Respondents. | |

This case is scheduled to come before the Court on August 5, 2004 for hearing on the motions to intervene filed by applicants Christina Naputi and Charmaine Torres. Pursuant to Local Civil Rule 7.1(e)(3), this matter is appropriate for decision without the need for oral argument.[1] For the reasons set forth herein, the Court DENIES the motions to intervene.

## BACKGROUND

On February 12, 2004, Petitioner Julie Santos initiated this class action against (1) the Governor of Guam, (2) the Director of the Department of Revenue and Taxation, (3) the Director of the Department of Administration, (4) the Attorney General ("AG"), and (5) the Government of Guam.

On March 10, 2004, Judge Unpingco signed a Stipulation submitted by the parties to

---

[1] Local Civ.R. 7.1(e)(3) states "[i]n cases where the parties have requested oral argument, such oral argument may be taken off calendar by Order of the Court, in the discretion of the Court, and a decision rendered on the basis of the written materials on file."

dismiss the AG as a named defendant. After making minor modifications, Judge Unpingco signed off on the proposed Scheduling Order and Discovery Plan on April 30, 2004.

Sometime in June 2004, the media reported that the Camacho administration permitted one taxpayer to receive his 1998 Earned Income Credit ("EIC") payment. Thereafter, the parties to this action entered into a proposed Settlement Agreement which would have disposed of the entire action. The parties consented to full disposition of the case before the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). The Magistrate Judge preliminarily approved the Settlement Agreement and set the matter for a fairness hearing on September 9, 2004.[2]

On June 29, 2004, Ms. Naputi filed her motion to intervene and requested that an Article III judge hear and determine her motion.[3] On July 6, 2004, Ms. Torres filed a separate motion to intervene.

Oppositions, responses, and reply briefs were filed with respect to both motions. The Court finds that the parties and applicants were given ample opportunity to present their respective positions in writing.

## ANALYSIS

Both applicants assert that pursuant to Rule 24(a) of the Federal Rules of Civil Procedure intervention is allowed as a matter of right. In the alternative, both applicants argue that intervention is permissible under Fed. R. Civ. P. 24(b). The Court will discuss these arguments separately below.

///

---

[2] The fairness determination hearing was subsequently vacated by the Magistrate Judge following hearing on Ms. Torres's Motion to Vacate. The Magistrate Judge decided that it would re-set the fairness hearing after the motions to intervene were decided.

[3] The Court is disappointed with the baseless allegations raised by Applicant Naputi's Memorandum in Support of [her] Request for Disqualification of the Magistrate Judge, which call into question the impartiality of the Magistrate Judge. Counsel for Applicant Naputi is reminded of his obligation under Rule 11 of the Federal Rules of Civil Procedure to ensure that allegations levied against the Magistrate Judge's impartiality have evidentiary support and are not merely grounded on innuendo or rumor.

A.  **Intervention of Right**

Rule 24(a) provides:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a).

The parties all agree that the Ninth Circuit

> require[s] an applicant for intervention as of right to demonstrate that "(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest."

United States v. Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004) (*quoting* United States v. City of Los Angeles, 228 F.3d 391, 397 (9th Cir. 2002)). The applicant for intervention bears the burden of proving that <u>all</u> four requirements for intervention have been met. Alisal Water, 370 F.3d at 919. "In determining whether intervention is appropriate, courts are guided primarily by practical and equitable considerations, and the requirement for intervention are broadly interpreted in favor of intervention." Id.

In their briefs, the parties provide an overly exhaustive analysis of whether the motions were timely filed and whether the applicants have a significant protectable interest related to the subject of this action. A detailed discussion of these two issues is unnecessary as the Court concludes that the applicants have easily met their burden in establishing them.

The Ninth Circuit has stated that "[a]n applicant for intervention has a significantly protectable interest if the interest is protected by law and there is a relationship between the legally protected interest and the plaintiff's claims." Alisal Water, 370 F.3d at 919. Here, both applicants have an interest protected by law, *i.e.*, the interest to a refund based on their eligibility for the EIC. Additionally, said interest is clearly related to the Petitioner Santos's claims. Both applicants have a personal stake in the outcome of this controversy as they are

potential class members. Thus, the first requirement has been satisfied.

As for the requirement of timely filing, courts consider "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for the length of the delay." Alisal Water, 370 F.3d at 921 (quoting Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc., 309 F.3d 1113, 1119 (9th Cir. 2002)). The Court concludes that the applicants filed their motions in a timely manner. This case was only filed in February of this year and was in its early stages. The motions to intervene were filed within weeks of the public disclosure of the terms of the Settlement Agreement, and only four to five months after commencement of this action. The Court further finds that no party was prejudiced by filing of the motions to intervene. Accordingly, the Court concludes that the applicants have satisfied the third requirement.

