

**Office of the Attorney General**
**Douglas B. Moylan**
Attorney General of Guam
**Solicitor's Division**
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 • USA
(671) 475-3324 • (671) 472-2493 (Fax)
www.guamattorneygeneral.com • law@mail.justice.gov.gu

**Attorneys for Respondents**

FILED
DISTRICT COURT OF GUAM
NOV - 8 2004
MARY L. M. MORAN
CLERK OF COURT



# IN THE DISTRICT COURT OF GUAM
## HAGÅTÑA, GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, individually and on behalf of all those similarly situated, <br><br> Petitioner, <br><br> vs. <br><br> FELIX P. CAMACHO, Governor of Guam; ART ILAGAN, Director of Department of Revenue and Taxation; LOURDES M. PEREZ, Director of Department of Administration; DOUGLAS B. MOYLAN, Attorney General of Guam; and GOVERNMENT OF GUAM, <br><br> Respondents. | Civil Case No. 04-00006 <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO PETITIONER'S MOTION FOR ORDERS APPROVING ADMINISTRATION PLAN, ETC.** |

Respondents submit the following Memorandum of Points and Authorities in response to the Petitioner's Motion for Orders approving the Administration Plan and Amended Notice and for Orders establishing the Fairness Hearing Date and Objection and Opt Out Date, and vacating the April 30, 2004 Scheduling Order.

Page 1

Respondents' Memorandum of Points and Authorities
SANTOS v. FELIX P. CAMACHO, et. al.
District Court of Guam Civil Case No. 04-00036

## Factual Background.

On June 14, 2004, the parties entered into a Settlement Agreement to resolve this case. The Settlement Agreement was signed on behalf of the Petitioner by herself and her attorney of record. The Settlement Agreement was signed on behalf of the Respondents by the Acting Governor of Guam, the Acting Director of the Department of Administration, the Director of the Department of Revenue and Taxation, and the Attorney General of Guam, and was approved as to legality and form by the Deputy Attorney General of Guam.

The Settlement Agreement was preliminarily approved by Magistrate Judge Joaquin V.E. Manibusan on June 17, 2004.

Section V of the Settlement Agreement directs the parties to enter into an Administration Plan, which Plan shall cover at a minimum the points set forth in said Section V. The Petitioner's motion seeks the Court's approval of this Plan and certain other relief. This issues raised in this Memorandum of Points and Authorities relate to the proposed Administration Plan and not to the other relief sought by Petitioner, which other relief is not opposed.

Respondents' Memorandum of Points and Authorities
SANTOS v FELIX P. CAMACHO, et. al.
District Court of Guam Civil Case No. 04-00036

## Discussion.

### Need for Legislative Appropriation.

The proposed Administration Plan in Section III, on pages 5 & 6, provides that the total amount of estimated expenses to administer the EIC Settlement Fund is $975,389, and states that "All such costs shall be the responsibility of the Government of Guam." However, Section III does not stipulate that the expenditure of these funds by the Department of Revenue and Taxation shall be in accordance with an appropriation passed by the Guam Legislature. The Director of the Department of Revenue and Taxation is concerned that were he to expend government funds for this purpose without the Legislature first appropriating the same to the Department of Revenue and Taxation, he could be found to be in violation of 5 G.C.A. §22401 and be subjected to disciplinary action, including removal from office, and be convicted of a misdemeanor. The Organic Act of Guam and the laws of Guam provide that funds for this purpose must be appropriated by the Guam Legislature. 48 U.S.C. §1423j; 5 G.C.A. §22401. Thus, language should be inserted into Section V of the proposed Administration Plan stating that the expenditure of such funds shall be subject to their being appropriated by the Legislature.[1]

### Custodian of EIC Settlement Fund must be Changed.

The proposed Administration Plan in Section II (B), on page 3, establishes a Settlement Fund into which shall be paid the $60 million for delinquent EIC refunds referred to in Section II

---

[1] The Department of Revenue and Taxation estimates that $100,000 and not $75,000 as provided in the proposed Administration Agreement will be needed for postage without regard to the 10 year period, increasing total expenses to $1,000,389.

