1
SHANNON TAITANO, ESQ.
**OFFICE OF THE GOVERNOR OF GUAM**
2
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
3
Telephone:    (671) 472-8931
4
Facsimile:    (671) 477-4826

5
**RODNEY J. JACOB, ESQ.**
**DANIEL M. BENJAMIN, ESQ.**
6
**CALVO AND CLARK, LLP**
7
Attorneys at Law
655 South Marine Drive, Suite 202
8
Tamuning, Guam 96913
Telephone:    (671) 646-9355
9
Facsimile:    (671) 646-9403

**FILED**
DISTRICT COURT OF GUAM

NOV - 9 2004

MARY L. M. MORAN
CLERK OF COURT

10
Attorneys for *Felix P. Camacho, Governor of Guam*

11
IN THE UNITED STATES DISTRICT COURT
12
DISTRICT OF GUAM

13
JULIE BABAUTA SANTOS, et. al.,

CIVIL CASE NO. 04-00006

14
                              Petitioners,

15
            -v-

16
FELIX P. CAMACHO, etc., et. al.

17
                              Respondents.

18

19

20

**DECLARATION OF DANIEL M.
BENJAMIN IN SUPPORT OF THE
GOVERNOR OF GUAM'S
OBJECTION TO (1) PETITIONER'S
MOTION FOR ORDERS APPROVING
THE ADMINISTRATION PLAN AND
AMENDED NOTICE; AND (2) THE
ATTORNEY GENERAL OF GUAM'S
MPA IN RESPONSE TO MOTION
FOR ORDERS APPROVING
ADMINISTRATION PLAN**

21
        I, DANIEL M. BENJAMIN, declare that:

22
        1.      I am an attorney with the law firm of Calvo and Clark, LLP, counsel of
23
record for Defendant Felix P. Camacho, Governor of Guam. I make this declaration on personal
24
knowledge, and if called to testify I could and would testify competently thereto.
25
        2.      Attached as Exhibit "A" is a true and correct copy of a letter to Stephen A.
26
27
Cohen from Shannon Taitano dated September 16, 2004.

28

*Civil Case No. 04-00006*
T041109.382-00010.CT (Decl. of DMB)

1

**ORIGINAL**

3. Attached as Exhibit "B" is a true and correct copy of a letter to Stephen A. Cohen from Shannon Taitano dated October 7, 2004.

4. Attached as Exhibit "C" is a true and correct copy of a Memorandum to the Attorney General from Charles Troutman dated October 13, 2004.

5. Attached as Exhibit "D" is a true and correct copy of a Memorandum to Shannon Taitano, Esq., Artemio R. Ilagan, and Lourdes M. Perez from Stephen A. Cohen dated October 27, 2004. Pleadings that were attached to this Memorandum were omitted because of their length.

6. Attached as Exhibit "E" is a true and correct copy of a letter to Stephen A. Cohen from Shannon Taitano dated October 28, 2004.

7. Attached as Exhibit "F" is a true and correct copy of the Order filed October 29, 2004.

8. Attached as Exhibit "G" is a true and correct copy of a letter to Douglas B. Moylan from Shannon Taitano dated November 8, 2004.

I declare under penalty of perjury pursuant to the laws of the United States and of the Territory of Guam that the foregoing declaration is true and correct.

Executed this 9th day of November, 2004, in Tamuning, Guam.

DANIEL M. BENJAMIN

# EXHIBIT A



## Office of the Governor of Guam

P.O. Box 2950 Hagåtña, Guam 96932
TEL (671) 472-8931 • FAX (671) 477-4826 • EMAIL: governor@mail.gov.gu

**Felix Perez Camacho**
*Governor*

**Kaleo Scott Moylan**
*Lieutenant Governor*



1 6 SEP 2004

Stephen A. Cohen
Assistant Attorney General
Office of the Attorney General
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910

Re:     Julie Babauta Santos v. Felix P. Camacho, Governor of Guam, et al;
        District Court of Guam, Civil Case No. 04-00006

Dear Steve:

We have reviewed the materials that you forwarded to our offices on September 9 from

Mike Phillips. We have concerns regarding Mr. Phillips' proposal. I understand from Ray

Souza that you described it as an attempt by Mr. Phillips to get a new settlement under the guise

of an administration plan. We agree.

