SHANNON TAITANO, ESQ.
**OFFICE OF THE GOVERNOR OF GUAM**
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
Telephone:     (671) 472-8931
Facsimile:      (671) 477-4826

**RODNEY J. JACOB, ESQ.**
**DANIEL M. BENJAMIN, ESQ.**
**CALVO AND CLARK, LLP**
Attorneys at Law
655 South Marine Drive, Suite 202
Tamuning, Guam 96913
Telephone:     (671) 646-9355
Facsimile:      (671) 646-9403

Attorneys for *Felix P. Camacho, Governor of Guam*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, et. al., | CIVIL CASE NO. 04-00006 |
| Petitioners, | |
| -v- | **DECLARATION OF RODNEY J. JACOB IN SUPPORT OF: (1) MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ATTORNEY GENERAL'S BRIEF; AND (2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO PETITIONER'S MOTION FOR APPROVAL OF THE ADMINISTRATIVE PLAN** |
| FELIX P. CAMACHO, etc., et. al. | |
| Respondents. | |

I, RODNEY J. JACOB, declare that:

1.     I am a partner with the law firm of Calvo and Clark, LLP, counsel of record for Respondent Felix P. Camacho, Governor of Guam. I make this declaration on personal knowledge, and if called to testify I could and would testify competently thereto.

2.     Attached as Exhibit "A" is a true and correct copy of a letter to Stephen A. Cohen from Shannon Taitano dated September 16, 2004.

3. Attached as Exhibit "B" is a true and correct copy of a letter to Stephen A. Cohen from Shannon Taitano dated October 7, 2004.

4. Attached as Exhibit "C" is a true and correct copy of a Memorandum to the Attorney General from Charles Troutman dated October 13, 2004.

5. Attached as Exhibit "D" is a true and correct copy of a Memorandum to Shannon Taitano, Esq., Artemio R. Ilagan, and Lourdes M. Perez from Stephen A. Cohen dated October 27, 2004. Pleadings that were attached to this Memorandum were omitted because of their length.

6. Attached as Exhibit "E" is a true and correct copy of a letter to Stephen A. Cohen from Shannon Taitano dated October 28, 2004.

7. Attached as Exhibit "F" is a true and correct copy of a letter to Shannon Taitano from Douglas B. Moylan purportedly dated November 5, 2004 with enclosures. It is stamped received on November 8, 2004.

8. Attached as Exhibit "G" is a true and correct copy of a letter to Douglas B. Moylan from Shannon Taitano dated November 8, 2004.

9. Attached as Exhibit "H" is a true and correct copy of a letter to Douglas B. Moylan from Michael E. Phillips dated November 12, 2004.

10. Attached as Exhibit "I" is a true and correct copy of the Answer to Intervening Defendant-Appellee's Petition for Rehearing and Suggestion for Rehearing En Banc stamp filed August 1, 2003 in the Supreme Court of Guam Pangelinan versus Gutierrez case.

11. Attached as Exhibit "J" is a true and correct copy of the Memorandum of Points and Authorities in Support of the Governor of Guam's Motion to Dismiss stamped filed on October 28, 2004.

12. Attached as Exhibit "K" is a true and correct copy of the Memorandum of Points and Authorities of Defendants Government of Guam and Attorney General Douglas B. Moylan in Support of Motion Under FRCP 12(b)(1) & (6) to Dismiss First Amended Complaint for Lack of Subject Matter Jurisdiction and Failure of Plaintiff to State a Claim and to Strike Defendant Attorney General Moylan as a Party Under FRCP 12(b)(6) & 21 & 26 U.S.C. § 7422(f)(1) & (2) for Failure of Plaintiff to State a Claim and Misjoinder stamped filed October 28, 2004.

I declare under penalty of perjury pursuant to the laws of the United States and of the Territory of Guam that the foregoing declaration is true and correct.

Executed this 24th day of November, 2004, in Tamuning, Guam.

_____
**RODNEY J. JACOB**

# EXHIBIT A

 *Office of the Governor of Guam*

P.O. Box 2950 Hagåtña, Guam 90932
TEL (671) 472-8931 · FAX (671) 477-4826 · EMAIL: governor@mail.gov.gu

**Felix Perez Camacho**
*Governor*

**Kaleo Scott Moylan**
*Lieutenant Governor*



1 6 SEP 2004

Stephen A. Cohen
Assistant Attorney General
Office of the Attorney General
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910

      Re:    Julie Babauta Santos v. Felix P. Camacho, Governor of Guam, et al;
             District Court of Guam, Civil Case No. 04-00006

Dear Steve:

      We have reviewed the materials that you forwarded to our offices on September 9 from Mike Phillips. We have concerns regarding Mr. Phillips' proposal. I understand from Ray Souza that you described it as an attempt by Mr. Phillips to get a new settlement under the guise of an administration plan. We agree.

      However, we have greater concerns regarding the settlement as a whole that we would like addressed before any consideration is given to Mr. Phillips' proposal. As you know, Governor Camacho was never consulted with regard to the June 2004 settlement agreement entered into by Attorney General Moylan and Acting Governor Moylan. Therefore, we would like this opportunity to raise the concerns the Governor has regarding the agreement.

The Governor's most significant concern is that the settlement is not contingent on legislative funding. This is a concern as a practical matter because the Legislature has failed to make an appropriation since the settlement was executed. However, even if the Legislature had made an appropriation, we would be concerned because we are unsure of whether the contract complies with Guam law.

Guam law forbids any officer of the Government of Guam from involving "the government of Guam in any contract or other obligation, for the payment of money for any purpose, in advance of the appropriation made for such purpose." 5 G.C.A. § 22401(a)(3); *see Pangelinan v. Gutierrez*, 2003 Guam 13 (2003), *reconsidered in part on other grounds* 2004 Guam 16. Further, Guam law forbids the participation in any contract that requires the expenditure of non-appropriated funds. *See* 5 G.C.A. § 22401(a)(2).

Based on these laws, we are concerned that the settlement agreement is invalid. We therefore require an explanation as to how the settlement agreement complies with Section 22401's ("Illegal Expenditures") provisions before we can further respond.

We also are concerned with certain structural problems that we see with the settlement agreement. It appears that under the settlement agreement, and under Mr. Phillips' proposed administrative plan, Mr. Phillips will receive 10% of the $60 million no matter how many prospective class members may opt-out. Given that the settlement has not led to a complete peace for the Government, but instead gave birth to both the intervention motions and the new *Torres* case, we are concerned that the Government will be spending $6 million to purchase a

settlement with only a limited number of plaintiffs while facing future liability to a greater number of plaintiffs. This is another area that we would like to have addressed in your response.

Further, as the agreement is written, the Government could end up paying the opt-in plaintiffs 100% if there are a substantial number of opt-outs. Given the potentially strong defenses that existed to the class action and lack of any litigation in the case, we would like to know what procedural safeguards exist regarding this matter.

We also would like a better understanding of how the determination was made to include what appear to be time-barred claims. Related to this, we would like to know why claims from 1996 were favored in the settlement, even though those claims are arguably less meritorious given the statute of limitations issue.

The final concern we have regarding the settlement is our lack of knowledge of the history of the negotiations of the settlement. We want to review all information concerning the settlement and its negotiations so that we are fully informed prior to the hearing. Therefore, please transmit to us the information you have on the negotiations, including the materials exchanged in negotiating the settlement, how fees were agreed to in the settlement, letters and memos regarding compliance with Guam's illegal expenditure laws (§ 22401), and any other information that may be relevant. We want to review this information to evaluate Mr. Phillips' request and to give your office instructions on how to proceed. Further, we want to ensure that all such information is preserved during any litigation relating to EITC.

Assuming our concerns regarding the settlement are addressed, we also have concerns regarding Mr. Phillips' proposal. The objective of the plan appears to be securing payments of attorneys' fees as each payment is made into the settlement fund. Any condition permitting lawyers to receive fees before amounts are actually disbursed to class members is obviously unacceptable to the Governor.

Next, Mr. Phillips' plan seeks to place the burden of almost one million dollars in administration costs on the Government. This would appear to be another unappropriated expenditure, and on that ground alone the Governor must refuse. Further, one million dollars would be a material change to the settlement at a time when we all know the Government of Guam continues to be strapped for cash.

Lastly, we are concerned that the proposed dates in the administrative plan are all in the immediate future. Given the appeal filed by one of the would-be interveners, it would be of concern to us were the settlement to be approved before the appeal is resolved. It would be unfortunate if funds were distributed, only to have the settlement thrown out based on the appeal.

We realize that we have raised multiple issues, responding to which will require some effort. However, we hope that you are able to respond quickly as some of the issues (particularly with regard to the illegal expenditures issue) place the Governor in a position where he may need to act. Thank you for your time on this matter.

Very truly yours,

Shannon Taitano

# EXHIBIT B



*Office of the Governor of Guam*

P.O. Box 2950  Hagåtña, Guam 96932

TEL. (671) 472-8931 · FAX. (671) 477-4826 · EMAIL: governor@mail.gov.gu

**Felix Perez Camacho**
*Governor*

**Kaleo Scott Moylan**
*Lieutenant Governor*

# CONFIDENTIAL

— 7 OCT 2004

Stephen A. Cohen
Assistant Attorney General
Office of the Attorney General
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910

> **Re:** Julie Babauta Santos v. Felix P. Camacho, Governor of Guam, et al;
> District Court of Guam, Civil Case No. 04-00006

Dear Steve:

On September 16, 2004, I sent you a letter raising several serious questions the Governor had with regard to the settlement agreement in this matter. Over two weeks have passed and we have received no response.

Although we respect the competing demands on your time, the issues that we have raised require an immediate answer. Pursuant to 5 G.C.A. § 22401, after an investigation, the Governor is obligated to report any violation of the prohibition on Illegal Expenditures. If we do not receive a response promptly, we may not have a choice but to assume that the law was violated and that the violation must be reported. I very much hope to receive a response from you presenting your position before such a decision must be made.

In the meantime, I trust that your office has not made any agreement with Mr. Phillips concerning his requests and draft motion papers. We expect that you will take no action except upon instructions of the Governor's Office.

Thank you for your immediate attention to this matter.

Very truly yours,

Shannon Taitano

# EXHIBIT C



# GOVERNMENT OF GUAM
### CONSUMER COUNSEL
### OFFICE OF THE ATTORNEY GENERAL
### HAGÅTÑA, GUAM



October 13, 2004

MEMORANDUM

**To:**     Attorney General

**From:**   Charles Troutman

**Subject:**     Santos EITC Settlement — Need for Legislative appropriation of "Refunds"

## CONFIDENTIAL ATTORNEY- CLIENT & WORK PRODUCT COMMUNICATION

You have asked me to advise you on certain questions raised by the Governor and other of our clients with regards to implementing the EITC settlement in the Santos case. In this memo I will examine only the question whether the Governor must seek a legislative appropriation before paying the settlement.

The EITC settlement consists of several elements to be performed by the government of Guam: (1) funding and payment of $60 million in delinquent EITC refunds to qualified taxpayers for tax years 1996 and 1998 through 2003 in accordance with the multi-year schedule established in the settlement agreement; (2) payment of $6 million in attorney fees to class counsel on a pay-as-you-go basis from the $60 million in EITC refunds to occur over the life of the settlement schedule; (3) commitment to apply, and to pay, EITC refunds to qualified taxpayers for all future tax years, commencing with 2004; and (4) payment of approximately $1 million in administrative costs by the Department of Revenue and Taxation to implement the settlement, which amount appears to be in addition to and separate from the $60 million for EITC refunds and attorneys fees.

My opinion is that the Governor does not have to seek an appropriation for items 1 and 2. On the on other hand, he must have appropriations for items 3 and 4. In reaching these conclusions, I am assuming that the EITC validly applies to Guam, a matter of doubt to some, but rendered moot by the settlement.

Any answer must stem, first, from the Organic Act of Guam. This settlement will result, *inter alia*, in a judgment for money due against the government of Guam. The Organic Act states that, in such cases:

> When any judgment against the government of Guam under this paragraph [for an unpaid income tax refund] has become final, the Governor shall order the payment of such judgment out of any unencumbered funds in the treasury of Guam. 48 U.S.C.A. §1421i(h)(3).

Courts have long held that Congress has the power to legislate directly for a territory as if Congress were a state legislature. This was recently reaffirmed by the 9 th Circuit in *People v. Guerrero*, 290 F.3d 1210 (2002):

> *See, e.g., First Nat'l Bank v. County of Yankton,* 101 U.S. 129, 133, 25 L.Ed. 1046 (1879) ( "[Congress] may make a void act of the territorial legislature valid, and a valid act void. In other words, it has full and complete legislative authority over the people of the Territories and all the departments of the territorial governments."); at 1221-2.

The Organic Act completely occupies the authority Guam has over the Territorial Income Tax, restricting the Legislature to those matters not covered (very few) by the Act. A good example is in Section 11 of the Organic Act where Congress has permitted the Legislature to adopt surcharge on the Territorial Income Tax of up to 10%. While Guam may adopt its own income tax structure pursuant to another federal law, it has not yet done so and, therefore, is still subject to the existing mirror-image income tax imposed by the Organic Act.

It is my opinion, that in the case of paying a _judgment_ obtained against the government for the matters stated in the Organic Act, including refund of taxes (item 1 above), Congress has legislated the authority to pay notwithstanding the absence of a legislative appropriation. In fact, the language is mandatory – "the Governor shall order . . .". If he does not order the payment of a judgment for an unpaid income tax refund from any unencumbered funds, he would be subject to a writ of mandate from the District Court ordering him to do so.

2

EITC payments are treated as refunds of income tax overpayments under the U.S. Internal Revenue Code mirrored in Guam, and are subject to the same rules as ordinary income tax refunds. *Sorenson v. Secretary of the Treasury of the United States*, 475 U.S. 851, 106 S.Ct. 1600, 89 L.Ed. 2d 855 (1986); *Israel v. United States*, 356 F.3d 221 (2nd Cir. 2004). Accordingly, payment of the judgment to be entered by the District Court of Guam for unpaid EITC refunds covering tax years 1986 and 1988 through 2003 will be subject to the provisions of the Organic Act, 48 U.S.C.A. §1421i(h)(3), requiring the Governor to pay the judgment "out of any unencumbered funds in the treasury of Guam" without regard to appropriation by the Legislature.

There have been no decided cases defining the term "unencumbered funds in the treasury of Guam", although definitions of "unencumbered funds" are found in other contexts. See *United States v. Kim* 111 F. 3d 1351 (7th Cir. 1997)(defining "unencumbered funds" for purposes of the trust fund penalty of Section 6672 of the Internal Revenue Code). However, the common understanding of this term in Guam is that it means any funds not obligated by contract or other order, for example, wages. When it comes to judgments for delinquent income tax refunds, the Organic Act requires that payment be from any unencumbered funds within the treasury of Guam, not just from funds allocated for the purpose of tax refunds by the Legislature. Therefore, the Governor may, and indeed must, pay the judgment for refunds of the EITC from any unencumbered funds in the treasury of Guam.

