

The Law Offices of
# PHILLIPS & BORDALLO
A Professional Corporation
410 West O'Brien Drive, Suite 102 Hagåtña, Guam 96910-5044
Tel: (671) 477-ABCD (2223) • Fax: (671) 477-2FAX (2329)
" I Erensia, Lina'la', Espiritu-ta"

Attorneys for Petitioners

FILED
DISTRICT COURT OF GUAM
DEC - 8 2004
MARY L. M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, et al.,<br><br>Petitioners,<br><br>vs.<br><br>FELIX A. CAMACHO, etc., et al.,<br><br>Respondents. | CIVIL CASE NO. 04-00006<br><br>**DECLARATION OF MICHAEL F. PHILLIPS IN SUPPORT OF PETITIONER'S RESPONSE TO RESPONDENT GOVERNOR'S OBJECTION TO PEITITONER'S MOTION FOR APPROVAL OF THE ADMINSITRAITON PLAN** |

I, Michael F. Phillips, declare as follows:

1.  I am the attorney of record for the above-named Petitioner, designated by the District Court of Guam as Interim Class Counsel, and duly admitted to practice before this Court. I make this declaration of my own knowledge, and, if called as a witness, I could and would testify to the facts set forth herein;

2.  On February 12, 2004, I filed this class action lawsuit on behalf of my client and all those similarly situated against all named Respondents. I caused to be served a copy of the applicable Summons and Petition upon each Respondent, including Governor Felix P. Camacho.

3.  Shortly thereafter, Assistant Attorney General J. Basil O'Mallan, III contacted me and began discussions regarding the dismissal of the Attorney General of Guam as a named Respondent and the likelihood of the Office of the Attorney General

representing the Governor of Guam and all named Respondents. Attorney O'Mallan informed me the Office of the Attorney General was awaiting feedback and information from the Governor of Guam regarding the determination of whether the Office of the Attorney General of Guam would represent all Respondents. Attorney O'Mallan further explained their office did not think the Attorney General was needed as a Respondent in this case and pointed to the potential conflict in having the Attorney General himself involved in his official capacity and involved as an attorney representing the Governor and all Respondents. I agreed to dismiss the Attorney General from this case as an unnecessary party. See Dismissal, filed March 8, 2004. The Office of the Attorney General then filed the only response or opposition to our Petition three (3) days later, March 11, 2004, after informing me the Governor had agreed the Office of Attorney General should represent all Respondents in this matter;

4. On March 23, 2004, the District Court sent a Scheduling Notice to counsel of record for Petitioner and Respondents. Assistant Attorney General O'Mallan and I began negotiations regarding the required Scheduling Order. We discussed dates and related issues over the phone on numerous occasions, and we also held a formal meeting at the Office of the Attorney General where I proposed and transmitted Petitioner's proposed Scheduling Order and Discovery Plan. Assistant Attorney General O'Mallan infomed me he would consult others in the office (including the Attorney General himself) and then provide me with Respondents' position. We further negotiated minor changes and on April 28, 2004, we filed the required Scheduling Order and Discovery Plan with the District Court;

5. While I cannot specifically recall all who attended each court hearing or proceeding, I do know that at all times the Office of the Attorney General went on record as representing the Governor and Respondents. On at least one occasion, the Governor's legal counsel, Shannon Taitano, attended a chamber conference (most likely the Scheduling Conference on May 26, 2004) and represented to the Court that she was only attending as an observer on behalf of the Office of the Governor, and further represented that the Office of the Attorney General was representing the Governor in this matter. In fact, Ms. Taitano made it a point to ensure the record remained clear the Office of the Attorney General represented the Governor and she was simply an observer, notwithstanding her position as "legal counsel" with the Office of the Governor. Ms. Taitano also represented to Petitioner's counsel that she had done some research on the matter but was relying upon the Office of the Attorney General to represent the Governor in court.

6. As part of our discovery and trial schedule negotiations, Assistant Attorney General O'Mallan and I agreed this case was primarily a question of law and an expedited discovery and motion period would serve all parties' interests. Attorney O'Mallan represented he understood the hardship inflicted upon the working poor by not having this matter resolved as quickly as possible. I represented to Attorney O'Mallan (and to the Court) that I had prepared a motion for summary judgment and expected this case to be resolved as a matter of law. After discussions before the Court, all agreed the Petitioner would begin the work needed to move for class certification. I also discussed with Assistant Attorneys General O'Mallan and Phil Issacs my request for leave to amend Petitioner's class action petition to include years prior to 1998. I

3

informed the Court of my intent during the Scheduling Conference. Attorney Issacs, who represented the Office of the Attorney General during one hearing, informed me he could not make that decision and suggested I speak with Attorney O'Mallan or the attorney presently assigned to the case. Attorney O'Mallan told me he would have to think about my request and would get back to me;

7. On June 14, 2004, shortly after the local media revealed the Camacho administration ordered Department of Revenue and Taxation personnel to pay out at least one (1) Earned Income Tax Credit payment, and after the Camacho administration announced a policy of paying out EITC payments albeit on a "hardship" basis, the parties entered into a Settlement Agreement, subject to this Court's approval. During settlement negotiations, the parties agreed to a settlement covering income tax filers for tax years 1996 through 2003 (with the exception of 1997 which the previous administration ordered the Department of Revenue and Taxation to pay shortly before a gubernatorial election), and furthermore Respondents agreed to implement the EITC program beginning tax year 2004.

