

**FILED**
DISTRICT COURT OF GUAM
FEB - 9 2005
MARY L.M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, *et al.*, | Civil Case No. 04-00006 |
| Petitioners, | |
| vs. | |
| FELIX A. CAMACHO, etc., *et al.*, | ORDER |
| Respondents. | |

On January 25, 2005, this case came before the Court for hearing on the following motions: (1) Petitioner's Motion for Orders Approving the Administration Plan and Amended Notice and for Orders Establishing the Fairness Hearing Date and Objection and Opt Out Date; (2) Motion to Strike Entry of Appearance of Rawlen Mantanona and to Strike all Subsequent Documents Filed Herein by [Said Counsel]; (3) Motion to Strike Entry of Appearance of Calvo & Clark, LLP & Purported Entry of Appearance of Shannon Taitano, Esq. and to Strike all Subsequent Documents Filed Herein by [Said Counsel]; and (4) Motion for Relief from Order Issued by the Court on November 12, 2004.[1] Appearing on behalf of the Plaintiff and the class was interim class counsel Michael F. Phillips. Assistant Attorneys General Stephen Cohen and Robert Weinberg appeared on behalf of all respondents. Additionally, appearing on behalf of

---

[1] The motions set forth as 2 through 4 above were filed by the Attorney General of Guam (the "Attorney General").

Respondent Felix A. Camacho, Governor of Guam (the "Governor") were Attorneys Eduardo Calvo, Arthur Clark, Rodney Jacob, Daniel Benjamin, and Shannon Taitano. Furthermore, Attorney Rawlen Mantanona appeared on behalf of respondents Artemio Ilagan, Director of the Department of Revenue and Taxation, and Lourdes M. Perez, Director of the Department of Administration.

During the course of the proceedings, it became evident that there was insufficient time to hear testimony and argument on the Petitioner's motion to approve the administration plan. With the parties' concurrence, the Court held the hearing on the Petitioner's motion in abeyance pending its determination on the three motions which relate to the issue of representation of the respondents by counsel other than the Attorney General. The Court stated that it would re-schedule the hearing on the Petitioner's motion to a later date.

Upon consideration of the record, oral arguments, and relevant statutes and case law, the Court hereby DENIES the Attorney General's motions and sets forth the basis for its decision herein.

## BACKGROUND

On February 12, 2004, Petitioner Julie Santos initiated this action on her behalf and on behalf of a class of taxpayers claiming refunds as a result of the Earned Income Tax Credit ("EIC").

Sometime in June 2004, the parties to this action entered into a proposed Settlement Agreement. The Court preliminarily approved the Settlement Agreement on June 17, 2004. (See Docket No. 14.[2]) Pursuant to section V of the Settlement Agreement, the parties were to cooperate in the formulation of an administrative plan which was to be submitted to the Court for approval. (Id.)

When the parties were unable to agree on an administrative plan, the Petitioner, on

---

[2] The Settlement Agreement was signed by the Petitioner and her counsel. Signing on behalf of the respondents were acting Governor Kaleo Moylan (since Governor Camacho was off-island at the time), the AG, Artemio Ilagan, and Joseph Manibusan (then acting Director of the Department of Administration).

October 25, 2004, filed a motion seeking approval of a proposed administrative plan. (See Docket Nos. 73 & 74.)

On November 8, 2004, the Attorney General filed his Response to the Petitioner's motion. (See Docket No. 77.) Therein, the Attorney General revealed for the first time that the Governor had "second thoughts about various aspects of the [Settlement] Agreement." (Attorney General Response at p.5.) Apparently, the Governor instructed the Attorney General not to file pleadings on his behalf without the Governor's consent as the "client." (Id.) The Attorney General, however, believed that as the "Chief Legal Officer for the Government of Guam," 48 U.S.C. § 1421g(d)(1), he had the ability to control "all litigation by and on behalf of the Government of Guam, its departments, boards, agencies and instrumentalities." (Id. at p.6.) Thus, the Attorney General disregarded the Governor's wishes and filed a response to the Petitioner's motion as he believed he was entitled to do.

