1   **SHANNON TAITANO, ESQ.**
    **OFFICE OF THE GOVERNOR OF GUAM**
2   Ricardo J. Bordallo Governor's Complex
3   Adelup, Guam 96910
    Telephone:    (671) 472-8931
4   Facsimile:    (671) 477-4826

5

6   **EDUARDO A. CALVO**
    **RODNEY J. JACOB, ESQ.**
7   **DANIEL M. BENJAMIN, ESQ.**
    **CALVO AND CLARK, LLP**
8   Attorneys at Law
    655 South Marine Drive, Suite 202
9   Tamuning, Guam 96913
    Telephone:    (671) 646-9355
10  Facsimile:    (671) 646-9403

11  Attorneys for *Felix P. Camacho, Governor of Guam*

12

13

14              IN THE UNITED STATES DISTRICT COURT
                        DISTRICT OF GUAM
15
    JULIE BABAUTA SANTOS, et. al.,          CIVIL CASE NO. 04-00006
16
                        Petitioners,
17

18                                          **MEMORANDUM OF POINTS AND**
                                            **AUTHORITIES IN SUPPORT OF**
19          -v-                             **MOTION TO VACATE THE**
                                            **STIPULATED ORDER OF JUNE 17,**
20                                          **2004 PRELIMINARILY APPROVING**
                                            **SETTLEMENT**
21  FELIX P. CAMACHO, etc., et. al.
                                            **[ORAL ARGUMENT REQUESTED]**
22                      Respondents.
23

24

25

26

27

28                              ORIGINAL
    MR050216.382-00010[Mtn. to Vacate]

# TABLE OF CONTENTS

FACTS ............................................................................................................................... 1

    A.   Procedural History ....................................................................................................... 1

        1.   The Stipulated Order Preliminarily Approving the Settlement ...................................... 2

        2.   The Stipulated Order Setting Attorney's Fees at $6 Million ........................................ 2

        3.   The Stipulated Order Approving "Interim Class Counsel" ........................................... 2

    B.   The General Terms of the Settlement Agreement .............................................................. 3

    C.   The Attorney General's Efforts to Bind the Governor to an Illegal Agreement .............. 4

ARGUMENT ................................................................................................................... 5

    I.     THE COURT LACKS SUBJECT-MATTER JURISDICTION ...................................... 5

    A.   Petitioner Has Not Alleged Exhaustion of Administrative Remedies .............................. 6

    B.   The Court Lacks Jurisdiction to Issue a Writ of Mandamus ........................................ 8

    II.    THE REQUIREMENTS OF RULE 23 HAVE NOT BEEN MET ............................... 10

    III.   THE SETTLEMENT IS ILLEGAL ............................................................................. 10

    A.   The Illegal Expenditures Act ..................................................................................... 10

    B.   The Requirement of BBMR Certification ..................................................................... 15

    C.   The Provisions Requiring Department of Revenue and Taxation toAdminister are
        Illegal………………………………………………………………………………….16

    IV.   THE SETTLEMENT VIOLATES DUE PROCESS BY CREATING A NO OPT- OUT
        SETTLEMENT INTO WHICH SOME POTENTIAL EITC RECIPIENTS  CANNOT
        EVEN OPT IN ............................................................................................................ 16

CONCLUSION ............................................................................................................... 18

TABLE OF AUTHORITIES

**Cases**

*Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33 (1980)................................................................. 8

*Ashoff v. City of Ukiah*, 130 F.3d 409 (9th Cir. 1997) ...................................................................... 7

*Bear Valley Mutual Water Co. v. Riddell*, 493 F.2d 948 (9th Cir. 1974) ......................................... 6

*Bob Jones University v. Simon*, 416 U.S. 725 (1974) ........................................................................ 9

*Boyd v. United States*, 762 F.2d 1369 (9th Cir. 1985) ...................................................................... 6

*Brown v. Ticor Title Ins. Co.*, 982 F.2d 386 (9th Cir. 1992)........................................................... 17

*Cf. Blackhawk Heating & Plumbing Co. v. United States*, 622 F.2d 539 (Claims Ct. 1980)........ 12

*Elias v. Connett*, 908 F.2d 521 (9th Cir. 1990) ................................................................................. 9

*Enochs v. Williams Packing Co.*, 370 U.S. 1 (1962) ......................................................................... 9

*Govt. Sys. Advisors, Inc. v. United States*, 13 Cl. Ct. 470 (1987) ................................................... 13

*Heyl & Patterson Int'l v. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419 (3d Cir. 1981)...... 11

*Jeff D. v. Andrus*, 889 F.2d 753 (9th Cir. 1989)............................................................................. 12

*Lane v. Pena*, 518 U.S. 187 (1996)................................................................................................... 7

*Leiter v. United States*, 271 U.S. 204 (1926) .................................................................................. 13

*Levell v. Monsanto Research Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000) ........................................ 13

*Marangi v. Govt. of Guam*, 319 F. Supp. 2d 1179 (D. Guam 2004) ................................................ 9

*Martinez v. United States*, 595 F.2d 1147 (9th Cir. 1979) ............................................................... 6

*Marx v. Govt. of Guam*, 866 F.2d 294 (9th Cir. 1989) ..................................................................... 7

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ............................................................................. 17

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376 (9th Cir. 1988) ............................................................................................................................................ 5,6

*Oatman v. Dept. of Treasury*, 34 F.3d 787 (9th Cir. 1994)............................................................ 10

II

MR050216.382-00010[Mtn. to Vacate]

*Pangelinan v. Guiterrez*, 2003 Guam 13.................................................................10,11,13

*Quarty v. United States*, 170 F.3d 961 (9th Cir. 1999) ....................................... 6,7

*Rand v. United States*, 249 U.S. 503 [(1918)]...................................................... 7

