1   **SHANNON TAITANO, ESQ.**
    **OFFICE OF THE GOVERNOR OF GUAM**
2   Ricardo J. Bordallo Governor's Complex
    Adelup, Guam 96910
3   Telephone:    (671) 472-8931
4   Facsimile:    (671) 477-4826

5
    **EDUARDO A. CALVO, ESQ.**
6   **RODNEY J. JACOB, ESQ.**
7   **DANIEL M. BENJAMIN, ESQ.**
    **CALVO & CLARK, LLP**
8   Attorneys at Law
    655 South Marine Drive, Suite 202
9   Tamuning, Guam 96913
    Telephone:    (671) 646-9355
10  Facsimile:    (671) 646-9403

11  Attorneys for *Felix P. Camacho, Governor of Guam*
12
13
14
15

FILED
DISTRICT COURT OF GUAM

FEB 16 2005

MARY L.M. MORAN
CLERK OF COURT

153

14              IN THE UNITED STATES DISTRICT COURT
15                      DISTRICT OF GUAM

16  JULIE BABAUTA SANTOS, et. al.,          CIVIL CASE NO. 04-00006

17                  Petitioners,

18                                          **DECLARATION OF RODNEY J.**
                                            **JACOB IN SUPPORT OF MOTION TO**
19          -v-                             **VACATE THE STIPULATED ORDER**
                                            **OF JUNE 17, 2004 PRELIMINARILY**
20                                          **APPROVING SETTLEMENT**

21  FELIX P. CAMACHO, etc., et. al.

22                  Respondents.

23

24
25
26
27
28

**ORIGINAL**

I, RODNEY J. JACOB, declare that:

1.  I am a partner with the law firm of Calvo & Clark, LLP, counsel of record for Respondent Felix P. Camacho, Governor of Guam. I make this declaration on personal knowledge, and if called to testify I could and would testify competently thereto.

2.  Attached as Exhibit "A-1" is a true and correct copy of the Stipulated Order Granting Preliminary Approval of Class Action Settlement filed June 17, 2004.

3.  Attached as Exhibit "A-2" is a true and correct copy of the Executive Order No. 2005-01 dated January 12, 2005.

4.  Attached as Exhibit "B" is a true and correct copy of the draft budget and provisions for FY2006 that was provided to my office by the Governor's office and which I am informed was submitted by the Governor to the Legislature.

5.  Attached as Exhibit "C" is a true and correct copy of the Executive Order No. 87-2 dated January 8, 1987.

6.  Attached as Exhibit "D" is a true and correct copy of the Executive Order No. 95-01 dated January 3, 1995.

7.  Attached as Exhibit "E" is a true and correct copy of the KUAM Article from KUAM website "Federal judge signs off on EITC settlement dated June 17, 2004.

8.  Attached as Exhibit "F" is a true and correct copy of an October 13, 2004 Memorandum from Charles Troutman to the Attorney General.

9.  Attached as Exhibit "G" is a true and correct copy of the Complaint for Declaratory and Injunctive Relief, and/or for Recovery of Earned Income Tax Credits filed on August 9, 2004 in the Charmaine Torres versus the Government of Guam, et al (Torres Action).

10. Attached as Exhibit "H" is a true and correct copy of the Memorandum of Points and Authorities in Support of the Governor of Guam's Motion to Dismiss filed on October 28, 2004 in the Torres Action.

11. Attached as Exhibit "I" is a true and correct copy of the Memorandum of Points and Authorities of Defendants Government of Guam and Attorney General Douglas B. Moylan In Support of Motion Under FRCP 12 (b)(1) & (6) to Dismiss First Amended Complaint for Lack of Subject Matter Jurisdiction and Failure of Plaintiff to State a Claim and to Strike Defendant Attorney General Moylan as a Party Under FRCP 12(b)(6) & 21 and 26 U.S.C. § 7422(f)(1) & (2) for Failure of Plaintiff to State a Claim and Misjoinder filed on October 28, 2004 in the Torres Action.

12. Attached as Exhibit "J" is a true and correct copy of the Declaration of Michael F. Phillips in Support of Petitioner's Response to Respondent Governor's Objection to Petitioner's Motion for Approval of the Administration Plan filed December 8, 2004.

13. Attached as Exhibit "K" is a true and correct copy of the Declaration of Joseph C. Manibusan in Support of Defendant's, Lourdes M. Perez and Artemio R. Ilagan Objection to (1) Petitioner's Motion for Orders Approving the Administration Plan and Amended Notice; and (2) The Attorney General of Guam's MPA in Response to Motion for Orders Approving Administration Plan filed on November 24, 2004.

14. Attached as Exhibit "L" is a true and correct copy of the Declaration of Artemio B. Ilagan in Support of His Objection to Objection to (1) Petitioner's Motion for Orders Approving the Administration Plan and Amended Notice; and (2) The Attorney General of Guam's MPA in Response to Motion for Orders Approving Administration Plan filed on November 24, 2004.

15.     Attached as Exhibit "M" is a true and correct copy of the Declaration of Lourdes M. Perez in Support of Her Objection to (1) Petitioner's Motion for Orders Approving the Administration Plan and Amended Notice; and (2) The Attorney General of Guam's MPA in Response to Motion for Orders Approving Administration Plan filed on November 24, 2004.

16.     Attached as Exhibit "N" is a true and correct copy of the letter to Stephen A. Cohen from Shannon Taitano dated September 16, 2004.

17.     Attached as Exhibit "O" is a true and correct copy of the letter to Speaker of the Legislature, Vicente C. Pangelinan from Shannon Taitano, Governor's Legal Counsel dated November 16, 2004.

18.     Attached as Exhibit "P" is a true and correct copy of selected pages of the Transcript of Proceedings on the January 25, 2005 Hearing on Motions filed on February 7, 2005.

I declare under penalty of perjury pursuant to the laws of the United States and of the Territory of Guam that the foregoing declaration is true and correct.

Executed this 16th day of February, 2005, in Tamuning, Guam.

RODNEY J. JACOB

# EXHIBIT A-1



The Law Offices of

# PHILLIPS & BORDALLO

A Professional Corporation
410 West O'Brien Drive, Suite 102 Hagåtña, Guam 96910-5044
Tel: (671) 477-ABCD (2223) • Fax: (671) 477-2FAX (2329)
" I Erensia, Lina'la', Espiritu-ta"



FILED
DISTRICT COURT OF GUAM

JUN 17 2004

MARY L. M. MORAN
CLERK OF COURT

**Attorneys for Petitioner**

### UNITED STATES DISTRICT COURT

### OF GUAM

JULIE BABAUTA SANTOS, individually,       )        **DOCKET NO. CIV04-00006**
and on behalf of all those similarly situated, )
                                          )
                    Petitioner,           )
                                          )
         vs.                              )
                                          )        **[ ] STIPULATED
FELIX A. CAMACHO, Governor of Guam,       )        ORDER GRANTING
ART ILAGAN, Director of Department of     )        PRELIMINARY APPROVAL
Revenue and Taxation, LOURDES M.          )        OF CLASS ACTION
PEREZ, Director of Department of          )        SETTLEMENT**
Administration; and GOVERNMENT OF         )
GUAM,                                     )
                                          )
                    Respondents.          )
_____ )

The Petitioner, individually and on behalf of all those similarly situated

(hereinafter "EIC Class"), through her attorneys of record Phillips and Bordallo, P.C., by

Michael F. Phillips, and the Governor of Guam, Director of Department of Revenue and

Taxation, Director of Department of Administration, and the GOVERNMENT OF GUAM,

(hereinafter collectively referred to as "Government of Guam"), through their attorneys

of record, the Office of the Attorney General, by Attorney General Douglas B. Moylan,

move the Court for an order granting preliminary approval of the parties' Settlement

JULIE BABAUTA SANTOS, individually, and on behalf of all those similarly situated, Petitioner, Page 2
vs. FELIX A. CAMACHO, Governor of Guam, ART ILAGAN, Director of Department of Revenue and
Taxation, LOURDES M. PEREZ, Director of Department of Administration; and GOVERNMENT OF GUAM,
Respondents.
[PROPOSED] STIPULATED ORDER GRANTING PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
DOCKET NO. CIV04-00006

Agreement, attached as Exhibit "A," and in support thereof, stipulate to the following for purposes of settlement of this case:

1. Petitioner brings this action on behalf of a class of taxpayers claiming refunds as a result of the Earned Income Tax Credit program.

2. "EIC Class" means all persons who (a) filed Guam income tax returns and (b) were and are entitled to be paid refundable earned income tax credits under the Guam Territorial Income Tax and the Earned Income Program for any or all of the following tax years: 1996, 1998, 1999, 2000, 2001, 2002 and 2003.

3. The EIC Class members, otherwise eligible, are entitled to the Earned Income Tax Credit, pursuant to a provision in Subtitle A of the Internal Revenue Code and applied to Guam by operation of the Organic Act, 48 U.S.C. § 1421 et seq.

4. The Government of Guam is required to pay the Earned Income Tax Credit to eligible taxpayers.

5. The Petitioner and Government of Guam wish to settle all claims (defined in the Settlement Agreement) by the EIC Class against the Government of Guam.

6. The terms of the Settlement Agreement are incorporated in this Motion.

7. The Petitioner and Government of Guam seek approval of this action to proceed as a class action with the certified class including all persons who are within the EIC Class. The parties also seek approval of the form and manner of notice and objection procedures as set forth in sections II.D and II.E of the Settlement Agreement,



JULIE BABAUTA SANTOS, individually, and on behalf of all those similarly situated, Petitioner,
vs. FELIX A. CAMACHO, Governor of Guam, ART ILAGAN, Director of Department of Revenue and
Taxation, LOURDES M. PEREZ, Director of Department of Administration; and GOVERNMENT OF GUAM,
Respondents.
[PROPOSED] STIPULATED ORDER GRANTING PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
DOCKET NO. CIV04-00006

and request the Court schedule a hearing date for final approval of the Settlement

Agreement.

8.    The Petitioner and the Government of Guam stipulate and agree that this

case should proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil

Procedure for the following reasons and hereby move the Court for such certification:

(a) The EIC Class, described above and composed of the tax payers

entitled to receive the refundable EIC, is so numerous that joinder of all members

is impracticable.

(b)  There are questions of law or fact common to the EIC Class.

(c)  The claims or defenses of the representative party are typical of the

claims or defenses of the EIC Class.

(d) The representative party will fairly and adequately protect the interests

of the EIC Class.

(e) The prosecution of separate actions by or against individual members

of the EIC Class would create a risk of

(i) inconsistent or varying adjudications with respect to individual

members of the EIC Class which would establish incompatible standards

of conduct for the party opposing the EIC Class.

(ii) adjudications with respect to individual members of the EIC

Class which would as a practical matter be dispositive of the interests of

PHILLIPS & BORDALLO

JULIE BABAUTA SANTOS, individually, and on behalf of all those similarly situated, Petitioner,     Page 4
vs. FELIX A. CAMACHO, Governor of Guam, ART ILAGAN, Director of Department of Revenue and
Taxation, LOURDES M. PEREZ, Director of Department of Administration; and GOVERNMENT OF GUAM,
Respondents.
[PROPOSED] STIPULATED ORDER GRANTING PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
DOCKET NO. CIV04-00006

the other members not parties to the adjudications or substantially impair

or impede their ability to protect their interests.

(f) The Government of Guam has acted or refused to act on grounds

generally applicable to the EIC Class.

(g) The questions of law or fact common to the members of the EIC Class

predominate over any questions affecting only individual members, and a class

action is superior to other available methods for the fair and efficient adjudication

of the controversy.

9. <u>Judgment</u>. Upon final approval of the settlement agreement, the Court is

expected to enter judgment enforceable against all parties to this Settlement

Agreement.

10. <u>Notice</u>.

A. Petitioner requests the Court for an order authorizing summary notice

by publication to the EIC Class, substantially in a form to be approved by the

Government of Guam or, in the event of disagreement between the Petitioner and the

Government of Guam, in a form to be approved by the Court (the "Notice"). The Notice

shall inform the EIC Class of the terms of the Settlement Agreement, state the date

scheduled by the Court for the hearing on final approval of the Settlement, and advise

class members of their right to object to the Settlement Agreement and to request

exclusion from the class by delivering or mailing to the Court any written objections or

written requests to opt out of the class by August 9, 2004, or such other date as the

JULIE BABAUTA SANTOS, individually, and on behalf of all those similarly situated, Petitioner, Page 5
vs. FELIX A. CAMACHO, Governor of Guam, ART ILAGAN, Director of Department of Revenue and
Taxation, LOURDES M. PEREZ, Director of Department of Administration; and GOVERNMENT OF GUAM,
Respondents.
[PROPOSED] STIPULATED ORDER GRANTING PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
DOCKET NO. CIV04-00006

Court may approve (the "Objection and Opt Out Date"), and to appear at the hearing on final approval. The Court will hear any and all objections on the date set by the Court for final approval of the Settlement Agreement.

B. Subject to approval of the Court, Petitioner and the Government of Guam agree that the Notice shall be published a total of three (3) times in both the Pacific Daily News and The Marianas Variety, once per week for three (3) consecutive weeks beginning the week of June 21, 2004, and ending on the last publication date of July 9, 2004. Each Notice published in the Pacific Daily News and The Marianas Variety shall be approximately one full page in size and appear on different days of the week. One (1) Pacific Daily News Notice shall be in a Sunday edition. The Government of Guam will bear the cost of publishing the Notice. The Petitioner and the Government of Guam shall provide such additional or alternative notice or notices as required by the Court.

11. Procedures for Objecting to the Settlement.

Petitioner and the Government of Guam recommend that the Court approve an Objection and Opt Out Date of August 9, 2004, or thirty (30) days after the last publication date of the Notice required. Any member of the EIC Class may appear at the hearing on final approval of the Settlement to present any objections to the Settlement; provided, however, that no member of the EIC Class shall be heard, unless his or her objection is made in writing and is filed, together with copies of all other

JULIE BABAUTA SANTOS, individually, and on behalf of all those similarly situated, Petitioner,    Page 6
vs. FELIX A. CAMACHO, Governor of Guam, ART ILAGAN, Director of Department of Revenue and
Taxation, LOURDES M. PEREZ, Director of Department of Administration; and GOVERNMENT OF GUAM,
Respondents.
[PROPOSED] STIPULATED ORDER GRANTING PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
DOCKET NO. CIV04-00006

papers or briefs to be submitted to the Court at the hearing on final approval of the

Settlement, with the Court no later than the Objection and Opt Out Date.

12. Motion for Court Approval and Entry of Final Judgment. Petitioner and the

Government of Guam request that the Court set a hearing on final approval of the

Settlement for a date that is approximately thirty (30) days after the Objection and Opt

Out Date. At least fifteen (15) days prior to the date the Court sets for the hearing on

final approval of the Settlement, Petitioner will submit a motion for an Order of Approval

and Final Judgment, the Order of Approval and Final Judgment in a form to be agreed

upon by Petitioner and the Government of Guam, not inconsistent with the terms of the

Settlement Agreement; and:

A.    Determining that Petitioner and the Government of Guam have

submitted to the jurisdiction of the Court for purposes of this Settlement, that the Court

has jurisdiction to approve the Settlement Agreement as fair, reasonable, adequate, and

in the best interests of the class members and named petitioner pursuant to 48 U.S.C.

§1421i(h) and 28 U.S.C. §1361; Rule 23 of the Federal Rules of Civil Procedure; and

any other applicable rules of the Court;

B.    Finding that the notice provided in the Settlement Agreement (a)

constitutes reasonable and the best practical notice; (b) constitutes notice that is

reasonably calculated, under the circumstances, to apprise members of the EIC Class

of the pendency of this action, the terms of the Settlement, the right to object to the

Settlement, the right to opt out of the class, and the right to appear at the hearing on

JULIE BABAUTA SANTOS, individually, and on behalf of all those similarly situated, Petitioner, Page 7
vs. FELIX A. CAMACHO, Governor of Guam, ART ILAGAN, Director of Department of Revenue and
Taxation, LOURDES M. PEREZ, Director of Department of Administration; and GOVERNMENT OF GUAM,
Respondents.
[PROPOSED] STIPULATED ORDER GRANTING PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
DOCKET NO. CIV04-00006

final approval; (c) constitutes due, adequate and sufficient notice to all persons entitled

to receive such notice; and (d) meets the requirements of due process under the

applicable law and rules of the Court;

      C.   Reserving for the Court exclusive jurisdiction over this Settlement,

including the administration, consummation and enforcement of this Settlement, and

including all proceedings both before and after the Final Judgment become final and is

no longer subject to appeal;

      D.  Determining that there is no just reason for delay and directing that the

Final Judgment be final and appealable; and

      E.  Incorporating the release set forth in § III of the Settlement Agreement

and forever discharging the Government of Guam from All Claims.

    13.   Effect of Disapproval.  If the Court for any reason (1) determines not to

approve the Settlement Agreement; or (2) does not enter Final Judgment, then the

Settlement Agreement terminates and becomes null and void, except as otherwise

provided in the Settlement Agreement.

    14.   Jurisdiction.  The District Court of Guam shall have continuing, exclusive

jurisdiction over all provisions of this case and over any and all disputes of any kind

relating in any way to, or arising in any way out of, the Settlement Agreement.

/ / /

/ / /

/ / /

/ / /



JULIE BABAUTA SANTOS, individually, and on behalf of all those similarly situated, Petitioner,    Page 8
vs. FELIX A. CAMACHO, Governor of Guam, ART ILAGAN, Director of Department of Revenue and
Taxation, LOURDES M. PEREZ, Director of Department of Administration; and GOVERNMENT OF GUAM,
Respondents.
[PROPOSED] STIPULATED ORDER GRANTING PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
DOCKET NO. CIV04-00006

/ / /

APPROVED AS TO FORM AND CONTENT:

PHILLIPS & BORDALLO, P.C.
Attorneys for Petitioner

OFFICE OF THE ATTORNEY
GENERAL
Attorneys for Government of Guam

By: _____
Michael F. Phillips

By: _____
Douglas B. Moylan

SO ORDERED, this 7th day of June 2004.

_____
JOAQUIN V.E. MANIBUSAN, Jr.,
Magistrate Judge, District Court of Guam

RECEIVED

JUN 14 2004

DISTRICT COURT OF GUAM
HAGATNA, GUAM

PHILLIPS & BORDALLO

## DISTRICT COURT OF GUAM
## TERRITORY OF GUAM

| | | |
|---|---|---|
| JULIE BABAUTA SANTOS, individually, and on behalf of all those similarly situated, | ) ) ) ) | DOCKET NO. CIV04-00006 |
| Petitioner, | ) ) ) | |
| | ) | **SETTLEMENT AGREEMENT** |
| vs. | ) ) ) | |
| FELIX P. CAMACHO, Governor of Guam, ART ILAGAN, Director of Department of Revenue and Taxation, LOURDES M. PEREZ, Director of Department of Administration; and GOVERNMENT OF GUAM, | ) ) ) ) ) ) ) | |
| Respondents. | ) ) | |

This Settlement Agreement ("Settlement") is made and entered into, subject to Court approval, as of June 14, 2004, by the Petitioner (as defined below), and the Governor of Guam, the Director of the Department of Revenue and Taxation, the Director of the Department of Administration; and the Government of Guam (collectively the "Government of Guam"), in Docket No. CIV04-00006, pending before Magistrate Judge Joaquin Manibusan, Jr. in the District Court of Guam.

WHEREAS, Petitioner has made certain claims against the Government of Guam based upon the failure of the Government of Guam to implement the Earned Income Program (as defined below) and to pay refundable earned income tax credits to Petitioner and the EIC Class (as defined below), and the Government of Guam's continued denial to the EIC Class of the benefits of the Earned Income Program, as mandated by the Organic Act and Guam law; and

WHEREAS, Petitioner contends that she and the members of the EIC Class are entitled to all unpaid refundable earned income tax credits for the years 1996, 1998, 1999, 2000, 2001, 2002, and 2003, in the approximate amount of One Hundred Twenty Million Dollars ($120,000,000.00); and

WHEREAS, on or about January 4, 1996, the Office of the Attorney General issued Memorandum Opinion No. DRT/DOA 96-001, which adopted Department of Revenue and Taxation Revenue Ruling 96-001, ruling that the Earned Income Tax Credit ("EIC") does not apply to Guam; and

WHEREAS, the Government of Guam refused or failed to implement or otherwise pay refundable earned income tax credits to qualified Guam taxpayers for tax years 1996, 1998, 1999, 2000, 2001, 2002, and 2003; and

WHEREAS, throughout the tax period identified above, with the exception of tax year 1998, the Government of Guam prevented the EIC Class from providing the Department of Revenue and Taxation with the information necessary to prove qualification for refundable earned income taxes by refusing to accept applications or denying the applicability of the EIC; and

WHEREAS, on February 9, 2001, the Supreme Court of Guam held that in In re Request of I Mina Bente Sing 'ko na Liheslaturan Guahan Relative to the Application of the Earned Income Tax Credit Program to Guam Taxpayers ("The EIC question"), the EIC applied to Guam taxpayers and the Government of Guam was obligated to pay the refundable earned income tax credits to eligible Guam taxpayers; and

WHEREAS, despite the Supreme Court of Guam's ruling, the Government of Guam still failed to implement or otherwise pay refundable earned income tax credits; and

WHEREAS, after extensive arm's-length negotiations between Counsel for the EIC Class (as defined below) and Counsel for the Government of Guam (as defined below), this Settlement Agreement has been reached; and

WHEREAS, Petitioner and members of the EIC Class will receive relief directly benefiting them immediately upon execution of this Settlement Agreement by the parties, and when Final Judgment issues; and

WHEREAS, each member of the EIC Class has an undisputed and mathematically ascertainable claim to part of the Settlement Amount (as defined below) recovered on his behalf; and

WHEREAS, Petitioner and the Government of Guam intend this Settlement Agreement to materially alter the legal relationship between the parties by modifying the Government of Guam's behavior and position in ways that directly benefit the Petitioner and the EIC Class, and by entitling the EIC Class to enforce this Settlement Agreement, the Order of Approval and Final Judgment against the Government of Guam; and

WHEREAS, the Petitioner and the Government of Guam intend that notwithstanding the long history of the dispute over the applicability of the EIC on Guam, and the required monitoring and related work necessary and remaining to bring closure to this matter, this Settlement Agreement encourages the efficient resolution of this case; and

WHEREAS, Petitioner's filing of this lawsuit serves as a catalyst motivating the Government of Guam to provide the relief originally sought through litigation; and

WHEREAS, the Government of Guam's dire financial condition, with a deficit over one hundred million dollars, and almost two hundred million dollars in past due cash obligations, operates against any possible or realistic distribution of the total claims for refundable earned income tax credits in the event that Petitioner and the EIC Class succeed on the merits; and

WHEREAS, this Settlement Agreement provides immediate relief and creates an enforceable entitlement to a stream of payments to be made by the Government of Guam; and

WHEREAS, the class representative and Counsel for the EIC Class have concluded, after investigation of the facts, and after carefully considering the circumstances, that it would be in the best interests of the EIC Class to enter into this Settlement Agreement; and both the class representative and Counsel for the EIC Class consider the Settlement set forth below to be fair, reasonable, adequate and in the best interests of the EIC Class, and that all members of the EIC Class will benefit as a result of this Settlement; and

WHEREAS, the Government of Guam has concluded that it will enter into this Settlement Agreement in order to, among other things, avoid the further expense, inconvenience, burden, uncertainty, and risk of this litigation; and

WHEREAS, this Settlement Agreement is not an admission of liability nor to be used against the Government of Guam by any party who may opt out, and does not waive or estop the Government of Guam from pursuing reimbursement from the Federal Government on any legal theory; and

WHEREAS, no preferences will be made in EIC payments based upon hardship exceptions; and

WHEREAS, no interest or penalty will be paid by the Government; and

WHEREAS, Petitioner and the Government agree that with the high risk of either Petitioner and the EIC Class failing on the merits of this case, or the previous possibility of financial inability of the Government to pay this claim, the terms of the Settlement Agreement are fair and just.

NOW, THEREFORE, it is agreed by the undersigned on behalf of the EIC Class and the Government of Guam, that All Claims (as defined below) of the EIC Class against the Government of Guam be settled and compromised, on the following terms and conditions:

## I. DEFINITIONS

For purposes of this Settlement Agreement, the following terms shall have the meanings set forth below.

A. "Administration Plan" means the plan of administration of the EIC Settlement Fund as provided in section V.A of this Settlement Agreement.

B. "All Claims" means all claims, demands, actions, suits and causes of action against the Government of Guam, whether known or unknown, asserted or unasserted, that any member of the EIC Class ever had, could have had, now has or hereinafter can, shall or may have, relating in any way to the conduct, act or omission which was or could have been alleged in the EIC Class Action and where the claims, demands, actions, suits or causes of action concern or relate to the following: (a) the Government of Guam's failure or refusal to implement the Earned Income Program or its failure or refusal to acknowledge or accept requests for refundable earned income tax credits, or its failure or refusal to pay any refundable earned income tax credits, or its denial to Guam taxpayers of the benefits of the Earned Income Program; and (b) refundable earned income tax credits applicable for the tax years 1996, 1998, 1999, 2000, 2001, 2002 and 2003. "All Claims" does not include claims relating to the Government of Guam's conduct, acts or omissions that result in unpaid refundable earned income tax credits applicable for tax year 2004 and all subsequent tax years.

C. "Counsel for the EIC Class" means Michael F. Phillips, Phillips & Bordallo, P.C.

D. "Counsel for the Government of Guam" means Douglas B. Moylan, Attorney General of Guam.

E. "Court" means the District Court of Guam.

F. "Date of Final Approval" means the first date upon which all of the events listed in section I.L below have occurred.

G. "Earned Income Program" means the program enacted by the Guam Legislature, through Public Law 24-61:4, as amended by Public Law 25-03:IV;22

(codified at 11 G.C.A. §42101, *et. seq.*), to mandate the fulfillment of the Government of Guam's obligations under the Guam Territorial Income Tax.

H. "Effective Date of the Settlement" means fifteen (15) days after the Date of Final Approval.

I. "EIC Class" means all persons who (a) filed Guam income tax returns and (b) were and are entitled to be paid refundable earned income tax credits under the Guam Territorial Income Tax (as defined below) and the Earned Income Program for any or all of the following tax years: 1996, 1998, 1999, 2000, 2001, 2002 and 2003.

J. "EIC Class Action" means the class action case filed by Julie Babauta Santos, individually, and on behalf of all those similarly situated, Docket No. CIV04-00006 in the District Court of Guam.

K. "EIC Settlement Fund" means the sub-account created under section IV.A of this Settlement Agreement.

L. "Final Approval" means the occurrence of all of the following events:

1. This Settlement is approved in all respects by the Court.

2. The Administration Plan (as defined below) is approved by the Court.

3. The Court enters an Order of Approval and Final Judgment as provided in section II below.

4. The time to appeal or seek permission to appeal from the Court's Order of Approval and/or Final Judgment has expired, or, if appealed, the Order of Approval and Final Judgment have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.

M. "Government of Guam" or "Government" means the Governor of Guam, the Director of the Department of Revenue and Taxation, the Director of the Department of Administration; and the Government of Guam.

N. "Guam Territorial Income Tax" means the provisions of the Internal Revenue Code, including the provisions providing for the EIC (26 U.S.C. §32), which Congress, pursuant to the Organic Act of Guam (48 U.S.C. § 1421i), applied to Guam as the Guam Territorial Income Tax.

O. "Objection and Opt Out Date" means August 9, 2004, or such other date as the Court may approve, by which members of the EIC Class must file with the Court any written objections to the Settlement and any written requests to opt out of the class.

P. "Payment Rate" means the percentage of refundable earned income tax credits that will be paid to members of the EIC Class based on Settlement Amount and the total claims filed, as further defined under section V of this Settlement Agreement.

Q. "Petitioner" means Julie B. Santos, individually, and the EIC Class.

R. "Settlement Amount" means Sixty Million Dollars ($60,000,000) to be made available to pay for claims made by members of the EIC Class and other fees and expenses in accordance with this Settlement Agreement as further defined in section IV.A below.

## II. COURT APPROVAL, CLASS NOTICE AND OBJECTION PROCEDURES

A. Best Efforts. Petitioner and the Government of Guam agree that they will: (1) recommend approval of this Settlement Agreement to the Court; and (2) use their best efforts to obtain approval of this Settlement Agreement and to carry out its terms.

