

The Law Offices of

# PHILLIPS & BORDALLO

A Professional Corporation
410 West O'Brien Drive, Suite 102 Hagåtña, Guam 96910-5044
Tel: (671) 477-ABCD (2223) • Fax: (671) 477-2FAX (2329)
" I Erensia, Lina'la', Espiritu-ta"

Attorneys for Petitioner
Interim Class Counsel



FILED
DISTRICT COURT OF GUAM
MAR - 2 2005
MARY L.M. MORAN
CLERK OF COURT
(166)

**DISTRICT COURT OF GUAM**

**TERRITORY OF GUAM**

| | |
|---|---|
| JULIE BABAUTA SANTOS, *et al.*, ) | CIVIL CASE NO. 04-00006 |
| ) | |
| Petitioners, ) | |
| ) | **PETITIONER'S OPPOSITION TO** |
| vs. ) | **RESPONDENT GOVERNOR'S MOTION** |
| ) | **TO VACATE THE STIPULATED ORDER** |
| FELIX A. CAMACHO, etc., *et al.*, ) | **OF JUNE 17, 2004 PRELIMINARY** |
| ) | **APPROVING SETTLEMENT** |
| Respondents. ) | |
| ) | |

The Petitioner, individually and on behalf of all those similarly situated (hereinafter "EIC Class"), through her attorneys of record Phillips and Bordallo, P.C., by Michael F. Phillips, submits this Opposition to Respondent Governor Felix P. Camacho's Motion to Vacate the Stipulated Order of June 17, 2004 Preliminarily Approving Settlement.

## BACKGROUND

On February 12, 2004, Petitioner brought this Class Action Petition for the recovery of unpaid refundable earned income tax refunds and to compel the full implementation of the program providing for earned income tax credits. On June 14, 2004, shortly after the local media revealed that Respondents, at the instruction of Respondent Governor's chief of staff, paid <u>one</u> taxpayer his 1998 Earned Income Tax Credit payment, the parties entered into a Settlement Agreement, subject to this Court's approval. The factual background following the Petitioner's filing of this class action lawsuit and leading up to Respondent Governor's Motion

1

ORIGINAL

to Vacate is detailed in Petitioner's Response to Respondent Governor's Objection to Petitioner's Motion for Approval of the Administration Plan ("Pet's Resp."), pp. 2-6. The entire Response, as it includes arguments relevant to this Opposition, is incorporated herein by this reference.

Prior to the filing of this class action lawsuit, with the exception of tax year 1998, Respondents engaged in a pattern of behavior in direct conflict with the mandates provided by the Organic Act, local law, federal law, and even local judicial directives. The most egregious action included the prevention and prohibition of Guam taxpayers from filing refund claims related to the earned income tax credit program. In essence, Respondents prohibited otherwise qualified refund recipients from providing the Department of Revenue and Taxation ("Rev & Tax") with the information necessary to prove qualification for refundable earned income taxes. Respondents' behavior included: officially denying the applicability of the earned income tax credit program; eliminating in its entirety the earned income tax credit program; prohibiting, preventing and refusing to accept refund claims; modifying income tax returns to include notices of the inapplicability of the program and/or "blacking out" the applicable provision necessary to institute a claim for earned income tax credit refunds; and providing media releases and public information programs informing Guam taxpayers that the program is not applicable to Guam taxpayers and instructing such taxpayers not to file claims for earned income tax credit refunds. See for example, Guam Income Tax Returns for Tax Years 1996-2004. See also In Re Request of I Mina' Bente Sing'ko Na Liheslaturan Guahan Relative to the Application of the Earned Income Tax Program to Guam Taxpayers, 2001 Guam 3. After almost a decade, Respondent Governor, consistent with the mandates of the Court's early Order and the Settlement Agreement, issued the apparent command to at least

"accept" earned income tax credit refund claims. See Executive Order 2005-01, attached hereto as Exhibit "A". Respondent Governor now seeks this Court's assistance to renege on the parties' Settlement Agreement, and to maintain and support Respondents' unconscionable actions in failing to administer and enforce the Guam Territorial Income Tax ("GTIT") in accordance with the Organic Act, federal law, local law, and judicial directives.

## ARGUMENT

### A. THE CLASS ACTION COMPLAINT PLAINLY ESTABLISHES SUBJECT MATTER JURISDICTION.

Petitioner filed this case alleging jurisdiction under 48 U.S.C. §1421l(h) and alternative jurisdiction under 28 U.S.C. §1361. Section 1421i(h) provides this Court with exclusive, original jurisdiction over all judicial proceedings in Guam with respect to the Guam Territorial income tax. Section 1361 provides that the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.[1]

Respondent Governor moves the Court to revert back to pre settlement and pre preliminary approval so Respondent Governor may litigate one portion of the initial case. Judgment may, in some instances, be void for lack of subject matter jurisdiction; however, this occurs only where there is plain usurpation of power, when a court wrongfully extends its jurisdiction beyond its scope of its authority. Gschwind v Cessna Aircraft Co., 232 F3d 1342 (10th Cir. 2000). Absence of subject matter jurisdiction may render a judgment void, however this occurs only where there is a plain usurpation of power; since federal courts have "jurisdiction to determine jurisdiction." An error in interpreting a statutory grant of jurisdiction is

---

[1] See also 48 U.S.C. 1424(b) ("The District Court of Guam shall have the jurisdiction of a district court of the United States").

not equivalent to acting with total want of jurisdiction and does not render a judgment a complete nullity. Kansas City S. R. Co. v Great Lakes Carbon Corp., 624 F.2d 822 (8th Cir. 1980).

