

DISTRICT COURT OF GUAM

TERRITORY OF GUAM



| | |
|---|---|
| JULIE BABAUTA SANTOS, *et al.*,<br>Petitioners,<br>vs.<br>FELIX A. CAMACHO, etc., *et al.*,<br>Respondents. | Civil Case No. 04-00006<br><br>ORDER |

On February 17, 2005, the Attorney General of Guam (the "Attorney General") filed a Motion for Reconsideration of the Court's February 9, 2005 Order (Docket No. 156.) Said Order denied the Attorney General's motions (Docket Nos. 97, 98 and 100) which sought to strike the appearances and pleadings filed by independent counsel and to vacate the Court's previous Order permitting the Governor to be heard in this matter via separate counsel. For the reasons set forth herein, the Court hereby DENIES the motion for reconsideration without the need for further briefing or oral argument.[1]

## ANALYSIS

In its February 9, 2005 Order, the Court held that the Attorney General's designation as

---

[1] Pursuant to Local Rule LR 7.1(e)(1) of the Local Rules of Practice for the District Court of Guam, oral argument is not automatic and may granted or denied in the discretion of the judge, except where oral argument is required by statute or federal rule of procedure. This is not one of those instances.

"Chief Legal Officer of the Government of Guam," 48 U.S.C. § 1421g(d)(1), did not preclude the Respondents from appearing before the Court through separate counsel. The Court predicated its limited holding on the fact that the Organic Act of Guam, 48 U.S.C. § 1421, *et seq.*, conferred on the Governor the exclusive power to administer and enforce the laws relating to the Guam Territorial income tax ("GTIT"). 48 U.S.C. § 1421i(c). The Attorney General now asserts that the Court erred in so holding.

First, the Attorney General contends that he was "surprised by the speed of the Court's Order coming on the heels of Respondents Ilagan's [sic] and Perez's 'Supplemental Authorities in Support of . . . Opposition to the Attorney General's Motion to Strike Appearance of Rawlen M.T. Mantanona.'" (Mot. Recons., Docket No. 156, at pp. 1-2.) While the Court read the supplemental memorandum submitted by Respondents Ilagan and Perez, the Court's decision was not spurred by it. If in fact the Court's Order came "at the heels" of such a filing, it was mere coincidence. The Court was very much aware of the GTIT provisions before the filing of Respondents Ilagan and Perez's supplemental authorities.

The Attorney General's comparison of his duties and powers to that of the United States Attorney General or the United States Department of Justice is equally unavailing. The supplemental memorandum by Respondents Ilagan and Perez had asserted that the Internal Revenue Code permits the Internal Revenue Service ("IRS") to hire its own "Chief Counsel." (Suppl. Auth. Opp'n Mot. Strike, Docket No. 144, at p.3.) In response to this assertion, the Attorney General maintains that although the IRS has its own separate chief counsel, the IRS's chief counsel does not control the course of litigation of tax refund suits for the government. Instead, the attorneys with the Tax Division of the United States Department of Justice are responsible for all litigation (both prosecution and defense) involving the tax laws. Thus, the Attorney General surmises that just as the United States Attorney General and the U.S. Department of Justice control litigation on behalf of the federal government, the Organic Act grants him the same ability here to control the course of litigation on behalf of the Government of Guam. However, the Attorney General has not provided the Court with any authority tending to prove that his grant of power under the Organic Act was patterned after the federal

scheme. Rather, the powers granted to the Attorney General under the Organic Act are unlike those specifically given to the United States Attorney General and Department of Justice. See 28 U.S.C. §§ 516[2] and 519.[3] See also 5 U.S.C. § 3106.[4] Aside from the designation of the Attorney General as the "Chief Legal Officer of the Government of Guam," the Organic Act is silent as to the duties and powers of the Attorney General. The Organic Act does not enumerate the Attorney General's specific powers, nor does it contain a restriction on the ability of the executive branch to employ an attorney for the conduct of litigation on its behalf.

The Court is unconvinced by the other arguments put forth by the Attorney General. As the Court's Order previously stated, the Organic Act grants the Governor exclusive authority to administer and enforce the laws related to the GTIT. Contrary to the Attorney General's assertion, based on the facts presented in this case, the Governor's authority to administer and enforce the GTIT laws are directly in conflict with the Attorney General's authority as Chief Legal Officer for the Government of Guam. The Attorney General negotiated the settlement agreement reached with the Petitioner. Among other concerns raised, the Governor maintains that the Government of Guam does not have sufficient resources to implement the settlement.

---

[2] This statute provides that "[e]xcept as otherwise authorized by law, **the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested**, and securing evidence therefor, **is reserved to officer of the Department of Justice under the direction of the Attorney General.**" 28 U.S.C. § 516 (emphasis added).

[3] This statute, in pertinent part, provides that "[e]xcept as otherwise authorized by law, **the Attorney General shall supervise all litigation** to which the United States, an agency, or officer thereof is a party." 28 U.S.C. § 519 (emphasis added).

[4] This statute states:

Except as otherwise authorized by law, **the head of an Executive department or military department may not employ an attorney or counsel for the conduct of litigation in which the United States, an agency, or employee thereof is a party, or is interested**, or for the securing of evidence therefor, but shall refer the matter to the Department of Justice. This section does not apply to the employment and payment of counsel under section 1047 of title 10.

5 U.S.C. § 3106 (emphasis added).

Nevertheless, the Attorney General's position is that the Governor's concerns are inconsequential. The Attorney General contends that the Court should listen to him instead of the Governor, since the Attorney General is responsible for establishing a "coherent and uniform legal policy" for the Government of Guam. On the other hand, as the chief executive officer of the Government of Guam granted with the additional exclusive authority to administer and enforce the GTIT laws, the Governor has the responsibility for setting a "coherent and uniform tax policy" for the island. The Governor's authority would be rendered meaningless if the Attorney General were permitted to prevent the Governor from being heard in this action except through him. The Attorney General essentially seeks to supplant his decision for that of the Governor, and this Court will not allow such usurpation to occur. The Governor has a right to be heard in this action involving the GTIT. See Graddick v. Newman, 453 U.S. 928, 102 S. Ct. 4 (1981) (holding that the Alabama attorney general had no standing to seek a stay of a court order releasing prisoners in light of state statutes which vested responsibility for state prison system in the governor, and governor opposed the attorney general's application for stay).

## CONCLUSION

For the reasons set forth above, the Court hereby DENIES the Attorney General's motion for reconsideration.

SO ORDERED this 2nd of March 2005.

JOAQUIN V.E. MANIBUSAN, JR.
United States Magistrate Judge

Notice is hereby given that this document was entered on the docket on 3/3/05.
No separate notice of entry on the docket will be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam
By: _____ 3/3/05
Deputy Clerk    Date