SHANNON TAITANO, ESQ.
OFFICE OF THE GOVERNOR OF GUAM
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
Telephone: (671) 472-8931
Facsimile: (671) 477-4826

EDUARDO A. CALVO, ESQ.
RODNEY J. JACOB, ESQ.
DANIEL M. BENJAMIN, ESQ.
CALVO & CLARK, LLP
Attorneys at Law
655 South Marine Drive, Suite 202
Tamuning, Guam 96913
Telephone: (671) 646-9355
Facsimile: (671) 646-9403

Attorneys for *Felix P. Camacho, Governor of Guam*

FILED
DISTRICT COURT OF GUAM
MAR - 8 2005
MARY L.M. MORAN
CLERK OF COURT
173

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, et. al., <br><br> Petitioners, <br><br> -v- <br><br> FELIX P. CAMACHO, etc., et. al. <br><br> Respondents. | CIVIL CASE NO. 04-00006 <br><br> **REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEY GENERAL'S OFFICE** <br><br> [ORAL ARGUMENT REQUESTED] |

MR050307.382-00010[Reply re Mtn. to DQ]

**ORIGINAL**

The spectacle of a lawyer cross-examining his or her own client is so contrary to an attorney's fundamental duty of loyalty that the ABA has issued a formal opinion entitled "Lawyer Examining Client as an Adverse Witness, or Conducting Third Party Discovery of a Client." It explains that: "When a lawyer is called upon to cross-examine her own client, ... a vigorous [cross-examination] breaches the duty of loyalty to the client-witness" and "present[s] a conflict of interest that is disqualifying absent consent of one or both of the clients involved." ABA Formal Ethics Op. 92-367. Yet, this case is proceeding toward a second hearing at which the Attorney General intends to once again vigorously cross-examine his former clients in violation of Guam Rules of Professional Conduct ("GRPC") 1.7, 1.9.

The Attorney General argues he is not bound by the Rules of Professional Conduct. (Opp. at 3-5.) But the Rules provide that "a lawyer currently serving as a public officer or employee is subject to Rules 1.7 and 1.9." GRPC 1.11(d)(1). The Attorney General cannot twist this plain language to mean anything other than what it says.

An attorney general's "dual roles" of (1) defending the government in litigation and (2) bringing actions to protect the public interest may, at times, necessitate applying the ethical rules in a flexible manner. But there is a difference between flexibility that reflects reasonable accommodations of the competing demands on an attorney general, and the elimination of the fundamental elements of an attorney-client relationship. Nothing in GRPC 1.7, 1.9, or 1.11, or in an attorney general's dual roles, mean that an attorney general is exempt from the core ethical rules prohibiting attacking a client. That was the exact holding in *People ex rel. Deukmejian v. Brown*, 29 Cal. 3d 150, 157 (1981), and every other case to address this issue, all of which the Attorney General's brief simply ignores.

The facts in this case are even more extraordinary than *Deukmejian*. There, the governor and attorney general merely disagreed about the public interest midway through a case. Here, the Attorney General attempted to use his role as counsel for the government to try to silence the Governor and force him to be bound by a contract that the Attorney General had opined was illegal.

Although the Attorney General claims that "[h]is client always has been the Government of Guam" (MPA at 7), no client in this case instructed the Attorney General to take a position adverse to that of his former clients the Governor, DRT and DOA, and no client is instructing him to do so now. This conflict was created entirely by the Attorney General (as an attorney) agreeing to defend the Governor (as a client), entering an appearance on behalf of that client, and then refusing to consult his client or follow his client's wishes because he disagreed with them.

Moreover, the Attorney General is representing the government in this case; he is not appearing *parens patriae* on behalf of the people. As the Court has stated: "[T]he Organic Act grants the Governor exclusive authority to administer and enforce the laws related to the GTIT." (March 2, 2005 Order at 3.) On the issue of tax policy, the voice of the Governor is the voice of the Government of Guam. Because the Attorney General already has refused to represent the voice of his client in this action, there is no impediment to disqualification.[1]

---

[1] As the Court pointed out in its recent order, this case is comparable to *Graddick v. Newman*, 453 U.S. 928 (1981), which held that Alabama's attorney general lacked standing to seek to stay a court order releasing prisoners in light of a state statute vesting authority over the prison system in the governor where the governor opposed that stay. (March 2, 2005 Order at 4.) So too here, the Attorney General, by his own concession "has no jurisdiction over the administration and enforcement of the Guam territorial income tax or the operations of the Guam Department of Revenue and Taxation and the Guam Department of Administration, which are in charge of certifying and paying income tax refunds." *See* Decl. of Rodney J. Jacob (submitted

