SHANNON TAITANO, ESQ.
OFFICE OF THE GOVERNOR OF GUAM
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
Telephone: (671) 472-8931
Facsimile: (671) 477-4826

EDUARDO A. CALVO, ESQ.
RODNEY J. JACOB, ESQ.
DANIEL M. BENJAMIN, ESQ.
CALVO & CLARK, LLP
Attorneys at Law
655 South Marine Drive, Suite 202
Tamuning, Guam 96913
Telephone: (671) 646-9355
Facsimile: (671) 646-9403

Attorneys for *Felix P. Camacho, Governor of Guam*

FILED
DISTRICT COURT OF GUAM
MAR - 9 2005
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, et. al., <br><br> Petitioners, <br><br> -v- <br><br> FELIX P. CAMACHO, etc., et. al. <br><br> Respondents. | CIVIL CASE NO. 04-00006 <br><br> **REPLY IN SUPPORT OF MOTION TO VACATE THE STIPULATED ORDER OF JUNE 17, 2004 PRELIMINARILY APPROVING SETTLEMENT** |

Neither petitioner nor the Attorney General address the fatal defects in the stipulated order preliminarily approving the settlement. To begin with the fundamental issue of jurisdiction, *Morongo Band of Mission Indians v. Cal. St. Bd. of Equalization*, 858 F.2d 1376, 1380-81 (9th Cir. 1988), held that if a complaint fails to allege facts establishing subject-matter jurisdiction, the Court lacks the power to do anything but dismiss; it cannot even grant leave to amend. Petitioner spends 20 pages studiously ignoring this point and ignoring *Morongo*—which is controlling precedent—altogether. *Morongo* is dispositive because Petitioner has pointed to no allegations in the complaint establishing that she exhausted her remedies and no allegations that support her erroneous futility theory. Indeed, there are none.

Nor does petitioner confront Supreme Court precedent holding that exhaustion is required for jurisdiction in tax cases and that futility is no excuse. *United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 273 (1931). Petitioner's pages of unsupported statements about futility that were not included in her complaint are therefore doubly irrelevant.

Petitioner has no rebuttal as to the Illegal Expenditures Act or the requirement of BBMR certification. She offers no answer to the essential question of how the government is supposed to fund this settlement. And although the Governor demonstrated that the settlement creates a no-opt-out settlement in violation of due process, Petitioner and the Attorney General unite in providing no response at all. In fact, all that the Attorney General has to offer is a patently incorrect argument regarding Federal Rule of Civil Procedure 60(b).

The settlement being pushed by Petitioner and the Attorney General is unlawful. Continuing the settlement's implementation will impose tens of millions of dollars of unlawful obligations on the government. The Governor asks that the Court proceed with vacating the preliminary stipulated order approving the settlement.

*Civil Case No. 04-00006*  1
MR050309.382-00010 [Reply re Mtn. to Vacate]
Case 1:04-cv-00006   Document 185   Filed 03/09/2005   Page 2 of 11

# I. THERE IS NO SUBJECT MATTER JURISDICTION TO SUPPORT THE STIPULATED ORDER GRANTING PRELIMINARILY APPROVAL

A court cannot issue a consent decree unless it has subject-matter jurisdiction over the underlying proceeding. *Local No. 93, Intern. Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 525 (1986). Petitioner does not address this decision by the United States Supreme Court. The Eighth and Tenth Circuit decisions she cites instead (Opp. at 3-4) do not address this issue. They pertain to collateral attacks against *final judgments*. Here, there is no final judgment. All that happened was that the Court preliminarily approved a settlement that is entirely contingent upon final approval by the Court.

### A. No Allegations in the Complaint Establish Jurisdiction

In his moving papers, the Governor challenged petitioner to identify any allegations in her complaint that gave rise to subject-matter jurisdiction. She has identified none. Instead, her brief (pages 4-10) contains discussions of news articles and statements unsupported by any evidence. All of these are irrelevant to whether jurisdiction exists. *See Morongo*, 858 F.2d at 1380-81. Because petitioner does not once allege that she exhausted her claim as required for jurisdiction by 26 U.S.C. § 7422(a), the complaint must be dismissed.

### B. Exhaustion May Not Be Excused Based on Futility

Petitioner fails to address the controlling case law in tax cases that futility never excuses exhaustion of tax claim: "An anticipated rejection of the claim, which the statute contemplates, is not a ground for suspending its operation. Even though formal, the condition upon which the consent to suit is given is defined by the words of the statute, and '"they mark the conditions of the claimant's right."' *Quarty v. United States*, 170 F.3d 961, 973 (9th Cir. 1999) (quoting *United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 273 (1931) (citations omitted)).

