1  [Appearing Counsel on next page]

**FILED**
DISTRICT COURT OF GUAM

JUN 20 2005 *9P*

**MARY L.M. MORAN**
**CLERK OF COURT**



7   IN THE UNITED STATES DISTRICT COURT

8   DISTRICT OF GUAM

10  JULIE BABAUTA SANTOS, et. al.,

                  Petitioners,

          -v-

FELIX P. CAMACHO, etc., et. al.

                  Respondents.

CIVIL CASE NO. 04-00006

**DECLARATION OF RODNEY J.
JACOB IN SUPPORT OF JOINT
MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
AGREEMENT; MEMORANDUM OF
POINT AND AUTHORITIES IN
SUPPORT THEREOF**

**[ORAL ARGUMENT REQUESTED]**

{G0003170.DOC;1}
*Civil Case No. 04-00006*

**ORIGINAL**

1    SHANNON TAITANO, ESQ.
     OFFICE OF THE GOVERNOR OF GUAM
2    Ricardo J. Bordallo Governor's Complex
3    Adelup, Guam 96910
     Telephone:    (671) 472-8931
4    Facsimile:     (671) 477-4826

5    EDUARDO A. CALVO, ESQ.
     RODNEY J. JACOB, ESQ.
6    DANIEL M. BENJAMIN, ESQ.
7    CALVO & CLARK, LLP
     Attorneys at Law
8    655 South Marine Drive, Suite 202
     Tamuning, Guam 96913
9    Telephone:    (671) 646-9355
     Facsimile:     (671) 646-9403
10   Attorneys for Felix P. Camacho, Governor of Guam

11
     RAWLEN M.T. MANTANONA
12   MANTANONA LAW OFFICE
     414 W. Soledad Avenue
13   GCIC Bldg. Suite 601B
     Hagåtña, Guam 96910
14   Telephone:    (671) 472-3666
15   Facsimile:     (671) 472-3668
     Attorneys for Respondents Lourdes M. Perez and Artemio R. Ilagen
16
     MICHAEL F. PHILLIPS
17   PHILLIPS & BORDALLO, P.C.
18   410 West O'Brien Drive
     Hagåtña, Guam 96910
19   Telephone:    (671) 477-2223
     Facsimile:     (671) 477-2329
20   Interim Class Counsel and Attorneys for Petitioner Julie Babauta Santos

21

22

23

24

25

26

27

28   {G0003170.DOC;1}
     *Civil Case No. 04-00006*

I, RODNEY J. JACOB, declare that:

1. I am a partner with the law firm of Calvo & Clark, LLP, counsel of record for Respondent, Felix P. Camacho, Governor of Guam in this action and in *Santos v. Camacho*, Guam Dist. Ct. Case No. CV04-00006 (the "*Santos*" action). I make this declaration on personal knowledge, and if called to testify I could and would testify competently thereto.

2. Attached as Exhibit "1" is a true and correct copy of the Term Sheet executed by the Respondent Governor and the Respondent Directors on May 24, 2005 and the Petitioner on May 26, 2005.

3. Attached as Exhibit "2" is a true and correct copy of the Settlement Agreement that was executed on June 20, 2005 by the Respondent Governor, Respondent Directors and Petitioner.

I declare under penalty of perjury pursuant to the laws of the United States and of the Territory of Guam that the foregoing declaration is true and correct.

Executed this 20th day of June, 2005, in Tamuning, Guam.


RODNEY J. JACOB

# EXHIBIT 1

## TERM SHEET

WHEREAS Petitioner Julie B. Santos brought this action seeking to recover refunds of the Earned Income Tax Credit (the "EIC") under the Guam Territorial Income Tax and Guam territorial law in Federal District Court on behalf of herself and those who are similarly situated ("EIC Class"); and

WHEREAS Petitioner named as Respondents Governor of Guam Felix P. Camacho, Director of Administration Lourdes M. Perez, Director of Revenue & Taxation Artemio R. Ilagan and the Government of Guam; and

WHEREAS 48 U.S. C. § 1421i(c) provides that "[t]he administration and enforcement of the Guam Territorial Income Tax shall be performed by or under the supervision of the Governor"; and

WHEREAS 48 U.S. C. § 1421i(d)(2) provides that the Governor of Guam or his delegate has "the same administrative and enforcement powers and remedies with regard to the Guam Territorial Income Tax as the Secretary of the Treasury, and other United States officials of the executive branch, have with respect to the United States income tax; and

WHEREAS 48 U.S.C. § 1421g(d)(1) provides that the Attorney General is the "Chief Legal Officer of the Government of Guam"; and

WHEREAS the Governor has delegated the administration and processing of tax claims under the Guam Territorial Income Tax to the Department of Revenue & Taxation; and

WHEREAS the Governor has delegated the issuance of tax refund checks under the Guam Territorial Income Tax to the Department of Administration; and

WHEREAS a previous settlement agreement was preliminarily approved by the Court on June 17, 2004; and

WHEREAS on July 16, 2004 the Court appointed Petitioner's counsel, Mike Phillips, Esq., Interim Class Counsel; and

WHEREAS after Petitioner moved to adopt an administration plan, the Governor objected and moved to vacate the Court's preliminary approval of the previous settlement, and the parties subsequently disagreed as to the legality of the previous settlement agreement; and

WHEREAS on March 10, 2005 the Parties agreed to take the motions to enter the administration plan and to vacate the preliminary approval of the previous settlement off-calendar and to enter mediation before JAMS Mediator Catherine Yanni, Esq.; and

WHEREAS, the parties have agreed to enter into a new settlement that will pay the EIC Class a total of $90 million for their EIC claims in tax years 1995, 1996, and 1998-2004, as stated herein; and

NOW THEREFORE the parties hereby agree as follows:

1)      The Government will pay the EIC Class not more than $15 million for all EIC claims for tax years 1995, 1996, 1999, and 2000 (combined). This amount shall be divided proportionally among each claimant found eligible by DRT based on the total combined value of their claim or claims for tax years 1995, 1996, 1999, and 2000. In the event that the EIC Class collectively files less valid claims for tax years 1995, 1996, 1999, and 2000 (combined) than the total amount available to pay such claims under this settlement, the remainder shall be utilized to fund general income tax refunds, which shall include claims for EIC, for tax year 2005 and future tax years.

2) The Government will pay the EIC Class not more than $15 million for EIC claims for tax year 1998, based upon the claims already filed for tax year 1998. This amount shall be divided proportionally among each claimant found eligible by DRT based on the value of their claim. In the event that the EIC Class collectively has filed less valid claims for tax year 1998 than the total amount available to pay such claims under this settlement, the remainder shall be utilized to fund claims for tax year 2001 as stated below.

3) The Government will pay the EIC Class not more than $15 million for EIC claims for tax year 2001, together with any remainder from the payment of claims for tax year 1998. This amount shall be divided proportionally among each claimant found eligible by DRT based on the value of their claim. In the event that the EIC Class collectively file less valid claims for tax year 2001 than the total amount available to pay such claims under this settlement, the remainder shall be utilized to fund claims for tax year 2002 as stated below.

4) The Government will pay the EIC Class not more than $15 million for EIC claims for tax year 2002, together with any remainder from the payment of claims for tax year 2001. This amount shall be divided proportionally among each claimant found eligible by DRT based on the value of their claim. In the event that the EIC Class collectively file less valid claims for tax year 2002 than the total amount available to pay such claims under this settlement, the remainder shall be utilized to fund claims for tax year 2003 as stated below.

5) The Government will pay the EIC Class not more than $15 million for EIC claims for tax year 2003, together with any remainder from the payment of claims for tax year 2002. This amount shall be divided proportionally among each claimant found eligible by DRT based on the value of their claim. In the event that the EIC Class collectively file less valid claims for tax year 2003 than the total amount available to pay such claims under this settlement,

the remainder shall be utilized to fund claims for tax year 2004 as stated below.

6)    The Government will pay the EIC Class not more than $15 million for EIC claims for tax year 2004, together with any remainder from the payment of claims for tax year 2003. This amount shall be divided proportionally among each claimant found eligible by DRT based on the value of their claim. In the event that the EIC Class collectively file less valid claims for tax year 2004 than the total amount available to pay such claims under this settlement, the remainder shall be utilized to fund general income tax refunds, which shall include claims for EIC, for tax year 2005 and future tax years.

7)    To make the payments as quickly as possible, the Government shall devote a minimum of 15% of each amount set aside or earmarked for income tax refunds and placed into the Income Tax Refund Reserve Fund (Chapter 50 of Title 11 of the G.C.A.) to pay the $90 million to the EIC Class for EIC claims pursuant to this term sheet. Such reservations shall commence immediately. The deposit and maintenance of the settlement amount within the Income Tax Refund Reserve Fund is intended to avoid the Government's concern regarding any potential violation of the Illegal Expenditures Act (5 G.C.A. §22401), and is not intended nor shall it be interpreted for any other purpose. The Governor may, at his discretion, utilize other funding sources permitted by law. At the Governor's request, class counsel shall cooperate in good faith with any efforts by the Governor to obtain additional funding or otherwise speed payment. The parties acknowledge and understand that it is anticipated that the amounts that can be reserved under the Reserve Fund at present and in the coming months (possibly using a higher percentage of reservation and/or other sources identified by the Governor) will be approximately $15 million, thus permitting the payment of EIC for tax years 1995, 1996, 1999 and 2000 to occur at the same time the settlement receives final approval. In the event that, by the time the

settlement is subject to a fairness hearing, less than $15 million has been reserved, Petitioner shall have the right to terminate the settlement agreement, which shall be void and of no effect, and the previous settlement shall be returned to effect as though the new settlement had never been preliminarily approved, subject to all previously pending motions.

8)     Years will be paid sequentially, with all tax year 1995, 1996, 1999, and 2000 claims paid together, and then the next priority assigned to tax year 1998, then tax year 2001, then tax year 2002, then tax year 2003, then tax year 2004. For EIC claims for tax years 1995, 1996, 1999 and 2000, once all claims have been submitted and the amount due to each EIC Class member has been calculated, claims shall be paid in the order filed by the members of the EIC Class. Within each tax year for tax years 1998, 2001, 2002, 2003 and 2004, once all claims have been submitted and the amount due to each EIC Class member has been calculated, claims shall be paid in the order filed by the members of the EIC Class. Notwithstanding the foregoing, DRT retains the right to make individual exceptions to the priority of payments based on standard DRT policies and procedures governing the distribution of general income tax refunds.

9)     Claims filed under the Earned Income Program in 1998, as well as claims filed under Executive Order 2005-001 in 2005, shall be treated as EIC claims under the settlement agreement; provided, however, that such claimants shall have the opportunity to opt-out of the settlement. In addition, those claimants who have filed incomplete or defective claims under Executive Order 2005-001 shall have the option to file otherwise timely claims under the procedures to be established in the settlement agreement. The claims period for additional claims is to be determined in final agreement, except that no new claims for 1998 shall be accepted.

10)     As part of this settlement, EIC claims in 2005 and all future years will be paid in the same manner as general income tax refund claims under the applicable federal and territorial laws.

11)     Subject to Paragraph 15, the EIC Class shall grant a general release to the Government and its officers and agencies for all 1995-1996 and 1998-2004 tax year EIC claims.

12)     EIC Class Counsel's attorneys' fees under this settlement, if any, are to be determined by the Court following a motion under Federal Rules of Civil Procedure 23(h).

13)     Upon preliminary approval by the Court of the new settlement agreement, and subject to paragraph 7 of this term sheet, the previous settlement agreement shall be mutually rescinded and of no further force or effect, and the stipulated Order granting preliminary approval to that previous settlement shall be vacated.

14)     Petitioner agrees to file an Amended Petition in this Action to reflect changes to the definition of the EIC Class consistent with the terms of this term sheet, the final settlement, and necessarily related issues.

15)     The administration of EIC claims under this settlement is to be handled by DRT, DOA, and any other appropriate Government agencies pursuant to the normal procedures for evaluating claims for tax refunds and issuing tax refund checks. All claims under this settlement shall be subject to normal evaluation and deduction procedures, including offsets, audits, and applicable penalties (including those for fraud). Because the claims under this settlement are to be administered as tax refund claims as stated above, the Government shall use the funding for the processing of tax returns and refunds already available and shall not be obligated to obtain separate or additional funding for the administration of claims.

16) Class notice, its dissemination, and other procedural issues will be addressed in the final settlement.

17) No interest shall apply to EIC claims under this settlement agreement.

18) No payments of claims shall occur prior to final District Court approval of settlement.

19) All parties expressly agree and warrant they will cooperate in good faith in the execution and implementation of the settlement.

20) Subject to paragraph 19, this term sheet is expressly contingent upon: (1) memorialization in a final settlement agreement (which shall be drafted consistent with the terms of this Term Sheet), (2) class certification, (3) fairness hearing, and (4) final Court approval. Failure to satisfy any of these conditions shall render settlement void and of no effect.

21) There shall be an opportunity for all class members to opt-out of this settlement pursuant to FRCP 23; provided, however, that the parties shall further discuss the manner in which to minimize the number of opt-outs and to preserve the economic benefit of this Agreement to the Government.

22) Any person opting-out of this settlement must opt-out of the settlement in its entirety, and not just as to particular claim(s) for particular tax year(s).

23) This term sheet remains confidential pursuant to the mediation confidentiality agreement unless expressly waived in writing by the parties.

24) The settlement shall contain non-admission of liability and severability clauses except as contrary to the settlement and such other clauses necessary to fully effectuate parties' intent.

25) The parties recognize and acknowledge the provisions of the Organic Act applicable to the Governor and Attorney General as stated in the recitals to this Term Sheet.

26) The Attorney General and the Governor expressly agree, with respect to this litigation and all future suits for recovery of income tax refunds or credits, that they will endeavor to cooperate with one another in good faith to the best of their abilities with respect to resolution of any legal claims brought or asserted against the Government of Guam and the Governor of Guam.

27) Nothing contained herein shall be construed in any manner to prevent the Office of the Governor or his delegates from consulting with the Office of the Attorney General with respect to this or any other matter involving the Guam Territorial Income Tax laws. Nothing contained herein shall be construed in any manner to prevent the Attorney General from consulting with the Office of the Governor or his delegates with respect to this or any other matter involving the Guam Territorial Income Tax laws. The Governor and Attorney General expressly agree to cooperate to the fullest extent possible with respect to legal issues arising under the Guam Territorial Income Tax laws.

