SHANNON TAITANO, ESQ.
OFFICE OF THE GOVERNOR OF GUAM
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
Telephone: (671) 472-8931
Facsimile: (671) 477-4826

EDUARDO A. CALVO, ESQ.
RODNEY J. JACOB, ESQ.
DANIEL M. BENJAMIN, ESQ.
CALVO & CLARK, LLP
Attorneys at Law
655 South Marine Corps Drive, Suite 202
Tamuning, Guam 96913
Telephone: (671) 646-9355
Facsimile: (671) 646-9403

Attorneys for *Felix P. Camacho, Governor of Guam*

FILED
DISTRICT COURT OF GUAM
JUL 26 2005
MARY L.M. MORAN
CLERK OF COURT
217

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, et. al.,<br><br>Petitioners,<br><br>-v-<br><br>FELIX P. CAMACHO, etc., et. al.<br><br>Respondents. | CIVIL CASE NO. 04-00006<br><br>**SUPPLEMENTAL REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEY GENERAL'S OFFICE**<br><br>[ORAL ARGUMENT REQUESTED] |

*Civil Case No. 04-00006*
{G0004257.DOC;1}

**ORIGINAL**

Having now filed both an opposition and supplemental opposition to the Governor's motion to disqualify, the Attorney General still has neither denied nor explained the facts requiring his disqualification. He does not deny that he was formerly the attorney for the Governor and Directors of Revenue & Taxation and Administration (the "Directors") in this proceeding. He does not deny that he advised his former clients that if they continued to implement the settlement in this case that he had caused them to enter into in June 2004, they would violate a criminal misdemeanor statute.[1] Nor does he deny that he nonetheless refused a direct instruction from his client, the Governor, to take no further actions in furtherance of the settlement until the legality issues could be solved.[2] He also does not deny that he subpoenaed the Governor and Directors, and placed the Directors on the stand to be cross-examined as hostile witnesses on the very subjects of the representation.[3] Nor, finally, does he deny his continuing adverse relationship to his former clients in this and related matters.[4]

Instead, the Attorney General premises his opposition solely upon two legal arguments: (1) that he, not his clients, controls this representation as the "Chief Legal Officer" of the government of Guam; and (2) that his office and actions are not subject to the Guam Rules of Professional Conduct. However, he remains wrong on both counts.

---

[1] A memorandum dated October 13, 2004 from the Attorney General's office stated that continuing to implement the June 2004 settlement could violate the Illegal Expenditures Act. (*See* Decl. of Daniel M. Benjamin ("Benjamin Decl."), submitted herewith, at Exh. 1). A knowing violation of that Act is a criminal misdemeanor. *See* 5 G.C.A. § 22401(c).

[2] *See* Benjamin Decl. Exh. 2.

[3] This occurred at the January 25, 2005 hearing in this proceeding.

[4] As discussed more *infra*, in the related putative EIC class action of *Simpao*, the Attorney General has sought to concede key issues of liability and to stipulate to certification of a non-opt out class. These actions appear aimed at defeating the Governor's settlement of this action.

1

*Civil Case No. 04-00006*
{G0004257.DOC;1}

First, the Organic Act states: "The Governor or his delegate shall have the same administrative and enforcement powers and remedies with regard to the Guam Territorial income tax as the Secretary of the Treasury, and other United States officials of the executive branch, have with respect to the United States income tax." 48 U.S.C. § 1412i(d)(2). These words cannot be twisted. The Governor has all executive powers regarding the Guam Territorial Income Tax (the "GTIT") that are equivalent to any powers held by any member of the federal executive branch as to federal income tax. This means that the Governor has the specific powers of the U.S. Attorney General and Department of Justice to control and prosecute tax refund actions such as the present case. Accordingly, the Governor is the government in this case; that is to say, the Governor is the client. Because the Attorney General will not follow the Governor's policies in defending the government of Guam, the Attorney General has a disqualifying conflict of interest.

Second, under Guam Rule of Professional Conduct 1.11(d)(1), the Attorney General is subject to the duties of loyalty and confidentiality that cover all attorneys. The Attorney General has breached those duties through his hostile cross-examination of his former clients, and through his continued efforts to defeat the Governor's policies in this and related actions. Disqualification is mandated to protect the integrity of the judicial process and the divisions of power created by Congress in the Organic Act of Guam.

