1   **SHANNON TAITANO, ESQ.**
    **OFFICE OF THE GOVERNOR OF GUAM**
2   Ricardo J. Bordallo Governor's Complex
3   Adelup, Guam 96910
    Telephone:     (671) 472-8931
4   Facsimile:     (671) 477-4826

5

6   **EDUARDO A. CALVO, ESQ.**
    **RODNEY J. JACOB, ESQ.**
7   **DANIEL M. BENJAMIN, ESQ.**
    **CALVO & CLARK, LLP**
8   Attorneys at Law
    655 South Marine Drive, Suite 202
9   Tamuning, Guam 96913
    Telephone:     (671) 646-9355
10  Facsimile:     (671) 646-9403

11  Attorneys for *Felix P. Camacho, Governor of Guam*

12

13                  IN THE UNITED STATES DISTRICT COURT
14
15                           DISTRICT OF GUAM

16  JULIE BABAUTA SANTOS, et. al.,          CIVIL CASE NO. 04-00006

17
                              Petitioners,
18
                                            **DECLARATION OF DANIEL M.**
19              -v-                          **BENJAMIN IN SUPPORT OF**
                                            **SUPPLEMENTAL REPLY IN**
20  FELIX P. CAMACHO, etc., et. al.          **SUPPORT OF MOTION TO**
                                            **DISQUALIFY ATTORNEY**
21                            Respondents.   **GENERAL'S OFFICE**

22                                           **[ORAL ARGUMENT REQUESTED]**

23

24

25

26

27
    *Civil Case No. 04-00006*
28  {G0004250.DOC;1}
                          **ORIGINAL**

FILED
DISTRICT COURT OF GUAM
JUL 26 2005
MARY L.M. MORAN
CLERK OF COURT
218

1    I, DANIEL M. BENJAMIN, declare that:

2        1.    I am an attorney with the law firm of Calvo & Clark, LLP, counsel of

3    record for Respondent Felix P. Camacho, Governor of Guam in this action. I make this

4    declaration on personal knowledge, and if called to testify I could and would testify competently

5    thereto.

6

7        2.    Attached as Exhibit "1" is a true and correct copy of the October 13, 2004

8    Memorandum to the Attorney General from Charles Troutman; subject: Santos EITC Settlement

9    – Need for Legislative appropriation of "Refund".

10       3.    Attached as Exhibit "2" is a true and correct copy of the October 28, 2004

11   Letter to Stephen A. Cohen from Shannon Taitano.

12

13       4.    Attached as Exhibit "3" is a true and correct copy of selected pages of the

14   Transcript of Proceedings in *Mary Grace Simpao, Christina Naputi, and Janice Cruz, on behalf*

15   *of themselves and a class of others similarly situated v. Government of Guam v. Felix P.*

16   *Camacho, in his official capacity as Governor of Guam*, District Court of Guam Civil Case No.

17   04-00049, (the "*Simpao Action*"), held on June 14, 2005.

18       5.    Attached as Exhibit "4" is a true and correct copy of the Defendant's Non-

19   Opposition to Plaintiff's Motion for Class Certification filed on July 11, 2005 in the *Simpao*

20   *Action.*

21

22       6.    Attached as Exhibit "5" is a true and correct copy (without the exhibits that

23   had been attached) of the Notice of Non-Agreement of Hearing Date on Motion for Intervention

24   and Objection to Agreement on Hearing Date for Motion for Class Certification filed on July 12,

25   2005 in the *Simpao Action.*

26

27                                            1

28   *Civil Case No. 04-00006*
     {G0004250.DOC;1}

1         7.     Attached as Exhibit "6" is a true and correct copy of the Findings and

2 Recommendation By Magistrate Judge filed on March 16, 2005 in *Lourdes P. Aguon-Schulte v.*

3 *The Guam Election Commission, et al.*, District Court of Guam Civil Case No. 04-00045; *Jay*

4 *Merrill, et al. v. The Guam Election Commission, et al.*, District Court of Guam Civil Case No.

5 04-00046 (the "*Proposal A Action*").

6

7         8.     Attached as Exhibit "7" is a true and correct copy of the Order filed on

8 May 10, 2005 in the *Proposal A Action*.

9         I declare under penalty of perjury pursuant to the laws of the United States and of

10 the Territory of Guam that the foregoing declaration is true and correct.

11         Dated this 26th day of July, 2005.

12                   OFFICE OF THE GOVERNOR OF GUAM

13                   CALVO & CLARK, LLP
                     Attorneys At Law

14                   Attorneys for Respondent
                   *Felix P. Camacho, Governor of Guam*

15

16         By: _____

17             **DANIEL M. BENJAMIN**

18

19

20

21

22

23

24

25

26

27                      2

28 *Civil Case No. 04-00006*
{G0004250.DOC;1}

# EXHIBIT 1




# GOVERNMENT OF GUAM
## CONSUMER COUNSEL
### OFFICE OF THE ATTORNEY GENERAL
#### HAGÅTÑA, GUAM

October 13, 2004

MEMORANDUM

To:     Attorney General

From:   Charles Troutman

Subject:     Santos EITC Settlement — Need for Legislative appropriation of
             "Refunds"

## CONFIDENTIAL ATTORNEY-CLIENT & WORK PRODUCT COMMUNICATION

You have asked me to advise you on certain questions raised by the Governor and other
of our clients with regards to implementing the EITC settlement in the Santos case. In
this memo I will examine only the question whether the Governor must seek a legislative
appropriation before paying the settlement.

The EITC settlement consists of several elements to be performed by the government of
Guam: (1) funding and payment of $60 million in delinquent EITC refunds to qualified
taxpayers for tax years 1996 and 1998 through 2003 in accordance with the multi-year
schedule established in the settlement agreement; (2) payment of $6 million in attorney
fees to class counsel on a pay-as-you-go basis from the $60 million in EITC refunds to
occur over the life of the settlement schedule; (3) commitment to apply, and to pay, EITC
refunds to qualified taxpayers for all future tax years, commencing with 2004; and (4)
payment of approximately $1 million in administrative costs by the Department of
Revenue and Taxation to implement the settlement, which amount appears to be in
addition to and separate from the $60 million for EITC refunds and attorneys fees.

My opinion is that the Governor does not have to seek an appropriation for items 1 and 2. On the on other hand, he must have appropriations for items 3 and 4. In reaching these conclusions, I am assuming that the EITC validly applies to Guam, a matter of doubt to some, but rendered moot by the settlement.

Any answer must stem, first, from the Organic Act of Guam. This settlement will result, *inter alia*, in a judgment for money due against the government of Guam. The Organic Act states that, in such cases:

> When any judgment against the government of Guam under this paragraph [for an unpaid income tax refund] has become final, the Governor shall order the payment of such judgment out of any unencumbered funds in the treasury of Guam. 48 U.S.C.A. §1421i(h)(3).

Courts have long held that Congress has the power to legislate directly for a territory as if Congress were a state legislature. This was recently reaffirmed by the 9th Circuit in *People v. Guerrero*, 290 F.3d 1210 (2002):

> *See, e.g., First Nat'l Bank v. County of Yankton*, 101 U.S. 129, 133, 25 L.Ed. 1046 (1879) ( "[Congress] may make a void act of the territorial legislature valid, and a valid act void. In other words, it has full and complete legislative authority over the people of the Territories and all the departments of the territorial governments."); at 1221-2.

The Organic Act completely occupies the authority Guam has over the Territorial Income Tax, restricting the Legislature to those matters not covered (very few) by the Act. A good example is in Section 11 of the Organic Act where Congress has permitted the Legislature to adopt surcharge on the Territorial Income Tax of up to 10%. While Guam may adopt its own income tax structure pursuant to another federal law, it has not yet done so and, therefore, is still subject to the existing mirror-image income tax imposed by the Organic Act.

It is my opinion, that in the case of paying a judgment obtained against the government for the matters stated in the Organic Act, including refund of taxes (item 1 above), Congress has legislated the authority to pay notwithstanding the absence of a legislative appropriation. In fact, the language is mandatory – "the Governor shall order . . .". If he does not order the payment of a judgment for an unpaid income tax refund from any unencumbered funds, he would be subject to a writ of mandate from the District Court ordering him to do so.

2

EITC payments are treated as refunds of income tax overpayments under the U.S. Internal Revenue Code mirrored in Guam, and are subject to the same rules as ordinary income tax refunds. *Sorenson v. Secretary of the Treasury of the United States*, 475 U.S. 851, 106 S.Ct. 1600, 89 L.Ed. 2d 855 (1986); *Israel v. United States*, 356 F.3d 221 (2nd Cir. 2004). Accordingly, payment of the judgment to be entered by the District Court of Guam for unpaid EITC refunds covering tax years 1986 and 1988 through 2003 will be subject to the provisions of the Organic Act, 48 U.S.C.A. §1421i(h)(3), requiring the Governor to pay the judgment "out of any unencumbered funds in the treasury of Guam" without regard to appropriation by the Legislature.

There have been no decided cases defining the term "unencumbered funds in the treasury of Guam", although definitions of "unencumbered funds" are found in other contexts. See *United States v. Kim* 111 F. 3d 1351 (7th Cir. 1997)(defining "unencumbered funds" for purposes of the trust fund penalty of Section 6672 of the Internal Revenue Code). However, the common understanding of this term in Guam is that it means any funds not obligated by contract or other order, for example, wages. When it comes to judgments for delinquent income tax refunds, the Organic Act requires that payment be from any unencumbered funds within the treasury of Guam, not just from funds allocated for the purpose of tax refunds by the Legislature. Therefore, the Governor may, and indeed must, pay the judgment for refunds of the EITC from any unencumbered funds in the treasury of Guam.

Moreover, no legislative appropriation will be needed regarding payment of attorney fees to class counsel under the judgment (item 2 above). The attorneys fees to be paid to class counsel are not a separate amount awarded by the court against the government. Rather, the attorney fees are an obligation imposed on the taxpayers and will be paid by them to class counsel from their EITC refunds, which is their property. Because the Governor does not have to obtain an appropriation from the Legislature to pay the judgment for the delinquent EITC refunds covering tax years 1996 and 1998 through 2003, which is the source of the attorneys fees, he does not have to obtain an appropriation for the attorneys fees (I make no opinion as to the reasonableness of the amount of attorneys fees sought by class counsel in the settlement, which is a different issue).

On the other hand, the obligation undertaken by the government in the settlement to pay future EITC refunds on annual basis hereafter to qualified taxpayers (item 3 above), commencing with tax year 2004, is not a money judgment for refunds and, therefore, is not subject to the provisions of the Organic Act, 48 I U.S.C.A. §1421i(h)(3), requiring the

3

Governor to pay a judgment for unpaid refunds "out of any unencumbered funds in the treasury of Guam". Consequently, it is proper and necessary for the Legislature to annually appropriate funds for the payment of such refunds, which the Legislature did for fiscal years 1998 and 1999 in the Guam Earned Income Program, 11 G.C.A. §42104.

Although the U.S. Congress in 31 U.S.C. §1324 has made a continuing appropriation to the Department of Treasury to pay U.S. tax refunds, this appropriation is not mirrored in Guam. The Organic Act provides for mirroring of the Internal Revenue Code which is found in Article 26 of U.S.C., but not Title 31 of U.S.C.

