SHANNON TAITANO, ESQ.
OFFICE OF THE GOVERNOR OF GUAM
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
Telephone: (671) 472-8931
Facsimile: (671) 477-4826

**RODNEY J. JACOB, ESQ.**
**DANIEL M. BENJAMIN, ESQ.**
**CALVO & CLARK, LLP**
Attorneys at Law
655 South Marine Corps Drive, Suite 202
Tamuning, Guam 96913
Telephone: (671) 646-9355
Facsimile: (671) 646-9403

Attorneys for *Felix P. Camacho, Governor of Guam*

FILED
DISTRICT COURT OF GUAM
OCT -3 2005
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, et. al., <br><br> Petitioners, <br><br> -v- <br><br> FELIX P. CAMACHO, etc., et. al. <br><br> Respondents. | CIVIL CASE NO. 04-00006 <br><br> **OBJECTIONS TO MAGISTRATE ORDER OF SEPTEMBER 19, 2005 REGARDING THE GOVERNOR'S MOTION TO DISQUALIFY THE ATTORNEY GENERAL** |

ORIGINAL

Pursuant to Fed. R. Civ. Proc. 72(a), the Governor of Guam, Felix P. Camacho (the "Governor"), hereby respectfully files these objections to the Magistrate Judge's September 19, 2005 Order ("Magistrate's Order") on the Governor's Motion to Disqualify the Attorney General.

## INTRODUCTION

This is a putative class action concerning the Guam Territorial Income Tax ("GTIT") and earned income tax credit ("EIC"). Until November 2004, the Attorney General represented the Governor and the Directors of the Department of Revenue & Taxation and Administration (the "Directors") in this case. That representation ended with the Governor's and Directors' appearance through independent counsel after the Attorney General advised them that continuing with the previous $60 million settlement of this case that he had negotiated exposed them to criminal misdemeanor liability, then refused to follow the Governor's instruction that he take no further actions in support of the settlement. Since then, the Attorney General not only has continued to appear adverse to his former clients, he has subpoenaed them, cross-examined them as hostile witnesses, and sought to defeat (in this action and a related action) his former clients' efforts to enter into a new settlement of this action.

Despite the existence of facts that would require the disqualification of an attorney in any other case, in denying the Governor's disqualification motion, the Magistrate Judge erroneously ruled the Attorney General should not be disqualified because he could continue to represent the "public interest" and because the rules of professional conduct should not be "mechanical[ly]" applied to attorney generals.

However, the Attorney General's status in this case is not as a representative of some nebulous "public interest" that he may define at will, but is rather as counsel for the government of Guam, a specific legal entity with specific legal interest. As has already been established in the Orders of February 9, March 2, and August 12, 2005 in this proceeding, the Governor under the

Organic Act of Guam (including 48 U.S.C. § 1421i(d)(2)) sets the government's GTIT policy. In appearing on behalf of the "government," the policy that the Attorney General must represent is the Governor's.

Moreover, even if this was a situation where there was a separate "public policy" interest, the Attorney General made a binding election once he chose to appear in this action as counsel for the Governor or Directors. It is not a "mechanical application" of the Rules of Professional Conduct to disqualify the Attorney General from appearing adverse to the Governor and Directors in an action once he already has represented them and has been privy to their confidential information. It is, rather, the absolute minimum necessary to ensure the integrity of the attorney-client relationship.

## FACTUAL BACKGROUND

### A. The Attorney General's Prior Representation of the Governor and Directors in this Matter

When this putative class action concerning the GTIT was first filed, the Attorney General appeared as counsel for the Governor and Directors of the Department of Revenue & Taxation and Administration (the "Directors"). (February 9, 2005 Order at 4.) In June 2004, a proposed settlement of this case was negotiated over a weekend while the Governor was off-island by the Attorney General and Acting Governor Moylan. (Decl. of Rodney J. Jacob, submitted concurrently herewith ("Jacob Decl."), at Exh. 1).

On October 13, 2004, in response to an inquiry from the Governor, the Attorney General advised the Governor and Directors that implementation of the settlement violated Guam's Illegal Expenditures Act, 5 G.C.A. § 22401. (Jacob Decl. Exh. 2). That Act makes it a criminal misdemeanor to continue with the implementation of a contract with knowledge that the contract violates the Act. See 5 G.C.A. § 22401.