While the applicants have satisfied two of the four requirements for intervention as of right, the Court finds that the applicants have failed to prove that disposition of the action may impair or impede their ability to protect their interests.

Ms. Naputi asserts that she "must be allowed" to intervene to protect the interests of "legitimate claimants," whom she defines as those whose claims arose in tax year 2000 forward. (Naputi Mot. to Intervene at pp.7-8.) Ms. Naputi alleges that the proposed Settlement Agreement, would impede and impair her ability to protect her interest since she essentially would be left with an "unfunded judgment incapable of execution against the government." (Naputi's Reply BR. to Petitioner's and Respondents' Oppositions at p. 10.)

Ms. Torres raises similar concerns. Ms. Torres contends that her "ability to protect her interest in the payment of her EIC claims may as a practical matter be impaired or impeded by tentative settlement in this case." (Torres Reply Br. to Petitioner's and Respondent's Opposition at p.6.) Ms. Torres argues that unless she is permitted to intervene, she essentially is caught between a rock and a hard place. Ms. Torres notes that "[i]f the proposed settlement agreement is approved, and [she] does not opt out of the class, the settlement will be binding and all claims to the full EIC amount will be lost." (Id.) Additionally, "[i]f [she opts out of the class, and pursues a separate claim against Respondents, she may be faced with a worthless

judgment if no funds remain to pay for claims of members who opt out." (Id.)

The Court is not persuaded by either of the arguments. The applicants' ability to protect their interests will not be impaired or impeded because, as noted by Petitioner Santos, their rights and interests are preserved by opting out of the settlement and/or raising these same concerns at the fairness hearing. Moreover, the applicants may protect their interests by filing separate suits. Intervention would not accomplish any more than their participation as objectors. See Downey v. Mortgage Guar. Ins. Corp., 2001 WL 34092617 (S.D. Ga. 2001) (court denied motions to intervene because objectors could adequately protect their interest by opting out of the class suit), *vacated and remanded on other grounds*, 313 F.3d 1341 (11th Cir. 2002).[4] See also Alisal Water, 370. F.3d at 921 (Ninth Circuit upheld finding that the applicant for intervention's interest in the prospective collectability of a debt was not impaired because the court had established other means, via a summary claims process, by which the applicant could protect its interest).

The applicants' argument that the settlement agreement would leave them with a worthless judgment presumes that the applicants would elect to opt out of the settlement. If so, then the applicants merely face the usual risks attendant with litigation: a prolonged battle with the possibility of no recovery from an insolvent defendant. These are the natural imperilments of litigation. On the other hand, Petitioner Santos and those who choose not to opt out have decided to settle their claims. The very nature of settlement requires each side to give up something in exchange for a concession from the opposing party. Settlement has its tactical advantages. The guaranteed fund to pay the settlement claims is likely the motivation behind Petitioner Santos's willingness to accept 50% of what she believes she would otherwise be entitled to. In this case, the applicants also want guaranteed payments – something this Court cannot give them and something which intervention alone would not solve. The goals of Rule 23 of the Federal Rules of Civil Procedure would be defeated if the Court were to allow the

---

[4] The Eleventh Circuit vacated the district court's requirement that the appealing objectors post a bond for the costs on appeal which included the class's anticipated attorney fees.

applicants to intervene merely because they have expressed dissatisfaction with specific aspects of the proposed Settlement Agreement

Applicant Naputi asserts that her interests are being impaired by the inclusion of individuals whom she believes are not entitled to the EIC because of the three-year statute of limitation.[5] She believes her share in any potential settlement is being diluted by their inclusion in the class. However, Applicant Naputi's assertions are based on a faulty premise that the Government of Guam would still be willing to settle these claims at $60 million even if all those whom Applicant Naputi finds objectionable are excluded. There is no basis for such an assertion and the Court will not presume such.

Similarly, Applicant Torres's ability to protect her interest is equally unimpaired. Applicant Torres is unhappy with limiting the class to the tax years specified in Petitioner Santos's petition and the Settlement Agreement. Instead, Applicant Torres states that her claims encompass <u>all</u> individuals whom the Government of Guam failed to compensate for the EIC during periods of their eligibility, which could potentially span as far back as 1975. If such claims do exist, then the claimants may pursue their claims through separate action, or they may choose to raise these objections at the fairness hearing.

As the Government of Guam notes, the Settlement Agreement reached "represents the parties' best efforts." (Respondents' Memorandum in Opposition to Motions to Intervene at p.7.) Applicant Naputi's attempts to cast a shadow on the settlement negotiations by alleging collusion between the parties is unfounded and without merit.[6] If Applicant Naputi still

---

[5] Although the Court does not take a definitive position as to whether or not there is a viable statute of limitation defense, it does question whether the time for making a claim can even begin to run when a claimant has not been notified of his or her right to such a claim. In other words, since the right to an EIC claim was no longer provided for on the tax return forms, many taxpayers may not have been aware of the fact that they were even entitled to such a tax credit.