Respondents' Memorandum of Points and Authorities
SANTOS v FELIX P. CAMACHO, et. al.
District Court of Guam Civil Case No. 04-00036

(A). Section II (B) states that "The custodian of the EIC Settlement Fund shall be the Director of Revenue and Taxation". However, the Department of Administration and not the Department of Revenue and Taxation has the power to take charge of the EIC Settlement Fund because the Department of Administration is charged with the responsibility of managing and accounting for all of the various funds of the Government of Guam and is responsible for disbursing monies owed by the government of Guam. 5 G.C.A. §20106, §21110, §21111, §21113, §22101 - §22110, §22201 - §22205, §50102, §50104, & §50107. Thus, the proposed Administration Plan should be revised to make the Director of the Department of Administration as the custodian of the EIC Settlement Fund.

## Compliance with Income Tax Refund Offset Program Required.

Section I (G), page 11 of the proposed Administration Plan, provides that "Unless otherwise prohibited by applicable law, if any EIC Class Member has an outstanding tax liability prior to the payment of any Claim made by such a Member pursuant to the Settlement Agreement and this Administration Plan, then such Claim or Claims shall be reduced by the amount of the applicable tax liability." However, no provision is made for administration of the income tax refund offset program under Section 6402 of the Internal Revenue Code, whereby refunds owed by the Government to taxpayers are to be reduced by past due child support and amounts owed to Government agencies. See: *Sorenson v. Secretary of Treasury*, 475 U.S. 851, 106 S.Ct. 1600, 89 L.Ed. 2d 855 (1986) (holding that refundable earned income tax credits are subject to the income tax refund offset program the same as ordinary income tax refunds). The Department of Revenue and Taxation has entered into agreements with the Guam Memorial Hospital Authority, the Child

Respondents' Memorandum of Points and Authorities
SANTOS v FELIX P. CAMACHO, et. al.
District Court of Guam Civil Case No. 04-00036

Support Collection Division of the Attorney General's Office and the Guam Housing and Urban Renewal Authority for this purpose. The proposed Administration Agreement should expressly take this program into account, and state that the order of the offsets shall be as follows: (1) Accounts receivable, Department of Revenue and Taxation, (2) Child support; (3) Guam Memorial Hospital Authority, and (4) GHURA.

## Revision of Second Notice Requirement.

Page 8, lines 1 – 6 of the proposed Administration Plan, states as follows:

> Within fifteen (15) days after the Effective Date of the Settlement, as defined in the Settlement Agreement, a **Notice** (identified as the '"Second Notice" under the Settlement Agreement) including instructions and procedures to complete and file the Claim Form will be mailed along with the Claim Form to each potential EIC Class Member.

Due to the voluminous amount of materials and cost of postage, the Department of Revenue and Taxation requests that the above language be revised to state as follows:

> Within fifteen (15) days after the Effective Date of the Settlement, as defined in the Settlement Agreement, a **Notice** (identified as the '"Second Notice" under the Settlement Agreement) together with the procedure of how to obtain instructions and forms will be mailed to each potential EIC Class Member.

## Concerns of Governor of Guam.

Finally, the undersigned Attorney General discloses to the Court that although the Settlement Agreement was signed by the Acting Governor, the Governor now appears to be having second thoughts about various aspects of the Agreement, and has recently purported to "instruct" the undersigned Attorney General to file no pleadings on his behalf without his

Page 5

Respondents' Memorandum of Points and Authorities
SANTOS v FELIX P. CAMACHO, et. al.
District Court of Guam Civil Case No. 04-00036

Case 1:04-cv-00006    Document 84    Filed 11/08/2004    Page 5 of 10

permission as "client." Based upon the nature of this Constitutional office, the Governor is without authority to "instruct" the Attorney General with respect to litigation on behalf of the Government of Guam. By federal law, in the Organic Act of Guam, 48 U.S.C. § 1421g(d)(1), the Attorney General of Guam is designated as the "Chief Legal Officer for the Government of Guam." As such, the position of Attorney General controls all litigation by and on behalf of the Government of Guam, its departments, boards, agencies and instrumentalities. "The Organic Act makes the Attorney General the Chief Legal Officer of the government of Guam. The Governor is head of the executive branch, but *the Attorney General is the chief legal officer of the government of Guam, which includes not only the executive branch, but also the legislative and judicial branches. Thus, the sphere of the Attorney General's legal cognizance is within the entire government of Guam, legislative and judicial, not just the executive branch.*" *Moylan v. Camacho*, Superior Court of Guam, Special Proceeding Case No. SP230-03, "Decision and Order," dated November 10, 2003, p. 38 (Manibusan, J.) (emphasis in bold added).