However, we have greater concerns regarding the settlement as a whole that we would

like addressed before any consideration is given to Mr. Phillips' proposal. As you know,

Governor Camacho was never consulted with regard to the June 2004 settlement agreement

entered into by Attorney General Moylan and Acting Governor Moylan. Therefore, we would

like this opportunity to raise the concerns the Governor has regarding the agreement.

The Governor's most significant concern is that the settlement is not contingent on legislative funding. This is a concern as a practical matter because the Legislature has failed to make an appropriation since the settlement was executed. However, even if the Legislature had made an appropriation, we would be concerned because we are unsure of whether the contract complies with Guam law.

Guam law forbids any officer of the Government of Guam from involving "the government of Guam in any contract or other obligation, for the payment of money for any purpose, in advance of the appropriation made for such purpose." 5 G.C.A. § 22401(a)(3); *see Pangelinan v. Gutierrez*, 2003 Guam 13 (2003), *reconsidered in part on other grounds* 2004 Guam 16. Further, Guam law forbids the participation in any contract that requires the expenditure of non-appropriated funds. *See* 5 G.C.A. § 22401(a)(2).

Based on these laws, we are concerned that the settlement agreement is invalid. We therefore require an explanation as to how the settlement agreement complies with Section 22401's ("Illegal Expenditures") provisions before we can further respond.

We also are concerned with certain structural problems that we see with the settlement agreement. It appears that under the settlement agreement, and under Mr. Phillips' proposed administrative plan, Mr. Phillips will receive 10% of the $60 million no matter how many prospective class members may opt-out. Given that the settlement has not led to a complete peace for the Government, but instead gave birth to both the intervention motions and the new *Torres* case, we are concerned that the Government will be spending $6 million to purchase a

settlement with only a limited number of plaintiffs while facing future liability to a greater number of plaintiffs. This is another area that we would like to have addressed in your response.

Further, as the agreement is written, the Government could end up paying the opt-in plaintiffs 100% if there are a substantial number of opt-outs. Given the potentially strong defenses that existed to the class action and lack of any litigation in the case, we would like to know what procedural safeguards exist regarding this matter.

We also would like a better understanding of how the determination was made to include what appear to be time-barred claims. Related to this, we would like to know why claims from 1996 were favored in the settlement, even though those claims are arguably less meritorious given the statute of limitations issue.

The final concern we have regarding the settlement is our lack of knowledge of the history of the negotiations of the settlement. We want to review all information concerning the settlement and its negotiations so that we are fully informed prior to the hearing. Therefore, please transmit to us the information you have on the negotiations, including the materials exchanged in negotiating the settlement, how fees were agreed to in the settlement, letters and memos regarding compliance with Guam's illegal expenditure laws (§ 22401), and any other information that may be relevant. We want to review this information to evaluate Mr. Phillips' request and to give your office instructions on how to proceed. Further, we want to ensure that all such information is preserved during any litigation relating to EITC.

Assuming our concerns regarding the settlement are addressed, we also have concerns regarding Mr. Phillips' proposal. The objective of the plan appears to be securing payments of attorneys' fees as each payment is made into the settlement fund. Any condition permitting lawyers to receive fees before amounts are actually disbursed to class members is obviously unacceptable to the Governor.

Next, Mr. Phillips' plan seeks to place the burden of almost one million dollars in administration costs on the Government. This would appear to be another unappropriated expenditure, and on that ground alone the Governor must refuse. Further, one million dollars would be a material change to the settlement at a time when we all know the Government of Guam continues to be strapped for cash.

Lastly, we are concerned that the proposed dates in the administrative plan are all in the immediate future. Given the appeal filed by one of the would-be interveners, it would be of concern to us were the settlement to be approved before the appeal is resolved. It would be unfortunate if funds were distributed, only to have the settlement thrown out based on the appeal.