Moreover, no legislative appropriation will be needed regarding payment of attorney fees to class counsel under the judgment (item 2 above). The attorneys fees to be paid to class counsel are not a separate amount awarded by the court against the government. Rather, the attorney fees are an obligation imposed on the taxpayers and will be paid by them to class counsel from their EITC refunds, which is their property. Because the Governor does not have to obtain an appropriation from the Legislature to pay the judgment for the delinquent EITC refunds covering tax years 1996 and 1998 through 2003, which is the source of the attorneys fees, he does not have to obtain an appropriation for the attorneys fees (I make no opinion as to the reasonableness of the amount of attorneys fees sought by class counsel in the settlement, which is a different issue).

On the other hand, the obligation undertaken by the government in the settlement to pay future EITC refunds on annual basis hereafter to qualified taxpayers (item 3 above), commencing with tax year 2004, is not a money judgment for refunds and, therefore, is not subject to the provisions of the Organic Act, 48 I U.S.C.A. §1421i(h)(3), requiring the

3

Governor to pay a judgment for unpaid refunds "out of any unencumbered funds in the treasury of Guam". Consequently, it is proper and necessary for the Legislature to annually appropriate funds for the payment of such refunds, which the Legislature did for fiscal years 1998 and 1999 in the Guam Earned Income Program, 11 G.C.A. §42104.

Although the U.S. Congress in 31 U.S.C. §1324 has made a continuing appropriation to the Department of Treasury to pay U.S. tax refunds, this appropriation is not mirrored in Guam. The Organic Act provides for mirroring of the Internal Revenue Code which is found in Article 26 of U.S.C., but not Title 31 of U.S.C.

The settlement also provides for a $1 million "pot" to be used as administration costs by the Department of Revenue and Taxation to implement the settlement and the payout under it (item 4 above). As these funds appear to come from the General Fund and are separate from and in addition to the $60 million EITC settlement amount, then there is an absolute requirement that the moneys be appropriated by the Legislature, since these are for the general operations of the Department of Revenue & Taxation. They would not be part of a judgment for delinquent income tax refunds. I assume that the $1 million will be payable over several years and need not be appropriated all at once.

The Governor and our other clients would not be subject to the provisions and penalties set forth in 5 G.C.A. §22401 regarding the expenditure of unappropriated funds to the extent that funds under the EITC settlement (items 1 and 2 above) are paid pursuant to the Organic Act, 48 U.S.C.A. §1421i(h)(3), requiring judgments for unpaid income tax refunds to be paid "out of any unencumbered funds in the treasury of Guam". However, the expenditure of unappropriated funds for other parts of the settlement that do not come within the scope of this Organic Act provision regarding payment of judgments for unpaid income tax refunds (items 3 and 4 above) would expose the Governor and our other clients to possible liability under 5 G.C.A. §22401.

I trust that this memorandum fully answers your questions. I would be pleased to answer any further questions you may have regarding this matter.

CHARLES H. TROUTMAN

# EXHIBIT D



## Office of the Attorney General
### Douglas B. Moylan
Attorney General of Guam
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 USA
(671) 475-3324    (671) 472-2493 (Fax)
www.guamattorneygeneral.com    law@mail.justice.gov.gu

October 27, 2004

**MEMORANDUM**   Confidential Attorney-Client and Work Product Communication

| | |
|---|---|
| **TO:** | Shannon Taitano, Esq.<br>Legal Counsel to Governor Felix P. Camacho<br>Adelup, Guam |
| | Artemio R. Ilagan, Director<br>Department of Revenue and Taxation<br>Tiyan, Guam |
| | Lourdes M. Perez, Director<br>Department of Administration<br>Hagatna, Guam |
| **FROM:** | Stephen A. Cohen<br>Assistant Attorney General<br>Hagatna, Guam |
| **RE:** | Julie Babauta Santos v. Felix P. Camacho, Governor of Guam, et al<br><u>District Court of Guam, Civil Case No. 04-00006</u> |

I am enclosing for your information copies of the following motion papers that were served on our office:

1.  Petitioner's Motion for Orders approving the Administration Plan and Amended Notice and for Orders establishing the Fairness Hearing Date and Objection and Opt Out Date, and Vacating the April 30, 2002 Scheduling Order, with attached Administration Plan and Amended Notice of Class Action and Proposed Settlement;

2        Memorandum of Points and Authorities in Support of Petitioner's Motion for Orders
         approving the Administration Plan and Amended Notice and for Orders establishing the
         Fairness Hearing Date and Objection and Opt Out Date and vacating the April 30, 2004
         Scheduling Order;

2.       [Proposed] Order approving Administration Plan.

I am also enclosing for your information a copy of my letter to attorney Michael Phillips, dated
today, requesting a continuance of the date for the defendants' response to his motion.





## Office of the Attorney General
Douglas B. Moylan
Attorney General of Guam
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910  USA
(671) 475-3324    (671) 472-2493 (Fax)
www.guamattorneygeneral.com    law@mail.justice.gov.gu

October 27, 2004

Michael F. Phillips, Esq.
Phillips & Bordallo, P.C.
410 West O'Brien Drive
Hagatna, Guam 96910-5044

Re:  Santos v. Camacho, et al, District Court of Guam Civil Case No. 04-00006

Dear Mike:

Your motion papers in the above matter were forwarded to me yesterday. I phoned you at your office but your receptionist said you were busy and that she would give you a message that I called. I did not hear back from you.

I am heavily involved in a major ADA case in District Court that is going to trial on November 15th, *Tuimanglo v. Cumacho, et al,* Civ. No. 01-00047. Because I am having to spend an enormous amount of time preparing for the trial, including the preparation of witnesses and drafting a witness list, the preparation of exhibits and drafting an exhibit list, the drafting of a pretrial order and a trial brief, visiting the locations of the sites subject to the case, conferring with opposing counsel, preparing objections to opposing counsel's witness list and exhibit list, preparing a motion in limine, and attending a final pretrial conference, it will be extremely difficult for me to respond to your motion by the due date, November 8th. I would appreciate very much if you would kindly extend to me the courtesy of continuing the date for my response to your motion to November 29th.

Your prompt attention to this matter is requested.

Very Truly Yours,

DOUGLAS B. MOYLAN
Attorney General of Guam

Stephen A. Cohen
Assistant Attorney General

# EXHIBIT E



*Office of the Governor of Guam*

P.O. Box 2950  Hagåtña, Guam 96932
TEL. (671) 472-8931 • FAX: (671) 477-4826 • EMAIL: governor@mail.gov.gu

**Felix Perez Camacho**
*Governor*

**Kaleo Scott Moylan**
*Lieutenant Governor*

2 8 OCT 2004

Stephen A. Cohen
Assistant Attorney General
Office of the Attorney General
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910

Re:   Julie Babauta Santos v. Felix P. Camacho, Governor of Guam, et al;
      District Court of Guam, Civil Case No. 04-00006

Dear Steve:

The Governor has received and reviewed Mr. Troutman's memorandum of October 13, 2004. Given the conclusion that at least part of the settlement contract is illegal, the Governor can see no option but to raise this issue with the Court and Legislature as required by law. Further, the Governor is not assured by this memorandum that the $60 million payment is legal. Therefore, before acting, he requires an immediate response with regard to several issues regarding the validity of that payment.

Mr. Troutman states that the $60 million payment is legal because the Governor has the power to pay tax judgments from unappropriated funds. However, while the settlement calls for a judgment, it is still a contract. Equivalent federal law appears to treat settlements as subject to the restriction on contracting for unappropriated funds. *See Blackhawk Heating & Plumbing Co. v. United States*, 622 F.2d 539, 542, 553 (Claims Ct. 1980) (enforcing provision of settlement contract that was contingent on funding pursuant to federal Anti-Deficiency Act). Accordingly, it appears that the power to pay a judgment under the Organic Act may not be the same as the power to contract for a judgment. We would like for you to identify definitive authority for the proposition that the Governor's power to pay judgments extends to contracting for judgments. If no such authority exists, please tell us how you plan to confirm that the $60 million payment complies with the Illegal Appropriations law.

We also are concerned because, as you know, there are not nearly enough unappropriated funds in existence each month to make the monthly payments under the settlement. Yet, Mr. Troutman's opinion ignores this issue. We therefore must ask that you provide an explanation as to how it can be legal to contract to pay a judgment on a monthly basis when there are inadequate funds to satisfy that judgment absent an appropriation.

Next, the settlement contract requires interim payments now, before any judgment is final. The Governor's Organic Act power only allows him to pay *final* judgments. This is another potential illegality not addressed by Mr. Troutman regarding which we require an answer.

Further, as you mentioned at our most recent meeting, it is unlawful under Guam law for the Director of Revenue and Taxation to pay untimely tax claims. This settlement appears to require the payment of untimely tax claims. Again, Mr. Troutman's opinion does not address this issue or our earlier questions regarding why claims that appeared barred by the statute of limitations were included. Please also address this issue in your response.

Finally, we remain unclear as to how the Governor can contract to pay a judgment for attorneys' fees. Although the Governor can pay tax judgments out of unappropriated funds, the Organic Act is silent as to attorneys' fees. In this final regard, we found the opinion did not address the Governor's concerns.

As you know, the Governor supports the EITC and its payment to Guam's taxpayers. But he cannot support its payment through unlawful means, especially where millions of dollars are being paid to private attorneys. The Governor is under a continuing duty to report to the Legislature once his investigation of an unlawful contract is complete. Even as it stands now, it is clear that such a report is required because the contract contains unlawful provisions. Further, it also appears that the Governor will have to immediately challenge the validity of the settlement in District Court.

I received the Petitioner's Motion for Orders approving the Administration Plan and Amended Notice and for Order establishing the Fairness Hearing Date and Objection and Opt Out Date and Vacating the April 30, 2002 Scheduling Order and the supporting documents. Therefore, we must respectfully require that these issues be addressed in a written response by next week. We also direct you to take no action on the Petitioner's motion absent the Governor's consent. We also renew our request that we immediately be provided with all documents regarding the history of the negotiations of the settlement contract and the advice provided with regard to the contract.

Very truly yours,

Shannon Taitano

# EXHIBIT F



## Office of the Attorney General
### Douglas B. Moylan
Attorney General of Guam
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 • USA
(671) 475 3324 • (671) 472-2493 (Fax)
www.guamattorneygeneral.com • law@mail.justice.gov.gu



November 5, 2004

Shannon Taitano, Esq.
Legal Counsel
Governor's Office
P.O. Box 2959
Hagatna, Guam 96932

Re: *Julie Babauta Santos v. Felix P. Camacho, Governor of Guam, et al*
    District Court of Guam, Civil Case No. 04-00006

Dear Shannon:

Michael Phillips, attorney for the petitioner, has rejected our request for a continuance of the due date for filing our response to the Petitioner's Motion for Orders approving the Administration Plan and Amended Notice and for Orders establishing the Fairness Hearing Date and Objection and Opt Out Date, and vacating the April 30, 2004 Scheduling Order. I am enclosing a copy of his letter.

In this regard, I wish to acknowledge your letter dated October 29, 2004, received in our office at 4:27 p.m. that day. You have raised several concerns regarding the proposed Administration Plan prepared by Mr. Phillips and the previously signed Settlement Agreement. You have also asked me to provide Governor Camacho with all documents regarding the history of the negotiations of the settlement. Please be advised there is no written documentation regarding the history of the negotiations leading up to the Settlement Agreement.

In earlier letters and memoranda received the week of September 20, 2004 from you, the Director of the Department of Administration and the Director of the Department of Revenue and Taxation, you raised concerns regarding the proposed Administration

*cr-1* 1104 5678

Plan and the Settlement Agreement. In a letter dated October 7, 2004, you purport to instruct this Office to "take no action except upon instructions of the Governor's Office." And in October 29, 2004 letter, you purport to "direct [this Office] to take no action on the Petitioner's motion absent the Governor's consent."

While I understand the Governor has certain concerns regarding the proposed Administration Agreement and the Settlement Agreement, certain facts are crystal clear: The Settlement Agreement was signed on behalf of the Administration by the acting Governor, the acting Director of the Department of Administration and the Director of the Department of Revenue and Taxation. The acting Governor operated as the Government of Guam's chief executive officer under the Organic Act of Guam when he signed the Settlement Agreement, and is binding upon the Government of Guam.

Moreover, the Settlement Agreement directs in Section V that the parties are *required* to prepare and enter into an Administration Plan, which shall cover at a minimum the points set forth in Section V. I reiterate that for all purposes the Governor, the Director of Administration, and the Director of Revenue and Taxation have already signed this Agreement and the Government of Guam is subject to its terms. Subject to the few technical issues discussed below, the only matter at this point-in-time is to implement the Settlement Agreement as required by the Court.

In your October 29, 2004 letter, you state that Governor Camacho disagrees with the Memorandum of Deputy Attorney General Charles Troutman dated October 13, 2004, regarding the extent to which legislative appropriations are needed or not needed to fund the Settlement Agreement. Mr. Troutman concluded that legislative appropriations are needed only to expend funds to pay for the administrative costs to manage the pay-out to EITC claimants under the Settlement Agreement, which costs are estimated by the Director of Revenue and Taxation to be about $1 million, and to fund the yearly payment of current EITC refunds commencing with tax year 2004. Mr. Troutman concluded that no legislative appropriations are needed to fund the $60 million of EITC refunds to be paid to claimants for tax years 1996 and 1998 – 2003 because the payments will be pursuant to the Organic Act of Guam which requires Governor Camacho to pay a final judgment for delinquent income tax refunds out of any unencumbered funds in the treasury of Guam. Mr. Troutman also concluded that no legislative appropriation is needed to pay reasonable attorneys fees to Mr. Phillips because the attorneys fees will be paid by the claimants from their awards of EITC refunds, which will be their property.

The Director of the Department of Revenue and Taxation, Mr. Ilagan, has raised several technical tax issues in his memorandum, dated September 21, 2004. Some of these points appear meritorious. By Monday, November 8, 2004, the due date for responding to the Petitioner's motion, I intend to file a response to the Petitioner's motion advising the Court of the concerns expressed by Director Ilagan, which include whether a legislative appropriation is needed to expend monies to administer the settlement. The

other concerns you and the Director of Administration have raised to the proposed Administration Agreement and the Settlement Agreement are no longer subject to discussion based on the Administration's approval of the Settlement Agreement and Judge Manibusan's preliminary approval of the same.

Regarding your purported instructions that I take no action to respond to the Petitioner's motion without first obtaining the consent of the Governor, as the Governor is well aware, as Guam's chief legal officer under the Organic Act of Guam and the laws of Guam, I am in charge of conducting litigation for the government of Guam.