8. The Attorney General of Guam raised the possibility of negotiating a settlement of this case with Petitioner's counsel the same week the media ran continuing stories exposing the Governor's Office as having ordered the payment of at least one (1) EITC payment. Negotiations lasted over three (3) days, and included the Attorney General himself, the Acting Governor of Guam and his staff, and representatives of all named Respondents;

9. Respondent Illagan participated extensively in all negotiations and contributed significantly to the Settlement Agreement. Respondent Illagan remained in

telephonic contact for at least two (2) days, and participated in face to face negotiations in Petitioner's counsel's office on at least one (1) occasion. Respondent Illagan (and at least one other representative from the Department of Revenue and Taxation) participated in at least one internal briefing and also participated in the press conference arranged by the Governor's staff to announce and explain the settlement of the EITC case. During negotiations, Respondent Illagan conveyed his support for the EITC program, his desire to implement the program, and the Government's ability to fully implement the program;

10. Shortly after the signing of the Settlement Agreement, I was called to the Lt. Governor's Office where, along with Attorney Ricardo Bordallo from my office, we met briefly with the Attorney General, Lt. Governor of Guam (who was no longer Acting Governor), personnel from the Lt. Governor's Office, Respondent Illagan, and John Camacho of the Department of Revenue and Taxation (and possibly others). We discussed a few matters relating to the EITC settlement and after a couple minutes Attorney Bordallo and myself were excused from the meeting. It appeared at all times during and shortly after settlement negotiations that the Lt. Governor of Guam was heading the Government of Guam's effort to resolve this case. At one point the Lt. Governor informed me that one of the reasons for his extensive involvement was the fact it could be difficult for Respondent Governor to work with the Attorney General in matters such as "sit down" negotiations. Shortly before the press conference referred to above, the Acting Governor/Lt. Governor informed me and others present that the Governor was "in the loop" which explained the Governor's staff handling the press

conference. The Governor appeared on television a fews days later stating he supported the settlement

11. On a number of occasions Respondent Illagan represented the Government would be able to honor the payment schedule considered during negotiations. Respondent Illagan cooperated extensively, and in fact remained on call (and possibly at the Department of Revenue and Taxation) through the late hours of the nights the parties negotiated the Settlement Agreement. Respondent Illagan also provided Petitioner's counsel with his home phone and personal cellular phone number so that Petitioner's counsel could reach him more at any time of the day or night. Respondent Illagan and his assistant, Mr. John Camacho, briefed the Court during the settlement conference on matters such as the Government's positive ability to make the payments called for in the Settlement Agreement and the prior actions of the Department of Revenue and Taxation (including their systematic prevention of EITC filing by amending tax forms so as to prevent EITC applications). Just a day or two after Petitioner filed this action, Respondent Illagan represented to various local media that he supported the EITC program and, in fact, Respondent Governor had instructed Respondent Illagan to implement the EITC program and commence the required payments;

12. The proposed Settlement Agreement created a settlement class, known as the "EIC Class," defined to include all persons who (a) filed Guam income tax returns and (b) were and are entitled to be paid refundable earned income tax credits under the Guam Territorial Income Tax and the Earned Income Program for any or all of the following tax years: 1996, 1998, 1999, 2000, 2001, 2002 and 2003. The proposed

6

Settlement Agreement provided for a Settlement Amount of Sixty Million Dollars ($60,000,000) to be made available by the Government of Guam to pay for claims made by members of the EIC Class and other fees and expenses in accordance with the Settlement Agreement.

13. The Government of Guam agreed to pay into an EIC Settlement Fund the amount of Three Million Dollars ($3,000,000) by July 17, 2004, and a total of Twenty Million Dollars ($20,000,000) by the end of June, 2005. Under the proposed agreement, the Government of Guam also agreed to pay an additional Forty Million Dollars ($40,000,000) over eight years into the fund, and to fully implement and pay refundable earned income taxes for tax years 2004 and beyond. Counsel for Petitioner requested confirmation Respondents deposited the first installment and Respondent Perez confirmed the required payment pursuant to the terms of the Settlement Agreement;

14. The Plan of EIC Settlement Administration (the "Administration Plan") defines the recovery achieved for Guam taxpayers who qualify as EIC Class Members, outlines the proposed plan for calculations and payments to individuals, sets out methods used to identify EIC Class Members, and lists the duties and responsibilities of the Department of Revenue and Taxation, and counsel for the parties. All matters relating to the Administration Plan are subject to further orders as the Court may issue;

15. On July 16, 2004, this Court vacated the original Objection and Opt Out Date of August 9, 2004 and the November 9, 2004 hearing date on final approval of the Settlement Agreement, pending resolution of two Motions for Intervention. This Court

7

also appointed Michael F. Phillips as the interim counsel for the EIC Class. The order did not address the motion for preliminary approval of attorney fees;

16. The Office of the Attorney General, as recently as October, during a hearing before this Court, repeatedly confirmed Respondents intend to honor and are affirmatively proceeding with the Settlement Agreement. Again, the Governor failed to object or transmit any information to the Court or Interim Class Counsel of his intent to challenge the Administration Plan. Furthermore, notwithstanding the published hearing (also previously scheduled pursuant to the Scheduling Order, the Scheduling Conference at which the Governor's representative attended as an observer), the Governor failed to send anyone other than the Attorney General of Guam to represent him.

Respectfully submitted this 8th day of December, 2004.

_____
MICHAEL F. PHILLIPS