The Attorney General's action then sparked the entries of appearance by the Calvo & Clark law firm and Ms. Taitano for the Governor and eventually the appearance of Mr. Mantanona on behalf of Mr. Ilagan and Ms. Perez. On November 9, 2004, the Governor, alleged that the Attorney General filed a response to the Petitioner's motion without consulting the Governor, thus depriving the Governor "of the most basic right to have his interests and the interests of his office represented in a suit in which he is a named defendant." (Request for Hearing and Objection, Docket No. 80 at p.2.) The Governor thus requested "the opportunity to submit a brief stating his concerns." (Id.)

On November 12, 2004, the Court issued an Order stating that "[a]lthough there may be questions as to the timing of [the Governor's] request, the Court believes the [Governor] should be heard." (Order, Docket No. 83.)

On December 6, 2004, the Attorney General filed the three motions seeking to strike the appearances and pleadings filed by independent counsel and to vacate the Court's previous Order permitting the Governor to be heard on this matter via separate counsel. (See Docket Nos. 97, 98 & 100.)

The Governor and respondents Ilagan and Perez filed their oppositions to the Attorney

- 3 -

General's motions. (See Docket Nos. 111-12 and 115-16.)

The Court finally heard testimony and argument on the Attorney General's motions on January 25, 2005.

## ANALYSIS

The Attorney General's three motions present the question of whether the Attorney General, when he is specifically charged by Section 1421g(d)(1) of the Organic Act as the "Chief Legal Officer of the Government of Guam," has the exclusive authority to represent all Government of Guam agencies and officials. The Attorney General raises three specific arguments in support of his motions to strike appearances and motion for relief from order, which the Court will address in further detail below.

1.  <u>Violation of Local Rules of Practice</u>

The Attorney General first asserts that the entries of appearance by Ms. Taitano, the Calvo & Clark law firm, and Mr. Mantanona violate Local Rule GR 19.1(b) of the Local Rules of Practice for the District Court of Guam. This rule provides that a substitution of counsel may be made by written stipulation or written designation "[w]hen an attorney of record for any reason ceases to act for a party." However, "[u]ntil such substitution is approved by the Court, the authority of the attorney of record shall continue for all proper purposes." Local Rule GR 19.1(b). Since this case was first initiated, the Attorney General has appeared as counsel of record for <u>all</u> respondents. The Attorney General contends that private counsels' entries of appearance and subsequent pleadings should be struck as the Court has not approved the substitution of counsel.

The respondents, on the other hand, contend that they have complied with the Local Rules. Specifically, because the Attorney General would not stipulate to the substitution of private counsel, the Respondents assert that the "Entry of Appearance" pleadings serve as the "written designation" required under Local Rule GR 19.1(b)(2). While the Court has not formally approved the substitution per se, the Court's "conditional" or "temporary" approval can be inferred by the November 12, 2004 Order granting the Governor's request to be heard on the matter.

Local Rule GR 19.1 is more akin to a procedural rule and should not be used by counsel of record as a means to block a litigant's access to the Court when the client and counsel disagree. In fact, Local Rule GR 19.1(a) provides that

> [w]henever a party has appeared by an attorney, the party may not thereafter appear or act in his or her own behalf in the action, or take any step therein, unless an order of substitution shall first have been made by the Court . . . provided that the Court may *in its discretion* hear from a party [] notwithstanding the fact that the party has appeared, or is represented by an attorney.

Rule GR 19.1(a) (emphasis added). In this case, the Court, in its discretion, decided that it would hear from the Respondents through their independent counsel, notwithstanding the fact that the Attorney General was counsel of record. See November 12, 2004 Order (Docket No. 83). Thus, the Court finds that there was no violation of Local Rule GR 19.1.