*Robert F. Simmons and Assocs. v. United States*, 360 F.2d 962 (Ct. Cl. 1966) ........................... 11

*Rock Island R.R. Co. v. United States*, 254 U.S. 141 [(1920)].................................................. 7

*Sorenson v. Secretary of Treasury*, 475 U.S. 851 (1986) .................................................. 6

*State ex rel. Point Towing Co. v. McDonough*, 149 S.E.2d 302 (W. Va. 1966)........................... 14

*Thompson v. Gaskill*, 315 U.S. 552 (1942) ....................................................................... 7

*Thompson v. McCombe*, 99 F.3d 352 (9th Cir. 1996)........................................................ 7

*Tucker v. Alexander, supra* [275 U.S. 228 (1927)]............................................................. 7

*United States ex rel. Girard Trust Co. v. Helvering*, 301 U.S. 540 (1937) ..................... 8

*United States v. Boe*, 543 F.2d 151 (C.C.P.A. 1976)........................................................ 5

*United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269 (1931)........................................... 7

**Statutes**

11 G.C.A. § 42104 ........................................................................................... 6

11 G.C.A. § 50102 ..................................................................................... 14, 16

11 G.C.A. §§ 50101 ........................................................................................ 13

26 U.S.C. § 7421 ............................................................................................. 9

26 U.S.C. § 7422 ............................................................................................. 6

48 U.S.C. § 1421 ...................................................................................... 6, 9, 12

48 U.S.C. § 1423 ........................................................................................... 10

5 G.C.A. § 22401 .................................................................................... passim

## Other Authorities

1 *Civ. Actions Against the U.S.* § 1:15 ................................................................................. 8

15 C. Wright, A. Miller & E. Cooper, *Fed. Practice and Proc.* § 3844 at 332 .............................. 5

P.L. 27-29, Chapter 5, § 4(d) (FY 2004 Budget) ........................................................... 16

*The Earned Income Tax Credit And The Limitations Of Tax-Based Welfare Reform*, 108 Harv. L. Rev. 533, 534 (1995)................................................................................................................... 6

## Rules

Fed. R. Civ. P. 23(h) ........................................................................................................ 13

FRCP § 23 ........................................................................................................................10

The Governor respectfully moves the Court to vacate the June 17, 2004 Stipulated Order Granting Preliminary Approval of Class Action Settlement. ("June 17 Stipulation.")[1] This stipulation was submitted by the Attorney General on "behalf" of the Governor and the other defendants in the case. There are numerous and manifest problems with the settlement that were not brought to the attention of the Court at the time the stipulated orders were signed:

1.    The Court lacks subject-matter jurisdiction;

2.    None of the procedural requirements for a class action have been met — including the fact that no class has yet been certified;

3.    The proposed settlement agreement is illegal under Guam law because it fails to identify funds to support the obligations it would impose on the Government of Guam;

4.    Contrary to the representations in the stipulation requesting preliminary approval, the proposed settlement agreement would create a no-opt-out settlement into which some of the most deserving earned income tax credit recipients cannot even opt in.

Based on the arguments below, the Governor respectfully requests the Court to vacate its conditional approval and return the case to the Court's trial docket.

## FACTS

### A.    Procedural History

Petitioner Julie Santos filed this action in February 2004, seeking to obtain a tax refund for her Earned Income Tax Credit ("EITC"). Her complaint included class action allegations on behalf of others who allegedly were not paid their EITC. The complaint contains no allegation that she, or any of the putative class members, have exhausted or attempted to exhaust their administrative remedies.

The case remained dormant for many months until the subject settlement was entered into under very unusual circumstances. On June 11, 2004, while the Governor was off-island, acting governor Lt. Governor Kaleo Moylan, Attorney General Douglas Moylan, and petitioner's

---

[1] (Declaration of Rodney J. Jacob in Support of Motion to Vacate ("Jacob Decl.") (Jacob Decl. Exh. A-1) (6/17/04 Stipulated Order Granting Preliminary Approval of Class Action Settlement.)

1

MR050216.382-00010[Mtn. to Vacate]

counsel Michael Phillips entered into the settlement.[2] On *Sunday*, June 13, they called a press

conference to announce the settlement. The Governor was scheduled to return to Guam early in

the week of June 14.

### 1. The Stipulated Order Preliminarily Approving the Settlement

On June 14, the Attorney General and Petitioner's counsel stipulated to proceed before a

Magistrate Judge. (Docket No. 13.) They also submitted a stipulation requesting preliminary

approval of the settlement. (Jacob Decl. Exh. A-1). This was followed a few days later by a

"settlement conference" before the Court, which lasted 24 minutes, according to a news report.

(Jacob Decl. Exh. E.) The discussion occurred off the record, and it is therefore unknown

precisely what was represented to the Court. Thereafter, an order preliminarily approving the

settlement was signed.

### 2. The Stipulated Order Setting Attorney's Fees at $6 Million

Following the preliminary approval, the Attorney General and Petitioner's counsel

submitted a stipulated proposed order for approval of attorney's fees for Petitioner's counsel.

That Order stated that class counsel was to receive "ten percent (10%) of the Settlement

Amount," which is defined under the settlement agreement as $60 million. It was signed on June

24, 2004. (Docket No. 16.) No motion or opposition was filed. Since the Court denied

intervention of certain members of the purported class, Petitioner's counsel is the only counsel

who would receive any fees.