B. <u>Preliminary Stipulated Order</u>. Petitioner shall submit to the Court on or before June 14, 2004 a proposed preliminary stipulated order preliminarily approving this Settlement Agreement in substantially a form to be agreed upon by Petitioner and the Government of Guam, not inconsistent with the terms of this Settlement Agreement. The proposed preliminary stipulated order shall seek approval of the action to proceed as a class action with the certified class including all persons who are within the EIC Class. The proposed preliminary stipulated order shall also seek approval of the form and manner of notice and objection procedures as set forth in sections II.D and II.E below. The proposed preliminary stipulated order shall also ask the Court to schedule a hearing date for final approval of this Settlement Agreement.

1. The Petitioner and the Government of Guam stipulate and agree that this case should proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons, and will move the Court for such certification:

(a) The EIC Class, described above and composed of the tax payers entitled to receive the refundable EIC, is so numerous that joinder of all members is impracticable.

(b) There are questions of law or fact common to the EIC Class.

(c) The claims or defenses of the representative party are typical of the claims or defenses of the EIC Class.

(d) The representative party will fairly and adequately protect the interests of the EIC Class.

(e) The prosecution of separate actions by or against individual members of the EIC Class would create a risk of

(i) inconsistent or varying adjudications with respect to individual members of the EIC Class which would establish incompatible standards of conduct for the party opposing the EIC Class.

(ii) adjudications with respect to individual members of the EIC Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(f) The Government of Guam has acted or refused to act on grounds generally applicable to the EIC Class.

(g) The questions of law or fact common to the members of the EIC Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

C. Judgment. Upon final approval of the settlement agreement, the Court is expected to enter judgment which will be enforceable against all parties to this Settlement Agreement.

D. Notice.

1. In the motion for preliminary approval of this Settlement Agreement (as set forth in section II.B. above), Petitioner shall apply to the Court for an order authorizing summary notice by publication to the EIC Class, substantially in a form to be approved by the Government of Guam or, in the event of disagreement between the Petitioner and the Government of Guam, in a form to be approved by the Court (the "Notice"). The Notice shall inform the EIC Class of the terms of the Settlement

Agreement, state the date scheduled by the Court for the hearing on final approval of the Settlement, and advise class members of their right to object to the Settlement Agreement and to request exclusion from the class by delivering or mailing to the Court any written objections or written requests to opt out of the class by August 9, 2004, or such other date as the Court may approve (the "Objection and Opt Out Date"), and to appear at the hearing on final approval. The Court will hear any and all objections on the date set by the Court for final approval of the Settlement Agreement.

2. Subject to approval of the Court, Petitioner and the Government of Guam agree that the Notice shall be published a total of three (3) times in both the Pacific Daily News and The Marianas Variety, once per week for three (3) consecutive weeks beginning the week of June 21, 2004, and ending on the last publication date of July 9, 2004. Each Notice published in the Pacific Daily News and The Marianas Variety shall be approximately one full page in size and appear on different days of the week. One (1) Pacific Daily News Notice shall be in a Sunday edition. The Government of Guam will bear the cost of publishing the Notice. The Petitioner and the Government of Guam shall provide such additional or alternative notice or notices as required by the Court.

E. Procedures for Objecting to the Settlement.

Petitioner and the Government of Guam will recommend that the Court approve an Objection and Opt Out Date of August 9, 2004, or thirty (30) days after the last publication date of the Notice required under this Section. Any member of the EIC Class may appear at the hearing on final approval of the Settlement to present any objections to the Settlement; provided, however, that no member of the EIC Class shall be heard, unless his or her objection is made in writing and is filed, together with copies of all other

papers or briefs to be submitted to the Court at the hearing on final approval of the Settlement, with the Court no later than the Objection and Opt Out Date.

F. <u>Motion for Court Approval and Entry of Final Judgment</u>. Petitioner and the Government of Guam will request that the Court set a hearing on final approval of the Settlement for a date that is approximately thirty (30) days after the Objection and Opt Out Date. At least fifteen (15) days prior to the date the Court sets for the hearing on final approval of the Settlement, Petitioner will submit a motion for an Order of Approval and Final Judgment, the Order of Approval and Final Judgment in a form substantially a ~~form~~ to be agreed upon by Petitioner and the Government of Guam, not inconsistent with the terms of this Settlement Agreement; and:

1. Determining that Petitioner and the Government of Guam have submitted to the jurisdiction of the Court for purposes of this Settlement, that the Court has jurisdiction to approve this Settlement Agreement as fair, reasonable, adequate, and in the best interests of the class members and named petitioner pursuant to 48 U.S.C. §1421i(h) and 28 U.S.C. §1361; Rule 23 of the Federal Rules of Civil Procedure; and any other applicable rules of the Court;

2. Finding that the notice provided in this Settlement Agreement (a) constitutes reasonable and the best practical notice; (b) constitutes notice that is reasonably calculated, under the circumstances, to apprise members of the EIC Class of the pendency of this action, the terms of this Settlement, the right to object to this Settlement, the right to opt out of the class, and the right to appear at the hearing on final approval; (c) constitutes due, adequate and sufficient notice to all persons entitled to

receive such notice; and (d) meets the requirements of due process under the applicable law and rules of the Court;

 3. Reserving for the Court exclusive jurisdiction over this Settlement, including the administration, consummation and enforcement of this Settlement, and including all proceedings both before and after the Final Judgment become final and is no longer subject to appeal;

 4. Determining that there is no just reason for delay and directing that the Final Judgment be final and appealable; and

 5. Incorporating the release set forth in § III below and forever discharging the Government of Guam from All Claims.

 G. <u>Effect of Disapproval</u>. If the Court for any reason (1) determines not to approve this Settlement Agreement; or (2) does not enter Final Judgment, then this Settlement Agreement terminates and becomes null and void, except as otherwise provided in this Settlement Agreement.

### III. RELEASE

 Upon Final Approval, each member of the EIC Class hereby expressly and irrevocably waives and fully, finally and forever settles and releases all claims, demands, actions, suits and causes of action against the Government of Guam, whether known or unknown, asserted or unasserted, that any member of the EIC Class ever had, could have had, now has or hereinafter can, shall or may have, relating in any way to the conduct, act or omission which was or could have been alleged in the EIC Class Action and where the claims, demands, actions, suits or causes of action concern or relate to the following: (a) the Government of Guam's failure or refusal to implement the Earned Income Program

or its failure or refusal to acknowledge or accept requests for refundable earned income tax credits, or its failure or refusal to pay any refundable earned income tax credits, or its denial to Guam taxpayers of the benefits of the Earned Income Program; and (b) refundable earned income tax credits applicable for the tax years 1996, 1998, 1999, 2000, 2001, 2002 and 2003. This Release does not include claims relating to the Government of Guam's conduct, acts or omissions that result in unpaid refundable earned income tax credits applicable for tax year 2004 and all subsequent tax years.

### IV. PAYMENT OF EARNED INCOME TAX CREDITS

A. Consideration. As part of the consideration for the agreement herein, and for entry of Final Judgment as provided for in the Settlement Agreement, Petitioner and the Government of Guam agree that the Government of Guam shall pay the Settlement Amount of Sixty Million Dollars ($60,000,000) to the EIC Class. The Settlement Amount shall be paid in such installments as provided below and deposited in a separate sub-account within the Income Tax Refund Reserve Fund (11 G.C.A. § 50102) to be known and designated as the "EIC Settlement Fund." Any and all expenditures from the EIC Settlement Fund shall be for the payment of claims and fees as provided for in this Settlement Agreement, or as otherwise directed by the Court, and for no other purpose. All funds paid into the EIC Settlement Fund shall not be subject to any transfer authority of the Governor, until such time as all monies required to be paid hereunder have been done so.

As further consideration, Petitioner and the Government of Guam agree that the Government of Guam shall continue to implement the Earned Income Program and shall

take the appropriate steps necessary to ensure that refundable earned income tax credits are available and paid for all tax years following Tax Year 2003.

B. Installments Paid Into EIC Settlement Fund.

1. The first installment of *at least* Three Million Dollars ($3,000,000) shall be paid into the EIC Settlement Fund within thirty (30) days of the preliminary approval of this Settlement Agreement.

2. The second through twelfth installments, each consisting of *at least* One Million Five Hundred Forty-five Thousand Four Hundred Fifty-Four Dollars and Fifty-four Cents ($1,545,454.54), shall be paid each month for eleven (11) months following the first installment, for a total of Seventeen Million Dollars ($17,000,000).

3. The thirteenth through twenty-second installments, each consisting of *at least* Five Million Dollars ($5,000,000), shall be paid on or before June 30th of each subsequent year, beginning on June 30, 2006 and ending June 30, 2013.

4. No interest shall accrue against the Government of Guam to any payments required under this Settlement Agreement.

The payment schedule specified herein shall not restrict the Government of Guam from increasing amounts placed into the EIC Settlement Fund before each period specified, and does not specify when payments are to be actually disbursed by the Government of Guam to Class members.

C. Intent to Extinguish Liability.

It is the intent of Petitioner and the Government of Guam that the Settlement Amount completely extinguish the Government of Guam's liability to the EIC Class, excluding those members of the class who request to opt out of the class within the time

period specified in this Settlement Agreement. The Government of Guam's settlement herein shall not constitute an acknowledgment or admission of any legal or financial liability to pay under any legal theory for EIC or otherwise. This Agreement shall be construed simply a resolution of a dispute without admitting liability whatsoever. The Government of Guam agrees that no part of the Settlement Amount and no portion of funds paid into the EIC Settlement Fund shall be used for the potential refund for class members who opt out of the Class.

The Petitioner and the Government of Guam agree that this Settlement Agreement does not waive any party's right to pursue Federal Government reimbursement or payment of any portion of unpaid refundable earned income tax credits, nor constitute a waiver of, or restrict any legal theory which may be applied. In the event that any portion of the Settlement Amount remains in the EIC Settlement Fund after the final payment made to the EIC Class pursuant to the "Payment Rate" established in § V below, the Government of Guam shall pay such remaining amounts to the EIC Class in equal proportion, provided, however, that no member of the EIC Class shall receive payments exceeding one hundred percent (100%) of the refundable earned income tax credit for any tax year for which he or she qualifies under the Guam Territorial Income Tax. Any portion of the Settlement Amount remaining in the EIC Settlement Fund after the final payment made to the EIC Class which equals one hundred percent (100%) of the refundable earned income tax credits for all applicable tax years, and after all other payments are made as required by this Settlement Agreement, shall be transferred to the Income Tax Refund Reserve Fund to be used in accordance with the law applicable to the administration of such fund.

# V. PROCESSES FOR CLAIMING EARNED INCOME TAX CREDITS

A. <u>Administration Plan.</u> Within forty-five (45) days after the preliminary approval of this Settlement Agreement, the Petitioner and the Government of Guam, with the cooperation and assistance of the Department of Revenue and Taxation, shall agree on a plan of administration of the EIC Settlement Fund to be submitted to the Court for approval ("Administration Plan"). The Administration Plan shall at a minimum include the following terms:

1. The EIC Settlement Fund shall be administered by the Department of Revenue and Taxation under the supervision and direction of the Court. The Department of Revenue and Taxation shall submit quarterly reports to all parties signing this Agreement, including the Petitioner regarding the administration of the EIC Settlement Fund.

2. The procedure upon which the Department of Revenue and Taxation will identify members of the EIC Class, and send a "Second Notice" by mail to the last known address of each member or potential member, or to such other updated address as is provided to the Department of Revenue and Taxation. The Second Notice shall include a description of the procedure to administer the EIC Settlement Fund and shall include a claim form for eligible members of the EIC Class to process the refundable earned income tax credits to be paid out of the EIC Settlement Fund. The information requested to process payments to members of the EIC Class shall be the minimum necessary to determine the qualification of members of the EIC Class to refundable earned income tax credits for each applicable tax year. The Administration Plan shall

adopt a one (1) year time period, to begin on the date the Second Notice is sent to the EIC Class, for the submission of claims for all of the applicable tax years.

3. The procedure to administer the EIC Settlement Fund shall include the determination by the Department of Revenue and Taxation of a "Payment Rate" (i.e. 55%) to be made within thirty (15) days after the Objection and Opt Out Date. The Payment Rate shall be agreed upon by Petitioner and the Government of Guam, and subject to the approval of the Court. The Payment Rate shall be determined by comparing the Settlement Amount with the estimated total refundable earned income tax credits for the EIC Class under the rules and procedures relating to such qualification under the Guam Territorial Income Tax, and in considering the percentage of members of the EIC Class who opt out of the class. The Petitioner and Government of Guam agree that the parties currently project that the Payment Rate will be *at least* fifty percent (50%) if no member of the EIC Class opts out of the class and all members of the EIC Class submit the required information necessary to qualify for and process the refundable earned income tax credits.

Within thirty (30) days after the completion of the one (1) year period after the date the last Second Notice is mailed pursuant to the Administration Plan, the Department of Revenue and Taxation, with the agreement of the Petitioner and the Attorney General of Guam, shall revise the Payment Rate, if necessary, subject to approval by the Court. The Department of Revenue and Taxation shall provide such additional payments as necessary to members of the EIC Class that were paid prior to the date the revised Payment Rate is approved by the Court, in order to fully compensate such members at the rate of the revised Payment Rate.

4. The Department of Revenue and Taxation shall make payments to the EIC Class out of the EIC Settlement Fund by multiplying the Payment Rate by the refundable earned income tax credit for each member of the EIC Class determined to be qualified under the procedures of the Administration Plan. The priority of payment shall be (a) first to qualified members of the EIC Class for tax year 1996; (b) second to qualified members of the EIC Class for tax year 1998; and (c) then to qualified members of the EIC Class for each subsequent year ending with tax year 2003.

Notwithstanding the foregoing, within sixty (60) days after the date the last Second Notice is mailed for Tax Year 1996 pursuant to the Administration Plan, the first installment of Three Million Dollars ($3,000,000) provided in § IV above shall be distributed *pro rata* (equally) to qualified members of the EIC Class for Tax Year 1996. Those eligible for the first Three Million Dollar disbursement shall be those Class members who have applied within forty-five (45) days after the last Second Notice is mailed for Tax Year 1996 in an amount not exceeding the amount payable based on the applicable Payment Rate. If the distributions fail to equal the amount payable to such members based on the Payment Rate, the second and subsequent installments, if necessary, or portions thereof, shall be distributed to such members in order to fully compensate the members at the rate of the Payment Rate.

No priority shall be given to any members of the EIC Class based upon hardship or any other criteria other than as provided herein. The Government of Guam shall not make any payments to any person for EIC outside of this Agreement without the express written consent of the Attorney General of Guam. In addition, any payment of refundable earned income tax credits made to any member of the EIC Class prior to the

Effective Date of the Settlement in excess of the applicable Payment Rate shall be off-set against all other claims made by such member pursuant to this Settlement Agreement.

5. Any other terms of the Administration Plan as required and agreed to by the Petitioner and the Government of Guam, to carry out the terms of this Settlement Agreement, or as required by the Court.

## VI. OTHER PROVISIONS

A. Binding Effect. This Settlement Agreement shall be binding upon, and inure to the benefit of, each member of the EIC Class, the Government of Guam, and their respective heirs, executors, administrators, successors, and assigns.

B. Integrated Agreement. This Settlement Agreement contains the entire, complete and integrated statement of each and every term and provision agreed to by Petitioner and the Government of Guam, and is not subject to any condition not provided for in this Settlement Agreement. This Settlement Agreement shall not be modified in any respect except by a writing executed by all signatories to the Settlement Agreement, with the written approval of the Attorney General of Guam, Counsel for the Government of Guam, and Michael F. Phillips, Phillips & Bordallo, P.C., Counsel for the EIC Class. In entering this Settlement Agreement, neither Petitioner nor the Government of Guam has made or relied on any warranty or representation not specifically set forth in the document.

C. Jurisdiction. The District Court of Guam shall have continuing, exclusive jurisdiction over all provisions of this Settlement Agreement and over any and all disputes of any kind relating in any way to, or arising in any way out of, this Settlement Agreement.

D. <u>Notice</u>. Any notice, request, instruction or other document to be given by the Government of Guam to Petitioner, or vice versa, shall be in writing and (a) delivered personally or by Certified Mail, Return Receipt Requested, to counsel for the parties as follows:

If to the Government of Guam:

Honorable Douglas B. Moylan
Attorney General of Guam
Office of the Attorney General
Guam Judicial Center
120 West O'Brien Drive, Suite 2-200E
Hagatna, Guam 96910

If to the Petitioner:

Michael F. Phillips, Esq.
Phillips & Bordallo, P.C.
410 West O'Brien Drive, Suite 102
Hagatna, Guam 96910

E. <u>Attorneys' Fees</u>. The Petitioner and the Government of Guam agree that ~~Counsel for the EIC Class shall recover attorneys' fees~~ *in an amount to be determined by the Court.* ~~and court costs in the amount of ten percent (10%) of the Settlement Amount.~~ The recovery of attorneys' fees and court costs shall be from, and not in addition to, the Settlement Amount, and shall be executed in such manner as provided in the Administration Plan, not inconsistent with this Settlement Agreement. The Settlement Amount is attributed to the efforts of Petitioner and Counsel for the EIC Class. Although the value of the benefit conferred by Petitioner and Counsel for the EIC Class to each member of the EIC Class cannot be determined with complete accuracy until all claims are presented, attorneys' fees awarded against the Settlement will shift the costs of litigation to each member of the EIC Class in the exact proportion that the value of each individual's claim bears to the total recovery.

F.  Costs of Administration Plan.  The Government shall bear all the costs of administering the EIC Settlement Fund and all costs and expenses related to the Administration Plan, with the exception of court costs.

G.  Applicability.  Nothing in this Settlement Agreement shall be used or construed against the Government of Guam for any reason whatsoever by anyone or entity other than the EIC Class, including those persons who opt out of the class and the Federal Government.  This Agreement shall not waive the Government of Guam's right or ability to pursue the Federal Government for any reimbursement, indemnification or otherwise of any amounts the Government of Guam may be legally entitled to receive.

In addition, nothing in this Settlement Agreement shall be used or interpreted as a waiver of the Government of Guam or any official thereunder to any rights it may have to pursue civil recovery or to prosecute any wrongdoing or illegality relating to the Earned Income Tax program or any payments made therein.

H.  Amendments.  This Agreement may only be amended in writing by Petitioner's counsel on behalf of the EIC Class, and the Attorney General of Guam on behalf of the Government of Guam.

I.  Severability.  The invalidity or unenforceability of any provision of this Settlement Agreement shall not affect the validity or enforceability of the remainder of this Settlement Agreement.

**IN WITNESS THEREOF,** Petitioner and the Government of Guam have duly executed this Settlement Agreement on this 14th day of June, 2004.

*Petitioner and Counsel for the EIC Class*

Julie Babauta Santos

Michael F. Phillips,
Counsel for the EIC Class

*The Government of Guam*

Kaleo S. Moylan,
Acting Governor of Guam

Art Illagan, Director,
Revenue and Taxation

Douglas B. Moylan,
Attorney General of Guam

Joseph Manibusan,
Acting Director,
Department Administration

Approved as to Legality & Form:

Joseph A. Guthrie,
Deputy Attorney General

# EXHIBIT A-2



**OFFICE OF THE GOVERNOR**
**HAGÅTÑA, GUAM 96910**
**U.S.A.**

EXECUTIVE ORDER NO. 2005- 01

## RELATIVE TO FILING EARNED INCOME TAX CREDIT CLAIMS WITH THE DEPARTMENT OF REVENUE AND TAXATION

**WHEREAS**, the Guam Territorial Income Tax is established in the Organic Act of Guam to mirror the federal Internal Revenue Code in most, but not all, respects, as a tax that is collected by and payable to the government of Guam; and

**WHEREAS**, the Earned Income Tax Credit ("EITC") was enacted by the United States Congress in 1975 as a subsidy to the working poor as an extension of social welfare benefits; and

**WHEREAS**, the federal EITC is funded in the Fifty States in part through the collection of Social Security taxes, which are not collected by the government of Guam and therefore are not available to fund payment of the EITC in Guam absent federal action; and

**WHEREAS**, in 1996, under the previous administration, the Department of Revenue and Taxation ("DRT") issued Revenue Ruling No. 96-001, which provided that the EITC was not applicable in Guam, it should not be administered by DRT, and DRT should not certify to the Department of Administration ("DOA") for payment the amounts of EITC cash refunds reported by Guam taxpayers on their Guam individual income tax returns; and

**WHEREAS**, pursuant to Revenue Ruling No. 96-001, and with the exceptions of tax years 1997 and 1998, DRT has in most cases not accepted filings that claimed the EITC; and

**WHEREAS**, in response to Revenue Ruling-No. 96-001, the Legislature has passed a number of laws intended to mirror the federal EITC, including the Guam Earned Income Program, but there presently is no funding of the EITC on Guam; and

**WHEREAS**, the government of Guam wishes to promptly and efficiently determine which taxpayers claim eligibility for the EITC and whether such claims are otherwise valid under the laws of Guam and/or the United States, regardless of legal disputes over the applicability of the EITC on Guam and regardless of issues over the lack of availability of funding for payment of EITC claims; and

**WHEREAS**, taxpayers should not have to bear the primary burden of determining whether they are eligible for the EITC in past tax years, or in what amounts, and to expect them to do so could at a minimum require them to obtain copies of all relevant back years' tax returns, at substantial cost and burden to both taxpayers and DRT; and

**WHEREAS**, the use of a new simplified claim form for EITC claims, which requires only information not already known to DRT from taxpayers' previously submitted tax returns, would minimize the burden on taxpayers of making EITC claims and would allow DRT to determine the eligibility and calculate the amount of the legitimate claims of each taxpayer submitting the simplified form in the fastest possible time; and

**WHEREAS**, a new simplified claim form can be designed to support a computerized tracking system that will automatically identify duplicative, mutually inconsistent, and otherwise improper claims (specifically including fraudulent claims regarding qualifying children and head



of household status) thereby preventing overpayments and facilitating the prosecution of false or fraudulent claims; and

**WHEREAS**, the Governor urges the federal government to fund the EITC on Guam to establish equality between the rights of taxpayers residing in the United States and its territories, but will work in the meantime with the Legislature to pass an appropriation or bond to fund the payment of otherwise valid but unpaid claims for the EITC.

**NOW, THEREFORE, I, FELIX P. CAMACHO,** *I Maga'lähen Guåhan,* Governor of Guam, by virtue of the authority vested in me by the Organic Act of Guam, as amended, do order as follows:

1. The Department of Revenue and Taxation ("DRT") shall begin accepting claims for the Earned Income Tax Credit pursuant to the Guam Earned Income Program, 11 G.C.A. §§ 42101-04, as soon as forms described in paragraph 2 below can promulgated and printed, and in no event later than January 31, 2005.

2. Pursuant to the authority vested in it by 11 G.C.A.§§ 42102 and 42103, DRT shall prepare simplified forms to permit submission of EITC claims for tax years 1995-1996 and 1999-2004, together with explanatory materials as necessary to inform taxpayers about the procedures and plans for administration of such claims. The simplified forms shall require only information not already provided to DRT in tax returns and necessary for DRT to determine taxpayers' eligibility, calculate the amount of taxpayers' legitimate claims, and detect duplicative, mutually inconsistent, and fraudulent claims. Submission of a claim under the Guam Earned Income Program shall constitute submission of a claim for the federal EITC to the extent the federal EITC applies to Guam. However, any taxpayer who has not yet filed a tax return as to a given tax year shall be required to file that tax return for that tax year along with the simplified EITC claim form in order to be eligible for the EITC under the Guam Earned Income Program for that tax year.

3. DRT shall use the information submitted by taxpayers on the form described in paragraph 2, together with information already in DRT's possession, to determine taxpayers' eligibility, calculate the amount of taxpayers' legitimate claims, and promptly communicate that information to taxpayers submitting the form. Submitted information must be truthful, and the form shall require that its contents be submitted under penalty of perjury. The provisions of 26 U.S.C. § 32(k) will in all other respects apply to claims under the Guam Earned Income Program pursuant to 11 G.C.A. § 42102.

4. To detect duplicative, mutually inconsistent, and fraudulent claims, DRT shall institute a computer-based tracking system to compare the information submitted by each taxpayer on the form described in paragraph 2 to other information submitted by the same and other taxpayers, with particular emphasis on preventing the submission of false or incorrect claims regarding qualifying children or head of household status.

5. DRT shall make a preliminary determination of eligibility and shall calculate the proper amount of the claim for each claim submitted on the form described in paragraph 2, pursuant to all governing laws including DRT's procedures for auditing tax returns and claim forms as necessary, but in no case shall DRT pay any such claim until lawful funding is determined and made available.

6. The Directors of DOA, DRT, and the Bureau of Budget and Management Research ("BBMR") are instructed to begin immediately the implementation of 11 G.C.A. §§ 50101-07 and 51101-08 to the degree compliance with the current budget law, P.L. 27-106, can be achieved. In all future years, the Directors of DOA, DRT, and BBMR are instructed to implement 11 G.C.A. §§ 50101-07 and 51101-08 without reservation.

7. Nothing in this Executive Order or in the processing of an EITC claim pursuant to this Order shall entitle any claimant to payment for the EITC and nothing shall relieve any



claimant of the requirements of the Internal Revenue Code (including without limitation 26 U.S.C. §§ 32(k), 7206, and 7207) or the Guam Territorial Income tax with regard to claims for tax refunds, claims for the EITC, or any other applicable laws.

8. Revenue Ruling 96-001 is revoked to the degree it is inconsistent with this Order.

**SIGNED AND PROMULGATED** at Hagåtña, Guam this ___12th___ day of January, **2005.**

**FELIX P. CAMACHO**
*I Maga' låhen Guåhan*
Governor of Guam

COUNTERSIGNED

**MARK FORBES**
*I Segundo Maga Låhen Guåhan Para Pago*
Acting Lieutenant Governor of Guam

# EXHIBIT B

BILL NO._____

Introduced by: _____

by request of *I Maga'lahen Guåhan,*
the Governor of Guam, in accordance
with the Organic Act of Guam.

**AN ACT MAKING APPROPRIATIONS FOR THE OPERATIONS OF THE EXECUTIVE BRANCH OF THE GOVERNMENT OF GUAM FOR FISCAL YEAR ENDING SEPTEMBER 30, 2006 AND MAKING OTHER APPROPRIATIONS, AND ESTABLISHING MISCELLANEOUS AND ADMINISTRATIVE PROVISIONS.**

1    **BE IT ENACTED BY THE PEOPLE OF GUAM:**

2    **CHAPTER I**

3    **GENERAL PROVISIONS**

4    **Section 1. Short Title.** This Act shall be known as the *"General Appropriations*

5    *Act of 2006".* Except as otherwise provided by this Act, the appropriations made by this

6    Act shall be available to pay for obligations incurred on or after October 1, 2005, but no

7    later than September 30, 2006. In the event that any appropriation of this Act is found

8    contrary to federal law, all portions not so found shall remain valid.