1.    Respondents Illegally Deny and Reject the Provisions of the GTIT Related to Earned Income Tax Credits.

Petitioner alleges Respondents' denial and rejection of the applicability of the provisions of the Guam Territorial Income Tax ("GTIT") mandating Guam taxpayers are eligible for refundable earned income tax credits and entitled to all of the benefits and procedural processes afforded thereby .[2]

Section 7422(a) of Title 28 U.S.C. provides in part for an administrative remedy prior to maintaining a suit for tax refunds, such administrative remedy described as the filing of "a claim for refund or credit" "according to the provisions of law in that regard, and the regulations . . . established in pursuance thereof." 26 U.S.C. §7422(a). Unlike any other case involving tax refund suits, the failure to file refund claims, and objections to the processes established thereto, the Petition alleges that Respondents denied the applicability of and failed to implement the entire mandate of federal law related to earned income tax credits, which includes Respondents' failure to: recognize the eligibility of Guam taxpayers to earned income tax credits; implement the program and existing regulations and procedures requiring the

---

[2] See Petition, ¶¶ 10 ("The class members' claims against Respondents involve questions of common or general interest, in that the statutory formula used to determine qualification for refundable earned income tax credits has never been applied."), 15 (Congress applied certain provisions of the Internal Revenue Code, 26 U.S.C. § 1 et. seq. ("IRC."), to Guam as the Guam Territorial Income Tax, including Subtitle A, which contains the EIC. 26 U.S.C. §32."), 18 ("Guam taxpayers have been eligible for the EIC since its effective date in 1975"), 23 ("the Governor is required to enforce and administer the EIC"), 24 ("Respondents have refused requests for refundable earned income tax credits, and have publicly continued to allege that the EIC is inapplicable to Guam taxpayers"), 25 ("Respondents have failed to pay refundable earned income tax credits to Petitioner, and continued to deny Guam taxpayers the benefits of the [EIC], as mandated by the Organic Act and Guam law."), and 27 ("Petitioner seeks relief in the form of damages for all unpaid refundable earned income tax credits . . .").

acceptance of refund claims; accept refund claims; and pay refundable earned income tax credits to eligible Guam taxpayers.

Respondents are legally required to administer and enforce section 32 of the Internal Revenue Code, as part of the GTIT, and may not vary from the regulations established by the Internal Revenue Service. See 48 U.S.C. §1421i (d)(2) ("[R]ules and regulations not inconsistent with the regulations prescribed under [26 U.S.C. 7654 (e)] for enforcement of the [GTIT] shall be prescribed by the Governor.") (emphasis added); and 11 G.C.A. §§1104 and 1107. The applicable regulations of the Internal Revenue Service require refund claims be made on the income tax return for the applicable tax year. See 26 C.F.R. 301.6402-3 (a)(1) ("In general, in the case of an overpayment of income taxes, a claim for credit or refund of such overpayment shall be made on the appropriate income tax return.").[3]  (emphasis added).

Respondents' actions in denying the applicability of the entire mandate of the GTIT related to earned income tax credits, and their affirmative action, in particular, eliminating, preventing and prohibiting the filing and acceptance of refund claims by illegally modifying tax returns in a manner inconsistent with federal law and federal regulations, and specifically instructing Guam taxpayers not to file earned income tax credit refund claims, require the conclusion that the specific allegation of the prior filing of claims to maintain jurisdiction is unnecessary and counterintuitive.[4]

---

[3] The "overpayment" encompasses the excess of credits allowed under the earned income credit provision against tax liability. See 26 U.S.C. §6401(b)(1) ("If the amount allowable as credits under subpart C of part IV of subchapter A of chapter 1 (relating to refundable credits) exceeds the tax imposed by subtitle A . . . the amount of such excess shall be considered an overpayment."). See also Sorenson v. Sec'y of Treasury, 475 U.S. 851 (1986) ("[Section] 6402(a) directs the Secretary to credit or refund 'any overpayment' to the person who made it. An individual who is entitled to an earned-income credit that exceeds the amount of tax he owes thereby receives the difference as if he had overpaid his tax in that amount.").

[4] Petitioner did allege that the Government refused requests for refundable earned income tax credits - this allegation refers to claimants who were allowed by the Government of Guam to file claims for refundable earned

Respondents have the responsibility and obligation under federal law to enforce and administer the provisions of the GTIT, including the processes and procedures to allow Guam taxpayers the right to file refund claims and to accept such filings, regardless of the ultimate merit of such claims. Whether Respondents' illegal removal of the refund filing process was a result of a misinterpretation of their rulemaking authority, or a gross misinterpretation of the provisions of the GTIT, refund claimants were left with no filing process to pursue. Respondents also have the obligation to pay refundable earned income tax credits to qualified Guam taxpayers. Respondents' denial and rejection of their responsibilities and obligations, including those which form the exact administrative remedy required by Section 7422, provide complete inapposite facts to the authority Respondent Governor cites to prevent jurisdiction and continue Respondents' unlawful behavior. No case cited by Respondent Governor includes the self-crafted situation here where the taxing authority specifically and officially denies the applicability of the entire mandate regarding the refund process, and further, eliminates, prevents, and prohibits the filing of claims both with the Department of Revenue and Taxation and with the District Court of Guam!