2

MR050307.382-00010[Reply re Mtn. to DQ]

# I. THE GUAM RULES OF PROFESSIONAL CONDUCT APPLY TO THE ATTORNEY GENERAL

As amended, Guam Rule of Professional Conduct 1.11(d)(1) states: "Except as law may otherwise expressly permit, a lawyer currently serving as a public officer or employee is subject to Rules 1.7 and 1.9...." GRPC 1.11(d)(1). The Attorney General reads this provision as applying only to conflicts of interest occurring when government officials move to and from the private sector. (MPA at 3-4.) But this limitation is not found in the rule, and any interpretation contrary to the plain language of the rule is untenable. *E.g., Benny v. U.S. Parole Comm'n*, 295 F.3d 977, 983 (9th Cir. 2002) ("The plain meaning rule ... stands for the notion that if the language of a statute is clear and there is no ambiguity, then there is no need to 'interpret' the language") (quotation omitted).

The type of conflict discussed by the Attorney General concerns government lawyers who have entered or are entering private employment, a conflict which is expressly governed by subsection (d)(2) of Rule 1.11. But subsection (d)(2) does not supplant subsection (d)(1). As evidenced by the word "and" joining the two subsections, government attorneys are subject to the restrictions set forth in *both*. Any other reading of the rule would render subsection (d)(1) meaningless.

The Attorney General's reading of Rule 1.11 also is contrary to the case law cited by the Governor in his moving papers and unaddressed by the Attorney General. *Attorney Gen. v. Mich. Pub. Serv. Comm'n*, 625 N.W. 2d 16, 27 (Mich. 2000) ("The principle that the Attorney General, or her assistants, should be bound by the [Michigan Rules of Professional Conduct], particularly when appearing before any part of this state's 'one court of justice' is elementary");

---

concurrently herewith) at Exh. A (page 3 of a brief of the Attorney General's office filed October 28, 2004 in a related proceeding).

3

MR050307.382-00010[Reply re Mtn. to DQ]

*Manchin v. Browning*, 170 W. Va. 779, 789-90 (1982) ("As a lawyer and an officer of the courts of this State, the Attorney General is subject to the rules of this Court governing the practice of law and conduct of lawyers"); *Chun v. Bd. of Trustees*, 952 P.2d 1215, 1240 (Haw. 1998) ("We have never held, however, that the Attorney General is relieved of all obligations to conform her conduct to the [Hawaii Rules of Professional Conduct], which are applicable to all lawyers licensed to practice in the courts in this state.").

The Attorney General attempts to negate the plain language of Rule 1.11 with the comments to various rules. (Opp. at 4-5.) The text of the rules, not the comments is authoritative. ABA Model Rule Professional Conduct Scope [21]; *Mich. Pub. Serv.*, 243 Mich. App. at 507. Moreover, the Comments to the ABA Model Rules demonstrate that the Attorney General is subject to Rules 1.7 and 1.9. For example, Comment 1 to Rule 1.11 states that: "A lawyer who has served or is currently serving as a public officer or employee is personally subject to the Rules of Professional Conduct, including the prohibition against concurrent conflicts of interest stated in Rule 1.7."

In comparison, the comments upon which the Attorney General relies offer no support for his contention that he can turn on a client in the middle of a case. They simply note that jurisdictions that have adopted the model rules are free to structure their laws so as to permit an attorney general's office to handle interagency disputes. Here, the Guam Rules of Professional Conduct, as rules governing the practice of law in the Territory of Guam, are set by the Guam Supreme Court as one of its express powers under the Organic Act. *See* 48 U.S.C. § 1424-1(a)(7). That court has not created any exception that would be applicable to this case.

And, this case is not an interagency dispute in which two government agencies sought representation by the Attorney General, which set up an appropriate ethical wall at the

4

MR050307.382-00010[Reply re Mtn. to DQ]

outset of the litigation and appointed different counsel to handle the two clients. *See, e.g., State ex rel. Allain v. Miss. Pub. Serv. Comm'n*, 418 So. 2d 779, 784 (Miss. 1982). Here, in the middle of the case, the Attorney General has decided to take a position adverse to the Governor and each of the agency defendants, all of whom he once represented, in the very same case, without any waivers or ethical walls, using the same attorneys who had represented the Governor and those agencies to now attack them. Nothing in any rules or commentaries or in any decision by any court in any jurisdiction permits such a breach of the fundamental duty of loyalty. Courts have not hesitated to disqualify attorneys general on much less egregious facts. *E.g., Deukmejian*, 29 Cal. 3d at 156.