It does not matter, as Petitioner suggests, if EITC claims were routinely rejected by DRT. Petitioner, at any time, could have gone to DRT and attempted to submit a form 1040x,

*Civil Case No. 04-00006*
MR050309.382-00010 [Reply re Mtn. to Vacate]
2
Case 1:04-cv-00006   Document 185   Filed 03/09/2005   Page 3 of 11

which is the generic form allowing any tax claim to be made, or any other written explanation of her claim. If it was rejected, Petitioner would have satisfied the jurisdictional prerequisite of attempting to file her claim administratively prior to bringing suit. *See* 26 U.S.C. § 7422(a).

*Martin v. United States*, 833 F.2d 655 (7th Cir. 1987), cited by petitioner, proves that point. That case recognized that informal refund claims are always possible; they need only be measured on their individual facts, be a claim in writing, and "the matter set forth in the writing must be sufficient to apprise the IRS that a refund is sought and to focus attention on the merits of the dispute so that an examination of the claim may be commenced if the IRS wishes." *Id.* at 660. No matter what DRT's policy may have been, there was nothing as a legal matter that prevented Petitioner from submitting a written claim.[1]

Petitioner cites two non-tax cases establishing that administrative remedies *in those types of cases* need not be exhausted where futile. (Petitioner Opp. at 11-12.) Petitioner is avoiding the rule that: "Although judicially developed exhaustion requirements might be waived for discretionary reasons by courts, <u>statutorily created exhaustion requirements bind the parties and the courts</u>." *Saulsbury Orchard & Almond Processing v. Yeutter*, 917 F.2d 1190, 1194 (9th Cir. 1990)(emphasis added); *Reid v. Engen*, 765 F.2d 1457, 1462 (9th Cir. 1985) ("When a statute requires exhaustion, a petitioner's failure to do so deprives this court of jurisdiction. [Citation omitted]. Only if there is no statutory exhaustion requirement may we exercise our discretion to apply judicially-developed exhaustion rules.") (citing *Montgomery v. Rumsfeld*, 572 F.2d 250,

---

[1] Petitioner quotes *PALA, Inc. v. United States*, 234 F.3d 873, 879 (5th Cir. 2000), out of context. *PALA* cited a Supreme Court case that established that if the IRS investigates the merits of a *particular* claim, and then rejects it, it could not later interpose technical objections. *Id.* at 879 (quoting *Angelus Milling Co. v. Comm'r*, 325 U.S. 293, 297 (1945)). The Court explained that to establish jurisdiction under that rule, it had to be established that a particular claim was actually presented to the Commissioner: "It is not enough that in some roundabout way the facts supporting the claim may have reached him. The Commissioner's attention should have been focused on the merits of the particular dispute." *Angelus Milling Co.*, 325 U.S. at 297.

*Civil Case No. 04-00006* 3
MR050309.382-00010 [Reply re Mtn. to Vacate]

252-53 (9th Cir. 1978)). Because tax cases are subject to statutory exhaustion, the judicially developed exception of futility does not apply. *See, Quarty*, 170 F.3d at 973.[2]

Petitioner's cite to *McCarthy v. Madigan*, 503 U.S. 140 (1992), is even farther off-point. (Opp. at 11-12.) The issue there was whether administrative exhaustion should be imposed in a *Bivens* case for money damages even though Congress had not required such exhaustion by statute.[3] *McCarthy* does not address the question in this case, which involves a statutorily imposed exhaustion requirement that permits no exceptions. *Quarty*, 170 F.3d at 973.

### C. There Is No Jurisdiction Over the Mandamus Claim

Petitioner's discussion of mandamus fails to address the controlling authority, *United States ex rel. Girard Trust Co. v. Helvering*, 301 U.S. 540 (1937). There, the Court was "asked to determine whether mandamus is the proper remedy to compel the Commissioner of Internal Revenue to refund taxes." *Id.* At 540-41. The Court ruled it was not because a party can pursue an administrative remedy and then maintain suit in district court. "[T]o try petitioner's equitable right to the refund here is to make the writ of mandamus serve the purpose of an ordinary suit and to depart from the settled rule that the writ of mandamus may not be employed to secure the adjudication of a disputed right for which an ordinary suit affords a remedy equally adequate, and complete." *Id.* at 544.