28) The parties recognize that at times their views may differ with respect to the position of the Government of Guam and that the Governor should be authorized to seek separate counsel and advice with respect to independent duties and responsibilities imposed upon him under the Organic Act of Guam and other laws. The Governor and Attorney General expressly recognize, acknowledge and agree it is in the best interest of the Government of Guam that they endeavor to cooperate to the full extent possible in establishing a coherent legal policy with respect to all matters involving the administration of the government and enforcement of Guam Territorial Income Tax laws.

29)     The Governor and Attorney General shall request that the Court stay any

decision on the Governor's motion to disqualify the Attorney General and the Attorney

General's motion to amend the March 2, 2005 Order to certify the issues presented therein for

interlocutory appeal.  Upon preliminary approval of the final settlement, the Governor and the

Attorney General shall withdrawal these motions.  Nothing contained herein shall be construed

as an admission of law or fact, in favor or against, the merits of the Court's February 9, 2005 or

March 2, 2005 Orders.

30)     The parties agree to prepare a joint statement concerning the settlement to

be provided to the public at an appropriate time.

**SO AGREED:**

_____
**FELIX P. CAMACHO**
In His Capacity as Governor of Guam

Dated: _5/24/05_

_____
**DOUGLAS B. MOYLAN**
In His Capacity as Attorney General of Guam

Dated: _____

_____
**JULIE B. SANTOS**
Individually, and on Behalf of Those
Similarly Situated

Dated: _5-26-05_

_____
**ARTEMIO B. ILAGAN**
In His Capacity as the Director of the
Department of Revenue & Taxation

Dated: _5/24/05_

_____
**LOURDES M. PEREZ**
In Her Capacity as Director of the
Department of Administration

Dated: _5/24/05_

_____
**CARLOS BORDALLO**
In His Capacity as Director of the Bureau of
Budget and Management Research

Dated: _5/24/05_

**APPROVED AS TO LEGALITY AND FORM:**

CALVO & CLARK, LLP
Attorneys for Respondent Felix P. Camacho,
Governor of Guam

By: _____
      **RODNEY J. JACOB**

Dated: **5/24/05**

OFFICE OF THE ATTORNEY GENERAL
Attorneys for Respondent Government of Guam

By: _____
      **STEPHEN A. COHEN**
      Assistant Attorney General

Dated: _____

MANTANONA LAW OFFICE
Attorneys for Respondents Lourdes M.
Perez and Artemio R. Ilagan

By: _____
      **RAWLEN M.T. MANTANONA**

Dated: **5/25/05**

LAW OFFICES OF PHILLIPS & BORDALLO
Attorneys for Julie B. Santos and Interim Class
Counsel

By: _____
      **MICHAEL F. PHILLIPS**

Dated: **5/25/05**

# EXHIBIT 2

# SETTLEMENT AGREEMENT

**WHEREAS** Petitioner Julie B. Santos, on her own behalf and on behalf of an alleged class of similarly situated persons, filed a petition in the case of *Santos v. Camacho, et al.*, District Court of Guam CV04-00006 (the "Petition"), against Respondents Governor of Guam Felix P. Camacho (the "Governor"), Director of Administration Lourdes M. Perez, Director of Revenue & Taxation Artemio B. Ilagan, and the Government of Guam (the "Government") (collectively "Respondents"); and

**WHEREAS** the Petition concerned the alleged failure of the Government and Respondents to accept or pay claims for the earned income credit ("EIC") under federal and territorial law and sought both tax refunds and mandamus relief, and, as amended pursuant to this Settlement Agreement, will include tax years 1995-1996 and 1998-2004; and

**WHEREAS** in their opposition to the Petition, Respondents denied liability for the EIC and asserted numerous defenses including failure to exhaust and the statute of limitations; and

**WHEREAS** 48 U.S.C. § 1421i(c) provides that "[t]he administration and enforcement of the Guam Territorial Income Tax shall be performed by or under the supervision of the Governor," and 48 U.S. C. § 1421i(d)(2) provides that the Governor of Guam or his delegate has "the same administrative and enforcement powers and remedies with regard to the Guam Territorial Income Tax as the Secretary of the Treasury, and other United States officials of the executive branch, have with respect to the United States income tax; and

**WHEREAS** the Governor has delegated the administration and processing of tax claims under the Guam Territorial Income Tax to the Department of Revenue & Taxation ("DRT"); and

**WHEREAS** the Governor has delegated the issuance of tax refund checks under the Guam Territorial Income Tax to the Department of Administration ("DOA"); and

**WHEREAS** on or about June 14, 2004 a previous settlement agreement (the "June 14, 2004 Settlement") was entered in this matter, which was granted preliminary approval by the District Court of Guam (the "Court") on June 17, 2004; and

**WHEREAS** on July 16, 2004 the Court appointed Petitioner's counsel, Mike Phillips, Esq., Interim Class Counsel; and

**WHEREAS** after Petitioner moved to adopt an administration plan for the June 14, 2004 Settlement, the Governor objected and moved to vacate the Court's preliminary approval of the June 14, 2004 Settlement and raised challenges to the agreement including whether its payment terms complied with the Illegal Expenditures Act under Guam law; and

**WHEREAS**, on January 12, 2005, the Governor issued Executive Order 2005-001 (the "Executive Order") to permit the filing of EIC claims, which created a means of determining the nature of any potential class of EIC claimants; and

**WHEREAS** under the Executive Order, over 15,000 EIC claims have already been filed with DRT, thus providing substantial information regarding the potential class; and

**WHEREAS**, until all EIC claims have been filed, processed, and audited, it is not possible to determine the total value of such claims; and

**WHEREAS** it is the intent of Respondents to resolve all or substantially all EIC claims for tax years 1995-1996 and 1998-2004; and

**WHEREAS** on March 10, 2005 the Parties agreed to take the motions to enter the administration plan and to vacate the preliminary approval of the previous settlement off-calendar and to enter mediation before JAMS Mediator Catherine Yanni, Esq.; and

**WHEREAS** the Parties, through their counsels, engaged in extensive face-to-face negotiations with the assistance and active participation of the Mediator, from March 31, 2005 through April 2, 2005; and

**WHEREAS** the Parties continued to engage in subsequent negotiations with the assistance of the Mediator until they agreed to a term sheet; and

**WHEREAS** the Parties then engaged in subsequent negotiations in connection with the drafting of this final Agreement and conducted inquiries into what notice to the class was reasonably practicable; and

**WHEREAS**, the Parties have now completed their negotiations and believe they have reached a settlement that will protect the interests of the Government of Guam and fairly resolve the EIC claims of the class identified in the amended Petition.

**NOW THEREFORE** the Parties hereto hereby agree as follows:

## I.   PARTIES TO THIS AGREEMENT

**a. IDENTITY OF PARTIES**.  The parties to this Agreement are Petitioner and the EIC Class (defined below), on the one hand, and Respondents, on the other hand (collectively, the "Parties").

**b. DEFINITION OF EIC CLASS.** In this Agreement, the "EIC Class" is defined as including all persons who do not elect to request exclusion from the class under the procedures described below and: (1) were subject to the Guam Territorial Income Tax ("GTIT") established in 48 U.S.C. § 1421i for tax years 1995-1996 and/or 1999-2004 and would have been eligible to file (whether or not they actually filed) for the EIC established in 26 U.S.C. § 32 (as it applied in each respective tax year) if that program were applied in the Territory of Guam; and/or (2) were eligible to receive an EIC credit under certain Guam territorial laws for tax years 1995-1996 and/or 1999-2004 that mirrored the federal EIC law (26 U.S.C. § 32), including the Guam Earned Income Program (Chapter 42 of 11 G.C.A.); and/or (3) actually filed a claim for the EIC with DRT for tax year 1998 under the GTIT or Guam Earned Income Program (Chapter 42 of 11 G.C.A.) on or before April 15, 2002.

## II. SCHEDULE OF EVENTS

### a. INITIAL SUBMISSIONS, PRELIMINARY APPROVAL, & ISSUANCE OF CLASS NOTICE

i. Within three days of executing this Agreement, the Parties shall stipulate to the filing of an amended complaint by Petitioner in the form attached hereto as Exhibit "A."

ii. Within three days of executing this Agreement, the Parties shall file a joint motion in the form attached hereto as Exhibit "B" for preliminary approval of this Agreement, and Petitioner shall file a motion in the form attached hereto as Exhibit "C" for a conditional ruling that this action may proceed as a class action as to the EIC Class, which Respondents shall support. The parties shall further jointly request an

order permitting them to proceed with class notice in the form attached hereto as Exhibit "D" and consistent with the procedures set forth in Section III of this Agreement. As part of this request, the Parties shall request that the Court set the dates for all further events required by this Settlement Agreement consistent with the provisions of this Agreement so that the Parties may include these dates in the notice to the EIC Class.

iii.     So that the class may be advised of the pending motion in the class notice discussed below, Interim Class Counsel or counsel for the EIC Class must file any motion for attorneys' fees and costs within three days of the execution of this Agreement. Attorneys' fees or costs awarded to the counsel for the EIC Class, if any, are to be determined by the Court following such a motion which shall be made under Federal Rules of Civil Procedure 23(h).

iv.     Upon preliminary approval by the Court of this Agreement, the conditional ruling that this action may proceed as a class action, and the order permitting the issuance of the class notice, the previous June 14, 2004 Settlement Agreement shall be mutually rescinded and of no further force or effect, and the stipulated Order dated June 17, 2004 granting preliminary approval to that previous settlement shall be vacated.

### b.  OPPORTUNITY TO OPT-OUT

i.     Any person wishing to request exclusion from the class and this Settlement shall be required to do so in a signed, written statement that may be mailed by first class mail to the Clerk of Court or filed with the Clerk of Court. Any person who falls within the definition of the EIC Class shall be deemed an EIC Class member unless their written statement either: (1) is filed with the Clerk of Court no later than sixty days (or if the sixtieth day falls on a holidays or weekend, the next day during which the

Office of the Clerk of Court is open) after completion of the Class Notice Period defined in Section III below; or (2) is sent by first class mail to the Clerk of Court postmarked no later than sixty days (or if the sixtieth day falls on a holidays or weekend, the next day during which the Office of the Clerk of Court is open) after completion of the Class Notice Period defined in Section III below. This final date for requesting exclusion shall be known as the "Opt-Out Date."

ii.     Any person requesting exclusion from the class and the Settlement Agreement must request exclusion from the class and the settlement in their entirety, and not just as to particular claim(s) for particular tax year(s).

## c. FINAL CLASS CERTIFICATION, FAIRNESS HEARING, ATTORNEYS' FEES, & FINAL COURT APPROVAL

i.      The Parties shall request a combined hearing to be held sixty days after the Opt-Out Date in which the Court shall:  (1) determine whether to grant final class certification; (2) review comments or objections regarding this Settlement Agreement, and consider its fairness, reasonableness, and adequacy under FRCP Rule 23; (3) determine whether to grant Interim Class Counsel or counsel for the EIC Class' motion for attorneys' fees and costs, if any; and (4) decide whether to grant final Court approval of this Settlement Agreement and enter a final judgment (the "Fairness Hearing").  Any motion to intervene must be filed no later than seven days after the Opt-Out Date.

ii.     At least twenty-eight (28) days prior to the date the Court sets for the Fairness Hearing, the Parties shall file a joint motion for an Order of Approval and Final Judgment, and a proposed form of judgment. The Parties shall cooperate in good faith and with best efforts in the joint drafting of these pleadings.

iii.     At least twenty-eight (28) days prior to the date the Court sets for the Fairness Hearing, Petitioner and Interim Class Counsel shall file a motion for final certification of the EIC Class. Respondents shall support this motion.

iv.     With the permission of the Court, Interim Counsel or counsel for the EIC Class may supplement any attorneys' fees motion with supporting documents no later than twenty-eight (28) days prior to the date the Court sets for the Fairness Hearing. Pursuant to FRCP 23(h)(2), any EIC Class member, or a party from whom payment is sought, may object to the attorneys' fees motion by filing an objection to the motion no later than fourteen (14) days before the Fairness Hearing; any reply shall be due no later than seven (7) days before the Fairness Hearing. The application for attorneys' fees and costs shall be heard by the Court at the Fairness Hearing.

v.     Any EIC Class member may object to the proposed settlement, or comment in favor of the settlement.

vi.     Any EIC Class member objecting to the Settlement Agreement, or any EIC Class member or party objecting to attorneys' fees, or their counsel, shall be heard so long as they have filed a written statement of their objection or objections no later than fourteen (14) days before such a hearing. The Parties may file responses thereto no more than seven (7) days before such the Fairness Hearing.

vii.     Upon granting of final approval of the Settlement Agreement and final class certification after the Fairness Hearing, the Court shall issue a judgment dismissing Petitioner's Complaint with prejudice. Notwithstanding the dismissal, the District Court of Guam shall have continuing and exclusive jurisdiction over this Agreement and any dispute related to this Agreement.

## III. CLASS NOTICE

**a.** To achieve the best notice that is reasonably practicable, the Parties have determined to engage in both individual notice and notice by publication to the EIC Class.

**b.** Notice by publication shall include the publication of Exhibit "D" in a full-page advertisement reprinted in full twice weekly for not less than four consecutive weeks in the Pacific Daily News and Marianas Variety. Publication in the Pacific Daily News shall include Sunday and any one other day. Publications in the Marianas Variety shall include any two days. Notice by publication shall commence on the first Sunday that occurs seven (7) days after the Court orders the publication of the class notice.

**c.** Individual notice shall consist of DRT mailing Exhibit "D" to the last known address of the individuals who may fall within the EIC Class whose identity it is reasonably practicable to identify, and shall be accomplished as follows:

**i.** DRT shall first assemble a list of all persons who it is reasonably practicable to identify who may belong to the EIC class. The list shall be developed by assembling a list of the names and social security number (or taxpayer identification number) of the following persons:

**1.** As to tax years 1995-1996, and 1999-2003, DRT shall use its computerized records of individual tax returns to identify the name and social security number (or taxpayer identification number) of all persons whose income level falls within the range of persons who may be eligible to receive the EIC under 26 U.S.C. § 32 as it applied in each respective tax year, and whose filing status otherwise indicates they

could be eligible for the EIC under 26 U.S.C. § 32 as it applied in each respective tax year.

**2.** As to tax years 1995-1996 and 1999-2003, DRT shall also determine the name and social security number of all persons who actually filed Form EIC-GU for each respective tax year.