I. **AS THE COURT HAS ALREADY HELD, THE GOVERNOR IS VESTED WITH EXCLUSIVE POWERS OVER THE GTIT**

　　A. **The Governor's Powers over the GTIT include Powers Equivalent to Those of the Secretary of the Treasury *and* U.S. Attorney General over Federal Taxes**

The Attorney General's primary response to the motion to disqualify is to argue that this is a tax refund action, and that a tax refund action may only be brought against the government of Guam. (Supp Opp. at 2-3). Accordingly, he argues that he alone controls this

2

*Civil Case No. 04-00006*
{G0004257.DOC;1}

litigation, claiming that "[a]n official who is not even a proper party to this litigation has usurped" the Attorney General's alleged role as the government of Guam's attorney. (*Id.* at 5). On this basis, he seeks to eliminate any conflict by transforming himself from lawyer into client.[5]

But his argument skips a step: determining who speaks for the "government of Guam" in a tax refund action. The Attorney General ignores the controlling statute, despite the Court having cited it in its Orders of February 9, 2005 and March 2, 2005. The Organic Act states, in relevant part:

> **The Governor or his delegate shall have the same administrative and enforcement powers and remedies with regard to the Guam Territorial income tax as** the Secretary of the Treasury, and **other United States officials of the executive branch,** have with respect to the United States income tax.

48 U.S.C. § 1412i(d)(2) (emphasis added).

The underlined language is the key. Under this provision of the Organic Act, the Governor does not merely set tax policy as to the GTIT in an equivalent manner as occurs within the U.S. Treasury Department and IRS in the federal system as to federal taxes. As the statutory language makes clear, the Governor also has all powers that belong on the federal level to "other United States officials of the Executive Branch." *See id.* Among such officials is the U.S. Attorney General and the other officials of the Justice Department, which together with the IRS control litigation in federal tax cases. *See* 26 U.S.C. § 7803 (creating the IRS's counsel, who prepares recommendations to the Department of Justice in tax cases); 28 C.F.R. § 0.70 (creating the tax division at the Department of Justice for tax litigation). Thus, under 48 U.S.C. § 1412i(d)(2), the Governor specifically is granted as to the GTIT powers equivalent to those held

---

[5] The Attorney General also is wrong that this is solely a tax refund action. The Petitioner also is seeking mandamus, although the Governor contests the validity of such claims.

3

*Civil Case No. 04-00006*
{G0004257.DOC;1}

by the Secretary of the Treasury *and U.S. Attorney General* as to federal taxes, and consequently must have the ability to control the defense and prosecution of this tax refund action.

### B. The Attorney General's Adverse Position to the Governor over Tax Policy Requires the Attorney General's Disqualification

The Governor's power over tax policy under the Organic Act means that the Attorney General's primary defense to disqualification—that he believes he has the right to set a policy in a tax refund case contrary to the Governor's policy—is instead the primary reason for disqualification. Under the Organic Act, the Governor is plainly granted all executive powers regarding GTIT tax refund litigation. *See* 48 U.S.C. § 1412i(d)(2). It presents a plain conflict of interest for the Attorney General to appear in the name of the "government of Guam" and yet to advocate a contrary policy to that of his client the Governor. *See* GRPC 1.2 ("A lawyer shall abide by a client's decisions concerning the objectives of representation"), Rule 1.7(a)(2) (duty of loyalty violated where a lawyer follows personal or third party's interests over clients' interest).

### C. The Court Has Already Ruled that the Attorney General's Attempted Usurpation of the Governor's Authority over the GTIT Is Improper

This Court already resolved the issue of who controls GTIT tax refund litigation in its Orders of February 9, 2005 and March 2, 2005. As those Orders recognized, what the Attorney General is trying to do here goes beyond a mere conflict of interest, and into the realm of an express usurpation of the Governor's powers under the Organic Act. (March 2, 2005 Order at 4 ("The Attorney General essentially seeks to supplant his decision for that of the Governor, and this Court will not allow such usurpation to occur.")).

The Attorney General seeks to challenge these Orders, primarily by attacking this Court's citation to the case of *Graddick v. Newman*, 453 U.S. 928 (1981). (*See* Supp. Opp. at 5). *Graddick* held that Alabama's attorney general could not seek a stay of a court order releasing

4

*Civil Case No. 04-00006*
{G0004257.DOC;1}

prisoners where he did not show he had standing in light of state statutes vesting authority over the prison system in the Alabama governor (who opposed a stay). *Graddick*, 453 U.S. at 934. The Attorney General argues that this case is not on-point because it was a decision by Justice Powell denying a stay, and because Justice Rehnquist dissented. (*See* Supp. Opp. at 5-6.) As an initial matter, the Court as a whole rejected the stay (following an earlier rejection by Justice Powell alone), as Justice Rehnquist noted. *See Graddick*, 453 U.S. at 938. Moreover, the disagreement between Justices Powell and Rehnquist was whether Alabama's attorney general had clear standing to seek a stay with regard to the prison system. Nothing in Justice Rehnquist's dissent undermined the premise that if the Alabama attorney general lacked standing, he could not seek a stay. *See id*. at 938-945. Instead, the fact that an attorney general could not contest a case if he lacked the power to set policy was the basic premises that both justices accepted.