The settlement also provides for a $1 million "pot" to be used as administration costs by the Department of Revenue and Taxation to implement the settlement and the payout under it (item 4 above). As these funds appear to come from the General Fund and are separate from and in addition to the $60 million EITC settlement amount, then there is an absolute requirement that the moneys be appropriated by the Legislature, since these are for the general operations of the Department of Revenue & Taxation. They would not be part of a judgment for delinquent income tax refunds. I assume that the $1 million will be payable over several years and need not be appropriated all at once.

The Governor and our other clients would not be subject to the provisions and penalties set forth in 5 G.C.A. §22401 regarding the expenditure of unappropriated funds to the extent that funds under the EITC settlement (items 1 and 2 above) are paid pursuant to the Organic Act, 48 U.S.C.A. §1421i(h)(3), requiring judgments for unpaid income tax refunds to be paid "out of any unencumbered funds in the treasury of Guam". However, the expenditure of unappropriated funds for other parts of the settlement that do not come within the scope of this Organic Act provision regarding payment of judgments for unpaid income tax refunds (items 3 and 4 above) would expose the Governor and our other clients to possible liability under 5 G.C.A. §22401.

I trust that this memorandum fully answers your questions. I would be pleased to answer any further questions you may have regarding this matter.


*Charles H. Troutman*
CHARLES H. TROUTMAN

4

# EXHIBIT 2



## Office of the Governor of Guam

P.O. Box 2950 Hagåtña, Guam 96932
TEL (671) 472-8931 • FAX (671) 477-4826 • EMAIL: governor@mail.gov.gu

**Felix Perez Camacho**
*Governor*

**Kaleo Scott Moylan**
*Lieutenant Governor*

**2 8 OCT 2004**

Stephen A. Cohen
Assistant Attorney General
Office of the Attorney General
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910

Re:    Julie Babauta Santos v. Felix P. Camacho, Governor of Guam, et al;
       District Court of Guam, Civil Case No. 04-00006

Dear Steve:

The Governor has received and reviewed Mr. Troutman's memorandum of October 13, 2004. Given the conclusion that at least part of the settlement contract is illegal, the Governor can see no option but to raise this issue with the Court and Legislature as required by law. Further, the Governor is not assured by this memorandum that the $60 million payment is legal. Therefore, before acting, he requires an immediate response with regard to several issues regarding the validity of that payment.

Mr. Troutman states that the $60 million payment is legal because the Governor has the power to pay tax judgments from unappropriated funds. However, while the settlement calls for a judgment, it is still a contract. Equivalent federal law appears to treat settlements as subject to the restriction on contracting for unappropriated funds. *See Blackhawk Heating & Plumbing Co. v. United States*, 622 F.2d 539, 542, 553 (Claims Ct. 1980) (enforcing provision of settlement contract that was contingent on funding pursuant to federal Anti-Deficiency Act). Accordingly, it appears that the power to pay a judgment under the Organic Act may not be the same as the power to contract for a judgment. We would like for you to identify definitive authority for the proposition that the Governor's power to pay judgments extends to contracting for judgments. If no such authority exists, please tell us how you plan to confirm that the $60 million payment complies with the Illegal Appropriations law.

We also are concerned because, as you know, there are not nearly enough unappropriated funds in existence each month to make the monthly payments under the settlement. Yet, Mr. Troutman's opinion ignores this issue. We therefore must ask that you provide an explanation as to how it can be legal to contract to pay a judgment on a monthly basis when there are inadequate funds to satisfy that judgment absent an appropriation.

Next, the settlement contract requires interim payments now, before any judgment is final. The Governor's Organic Act power only allows him to pay *final* judgments. This is another potential illegality not addressed by Mr. Troutman regarding which we require an answer.

Further, as you mentioned at our most recent meeting, it is unlawful under Guam law for the Director of Revenue and Taxation to pay untimely tax claims. This settlement appears to require the payment of untimely tax claims. Again, Mr. Troutman's opinion does not address this issue or our earlier questions regarding why claims that appeared barred by the statute of limitations were included. Please also address this issue in your response.

Finally, we remain unclear as to how the Governor can contract to pay a judgment for attorneys' fees. Although the Governor can pay tax judgments out of unappropriated funds, the Organic Act is silent as to attorneys' fees. In this final regard, we found the opinion did not address the Governor's concerns.

As you know, the Governor supports the EITC and its payment to Guam's taxpayers. But he cannot support its payment through unlawful means, especially where millions of dollars are being paid to private attorneys. The Governor is under a continuing duty to report to the Legislature once his investigation of an unlawful contract is complete. Even as it stands now, it is clear that such a report is required because the contract contains unlawful provisions. Further, it also appears that the Governor will have to immediately challenge the validity of the settlement in District Court.

I received the Petitioner's Motion for Orders approving the Administration Plan and Amended Notice and for Order establishing the Fairness Hearing Date and Objection and Opt Out Date and Vacating the April 30, 2002 Scheduling Order and the supporting documents. Therefore, we must respectfully require that these issues be addressed in a written response by next week. We also direct you to take no action on the Petitioner's motion absent the Governor's consent. We also renew our request that we immediately be provided with all documents regarding the history of the negotiations of the settlement contract and the advice provided with regard to the contract.

Very truly yours,

Shannon Taitano

# EXHIBIT 3


1

2

3

4                **IN THE DISTRICT COURT OF GUAM**

5                    **TERRITORY OF GUAM**

6                          \* \* \*

7

8    MARY GRACE SIMPAO, CHRISTINA           )
     NAPUTI and JANICE CRUZ, on behalf      )
9    of themselves and a class of others    )
     similarly situated,                    )
10                                          )
                    Plaintiffs,             )
11                                          )
         vs.                                )CIVIL CASE
12                                          )   NO. CV04-00049
     GOVERNMENT OF GUAM,                     )
13                                          )
                    Defendant.              )
14   _____)

15

16

17              TRANSCRIPT OF PROCEEDINGS

18                      BEFORE

19       THE HONORABLE RICARDO S. MARTINEZ
              Designated District Judge

20

21      **MOTION FOR PARTIAL SUMMARY JUDGMENT**

22          **TUESDAY, JUNE 14, 2005**
                     \* \* \*

23

24

25

1    the settlement agreement.

2         THE COURT:  Well, let me ask you kind of an

3    interesting question.  I understand you're conceding

4    that EIC applies, from your perspective.

5         MS. WOLOSCHOK:  Yes, Your Honor.

6         THE COURT:  What happens if this court

7    disagrees; what happens to your settlement then?

8         MS. WOLOSCHOK:  Well, as you know, our

9    settlement agreement is already under attack, and there

10   is a mediation ongoing in that same case, so we're not

11   sure what's going to happen with the settlement

12   agreement.

13        THE COURT:  What about the statute of

14   limitations question here; can the government waive

15   that?

16        MS. WOLOSCHOK:  The statute of limitations is

17   set forth in Section 6511 of the Internal Revenue Code,

18   and it's a three-year statute of limitations, and I

19   believe that counsel for the plaintiffs has stated how

20   he believes the statute of limitations does not affect

21   the claims in this case.

22        THE COURT:  Do you agree?

23        MS. WOLOSCHOK:  The Attorney General on behalf

24   of the Government of Guam does not oppose that

25   determination so long as it doesn't prove inconsistent

1  with the settlement agreement.

2  THE COURT: Can the government actually waive

3  a statute of limitations issue?

4  MS. WOLOSCHOK: (No response.)

5  THE COURT: You can if you settle, maybe.

6  MS. WOLOSCHOK: That's true, Your Honor.

7  THE COURT: What else?

8  MS. WOLOSCHOK: I have nothing further, Your

9  Honor.

10  THE COURT: You gave me a good historical

11  perspective of what's been going on in this case, and

12  I do appreciate that. As a newcomer reading all of

13  this, it was kind of surprising to see this was going

14  on; we don't deal with this back in my district.

15  Mr. Camacho in the declaration stated that

16  Guam is not entitled to the advanced EIC. Has Guam

17  tried to implement that program?

18  MS. WOLOSCHOK: There's a form for the

19  employer's quarterly tax return that is filed by the

20  territories, it's called 941SS, and it differs slightly

21  from the form 941 filed by mainland employers in that

22  the line for the advanced EIC is blanked out for the

23  territories.

24  THE COURT: The Virgin Islands are also a

25  territory, correct?

1          All right.  A lot of briefing in this, a lot

2     of issues.  The Court will take your arguments made

3     orally here today, take another look at the briefing,

4     and try to come up with an order addressing these

5     issues fairly shortly.

6          Ms. Woloschok, tell Mr. Guthrie that Judge

7     Coughenour sends his regards; all right?

8          MS. WOLOSCHOK:  Thank you, Your Honor, I will.

9          THE COURT:  We'll be at recess.

10          MR. VAN DE VELD:  Thank you, Your Honor.

11          (Proceedings concluded at 10:58 a.m.)

12                    * * *

13               CERTIFICATE OF REPORTER

14

15    CITY OF AGANA        )
                           ) ss.
16    TERRITORY OF GUAM    )

17          I, Wanda M. Miles, Official Court Reporter

18    of the District Court of Guam, do hereby certify the

19    foregoing pages 1-40, inclusive, to be a true and

20    correct transcript of the shorthand notes taken by me

21    of the within-entitled proceedings, at the date and

22    time therein set forth.

23          Dated this 17th day of June, 2005.

24

25          _____Wanda M. Miles_____

# EXHIBIT 4



Office of the Attorney General
Douglas B. Moylan
Attorney General of Guam
Solicitors Division
247 West O'Brien Drive
Hagåtña, Guam 96910 • USA
Tel. (671) 475-3324 • Fax. (671) 472-2493
www.guamattorneygeneral.com • law@mail.justice.gov.gu

Attorneys for Defendant Government of Guam

FILED
DISTRICT COURT OF GUAM
JUL 11 2005
MARY L.M. MORAN
CLERK OF COURT

# IN THE DISTRICT COURT OF GUAM
## TERRITORY OF GUAM

MARY GRACE SIMPAO, CHRISTINA )
NAPUTI, and JANICE CRUZ, on behalf of )
themselves and a class of others similarly )
situated, )
                            )
            Plaintiffs, )
                            )
         vs. )
                            )
GOVERNMENT OF GUAM, )
                            )
           Defendant. )

Civil Case No. CV04-00049

DEFENDANT'S NON-OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

     On July 5, 2005, Plaintiffs filed a motion for class certification. Defendant, by and through its undersigned attorney, now files this Non-Opposition to Plaintiffs' Motion for Class Certification. In addition, Defendant stipulates to August 1, 2005, for a hearing on the motion for class certification.

     DATED:   July 11, 2005.