In response, the Governor instructed the Attorney General—his counsel of record—to take no actions in furtherance of the settlement until the legality issues was resolved. (Jacob Decl. Exh. 3). As have been previously found, "disregard[ing] the Governor's wishes," the Attorney General nonetheless filed a further pleading regarding implementation of the settlement on November 8, 2004. (February 9, 2005 Order at 3). In that pleading, the Attorney General did not disclose to the Court that the Governor, the Attorney General's client, was concerned (based in part upon the Attorney General's own advice) that continued implementation of the settlement was in violation of a criminal misdemeanor statute. (Jacob Decl. Exh. 5). Instead, the Attorney General wrote only that the Governor was having "second thoughts." (*Id.*)

**B. After the Governor and Directors Procured New Counsel, the Attorney General Unsuccessfully Moved to Strike Their Appearances and Subpoenaed and Cross-Examined His Former Clients**

In response to the Attorney General's filing, the Governor and Directors filed appearances through new counsel and stated their objections to the settlement. (February 9, 2005 Order at 3). The Attorney General moved to strike these appearances. (*Id.*)

After a hearing was set on the motion to strike, the Attorney General subpoenaed his former clients, the Governor and Directors. (Jacob Decl. Exh. 6). Over vigorous objections, the Attorney General proceeded to cross-examine both Directors with regard to their prior representation by the Attorney General. (Jacob Decl. Exh. 7).

One of the two assistant Attorney Generals who conducted the cross-examination of the Directors was Stephen Cohen, Esq. (*Id.*) Mr. Cohen had previously personally represented the Governor's office and Directors in this case. (*E.g.* Jacob Decl. Exh. 4). During the course of the cross-examination, the Court found that the assistant Attorney Generals were treating their former clients as "hostile" witnesses. (Jacob Decl. Exh. 7 at 36-37).

On February 9, 2005, the Court denied the motion to strike and upheld the right of the Governor and Directors to independent counsel. (February 9, 2005 Order). It held that the Governor was charged with control over the administration and execution of the GTIT and had the right to independent counsel. (*Id.*)

On March 2, 2005, the Court denied a motion to reconsider the February 9, 2005 Order. (March 2, 2005 Order). On August 12, 2005, Chief District Court Judge Marshall of the Central District of California, sitting by designation in Guam, denied the Attorney General's challenge to the February 9, 2005 Order and March 2, 2005 Order. (August 12, 2005 Order).

C. **The Governor's Motion to Disqualify the Attorney General, and the Attorney General's Continued Adverse Actions in this and Related Matters**

In February 2005, the Governor moved to disqualify the Attorney General from this action. While that motion was pending, in May 2005, the Governor and Directors reached a binding term sheet to settle this action to which the Attorney General refused to agree. (Jacob Decl. Exh. 10).

Meanwhile, proceedings were continuing in a later-filed putative class action also concerning the EIC, the *Simpao* action.[1] As was found by the *Simpao* Court, the Attorney General failed in *Simpao* to inform the Court of the term sheet upon the Governor's request. (Jacob Decl. Exh. 13 at 3). Instead, the Attorney General sought to concede issues in a partial summary judgment motion contrary to previous communications with the Governor's counsel. (*Id.*) On September 12, 2005, the Governor was granted intervention in *Simpao* to protect his interests in that case. (*Id.* at 8).

Earlier, on June 20, 2005, the Governor and Directors had reached a new settlement of this action which the Attorney General has refused to execute. (Jacob Decl. Exh. 11).

---

[1] *Simpao, et al. v. Govt. of Guam*, Guam District Court Civil Case No. 04-00049.

Subsequently, in *Simpao*, the Attorney General attempted to concede the issue of class certification, notwithstanding an earlier motion for class certification in this proceeding that is part of the settlement of this proceeding. (Jacob Decl. Exh. 12). In *Simpao*, the Court has found that certification of the class that the Attorney General sought to concede would likely cause "interference and a possible collapse of the settlement" in this action. (Jacob Decl. Exh. 13 at 7).