[6] Applicant Naputi's Opposition to Applicant Torres's Motion to Intervene also makes unfounded accusations against Applicant Torres's counsel. The Court will disregard said opposition in its entirety.

believes that there indeed was collusion between the parties in reaching a settlement, she may raise such objection at the time of the fairness hearing.

As for the final requirement for intervention as a matter of right, the Ninth Circuit considers three factors in determining the adequacy of representation: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." Araki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003). "The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties. Id. "Where parties share the same ultimate objective, differences in litigation strategy do not normally justify intervention." Id.

While Applicant Naputi seeks to limit the class size in the hopes of attaining a greater percentage of the settlement amount, the Court finds that her ultimate objective is the recovery of more money. The objective is similar to that of Petitioner Santos. Every claimant desires a larger recovery; however, such desires must be balanced against the possibility of no recovery whatsoever and the ability to collect on a judgment. Applicant Naputi is not willing to settle for only 50% of what she believes she is entitled to. The difference between Applicant Naputi's interest and that of Petitioner Santos is merely litigation strategy. Accordingly, the Court finds that Applicant Naputi is adequately represented by the Petitioner Santos.

Applicant Torres also seeks full reimbursement for her claims. However, she also seeks compensation for all years in which the Government of Guam did not compensate those eligible for the EIC. Applicant Torres asserts that she endeavors to expand the class and not limit the claims to the tax years specified in Petitioner Santos's petition. However, she fails to provide any evidence. Applicant Torres's motion to intervene merely alleges that "although the EIC should have been made available to eligible Guam taxpayers since tax year 1975, other than tax year 1997 it is unclear at this point during what years the EIC was made available and, if made available, whether such credits were actually paid to eligible Guam taxpayers." (Torres Mem. in Supp. of Mot. to Intervene at p.3.) This is insufficient to establish an interest which is

divergent or unique from that raised by Petitioner Santos. Thus, the Court concludes that Applicant Torres is also adequately represented by existing parties.

Based on the above analysis, the Court finds that the applicants have failed to satisfy all the requirements necessary to intervene as a matter of right. Specifically, the applicants have not met their burden of establishing the second and fourth requirements. Accordingly, the Court must deny the motions to intervene as of right.

### B. Permissive Intervention

Having concluded that the applicants do not have a right to intervene, the next question is whether the Court should nevertheless permit such intervention. Rule 24(b) provides:

> Upon timely application anyone may be permitted to intervene in an action: (1) when a statue of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b). Rule 24(b) goes on to provide that "[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Id.

In the present case, the Court finds that granting these motions to intervene could unduly prejudice the settling parties by unnecessarily delaying the fairness hearing on the Settlement Agreement and final disposition of this action.

> The goals of Rule 23 would be defeated if the Court permitted every individual or entity that objected to discrete aspect of the settlement to intervene. The pursuit of early settlement is a tactic that merits encouragement; it is entirely appropriate to reward expeditious and efficient resolution of disputes. Permitting the intervention . . . in this settlement would delay and perhaps destroy the settlement and would thus prejudice the rights of the class members.

In re Vitamins Antitrust Litigation, 1999 WL 1335318 (D.D.C.) (internal quotations and citations omitted).

The Court also finds it unnecessary for the applicants to intervene at this stage of the proceedings in order for the Court to consider their objections to the proposed Settlement Agreement. Based on the substantial prejudice to the settling class and the ability of the applicants to present their objections without granting leave to intervene, the Court denies both

- 8 -

applicants' motions for permissive intervention.

## CONCLUSION

The Court hereby denies the motions to intervene on both grounds relied upon by the applicants. The Court finds that neither applicant has established a right to intervene. The applicants have not shown that their ability to protect their interests may be impaired or impeded by disposition of the action since there are other means of protecting their interests (such as by opting out, filing objections to the Settlement Agreement, and/or filing a separate law suit). Additionally, the applicants have failed to demonstrate that their allegedly unique interests could not be adequately represented by Petitioner Santos and her experienced counsel. Moreover, because the prejudice to the settling class would be substantial and because the applicants can be heard without granting them leave to intervene, the Court denies both motions for permissive intervention. Finally, the Court vacates the August 5, 2004 hearing on these matters.

SO ORDERED this 5th day of August, 2004.

JOHN C. COUGHENOUR[*]
United States District Judge

Notice is hereby given that this document was entered on the docket on AUG 0 5 2004. No separate notice of entry on the docket will be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam
By: _____ AUG 0 5 2004
Deputy Clerk     Date

---

[*] The Honorable John C. Coughenour, United States Chief District Judge for the Western District of Washington, sitting by designation.