Even before Judge Manibusan's Decision and Order in *Moylan v. Camacho*, and prior to inclusion in the Organic Act by Congress in 1998 of the term "Chief Legal Officer," the Legislature of Guam recognized that it is the Attorney General who controls litigation on behalf of the Government of Guam. "Notwithstanding any other provision of law, *the Attorney General shall have cognizance of all legal matters... involving the Executive Branch of the government of Guam*, its agencies, instrumentalities, public corporations, autono-mous agencies and the Mayors Council, all hereinafter referred to as 'agency.'" 5 G.C.A. § 30102 (emphasis added). *See also,* 5 G.C.A. § 30109 (the Attorney General shall "[c]onduct on behalf of the government of Guam all civil actions in which the government is an interested party"). Furthermore, 5 G.C.A. § 30103

Respondents' Memorandum of Points and Authorities
SANTOS v FELIX P. CAMACHO, et. al.
District Court of Guam Civil Case No. 04-00036

provides the "Attorney General shall have, in addition to the powers expressly conferred upon him by this Chapter, *those common law powers which include, but are not limited to*, the right to bring suit to challenge laws which he believes to be unconstitutional...." (Emphasis added.)

Because the "real client" of the Attorney General is the people, the Attorney General is generally "not constrained by the parameters of the traditional attorney-client relationship." *Terry v Wilder*, 29 Va. Cir. 418, 431 (1992) (quoting *Feeney v Commonwealth*, 366 N.E.2d 1262, 1266 (Mass. 1977)), *rev'd on other grounds*, 247 Va. 119, 439 S.E.2d 398 (Va. 1994). Unlike private attorneys, whose conduct in litigation may be subject to the whims of many clients, the position of Attorney General – who represents the Government of Guam and all its agencies and instrumentalities – answers to one client only: the people. The Attorney General is not subject to the direction of the particular officials named as defendants in the litigation. Instead, the views of the Attorney General prevail when a conflict arises between the views of the Attorney General and those of the agencies and officers whom the attorney general represents. *Battle v Anderson*, 708 F.2d 1523, 1529 (10th Cir. 1983) (holding that the views of the Oklahoma Attorney General in litigation "must prevail" over the views of the legal counsel for any particular state defendant); *Prisco v State of New York*, 804 F.Supp. 518, 520 (S.D.N.Y. 1992) (holding that Attorney General is authorized to represent individual state officers who are sued in their official capacities, despite claimed conflicts of interest).

While the Attorney General is obligated to represent government officials and agencies to the best of his abilities, he need not – indeed, must not – do so at the expense of the people as a whole. *Connecticut Comm'n of Spec. Revenue v Connecticut Freedom of Information Comm'n*, 387 A.2d 533, 538 (Conn. 1978) (Attorney General's real client is the people); *Reiter v*

Respondents' Memorandum of Points and Authorities
SANTOS v FELIX P. CAMACHO, et. al.
District Court of Guam Civil Case No. 04-00036

*Wallgren*, 184 P.2d 571, 575 (Wash. 1947) (while Attorney General may represent state officers, "it still remains his paramount duty to protect the interests of the people of the state"); *Commonwealth ex rel. Hancock v Paxton*, 516 S.W.2d 865, 867 (Ky. 1974) (Attorney General represents people, not "machinery" of state government). To do so "would be an abdication of official responsibility." *Feeney v Commonwealth*, 366 N.E.2d 1262, 1266 (Mass. 1977) (quoting *Secretary of Administration and Fin. v Attorney Gen.*, 326 N.E.2d 334, 338 (Mass. 1975). See also *Slezak v Ousdigian*, 110 N.W.2d 1, 5 (1961) (Attorney General must do more than espouse individual views of state officials represented); *Ex parte Weaver*, 570 So. 2d 675, 684 (Ala. 1990) (upholding Attorney General's authority to dismiss state insurance department proceedings over objection of state insurance commissioner); *State ex rel. Derryberry v Kerr-McGee Corp.*, 516 P.2d 813, 821 (Okla. 1973) (upholding authority of Attorney General to settle pending litigation). And that is precisely the reason why this Office has taken the position he has on behalf of the Government of Guam defendants in the Proposition A and EITC litigation. Whether the Governor's Office or any named defendant likes it or not, by law in the Organic Act, by statute and the common law, the position Attorney General controls legal policy and litigation decisions for the Government of Guam, its officers, agencies and instrumentalities.