We realize that we have raised multiple issues, responding to which will require some effort. However, we hope that you are able to respond quickly as some of the issues (particularly with regard to the illegal expenditures issue) place the Governor in a position where he may need to act. Thank you for your time on this matter.

Very truly yours,

Shannon Taitano

# EXHIBIT B



*Office of the Governor of Guam*

P.O. Box 2950  Hagåtña, Guam 96932
TEL. (671) 472-8931 · FAX. (671) 477-4826 · EMAIL: governor@mail.gov.gu

**Felix Perez Camacho**
*Governor*

**Kaleo Scott Moylan**
*Lieutenant Governor*

# CONFIDENTIAL

– 7 OCT 2004

Stephen A. Cohen
Assistant Attorney General
Office of the Attorney General
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910

Re:  Julie Babauta Santos v. Felix P. Camacho, Governor of Guam, et al;
     District Court of Guam, Civil Case No. 04-00006

Dear Steve:

On September 16, 2004, I sent you a letter raising several serious questions the Governor had with regard to the settlement agreement in this matter. Over two weeks have passed and we have received no response.

Although we respect the competing demands on your time, the issues that we have raised require an immediate answer. Pursuant to 5 G.C.A. § 22401, after an investigation, the Governor is obligated to report any violation of the prohibition on illegal expenditures. If we do not receive a response promptly, we may not have a choice but to assume that the law was violated and that the violation must be reported. I very much hope to receive a response from you presenting your position before such a decision must be made.

In the meantime, I trust that your office has not made any agreement with Mr. Phillips concerning his requests and draft motion papers. We expect that you will take no action except upon instructions of the Governor's Office.

Thank you for your immediate attention to this matter.

Very truly yours,

Shannon Taitano

# EXHIBIT C



# GOVERNMENT OF GUAM
## CONSUMER COUNSEL
### OFFICE OF THE ATTORNEY GENERAL
HAGÅTÑA, GUAM



October 13, 2004

MEMORANDUM

To:        Attorney General

From:      Charles Troutman

Subject:       Santos EITC Settlement — Need for Legislative appropriation of
               "Refunds"

## CONFIDENTIAL ATTORNEY- CLIENT & WORK PRODUCT COMMUNICATION

You have asked me to advise you on certain questions raised by the Governor and other
of our clients with regards to implementing the EITC settlement in the Santos case. In
this memo I will examine only the question whether the Governor must seek a legislative
appropriation before paying the settlement.

The EITC settlement consists of several elements to be performed by the government of
Guam: (1) funding and payment of $60 million in delinquent EITC refunds to qualified
taxpayers for tax years 1996 and 1998 through 2003 in accordance with the multi-year
schedule established in the settlement agreement; (2) payment of $6 million in attorney
fees to class counsel on a pay-as-you-go basis from the $60 million in EITC refunds to
occur over the life of the settlement schedule; (3) commitment to apply, and to pay, EITC
refunds to qualified taxpayers for all future tax years, commencing with 2004; and (4)
payment of approximately $1 million in administrative costs by the Department of
Revenue and Taxation to implement the settlement, which amount appears to be in
addition to and separate from the $60 million for EITC refunds and attorneys fees.

My opinion is that the Governor does not have to seek an appropriation for items 1 and 2. On the on other hand, he must have appropriations for items 3 and 4. In reaching these conclusions, I am assuming that the EITC validly applies to Guam, a matter of doubt to some, but rendered moot by the settlement.

Any answer must stem, first, from the Organic Act of Guam. This settlement will result, *inter alia*, in a judgment for money due against the government of Guam. The Organic Act states that, in such cases:

> When any judgment against the government of Guam under this paragraph [for an unpaid income tax refund] has become final, the Governor shall order the payment of such judgment out of any unencumbered funds in the treasury of Guam. 48 U.S.C.A. §1421i(h)(3).