> The Organic Act makes the Attorney General the Chief Legal Officer of the government of Guam. The Governor is head of the executive branch but *the Attorney General is the chief legal officer of the government of Guam, which includes not only the executive branch, but also the legislative and judicial branches. Thus, the sphere of the Attorney General's legal cognizance is within the entire government of Guam, legislative and judicial, not just the executive branch.*

*Moylan v. Camacho*, Superior Court of Guam, Special Proceeding Case No. SP230-03, "Decision and Order," dated November 10, 2003. p. 38 (Manibusan, J.) (emphasis in bold added). Even before Judge Manibusan's Decision and Order in *Moylan v. Camacho*, and prior to inclusion in the Organic Act by Congress in 1998 of the term "Chief Legal Officer," the Legislature of Guam recognized that it is the Attorney General who controls litigation on behalf of the Government of Guam.

> Notwithstanding any other provision of law, *the Attorney General shall have cognizance of all legal matters... involving the Executive Branch of the government of Guam,* its agencies, instrumentalities, public corporations, autonomous agencies and the Mayors Council, all hereinafter referred to as "agency."

5 G.C.A. § 30102 (emphasis added). *See also*, 5 G.C.A. § 30109 (the Attorney General shall "[c]onduct on behalf of the government of Guam all civil actions in which the government is an interested party"). Finally, 5 G.C.A. § 30103 provides the "Attorney General shall have, in addition to the powers expressly conferred upon him by this Chapter, *those common law powers which include, but are not limited to,* the right to bring suit to challenge laws which he believes to be unconstitutional...." (Emphasis added.) I would be happy to brief this for you again, as we did recently in *Merrill v. Guam Election Commission*, Civil Case No. 04-00046 (D.Guam); and *Schulte v. Guam Election Commission*, Civil Case No. 04-00045 (D.Guam), but I am sure you are by now

familiar with the considerable case law on the subject. If you have any legal basis for argument to the contrary, I would be happy to consider it.

While I respect Governor Camacho's concerns, my oath of office requires me to take appropriate action with respect to the Petitioner's motion. If I were to defer to Governor Camacho's request in this instance and take no action to respond to the Petitioner's motion without first obtaining the Governor Camacho's consent, I would put this case and the legal interests of the Government of Guam in jeopardy as the Petitioner's motion would be granted by default.

I trust that this letter fully answers the matters raised in your letters.

Very Truly Yours,

Douglas B. Moylan



The Law Offices of
# PHILLIPS & BORDALLO
A Professional Corporation

410 West O'Brien Drive, Suite 102 Hagåtña, Guam 96910-5044
Tel: (671) 477-ABCD (2223) • Fax: (671) 477-2FAX (2329)



October 27, 2004

RECEIVED
OCT 27 2004
4:02 PM
ATTORNEY GENERAL'S OFFICE

Steven Cohen
Assistant Attorney General
Department of Law
120 W. O'Brien Dr., Ste. 2-200E
Hagåtña, Guam 96910

RE: Santos v. Camacho, et al. District Court of Guam Case No. 04-00006

Buenas!

I am writing regarding your request for an extension to respond to the motion we filed earlier this week regarding the above case. Unfortunately, I must decline your request for an extension.

In early September, I forwarded you essentially the same documents we filed earlier this week with hope the Petitioners and Respondents could cooperatively seek the Court's approval of the Administration Plan and an Amended Notice, and the establishment of a new Objection and Opt Out Date and Fairness Hearing date.

On June 17, 2004, the District Court signed an order granting preliminary approval of the Settlement Agreement entered into by our clients. We have serious concerns regarding your client's adherence to the terms of the Agreement, including the requirement of monthly deposits into the EIC Settlement Fund.

After not receiving any consideration from your office, I finally came to the conclusion your office did not want to participate on a cooperative basis regarding the substance of our motion. Nevertheless, the motion is straightforward. You did address to me several concerns regarding the Administration Plan, including concerns regarding the Department of Revenue and Taxation's ability to offset claims against prior tax liabilities, and their ability to perform audits of claimants. These issues were addressed and now included in the proposed Administration Plan filed with the Court.

The other issues include the procedure to send individual amended notices to potential EIC Class members, consistent with an earlier stipulation between our offices and filed with the Court. Finally, the motion seeks to establish the necessary scheduling to move this case forward, including the

" I Erensia, Lina'la', Espiritu-ta "

1

establishment of an "Objection and Opt Out Date" and Fairness Hearing date, and the vacating of the previously issued Court scheduling order.

Thus, the issues addressed in the motion filed earlier this week are time-sensitive matters necessary to move this case forward. At the last hearing before the Court, the Court also expressed its desire to move this case forward so that the merits of the Settlement Agreement can finally be tested against any and all objectors that may desire to do so.

It is noteworthy that our office obtained an expedited scheduling order from the District Court prior to the parties entering settlement discussions. We were prepared to move this case quickly if the settlement discussions had not occurred. On behalf of our clients, we simply cannot delay this case any longer, especially considering that the substance of the motion at issue was before your office for consideration almost two months before the filing earlier this week.

In addition, we have attempted to confirm with your office the adherence of your client to the settlement terms regarding deposits into the EIC Settlement Fund, yet have received no confirmation with the exception of the initial deposit on July 17, 2004. Unless we receive assurances from your office by Friday, November 5, 2004, that your client has made the deposits in compliance with the terms of the Agreement, we will have no choice but to bring this matter before the Court.

I do respect and acknowledge your situation as expressed in your letter. However, due to the time-sensitive nature of the requests set forth in the motion, and the continued risks to our clients' interests created by further delays, we simply cannot consent to your request for an extension to file a response.

If you have any questions, please do not hesitate to contact my office.

Si Yu'us Ma'ase,

Michael F. Phillips

2

# EXHIBIT G



*Office of the Governor of Guam*

P.O. Box 2950  Hagåtña, Guam 96932
TEL: (671) 472-8931 • FAX: (671) 477-4826 • EMAIL: governor@mail.gov.gu

**Felix Perez Camacho**
*Governor*

**Kaleo Scott Moylan**
*Lieutenant Governor*

1 8 NOV 2004

Douglas B. Moylan
Attorney General of Guam
Office of the Attorney General
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910

        Re:    Julie Babauta Santos v. Felix P. Camacho, Governor of Guam, et
              al; District Court of Guam, Civil Case No. 04-00006

Dear Doug:

    Today I contacted Steve Cohen regarding the status of the response to Petitioner's
October 25, 2004 motion to approve the proposed administrative plan. Although this
response was originally due today, Mr. Cohen previously had stated in writing that he
would obtain an extension in this matter until November 29, 2004.

    Mr. Cohen informed me that he had not obtained an extension and that you were
now in charge of this matter. He failed to provide any other information regarding this
matter. Ray Souza then attempted to contact you and several other assistant attorneys
generals (Basil O'Mallen, Joe Gutherie, and Steve Cohen) regarding this matter. Neither
he nor I received any response.

    The Governor has repeatedly requested that his office be kept fully informed
regarding this matter in which he is a named defendant. He also has requested that no
actions be taken on his behalf absent his instructions. Nonetheless, because of the failure
of your office to keep us informed regarding this case, at present we do not even know
whether your office has responded to the administrative plan or obtained an extension.

    Please contact either myself or Ray Souza tomorrow morning to update the status
of this case and the motion to approve the administrative plan. If your office has filed
any documents despite not having consulted with the Governor's office, please provide
them immediately.

                      Very truly yours,

                      Shannon Taitano

# EXHIBIT H

The Law Offices of

# PHILLIPS & BORDALLO

A Professional Corporation

410 West O'Brien Drive, Suite 102 Hagåtña, Guam 96910-5044
Tel: (671) 477-ABCD (2223) • Fax: (671) 477-2FAX (2329)

November 12, 2004

Douglas B. Moylan
Attorney General of Guam
Guam Judicial Center, Suite 2-200E
120 West O'Brien Dr.
Hagatna, Guam 96910

Re:   Julie Babauta Santos v. Felix A. Camacho, Governor of Guam, Art Ilagan, Director
      of Revenue and Taxation, Lourdes M. Perez, Director of Administration,
      Government of Guam   CIV04-00006

Buenas!

On November 8, 2004, the District Court issued an Order from United States
District Judge Morrison C. England of the Eastern District of California. The Court Order
informed all parties Magistrate Judge Joaquin V. E. Manibusan, Jr. would resume his
authority over this case through full disposition. As you know, Chief Judge John C.
Coughenour of the Western District of Washington earlier dismissed all motions to
intervene finding them to be without merit.

Just as this case moved towards resolution, it appears through documents the
Governor filed with the Court and his recent statements to the media he intends to again
attempt to block payment of EITC refunds to qualified taxpayers. While the Governor
objected to paying the EITC refunds early in this litigation, a number of significant events
occurred which now force him to make good on this debt.

Prior to his election in 2002, the Governor authored at least one bill while in the
Legislature mandating the payment of EITC refunds. See P.L. 23-74 and P.L. 24-61.
Likewise, he campaigned on this issue while running for Governor in 2002. In 2003, after
his election, the Governor surprisingly chose not to pay the EITC refunds, and in February
of 2004, my client brought suit against the Governor and others to force the long overdue
payment of the EITC.   The Attorney General's Office then filed an answer on behalf of the
Governor and others objecting to the EITC payments and the Government denied all
liability.

Shortly thereafter, the media ran a story revealing the Governor's Chief of Staff had
ordered the Department of Revenue and Taxation to pay at least one EITC and asked that
the scam be kept on the "down low." A day or two later, in response to public outcry, the

" I Errensia, Lina'la', Espiritu-ta "

Governor's Office (notwithstanding the Governor's opposite position taken in Court) invited the public to apply for EITC refunds and announced a "hardship" standard they would follow while making the payments.

The Governor's Office's actions clearly impacted the litigation, and you may remember I announced I would be filing a summary judgment motion within a few days. I also communicated this intent earlier to the District Court during a chambers conference. During the conference, all parties agreed we would first certify the class and then move forward with the summary judgment motion. Your office and the Court agreed to an expedited trial schedule. The actions taken by certain Government officials associated with the secret payment all but guaranteed my client and the class would prevail and would receive the entire amounts due.

During settlement negotiations, the Government pointed out that an immediate award of in excess of 100 Million Dollars ($100,000,000) would bankrupt the Government, collapse the economy, and result in my clients receiving little if any of the EITC payments due. We negotiated in good faith and arrived at a figure of 60 Million Dollars ($60,000,000) with the commitment the Government would commence making monthly deposits of approximately 1.5 Million Dollars ($1,500,000) into a special account and a further commitment the Government would commence payment of the full EITC for tax year 2004.

The District Court tentatively approved the Settlement Agreement after discussing the details with yourself and representatives of the Department of Revenue and Taxation. We then began to work in good faith towards the implementation of the Settlement Agreement. I have no reason to doubt the sincerity of either your office or Department of Revenue and Taxation officials. The Government provided us with proof it made the first deposit required, but subsequent to this initial deposit we have made requests and have not received the proper assurances the Government is in compliance with the Settlement Agreement and specifically with the mandate it make the monthly deposits into a special account. I am sure it is no simple coincidence that just a few days after the last election, the Governor changes his mind and attempts to again block the inevitable payment of EITC refunds.

As you know, the Settlement Agreement is still in force and effect and the Government officials bound by the Agreement are required to make the required monthly deposits. If certain Government officials are not complying with this requirement, I would appreciate your informing us of such failure. We will then be forced to either bring contempt proceedings against the responsible parties or possibly move to have the class removed from the Settlement Agreement. If we elect to move forward without the Settlement Agreement, we will obviously be asking the Court for the full amount due under law and will no longer have reason to provide the Government with a payment plan. While this result may be catastrophic for the Government, the Governor's recent actions leave us no choice but to take immediate steps to remedy his breach of the Settlement Agreement.

Finally, the Governor stated on television last night he would prefer those owed EITC refunds receive One Hundred percent (100%) of the amounts owed. He also represented we had agreed to my receiving Six Million Dollars ($6,000,000) as part of the Settlement Agreement, which as you know, is not true. Our firm requested in our initial Complaint that as part of this contingency case the Court award attorneys fees in the amount of Ten percent (10%). The Court will have to determine what if any amount of attorneys fees will be awarded. In the event he is sincere about modifying the terms of our Agreement to ensure each EITC recipient receive One Hundred percent (100%) of all amounts owed, please let me know. Also, please inform and assure the Governor the amount of attorneys fees awarded is left to the discretion of the District Court.

Thank you for your time and attention. Please contact me should you have questions or wish to further discuss this matter. I look forward to your response.

Si Yu'os Ma'ase',

Michael E. Phillips

cc: J.B.Santos

# EXHIBIT I



**Office of the Attorney General**
**Douglas B. Moylan**
Attorney General of Guam
**Civil Division**
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 ● USA
(671) 475-3324 ● (671) 472-2493 (Fax)
www.guamattorneygeneral.com ● law@mail.justice.gov.gu

# IN THE SUPREME COURT OF GUAM
# HAGÅTÑA, GUAM

| | |
|---|---|
| Vicente C. Pangelinan and Joseph C. Wesley, )<br><br>Plaintiffs-Appellants, )<br><br>vs. )<br><br>Carl T.C. Gutierrez, Governor; John F. )<br>Tarantino, Attorney General; James H. )<br>Underwood, Director, Department of Public )<br>Works; Edward G. Untalan, Administrator, )<br>Guam Economic Development Authority; Carl )<br>J.C. Aguon, Director, Department of Land )<br>Management; Y'Asela A. Pereira, Treasurer of )<br>Guam; GOVERNMENT OF GUAM, )<br><br>Defendants - Appellees, )<br><br>Guam Resource Recovery Partners, )<br><br>Intervening Defendant- )<br>Appellee. )<br>_____ ) | Supreme Court Case No.<br>CVA02-003<br><br>Special Proceedings Case No<br>SP0212-00<br><br><br>**ANSWER TO INTERVENING<br>DEFENDANT-APPELLEE'S PETITION<br>FOR REHEARING AND SUGGESTION<br>FOR REHEARING EN BANC** |

///////////////////////////////////////////

Page 1
*Answer to Intervening Defendant-Appellee's petition for Rehearing & Suggestion for Rehearing En Banc*
Supreme Court Case No. CVA02-003 & Superior Court Case No. SP0212-00
F:\AG_DATA\Litigation\DATA\GUTHRIE\Incinerator.Case final dag 080103.doc\jlr\sia

Pursuant to this Court's order of July 18, 2003, Defendants-Appellees Attorney General, the Governor, the Government of Guam, and the Director of the Department of Land Management hereby submit this Answer to Intervening Defendant–Appellee's Petition for Rehearing and Suggestion for Rehearing *En Banc*.