2. <u>Violation of the Organic Act and Common Law Powers of Attorney General</u>

The Attorney General argues that the Organic Act, by designating him "Chief Legal Officer for the Government of Guam," grants him essentially unfettered control over "all litigation by and on behalf of the Government of Guam, its departments, boards, agencies and instrumentalities." (Attorney General's Response, Docket No. 77, at p.6.) The Attorney General asserts that the people of Guam are his "real clients." Thus, the Attorney General contends that his obligation to represent government officials and agencies to the best of his abilities must not be at the people's expense since his paramount duty is to protect the people's interests. The Attorney General claims that he must control legal policy and litigation decisions for the entire Government of Guam and her officers and agencies in order to form a coherent uniform policy for the people.

The Organic Act of Guam, 48 U.S.C. § 1421 *et seq.*, functions as Guam's constitution. Haeuser v. Dep't of Law, 97 F.3d 1152, 1156 (9th Cir. 1996). While Congress declared the Attorney General the Chief Legal Officer for the Government of Guam, Congress also charged the Governor with the responsibility of administering the Guam Territorial income tax. Specifically, the Organic Act provides:

> **The administration and enforcement of the Guam Territorial income tax shall be performed by or under the supervision of the Governor.** Any

- 5 -

> function needful to the administration and enforcement of the income-tax laws in force in Guam . . . shall be performed by any officer or employee of the government of Guam duly authorized by the Governor (either directly, or indirectly by one or more redelegations of authority) to perform such function.

48 U.S.C.A. § 1421i(c) (emphasis added).

The Organic Act explicitly vests the Governor with the ultimate and exclusive authority to administer and enforce the tax laws. The Governor stands in the shoes of the Secretary of the Treasury of the United States with regard to the Guam Territorial income tax.

> The **Governor** or his delegate **shall have the same administrative and enforcement powers and remedies with regard to the Guam Territorial income tax as the Secretary of the Treasury**, and other United States officials of the executive branch, have with respect to the United States income tax. Needful rules and regulations not inconsistent with the regulations prescribed under section 7654(e) of the Internal Revenue Code of 1986 [26 U.S.C.A. § 7654(e)] for enforcement of the Guam Territorial income tax shall be prescribed by the Governor. The Governor or his delegate shall have authority to issue, from time to time, in whole or in part, the text of the income-tax laws in force in Guam pursuant to subsection (a) of this section.

48 U.S.C.A. § 1421i(d)(2) (emphasis added).

This case involves a dispute over the proper application of the Guam Territorial income tax laws. The Governor, not the Government of Guam, is responsible for the administration and enforcement of the Guam Territorial income tax laws. Thus, although the Attorney General is the Chief Legal Officer of the Government of Guam, the Attorney General does not have the authority to override the Governor's decisions which relate to the Guam Territorial income tax laws.

The Court finds support for such a conclusion in two Ninth Circuit cases which also involve the interpretation of the Organic Act of Guam. The controversy in <u>Bordallo v. Baldwin</u>, 624 F.2d 932 (9th Cir. 1980), arose over the governance of the Guam Memorial Hospital (the "Hospital"). The Governor of Guam had always appointed the Board of Trustees of the Hospital, but the Guam Legislature passed a law which "eliminate[d] all discretion over appointments by the Governor and [] require[d instead] that he appoint [] various persons designated by [] several private organizations" listed in the new law. <u>Id.</u> at 933. Then Governor Ricardo J. Bordallo challenged the law, asserting that it violated his Organic Act powers and was therefore invalid. The Organic Act provided that "[s]ubject to the laws of

Guam, the governor shall establish, maintain, and operate public-health services in Guam, including hospitals . . . ." The Ninth Circuit reversed the District Court's judgment declaring the law consistent with the Organic Act. The Ninth Circuit stated that the Guam Legislature

> may not negate the command of the Organic Act that the ultimate responsibility for the governance of the Hospital be in the Governor. . . . The Legislature has in effect taken over the entire power to establish, maintain and operate the Hospital by dictating who the governing trustees shall be. The Governor is stripped of all power to have any voice in the policies, management or procedures of the Hospital, despite the mandate of the Organic Act to the contrary. The Legislature has exceeded its power.