### 3. The Stipulated Order Approving "Interim Class Counsel"

On July 14, 2004 (several weeks after the proposed order preliminarily approving the

settlement and the order setting attorney's fees had been signed), petitioner filed a motion to

appoint Mr. Phillips as "class counsel." No argument was scheduled or heard. Two days later, by

---

[2] This multimillion dollar settlement was apparently negotiated and drafted over a single weekend. Petitioner's counsel has represented that : "At one point, the Lt. Governor informed me that one of the reason for his extensive involvement was the fact it could be difficult for Respondent Governor to work with the Attorney General in matters such as 'sit down' negotiations." (Jacob Decl. Exh. J) (12/8/04 M. Phillips Decl. ¶ 10.) Of course, everyone knew that there was no opportunity for the Governor to have a "sit down" negotiation because he was a full continent away at the time.

2

MR050216.382-00010[Mtn. to Vacate]

stipulated order of the parties and over the objections of prospective intervenors, Mr. Phillips was appointed "interim class counsel." (Docket Nos.46, 48.)

## B. The General Terms of the Settlement Agreement

The settlement agreement contained provisions stipulating that this case could be maintained as a class action. (Exh. A to Jacob Decl. Exh. A-1) (Settlement Agreement). It provided that the Government of Guam would pay $60 million as the Settlement Amount,[3] that the Government would pay for the costs of administering the settlement, and that the Government would pay the EITC in future tax years. (Settlement Agreement §§ IV(A)-(B), VI(A), VI(E)-(F).)

The agreement did not identify any source (general fund or any special fund) of appropriation to pay the $54 million in purported tax refund claims, the $6 million for Mr. Phillips, or the unspecified administrative costs. The agreement did not identify any appropriation to pay EITC tax refund claims in future tax years. The agreement was not contingent on the Legislature appropriating funds to make these payments.

The payments in the agreement were not contingent upon how many class members actually opt in. As a result, the Government would pay $60 million (and class counsel would get $6 million) regardless of how many people opted into the class, the Government would still face identical lawsuits by each person who opted out.

The agreement further provides that only persons who already filed tax returns can seek payments of the settlement amount for EITC claims (Settlement Agreement Part I(I)); and that no one who opts out of the settlement can receive a payment of the EITC ever without the express written consent of the Attorney General (Settlement Agreement Part V(A)(4)).

---

[3] This amount was based on a "rough estimate" based on 1997 payout made up only on the Saturday night before the settlement. (Jacob Decl. Exh. L) (11/24/04 Illagan Decl. ¶2). The Department of Administration ("DOA") and Department of Revenue and Taxation ("DRT") representatives signed the agreement without examining or reviewing it. (Jacob Decl. Exh. K, L and P) (11/24/04 Illagan Decl. ¶ 3; 1/25/05 Tr. 20:12 – 22:14; 11/24/04 Manibusan Decl. ¶4-5). Defendant DOA Director Lourdes Perez who was off-island, stated the agreement was entered without her consent and without a fiscal impact analysis that was necessary to be conducted prior to agreement of such plan. (Jacob Decl. Exh. M) (11/24/04 Perez Decl. ¶7.)

MR050216.382-00010[Mtn. to Vacate]

3

The Attorney General's Office approved the Settlement Agreement at "as to Legality & Form."

### C. The Attorney General's Efforts to Bind the Governor to an Illegal Agreement

On August 9, 2004, the Governor was sued in an action entitled *Charmaine Torres* vs. *Government of Guam et. al.*, which was a putative class action based on the Government's failure to pay the EITC. (Jacob Decl. Exh. G.) The Governor retained independent counsel to defend that case because the Attorney General also was named as a defendant. Shortly thereafter, the Governor became concerned about whether the settlement was illegal and requested advice from the Attorney General on September 16. (Jacob Decl. Exh. N).

On October 13, almost one month later, the Attorney General provided the Governor with a written opinion stating that the settlement was illegal. (Jacob Decl. Exh. F.) The letter further opines that the Governor and anyone administering the provisions of the settlement could be exposed to criminal liability. (*Id.*)

On October 28, Attorney General asserted lack of subject-matter jurisdiction as a defense to the claims against him in *Torres* on the grounds that the complaint contained no allegations of exhaustion. (Jacob Decl. Exhs. H & I.) The Attorney General also argued (through joinder of the Governor's brief) that the *Torres* case could not be maintained as a class action because individualized issues predominate tax-refund cases. (Jacob Decl. Exh. H at 15-18; Exh. I.)

On November 8, contrary to the Governor's instructions, and contrary to his position in the *Torres* case, the Attorney General submitted a brief asking this Court to continue enforcing the settlement by approving an administrative plan as required by the agreement. (Docket No. 77-1.) He did not disclose his opinion letter stating that the settlement was illegal or raise the issue of subject-matter jurisdiction.

On November 9, the Governor appeared through independent counsel to object to the Court adopting an administrative plan based upon the settlement agreement, which, according to the Attorney General, would have the effect of exposing the Governor and all of his employees to criminal liability. (Docket No. 80-1). Through independent counsel, on November 24,2004, the

4

Governor, DRT and DOA filed oppositions to the Petitioner's motion for approval of its proposed administration plan. (Docket No. 85-1, 89-1). The Attorney General then moved to strike the Governor's appearance, claiming that only the Attorney General can represent the Governor of Guam and that the Attorney General was under no duty to follow his client's instructions or consult with his client. On November 16, 2004, the Governor's office notified the Legislature that the Settlement Agreement was not supported by an appropriation or fund as required by law. 5 G.C.A. § 22401(e). (Jacob Decl. Exh. O). A hearing was held on January 25, 2005. It focused mainly on the Attorney General's motion to strike. On February 9, 2005, this Court ruled that: (1) the Governor was entitled to appear through independent counsel, and (2) the stipulated consent to proceed before a Magistrate was invalid because there was "no consent by the Governor." (Docket No. 149-1) (Order at 10.) Thereafter, on February 14, 2005, the Court referred a related motion to the Magistrate for disposition regarding the Petitioner's motion to approve the proposed administration plan. (Docket No. 150-1).