9    **Section 2. Estimated Revenues for Fiscal Year 2006.** *I Liheslaturan Guåhan,*

10    the Guam Legislature, adopts the following revenue estimate for Fiscal Year 2006 and

11    shall be utilized for appropriations contained herein.

| | | | | AMOUNT |
|---|---|---|---|---|
| 1 | **I.** | **GENERAL FUND REVENUES** | | <u>AMOUNT</u> |
| 2 | | **A. TAXES** | | |
| 3 | | Income Tax (Individual, Corporate, Withholding | | $188,660,880 |
| 4 | | Interest and Penalties, Provision for Refunds) | | |
| 5 | | Gross Receipts Tax | | 151,537,300 |
| 6 | | Tobacco Tax **1/** | | 0 |
| 7 | | 1/ P.L. No. 27-05 earmarks all Tobacco Tax to the Healthy | | |
| 8 | | Futures Fund. | | |
| 9 | | Alcoholic Beverage Taxes **2/** | | 0 |
| 10 | | 2/ P.L. No. 27-05 earmarks all Alcoholic Beverage Taxes to | | |
| 11 | | Healthy Futures Fund and Safe Homes, Safe Streets Fund. | | |
| 12 | | Other Taxes | | <u>3,350,300</u> |
| 13 | | **TOTAL TAXES** | | $343,548,480 |
| 14 | | **B. FEDERAL SOURCES** | | $56,052,700 |
| 15 | | Federal Income Tax Collection (Section 30 Funds); | | |
| 16 | | Immigration Fees and Indirect Cost | | |
| 17 | | **C. USE OF MONEY AND PROPERTY** | | $191,000 |
| 18 | | Interest Earned on Accounts | | |
| 19 | | **D. LICENSES, FEES AND PERMITS** | | $8,067,000 |
| 20 | | Business Licenses, Weights and Measures Fees and Others | | |
| 21 | | **E. DEPARTMENT CHARGES** | | $1,985,820 |
| 22 | | Education, Public Health, Agriculture and Others | | |

Legislation Page 2

| 1 | TOTAL GENERAL FUND REVENUE | $409,845,000 |
|---|---|---|
| 2 | II. SPECIAL FUND REVENUES APPROPRIATED IN THIS ACT | |
| 3 | A. Air Pollution Control Special Fund | $214,129 |
| 4 | B. Chamorro Land Trust Fund | 492,266 |
| 5 | C. Corrections Revolving Fund | 1,304,907 |
| 6 | D. Customs, Agriculture and Quarantine Inspection | |
| 7 | Services Fund | 7,760,418 |
| 8 | E. Enhanced 911 Emergency Reporting System Fund | 2,082,787 |
| 9 | F. Environmental Health Fund | 233,872 |
| 10 | G. Guam Contractors License Board Fund | 334,901 |
| 11 | H. Guam Environmental Trust Fund | 141,476 |
| 12 | I. Guam Highway Fund | 14,345,779 |
| 13 | J. Healthy Futures Fund | 9,208,504 |
| 14 | K. Land Survey Revolving Fund | 728,805 |
| 15 | L. Police Services Fund | 339,116 |
| 16 | M. Professional Engineers, Architects and | |
| 17 | Land Surveyors Board Fund | 159,979 |
| 18 | N. Public Recreation Services Fund | 154,717 |
| 19 | O. Safe Homes, Safe Streets Fund | 1,456,962 |
| 20 | P. Solid Waste Fund | 5,822,582 |
| 21 | Q. Tax Collection Enhancement Fund | 556,123 |
| 22 | R. Territorial Education Facilities Fund | 19,318,360 |
| 23 | S. Water Protection Fund | 52,340 |

Legislation Page 3

| | | |
|---|---|---|
| 1 | T. Water Research and Development Fund | 61,054 |
| 2 | **TOTAL SPECIAL FUND REVENUE** | **$64,769,077** |
| 3 | **III. FEDERAL MATCHING GRANTS-IN-AID REVENUES** | |
| 4 | **Federal Grants-In-Aid Requiring Local Match:** | |
| 5 | A. Agriculture | $517,800 |
| 6 | B. Guam Council on the Arts and Humanities Agency | 240,000 |
| 7 | C. Integrated Services for Individuals with Disabilities | 1,942,602 |
| 8 | D. Labor | 33,500 |
| 9 | E. Law | 3,040,228 |
| 10 | F. Military Affairs | 568,092 |
| 11 | G. Public Health and Social Services | 18,014,395 |
| 12 | H. University of Guam | 1,508,000 |
| 13 | I. Youth Affairs | 305,600 |
| 14 | **TOTAL FEDERAL MATCHING GRANTS-IN-** | |
| 15 | **AID REVENUE** | **$26,170,217** |
| 16 | **REVENUE SUMMARY:** | |
| 17 | **TOTAL GENERAL FUND REVENUE** | **$409,845,000** |
| 18 | **TOTAL SPECIAL FUND REVENUE** | **$64,769,077** |
| 19 | **TOTAL FEDERAL MATCHING GRANTS-IN-** | |
| 20 | **AID REVENUE** | **$26,170,217** |
| 21 | **GRAND TOTAL** | **$500,784,294** |

22    **Section 3.    Debt Service Continuing Appropriation.**  The following are

23   continuing appropriations for debt service requirements:

Legislation Page 4

| | | |
|---|---|---|
| 1 | A. 1993 AND 1995 GENERAL OBLIGATIONS BONDS | |
| 2 | (P.L. No. 22-19, Capital Projects Pledged and Due FY2018 as | |
| 3 | Final Year; and P.L. 23-14, Tax Refunds, Supplemental Retirement | |
| 4 | Payments Pledged and Due FY2006 as Final Year) | $14,847,720 1/ |
| 5 | 1/ Territorial Education Facilities Fund | |
| 6 | B. LIMITED OBLIGATION HIGHWAY REFUNDING | |
| 7 | BOND 2001 SERIES (P.L. 24-70) | $ 6,029,294 2/ |
| 8 | 2/ Guam Highway Fund | |
| 9 | C. LIMITED OBLIGATION BOND, SERIES 2001A | |
| 10 | (P.L. No. 26 58, Amended by P.L. 25-59, Section 30 | |
| 11 | Pledged and Due FY2012 as Final Year) | $ 9,826,287 |
| 12 | D. P.L. 26-84, P.L. 26-85 and LINE OF CREDIT (LOC) | $ 1,281,818 |
| 13 | GRAND TOTAL | $31,985,119 |

14  Section 4. Amendment of Subsection (e) of Section 4120.1 of Title 5, Guam

15  Code Annotated. Subsection (e) of Section 4120.1 of Title 5 of the Guam Code

16  Annotated, repealed and re-enacted by Section 4 of Chapter I of Public Law No. 24-59 is

17  amended to read:

18  "(e) 'Equipment' means items having a purchase price of Five

19  [Hundred] Thousand Dollars [($500.00)] ($5,000.00) or less."

Case 1:04-cv-00006   Document 162-2   Filed 02/16/2005   Page 9 of 38

# CHAPTER II

## APPROPRIATIONS FOR EXECUTIVE BRANCH OPERATIONS

**Section 1.   Executive Branch Appropriations.**   Three Hundred Eighty-six Million Six Hundred Fourteen Thousand Five Hundred Seven Dollars ($386,614,507) are appropriated for the operations of the Executive Branch for fiscal year ending September 30, 2006.  This sum is composed of Three Hundred Sixteen Million Eight Hundred Two Thousand Two Hundred Twenty-seven Dollars ($316,802,227) from the General Fund; Forty-three Million Six Hundred Forty-two Thousand Sixty-three Dollars ($43,642,063) from Special Funds, and Twenty-six Million One Hundred Seventy Thousand Two Hundred Seventeen Dollars ($26,170,217) from Federal Matching Grants-in-Aid.  The appropriation shall be expended as follows:

| | General Fund | Special Fund | Federal Fund Match | Total |
|---|---|---|---|---|
| **I. EXECUTIVE DIRECTION** | | | | |
| A.  Office of I Maga'lahen Guåhan and I Segundu Na Maga'lahen Guåhan | $4,815,745 | | | $4,815,745 |
| B.  Bureau of Budget and Management Research | 1,253,469 | | | 1,253,469 |
| C.  Bureau of Statistics and Plans | 1,073,302 | | | 1,073,302 |
| D.  Military Affairs | 644,270 | | 568,092 | 1,212,362 |
| E.  Veterans Affairs | 112,817 | | | 112,817 |

| | | General Fund | Special Fund | Federal Fund Match | Total |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | F. Civil Service | | | | |
| 4 | Commission | 895,085 | | | 895,085 |
| 5 | G. Guam Election | | | | |
| 6 | Commission | 372,884 | | | 372,884 |
| 7 | H. Commission on | | | | |
| 8 | Decolonization | 150,000 | | | 150,000 |
| 9 | TOTAL EXECUTIVE | | | | |
| 10 | DIRECTION | $ 9,317,572 | $ | $568,092 | $ 9,885,664 |
| 11 | II. PUBLIC SAFETY | | | | |
| 12 | A. Guam Police | 20,050,460 | 339,116 1/ | | 20,389,576 |
| 13 | B. Guam Fire | 19,908,702 | 2,082,787 2/ | | 21,991,489 |
| 14 | C. Corrections | 13,649,631 | 1,304,907 3/ | | 14,954,538 |
| 15 | D. Youth Affairs | 3,218,776 | 300,000 4/ | 305,600 | 3,824,376 |
| 16 | E. Chief Medical | | | | |
| 17 | Examiner's Office | 386,839 | | | 386,839 |
| 18 | TOTAL PUBLIC | | | | |
| 19 | SAFETY | $57,214,408 | $4,026,810 | $305,600 | $61,546,818 |
| 20 | III. HOMELAND SECURITY | | | | |
| 21 | A. Customs and Quarantine | | 7,760,418 5/ | | 7,760,418 |

Legislation Page 7

| | | General Fund | Special Fund | Federal Fund Match | Total |
|---|---|---|---|---|---|
| 3 | TOTAL HOMELAND | | | | |
| 4 | SECURITY | $ | $7,760,418 | $ | $7,760,418 |
| 5 | IV. HEALTH | | | | |
| 6 | A. Integrated Services for Individuals | | | | |
| 7 | With Disabilities | 1,323,032 | 433,656 6/ | 1,942,602 | 3,699,290 |
| 8 | B. Medical Referral | | | | |
| 9 | Offices | 600,000 | | | 600,000 |
| 10 | C. Mental Health and | | | | |
| 11 | Substance Abuse | 4,515,343 | 2,071,813 7/ | | 6,587,156 |
| 12 | D. Public Health and | | | | |
| 13 | Social Services | 17,930,870 | 3,843,869 8/ | 18,014,395 | 39,789,134 |
| 14 | E. Guam Memorial Hospital | | 4,000,000 6/ | | 4,000,000 |
| 15 | TOTAL HEALTH | $24,369,245 | $10,349,338 | $19,956,997 | $54,675,580 |
| 16 | V. EDUCATION | | | | |
| 17 | A. Education | | | | |
| 18 | (DOE, UOG, GCC) | 181,242,254 9/ | 4,470,640 10/ | 1,508,000 | 187,220,894 |
| 19 | B. Guam Educational Telecommunications | | | | |
| 20 | Corporation | 514,477 | | | 514,477 |
| 21 | C. Guam Public Library | 1,117,902 | | | 1,117,902 |
| 22 | TOTAL EDUCATION | $182,874,633 | $4,470,640 | $1,508,000 | $188,853,273 |
| 23 | VI. FINANCE AND ADMINISTRATION | | | | |

Case 1:04-cv-00006   Document 162-2   Filed 02/16/2005   Page 12 of 38

| | General Fund | Special Fund | Federal Fund Match | Total |
|---|---|---|---|---|
| A. Administration | 7,095,864 | | | 7,095,864 |
| TOTAL FINANCE AND ADMINISTRATION | $7,095,864 | $ | $ | $7,095,864 |
| VII. NATURAL RESOURCES | | | | |
| A. Agriculture | 2,264,127 | | 517,800 | 2,781,927 |
| B. Chamorro Land Trust Commission | | 492,266 11/ | | 492,266 |
| C. Guam Environmental Protection Agency | | 468,999 12/ | | 468,999 |
| D. Land Management | 2,242,105 | 728,805 13/ | | 2,970,910 |
| E. Ancestral Lands Commission | 200,000 | | | 200,000 |
| F. Parks and Recreation | 3,679,213 | 154,717 14/ | | 3,833,930 |
| TOTAL NATURAL RESOURCES | $8,385,445 | $1,844,787 | $517,800 | $10,748,032 |
| VIII. LABOR | | | | |
| A. Contractor's License Board | | 334,901 15/ | | 334,901 |
| B. Licensing and Professional Labor Regulations (PEALS, etc.) | | 159,979 16/ | | 159,979 |

Legislation Page 9

| | General Fund | Special Fund | Federal Fund Match | Total |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 C. Labor | 1,739,021 | | 33,500 | 1,772,521 |
| 4 **TOTAL LABOR** | **$1,739,021** | **$494,880** | **$33,500** | **$2,267,401** |
| 5 **IX. TRANSPORTATION** | | | | |
| 6 A. Public Works | 10,740,194 | 11,139,067 17/ | | $21,879,261 |
| 7 B. Guam Mass Transit | | | | |
| 8 Authority | | 3,000,000 18/ | | 3,000,000 |
| 9 **TOTAL** | | | | |
| 10 **TRANSPORTAION** | **$10,740,194** | **$14,139,067** | **$** | **$24,879,261** |
| 11 **X. TOURISM AND CULTURE** | | | | |
| 12 A. Cultural Heritage and the Arts | | | | |
| 13 (Chamorro Affairs, etc) | 687,606 | | | 687,606 |
| 14 B. Guam Council on the Arts and | | | | |
| 15 Humanities Agency | 266,577 | | 240,000 | 506,577 |
| 16 **TOTAL TOURISM AND** | | | | |
| 17 **CULTURE** | **$954,183** | **$** | **$240,000** | **$1,194,183** |
| 18 **XI. REVENUE AND TAXATION** | | | | |
| 19 A. Revenue & Taxation | 8,861,612 | 556,123 19/ | | 9,417,735 |
| 20 **TOTAL REVENUE AND** | | | | |
| 21 **TAXATION** | **$8,861,612** | **$556,123** | **$** | **$9,417,735** |
| 22 **XII. JUSTICE** | | | | |
| 23 A. Law | 5,250,050 | | 3,040,228 | 8,290,278 |

| | | General | Special | Federal Fund | Total |
|---|---|---|---|---|---|
| 1 | | Fund | Fund | Match | |
| 2 | | | | | |
| 3 | **TOTAL JUSTICE** | **$5,250,050** | **$** | **$3,040,228** | **$8,290,278** |
| 4 | **GRAND TOTAL** | **$316,802,227** | **$43,642,063** | **$26,170,217** | **$386,614,507** |

5  <u>NOTES:</u>

6  1/ Police Services Fund

7  2/ Enhanced 911 Emergency Reporting System Fund

8  3/ Corrections Revolving Fund

9  4/ Safe Homes, Safe Streets Fund

10  5/ Customs, Agriculture and Quarantine Inspection Services Fund

11  6/ Healthy Futures Fund

12  7/ Safe Homes, Safe Streets Fund ($906,962) and Healthy Futures Fund ($1,164,851)

13  8/ Healthy Futures Fund ($3,609,997) and Environmental Health Fund ($233,872)

14  9/ Appropriation of $3,500,000 from FY2006 revenues pursuant to P.L. 27-106:IV:3(a)

15  10/ Territorial Education Facilities Fund

16  11/ Chamorro Land Trust Fund

17  12/ Air Pollution Control Special Fund ($214,129); Guam Environmental Trust Fund

18  ($141,476); Water Research & Dev. Fund ($61,054); and Water Protection Fund ($52,340)

19  13/ Land Survey Revolving Fund

20  14/ Public Recreation Services Fund

21  15/ Guam Contractors License Board Fund

22  16/ Professional Engineers, Architects and Land Surveyors Board Fund

23  17/ Guam Highway Fund ($5,316,485) and Solid Waste Fund ($5,822,582)

24  18/ Guam Highway Fund

25  19/ Tax Collection Enhancement Fund

Case 1:04-cv-00006    Document 162-2    Filed 02/16/2005    Page 15 of 38

# CHAPTER III

## MISCELLANEOUS APPROPRIATIONS

**Section 1.  Appropriation to the Department of Administration for the Government Claims Fund.**  The sum of One Hundred Thousand Five Hundred Ninety-eight Dollars ($100,598) is appropriated from the General Fund to the Government Claims Fund under the Department of Administration for the payment of eligible and approved Government Claims for Fiscal Year 2006.

**Section 2.  Appropriation to the Worker's Compensation Fund.**

(a)  The sum of One Million Dollars ($1,000,000) is appropriated from the General Fund to the Worker's Compensation Fund. The funds appropriated in this Section shall be utilized for worker's compensation payments for the purposes set out in §9144 of Title 22 of the Guam Code Annotated to pay workers compensation for claims by employees of the government of Guam, including outstanding prior years' obligations and future obligations associated with the provisions of this Section.

(b) Notwithstanding any other provision of law, the appropriation made in this Section may be used to pay for medical, surgical, and other attendance or treatment; nurses; hospital services; medical travel and/or per diem; medicine; crutches; and apparatus required by the claimant for such period as the nature of the injury, or the process of recovery, may require.

(c) Notwithstanding any other provision of law, the appropriation made in this Section shall not be expended for disability compensation payments for FTE's funded by this Act.

Case 1:04-cv-00006     Document 162-2     Filed 02/16/2005     Page 16 of 38

1    (d) Notwithstanding any other provision of law, the Director of the Department

2    of Labor is authorized to spend *up to* Forty Thousand Dollars ($40,000.00) from the

3    appropriation to the Worker's Compensation Fund for Fiscal Year 2006 to pay for legal

4    services for worker's compensation hearings.

5        **Section 3. Appropriation to the Department of Youth Affairs for Sanctuary,**

6    **Inc.** The sum of Two Hundred Fifty Thousand Dollars ($250,000) is appropriated from

7    the General Fund to the Department of Youth Affairs ("DYA") for Sanctuary, Inc. for

8    their Fiscal Year 2006 operations. DYA shall make a report of the expenditures of the

9    funds of this appropriation to *I Maga'lahen Guåhan* and *I Liheslaturan Guåhan*, within

10   sixty (60) days following the end of the fiscal year covered herein.

11       **Section 4.** **Appropriation to the Department of Administration for the**

12   **Residential Treatment Fund.** The sum of One Million Five Hundred Twenty-four

13   Thousand Three Hundred Fifty-seven Dollars ($1,524,357) is appropriated from the

14   General Fund to the Department of Administration ("DOA") to pay authorized expenses

15   in Fiscal Year 2006 for persons under the jurisdiction of the Superior Court of Guam for

16   residential care arising from physical, mental or emotional disabilities, or from severe

17   emotional disturbances. All patients and escorts referred off Guam shall submit to the

18   Director of DOA supporting documents to justify reimbursement of their travel expenses.

19       **Section 5.** **Appropriation to the Department of Education for Summer**

20   **School.**

21       (a) There is hereby appropriated such sums as are necessary from the Summer

22   School Fund established pursuant to §6119 of Article 1, of Chapter 6 of Division 1 of

Case 1:04-cv-00006    Document 162-2    Filed 02/16/2005    Page 17 of 38

1    Title 17, Guam Code Annotated, to the Department of Education to fund the operation of

2    the 2006 Summer School Program.

3        **(b)** The Superintendent of Education shall submit a detailed report to *I*

4    Liheslaturan Guåhan on the expenditure of said funds no later than thirty (30) days upon

5    the conclusion of summer school.

6        **Section 6. Appropriation to the Department of Education for Non-Personnel**

7    **Operating Expenses.**

8        **(a)** All monies collected by the Department of Education ("DOE") from the

9    school lunch program, lost and damaged textbooks and Federal funds paid to the

10   government of Guam for reimbursement under the National School Lunch and Breakfast

11   Program and State Administrative Expense ("SAE") Funds are hereby appropriated to

12   DOE for non-personnel operating expenses.

13       **(b)** The Superintendent of the Department of Education is authorized to carryover

14   and expend any unexpended fund balances of the fund sources listed in subsection (a) of

15   this Section in Fiscal Year 2006.

16       **(c)** The Superintendent of the Department of Education shall make a separate

17   report of the expenditures for each of the fund sources listed in subsections (a) and (b) of

18   this Section to *I Maga'lahen Guåhan*, and *I Liheslaturan Guåhan*, within thirty (30) days

19   of the close of each quarter in Fiscal Year 2006.

20       **Section 7. Appropriation to the Public Health and Social Services for Public**

21   **Assistance Program Payments.** The sum of Three Million One Hundred Thousand

22   Dollars ($3,100,000) is appropriated from the General Fund to the Department of Public

Case 1:04-cv-00006     Document 162-2     Filed 02/16/2005     Page 18 of 38

1    Health and Social Services for Public Assistance Program payments for Fiscal Year
2    2006.

3        **Section 8.  Appropriations for Supplemental Annuity Benefits and for Other**
4    **Costs.**

5        (a)  The sum of Thirteen Million Four Hundred Thirty-seven Thousand Dollars
6    ($13,437,000) is appropriated from the General Fund to the Supplemental Annuity
7    Benefits Special Fund for the period of October 1, 2005 to September 30, 2006, for direct
8    payments to those employees who retired prior to October 1, 1995, or their survivors, for
9    the continuing provisions of Four Thousand Two Hundred Thirty-eight Dollars
10   ($4,238.00) for supplemental annuity benefits, consisting of the sum of One Thousand
11   Two Hundred Dollars ($1,200.00), One Thousand Five Hundred Dollars ($1,500.00),
12   Seven Hundred Dollars ($700.00), and Eight Hundred Thirty-eight Dollars ($838.00) in
13   annual benefits formerly contained in various General Appropriation Acts.

14       (b)  No persons eligible for Retiree Supplemental Annuity Benefits provided for
15   in Subsection (a) of this Section shall receive such benefit if their regular annual
16   retirement annuity, *excluding* survivor benefits, *prior* to the supplemental amounts herein
17   is more than Forty Thousand Dollars ($40,000.00).   Persons eligible for Retiree
18   Supplemental Annuity Benefits shall *only* receive an amount of such benefits up to the
19   total aggregate sum of Forty Thousand Dollars ($40,000.00) in combined retirement
20   annuities and supplemental retirement annuities and *not more*.

21       (c)  The Department of Administration shall be the responsible entity to disburse
22   to the retirees or their survivors the supplemental annuities pursuant to Subsection (a) of
23   this Section.   The Government of Guam Retirement Fund shall provide the necessary

Case 1:04-cv-00006    Document 162-2    Filed 02/16/2005    Page 19 of 38

1    information for disbursement to the retirees or their survivors to the Department of

2    Administration.

3        (d)  Deposits made to the Supplemental Annuity Benefits Special Fund ("Fund")

4    shall not be commingled with the General Fund and shall continue to be kept in a

5    separate bank account which shall continue to be administered by the Director of the

6    Department of Administration.

7        (e)  For October 1, 2005, to September 30, 2006, of Fiscal Year 2006, the Guam

8    Power Authority, the Guam Telephone Authority, the A.B. Won Pat International Airport

9    Authority Guam, the Guam Economic Development and Commerce Authority, the Guam

10   Housing Corporation, the Government of Guam Retirement Fund, the Jose D. Leon

11   Guerrero Commercial Port, the Guam Waterworks Authority and the Guam Visitors

12   Bureau shall remit to the Department of Administration an amount equal to the number of

13   eligible employees which are retired from each entity multiplied by the amounts listed in

14   Subsection (a) of this Section.  The remittance shall be due on or before October 10,

15   2005, and April 15, 2006 respectively.

16       (f) The sum of Six Million Nine Hundred Fifty-two Thousand Four Hundred

17   Twenty Dollars ($6,952,420) is appropriated from the General Fund to the Government

18   of Guam Retirement Fund for the payment of benefits of current retirees from October 1,

19   2005, to September 30, 2006, consisting of the continuing provisions of Items (1) through

20   (2), below:

21           (1)   Retiree group health, dental and life insurance premiums (to

22                 continue existing programs currently contained in the semi-

23                 monthly payments); and

Case 1:04-cv-00006    Document 162-2    Filed 02/16/2005    Page 20 of 38

1                (2)      Retiree life insurance subsidy (to continue existing programs

2                      currently contained in the semi-monthly payments).

3       (g)  For October 1, 2005, to September 30, 2006, of Fiscal Year 2006, the Guam

4   Power Authority, the Guam Telephone Authority, the A.B. Won Pat International Airport

5   Authority.Guam, the Guam Economic Development and Commerce Authority, the Guam

6   Housing Corporation, the Government of Guam. Retirement Fund, the Jose D. Leon

7   Guerrero Commercial Port, the Guam Waterworks Authority and the Guam Visitors

8   Bureau shall remit to the Government of Guam Retirement Fund their respective share of

9   payments for medical, dental, and life insurance payments for their respective retirees.

10  The remittance shall be due in equal installments on or before October 10, 2005, and

11  April 1, 2006 respectively.

12      The autonomous agencies' share of payments for medical, dental, and life

13  insurance authorized herein are *ex gratia* payments and are for Fiscal Year 2006 *only*.

14  Any future medical, dental, and life insurance payments may be addressed by future

15  legislation.

16     (h)  For October 1, 2005, through September 30, 2006, of Fiscal Year 2006, the

17  sum of Ninety-two Thousand Sixty-eight Dollars ($92,068) is appropriated from the

18  General Fund to the Government of Guam Retirement Fund to defray the cost of

19  Medicare premiums for Government of Guam Retirees and their survivors who are

20  eligible to receive social security income benefits and are required under the Government

21  of Guam group health insurance program to pay such premiums to continue to participate

22  in such health insurance program failing which they are excluded therefrom (to continue

23  existing programs contained in the monthly payments).

Legislation Page 17

1        (i)  For October 1, 2005, to September 30, 2006, of Fiscal Year 2006, the sum of

2    One Hundred Five Thousand ($105,000) is appropriated from the General Fund to the

3    Government of Guam Retirement Fund for *I Maga'lahi* and *I Segundu na Maga'lahi/I*

4    *Segundu na Maga'haga* Pensions.

5        (j)  The Board of Trustees shall promulgate, continue and amend, if necessary,

6    administrative procedures to ensure the proper submission, receipt and accounting of all

7    sums remitted in conformance with Subsections (e) and (g) of this Section.

8    **Section 9.  Survivor Supplemental Annuity Additions.**  Subsection (d) of Item

9    (6) of 4 GCA §8135 is hereby amended to read:

10        "(6)  the prospective payment of supplemental benefits for the period

11    [~~October 1, 2004, through September 30, 2005,~~] October 1, 2005, through

12    September 30, 2006, for survivors of those employees who retired prior to

13    October 1, 1995, to be paid in the following manner;"

14    **Section 10.  Disability Supplemental Annuity Additions.**  Subsection (g) of 4

15    GCA §8129 is hereby amended to read as follows:

16        "(g)  Any disability retirement annuitant who commenced receiving a

17    disability retirement annuity prior to October 1, 1995, and who is entitled to

18    disability retirement benefits under this Chapter shall receive, during the period

19    commencing on [~~October 1, 2004, and ending on September 30, 2005,~~] October 1,

20    2005, and ending on September 30, 2006, prospective non-cumulative

21    supplemental annuity benefits as follows:"

22    **Section 11.  Retirees Supplemental Annuity Additions.**  Item (6) of 4 GCA

23    §8122 (d) is hereby amended to read as follows:

Case 1:04-cv-00006    Document 162-2    Filed 02/16/2005    Page 22 of 38

1    "(6)  Any retirement annuitant who commenced receiving a retirement

2    annuity prior to October 1, 1995, and who is entitled to retirement benefits under

3    this Chapter shall receive, during the period commencing on [October 1, 2004,

4    and ending on September 30, 2005,] October 1, 2005, and ending on September

5    30, 2006, prospective, non-cumulative supplemental annuity benefits as follows:"

6    **Section 12. Medically Indigent Program (MIP) and Medicaid Program**

7    **Appropriation.** The sum of Nineteen Million Eight Hundred Twenty-two Thousand

8    Five Hundred Ninety-seven Dollars ($19,822,597) is appropriated from the General Fund

9    to the Medically Indigent Program Payment Revolving Fund ("MIPPR") for the

10   Medically Indigent Program ("MIP") and Medicaid Program for Fiscal Year 2006.

11   **Section 13.  Appropriation for Office Space Rental for Government of**

12   **Guam Departments and Agencies that Relocated from *Tiyan* and *Civil Service***

13   ***Commission.*** The sum of Two Hundred Ninety Eight Thousand One Hundred Six

14   Dollars ($298,106) is appropriated from the General Fund to the Department of

15   Administration for the cost of office space rental of government of Guam departments

16   and agencies, excluding autonomous agencies, that relocated their offices from Tiyan and

17   *Civil Service Commission.* The sums provided herein shall be for Fiscal Year 2006.