A review of the purposes of the provisions requiring the filing of a claim further demonstrate jurisdiction in this case is appropriate. "The purpose of a claim for refund is to put the government on notice that it should subject the claim -- as distinguished from merely the legal principles that underlie it -- to administrative review." Martin v. United States, 833 F.2d 655, 661 (7th Cir. 1987). In rejecting claims that formal refund claim filing requirements were waived, the Seventh Circuit explained: "the showing should be unmistakable that the Commissioner has in fact seen fit to dispense with his formal requirements and to examine the

_____

income tax credits for the tax year 1998. The Government never rejected these claims - but simply refuses to pay the refunds due.

merits of the claim." Id. (citing Angelus Mining Co v. Commissioner., 325 U.S. 293, 297 (1945). The rationale of Martin supports Petitioner's position that they cannot be denied access to this Court based on their non-compliance with an entirely eliminated process. See also Pala, Inc. v. United States, 234 F.3d 873, 879 (5th Cir. 2000) ("[W]here [Rev & Tax] decides not to insist upon the formal requirements for a refund, it would be making an empty abstraction, and not a practical safeguard, of a regulation to allow the [Rev & Tax] to invoke technical objections after he has investigated the merits of a claim and taken action upon it.") (citations and quotations omitted).

In this case, Respondents not only dispensed with its formal filing requirements while clinging to an illegal revenue ruling as authority and official government policy, Respondents went further and eliminated, prevented and prohibited compliance by Guam taxpayers with the formal filing requirements of the scrapped program. Respondents not only found it absolutely unnecessary to examine the merits of individual claims, Respondents affirmatively decided to take the steps necessary to prevent and prohibit the filing of earned income tax credit refund claims. In effect, Respondents request this Court make an empty abstraction of the entire federal mandate regarding the eligibility of Guam taxpayers and the process and procedures designed to effectuate and protect such eligibility.

One objective for requiring the filing of a refund claim as a prerequisite to suit is to advise the appropriate officials of the demands or claims intended to be asserted, so as to insure an orderly administration of the revenue. United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 272 (1931) (citing Nichol v. United States, 74 U.S. 122, 130 (1869). Thus, at any given point in time, the federal government, or Respondents in this case, will be assured that a barrage of lawsuits seeking tax refunds will not be filed unless they are put on notice through

the prior filing of refund claims. Through their actions, Respondents attempt to insure an orderly administration of the revenue, albeit illegally. Removing all responsibilities and obligations to administer and enforce the earned income tax credit provisions of the GTIT, Respondents now seek to lay claim to the right to be advised of claims intended to be asserted. However, as recently as March, 2003, Respondents conceded the tax returns for tax year 2002 prohibited the filing of claims for earned income tax credits - continuing its reliance on the policy of the predecessor administration as construed in Rev & Tax's Revenue Ruling 96-001.[5]  See Gaynor Dumat - Ol Deleno, Pacific Daily News, March 12, 2003, attached hereto as Exhibit "B".

Respondents can neither reasonably nor realistically expect to be advised of claims intended to be filed by Guam taxpayers under the circumstances of this case. Respondents obliterated the entire process. More importantly, Respondents cannot now prevent Petitioners from accessing this Court based on the failure to exhaust an administrative remedy when Respondents' own legally deficient position affirmatively eliminated the same remedy.[6]  The Petition in this case does not represent a request for this Court's assistance to allow disobedient refund claimants to slip through the process as mandated by federal law. This is

---

[5] Respondents' continued reliance on Revenue Ruling 96-001 is particular egregious in light of In Re Request of I Mina' Bente Sing'ko Na Liheslaturan Guahan Relative to the Application of the Earned Income Tax Program to Guam Taxpayers, 2001 Guam 3, ¶ 27 ("[T]he Director's refusal, through Revenue Ruling 96-001, to pay the refundable EIC to otherwise eligible taxpayers, does not involve the mere administration of the GTIT, but substantively modifies an I.R.C. provision. We therefore hold that Revenue Ruling 96-001 is invalid as a matter of law and tax officials may not continue to rely on it as authority in denying the refundable EIC to otherwise eligible low-income taxpayers. Accordingly, the Director, pursuant to section 32 of the I.R.C. which applies to Guam through section 1421i, is required to pay the EIC to eligible Guam taxpayers."). See also Exhibit A (("[Deputy Tax Commissioner John] Camacho acknowledged that the department's stand on the EIC is open for taxpayer challenge in a court setting. But Camacho said the issue is best resolved in District Court, a federal court.").

[6] This Court has already "questioned whether the time for making a claim can ever begin to run when a claimant has not been notified of his or her right to such a claim. In other words, since the right to an EIC claim was no longer provided for on the tax return forms, many taxpayers may not have been aware of the fact that they were entitled to such a tax credit." Santos, et al. v. Camacho, et al., Order dated August 5, 2004, Civil Case No. 04-00006.

PHILLIPS & BORDALLO

not a case where taxpayers failed to file claims because the claims were likely to be rejected or because they believed it was useless or futile. Rather, this is a case where Respondents rendered the entire earned income tax credit program a nullity and declared it inapplicable, with Respondents eliminating the specific claim procedures and processes. Respondents exceeded their authority and cannot amend the rules in this illegal manner. This is a case where it is indisputable and unmistakable that Respondents specifically prevented and prohibited Guam taxpayers from filing earned income tax credit refund claims. Respondents have taken a final position on the issue by denying the applicability of the entire program and all earned income tax credits to Guam all taxpayers.

In <u>Anderson v. Hodel</u>, 899 F.2d 766, 769-770 (9th Cir. 1990), the Ninth Circuit Court recognized:

> We have previously said that [the exhaustion requirement] is not absolute. . . . Exhaustion is not required . . . where pursuit of administrative remedies would be a futile gesture. . . . Anderson did not have a meaningful administrative remedy. . . . There is no realistic possibility that the filing of any administrative appeal would have changed appellees' interpretation of the statutes or the regulations.