## II. DISQUALIFICATION IS WARRANTED

The Attorney General does not dispute that he once represented the Governor. He does not dispute that he treated his own clients as hostile witnesses. He does not dispute that this matter is a substantially related matter. Nor does he dispute that his position is adverse to the Governor's—in other words, that he is engaging in a conflicted representation. Under the *per se* disqualification standard of Rule 1.7[2] and even the more lenient standard of Rule 1.9,[3] disqualification is wholly appropriate. *Deukmejian*, 29 Cal. 3d at 156.

A court's power to disqualify an attorney is based on its inherent powers to ensure the integrity and fairness of proceedings before it, to further the interests of justice, to promote

---

[2] *See, e.g., Flatt v. Super. Ct.*, 9 Cal. 4th 275, 284 (1994) ("In evaluating conflict claims in dual representation cases, the courts have accordingly imposed a test that is more stringent than that of demonstrating a substantial relationship between the subject matter of successive representations. . . . Indeed, in all but a few instances, the rule of disqualification in simultaneous representation cases is a per se or 'automatic' one.") (footnote omitted).

[3] *E.g., Trone v. Smith*, 627 F.2d 994, 998 (9th Cir. 1980) ("The relevant test for disqualification is whether the former representation is 'substantially related' to the current representation.").

5

MR050307.382-00010[Reply re Mtn. to DQ]

public faith in the courts, and to ensure compliance with the ethics rules. *E.g., Jessen v. Hartford Ins. Co.*, 111 Cal. App. 4th 698, 705 (1991). "The paramount concern is the preservation of public trust in the scrupulous administration of justice and the integrity of the bar." *Id.*

Although the Court's exercise of its inherent powers must be judged on the facts of each case, *id.*, disqualification is especially warranted on the facts of this case. The Attorney General has misused his role as counsel, refused to inform his former clients about key developments in the case, refused to listen to their instructions, and tried to force an illegal settlement on them. *See* GRCP 1.2(a) (client defines objectives of representation and lawyer shall abide by client's decision on settlement); GRCP 1.4 (lawyer shall consult with client and keep client reasonably informed). The Attorney General has cross-examined his own clients in open court regarding matters in which he represented them. He now intends to further cross-examine them in a highly public case on the same matters in which he represented them. GRCP 1.6 (lawyer shall maintain client confidences); GRCP 1.7(a) (establishing lawyer's duty of loyalty to a client); GRCP 1.9 (establishing duties of loyalty and confidentiality to former clients in related matters).

Nothing is more inherently unfair than allowing a lawyer to use his inside perspective to interrogate his own clients on the same matter in which he defended them. This concern is heightened here because the Attorney General took the position that he had no duty to consult his clients—public servants who were elected or appointed to fulfill public duties—and no duty to inform them about the case in his November 8, 2004 brief regarding the proposed administrative plan. As a result, the Attorney General has threatened the very ability of the Governor and his agency directors to do their jobs, while at the same time the Attorney General

MR050307.382-00010[Reply re Mtn. to DQ]

may still have information about this case that he prevented these clients from receiving while their counsel.

All of this could have been avoided. The Attorney General did not have to choose to act as the Governor's lawyer in this case. The Attorney General could have brought or intervened in this litigation to ensure that his view of the public interest was presented to the Court. But once he chose to represent the Governor as the Governor's attorney, the Attorney General accepted the fundamental duties all attorneys accept towards their clients. Having violated those duties explicitly and repeatedly, neither the ethical rules nor this Court should countenance what the Attorney General has done. Once things have progressed as far as they have in this case, disqualification is required.

## CONCLUSION

For the foregoing reasons, the Governor respectfully requests the Court to grant his motion to disqualify the Attorney General from appearing in this action.

Dated this 7th day of March, 2005.

OFFICE OF THE GOVERNOR OF GUAM
CALVO & CLARK, LLP
Attorneys At Law

By: /s/ Rodney J. Jacob
RODNEY J. JACOB

MR050307.382-00010[Reply re Mtn. to DQ]

7