The sole mandamus tax case cited by Petitioner, *In re First Federal Sav. & Loan Ass'n of Durham*, 860 F.2d 135 (4th Cir. 1988) (Opp. at 14), did not involve a normal tax refund claim. It involved a prior settlement of a tax refund claim, which "contemplated that, after the taxpayer applied for the refunds, payment was to be automatic—a purely mechanical action

---

[2] Lest petitioner seek to create further confusion on this point, there are certain statutes that by their express terms permit courts to make exceptions to their exhaustion requirements. The Internal Revenue Code's provision on tax refunds contains no such provision.

[3] Congress superceded *McCarthy* by adopting a statutory exhaustion requirement in *Bivens* cases. *See Arctic Express, Inc. v. U.S. Dept. of Transp.*, 194 F.3d 767, 769 (6th Cir.1999).

*Civil Case No. 04-00006* 4
MR050309.382-00010 [Reply re Mtn. to Vacate]
Case 1:04-cv-00006    Document 185    Filed 03/09/2005    Page 5 of 11

through normal payment channels." *Id.* at 139. Under such circumstances, which were governed by the parties' contract (as opposed to ordinary tax refund procedures), mandamus was held proper. *Id.* at 138-40. As this case is governed by the ordinary tax refund procedures, including the exhaustion requirement, it is still governed by *Helvering*'s bar on mandamus.

### D. There Must Be Subject-Matter Jurisdiction To Support the Settlement

Petitioner argues that there is already a judgment in this case, or that the case has been resolved by the proposed settlement, and that therefore there is no need for the Court to determine jurisdiction. (Opp. at 3-4; 16-18.) As stated, there has been no final judgment—all that occurred was the preliminary approval of a settlement, which is contingent upon numerous events, such as a fairness hearing and approval by the Court. Petitioner's reference to case law involving final judgments further ignores that this case involves a consent decree that would require the Court to maintain continuing jurisdiction for years to come. Subject-matter jurisdiction must exist before a court can issue such a decree. *Local No. 93, Intern. Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 525 (1986) ("a consent decree must spring from and serve to resolve a dispute within the court's subject-matter jurisdiction").

Petitioner relies upon a lone 1980 Seventh Circuit decision to attempt to establish that the consent decrees here can proceed absent jurisdiction. (Opp. at 17-18 (citing *Air Line Stewards and Stewardesses Ass'n v. TWA*, Inc., 630 F.2d 1164 (7th Cir. 1980).) That case predates the holding of *Local No. 93*, never has been cited in the Ninth Circuit, and is of dubious vitality.[4] Whatever is left of that case after *Local 93* is inapplicable in any event because there,

---

[4] The Supreme Court granted certiorari over that case on a number of grounds, including "whether the Court of Appeals erred in affirming the District Court's approval of the settlement of jurisdictionally barred claims." *Zipes v. TWA*, 455 U.S. 385, 393 n.8 (1982). The only reason that the Court did not resolve the issue then (instead leaving the issue until *Local No. 93*) was that the Court held as to a different issue that there was no jurisdictional defect in the first place. *Id.* ("Because of our holding in No. 78-1545 that timely filing with the EEOC is not a jurisdictional prerequisite, this issue need not be resolved.").

*Civil Case No. 04-00006*      5
MR050309.382-00010 [Reply re Mtn. to Vacate]

the district court actually had jurisdiction over the complaint. Here, in contrast, the complaint fails to establish jurisdiction on its face and is subject to the Ninth Circuit's holding in *Morongo* requiring dismissal.

## II.    RULE 23 ISSUES SHOULD BE ADDRESSED NOW

Once a class settlement is final, all class members are bound, even though many of them will never have had the chance to appear before the Court represented by counsel, as they would in any other case. *E.g.*, *Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 847 (1999). As a result, Rule 23 imposes procedural requirements, such as the class certification process and a fairness hearing, that allow interested parties to participate in the determination of who will be bound.

The Governor's objections under Rule 23 are that none of the critical procedural protections has occurred. Had these procedures been observed, many of the substantive problems with the settlement would have been identified and eliminated. For instance, as the Governor explained in his moving papers, the settlement is in effect a no-opt out settlement, and it excludes the neediest class members—those not required to file a tax return because of their low income. Had those individuals been allowed to voice their concerns about the settlement, the terms undoubtedly would be different. Indeed, basic due process requires that those individuals have notice and an opportunity to be heard prior to any such event impacting their rights. *E.g.*, *Molski v. Gleich*, 318 F.3d 937, 952 (9th Cir. 2003). It is premature to approve anything, especially in light of the substantive problems raised by the Governor, to which Petitioner offers no response.