**3.** As to tax year 1998, because all claims that will be accepted under this Settlement Agreement have already been filed, DRT shall use its computerized records to determine the name and social security number (or taxpayer identification number) of all persons who actually filed claims for tax year 1998 for the EIC under the GTIT or under the Guam Earned Income Program (Chapter 42 of Title 11 of the G.C.A.).

**4.** As to tax year 2004, taxpayers were informed on the GTIT tax return forms for 2004 to complete Form 2004 EIC-GU if they wished to claim the EIC. Therefore, DRT shall determine the name and social security number (or taxpayer identification number) of all persons who actually filed Form EIC-GU for tax year 2004.

**5.** By comparing social security numbers (or taxpayer identification numbers), DRT shall then combine the lists developed into one master list.

**ii.** Once DRT has assembled its master list based on the foregoing provisions, DRT shall match each name and social security number (or taxpayer identification number) identified with the last known address appearing on DRT's computerized records.

**iii.** Except as otherwise specified herein, the Parties have determined that it is not reasonably practicable for DRT to identify any tax filings not yet entered into DRT's computer system or to use such un-entered filings in its determination of

individuals or their last known addresses because this would substantially delay or even prevent DRT's completion of its list.

iv.     One copy of Exhibit "D" shall then be mailed to each person so identified at the address so identified. Persons identified as potential class members who have potential claims in multiple tax years shall be mailed only one copy of the notice.

v.     DRT shall complete its list of individuals and last known addresses, and shall mailed Exhibit "D" by first class mail to each individual at their last known address, no later than 35 days after the Court orders the publication of the Class Notice.

vi.     The Parties acknowledge that it is unlawful under federal law and territorial to disclose individual taxpayer information to any third party except for as authorized by law. None of the forgoing provisions regarding individual notice shall be construed to require such unauthorized disclosures, and DRT shall maintain the confidentiality of the master list and all other lists developed under the forgoing provisions.

d. The completion of the notice by publication and the mailing of the individual notice at the times stated herein shall constitute completion of the "Class Notice Period."

## IV.     SETTLEMENT AMOUNT

a. $90 MILLION TOTAL PAYMENT FOR PAST EIC CLAIMS.   On the terms specified below, and as part of the consideration for the agreement herein, and for entry of Final Judgment as provided for in this Settlement Agreement, the Parties agree that the Government shall pay a total of not more than $90 million to the EIC Class for all EIC claims for tax years 1995-1996 and 1998-2004 ("Settlement Amount").

i.    **TAX YEARS 1995, 1996, 1999, AND 2000**

**1.** The Government will pay the EIC Class not more than $15 million for all EIC claims for tax years 1995, 1996, 1999, and 2000 (combined).

**2.** This amount shall be divided proportionally among each claimant found eligible by DRT applying the requirements of 26 U.S.C. § 32 (applying the version of the statute that was effective in each respective tax year) based on the total combined value of their claim or claims for tax years 1995, 1996, 1999, and 2000.

**3.** In the event that DRT determines there are less eligible claims for tax years 1995, 1996, 1999, and 2000 (combined) than the total amount available to pay such claims under this Agreement, the remainder shall be utilized to fund tax refunds and the EIC in tax year 2005 and future tax years.

ii.    **TAX YEAR 1998**

**1.** The Government will pay the EIC Class not more than $15 million for EIC claims for tax year 1998, based upon the claims already filed with DRT for tax year 1998.

**2.** This amount shall be divided proportionally among each claimant found eligible by DRT applying the requirements of 26 U.S.C. § 32 (applying the version of the statute that was effective in 1998) based on the value of their claim.

**3.** In the event that DRT determines there are less eligible claims for tax year 1998 than the total amount available to pay such claims under this Agreement, the remainder shall be utilized to fund claims for tax year 2001 as stated below.

### iii. **TAX YEAR 2001**

**1.** The Government will pay the EIC Class not more than $15 million for all EIC claims for tax year 2001, together with any remainder from the payment of claims for tax year 1998.

**2.** This amount shall be divided proportionally among each claimant found eligible by DRT applying the requirements of 26 U.S.C. § 32 (applying the version of the statute that was effective in 2001) based on the value of their claim.

**3.** In the event that DRT determines there are less eligible claims for tax year 2001 than the total amount available to pay such claims under this Agreement, the remainder shall be utilized to fund claims for tax year 2002 as stated below.

### iv. **TAX YEAR 2002**

**1.** The Government will pay the EIC Class not more than $15 million for all EIC claims for tax year 2002, together with any remainder from the payment of claims for tax year 2001.

**2.** This amount shall be divided proportionally among each claimant found eligible by DRT applying the requirements of 26 U.S.C. § 32 (applying the version of the statute that was effective in 2002) based on the value of their claim.

**3.** In the event that DRT determines there are less eligible claims for tax year 2002 than the total amount available to pay such claims under this Agreement, the remainder shall be utilized to fund claims for tax year 2003 as stated below.

v.    **TAX YEAR 2003**

**1.** The Government will pay the EIC Class not more than $15 million for all EIC claims for tax year 2003, together with any remainder from the payment of claims for tax year 2002.

**2.** This amount shall be divided proportionally among each claimant found eligible by DRT applying the requirements of 26 U.S.C. § 32 (applying the version of the statute that was effective in 2003) based on the value of their claim.

**3.** In the event that DRT determines there are less eligible claims for tax year 2003 than the total amount available to pay such claims under this Agreement, the remainder shall be utilized to fund claims for tax year 2004 as stated below.

vi.    **TAX YEAR 2004**

**1.** The Government will pay the EIC Class not more than $15 million for all EIC claims for tax year 2004, together with any remainder from the payment of claims for tax year 2003.

**2.** This amount shall be divided proportionally among each claimant found eligible by DRT applying the requirements of 26 U.S.C. § 32 (applying the version of the statute that was effective in 2004) based on the value of their claim.

**3.** In the event that DRT determines there are less eligible claims for tax year 2004 than the total amount available to pay such claims under this Agreement, the remainder shall be utilized to fund claims tax refunds and the EIC in tax year 2005 and future tax years.

**b.** **NO INTEREST.** Members of the EIC Class shall not be paid any interest on their claims for tax years 1995-1996 and 1998-2004.

**c.** **NO USE OF SETTLEMENT AMOUNT FOR UNAUTHORIZED PURPOSES.** Respondents agree that no part of the $90 million paid under this Agreement shall be used for the potential EIC claims of class members who opt out of the EIC Class, or any other income tax refund claims, except as specifically provided in this Settlement Agreement.

**d.** **EIC IN FUTURE TAX YEARS.** As further consideration for this settlement, the Parties agree that EIC claims for tax year 2005 and all future years shall be accepted and paid the same as other tax refund claims under the applicable federal and local laws and in accordance with the requirements for the EIC established in 26 U.S.C. § 32.

**V.** **GOVERNMENT FUNDING FOR THE SETTLEMENT AGREEMENT**

**a. FUNDING SOURCE FOR THE $90 MILLION.**

**i.** Using its best efforts and good faith to pay the Settlement Amount, the Government shall devote a minimum of fifteen percent (15%) of each amount set aside or earmarked by the Government or Legislature for income tax refunds <u>and</u> placed into either the Income Tax Refund Reserve Fund (Chapter 50 of Title 11 of the G.C.A.) or the Income Tax Refund Efficient Payment Trust Fund (Chapter 51 of Title 11 of the G.C.A.) to pay the Settlement Amount to the EIC Class for EIC claims pursuant to this Agreement. Such reservations of the minimum 15% have already commenced following the execution of the prior term sheet.

ii.     In the event funds are transferred from the Income Tax Refund Efficient Payment Trust Fund to the Income Tax Refund Reserve Fund, or vice-versa, no additional reservation shall be required, because the fifteen percent (15%) is to be reserved the first time any amount is placed into either Fund and not when a transfer occurs between the two Funds.

iii.     If amounts being reserved within the Income Tax Refund Efficient Payment Trust Fund earn interest or investment earnings as provided in Chapter 51 of 11 G.C.A., such interest or investment earnings shall be utilized only for the purposes permitted by law under 11 G.C.A. §§ 51101(a) and 51103.

**b. ASSURANCES TO THE CLASS.**

i.     Respondents represent and warrant that all monies used to pay GTIT tax refunds are and will be first placed into the Income Tax Refund Reserve Fund and/or the Income Tax Refund Efficient Payment Trust Fund prior to the issuance of tax refund checks; therefore, tying the payment of the EIC claims under this settlement to a fixed percentage of the amount placed into those Funds will have the affect of ensuring that EIC claims are paid as money becomes available to pay tax refunds in general.

ii.     After final approval of the Settlement Agreement, to ensure that at least 15% is being set aside for the purposes of fulfilling the Government's obligations herein, DOA shall provide quarterly reports on January 1, April 1, July 1, and October 1 of each year to Class Counsel and the Court documenting:  (1) the total amount of monies placed into the Income Tax Refund Reserve Fund and Income Tax Refund Efficient Payment Trust Fund in the quarter; (2) the total amount of money paid in tax refunds in the quarter; (3) the total amount of money that has been reserved for EIC payments

under this Agreement in the quarter; and (4) the total amount of money paid for EIC claims pursuant to this Settlement Agreement in the quarter. To comply with federal and territorial law requiring the privacy of individual taxpayer's tax returns and related documents, such reports shall not require the disclosure of individual taxpayer information.

**c. CONCERNS REGARDING THE ILLEGAL EXPENDITURES ACT.** The deposit and maintenance of the amounts necessary to pay the Settlement Amount within the Income Tax Refund Reserve Fund and/or Income Tax Refund Efficient Payment Trust Fund is intended to avoid the Government's concern regarding any potential violation of the Illegal Expenditures Act (5 G.C.A. §22401). It is not intended nor shall it be interpreted for any other purpose.

**d. ALTERNATIVE FUNDING SOURCES FOR THE $90 MILLION.** The Governor may, at his discretion, utilize other funding sources for the $90 million permitted by law to pay the EIC claims under this Agreement. At the Governor's request, class counsel and/or the Parties shall cooperate in good faith with any efforts by the Governor to obtain additional funding or otherwise speed payment.

**e. FUNDING FOR THE ADMINISTRATION OF CLAIMS.** Because the EIC claims under this Agreement will be administered as tax refund claims, Respondents shall use the funding for the processing of tax returns and refunds already available and shall not be obligated to obtain separate or additional funding for the administration of claims.

**f. FUNDING FOR CLASS NOTICE.** Respondents shall bear the expense of publishing, mailing, advertising, and/or otherwise disseminating the class notice on the terms stated herein, including the identification of potential individual class members,

which expenses shall be paid from the following account:   Governor's Account 5100A050200GA001.

g. **FUNDING FOR FUTURE TAX YEARS**.  EIC claims for tax year 2005 and future tax years shall be funded in compliance with Chapters 50 and 51 of Title 11 of the G.C.A.

## VI.   ADMINISTRATION OF THE CLAIMS PROCESS

a. **EIC CLAIMS TO BE ADMINISTERED AS TAX REFUND CLAIMS SUBJECT TO THE CONTINUING JURISDICTION OF THE COURT**.  The administration of EIC claims under this Agreement is to be handled by DRT, DOA, and any other appropriate Government agencies pursuant to existing procedures for evaluating claims for tax refunds and issuing tax refund checks under federal and territorial law.  Because the Parties have agreed to administer the Settlement Amount in the manner provided herein, no separate administration plan will be required.   Where any matter is not otherwise specified herein or not contrary to any provision herein, the law governing tax refund claims under federal and territorial law shall control.

b. **HOW EIC CLASS MEMBERS WILL FILE THEIR CLAIMS FOR TAX YEARS 1995-1996 AND 1998-2004**

i.   **PROCEDURES APPLICABLE TO TAX YEARS 1995, 1996, 1999, 2000, 2001, 2002, 2003, 2004**.

**1.** For tax years 1995, 1996, 1999, 2000, 2001, 2002, 2003, and 2004, EIC Class members must file an EIC claim with DRT or mail a claim to DRT for each tax year in which they wish to make a claim.

**2.** Claims shall be submitted by submission of Form EIC-GU for each applicable tax year. These are the EIC tax forms employed by DRT, as may be amended from time to time.

**3.** Forms EIC-GU is and shall be made available at DRT and such other locations as GTIT tax forms are ordinarily made available.

**4.** If a taxpayer has already filed a Form EIC-GU with DRT, this shall be a claim under this Agreement; provided, however, that such claimants shall have the opportunity to request exclusion from this Settlement Agreement.

**5.** Those claimants who have filed incomplete or defective claims under Executive Order 2005-001 shall have the option to file a new Form EIC-GU as a substitute.

**6.** If an EIC Class member has not filed an income tax return for a tax year covered by this Agreement and they wish to submit a Form EIC-GU for that year, they also must file a tax return for that year as a necessary and required part of filing a claim under this Agreement.

**7.** EIC Class members shall retain the right to amend their tax returns as provided by federal and territorial law, but shall not be required to file an amended tax return for purposes of making a claim for EIC pursuant to this Settlement Agreement. Notwithstanding the acceptance of new tax returns by persons who never previously filed a tax return as stated above, Respondents shall not accept *amended* tax returns unless filed within the time period required by federal and territorial law (which is three years from the date the original tax return was first due, whether or not it was actually timely filed).

###### ii.    PROCEDURES APPLICABLE TO TAX YEAR 1998

**1.** To be eligible to receive any payment under this Agreement for tax year 1998, EIC Class members must have filed a claim for the EIC under the GTIT or the Guam Earned Income Program for tax year 1998 on or before April 15, 2002.

**2.** No new or amended tax returns for tax year 1998 shall be accepted.

##### c. WHEN MEMBERS OF THE EIC CLASS MUST FILE THEIR CLAIMS

**i.**    Claims for tax years 1995, 1996, 1999, 2000, and 2001 must be either be (1) filed with DRT on or before January 2, 2006; or (2) mailed to DRT by first class mail that is postmarked on or before January 2, 2006.

**ii.**    Claims for tax years 2002, 2003, and 2004 must be either (1) filed with DRT on or before April 17, 2006; or (2) mailed to DRT by first class mail that is postmarked on or before April 17, 2006.