Here, unlike *Graddick*, there is no ambiguity as to who sets policy, and so the opinions of both justices support the Governor here. 48 U.S.C. § 1412i(d)(2) is quite clear that *all* executive powers concerning the GTIT are vested in the Governor. (*See also* February 9, 2005 Order at 5-6; March 2, 2005 Order at 4). In fact, although the Attorney General continues to ignore it in this proceeding, the Attorney General has fervently argued his own *lack* of power over the GTIT to this Court in a related proceeding. (Decl. of Rodney J. Jacob (filed 3/7/2005) at Exh. A (page 3 of October 28, 2004 brief of the Attorney General in related EIC proceeding arguing that the Attorney General "has no jurisdiction over the administration and enforcement of the Guam territorial income tax....")).

D.  **The Governor's Powers Are More than "Ministerial."**

The Attorney General argues that the Governor's duties are "purely ministerial." citing a different section of the Organic Act (48 U.S.C. § 1421i(h)(2)) regarding the Governor's

5

*Civil Case No. 04-00006*
{G0004257.DOC;1}

duty to pay tax refund judgments (Supp Opp. at 2). However, the language of 48 U.S.C. § 1412i(d)(2), which the Attorney General ignores and which is cited above, is clear in granting the Governor all executive powers concerning the GTIT, not merely those that are "ministerial."

Further, that the Attorney General would label paying a tax judgment "ministerial" demonstrates why the Governor, not Attorney General, must be able to set government policy in this action. This case, and the copycat putative EIC class actions that have been filed subsequently, do not involve a single tax return for a few thousand dollars. These cases are seeking to be class actions covering tens of thousands of claims that, if not properly defended and resolved, could total more than a hundred million dollars. Attempting to resolve these cases in a judgment that the government can actually afford to pay is no mere "ministerial" task. It is policy making of exactly the type that Congress intended the Governor control in enacting 48 U.S.C. § 1412i(d)(2). It is Guam's governor who actually carries out all day-to-day expenditures from Guam's treasury, based upon the demands on the government including tax refund judgments, the Legislature's current budget laws, and other legitimate claims for funds. A governor must have more than ministerial control over tax refund judgments, just as he or she must control whether appropriated funds are actually expended. Otherwise, a governor could not adjust expenditures to meet natural disasters and other emergencies (or even simple drops in revenue) that require delaying funding of one matter so that another with higher priority can be addressed.

The Attorney General defends his previous June 16, 2004 settlement and attacks the Governor's June 20, 2005 settlement.[6] (*See* Supp. Opp. at 2). This illustrates the Governor's

---

[6] The Attorney General also seeks to characterize the Governor's policies as being inconsistent, which is untrue. It is not inconsistent to challenge a settlement agreement one was never consulted about after being told it is unlawful. The inconsistent policy is the Attorney General's. He continues to insist that the previous settlement and accompanying agreement to

6

*Civil Case No. 04-00006*
{G0004257.DOC;1}

point. Under the old settlement that the Attorney General entered into without consulting with the Governor, the government was supposed to make fixed payments each month without any guarantees as to where such money could be found. (*See* June 17, 2004 Stipulation & Order at Exh. A (at Section IV)). Under the Governor's new settlement, in contrast, the government pledges to pay a percentage each month from its tax refund reserves—preserving the government's ability to not pay any refunds or EIC in a month in which there is a natural or financial disaster. (*See* June 20, 2005 Decl. of Rodney J. Jacob at Exh. 2 (at Section V(a)(i)). This, the Governor believes, will ensure his ability to protect the government and the people in times of crisis—which is exactly the type of concern that can only be properly represented in this action if the Governor's rights to set policy are enforced.

Even without comparing the two settlements on their merits, the difference between the Attorney General's positions on each is an apt illustration of why disqualification is necessary. The Governor is the client in this situation; he is the one who must make a resolution of this case work—and live with the consequences if it does not. He must have an ability to effectively carry out the policy responsibilities given to him by Congress. If he continues to be attacked, cross-examined, and otherwise undermined by his former counsel, it could significantly impede his ability to carry out his duties under the Organic Act.