                   OFFICE OF THE ATTORNEY GENERAL
                   Douglas B. Moylan, Attorney General

                   JOSEPH A. GUTHRIE
                   Deputy Attorney General
                   Attorney for Defendant of Guam

# EXHIBIT 5

1  SHANNON TAITANO, ESQ.
   OFFICE OF THE GOVERNOR OF GUAM
2  Ricardo J. Bordallo Governor's Complex
   Adelup, Guam 96910
3  Telephone:    (671) 472-8931
   Facsimile:    (671) 477-4826
4
5  RODNEY J. JACOB, ESQ.
   DANIEL M. BENJAMIN, ESQ.
6  CALVO & CLARK, LLP
   Attorneys at Law
7  655 South Marine Corps Drive, Suite 202
8  Tamuning, Guam 96913
   Telephone:    (671) 646-9355
9  Facsimile:    (671) 646-9403
10 Attorneys for Proposed Intervenor-Defendant
11 *Felix P. Camacho, Governor of Guam*
12

**FILED**
DISTRICT COURT OF GUAM

JUL 12 2005

MARY L.M. MORAN
CLERK OF COURT

OFFICE OF THE
GOVERNOR

1 2 JUL 2005
DATE
LEGAL OFFICE

JUL 12 2005

RECEIVED

13              IN THE UNITED STATES DISTRICT COURT
14                      DISTRICT OF GUAM
15 MARY GRACE SIMPAO, CHRISTINA          Civil Case No. CV04-00049
   NAPUTI, and JANICE CRUZ, on behalf of
16 themselves and a class of others similarly
   situated,
17
                                          **NOTICE OF NON-AGREEMENT TO**
                        Plaintiffs,       **HEARING DATE ON MOTION FOR**
18                                         **INTERVENTION AND OBJECTION TO**
                                          **AGREEMENT ON HEARING DATE**
19              vs.                        **FOR MOTION FOR CLASS**
                                          **CERTIFICATION**
20 GOVERNMENT OF GUAM,
21                      Defendant,
22              vs.
23 FELIX P. CAMACHO, in his official capacity as      VAN DE VELD SHIMIZU CANTO & FISHER
24 Governor of Guam,                                          ATTORNEYS AT LAW
25                      Proposed Intervenor-Defendant.   **RECEIVED**
                                                         DATE 7/12/05 2:41pm
26
27
28

Case 1:04-cv-00006    Document 227    Filed 07/26/2005    Page 20 of 40

I, DANIEL M. BENJAMIN, declare that:

1. I am one of the attorneys for Governor of Guam Felix P. Camacho (the "Governor"), a proposed intervenor in this putative class action.

2. This action concerns the Guam Territorial Income Tax ("GTIT") and the application of the earned income tax credit ("EIC") to Guam under the GTIT. The Governor already is a party to two other, earlier filed putative class actions regarding the GTIT and EIC, *Santos v. Camacho, et al.*, Guam Dist Ct. Civ. Case No. 04-00006 (the "*Santos* action") and *Torres v. Govt. of Guam, et al.*, Guam Dist Ct. Civ. Case No. 04-00038 (the *Torres* action").

3. In three decisions issued in *Santos* and attached hereto as Exhibits A, B, & C, this Court has held that the Governor of Guam controls the administration and execution of the GTIT and must be heard in an action regarding the GTIT.

4. On June 20, 2005, the Governor of Guam reached a class action settlement in the *Santos* action. Following the settlement, motions for preliminary approval and class certification were filed.

5. On June 27, 2005, the Governor moved for a stay of the *Torres* action.

6. On June 27, 2005, the Governor of Guam filed a motion to intervene in this action to be able to have a voice in this proceeding and to be able to assert the *Santos* settlement as a defense to this action and as a ground to stay this action.

7. On July 5, 2005, I sent a letter to the Attorney General's office and plaintiffs' counsel requesting an agreement on a hearing date on the motion to intervene. A true and correct copy is attached hereto as Exhibit D.

8. On July 5, 2005, plaintiffs' counsel filed in this action a motion for class certification seeking to certify a class that is co-extensive with the *Santos* class. This was

1  approximately three weeks after the motion for class certification and settlement were filed in the

2  *Santos* class action.

3      9.     The Attorney General's office did not respond to my letter regarding a

4  hearing date for the intervention motion until Friday, July 8, 2005. At that time, I received an

5  email from Assistant Attorney General Robert Weinberg requesting a hearing date in late August

6

7  or early September of this year.

8      10.     I replied that same day by voicemail to Mr. Weinberg that we did not have

9  a preference as to the date, except that the motion to intervene should be heard before (or at the

10  absolute minimum simultaneously with) the motion for class certification. As I indicated to Mr.

11  Weinberg in my voicemail to him, I was in Saipan on Friday. I left Mr. Weinberg two numbers at

12  which to contact me in Saipan. I did not receive a response that day in Saipan.

13

14      11.     Upon returning to Guam, I retrieved a voicemail apparently left Friday at

15  my Guam office by Assistant Attorney General Marianne Woloschuk requesting a hearing date

16  on the motion to intervene in late August or early September.

17      12.     On July 11, 2005, I was in a deposition for the morning. Once the

18  deposition completed, in the early afternoon, I left Ms. Woloschuk a voicemail restating our

19  position that the motion to intervene should precede the motion for class certification.

20      13.     Also on July 11, 2005, I contacted plaintiffs' counsel in this matter, who

21

22  had yet to respond regarding a date on the intervention motion. I spoke to Curtis Van de Veld

23  regarding hearing dates on the motions for intervention and class certification.

24      14.     During that conversation, Mr. Van de Veld did not advise me of the filing

25  of an agreement to a hearing date on his clients' motion for class certification. Mr. Van de Veld

26  instead stated he could not speak to his partners that day and could only get back to me sometime

27

28

*CIVIL CASE NO. CV04-00049*                                 2

GN00765 DOC

the next day (meaning today, July 12, 2005). Mr. Van de Veld stated that he would not agree that the motion for intervention should be heard prior to the motion for class certification.

15. Late in the day yesterday, I received a filed copy of the Attorney General's request for a briefing schedule on the intervention motion. I also received a copy of the Attorney General's non-opposition to the class certification motion.

16. Following this, I received a copy of the "agreement on hearing date" filed by plaintiffs' counsel regarding the class certification motion. It was served on the Governor's office, but not these offices, yesterday.

17. Counsel for the Governor of Guam has never been contacted by either the Office of the Attorney General or plaintiffs' counsel regarding a hearing date for the class certification motion, despite the pending intervention motion.

18. The position of the Attorney General's office regarding hearing dates is contradictory. In a filing regarding the earlier filed intervention motion yesterday, it stated it needed until late August for the hearing on that motion. Yet, as to the class certification motion—which was filed a week later—it evidently is willing to agree to a hearing date in early August.

19. The intervention motion does not raise novel issues for the Attorney General's Office to brief. It follows the Court's three orders in *Santos*. *See* Exhibits A, B, & C. Further, the Attorney General has briefed related issues in the litigation that was pending before this Court regarding Proposal A. *See* Exhibits E & F (true and correct copies of Findings and Recommendation and an Order in these matters). Notably, in those Proposal A proceedings, the Attorney General had made an unsuccessful effort to stipulate to an injunction against the Legislature, Governor, and Election Commission without consulting with these entities that were

*CIVIL CASE NO. CV04-00049*
G000755.DOC

3

charged with the administration of the laws at issue in those proceedings and where the Attorney General claimed to represent those entities.

20. Plaintiffs already filed an opposition to the intervention motion yesterday. Therefore, plaintiffs cannot object to an earlier hearing on this motion.

21. The Governor of Guam believes that the motion for intervention should be heard prior to the class certification motion. Certifying a class in this action—especially the no-opt out class requested by plaintiffs—would interfere with the settlement reached in *Santos*.

22. Even without that settlement, however, it is clear that plaintiffs' counsel and the Office of the Attorney General are attempting to push the class certification motion, while delaying the intervention motion. This is contrary to the Court's *Santos* Orders (Exhibits A, B & C attached hereto) clearly providing that the Governor must have a voice in litigation concerning the GTIT.

23. Of particular concern is the fact that the Attorney General's office filed the non-opposition to class certification. To my knowledge, the Governor's office was not consulted regarding this non-opposition, notwithstanding the Court's Orders in *Santos*.

24. Further, as the Court is aware, any class action or putative class action must receive a high level of scrutiny for the possibility of collusion between counsel for a defendant and counsel for a class representative. The Governor is very concerned that the recent progress of this case, including this effort to have the class certification motion heard without opposition, could raise that specter of collusion. This is another very important reason why the intervention motion should be heard before the class certification motion so as to ensure truly adversarial proceedings.

25. For these reasons, the Governor respectfully requests that the Court set the hearing dates on the motions for intervention and class certification consistent with the Governor's right to be heard in this action, judicial economy, and fairness.

26. Given that plaintiffs' counsel and the Office of the Attorney General are available at 9:30 a.m. on August 5, 2005, the Governor proposes that date for the motion for intervention. The Governor proposes that the motion for class certification be set for hearing after the intervention motion is heard and decided, and after a motion to stay can be brought in the event intervention is granted. This also will permit time for the earlier filed *Santos* motions to be heard, which will assist this proceeding given their potential bearing on this case.

I declare under penalty of perjury pursuant to the laws of the United States and of the Territory of Guam that the foregoing declaration is true and correct.

Dated this 12th day of July, 2005.

_____
DANIEL M. BENJAMIN

# EXHIBIT 6

# FILED

**DISTRICT COURT OF GUAM**

**MAR 1 6 2005**

**MARY L.M. MORAN**
**CLERK OF COURT**

## DISTRICT COURT OF GUAM

### TERRITORY OF GUAM

| | |
|---|---|
| LOURDES P. AGUON-SCHULTE,<br><br>    Plaintiff,<br><br>vs.<br><br>THE GUAM ELECTION COMMISSION, GERALD A. TAITANO, in his official capacity as the Executive Director of the Guam Election Commission, I MINA' BENTE SIETE NA LIHESLATURAN GUAHAN (The 27ᵗʰ Guam Legislature) and FELIX P. CAMACHO, in his official capacity as the Governor of Guam,<br><br>    Defendants. | CIVIL CASE NO. 04-00045<br><br>(as removed from the Superior Court of Guam Civil Case No. CV-1103-04) |
| JAY MERRILL, on his own behalf and on behalf of all other similarly situated voters desirous of casting a vote in favor of Proposal A at a fair and legal election,<br><br>    Plaintiffs,<br><br>vs.<br><br>THE GUAM ELECTION COMMISSION, GERALD A. TAITANO, in his official capacity as the Executive Director of the Guam Election Commission, I MINA' BENTE SIETE NA LIHESLATURAN GUAHAN (The 27ᵗʰ Guam Legislature) and FELIX P. CAMACHO, in his official capacity as the Governor of Guam,<br><br>    Defendants. | CIVIL CASE NO. 04-00046<br><br>(as removed from the Superior Court of Guam Civil Case No. CV-1111-04)<br><br><br>**FINDINGS AND RECOMMENDATION BY MAGISTRATE JUDGE** |

On February 18, 2005, these consolidated cases came before the Court for hearing on the

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al., v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

Attorney General's motions to strike the appearances by and pleadings of private counsel and the defendants' motions to remand these actions to the Superior Court of Guam. At the conclusion of the hearing, the Court took the motions under advisement. The Court now issues its findings and recommendation for the parties' and the district judge's review.