On September 19, 2005 in this action, the Magistrate Judge issued his Order denying the motion to disqualify, to which the Governor now objects.

## ARGUMENT

### I. THE ATTORNEY GENERAL'S DISQUALIFICATION IS REQUIRED BY THE RULES OF PROFESSIONAL CONDUCT

The Guam Rules of Professional Conduct ("GRPC")[2] prohibit an attorney from representing a client where that representation will be directly adverse to another client or former client "in the same or substantially related matter." GRPC 1.7, 1.9. The Rules apply to the Attorney General by their express terms. Rule 1.11(d)(1) states that "a lawyer serving as a public officer or employer: (1) is subject to Rules 1.7 and 1.9." Comment 1 to Rule 1.11 emphasizes that a lawyer "currently serving as a public officer or employee is personally subject to the Rules of Professional Conduct, including the prohibition against concurrent conflicts of interest stated in Rule 1.7." Indeed, the District Court of Guam has held that the Rules of Professional Conduct apply to the Attorney of Guam, including in his representation of the Governor and other government entities. (*See* Jacob Decl. Exhs. 8 & 9).

Rules 1.7 and 1.9 require the Attorney General's disqualification from this case. The Attorney General seeks to pursue interests adverse to the Governor and Directors, clients he represented mere months ago in this ***same*** case, without any waivers. These are clients that the

---

[2] These Rules follow the ABA Model Rules.

Attorney General chose to represent—until his client requested he take no further actions to avoid possible violation of a criminal misdemeanor statute (based upon the Attorney General's own legal advice memorandum that identified that risk). Now it is uncontested that he is appearing directly adverse to them.

Courts have held an attorney general cannot appear adverse to a governor on lesser facts. For example, in *People ex rel. Deukmejian v. Brown*, 29 Cal. 3d 150 (1981), the Attorney General acted as attorney for the Governor and State Personnel Board when a suit was first brought against them concerning a personnel law, outlining various strategic responses. *Id.* at 154. However, soon thereafter, the Attorney General switched sides and instead filed a similar suit against the Governor. *Id.* The court stated: "The issue then becomes whether the Attorney General may represent clients one day, give them legal advice with regard to pending litigation, withdraw, and then sue the same clients the next day on a purported cause of action arising out of the identical controversy." *Id.* at 155.

The court held this could not occur: "We can find no constitutional, statutory, or ethical authority for such conduct by the Attorney General." *Id.* Such conduct, the Court held, was contrary to the ethical duties of the Attorney General, notwithstanding his duties to the "public interest." *Id.* at 155-57. The court found that the governor of California's executive power vested in him the power "to determine the public interest." *Deukmejian*, 29 Cal. 3d at 157-158. Thus, the attorney general could not serve the public interest without abiding by the governor's determination of the public interest. *Id*.

Similarly, here, under 48 U.S.C. § 1421i(d)(2) the Governor has "the ultimate and exclusive authority" to determine the public interest with respect to tax policy. (February 9, 2005 Order at 4; *see id.* at 6 ("the ultimate and exclusive authority to administer and enforce tax laws" resides solely with the Governor, who has "the same administrative and enforcement powers with

regard to the [GTIT] as the Secretary of Treasury and other United States officials of the executive branch") (citing 48 U.S.C. § 1421i(d)(2)). It is "the Governor, and not the Government of Guam or the Attorney General, [who] is mandated to administer and enforce the [tax] laws." (*Id.* at 7-8.)

## II. THE MAGISTRATE JUDGE'S ORDER IS CLEARLY ERRONEOUS AND CONTRARY TO LAW

The Magistrate's Order does not contest the existence of a conflict between the positions of the Governor and Attorney General in this litigation. However, holding that the Attorney General's "paramount duty is to represent the public interest," the Magistrate Judge held that the Attorney General accordingly could not be disqualified because the rules of professional conduct could not be "mechanical[ly]" applied and because he had to give meaning to the designation of the Attorney General as "chief legal officer" of the government of Guam. (Magistrate's Order at 4-5). In so ruling, the Magistrate Judge relied on two assumptions that are clearly erroneous and contrary to law.