Taken to its logical conclusion, if every government official were permitted to express their legal position in court, not only would the Government of Guam not have a coherent uniform legal policy, but the Government of Guam (People) would be subject to court criticism and potential sanctions for maintaining conflicting legal positions. In essence, the Government of Guam would have a incoherent legal policy, and litigation would abound by each government official maintaining a disjointed legal position.

Page 8

Respondents' Memorandum of Points and Authorities
SANTOS v FELIX P. CAMACHO, et. al.
District Court of Guam Civil Case No. 04-00036

Case 1:04-cv-00006   Document 84   Filed 11/08/2004   Page 8 of 10

The position of Attorney General has the exclusive and absolute discretion to set legal policy and to control all aspects of litigation for and against the Territory. *See Ex parte Weaver*, 570 So.2d 675, 677 (Ala. 1990) ("As the state's chief legal officer, 'the attorney general has power, both under common law and by statute to make any disposition of the state's litigation that he deems for its best interest. ... He may abandon, discontinue, dismiss, *or compromise it*'") (emphasis added); *Feeney v. Commonwealth*, 366 N.E. 2d 1262, 1267 (Mass. 1977) upholding authority of Attorney General to prosecute appeal in the U.S. Supreme Court over express objections of state officials); *Slezak v. Ousdigian*, 110 N.W.2d 1, 5 (Minn. 1961) (stating that "the courts will not control the discretionary power of the attorney general in conducting litigation for the state"); *State ex rel. Igoe v. Bradford*, 611 S.W.2d 343, 347 (Mo. Ct. App. 1980) ("It is for the attorney general to decide where and how to litigate these issues involving public rights and duties and to prevent injury to the public welfare"); *Public Defender Agency v. Superior Court*, 534 P.2d 947, 950 (Alaska 1975) (Attorney General possesses "power to make any disposition of the state's litigation which he thinks best"); *State ex rel. Board of Transportation v. Fremont, E. & M.V.R. Co.*, 35 N.W. 118, 120 (Neb. 1887) (recognizing that Attorney General controls litigation and other state officials "cannot control his actions"); *Perillo v. Dreher*, 314 A.2d 74, 79 (N.J. Super. Ct. App. Div. 1974) (recognizing that Attorney General has "the exclusive power to control all litigation to which the State is a party"); *Opinion of the Justices*, 373 A.2d 647, 649 (N.H. 1977) (Attorney General has "broad authority to manage the state's litigation and to make any disposition of a case which he deems is in the state's best interest"); *Michigan State Chiropractic Ass'n v. Kelley*, 262 N.W.2d 676, 677 (Mich. App. 1977)

Respondents' Memorandum of Points and Authorities
SANTOS v FELIX P. CAMACHO, et al.
District Court of Guam Civil Case No. 04-00036

Case 1:04-cv-00006 Document 84 Filed 11/08/2004 Page 9 of 10

(Attorney General "has statutory and common law authority to act on behalf of the people of the State of Michigan in any cause or matter, such authority being liberally construed").

## Conclusion.

Based upon the foregoing reasons, the Court should direct that the proposed Administration Plan be revised in accordance with the points raised above.

Respectfully submitted this 8th day of November, 2004.

**OFFICE OF THE ATTORNEY GENERAL**
DOUGLAS B. MOYLAN, Attorney General of Guam

_____
**Douglas B. Moylan**

Page 10

Respondents' Memorandum of Points and Authorities
SANTOS v FELIX P. CAMACHO, et. al.
District Court of Guam Civil Case No. 04-00036

Case 1:04-cv-00006   Document 84   Filed 11/08/2004   Page 10 of 10