Courts have long held that Congress has the power to legislate directly for a territory as if Congress were a state legislature. This was recently reaffirmed by the 9 [th] Circuit in *People v. Guerrero*, 290 F.3d 1210 (2002):

> *See, e.g., First Nat'l Bank v. County of Yankton*, 101 U.S. 129, 133, 25 L.Ed. 1046 (1879) ( "[Congress] may make a void act of the territorial legislature valid, and a valid act void. In other words, it has full and complete legislative authority over the people of the Territories and all the departments of the territorial governments."); at 1221-2.

The Organic Act completely occupies the authority Guam has over the Territorial Income Tax, restricting the Legislature to those matters not covered (very few) by the Act. A good example is in Section 11 of the Organic Act where Congress has permitted the Legislature to adopt surcharge on the Territorial Income Tax of up to 10%. While Guam may adopt its own income tax structure pursuant to another federal law, it has not yet done so and, therefore, is still subject to the existing mirror-image income tax imposed by the Organic Act.

It is my opinion, that in the case of paying a judgment obtained against the government for the matters stated in the Organic Act, including refund of taxes (item 1 above), Congress has legislated the authority to pay notwithstanding the absence of a legislative appropriation. In fact, the language is mandatory – "the Governor shall order . . .". If he does not order the payment of a judgment for an unpaid income tax refund from any unencumbered funds, he would be subject to a writ of mandate from the District Court ordering him to do so.

2

EITC payments are treated as refunds of income tax overpayments under the U.S. Internal Revenue Code mirrored in Guam, and are subject to the same rules as ordinary income tax refunds. *Sorenson v. Secretary of the Treasury of the United States*, 475 U.S. 851, 106 S.Ct. 1600, 89 L.Ed. 2d 855 (1986); *Israel v. United States*, 356 F.3d 221 (2nd Cir. 2004). Accordingly, payment of the judgment to be entered by the District Court of Guam for unpaid EITC refunds covering tax years 1986 and 1988 through 2003 will be subject to the provisions of the Organic Act, 48 U.S.C.A. §1421i(h)(3), requiring the Governor to pay the judgment "out of any unencumbered funds in the treasury of Guam" without regard to appropriation by the Legislature.

There have been no decided cases defining the term "unencumbered funds in the treasury of Guam", although definitions of "unencumbered funds" are found in other contexts. See *United States v. Kim* 111 F. 3d 1351 (7th Cir. 1997)(defining "unencumbered funds" for purposes of the trust fund penalty of Section 6672 of the Internal Revenue Code). However, the common understanding of this term in Guam is that it means any funds not obligated by contract or other order, for example, wages. When it comes to judgments for delinquent income tax refunds, the Organic Act requires that payment be from any unencumbered funds within the treasury of Guam, not just from funds allocated for the purpose of tax refunds by the Legislature. Therefore, the Governor may, and indeed must, pay the judgment for refunds of the EITC from any unencumbered funds in the treasury of Guam.

Moreover, no legislative appropriation will be needed regarding payment of attorney fees to class counsel under the judgment (item 2 above). The attorneys fees to be paid to class counsel are not a separate amount awarded by the court against the government. Rather, the attorney fees are an obligation imposed on the taxpayers and will be paid by them to class counsel from their EITC refunds, which is their property. Because the Governor does not have to obtain an appropriation from the Legislature to pay the judgment for the delinquent EITC refunds covering tax years 1996 and 1998 through 2003, which is the source of the attorneys fees, he does not have to obtain an appropriation for the attorneys fees (I make no opinion as to the reasonableness of the amount of attorneys fees sought by class counsel in the settlement, which is a different issue).

On the other hand, the obligation undertaken by the government in the settlement to pay future EITC refunds on annual basis hereafter to qualified taxpayers (item 3 above), commencing with tax year 2004, is not a money judgment for refunds and, therefore, is not subject to the provisions of the Organic Act, 48 I U.S.C.A. §1421i(h)(3), requiring the

3

Governor to pay a judgment for unpaid refunds "out of any unencumbered funds in the treasury of Guam". Consequently, it is proper and necessary for the Legislature to annually appropriate funds for the payment of such refunds, which the Legislature did for fiscal years 1998 and 1999 in the Guam Earned Income Program, 11 G.C.A. §42104.