## I. WHEN ISSUES OF PUBLIC IMPORTANCE ARE PRESENTED, OR TO PREVENT MANIFEST ILLEGALITY, COURTS MAY DECIDE CASES ON ISSUES THE PARTIES HAVE NOT HAD AN OPPORTUNITY TO ADDRESS.

The Intervening Defendant-Appellee (hereinafter referred to as "GRRP") has petitioned for rehearing on the ground that the case was decided on issues GRRP did not have an opportunity to address. However, as the cases cited below hold, when issues of public importance are presented, or to prevent manifest illegality, appellate courts can decide cases on issues raised for the first time on appeal by one of the parties, or, as in this case, issues raised *sua sponte* by the appellate court on appeal.

GRRP asserts as grounds for rehearing the issue of the organicity of Section 4.04(c) of the Solid Waste Construction and Service Agreement (hereinafter referred to as "the agreement") was not raised by the parties at either the trial court or appellate level. Petition at 2-3. GRRP argues issues not raised at the trial level cannot be heard at the appellate level. Petition at 3.

The purpose of this rule was described in *Ward v. Taggart*, 51 Cal. 2d 736, 336 P.2d 534, 537-38 (1959) as follows:

> The general rule confining the parties upon appeal to the theory advanced below is based on the rationale that the opposing party should not be required to defend for the first time on appeal against a new theory that 'contemplates a factual situation the consequences of which are open to

Page 2
*Answer to Intervening Defendant-Appellee's petition for Rehearing & Suggestion for Rehearing En Banc*
Supreme Court Case No. CVA02-003 & Superior Court Case No. SP0212-00
F:\AG_DATA\Litigation\DATA\GUTHRIE\Incinerator Case final dag 080103.doc\jlr/sia

controversy and were not put in issue or presented at the trial.' *Panopulos v. Maders*, supra, 47 Cal. 2d at page 341, 303 P.2d at page 741.

Accordingly, while the purpose of the rule requiring issues to be raised at the trial level is to afford parties an opportunity to address factual issues, where the issues are purely legal, parties can raise them for the first time on appeal.

In *Fox v Ehrmantraut*, 97 Cal. App. 3d 951, 159 Cal. Rptr. 141 (1979), the California Court of Appeals held that a sale of securities was illegal because the seller was not registered pursuant to the California Franchise Investment Law. As a result, the purchaser was entitled to rescind the transaction. The purchaser had raised other defenses to the sellers' claim for the purchase price of the franchise in the trial court, and raised the issue of the securities law violation for the first time on appeal. The court said:

> In elaborating on this crucial issue, as a threshold matter, we emphasize that the question of securities violation was raised for the first time on appeal. While, as a general rule, a party to an action may not change the theory of recovery the first time on appeal, there are exceptions to the general doctrine. One of these exceptions is that an appellant may be permitted to change his theory when a question of law only is presented on undisputed facts appearing in the record (*Ward v Taggart* (1959) 51 Cal. 2d 736, 742, 336 P.2d 534; *Barton v Owen* (1977) 71 Cal. App. 3d 484, 491, 139 Cal. Rptr. 494, *Roberts v Roberts* (1966) 241 Cal. App., 2d, 93, 98, 50 Cal. Rptr. 408; 6 Witkin, Cal. Procedure (2d ed. 1971), S 288, p, 4275) Corollary to this rule is that where, as in the case at bench, the evidence shows that the plaintiff in substance seeks to enforce an illegal contract or recover compensation for an illegal act, the court has both the power and duty to ascertain the true facts in order that it may not unwittingly lend assistance to the implementation of what statute or public policy forbids. In such an instance the party may raise a new issue, not only at any stage of the lower proceedings, but also on appeal (*Lewis & Queen v. N.M. Ball Sons* (1957) 48 Cal. 2d 141, 147-148, 308 P.2d 713; *Morey v Padadini* (1922) 187 Cal. 727, 733-734, 203 P.2d 760; *LaFortune v Ebie* (1972) 26 Cal. App. 3d 72, 75, 102 Cal. Rptr. 588)

159 Cal. Rptr. at 144.

Page 3
*Answer to Intervening Defendant-Appellee's petition for Rehearing & Suggestion for Rehearing En Banc*
Supreme Court Case No. CVA02-003 & Superior Court Case No. SP0212-00
F:\AG_DATA\Litigation\DATA\GUTHRIE\Incinerator.Case final dag 080103.doc\jlr/sia

In *Fox*, the court entertained a ground first raised on appeal because the facts were undisputed and the issue was a question of law. Similarly, in the instant case, the facts are undisputed and the issue raised by this Court is a question of law.

Appellate courts may, in certain circumstances, raise, *sua sponte*, an issue for the first time on appeal *sua sponte*.

In *City of Washington v Warren County*, 899 S.W. 2d 863 (Mo. 1995) the Supreme Court of Missouri held that, in reviewing the trial court's entry of summary judgment, it could decide the case on an issue neither raised by the parties nor briefed to the court. The issue in that case was whether improvements to the city airport were immune from the County's zoning ordinance. The court held that the city was immune from county zoning, but on a different theory than that urged by the city, stating:

> An order of summary judgment will not be set aside on review if supportable on any theory, *Zafft v Eli Lilly & Co.*, 676 S.W.2d 241, 243 (Mo. banc 1984). The theory need not be one raised or argued by either party and may be raised *sua sponte* by the appellate court, provided the court incorporates principles raised in the petitions. *Id.* at 246.

899 S.W. 2d. at 868.

The Supreme Court of Oklahoma also held that in a "public law controversy," if a wrong reason for reversal is advanced in the lower court or on appeal, the appellate court may still render its decision on a theory neither advanced below nor on appeal if the parties have identified as error the action of the lower court to be reversed. In *First Federal Sav. and Loan Ass'n, Chickasha, Okl. v. Nath*, 839 P.2d 1336 (Okla. 1999), the court held that if a taxing authority assigned as error on appeal the trial court's discharge of inferior tax liens where the superior lienor failed to join in its foreclosure suit the taxing authority's liens, the court

Page 4
*Answer to Intervening Defendant-Appellee's petition for Rehearing & Suggestion for Rehearing En Banc*
Supreme Court Case No. CVA02-003 & Superior Court Case No. SP0212-00
F:\AG_DATA\Litigation\DATA\GUTHRIE\Incinerator.Case final dag 080103.doc\jlr/sia

Case 1:04-cv-00006    Document 98    Filed 11/24/2004    Page 40 of 78

"preserved for review" the issue, albeit on another theory, chosen *sua sponte* by the court. *Id.* at 1343.

The power of the court to decide a case on an issue different from the issues raised by the parties was illustrated in *Maynard Inv., Co. v McCann*, 77 Wash. 2d 616, 465 P.2d 657 (1970). In that case, the payee brought an action against a bank and an individual (McCann) to recover money paid in checks after the checks were negotiated without the endorsement of the payee. Since the money paid went to creditors of the payee, the court found the plaintiff had no grounds for recovery based on the failure to obtain the endorsement by the payee. However, the appellate court raised the issue, *sua sponte*, of McCann's failure to comply with statutes which require a person who receives payment for work for which a mechanics' lien may be filed, to pay all claims for material and labor supplied in connection with the work. On rehearing, the court considered the question whether an issue that had not been raised in the trial court could be considered in the supreme court. The court concluded:

> The exception to the rule [that an issue or theory not presented to the trial court cannot be considered by the supreme court] is a salutary one. Courts are created to ascertain the facts in a controversy and to determine the rights of the parties according to justice. Courts should not be confined by the issues framed or theories advanced by the parties if the parties ignore the mandate of a statute or an established precedent. A case brought before this court should be governed by applicable law even though the attorneys representing the parties are unable or unwilling to argue it. The failure to apply the funds generated by the Round the Clock restaurant project for the materials and labor furnished to the restaurant resulted in the plaintiffs property being subject to lien claims. The agreement of Mr. McCann and Mr. Legg was contrary to statute and against the public policy of the state.

465 P. 2d at 661.

Hence, *Maynard Inv. Co.* stands for the proposition that a court any depart from the issues raised by the parties and decide a case on a wholly unrelated issue.

Page 5
*Answer to Intervening Defendant-Appellee's petition for Rehearing & Suggestion for Rehearing En Banc*
Supreme Court Case No. CVA02-003 & Superior Court Case No. SP0212-00
F:\AG_DATA\Litigation\DATA\GUTHRIE\Incinerator.Case final dag 080103.doc\jlr/sia

Case 1:04-cv-00006   Document 98   Filed 11/24/2004   Page 41 of 78

In *Matter of McNeely*, 734 P.2d 1294 (Okla. 1987), the Supreme Court of Oklahoma decided the case on an issue that was neither raised nor briefed by the parties. In that case the issue was whether an amendment to the Oklahoma law authorizing private parties to bring suit to terminate parental rights applied retroactively to grounds for termination that arose before the effective date of the amendment. The court said:

> The dispositive issue here - - one of public law - - was neither raised nor briefed by the parties. When public-law issues are present this court may, on review, resolve them by application of legal theories that were not tendered below.

734 P.2d at 1296.

The foregoing proposition appears especially true when the issue raised for the first time on appeal is the illegality of a contract. In *Wright v Corbin*, 190 Wash. 260, 67 P.2d 868 (1937) the issue revised for the first time on appeal was: "Will the courts enforce an agreement whereby an expert witness, employed to testify in a cause, is to receive a certain fee only in the event that his employer is successful in that cause?" The court said, "Such a question can be raised at any time and at any stage of the case when it has been made to appear that a contract is illegal and unenforceable," quoting Corpus Juris as follows:

> No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out; nor can he set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim...The law in short will not aid either party to an illegal agreement; it leaves the parties where it finds them. The general rule is the same both at law and in equity, and whether the contract is executory or executed 13 C.J.S. 492, §440.

67 P.2d at 871.

In *Hart v Bell*, 222 Minn. 691 23 N.W.2d 375 (1946), the Supreme Court of Minnesota held:

Page 6
*Answer to Intervening Defendant-Appellee's petition for Rehearing & Suggestion for Rehearing En Banc*
Supreme Court Case No. CVA02-003 & Superior Court Case No. SP0212-00
F:\AG_DATA\Litigation\DATA\GUTHRIE\Incinerator.Case final dag 080103.doc\jlr\sia

As an exception to the general rule that litigants are usually bound upon appeal by theory or theories, however erroneous or improvident, upon which the case was tried below, the appellate court has a duty to, and upon its own motion may, consider and determine a case upon the ground of illegality, although such ground was neither presented to nor considered by the trial court, if such illegality (a) is apparent upon undisputed facts (b) is in clear contravention of public policy, and (c) if a decision thereon will be decisive of the entire controversy on the merits.

23 N.W. 2d at 376.

In *Hart v Bell*, a contention was advanced that various arrangements made between the stockholders of Sports Afield magazine to stave off creditors of the magazine were illegal, and should be held void. In considering the argument of illegality, the court discussed whether the parties had had an opportunity to address the issue of illegality. It stated:

The illegality, to be given consideration for the first time upon appeal, must appear from clear and undisputed facts established by such findings of the trial court as are reasonably sustained by the evidence, or which appear from the undisputed terms of an agreement or transaction upon which the validity of the entire cause rests, or which appear from the pleadings on other undisputed and unambiguous evidence. It is not the function of this court to search the record, weigh the evidence, and to make new findings of fact upon which to build a factual foundation for a determination of illegality. It is an elementary and basic requirement of all just procedure that, before a litigant, in the interest of the public welfare, is deprived of rights he claims to exist, <u>caution should be exercised to insure that he has not been, and will not be, thereby denied an opportunity to present his case with respect to the illegality. It must appear that such litigant here 'no cause of action or a defense."</u> *See Craig v Baumgartner*, 191 Minn. 42, 46, 254 NW. 440, 442; *Skolnick v Gruesner*, 196 Minn 318, 324, 265 NW 44, 47; *Reuter v Ballard*, 267 Mass 557, 562, 563, 166 NE 822, 825; *Baskin v Pass*, 302 Mass 338; 341, 19 NE 2d 30, 32; *Sullivan, Inc v Cann's Calsins, Inc.*, 309 Mass, 519, 521, 36 N.E.2d 371, 372, 136 ALR 1236; 2 Pirsig's Dunnel, Minn. Pleading §1306, p 822.

23 N.W. 2d at 378-79 (emphasis added).

Page 7
*Answer to Intervening Defendant-Appellee's petition for Rehearing & Suggestion for Rehearing En Banc*
Supreme Court Case No. CVA02-003 & Superior Court Case No. SP0212-00
F:\AG_DATA\Litigation\DATA\GUTHRIE\Incinerator Case final dag 080103.doc\jlr/sia

Case 1:04-cv-00006    Document 98    Filed 11/24/2004    Page 43 of 78

Although the court held that the facts were disputed in *Hart v Bell*, the facts are not disputed in the present case. Therefore there is nothing to deter the court from considering whether Section 4.04(c) of the agreement violates 48 USC § 1423 j and 5 GCA § 22401.

GRRP argues that deciding the case on an issue that was neither raised nor briefed by the parties – in this case, the organicity of Section 4.04 (c) of the agreement – denied it the opportunity to be heard on the issue, in derogation of its right to due process of law. Petition at 4. In the instant case, however, the organicity of the provisions of the agreement dealing with the bond issuance and use of government land were raised on appeal and theories advanced as to why the contract was inorganic based on a couple of sections of the agreement. Although this court ultimately ruled that Section 4.04(c) was inorganic, the fact remains that the issue of organicity of the agreement had been asserted by the parties. Therefore, GRRP's due process rights have been violated.

Insofar as the organicity of the agreement had been raised by the parties on appeal, the Court is not barred from adopting another theory of inorganicity, based on another section of the agreement.

## II. A CONTRACT VIOLATIVE OF 48 USC § 1423j AND 5 GCA § 22401 MUST BE DECLARED NULL AND VOID.

An officer of the government of Guam who violates 5 GCA § 22401, which prohibits the officer from obligating the government to expend funds in advance of an appropriation, can be criminally punished pursuant to subsection (c) of the statute. Subsection (c)(1) states:

> Any officer or employee of the government of Guam who shall violate subsection (a) hereof shall be subjected to appropriate disciplinary action by the branch of the government concerned, including removal where warranted, and

Page 8
*Answer to Intervening Defendant-Appellee's petition for Rehearing & Suggestion for Rehearing En Banc*
Supreme Court Case No. CVA02-003 & Superior Court Case No. SP0212-00
F:\AG_DATA\Litigation\DATA\GUTHRIE\Incinerator.Case final dag 080103.doc\jlr/sia

any officer or employee of the government of Guam who shall knowingly and willfully violate subsection (a) hereof shall be guilty of a misdemeanor

The court in *California Chicks, Inc. v Viebrock*, 254 Cal. App. 2d 638, 62 Cal. Rptr. 269 (1967) quoted 55 ALR 2d 482, wherein it is said:

> As a general proposition, a contract in violation of a criminal statute is void, even though the statute does not in terms so provide and even though it does not by its terms prohibit the act or acts upon which the contract is based is based.