Id. at 934-35.

The same would be true here were the Court to adopt the Attorney General's assertions that he and he alone has exclusive authority over this litigation which involves the Guam Territorial income tax laws. If the Attorney General were to control all legal policy and litigation decisions for the entire Government of Guam, even those disputes arising from the Guam Territorial income tax, then the Governor would essentially be stripped of all power given to him by the Organic Act to administer and enforce the income tax laws. The Court will not place such a restriction on the Governor's power.

The case of Nelson v. Ada, 878 F.2d 277 (9th Cir. 1989) is also instructive. The dispute in Nelson involved control over Guam's public education system. The Guam Legislature had passed a law which established an elected school board. However, the Organic Act at the time vested the Governor with the ultimate authority for establishing the public education system. Based on its ruling in Bordallo, the Ninth Circuit affirmed the District Court's ruling in favor of the Governor. The Ninth Circuit also rejected an argument that a later amendment to the Organic Act, which required the "Government" rather than the "Governor" to provide an educational system, should be given retrospective effect. Id. at 280-81. Thus, the Nelson case held that prior to the 1986 Organic Act amendment the school board members had to be appointed by the Governor, and they could not be lawfully selected by any other body or process.

Both the Governor and the Attorney General are elected constitutionally created officers of Guam. However, the Governor, and not the Government of Guam or the Attorney

General, is mandated to administer and enforce the laws pertaining to the Guam Territorial income tax. Accordingly, the Governor must have a say in this action. The Attorney General can not stifle the Governor's voice in this matter by preventing him from being heard through separate and independent counsel, regardless of the fact that the Attorney General is the Chief Legal Officer of the Government of Guam.

Similarly, this analysis applies to Respondents Ilagan and Perez. The Organic Act permits the Governor to delegate his authority over the income tax laws to any officer or employee of the Government of Guam. 48 U.S.C. § 1421i(c) ("Any function needful to the administration and enforcement of the income-tax laws in force in Guam . . . shall be performed by any officer or employee of the government of Guam duly authorized by the Governor (either directly, or indirectly by one or more redelegations of authority) to perform such function.") Here, Respondents Ilagan and Perez are authorized by the Governor to perform certain duties in relation to the Guam Territorial income tax. They, like the Governor, have a right to be heard in this matter through private counsel. The Attorney General's authority and powers – whether created at common law or by constitution or statute – do not prevent the Respondents in this action involving the Guam Territorial income tax from being represented by counsel independent of the Attorney General' office.

3. <u>Violation of Guam Procurement Law</u>

Finally, the Attorney General's argues that the appearances by private counsel violate Guam Procurement Law, 5 GUAM CODE ANN. § 5121(b). In pertinent part, this statute provides that "[n]o contract for the services of legal counsel in the Executive Branch shall be executed without the approval of the Attorney General." 5 GUAM CODE ANN. § 5121(b). The Attorney General asserts that his office has not approved any contract for legal services covering the instant action. Thus, until such contracts are approved, the Attorney General contends that private counsel are not authorized to represent any of the Respondents and that any funds disbursed as payment to these counsel are illegal.

The Supreme Court of Guam has interpreted Guam's procurement laws in a recent opinion. See <u>A.B. Won Pat Guam Int'l Airport Auth. v. Moylan</u> ("<u>GIAA</u>"), 2005 Guam 5. In

GIAA, the Attorney General challenged a local law which permitted the airport to hire its own legal counsel. The Supreme Court of Guam held that the Attorney General's "common law powers and duties may be subject to increase, alteration or abridgement by the Guam Legislature." Id. at ¶2. Furthermore, "the Attorney General's role with respect to the approval of procurement contracts is to determine correctness as to form and legality." Id. at ¶¶18 and 65 (citing 5 GUAM CODE ANN. § 5150).