## ARGUMENT

### I. THE COURT LACKS SUBJECT-MATTER JURISDICTION

Exhaustion of administrative remedies is an absolute jurisdictional prerequisite for bringing a claim for EITC. The Court lacked subject-matter jurisdiction to issue the stipulated orders because the complaint contains no allegation that petitioner (or any putative class member) has exhausted her administrative remedies. Because the allegations in the complaint fail to establish this Court's jurisdiction, the only recourse is to dismiss this case. *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380-81 (9th Cir. 1988).

Under binding Ninth Circuit precedent, if the allegations in the complaint fail to establish jurisdiction, a court has no choice but to dismiss the case. "If jurisdiction is lacking at the outset, the district court has no power to do anything with the case except dismiss ... and any order other than to dismiss is a nullity." *Id.* (citing 15 C. Wright, A. Miller & E. Cooper, *Fed. Practice and Proc.* § 3844 at 332 and *United States v. Boe*, 543 F.2d 151, 159 (C.C.P.A. 1976)) (brackets and quotations omitted). When the allegations in the complaint fail to establish jurisdiction, a court

MR050216.382-00010[Mtn. to Vacate]

lacks the power to even grant leave to amend. *Id.* at 1381. For this reason, all of the three stipulated orders at issue must be vacated and the case dismissed.

### A. Petitioner Has Not Alleged Exhaustion of Administrative Remedies

As the Supreme Court has held, the EITC is a tax refund for purposes of the administration and payment of tax refunds. *Sorenson v. Secretary of Treasury*, 475 U.S. 851, 863 (1986) ("to the extent an excess earned-income credit is 'payable' to an individual, it is payable as *if* it were a refund of tax paid") (italics in original).[4] The EITC's status as a tax refund matters because administrative exhaustion is required before a suit to recover a tax refund may be filed:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the [Governor or his delegate], according to the provisions of law in that regard, and the regulations of the [Governor or his delegate] established in pursuance thereof.

26 U.S.C. § 7422(a) (modified to replace in brackets the words "Secretary" with "Governor or his delegate" pursuant to 48 U.S.C. § 1421i(e), Guam's "mirror image" rule).

The Ninth Circuit repeatedly has held that a plaintiff's failure to exhaust a tax-refund claim requires dismissal for lack of subject-matter jurisdiction. *Quarty v. United States*, 170 F.3d 961, 972 (9th Cir. 1999); *Boyd v. United States*, 762 F.2d 1369, 1372 (9th Cir. 1985); *Martinez v. United States*, 595 F.2d 1147, 1148 (9th Cir. 1979) (per curiam)); *Bear Valley Mutual Water Co. v. Riddell*, 493 F.2d 948, 951 (9th Cir. 1974).

---

[4] The fact that it is subject to the exhaustion rule does not mean that the EITC is the same as a normal tax refund. The EITC is a form of welfare administered through the tax system. Thus, "eligibility for an earned-income credit does not depend on an individual's actually having paid any tax," and "the Code's classification of the credit as an 'overpayment' to be refunded is similarly independent of the individual's actually having made any payment." *Sorenson*, 475 U.S. at 863; *see* Ann L. Alstott, *The Earned Income Tax Credit And The Limitations Of Tax-Based Welfare Reform*, 108 Harv. L. Rev. 533, 534 (1995) ("Although the EITC is styled a 'refundable tax credit,' in fact it is a kind of welfare program—in economists' terms, an income-transfer program. It uses the rules and procedures of the federal income tax system to make payments to low-income workers based on their earnings and total income."); 11 G.C.A. § 42104 (referring to EITC as "subsidy").

6

In a recent filing, petitioner has claimed that it would have been futile for her to try to exhaust her administrative remedies. The complaint, however, has no such allegations, and the Court lacks jurisdiction to grant her leave to amend to add them. *Morongo*, 858 F.2d at 1381 (emphasis added) ("If jurisdiction was lacking, <u>then the court's various orders, including that granting leave to amend the complaint, were nullities.</u>").

Moreover, futility does not excuse a party from attempting to exhaust administrative remedies. Exhaustion is a matter of subject-matter jurisdiction because the right to sue for a tax refund is a limited waiver of sovereign immunity. *Quarty*, 170 F.3d at 972. That waiver that must be "strictly construed, in terms of its scope, in favor of the sovereign." *Id.* (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). This same strict construction of the exhaustion requirement must be applied here to the Territory of Guam because Guam, like the United States, enjoys sovereign immunity absent an express waiver. *Marx v. Govt. of Guam*, 866 F.2d 294, 298 (9th Cir. 1989) ("controlling authority and the legislative history of the Organic Act compel our holding that the government of Guam has inherent sovereign immunity").

Because exhaustion is a jurisdictional requirement grounded on immunity, it cannot be excused based upon futility. As the Ninth Circuit recently reaffirmed, the U.S. Supreme Court has long recognized that the exhaustion requirement in tax refund cases must apply even if it is undisputed that exhaustion would have been futile:

> An anticipated rejection of the claim, which the statute contemplates, is not a ground for suspending its operation. Even though formal, the condition upon which the consent to suit is given is defined by the words of the statute, and "they mark the conditions of the claimant's right.' *Rock Island R.R. Co. v. United States*, 254 U.S. 141, 143 [(1920)]. Compliance may be dispensed with by waiver, as an administrative act, *Tucker v. Alexander*, *supra* [275 U.S. 228 (1927)]; but it is not within the judicial province to read out of the statute the requirement of its words, *Rand v. United States*, 249 U.S. 503, 510 [(1918)].

*Quarty*, 170 F.3d at 973 (quoting *United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 273 (1931)).