18   **Section 14.  Appropriation for Office Space Rental for Government of**

19   **Guam Departments and Agencies that Relocated from *Tiyan.*** The sum of Two

20   Hundred Fifty Thousand Dollars ($250,000) is appropriated from the Safe Homes, Safe

21   Streets Fund to the Department of Administration for the cost of office space rental for

22   the Department of Integrated Services for Individuals with Disabilities, the Guam Fire

1    Department and the Department of Corrections that relocated their offices from Tiyan.

2    The sums provided herein shall be for Fiscal Year 2006.

3        Section 15.    Appropriation for the Government of Guam Annual Single

4    Audit.    The sum of Three Hundred Twenty-seven Thousand Dollars ($327,000) is

5    appropriated from the General Fund to the Department of Administration for the

6    Government of Guam Fiscal Year 2005 Annual Single Audit.

7        Section 16.    Catastrophic Illness Program Appropriation.    The sum of One

8    Hundred Thousand Dollars ($100,000) is appropriated from the General Fund to the

9    Department of Public Health and Social Services for the sole purpose of funding the

10   Catastrophic Illness Program for Fiscal Year 2006.

# CHAPTER IV

## MISCELLANEOUS PROVISIONS

**Section 1. Transfer of Employees.** Notwithstanding any other provision of law, and in recognition of the shortages of personnel in certain areas of the government, *I Maga'lahen Guåhan* is authorized to transfer employees within or between any department or agency of the Government of Guam, *except* that:

1. The provisions of this Section shall not apply to any employee of the Legislative or Judicial Branches of government, personnel within the Department of Education, and personnel within the University of Guam and Guam Community College;

2. The transfer of any employee shall not result in a loss of pay or salary;

3. The transfer of any employee shall not occur if the employee has filed a legitimate grievance with the Civil Service Commission for discrimination based on political affiliation, gender, or sexual harassment, unless the said transfer is agreed to by the employee;

4. The provisions of this Section shall not provide for the transfer of autonomous agency employees into line departments or agencies;

5. The transfer of any employee pursuant to this Section shall be accompanied with the authorized funding for the transferred employee's position by the department or agency from which the employee is being transferred, unless the employee is transferred to an autonomous department or agency;

6. The employee shall be provided written notice thirty (30) days prior to the beginning of the pay period in which the employee is to be transferred, unless the notice period is voluntarily waived by the employee; and

Case 1:04-cv-00006    Document 162-2    Filed 02/16/2005    Page 25 of 38

1         7. This Section shall not be used to transfer employees acting in the best interest

2 of the government in reporting or exposing bad business practices, illegal activities, or

3 unofficial conduct by public officials.

4         **Section 2. Preferred Hiring of Government Employees in Autonomous**

5 **Agencies.** Notwithstanding any other provision of law, rule or regulation, employees of

6 the line departments and agencies of the government of Guam shall have the right of first

7 refusal for classified positions being recruited in all autonomous agencies, departments,

8 and instrumentalities, except those positions being recruited "in-house" within such

9 agency. Such recruitment shall be conducted in a competitive process consistent with the

10 merit system of the government of Guam. The Department of Administration is hereby

11 directed and authorized to develop a rating system for use by the autonomous agencies,

12 departments, and instrumentalities in the filling of such positions. This Section shall be

13 interpreted to mean that employees of the line departments and agencies are preferred for

14 employment. In cases where the autonomous agencies, departments, and

15 instrumentalities opine that there are no qualified applicants found from the line

16 departments and agencies, the Civil Service Commission shall review the applications

17 and render its opinion as to the qualification of the applicants. Should the Civil Service

18 Commission agree with the autonomous agencies, departments or instrumentalities that

19 no qualified applicant exists in the line departments, or agencies, then the Civil Service

20 Commission shall certify that the applicants were not qualified and that the need to

21 recruit form outside government sources exists. The autonomous agencies, departments,

22 or instrumentalities may then commence general recruitment activities.

Case 1:04-cv-00006     Document 162-2     Filed 02/16/2005     Page 26 of 38

1         **Section 3. Retirement Option for Government of Guam Employees Upon the**

2     **Complete Remittance of Individual Retirement Fund Contributions.** Any and all

3     active members of the Government of Guam Retirement Fund who meet the minimum

4     eligibility requirements for retirement shall be granted the opportunity to retire upon the

5     complete remittance of his or her outstanding individual retirement fund contributions.

6     Such contributions shall include the employee and employer retirement fund

7     contributions. Any and all fees, interest at actuarial rate, and penalties associated with

8     the requirements set forth by the Government of Guam Retirement Fund shall be paid by

9     the Government.

10        The provisions set forth herein *shall in no way* be interpreted by any government

11     of Guam entity or administrator as an allowance to restrict the continual remittance of

12     existing retirement fund contributions as required by law, or set forth by the Government

13     of Guam Retirement Fund.

14        By the fifteenth (15th) day of each month, *I Maga'lahen Guåhan* shall provide a

15     detailed report to *I Liheslaturan Guåhan* on the remittances and number of retirements

16     for the prior month pursuant to this Section.

17        **Section 4. Subparagraph (h) of Section 2, of Public Law 26-121 is hereby**

18     **repealed and reenacted to read as follows:**

19          "(h) the jurisdiction of the Commission shall not extend to academic

20        personnel of the Guam Community College, University of Guam, Guam

21        International Airport Authority, Guam Memorial Hospital Authority, Guam

22        Economic Development and Commerce Authority and Port Authority of Guam

23        except upon mutual consent by the governing board of the respective institution

Case 1:04-cv-00006    Document 162-2    Filed 02/16/2005    Page 27 of 38

1    and the Commission, nor to any position or person, appeal or proceeding of
2    whatever kind or description if the position is denominated "unclassified" in this
3    Title, except to the extent explicitly permitted in this Section, nor shall such
4    jurisdiction extend to the determination of whatever it is practicable to place a
5    position in the classified service."

1
2

3    **Section 1.   Personnel Services Carryover.**   All unexpended and/or

4    unencumbered balances of Personnel Services appropriations contained in this Act shall

5    continue to be available for expenditure throughout Fiscal Year 2006 ending September

6    30, 2006.

7    **Section 2.   Appropriations from the Guam Contractor License Board**

8    **Fund and Professional Engineers, Architects and Land Surveyors Board Fund to**

9    **revert to the General Fund for Fiscal Year 2006.**   At the end of Fiscal Year 2006, any

10   unexpended or unencumbered appropriation balances from the Guam Contractors

11   License Board ("GCLB") Fund and the Professional Engineers, Architects and Land

12   Surveyors ("PEALS") Board Fund shall revert to the General Fund.

13   **Section 3.   Reversion to the General Fund and Tourist Attraction Fund,**

14   **Healthy Futures Fund, and Safe Homes, Safe Streets Fund.**   Notwithstanding any

15   other provision of law, *unless* otherwise specified in this Act or subsequent legislation:

16   **(a)  General Fund Reversion.**   All unexpended or unencumbered appropriations

17   made from the General Fund pursuant to this Act, *unless* otherwise provided for in Fiscal

18   Year 2006, shall *revert* to the General Fund on the last day of that fiscal year;

19   **(b)  Tourist Attraction Fund Reversion.**   All unexpended or unencumbered

20   appropriations made from the Tourist Attraction Fund pursuant to this Act, unless

21   otherwise provided for in Fiscal Year 2006, shall revert to the Tourist Attraction Fund on

22   the last day of that fiscal year;

Case 1:04-cv-00006     Document 162-2     Filed 02/16/2005     Page 29 of 38

1    (c) **Healthy Futures Fund Reversion.** All unexpended or unencumbered

2    appropriations made from the Healthy Futures Fund pursuant to this Act, unless

3    otherwise provided for in Fiscal Year 2006, shall revert to the Healthy Futures Fund on

4    the last day of that fiscal year;

5    (d) **Safe Homes, Safe Streets Fund Reversion.** All unexpended or

6    unencumbered appropriations made from the Safe Homes, Safe Streets Fund pursuant to

7    this Act, unless otherwise provided for in Fiscal Year 2006, shall revert to the Safe

8    Homes, Safe Streets Fund on the last day of that fiscal year.

9    **Section 4. Carryover of Local and Federal Matching Program Funds for**

10   **grants.** The Local and Federal Matching Funds for programs whose expiration dates

11   extend *beyond* September 30, 2006, are hereby authorized to be carried over and

12   expended through the period of the grant award.

13   **Section 5. Federal Reimbursements into the General Fund.** Except as

14   provided by the provisions of §5104(38) of Title 12 of the Guam Code Annotated, *if*

15   Guam expends any funds, which are reimbursed by the Federal Government, the

16   reimbursed funds shall be placed into the General Fund upon receipt.

17   **Section 6. Prior Years' Obligations.** Notwithstanding any other provision of

18   law, appropriations made in this Act may be expended for the payment of prior years'

19   obligations, provided that *I Maga'lahen Guåhan,* shall deliver notice of each proposed

20   expenditure to the Speaker of *I Liheslaturan Guåhan,* and such expenditure shall *not* be

21   effectuated until ten (10) days has lapsed after delivery of such notice.

Case 1:04-cv-00006    Document 162-2    Filed 02/16/2005    Page 30 of 38

1        **Section 7. Authorization for Matching Requirements for Federal Grants-**

2 **In-Aid.** Notwithstanding any other provision of law, departments are authorized to

3 expend funds appropriated in this Act for matching requirements of Federal grants.

4        **Section 8. Maga'lahen Guåhan Transfer Authority.** *I Maga'lahen Guåhan*

5 is hereby authorized to transfer within an agency or between agencies, within the

6 Executive Branch. This transfer authority shall not be applicable to funds allocated to the

7 Unified Judiciary, *I Liheslaturan Guåhan,* the Office of the Attorney General, the Office

8 of the Public Auditor and the Mayors Council.

9        *I Maga'lahen Guåhan* shall report to *I Liheslaturan Guåhan,* at the end of each

10 month all transfers pursuant to this Section.

11        **Section 9. Special Fund Transfer.** Notwithstanding any other provision of

12 law, *I Maga'lahen Guåhan,* is authorized to transfer to the General Fund from any

13 Special Fund, Trust Fund and Revolving Fund to supplement the cash obligations of the

14 General Fund.

15        **Section 10. Authorization to expend Indirect Cost Fees collected for Fiscal**

16 **Year 2006.** The Bureau of Budget and Management Research develops the annual

17 central cost allocation plan and indirect cost rate proposal for the collection of the

18 government of Guam's share of indirect costs associated with administration of Federal

19 grants and contracts.

20        Notwithstanding any other provision of law, the Bureau of Budget and

21 Management Research ("BBMR") is allocated Two Percent (2%) of total indirect cost

22 fees collected for Fiscal Year 2006. BBMR is authorized to expend fees for costs related

23 to negotiating and administering the government of Guam's indirect cost rate.

Case 1:04-cv-00006     Document 162-2     Filed 02/16/2005     Page 31 of 38

1    **Section 11. Executive Branch Lapsed Funds Carryover.** *I Maga'lahen*
2    *Guåhan* is hereby authorized to use Fiscal Year 2005 lapsed funds in Fiscal Year 2006
3    for general governmental operations and deficit reduction to include supplementing
4    amounts required for tax refunds and Earned Income Tax Credits.

5    **Section 12. Severability.** *If* any provision of this Act or its application to any
6    person or circumstances is held invalid, the invalidity shall *not* affect other provisions or
7    applications of this Act which can be given effect without the invalid provision or
8    application, and to this end the provisions of this Act are severable.

# EXHIBIT C



GOVERNMENT OF GUAM
OFFICE OF THE GOVERNOR
AGANA, GUAM

EXECUTIVE ORDER NO. 87-2

WHEREAS, bringing fiscal integrity and stability to the Government of Guam is the most important task facing the Territory; and

WHEREAS, the deficit of the government hurts each and everyone living on Guam today; and

WHEREAS, the deficit has made it increasingly difficult for this government to meet its current obligations and provide the level of quality service deserved by the people of this Territory; and

WHEREAS, immediate actions are required to stabilize the government's precarious financial situation; and

WHEREAS, it is essential that cost-containment measures be implemented by all executive agencies; and

WHEREAS, it is vital that all executive agencies exercise budget discipline;

NOW, THEREFORE, I, JOSEPH F. ADA, by virtue of the authority vested in me as Governor of Guam, do hereby order:

    1.  Executive Order 84-13 amending Executive Orders 83-7 and 84-4 is rescinded;

    2.  As used in this Executive Order "executive agency" includes but is not limited to any office, department, institution, board, bureau, commission, council, authority, committee of territorial government, branch and the Guam Visitors' Bureau;

    3.  All executive agencies shall comply with the following:

I.   PERSONNEL ACTIONS:

    A.  Filling Vacancies:  All executive agencies desiring to fill a vacant position or create a new position shall submit a recruitment request to the Bureau of Budget and Management Research for approval to ensure that only positions essential to public health, safety and welfare or vital to government

operations are filled. Any action taken in violation of this Executive Order shall be null and void. Approval of filling any vacancy or a new position may be granted if:

(1) the position is critical to the agency's operation and failure to fill such a position will result in the program or agency's inability to fulfill major agency objectives; or

(2) the position is vital for the provision of essential government functions directly related to public health, safety or welfare; or

(3) the position is fully funded by the federal government and approved in the grant application as evidenced in writing by the appropriate federal official; or

(4) the position is essential to the collection of revenue; or

(5) the position is mandated by local or federal law or a contract.

B. Promotions: Any promotion or position upgrading by any executive agency may be approved by the Bureau of Budget and Management Research only if the guidelines established in Paragraph A are met.

II. TRAVEL REQUESTS:

All off-island travel shall be subject to the Bureau of Budget and Management Research's final approval. All air travel taken by government employees, officers and officials shall be at the lowest fare possible. Except for unusual circumstances no more than one traveler shall attend the same seminar or training session. All travel requests shall be submitted to the Bureau of Budget and Management Research for review at least fifteen (15) working days prior to the commencement date of travel. The guidelines for approving travel shall be:

A. The travel is essential to the conduct of pending important government business. (This includes accompanying patients or inmates to off-island institutions); or

B. The travel may result in securing additional revenues to the Territory, achieve current or future cost-savings for

government operations, programs or relate to the agency's priority work program activities; or

    C.   The travel is required per existing contracts, public law or rule; or

    D.   The travel is paid from a federal grant;

III. OVERTIME AND NIGHT DIFFERENTIAL PAY:

All executive agencies shall minimize the scheduling of employees which may result in accrual of overtime or night differential payment. Payment for overtime or night differential shall be made only if claims are documented and presented within two (2) weeks of work. Each executive agency shall adopt an overtime plan for approval of Bureau of Budget and Management Research. Overtime should be a management tool of last resort.

IV. CONTRACTS:

All contracts proposed by any executive agency shall be approved by the Bureau of Budget and Management Research. Each agency must certify that all laws and regulations governing a contract be complied with. After approval, such contract shall be submitted to the Attorney General. All contracts shall be submitted to the Bureau at least thirty (30) days prior to their effective date.

    A.   Office Space: All proposed contracts or renewals for office space shall be approved only if:

        1.   adequate space is not available in any public building; and

        2.   the space requested is the minimum space required; and

        3.   the lowest responsible bidder has been selected; and

        4.   funding is available for the entire length of the contract;

    B.   Procurement: All executive agencies shall submit each procurement contract for approval by the Bureau of Budget and Management Research. Such contracts shall be accompanied by:

        1.   a copy of the bid specifications; and

2. a copy of the prior year's agreement, if a renewal; and

3. evidence of funding to meet the obligations; and

4. justification showing that procurement from the supplier is the most cost-effective means.

C. Off-Island Recruitment and Consultant Contracts: All off-island recruitment and consultant contracts shall be approved by the Bureau of Budget and Management Research. Such contracts shall comply with laws and regulations. The agency shall submit proof that the funding for the contract is available throughout the entire contract period.

D. Services and All Others: Executive agencies seeking contractual arrangements shall submit proposals to the Bureau of Budget and Management Research for approval. The proposals shall indicate:

1. the agency's inability to perform the services sought in-house; and

2. a cost-savings assessment; and

3. that funding is available for the entire contractual period.

V. AUTHORIZATION TO RELEASE CERTAIN FUNDS.

The Director of the Bureau of Budget and Management Research is authorized to release appropriated funds to entities other than those covered within the definition of "executive agency" above, only upon compliance with the requirements set out in this executive order.

VI. MONITORING FOR NON-GENERAL FUND ENTITIES.

All executive agencies operating without appropriation from the General Fund shall submit quarterly cash flow statements, financial statements and staffing patterns to the Bureau of Budget and Management Research. Agencies shall also submit copies of their current fiscal year budgets to the Bureau upon approval by their respective boards or commissions.

- 4 -

Signed and promulgated at Agana, Guam this 8th day of January, 1987.

JOSEPH F. ADA
Governor of Guam

COUNTERSIGNED:

FRANK F. BLAS
Lieutenant Governor of Guam

# EXHIBIT D



TERRITORY OF GUAM
OFFICE OF THE GOVERNOR
AGAÑA, GUAM 96910
U.S.A.

EXECUTIVE ORDER NO. 95-01

CASH MANAGEMENT DIRECTIVE FOR
REMAINDER OF FISCAL YEAR 1995

WHEREAS, the estimated revenues of the General Fund of the government of Guam have fallen from Fiscal Year 1992 to Fiscal Year 1995; and

WHEREAS, although the government's actual cash receipts increased in Fiscal Year 1993 over 1992, they have since declined significantly between 1993 and 1994; additionally, despite the best efforts of the present method of estimating revenues, actual cash receipts have fallen below estimated revenues, but not appropriation levels, for Fiscal Years 1993 and 1994; and

WHEREAS, for Fiscal Years 1992, 1993, 1994, and 1995, the estimated revenues contained in the respective General Appropriation Acts, and the Department of Administration's records of actual cash receipts for the same Fiscal Years, are as follows:

| FISCAL YEAR | ESTIMATED REVENUES | ACTUAL CASH RECEIPTS |
|---|---|---|
| 1992 | $ 652,816,440 | $ 556,507,708 |
| 1993 | $ 635,347,901 | $ 561,488,069 |
| 1994 | $ 576,000,000 | $ 501,465,200 |
| 1995 | $ 540,164,800 | only two month's data available |

WHEREAS, the government has authorized allotments to spend in excess of the estimated revenues and in excess of the actual cash receipts for the past several fiscal years; and



WHEREAS, the deficit-spending mode that has become prevalent has made it increasingly difficult for the government to meet its current obligations and provide the level of quality service expected and deserved by our people; and

WHEREAS, immediate action is required in order to put Guam's economic house in order so that the territory can continue to prosper and all of our people can benefit;

NOW, THEREFORE, I, CARL T. C. GUTIERREZ, by virtue of the authority vested in me as Governor of Guam, do hereby order:

1. EXPENDITURE OF FUNDS IN COMPLIANCE WITH THIS EXECUTIVE ORDER: For territorial agencies, all personnel actions, travel authorizations, authorization of overtime and night differential pay, signing and execution of contracts shall be made as specified herein. All expenditures of money from funds other than the General Fund, and monitoring of agencies not receiving money from the General Fund, shall also be made as specified herein. These actions shall be taken in order to ensure the availability of cash for general operations throughout the government;

2. DEFINITION OF TERRITORIAL AGENCY: As used in this Executive Order, "territorial agency" includes, but is not limited to, any office, department, institution, board, bureau, commission, council, authority, or committee of territorial government, the Guam Memorial Hospital Authority, Guam Mass Transit Authority, and the Guam Visitors Bureau, all of which receive full funding, or full or partial subsidies, from the General Fund. For purposes of this Executive Order, territorial agency does not include the Superior Court of Guam, the Public Defender Service Corporation, or the University of Guam;



3. **CONTROL OF EXPENDITURE OF FUNDS:** All territorial agencies shall comply with the following:

    I. **PERSONNEL ACTIONS:**

    A. **Vacancies:** All territorial agencies desiring to fill a vacant position or have a new position created shall submit a request to the Bureau of Budget and Management Research (hereinafter "BBMR") for approval. This approval shall ensure compliance with law and shall ensure that positions essential to public health, safety, welfare, or vital to government operations are filled. BBMR shall inform the Governor immediately of each request. Additionally, no BBMR allotments shall be made in excess of cash receipts, so that the obligations incurred pursuant to release of allotments shall have sufficient cash for their payment. Any action taken in violation of this Executive Order shall be null and void. Approval of filling any vacancy or new position may be granted if:

    (1) the position is critical to the agency's operation and failure to fill such a position will result in the program or agency's inability to fulfill major agency objectives; or

    (2) the position is vital for the provision of essential government functions directly related to public health, safety, or welfare; or

    (3) the position is fully funded by the federal government and approved in the grant application as evidenced in writing by the appropriate federal official; or



(4)   the position is essential to the collection of revenue; or

(5)   the position is mandated by local or federal law or an existing contract.

B.   **Promotions:** Any promotion, or position upgrading, by any territorial agency may be approved by BBMR only if the guidelines established in Paragraph A are met. BBMR shall inform the Governor immediately of each request for promotion or position upgrading.

II.   **TRAVEL REQUESTS:** All off-island travel shall be subject to BBMR's final approval. BBMR shall inform the Governor immediately of each request for travel. All air travel taken by government employees, officers, and officials shall be at the lowest fare possible. Except for unusual circumstances, no more than one (1) traveler shall attend the same seminar or training session. All travel requests shall be submitted to BBMR for review at least fifteen (15) working days prior to the commencement date of travel. The travel may be approved if:

A.   The travel is essential to the conduct of pending important government business. This includes accompanying patients or inmates to off-island institutions; or

B.   The travel may result in securing additional revenues to the territory, achieve current or future cost-savings or government operations, programs or relate to the agency's priority work program activities; or

C.   The travel is required per existing contracts, public law or rule; or

D.   The travel is paid from a federal grant;



III. **OVERTIME AND NIGHT DIFFERENTIAL PAY:** All territorial agencies shall minimize the scheduling of employees which may result in accrual of overtime or night differential payment. Payment for overtime or night differential shall be made only if claims are documented and presented within two (2) weeks of work. Each territorial agency shall adopt an overtime plan for approval by BBMR. Overtime shall be a management tool of last resort.

IV. **CONTRACTS:**

    A. **Contracts - General:** All contracts specified herein and proposed by any territorial agency shall be approved by BBMR. BBMR shall inform the Governor immediately of each such proposed contract. Each agency must certify that all laws and regulations governing a contract be complied with. After approval, the contract shall be submitted to the Attorney General. All contracts shall be submitted to BBMR at least thirty (30) days prior to their effective date.

    B. **Office Space:** All proposed contracts or renewals for office space shall be approved only if:

        1. adequate space is not available in any public building; and

        2. the space requested is the minimum space required; and

        3. the lowest responsible bidder has been selected; and

        4. funding is available or will be available for the entire length of the contract;

    C. **Procurement:** All contracts shall be accompanied by the following before approval:



1.  a copy of the specifications in the request for proposal (RFP) as well as the submitted proposal; and

2.  a copy of the previous contract, if a renewal; and

3.  evidence of funding to meet the obligations; and

4.  justification showing that procurement from the supplier is the most cost-effective means.

D.  **Off-Island Recruitment and Consultant Contracts:**

All off-island recruitment and consultant contracts shall be approved by BBMR. The territorial agency shall indicate that the proposed contract complies with all applicable laws and regulations. The territorial agency shall submit proof that the funding for the contract is available throughout the entire contract period.

E.  **Services and All Other:** Executive agencies seeking contractual arrangements shall submit proposals to BBMR for approval. The proposals shall indicate:

1.  the agency's inability to perform the services in-house; and

2.  a cost savings assessment; and

3.  that funding is available for the entire contractual period.

V.  **AUTHORIZATION TO RELEASE MONEY FROM FUNDS OTHER THAN GENERAL FUND:** The Director of BBMR is authorized to release money from funds other than the General Fund only upon compliance with the requirements set out in this executive order.



VI. **MONITORING OF AGENCIES WHICH DO NOT RECEIVE APPROPRIATIONS FROM THE GENERAL FUND:** All agencies which are not within the definition of "territorial agencies", and which are operating without appropriation from the General Fund, shall submit quarterly cash flow statements, financial statements, and staffing patterns to BBMR. Agencies shall also submit copies of their current fiscal year budgets to BBMR upon approval by their respective boards and commissions. In order to fulfill the obligation of these agencies to also provide the level of quality service expected and deserved by our people, these agencies should also submit to BBMR all requests to fill vacancies, for promotions, for travel, for overtime and night differential pay, and for contracts.

SIGNED AND PROMULGATED at Agana, Guam this 3rd day of January, 1995.

_____
CARL T. C. GUTIERREZ
Governor of Guam

COUNTERSIGNED:

_____
MADELEINE Z. BORDALLO
Lieutenant Governor of Guam

# EXHIBIT E

[ Print this story ]

# Federal judge signs off on EITC settlement

**by Ken Wetmore, KUAM News**
**Thursday, June 17, 2004**

Guam Federal District Court Magistrate Judge Joaquin Manibusan has signed off on a settlement in the Earned Income Tax Credit case. Guam Attorney General Douglas Moylan said he and Attorney Mike Phillips, who represents the plaintiffs in the EITC class action lawsuit, met with Judge Manibusan for about twenty-four minutes this morning.

The AG says he is very happy the judge saw fit to sign off on the settlement. "I think it's a big win for Guam both the government and the EIC recipients and its also showing good government practice that we're meeting our obligations," expressed Moylan. "It's going to be difficult - it's going to require a bit of sacrificing and discipline, but this is the way the government is supposed to operate."

Under the terms of the settlement, the Government of Guam will pay out $60 million over nine years to taxpayers who were eligible for the Earned Income Tax Credit in the years 1996, 1998, 1999, 2000, 2001, 2002 and 2003. Within ninety days of the settlement taking effect, GovGuam must deposit $3 million into an account to start paying out the past due EITC. Within the next twelve months another $17 million must be deposited into the account and for the eight years thereafter the Government of Guam must place $5 million in the account.

According to the settlement, the one taxpayer who received the full EITC for 1998 will have the amount prorated against the other years that are owed him. Attorney Phillips will be receiving a percentage of the settlement for his work. According to Phillips, the Ninth Circuit Court of Appeals has set the benchmark or standard percentage in class action suits at 25%. The attorney says Judge Manibusan suggested his percentage be 15%, but says he is only asking for 10%, which translates to $6 million of the $60 million settlement.

AG Moylan today said there are still a number of administrative hurdles that have to be satisfied before the settlement is finalized. Moylan said a notice to the public must be put out that the class must be certified and that the Department of Revenue and Taxation has a number of administrative logistics to take care of. The AG also noted anyone who objects to settlement also has the opportunity to file papers with the District Court.

Attorney General Moylan has the settlement does not mean his office will stop investigating the payout of the 1998 Earned Income Tax Credit to a single tax payer in march. Governor's chief of staff Tony Sanchez has said he authorized the payment for hardship reasons. While the AG may still be investigating, Governor Camacho today made he clear he feels the matter is resolved, after KUAM News tried to find out what the Governor's involvement in the payout may have been.

Governor Camacho said that he had since been made aware of the fact that



Sanchez authorized the EITC payment to a single resident. When asked if he was aware of it at the time, the Governor responded by saying, "Its not an issue anymore. The issue has been brought to court, there has been settlement. I'm not going to get into the game of laying blame and who's at fault, we're beyond that and I will not comment on this any further."

Copyright © 2000-2005 by Pacific Telestations, Inc.

Print this story

# EXHIBIT F



# GOVERNMENT OF GUAM
## CONSUMER COUNSEL
### OFFICE OF THE ATTORNEY GENERAL
#### HAGÅTÑA, GUAM



October 13, 2004

**MEMORANDUM**

To:        Attorney General

From:      Charles Troutman

Subject:   Santos EITC Settlement — Need for Legislative appropriation of
           "Refunds"

## CONFIDENTIAL ATTORNEY- CLIENT & WORK PRODUCT COMMUNICATION

You have asked me to advise you on certain questions raised by the Governor and other of our clients with regards to implementing the EITC settlement in the Santos case. In this memo I will examine only the question whether the Governor must seek a legislative appropriation before paying the settlement.

The EITC settlement consists of several elements to be performed by the government of Guam: (1) funding and payment of $60 million in delinquent EITC refunds to qualified taxpayers for tax years 1996 and 1998 through 2003 in accordance with the multi-year schedule established in the settlement agreement; (2) payment of $6 million in attorney fees to class counsel on a pay-as-you-go basis from the $60 million in EITC refunds to occur over the life of the settlement schedule; (3) commitment to apply, and to pay, EITC refunds to qualified taxpayers for all future tax years, commencing with 2004; and (4) payment of approximately $1 million in administrative costs by the Department of Revenue and Taxation to implement the settlement, which amount appears to be in addition to and separate from the $60 million for EITC refunds and attorneys fees.