> Additionally, we have previously held that where a statute imposes a number of limitations upon the scope of the [agency's] discretion and the manner in which it is to be exercised . . . it may be effectively enforced through judicial review without undue interference with the administrative process. The linchpin of this case is whether the OPM and the Bureau complied with survey instructions mandated by the statutes and regulations. Certainly, these statutes and regulations contained limitations on the appellees' discretion . . .

(citations and quotations omitted). See also <u>Gay v. Sullivan</u>, 1990 U.S. Dist. LEXIS 5661, *12 (N.D. Ill 1990), *reversed on other grounds*, <u>Gay v. Sullivan</u>, 966 F.2d 1124 (7th Cir. 1992). ("In this case the error complained of is deviation from an established procedure, but that deviation

9

PHILLIPS & BORDALLO

is more than incidental. It results from a deliberate and calculated determination as to how a legislative mandate should be executed. The policy behind the exhaustion requirement could best be maintained by having the court waive the requirement.")

In this case, Respondent did much more than ensure all administrative remedies remained futile. The pursuit of administrative remedies was not simply futile, it was prohibited by Respondents, for Respondent's benefit and to the detriment of Petitioner and all similar taxpayers. Petitioner does not rely simply upon the non-existent possibility the filing of a refund claim would have changed Respondents' decade-long position regarding the program's applicability.[7] Instead, Petitioner distinguishes this case from others for a number of reasons, most glaringly Respondents willful and wonton conduct intended to prohibit even the filing of a single claim. As in <u>Anderson</u> above, the linchpin of this case is whether Respondents complied with the mandates of the Organic Act and federal law regarding the recognition of the eligibility of Guam taxpayers to earned income tax credits, and the inherent procedures designed to process refund claims. It is unquestionable that Respondents have no discretion to disregard the entire mandate regarding earned income tax credits, and no authority to eliminate and prohibit the filing of refund claims. Thus, the provisions of the GTIT governing earned income tax credits may be effectively enforced without undue interference with the administrative process, especially where the administrative process was completely eliminated by Respondents, not as a temporary policy, but as a deliberate and calculated determination. Under the circumstances of this case, its a mockery to revive the exhaustion requirement when Respondents intentionally rendered it a nullity.

---

[7] Respondents continue to assert the inapplicability of earned income tax credits in the face of clearly established federal and local mandates, and an order of the Supreme Court of Guam.

Respondents' flagrant disregard of Congressional directions to establish, enforce and administer a refund filing process and administrative remedy puts Petitioner and similar claimants, as well as this Court, in the same position as if no administrative remedy was directed and required by Congress. In McCarthy v. Madigan, 503 U.S. 140, 145-146 (1992), the United States Supreme Court explained the purposes of exhaustion and the circumstances where courts decline the requirement when faced with such circumstances:

> Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency.
>
> As to the first of these purposes, the exhaustion doctrine recognizes the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer. Exhaustion concerns apply with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise. The exhaustion doctrine also acknowledges the commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court. Correlatively, exhaustion principles apply with special force when frequent and deliberate flouting of administrative processes could weaken an agency's effectiveness by encouraging disregard of its procedures.
>
> As to the second of the purposes, exhaustion promotes judicial efficiency in at least two ways. When an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted, or at least piecemeal appeals may be avoided. And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or technical factual context.

As can be easily concluded, requiring exhaustion in this case serves absolutely none of the purposes outlined above regarding the protection of administration authority.

Respondents' official position on the inapplicability of the entire program governing earned income tax credits does not involve Rev & Tax's exercise of discretionary power, nor Rev & Tax's special expertise. Rev & Tax's decade-long policy with respect to the administration and enforcement of GTIT's earned income tax credit provisions, and its continuation in the face of a Supreme Court of Guam order,[8] eliminates any concern that an opportunity to review such a policy is necessary. Respondents' prohibition on filing claims also excludes concerns regarding the frequent and deliberate flouting of administrative processes. Indeed, Respondents' own actions eliminating the very means to satisfy exhaustion prevents the accomplishment and excludes concern of all the purposes for which the exhaustion requirement was established, including the promotion of judicial efficiency.

Notwithstanding these substantial institutional interests, federal courts are vested with a "virtually unflagging obligation" to exercise the jurisdiction given them. McCarthy, 503 U.S. at 146. (citation omitted). "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." Id. (citation omitted).

> Accordingly, this Court has declined to require exhaustion in some circumstances even where administrative and judicial interests would counsel otherwise. In determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion. Administrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further. Application of this balancing principle is intensely practical, because attention is directed to both the nature of the claim presented and the characteristics of the particular administrative procedure provided.

Id.

---

[8] See In Re Request of I Mina' Bente Sing'ko Na Liheslaturan Guahan Relative to the Application of the Earned Income Tax Program to Guam Taxpayers, 2001 Guam 3.

PHILLIPS & BORDALLO

Petitioner submits that the countervailing institutional interests in this case, if any, provide no match to the interests of Petitioner and the class to immediate judicial review. Respondents' interests in serving the purposes of the exhaustion requirement are highlighted best by its actions precluding adherence to the doctrine itself. Application of the balancing principle outlined by the McCarthy case requires the conclusion that the administrative remedies in this case need not be pursued.

Although not necessary, the conclusion above is consistent with the Supreme Court's precedents recognizing circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion. McCarthy, 503 U.S. at 146-147. For example, requiring resort to the administrative remedy will occasion undue prejudice to Petitioner's present action since Respondents eliminated the entire process composing the administration remedy. See Id. ("Such prejudice may result, for example, from an unreasonable or indefinite timeframe for administrative action.")(citations omitted). Petitioner will also "suffer irreparable harm if unable to secure immediate judicial consideration" of her claims since Respondents' actions prohibit Petitioner and members of the class from satisfying the exhaustion requirement.