## III.    THE SETTLEMENT IS ILLEGAL

Petitioner devotes one paragraph to the legality issue, referencing the Court to her previous reply in support of her motion to adopt an administrative plan ("Petitioner's Admin. Plan Reply"). (*See* Petitioner's Opp. at 19.) That is not an answer. Petitioner's previous brief never answered the essential question: <u>Where is the money?</u> No matter what Petitioner may say, at the

*Civil Case No. 04-00006*  6
MR050309.382-00010 [Reply re Mtn. to Vacate]
Case 1:04-cv-00006   Document 185   Filed 03/09/2005   Page 7 of 11

end of the day, 5 G.C.A. § 22401(a) states that there must be an appropriation *or a fund* that possesses the money that is being spent in a contract for that contract to be legal.

Petitioner argues that the Governor has the authority to pay the EITC as an "overpayment" of taxes. (Petitioner's Admin. Plan Reply at 12.) This twisting of words provides cold comfort in the place of actual funding. As the Supreme Court has held, the EITC is a form of welfare administered through the tax system. Thus, "eligibility for an earned-income credit does not depend on an individual's actually having paid any tax," and "the Code's classification of the credit as an 'overpayment' to be refunded is similarly independent of the individual's actually having made any payment." *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 863 (1986).[5]

In any case, the issue here is a contract that obligates the government to pay $60 million. The law is clear. The *entire* amount of an appropriation or fund that is to be used to pay an contractual obligation must exist *at the time of contracting*. *Leiter v. United States*, 271 U.S. 204, 206-07 (1926) (contract for future year's payment invalid absent then-existent appropriation); *Govt. Sys. Advisors, Inc. v. United States*, 13 Cl. Ct. 470, 474 (1987) (court must interpret contract as yearly option contract where ambiguous because "any contract entered into by defendant beyond the year in which appropriations are made is made without authority of law and is not binding."). The government did not have $60 million to pay this contract in unappropriated funds at the time the contract was made (Decl. of Lou Perez (filed 11/24/04) at ¶¶ 3 & 4), and thus the settlement violates 5 G.C.A. § 22401(a)(1).[6]

---

[5] Petitioner also ignores the lack of funding of the EITC on Guam. The federal EITC is designed to counteract the regressive nature of social security taxes. Michael J. Caballero, *The Earned Income Tax Credit: The Poverty Program That Is Too Popular*, 48 Tax Lawyer 435, 464 (1995). Guam's taxpayers pay social security taxes, but they pay it to the federal government. Consequently, Guam must look for funding until the federal government will offer parity in the treatment of its residents. *Cf.* S-Rep. 101-411 (Aug. 1990) (making appropriation to Puerto Rico for "payment made when the earned income credit exceeds the taxpayer's tax liability").

[6] If petitioner forces through this settlement that prioritizes claims from 1996 and 1998, petitioner will simply ensure that the government can never become current on its payments of

*Civil Case No. 04-00006* 7
MR050309.382-00010 [Reply re Mtn. to Vacate]
Case 1:04-cv-00006    Document 185    Filed 03/09/2005    Page 8 of 11

Petitioner asserts that public policy supports settlements. (Petitioner's Admin Plan Reply at 14-15.) Public policy, however, also will not enforce unlawful contracts that violate the Illegal Expenditures Act. *Pangelinan v. Gutierrez*, 2003 Guam 13, ¶ 25 *vacated in part on other grounds by* 2004 Guam 16 ¶ 1.

Petitioner also does not address how it can be legal to fund attorneys' fees from the settlement amount, to compel the future payment of the EITC, or to force the government to fund an administrative plan. Instead, she cites to the severability clause in the settlement, an implicit concession that these provisions are all illegal. (Opp. at 19.) But the severability provision does not aid petitioner. Courts are not free to rewrite settlements. *Jeff D. v. Andrus*, 889 F.2d 753, 758 (9th Cir. 1989) (citation omitted) ("courts are not permitted to modify settlement terms or in any manner to rewrite agreements reached by parties. The court's power to approve or reject settlements does not permit it to modify the terms of a negotiated settlement."). Severability of an illegal provision is only permissible where separate consideration was given for the illegal provision. *Simmons v. Cal. Institute of Tech.*, 34 Cal. 2d 264, 275 (1949) ("the test of whether a contract is divisible is that if the consideration is single, the contract is entire, but if the consideration is apportioned, the contract may be regarded as severable"). Here, the promise to pay millions of dollars for the EITC in the future is a key and inseparable part of the purported consideration offered. And if the administrative plan cannot be funded, the entire settlement cannot be carried out. These provisions are part of the underlying consideration and cannot be separated from the settlement as a whole.