**iii.**    No new EIC claims for Tax Year 1998 shall be accepted.

##### d. HOW CLAIMS WILL BE PROCESSED

**i.**    In processing claims, Respondents shall retain the right to audit all EIC claims and to deny any claims found to.be invalid under the federal and local laws governing EIC eligibility for each respective tax year.

**ii.**    If a claimant is found eligible for the EIC, Respondents shall retain the right to offset the amount of an EIC claim as provided for GTIT refunds in general by 26 U.S.C. § 6402.

**iii.**    Respondents shall retain the right to asses any applicable penalties permitted by federal or territorial law as to any false or inaccurate EIC claims submitted

under this Settlement Agreement, including reducing or denying an EIC claim or assessing fines or other civil or criminal sanctions.

iv.　In the event that a claimant shall be determined by Respondents to have engaged in prohibited conduct under 26 U.S.C. § 32(k) as to EIC claims starting with tax year 1997 (the tax year this section took effect), then this shall foreclose any EIC claim in future tax years consistent with the provisions of 26 U.S.C. § 32(k).

v.　With regard to any denial of an EIC claim or any assessment of any civil or criminal penalties, a member of the EIC Class shall maintain the right to challenge such a determination through all administrative and judicial processes afforded under federal or territorial law to a taxpayer as to any tax refund claim.

vi.　Nothing in this Agreement or the claims process shall be construed to prohibit any portion of any EIC claim being made subject to payment of attorneys' fees and costs, if any, if so ordered by the Court.

e. **WHEN EIC CLAIMS FOR TAX YEARS 1995-1996 AND 1998-2004 WILL BE PAID**

i.　**CONDITIONS PRECEDENT FOR ANY PAYMENT.**

1.　No payments of EIC claims for tax years 1995-1996 and 1998-2004 under this Agreement shall be made prior to final District Court approval of this Settlement Agreement and entry of the final judgment.

2.　EIC claims for tax years 1995-1996 and 1998-2004 shall be paid only as the money to pay such claims becomes available under Section V of this Agreement.

**3.** No claims shall be paid for tax years 1995-1996 and 1998-2004 until the period to make a claim for a particular tax year has expired under the terms of this Agreement.

**ii.      ORDER OF PAYMENT OF EACH TAX YEAR.**  Tax years covered by this Agreement will be paid in the following order.

**1.** First, all claims for tax years 1995, 1996, 1999, and 2000 (collectively) will be paid pursuant to the terms stated herein.

**2.** Once all claims for tax year 1995, 1996, 1999, and 2000 have been paid, claims for tax year 1998 will be paid pursuant to the terms stated herein.

**3.** Once all claims for tax year 1998 have been paid, claims for tax year 2001 will be paid pursuant to the terms stated herein.

**4.** Once all claims for tax year 2001 have been paid, claims for tax year 2002 will be paid pursuant to the terms stated herein.

**5.** Once all claims for tax year 2002 have been paid, claims for tax year 2003 will be paid pursuant to the terms stated herein.

**6.** Once all claims for tax year 2003 have been paid, claims for tax year 2004 will be paid pursuant to the terms stated herein.

**iii.      ORDER OF PAYMENT OF EIC CLASS MEMBERS.**  Within each tax year, once all claims have been submitted and the amount due to each EIC Class member has been calculated, claims shall be paid in the order filed with DRT by the members of the class.

iv.    **TIMELY PROCESSING AND PAYMENT OF CLAIMS.**

**1.** All claims shall be processed by DRT and shall be processed on the terms and within the time stated below:

**A.** On or before January 2, 2006, DRT will have processed all claims for tax year 1998, and either: (1) determined if the claimant is eligible for the EIC under 26 U.S.C. § 32 (as it applied in 1998) based upon the information provided by the claimant and the amount they are entitled to receive; or (2) informed the claimant that the claim has been selected for an audit, informed the claimant that additional information is required (including the information sought), or informed the claimant that the claim has been denied (including the ground(s) for denial). With regard to claims selected for audits or requiring additional information, DRT shall use best efforts to complete the processing of all such claims by January 2, 2006, understanding that it may not be possible for every single claim to completed in this period given taxpayer's rights to administrative and judicial challenges to a DRT determination as described in this Agreement.

**B.** On or before July 3, 2006, DRT will have processed all claims for tax years 1995, 1996, 1999, 2000, and 2001 and either: (1) determined if the claimant is eligible for the EIC under 26 U.S.C. § 32 (as it applied in each respective tax year) based upon the information provided by the claimant and the amount they are entitled to receive; or (2) informed the claimant that the claim has been selected for an audit, informed the claimant that additional information is required (including the information sought), or informed the claimant that the claim has been denied (including the

ground(s) for denial). With regard to claims selected for audits or requiring additional information, DRT shall use best efforts to complete the processing of all such claims by July 3, 2006, understanding that it may not be possible for every single claim to completed in this period given taxpayer's rights to administrative and judicial challenges to a DRT determination as described in this Agreement.

**C.** On or before October 16, 2006, DRT will have processed all claims for tax years 2002, 2003, and 2004 and either: (1) determined if the claimant is eligible for the EIC under 26 U.S.C. § 32 (as it applied in each respective tax year) based upon the information provided by the claimant and the amount they are entitled to receive; or (2) informed the claimant that the claim has been selected for an audit, informed the claimant that additional information is required (including the information sought), or informed the claimant that the claim has been denied (including the ground(s) for denial). With regard to claims selected for audits or requiring additional information, DRT shall use best efforts to complete the processing of all such claims by October 16, 2006, understanding that it may not be possible for every single claim to completed in this period given taxpayer's rights to administrative and judicial challenges to a DRT determination as described in this Agreement.

**2.** After the completion of the processing of claims for each respective tax year; DRT shall calculate the total amount of claims it has found to be valid for that respective tax year. DRT shall then:

**A.** Identify the portion of the Settlement Amount available to pay for claims for each respective tax year or years under the terms of this Agreement.

**B.** A determination of the exact portion of the Settlement Amount available for tax year 2001 will require that DRT first complete the processing of claims for tax year 1998. A determination of the exact portion of the Settlement Amount available for each of tax years 2002, 2003, and 2004 will require that DRT first complete the processing of claims for each of the preceding tax years.

**C.** Based upon the total amount of claims found valid by DRT for a given year, compared to the portion of the Settlement Amount available to pay claims for that year or those years, DRT shall then determine the percentage of each claim (up to a maximum of 100%) that can be paid from the portion of the Settlement Amount available to pay for claims for each respective tax year or years under the terms of this Agreement.

**D.** Applying the percentages that applies to each tax year, DRT shall then certify to DOA the claims and percentage amounts that should be paid pursuant to the provisions of this Agreement.

**3.** Upon receipt of DRT's certification, and once sufficient funds exist pursuant to the terms of this Agreement, DOA shall pay claims for the certified amount in the order of claim priority stated in Section VI(e)(ii) and Section VI(e)(iii) of this Agreement.

**4.** With regard to amounts of EIC claims identified as being subject to offsets under Section VI(d) of this Agreement, such amounts shall be certified for payment to the appropriate entity or entities. The claimant shall be notified that the offset amount has been paid to such an entity or entities.

v.    **EXCEPTION FOR HARDSHIP CASES**. Notwithstanding the priority for the payments of EIC claims, the Parties agree that DRT shall retain the right to make individual exceptions to the priority of payments based on standard pre-existing DRT policies and procedures governing the distribution of general income tax refunds.

vi.    **PROCEDURE GOVERNING CLAIMS APPROVED AFTER CLAIMS FOR THAT TAX YEAR HAVE BEEN PAID**.

**1.** If a class members' claim for a particular year is denied or selected for an audit, and it is later determined in a judicial or administrative process that the claim was valid and should be paid, that class member shall receive the same proportional payment of the amount found to be validly claimed as is paid to class members for that same tax year.

**2.** The funding of such a proportional payment shall depend upon whether DRT already completed the procedures set forth in Section VI(e)(iv)(2) of this Agreement:

**A.** If DRT has not completed the procedures set forth in Section VI(e)(iv)(2), then the claim shall be added to the other approved claims for that tax year and be factored into the calculation of the percentage each claimant will receive for that tax year and the certification for payment of such claims by DRT to DOA under Section VI(e)(iv)(2).

**B.** If DRT has completed the procedures set forth in Section VI(e)(iv)(2), DRT shall certify the payment of the claim (at the same proportional rate as applied to all other claims for that tax year) to DOA to be funded directly from amounts reserved in

the Funds created by Chapters 50 and 51 of Title 11 of the G.C.A., as such amounts become available.

## VII.  RELEASE OF CLAIMS BY THE EIC CLASS

**a. GENERAL RELEASE.**  Upon final approval of this Settlement Agreement by the Court, each and every member of the EIC Class expressly and irrevocably releases, waives, settles, and discharges all claims (whether legal or equitable), demands, actions (whether judicial or administrative), suits, and causes of action, including without limitation those asserted in *Santos v. Camacho, et al.*, District Court of Guam CV04-00006, against the Government of Guam, the Governor of Guam, the Director of the Department of Revenue & Taxation, the Department of Revenue & Taxation, the Director of the Department of Administration, the Department of Administration, and their employees, officers, agencies, instrumentalities, independent contractors, representatives, attorneys, and agents, whether in their individual or official capacities, with regard to claims for payment of the EIC under federal or Guam territorial law in tax years 1995, 1996, 1998, 1999, 2000, 2001, 2002, 2003, and 2004, or any refusal to accept or pay such claims or to implement any government programs with regard to such claims.  Such release and discharge includes all such claims whether known, unknown, asserted, unasserted, suspected, or unsuspected.

**b. COVENANT NOT TO SUE.**  Upon final approval of the Settlement Agreement, the EIC Class separately covenants not to sue the Government of Guam, the Governor of Guam, the Director of the Department of Revenue & Taxation, the Department of Revenue & Taxation, the Director of the Department of Administration, the Department of Administration, and their employees, officers, agencies, instrumentalities,

independent contractors, representatives, attorneys, and agents, whether in their individual or official capacities, with regard to claims for payment of the EIC under federal or Guam territorial law in tax years 1995, 1996, 1998, 1999, 2000, 2001, 2002, 2003, and 2004, or any refusal to accept or pay such claims or to implement any government programs with regard to such claims

**c.** **WAIVER OF 18 G.C.A. § 82602.** With regard to the release of claims stated in Section V(a) above, each and every member of the EIC Class expressly waives their rights under 18 G.C.A. § 82602 or principle of common or civil law that is similar to or analogous to 18 G.C.A. § 82602, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

**d. LIMITATIONS ON RELEASE & COVENANT NOT TO SUE**

**i.** The general release and covenant not to sue stated above shall not be construed to preclude any member of the EIC Class from challenging through the administrative and/or judicial procedures that govern ordinary tax refund claims a particular determination as to: (1) the existence and/or value of their particular EIC claim(s) for tax years 1995-1996, 1998-2004 by DRT, (2) any amount of off-set or other adjustment made to their EIC claims by DRT (including without limitation by way of audit, penalty, intercept program, or off-set); provided, however, that the procedures for payment of such claim(s) and the percentage of such claim(s) to be paid once determined shall remain subject to the terms of this Agreement.

**ii.** The general release and covenant not to sue stated above exclude any future claims alleging solely a breach of this Settlement Agreement.

## VIII. CONDITIONS PRECEDENT & RIGHTS TO TERMINATION

**a.** If the Court denies preliminary approval of this Agreement and/or denies conditional approval to proceed as a class action, this Agreement shall be terminated and of no further force or effect. The Parties shall be restored to their respective positions as existed immediately prior to the date of execution of the Term Sheet, without having waived any objections to or support of the June 14, 2004 Agreement.

**b.** If the Court refuses to grant final class certification or final approval of the Settlement Agreement after the Fairness Hearing, or refuses to enter the final judgment, this Agreement shall be rendered void and of no effect and the conditional and/or final class certification shall be vacated.

**c.** The Parties acknowledge and understand that it is anticipated that the amounts that can be reserved pursuant to this Settlement Agreement at present and in the coming months (possibly using a higher percentage of reservation and/or other sources identified by the Governor) will be approximately Fifteen Million Dollars ($15,000,000), thus permitting the timely payment of EIC claims for tax years 1995, 1996, 1999 and 2000 after the Court's Order of Approval and Final Judgment and claims have been filed and processed. If Respondents have failed to reserve at least $15 million for the payment of claims under this Settlement Agreement by the time the Agreement is subject to the Fairness Hearing, Petitioner shall have the right to terminate the Settlement Agreement, which shall be void and of no effect, and the June 14, 2004

Settlement shall be returned to effect as though this Settlement Agreement had never been preliminarily approved, subject to all previously pending motions.

## IX.  MISCELLANEOUS CLAUSES

a. **INTEGRATION**. This Agreement contains the entire, complete, and integrated statement of each and every term of the Parties' Agreement and is not subject to any terms not specified herein. It shall not be modified except in a writing signed by all Parties. No Party has relied upon any warranty or representation unless expressly stated in this Agreement.

b. **NOTICE**. Any notice, request, instruction or other document to be given by any Party to another Party shall be in writing and delivered personally or by Certified Mail, Return Receipt Requested, to Counsel for the Parties as follows:

If to the Petitioner or the EIC Class:

Michael F. Phillips, Esq.
Phillips & Bordallo, P.C.
410 West O'Brien Drive, Suite 102
Hagåtña, Guam 96910

If to the Governor of Guam:

Felix Camacho, Governor of Guam
Ricardo J. Bordallo Governor's Complex, Adelup
P.O. Box 2950
Hagatna, GU 96932

With copies to:

Shannon Taitano, Esq.
Legal Counsel, Office of the Governor
Ricardo J. Bordallo Governor's Complex, Adelup
P.O. Box 2950
Hagåtña, GU 96932

Rodney J. Jacob, Esq.
Calvo & Clark, LLP
655 South Marine Corps Drive, Suite 202
Tamuning, Guam 96913

If to the Attorney General of Guam:

Honorable Douglas B. Moylan
Attorney General of Guam
Office of the Attorney General
Guam Judicial Center
120 West O'Brien Drive, Suite 2-200E
Hagatna, Guam   96910

If to the Directors of DOA and DRT:

Art Ilagan
Director of the Department of Revenue & Taxation
P.O. Box 23607
Barigada, GU 96921

Lourdes Perez
Director of the Department of Administration
Ricardo J. Bordallo Governor's Complex, Adelup
P.O. Box 884
Hagåtña, GU 96932


With copies to:

Shannon Taitano, Esq.
Legal Counsel, Office of the Governor
Ricardo J. Bordallo Governor's Complex, Adelup
P.O. Box 2950
Hagåtña, GU 96932

Rawlen M.T. Mantanona, Esq.
Mantanona Law Office
Suite 601B, GCIC Bldg.
414 W Soledad Ave.
Hagåtña, Guam 96910

**c. AMENDMENT OF PRIOR CONFIDENTIALITY AGREEMENT.** The Parties hereby amend and enter a limited waiver of their March 31, 2005 Confidentiality Agreement governing their negotiations. This limited waiver shall only permit: (1) the Mediator to disclose to the Court such information as may be required, in the sole discretion of the Mediator, to assist the Court in determining whether to grant preliminary or final approval of this Agreement; (2) the Mediator to require a Party to disclose to the Court such information as may be required, in the sole discretion of the Mediator, to assist the Court in determining whether to grant preliminary or final approval of this Agreement; provided, however, that this limited waiver is not, and shall not be construed as, a waiver of any Party's attorney-client or work product privileges. This limited waiver shall also permit any Party to disclose the Parties' previous term sheet. In all other respects, the March 31, 2005 Confidentiality Agreement shall remain in effect except as ordered by the Court.