## II. THE ETHICAL RULES APPLY TO THE ATTORNEY GENERAL

The Attorney General's alternative argument is to rehash his claim to immunity from most or all of the ethical rules governing lawyers. (Supp. Opp. at 6). But, neither the Organic Act nor the Guam Rules of Professional Conduct create any such exception. To the

---

class certification in this action are enforceable, but has also stated no opposition to certification of a no opt-out class in the *Simpao* proceeding. In so doing, the Attorney General has agreed to

7

*Civil Case No. 04-00006*
{G0004257.DOC;1}

contrary, this Court has held in the litigation concerning Proposal A that the Attorney General is subject to the Guam Rules of Professional Conduct and must step aside to permit a client to obtain alternative counsel where he has a conflict of interest. (*See* Benjamin Decl. Exh. 6 at 11 (Findings and Recommendation of Magistrate Judge in proceeding concerning Attorney General's power to represent Governor where he has a conflict of interest); Benjamin Decl. Exh. 7 at 2 (Order adopting those Findings)). In fact, as the Magistrate Judge pointed out in the Findings and Recommendation in Proposal A that were subsequently adopted by the District Court, the Attorney General's own position as to the ethical rules has been inconsistent. The Attorney General himself has agreed he had to step aside in cases where he appears in his own name against the Governor. (Benjamin Decl. Exh. 7 at 15 (discussing previous case between Attorney General and Governor where this occurred)). Thus, the true question here is not whether the ethical rules apply, but how they apply.[7]

That is not a difficult question in this case. The Guam Rules of Professional Conduct state simply and unambiguously that "a lawyer **currently serving as a public officer** or employee is subject to Rules 1.7 and 1.9." GRPC 1.11(d)(1). And those are the Rules require disqualification. Rule 1.7 requires loyalty to current clients. Rule 1.9 forbids engaging in a representation against a former client in a matter substantially related to a former representation of that client. Here, as stated, the Attorney General represented the Governor and Directors, but

---

the certification of two redundant class, the existence of which would be mutually inconsistent.

[7] The holding that the ethics rule apply to attorney generals of course is the same holding reached in the cases previously cited by the Governor, which the Attorney General has now studiously ignored in both of his oppositions to this disqualification motion. *People ex rel. Deukmejian v. Brown*, 29 Cal. 3d 150, 157 (1981); *Attorney Gen. v. Mich. Pub. Serv. Comm'n*, 625 N.W. 2d 16, 27 (Mich. 2000); *Manchin v. Browning*, 170 W. Va. 779, 789-90 (1982); *Chun v. Bd. of Trustees*, 952 P.2d 1215, 1240 (Haw. 1998).

8

*Civil Case No. 04-00006*
{G0004257.DOC;1}

turned against them when they refused to proceed with the June 2004 settlement after learning that the settlement violated Guam law and that they faced potential criminal misdemeanor prosecution should they proceed. In response to their refusal, the Attorney General has subpoenaed his own former clients and cross-examined them on the stand as hostile witnesses with regard to the very subject matter of the representation.

Nor has the Attorney General changed his posture with regard to representing the Governor's interests in light of the Court's recent rulings. Most recently, the Attorney General has cut off all communications with the Governor regarding another related matter, the putative EIC class action of *Simpao*. In that case, the Attorney General has attempted to concede certification of a no opt-out class, a move that is plainly intended to defeat the Governor's ability to settle this case or any other EIC case. (*See* Benjamin Decl. Exh. 4). The Attorney General also has attempted to prevent the Governor from intervening in time to prevent the class certification from occurring without opposition. (*See* Benjamin Decl. Exh. 5.) And the Attorney General recently attempted to concede issues other issues in that EIC litigation without consulting with the Governor. (*See* Benjamin Decl. Exh. 3 at 32:2-5, 32:16-33:1(hearing transcript from *Simpao* where Attorney General's office attempted to concede issues regarding liability for claims)).

The Attorney General attempts to characterize this case as one involving an intra-governmental conflict. (Supp. Opp. at 7). But this is not such a case. A case of intra-governmental conflict is where the Attorney General has no stake in the case, but instead is representing two branches of the government that have competing priorities. In this case, the Attorney General, whether in the name of the government or otherwise, is trying to act as a policy maker, as the client. That is a classic conflict case—the Attorney General's effort to impose his policy judgments in place of the Governor's has conflicted with the Attorney General's duty to

9

*Civil Case No. 04-00006*
{G0004257.DOC;1}

faithfully represent the government (whose policies in a tax refund case are set by the Governor). Disqualification is mandatory.

## CONCLUSION

The government of Guam already has a *client* representative in this matter—the Governor of Guam pursuant to 48 U.S.C. § 1412i(d)(2). What it needs is an *attorney* in this matter, one who seek to protect its interests. The Attorney General's conflicts of interest have rendered him incapable not only of representing the Governor and Directors, but also the government of Guam. The Governor respectfully requests that the Court to grant his motion to disqualify the Attorney General from appearing in this action.

Dated this 26th day of July, 2005.

OFFICE OF THE GOVERNOR OF GUAM
CALVO & CLARK, LLP
Attorneys At Law
  Attorneys for Respondent
  *Felix P. Camacho, Governor of Guam*

By: _____
**DANIEL M. BENJAMIN**

*Civil Case No. 04-00006*
{G0004257.DOC;1}