## BACKGROUND

On or about October 18, 2004, Plaintiff Lourdes P. Aguon-Schulte filed a Complaint (CV 1103-04) in the Superior Court of Guam against the Guam Election Commission, Gerald A. Taitano, in his official and individual capacity, *I Mina Bente Siete Na Liheslaturan Guahan* (the 27th Guam Legislature), and Felix P. Camacho, in his official capacity as the Governor of Guam. The plaintiff sought declaratory and injunctive relief, and an order from the Court requiring the Governor to hold a special election on Proposal A.

On or about October 25, 2004, Plaintiff Jay Merrill, on his behalf and all others similarly situated, filed a Complaint (CV 1111-04) in the Superior Court of Guam against the Guam Election Commission, Gerald A. Taitano, in his official and individual capacity, *I Mina Bente Siete Na Liheslaturan Guahan* (the 27th Guam Legislature), and Felix P. Camacho, in his official capacity as the Governor of Guam. The plaintiffs sought declaratory and injunctive relief, and an order from the Court requiring the Governor to hold a special election on Proposal A.

On October 26, 2004, the Attorney General of Guam filed a Notice of Removal of the said cases to the District Court of Guam. In his removal petition, the Attorney General noted that the Plaintiffs complained about alleged violations of their right to vote protected by the First and Fourteenth Amendments to the Constitution and their right to vote for initiatives, a right protected by the Organic Act of Guam, a federal statute. Furthermore, the Attorney General alleged that as Chief Legal Officer of the Government of Guam, he represented all the named defendants in the litigation. At the same time, the Attorney General lodged with this court a Stipulation and Order for Preliminary Injunction in both cases.[1] The Stipulation was executed by

---

[1] Copies of the Stipulation and Order for Preliminary Injunction are attached as Exhibits A and B to this Findings and Recommendation.

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al. v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1   the Plaintiffs' counsel, Thomas L. Roberts, Esq.[2] and the Attorney General, through his assistant,

2   Robert M. Weinberg, on behalf of all the defendants.

3       On or about October 28, 2004, *I Mina Bente Siete Na Liheslaturan Guahan* (the 27th

4   Guam Legislature) filed an entry of appearance through its legislative counsel, Therese M.

5   Terlaje. At the same time, *I Mina Bente Siete Na Liheslaturan Guahan* (the 27th Guam

6   Legislature) lodged an objection to the proposed stipulation and order for preliminary injunction

7   executed between the plaintiffs and the Attorney General, on behalf of the defendant, *I Mina*

8   *Bente Siete Na Liheslaturan Guahan* (the 27th Guam Legislature). On the same day, Felix P.

9   Camacho, the Governor of Guam, filed an appearance through the law firm of Calvo & Clark

10  LLP, as attorneys for the Governor. The Governor simultaneously filed an objection to the

11  proposed stipulation and order for preliminary injunction. On or about the same time, Attorney

12  Cesar C. Cabot entered his appearance for the Guam Election Commission and Gerald Taitano,

13  in his individual and official capacities. Attorney Cabot also objected to the stipulation and order

14  for preliminary injunction on behalf of the Guam Election Commission and Director Taitano.

15      On October 29, 2004, the Attorney General filed motions[3] to strike the appearances of

16  the various counsel, made on behalf of the said named defendants. Also on the same date, the

17  Court denied the Attorney General and the Plaintiffs' request for a temporary injunction.

18      On or about November 22, 2004, *I Mina Bente Siete Na Liheslaturan Guahan* (the 27th

19  Guam Legislature) moved the Court to remand the cases[4] to Superior Court arguing that it did not

20  consent to the removal of the cases to federal court. The Governor, Executive Director Taitano,

21

22      [2] The Plaintiffs in both cases are represented by Attorney Roberts.

23      [3] Prior to consolidation of these two cases, the Attorney General filed a motion to strike

24  appearances and pleadings by private counsel in each action. See Docket No. 18 in Civil Case
    No. 04-00045 and Docket No. 13 in Civil Case No. 04-00046. All further references to docket

25  numbers herein shall be to the docket in the lead case, Civil Case No. 04-00046, unless otherwise

26  specified.

27      [4] *I Mina Bente Siete Na Liheslaturan Guahan* (the 27th Guam Legislature) filed a motion
    to remand in each case. See Docket No. 28 in Civil Case No. 04-00045 and Docket No. 30 in

28  Civil Case No. 04-00046.

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al. v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1  and the Guam Election Commission have joined in the said motion and for the same reason —

2  that they did not consent to the removal of the Superior Court actions to this Court.[5]

3        The motions to strike and to remand are two of several motions pending before this

4  Court. The Court has decided to hear the motions to strike first since a decision reached therein

5  ultimately decides whether these cases remain with this Court or are remanded back to the

6  Superior Court of Guam.

## DISCUSSION

7

8  **I.**    **Attorney General Provision in the Organic Act of Guam**

9        The pertinent provision of the Organic Act of Guam regarding the Attorney General

10  provides:

11      (d) Attorney General

12      (1) The Attorney General of Guam shall be the Chief Legal Officer of the
Government of Guam. At such time as the Office of the Attorney General of

13  Guam shall next become vacant, the Attorney General of Guam shall be appointed
by the Governor of Guam with the advice and consent of the legislature, and shall

14  serve at the pleasure of the Governor of Guam.

15      (2) Instead of an appointed Attorney General, the legislature may, by law, provide
for the election of the Attorney General of Guam by the qualified voters of Guam

16  in general elections after 1998 in which the Governor of Guam is elected. The
term of an elected Attorney General shall be 4 years. The Attorney General may

17  be removed by the people of Guam according to the procedures specified in
section 1422d of this title or may be removed for cause in accordance with

18  procedures established by the legislature in law. A vacancy in the office of an
elected Attorney General shall be filled —

19      (A) by appointment by the Governor of Guam if such vacancy occurs less than 6

20  months before a general election for the Office of Attorney General of Guam; or

21      (B) by a special election held no sooner than 3 months after such vacancy occurs
and no later than 6 months before a general election for Attorney General of

22  Guam, and by appointment by the Governor of Guam pending a special election
under this subparagraph.

23

24  42 U.S.C. § 1421g(d).

25

26

27      [5] Subsequent to the filing of its motions to remand, *I Mina Bente Siete Na Liheslaturan
Guahan* (the 27th Guam Legislature) was dismissed as a named defendant in each case. The

28  motions to remand, however, are still pending as to the remaining Defendants who have joined in
the motions.



Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al., v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1   Because the Attorney General is the Chief Legal Officer of the Government of Guam, he

2   argues that he has exclusive right to represent the Government of Guam's agencies and officials

3   in litigation in which the said agencies and officials are involved. In these actions, an entity of

4   the government of Guam, (the Guam Election Commission), and two government officials,

5   (Felix P. Camacho, the Governor of Guam and Gerald A. Taitano, the Executive Director of the

6   Guam Election Commission) are named defendants. Because the named defendants are parts and

7   parcel of the Government of Guam, the Attorney General has opined that he and only he or his

8   staff attorneys within the Office of Attorney General can legally represent them. The Attorney

9   General has stated the issue pending before this Court is constitutional in nature, i.e., his

10  congressional designation as Chief Legal Officer of the Government of Guam prevents any

11  entity, agency, and official of the Government of Guam from being represented by counsel other

12  than the Attorney General. Furthermore, he asserts that the Guam Legislature has no authority to

13  enact legislation which would allow any official, agency, or entity within the Government of

14  Guam to be represented by any attorney other than the Attorney General. The Court must

15  therefore decide whether Governor Felix P. Camacho, the Guam Election Commission, and its

16  Executive Director Gerald A. Taitano may be represented by the attorneys who have made

17  entries of appearances in this litigation on behalf of the said defendants or whether the Court

18  should strike their entries of appearances as motioned by the Attorney General.

19      In 1998, Congress was petitioned by the people of Guam to amend the Organic Act to

20  allow for the election of their Attorney General. Rather than providing outright for an elected

21  Attorney General, Congress deemed it best to allow the people of Guam to make that

22  determination through local legislation. In order to provide the framework for an elected

23  Attorney General, if such local legislation was to be enacted, Congress was required to create that

24  office (Attorney General) within the framework of Guam's Organic Act. Thus, Congress added a

25  new subsection (48 U.S.C. §1421g(d)) to the Organic Act and created and designated an office of

26  Attorney General of Guam. In so doing, Congress declared the Attorney General "shall be the

27  Chief Legal Officer of the Government of Guam." The Organic Act amendment became law

28  October 27, 1998. See Pub. L. No. 105-291.

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al., v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1   Because Congress did not allow outright for an elected Attorney General and there was

2   insufficient time in 1998 to pass local legislation providing for an elected Attorney General, the

3   selection of the next Attorney General (following the November 1998 gubernatorial general

4   election) would be governed by the appointment provisions of the Organic Act, i.e., by

5   Section 1421g(d)(1). The next Attorney General would thus be appointed by the Governor of

6   Guam with the advice and consent of the Legislature. Furthermore, the Attorney General would

7   serve at the pleasure of the Governor.

8   On June 9, 1999, Substitute Bill No. 52 of the 25th Guam Legislature was signed into law

9   as P. L. 25-44 (the "Act"). The Act provided for the election of the Attorney General. The Act,

10  among other things, set forth the qualifications for the Attorney General, the procedure for the

11  election and removal of the Attorney General, and it further set forth the compensation of the

12  Attorney General. Thus, the enactment by the 25th Guam Legislature of the elected Attorney

13  General bill triggered the Organic Act provisions of Section 1421g(d)(2). The Attorney

14  General's election had to coincide with the election of Guam's governor and the Attorney

15  General would serve a four year term. In addition, the Attorney General could only be removed

16  under certain circumstances and a vacancy would be filled as provided under the provisions of 48

17  U.S.C. § 1421g(d)(2) of the Organic Act.

18  The Court takes note that when the Defendant Felix P. Camacho was chosen on

19  November 5, 2002 by the People of Guam as their seventh elected Governor of Guam, the People

20  of Guam also chose Douglas B. Moylan as their first elected Attorney General.

21  Whether Guam decided to elect its Attorney General or not, Congress was clear in its

22  1998 Organic Act amendment that the Attorney General was to be the Chief Legal Officer of the

23  Government of Guam. Congress did not articulate further the duties and responsibilities of the

24  Attorney General. One could speculate that Congress may have thought it inappropriate to

25  articulate the duties and responsibilities of that office since Guam's Attorney General had been

26  appointed since the Organic Act's inception in 1950 and continued to remain appointed (48 years

27  of gubernatorial appointments). Moreover, local legislation presently provided areas of duties

28  and responsibilities for the appointed Attorney General.

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al., v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1     Was Congress's then proclamation of the Attorney General as the Chief Legal Officer of

2 the Government of Guam merely an acknowledgment of all the existing powers of the Attorney

3 General, or did Congress intend to place a deeper and more substantive power into the office, an

4 authority and power which would negate executive as well as legislative intrusion into the

5 Attorney General's authority as Chief Legal Officer of the Government of Guam? Whatever the

6 case may be, it appears to this Court that in interpreting the Attorney General's status as Chief

7 Legal Officer of the Government of Guam, it must attempt to give full meaning and expression to

8 Congress's declaration that the Attorney General shall be the Chief Legal Officer of the

9 Government of Guam. How then does the Court give this declaration full expression and

10 meaning? As it relates to the representation issue before the Court, it appears reasonable and

11 logical to conclude that the Attorney General's authority as Chief Legal Officer would generally

12 be negated and diminished when an entity, agency or official within the Government of Guam is

13 represented by counsel other than the Attorney General. This Court recognizes as fundamental

14 to his authority under the Organic Act the Attorney General's ability to represent entities,

15 agencies and officers of the Government of Guam.