***First***, the Attorney General's ability to represent the "public" or state interest is coterminous with his ability to represent the Governor's interest and position on issues of Guam taxes. The Organic Act of Guam states, in relevant part:

> The Governor or his delegate shall have the same administrative and enforcement powers and remedies with regard to the Guam Territorial income tax as the Secretary of the Treasury, and other United States officials of the executive branch, have with respect to the United States income tax.

48 U.S.C. § 1421i(d)(2). Thus, as the District Court has already held, the Attorney General is without any independent "authority to override the Governor's decisions which relate to the Guam Territorial Income Tax ("GTIT") laws." (August 12, 2005 Order at 4-5 (quoting February 9, 2004 Order at 6)). He cannot pursue a position with the "public interest in mind *as he perceives it.*" *Deukmejian*, 29 Cal. 3d at 159 (emphasis added). To hold otherwise would be to

allow the Attorney General to "supplant his decision for that of the Governor." (March 2, 2005 Order at 4). *See Chun v. Board of Trustees of Employees' Retirement System of State of Hawaii*, 952 P.2d 1215, 1234 (Haw. 1998) ("we do not accept the Attorney General's contention that, merely because she regards her duty to represent the 'state's' legal interests as being paramount to her duty to represent her statutory client's legal interests, she may, in her sole discretion, so control the course of litigation as to advance her view of the 'public welfare' when it squarely conflicts with the substantive position taken by the policy-making state governmental instrumentality whom she represents as a named party to the litigation.").

With due respect, the Magistrate's Order denying disqualification fails to distinguish between the different categories of "public" interest in which the "government" of a State or Territory may appear. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 601-02 (1982) (distinguishing various types of capacities in which States may appear in litigation). This is not a case involving a generalized "public" interest in which the Attorney General is appearing to protect rights collectively held by citizens of a state. *See id.* at 607 (discussing such cases). In appearing on behalf of the "Government," the Attorney General is appearing on behalf of a very distinct legal entity and interest. The entity is the government of Guam. The interest is the government's defense of a suit concerning the GTIT, which under 48 U.S.C. § 1421i(d)(2) can only be defined by the Governor. *Cf. Graddick v. Newman*, 453 U.S. 928, 934 (1981) (Alabama's attorney general could not seek a stay of a court order releasing prisoners where he did not show he had standing in light of a state statute vesting authority over the prison system in the Alabama Governor where that governor opposed that stay) (Powell, J.).[3]

---

[3] Although this originally was a one-justice order by Justice Powell denying a motion to stay, the Supreme Court as a whole later affirmed this result. There was a dissent by Justice Rehnquist, but it was as to whether Alabama's attorney general had clear standing to seek a stay with regard to the prison system. Nothing in Justice

***Second***, even if the Attorney General had some applicable "public interest" power in this case, that would not cure the conflict of interest prohibiting his appearance in this case. The Magistrate's Order relied upon the notion that rules of professional conduct cannot be "mechanically" applied to an attorney general. But there is a difference between mechanical application and no application at all. *Chun*, 952 P.2d 1215, 1236-37 ("We are aware that this court has recognized that, 'due to the [Attorney General's] statutorily mandated role[s] in our legal system, we cannot mechanically apply the [Hawai'i] Code of Professional Responsibility [ (HCPR) ] to the [Attorney General's] office . . . . We have never held, however, that the Attorney General is relieved of all obligations to conform her conduct to the HRPC, which are applicable to all lawyers licensed to practice in the courts of this state.") (brackets in original; citations and intervening paragraphs omitted); *Attorney Gen. v. Mich. Pub. Serv. Comm'n*, 625 N.W. 2d 16, 27 (Mich. 2000) ("we begin by acknowledging the unique status of the Attorney General as a constitutional officer of the state of Michigan and her concomitant statutory authority to represent the state as its chief legal counsel. However, in this capacity, the Attorney General is not immune from application of the rules of professional conduct."); *see Deukmejian*, 29 Cal. 3d at 157 ( "nothing . . . justif[ies] relaxation of the prevailing rules governing an attorney's right to assume a position adverse to his clients or former clients, particularly in litigation that arose during the period of the attorney-client relationship").