Although the U.S. Congress in 31 U.S.C. §1324 has made a continuing appropriation to the Department of Treasury to pay U.S. tax refunds, this appropriation is not mirrored in Guam. The Organic Act provides for mirroring of the Internal Revenue Code which is found in Article 26 of U.S.C., but not Title 31 of U.S.C.

The settlement also provides for a $1 million "pot" to be used as administration costs by the Department of Revenue and Taxation to implement the settlement and the payout under it (item 4 above). As these funds appear to come from the General Fund and are separate from and in addition to the $60 million EITC settlement amount, then there is an absolute requirement that the moneys be appropriated by the Legislature, since these are for the general operations of the Department of Revenue & Taxation. They would not be part of a judgment for delinquent income tax refunds. I assume that the $1 million will be payable over several years and need not be appropriated all at once.

The Governor and our other clients would not be subject to the provisions and penalties set forth in 5 G.C.A. §22401 regarding the expenditure of unappropriated funds to the extent that funds under the EITC settlement (items 1 and 2 above) are paid pursuant to the Organic Act, 48 U.S.C.A. §1421i(h)(3), requiring judgments for unpaid income tax refunds to be paid "out of any unencumbered funds in the treasury of Guam". However, the expenditure of unappropriated funds for other parts of the settlement that do not come within the scope of this Organic Act provision regarding payment of judgments for unpaid income tax refunds (items 3 and 4 above) would expose the Governor and our other clients to possible liability under 5 G.C.A. §22401.

I trust that this memorandum fully answers your questions. I would be pleased to answer any further questions you may have regarding this matter.


*Charles H. Troutman*
CHARLES H. TROUTMAN

4

# EXHIBIT D



# Office of the Attorney General
### Douglas B. Moylan
Attorney General of Guam
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910  USA
(671) 475-3324   (671) 472-2493 (Fax)
www.guamattorneygeneral.com   law@mail.justice.gov.gu

October 27, 2004

**MEMORANDUM**   Confidential Attorney-Client and Work Product Communication

**TO:**   Shannon Taitano, Esq.
Legal Counsel to Governor Felix P. Camacho
Adelup, Guam

Artemio R. Ilagan, Director
Department of Revenue and Taxation
Tiyan, Guam

Lourdes M. Perez, Director
Department of Administration
Hagatna, Guam

**FROM:**   Stephen A. Cohen
Assistant Attorney General
Hagatna, Guam

**RE:**   Julie Babauta Santos v. Felix P. Camacho, Governor of Guam, et al
District Court of Guam, Civil Case No. 04-00006

I am enclosing for your information copies of the following motion papers that were served on our office:

1.   Petitioner's Motion for Orders approving the Administration Plan and Amended Notice and for Orders establishing the Fairness Hearing Date and Objection and Opt Out Date, and Vacating the April 30, 2002 Scheduling Order, with attached Administration Plan and Amended Notice of Class Action and Proposed Settlement;

2      Memorandum of Points and Authorities in Support of Petitioner's Motion for Orders approving the Administration Plan and Amended Notice and for Orders establishing the Fairness Hearing Date and Objection and Opt Out Date and vacating the April 30, 2004 Scheduling Order;

2.      [Proposed] Order approving Administration Plan.

I am also enclosing for your information a copy of my letter to attorney Michael Phillips, dated today, requesting a continuance of the date for the defendants' response to his motion.





# Office of the Attorney General

**Douglas B. Moylan**
Attorney General of Guam
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 USA
(671) 475-3324 (671) 472-2493 (Fax)
www.guamattorneygeneral.com law@mail.justice.gov.gu

October 27, 2004

Michael F. Phillips, Esq.
Phillips & Bordallo, P.C.
410 West O'Brien Drive
Hagatna, Guam 96910-5044

Re: <u>Santos v. Camacho, et al, District Court of Guam Civil Case No. 04-00006</u>

Dear Mike:

Your motion papers in the above matter were forwarded to me yesterday. I phoned you at your office but your receptionist said you were busy and that she would give you a message that I called. I did not hear back from you.