62 Cal. Rptr. at 271.

In *California Chicks, Inc*, the court held that a contract for the purchase of eggs was illegal and unenforceable, as a consequence of a statute prohibiting any unlicensed person from acting as dealer in the purchase of farm produce. The statute also provided that a person who acts as a dealer without a license was guilty of a misdemeanor. The court quoted *Wood v Krepps*, 168 Cal. 382, 386, 143 P. 691, 692 (1914) as follows:

> [W]hen the object of the statute or ordinance in requiring a license for the privilege of carrying on a certain business is to prevent improper persons from engaging in that particular business, or is for the purpose of regulating it for the protection of the public..., the imposition of the penalty amounts to a prohibition against doing the business without a license and a contract made by an unlicensed person in violation of the statute or ordinance is void.

*Id.* at 271.

Besides 5 GCA § 22401, other statutes are implicated by the illegality of Section 4.04(c).

For example, 18 GCA § 85504 provides:

> **§ 85504. Effect of Illegality.** If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void.

Page 9
*Answer to Intervening Defendant-Appellee's petition for Rehearing & Suggestion for Rehearing En Banc*
Supreme Court Case No. CVA02-003 & Superior Court Case No. SP0212-00
F:\AG_DATA\Litigation\DATA\GUTHRIE\Incinerator.Case final dag 080103.doc\jlr/sia

Case 1:04-cv-00006    Document 98    Filed 11/24/2004    Page 45 of 78

1   Guam Civil Code § 1608, the predecessor of 18 GCA § 85504, was invoked to void an

2   illegal contract by the Ninth Circuit Court of Appeals in *de Vera v Blaz*, 851 F.2d 294 (9th Cir.

3   1988). In that case, the plaintiff sought damages resulting from the breach of an alleged

4   agreement by a candidate to employ the plaintiff in consideration for the plaintiff's campaign

5   efforts in support of the candidate. The court held the consideration – the promise of

6   employment – to be illegal, and the entire contract void. 851 F.2d at 296-97.

7       In the instant case, the damages provision – Section 4.04(c) - provides part of the

8   consideration of the agreement. It provides for penalties if legislative approval of various

9   aspects of the agreement are not obtained. Thus, under 18 GCA § 85504, the illegality of this

10  term of the agreement renders the entire agreement void.

11      Finally, another Guam statute is implicated by the illegality of this agreement. 20 GCA

12  § 15105 provides:

13
14          Anyone may waive the advantage of a law intended solely for his
            benefit, but a law established for a public reason cannot be contravened by a
15          private agreement.

16      In *Tower Acton Holdings v. Los Angeles County Waterworks Dist. No. 37*, 105 Cal.

17  App. 4th 590, 129 Cal. Rptr. 2d 640 (2002), the court applied an identical California statute in

18  determining whether a contract to protect the confidentiality of settlement negotiations was

19  enforceable, or violative of public policy. The court found that the agreement to protect the

20  confidentiality of settlement negotiations was enforceable because it was in accord with the

21  public policy to encourage settlement. 129 Cal. Rptr. at 648-49.

22
23
24
25

Page 10
*Answer to Intervening Defendant-Appellee's petition for Rehearing & Suggestion for Rehearing En Banc*
Supreme Court Case No. CVA02-003 & Superior Court Case No. SP0212-00
F:\AG_DATA\Litigation\DATA\GUTHRIE\Incinerator.Case final dag 080103.doc\jlr/sia

Case 1:04-cv-00006   Document 98   Filed 11/24/2004   Page 46 of 78

In the instant case, however, 48 USC § 1423j and 5 GCA § 22401 establish a public policy that government employees cannot obligate the government to expend funds in excess of appropriations.

In *Ziegler v Illinois Trust and Savings Bank*, 245 Ill. 180, 91 N.E. 1041 (1910) the court addressed when a contract contravenes public policy, stating:

> The laws and the public policy of the state permit and require the utmost freedom of contracting between competent parties, and it is only when a contract expressly contravenes the law or a known public policy of the state that courts will hold it void.

91 N.E. at 1046.

In the instant case, the court has held that Section 4.04(c) violates 48 USC § 1423j and 5 GCA § 22401; therefore the parties here, paraphrasing 20 GCA § 15105, cannot contravene, by private agreement, a law established for a public reason.

### III. THE COURT SHOULD NOT HONOR THE SEVERABILITY CLAUSE, BUT RATHER VOID THE ENTIRE AGREEMENT.

18 GCA § 85504 provides:

> **18 GCA § 85504. Effect of Illegality.** If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void.

This statute, rather than 18 GCA § 85405 – the statute adverted to by GRRP – is applicable, because the unlawfulness of Section 4.04 (c) of the agreement relates to the agreement's consideration, not to the "objects" of the agreement addressed by 18 GCA § 85405. Section 4.04 (c) is the agreement's damages provision, providing for liquidated damages in the event legislative approval is not obtained. It does not deal with the object of

Page 11
*Answer to Intervening Defendant-Appellee's petition for Rehearing & Suggestion for Rehearing En Banc*
Supreme Court Case No. CVA02-003 & Superior Court Case No. SP0212-00
F:\AG_DATA\Litigation\DATA\GUTHRIE\Incinerator Case final dag 080103.doc\jlr/sia

Case 1:04-cv-00006    Document 98    Filed 11/24/2004    Page 47 of 78

1  the agreement, which is to build a waste to energy incinerator.  As stated by this Court in its

2  February 11, 2003 Opinion in this case:

3        The provisions of the 1996 Agreement reveal the obligations of the
       Government to satisfy conditions precedent, including obtaining legislative
4      appropriation, as well as the consequences for failure to satisfy such conditions.
       Section 4.03, entitled "Conditions to Company's Obligation, states as a
5      condition to GRPP's obligation, that

6            (g) The Government shall have obtained all requisite Legislative
7            Approval to the issuance of GEDA or another political
             subdivision of the Government of an aggregate amount of
8            Bonds in an amount sufficient to finance the sum of the Facility
             Price and the Financing Costs less the amount of Equity to be
9            provided the Company...

10     Record on Appeal, tab 34, Ex. A, pp. 68-70 (1996 Agreement) (emphasis
       added).  Section 4.04, entitled, "Satisfaction of Conditions Precedent," delineate
11     the effect of failure to satisfy the conditions precedent:

12            If, despite such good faith and diligence, all of the said
13            Conditions Precedent set forth in ... 4.03 are not so satisfied or
              are not waived by the Party whose obligations are conditioned
14            thereon...then that Party may, by notice in writing to the other
              Party, terminate this Agreement as of the date of such notice, in
15            which case this Agreement shall be null and void.  In the event
              of termination of this Agreement...(c) If such failure is the
16            result of Government Fault, then (i) this Agreement shall
              terminate, (ii) the Government shall pay on or prior to the
17            Termination Date to the Company its Phase I Development
              Costs, its Phase II Development Costs incurred through the
18            Termination Date of this Agreement and the Deference Cost, if
              any, and the License Deference Cost, and (iii) the Company
19            shall have no other claim against the Government arising from
20            or relating to this Agreement.

21  Opinion, paragraph 20.

22     Section 4.04 (c) therefore addresses the consequences of a failure of the occurrence of a

23  condition precedent; that is, what happens if the required legislative approvals are not obtained.

24  Its provision for liquidated damages addresses the consideration to be received by GRRP if the

25

Page 12
*Answer to Intervening Defendant-Appellee's petition for Rehearing & Suggestion for Rehearing En Banc*
Supreme Court Case No. CVA02-003 & Superior Court Case No. SP0212-00
F:\AG_DATA\Litigation\DATA\GUTHRIE\Incinerator.Case final dag 080103.doc\jlr/sia

1   required legislative approval cannot be obtained.   This Court has determined that the

2   government cannot be obligated to pay such liquidated damages in advance of legislative

3   appropriation, and that Section 4.04(c) is therefore an illegality.   Inasmuch as Section 4.04 (c)

4   provides for part of the agreement's consideration, its illegality does not mean it should be

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 13
*Answer to Intervening Defendant-Appellee's petition for Rehearing & Suggestion for Rehearing En Banc*
Supreme Court Case No. CVA02-003 & Superior Court Case No.  SP0212-00
F:\AG_DATA\Litigation\DATA\GUTHRIE\Incinerator.Case final dag 080103.doc\jlr/sia

Case 1:04-cv-00006    Document 98    Filed 11/24/2004    Page 49 of 78

1    severed from agreement, but rather, pursuant to 18 GCA § 85504, the entire agreement is void.

2         Respectfully submitted this 1st day of August, 2003.

3

4                                    **OFFICE OF THE ATTORNEY GENERAL**
                                     DOUGLAS B. MOYLAN, Attorney General of Guam

5

6                                    _____
                                     **Douglas B. Moylan**
7                                    **Attorney General**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 14
*Answer to Intervening Defendant-Appellee's petition for Rehearing & Suggestion for Rehearing En Banc*
Supreme Court Case No. CVA02-003 & Superior Court Case No. SP0212-00
F:\AG_DATA\Litigation\DATA\GUTHRIE\Incinerator.Case final dag 080103.doc\jlr/sia

Case 1:04-cv-00006    Document 98    Filed 11/24/2004    Page 50 of 78

# EXHIBIT J

1   **SHANNON TAITANO, ESQ.**
    **OFFICE OF THE GOVERNOR OF GUAM**
2   Ricardo J. Bordallo Governor's Complex
    Adelup, Guam 96910
3   Telephone:    (671) 472-8931
4   Facsimile:    (671) 477-4826

5   **RODNEY J. JACOB, ESQ.**
    **DANIEL M. BENJAMIN, ESQ.**
6   **CALVO AND CLARK, LLP**
7   Attorneys at Law
    655 South Marine Drive, Suite 202
8   Tamuning, Guam 96913
    Telephone:    (671) 646-9355
9   Facsimile:    (671) 646-9403

10  Attorneys for *Felix P. Camacho, Governor of Guam*

11

12              IN THE UNITED STATES DISTRICT COURT
                       DISTRICT OF GUAM
13

14  CHARMAINE R. TORRES, on behalf of herself      CIVIL CASE NO. 04-00038
    and a class of others similarly situated,
15
                    Plaintiff,
16                                                 **MEMORANDUM OF POINTS AND**
                        -v-                         **AUTHORITIES IN SUPPORT OF THE**
17                                                 **GOVERNOR OF GUAM'S MOTION**
    GOVERNMENT OF GUAM; FELIX P.                    **TO DISMISS**
18  CAMACHO, Governor of Guam; and
    DOUGLAS B. MOYLAN, Attorney General of
19  Guam,

20                  Defendants.

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 2

    A.   Guam's Territorial Income Tax ................................................................... 2

    B.   The Complaint In This Case ........................................................................ 3

ARGUMENT ..................................................................................................................... 4

I.    THERE IS NO SUBJECT MATTER JURISDICTION OVER THE REFUND CLAIMS BECAUSE TORRES FAILED TO EXHAUST HER REMEDIES .................................... 5

II.   THE CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF MUST BE DISMISSED WITH PREJUDICE BECAUSE INJUNCTIVE AND DECLARATORY RELIEF REGARDING FEDERAL TAX REFUNDS IS BARRED BY FEDERAL LAW, INCLUDING IN CASES INVOLVING REFUNDS OF GUAM'S TERRITORIAL INCOME TAX ....................................................................................................... 7

    A.   Injunctive Relief Is Barred By The Anti-Injunction Act ................................. 8

    B.   Declaratory Relief Is Barred By The Declaratory Judgment Act ..................... 9

III.  THE CLAIMS FOR TAX YEARS 1995-2000 ARE TIME-BARRED ON THE FACE OF THE COMPLAINT .......................................................................................... 12

IV.  THE CLAIMS BASED UPON GUAM'S EARNED INCOME TAX PROGRAM SHOULD BE DISMISSED BECAUSE NO GROUND FOR SUPPLEMENTAL JURISDICTION EXISTS ................................................................................... 14

V.   THE "CLASS ACTION" ALLEGATIONS MUST BE DISMISSED WITH PREJUDICE. ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*5-Star Management, Inc. v. Rogers*, 940 F. Supp. 512 (E.D.N.Y. 1996) ...................................... 18

*AFL-CIO v. United States*, 669 F. Supp. 12 (D.D.C. 1987)............................................................. 9

*Agron v. Illinois Bell Tel. Co.*, 325 F. Supp. 487 (D.C. Ill. 1970) ................................................ 16

*Alexander v. "Americans United" Inc.*, 416 U.S. 752 (1974) ........................................................ 12

*Appoloni v. United States*, 218 F.R.D. 556 (W.D. Mich. 2003) ..................................................... 17

*Appoloni v. United States*, 219 F.R.D. 116 (W.D. Mich. 2003) ..................................................... 17

*Bank of America v. Blaz*, 539 F.2d 1226 (9th Cir. 1976)........................................................... 2, 10

*Bear Valley Mutual Water Co. v. Riddell*, 493 F.2d 948 (9th Cir. 1974) ........................................ 6

*Bob Jones University v. Simon*, 416 U.S. 725 (1974)...................................................................... 9

*Bordallo v. Baldwin*, 624 F.2d 932 (9th Cir. 1980) ........................................................................ 3

*Boyd v. United States*, 762 F.2d 1369 (9th Cir. 1985) .................................................................... 5

*Brummett v. United States*, 218 F. Supp. 2d 1253 (D. Or. 2002) ................................................. 14

*Crain v. Government of Guam*, 97 F. Supp. 433 (D. Guam 1951) ................................................. 10

*E.g. Danoff v. United States*, 324 F. Supp. 2d 1086 (C.D. Cal. 2004)......................................... 14

*Elias v. Connett*, 908 F.2d 521 (9th Cir. 1990) .............................................................................. 9

*Enochs v. Williams Packing Co.*, 370 U.S. 1 (1962) ...................................................................... 9

*Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943) ............................................. 12

*Green v. United States*, 73-2 USTC ¶ 9729, 32 AFTR2d 73-5963 (E.D. Cal. 1973).................... 16

*Gumataotao v. Director of Dept. of Revenue and Taxation*, 236 F.3d 1077 (9th Cir. 2001) .... 3, 11

*Harkins v. United States*, 66-2 U.S.T.C. ¶ 9543 (E.D. Okl. 1966) ............................................... 16

*Heisler v. United States*, 463 F.2d 375 (9th Cir 1972).................................................................. 16

*Holmes v. Director of the Dept. of Revenue and Taxation*, 937 F.2d 481 (9th Cir. 1991) ............ 13