The Court recognizes that unlike the GIAA case, the Respondents here are not autonomous agencies of the Government of Guam. Nevertheless, because the Organic Act vests in the Governor and those he delegates exclusive authority over Guam's income taxes, the Attorney General may not use Guam's procurement laws as a means to prevent the Respondents from carrying out their mandated duties.

In this case, the Attorney General has not signed the legal services contracts at issue. Presumably, he is withholding such approval because he believes that the hiring of separate counsel abridges his Organic Act and common law powers. However, the Court has already ruled that there is no violation of the Attorney General's authority. Thus, the Attorney General has a duty to approve said contracts unless said contracts are not lawful or correct in form. GIAA, 5 Guam at ¶65.

Furthermore, the Attorney General fails to support his proposition that a violation of Guam's Procurement Law would prevent a court from hearing from a party. If there was a violation of Guam Procurement Law, then certainly private counsel should not get paid. But that is not the issue here. Accordingly, the Court finds that Guam's Procurement Law does not prevent the Court from hearing from the Respondents through their independent counsel.

## CONCLUSION

For the reasons set forth above, the Court hereby DENIES the Attorney General's three motions (Docket Nos. 97, 98 and 100). The law firm of Calvo & Clark, LLP and Attorney Shannon Taitano are hereby substituted as counsel of record for the Governor. Furthermore, Attorney Rawlen Mantanona is hereby substituted as counsel of record for Respondents Ilagan and Perez. The Attorney General shall remain as counsel of record for Respondent

Julie Babauta Santos v. Felix P. Camacho, Governor of Guam, et al., Civil Case No. 04-0006
Order Denying Attorney General's Motions Regarding Representation by Independent Counsel

Government of Guam.

Additionally, the hearing on the Petitioner's Motion for Orders Approving the Administration Plan and Amended Notice and for Orders Establishing the Fairness Hearing Date and Objection and Opt Out Date is hereby set for **Monday, February 28, 2005 at 9:00 a.m.** All witnesses who were previously subpoenaed and whose testimonies are necessary to the resolution of said motion shall appear at the hearing. Additionally, to avoid the delay experienced with the January 25th hearing, the parties shall lodge three (3) complete sets of marked and tabbed exhibits in three-ring binders with the Court no later than **Wednesday, February 23, 2005.** A copy of the Exhibit List shall be included in each three-ring binder. The parties shall meet and confer sufficiently in advance of trial and formulate a set of joint exhibits, if possible, to eliminate duplicate exhibits. Those exhibits upon which agreement cannot be reached shall be submitted separately by each respective party. Furthermore, the Court encourages the parties to eliminate the need for uncontroverted testimony or facts through the use of stipulations.

Finally, the Court notes that the consent to full disposition by the below-signed judge was signed only by Attorney Phillips and the Attorney General. (See Docket No. 13.) This consent form was executed and filed during the time period when the Governor was off-island and the Settlement Agreement was being negotiated. The Governor has asserted that he was not involved in the negotiations and has not been fully informed of the negotiation process. Thus, the Court finds that there has been no consent by the Governor to proceed before the Magistrate Judge. The motion for adoption of the administrative plan will therefore proceed on February 28, 2005, before the visiting District Judge.

SO ORDERED this 9th of February 2005.

Notice is hereby given that this document was entered on the docket on FEB 0 9 2005. No separate notice of entry on the docket will be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam
By: _____ FEB 0 9 2005
Deputy Clerk     Date

JOAQUIN V.E. MANIBUSAN, JR.
United States Magistrate Judge

- 10 -
Case 1:04-cv-00006   Document 158-1   Filed 02/09/05   Page 10 of 10