Petitioner bears the burden of proving subject-matter jurisdiction. *E.g.*, *Thompson v. Gaskill*, 315 U.S. 552, 447 (1942) ("The record contains no showing of the requisite jurisdictional

7

amount, and the district court was therefore without jurisdiction"); *Ashoff v. City of Ukiah*, 130 F.3d 409, 410 (9th Cir. 1997) ("The plaintiff (here the appellant) bears the burden of establishing subject matter jurisdiction."); *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996) ("A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction."). Because she has not alleged (much less provided any evidence) that the exhaustion requirement has been satisfied, the Court lacks subject-matter jurisdiction, and this action must be dismissed. *Id.*

### B. The Court Lacks Jurisdiction to Issue a Writ of Mandamus

Petitioner cannot cure the jurisdictional deficiencies in this case by asking for "a writ in the nature of mandamus" in lieu of a tax refund, which is the alternative relief sought in her Complaint. (Compl. ¶ 27.) The "remedy of mandamus is a drastic one, only to be invoked in extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). "In order to insure that the writ will issue only in extraordinary circumstances, this Court has required that a party seeking issuance have no other adequate means to attain the relief he desires, and that he satisfy the burden of showing that his right to issuance of the writ is clear and indisputable." *Id.* at 35 (internal citations, quotations and brackets omitted).

Here, the Government has provided (1) administrative remedies for obtaining the relief petitioner seeks and (2) the ability to sue for a refund in district court once administrative remedies have been exhausted. That petitioner has chosen not to avail herself of these remedies does not entitle her to extraordinary relief under binding Supreme Court precedent. *United States ex rel. Girard Trust Co. v. Helvering*, 301 U.S. 540, 542-44 (1937) (mandamus for tax refund unavailable where party could pursue administrative remedy and then maintain suit in district court because "mandamus may not be employed to secure the adjudication of a disputed right for which an ordinary suit affords a remedy equally adequate and complete"); 1 *Civ. Actions Against the U.S.* § 1:15 (collecting authorities) ("Because mandamus is not available when other remedies are adequate to afford full relief, a party must first exhaust administrative remedies."). Moreover, neither petitioner, nor any of the putative class members have satisfied "their burden of showing

8

that [their] right to issuance of the writ is clear and indisputable" given their failure to allege (much less provide evidence of) exhaustion. *See Allied Chem.*, 449 U.S. at 35.

To the extent Petitioner is seeking injunctive relief, such relief is equally unavailable. The prohibition against injunctive relief in tax refund cases is codified in the Anti-Injunction Act provision of the Internal Revenue Code. It states:

> Except as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6225(b), 6330(e)(1), 6331(I), 6672(c), 6694(c), or 7426(a) or and (b)(1), 7429(b) or 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

26 U.S.C. § 7421(a) (emphasis added).[5]

Here, petitioner seeks to compel "Respondents to implement the EIC" and "to pay Petitioner and the class all unpaid refundable earned income tax credits for the years, 1998, 1999, 2000, 2001, 2002, and 2003." (Compl. ¶ 27.) The Anti-Injunction Act bars precisely this type of relief. *Enochs v. Williams Packing Co.*, 370 U.S. 1, 7 (1962) ("The manifest purpose of section 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to disputed sums be determined in a suit for refund."); *Bob Jones University v. Simon*, 416 U.S. 725, 738 (1974) (injunctive relief barred where the petitioner's allegations that it would be subject to substantial tax liability if the government prevailed left "little doubt that a primary purpose of this lawsuit [wa]s to prevent the [Internal Revenue] Service from assessing and collecting income taxes...."). Because the Anti-Injunction Act bars any claim for injunctive relief, the Court lacks subject-matter jurisdiction over those claims. *Marangi*, 319 F. Supp. 2d at 1185 (citing *Elias v. Connett*, 908 F.2d 521, 523 (9th Cir. 1990)). Again, no jurisdiction supports the settlement, and the order granting preliminary approval should be vacated.

---

[5] The Anti-Injunction Act applies to bar injunctions in cases involving Guam's Territorial Income Tax because it is part of the Internal Revenue Code that is applicable to Guam. *Marangi v. Govt. of Guam*, 319 F. Supp. 2d 1179, 1185 n.8 (D. Guam 2004) ("26 U.S.C. § 7421(a) is contained within subtitle F of the Internal Revenue Code, and thus is applicable to Guam."); *see* 48 U.S.C. § 1421i(d) (subtitle F of the Internal Revenue Code applies to Guam).

9

## II. THE REQUIREMENTS OF RULE 23 HAVE NOT BEEN MET

The Court also should vacate the June 17 Stipulation because none of the procedural requirements of Rule 23 have been met. Lack of these protections is highly problematic, especially in this context.

To begin with, no class has been certified.[6] Nor could one be. Because each taxpayer's returns must be evaluated for validity and possible setoffs, each plaintiff's claim in a tax-refund case must be evaluated on a case-by-case basis. *Oatman v. Dept. of Treasury*, 34 F.3d 787, 789 (9th Cir. 1994). Individualized issues thus predominate tax-refund cases, and they cannot be litigated on a class-wide basis. *Id.*

Moreover, other critical procedures have not occurred. Class members have not been given notice of the proposed settlement — which will bind them regardless of whether they opt in. Fed. R. Civ. P. 23(e). There has been no hearing on the appointment of class counsel. Fed. R. Civ. P. 23(g). And no hearing on the amount of attorney's fees has occurred. Fed. R. Civ. P. 23(h). These problems are all the more troubling given the devastating effects the settlement would have on both the class (as explained in Section V) and the Government, as demonstrated by the recurring litigation that has been filed and would be filed notwithstanding the Government's payment of $60 million.