My opinion is that the Governor does not have to seek an appropriation for items 1 and 2. On the on other hand, he must have appropriations for items 3 and 4. In reaching these conclusions, I am assuming that the EITC validly applies to Guam, a matter of doubt to some, but rendered moot by the settlement.

Any answer must stem, first, from the Organic Act of Guam. This settlement will result, *inter alia*, in a judgment for money due against the government of Guam. The Organic Act states that, in such cases:

> When any judgment against the government of Guam under this paragraph [for an unpaid income tax refund] has become final, the Governor shall order the payment of such judgment out of any unencumbered funds in the treasury of Guam. 48 U.S.C.A. §1421i(h)(3).

Courts have long held that Congress has the power to legislate directly for a territory as if Congress were a state legislature. This was recently reaffirmed by the 9 [th] Circuit in *People v. Guerrero*, 290 F.3d 1210 (2002):

> *See, e.g., First Nat'l Bank v. County of Yankton*, 101 U.S. 129, 133, 25 L.Ed. 1046 (1879) ( "[Congress] may make a void act of the territorial legislature valid, and a valid act void. In other words, it has full and complete legislative authority over the people of the Territories and all the departments of the territorial governments."); at 1221-2.

The Organic Act completely occupies the authority Guam has over the Territorial Income Tax, restricting the Legislature to those matters not covered (very few) by the Act. A good example is in Section 11 of the Organic Act where Congress has permitted the Legislature to adopt surcharge on the Territorial Income Tax of up to 10%. While Guam may adopt its own income tax structure pursuant to another federal law, it has not yet done so and, therefore, is still subject to the existing mirror-image income tax imposed by the Organic Act.

It is my opinion, that in the case of paying a <u>judgment</u> obtained against the government for the matters stated in the Organic Act, including refund of taxes (item 1 above), Congress has legislated the authority to pay notwithstanding the absence of a legislative appropriation. In fact, the language is mandatory – "the Governor shall order . . .". If he does not order the payment of a judgment for an unpaid income tax refund from any unencumbered funds, he would be subject to a writ of mandate from the District Court ordering him to do so.

2

EITC payments are treated as refunds of income tax overpayments under the U.S. Internal Revenue Code mirrored in Guam, and are subject to the same rules as ordinary income tax refunds. *Sorenson v. Secretary of the Treasury of the United States*, 475 U.S. 851, 106 S.Ct. 1600, 89 L.Ed. 2d 855 (1986); *Israel v. United States*, 356 F.3d 221 (2nd Cir. 2004). Accordingly, payment of the judgment to be entered by the District Court of Guam for unpaid EITC refunds covering tax years 1986 and 1988 through 2003 will be subject to the provisions of the Organic Act, 48 U.S.C.A. §1421i(h)(3), requiring the Governor to pay the judgment "out of any unencumbered funds in the treasury of Guam" without regard to appropriation by the Legislature.

There have been no decided cases defining the term "unencumbered funds in the treasury of Guam", although definitions of "unencumbered funds" are found in other contexts. <u>See</u> *United States v. Kim* 111 F. 3d 1351 (7th Cir. 1997)(defining "unencumbered funds" for purposes of the trust fund penalty of Section 6672 of the Internal Revenue Code). However, the common understanding of this term in Guam is that it means any funds not obligated by contract or other order, for example, wages. When it comes to judgments for delinquent income tax refunds, the Organic Act requires that payment be from any unencumbered funds within the treasury of Guam, not just from funds allocated for the purpose of tax refunds by the Legislature. Therefore, the Governor may, and indeed must, pay the judgment for refunds of the EITC from any unencumbered funds in the treasury of Guam.

Moreover, no legislative appropriation will be needed regarding payment of attorney fees to class counsel under the judgment (item 2 above). The attorneys fees to be paid to class counsel are not a separate amount awarded by the court against the government. Rather, the attorney fees are an obligation imposed on the taxpayers and will be paid by them to class counsel from their EITC refunds, which is their property. Because the Governor does not have to obtain an appropriation from the Legislature to pay the judgment for the delinquent EITC refunds covering tax years 1996 and 1998 through 2003, which is the source of the attorneys fees, he does not have to obtain an appropriation for the attorneys fees (I make no opinion as to the reasonableness of the amount of attorneys fees sought by class counsel in the settlement, which is a different issue).

On the other hand, the obligation undertaken by the government in the settlement to pay future EITC refunds on annual basis hereafter to qualified taxpayers (item 3 above), commencing with tax year 2004, is not a money judgment for refunds and, therefore, is not subject to the provisions of the Organic Act, 48 I U.S.C.A. §1421i(h)(3), requiring the

3

Governor to pay a judgment for unpaid refunds "out of any unencumbered funds in the treasury of Guam". Consequently, it is proper and necessary for the Legislature to annually appropriate funds for the payment of such refunds, which the Legislature did for fiscal years 1998 and 1999 in the Guam Earned Income Program, 11 G.C.A. §42104.

Although the U.S. Congress in 31 U.S.C. §1324 has made a continuing appropriation to the Department of Treasury to pay U.S. tax refunds, this appropriation is not mirrored in Guam. The Organic Act provides for mirroring of the Internal Revenue Code which is found in Article 26 of U.S.C., but not Title 31 of U.S.C.

The settlement also provides for a $1 million "pot" to be used as administration costs by the Department of Revenue and Taxation to implement the settlement and the payout under it (item 4 above). As these funds appear to come from the General Fund and are separate from and in addition to the $60 million EITC settlement amount, then there is an absolute requirement that the moneys be appropriated by the Legislature, since these are for the general operations of the Department of Revenue & Taxation. They would not be part of a judgment for delinquent income tax refunds. I assume that the $1 million will be payable over several years and need not be appropriated all at once.

The Governor and our other clients would not be subject to the provisions and penalties set forth in 5 G.C.A. §22401 regarding the expenditure of unappropriated funds to the extent that funds under the EITC settlement (items 1 and 2 above) are paid pursuant to the Organic Act, 48 U.S.C.A. §1421i(h)(3), requiring judgments for unpaid income tax refunds to be paid "out of any unencumbered funds in the treasury of Guam". However, the expenditure of unappropriated funds for other parts of the settlement that do not come within the scope of this Organic Act provision regarding payment of judgments for unpaid income tax refunds (items 3 and 4 above) would expose the Governor and our other clients to possible liability under 5 G.C.A. §22401.

I trust that this memorandum fully answers your questions. I would be pleased to answer any further questions you may have regarding this matter.

*Charles H. Troutman*
CHARLES H. TROUTMAN

4

# EXHIBIT G

1   **LUJAN AGUIGUI & PEREZ** LLP
    Attorneys at Law
2   Pacific News Building, Suite 300
    238 Archbishop Flores Street
3   Hagåtña, Guam 96910
    Telephone (671) 477-8064/5
4   Facsimile (671) 477-5297

5   *Attorneys for Plaintiff*
    *Charmaine R. Torres*
6

7

8                    **DISTRICT COURT OF GUAM**

9                     **TERRITORY OF GUAM**

10

11  CHARMAINE R. TORRES, on behalf of
    herself and a class of others similarly
12  situated,

13              Plaintiff,

14              -vs-

15  GOVERNMENT OF GUAM; FELIX P.
    CAMACHO, Governor of Guam;
16  ARTEMIO B. ILAGAN, Director of the
    Guam Department of Revenue and
17  Taxation; LOURDES M. PEREZ, Director
    of the Guam Department of Administration;
18  and DOUGLAS B. MOYLAN, Attorney
    General of Guam,
19
                Defendants.
20

21

22

23

24

25

26

27

28



**FILED**
DISTRICT COURT OF GUAM
AUG - 9 2004
MARY L. M. MORAN
CLERK OF COURT

CIVIL CASE NO. 04 - 00038

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND/OR FOR RECOVERY OF EARNED INCOME TAX CREDITS**

**CLASS ACTION**

1  **PLAINTIFF CHARMAINE R. TORRES** ("Plaintiff"), by and through her attorneys of

2  record, Lujan Aguigui & Perez LLP, alleges as follows:

3  ### JURISDICTION

4  1.   This Court has jurisdiction over this action pursuant to 48 U.S.C. §§ 1421i(h) &

5  1424; 28 U.S.C. §§ 1331, 1367, & 2201; and other applicable law.

6  ### THE PARTIES

7  2.   Plaintiff is a United States citizen, a resident of Guam, and a taxpayer.  Plaintiff is

8  over the age of eighteen (18) years, and is, and has been, eligible to receive the earned income tax

9  credits ("EIC") for eligible Guam taxpayers under federal law, 48 U.S.C. § 1421i (a provision of

10 the Organic Act of Guam) and Guam law, known as the Guam Earned Income Program, 11 Guam

11 Code Annotated ("GCA") § 42101 *et seq.*, since at least tax years 1995 to 2003.  Plaintiff filed

12 income tax returns with the Guam Department of Revenue & Taxation for the subject tax years.

13 3.   Defendant Government of Guam was created through the enactment of the Organic

14 Act of Guam, 48 U.S.C. § 1421 *et seq.*

15 4.   Defendant Felix P. Camacho is the Governor of Guam and in such official capacity is

16 responsible for administration and enforcement of the Guam Territorial Income Tax ("GTIT")

17 under 48 U.S.C. § 1421i.

18 5.   Defendant Artemio B. Ilagan is the Director of the Guam Department of Revenue

19 and Taxation.  Ilagan in his official capacity has overall supervision of such department, and is

20 under the general supervision of Governor Camacho.  Under Guam law Ilagan is responsible,

21 under the Governor, for the administration and enforcement of the GTIT, 11 GCA §§ 1104 &

22 1107.

23 6.   Defendant Lourdes M. Perez is the Director of the Guam Department of

24 Administration.  Perez in her official capacity has overall supervision of such department, and is

25 under the general supervision of Governor Camacho.  Under Guam law, Perez is responsible for

26 setting aside all funds reserved for income tax refunds, earned income tax credits, and child tax

27 credits from income tax receipts, 11 GCA § 50104.

28

7.     Defendant Douglas B. Moylan is the Attorney General of Guam.

### THE CLASS

8.     Plaintiff brings this complaint on her own behalf and on behalf of a class of persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

9.     The class Plaintiff represents consists of (a) all Guam taxpayers who were eligible for and entitled to be paid the EIC under the Guam Territorial Income Tax (48 U.S.C. § 1421i) and the Guam Earned Income Program (11 GCA § 42101 *et seq.*) for tax years 1995 and 1997 but who were not paid or who were partially paid such credits; (b) all Guam taxpayers who were eligible for and entitled to be paid the EIC under the Guam Territorial Income Tax (48 U.S.C. § 1421i) and the Guam Earned Income Program (11 GCA § 42101 *et seq.*) for all years in which such taxpayers were eligible for such credits by law but who were not paid such credits and who, like Plaintiff, seek to pursue a recovery of greater than 50% of the aggregate total of EIC due to them; and (c) all Guam taxpayers who were eligible for and entitled to be paid the EIC under the Guam Territorial Income Tax (48 U.S.C. § 1421i) and the Guam Earned Income Program (11 GCA § 42101 *et seq.*) and who may opt out of the proposed settlement agreement preliminarily approved by the District Court of Guam on or about June 17, 2004 in the case entitled *Julie Babauta Santos v. Felix A. Camacho et al.*, CV04-00006 (District Court of Guam), in favor of an increased amount of recovery other than what the proposed settlement agreement provides.

10.     The class Plaintiff represents is so numerous such that joinder of each member of the class is impracticable.

11.     There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members.

12.     The claims of Plaintiff are typical of the claims of the class members.

13.     Plaintiff can fairly and adequately protect the interests of the class.

14.     Plaintiff and the class are represented by able and well-qualified counsel.

Charmaine R. Torres v. Government of Guam et al.
Complaint

15. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Furthermore, adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

## STATEMENT OF CLAIMS

16. In 1950, Congress declared Guam to be an unincorporated territory of the United States through the Organic Act of Guam, codified at 48 U.S.C. § 1421 *et seq.* The Organic Act established the framework for Guam's local government and, in addition, specifically provided for an income taxation scheme for the island mirroring certain provisions of the federal income tax laws then in effect and "those which may hereafter be enacted," 48 U.S.C. § 1421i(a). Congress designated this tax as the "Guam Territorial Income Tax" ("GTIT"), 48 U.S.C. § 1421i(b), which Guam residents pay to the Government of Guam and not the federal government.

17. Under the Organic Act, the administration and enforcement of the GTIT is performed by or under the supervision of the Governor of Guam, 48 U.S.C. § 1421i(c).

18. Among the provisions of the federal income tax laws that Congress made applicable to Guam through the GTIT is the federal earned income tax credit provision ("federal EIC"), 26 U.S.C. § 32, contained in Subtitle A of the Internal Revenue Code ("IRC"). This provision became effective in tax year 1975.

19. Congress provided through the Organic Act that provisions of the IRC that are manifestly inapplicable or incompatible with the intent of the income tax provision of 48 U.S.C.

Page 3 of 6
Charfauros v. Government of Guam et al.
Complaint
Case 1:04-cv-00006 Document 32-3 Filed 02/16/2005 Page 21 of 48

1    § 1421i shall not apply to Guam. The federal EIC provision is not manifestly inapplicable or

2    incompatible with the intent of § 1421i. The federal EIC provision was enacted by Congress to

3    provide an incentive to individuals with modest means to engage in income-earning activities.

4         20.    In or about 1989, the government of Guam questioned the applicability of the

5    federal EIC to Guam taxpayers.

6         21.    On or about January 4, 1996, the Attorney General of Guam issued an opinion

7    stating that the EIC does not apply to Guam and that the Guam Department of Revenue &

8    Taxation should not administer the EIC. Upon information and belief the opinion of the Attorney

9    General has not be rescinded.

10        22.    The Guam Legislature subsequently enacted local statutes to implement the federal

11    EIC through establishment of the Guam Earned Income Program.

12        23.    11 GCA § 42103 requires that the Guam Earned Income Program be established

13    using the same income levels as are used in the federal EIC provision "to compute a subsidy

14    which will be paid to residents of Guam who file Income Tax Returns to the Department of

15    Revenue and Taxation."

16        24.    11 GCA § 50103 requires Defendant Illagan, in consultation with Defendant Perez

17    and the Director of the Bureau of Budget and Management Research, to establish a formula for

18    reserving income tax receipts to pay income tax refunds, earned income tax credits and child tax

19    credits.

20        25.    11 GCA § 50104 requires Defendant Perez to set aside all money reserved for

21    income tax refunds, earned income tax credits and child tax credits from income tax receipts.

22        26.    The Guam Supreme Court has held that eligible Guam taxpayers are entitled to the

23    EIC and that the EIC must be applied in a mirrored fashion to Guam. The Supreme Court further

24    held that the Governor is required to enforce and administer the EIC. *In Re Request of I Mina'*

25    *Bente Sing'ko Na Liheslaturan Guahan Relative to the Application of the Earned Income Tax*

26    *Credit Program to Guam Taxpayers ("The EIC question"),* 2001 Guam 3.

27

28

27.     Despite the foregoing statutory and judicial mandates to implement and enforce the EIC, Defendants have nonetheless systematically refused requests by eligible Guam taxpayers for earned income tax credits, denied the ability of eligible taxpayers to claim the EIC, failed to establish systemwide mechanisms to implement the EIC, and have denied and continue to deny Guam taxpayers, including Plaintiff and the class Plaintiff represents, the full benefits of the EIC, all in violation of the entitlements guaranteed to eligible Guam taxpayers under the Organic Act of Guam and the Guam Earned Income Program.

28.     More specifically, upon information and belief, the Government of Guam (acting by and through Defendants and their predecessors) denied the ability of eligible Guam taxpayers to claim entitlement to the EIC since at least tax year 1995.    Upon information and belief, the Government of Guam allowed eligible Guam taxpayers to claim the EIC for tax years 1997 and 1998, but only paid the EIC for tax year 1997. Even then, EIC claims for tax year 1997 were not paid to all eligible Guam taxpayers who had filed claims.

29.     Plaintiff and the class Plaintiff represents have suffered and will continue to suffer economic hardship from Defendants' refusal to enforce and implement the EIC as required by the Organic Act and the Guam Earned Income Program and from the delay in implementing and enforcing the EIC at the administrative level.

30.     Plaintiff has incurred, and will continue to incur, expenses for costs and attorneys' fees necessary for the investigation, institution, and prosecution of this action.  Such fees and expenditures will result in benefits to all members of the class Plaintiff represents.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, prays that Defendants be served with copies of this complaint and be directed to appear and answer it according to law; and that this Honorable Court:

1.     Advance this case on the docket and cause this case to be in every way expedited;

2.     Certify this as a class action pursuant to the Federal Rules of Civil Procedure;

Charmaine R. Torres v. Government of Guam     Case 1:04-cv-00049     Document 162-3     Filed 02/16/2005     Page 23 of 48
Complaint

3.     Issue a declaratory judgment that the Defendants' acts, policies, practices, and procedures complained of herein violate the rights of Plaintiff and the class Plaintiff represents to be entitled to the EIC under the Organic Act of Guam and the Guam Earned Income Program;

4.     Issue a declaratory judgment that the Plaintiff and the class Plaintiff represents are entitled to the receive the EIC under the Organic Act of Guam and/or the Guam Earned Income Program for all years in which such credits were not paid as required by law, together with interest and other amounts allowed by law;

5.     Issue preliminary and permanent injunctions compelling Defendants to implement and enforce the EIC to the full extent required by the Organic Act of Guam and the Guam Earned Income Program, and to rescind, modify, and/or amend any and all rulings, opinions, determinations, orders, or circulars that have the effect of denying entitlement of eligible Guam taxpayers to the EIC;

6.     In addition or in the alternative to declaratory and injunctive relief, award Plaintiff and the class Plaintiff represents all unpaid EIC for all years in which such credits were not paid as required by law, with interest;

7.     Award Plaintiff and the class Plaintiff represents costs and attorney's fees in an amount the Court deems to be just and appropriate;

8.     Retain jurisdiction over this action to assure full compliance with the Orders of this Court and with applicable law and require Defendants to file such reports as the Court deems necessary to evaluate such compliance;

9.     Grant such additional and further relief as this Court deems proper and just.

Respectfully submitted this 9th day of August, 2004.

**LUJAN, AGUIGUI & PEREZ LLP**

By: _____
    **IGNACIO C. AGUIGUI, ESQ.**

*Attorneys for Plaintiff Charmaine R. Torres*

---

Page 6 of 6
Charmaine R. Torres v. Government of Guam, et al.
Complaint
1:04-cv-00006   Document 162-3   Filed 02/16/2005   Page 24 of 48

# EXHIBIT H

FILED
DISTRICT COURT OF GUAM

OCT 2 8 2004

MARY L. M. MORAN
CLERK OF COURT

1  **SHANNON TAITANO, ESQ.**
   **OFFICE OF THE GOVERNOR OF GUAM**
2  Ricardo J. Bordallo Governor's Complex
   Adelup, Guam 96910
3  Telephone:   (671) 472-8931
4  Facsimile:   (671) 477-4826

5  **RODNEY J. JACOB, ESQ.**
   **DANIEL M. BENJAMIN, ESQ.**
6  **CALVO AND CLARK, LLP**
7  Attorneys at Law
   655 South Marine Drive, Suite 202
8  Tamuning, Guam 96913
   Telephone:   (671) 646-9355
9  Facsimile:   (671) 646-9403

OFFICE OF THE
GOVERNOR

10/28/04   2:36pm
DATE
LEGAL OFFICE

10  Attorneys for *Felix P. Camacho, Governor of Guam*

11

12              IN THE UNITED STATES DISTRICT COURT
                        DISTRICT OF GUAM
13

14  CHARMAINE R. TORRES, on behalf of herself    CIVIL CASE NO. 04-00038
    and a class of others similarly situated,
15
                        Plaintiff,
16
                           -v-                   **MEMORANDUM OF POINTS AND**
17                                               **AUTHORITIES IN SUPPORT OF THE**
    GOVERNMENT OF GUAM; FELIX P.                  **GOVERNOR OF GUAM'S MOTION**
18  CAMACHO, Governor of Guam; and               **TO DISMISS**
    DOUGLAS B. MOYLAN, Attorney General of
19  Guam,

20                      Defendants.

21

22

23

24

25
OCT 2 8

2:36 PM   JLM.
26
Lujan Aguigui & Perez LLP
Date: 10/28/04
Time : 2:45p
Rec'd:
27

28

COPY

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 2

    A.   Guam's Territorial Income Tax ............................................................... 2

    B.   The Complaint In This Case .................................................................... 3

ARGUMENT ................................................................................................................ 4

I.   THERE IS NO SUBJECT MATTER JURISDICTION OVER THE REFUND CLAIMS BECAUSE TORRES FAILED TO EXHAUST HER REMEDIES..................................... 5

II.  THE CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF MUST BE DISMISSED WITH PREJUDICE BECAUSE INJUNCTIVE AND DECLARATORY RELIEF REGARDING FEDERAL TAX REFUNDS IS BARRED BY FEDERAL LAW, INCLUDING IN CASES INVOLVING REFUNDS OF GUAM'S TERRITORIAL INCOME TAX ................................................................................................... 7

    A.   Injunctive Relief Is Barred By The Anti-Injunction Act ................................. 8

    B.   Declaratory Relief Is Barred By The Declaratory Judgment Act ..................... 9

III. THE CLAIMS FOR TAX YEARS 1995-2000 ARE TIME-BARRED ON THE FACE OF THE COMPLAINT .............................................................................................. 12

IV. THE CLAIMS BASED UPON GUAM'S EARNED INCOME TAX PROGRAM SHOULD BE DISMISSED BECAUSE NO GROUND FOR SUPPLEMENTAL JURISDICTION EXISTS................................................................................................................ 14

V.  THE "CLASS ACTION" ALLEGATIONS MUST BE DISMISSED WITH PREJUDICE. ...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*5-Star Management, Inc. v. Rogers*, 940 F. Supp. 512 (E.D.N.Y. 1996) ..................................... 18

*AFL-CIO v. United States*, 669 F. Supp. 12 (D.D.C. 1987)........................................................... 9

*Agron v. Illinois Bell Tel. Co.*, 325 F. Supp. 487 (D.C. Ill. 1970) ................................................ 16

*Alexander v. "Americans United" Inc.*, 416 U.S. 752 (1974) ......................................................... 12

*Appoloni v. United States*, 218 F.R.D. 556 (W.D. Mich. 2003) ...................................................... 17

*Appoloni v. United States*, 219 F.R.D. 116 (W.D. Mich. 2003) ...................................................... 17

*Bank of America v. Blaz,* 539 F.2d 1226 (9th Cir. 1976)........................................................... 2, 10

*Bear Valley Mutual Water Co. v. Riddell*, 493 F.2d 948 (9th Cir. 1974) ....................................... 6

*Bob Jones University v. Simon*, 416 U.S. 725 (1974) ...................................................................... 9

*Bordallo v. Baldwin*, 624 F.2d 932 (9th Cir. 1980) ......................................................................... 3

*Boyd v. United States*, 762 F.2d 1369 (9th Cir. 1985) .................................................................... 5

*Brummett v. United States*, 218 F. Supp. 2d 1253 (D. Or. 2002) .................................................. 14

*Crain v. Government of Guam*, 97 F. Supp. 433 (D. Guam 1951) .................................................. 10

*E.g. Danoff v. United States*, 324 F. Supp. 2d 1086 (C.D. Cal. 2004)........................................... 14

*Elias v. Connett*, 908 F.2d 521 (9th Cir. 1990) .............................................................................. 9

*Enochs v. Williams Packing Co.*, 370 U.S. 1 (1962) ..................................................................... 9

*Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943) ............................................. 12

*Green v. United States*, 73-2 USTC ¶ 9729, 32 AFTR2d 73-5963 (E.D. Cal. 1973) .................... 16

*Gumataotao v. Director of Dept. of Revenue and Taxation*, 236 F.3d 1077 (9th Cir. 2001) .... 3, 11

*Harkins v. United States*, 66-2 U.S.T.C. ¶ 9543 (E.D. Okl. 1966) ................................................ 16

*Heisler v. United States*, 463 F.2d 375 (9th Cir 1972)................................................................... 16

*Holmes v. Director of the Dept. of Revenue and Taxation*, 937 F.2d 481 (9th Cir. 1991) ............ 13

*Ileto v. Glock Inc.*, 349 F.3d 1191 (9th Cir. 2003)......................................................................... 4

*In re Eagson Corp.*, 37 B.R. 471 (Bankr. E.D. Pa. 1984)............................................................... 18

*Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980).......................................................... 13

*Klender v. United States*, 218 F.R.D. 161 (E.D. Mich. 2003) ....................................................... 17

*Lane v. Pena*, 518 U.S. 187 (1996) ................................................................................................ 6

*Lewis v. Reynolds*, 284 U.S. 281 (1932) ....................................................................................... 17

*Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003) ................................... 7

*Lipsett v. United States*, 37 F.R.D. 549 (S.D.N.Y. 1965) .......................................... 16, 18

*Marangi v. Govt. of Guam*, 319 F. Supp. 2d 1179 (D. Guam 2004) ............................... 8

*Martinez v. United States*, 595 F.2d 1147 (9th Cir. 1979).......................................... 5

*Marx v. Govt. of Guam*, 866 F.2d 294 (9th Cir. 1989) .............................................. 6

*McConnell v. United States*, 295 F. Supp. 605 (D. Tenn. 1969) ................................... 16

*O'Shea v. Littleton*, 414 U.S. 488 (1974).............................................................. 7

*Oatman v. Dept. of Treasury*, 34 F.3d 787 (9th Cir. 1994)......................................... 15

*Pence v. Andrus*, 586 F.2d 733 (9th Cir. 1978)....................................................... 7

*Quarty v. United States*, 170 F.3d 961 (9th Cir. 1999) .......................................... 5, 6

*Rand v. United States*, 249 U.S. 503 (1918) ........................................................ 6

*RHI Holdings, Inc. v. United States*, 142 F.3d 1459 (Fed. Cir. 1998) ......................... 14

*Rock Island R.R. Co. v. United States*, 254 U.S. 141 (1920) ................................... 6

*Saunooke v. United States*, 8 Cl. Ct. 327 (1985)................................................... 16

*Shwarz v. United States*, 234 F.3d 428 (9th Cir. 2000)............................................ 4

*Sorenson v. Secretary of Treasury*, 475 U.S. 851 (1986) ........................................ 5

*Sorenson v. Secretary of Treasury*, 752 F.2d 1433 (9th Cir. 1985) ............................. 16

*Thomasson v. United States*, 1997 WL 220321 (N.D. Cal. April 21, 1997)..................... 14

*Tucker v. Alexander, supra* 275 U.S. 228 (1927)................................................... 6

*United States v. Brockamp*, 519 U.S. 347 (1997) ................................................. 13

*United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269 (1931)................................. 6

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) .......................................... 17

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) ......................... 5

*Warth v. Seldin*, 422 U.S. 490 (1975) ............................................................... 7

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000)........................................................ 5

**Other Authorities**

Pub. Law. 85-688, § 1, 72 Stat. 681 ................................................................. 12

**Rules**

11 G.C.A. §§ 42101-42104 ........................................................................ 17, 18

12 U.S.C. § 548 ........................................................................................ 13

26 U.S.C. §§ 6001-7873............................................................................... 3

26 U.S.C. § 6511 ..................................................................................... 15, 16

26 U.S.C. § 6532 ................................................................................................................ 8, 19

26 U.S.C. § 7421 .................................................................................................................... 10

26 U.S.C. § 7422 ................................................................................................................. 6, 19

28 U.S.C. § 1331 ....................................................................................................................... 18

28 U.S.C. § 1341 ....................................................................................................................... 15

28 U.S.C. § 1367 ....................................................................................................................... 18

28 U.S.C. § 2201 ................................................................................................................. 12, 14

48 U.S.C. § 1421i ............................................................................................................*empassim*

MR041027.382-0008[MPA Mtn. to Dismiss4]

Defendant Felix P. Camacho, the Governor of Guam (the "Governor"), respectfully submits this memorandum of point and authorities in support of his motion to dismiss this action with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## INTRODUCTION

Plaintiff Charmaine Torres ("Torres") brought this action on behalf of herself and a purported class of allegedly similarly situated taxpayers against the Governor of Guam, the Government of Guam, and the Attorney General of Guam. She seeks a refund of the Earned Income Tax Credit ("EITC") that she alleges are due and declaratory and injunctive relief to obtain these refunds. Her allegations fail to state a claim for numerous reasons and must be dismissed with prejudice.