As applicable here, "exhaustion has not been required where the challenge is to the adequacy of the agency procedure itself, such that the question of the adequacy of the administrative remedy . . . is for all practical purposes identical with the merits of the plaintiff's lawsuit." Id. Finally, the administrative remedy is entirely inadequate where Rev & Tax has otherwise predetermined the issue before it, officially, publicly, and without exception. Id. (citing Patsy v. Florida International University, 634 F.2d 900, 912-913 (5th Cir.1981)

(administrative procedures must "not be used to . . . discourage those with legitimate claims") (other citations omitted).

This case arises with respect to Respondents' wholesale failure to enforce and administer provisions of the GTIT. Congress granted this Court exclusive original jurisdiction over all judicial proceedings in Guam, regardless of the amount involved, with respect to GTIT. This Court has jurisdiction to determine its own jurisdiction. Based on the foregoing, this Court should deny Respondent Governor's assertions and recognize its proper jurisdiction to proceed.

2.    Alternatively, this Court has Jurisdiction to Issue a Writ of Mandamus.

In the alternative to the above claim of jurisdiction, Petitioner sought a writ in the nature of mandamus. Petitioner adequately alleged all of the necessary elements entitling her access to this Court. Petitioner has a clear right to the relief sought, Respondents have plainly defined, peremptory and non-discretionary duties to implement the provisions of the GTIT related to earned income tax credits, and no other adequate remedy is available.[9]

For purposes of mandamus, jurisdiction is established and this Court should determine a remedy on the merits when the taxpayer states nonfrivolous allegations of the existence of the essential elements that supported a mandamus action. In Re First Federal Savings and Loan Assn., et al., 860 F.2d 135, 140 (4th Cir. 1988). It is undisputed that Petitioner's allegations are non-frivolous. Petitioner tracked the clear language of the Organic Act, federal law and Guam law entitling Guam taxpayers to refundable earned income tax credits, and requiring Respondents to implement, enforce and administer the provisions providing for the

---

[9] See supra ftn. **2**, and ¶ 27 (In the alternative, Petitioner seeks a writ in the nature of mandamus compelling Respondents to implement the EIC as required by the Organic Act and Guam law, and furthermore, that Respondents pay to Petitioner and the class all unpaid refundable earned income tax credits . . .").

PHILLIPS & BORDALLO

PHILLIPS & BORDALLO

earned income tax credit. Petitioner stated non-frivolous allegations demonstrating her clear right to all the benefits of the provisions of the GTIT, including Guam taxpayers' eligibility for refund credits, the ability to file claims for such refunds, and ultimately the payment of such refunds to qualified recipients. Petitioner also alleged that Respondents have a duty to implement the provisions of the GTIT related to earned income tax credits, citing federal law, Guam law, and the recent Guam Supreme Court case. See In Re Request of I Mina' Bente Sing'ko Na Liheslaturan Guahan Relative to the Application of the Earned Income Tax Program to Guam Taxpayers, 2001 Guam 3, ¶¶23-24 ("We hold therefore that . . . Guam taxpayers are entitled to the EIC as provided in 26 U.S.C. § 32 . . . Following our conclusion that Guam taxpayers are entitled to EIC, we likewise hold that the Director is bound by section 1421i to pay the EIC to eligible Guam taxpayers. . . . Guam tax officials are limited by section 1421i to rule-making authority affecting GTIT collection and enforcement . . .") (emphasis added) ("Guam tax officials are powerless to tailor the GTIT to suit the island's economic situation, thereby rendering indefensible the Governor's position that tax officials may adapt the I.R.C. to meet Guam's fiscal constraints.") Id. at ¶26 (emphasis added).[10]

Respondents' contention apparently rests with the third element of a mandamus action, that no other adequate remedy is available. Remarkably, Respondent Governor states:

> Here, the Government has provided (1) administrative remedies for obtaining the relief petitioner seeks and (2) the ability to sue for a refund in district court once administrative remedies have been exhausted.

Respondent Governor's Memorandum of Points and Authorities ("Resp.'s Ps and As"), p.8.

---

[10] The Supreme Court of Guam rejected every argument made by the preceding administration regarding the applicability of the earned income tax credit, including arguments regarding Congressional intent ("The fact that Guam does not pay certain Social Security taxes should not prevent low-income families, who reside on Guam, from being paid the refundable EIC when there is no indication from Congress that, in designating the beneficiaries of this tax program, Guam low-income families were to be excluded."). Id. at ¶19.

The record in this case is clear and Respondents' behavior undisputed. The Petition adequately alleges Respondents have completely denied the applicability of earned income tax credits to Guam taxpayers. Respondents have affirmatively eliminated, prevented and prohibited Guam taxpayers from filing refund claims related to earned income taxes, precluding Rev & Tax from receiving the information necessary to determine whether any taxpayers qualify under the relevant statutory formula.[11] Mandamus for the implementation of the relevant provisions of the GTIT is available where Petitioner is prohibited from pursuing the administrative remedy. In addition, Petitioner seeks to invalidate the continued deliberate policy of Respondents in denying the applicability of the entire earned income tax credit program, including prohibiting the filing of tax refund claims.

More importantly, it is not necessary that Petitioner prove the merits of her case in order to establish jurisdiction. See In Re First Federal Savings and Loan Assn., et al., 860 F.2d at 140. In order to establish jurisdiction, Petitioner need only state nonfrivolous allegations of the existence of the essential elements supporting a mandamus action. Petitioner substantially fulfilled jurisdictional requirements, and this Court should recognize its jurisdiction to proceed on this basis, if necessary.