Severability also will not resolve the lack of BBMR certification. This issue requires nullification of the contract as to each provision of the settlement agreement requiring

---

the EITC, and falls behind on payments of actual tax refunds. *See State ex rel. Point Towing Co. v. McDonough*, 149 S.E.2d 302, 306-07 (W. Va. 1966) (invalidating contract that sought to use funds appropriated for future year to pay contractual obligation from past year).

*Civil Case No. 04-00006* 8
MR050309.382-00010 [Reply re Mtn. to Vacate]
Case 1:04-cv-00006   Document 185   Filed 03/09/2005   Page 9 of 11

the expenditure from a fund. P.L. 27-29, Chapter 5, § 4(d) ("No agency shall contract to spend, or enter into an agreement to spend, any money in excess of the amount allotted to the agency by BBMR, and any contract or agreement in violation of this provision shall be null and void.").

## IV. THE DUE PROCESS VIOLATION IS NOT EVEN ADDRESSED

Neither Petitioner nor the Attorney General so much as deign to offer the Court any response as to how they could have drafted a settlement that: (1) unlawfully impaired the rights of potential class members who opted-out by subjecting them to a new requirement that they obtain the Attorney General's express written agreement to any EITC payment; and (2) also impaired the rights of potential EITC recipients who could not even opt-in by imposing that same requirement on them while excluding them from the class definition. Accordingly, this ground for vacating the settlement is now unopposed.

## V. THE ATTORNEY GENERAL IS INCORRECT THAT FRCP 60 APPLIES TO THIS CASE AND IN HIS OTHER ARGUMENTS

The Attorney General's argument that Federal Rule of Civil Procedure 60 applies to the order preliminarily approving the settlement lacks any reasonable basis. The order granting preliminary approval of the settlement is an interlocutory order. It is contingent on a number of factors, including that the Court finally approve the settlement after a fairness hearing and that all the other requirements of Rule 23 be met. (Order ¶¶ 7, 9, 12, 13). The Settlement Agreement expressly provides: "If the Court for any reason (1) determines not to approve the Settlement Agreement; or (2) does not enter Final Judgment, then the Settlement Agreement terminates and becomes null and void ..." (Order ¶ 13; Settlement Agreement Definitions § L; § II G).

Rule 60(b) applies only to "a final judgment, order, or proceeding." Any order reserving issues for the Court to decide is by definition not a "final" order subject to Rule 60. *E.g., Sch. Dist. No. 5 v. Lundgren*, 259 F.2d 101, 105 (9th Cir. 1958) (order reserving legal questions for future determination by court not subject to Rule 60 because "that rule has reference

*Civil Case No. 04-00006*     9
MR050309.382-00010 [Reply re Mtn. to Vacate]
Case 1:04-cv-00006     Document 185     Filed 03/09/2005     Page 10 of 11

to corrections of, or relief from final judgment or orders"); *A & A Sign Co. v. Maughan*, 419 F.2d 1152, 1155 & n.2 (9th Cir. 1969) (settlement stipulation that was subject to approval by court not subject to Rule 60 because the inherent power of any court includes the "authority to modify or vacate its own interlocutory orders"). Rule 60 requires finality. "The addition of the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires." C. Wright & A. Miller, 11 *Fed. Practice & Proc.* § 2852 (1995) (quoting Advisory Committee Note to 1948 Amendment).

The Attorney General also argues that vacating the preliminary approval will leave the settlement in place. (AG Opp. at 4.) That is not true. The settlement expressly provides that it will be void and of no effect if not approved by the Court. (Order ¶ 13; Settlement Agreement § II G.) And, an order establishing the settlement's illegality obviously would not leave it in force or effect.

## CONCLUSION

The Governor respectfully requests that the Court vacate the stipulated order granting preliminary approval to the settlement.

Dated this 9th day of March, 2005.

OFFICE OF THE GOVERNOR OF GUAM
CALVO & CLARK, LLP
Attorneys at Law

By: _____
RODNEY J. JACOB