**d. NO ADMISSION OF LIABILITY.** This Agreement and any acts undertaken by the Parties pursuant to it are part of a resolution of a dispute and not an admission of liability. They may not be used as such in any other litigation, including any litigation brought by persons who opt-out of this Agreement.

**e. NO WAIVER OF CLAIMS CONCERNING FEDERAL GOVERNMENT.** Nothing in this Agreement or in the final judgment issued pursuant to this Agreement shall be construed to bar, preclude, or waive any right of Respondents to seek federal reimbursement of part or all of amounts paid for EIC claims, whether under this Agreement or otherwise. At the sole discretion of Respondents, Respondents may elect to state a claim or claims against the federal government or its officers, entities, or

agencies as part of answering the amended Petition. If this option is exercised, then the final judgment referenced herein shall instead be a partial final judgment pursuant to FRCP 54(b) that is a final and complete resolution of claims between Respondents and the EIC Class, but not as between Respondents and any such federal defendants. The determination of the Respondents not to exercise this option shall not preclude Respondents from bringing a separate suit or claims in a different action against any federal defendants. Petitioner and class counsel shall cooperate in any efforts by Respondents to obtain reimbursement for all of amounts paid for EIC claims against the federal government or its officers, entities, or agencies, whether under this Agreement or otherwise.

**f. SEVERABILITY.** Except as otherwise specified herein, the provisions of this Settlement Agreement shall be severable.

**g. BINDING NATURE.** This Agreement shall be binding upon, and inure to the benefit of, each member of the EIC Class, each Party, and their respective heirs, executors, administrators, successors, and assigns.

**h. COOPERATION IN GOOD FAITH.** All parties expressly agree and warrant they will cooperate in good faith in the execution and implementation of this Agreement and that they will: (1) promptly recommend approval of this Settlement Agreement to the Court; (2) use their best efforts to publicly promote this Settlement Agreement and work to encourage prospective class members not to opt-out; and (3) use their best efforts to obtain approval of this Settlement Agreement and to carry out its terms.

**IN WITNESS THEREOF,** the Parties have duly executed this Settlement Agreement on the date provided below.

_____
**FELIX P. CAMACHO**
Governor of Guam

Dated: **6-20-05**

_____
**LOURDES M. PEREZ**
Director of the Department of Administration

Dated: **6/20/2005**


_____
**JULIE B. SANTOS**
Individually, and on Behalf of Those
Similarly Situated

Dated: **6-20-05**

_____
**ARTEMIO B. ILAGAN**
Director of the Department of Revenue &
Taxation

Dated: **6/20/05**


**CERTIFIED FUNDS AVAILABLE (regarding class notice expenses):**
**Account No.:** Governor's Account 5100A050200GA001.
**Amount: $50,000.00**

_____
**JOSE S. CALVO**
Certifying Officer

**APPROVED:**

_____
**JOSE S. CALVO**
In His Capacity as Acting Director of the
Bureau of Budget and Management
Research

Dated: **6.20.05**

**APPROVED AS TO LEGALITY AND FORM:**

CALVO & CLARK, LLP
Attorneys for Respondent Felix P.
Camacho, Governor of Guam

By: _____
        **RODNEY J. JACOB**

Dated: _6/20/05_____

MANTANONA LAW OFFICE
Attorneys for Respondents Lourdes M.
Perez and Artemio R. Ilagan

By: _____
        **RAWLEN M.T. MANTANONA**

Dated: _6/20/05_____

OFFICE OF THE ATTORNEY GENERAL
Attorneys for Respondent Government of
Guam

By: _____
        **ROBERT WEINBERG**
        Assistant Attorney General

Dated: _____

LAW OFFICES OF PHILLIPS &
BORDALLO
Attorneys for Julie B. Santos and Interim
Class Counsel

By: _____
        **MICHAEL F. PHILLIPS**

Dated: _6/20/05_____

# EXHIBIT A

Attorneys for Petitioners

## DISTRICT COURT OF GUAM
## TERRITORY OF GUAM

CIVIL CASE NO. 04-00006

JULIE BABAUTA SANTOS, *et al.*,

Petitioners,

vs.

FELIX A. CAMACHO, etc., *et al.*,

Respondents.

**AMENDED CLASS ACTION PETITION
FOR THE RECOVERY OF EARNED
INCOME TAX REFUNDS OR IN THE
ALTERNATIVE FOR A WRIT IN THE
NATURE OF MANDAMUS**

The Petitioner, individually and on behalf of all those similarly situated (hereinafter "EIC Class"), through her attorneys of record Phillips and Bordallo, P.C., by Michael F. Phillips, petitions this Court for the recovery of income tax refunds, or, in the alternative, for a writ in the nature of mandamus directed to Respondents, in their official capacities, and by this verified Amended Petition alleges:

## JURISDICTION

1.     This Court has exclusive original jurisdiction pursuant to 48 U.S.C. §§1421i(h) and 1424(b), and 28 U.S.C. §1361. Section 1421i(h) provides this Court with exclusive, original jurisdiction over all judicial proceedings in Guam with respect to the Guam Territorial Income Tax.   Section 1424(b) provides this Court with the jurisdiction of a district court of the United States.  Section 1361 provides this Court with original jurisdiction of any action in the nature of mandamus to compel the performance of duty owed to the plaintiff.

## PARTIES

2.     Petitioner is a United States citizen, a Guam resident, and a taxpayer. Petitioner is over the age of 18 years, and was and is legally qualified to apply for and receive refundable earned income tax credits (the "EIC") which Petitioner is seeking to have implemented and applied to Guam taxpayers.

3.     Respondent Felix P. Camacho, Governor of Guam (hereinafter "Respondent Camacho"), is the Governor of Guam, such office established within the Government of Guam by virtue of the 1950 Organic Act of Guam (the "Organic Act"), 48 U.S.C. §1421, et seq., and responsible for the administration and enforcement of the Guam Territorial Income Tax ("GTIT").  48 U.S.C. §1421i.

4.     Respondent Art Ilagan, Director of the Department of Revenue and Taxation (hereinafter "Respondent Illagan"), is responsible under the Governor with the administration and enforcement of the GTIT, as provided by 11 G.C.A. §§1104 and 1107.

2

5.      Respondent Lourdes M. Perez, Director of the Department of Administration (hereinafter "Respondent Perez"), is responsible to set aside all money reserved for income tax refunds, earned income tax credits and child tax credits from income tax receipts, as required by the Income Tax Refund Reserve Fund Law.   11 G.C.A. §50104.

6.      Respondent Government of Guam, created through the Organic Act, is made up of three (3) co-equal branches of government consisting of the Executive, Legislative, and Judicial branches, and only has those powers granted to it through the Organic Act.

## THE CLASS

7.      Petitioner brings this petition on Petitioner's own behalf and on behalf of all persons similarly situated.   The EIC Class Petitioner represents consists of the following persons:

> All persons who do not elect to request exclusion from the class and: (1) were subject to the Guam Territorial Income Tax established in 48 U.S.C. § 1421i for tax years 1995-1996 and/or 1999-2004 and would have been eligible to file (whether or not they actually filed) for the EIC established in 26 U.S.C. § 32 (as it applied in each respective tax year) if that program were applied in the Territory of Guam; and/or (2) were eligible to receive an EIC credit under certain Guam territorial laws for tax years 1995-1996 and/or 1999-2004 that mirrored the federal EIC law (26 U.S.C. § 32), including the Guam Earned Income Program (Chapter 42 of 11 G.C.A.); and/or (3) actually filed a claim for the EIC with DRT for tax year 1998 under the GTIT or Guam Earned Income Program (Chapter 42 of 11 G.C.A.) on or before April 15, 2002.

3

8. The EIC Class, described above and composed of more than 10,000 taxpayers entitled to and qualified to apply for and receive EIC, is so numerous that joinder of all members is impracticable;

9. There are questions of law or fact common to the EIC Class. Each EIC Class member was denied the full implementation of the earned income tax credit program as applied to Guam, including the Government's prohibition or prevention of EIC Class members to file claims for earned income tax credit refunds, and/or the Government's denial or failure to pay earned income tax credit refunds to otherwise qualified EIC Class members. The questions are such that proof of a state of facts common to the members of the class will entitle each member of the class to the relief requested in this Amended Petition.

10. The claims of Petitioner are typical of the claims of the EIC Class. The Petitioner was denied the full implementation of the earned income tax credit program as applied to Guam, including the Government's prohibition or prevention of Petitioner to file claims for earned income tax credit refunds, and/or the Government's denial or failure to pay earned income tax credit refunds to the otherwise qualified Petitioner.

11. The Petitioner will fairly and adequately protect the interests of the EIC Class.

12. In consideration of (a) the minimal interest of members of the EIC Class in individually controlling the prosecution of separate actions, (ii) the extent and nature of the litigation concerning the controversy already commenced by members of the EIC Class, (iii) the desirability of concentrating the litigation of the claims in this Court, and (iv) the difficulties unlikely to be encountered in the management of this class action, the

4

questions of law or fact common to the members of the EIC Class predominate over any questions affecting only individual members, and this class action is superior to other available methods for the fair and efficient adjudication of the controversy.

13. Petitioner and members of the EIC Class have a clear right to the relief sought, Respondents have plainly defined, peremptory and non-discretionary duties to implement the provisions of the GTIT related to earned income tax credits, and no other adequate remedy is available. Petitioner has exhausted her administrative remedies and/or Respondents are estopped from alleging non-exhaustion. Petitioner and the members of the class Petitioner represents have no plain, speedy, or adequate remedy at law against Respondents other than by maintenance of this class action, because Petitioner is informed and believes, and on the basis of that information and belief alleges, that the Respondents have refused to implement federal and local laws requiring implementation of the earned income tax credit program, including the allowance and acceptance of claims for earned income tax credit refunds, and the payment of earned income tax credit refunds; and that the damage to each member of the class is relatively small, and that it would be economically infeasible to seek the enforcement of laws requiring the implementation of the earned income tax credit program, including the allowance and acceptance of claims for earned income tax credit refunds, and the payment of earned income tax credit refunds, other than by a class action.

5

## PETITIONER'S CLAIMS

14. Congress organized Guam as an unincorporated possession of the United States through the Organic Act of Guam, 48 U.S.C. §1421 et. seq. Congress also provided an income tax scheme for Guam in 48 U.S.C. §1421i ("Income Tax Section").

15. Guam residents do not pay any income tax to the U.S. federal government; instead, they pay a territorial income tax to the government of Guam. Rather than writing an entirely new tax code for Guam, Congress applied certain provisions of the Internal Revenue Code, 26 U.S.C. §1 et. seq. ("IRC."), to Guam as the Guam Territorial Income Tax, including Subtitle A, which contains the EIC. 26 U.S.C. §32.

16. In passing the Income Tax Section, Congress intended to provide uniform treatment for United States and Guam taxpayers. Only those provisions of the IRC that are manifestly inapplicable or incompatible with the intent of the Income Tax Section do not apply to Guam taxpayers. The EIC is not manifestly inapplicable or incompatible with the intent of the Income Tax Section.

17. The EIC was enacted in part to provide special tax benefits to low-income workers by reducing tax burdens and making employment more attractive than welfare.

18. Under the mirror code, Guam taxpayers have been eligible for the EIC since its effective date in 1975, and remain eligible unless Guam de-links from the IRC and enacts its own tax code. Guam has not de-linked from the IRC nor has it enacted its own tax code.

19. On February 28, 1996, Public Law 23-74, sponsored by then-Senator Felix P. Camacho, specifically made the EIC applicable to Guam. Although the provisions of Public Law 23-74 were later repealed, the Guam Legislature, through Public Law 24-

6

61:4, as amended by Public Law 25-03:IV;22, enacted the Earned Income Program (the "Earned Income Program") to mandate the fulfillment of the Government of Guam's obligations under the Income Tax Section. 11 G.C.A. §42101, et. seq.

20. Section 42103 of Title 11 G.C.A. requires the Earned Income Program be instituted using the same income levels as are used in the EIC law to compute a subsidy which will be paid to residents of Guam who file Income Tax Returns to the Department of Revenue and Taxation.

21. Section 50103 of Title 11 G.C.A. requires Respondent Illagan, in consultation with Respondent Perez and the Director of the Bureau of Budget and Management Research, to establish a formula for reserving income tax receipts to pay income tax refunds, earned income tax credits and child tax credits.

22. Section 50104 of Title 11 G.C.A. requires Respondent Perez to set aside all money reserved for income tax refunds, earned income tax credits and child tax credits from income tax receipts.

23. The Guam Supreme Court recently held that the substantive provisions of the IRC enlisted in the Organic Act, including the EIC, must be applied in mirrored fashion to Guam, and the Governor is required to enforce and administer the EIC. See In re Request of I Mina Bente Singko Na Liheslaturan Guahan Relative to the Application of the Earned Income Tax Credit Program to Guam Taxpayers, 2001 Guam 3 (2001).

24. Respondents have refused to allow or accept claims for EIC from Guam taxpayers, and/or have denied and failed to pay EIC to otherwise qualified Guam

7

taxpayers, and have publicly continued to allege that the EIC is inapplicable to Guam taxpayers.

25. Respondents have continued to deny Guam taxpayers the benefits of federal and local law relevant to earned income tax credit refunds, including Earned Income Program.