16     Examining the provisions of Guam's Organic Act in relation to the Office of Attorney

17 General of Guam, the Court takes note of the Attorney General's statements that only once

18 previously did Congress enact legislation for an office of the Attorney General, that being the

19 creation of the Office of the Attorney General of the United States. When Congress created the

20 Department of Justice and headed that office with the Attorney General, it reserved, however, to

21 the officers of the Department of Justice, under the direction of the Attorney General, the conduct

22 of all "litigation in which the United States, an agency, or officer thereof is a party, or is

23 interested." 28 U.S.C. § 516. Furthermore, Congress prohibited the heads of all Executive and

24 military departments, unless expressly authorized by law or exempted under section 1037 of title

25 10, from employing an attorney or counsel for the "conduct of litigation in which the United

26 States, an agency, or employee thereof is a party, or is interested, or for the securing of evidence

27 therefor, but shall refer the matter to the Department of Justice." 5 U.S.C. § 3106. Most

28 important, the Attorney General of the United States was required to "supervise all litigation to

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al. v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1   which the United States, an agency, or officer thereof is a party" unless otherwise provided by

2   law. 28 U.S.C. § 519.

3       In contrast, when Congress provided for the Office of the Attorney General of Guam, it

4   did not reserve to the Attorney General supervision over the conduct of all litigation in which the

5   Government of Guam's agencies and officials were parties. Congress simply proclaimed the

6   Attorney General the Chief Legal Officer of the Government of Guam. In this regard, the Court

7   notes that in 1999, the succeeding Attorney General of Guam became the first Attorney General

8   to be designated Chief Legal Officer of the Government of Guam pursuant to the provisions of

9   the Organic Act. Yet that Attorney General's ability to supervise litigation in which the

10  government's agencies or officials were involved was subject to the Governor's removal

11  authority.

12      There is little legislative history behind Congress's intent in designating the Attorney

13  General as the Chief Legal Officer of the Government of Guam. It has been argued that the

14  current designation was patterned after the designation of another state attorney general. A

15  review of state constitutional provisions and statutes does reflect that in many jurisdictions the

16  attorney general has received the designation as chief legal officer for the respective state. State

17  courts, however, differ in their interpretations of the powers and duties of their attorneys general

18  especially as it relates to the representation of state agencies and officials. Some courts have

19  taken the position that their attorney general has exclusive right to represent agencies which are

20  involved in litigation.

21      The Organic Act does not contain express language which reserves to the Attorney

22  General of Guam or the Department of Law all litigation in which the Government of Guam or

23  any of its agencies or officers are involved. A further review of Guam's statutes reveals that

24  there is no specific legislation which requires the Attorney General to represent officials of the

25  Government of Guam when sued as defendants. The Court, however, recognizes that the power

26  and authority of the Attorney General to represent such agencies and individuals is presumed and

27  implied as contained within his Organic Act designation as Chief Legal Officer of the

28  ///

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al. v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1  Government of Guam. However, while the authority to represent government agencies and

2  officials is implied, it is not expressed.

3  **II.    The Roles of the Attorney General**

4        The Organic Act's designation of the Attorney General as Chief Legal Officer of the

5  Government of Guam appears to have adopted basic common law principles regarding the

6  Attorney General's primary role:  that of representing the interests of the government the attorney

7  general represents – in other words, the state interest or the public interest.  As chief legal officer

8  of the government, it is this interest that the attorney general must at all times represent.  In this

9  respect, it can be said that the attorney general's real client is the state he represents or the public

10  interest he represents.  It therefore necessarily embodies the principle that if the attorney general

11  finds his duties to the state and the public interest conflicting with his other duties, it is his duty

12  to represent the state and the public interest which is paramount.  In this role, the attorney

13  general's responsibility has generally been regarded as being the protector and guardian of the

14  public interest, *i.e.*, the state or government interest which he advocates.

15        In his role as guardian of the public interest and representative of the state and its

16  interests, the attorney general may bring suits against officials and agencies of the government.

17  See Moylan v. Camacho, Superior Court of Guam Special Proceeding No. SP230-03, Decision

18  and Order (November 10, 2003).  The Court notes that as advocate of the state government or the

19  public interest, the attorney general has generally not been restricted from prosecuting said

20  actions because of ethics considerations or the application of the rules of professional

21  responsibility to his office.

22        In addition to his role as representative of the state, the state's interest or the public

23  interest, the attorney general also has the dual role and responsibility of representing the

24  instrumentalities of that government, *i.e.*, the agencies and officials in matters in which the said

25  entities are involved as parties in any litigation.  While the Court has noted above that the

26  Organic Act does not expressly reserve to the Attorney General the representation of the

27  Government of Guam's agencies and officials in litigation in which they are involved, it is an

28  implied grant of authority.  In order to be the Chief Legal Officer of the Government of Guam,

Lourdes P. Aguon-Schulte v. Guam Election Commission, *et al.*, Civil Case No. 04-00045
Jay Merrill, etc., *et al.* v. Guam Election Commission, *et al.*, Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1   the Attorney General must necessarily be the primary legal counsel for its employees and

2   agencies. It is in this vein that this matter comes before the Court. As the Chief Legal Officer,

3   the Attorney General has appeared in this action as the legal representative of the Defendants.

4   The Defendants have also made entries of appearances but through separate counsel.

5        In light of the Defendants' conflicting legal representations, the Court must decide who

6   should represent the Defendants in the actions herein. Should the Court allow the Attorney

7   General to represent the Defendants to the exclusion of the other attorneys because he

8   exclusively represents the Governments's agencies and officials as Chief Legal Counsel? The

9   Court finds that in order to resolve this question, it must determine what role and responsibility

10  the Attorney General shoulders when undertaking the representation of the Defendants. The

11  parties offer differing positions.

12       The Attorney General argues that when he assumes the representation of the Defendants,

13  they speak through his voice, regardless of whether his voice represents their position or not.

14  This is so because he is the Chief Legal Officer of the Government of Guam, and this designation

15  prevents the Defendants from having any other attorney represent them other than the Attorney

16  General. The Attorney General justifies this position based upon the need and necessity for a

17  uniform litigation policy which can only be established by the Attorney General. The Attorney

18  General cites case law in various jurisdictions establishing the Attorney General's paramount

19  right to represent government agencies and officials to the exclusion of any other attorney.

20       The Guam Election Commission and Director Taitano argue that the Attorney General's

21  motions to strike should be denied because Guam law authorizes the Commission to have its

22  own attorney. Specifically, 2 GUAM CODE ANN. § 2103(b) authorizes the election board to retain

23  an attorney to advise the board and its executive director on all legal matters pertaining to the

24  Commission. Its attorney is also mandated to "represent the Commission in litigation in which

25  the Commission is interested or involved." The Defendants further argue that the Attorney

26  General's designation as Chief Legal Officer does not prevent the Guam Legislature from

27  allowing autonomous agencies to retain independent counsel. The election board is established

28  as an "autonomous instrumentality and an independent commission of the [G]overnment of

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al. v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1   Guam." 2 GUAM CODE ANN. § 2101. The Defendants cite the court to jurisdictions which have

2   allowed public agencies to employ independent counsel to protect its rights when not prohibited

3   by statute from doing so.

4        The Governor argues he has a right to appear in this litigation to object to the stipulated

5   preliminary injunction agreed to between the Attorney General and Plaintiffs. He emphasizes

6   that he is vested with the executive authority of the Government of Guam, and the Attorney

7   General cannot strip him of his executive authority and duties through the guise of a stipulation

8   for a preliminary injunction. The Governor further argues that once the Attorney General makes

9   a determination to represent him in these actions, the Attorney General must represent and serve

10  his client (the Governor) in the court litigation or, if he cannot do so, he must step aside and

11  allow the entry of independent counsel.

12       The Court has reviewed the decisions of other courts which have had to wrestle with the

13  situation similar to that presented here concerning the powers and duties of an attorney general to

14  represent state officials in civil actions. For instance, in Manchin v. Browning, 170 W. Va. 779,

15  296 S.E.2d 909 (1982), suit was brought against the secretary of state in his official capacity

16  challenging the state apportionment statute as unconstitutional. The matter was referred to the

17  attorney general, who was charged with defending suits against state officials. The secretary of

18  state agreed that the statute was unconstitutional, but the attorney general disagreed. The

19  attorney general attempted to take action that was contrary to the position of the secretary of

20  state. Because of the conflict in their respective positions, the secretary of state requested the

21  attorney general to appoint special counsel to represent him in the federal suit. The attorney

22  general refused, and the secretary of state sought relief before the West Virginia Supreme Court

23  of Appeals. The attorney general asserted that as the chief law officer of the state, he is "charged

24  with representing the public interest in any such litigation without interference from or the

25  approval of any other official." Id. at 783, 296 S.E.2d at 913. The court did not agree with the

26  attorney general's characterization of his powers and duties with respect to suits against state

27  officials. The court stated:

28  ///

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al. v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

The Attorney General ordinarily exercises complete control of litigation conducted in his name. When the Attorney General appears in a proceeding on behalf of the state in his name, he exercises his discretion as to the course and conduct of the litigation. He assumes the role of a litigant and he is entitled to represent what he perceives to be the interest of the state and the public at large.

However, the Attorney General's representation of the state as an entity and the discretion that accompanies such representations are limited and finite propositions. In some cases, ... the Attorney General is statutorily charged as an administrator of the law and appears in civil proceedings on his own motion as the agent and legal representative of the state and the citizens thereof. ...

The Attorney General performs quite a different function when he appears to defend a state officer [or instrumentality] ... sued in [their] official capacity. In this circumstance the Attorney General does not appear as a party to the action. That role is filled by the state officer [or instrumentality] against whom the suit is brought. Rather, the Attorney General's function is to act as legal advisor and agent of the ... litigant and to prosecute or defend, within the bounds of the law, the decision or policy of such officer [or instrumentality] which is called into question by such lawsuit.

A problem arises, however, when, as here, the policy advocated by the state officer [or instrumentality] conflicts with what the Attorney General perceives to be the interest of the state. The [Attorney General] asserts that when such a conflict arises, the Attorney General's duty to represent the interests of the state takes preeminence over the interests the state officer [or instrumentality] seek[ ] to advocate. After all, he argues, any suit brought against a state officer [or instrumentality] is, in effect, a suit against the state and the interest of the public must predominate.

We cannot agree with the Attorney General's characterization of his powers and duties with respect to suits against state officials. Ordinarily the state acts only through its officers and agents. ... [I]n the performance of their statutorily prescribed duties, some officers [or instrumentalities] ... are empowered to make good faith policy decisions which implement the laws they administer and comport with the requirements of our constitutions. ... When the official policies of a particular state officer or [instrumentality] are called into question in civil litigation, that officer [or instrumentality] is entitled to the same access to the courts and zealous and adequate representation by counsel to vindicate the public interest, as is the private citizen to vindicate his [or her] personal rights.