Yet, the implication of the Magistrate's Order is to completely remove the Attorney General from Rules 1.7 and 1.9: The Attorney General is wholly exempted from disqualification where he takes a position contrary to his former client in related (or here, the same) litigation. This is not a case where, at the outset, an attorney general chose to represent the "public interest" and never attempt to represent the government officials or to become privy to their confidences.

---

Rehnquist's dissent undermined the premise that if the Alabama attorney general lacked standing, then he could not

Nor is it a case where an attorney general is neutral, and simply is (through separately screened assistant attorney generals) providing legal services to two parts of a state government that are in disagreement.[4] This is a case where the Attorney General directly represented and counseled the Governor's office and Directors in an attorney-client relationship, and has since the termination of that representation appeared directly adverse to his former clients and sought to use information from that former representation against them.

Since his former clients' appearance through independent counsel, the Attorney General has subpoenaed his former clients, conducted an extremely hostile cross-examination with regard to his former representation, and taken actions in the related proceeding of *Simpao* to defeat his clients' rights to settle this case. *See* GRPC 1.9 (lawyer may not utilize confidential information against client in related or same proceeding); 1.2(a) (lawyer must abide by client's decision regarding settlement); *Hernandez v. Paicius*, 109 Cal. App. 4th 452, 467 (2003) ("The spectacle of an attorney skewering her own client on the witness stand . . . demeans the integrity of the legal profession and undermines confidence in the attorney-client relationship"); *Felix v. Balkin*, 49 F. Supp. 2d 260, 271 (S.D.N.Y. 1999) (same). Even if the rules of professional conduct are not mechanically applied, if this is not a case in which an attorney general has a disqualifying conflict, then it becomes difficult to hypothesize any case where they will be subject to the ethical limitations imposed by those rules.

And, although the Attorney General may not recognize it, his office would benefit as much from the correct application of the ethical rules as would the Governor and the other members of the Executive Branch who look to the Attorney General for counsel. So long as it

---

seek a stay. Instead, that was the basic premises that both justices accepted.

[4] These are only examples provided to illustrate more difficult potential scenarios. Whether either of the scenarios is lawful in Guam is not a question presented by these proceedings. It may be that Guam's laws and ethical

remains a possibility that, halfway through a representation, the Attorney General may decide he has a "public policy" disagreement and needs to appear adverse to his clients, those clients will never be able to freely communicate with the Attorney General. They will never know if something they tell the Attorney General in confidence one day might not be used to skewer them under cross-examination by the Attorney General the next. There would be no sanctity to the attorney-client relationship, and therefore the Attorney General's "clients," in all likelihood, will not be able to feel safe in informing the Attorney General of information he needs to know to carry out his duties.[5]

Lastly, the need for the Attorney General's disqualification is particularly great in light of the proposed June 20, 2005 settlement here. If left unchecked, the Attorney General will continue to obstruct the settlement (as he has already tried). The prejudice to the Governor and to his right to set tax policy is extreme and acute; he respectfully asks that the Court set-aside or modify the Magistrate Judge's Order for these and all other grounds stated herein.

DATED this 3rd day of October, 2005.

OFFICE OF THE GOVERNOR OF GUAM
CALVO & CLARK, LLP
Attorneys for Defendant Felix P. Camacho,
Governor of Guam

By: _____
RODNEY J. JACOB

---

rules, and the practicalities caused by the small size of its Attorney General's office, make either or both scenarios improper here as well.

[5] The Governor further respectfully objects to the Magistrate Judge's characterization of him having "switched sides" by opposing the earlier June 2004 settlement. (Magistrate Order at 3). The Governor opposed the settlement after the Attorney General's office stated it was illegal and that continued implementation could be a criminal misdemeanor. The Attorney General, who owed the Governor a duty of loyalty, should have faithfully represented the Governor's position not to engage in potentially criminal activity. See GRCP 1.2(a) (client defines objectives of representation and lawyer shall abide by client's decision on settlement). Indeed, in the February 9, 2005 Order, the Court had previously found the Attorney General's actions had "sparked" the Governor's appearance through independent counsel. (February 9, 2005 Order at 3).