I am heavily involved in a major ADA case in District Court that is going to trial on November 15th, *Talmungto v. Camacho, et al*, Civ. No. 01-00047. Because I am having to spend an enormous amount of time preparing for the trial, including the preparation of witnesses and drafting a witness list, the preparation of exhibits and drafting an exhibit list, the drafting of a pretrial order and a trial brief, visiting the locations of the sites subject to the case, conferring with opposing counsel, preparing objections to opposing counsel's witness list and exhibit list, preparing a motion in limine, and attending a final pretrial conference, it will be extremely difficult for me to respond to your motion by the due date, November 8th. I would appreciate very much if you would kindly extend to me the courtesy of continuing the date for my response to your motion to November 29th.

Your prompt attention to this matter is requested.

Very Truly Yours,

DOUGLAS B. MOYLAN
Attorney General of Guam

Stephen A. Cohen
Assistant Attorney General

# EXHIBIT E



*Office of the Governor of Guam*

P.O. Box 2950  Hagåtña, Guam 96932
TEL. (671) 472-8931 • FAX. (671) 477-4826 • EMAIL. governor@mail.gov.gu

**Felix Perez Camacho**
*Governor*

**Kaleo Scott Moylan**
*Lieutenant Governor*

2 8 OCT 2004

Stephen A. Cohen
Assistant Attorney General
Office of the Attorney General
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910

Re: Julie Babauta Santos v. Felix P. Camacho, Governor of Guam, et al;
District Court of Guam, Civil Case No. 04-00006

Dear Steve:

The Governor has received and reviewed Mr. Troutman's memorandum of October 13, 2004. Given the conclusion that at least part of the settlement contract is illegal, the Governor can see no option but to raise this issue with the Court and Legislature as required by law. Further, the Governor is not assured by this memorandum that the $60 million payment is legal. Therefore, before acting, he requires an immediate response with regard to several issues regarding the validity of that payment.

Mr. Troutman states that the $60 million payment is legal because the Governor has the power to pay tax judgments from unappropriated funds. However, while the settlement calls for a judgment, it is still a contract. Equivalent federal law appears to treat settlements as subject to the restriction on contracting for unappropriated funds. *See Blackhawk Heating & Plumbing Co. v. United States*, 622 F.2d 539, 542, 553 (Claims Ct. 1980) (enforcing provision of settlement contract that was contingent on funding pursuant to federal Anti-Deficiency Act). Accordingly, it appears that the power to pay a judgment under the Organic Act may not be the same as the power to contract for a judgment. We would like for you to identify definitive authority for the proposition that the Governor's power to pay judgments extends to contracting for judgments. If no such authority exists, please tell us how you plan to confirm that the $60 million payment complies with the Illegal Appropriations law.

We also are concerned because, as you know, there are not nearly enough unappropriated funds in existence each month to make the monthly payments under the settlement. Yet, Mr. Troutman's opinion ignores this issue. We therefore must ask that you provide an explanation as to how it can be legal to contract to pay a judgment on a monthly basis when there are inadequate funds to satisfy that judgment absent an appropriation.

Next, the settlement contract requires interim payments now, before any judgment is final. The Governor's Organic Act power only allows him to pay *final* judgments. This is another potential illegality not addressed by Mr. Troutman regarding which we require an answer.

Further, as you mentioned at our most recent meeting, it is unlawful under Guam law for the Director of Revenue and Taxation to pay untimely tax claims. This settlement appears to require the payment of untimely tax claims. Again, Mr. Troutman's opinion does not address this issue or our earlier questions regarding why claims that appeared barred by the statute of limitations were included. Please also address this issue in your response.

Finally, we remain unclear as to how the Governor can contract to pay a judgment for attorneys' fees. Although the Governor can pay tax judgments out of unappropriated funds, the Organic Act is silent as to attorneys' fees. In this final regard, we found the opinion did not address the Governor's concerns.