*Ileto v. Glock Inc.*, 349 F.3d 1191 (9th Cir. 2003)......................................................................... 4

*In re Eagson Corp.*, 37 B.R. 471 (Bankr. E.D. Pa. 1984)............................................................. 18

*Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980).......................................................... 13

*Klender v. United States*, 218 F.R.D. 161 (E.D. Mich. 2003) ...................................................... 17

*Lane v. Pena*, 518 U.S. 187 (1996).................................................................................................. 6

*Lewis v. Reynolds*, 284 U.S. 281 (1932) ....................................................................................... 17

*Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003)................................... 7

*Lipsett v. United States*, 37 F.R.D. 549 (S.D.N.Y. 1965) .......................................................... 16, 18

*Marangi v. Govt. of Guam*, 319 F. Supp. 2d 1179 (D. Guam 2004) ................................................ 8

*Martinez v. United States*, 595 F.2d 1147 (9th Cir. 1979) ........................................................... 5

*Marx v. Govt. of Guam*, 866 F.2d 294 (9th Cir. 1989) .................................................................. 6

*McConnell v. United States*, 295 F. Supp. 605 (D. Tenn. 1969) ..................................................... 16

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ........................................................................................ 7

*Oatman v. Dept. of Treasury*, 34 F.3d 787 (9th Cir. 1994) ........................................................... 15

*Pence v. Andrus*, 586 F.2d 733 (9th Cir. 1978) .............................................................................. 7

*Quarty v. United States*, 170 F.3d 961 (9th Cir. 1999) .............................................................. 5, 6

*Rand v. United States*, 249 U.S. 503 (1918) ................................................................................... 6

*RHI Holdings, Inc. v. United States*, 142 F.3d 1459 (Fed. Cir. 1998) ........................................... 14

*Rock Island R.R. Co. v. United States*, 254 U.S. 141 (1920) ......................................................... 6

*Saunooke v. United States*, 8 Cl. Ct. 327 (1985) .......................................................................... 16

*Shwarz v. United States*, 234 F.3d 428 (9th Cir. 2000) ................................................................ 4

*Sorenson v. Secretary of Treasury*, 475 U.S. 851 (1986) .............................................................. 5

*Sorenson v. Secretary of Treasury*, 752 F.2d 1433 (9th Cir. 1985) ............................................. 16

*Thomasson v. United States*, 1997 WL 220321 (N.D. Cal. April 21, 1997) .................................. 14

*Tucker v. Alexander, supra* 275 U.S. 228 (1927) .......................................................................... 6

*United States v. Brockamp*, 519 U.S. 347 (1997) ........................................................................ 13

*United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269 (1931) ................................................... 6

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ............................................................... 17

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) ......................................... 5

*Warth v. Seldin*, 422 U.S. 490 (1975) ............................................................................................ 7

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) .................................................................................. 5

**Other Authorities**

Pub. Law. 85-688, § 1, 72 Stat. 681 ............................................................................................. 12

**Rules**

11 G.C.A. §§ 42101-42104 ........................................................................................................ 17, 18

12 U.S.C. § 548 ............................................................................................................................. 13

26 U.S.C. §§ 6001-7873 ............................................................................................................... 3

26 U.S.C. § 6511 ...................................................................................................................... 15, 16

26 U.S.C. § 6532 ................................................................................................ 8, 19

26 U.S.C. § 7421 ................................................................................................ 10

26 U.S.C. § 7422 ................................................................................................ 6, 19

28 U.S.C. § 1331 ................................................................................................ 18

28 U.S.C. § 1341 ................................................................................................ 15

28 U.S.C. § 1367 ................................................................................................ 18

28 U.S.C. § 2201 ................................................................................................ 12, 14

48 U.S.C. § 1421i ..........................................................................................*empassim*

CITIBANK/0406/0406
MR041027.382-0008[MPA Mtn. to Dismiss4]

Defendant Felix P. Camacho, the Governor of Guam (the "Governor"), respectfully submits this memorandum of point and authorities in support of his motion to dismiss this action with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### INTRODUCTION

Plaintiff Charmaine Torres ("Torres") brought this action on behalf of herself and a purported class of allegedly similarly situated taxpayers against the Governor of Guam, the Government of Guam, and the Attorney General of Guam. She seeks a refund of the Earned Income Tax Credit ("EITC") that she alleges are due and declaratory and injunctive relief to obtain these refunds. Her allegations fail to state a claim for numerous reasons and must be dismissed with prejudice.

First, Torres fails to allege exhaustion of her administrative remedies. Exhaustion is an absolute prerequisite for jurisdiction over any claim for a tax refund. Because Torres has not alleged exhaustion, the Court is without subject matter jurisdiction over Torres's claims (as well as the putative "class action" claims), all of which must be dismissed.

Second, Torres cannot escape the jurisdictional exhaustion requirement by seeking injunctive or declaratory relief because federal law prohibits injunctive or declaratory relief in tax refund cases. Therefore, the claims for declaratory and injunctive relief must be dismissed with prejudice.

Third, Torres is attempting to assert untimely claims. Torres seeks relief for tax years 1995 to 2003. But she only filed suit in August 2003. Tax refund claims are governed by a jurisdictional three-year statute of limitations that commences running once the original tax return is filed. Therefore, her claims for tax years 1995 to 2000 fall outside the governing statute of limitations and should be dismissed with prejudice.

Fourth, Torres has asserted claims under Guam's local EITC law, which mirrors the federal law. However, because there is no jurisdiction over the federal claims, there is no supplemental jurisdiction over the state law claims.

Last, and most importantly, even if Torres or any other individual were able to state a claim, the "class action" allegations must be dismissed with prejudice because individualized issues predominate in this case and typicality cannot be shown. Every plaintiff in a tax refund case must individually prove exhaustion of the particular claim at issue to establish jurisdiction. Then each plaintiff must individually establish his or her individual qualification for the particular tax refund at issue. Finally, the government must have the opportunity as to each refund claim to review the entirety of each tax return in which the refund claim is made to identify any possible deficiencies that might offset the refund claim. This need for detailed and individualized fact-finding on each of these three issues—which basically place the entirety of each tax return on trial—has led almost every court that has considered the issue to refuse to consider class action claims in a tax refund case. This result is particularly applicable here, where as many as 100,000 separate tax returns are implicated. Thus, dismissal of the class action claims must be with prejudice.

## BACKGROUND

### A. Guam's Territorial Income Tax

In enacting the Organic Act of Guam,[1] Congress created the Guam Territorial Income Tax to mirror almost all of the Internal Revenue Code (Title 26) of the United States Code and to provide a source of revenue to fund the Government of Guam. *See* 48 U.S.C. § 1421i; *Bank of Am. v. Blaz*, 539 F.2d 1226, 1227-28 (9th Cir. 1976) (per curiam); *see also*

*Gumataotao v. Director of Dept. of Revenue and Taxation*, 236 F.3d 1077, 1079-80 (9th Cir. 2001). Specifically, the Organic Act of Guam provides that "[t]he income tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in Guam...." 48 U.S.C. § 1421i(a). However, the tax collected in Guam is payable to the Government of Guam and is collected by the Government of Guam. *Id.* § 1421i(b), (c).

The Organic Act does have one important qualification on the Internal Revenue Code's application in Guam. A section of the Internal Revenue Code will not apply in Guam if manifestly inapplicable to Guam or incompatible with the intent of the Organic Act. *Id.* § 1421i(d)(1). Nonetheless, Congress explicitly provided that "all provisions of subtitle F" of the Internal Revenue Code apply in Guam. *Id.* (emphasis added). Subtitle F of Title 26 of the United States Code contains the statutes of limitations and the exhaustion requirements in tax refund cases, as well as the bar on injunctions in tax cases. *See* 26 U.S.C. §§ 6001-7873 (Subtitle F).

The Organic Act also provides for the substitution of terms in the Internal Revenue Code so that its application in Guam is clear. *See* 48 U.S.C. § 1421i(e) (stating that "Guam" is substituted for "United States"; "Governor or his delegate" for "Secretary or his delegate" and "Commissioner or his delegate"). Further, the language and nomenclature of the Internal Revenue Code must be read to change or omit any other language where this is "necessary to effect the intent of this section." *Id.*

**B.    The Complaint In This Case**

Torres filed her complaint in August 2004. According to her First Amended Complaint ("Complaint" or "Cmpl."), she is a Guam taxpayer who filed tax returns in Guam for tax years 1995 to 2003. (Cmpl. ¶ 2.) Torres alleges that during this time, Guam should have paid

---

[1] The Organic Act of Guam (the "Organic Act") serves as Guam's constitution. *See Bordallo v. Baldwin*, 624 F.2d 932, 934 (9th Cir. 1980).

the EITC under the Organic Act of Guam and Guam's Earned Income Program. (*Id.* ¶¶ 2, 7, 23, 24.) She further alleges that she would have been eligible for the EITC in tax years 1995 to 2003, but was denied the benefits of this program after Guam's Attorney General issued an opinion stating it did not apply to Guam in January 1996. (*Id.* ¶¶ 2, 7, 18, 23.) According to Torres, the only year in which the EITC was paid is tax year 1997, and those payments were only to some eligible taxpayers. (*Id.* ¶ 24.)

Torres attempts to state claims on her own behalf and on behalf of three different subclasses of allegedly similarly situated taxpayers. (Cmpl. ¶ 7.) The first subclass is all taxpayers who were eligible for the EITC in 1995 and 1997 but did not receive it. (*Id.*) The second subclass is all taxpayers who seek to recover more than 50% of the amount alleged to be due for "all years in which such taxpayers were eligible for such credits by law." (*Id.*) The third subclass is of all eligible taxpayers who may opt-out of the proposed settlement in *Santos v. Camacho*, CV04-00006 (Dist. Ct. of Guam). (*Id.*)[2]

## ARGUMENT

On a motion to dismiss, all well-pleaded allegations in Torres' complaint must be taken as true and construed in the light most favorable to Torres. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). However, the courts "do not accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (citation omitted); *see also Shwarz*, 234 F.3d at 435 ("The court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court...."). Further, with regard to issues that go directly to the Court's subject

---

[2] *Santos* is a case before this Court for EITC refunds. There is a proposed settlement agreement in that case that states that it pays plaintiffs who opt-in 50% or more of the amount they are allegedly due.

matter jurisdiction and require dismissal under FRCP 12(b)(1) (as opposed to FRCP 12(b)(6)), the Court may consider extrinsic evidence. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).

## I. THERE IS NO SUBJECT MATTER JURISDICTION OVER THE REFUND CLAIMS BECAUSE TORRES FAILED TO EXHAUST HER REMEDIES

As the Supreme Court has held, the EITC is a tax refund for purposes of the administration and payment of tax refunds. *Sorenson v. Secretary of Treasury*, 475 U.S. 851, 863 (1986) ("to the extent an excess earned-income credit is 'payable' to an individual, it is payable as *if* it were a refund of tax paid") (italics in original).[3] The EITC's status as a tax refund matters because administrative exhaustion is required before a suit to recover a tax refund may be filed:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the [Governor or his delegate], according to the provisions of law in that regard, and the regulations of the [Governor or his delegate] established in pursuance thereof.

26 U.S.C. § 7422(a) (modified to replace in brackets the words "Secretary" with "Governor or his delegate" pursuant to 48 U.S.C. § 1421i(e)).

The Ninth Circuit has repeatedly recognized that a plaintiff's failure to exhaust a tax refund claim requires dismissal for lack of subject matter jurisdiction. *Quarty v. United States*, 170 F.3d 961, 972 (9th Cir. 1999); *Boyd v. United States*, 762 F.2d 1369, 1372 (9th Cir. 1985); *accord Martinez v. United States*, 595 F.2d 1147, 1148 (9th Cir. 1979) (per curiam)); *Bear*

---

[3] The difference between the EITC and a normal tax refund is not material to this motion. In essence, the EITC is a social welfare payment to low-income families administered through the tax system. Thus, rather than being a refund of taxes actually paid, it is a payment to a family based on certain eligibility criteria. It is possible for a taxpayer to receive an EITC "refund" in excess of the amount actually paid in taxes. However, what matters here is that it is a "refund" with regard to all administrative procedures and requirements.

*Valley Mutual Water Co. v. Riddell*, 493 F.2d 948, 951 (9th Cir. 1974). The right to sue for a tax refund is a limited waiver of sovereign immunity, and that waiver that must be "strictly construed, in terms of its scope, in favor of the sovereign." *Quarty*, 170 F.3d at 972 (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). This same strict construction of the exhaustion requirement must be applied here to the Territory of Guam because Guam, like the United States, enjoys sovereign immunity absent a waiver. *Marx v. Govt. of Guam*, 866 F.2d 294, 298 (9th Cir. 1989) ("controlling authority and the legislative history of the Organic Act compel our holding that the government of Guam has inherent sovereign immunity").

Because exhaustion is a requirement for subject matter jurisdiction, it cannot be excused based upon futility. As the Ninth Circuit recently reaffirmed, the U.S. Supreme Court has long recognized that the exhaustion requirement in tax refund cases must apply even if it is undisputed that exhaustion would have been futile:

> An anticipated rejection of the claim, which the statute contemplates, is not a ground for suspending its operation. Even though formal, the condition upon which the consent to suit is given is defined by the words of the statute, and "they mark the conditions of the claimant's right.' *Rock Island R.R. Co. v. United States*, 254 U.S. 141, 143 [(1920)]. Compliance may be dispensed with by waiver, as an administrative act, *Tucker v. Alexander*, *supra* [275 U.S. 228 (1927)]; but it is not within the judicial province to read out of the statute the requirement of its words, *Rand v. United States*, 249 U.S. 503, 510 [(1918)].

*Quarty*, 170 F.3d at 973 (quoting *United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 273 (1931)).

In the present case, Torres has made no allegation of exhaustion and has presented no evidence of exhaustion. Further, she cannot cure her failure to exhaust by filing the administrative claim and amending to allege exhaustion. The governing statute, which applies to Guam under the mirror-image rule, states: "No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, **shall be begun** before the expiration

of 6 months from the date of filing the claim required under such section unless the [Governor or delegate] renders a decision thereon within that time...." 26 U.S.C. § 6532(a)(1) (terms substituted pursuant to mirror-image rule and emphasis added). In other words, before bringing suit for a refund, Torres must file her administrative claims and wait six months (or until that claim is denied) before filing suit. Until then, the Court lacks jurisdiction over her suit and her complaint must be dismissed for lack of subject matter jurisdiction. *Boyd*, 762 F.2d at 1371 ("If the refund claim does not meet the requirements of the Code and the regulations, the suit must be dismissed....") (citations omitted).

Because Torres' individual claims must be dismissed, her purported "class action" claims also must be dismissed for lack of standing. "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)); *Pence v. Andrus*, 586 F.2d 733, 736-37 (9th Cir. 1978) ("the named representatives 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent'") (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). This dismissal also must be with prejudice as discussed in Section V below.