## III. THE SETTLEMENT IS ILLEGAL

### A. The Illegal Expenditures Act

The Organic Act of Guam "expressly reserves for the Legislature the power to appropriate money." *Pangelinan v. Gutierrez*, 2003 Guam 13, at ¶15 (2003), *reconsidered in part on other grounds* 2004 Guam 16 (citing 48 U.S.C. § 1423j(a)). Because the power to appropriate funds is reserved to the Legislature, the Illegal Appropriations Act, 5 G.C.A. section 22401(a), forbids

---

[6] The Petitioner may argue that the June 17 Stipulation certified the class. However, the stipulation purports to do so without any noticed motion or hearing. Moreover, the July 16, 2004 Order Appointing Attorney Michael F. Phillips Interim Class Counsel (Docket No. 48) is pursuant to FRCP § 23(g) (2) (a). This Rule provides that "[t]he Court may designate interim class counsel to act on behalf of the putative class *before determining* whether to certify the action as a class action.").

10

officers of the government from binding the Government to contracts that seek to spend unappropriated funds:

> No officer or employee of the government of Guam, including the Governor of Guam, shall:
>
> (1) Make or authorize any expenditure from, or create or authorize any obligation under, any appropriation or fund in excess of the amount available therein, or for other than an authorized purpose;
>
> (2) Commence, continue, or proceed with any operational activity, construction, improvement, contract, or obligation without an appropriation or fund for the payment thereof; or after any such appropriation or fund is exhausted;
>
> (3) Involve the government of Guam in any contract or other obligation, for the payment of money for any purpose, in advance of the appropriation made for such purpose.

5 G.C.A. § 22401(a).

Any violation of the Illegal Expenditures Act voids a contract and makes it unenforceable under Guam law. *Pangelinan*, 2003 Guam 13, at ¶25 ("If contracts violative of statutory prohibitions may be executed by government agencies and subsequently enforced, the power of the legislature and the processes of government itself would be undermined.") (quoting *Heyl & Patterson Int'l v. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 432 (3d Cir. 1981)); *see also Robert F. Simmons and Assocs. v. United States*, 360 F.2d 962, 965 (Ct. Cl. 1966) (applying identical U.S. law) ("It is settled law that an agency of the Government cannot create a binding contract without the authority of an appropriation of funds from the Congress to cover the contract. If such an unauthorized contract is entered into, it is a nullity.").

Under these laws, the settlement agreement is unlawful in multiple respects:

*The $60 million is unlawful.* The most basic aspect of the proposed settlement agreement is that it obligates the Government to spend $60 million without identifying a source of funding or a fund containing this money (General Fund or any special fund). This violates the Illegal Expenditures Act. *See* 5 G.C.A. § 22401(a) (government officers cannot make or continue with obligation in excess of amount of funds available to pay for the contract).

11

1

2          Both the Attorney General's office and Petitioner have sought in previous submissions to

3   defend the $60 million payment based upon the Governor's Organic Act power to pay final

4   judgments. *See* 48 U.S.C. § 1421i(h)(2) ("When any judgment against the government of Guam

5   under this paragraph has become final, the Governor shall order the payment of such judgments

6   out of any unencumbered funds in the treasury of Guam."). However, the Organic Act's provides

7   that payments of tax judgments are from unencumbered funds. 48 U.S.C. § 1421i(h)(2). The

8   parties to the June 17 Stipulation understood that no such funds existed at the time of the

    settlement. They drafted the Settlement Agreement provision that states:
9
          "WHEREAS, the Government of Guam's dire financial condition, with a deficit over one
10
    hundred million dollars, and almost two hundred million dollars in past due cash obligations,
11
    operates against any possible or realistic distribution of the total claims for refundable earned
12
    income tax credits in the event that Petitioner and the EIC Class succeed on the merits.
13
          Settlement Agreement at 4; see also (Jacob Decl. Exh. M) (11/24/04 Perez Decl. ¶ 4.)
14
    Nonetheless, the settlement here requires the Government to pay multimillion dollar contractual
15
    obligations on a monthly basis whether or not the money exists.[7]
16
          Further, the Governor has the power to pay "final judgments" from "unencumbered
17
    funds." 48 U.S.C. § 1421i(h)(2). But nowhere is it stated that the Governor has the power to
18
    *contract* for such "final judgments." A settlement agreement is a contract. *Jeff D. v. Andrus*, 889
19
    F.2d 753, 759 (9th Cir. 1989). It is subject to restrictions on the expenditures of unappropriated
20
    funds. *Cf. Blackhawk Heating & Plumbing Co. v. United States*, 622 F.2d 539, 542, 553 (Claims
21
    Ct. 1980) (enforcing provision of settlement contract that was contingent on funding pursuant to
22

23

24

25
          [7] The "final judgment" exception also does not apply because there has been no final
26  judgment, yet the contract explicitly requires payments starting 30 days after preliminary
    approval was given. The fact that payments are required before any final judgment is entered
27  demonstrates that this contract was unlawfully designed to obligate the Government of Guam in
    advance of an appropriation being made or funding found (as opposed to contemplation of the
28  Governor exercising his power over unencumbered funds).

                                                  12

MR050216.382-00010[Mtn. to Vacate]

federal Anti-Deficiency Act).[8] However, any attempt to characterize the Settlement Agreement as something other then a contract for payment of money is simply not credible.

Similarly, Petitioner's counsel has pointed to local law's creation of the reserve fund for payment of the EITC. *See* 11 G.C.A. §§ 50101-05. However, the reserve fund allows the government to reserve for future year's EITC payments and pay the EITC out of funds actually reserved. *Id.* The contract here requires expenditures of funds whether or not such funds presently exist. Again, no such funds existed in the reserve account and the Petitioner does not claim otherwise.