First, Torres fails to allege exhaustion of her administrative remedies. Exhaustion is an absolute prerequisite for jurisdiction over any claim for a tax refund. Because Torres has not alleged exhaustion, the Court is without subject matter jurisdiction over Torres's claims (as well as the putative "class action" claims), all of which must be dismissed.

Second, Torres cannot escape the jurisdictional exhaustion requirement by seeking injunctive or declaratory relief because federal law prohibits injunctive or declaratory relief in tax refund cases. Therefore, the claims for declaratory and injunctive relief must be dismissed with prejudice.

Third, Torres is attempting to assert untimely claims. Torres seeks relief for tax years 1995 to 2003. But she only filed suit in August 2003. Tax refund claims are governed by a jurisdictional three-year statute of limitations that commences running once the original tax return is filed. Therefore, her claims for tax years 1995 to 2000 fall outside the governing statute of limitations and should be dismissed with prejudice.

Fourth, Torres has asserted claims under Guam's local EITC law, which mirrors the federal law. However, because there is no jurisdiction over the federal claims, there is no supplemental jurisdiction over the state law claims.

Last, and most importantly, even if Torres or any other individual were able to state a claim, the "class action" allegations must be dismissed with prejudice because individualized issues predominate in this case and typicality cannot be shown. Every plaintiff in a tax refund case must individually prove exhaustion of the particular claim at issue to establish jurisdiction. Then each plaintiff must individually establish his or her individual qualification for the particular tax refund at issue. Finally, the government must have the opportunity as to each refund claim to review the entirety of each tax return in which the refund claim is made to identify any possible deficiencies that might offset the refund claim. This need for detailed and individualized fact-finding on each of these three issues—which basically place the entirety of each tax return on trial—has led almost every court that has considered the issue to refuse to consider class action claims in a tax refund case. This result is particularly applicable here, where as many as 100,000 separate tax returns are implicated. Thus, dismissal of the class action claims must be with prejudice.

## BACKGROUND

### A. Guam's Territorial Income Tax

In enacting the Organic Act of Guam,[1] Congress created the Guam Territorial Income Tax to mirror almost all of the Internal Revenue Code (Title 26) of the United States Code and to provide a source of revenue to fund the Government of Guam. *See* 48 U.S.C. § 1421i; *Bank of Am. v. Blaz*, 539 F.2d 1226, 1227-28 (9th Cir. 1976) (per curiam); *see also*

*Gumataotao v. Director of Dept. of Revenue and Taxation*, 236 F.3d 1077, 1079-80 (9th Cir. 2001). Specifically, the Organic Act of Guam provides that "[t]he income tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in Guam...." 48 U.S.C. § 1421i(a). However, the tax collected in Guam is payable to the Government of Guam and is collected by the Government of Guam. *Id.* § 1421i(b), (c).

The Organic Act does have one important qualification on the Internal Revenue Code's application in Guam. A section of the Internal Revenue Code will not apply in Guam if manifestly inapplicable to Guam or incompatible with the intent of the Organic Act. *Id.* § 1421i(d)(1). Nonetheless, Congress explicitly provided that "all provisions of subtitle F" of the Internal Revenue Code apply in Guam. *Id.* (emphasis added). Subtitle F of Title 26 of the United States Code contains the statutes of limitations and the exhaustion requirements in tax refund cases, as well as the bar on injunctions in tax cases. *See* 26 U.S.C. §§ 6001-7873 (Subtitle F).

The Organic Act also provides for the substitution of terms in the Internal Revenue Code so that its application in Guam is clear. *See* 48 U.S.C. § 1421i(e) (stating that "Guam" is substituted for "United States"; "Governor or his delegate" for "Secretary or his delegate" and "Commissioner or his delegate"). Further, the language and nomenclature of the Internal Revenue Code must be read to change or omit any other language where this is "necessary to effect the intent of this section." *Id.*

**B.    The Complaint In This Case**

Torres filed her complaint in August 2004. According to her First Amended Complaint ("Complaint" or "Cmpl."), she is a Guam taxpayer who filed tax returns in Guam for tax years 1995 to 2003. (Cmpl. ¶ 2.) Torres alleges that during this time, Guam should have paid

---

[1] The Organic Act of Guam (the "Organic Act") serves as Guam's constitution. *See Bordallo v. Baldwin*, 624 F.2d 932, 934 (9th Cir. 1980).

1 the EITC under the Organic Act of Guam and Guam's Earned Income Program. (*Id.* ¶¶ 2, 7, 23,

2 24.) She further alleges that she would have been eligible for the EITC in tax years 1995 to 2003,

3 but was denied the benefits of this program after Guam's Attorney General issued an opinion

4 stating it did not apply to Guam in January 1996. (*Id.* ¶¶ 2, 7, 18, 23.) According to Torres, the

5 only year in which the EITC was paid is tax year 1997, and those payments were only to some

6 eligible taxpayers. (*Id.* ¶ 24.)

7

8 Torres attempts to state claims on her own behalf and on behalf of three different

9 subclasses of allegedly similarly situated taxpayers. (Cmpl. ¶ 7.) The first subclass is all

10 taxpayers who were eligible for the EITC in 1995 and 1997 but did not receive it. (*Id.*) The

11 second subclass is all taxpayers who seek to recover more than 50% of the amount alleged to be

12 due for "all years in which such taxpayers were eligible for such credits by law." (*Id.*) The third

13 subclass is of all eligible taxpayers who may opt-out of the proposed settlement in *Santos v.*

14 *Camacho*, CV04-00006 (Dist. Ct. of Guam). (*Id.*)[2]

15

16 **ARGUMENT**

17

18 On a motion to dismiss, all well-pleaded allegations in Torres' complaint must be

19 taken as true and construed in the light most favorable to Torres. *Shwarz v. United States*, 234

20 F.3d 428, 435 (9th Cir. 2000). However, the courts "do not accept any unreasonable inferences or

21 assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.*,

22 349 F.3d 1191, 1200 (9th Cir. 2003) (citation omitted); *see also Shwarz*, 234 F.3d at 435 ("The

23 court need not accept as true, however, allegations that contradict facts that may be judicially

24 noticed by the court...."). Further, with regard to issues that go directly to the Court's subject

25

26 _____

27 [2] *Santos* is a case before this Court for EITC refunds. There is a proposed settlement
agreement in that case that states that it pays plaintiffs who opt-in 50% or more of the amount
28 they are allegedly due.

matter jurisdiction and require dismissal under FRCP 12(b)(1) (as opposed to FRCP 12(b)(6)), the Court may consider extrinsic evidence. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).

## I.  THERE IS NO SUBJECT MATTER JURISDICTION OVER THE REFUND CLAIMS BECAUSE TORRES FAILED TO EXHAUST HER REMEDIES

As the Supreme Court has held, the EITC is a tax refund for purposes of the administration and payment of tax refunds. *Sorenson v. Secretary of Treasury*, 475 U.S. 851, 863 (1986) ("to the extent an excess earned-income credit is 'payable' to an individual, it is payable as *if* it were a refund of tax paid") (italics in original).[3] The EITC's status as a tax refund matters because administrative exhaustion is required before a suit to recover a tax refund may be filed:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the [Governor or his delegate], according to the provisions of law in that regard, and the regulations of the [Governor or his delegate] established in pursuance thereof.

26 U.S.C. § 7422(a) (modified to replace in brackets the words "Secretary" with "Governor or his delegate" pursuant to 48 U.S.C. § 1421i(e)).

The Ninth Circuit has repeatedly recognized that a plaintiff's failure to exhaust a tax refund claim requires dismissal for lack of subject matter jurisdiction. *Quarty v. United States*, 170 F.3d 961, 972 (9th Cir. 1999); *Boyd v. United States*, 762 F.2d 1369, 1372 (9th Cir. 1985); *accord Martinez v. United States*, 595 F.2d 1147, 1148 (9th Cir. 1979) (per curiam)); *Bear*

---

[3] The difference between the EITC and a normal tax refund is not material to this motion. In essence, the EITC is a social welfare payment to low-income families administered through the tax system. Thus, rather than being a refund of taxes actually paid, it is a payment to a family based on certain eligibility criteria. It is possible for a taxpayer to receive an EITC "refund" in excess of the amount actually paid in taxes. However, what matters here is that it is a "refund" with regard to all administrative procedures and requirements.

*Valley Mutual Water Co. v. Riddell*, 493 F.2d 948, 951 (9th Cir. 1974). The right to sue for a tax refund is a limited waiver of sovereign immunity, and that waiver that must be "strictly construed, in terms of its scope, in favor of the sovereign." *Quarty*, 170 F.3d at 972 (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). This same strict construction of the exhaustion requirement must be applied here to the Territory of Guam because Guam, like the United States, enjoys sovereign immunity absent a waiver. *Marx v. Govt. of Guam*, 866 F.2d 294, 298 (9th Cir. 1989) ("controlling authority and the legislative history of the Organic Act compel our holding that the government of Guam has inherent sovereign immunity").

Because exhaustion is a requirement for subject matter jurisdiction, it cannot be excused based upon futility. As the Ninth Circuit recently reaffirmed, the U.S. Supreme Court has long recognized that the exhaustion requirement in tax refund cases must apply even if it is undisputed that exhaustion would have been futile:

> An anticipated rejection of the claim, which the statute contemplates, is not a ground for suspending its operation. Even though formal, the condition upon which the consent to suit is given is defined by the words of the statute, and "they mark the conditions of the claimant's right.' *Rock Island R.R. Co. v. United States*, 254 U.S. 141, 143 [(1920)]. Compliance may be dispensed with by waiver, as an administrative act, *Tucker v. Alexander, supra* [275 U.S. 228 (1927)]; but it is not within the judicial province to read out of the statute the requirement of its words, *Rand v. United States*, 249 U.S. 503, 510 [(1918)].

*Quarty*, 170 F.3d at 973 (quoting *United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 273 (1931)).

In the present case, Torres has made no allegation of exhaustion and has presented no evidence of exhaustion. Further, she cannot cure her failure to exhaust by filing the administrative claim and amending to allege exhaustion. The governing statute, which applies to Guam under the mirror-image rule, states: "No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, **shall be begun** before the expiration

1   of 6 months from the date of filing the claim required under such section unless the [Governor or

2   delegate] renders a decision thereon within that time...." 26 U.S.C. § 6532(a)(1) (terms

3   substituted pursuant to mirror-image rule and emphasis added). In other words, before bringing

4   suit for a refund, Torres must file her administrative claims and wait six months (or until that

5   claim is denied) before filing suit. Until then, the Court lacks jurisdiction over her suit and her

6   complaint must be dismissed for lack of subject matter jurisdiction. *Boyd*, 762 F.2d at 1371 ("If

7   the refund claim does not meet the requirements of the Code and the regulations, the suit must be

8   dismissed....") (citations omitted).

9

10          Because Torres' individual claims must be dismissed, her purported "class action"

11  claims also must be dismissed for lack of standing. "[I]f none of the named plaintiffs purporting

12  to represent a class establishes the requisite of a case or controversy with the defendants, none

13  may seek relief on behalf of himself or any other member of the class." *Lierboe v. State Farm

14  Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (quoting *O'Shea v. Littleton*, 414 U.S.

15  488, 494 (1974)); *Pence v. Andrus*, 586 F.2d 733, 736-37 (9th Cir. 1978) ("the named

16  representatives 'must allege and show that they personally have been injured, not that injury has

17  been suffered by other, unidentified members of the class to which they belong and which they

18  purport to represent'") (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). This dismissal also

19  must be with prejudice as discussed in Section V below.

20

21  **II.     THE CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF MUST
            BE DISMISSED WITH PREJUDICE BECAUSE INJUNCTIVE AND
22          DECLARATORY RELIEF REGARDING FEDERAL TAX REFUNDS IS
            BARRED BY FEDERAL LAW, INCLUDING IN CASES INVOLVING
23          REFUNDS OF GUAM'S TERRITORIAL INCOME TAX**

24          Possibly out of a desire to escape the exhaustion requirement, Torres also has

25  requested declaratory or injunctive relief on her own behalf and on behalf of the "class" she seeks

26  to represent. However, federal law and Supreme Court precedent prevents such an "end-run"

27

28

1 around the exhaustion requirement by precluding injunctive and declaratory relief in tax refund

2 cases.

### A. Injunctive Relief Is Barred By The Anti-Injunction Act

The prohibition against injunctive relief in tax refund cases is codified in the Anti-

Injunction Act provision of the Internal Revenue Code. It states:

> Except as provided in sections 6015(e), 6212(a) and (c), 6213(a),
> 6225(b), 6246(b), 6330(e)(1), 6331(i), 6672(c), 6694(c), or 7426(a)
> or and (b)(1), 7429(b), and 7436, <u>no suit for the purpose of
> restraining the assessment or collection of any tax shall be
> maintained in any court by any person</u>, whether or not such person
> is the person against whom such tax was assessed.

26 U.S.C. § 7421(a) (emphasis added).[4] The Anti-Injunction Act applies to bar injunctions in

cases involving Guam's Territorial Income Tax because it is part of the Internal Revenue Code

that is applicable to Guam. *Marangi v. Govt. of Guam*, 319 F. Supp. 2d 1179, 1185 n.8 (D. Guam

2004) ("26 U.S.C. § 7421(a) is contained within subtitle F of the Internal Revenue Code, and thus

is applicable to Guam."); *see* 48 U.S.C. § 1421i(d) (subtitle F of the Internal Revenue Code

applies to Guam).

Here, Torres seeks to have the Court:

> Issue preliminary and permanent injunctions compelling
> Defendants to do all that is necessary and proper to implement and
> enforce the EIC to the full extent required by the Organic Act of
> Guam and the Guam Earned Income Program, and to rescind,
> modify, and/or amend any and all rulings, opinions, determinations,
> orders, or circulars that have the effect of denying entitlement of
> eligible Guam taxpayers to the EIC.

(Cmpl. Prayer for Relief ¶ 5.) In other words, Torres seeks relief that would result in the

application of the EITC in Guam, and thus a refunding of taxes to her and others and a

consequential reduction in the Government of Guam's collection of taxes.

---

[4] The exceptions identified in the statute are facially inapplicable here.

1    The Anti-Injunction Act bars precisely this type of relief. *Enochs v. Williams*

2    *Packing Co.*, 370 U.S. 1, 7 (1962) ("The manifest purpose of section 7421(a) is to permit the

3    United States to assess and collect taxes alleged to be due without judicial intervention, and to

4    require that the legal right to disputed sums be determined in a suit for refund."); *Bob Jones*

5    *University v. Simon*, 416 U.S. 725, 738 (1974) (injunctive relief barred where the petitioner's

6    allegations that it would be subject to substantial tax liability if the government prevailed left

7    "little doubt that a primary purpose of this lawsuit [wa]s to prevent the [Internal Revenue] Service

8    from assessing and collecting income taxes...."); *Am. Fed. of Govt. Employees, AFL-CIO v.*

9    *United States*, 669 F. Supp. 12, 13 (D.D.C. 1987) (injunctive relief barred where "[g]ranting the

10   relief plaintiff requests would reduce plaintiff's members' tax bills and postpone the

11   government's receipt of taxes due on retiree's...."). Therefore, because the Anti-Injunction Act

12   applies to bar the claims for injunctive relief, the Court is without subject matter jurisdiction over

13   those claims and they must be dismissed. *Marangi*, 319 F. Supp. 2d at 1185 (citing *Elias v.*

14   *Connett*, 908 F.2d 521, 523 (9th Cir. 1990)).

### B.    Declaratory Relief Is Barred By The Declaratory Judgment Act

The Declaratory Judgment Act contains an express prohibition on declaratory

relief in federal tax cases. It states:

> In a case of actual controversy within its jurisdiction, <u>except with
> respect to Federal taxes</u> other than actions brought under section
> 7428 of the Internal Revenue Code of 1986, a proceeding under
> section 505 or 1146 of title 11, or in any civil action involving an
> antidumping or countervailing duty proceeding regarding a class or
> kind of merchandise of a free trade area country (as defined in
> section 516A(f)(10) of the Tariff Act of 1930), as determined by the
> administering authority, any court of the United States, upon the
> filing of an appropriate pleading, may declare the rights and other
> legal relations of any interested party seeking such declaration,
> whether or not further relief is or could be sought. Any such
> declaration shall have the force and effect of a final judgment or
> decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added).

The Guam District Court addressed the applicability of the exception for federal tax cases to Guam's Territorial Income Tax in *Crain v. Government of Guam*, 97 F. Supp. 433 (D. Guam 1951), *aff'd* 195 F.2d 414 (9th Cir. 1952).[5] In *Crain*, the plaintiff sought declaratory relief in regard to Guam's Territorial Income Tax, which had just been created by Congress to mirror the Internal Revenue Code. *See Crain*, 97 F. Supp. at 434. After holding that sovereign immunity barred the suit, the court went on to hold that even if this immunity was waived,[6] the Declaratory Judgment Act barred the relief sought:

> Even assuming that the Government of Guam had waived its immunity from suit, this court could not take jurisdiction. As was stated in *Noland v. Westover*, 9 Cir., 172 F.2d 614, 615. "The only definite relief asked is for a declaratory judgment, but the statute authorizing the district court to render a declaratory judgment does not authorize its application in controversies in respect of tax problems."

*Id.* at 434-35 (citing, *inter alia*, 28 U.S.C. § 2201).

The Guam District Court's holding that the Territorial Income Tax is a "federal tax" for purposes of the Declaratory Judgment Act's ban on declaratory judgment in federal tax cases is consistent with the controlling Ninth Circuit authority. In *Bank of America v. Blaz*, 539 F.2d 1226, 1227-28 (9th Cir. 1976) (per curiam), the issue was whether Guam could assess a separate tax on the net income of a bank where federal law allows a local government to tax the net income of a bank only once and the bank had already paid Guam's Territorial Income Tax. *Id* at 1226-27. The Ninth Circuit recognized that some courts had described Guam's Territorial Income Tax as not being a federal tax, which would have meant that Guam was taxing banks

---

[5] The Ninth Circuit affirmed the judgment on sovereign immunity grounds without reaching the declaratory judgment issue.

1  twice. *Id.* at 1227. However, the Court rejected those cases, holding that the Territorial Income

2  Tax was ultimately a federal tax administered by Guam but controlled by its terms by Congress:

> We conclude, therefore, that the enactment of § 31 by the United
> States Congress of the territorial income tax was done primarily to
> relieve the United States Treasury of the necessity of making direct
> appropriations; that although Congress has delegated the collection
> and enforcement functions to the Government of Guam, the latter is
> powerless to vary the terms of the federal income tax laws as
> applied to Guam, except as permitted by Congress. We therefore
> hold that the Guam territorial income tax is not a tax imposed by
> Guam for the purposes of 12 U.S.C. § 548 . . . .

9  *Id.* at 1227-28.

10  The Ninth Circuit reached a similar conclusion in the recent case of *Gumataotao v.*

11  *Director of Dept. of Revenue and Taxation*, 236 F.3d 1077 (9th Cir. 2001). In that case, a

12  taxpayer argued that the Guam Territorial Income Tax could not apply to interest from a U.S.

13  Bond because U.S. States and Territories cannot tax federal instrumentalities. *Id.* at 1081.

14  Although the Ninth Circuit agreed that States and Territories cannot tax federal bonds, it held that

15  Guam's Territorial Income Tax was not a tax by Guam. *Id.* Instead, as in *Bank of America*, the

16  Ninth Circuit held that Guam's tax was a federal created tax. *Id.* ("it was Congress, not the Guam

17  government, that imposed a tax on U.S. bonds").

18  *Bank of America* and *Gumataotao* thus re-affirm the Guam District Court's earlier

19  reasoning in *Crain*. The Territorial Income Tax is a federal tax. And because it is a federal tax, it

20  is subject to the prohibition on declaratory judgments under the Declaratory Judgment Act.

21  Here, Torres seeks declaratory relief that achieves the same ends as she seeks

22  through the injunctive relief, namely payment of past and future EITC payments. Specifically,

23  she asks the Court to:

---

[6] Subject to the terms and conditions for making a tax refund claim, Congress waived
Guam's sovereign immunity in tax refund cases in a 1958 amendment to the Organic Act that

3.      Issue a declaratory judgment that the Defendants' acts, policies, practices, and procedures complained of herein violate the rights of Plaintiff and the class Plaintiff represents to be entitled to the EIC under the Organic Act of Guam and the Guam Earned Income Program;

4.      Issue a declaratory judgment that the Plaintiff and the class Plaintiff represents are entitled to the receive the EIC under the Organic Act of Guam and/or the Guam Earned Income Program for all years in which such credits were not paid as required by law, together with interest and other amounts allowed by law;

(Cmpl. Prayer for Relief ¶¶ 3-4.)

In other words, Torres seeks declaratory relief in regard to a federal tax scheme. Such relief is barred by the Declaratory Judgment Act and the declaratory relief claim must be dismissed. 28 U.S.C. § 2201(a); *Crain*, 97 F. Supp. at 434-35. [7]

## III.     THE CLAIMS FOR TAX YEARS 1995-2000 ARE TIME-BARRED ON THE FACE OF THE COMPLAINT

The statute of limitations on claims for tax refunds is established in 26 U.S.C. § 6511(a), which states:

> Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

---

added 48 U.S.C. § 1421i(h)(2). *See* Pub. Law. 85-688, § 1, 72 Stat. 681.

[7] Even this much analysis is unnecessary. Where (as here) a plaintiff is barred from seeking injunctive relief in a federal tax case, equivalent declaratory relief is also barred. *Alexander v. "Americans United" Inc.*, 416 U.S. 752, 759 n.10 (1974) ("Because we hold that that [Anti-Injunction] Act bars the instant suit, there is no occasion to deal separately with the [Declaratory Judgment Act]."); *Bob Jones University*, 416 U.S. at 733 n.7 ("There is no dispute, however, that the federal tax exception to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act. Because we hold that the instant case is barred by the latter provision, there is no occasion to resolve whether the former is even more preclusive."). In fact, even without a statute, the Supreme Court prohibited declaratory relief in comparable state tax cases because both injunctive and declaratory relief would subvert the intent to channel tax refund claims through a state's administrative procedures and into claims for tax refunds. *See Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300-01 (1943). This holding was later codified by Congress in 28 U.S.C. § 1341.

1    Claim for credit or refund of an overpayment of any tax imposed by
     this title which is required to be paid by means of a stamp shall be
2    filed by the taxpayer within 3 years from the time the tax was paid.

3    *See Holmes v. Director of the Dept. of Revenue and Taxation*, 937 F.2d 481, 484 (9th Cir. 1991)

4    (federal tax statute of limitations applies to Guam's Territorial Income Tax).

5
6           Torres seeks refunds of the EITC for tax years 1995-2003, alleging that she filed

7    tax refunds in each of those years. (Cmpl. ¶¶ 2,24.)  However, Torres only filed suit in August

8    2004. Accordingly, she has failed to allege timely claims as to tax years 1995 to 2000.[8] *See* 26

9    U.S.C. § 6511(a).

10          If the running of the statute of limitations is apparent on the face of the complaint,

11   the complaint should be dismissed. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.

12   1980). Therefore, Torres' claims for tax years 1995-2000 must be dismissed.

13
14          This dismissal must be with prejudice.  Even if Torres had attempted to plead

15   around the statute of limitations, she could not.  There are certain statutory exceptions to the

16   statute of limitations in tax refund cases involving disability and the like, *see* 26 U.S.C. § 6511,

17   but Torres makes no reference to facts that suggest any of these are remotely applicable.

18          Further, judicially created equitable exceptions to the statute of limitations that

19   might apply in other types of cases do not apply in tax refund cases.  In *United States v.*

20   *Brockamp*, 519 U.S. 347 (1997), the Supreme Court unanimously held that the time limitation on

21   tax refund claims is not subject to equitable tolling. *Id.* at 348.  As the Court explained:

22
23               The nature and potential magnitude of the administrative problem
                 suggest that Congress decided to pay the price of occasional
24               unfairness in individual cases (penalizing a taxpayer whose claim is
                 unavoidably delayed) in order to maintain a more workable tax
25               enforcement system.  At the least it tells us that Congress would
                 likely have wanted to decide explicitly whether, or just where and
26

27   _____

28      [8] Alternatively, she had two years from making a payment to bring suit. But Torres does
     not allege any payments within the statutory period.

when, to expand the statute's limitations periods, rather than delegate to the courts a generalized power to do so wherever a court concludes that equity so requires.

*Id.* at 352-53. This same rule since has been consistently applied to bar claims of equitable estoppel, including by the district courts of the Ninth Circuit. *E.g. Danoff v. United States*, 324 F. Supp. 2d 1086, 1099 (C.D. Cal. 2004) ("In cases decided subsequent to *Brockamp*, the courts uniformly have held that equitable principles, including the doctrine of equitable estoppel, *cannot* toll statutes of limitation in tax refund suits.") (italics in original) (citing, *inter alia, RHI Holdings, Inc. v. United States*, 142 F.3d 1459 (Fed. Cir. 1998); *Thomasson v. United States*, 1997 WL 220321, *4 (N.D. Cal. April 21, 1997); *Brummett v. United States*, 218 F. Supp. 2d 1253, 1259 (D. Or. 2002)).

In sum, Torres failed to plead facts that would make her claims for tax years 1995-2000 timely. Further, no statutory exceptions tolling the statute are applicable and equitable exceptions to the statute of limitations are not available in tax refund cases. Accordingly, the claims for tax years 1995-2000 must be dismissed with prejudice.

## IV. THE CLAIMS BASED UPON GUAM'S EARNED INCOME TAX PROGRAM SHOULD BE DISMISSED BECAUSE NO GROUND FOR SUPPLEMENTAL JURISDICTION EXISTS

Along with her federal claims, Torres seeks to bring claims based on Guam's Earned Income Program, 11 G.C.A. §§ 42101-42104. Because there is no diversity jurisdiction, the only basis for this Court to exercise jurisdiction over these territorial law claims would be if there was federal jurisdiction over the federal claims, and therefore supplemental jurisdiction over the territorial law claims. *See* 28 U.S.C. §§ 1331, 1367. However, as already explained, the Court here lacks federal question jurisdiction over the federal EITC claims. There is no exhaustion, and declaratory and injunctive relief are barred by federal law. Accordingly, there

1  also is no jurisdiction over the state law claims, and they must be dismissed. *See* 28 U.S.C. §

2  1367.[9]

3  **V.  THE "CLASS ACTION" ALLEGATIONS MUST BE DISMISSED WITH**

4  **PREJUDICE**

5          As noted above, the class allegations must be dismissed because the putative class

6  representative has not stated a claim. This dismissal must be with prejudice because amendment

7  of the "class action" allegations would be futile. *Cook, Perkiss, and Liehe Inc. v. N. Cal.*

8  *Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (leave to amend must be denied if "the

9  pleading could not possibly be cured by the allegation of other facts"). Regardless of whether

10  Torres or any other individual were able to state a claim for an EITC refund, this case cannot

11  proceed as a class action because individualized issues predominate and because typicality cannot

12

13  possibly be demonstrated by any plaintiff.

14          To maintain a class action, a plaintiff must prove, among other things, that "the

15  claims or defenses of the representative parties are typical of the claims and defenses of the class"

16  and "questions of law or fact common to the members of the class predominate over questions

17  affecting only individual members." FRCP 23(a)(3), (b)(3). Neither of these requirements can be

18

19  met here.

20          In tax refund cases, each plaintiff must prove exhaustion and the validity of his or

21  her claim. *Oatman v. Dept. of Treasury*, 34 F.3d 787, 789 (9th Cir. 1994) ("The district court

22  lacks jurisdiction over claims for refunds pressed by any potential class members who have not

23

24  _____

25          [9] If only certain of the federal claims are dismissed, then any corresponding state law
   claims should be dismissed. The Guam Legislature expressly provided that the Guam EITC
26  should mirror the federal EITC in its administration. *See* 11 G.C.A. § 42102 ("For Fiscal Year
   1998 and each year thereafter, the Department of Revenue and Taxation is authorized to institute
27  an Earned Income program to mirror the program instituted by the federal government and known
   as the, Earned Income Tax Credit."). Hence, any defects related to exhaustion, the statute of
28  limitations, or the impossibility of class-wide relief with regard to the claims under federal law
   are equally applicable to Guam's EITC, and are equal bars to claims under that program.