3. Petitioner Should Not be Required to Litigate Subject Matter Jurisdiction in the Context of a Settlement.

The Settlement Agreement between Respondents and Petitioner was legally entered into after substantial negotiations between the parties. (See Pet.'s Resp., pp. 19-26). Petitioner submits that although jurisdiction is unquestionably established, in the context of a settlement agreement being reached, the parties should not be forced to litigate the issue of

PHILLIPS & BORDALLO

jurisdiction. See <u>Air Line Stewards and Stewardesses Assn. v. Trans World Airlines, Inc</u>, 630 F.2d 1164,1167-1169 (7th Circuit 1980) ("We think the principles favoring settlement of class action lawsuits remain the same regardless of whether the disputed legal issues center on the jurisdiction of the court over the action. Where, as here, the jurisdictional question is not settled with finality, <u>parties should not be forced to litigate the issue of jurisdiction if they can arrive at a settlement that is otherwise appropriate for district court approval.</u>") (emphasis added) (See Pet.'s Resp., p. 125-125). Similarly, this Court's review of Respondent Governor's jurisdictional question should be reviewed in light of the settlement reached between the parties. Respondent Governor should not be allowed to force Petitioner to litigate the merits of this case, including the issue of jurisdiction, when the parties have reached an agreement on the merits of this case.

In <u>Trans World Airlines, Inc.</u>, although the filing of claims, considered at the time a jurisdictional prerequisite, was not satisfied by a large portion of the class, the Seventh Circuit upheld the settlement approval. 630 F.2d at 1168-1169. On appeal, the United States Supreme Court acknowledged the issue before the Court:

> One of the questions on which we granted . . . was whether the Court of Appeals erred in affirming the District Court's approval of the settlement of jurisdictionally barred claims. In reaching its decision, the Court of Appeals for the Seventh Circuit explicitly declined to follow <u>McArthur v. Southern Airways, Inc.</u>, 569 F.2d 276 (CA5 1978) (en banc). <u>Air Line Stewards and Stewardesses Assn. v. TWA</u>, 630 F.2d 1164, 1168-1169 (1980). In <u>McArthur</u>, the Court of Appeals for the Fifth Circuit reversed the approval of a settlement agreement in a Title VII class action, holding that the District Court lacked jurisdiction because no plaintiff had filed a timely charge of discrimination with the EEOC. Because of our holding in No. 78-1545 that timely filing with the EEOC is not a jurisdictional prerequisite, <u>this issue need not be resolved.</u>

---

[11] The preclusion and prohibition of claims also forced Petitioner (and Respondents in settlement negotiations) to rely on estimated data in regards to the potential liability of Respondents for refundable earned income tax credits.

17

Zipes et al. V. Trans World Airlines, Inc., 455 U.S. 385, ft.8 (1982).

The proceedings in Trans World Airlines, Inc. did not involve the situation where the claims process was completely eliminated as it was here. Nevertheless, the Supreme Court recognizes that the issue of jurisdiction in the context of a settlement has not been resolved. If the facts had been different in that case, the Supreme Court would have defined the judicial policy in the context of a settlement. Petitioner submits that its important to uphold the principle that parties should not be forced to litigate the merits of a case, including the issue of jurisdiction, if they can arrive at a settlement that is otherwise appropriate for district court approval, a situation that exists in this case. Because this Court has jurisdiction to proceed, Respondent Governor's motion to vacate based on jurisdiction should be denied.

## B.    THE PRELIMINARY ORDER IS VALID UNDER RULE 23

There are no procedural problems related to the validity of the preliminary order. Rule 23 does not require class certification prior to the preliminary order, and Respondent Governor cites no authority to the contrary.    The class is certifiable as all class members' claims share the common element of being denied their right to receive earned income tax refunds, and class certification is not precluded because refund amounts may differ or require individual assessments.    See Appolini v. U.S., 218 F.R.D. 556 (W.D. Mich. 2003).    Moreover, Respondent Governor's authority is misplaced, as the case never addressed the issue of commonality.    See Oatman v. Dept. of Treasury, 34 F.3d 787, 789 (9th Cir. 1994). Respondent Governor's other procedural claims rest with its mistaken treatment of the preliminary order as this Court's final approval of the settlement.    This mistaken treatment extends to Respondent Governor's assertions under Part IV of his motion, regarding due process concerns and the exclusion of certain individuals from the class.    All notices and

18

1

2    hearings are either forthcoming or are required pursuant to the order, but neither are required

3    prior to the order. Although questionable whether Respondent Governor has standing to

4    allege due process violations and class definition for purposes of objecting to the settlement,

5    these concerns are relevant during the process of final approval, and not to the validity of the

6    preliminary order. Respondent Governor's motion to vacate on this basis should be denied.

7    ### C.    THE SETTLEMENT IS NOT ILLEGAL

8    Petitioner has responded to Respondents' same assertions regarding the Illegal

9    Expenditure Act. See Pet's Resp., pp. 9-19. Petitioner respectfully directs the Court's

10   attention to Petitioner's detailed responses. As asserted there, Respondents are obligated by

11   the provisions of the Organic Act, applicable federal law, and by order of the Supreme Court of

12   Guam, to pay refundable earned income tax credits and judgments on refund suits regardless

13   of any lack of appropriation. The provisions of the Illegal Expenditures Act and executive

14   orders requiring BBMR certification of contracts are not implicated in any manner by the

15   Settlement Agreement – not only because no appropriation is necessary to pay tax refunds,

16   whether by judgment or otherwise, but also because a local statute or order cannot otherwise

17   prevent what is authorized and mandated by the Organic Act and federal law applicable to

18   Guam. See § 1423a ("The legislative power of Guam shall extend to all rightful subjects of

19   legislation not inconsistent with the provisions of this Act and the laws of the United States

20   applicable to Guam."). Even if a provision of the settlement agreement is illegal as alleged,

21   such invalidity will not affect the validity or enforceability of the remainder of the settlement

22   agreement. See Settlement Agreement, Part VI-I. Respondent's motion to vacate the order

23   on this basis should be denied.