26. Petitioner seeks relief in the form of damages for all unpaid refundable earned income tax credits for the years 1995, 1996, 1998, 1999, 2000, 2001, 2002, 2003, and 2004, in the approximate amount of One Hundred Thirty-Five Million Dollars ($135,000,000.00).

27. In the alternative, Petitioner seeks a writ in the nature of mandamus compelling Respondents to implement the EIC as required by the Organic Act and Guam law, including the to allowance and acceptance of EIC claims from Guam taxpayers, and furthermore, that Respondents pay to Petitioner and the class all unpaid refundable earned income tax credits for the years 1995, 1996, 1998, 1999, 2000, 2001, 2002, 2003, and 2004 in the approximate amount of One Hundred Thirty-Five Million Dollars ($135,000,000.00). Petitioner has a clear right to the relief sought, Respondents have plainly defined, peremptory and non-discretionary duties to implement the EIC, including the allowance and acceptance of EIC claims, and to pay unpaid refundable income tax credits, and no other adequate remedy is available.

28. Petitioner has incurred, and will continue to incur, expenses for costs and attorneys' fees necessary for the investigation, formulation, and prosecution of this action. Those attorney fees and other expenditures will result in a benefit to all members of the class.

8

WHEREFORE, Petitioner prays for judgment against Respondents as follows:

1. Damages in the approximate amount of One Hundred Thirty-Five Dollars ($135,000,000.00), for the payment of refundable earned income tax credits for the years 1995, 1996, and 1998 through 2004, or some other amount to be shown at trial.

2. In the alternative, a writ in the nature of mandamus compelling Respondents to implement the EIC, including the allowance and acceptance of EIC claims, and pay Petitioner and the class all unpaid refundable earned income tax credits for the years 1995, 1996, and 1998 through 2004, in the approximate amount of One Hundred Thirty-Five Million Dollars ($135,000,000.00), or some other amount to be shown at trial.

3. Petitioner recover costs and attorneys' fees in the amount of ten percent (10%) of the total amount recovered by the class.

4. Payment of Petitioner's costs and attorneys' fees from the amount recovered for the common benefit of the class; and

5. The Court grant such other relief as at law or in equity may be granted, whether or not prayed for herein.

Respectfully submitted this 20th day of June, 2005.


PHILLIPS & BORDALLO, P.C.
Attorneys for Petitioner


BY: _____
MICHAEL F. PHILLIPS

9

# VERIFICATION

GUAM, U.S.A.      )
                 ) ss.
CITY OF HAGÄTÑA)

The undersigned, being first duly sworn, deposes and says that she is a party to the above-entitled matter; the foregoing document is true of her own knowledge, except as to matters which are therein stated on her information or belief and as to those matters she believes them to be true.

_____
JULIE BABAUTA SANTOS

SUBSCRIBED AND SWORN to before me this 20th day of June, 2005.

_____
NOTARY PUBLIC

# EXHIBIT B

1    [Appearing Counsel on next page]

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                             DISTRICT OF GUAM

9

10   JULIE BABAUTA SANTOS, et. al.,              CIVIL CASE NO. 04-00006

11                    Petitioners,

12

13              -v-                              **JOINT MOTION FOR PRELIMINARY
                                                 APPROVAL OF SETTLEMENT
14   FELIX P. CAMACHO, etc., et. al.             AGREEMENT; MEMORANDUM OF
                                                 POINT AND AUTHORITIES IN
15                    Respondents.               SUPPORT THEREOF**

16                                               **[ORAL ARGUMENT REQUESTED]**

17

18

19

20

21

22

23

24

25

26

27

28   {G0003152.DOC;1}                    1
     *Civil Case No. 04-00006*

SHANNON TAITANO, ESQ.
**OFFICE OF THE GOVERNOR OF GUAM**
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
Telephone:     (671) 472-8931
Facsimile:      (671) 477-4826

**EDUARDO A. CALVO, ESQ.**
**RODNEY J. JACOB, ESQ.**
**DANIEL M. BENJAMIN, ESQ.**
**CALVO & CLARK, LLP**
Attorneys at Law
655 South Marine Drive, Suite 202
Tamuning, Guam 96913
Telephone:     (671) 646-9355
Facsimile:      (671) 646-9403
Attorneys for *Felix P. Camacho, Governor of Guam*

**RAWLEN M.T. MANTANONA**
**MANTANONA LAW OFFICE**
414 W. Soledad Avenue
GCIC Bldg. Suite 601B
Hagåtña, Guam 96910
Telephone:     (671) 472-3666
Facsimile:      (671) 472-3668
Attorneys for Respondents *Lourdes M. Perez and Artemio R. Ilagen*

**MICHAEL F. PHILLIPS**
**PHILLIPS & BORDALLO, P.C.**
410 West O'Brien Drive
Hagåtña, Guam 96910
Telephone:     (671) 477-2223
Facsimile:      (671) 477-2329
Interim Class Counsel and Attorneys for Petitioner *Julie Babauta Santos*

{G0003152.DOC;1}
*Civil Case No. 04-00006*

# **MOTION**

In this Joint Motion, the moving parties (the "Moving Parties"), which are Petitioner Julie B. Santos ("Petitioner"), Interim Class Counsel Mike Phillips, Esq. ("Interim Class Counsel"), Governor of Guam Felix P. Camacho (the "Governor"), and the Director of Revenue & Taxation Artemio B. Ilagan and the Director of Administration Lourdes M. Perez (the "Directors"), jointly move this Court for an order that: (1) Grants preliminary approval to a settlement agreement they executed on June 20, 2005; (2) Sets all necessary Court dates under the Settlement Agreement; and (3) Approves and orders the issuance of the class notice.

This Joint Motion is based upon the accompanying memorandum of points and authorities, the Declaration of Rodney J. Jacob, the files and records in this action, and such other evidence and arguments as may be presented at or before the hearing on this motion.

The Moving Parties request oral argument. Pursuant to Rule 7.1(e)(2), the Moving Parties will work with the Attorney General to agree upon oral argument dates with respect to this and certain other motions that will be at issue before the Court. The required Rule 7.1(e)(2) statement will be filed promptly once the parties are able to reach a scheduling agreement. The Moving Parties will provide notice of the hearing date once the Court provides a date. Respectfully submitted this 20th day of June, 2005.

OFFICE OF THE GOVERNOR OF GUAM
CALVO & CLARK, LLP
Attorneys for Respondent Felix P. Camacho,
Governor of Guam

PHILLIPS & BORDALLO, P.C.
Interim Class Counsel and Attorneys for Petitioner
Julie Babauta Santos

By:_____
    **RODNEY J. JACOB**

By:_____
    **MICHAEL F. PHILLIPS**

MANTANONA LAW OFFICE
Attorneys for Respondents Lourdes M. Perez and
Artemio R. Ilagen

By:_____
    **RAWLEN M.T. MANTANONA**

{G0003152.DOC;1}
*Civil Case No. 04-00006*

1

## MEMORANDUM OF POINTS AND AUTHORITIES

The Moving Parties are requesting that the Court issue an order that:

- Grants preliminary approval to a settlement agreement they executed on June 20, 2005 (the "Settlement Agreement");

- Holds that the Governor has bound the Government of Guam to the Settlement Agreement pursuant to 48 U.S.C. §§ 1421i(c), 1421i(d)(2) and the Court's Orders of February 9, 2005 and March 2, 2005, notwithstanding the Attorney General's failure to execute that Settlement Agreement;

- Sets all necessary Court dates under the Settlement Agreement; and

- Approves and orders the issuance of the class notice.

## I. BACKGROUND

The Court already is familiar with the lengthy history of this action regarding the earned income tax credit ("EIC"), which is the first of three cases to be filed in this Court seeking class-wide relief regarding the Government of Guam's alleged non-payment of that tax credit. Pursuant to a previous stipulation and Order, from March 31 to April 2, 2005 the parties to this litigation engaged in face-to-face negotiations with the assistance of JAMS Mediator Catherine Yanni, Esq. At the conclusion of these negotiations, the parties agreed to continue their negotiations with the assistance of the Mediator. The negotiations were subsequently extended through two subsequent stipulations and orders. As a result of these negotiations, Petitioner, Interim Class Counsel, the Governor, and the Directors agreed to and executed a confidential term sheet. *See* Decl. of Rodney J. Jacob Exh. 1.

{G0003152.DOC;1}
*Civil Case No. 04-00006*

1

On June 20, 2005, Respondents Governor and the Directors executed a settlement agreement with Petitioner and Interim Class Counsel. *See* Decl. of Rodney J. Jacob Exh. 2. The Attorney General of Guam has declined to execute this Settlement Agreement.

## II. ARGUMENT

### A. Preliminary Approval

In seeking preliminary approval of the Settlement Agreement so as to be able to proceed with class notice, the Moving Parties believe that the terms of the Settlement Agreement largely speak for themselves. Further, they are aware that the Court cannot enter any final findings regarding the fairness of the Settlement Agreement until after there is notice and a fairness hearing occurs. *See* FRCP 23(e)(1)(C). Nonetheless, the parties wish to highlight several terms of the Agreement:

- The Agreement will provide for $90 million to be paid to the class by devoting at least 15% of any amount placed into the Government of Guam's tax refund reserve funds, which are the funds used to pay general tax refunds (*see* Settlement Agreement § V(a));

- The Agreement provides for full implementation of the EIC beginning with tax year 2005 for all qualifying taxpayers (*see* Settlement Agreement § IV(d));

- The Agreement covers tax years 1995-1996, and 1998-2004 (*see* Settlement Agreement § I(b));

- Despite creating a class action, the Agreement avoids imposing an undue burden on the Court or the Government by utilizing the existing structures to process tax claims (*see* Settlement Agreement § VI(a));

- The Agreement uses the EIC claim forms created pursuant to Executive Order 2005-001 and otherwise tracks Executive Order 2005-001 in terms of claims

procedures (*see* Settlement Agreement § VI(b))—the same forms and procedures that recently were upheld by the District Court of Guam in the Order dated June 16, 2005 in the case of *Simpao, et al. vs. Govt. of Guam*, Dist. of Guam Case No. CV04-00049;

- By providing a funding mechanisms for each expenditure under the Settlement Agreement, the Agreement addresses the Governor's and the Directors' concerns regarding the Illegal Expenditure Act (5 G.C.A. § 22401) that had caused them to oppose the previous settlement agreement of June 14, 2004 (*see* Settlement Agreement § V); and

- The Agreement leaves the Respondents free to pursue federal reimbursement of the EIC, while providing the class with a final resolution and payment of their claims now (*see* Settlement Agreement § X(e)).

For all of these reasons (and others), the Governor, the Directors, Petitioner, and Interim Class Counsel believe this Agreement represents a fair and reasonable resolution of this matter.

### B. The Government of Guam's Position

The Moving Parties have been unable to secure the execution of the Settlement Agreement by the Attorney General (who remains counsel of record for the Government of Guam) despite repeated efforts to do so. However, the Moving Parties do not believe such agreement is necessary. Guam law provides that the client, not the attorney, controls the decision to settle pending litigation. Guam R. Prof. Cond. 1.2(a) ("A lawyer shall abide by a client's decision whether to settle a matter.") Here, pursuant to the Organic Act of Guam, the Governor has the right to decide whether the Government will settle this matter.

The Organic Act provides that "[t]he administration and enforcement of the Guam Territorial Income Tax shall be performed by or under the supervision of the Governor," and that

{G0003152.DOC;1}
*Civil Case No. 04-00006*

3

the Governor of Guam or his delegate has "the same administrative and enforcement powers and remedies with regard to the Guam Territorial Income Tax as the Secretary of the Treasury, and other United States officials of the executive branch, have with respect to the United States income tax." 48 U.S.C. §§ 1421i(c), 1421i(d)(2). Thus, in Orders issued on February 9, 2005 and March 2, 2005, this Court has previously ruled that the Governor controls matters affecting the Guam Territorial Income Tax where there is a disagreement between the Governor and Attorney General.

Consequently, the Moving Parties respectfully contend that the Governor's execution of the Settlement Agreement makes it binding upon the Government of Guam. *See* 48 U.S.C. §§ 1421i(c), 1421i(d)(2). So as to remove any ambiguity, they ask that the Court rule that the Government of Guam is bound by the Settlement Agreement.

**C.      Setting of Dates & Issuance of Class Notice**

Because it is a class action settlement, the execution of the Settlement Agreement will require that the Court establish a number of Court dates. These are as follows:

- The date by which the "Class Notice Period" defined in Section III(d) of the Settlement Agreement will be completed.

- The "Opt-Out Date" under Section II(b)(i) of the Settlement Agreement.

- The date by which any motions for intervention are to be filed and served under Section II(c)(i) of the Settlement Agreement.

- The date by which the parties to the Settlement Agreement shall file a joint motion for an Order of Approval and Final Judgment, and a proposed form of judgment, under Section II(c)(ii) of the Settlement Agreement.

- The date by which Petitioner and Interim Class Counsel shall file a motion for final certification of the class under Section II(c)(iii) of the Settlement Agreement.

{G0003152.DOC;1}                                4
*Civil Case No. 04-00006*

- The date by which any objection or comment on the Settlement Agreement must be filed and served, and the date by which any responses shall be filed, under Section III(c)(vi) of the Settlement Agreement.

- The dates for any additional filings, oppositions, or replies regarding attorneys' fees under Section II(c)(iv)-(vi) of the Settlement Agreement.

- The date for the "Fairness Hearing" as that term is defined in Section II(c)(i) of the Settlement Agreement.

Once these dates are set, the Moving Parties will amend the draft form of class notice, which is Exhibit D to the Settlement Agreement. Along with inserting the dates into the class notice, the Parties also will insert a brief description of Interim Class Counsel's motion for attorneys' fees and costs, should one be filed. They will then submit the draft notice for the Court's approval so that the Court can authorize and order the publication and mailing of this notice pursuant to Section III of the Settlement Agreement.

Respectfully submitted this 20th day of June, 2005.