Id. at 788-89, 296 S.E.2d at 918-19 (citations omitted). The Manchin court further declared:

Since the Attorney General is designated as the statutory counsel for state officers sued in their official capacities, he is required by the Code of Professional Responsibility to make legal counsel available to those officers in such circumstances. The Attorney General is required to exercise his independent professional judgment on behalf of a state officer for whom he is bound to provide legal counsel. In this regard his duty to analyze and advise his clients as to the permissible alternative approaches to the conduct of the litigation. The Attorney General should inform his client of the different legal strategies and defenses available and of his professional opinion as to the practical effect and probability of the outcome of each alternative, so as to enable the officer to make an intelligent decision with respect to how the litigation could be conducted. He

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al. v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1   should then stand aside and allow his client to exercise his independent judgment
    on which course to pursue. We emphasize the importance of this independent

2   judgment because "advice of counsel" is not a defense to civil or criminal liability
    for nonfeasance, misfeasance or malfeasance in office. Once the state officer

3   whom the Attorney General represents has determined the course he desires the
    litigation to take, it is the duty of the Attorney General to zealously advocate the

4   public policy positions of his client in pleadings, in negotiations, and in the
    courtroom and to avoid even the appearance of impropriety by appearing to be in

5   conflict with the desires of his client.

6       In summary, the Attorney General's statutory authority to prosecute and
    defend all actions brought by or against any state officer simply provides such

7   officer with access to his legal services and does not authorize the Attorney
    General "to assert his vision of state interest." The Attorney General stands in a

8   traditional attorney-client relationship to a state officer he is required by statute to
    defend. His authority to manage and control litigation on behalf of a state officer

9   is limited to his professional discretion to organize legal arguments and to develop
    the case in the areas of practice and procedure so as to reflect and vindicate the

10  lawful public policy of the officer he represents. The Attorney General is not
    authorized in such circumstances to place himself in the position of a litigant so as

11  to represent his concept of the public interest, but he must defer to the decisions of
    the officer whom he represents concerning the merits and the conduct of the

12  litigation and advocate zealously those determinations in court.

13  Id. at 790-91, 296 S.E.2d at 920-21 (emphasis in original, internal citation omitted). The West

14  Virginia Supreme Court of Appeals further held that "[i]f, in the course of advising or counseling

15  a state officer involved in litigation, it becomes apparent that the Attorney General is unable to

16  adequately represent the officers as required by law or that such representation would create

17  professional conflicts or adversity, the Attorney General must appoint counsel to represent such

18  officer." Id. at 792, 296 S.E.2d at 922.

19      The Supreme Court of Hawaii also expressly approved and adopted the Manchin analysis.

20  See Chun v. Board of Trustees of Employees' Retirement Sys. of the State of Hawaii, 87 Haw.

21  152, 174, 952 P.2d 1215, 1237 (1998). In Chun, the retirement board refused to authorize an

22  appeal from a judgment entered in favor of the plaintiffs and against the board, but the state

23  attorney general filed an appeal on behalf of the board anyway. The Supreme Court of Hawaii

24  eventually dismissed the appeal and recognized that "the attorney general's professional

25  obligations as legal counsel to her statutory client – a public officer or instrumentality of the state

26  vested with policy-making authority – may clash with her vision of what is in the best global

27  interests of the state or the public at large." Id. at 170, 952 P.2d at 1233. When the Attorney

28  General's "paramount duty to represent the public interest cannot be discharged without conflict,

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al. v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1  [he] may consent to the employment of special counsel by a state agency or officer." Id. (quoting

2  D'Amico v. Board of Med. Exam'rs, 112 Cal. Rptr. 786, 800, 520 P.2d 10, 20 (1974).[6] Thus, the

3  Chun court stated that "[h]aving perceived [himself] to be in a conflict of interest with the Board,

4  the Attorney General was ethically obligated to recommend the retention of other counsel to

5  represent the Board and to take such other action as, in [his] opinion, the circumstances

6  required." Id. at 176, 952 P.2d 1239.

7  In another case, Tennessee ex rel. Comm'r of Transp. v. Medicine Bird Black Bear White

8  Eagle, 63 S.W.3d 734, (Tenn. Ct. App. 2001), the state attorney general had been disqualified

9  from simultaneously representing the Tennessee Department of Transportation and the Tennessee

10  Commission of Indian Affairs. The Court of Appeals of Tennessee eventually reversed the trial

11  court's ruling but stated the following with regard to the attorney general's ethical obligations:

12       By statute, the General Assembly has mandated a relationship akin to the
traditional attorney-client relationship between the Attorney General and the state
13  officials and agencies the Attorney General represents. Thus, the Attorney
General owes a duty of undivided loyalty to his or her clients and must exercise
14  the utmost good faith to protect their interests. The Attorney General must (1)
preserve client confidences to the extent public clients are permitted confidences,
15  (2) exercise independent judgment on his or her client's behalf, and (3) represent
his or her clients zealously within the bounds of the law.

16       Unlike the conflict-of-interest rules governing the conduct of lawyers
17  representing private clients, the Attorney General is not necessarily prohibited
from representing governmental clients whose interests may be adverse to each
18  other. The majority rule is that the Attorney General, through his or her assistants,
may represent adverse state agencies in intra-governmental disputes. This rule
19  applies, however, only when the Attorney General is not an actual party to the
litigation. When the Attorney General is an actual party to the litigation,

20

21

22      [6] The Supreme Court of Hawaii also recognized that because of the Attorney General's

23  various statutorily mandated roles, the Hawaii Code of Professional Responsibility ("HRPC")
could not be mechanically applied to the Attorney General's office. Chun, 87 Haw. at 173, 952
P.2d at 1236 (quoting Hawaii v. Klattenhoff, 71 Haw. 598, 602, 801 P.2d 548, 550-51 (1990).

24  Nevertheless, the court stated that the Attorney General's office was never relieved of all
obligations to conform its conduct to the HRPC, which was applicable to all attorneys licensed to

25  practice in the Hawaii courts. Id. at 174, 952 P.2d at 1237. Specifically, the court discussed
HRPC Rule 1.7 dealing with conflicts of interest and the comments to said rule which explained

26  that "loyalty to a client is . . . impaired when a lawyer cannot consider, recommend, or carry out

27  an appropriate course of action because of the lawyer's other responsibilities or interests." Id.

28  (quoting comment [4] to HRPC Rule 1.7). This rule is similar to Rule 1.7 of the Guam Rules of
Professional Conduct.

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al. v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand



1   independent counsel should be appointed for the state agency in order to remedy
2   the ethical impediment to the Attorney General's position as a party.

3   Id., 63 S.W.3d at 773 (citations omitted).

4       Again, the Court points out the Attorney General's position that only he is authorized to
5   represent the named Defendants and that the named Defendants have no voice. The Attorney
6   General contends that the Defendants' voice, if any, is what he decides is the government's legal
7   position or what he determines to be the governmental or public interest. The Court has alluded
8   above to the Attorney General's authority to sue government entities, agencies and officials on
9   behalf of the public interest. Such was the case in Moylan v. Camacho. Therein, the Attorney
10  General sued the Governor to compel the appointment of members to the Guam's Procurement
11  Board. In that case, the Governor retained the same firm representing him in these cases. The
12  Attorney General never moved to strike the appearances of the Governor's independently
13  retained counsel. A motion to strike was never made because it would have been a conflict of
14  interest for the Attorney General to sue the Governor and represent him at the same time.
15  Moylan v. Camacho thus stands for the proposition that independent counsel may be retained to
16  defend a government official in a case where the Attorney General has a conflict of interest.

17      In determining whether to strike the appearances of the defendants' independent
18  attorneys, the Court looks at the nature of the appearances and the reasons for it. In these
19  consolidated cases, the Plaintiffs have sued the Defendants to obtain an injunction declaring that
20  the Guam Election Commission violated the law by failing to mail ballot pamphlets which
21  contained the complete text of the Proposal A gambling initiative which was to be voted upon
22  during the November 2004 general election. The Court notes that prior to the Defendants filing
23  answers to the Complaints, the Attorney General filed a notice of removal of both cases to this
24  Court. At the same time that the Attorney General filed the removal, it submitted a "Stipulation
25  and Order for Preliminary Injunction." The stipulation provided:

26      1. With respect to the scheduled November 2, 2004 election on the Guam Casino
        Gaming Commission Act, otherwise known as Proposal A ("the Proposal A"), the
        Guam Election Commission and the Executive Director of the Guam Election
27      Commission failed to follow the relevant Guam election statutes and duly adopted
        Guam election rules governing the peoples' right to vote by initiative.
28

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al. v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1    Specifically, the failure to follow Guam law constituted a violation of vested
2    rights of the registered voters of Guam under the First and Fourteenth
     Amendments to the United States Constitution, and under the Organic Act, 48
     U.S.C. §§ 1421(b) and 1422(a).

3    2. The scheduled November 2, 2004 election on Proposal A is constitutionally,
4    organically and statutorily invalid as a result of their failure of the Guam Election
     Commission and the Executive Director of the Guam Election Commission to
5    follow all relevant Guam election statutes duly adopted election rules related to
     the peoples' right to vote by initiative.

6    3. Pending further order of this Court, the Guam Election Commission and the
7    Executive Director of the Guam Election Commission, their agents, employees
     and assigns, and all those acting in concert with them, are preliminarily enjoined
8    from counting, tabulating or certifying the results of any votes for or against
     Proposal A, and if that is not possible without affecting the other races for elected
9    office, from printing or in any manner reporting, disclosing or certifying the
     results of any votes for or against Proposal A, whether by absentee ballot or
10   otherwise, in connection with the scheduled November 2, 2004 election of
     Proposal A. This provision does not prevent defendants from moving for the
11   disclosure of the results of the vote on Proposal A, after the November 2, 2004
     election.

12

13   The filing of the proposed stipulation caused a flurry of filings of entries of appearances

14   by the then named defendants and objections to the proposed stipulation. *I Mina Bente Siete Na*

15   *Liheslaturan Guahan* (the 27th Guam Legislature) and the Governor filed appearances through

16   independent counsel on October 28th and the Guam Election Commission and Executive

17   Director Taitano subsequently filed their entries. The Defendants made appearances for the

18   purpose of opposing the execution of the proposed stipulation by this Court.

19   Had the Court executed and approved the proposed stipulation, this would have resulted

20   in (1) the scheduled November 2, 2004 vote on Proposal A being found to have constituted a

21   violation of the rights of the registered voters of Guam under the First and Fourteenth

22   Amendments of the United States Constitution and under the Organic Act; (2) the scheduled vote

23   on Proposal A being found by the Court to be unconstitutional, inorganic, and statutorily invalid

24   based upon the Election Commission and Executive Director Taitano's violation of Guam's laws

25   and rules relative to the people's right to vote by initiative; and (3) the Election Commission

26   would have been enjoined from tabulating the results of the votes on Proposal A on

27   November 2, 2004.

28   ///

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al. v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand



1   When the Attorney General entered his appearance on behalf of the Defendants, he did so

2   in his role as protector and guardian of the public and government's interest and representative of

3   the Government of Guam. He has come to Court – argued and advocated the legal position of

4   the Government of Guam and *his* views as protector and guardian of the public interest. *He has*

5   *not advocated and is not advocating the legal positions of the Defendants.* The Defendants

6   maintain and advise the Court that they have complied with Guam law relating to the people's

7   right to vote by initiative. Furthermore, they believe that the Proposal A vote on

8   November 2, 2004 was constitutional, organic and statutorily valid. The Court finds the

9   positions of the Attorney General and the Defendants to be directly in conflict.