As you know, the Governor supports the EITC and its payment to Guam's taxpayers. But he cannot support its payment through unlawful means, especially where millions of dollars are being paid to private attorneys. The Governor is under a continuing duty to report to the Legislature once his investigation of an unlawful contract is complete. Even as it stands now, it is clear that such a report is required because the contract contains unlawful provisions. Further, it also appears that the Governor will have to immediately challenge the validity of the settlement in District Court.

I received the Petitioner's Motion for Orders approving the Administration Plan and Amended Notice and for Order establishing the Fairness Hearing Date and Objection and Opt Out Date and Vacating the April 30, 2002 Scheduling Order and the supporting documents. Therefore, we must respectfully require that these issues be addressed in a written response by next week. We also direct you to take no action on the Petitioner's motion absent the Governor's consent. We also renew our request that we immediately be provided with all documents regarding the history of the negotiations of the settlement contract and the advice provided with regard to the contract.

Very truly yours,

Shannon Taitano

# EXHIBIT F

FILED
DISTRICT COURT OF GUAM

OCT 2 9 2004

MARY L. M. MORAN
CLERK OF COURT

# UNITED STATES DISTRICT COURT

## TERRITORY OF GUAM

JAY MERRILL, on his own behalf and on
behalf of all other similarly situated voters
desirous of casting a vote in favor of Proposal
A at a fair and legal election,

     Plaintiffs,

v.

THE GUAM ELECTION COMMISSION;
GERALD A. TAITANO, in his individual
capacity and in his capacity as Executive
Director of the Guam Election Commission; I
MINA' BENTE SIETE NA LIHESLATURAN
GUAHAN (The 27th Guam Legislature);
FELIX P. CAMACHO, in his official capacity
as the Governor of Guam,

     Defendants.

CIVIL CASE NO. CV-04-00046

**ORDER**

  Before the Court is an Amended Stipulation and Proposed Order for Preliminary Injunction signed by Thomas L. Roberts, Esq., attorney for plaintiff and Robert M. Weinberg, Asst. Attorney General, purportedly on behalf of all defendants in this case. For the following reasons, the Court will not accept the stipulation and instead will stay the matter pending the November 2, 2004 election day.

## BACKGROUND

  On October 25, 2004, plaintiff filed this action in the Superior Court of Guam against the Guam Election Commission, Gerald Taitano in his individual and official capacity as Executive Director of the Guam Election Commission, the Legislature of Guam and Felix P. Camacho in his official capacity as the Governor of Guam. Claiming that the Guam Election Commission's actions violated federal constitutional law via 42 U.S.C. § 1983 as well as Guam statutory law, plaintiff sought,

1. An immediate pre-election judicial declaration on (a) the legal efficiency of the Proposal A ballot pamphlets mailed to the voters by the Directors and the Guam Election Commission, (b) an immediate, pre-election judicial declaration on whether the results of any vote on Proposal A on November 2, 2004 will be invalid as a result of (i) the ballot pamphlets mailed to the voters, and/or (ii) as a result of the mass public uncertainty caused by the Attorney General's opinion.

2. For a preliminary and permanent injunction (a) enjoining the scheduled November 2, 2004 vote on Proposal A, (b) compelling the Director and the Election Commission to remove the Proposal A ballots from the polling places on November 2, 2004, and (c) enjoining the Director and the Election Commission from tabulating any absentee votes cast on Proposal A.

3. For an order compelling the Governor to call for a special election on Proposal A pursuant to 3 G.C.A. § 13103, or an order compelling the Legislature to call for a special election on Proposal A pursuant to 3 G.C.A. § 17203, or an order compelling the Election Commission to schedule and hold a special election on Proposal A, to be held not later than sixty (60) days after the date of the court's order...