## II. THE CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF MUST BE DISMISSED WITH PREJUDICE BECAUSE INJUNCTIVE AND DECLARATORY RELIEF REGARDING FEDERAL TAX REFUNDS IS BARRED BY FEDERAL LAW, INCLUDING IN CASES INVOLVING REFUNDS OF GUAM'S TERRITORIAL INCOME TAX

Possibly out of a desire to escape the exhaustion requirement, Torres also has requested declaratory or injunctive relief on her own behalf and on behalf of the "class" she seeks to represent. However, federal law and Supreme Court precedent prevents such an "end-run"

1 around the exhaustion requirement by precluding injunctive and declaratory relief in tax refund

2 cases.

3 **A.    Injunctive Relief Is Barred By The Anti-Injunction Act**

4 The prohibition against injunctive relief in tax refund cases is codified in the Anti-

5 Injunction Act provision of the Internal Revenue Code.  It states:

6

7 > Except as provided in sections 6015(e), 6212(a) and (c), 6213(a),
> 6225(b), 6246(b), 6330(e)(1), 6331(i), 6672(c), 6694(c), or 7426(a)
> or and (b)(1), 7429(b), and 7436, <u>no suit for the purpose of
> restraining the assessment or collection of any tax shall be
> maintained in any court by any person</u>, whether or not such person
> is the person against whom such tax was assessed.

10

11 26 U.S.C. § 7421(a) (emphasis added).[4]  The Anti-Injunction Act applies to bar injunctions in

12 cases involving Guam's Territorial Income Tax because it is part of the Internal Revenue Code

13 that is applicable to Guam.  *Marangi v. Govt. of Guam*, 319 F. Supp. 2d 1179, 1185 n.8 (D. Guam

14 2004) ("26 U.S.C. § 7421(a) is contained within subtitle F of the Internal Revenue Code, and thus

15 is applicable to Guam."); *see* 48 U.S.C. § 1421i(d) (subtitle F of the Internal Revenue Code

16 applies to Guam).

17 Here, Torres seeks to have the Court:

18

19 > Issue    preliminary    and    permanent    injunctions    compelling
> Defendants to do all that is necessary and proper to implement and
> enforce the EIC to the full extent required by the Organic Act of
> Guam and the Guam Earned Income Program, and to rescind,
> modify, and/or amend any and all rulings, opinions, determinations,
> orders, or circulars that have the effect of denying entitlement of
> eligible Guam taxpayers to the EIC.

23 (Cmpl. Prayer for Relief ¶ 5.)  In other words, Torres seeks relief that would result in the

24 application of the EITC in Guam, and thus a refunding of taxes to her and others and a

25 consequential reduction in the Government of Guam's collection of taxes.

26

27 _____

28 [4] The exceptions identified in the statute are facially inapplicable here.

The Anti-Injunction Act bars precisely this type of relief. *Enochs v. Williams Packing Co.*, 370 U.S. 1, 7 (1962) ("The manifest purpose of section 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to disputed sums be determined in a suit for refund."); *Bob Jones University v. Simon*, 416 U.S. 725, 738 (1974) (injunctive relief barred where the petitioner's allegations that it would be subject to substantial tax liability if the government prevailed left "little doubt that a primary purpose of this lawsuit [wa]s to prevent the [Internal Revenue] Service from assessing and collecting income taxes...."); *Am. Fed. of Govt. Employees, AFL-CIO v. United States*, 669 F. Supp. 12, 13 (D.D.C. 1987) (injunctive relief barred where "[g]ranting the relief plaintiff requests would reduce plaintiff's members' tax bills and postpone the government's receipt of taxes due on retiree's...."). Therefore, because the Anti-Injunction Act applies to bar the claims for injunctive relief, the Court is without subject matter jurisdiction over those claims and they must be dismissed. *Marangi*, 319 F. Supp. 2d at 1185 (citing *Elias v. Connett*, 908 F.2d 521, 523 (9th Cir. 1990)).

B.    **Declaratory Relief Is Barred By The Declaratory Judgment Act**

The Declaratory Judgment Act contains an express prohibition on declaratory relief in federal tax cases. It states:

> In a case of actual controversy within its jurisdiction, <u>except with respect to Federal taxes</u> other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added).

The Guam District Court addressed the applicability of the exception for federal tax cases to Guam's Territorial Income Tax in *Crain v. Government of Guam*, 97 F. Supp. 433 (D. Guam 1951), *aff'd* 195 F.2d 414 (9th Cir. 1952).[5] In *Crain*, the plaintiff sought declaratory relief in regard to Guam's Territorial Income Tax, which had just been created by Congress to mirror the Internal Revenue Code. *See Crain*, 97 F. Supp. at 434. After holding that sovereign immunity barred the suit, the court went on to hold that even if this immunity was waived,[6] the Declaratory Judgment Act barred the relief sought:

> Even assuming that the Government of Guam had waived its immunity from suit, this court could not take jurisdiction. As was stated in *Noland v. Westover*, 9 Cir., 172 F.2d 614, 615. "The only definite relief asked is for a declaratory judgment, but the statute authorizing the district court to render a declaratory judgment does not authorize its application in controversies in respect of tax problems."

*Id.* at 434-35 (citing, *inter alia*, 28 U.S.C. § 2201).

The Guam District Court's holding that the Territorial Income Tax is a "federal tax" for purposes of the Declaratory Judgment Act's ban on declaratory judgment in federal tax cases is consistent with the controlling Ninth Circuit authority. In *Bank of America v. Blaz*, 539 F.2d 1226, 1227-28 (9th Cir. 1976) (per curiam), the issue was whether Guam could assess a separate tax on the net income of a bank where federal law allows a local government to tax the net income of a bank only once and the bank had already paid Guam's Territorial Income Tax. *Id* at 1226-27. The Ninth Circuit recognized that some courts had described Guam's Territorial Income Tax as not being a federal tax, which would have meant that Guam was taxing banks

---

[5] The Ninth Circuit affirmed the judgment on sovereign immunity grounds without reaching the declaratory judgment issue.

CIVIL CASE NO. 04-00006
MR041027.382-0008JMPA Mtn. to Dismiss41

1  twice. *Id.* at 1227. However, the Court rejected those cases, holding that the Territorial Income

2  Tax was ultimately a federal tax administered by Guam but controlled by its terms by Congress:

> We conclude, therefore, that the enactment of § 31 by the United
> States Congress of the territorial income tax was done primarily to
> relieve the United States Treasury of the necessity of making direct
> appropriations; that although Congress has delegated the collection
> and enforcement functions to the Government of Guam, the latter is
> powerless to vary the terms of the federal income tax laws as
> applied to Guam, except as permitted by Congress. We therefore
> hold that the Guam territorial income tax is not a tax imposed by
> Guam for the purposes of 12 U.S.C. § 548 . . . .

9  *Id.* at 1227-28.

10      The Ninth Circuit reached a similar conclusion in the recent case of *Gumataotao v.*

11  *Director of Dept. of Revenue and Taxation*, 236 F.3d 1077 (9th Cir. 2001). In that case, a

12  taxpayer argued that the Guam Territorial Income Tax could not apply to interest from a U.S.

13  Bond because U.S. States and Territories cannot tax federal instrumentalities. *Id.* at 1081.

14

15  Although the Ninth Circuit agreed that States and Territories cannot tax federal bonds, it held that

16  Guam's Territorial Income Tax was not a tax by Guam. *Id.* Instead, as in *Bank of America*, the

17  Ninth Circuit held that Guam's tax was a federal created tax. *Id.* ("it was Congress, not the Guam

18  government, that imposed a tax on U.S. bonds").

19      *Bank of America* and *Gumataotao* thus re-affirm the Guam District Court's earlier

20  reasoning in *Crain*. The Territorial Income Tax is a federal tax. And because it is a federal tax, it

21  is subject to the prohibition on declaratory judgments under the Declaratory Judgment Act.

22

23      Here, Torres seeks declaratory relief that achieves the same ends as she seeks

24  through the injunctive relief, namely payment of past and future EITC payments. Specifically,

25  she asks the Court to:

26  _____

27      [6] Subject to the terms and conditions for making a tax refund claim, Congress waived
28  Guam's sovereign immunity in tax refund cases in a 1958 amendment to the Organic Act that

3. Issue a declaratory judgment that the Defendants' acts, policies, practices, and procedures complained of herein violate the rights of Plaintiff and the class Plaintiff represents to be entitled to the EIC under the Organic Act of Guam and the Guam Earned Income Program;

4. Issue a declaratory judgment that the Plaintiff and the class Plaintiff represents are entitled to the receive the EIC under the Organic Act of Guam and/or the Guam Earned Income Program for all years in which such credits were not paid as required by law, together with interest and other amounts allowed by law;

(Cmpl. Prayer for Relief ¶¶ 3-4.)

In other words, Torres seeks declaratory relief in regard to a federal tax scheme. Such relief is barred by the Declaratory Judgment Act and the declaratory relief claim must be dismissed. 28 U.S.C. § 2201(a); *Crain*, 97 F. Supp. at 434-35. [7]

## III. THE CLAIMS FOR TAX YEARS 1995-2000 ARE TIME-BARRED ON THE FACE OF THE COMPLAINT

The statute of limitations on claims for tax refunds is established in 26 U.S.C. § 6511(a), which states:

> Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

added 48 U.S.C. § 1421i(h)(2). *See* Pub. Law. 85-688, § 1, 72 Stat. 681.

[7] Even this much analysis is unnecessary. Where (as here) a plaintiff is barred from seeking injunctive relief in a federal tax case, equivalent declaratory relief is also barred. *Alexander v. "Americans United" Inc.*, 416 U.S. 752, 759 n.10 (1974) ("Because we hold that that [Anti-Injunction] Act bars the instant suit, there is no occasion to deal separately with the [Declaratory Judgment Act]."); *Bob Jones University*, 416 U.S. at 733 n.7 ("There is no dispute, however, that the federal tax exception to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act. Because we hold that the instant case is barred by the latter provision, there is no occasion to resolve whether the former is even more preclusive."). In fact, even without a statute, the Supreme Court prohibited declaratory relief in comparable state tax cases because both injunctive and declaratory relief would subvert the intent to channel tax refund claims through a state's administrative procedures and into claims for tax refunds. *See Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300-01 (1943). This holding was later codified by Congress in 28 U.S.C. § 1341.

Claim for credit or refund of an overpayment of any tax imposed by
this title which is required to be paid by means of a stamp shall be
filed by the taxpayer within 3 years from the time the tax was paid.

*See Holmes v. Director of the Dept. of Revenue and Taxation*, 937 F.2d 481, 484 (9th Cir. 1991)

(federal tax statute of limitations applies to Guam's Territorial Income Tax).

Torres seeks refunds of the EITC for tax years 1995-2003, alleging that she filed

tax refunds in each of those years. (Cmpl. ¶¶ 2,24.) However, Torres only filed suit in August

2004. Accordingly, she has failed to allege timely claims as to tax years 1995 to 2000.[8] *See* 26

U.S.C. § 6511(a).

If the running of the statute of limitations is apparent on the face of the complaint,

the complaint should be dismissed. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.

1980). Therefore, Torres' claims for tax years 1995-2000 must be dismissed.

This dismissal must be with prejudice. Even if Torres had attempted to plead

around the statute of limitations, she could not. There are certain statutory exceptions to the

statute of limitations in tax refund cases involving disability and the like, *see* 26 U.S.C. § 6511,

but Torres makes no reference to facts that suggest any of these are remotely applicable.

Further, judicially created equitable exceptions to the statute of limitations that

might apply in other types of cases do not apply in tax refund cases. In *United States v.

Brockamp*, 519 U.S. 347 (1997), the Supreme Court unanimously held that the time limitation on

tax refund claims is not subject to equitable tolling. *Id.* at 348. As the Court explained:

> The nature and potential magnitude of the administrative problem
> suggest that Congress decided to pay the price of occasional
> unfairness in individual cases (penalizing a taxpayer whose claim is
> unavoidably delayed) in order to maintain a more workable tax
> enforcement system. At the least it tells us that Congress would
> likely have wanted to decide explicitly whether, or just where and

---

[8] Alternatively, she had two years from making a payment to bring suit. But Torres does
not allege any payments within the statutory period.

when, to expand the statute's limitations periods, rather than
delegate to the courts a generalized power to do so wherever a court
concludes that equity so requires.

*Id.* at 352-53. This same rule since has been consistently applied to bar claims of equitable estoppel, including by the district courts of the Ninth Circuit. *E.g. Danoff v. United States*, 324 F. Supp. 2d 1086, 1099 (C.D. Cal. 2004) ("In cases decided subsequent to *Brockamp*, the courts uniformly have held that equitable principles, including the doctrine of equitable estoppel, *cannot* toll statutes of limitation in tax refund suits.") (italics in original) (citing, *inter alia, RHI Holdings, Inc. v. United States*, 142 F.3d 1459 (Fed. Cir. 1998); *Thomasson v. United States*, 1997 WL 220321, *4 (N.D. Cal. April 21, 1997); *Brummett v. United States*, 218 F. Supp. 2d 1253, 1259 (D. Or. 2002)).

In sum, Torres failed to plead facts that would make her claims for tax years 1995-2000 timely. Further, no statutory exceptions tolling the statute are applicable and equitable exceptions to the statute of limitations are not available in tax refund cases. Accordingly, the claims for tax years 1995-2000 must be dismissed with prejudice.

## IV. THE CLAIMS BASED UPON GUAM'S EARNED INCOME TAX PROGRAM SHOULD BE DISMISSED BECAUSE NO GROUND FOR SUPPLEMENTAL JURISDICTION EXISTS

Along with her federal claims, Torres seeks to bring claims based on Guam's Earned Income Program, 11 G.C.A. §§ 42101-42104. Because there is no diversity jurisdiction, the only basis for this Court to exercise jurisdiction over these territorial law claims would be if there was federal jurisdiction over the federal claims, and therefore supplemental jurisdiction over the territorial law claims. *See* 28 U.S.C. §§ 1331, 1367. However, as already explained, the Court here lacks federal question jurisdiction over the federal EITC claims. There is no exhaustion, and declaratory and injunctive relief are barred by federal law. Accordingly, there

also is no jurisdiction over the state law claims, and they must be dismissed. *See* 28 U.S.C. § 1367.[9]

## V. THE "CLASS ACTION" ALLEGATIONS MUST BE DISMISSED WITH PREJUDICE

As noted above, the class allegations must be dismissed because the putative class representative has not stated a claim. This dismissal must be with prejudice because amendment of the "class action" allegations would be futile. *Cook, Perkiss, and Liehe Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (leave to amend must be denied if "the pleading could not possibly be cured by the allegation of other facts"). Regardless of whether Torres or any other individual were able to state a claim for an EITC refund, this case cannot proceed as a class action because individualized issues predominate and because typicality cannot possibly be demonstrated by any plaintiff.