The law is clear. The *entire* amount of an appropriation or fund that is to be used to pay a contractual obligation must exist at the time of contracting. *See Leiter v. United States*, 271 U.S. 204, 206-07 (1926) (contract for future year's payment invalid absent then-existent appropriation); *Govt. Sys. Advisors, Inc. v. United States*, 13 Cl. Ct. 470, 474 (1987) (court must interpret contract as yearly option contract where ambiguous because "defendant is prohibited from entering into a contract before a sufficient appropriation of funds is made. Thus, any contract entered into by defendant beyond the year in which appropriations are made is made without authority of law and is not binding.").

The Governor does not have access to $60 million to pay this contract without using appropriated funds and endangering the most fundamental aspects of the Government, such as education. (Jacob Decl. Exh. M) (11/24/04 Perez Decl. at ¶¶ 4-6.) For this simple reason, the settlement contract violates the Illegal Appropriations Act. 5 G.C.A. § 22401(a)(1) (*forbidding creation of any obligation on a "fund in excess of the amount available therein"*) (emphasis added); *Leiter*, 271 U.S. at 206-07; *see also Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 552-53 (S.D. Ohio 2000) (rejecting settlement agreement where payments after three years had to

---

[8] The federal Anti-Deficiency Act is the model for Guam's Illegal Expenditures law and cases interpreting it are looked to for guidance by Guam's courts. *E.g. Pangelinan*, 2003 Guam 13, at ¶25.

13

MR050216.382-00010[Mtn. to Vacate]

be contingent because of lack of appropriation based on Anti-Deficiency statute, reasoning that this was required by the law but was unfair to the class).[9]

*The Attorneys' Fees Provision Is Illegal.* The settlement agreement provides: "The recovery of attorneys' fees and courts costs shall be from, and not in addition to, the Settlement Amount ..." (Settlement Agreement Part VI(E).) Even assuming *arguendo* that the $60 million could otherwise be justified as a payment of the EITC (under either the Organic Act provision regarding tax refunds or under the reserve fund), the attorney's fees and costs cannot be justified. They are not a tax refund; they are not the earned income credit. Yet, they are (under the express terms of the settlement) to be funded "from" the $60 million. That also is unlawful under 5 G.C.A. § 22401.

Additionally, the settlement agreement requires that DRT pay attorney's fees to petitioner's counsel from Settlement Funds that are designated to be held in an Income Tax Reserve Fund sub-account under 11 G.C.A. § 50102. Under Guam law, funds held in accounts under Title 11, Ch. 50 may be disbursed only for "income tax refunds, earned income tax credits, child tax credits, tax rebate relief and *for no other purpose.*" (11 G.C.A. § 50105). Any payment of attorneys fees provided by the Settlement Agreement would be illegal.

*The Administrative Plan Provision Is Illegal.* The Settlement Agreement also provides that: "The Government shall bear all the costs of administering the EIC Settlement Fund and all costs and expenses related to the Administration Plan, with the exception of court costs." (Settlement Agreement Part VI(F).) This, in essence, is the creation of brand new government program *by contract* estimated to cost approximately $975,000-1,000,384 – without any source of funding. See, Exhibit A to Docket No. 73 (10/25/04 Petitioner's Administrative Plan at 6); Docket No. 77-1 (11/8/04 AG's Memo re: Administration Plan at n.1). This, of course, also is

---

[9] If petitioner forces through this settlement that prioritizes claims from 1996 and 1998 (years for which the fund is not even applicable), petitioner will ensure that the government can never become current on its payments of the EITC, and falls behind on payments of actual tax refunds. *See State ex rel. Point Towing Co. v. McDonough*, 149 S.E.2d 302, 729 (W. Va. 1966) (invalidating contract that sought to use funds appropriated for future year to pay contractual obligation from past year).

14

MR050216.382-00010[Mtn. to Vacate]

entirely unlawful, as the Attorney General's office concedes. (Jacob Decl. Exh. F) (11/8/04 AG's Memo re: Administration Plan at 3:8-14). Again, there is no justification for this unlawful provision.

*The Obligation to Pay the EITC in Future Tax Years Is Illegal.* As the Attorney General's office also admits, the obligation imposed on the government to pay the EITC in future tax years also is unlawful. (Settlement Agreement Part IV(A); Jacob Decl, Exh. F at 3-4.) Guam law provides the EITC should be paid, but it does not provide funding.[10] The Governor is working to get it paid, by restoring the reserve fund system and seeking legislative authority to used lapsed funds. (Jacob Decl., Exhs. A-2 & B) (Governor's Executive Order regarding EITC claims & proposed FY2006 budget providing funding for EITC through lapsed funds).) But insufficient funds exist to do so. And, these are pay-as-you-go measures that will allow incremental payment of the EITC in the future only as *actual funds* are identified to make actual payments. The settlement agreement, in comparison, blithely imposes an obligation to pay without any tie to any funding source or authority, thereby placing the government in the very real position of facing contempt for not funding the future payment of the EITC as required by the proposed settlement agreement, even though the Legislature has not identified any funds to pay it. The problem with this, of course, is that only the Legislature is empowered to obligate the government, and the Legislature never agreed to the obligation imposed by the settlement agreement. Thus, this final provision also is unlawful.

**B. The Requirement of BBMR Certification**

Backstopping the Illegal Expenditures Act is another Guam law — also ignored by this settlement — that is designed to ensure that no contract is executed until funding is identified. For well over a decade, every government contract in Guam has been required to be executed by BBMR, which certifies fund availability. (Jacob Decl., Exhs. C & D) (Executive Orders requiring BBMR's signature on all contracts).) This is because the budget law for every year —

---

[10] *See* Governor's Amended MPA in Support of the Opp. to Motion Petitioner's Motion for Approval of the Administrative Plan (filed 11/29/04) at 2-3 (briefly recounting the history of EITC on Guam, including the lack of funding).)