1  satisfied the procedural requirements of 26 U.S.C. §§ 6532 and 7422.") (citing *Sorenson v.*

2  *Secretary of Treasury*, 752 F.2d 1433, 1440 (9th Cir. 1985), *aff'd* 475 U.S. 851 (1986)); *Heisler*

3  *v. United States*, 463 F.2d 375, 375 (9th Cir 1972) (per curiam) (affirming judgment because

4  "there is no showing that any other members of the purported class filed the requisite demands for

5

6  refund").

7         As almost every court that has ever considered certifying a tax refund class has

8  concluded, it is impossible to demonstrate typicality under FRCP 23(a)(3) or that individual

9  issues will not predominate under FRCP(b)(3) in tax refund cases because of the exhaustion

10  requirement. *Saunooke v. United States*, 8 Cl. Ct. 327, 330-31 (1985) (rejecting class certification

11  in tax refund cases because court had to be able to individually determine that each class member

12  met the jurisdictional prerequisites); *McConnell v. United States*, 295 F. Supp. 605, 606 (D. Tenn.

13  1969) (refusing to permit action to proceed as class action because exhaustion had to be proved

14

15  individually); *Green v. United States*, 73-2 USTC ¶ 9729, 32 AFTR2d 73-5963 (E.D. Cal. 1973)

16  (similar); *see also Agron v. Illinois Bell Tel. Co.*, 325 F. Supp. 487, 488 (D.C. Ill. 1970) (class

17  action for tax refund cannot be maintained on behalf of ten of thousands of others because

18  exhaustion cannot be shown) (citing *Harkins v. United States*, 66-2 U.S.T.C. ¶ 9543, at 86, 702

19  (E.D. Okl. 1966), *aff'd on other grounds* 375 F. 2d 239 (10th Cir. 1967)).

20

21         Exhaustion is hardly the only issue that would make a class action impossible.

22  Federal law requires that each taxpayer's refund claim be individually adjudicated so that the tax

23  collecting authorities have the opportunity to challenge its validity and amount, and to seek any

24  other deficiencies that may be located. *Lipsett v. United States*, 37 F.R.D. 549, 552 (S.D.N.Y.

25  1965) ("Since a tax refund action involves in effect a reaudit of the individual taxpayer's return

26  for the time period in question . . . , and not merely the ground on which the refund is sought,

27  what would be tried were the relief granted, would be a composite action adjudicating the validity

28

1   of each item on fourteen different returns. It is difficult to conceive of a situation where the

2   original action would be more hindered than in such a chaotic suit.") (citing *Lewis v. Reynolds*,

3   284 U.S. 281 (1932)). This is another ground that makes class action status impermissible in tax

4   refund cases. *Saunooke*, 8 Cl. Ct. at 330-31 (additional reason to reject class action claim beyond

5   exhaustion problem is that the court would need to individually assess each tax return).

6

7          The Governor has located one published decision in which class certification in a

8   tax refund case was permitted, *Appoloni v. United States*, 218 F.R.D. 556 (W.D. Mich. 2003)

9   ("*Appoloni I*").[10] However, the court that issued that opinion later amended that decision to

10  exclude all non-exhausted claims because there was no jurisdiction over such claims. *Appoloni v.*

11  *United States*, 219 F.R.D. 116, 119 (W.D. Mich. 2003) ("*Appoloni II*"). More importantly, that

12  court was dealing with a class of 189 potential class members. *See Appoloni I*, 218 F.R.D. at 560.

13  This meant that individual adjudication of each class member's claim was a realistic possibility.

14

15         Here, however, there are at least 5,000 potential class numbers for each of the nine

16  tax years covered by the Complaint; in fact, in a filing with the Guam District Court, Torres

17  disputed that number only by suggesting the number might be significantly greater, with up to

18  11,000 class members *for each tax year* between 1995 and 2003. (*See* Decl. of Daniel M.

19  Benjamin in Support of the Governor of Guam's Motion to Dismiss, Exh. A at 4 (pleading by

20  Torres in the *Santos* case in which she suggested the class size could be 11,000 per year given the

21  number of claimants in 1997).)[11] In other words, this Court would be facing the impossible task

22

23  _____

24          [10] In a case involving the same exact type of tax refund (which is only available to retired
    educators), a second district court in Michigan reached the same conclusion. *Klender v. United*
25  *States*, 218 F.R.D. 161 (E.D. Mich. 2003).

26          [11] This Court may take judicial notice of this document on a motion to dismiss because it
    is Torres' pleading in the *Santos* case. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.
27  2003) ("A court may, however, consider certain materials--documents attached to the complaint,
    documents incorporated by reference in the complaint, or matters of judicial notice--without
28  converting the motion to dismiss into a motion for summary judgment."); *5-Star Management*,

of determining whether approximately *one hundred thousand different EITC claims* were exhausted before the Court could assert jurisdiction over each claim. *Cf. Appoloni II*, 219 F.R.D. at 119 (recognizing that exhaustion will have to be assessed as to each of the prospective class members, who numbered only 189, because exhaustion is a jurisdictional prerequisite); *see also Oatman*, 34 F.3d at 789 (exhaustion is required for each class member in a tax refund case; lack of such showing defeated jurisdiction). And after this, the Court would still have to assess each claimant's individual right to the EITC in each tax year, and to review each claimant's overall tax return for each tax year to determine whether off-setting deficiencies existed. *Lipsett*, 37 F.R.D. at 552. This case is not suited for class action proceedings, and the class action claims must be dismissed with prejudice.

### CONCLUSION

For the foregoing reasons, the Governor respectfully requests that this action be dismissed with prejudice.

DATED this 27th day of October, 2004.

> OFFICE OF THE GOVERNOR OF GUAM
> CALVO AND CLARK, LLP
> Attorneys for Defendant Felix P. Camacho,
>  Governor of Guam
>
> By: _____
>  DANIEL M. BENJAMIN

---

*Inc. v. Rogers*, 940 F. Supp. 512, 519 (E.D.N.Y. 1996) (although pleadings from other litigation generally are not subject to judicial notice, notice may be taken of a party's admission in related litigation); *In re Eagson Corp.*, 37 B.R. 471, 480 (Bankr. E.D. Pa. 1984) ("we perceive no injustice in taking judicial notice of the aforementioned pleadings of the trustee's original adversary proceeding since the two actions involve the identical parties and subject matter and both deal exclusively with the distribution of the proceeds of the sale of the Eagson Parcel.").

# EXHIBIT I



1

2 **Office of the Attorney General**
Douglas B. Moylan
3 Attorney General of Guam
Solicitors Division
4 Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
5 Hagåtña, Guam 96910   USA
(671) 475-3324    (671) 472-2493 (Fax)
6 www.guamattorneygeneral.com    law@mail.justice.gov.gu

7 **Attorneys for Defendants Government of Guam and**
**Attorney General Douglas B. Moylan**

8

FILED
DISTRICT COURT OF GUAM
OCT 28 2004
MARY L. M. MORAN
CLERK OF COURT



9 # IN THE DISTRICT COURT OF GUAM
# HAGÅTÑA, GUAM

10

11 CHARMAINE R. TORRES, on behalf of
herself and a class of others similarly situated,

12                     Plaintiff,

13            vs.

14 GOVERNMENT OF GUAM; FELIX P.
15 CAMACHO, Governor of Guam; ARTEMIO
B. ILAGAN, Director of the Guam
16 Department of Revenue and Taxation;
LOURDES M. PEREZ, Director of the Guam
17 Department of Administration; and
DOUGLAS B. MOYLAN, Attorney General
18 of Guam.

19                     Defendants.

20

) CIVIL CASE NO. CV04-00038
)
) **MEMORANDUM OF POINTS AND**
) **AUTHORITIES OF DEFENDANTS**
) **GOVERNMENT OF GUAM AND**
) **ATTORNEY GENERAL DOUGLAS B.**
) **MOYLAN IN SUPPORT OF MOTION**
) **UNDER FRCP 12(b)(1) & (6) TO DISMISS**
) **FIRST AMENDED COMPLAINT FOR**
) **LACK OF SUBJECT MATER**
) **JURISDICTION AND FAILURE OF**
) **PLAINTIFF TO STATE A CLAIM AND**
) **TO STRIKE DEFENDANT ATTORNEY**
) **GENERAL MOYLAN AS A PARTY**
) **UNDER FRCP 12(b)(6) & 21 & 26 U.S.C.**
) **§7422(f)(1) & (2) FOR FAILURE OF**
) **PLAINTIFF TO STATE A CLAIM AND**
) **MISJOINDER**
)

21

22        Defendants Government of Guam and Attorney General Douglas B. Moylan submit this

23 Memorandum of Points and Authorities in support of their above entitled motion to dismiss and to

24 strike under FRCP 12(b)(1) & (6), FRCP Rule 21, and 26 U.S.C. 7422(f)(1) & (2).

25 *Page 1*
*Memorandum of Points and Authorities in Defendants Government of Guam and*
*Attorney General Douglas B. Moylan in Support of Motion Under FRCP 12(b)(1) & (6)*
*To Dismiss First Amended Complaint for Lack of Subject Matter Jurisdiction*
*District Court Case No. CV04-00038*

**A. THE MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT UNDER FRCP 12(b)(1) & (6) FOR LACK OF SUBJECT MATTER JURISDICTION OVER THIS ACTION AND FOR FAILURE OF PLAINTIFF TO STATE ANY CLAIMS FOR RELIEF SHOULD BE GRANTED.**

Defendants Government of Guam and Attorney General Douglas B. Moylan refer to and adopt in its entirety the Memorandum of Points and Authorities filed concurrently in this case by the co-Defendant, Felix P. Camacho, Governor of Guam, in support of Governor Camacho's motion under FRCP 12(b)(1) & (6) to dismiss this action. Based on the reasons set forth in the said Memorandum of Points and Authorities, Plaintiff's First Amended Complaint should be dismissed under FRCP 12(b)(1) & (6).[1]

**B. THE MOTION TO STRIKE DEFENDANT ATTORNEY GENERAL DOUGLAS B. MOYLAN AS A PARTY DEFENDANT IN THIS CASE UNDER FRCP 12(b)(6) AND FRCP 21 FOR FAILURE OF PLAINTIFF TO STATE A CLAIM AND FOR MISJOINDER SHOULD BE GRANTED.**

Under the Organic Act of Guam and the U.S. Internal Revenue Code as mirrored in Guam, an action to recover a refund of Guam territorial income tax is properly brought against the government of Guam and not the Attorney General of Guam. 48 U.S.C. §1421i(a), (b), (d), (e) & (h)(2), 26 U.S.C. §7422(f)(1) & (2). Because the earned income tax credit is treated as an overpayment of income tax to be refunded to the taxpayer, it subject to the same rules under the Organic Act of Guam and the Internal Revenue Code as ordinary income tax refunds. 48 U.S.C. §1421i(h)(2), 26 U.S.C. §32 & §7422(f)(1) & (2), *Sorenson v. Secretary of Treasury*, 475 U.S. 851, 863, 106 S.Ct. 1600, 89 L.Ed. 2d 855 (1986); *Israel v. United States*, 356 F.3d 221 (2nd Cir. 2004); *See* pages 4 & 5 of Governor Camacho's Memorandum of Points and Authorities.

---

[1] The Attorney General's Office originally represented the Governor of Guam in this case but at his request, the Governor has been permitted to retain outside counsel for this case.

*Page 2*
*Memorandum of Points and Authorities in Defendants Government of Guam and*
*Attorney General Douglas B. Moylan in Support of Motion Under FRCP 12(b)(1) & (6)*
*To Dismiss First Amended Complaint for Lack of Subject Matter Jurisdiction*
*District Court Case No. CV04-00038*

Case 1:04-cv-00006   Document 162-4   Filed 02/16/2005   Page 3 of 43

1    For this reason alone, the Plaintiff has failed to state a claim for relief against Defendant

2    Attorney General Douglas B. Moylan and has misjoined him as a Defendant.    Defendant

3    Attorney General Douglas B. Moylan should, therefore, be stricken as a party in this case.  26

4    U.S.C. §7422(f)(1) & (2), 48 U.S.C. §1421i(h)(2), & FRCP 21.

5        Moreover, the Attorney General of Guam has no jurisdiction over the administration and

6    enforcement of the Guam territorial income tax or the operations of the Guam Department of

7    Revenue and Taxation and the Guam Department of Administration, which are in charge of

8    certifying and paying income tax refunds.  48 U.S.C. §1421i(c), d(2), (e), h(2) & (3);  11 G.C.A.

9    §1102, §1103 , §1103  &  §1104; 5 G.C.A. §20106, §21101 *et seq.*, §21101 *et seq.*, 22101 *et*

10   *seq.*, §22201 *et seq.*, 22301 *et seq.*, §22401 *et seq.* & 30101 *et seq.*  Although the Attorney

11   General of Guam is the chief legal officer of the government of Guam under the Organic Act of

12   Guam and the laws of Guam, it is this Court and not the Attorney General of Guam that will

13   determine the rights and obligations of Plaintiff and Defendant government of Guam in relation

14   to the earned income tax credit in Guam.   48 U.S.C. §1421g(d); 5 G.C.A. 30101 *et seq.* For this

15   additional reason, Plaintiff has failed to state any claim for relief against Defendant Attorney

16   General Douglas B. Moylan and has misjoined him as a defendant.    Defendant Attorney

17   General Douglas B. Moylan should, therefore, be stricken as a party in this case. FRCP 21.

18       Dated this ⟨28⟩ day of October, 2004.

19       OFFICE OF THE ATTORNEY GENERAL

20       **Douglas B. Moylan, Attorney General**

21

22       _____

23       STEPHEN A. COHEN

24       Attorney for Defendants

Solicitor:\Cohen\Torres EITC Dismissal Brief X1\ba

25

*Page 3*
*Memorandum of Points and Authorities in Defendants Government of Guam and*
*Attorney General Douglas B. Moylan in Support of Motion Under FRCP 12(b)(1) & (6)*
*To Dismiss First Amended Complaint for Lack of Subject Matter Jurisdiction*
*District Court Case No. CV04-00038*

Case 1:04-cv-00006    Document 162-4    Filed 02/16/2005    Page 4 of 43

# EXHIBIT J



The Law Offices of

# PHILLIPS & BORDALLO

A Professional Corporation
410 West O'Brien Drive, Suite 102 Hagåtña, Guam 96910-5044
Tel: (671) 477-ABCD (2223) • Fax: (671) 477-2FAX (2329)
" I Erensia, Lina'Ia', Espiritu-ta"

FILED
DISTRICT COURT OF GUAM

DEC - 8 2004

MARY L. M. MORAN
CLERK OF COURT

Attorneys for Petitioners

## DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

JULIE BABAUTA SANTOS, et al.,

    Petitioners,

vs.

FELIX A. CAMACHO, etc., et al.,

    Respondents.

CIVIL CASE NO. 04-00006

**DECLARATION OF MICHAEL F. PHILLIPS IN SUPPORT OF PETITIONER'S RESPONSE TO RESPONDENT GOVERNOR'S OBJECTION TO PEITITONER'S MOTION FOR APPROVAL OF THE ADMINSITRAITON PLAN**

RECEIVED
DEC 08 2004
CALVO AND CLARK, LLP

I, Michael F. Phillips, declare as follows:

1.    I am the attorney of record for the above-named Petitioner, designated by the District Court of Guam as Interim Class Counsel, and duly admitted to practice before this Court. I make this declaration of my own knowledge, and, if called as a witness, I could and would testify to the facts set forth herein;

2.    On February 12, 2004, I filed this class action lawsuit on behalf of my client and all those similarly situated against all named Respondents. I caused to be served a copy of the applicable Summons and Petition upon each Respondent, including Governor Felix P. Camacho.

3.    Shortly thereafter, Assistant Attorney General J. Basil O'Mallan, III contacted me and began discussions regarding the dismissal of the Attorney General of Guam as a named Respondent and the likelihood of the Office of the Attorney General

representing the Governor of Guam and all named Respondents. Attorney O'Mallan informed me the Office of the Attorney General was awaiting feedback and information from the Governor of Guam regarding the determination of whether the Office of the Attorney General of Guam would represent all Respondents. Attorney O'Mallan further explained their office did not think the Attorney General was needed as a Respondent in this case and pointed to the potential conflict in having the Attorney General himself involved in his official capacity and involved as an attorney representing the Governor and all Respondents. I agreed to dismiss the Attorney General from this case as an unnecessary party. See Dismissal, filed March 8, 2004. The Office of the Attorney General then filed the only response or opposition to our Petition three (3) days later, March 11, 2004, after informing me the Governor had agreed the Office of Attorney General should represent all Respondents in this matter;

4. On March 23, 2004, the District Court sent a Scheduling Notice to counsel of record for Petitioner and Respondents. Assistant Attorney General O'Mallan and I began negotiations regarding the required Scheduling Order. We discussed dates and related issues over the phone on numerous occasions, and we also held a formal meeting at the Office of the Attorney General where I proposed and transmitted Petitioner's proposed Scheduling Order and Discovery Plan. Assistant Attorney General O'Mallan infomed me he would consult others in the office (including the Attorney General himself) and then provide me with Respondents' position. We further negotiated minor changes and on April 28, 2004, we filed the required Scheduling Order and Discovery Plan with the District Court;

 

5.      While I cannot specifically recall all who attended each court hearing or proceeding, I do know that at all times the Office of the Attorney General went on record as representing the Governor and Respondents.      On at least one occasion, the Governor's legal counsel, Shannon Taitano, attended a chamber conference (most likely the Scheduling Conference on May 26, 2004) and represented to the Court that she was only attending as an observer on behalf of the Office of the Governor, and further represented that the Office of the Attorney General was representing the Governor in this matter.      In fact, Ms. Taitano made it a point to ensure the record remained clear the Office of the Attorney General represented the Governor and she was simply an observer, notwithstanding her position as "legal counsel" with the Office of the Governor.      Ms. Taitano also represented to Petitioner's counsel that she had done some research on the matter but was relying upon the Office of the Attorney General to represent the Governor in court.

6.      As part of our discovery and trial schedule negotiations, Assistant Attorney General O'Mallan and I agreed this case was primarily a question of law and an expedited discovery and motion period would serve all parties' interests.      Attorney O'Mallan represented he understood the hardship inflicted upon the working poor by not having this matter resolved as quickly as possible.      I represented to Attorney O'Mallan (and to the Court) that I had prepared a motion for summary judgment and expected this case to be resolved as a matter of law.      After discussions before the Court, all agreed the Petitioner would begin the work needed to move for class certification.      I also discussed with Assistant Attorneys General O'Mallan and Phil Issacs my request for leave to amend Petitioner's class action petition to include years prior to 1998.      I

informed the Court of my intent during the Scheduling Conference. Attorney Issacs, who represented the Office of the Attorney General during one hearing, informed me he could not make that decision and suggested I speak with Attorney O'Mallan or the attorney presently assigned to the case. Attorney O'Mallan told me he would have to think about my request and would get back to me;

7.    On June 14, 2004, shortly after the local media revealed the Camacho administration ordered Department of Revenue and Taxation personnel to pay out at least one (1) Earned Income Tax Credit payment, and after the Camacho administration announced a policy of paying out EITC payments albeit on a "hardship" basis, the parties entered into a Settlement Agreement, subject to this Court's approval. During settlement negotiations, the parties agreed to a settlement covering income tax filers for tax years 1996 through 2003 (with the exception of 1997 which the previous administration ordered the Department of Revenue and Taxation to pay shortly before a gubernatorial election), and furthermore Respondents agreed to implement the EITC program beginning tax year 2004.

8.    The Attorney General of Guam raised the possibility of negotiating a settlement of this case with Petitioner's counsel the same week the media ran continuing stories exposing the Governor's Office as having ordered the payment of at least one (1) EITC payment. Negotiations lasted over three (3) days, and included the Attorney General himself, the Acting Governor of Guam and his staff, and representatives of all named Respondents;

9.    Respondent Illagan participated extensively in all negotiations and contributed significantly to the Settlement Agreement. Respondent Illagan remained in

telephonic contact for at least two (2) days, and participated in face to face negotiations in Petitioner's counsel's office on at least one (1) occasion. Respondent Illagan (and at least one other representative from the Department of Revenue and Taxation) participated in at least one internal briefing and also participated in the press conference arranged by the Governor's staff to announce and explain the settlement of the EITC case. During negotiations, Respondent Illagan conveyed his support for the EITC program, his desire to implement the program, and the Government's ability to fully implement the program;

10.    Shortly after the signing of the Settlement Agreement, I was called to the Lt. Governor's Office where, along with Attorney Ricardo Bordallo from my office, we met briefly with the Attorney General, Lt. Governor of Guam (who was no longer Acting Governor), personnel from the Lt. Governor's Office, Respondent Illagan, and John Camacho of the Department of Revenue and Taxation (and possibly others). We discussed a few matters relating to the EITC settlement and after a couple minutes Attorney Bordallo and myself were excused from the meeting. It appeared at all times during and shortly after settlement negotiations that the Lt. Governor of Guam was heading the Government of Guam's effort to resolve this case. At one point the Lt. Governor informed me that one of the reasons for his extensive involvement was the fact it could be difficult for Respondent Governor to work with the Attorney General in matters such as "sit down" negotiations. Shortly before the press conference referred to above, the Acting Governor/Lt. Governor informed me and others present that the Governor was "in the loop" which explained the Governor's staff handling the press

conference.    The Governor appeared on television a fews days    later stating he supported the settlement

11.    On a number of occasions Respondent Illagan represented the Government would be able to honor the payment schedule considered during negotiations. Respondent Illagan cooperated extensively, and in fact remained on call (and possibly at the Department of Revenue and Taxation) through the late hours of the nights the parties negotiated the Settlement Agreement.    Respondent Illagan also provided Petitioner's counsel with his home phone and personal cellular phone number so that Petitioner's counsel could reach him more at any time of the day or night. Respondent Illagan and his assistant, Mr. John Camacho, briefed the Court during the settlement conference on matters such as the Government's positive ability to make the payments called for in the Settlement Agreement and the prior actions of the Department of Revenue and Taxation (including their systematic prevention of EITC filing by amending tax forms so as to prevent EITC applications).    Just a day or two after Petitioner filed this action, Respondent Illagan represented to various local media that he supported the EITC program and, in fact, Respondent Governor had instructed Respondent Illagan to implement the EITC program and commence the required payments;

12.    The proposed Settlement Agreement created a settlement class, known as the "EIC Class," defined to include all persons who (a) filed Guam income tax returns and (b) were and are entitled to be paid refundable earned income tax credits under the Guam Territorial Income Tax and the Earned Income Program for any or all of the following tax years: 1996, 1998, 1999, 2000, 2001, 2002 and 2003.  The proposed



Settlement Agreement provided for a Settlement Amount of Sixty Million Dollars ($60,000,000) to be made available by the Government of Guam to pay for claims made by members of the EIC Class and other fees and expenses in accordance with the Settlement Agreement.

13.    The Government of Guam agreed to pay into an EIC Settlement Fund the amount of Three Million Dollars ($3,000,000) by July 17, 2004, and a total of Twenty Million Dollars ($20,000,000) by the end of June, 2005.    Under the proposed agreement, the Government of Guam also agreed to pay an additional Forty Million Dollars ($40,000,000) over eight years into the fund, and to fully implement and pay refundable earned income taxes for tax years 2004 and beyond.  Counsel for Petitioner requested confirmation Respondents deposited the first installment and Respondent Perez confirmed the required payment pursuant to the terms of the Settlement Agreement;

14.    The Plan of EIC Settlement Administration (the "Administration Plan") defines the recovery achieved for Guam taxpayers who qualify as EIC Class Members, outlines the proposed plan for calculations and payments to individuals, sets out methods used to identify EIC Class Members, and lists the duties and responsibilities of the Department of Revenue and Taxation, and counsel for the parties.  All matters relating to the Administration Plan are subject to further orders as the Court may issue;

15.    On July 16, 2004, this Court vacated the original Objection and Opt Out Date of August 9, 2004 and the November 9, 2004 hearing date on final approval of the Settlement Agreement, pending resolution of two Motions for Intervention.  This Court





also appointed Michael F. Phillips as the interim counsel for the EIC Class. The order did not address the motion for preliminary approval of attorney fees;

16. The Office of the Attorney General, as recently as October, during a hearing before this Court, repeatedly confirmed Respondents intend to honor and are affirmatively proceeding with the Settlement Agreement. Again, the Governor failed to object or transmit any information to the Court or Interim Class Counsel of his intent to challenge the Administration Plan. Furthermore, notwithstanding the published hearing (also previously scheduled pursuant to the Scheduling Order, the Scheduling Conference at which the Governor's representative attended as an observer), the Governor failed to send anyone other than the Attorney General of Guam to represent him.

Respectfully submitted this 8th day of December, 2004.

MICHAEL F. PHILLIPS

# EXHIBIT K

**MANTANONA**
LAW OFFICE

GCIC Bldg., Suite 601B
414 West Soledad Avenue
Hagatna, Guam 96910
Telephone (671) 472-3666
Facsimile (671) 472-3668



RECEIVED
NOV 24 2004
CALVO AND CLARK, LLP

FILED
DISTRICT COURT OF GUAM
NOV 24 2004
MARY L. M. MORAN
CLERK OF COURT



Attorney for **Lourdes M. Perez and Artemio R. Ilagan**

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, et. al., | ) Civil Case No. 04-00006 |
| Petitioners, | ) |
| vs. | ) **DECLARATION OF JOSEPH C.** |
| | ) **MANIBUSAN IN SUPPORT OF** |
| FELIX P. CAMACHO, etc., et. al., | ) **DEFENDANT'S, LOURDES M. PEREZ** |
| | ) **AND ARTEMIO R. ILAGAN OBJECTION** |
| Respondents. | ) **TO (1) PETITIONER'S MOTION FOR** |
| | ) **ORDERS APPROVING THE** |
| | ) **ADMINISTRATION PLAN AND AMENDED** |
| | ) **NOTICE; AND (2) THE ATTORNEY** |
| | ) **GENERAL OF GUAM'S MPA IN** |
| | ) **RESPONSE TO MOTION FOR ORDERS** |
| | ) **APPROVING ADMINISTRATION PLAN** |

I, JOSEPH C. MANIBUSAN, declare that:

1.      I am the Deputy Director of the Department of Administration.  On June 12, 2004, I received a call to meet with the Lieutenant Governor in his chambers on Sunday, June 13, 2004, at 3:00 p.m.

2.      At the time, I was the acting Director for the Department of Administration since the Director, Lourdes Perez, was off-island at the time.

3.      When the Declarant arrived at the Lieutenant Governor's chambers, he was advised by the Lieutenant Governor that they were going to be signing settlement for the Earned Income Tax Credit lawsuit and that a press conference would be held.

4. The Declarant was later informed by the Lieutenant Governor that he would be signing the settlement agreement. The Declarant was never given the settlement agreement to review.

5. The Declarant was sitting next to the Department of Revenue and Taxation Director, Artemio Ilagan, in which both individuals shared the sentiments that they were signing something they had not examined and reviewed.

6. The Declarant stated that he wanted to review the document to see how it would impact his department but did not know how to bring the matter to the attention of the acting governor since all parties were there to execute the agreement.

7. The Declarant though thought that he did not have a choice or the right to refuse to sign or challenge the acting governor at the time. The Declarant believed that he had no option to challenge or refuse to sign and to do so at the time would result in his dismissal. The Declarant executed the document under the duress and fear.

8. The Declarant states that he normally would not execute such an agreement without consulting with the Director of Administration who was off-island and in transit at the time.

I declare under penalty of perjury pursuant to the laws of the United States and of the Territory of Guam that the foregoing declaration is true and correct.

Executed this 24 day of November, 2004.

_____
JOSEPH C. MANIBUSAN

SWORN AND SUBSCRIBED to before me this 24 day of November, 2004.