24

25

26

27

28

PHILLIPS & BORDALLO

## CONCLUSION

Based on the foregoing, Respondent's motion to vacate this Court's preliminary order approving the settlement agreement should be denied.

Respectfully submitted this 2nd day of March, 2004.

PHILLIPS & BORDALLO, P.C.
Attorneys for Petitioner
Interim Class Counsel

By:
Michael F. Phillips

COPY



OFFICE OF THE GOVERNOR
HAGÅTÑA, GUAM 96910
U.S.A.

EXECUTIVE ORDER NO. 2005-21

## RELATIVE TO FILING EARNED INCOME TAX CREDIT CLAIMS
### *WITH THE DEPARTMENT OF REVENUE AND TAXATION*

**WHEREAS,** the Guam Territorial Income Tax is established in the Organic Act of Guam to mirror the federal Internal Revenue Code in most, but not all, respects, as a tax that is collected by and payable to the government of Guam; and

**WHEREAS,** the Earned Income Tax Credit ("EITC") was enacted by the United States Congress in 1975 as a subsidy to the working poor as an extension of social welfare benefits; and

**WHEREAS,** the federal EITC is funded in the Fifty States in part through the collection of Social Security taxes, which are not collected by the government of Guam and therefore are not available to fund payment of the EITC in Guam absent federal action; and

**WHEREAS,** in 1996, under the previous administration, the Department of Revenue and Taxation ("DRT") issued Revenue Ruling No. 96-001, which provided that the EITC was not applicable in Guam, it should not be administered by DRT, and DRT should not certify to the Department of Administration ("DOA") for payment the amounts of EITC cash refunds reported by Guam taxpayers on their Guam individual income tax returns; and

**WHEREAS,** pursuant to Revenue Ruling No. 96-001, and with the exceptions of tax years 1997 and 1998, DRT has in most cases not accepted filings that claimed the EITC; and

**WHEREAS,** in response to Revenue Ruling No. 96-001, the Legislature has passed a number of laws intended to mirror the federal EITC, including the Guam Earned Income Program, *but there presently is no funding of the EITC on Guam;* and

**WHEREAS,** the government of Guam wishes to promptly and efficiently determine which taxpayers claim eligibility for the EITC and whether such claims are otherwise valid under the laws of Guam and/or the United States, regardless of legal disputes over the applicability of *the EITC on Guam and regardless of issues over the lack of availability of funding for payment* of EITC claims; and

**WHEREAS,** taxpayers should not have to bear the primary burden of determining whether they are eligible for the EITC in past tax years, or in what amounts, and to expect them to do so could at a minimum require *them to obtain copies of all relevant back years' tax returns,* at substantial cost and burden to both taxpayers and DRT; and

**WHEREAS,** the use of a new simplified claim form for EITC claims, which requires only information not already known to DRT from taxpayers' previously submitted tax returns, would minimize the burden on taxpayers of making *EITC claims and would allow DRT to* determine the eligibility and calculate the amount of the legitimate claims of each taxpayer submitting the simplified form in the fastest possible time; and

**WHEREAS,** a new simplified claim form can be designed to support a computerized tracking system that will automatically identify duplicative, mutually inconsistent, and otherwise improper claims (specifically including fraudulent claims regarding qualifying children and head

**EXHIBIT A**



of household status) thereby preventing overpayments and facilitating the prosecution of false or fraudulent claims; and

WHEREAS, the Governor urges the federal government to fund the EITC on Guam to establish equality between the rights of taxpayers residing in the United States and its territories, but will work in the meantime with the Legislature to pass an appropriation or bond to fund the payment of otherwise valid but unpaid claims for the EITC.

NOW, THEREFORE, I, FELIX P. CAMACHO, *I Maga'låhen Guåhan*, Governor of Guam, by virtue of the authority vested in me by the Organic Act of Guam, as amended, do order as follows:

1. *The Department of Revenue and Taxation ("DRT") shall begin accepting claims for the Earned Income Tax Credit pursuant to the Guam Earned Income Program, 11 G.C.A. §§ 42101-04, as soon as forms described in paragraph 2 below can promulgated and printed, and in no event later than January 31, 2005.*

2. *Pursuant to the authority vested in it by 11 G.C.A.§§ 42102 and 42103, DRT shall prepare simplified forms to permit submission of EITC claims for tax years 1995-1996 and 1999-2004, together with explanatory materials as necessary to inform taxpayers about the procedures and plans for administration of such claims. The simplified forms shall require only information not already provided to DRT in tax returns and necessary for DRT to determine taxpayers' eligibility, calculate the amount of taxpayers' legitimate claims, and detect duplicative, mutually inconsistent, and fraudulent claims. Submission of a claim under the Guam Earned Income Program shall constitute submission of a claim for the federal EITC to the extent the federal EITC applies to Guam. However, any taxpayer who has not yet filed a tax return as to a given tax year shall be required to file that tax return for that tax year along with the simplified EITC claim form in order to be eligible for the EITC under the Guam Earned Income Program for that tax year.*

3. DRT shall use the information submitted by taxpayers on the form described in paragraph 2, together with information already in DRT's possession, to determine taxpayers' eligibility, calculate the amount of taxpayers' legitimate claims, and promptly communicate that information to taxpayers submitting the form. Submitted information must be truthful, and the form shall require that its contents be submitted under penalty of perjury. The provisions of 26 U.S.C. § 32(k) will in all other respects apply to claims under the Guam Earned Income Program pursuant to 11 G.C.A. § 42102.