OFFICE OF THE GOVERNOR OF GUAM
CALVO & CLARK, LLP
Attorneys for Respondent Felix P. Camacho,
Governor of Guam

PHILLIPS & BORDALLO, P.C.
Interim Class Counsel & Attorneys for
Petitioner Julie Babauta Santos


By:_____
    **RODNEY J. JACOB**

By:_____
    **MICHAEL F. PHILLIPS**

MANTANONA LAW OFFICE
Attorneys for Respondents Lourdes M. Perez
and Artemio R. Ilagen


By:_____
    **RAWLEN M.T. MANTANONA**

# EXHIBIT C

Attorneys for Petitioners

**DISTRICT COURT OF GUAM**
**TERRITORY OF GUAM**

| | |
|---|---|
| JULIE BABAUTA SANTOS, *et al.*, | |
| Petitioners, | CIVIL CASE NO. 04-00006 |
| vs. | |
| | **PETITIONER'S MOTION FOR CONDITIONAL CERTIFICATION OF THE EIC CLASS FOR SETTLEMENT PURPOSES.** |
| FELIX A. CAMACHO, etc., *et al.*, | |
| Respondents. | |

The Petitioner, individually and on behalf of all those similarly situated (hereinafter "EIC Class"), through her attorneys of record Phillips and Bordallo, P.C., by Michael F. Phillips, hereby submits this Motion for Conditional Certification of the EIC Class for Settlement Purposes, pending Orders for Final Approval of the proposed Settlement Agreement and for Certification of the Class. This motion is supported by the Points and Authorities below, and is filed concurrently with a joint motion by the parties for preliminary approval of a proposed Settlement Agreement; a motion by

Interim Counsel for the EIC Class for the appointment of class counsel; and a motion by Petitioner for leave to file an amended Petition.

## MEMORANDUM OF POINTS AND AUTHORITIES

This Action was filed on February 14, 2004 on behalf of a class of taxpayers seeking the implementation of the earned income tax credit program and the payment of earned income tax credit refunds for Guam taxpayers. On June 14, 2004, the parties reached a settlement agreement which was preliminarily approved by this Court on June 17, 2004.

The parties subsequently disagreed as to the legality of the June 14, 2004 agreement, and entered into Mediation to resolve their conflicts. The parties have since entered into a new Settlement Agreement. Concurrently with this motion seeking conditional certification of the EIC Class, the parties have filed a joint motion seeking preliminary approval of the proposed Settlement Agreement.

As provided in the amended petition and proposed Settlement Agreement filed with this Court, the proposed "EIC Class" is defined as follows:

> all persons who do not elect to request exclusion from the class under the procedures described [in the Settlement Agreement] and: (1) were subject to the Guam Territorial Income Tax ("GTIT") established in 48 U.S.C. § 1421i for tax years 1995-1996 and/or 1999-2004 and would have been eligible to file (whether or not they actually filed) for the EIC established in 26 U.S.C. § 32 (as it applied in each respective tax year) if that program were applied in the Territory of Guam; and/or (2) were eligible to receive an EIC credit under certain Guam territorial laws for tax years 1995-1996 and/or 1999-2004 that mirrored the federal EIC law (26 U.S.C. § 32), including the Guam Earned Income Program (Chapter 42 of 11 G.C.A.); and/or (3) actually filed a claim for the EIC with DRT for tax year 1998 under the GTIT or Guam Earned Income Program (Chapter 42 of 11 G.C.A.) on or before April 15, 2002.

This action should proceed as a class action pursuant to Federal Rules of Civil Procedure (FRCP) Rule 23(b)(3) consisting of members of the EIC Class for the following reasons:

(1)     The EIC Class, described above and is alleged to be composed of more than 10,000 taxpayers entitled to and qualified to receive EIC, is so numerous that joinder of all members is impracticable;

(2)     There are questions of law or fact common to the EIC Class. Each EIC Class member was denied the full implementation of the earned income tax credit program as applied to Guam, including the Government's prohibition or prevention of EIC Class members to file claims for earned income tax credit refunds, and/or the Government's denial or failure to pay earned income tax credit refunds to otherwise qualified Guam taxpayers.

(3)     The claims of the representative party are typical of the claims of the EIC Class. The representative party was denied the full implementation of the earned income tax credit program as applied to Guam, including the Government's prohibition or prevention of the representative party to file claims for earned income tax credit refunds, and/or the Government's denial or failure to pay earned income tax credit refunds to the otherwise qualified representative party.

(4)     The representative party will fairly and adequately protect the interests of the EIC Class.

(5)     In consideration of (a) the minimal interest of members of the EIC Class in individually controlling the prosecution of separate actions, (ii) the extent and nature of the litigation concerning the controversy already commenced by members of the EIC

Class, (iii) the desirability of concentrating the litigation of the claims in this Court, and (iv) the difficulties unlikely to be encountered in the management of this class action, the questions of law or fact common to the members of the EIC Class predominate over any questions affecting only individual members, and this class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Pursuant to the proposed Settlement Agreement, the parties have agreed the Petitioner will file a motion for final certification of the class at least 28 days prior the Fairness Hearing to be scheduled by this Court. This motion will be accompanied by a joint motion of the parties for final approval of the proposed Settlement Agreement.

The parties have also, as part of their joint motion for preliminary approval of the proposed Settlement Agreement, requested the Court to approve and order the required class notice pursuant to FRCP Rule 23.

Based on the foregoing, Petitioner respectfully requests this Court to conditionally certify the EIC Class for settlement purposes.

Respectfully submitted this 20th day of June, 2005.

**PHILLIPS & BORDALLO, P.C.**
Attorneys for Petitioner

By: _____
Michael F. Phillips

# EXHIBIT D

| JULIE BABAUTA SANTOS, et. al., | CIVIL CASE NO. 04-00006 |
| v. | **NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION** |
| FELIX P. CAMACHO, etc., et. al. Respondents. | |

**TO: ALL PERSONS WHO CLAIMED OR COULD HAVE CLAIMED AN EARNED INCOME TAX CREDIT UNDER THE GUAM TERRITORIAL INCOME TAX OR GUAM TERRITORIAL LAW FOR TAX YEARS 1995, 1996, 1999, 2000, 2001, 2002, 2003, OR 2004; AND ALL PERSONS WHO FILED AN EARNED INCOME TAX CREDIT CLAIM UNDER THE GUAM EARNED INCOME PROGRAM OR THE GUAM TERRITORIAL INCOME TAX FOR TAX YEAR 1998**

The above-captioned proceeding ("Litigation") is pending before the District Court of Guam (the "Court"). In the Litigation, Petitioner Julie B. Santos (the "Plaintiff") claims that she and other Guam taxpayers have been denied the right to file claims for earned income tax credit (the "EIC"), and have been denied the right to receive a refund of the EIC. The tax years covered by the Litigation are 1995, 1996, 1998, 1999, 2000, 2001, 2002, 2003, and 2004. The Respondents in the Litigation are the Government of Guam (the "Government"), Governor Felix P. Camacho, Director of Administration Lourdes M. Perez, and Director of Revenue & Taxation Artemio B. Ilagan (collectively "Respondents"). They have filed an opposition denying the claims and asserting various affirmative defenses.

The Court has conditionally ruled that the Litigation may be maintained on behalf of the following Class:

> All persons who do not elect to request exclusion from the class under the procedures described below and: (1) Were subject to the Guam Territorial Income Tax ("GTIT") established in 48 U.S.C. § 1421i for tax years 1995-1996 and/or 1999-2004 and would have been eligible to file (whether or not they actually filed) for the EIC established in 26 U.S.C. § 32 (as it applied in each respective tax year) if that program were applied in the Territory of Guam; and/or (2) Were eligible to receive an EIC credit under Guam territorial law for tax years 1995-1996 and/or 1999-2004 that mirrored the federal EIC law (26 U.S.C. § 32), including the Guam Earned Income Program (Chapter 42 of 11 G.C.A.); and/or (3) Actually filed a claim for the EIC with DRT for tax year 1998 under the GTIT or Guam Earned Income Program (Chapter 42 of 11 G.C.A.) on or before April 15, 2002.

This definition of persons who fall within or are excluded from the Class is referred to in this Notice as the "Class Definition."

## I. PURPOSE OF THIS NOTICE

The purpose of this notice is to inform you, as a potential member of the Class, of (a) the existence of the Litigation; (b) the proposed Class Action Settlement of the Litigation, described below; and (c) your rights with respect to the proposed Settlement. Those rights include the right to be excluded from the Class and the Settlement. If you are a Class Member and do not request exclusion in compliance with the procedures and deadline stated below, you will remain in the Class and be bound by the Settlement terms.

Plaintiff's Counsel has investigated and evaluated the claims asserted in the Litigation and has determined that the proposed Settlement is fair, reasonable, and adequate for the Class as a whole, in light of the benefits of the Settlement and the disadvantages of continuing the Litigation. The proposed Settlement is a compromise of disputed claims and does not mean that Respondents admit liability.

## II. SETTLEMENT BENEFITS FOR CLASS MEMBERS

If the Court approves the Settlement, Respondents will make payments totaling up to $90 million to the Class Members to resolve their EIC claims. Class Members will not receive interest on their EIC claims and are waiving any right to interest on their EIC claims. The payment will be divided among Class Members as follows:

**A. Tax Years 1995, 1996, 1999, & 2000:** The Government will pay the EIC Class not more than $15 million for their EIC claims for tax years 1995, 1996, 1999, and 2000 (combined). This amount shall be divided proportionally among each claimant found eligible for the EIC by the Guam Department of Revenue & Taxation ("DRT") based on the value of their claim, up to 100%. Remaining amounts, if any, shall be utilized to fund tax refunds and the EIC in tax year 2005 and future tax years.

**B. Tax Year 1998:** The Government will pay the EIC Class not more than $15 million for their EIC claims for tax year 1998. This amount shall be divided proportionally among each claimant found eligible for the EIC by DRT based on the value of his or her claim, up to 100%. Remaining amounts, if any, shall be utilized to fund claims for tax year 2001 as stated below.

**C.** **Tax Year 2001:** The Government will pay the EIC Class not more than $15 million for their EIC claims for tax year 2001, together with any remainder from the payment for tax year 1998. This amount shall be divided proportionally among each claimant found eligible for the EIC by DRT based on the value of his or her claim, up to 100%. Remaining amounts, if any, shall be utilized to fund claims for tax year 2002 as stated below.

**D.** **Tax Year 2002:** The Government will pay the EIC Class not more than $15 million for their EIC claims for tax year 2002, together with any remainder from the payment for tax year 2001. This amount shall be divided proportionally among each claimant found eligible for the EIC by DRT based on the value of his or her claim, up to 100%. Remaining amounts, if any, shall be utilized to fund claims for tax year 2003 as stated below.

**E.** **Tax Year 2003:** The Government will pay the EIC Class not more than $15 million for their EIC claims for tax year 2003, together with any remainder from the payment for tax year 2002. This amount shall be divided proportionally among each claimant found eligible for the EIC by DRT based on the value of his or her claim, up to 100%. Remaining amounts, if any, shall be utilized to fund claims for tax year 2004 as stated below.

**F.** **Tax Year 2004:** The Government will pay the EIC Class not more than $15 million for their EIC claims for tax year 2004, together with any remainder from the payment for tax year 2003. This amount shall be divided proportionally among each claimant found eligible for the EIC by DRT based on the value of his or her claim, up to 100%. Remaining amounts, if any, shall be utilized to fund tax refunds and the EIC in tax year 2005 and future tax years.

**G.** **Payment of EIC Claims in Future Tax Years:** If the Settlement is approved by the Court as described below, the Government has agreed to pay the EIC to all qualifying persons in tax year 2005 and future tax years. Persons do not have to be Class Members to receive this benefit.

## III. CLAIMS PROCESS & DEADLINES

**A.** **Deadlines for Submitting a Claim (Except as to Tax Year 1998).** The deadlines for Class Members to submit EIC claims for tax years 1995, 1996, 1999, 2000, and 2001 is January 2, 2006. The deadline for Class Members to submit EIC Claims for tax years 2002, 2003, and 2004 is April 17, 2006.

**B.** **Submit a Claim by Filing Form EIC-GU (Except as to Tax Year 1998).** To submit a claim as a Class Member, you must submit the Form EIC-GU applicable to *each* year in wish you wish to make a claim. Claims must be filed with DRT or mailed to DRT on or before the deadline for the applicable tax year stated above. Form EIC-GU can be found at DRT and at other locations where Guam tax forms ordinarily are available. It also can be viewed and printed on-line at http://www.GovGuamdocs.com.

**C.** **Tax Return Required For Each Year.** If you have not previously submitted a tax return (*e.g.* a Form 1040, 1040A, or 1040EZ) for a tax year in which you wish to make an EIC claim, you must submit a tax return for that year along with submitting a Form EIC-GU to make a claim. If you already submitted a tax return for a tax year, you do not need to file a new tax return. However, you can amend the return, if you wish, anytime within three years of when that return was first due. If more than three years have passed since that return was first due, you will not be able to amend it.

**D.** **Persons Who Already Filed Form EIC-GU.** If you already submitted a Form EIC-GU for a tax year covered by the Litigation and the proposed Settlement, you do not need to file a new Form EIC-GU for that tax year. However, you may file a new Form EIC-GU within the time otherwise provided to file a claim if you wish to amend your previous filing or to correct an incomplete or defective Form EIC-GU filing. If you have already filed a Form EIC-GU, you will be included within the Class unless you request exclusion under the procedures and deadlines set forth below.

E. **Procedures Governing Tax Year 1998.** To be eligible to receive any payment under this Agreement for tax year 1998, Class Members must have filed a claim for the EIC under the GTIT or the Guam Earned Income Program for tax year 1998 on or before April 15, 2002. No new or amended tax returns for tax year 1998 will be accepted. If you already filed a tax year 1998 EIC claim as stated herein, you will be included within the Class unless you request exclusion under the procedures and deadlines set forth below.

**F.** **Processing of Claims and Governing Laws.** Once submitted, all EIC claims will be processed by the DRT, which shall apply all laws that ordinarily apply to tax refund claims except as otherwise provided in the Settlement. Claims are still subject to an audit, and claims will be denied if found to be invalid under the federal and local laws governing EIC eligibility for each respective tax year. False or inaccurate EIC claims shall remain subject to applicable penalties permitted by federal or territorial law, including reducing or denying an EIC claim or assessing fines or other civil or criminal sanctions. If it is found that you intentionally or recklessly submitted a false claim you can be barred from receiving the EIC in future years beginning with tax year 1997 pursuant to 26 U.S.C. § 32(k), a federal statute that applies to all claims for the EIC beginning January 1, 1997.