10   The Defendants entered their appearances and sought only to have their voices heard and

11   their positions defended. Their voices will not be heard and their positions will not be defended

12   if the Court grants the Attorney General's motions to strike their attorneys' appearances. As the

13   Court has pointed out, in the Moylan v. Camacho case, the Attorney General never questioned

14   the ability of the Governor to procure independent counsel. He legally could not because the

15   matter involved a clear conflict and resulted in the representation of the Governor by independent

16   counsel.

17   Having entered his appearance as attorney for the Defendants, the Attorney General has a

18   duty to zealously represent the interests of these Defendants. This entails representing and

19   zealously defending their positions. The Attorney General, however, did not enter his

20   appearance for the purpose of advocating or defending the Defendants' positions. He entered his

21   appearance on behalf of these Defendants for the purpose of advocating the position of the

22   Government – what he believes is in the public interest and should be the legal position of the

23   Government. In essence, he has advocated the position of his primary client (the public and

24   governmental interest) and not those of his secondary clients (the respective Defendants). While

25   the Court does not deny that the Attorney General can advance and advocate the public and

26   governmental position, he cannot do so in the name of and at the expense of the Defendants in

27   this case, his secondary clients. In essence, the Attorney General, in substance, has appeared as

28   ///

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al., v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1  a separate party in this action even though he has not formally entered an appearance as a

2  separate party.

3      The Court thus finds and concludes that under the circumstances of these cases the

4  Attorney General has a conflict of interest. The Attorney General has chosen to exercise his dual

5  role as (1) representative of the government and protector of the public interest and (2)

6  representative and attorney for the Defendants. The Attorney General cannot represent both

7  interests because these interests directly conflict with each other. Moreover, the Attorney

8  General has confused the issue further by advocating the public and governmental interest in his

9  representation of the Defendants. This poses a direct conflict of interest. See Rule 1.7(a) of the

10  Guam Rules of Professional Conduct.[7] Under the authorities cited by the Court, once the

11  Attorney General decides to undertake the representation of an governmental agency and/or a

12  public official, he has a duty to zealously defend the positions advocated by the said agency or

13  official. If he is unable to do so, the Attorney General must allow the party to be represented by

14  independent counsel. Based upon the conflicts which are clearly apparent in these cases, the

15  Court finds there is a need for independent counsel to represent the Defendants. The Court

---

17  [7] This rule provides:

19  RULE 1.7: CONFLICT OF INTEREST: CURRENT CLIENTS

20  (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the
    representation involves a concurrent conflict of interest. A concurrent conflict of interest
    exists if:

22      (1) the representation of one client will be directly adverse to another client; or

23      (2) there is a significant risk that the representation of one or more clients will
    be materially limited by the lawyer's responsibilities to another client, a former
    client or a third person or by a personal interest of the lawyer.

25      Like other courts, this Court recognizes that the Guam Rules of Professional Conduct
    can not be mechanically applied to the Attorney General's office. Nevertheless, the
26  unique circumstances presented here clearly present a direct conflict of interest for the
    Attorney General. Additionally, the Court takes judicial notice of the fact that the
27  Attorney General's civil division is comprised of a small number of attorneys such that it
    would not be feasible for an assistant attorney general to represent the Defendants in this
28  dispute.

Lourdes P. Aguon-Schulte v. Guam Election Commission, *et al.*, Civil Case No. 04-00045
Jay Merrill, etc., *et al.* v. Guam Election Commission, *et al.*, Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1   comes to this conclusion based upon its finding that the Attorney General has opined and

2   concluded that the election board has violated the initiative law and that the Proposal A election

3   was unconstitutional, inorganic and statutorily invalid. The Defendants do not share these

4   positions and the Attorney General cannot defend these positions. The Court must therefore

5   deny the Attorney General's motions to strike the appearances of the attorneys for the

6   Defendants. In so doing, the Court notes that the more appropriate action would have been for

7   the Attorney General to intervene and join this action as a co-plaintiff, or the Attorney General

8   could maintain a new and separate suit against the Defendants rather than espousing the

9   government's position in the course of the representation of the Defendants.

10      The Guam Election Commission has asked the Court to decide the constitutional issue

11  which the Attorney General has advocated before the Court. The election board asks the Court to

12  find that Guam law authorizes the commission to retain its own attorneys to represent them in

13  this matter. It also asks this Court to affirm the recent opinion by the Supreme Court of Guam on

14  the same subject matter. The Court finds that it is not necessary to a decision of this case for this

15  Court to make a finding that the Election Commission has authority to retain its own attorneys to

16  represent the board in this case nor does such a finding resolve the representation issues before

17  the Court. Assuming, the constitutionality of the statute authorizing the *Board* to retain an

18  attorney to *advise* the board and its executive director on all legal matters pertaining to the

19  Commission, the statute does not authorize the board's counsel to represent *Executive Director*

20  *Taitano* in this litigation. The Court will decline ruling on that issue until it is necessary to do so

21  as federal courts generally avoid deciding constitutional issues if a case can be resolved on other

22  grounds. See Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 445, 108 S.

23  Ct. 1319, 1323 (1988) ("A fundamental and longstanding principle of judicial restraint requires

24  that courts avoid reaching constitutional questions in advance of the necessity of deciding

25  them.").

26  **III.   Motions to Remand Action to the Superior Court**

27      Having decided to recommend denial of the Attorney General's motions to strike the

28  appearances of counsel representing the Defendants, the Court must therefore also recommend

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al. v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1    that this matter be remanded to the Superior Court of Guam because the Defendants have not

2    consented to the removals. Unanimous consent to the removal by all defendants is a procedural

3    requirement under 28 U.S.C. § 1446 for federal question removal under Section 1441. The Ninth

4    Circuit has stated that "[o]rdinarily, under 28 U.S.C. § 1446(a), all defendants in a state action

5    must join in the petition for removal." Emrich v. Touche Ross & Co., 846 F.2d 1190, 1193 n.1

6    (9ᵗʰ Cir. 1988). "The failure to join all proper defendants in a removal petition may otherwise

7    render the removal petition procedurally defective." Id. See also Parrino v. FHP, Inc., 146 F.3d

8    699, 703 (9ᵗʰ cir. 1998), cert. denied, 119 S. Ct. 510 (1998); Hewitt v. City of Stanton, 789 F.2d

9    1230, 1232-33 (9ᵗʰ Cir. 1986). Because the Attorney General did not obtain the consent of the

10   Defendants when he removed this action, the removal of these cases from the Superior Court of

11   Guam to this Court was procedurally defective and improper.

12       The Court therefore recommends to the District Judge that the Attorney General's

13   motions to strike be denied and the Defendants' motion to remand be granted. The Court finds

14   the posture of the instant case to be the rare case. Normally, government entities and officials

15   appearing before the Courts will find representation in their respective litigations by the Attorney

16   General. This must be the case because the Attorney General is the Chief Legal Officer of the

17   Government of Guam. In exercising his powers of representation in cases similar to the one

18   before this Court, the Attorney General must decide whether he wishes to advocate the position

19   of (1) the government (the public interest) or (2) the government entity or official involved in the

20   litigation. If the Attorney General desires to advocate the public interest, he must determine

21   whether in the course of representing the public interest he will still be able to zealously advocate

22   and represent the interests and desires of the named government entity or official. If he is unable

23   to do so, or if he finds the agency or official's position to be in conflict with his position, the

24   Attorney General should allow the aggrieved agency or government official to be represented by

25   independent counsel.

26       The Court finds its recommendations and findings herein to be reasonable. Imposing a

27   duty upon the Attorney General to zealously represent the interests of the clients for which the

28   Attorney General has entered his appearance allows those clients to have a voice in the Court

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al., v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand



1   proceeding. It is crucial in cases similar to the one before the Court that a government agency

2   which maintains that it has not violated election initiative laws, even though the Attorney

3   General has concluded that it has, have the necessary representation to argue and defend that

4   position in the litigation. A failure by this Court to allow that defendant's voice to be heard is a

5   failure by the court's system of fairness and justice.

### CONCLUSION

7       Based on the Court's findings and recommendations, IT IS RECOMMENDED that the

8   Attorney General's motions to strike the appearances of the Defendants' private counsel be

9   denied and the Defendants' motions to remand these cases back to the Superior Court of Guam

10  be granted.

11      Dated this _16th_ day of March 2005.

13  _____
                    JOAQUIN V.E. MANISUBAN, JR.
14                      U.S. Magistrate Judge

### NOTICE

Failure to serve and file written objections to the Report's findings and
recommendations within ten (10) days from the date of its service shall bar
an aggrieved party from attacking such Report and Recommendations
before the assigned/designated District Judge. 28 U.S.C. § 636(b)(1).

Notice is hereby given that this document was
entered on the docket on _3/16/05_.
No separate notice of entry on the docket will
be issued by this Court.
          Mary L. M. Moran
    Clerk, District Court of Guam

By _____  _8/16/05_
    Deputy Clerk          Date



1

2 Douglas B. Moylan
Attorney General of Guam
3 Robert M. Weinberg
Assistant Attorney General
4 Civil Division
Guam Judicial Center, Suite 2-200E
5 120 West O'Brien Drive
Hagåtña, Guam 96910 • USA
6 (671) 475-3324 • (671) 472-2493 (Fax)

7 Attorneys for the Government of Guam

8 **IN THE DISTRICT COURT**
**FOR THE TERRITORY OF GUAM**

9

10 LOURDES P. AGUON-SCHULTE, )
)
11 Plaintiff, ) **Civil Case No. CIV04-00045**
) 
12 vs. ) (removed from the Superior Court of Guam
) Civil Case No. CV-1103-04)
13 THE GUAM ELECTION COMMISSION, )
14 et al. ) **STIPULATION AND ORDER FOR**
)
15 Defendants. ) **PRELIMINARY INJUNCTION**
)
16

17          COME NOW Plaintiff Lourdes P. Aguon-Schulte, through her attorneys Dooley Roberts

18 & Fowler LLP, by Thomas L. Roberts, Esq., and all of the Defendants named herein, represented

19 by their counsel, the Office of the Attorney General, Government of Guam, by Assistant

20 Attorney General Robert Weinberg, and hereby stipulate as follows:

21          1.     With respect to the scheduled November 2, 2004 election on the Guam Casino

22 Gaming Control Commission Act, otherwise known as Proposal A ("Proposal A"), the Guam

23 Election Commission and the Executive Director of the Guam Election Commission failed to

24 

25 follow the relevant Guam election statutes and duly adopted Guam election rules governing the



peoples' right to vote by initiative. Specifically, the failure to follow Guam law constituted a violation of vested rights of the registered voters of Guam under the First and Fourteenth Amendments to the United States Constitution, and under the Organic Act, 48 U.S.C. §§ 1421(b) and 1422(a).