Asserting the existence of federal question subject matter jurisdiction, the Attorney General of Guam removed the case to this Court on October 26, 2004. On October 28, 2004, plaintiff and the Attorney General of Guam ("AG") filed the Amended Stipulation and Proposed Order for Preliminary Injunction now before the Court. In the Stipulation, the plaintiff and AG agreed that the Guam Election Commission violated Guam law and the United States Constitution. Counsel further agreed that, as a result of the Guam Election Commissions' failures, Proposal A was invalid. Finally, plaintiff and the AG agreed that the Guam Election Commission was preliminarily enjoined from counting and tabulating the votes for and against Proposal A. Subsequent to the filing of the Stipulation, the Guam Legislature and Governor Camacho filed objections to the Stipulation. Further, it has come to the attention of Court that the Legislature has passed, and the Governor has signed into law on October 27, 2004, Bill 374, a bill apparently meant to remedy any defects surrounding Proposal A.

## DISCUSSION

1. There now appears to be a controversy as to whether the AG represents the defendants in this case. In the Notice of Removal, the AG claims that it represents all defendants in this case. Nevertheless, separate attorneys have entered appearances on behalf of the Legislature and the Governor.

Furthermore, the Legislature and the Governor filed objections to the stipulation. It seems inappropriate to bind the Government of Guam to a stipulation and order where it appears that the AG may not be the government's counsel. Accordingly, the Court will not accept the stipulation.

**2.** The Court will not grant a preliminary injunction and will also *sua sponte* stay this action pending the November 2, 2004 election results.

    **a.** The probability of success for plaintiff has become less clear with the passage of Bill 347. Moreover, plaintiff will not suffer irreparable harm. Plaintiff will still be able to litigate the validity of Proposal A and possibly compel the government to conduct another election.

    **b.** The balance of harms also weighs in favor of not granting a preliminary injunction and staying this action pending the November 2, 2004 election results. If Proposal A passes, then this whole action becomes moot. If Proposal A fails, plaintiff still has an opportunity to test the lawfulness of Proposal A's electoral process. If the process is lawful, then Guam saves the expense of conducting another election. If found unlawful, then another election is conducted and plaintiff is exactly where he always wanted to be.

    **c.** Not granting a preliminary injunction and staying the action pending the November 2, 2004 election results will also be in the public interest. This is a matter of deep public concern. Much time, money and effort has been put into this election by all citizens on both sides of the issue. It is always in the public interest for the citizenry to have their say on an important matter such as Proposal A.

///

///

///

///

///

///

3

# CONCLUSION

Based on foregoing, it is **ORDERED** that Amended Stipulation and Proposed Order for Preliminary Injunction filed on October 28, 2004 is **DENIED**. It is further **ORDERED** that this matter is stayed pending the November 2, 2004 election results.

DATED this **29** day of October, 2004

Alex R. Munson
Designated Judge, United States District Court

# EXHIBIT G


**Felix Perez Camacho**
*Governor*

**Kaleo Scott Moylan**
*Lieutenant Governor*

1 8 NOV 2004

Douglas B. Moylan
Attorney General of Guam
Office of the Attorney General
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910

> Re:  Julie Babauta Santos v. Felix P. Camacho, Governor of Guam, et
> al; District Court of Guam, Civil Case No. 04-00006

Dear Doug:

Today I contacted Steve Cohen regarding the status of the response to Petitioner's October 25, 2004 motion to approve the proposed administrative plan. Although this response was originally due today, Mr. Cohen previously had stated in writing that he would obtain an extension in this matter until November 29, 2004.

Mr. Cohen informed me that he had not obtained an extension and that you were now in charge of this matter. He failed to provide any other information regarding this matter. Ray Souza then attempted to contact you and several other assistant attorneys generals (Basil O'Mallen, Joe Guthrie, and Steve Cohen) regarding this matter. Neither he nor I received any response.

The Governor has repeatedly requested that his office be kept fully informed regarding this matter in which he is a named defendant. He also has requested that no actions be taken on his behalf absent his instructions. Nonetheless, because of the failure of your office to keep us informed regarding this case, at present we do not even know whether your office has responded to the administrative plan or obtained an extension.

Please contact either myself or Ray Souza tomorrow morning to update the status of this case and the motion to approve the administrative plan. If your office has filed any documents despite not having consulted with the Governor's office, please provide them immediately.

Very truly yours,

Shannon Taitano