To maintain a class action, a plaintiff must prove, among other things, that "the claims or defenses of the representative parties are typical of the claims and defenses of the class" and "questions of law or fact common to the members of the class predominate over questions affecting only individual members." FRCP 23(a)(3), (b)(3). Neither of these requirements can be met here.

In tax refund cases, each plaintiff must prove exhaustion and the validity of his or her claim. *Oatman v. Dept. of Treasury*, 34 F.3d 787, 789 (9th Cir. 1994) ("The district court lacks jurisdiction over claims for refunds pressed by any potential class members who have not

---

[9] If only certain of the federal claims are dismissed, then any corresponding state law claims should be dismissed. The Guam Legislature expressly provided that the Guam EITC should mirror the federal EITC in its administration. *See* 11 G.C.A. § 42102 ("For Fiscal Year 1998 and each year thereafter, the Department of Revenue and Taxation is authorized to institute an Earned Income program to mirror the program instituted by the federal government and known as the, Earned Income Tax Credit."). Hence, any defects related to exhaustion, the statute of limitations, or the impossibility of class-wide relief with regard to the claims under federal law are equally applicable to Guam's EITC, and are equal bars to claims under that program.

satisfied the procedural requirements of 26 U.S.C. §§ 6532 and 7422.") (citing *Sorenson v. Secretary of Treasury*, 752 F.2d 1433, 1440 (9th Cir. 1985), *aff'd* 475 U.S. 851 (1986)); *Heisler v. United States*, 463 F.2d 375, 375 (9th Cir 1972) (per curiam) (affirming judgment because "there is no showing that any other members of the purported class filed the requisite demands for refund").

As almost every court that has ever considered certifying a tax refund class has concluded, it is impossible to demonstrate typicality under FRCP 23(a)(3) or that individual issues will not predominate under FRCP(b)(3) in tax refund cases because of the exhaustion requirement. *Saunooke v. United States*, 8 Cl. Ct. 327, 330-31 (1985) (rejecting class certification in tax refund cases because court had to be able to individually determine that each class member met the jurisdictional prerequisites); *McConnell v. United States*, 295 F. Supp. 605, 606 (D. Tenn. 1969) (refusing to permit action to proceed as class action because exhaustion had to be proved individually); *Green v. United States*, 73-2 USTC ¶ 9729, 32 AFTR2d 73-5963 (E.D. Cal. 1973) (similar); *see also Agron v. Illinois Bell Tel. Co.*, 325 F. Supp. 487, 488 (D.C. Ill. 1970) (class action for tax refund cannot be maintained on behalf of ten of thousands of others because exhaustion cannot be shown) (citing *Harkins v. United States*, 66-2 U.S.T.C. ¶ 9543, at 86, 702 (E.D. Okl. 1966), *aff'd on other grounds* 375 F. 2d 239 (10th Cir. 1967)).

Exhaustion is hardly the only issue that would make a class action impossible. Federal law requires that each taxpayer's refund claim be individually adjudicated so that the tax collecting authorities have the opportunity to challenge its validity and amount, and to seek any other deficiencies that may be located. *Lipsett v. United States*, 37 F.R.D. 549, 552 (S.D.N.Y. 1965) ("Since a tax refund action involves in effect a reaudit of the individual taxpayer's return for the time period in question . . . , and not merely the ground on which the refund is sought, what would be tried were the relief granted, would be a composite action adjudicating the validity

of each item on fourteen different returns. It is difficult to conceive of a situation where the original action would be more hindered than in such a chaotic suit.") (citing *Lewis v. Reynolds*, 284 U.S. 281 (1932)). This is another ground that makes class action status impermissible in tax refund cases. *Saunooke*, 8 Cl. Ct. at 330-31 (additional reason to reject class action claim beyond exhaustion problem is that the court would need to individually assess each tax return).

The Governor has located one published decision in which class certification in a tax refund case was permitted, *Appoloni v. United States*, 218 F.R.D. 556 (W.D. Mich. 2003) ("*Appoloni I*").[10] However, the court that issued that opinion later amended that decision to exclude all non-exhausted claims because there was no jurisdiction over such claims. *Appoloni v. United States*, 219 F.R.D. 116, 119 (W.D. Mich. 2003) ("*Appoloni II*"). More importantly, that court was dealing with a class of 189 potential class members. *See Appoloni I*, 218 F.R.D. at 560. This meant that individual adjudication of each class member's claim was a realistic possibility.

Here, however, there are at least 5,000 potential class numbers for each of the nine tax years covered by the Complaint; in fact, in a filing with the Guam District Court, Torres disputed that number only by suggesting the number might be significantly greater, with up to 11,000 class members *for each tax year* between 1995 and 2003. (*See* Decl. of Daniel M. Benjamin in Support of the Governor of Guam's Motion to Dismiss, Exh. A at 4 (pleading by Torres in the *Santos* case in which she suggested the class size could be 11,000 per year given the number of claimants in 1997).)[11] In other words, this Court would be facing the impossible task

---

[10] In a case involving the same exact type of tax refund (which is only available to retired educators), a second district court in Michigan reached the same conclusion. *Klender v. United States*, 218 F.R.D. 161 (E.D. Mich. 2003).

[11] This Court may take judicial notice of this document on a motion to dismiss because it is Torres' pleading in the *Santos* case. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may, however, consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment."); *5-Star Management,*

of determining whether approximately *one hundred thousand different EITC claims* were exhausted before the Court could assert jurisdiction over each claim. *Cf. Appoloni II*, 219 F.R.D. at 119 (recognizing that exhaustion will have to be assessed as to each of the prospective class members, who numbered only 189, because exhaustion is a jurisdictional prerequisite); *see also Oatman*, 34 F.3d at 789 (exhaustion is required for each class member in a tax refund case; lack of such showing defeated jurisdiction). And after this, the Court would still have to assess each claimant's individual right to the EITC in each tax year, and to review each claimant's overall tax return for each tax year to determine whether off-setting deficiencies existed. *Lipsett*, 37 F.R.D. at 552. This case is not suited for class action proceedings, and the class action claims must be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Governor respectfully requests that this action be dismissed with prejudice.

DATED this 26th day of October, 2004.

OFFICE OF THE GOVERNOR OF GUAM
CALVO AND CLARK, LLP
Attorneys for Defendant Felix P. Camacho,
Governor of Guam

By: _____
DANIEL M. BENJAMIN

*Inc. v. Rogers*, 940 F. Supp. 512, 519 (E.D.N.Y. 1996) (although pleadings from other litigation generally are not subject to judicial notice, notice may be taken of a party's admission in related litigation); *In re Eagson Corp.*, 37 B.R. 471, 480 (Bankr. E.D. Pa. 1984) ("we perceive no injustice in taking judicial notice of the aforementioned pleadings of the trustee's original adversary proceeding since the two actions involve the identical parties and subject matter and both deal exclusively with the distribution of the proceeds of the sale of the Eagson Parcel.").

# EXHIBIT K





1

2 **Office of the Attorney General**
**Douglas B. Moylan**
3 Attorney General of Guam
Solicitors Division
4 Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
5 Hagåtña, Guam 96910 USA
(671) 475-3324 (671) 472-2493 (Fax)
6 www.guamattorneygeneral.com law@mail.justice.gov.gu



7 **Attorneys for Defendants Government of Guam and**
**Attorney General Douglas B. Moylan**

8

9 # IN THE DISTRICT COURT OF GUAM
# HAGÅTÑA, GUAM

10

| | |
|---|---|
| 11 CHARMAINE R. TORRES, on behalf of herself and a class of others similarly situated, | ) CIVIL CASE NO. CV04-00038 |
| 12 Plaintiff, | ) **MEMORANDUM OF POINTS AND** ) **AUTHORITIES OF DEFENDANTS** ) **GOVERNMENT OF GUAM AND** |
| 13 vs. | ) **ATTORNEY GENERAL DOUGLAS B.** ) **MOYLAN IN SUPPORT OF MOTION** |
| 14 GOVERNMENT OF GUAM; FELIX P. | ) **UNDER FRCP 12(b)(1) & (6) TO DISMISS** ) **FIRST AMENDED COMPLAINT FOR** |
| 15 CAMACHO, Governor of Guam; ARTEMIO B. ILAGAN, Director of the Guam | ) **LACK OF SUBJECT MATER** ) **JURISDICTION AND FAILURE OF** |
| 16 Department of Revenue and Taxation; LOURDES M. PEREZ, Director of the Guam | ) **PLAINTIFF TO STATE A CLAIM AND** ) **TO STRIKE DEFENDANT ATTORNEY** |
| 17 Department of Administration; and DOUGLAS B. MOYLAN, Attorney General | ) **GENERAL MOYLAN AS A PARTY** ) **UNDER FRCP 12(b)(6) & 21 & 26 U.S.C.** |
| 18 of Guam. | ) **§7422(f)(1) & (2) FOR FAILURE OF** ) **PLAINTIFF TO STATE A CLAIM AND** |
| 19 Defendants. | ) **MISJOINDER** ) |

20

21

22     Defendants Government of Guam and Attorney General Douglas B. Moylan submit this

23 Memorandum of Points and Authorities in support of their above entitled motion to dismiss and to

24 strike under FRCP 12(b)(1) & (6), FRCP Rule 21, and 26 U.S.C. 7422(f)(1) & (2).

25

*Page 1*
*Memorandum of Points and Authorities in Defendants Government of Guam and*
*Attorney General Douglas B. Moylan in Support of Motion Under FRCP 12(b)(1) & (6)*
*To Dismiss First Amended Complaint for Lack of Subject Matter Jurisdiction*
*District Court Case No. CV04-00038*

Case 1:04-cv-00006    Document 98    Filed 11/24/2004    Page 76 of 78

**A.** **THE MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT UNDER FRCP 12(b)(1) & (6) FOR LACK OF SUBJECT MATTER JURISDICTION OVER THIS ACTION AND FOR FAILURE OF PLAINTIFF TO STATE ANY CLAIMS FOR RELIEF SHOULD BE GRANTED.**

Defendants Government of Guam and Attorney General Douglas B. Moylan refer to and adopt in its entirety the Memorandum of Points and Authorities filed concurrently in this case by the co-Defendant, Felix P. Camacho, Governor of Guam, in support of Governor Camacho's motion under FRCP 12(b)(1) & (6) to dismiss this action. Based on the reasons set forth in the said Memorandum of Points and Authorities, Plaintiff's First Amended Complaint should be dismissed under FRCP 12(b)(1) & (6).[1]

**B.** **THE MOTION TO STRIKE DEFENDANT ATTORNEY GENERAL DOUGLAS B. MOYLAN AS A PARTY DEFENDANT IN THIS CASE UNDER FRCP 12(b)(6) AND FRCP 21 FOR FAILURE OF PLAINTIFF TO STATE A CLAIM AND FOR MISJOINDER SHOULD BE GRANTED.**

Under the Organic Act of Guam and the U.S. Internal Revenue Code as mirrored in Guam, an action to recover a refund of Guam territorial income tax is properly brought against the government of Guam and not the Attorney General of Guam. 48 U.S.C. §1421i(a), (b), (d), (e) & (h)(2), 26 U.S.C. §7422(f)(1) & (2). Because the earned income tax credit is treated as an overpayment of income tax to be refunded to the taxpayer, it subject to the same rules under the Organic Act of Guam and the Internal Revenue Code as ordinary income tax refunds. 48 U.S.C. §1421i(h)(2), 26 U.S.C. §32 & §7422(f)(1) & (2), *Sorenson v. Secretary of Treasury*, 475 U.S. 851, 863, 106 S.Ct. 1600, 89 L.Ed. 2d 855 (1986); *Israel v. United States*, 356 F.3d 221 (2nd Cir. 2004); *See* pages 4 & 5 of Governor Camacho's Memorandum of Points and Authorities.

---

[1] The Attorney General's Office originally represented the Governor of Guam in this case but at his request, the Governor has been permitted to retain outside counsel for this case.

*Page 2*
*Memorandum of Points and Authorities in Defendants Government of Guam and*
*Attorney General Douglas B. Moylan in Support of Motion Under FRCP 12(b)(1) & (6)*
*To Dismiss First Amended Complaint for Lack of Subject Matter Jurisdiction*
*District Court Case No. CV04-00038*

Case 1:04-cv-00006   Document 98   Filed 11/24/2004   Page 77 of 78

1   For this reason alone, the Plaintiff has failed to state a claim for relief against Defendant

2 Attorney General Douglas B. Moylan and has misjoined him as a Defendant. Defendant

3 Attorney General Douglas B. Moylan should, therefore, be stricken as a party in this case. 26

4 U.S.C. §7422(f)(1) & (2), 48 U.S.C. §1421i(h)(2), & FRCP 21.

5     Moreover, the Attorney General of Guam has no jurisdiction over the administration and

6 enforcement of the Guam territorial income tax or the operations of the Guam Department of

7 Revenue and Taxation and the Guam Department of Administration, which are in charge of

8 certifying and paying income tax refunds. 48 U.S.C. §1421i(c), d(2), (e), h(2) & (3); 11 G.C.A.

9 §1102, §1103 , §1103 & §1104; 5 G.C.A. §20106, §21101 *et seq.*, §21101 *et seq.*, 22101 *et*

10 *seq.*, §22201 *et seq.*, 22301 *et seq.*, §22401 *et seq.* & 30101 *et seq.* Although the Attorney

11 General of Guam is the chief legal officer of the government of Guam under the Organic Act of

12 Guam and the laws of Guam, it is this Court and not the Attorney General of Guam that will

13 determine the rights and obligations of Plaintiff and Defendant government of Guam in relation

14 to the earned income tax credit in Guam. 48 U.S.C. §1421g(d); 5 G.C.A. 30101 *et seq.* For this

15 additional reason, Plaintiff has failed to state any claim for relief against Defendant Attorney

16 General Douglas B. Moylan and has misjoined him as a defendant. Defendant Attorney

17 General Douglas B. Moylan should, therefore, be stricken as a party in this case. FRCP 21.

18     Dated this 28th day of October, 2004.

19

20               OFFICE OF THE ATTORNEY GENERAL

21               **Douglas B. Moylan, Attorney General**

22

23               STEPHEN A. COHEN

               Attorney for Defendants

24 Solicitor:\Cohen\Torres EITC Dismissal Brief X1\ba

25
*Page 3*
*Memorandum of Points and Authorities in Defendants Government of Guam and*
*Attorney General Douglas B. Moylan in Support of Motion Under FRCP 12(b)(1) & (6)*
*To Dismiss First Amended Complaint for Lack of Subject Matter Jurisdiction*
*District Court Case No. CV04-00038*

Case 1:04-cv-00006    Document 98    Filed 11/24/2004    Page 78 of 78