MR050216.382-00010[Mtn. to Vacate]

15

including 2004 — provides that: "No agency shall contract to spend, or enter into an agreement to spend, any money in *excess* of the amount allotted to the agency by BBMR, and any contract or agreement in violation of this provision shall be null and void." P.L. 27-29, Chapter 5, § 4(d) (FY 2004 Budget); *Id.* § 4(e) (making a knowing violation potentially criminal).

Obviously, the $60 million obligation violates this law because *no BBMR signature appears* on the contract certifying fund availability. But even if it were not required as to those expenditures, that would still leave no approval for the administrative plan, none for the attorneys' fees, and none for the future EITC payments. Again, the contract is unlawful.

### C. The Provisions Requiring Department of Revenue and Taxation to Administer are Illegal.

The settlement requires that the Settlement Funds shall be paid from a sub-account within the Income Tax Reserve fund (11 G.C.A. § 50102). (Settlement Agreement Part IV-A). Although DOA is empowered to set aside money for reserved payments (11 G.C.A. § 50104), the settlement agreement requires DRT to pay all Settlement Funds. Settlement Agreement Part V (1) (3) and (4). The Attorney General recognized this requirement was beyond the power of DRT. (Docket No. 77-1) (11/8/04 AG's Memo re: Administration Plan at 4.) Thus, he recently requested that the Court impermissibly rewrite the Settlement Agreement to require the DOA to carry out the disbursements of funds in place of DRT. *Id.* The Governor continues to object to this demand.

### IV. THE SETTLEMENT VIOLATES DUE PROCESS BY CREATING A NO OPT-OUT SETTLEMENT INTO WHICH SOME POTENTIAL EITC RECIPIENTS CANNOT EVEN OPT IN

The final ground supporting immediate vacatur of the settlement is that it violates fundamental due process not only by creating a settlement that people are not truly free to "opt-out" of, but also a settlement that will impair the rights of potentially eligible EITC recipients who cannot even opt-in. There are two relevant provisions that create this effect.

First, the settlement states: "The Government of Guam shall not make any payments to any person for EIC outside of this Agreement without the express written consent of the Attorney General of Guam." (Settlement Agreement Part V(A)(4).) This provision has nothing to do with

16

the ordinary tax refund procedures. The Attorney General has no authority under law to control payment of the EITC; he has actually argued as much to this Court in related proceeding.[11] Instead, what this provision does is create an enormous disincentive to anyone who might opt-out of the settlement.

This provision violates fundamental due process because it makes the settlement into a no opt-out settlement. Opting out will seriously — possibly irretrievably — impair the right to receive the EITC as it will be subject wholly to the Attorney General's discretion. Where substantial monetary damages are at issue, there must be an opportunity to opt-out of a class action settlement. *Molski v. Gleich*, 318 F.3d 937, 948 (9th Cir. 2003) ("we have held that certain minimal procedural safeguards, such as notice and the right to opt-out, must be provided to bind absent class members when substantial monetary damages are involved"); *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386 (9th Cir. 1992) ("Because Brown had no opportunity to opt out of the MDL 633 litigation, we hold there would be a violation of minimal due process if Brown's damage claims were held barred by res judicata."). In fact, the Supreme Court has stated that there is 'at least a substantial possibility' that actions seeking *any* monetary damages are only certifiable under Rule 23(b)(3), which provides class members the right to opt-out. *Molski*, 318 F.3d at 948 n.12 (citing *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 (1994) (per curiam)). In any case, there is no doubt that money damages here are "substantial" — $60 million — and thus the provision requiring a true opt-out provision applies and this settlement is unlawful because it lacks such a provision.

Second, the settlement states that the class can only include people who already filed income tax forms for each year: "'EIC Class' means all persons who (a) filed Guam income tax returns ...." (Settlement Agreement Part I(I).) The problem with this is that the settlement completely abandons the neediest class of persons eligible to receive EITC – those that have no

---

[11] *See* Jacob Decl. Exh. I at 3 (brief of the Attorney General's office filed October 28, 2004 in a related proceeding stating that "the Attorney General of Guam has no jurisdiction over the administration and enforcement of the Guam territorial income tax or the operations of the Guam Department of Revenue and Taxation and the Guam Department of Administration, which are in charge of certifying and paying income tax refunds."

MR050216.382-00010[Mtn. to Vacate]

obligation to file income tax returns because they do not make enough money to be obligated to file returns. That means that if the EITC were paid through this settlement, there are going be people who are excluded from the settlement because they cannot meet the class definition, but who are otherwise just as deserving of the EITC. In fact, some of these may be the most deserving, in the sense that these are people with incomes who are most in need of this social subsidy.

Not only are these people excluded from the settlement, but their rights are still impaired by the very settlement they cannot even opt into. Pursuant to the provision stating that all other EITC claims can only be paid with the Attorney General's express written consent, each of these people would be obligated under the settlement to incur an unlawful burden of obtaining such written consent to receive the earned income credit. It is hard to imagine a more gross violation of due process in the class action context than a class action settlement that will impair the rights of persons who cannot even opt-into the settlement. This is yet another reason why this ill-conceived and rushed settlement agreement is not appropriate for court approval, and the stipulated order granting it preliminary approval should be vacated.

## CONCLUSION

The parties never should have agreed to the stipulated order granting preliminary approval of the settlement agreement in this action. That proposed agreement is void, unsupported by jurisdiction, unlawful, and it violates the due process rights of potential class members. For these reasons, the Governor respectfully requests that the Court vacate the June 17, 2004 Stipulated Order Granting Preliminary Approval of the Settlement.

Dated this 16th day of February, 2005.

OFFICE OF THE GOVERNOR OF GUAM
CALVO AND CLARK, LLP
Attorneys at Law

By: _____
RODNEY J. JACOB

18