_____
NOTARY PUBLIC

LISA M. BROADWAY
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: Nov. 25, 2007
P.O. Box 4835 Hagatna, GU 96932

# EXHIBIT L

**MANTANONA**
LAW OFFICE

GCIC Bldg., Suite 601B
414 West Soledad Avenue
Hagatna, Guam 96910
Telephone (671) 472-3666
Facsimile (671) 472-3668

FILED
DISTRICT COURT OF GUAM

NOV 2 4 2004

MARY L. M. MORAN
CLERK OF COURT

Attorney for **Lourdes M. Perez and Artemio B. Ilagan**



## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF GUAM

JULIE BABAUTA SANTOS, et. al., )
                        )
       Petitioners, )
                        )
vs. )
                        )
FELIX P. CAMACHO, etc., et. al., )
                        )
       Respondents. )
                        )
                        )
                        )
                        )
                        )

Civil Case No. 04-00006

**DECLARATION OF ARTEMIO B. ILAGAN
IN SUPPORT OF HIS OBJECTION TO (1)
PETITIONER'S MOTION FOR ORDERS
APPROVING THE ADMINISTRATION
PLAN AND AMENDED NOTICE; AND (2)
THE ATTORNEY GENERAL OF GUAM'S
MPA IN RESPONSE TO MOTION FOR
ORDERS APPROVING
ADMINISTRATION PLAN**

I, ARTEMIO B. ILAGAN, declare that:

1.       The Declarant is the Director of Revenue and Taxation.

2.       On Saturday, June 12, 2004, the Declarant was instructed by the Chief of Staff of the Lieutenant Governor's office to get the data in regards to the Earned Income Credit (EIC). That evening, the Declarant and his staff began to develop a "rough" estimate on a potential payment for the EIC for the years in question. The Declarant states that the $20 million dollar figure which is the basis for this settlement, was a "rough" estimate based upon the 1997 payout and the escalation of the number of taxpayers that seem to be eligible for the EIC. The Declarant believes this rough estimate was used to determine the final total settlement of $120 million dollars.

3.     On Sunday, June 13, 2004, at 3:00 p.m., the Declarant was called to the Lieutenant Governor's office to sign this settlement agreement. The Declarant never had an opportunity to review the settlement agreement, much less determine the impact on his office.

4.     After execution of the settlement agreement, the Declarant was subsequently provided a copy of the agreement. Upon review, the Declarant and his staff submitted recommendations that they felt were vital for the implementation of the plan.

5.     The Declarant further states that he is yet to implement the settlement and administrative plan. The reason for the failure to implement the settlement agreement is the impact it would have financially on his department and on the operations of the accounting processing side of the Department of Revenue and Taxation.

The Declarant states that if he implements the settlement it would entail the following: first, determining every potential member of the class. Secondly, seeing if every potential class member has filed a claim and exhausted administrative remedies in this matter. Third, the Department of Revenue and Taxation must determine if the members are entitled to a tax return. Fourth, that the Department must compare the claims with the previous tax returns to make sure they are consistent. Fifth, to determine whether an audit is necessary. Sixth, if the class member is entitled to a return from his claim then there must be a determination whether the claimant has any offsets owed to any of the Government of Guam departments.

6.     The Declarant states that for him to comply with the order to make a payment available after three (3) months, he will be required to have his entire processing side of the Department of Revenue and Taxation work on this plan which will cause them not to address the timely returns owed to taxpayers. More importantly, the inability to address the returns on a timely manner will result in an estimated $12 million dollar interest penalty



to be paid to the entitled taxpayers. Further, the Declarant states that since the Department will be three (3) months behind the $12 million dollar interest penalty is not a total amount of interest penalty that will be owed and incurred by the Government of Guam. The Government of Guam will continually be behind and incurring further interests penalties until they are caught up.

7.     Further, the Delcarant will state that even if the $1 million dollar appropriations are made as said forth in the settlement agreement that it would not alleviate the end result or the $12 million dollars in interest penalties.

8.     The Declarant feels that his current counsel has a conflicting interest in this litigation. The Declarant feels that the Attorney General's office is more concerned in regards to representing the People's interest which are in conflict with the interests of the Department of Revenue and Taxation. It appears that the Attorney General's office is willing to settle this matter no matter what hardships and penalties will be incurred by the Department of Revenue and Taxation. Further, it seems to not be concerned of any possible criminal ramifications to the Declarant.

9.     Further, the Declarant is not confident in the advice being provided to him. One of the attorneys representing the Declarant is Assistant Attorney General Steven Cohen. Assistant Attorney General Steven Cohen is the author of the opinion which initially rendered that the EITC did not apply to the Territory of Guam. The Declarant does not have faith in the Attorney General of Guam to protect his interest and those of the Department of Revenue and Taxation.

10. The Declarant feels that a conflict of interest exists in his representation by the Attorney General's office.

ARTEMIO B. ILAGAN
Director of Department of
Revenue and Taxation
Government of Guam

SUBSCRIBED AND SWORN to before me this 24th day of November, 2004.

NOTARY PUBLIC

LISA M. BROADWAY
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: Nov. 25, 2007
P.O. Box 4835 Hagåtña, GU 96932

# EXHIBIT M



**MANTANONA**
LAW OFFICE

GCIC Bldg., Suite 601B
414 West Soledad Avenue
Hagatna, Guam 96910
Telephone (671) 472-3666
Facsimile (671) 472-3668

FILED
DISTRICT COURT OF GUAM

NOV 2 4 2004

MARY L. M. MORAN
CLERK OF COURT

RECEIVED
NOV 2 4 2004
CALVO AND CLARK, LLP

Attorney for **Lourdes M. Perez and Artemio R. Ilagan**

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, et. al., | ) Civil Case No. 04-00006 |
| | ) |
| Petitioners, | ) |
| | ) |
| vs. | ) **DECLARATION OF LOURDES M. PEREZ** |
| | ) **IN SUPPORT OF HER OBJECTION TO (1)** |
| FELIX P. CAMACHO, etc., et. al., | ) **PETITIONER'S MOTION FOR ORDERS** |
| | ) **APPROVING THE ADMINISTRATION** |
| Respondents. | ) **PLAN AND AMENDED NOTICE; AND (2)** |
| | ) **THE ATTORNEY GENERAL OF GUAM'S** |
| | ) **MPA IN RESPONSE TO MOTION FOR** |
| | ) **ORDERS APPROVING** |
| | ) **ADMINISTRATION PLAN** |
| | ) |
| | ) |

I, LOURDES M. PEREZ, declare that:

1.      Declarant is the Director of the Department of Administration.

2.      That as the Director of the Department of Administration, I am of the belief that the settlement and administration plan is impractical, illegal and will inevitably jeopardize the continual operation of the Government of Guam.

3.      The settlement agreement in the administrative plan calls for the Government of Guam to pay the settlement with "unencumbered funds".

Julie B. Santos, et. al, v. Felix P. Camacho, etc., et. al.
Declaration of Lourdes M. Perez
Page 1

Case 1:04-cv-00006     Document 162-4     Filed 02/16/2005     Page 23 of 43

4.      Due to the financial state of the government, there are no surplus funds or non-appropriated funds in the government, much less that could be used for the payment of this settlement agreement.

5.      The Department of Administration in an effort to try to comply with the settlement agreement in the administrative plans has been taking and setting aside funding from "appropriated funds".   This has been made possible by the monetary advances from Section 30 funds which are to be prorated and used for the operations of the Government of Guam for the year 2005.  The use of these funds are taking away from the duly designated appropriations and governmental recipients.  This act of withholding appropriated funds does have consequences.   The results of the withholding of these appropriated funds are starting to be seen and felt in the operations of the government and will be seen more strongly felt as the fiscal year goes on.

6.      The use in deduction of these appropriated funds will result in long reaching affects to the Government of Guam.  The government will eventually be without resources to make payment for the use of the government utilities and vendors.   Secondly, the government will not be able to make cash allotments to the other Government of Guam agencies duly appropriated, such as the Department of Education operations.   This of course, will lead to hardships in the operations of those departments.  Third, the inevitable result from the use of appropriated funds can lead to the Government of Guam's inability to meet payroll which will result in the reduction of work hours, the inability to make payroll and/or payless paydays.

7.      The Declarant states that the settlement agreement was entered without her consent and without a fiscal impact analysis that was necessary to be conducted prior to agreement of such a plan. This is evidenced in the September 20, 2004 from the Director

Julie B. Santos, et. al, v. Felix P. Camacho, etc., et. al.
Declaration of Lourdes M. Perez
Page 2
Case 1:04-cv-00006     Document 162-4     Filed 02/16/2005     Page 24 of 43

8.     The Declarant is also concerned in regards to current actions as it may be deemed a criminal act in regards to spending or using appropriated funds for other purposes than declared by the legislature in violation of 5 GCA Division 2, Chapter 22. Further, the Declarant further believes it is improper and illegal for her to continue such actions as it would violate the budget bill, Public Law 27-106 and 107.

9.     Declarant as a party does not feel her concerns are addressed and her rights are protected with her current attorney, the Attorney General of Guam. The Attorney General's office has been slow or unresponsive to her inquiries and concerns. Further, she along with the Governor disagrees with the Attorney General's opinion as to the legality of payment of the settlement agreement would not constitute a criminal act under 5 GCA Division 2, Chapter 22, Article 4.

I declare under penalty of perjury pursuant to the laws of the United States and of the Territory of Guam that the foregoing declaration is true and correct.

Executed this 23 day of November, 2004, in Hagatna, Guam.

LOURDES M. PEREZ
Director of Department of Administration
Government of Guam

SUBSCRIBED AND SWORN to before me this 23 day of November, 2004.

NOTARY PUBLIC

LISA M. BROADWAY
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: Nov. 25, 2007
P.O. Box 4835 Hagatna, GU 96932

Julie B. Santos, et. al, v. Felix P. Camacho, etc., et. al.
Declaration of Lourdes M. Perez
Page 3

Case 1:04-cv-00006     Document 162-4     Filed 02/16/2005     Page 25 of 43

# EXHIBIT N



*Office of the Governor of Guam*

P.O. Box 2950 Hagåtña, Guam 96932
TEL (671) 472-8931 · FAX (671) 477-4826 · EMAIL: governor@mail.gov.gu

**Felix Perez Camacho**
*Governor*

**Kaleo Scott Moylan**
*Lieutenant Governor*



RECEIVED
SEP 1 7 2004
1:51 PM
A... GENERAL'S OFFICE

**1 6 SEP 2004**

Stephen A. Cohen
Assistant Attorney General
Office of the Attorney General
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910

Re:    Julie Babauta Santos v. Felix P. Camacho, Governor of Guam, et al;
       District Court of Guam, Civil Case No. 04-00006

Dear Steve:

We have reviewed the materials that you forwarded to our offices on September 9 from Mike Phillips. We have concerns regarding Mr. Phillips' proposal. I understand from Ray Souza that you described it as an attempt by Mr. Phillips to get a new settlement under the guise of an administration plan. We agree.

However, we have greater concerns regarding the settlement as a whole that we would like addressed before any consideration is given to Mr. Phillips' proposal. As you know, Governor Camacho was never consulted with regard to the June 2004 settlement agreement entered into by Attorney General Moylan and Acting Governor Moylan. Therefore, we would like this opportunity to raise the concerns the Governor has regarding the agreement.

The Governor's most significant concern is that the settlement is not contingent on legislative funding. This is a concern as a practical matter because the Legislature has failed to make an appropriation since the settlement was executed. However, even if the Legislature had made an appropriation, we would be concerned because we are unsure of whether the contract complies with Guam law.

Guam law forbids any officer of the Government of Guam from involving "the government of Guam in any contract or other obligation, for the payment of money for any purpose, in advance of the appropriation made for such purpose." 5 G.C.A. § 22401(a)(3); *see Pangelinan v. Gutierrez*, 2003 Guam 13 (2003), *reconsidered in part on other grounds* 2004 Guam 16. Further, Guam law forbids the participation in any contract that requires the expenditure of non-appropriated funds. *See* 5 G.C.A. § 22401(a)(2).

Based on these laws, we are concerned that the settlement agreement is invalid. We therefore require an explanation as to how the settlement agreement complies with Section 22401's ("Illegal Expenditures") provisions before we can further respond.

We also are concerned with certain structural problems that we see with the settlement agreement. It appears that under the settlement agreement, and under Mr. Phillips' proposed administrative plan, Mr. Phillips will receive 10% of the $60 million no matter how many prospective class members may opt-out. Given that the settlement has not led to a complete peace for the Government, but instead gave birth to both the intervention motions and the new *Torres* case, we are concerned that the Government will be spending $6 million to purchase a

settlement with only a limited number of plaintiffs while facing future liability to a greater number of plaintiffs. This is another area that we would like to have addressed in your response.

Further, as the agreement is written, the Government could end up paying the opt-in plaintiffs 100% if there are a substantial number of opt-outs. Given the potentially strong defenses that existed to the class action and lack of any litigation in the case, we would like to know what procedural safeguards exist regarding this matter.

We also would like a better understanding of how the determination was made to include what appear to be time-barred claims. Related to this, we would like to know why claims from 1996 were favored in the settlement, even though those claims are arguably less meritorious given the statute of limitations issue.

The final concern we have regarding the settlement is our lack of knowledge of the history of the negotiations of the settlement. We want to review all information concerning the settlement and its negotiations so that we are fully informed prior to the hearing. Therefore, please transmit to us the information you have on the negotiations, including the materials exchanged in negotiating the settlement, how fees were agreed to in the settlement, letters and memos regarding compliance with Guam's illegal expenditure laws (§ 22401), and any other information that may be relevant. We want to review this information to evaluate Mr. Phillips' request and to give your office instructions on how to proceed. Further, we want to ensure that all such information is preserved during any litigation relating to EITC.

Assuming our concerns regarding the settlement are addressed, we also have concerns regarding Mr. Phillips' proposal. The objective of the plan appears to be securing payments of attorneys' fees as each payment is made into the settlement fund. Any condition permitting lawyers to receive fees before amounts are actually disbursed to class members is obviously unacceptable to the Governor.

Next, Mr. Phillips' plan seeks to place the burden of almost one million dollars in administration costs on the Government. This would appear to be another unappropriated expenditure, and on that ground alone the Governor must refuse. Further, one million dollars would be a material change to the settlement at a time when we all know the Government of Guam continues to be strapped for cash.

Lastly, we are concerned that the proposed dates in the administrative plan are all in the immediate future. Given the appeal filed by one of the would-be interveners, it would be of concern to us were the settlement to be approved before the appeal is resolved. It would be unfortunate if funds were distributed, only to have the settlement thrown out based on the appeal.

We realize that we have raised multiple issues, responding to which will require some effort. However, we hope that you are able to respond quickly as some of the issues (particularly with regard to the illegal expenditures issue) place the Governor in a position where he may need to act. Thank you for your time on this matter.

Very truly yours,

Shannon Taitano

# EXHIBIT O

 

*Office of the Governor of Guam*

P.O. Box 2950  Hagåtña, Guam 96932
TEL: (671) 472-8931 • FAX: (671) 477-4826 • EMAIL: governor@mail.gov.gu

Felix Perez Camacho
*Governor*

Kaleo Scott Moylan
*Lieutenant Governor*

**1 6 NOV 2004**

The Honorable Vicente C. Pangelinan
Speaker
*Mina' Bente Siete Na Liheslaturan Guåhan*
155 Hessler Street
Hagåtña, Guam 96910

### Re: Settlement Contract in *Santos v. Camacho*, CV Act. CIV 04-00006

Dear Speaker Pangelinan:

      The Governor provides this report regarding the above action to the Legislature pursuant to 5 G.C.A. § 22401 (the "Illegal Expenditures Act"). As you know, that section states in the relevant portion of subpart (a):

> No officer or employee of the government of Guam, including the Governor of Guam, shall:
>
> (1) Make or authorize any expenditure from, or create or authorize any obligation under, any appropriation or fund in excess of the amount available therein, or for other than an authorized purpose;
>
> (2) Commence, continue, or proceed with any operational activity, construction, improvement, contract, or obligation without an appropriation or fund for the payment thereof; or after any such appropriation or fund is exhausted;
>
> (3) Involve the government of Guam in any contract or other obligation, for the payment of money for any purpose, in advance of the appropriation made for such purpose;

      It further states in subpart (e): "Any violation of this Section by an officer or employee of the Executive Branch shall be reported at once to the Governor by the head of the department or agency concerned, and the Governor shall furnish a report thereon, including the action taken, to the Legislature."

      In February 2004, Julie Babauta Santos filed the action entitled *Santos v. Camacho*, District Court of Guam Case No. CV04-00006 against the Governor of Guam,



the Director of the Department of Revenue and Taxation, the Director of Department of Administration, and the Government of Guam. The lawsuit seeks to recover the Earned Income Tax Credit ("EITC") on behalf of all eligible taxpayers. A copy of the complaint is attached.

On June 14, 2004, while the Governor was off-island, the acting governor (Lt. Governor Moylan) and Attorney General Moylan entered into a settlement agreement with plaintiff's counsel, Michael Phillips ("Settlement Contract"). The Settlement Contract provided that the Government of Guam would pay ten percent (10%) of the $60 million settlement amount, which is $6 million, to Mr. Phillips in attorneys' fees. It further provided that the Government would pay the rest, or $54 million, in alleged tax refunds. And it provided that the Government would pay the EITC tax credit in *future* tax years.

The Settlement Contract does not identify any source of appropriation to pay the $54 million in purported tax refund claims or $6 million in attorneys' fees. The Settlement Contract does not identify any appropriation to pay EITC tax refund claims in future tax years. The Settlement Contract is not subject to the Legislature's decision to appropriate funds to make these payments. In sum, the Settlement Contract completely bypasses the Legislature's power over the appropriation of funds. This is completely contrary to the words and spirit of the Organic Act, which creates a series of checks and balances to stop any one officer (here, the Attorney General) from committing the government to a $60 million obligation without oversight. A copy of the tentatively approved Settlement Contract is attached to this report. Exhibit A to this report summarizes the contract's key terms.

Based upon a stipulation of the parties, the District Court has granted preliminary approval of this Settlement Contract. It has not given final approval. The Governor recently filed an objection with respect to the approval of the Settlement Contract on grounds that it violates Guam law. The District Court acknowledged the Governor's concerns and has set a briefing and hearing schedule on the Governor's objections. A copy of the Court's briefing Order is attached hereto.

Although the Attorney General's office was counsel of record in this matter, the Governor's counsel became concerned regarding these issues and sent a letter to the Attorney General. After a substantial delay, the Attorney General's office issued a legal opinion to the Governor. It stated that the tentatively approved Settlement Contract is illegal with regard to the payment of future EITC tax credits. It stated that the $6 million in attorneys' fees and $54 million in purported tax refunds were legal. A copy of this letter is attached.

Although the finding that the future payments are illegal already voids the contract, the Governor subsequently inquired as to the Attorney General's rationale for finding the $6 million in attorneys' fees and $54 million in purported refund claims legal. The Governor questioned the Attorney General's rationale that these were legal simply because the Governor has the authority to pay final tax judgments from "unencumbered" funds under 48 U.S.C. § 1421i(h)(2). First, the authority to pay final judgments does not necessarily include the power to contract for such a judgment. Second, there are not nearly enough unencumbered funds for the Governor to make the monthly payments required by the settlement contract. Third, $6 million in attorneys' fees is not a payment of a tax refund judgment. Fourth, the Governor can only pay "final" judgments under 48 U.S.C. § 1421i(h)(2) and the settlement requires interim payments even before a final judgment is entered.

The Governor raised these additional reasons for concluding that the settlement was illegal with the Attorney General. The Attorney General refused to respond. Instead, on November 8, 2004 the Attorney General filed papers in District Court that continued to seek to implement an administrative plan for the settlement. The Attorney General filed these documents in the name of the Governor *in direct contravention of the Governor's instructions.* The Attorney General did this even though his own office had agreed that the settlement was illegal. Because of the legal concerns stated above, the Governor has filed papers opposing the Attorney General's recent filing and position regarding the EITC settlement.

The essence of the Governor's filing was to explain to the Court why he has concluded that the contract is illegal and in violation of the Illegal Expenditures Act. *See* 5 G.C.A. § 22401(a)(3). These papers also explained that because it is illegal, no further action can be taken to implement this contract. *See* 5 G.C.A. § 22401(a)(2) (forbidding the participation in any contract that requires the expenditure of non-appropriated funds); *Pangelinan v. Gutierrez*, 2003 Guam 13 (2003) (contract that violates Illegal Expenditures Act is void), *reconsidered in part on other grounds* 2004 Guam 16.

As you know, Governor Camacho is strongly in favor of the Earned Income Tax Credit. He wants to make sure that eligible taxpayers receive the refunds to which they are entitled. But he also knows that no matter how important this tax credit is, the laws of Guam must be followed. Before any money may be paid out, it must be duly appropriated by the Legislature or federal funding must be secured. Neither the Attorney General nor any other official may attempt to override the Legislature's powers to appropriate funds.

The Governor believes that the appropriate mechanism for making any refunds should be through a claims process established by the Legislature and Governor.

The Government should not have to spend $7 million so that qualified taxpayers receive only 50% due to them. Only a structure established by the Legislature and Governor can remedy the current situation. Indeed, without our combined efforts, the Government and our people may never find the right solution. Indeed, a second class action has been filed against the Government and Governor, illustrating that the settlement has not created permanent peace for the Government.

Further complicating this matter is the fact that the settlement states that it may pay taxpayers as little as fifty percent of their claims. If there is to be a solution to this matter, it must be a fair solution that does not arbitrarily cut-off taxpayer's rights in favor of paying attorneys' fees and administrative costs.

We have repeatedly asked the Attorney General, both orally and in writing, for further information regarding the negotiation of the Settlement Contract and the advice his office provided to the government regarding it. We have not received any acknowledgment of this request, much less a response. Along with opposing the illegal contract, the Governor will continue to seek these papers.

Very Truly Yours,

Shannon Taitano
Legal Counsel to the Governor of Guam
On Behalf of the Governor of Guam,
Felix P. Camacho

cc:  All Senators
     Kaleo S. Moylan, Lt. Governor of Guam
     Art Ilagan, Director, Department of Revenue & Taxation
     Lourdes Perez, Director, Department of Administration

## Exhibit A

## Summary of Tentatively Approved Settlement Contract

The Settlement Contract provides for the following payment of funds:

1.    Payment of Attorneys Fees to Plaintiff's counsel of $6 million from the Settlement Fund;

2.    Payment of $60 million over a term of 9 years to the Plaintiff's class, an amount intended to cover refunds for the years of 1996, 1998, 1999, 2000, 2001, 2002 and 2003;

3.    Class members are to receive 50%; qualified tax payers may "Opt Out" of class.

4.    Payment of this amount through payments in a special account (the "EIC Settlement Fund") of:

   a.  $ 3,000,000.00;

   b.  Minimum payment of $1,545,454.54 for months 2-11 following the Settlement Contract (for a minimum total of Seventeen Million ($17,000,000.00);

   c.  Minimum payment of $ 5,000,000.00 on or before June 30 of each year beginning in 2006 through 2013.

5.    Payment of the EITC in future tax years.

# EXHIBIT P



RECEIVED
FEB 07 2005
CALVO AND CLARK, LLP

**FILED**
DISTRICT COURT OF GUAM

IN THE DISTRICT COURT OF GUAM FEB - 7 2005

TERRITORY OF GUAM

* * *

**MARY L.M. MORAN**
**CLERK OF COURT**

JULIE BABAUTA SANTOS,           )
individually, and on behalf     )
of all those similarly situated,)
                                )
              Plaintiffs,        )
                                )
     vs.                         )   CIVIL CASE
                                )   NO. 04-00006
FELIX A. CAMACHO,                )
Governor of Guam, et al.,        )
                                )
              Defendants.        )
_____ )


TRANSCRIPT OF PROCEEDINGS

BEFORE

THE HONORABLE JOAQUIN V.E. MANIBUSAN, JUNIOR
Magistrate Judge

**HEARING ON MOTIONS**

**THURSDAY, JANUARY 25, 2005**
* * *

Wanda M. Miles
Official Court Reporter
District Court of Guam

1          **DIRECT EXAMINATION**

2     BY MR. WEINBERG:

3          Q.    Mr. Ilagan, I'm Rob Weinberg for the Attorney

4     General's Office.

5               You were an original signatory to the

6     settlement agreement, were you not?

7          A.    Yes, sir.

8          Q.    And this is in June of last year?

9          A.    Yes, sir.

10         Q.    Did you have an opportunity to talk to anybody

11    at the Attorney General's Office about that agreement?

12         A.    Prior to signing?

13         Q.    Have you spoken to anyone prior to, to signing

14    it, yes.

15              MR. CALVO:   Objection, Your Honor.   My

16    understanding on the proffer by the Attorney General's

17    Office at this preliminary stage is that they were

18    going to strictly delve into the procurement issue and

19    not the other matters that are going to be before the

20    Court later on, I imagine, this afternoon.

21              THE COURT:   Mr. Weinberg, is that a

22    preliminary question?

23              MR. WEINBERG:   Well, Your Honor, I think it

24    goes to the issue of why Mr. Ilagan has requested

25    independent counsel.   At one point he was satisfied

1  with counsel's -- with representation from the Attorney

2  General's Office and at some point later he was not,

3  and I'm just trying to get to, to find out at what

4  point he changed his mind about the Attorney General's

5  Office representing him.

6  　　　　THE COURT:  Why don't we cut into the chase

7  and ask the question directly?

8  　　　　MR. WEINBERG:  Well, let me ask you that

9  question directly, Mr. Ilagan.

10  　　Q.  At what point did you decide that you did not

11  want to be represented by the Attorney General?

12  　　A.  　When you look at the, the circumstances of the

13  settlement, it was really settled too fast.  We were

14  called Friday night; John, my deputy was called Friday

15  night, we met Saturday, we suggested ways to implement

16  a plan that the Lieutenant Governor who was Governor at

17  that time wanted to happen that weekend, it was too

18  short --

19  　　Q.  Let me slow you down.  When you say we met on

20  a Saturday, who is we?

21  　　A.  　The deputy, John Camacho, myself, and Paul

22  Pablo.

23  　　Q.  Paul who?

24  　　A.  Paul Pablo.

25  　　Q.  And who is he?

1       A.    He's the Tax Enforcement Administrator.

2       Q.    And where did you meet?

3       A.    In my office.

4       Q.    Was anyone else present?

5       A.    Joe Rios was there, but he just came in from

6    the states, his father was dying, so he really didn't

7    participate, he went home.

8       Q.    And so back in, this was -- this is in what,

9    June the 13th, or the --

10      A.    This is Saturday night.

11      Q.    Saturday night in June?

12      A.    Right.

13      Q.    Of 2004?

14      A.    Right.

15      Q.    And at that point there, did you -- were you

16   dissatisfied with the Attorney General's

17   representation?

18      A.    Uhm, we never met.

19      Q.    When you signed the settlement agreement where

20   were you; who was present?

21      A.    Uhm, in the conference room, it was John,

22   myself, Paul Pablo, Joey Manibusan --

23      Q.    And for the record, who is Joey Manibusan?

24      A.    He's the deputy director for Department of

25   Administration.

1    Q.    Anyone else present?

2    A.    The media was there.

3    Q.    I'm sorry?

4    A.    The media was there, the Lieutenant Governor

5    was there, the AG was there, uhm, Mr. Mike Phillips was

6    there.

7    Q.    And what reservations did you have about the

8    settlement agreement at that time?

9    A.    We didn't really review it, it was just given

10   to us that day to, to look at.

11         Actually they gave it to us a few minutes

12   before the signature, and then they pulled it back;

13   and then when it was ready for signature they gave it

14   back to us to sign.

15   Q.    Since you've signed it, have you had an

16   opportunity to review the settlement agreement?

17   A.    Yes.

18   Q.    All right.  And since that time, what if any

19   objections or reservations do you have about that

20   settlement agreement?

21   A.    There's a lot of things in there that I didn't

22   see that we can -- that I felt was not fair.  One thing

23   was -- let's see -- allowing only taxpayers who have

24   filed a return to claim EIC; other taxpayers who have

25   not filed because they didn't need to, and we weren't

1          (Whereupon proceedings concluded at 4:26 p.m.)

2                          *   *   *

3

4

5

6                  CERTIFICATE OF REPORTER

7

8    CITY OF AGANA        )
                          ) ss.
9    TERRITORY OF GUAM    )

10

11          I, Wanda M. Miles, Official Court Reporter

12   of the District Court of Guam, do hereby certify the

13   foregoing pages 1-199, inclusive, to be a true and

14   correct transcript of the digital recording made of the

15   within-entitled proceedings, at the date and times

16   therein set forth.

17          Dated this 4th day of February, 2005.

18

19          _Wanda M. Miles_____

20

21

22

23

24

25