4. To detect duplicative, mutually inconsistent, and fraudulent claims, DRT shall institute a computer-based tracking system to compare the information submitted by each taxpayer on the form described in paragraph 2 to other information submitted by the same and other taxpayers, with particular emphasis on preventing the submission of false or incorrect claims regarding qualifying children or head of household status.

5. DRT shall make a preliminary determination of eligibility and shall calculate the proper amount of the claim for each claim submitted on the form described in paragraph 2, *pursuant to all governing laws including DRT's procedures for auditing tax returns and claim forms as necessary*, but in no case shall DRT pay any such claim until lawful funding is determined and made available.

6. The Directors of DOA, DRT, and the Bureau of Budget and Management Research ("BBMR") are *instructed* to *begin immediately the implementation* of *11 G.C.A. §§ 50101-07 and 51101-08* to the degree compliance with the current budget law, P.L. 27-106, can be achieved. In all future years, the Directors of DOA, DRT, and BBMR are instructed to implement 11 G.C.A. §§ 50101-07 and 51101-08 without reservation.

7. *Nothing in this Executive Order or in the processing of an EITC claim pursuant to this Order shall entitle any claimant to payment for the EITC and nothing shall relieve any*



claimant of the requirements of the Internal Revenue Code (including without limitation 26 U.S.C. §§ 32(k), 7206, and 7207) or the Guam Territorial Income tax with regard to claims for tax refunds, claims for the EITC, or any other applicable laws.

8. Revenue Ruling 96-001 is revoked to the degree it is inconsistent with this Order.

SIGNED AND PROMULGATED at Hagåtña, Guam this ___ day of January, 2005.

FELIX P. CAMACHO
I Maga' låhen Guåhan
Governor of Guam

COUNTERSIGNED

MARK FORBES
I Segundo Maga Låhen Guåhan Para Pago
Acting Lieutenant Governor of Guam



# Tax credit in legal limbo

By Gaynor Dumat-ol Daleno
Pacific Daily News

---

Guam's income tax form forbids island taxpayers from claiming the Earned Income Credit, which has allowed low-income workers elsewhere in the country to pay less tax or receive a refund.

A space where Guam taxpayers are supposed to claim the special credit, or EIC, is blacked out with "Not Applicable."

Deputy Tax Commissioner John Camacho mentioned several reasons why the Department of Revenue and Taxation bars taxpayers from claiming the EIC. Among them:

• The department does not have money to pay the EIC, which cost about $18 million the last time it was paid to Guam taxpayers in 1997.

• A 1996 decision by Joey Duenas, tax commissioner at the time, said that the federally mandated EIC does not apply to Guam, and the department continues to follow that decision today.

The department's position contradicts a Guam Supreme Court ruling and a local law that essentially say Guam taxpayers are entitled to the same credit that U.S. taxpayers receive elsewhere.

Guam taxpayers are missing out on the EIC. According to wire reports, it gives an increased maximum credit for the 2002 tax year of $4,140 for families with two or more qualifying children, $2,506 for families with one qualifying child and $376 for an individual without children.

"The Earned Income Credit (EIC) is a special credit for lower income workers," according to the Internal Revenue Service Web site, www.irs.gov.

"The credit is subtracted from the amount of tax you owe, so you end up paying less tax and you may get some money back from the government," according to the IRS. "Even if you do not have a tax liability, you might still get some money back."

According to the IRS, a taxpayer can qualify for the credit for tax year 2002 if the taxpayer's earned income and adjusted gross income are less than the following amounts:

• $11,060 ($12,060, if filing a joint return) if you do not have a qualifying child.
• $29,201 ($30,201, if filing a joint return) if you have one qualifying child.
• $33,178 ($34,178, if filing a joint return) if you have two or more qualifying children.

Taxpayer challenge

Camacho acknowledged that the department's stand on the EIC is open for taxpayer challenge in a court setting.

But Camacho said the issue is best resolved in District Court, a federal court.

Island taxpayers who decide to challenge the department can back up their case with a Guam Supreme Court ruling and a local law in their favor.



The Guam Supreme Court in February 2001 ruled that Guam taxpayers are entitled to EIC, and stated that the Department of Revenue and Tax director is bound by law to pay the EIC to eligible Guam taxpayers.

Gov. Carl Gutierrez's administration had argued that the EIC does not apply to Guam since its funding in the continental United States is paid by Social Security taxes and Congress has not appropriated such funding to pay for the EIC on Guam.

"The governor suggests that the absence of any mention of the EIC's applicability to Guam indicates that 'Guam never crossed anyone's mind,'" according to the 2001 court ruling.

The high court disagreed with the then governor's arguments.

"The fact that Guam does not pay certain Social Security taxes should not prevent low-income families, who reside on Guam, from being paid the refundable EIC when there is no indication from Congress that, in designating the beneficiaries of this tax program, Guam low-income families were to be excluded," according to the court.

The court ruling was issued in a case filed by now Speaker Ben Pangelinan. Pangelinan said yesterday he hopes that new Gov. Felix Camacho's administration will review a local law that says Guam taxpayers are entitled to EIC.

The credit is meant to supplement low wages -- especially in the private sector -- to keep people in the work force while at the same time supporting their families, according to Pangelinan.

Guam Public Law 24-61 authorized a Guam EIC program that mirrors the federal program.

The law states that, for fiscal 1998 and each year thereafter, the Department of Revenue and Taxation is authorized on a continuing basis to spend money from a tax refund fund to pay the Guam EIC program.

The law states that the annual amount for EIC payments must not exceed $14 million.