**G.    Application of Offsets.** If a claimant is found eligible for the EIC, Respondents shall retain the right to offset the amount of an EIC claim as provided for GTIT refunds in general by 26 U.S.C. § 6402. If your claim, is subject to an offset, you will be notified regarding whom the offset amount has been paid to.

**H.    Right to Contest Particular Determinations.** With regard to any denial of a particular EIC claim or any assessment of any civil or criminal penalties, you shall maintain the right to challenge such a determination through all administrative and judicial processes afforded under federal or territorial law to a taxpayer as to any tax refund claim.

## IV.    When Claims Will Be Paid

**A.    Funding.** The Government has agreed to reserve at least fifteen percent (15%) of all amounts it places into the accounts it uses to pay general tax refunds to pay for the $90 million settlement payment. It is not known exactly how fast money will be reserved. But, the Respondents have already commenced reserving money and Respondents will be supplying reports to the Court and Plaintiff's Counsel regarding how much money has been reserved so that the Court can monitor compliance with the Settlement. Further, Respondents can utilize other funding should they become available to speed payment.

**B.    Order of Payments.** As money is reserved, and only after final approval of the settlement and entry of the judgment by the Court, claims will be paid in the following order: (1) claims for tax years 1995, 1996, 1999, and 2000 (collectively); (2) claims for tax year 1998; (3) claims for tax year 2001; (4) claims for tax year 2002; (5) claims for tax year 2003; and (6) claims for tax year 2004. Within each tax year, claims will be paid in the order submitted to DRT.

**C.    Timely Processing of Claims.** On or before January 2, 2006, DRT will have processed all claims for tax year 1998. On or before July 3, 2006, DRT will have processed all claims for tax years 1995, 1996, 1999, 2000, and 2001. On or before October 16, 2006, DRT will have processed all claims for tax years 2002, 2003, and 2004. After the completion of the periods for processing claims for each respective tax year, DRT will calculate the total amount of claims it has found to be valid for that respective tax year and calculate the percentage of each claim that shall be paid (up to 100%). DRT will then certify the claims and percentage amounts that should be paid pursuant to the provisions of this Agreement. DRT does retain the right to make individual hardship exceptions to the priority of payments based on standard pre-existing DRT policies and procedures. If your claim is denied or selected for an audit, and it is later determined in a judicial or administrative process that your claim was valid and should be paid, you will receive the same proportional payment of the amount found to be validly claimed as is paid to class members for that same tax year.

## V.    DISMISSAL OF LITIGATION, ENTRY OF JUDGMENT, RELEASE OF CLAIMS, & COVENANT NOT TO SUE

**A.    Final Judgment.** If the Court approves the proposed settlement, it will enter a judgment that will dismiss the Litigation with prejudice as to all Class Members, except those Class Members who request to be excluded. All people who meet the Class Definition and do not validly and timely request exclusion from the Class will be forever barred from prosecuting their own lawsuits to recover the EIC or obtain related relief regarding the EIC from Respondents for tax years 1995, 1996, 1998, 1999, 2000, 2001, 2002, 2003, and 2004.

**B.    Release of Claims.** Further, upon final approval of the Settlement Agreement, each and every member of the EIC Class will expressly and irrevocably release, waive, settle, and discharge all claims (whether legal or equitable), demands, actions (whether judicial or administrative), suits, and causes of action, including without limitation those asserted in the Litigation, against the Government of Guam, the Governor of Guam, the Director of the Department of Revenue & Taxation, the Department of Revenue & Taxation, the Director of the Department of Administration, the Department of Administration, and their employees, officers, agencies, instrumentalities, independent contractors, representatives, attorneys, and agents, whether in their individual or official capacities, with regard to claims for payment of the EIC under federal or Guam territorial law in tax years 1995, 1996, 1998, 1999, 2000, 2001, 2002, 2003, and 2004, or any refusal to accept or pay such claims or to implement any government programs with regard to such claims. Such release and discharge includes all such claims whether known, unknown, asserted, unasserted, suspected, or unsuspected. With regard to the release of claims, each and every member of the EIC Class expressly waives their rights under 18 G.C.A. § 82602 or principle of common or civil law that is similar to or analogous to 18 G.C.A. § 82602, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

**C.    Covenant Not to Sue.** Also upon final approval of the Settlement Agreement, the EIC Class separately covenants not to sue the Government of Guam, the Governor of Guam, the Director of Revenue & Taxation, the Department of Revenue & Taxation, the Director of the Department of Administration, the Department of Administration, and their employees, officers, agencies, instrumentalities, independent contractors, representatives, attorneys, and agents, whether in their individual or official capacities, with regard to claims for payment of the EIC under federal or Guam territorial law in tax years 1995, 1996, 1998, 1999, 2000, 2001, 2002, 2003, and 2004, or any refusal to accept or pay such claims or to implement any government programs with regard to such claims

**D.    Limitations.** The general release and covenant not to sue stated above shall not be construed to preclude any Class Member from challenging through the administrative and/or judicial procedures that govern ordinary tax refund claims a particular determination as to:

(1) the existence and/or value of their particular EIC claim(s) for tax years 1995-1996, 1998-2004 by DRT, (2) any amount of off-set or other adjustment made to their EIC claims by DRT (including without limitation by way of audit, penalty, intercept program, or off-set). The general release and covenant not to sue stated above exclude any future claims alleging solely a breach of this Settlement Agreement.

## VI.    COSTS, EXPENSES, AND ATTORNEYS' FEES

Respondents have agreed to pay all costs of mailing and publishing this Notice and administering the Settlement. Plaintiff's Counsel has filed a motion asking that if the Court approves the proposed settlement, the Court _____ [TO BE INSERTED ONCE MOTION IS FILED].

## VII.    RIGHTS AND OPTIONS OF CLASS MEMBERS

**A.     Remain a Class Member.** If you do not request exclusion from the Class, you will remain a Class Member. On July 17, 2004, the Court appointed Attorney Michael Phillips, Esq. of the law firm of Phillips & Bordallo, P.C., 410 West O'Brien Drive, Suite 102, Hagåtña, Guam 96910 as Interim Class Counsel. Subject to the Court's final appointment of Class Counsel, the Plaintiff and her counsel will represent your interests in connection with the proposed Settlement. If the Court approves the Settlement and the judgment becomes final, you will be entitled to the benefits described in Section II, above. As a Class Member, you will be bound by any judgment or other disposition of the Litigation, even if you do not submit a claim or take advantage of any of the benefits of the Settlement. Furthermore, you and your heirs, executors, administrators, successors, and assigns will be deemed to have agreed to the terms of the release and covenant not to sue described in Section V above.

**B.     Objections to or Comments on the Settlement.** As a Class Member, you have the right to object to or comment on the proposed Settlement or the motion for attorneys' fees and costs. The procedures for doing so are explained in Section VIII(B) below.

**C.     Request Exclusion.** You have the right to request exclusion from the Class. If you request exclusion from the Class, you will not be bound by ay judgment or settlement of the Litigation, you will not receive the benefits of the Settlement, and you will not be able to object to or comment in support of the Settlement. If you wish to be excluded from the Class, you must submit a signed, written statement requesting exclusion that either: (1) is filed with the Office of the Clerk of Court, District Court of Guam, 520 West Soledad Avenue, Hagåtña, GU 96910 on or before _____, 2005 at 3 p.m.; or (2) is sent by first class mail to the Office of the Clerk of Court, District Court of Guam, 520 West Soledad Avenue, Hagåtña, GU 96910 bearing a postmark of _____, 2005 or earlier. Any person requesting exclusion from the class and the Settlement Agreement must request exclusion from the class and the settlement in their entirety, and not just as to particular claim(s) for particular tax year(s). If you submit a request for exclusion that does not comply with these requirements, your request will be deemed invalid, and you will not be excluded from the Class.

**D.     Retain Your Own Attorney and Seek Intervention.** You have the right to consult and/or retain an attorney of your choice, at your own expense, to advise you regarding the Settlement and your rights in connection with the Settlement. You also have the right, either personally or through an attorney retained by you, at your own expense, to seek to intervene in the Litigation. Any such motion must be filed no later than _____, 2005.

## VIII.    FAIRNESS HEARING

**A.     Time, Place, and Purpose of Hearing.** A Fairness Hearing will be held on _____, _____ __, at ____, before the District Court of Guam, 520 West Soledad Avenue, Hagåtña, GU 96910, to determine: (1) Whether the proposed settlement of the Litigation on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate for the Class as a whole and should be granted final approval; (2) Whether the certification of the Class should be made final; (3) Whether the Court should enter the proposed judgment dismissing the Litigation with prejudice; and (4) Whether the Court should grant the application of Plaintiff's Counsel for attorneys' fees and reimbursement of expenses, and, if so, in what amount.

**B.     Procedures for Objecting to or Commenting in Support of Settlement**

**1.     Written Objections or Comments.** If you have not requested exclusion from the Class, you, or an attorney retained by you, may file with the Office of the Clerk of Court, District Court of Guam, 520 West Soledad Avenue, Hagåtña, GU 96910 a statement objecting to or commenting on the settlement and/or the motion for attorneys' fees on or before _____, 2005. Such statement must also be served upon all counsel in the litigation, who are: (1) Phillips & Bordallo, P.C., 410 West O'Brien Drive, Suite 102, Hagåtña, Guam 96910; (2) Office of the Attorney General, Guam Judicial Center, 120 West O'Brien Drive, Suite 2-200E, Hagåtña, Guam 96910; (3) Shannon Taitano, Esq., Legal Counsel, Office of the Governor, Ricardo J. Bordallo Governor's Complex, Adelup, P.O. Box 2950, Hagåtña, GU 96932 (4) Calvo & Clark, LLP, 655 South Marine Corps Drive, Suite 202, Tamuning, Guam 96913; and (5) Mantanona Law Office, Suite 601B, GCIC Bldg., 414 W Soledad Ave., Hagåtña, Guam 96910.

**2.     Presentation of Objections and Supporting Comments at Fairness Hearing.** You may also attend the Fairness Hearing, either personally or through an attorney retained by you, at your own expense, and ask to be heard by the Court on your comments or objections.

If you wish to do so, you must submit your objections or comments in writing in compliance with section VIII(B)(1) above <u>and</u> include in your comments a statement that you intend to appear and wish to attend the Fairness Hearing.

## IX. ADDITIONAL INFORMATION

**A.** **Rescission of Previous Settlement.** Previously, Respondents had entered into a $60 million settlement agreement dated June 14, 2004 with Plaintiff and had previously published a notice regarding this settlement, which had received preliminary, but not final, Court approval. This settlement would have covered some, but not all, of the Members of the Class identified herein. Motions were subsequently filed by the Governor to cancel that settlement on the grounds, among other things, that its payment terms were unlawful. As part of the new settlement, Plaintiff and her counsel and Respondents have agreed to rescind the previous settlement, which is no longer in effect. It is possible that Class Members under the new settlement will receive more, less, or be unaffected by the new settlement. If Respondents have failed to reserve a least $15 million for the payment of claims under the Settlement Agreement described in this Notice by the time the Agreement is subject to the Fairness Hearing, Plaintiff has the right to terminate the Settlement Agreement, which shall be void and of no effect, and the June 14, 2004 Settlement shall be returned to effect, subject to all previously pending motions.

**B.** **Notice of Related Pending Litigation.** There are two other cases pending in the District Court of Guam that seek to establish class actions regarding classes of persons similar to, and overlapping with, the Class identified herein. They are entitled *Torres v. Govt. of Guam*, et al., Dist. Ct. of Guam Civ. Case No. 04-00038 and *Simpao, et al. vs. Govt. of Guam*, Dist. of Guam Civ. Case No. CV04-00049 (the "Other Litigation"). No class has yet been certified in the Other Litigation and the defendants in those cases thus far have opposed class certification. However, it is possible that if a Class Member requests exclusion from this Class, they could later be able to become part of the Other Litigation either by moving to join that Other Litigation or by becoming class members, should either of those cases be certified as class actions. It is not known what the final outcome of the Other Litigation will be. In *Simpao*, the Court has held that the EIC applies to Guam and that filing a tax return establishes jurisdiction over those plaintiffs' claims. It is possible that by moving to join or by becoming part of a class in those cases (if a motion for joinder or class certification were granted), a potential Class Member would ultimately receive less, more, or the same relief as they would receive by remaining a Class Member in this Litigation, or would possibly receive no relief at all. Class Members who do not request exclusion under the procedures set forth in Section VII(C) above will be barred forever from being part of the Other Litigation either as class members or by moving to join those cases.

**C.** **Effect of Court Disapproval.** If the Court refuses to grant final class certification or final approval of the Settlement Agreement after the Fairness Hearing, or refuses to enter the final judgment, the Settlement shall be rendered void and of no effect and any class certification shall be vacated.

**D.** **Questions.** Any questions regarding the Settlement should be directed to Plaintiff's counsel, Phillips & Bordallo, P.C., 410 West O'Brien Drive, Suite 102, Hagåtña, Guam 96910. You also can contact Plaintiff's Counsel by email at mphillips@phillipsbordallo.com. Please do <u>not</u> submit questions to the Court. Copies of the Settlement Agreement and the pleadings and other documents filed in the Litigation and the Other Litigation are on file in at the District Court of Guam, and may be examined and copied during regular office hours at the Office of the Clerk of Court, District Court of Guam, 520 West Soledad Avenue, Hagåtña, GU 96910.

## X. DEADLINES

Remember:

- **If you wish to be excluded from the class, you must submit a written statement requesting exclusion that either (1) is filed with the Office of the Clerk of Court, District Court of Guam, 520 West Soledad Avenue, Hagåtña, GU 96910, on or before _____ at 3:00 p.m.; or (2) is mailed by first class mail postmarked on or before to: Office of the Clerk of Court, District Court of Guam, 520 West Soledad Avenue, Hagåtña, GU 96910.**
- **If you wish to submit objections or comments, you must submit file them Clerk of Court at the address listed above and serve them on all counsel listed in section VII\*(B)(1) above on or before _____, 2005.**
- **If you wish to intervene, you must file and serve a motion on or before _____, 2005.**
- **The deadline for filing or mailing by first class mail claims for the EIC under the Settlement to DRT for tax years 1995, 1996, 1999, 2000 and 2001 is January 2, 2006.**
- **The deadline for filing or mailing by first class mail claims for the EIC under the Settlement to DRT for tax years 2002, 2003, and 2004 is April 17, 2006.**

Dated: _____ __, 2005

BY ORDER OF THE
DISTRICT COURT OF GUAM