2.    The scheduled November 2, 2004 election on Proposal A is constitutionally, organically and statutorily invalid as a result of the failure of the Guam Election Commission and the Executive Director of the Guam Election Commission to follow all relevant Guam election statutes and duly adopted election rules related to the peoples' right to vote by initiative.

3.    Pending further order of this Court, the Guam Election Commission and the Executive Director of the Guam Election Commission, their agents, employees and assigns, and all those acting in concert with them, are preliminarily enjoined from counting, tabulating or certifying the votes for or against Proposal A, and if that is not possible without affecting the other races for elected office, from printing or in any manner reporting, disclosing or certifying the results of any votes for or against Proposal A, whether by absentee ballot or otherwise, in connection with the scheduled November 2, 2004 election on Proposal A. This provision does not prevent defendants from moving for the disclosure of the results of the vote on Proposal A, after the November 2, 2004 election.

4. All further Proceedings in this case shall be held on the _____ day of _____, 2004 at the hour of _____ ____.m. to address Plaintiff's remaining claims for relief as well as any and all other issues the parties may wish to raise.

DOOLEY ROBERTS & FOWLER LLP

Dated: October 27, 2004

By: _____

**THOMAS L. ROBERTS**
Attorneys for Plaintiff Lourdes P. Aguon-Schulte

//

//

**DOUGLAS B. MOYLAN**
Attorney General of Guam

Dated: October 27, 2004

By: _____

**ROBERT M. WEINBERG**
Attorneys for Defendants the Guam Election Commission, Gerald A. Taitano, in his capacity as the Executive Director of the Guam Election Commission, I Mina' Bente Siete Na Liheslaturan Guahan (The 27th Guam Legislature); Felix P. Camacho, In His Official Capacity As The Governor Of Guam

SO ORDERED: this _____ day of _____, 2004.

**RECEIVED**

OCT 27 2004

DISTRICT COURT OF GUAM
HAGATNA, GUAM

_____
**HONORABLE ALEX R. MUNSON**
Judge, District Court of Guam

| | | |
|---|---|---|
| Courtesy copies: | Cesar Cabot, Esq. | |
| | For Guam Election Commission | |
| | Gerald Taitano | |
| | Shannon Taitano, Esq. | |
| | For Governor of Guam | |
| | Therese Terlaje', Esq. | |
| | Legislature of Guam | |
| | Joaquin C. Arriola, Jr., Esq. | |
| | For proposed Intervenor, Lina'La'Sin Casino | |



**1**

**2** Douglas B. Moylan
Attorney General of Guam
**3** Robert M. Weinberg
Assistant Attorney General
**4** Civil Division
Guam Judicial Center, Suite 2-200E
**5** 120 West O'Brien Drive
Hagåtña, Guam 96910 • USA
**6** (671) 475-3324 • (671) 472-2493 (Fax)

**7** Attorneys for the Government of Guam

**8** IN THE DISTRICT COURT
FOR THE TERRITORY OF GUAM
**9**

**10** JAY MERRILL, etc., et al.,　　　　)
　　　　　　　　　　　　　　　　)
**11** 　　　　　Plaintiff,　　　　　)　Civil Case No. CIV04-00046
　　　　　　　　　　　　　　　　)
**12** 　　　　　vs.　　　　　　　　)　(removed from the Superior Court of Guam
　　　　　　　　　　　　　　　　)　Civil Case No. CV-1111-04)
**13** THE GUAM ELECTION COMMISSION,　)
　et al.　　　　　　　　　　　　)
**14** 　　　　　　　　　　　　　　　)　STIPULATION AND ORDER FOR
**15** 　　　　　Defendants.　　　　　)　PRELIMINARY INJUNCTION
　　　　　　　　　　　　　　　　)
**16** _____)

**17** 　　　　COME NOW Plaintiff Lourdes P. Aguon-Schulte, through her attorneys Dooley Roberts

**18** & Fowler LLP, by Thomas L. Roberts, Esq., and all of the Defendants named herein, represented

**19** by their counsel, the Office of the Attorney General, Government of Guam, by Assistant

**20** Attorney General Robert Weinberg, and hereby stipulate as follows:

**21** 　　　　1.　　With respect to the scheduled November 2, 2004 election on the Guam Casino

**22** Gaming Control Commission Act, otherwise known as Proposal A ("Proposal A"), the Guam

**23** Election Commission and the Executive Director of the Guam Election Commission failed to

**24**

**25** follow the relevant Guam election statutes and duly adopted Guam election rules governing the

peoples' right to vote by initiative. Specifically, the failure to follow Guam law constituted a violation of vested rights of the registered voters of Guam under the First and Fourteenth Amendments to the United States Constitution, and under the Organic Act, 48 U.S.C. §§ 1421(b) and 1422(a).

2. The scheduled November 2, 2004 election on Proposal A is constitutionally, organically and statutorily invalid as a result of the failure of the Guam Election Commission and the Executive Director of the Guam Election Commission to follow all relevant Guam election statutes and duly adopted election rules related to the peoples' right to vote by initiative.

3. Pending further order of this Court, the Guam Election Commission and the Executive Director of the Guam Election Commission, their agents, employees and assigns, and all those acting in concert with them, are preliminarily enjoined from counting, tabulating or certifying the votes for or against Proposal A, and if that is not possible without affecting the other races for elected office, from printing or in any manner reporting, disclosing or certifying the results of any votes for or against Proposal A, whether by absentee ballot or otherwise, in connection with the scheduled November 2, 2004 election on Proposal A. This provision does not prevent defendants from moving for the disclosure of the results of the vote on Proposal A, after the November 2, 2004 election.

4.    All further Proceedings in this case shall be held on the _____ day of
_____, 2004 at the hour of _____ _____.m. to address Plaintiff's
remaining claims for relief as well as any and all other issues the parties may wish to raise.

DOOLEY ROBERTS & FOWLER LLP

Dated: October 27, 2004              By: _____
                                          **THOMAS L. ROBERTS**
                                          Attorneys for Plaintiff Lourdes P. Aguon-Schulte

//

//

DOUGLAS B. MOYLAN
Attorney General of Guam

Dated: October 27, 2004              By: _____
                                          ROBERT M. WEINBERG
                                          Attorneys for Defendants the Guam Election
                                          Commission, Gerald A. Taitano, in his capacity as
                                          the Executive Director of the Guam Election
                                          Commission, I Mina' Bente Siete Na Liheslaturan
                                          Guahan (The 27th Guam Legislature); Felix P.
                                          Camacho, In His Official Capacity As The Governor
                                          Of Guam

SO ORDERED: this _____ day of _____, 2004.

RECEIVED
OCT 27 2004
DISTRICT COURT OF GUAM
HAGATNA, GUAM

HONORABLE ALEX R. MUNSON
Judge, District Court of Guam

Page 3

| | |
|---|---|
| Courtesy copies: | Cesar Cabot, Esq. |
| | For Guam Election Commission |
| | Gerald Taitano |
| | Shannon Taitano, Esq. |
| | For Governor of Guam |
| | Therese Terlaje', Esq. |
| | Legislature of Guam |
| | Joaquin C. Arriola, Jr., Esq. |
| | For proposed Intervenor, Lina'La'Sin Casino |

# EXHIBIT 7

**FILED**

DISTRICT COURT OF GUAM

**MAY 10 2005**

**MARY L.M. MORAN**
**CLERK OF COURT**

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| LOURDES P. AGUON-SCHULTE, | CIVIL CASE NO. 04-00045 |
| Plaintiff, | (as removed from the Superior Court of Guam Civil Case No. CV-1103-04) |
| vs. | |
| THE GUAM ELECTION COMMISSION, GERALD A. TAITANO, in his official capacity as the Executive Director of the Guam Election Commission, I MINA' BENTE SIETE NA LIHESLATURAN GUAHAN (The 27th Guam Legislature) and FELIX P. CAMACHO, in his official capacity as the Governor of Guam, | |
| Defendants. | |
| JAY MERRILL, on his own behalf and on behalf of all other similarly situated voters desirous of casting a vote in favor of Proposal A at a fair and legal election, | CIVIL CASE NO. 04-00046 (as removed from the Superior Court of Guam Civil Case No. CV-1111-04) |
| Plaintiffs, | |
| vs. | |
| THE GUAM ELECTION COMMISSION, GERALD A. TAITANO, in his official capacity as the Executive Director of the Guam Election Commission, I MINA' BENTE SIETE NA LIHESLATURAN GUAHAN (The 27th Guam Legislature) and FELIX P. CAMACHO, in his official capacity as the Governor of Guam, | **ORDER** |
| Defendants. | |

This matter comes before the Court on Defendants' Motion to Remand and the Attorney



1  General's Motion to Strike Appearance by and Pleadings of Private Counsel. These motions
2  were referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and
3  General Order No. 04-00016 on December 12, 2004.[1]  Docket No. 63. The Magistrate Judge
4  reviewed the submissions and held oral argument on February 18, 2005. Thereafter the
5  Magistrate Judge filed his Findings and Recommendations on March 15, 2005. Docket No. 102.
6  On March 29, 2005 the Attorney General's filed objections to the Findings and
7  Recommendations. Docket No. 104.

8      The Attorney General states that the Magistrate Judge's recommendation and findings in
9  effect eviscerate the authority of the Attorney General with "respect to litigation decisions of
10 agencies and instrumentalities of the Government of Guam." See Docket No. 104, p.2. This
11 Court does not agree. The Magistrate Judge's analysis does not eviscerate the Attorney
12 General's authority as much as he seeks to define the balancing act required of the Attorney
13 General in representing the needs of public with those of elected officials and/or governmental
14 agencies. There are those instances, when the Attorney General may need to step aside and let
15 independent counsel represent elected officials and/or public agencies when the Attorney General
16 is also seeking to represent and protect the public's interests.

17     Under 28 U.S.C. § 636(b)(1)(C), the Court may accept, reject or modify in whole or in
18 part the Magistrate Judge's recommendation, but must make a *de novo* determination as to any
19 portion of the recommendation has been filed.  Having thoroughly considered the entire case and
20 relevant law, the Court hereby adopts the Magistrate's Findings and Recommendations in full.
21 Accordingly, the defendants' Motions to Remand is GRANTED and the Attorney General's
22 Motion to Strike the Appearances of the Private is DENIED. In addition all remaining motions
23 ///
24 ///
25 ///
26 ///
27
28

[1]At the time of the hearing there were several motions pending before the Magistrate Judge. He decided to
consider and rule on the two motions discussed herein first since a decision on those matters could obviate the need

pending are considered moot and will not be further considered by this Court.

SO ORDERED this _10_ day of May, 2005.

_David O. Carter_
District Judge David O. Carter
United States District Judge

Notice is hereby given that this document was
entered on the docket on MAY 1 0 2005
No separate notice of entry on the docket will
be issued by this Court.
        Mary L. M. Moran
        Clerk, District Court of Guam

By _____        MAY 1 0 2005
    Deputy Clerk              Date