

Office of the Attorney General
Douglas B. Moylan
Attorney General of Guam
The Justice Building
287 West O'Brien Drive
Hagåtña, Guam 96910 ● USA
(671) 475-3324 ● (671) 472-2493 (Fax)
www.guamattorneygeneral.com ● guamattorneygeneral@hotmail.com

**Attorneys for the People of Guam (Government of Guam)**

# IN THE DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

| | | |
|---|---|---|
| JULIE BABAUTA SANTOS, individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FELIX P. CAMACHO, Governor of Guam; ART ILAGAN, Director of Department of Revenue & Taxation; LOURDES M. PEREZ, Director of Department of Administration; and GOVERNMENT OF GUAM,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Case No. 04-00006<br><br><br><br>**GOVERNMENT OF GUAM'S SUBMISSION IN RE: COURT'S OCTOBER 13, 2005 ORDER** |

The Organic Act of Guam (48 U.S.C. 1421 *et seq.*) functions as Guam's constitution. *Haeuser v. Department of Law, Government of Guam,* 97 F.3d 1152, 1156 (9th Cir. 1996). Therein, the United States Congress imposed the Internal Revenue Code ("IRC") as the Guam Territorial Income Tax ("GTIT"). Its provisions, like those of the Organic Act itself, are binding. 48 U.S.C. §§ 1421i(a) & (d)(1).

The Organic Act places the responsibility for the administration and enforcement of the GTIT with the Governor of Guam, who has the same powers to administer and enforce the

Page 1
*Government of Guam's Submission in RE: October 13, 2005 Order*
District Court of Guam Civil Case Number 04-00006

Case 1:04-cv-00006    Document 260    Filed 10/28/2005    Page 1 of 32

GTIT as do Federal tax officials with respect to the Federal tax. 48 U.S.C. §§1421i(c) & (d)(2). Congress' intent in so empowering the Governor is made clear by the Congressional history to the 1958 amendments to the Organic Act. The GTIT provides a regimen under (IRC) § 7122, by which a tax dispute may be settled or compromised. Section 7122 provides that the Governor may settle a tax dispute prior to a taxpayer filing a lawsuit; *however*, once a lawsuit is filed and litigation commenced before the courts, the settlement authority shifts to the Attorney General who then holds this power exclusively. Before 1998, the Governor was able to exercise *de facto* control over both tax disputes and tax lawsuits because the Governor appointed and could remove the Attorney General. In 1998 and 1999, *however*, reacting to a perception of gubernatorial political interference with the appointed Attorney General, Congress amended the Organic Act to allow the people of Guam to elect the Attorney General. 48 U.S.C. § 1421g(d)(1) and 5 G.C.A. § 30101. In 2002, the position of Attorney General was elected to office and now exercises the duties of this office (including settlement authority of tax refund suits) independent of the Governor, by will of Congress, the Legislature of Guam and the People of Guam.

## I. Congress' Intended to Create an Attorney General Imbued with Common Law Authority as the Singular Chief Legal Officer.

Pending before the Court are the Governor's objections to the Magistrate Judge's Order of September 19, 2005 regarding the Governor's Motion to Disqualify the Attorney General. Also pending is a request from all parties, *except* the Attorney General seeking instruction on how to proceed with a settlement that does not include the Attorney General.

Previously, the Court had ruled that (1) despite the fact that under the Organic Act the only proper defendant in a lawsuit seeking recovery of taxes is the "Government of Guam" and (2) despite the fact that under the Organic Act of Guam, the Attorney General of Guam is the "*Chief Legal Officer*" of the "Government of Guam;" that the Governor of Guam, who is charged with the

Page 2
*Government of Guam's Submission in RE: October 13, 2005 Order*
District Court of Guam Civil Case Number 04-00006

Case 1:04-cv-00006   Document 260   Filed 10/28/2005   Page 2 of 32

administration and enforcement of the Guam Territorial Income Tax is entitled to be heard through separate counsel.

Having obtained authorization to be represented by private counsel the Governor now seeks to disqualify the Attorney General altogether from representing the "Government of Guam." The Governor further seeks to settle this putative class action with counsel for the plaintiffs, without the Government of Guam. On October 13, 2005, the Court requested further briefing on the question."

On August 12, 2005, the Court issued an Order agreeing with the Magistrate Judge's earlier Recommendations and Findings that the Governor have input in this action and have counsel of his choosing. See Order August 12, 2005 (Docket No. 232). But the Governor's right to have "input" through separate counsel does *not* answer the inquiry presented here.[1]

Not content with having his own voice, the Governor sought to silence the Attorney General altogether and settle the case without the Attorney General and the Government of Guam. The Attorney General asked the Court to certify this question to the Ninth Circuit however the Court stated that the issue presented a "collateral matter". This issue is extremely material to the advancement of this litigation because without the concurrence of the Chief Legal Officer for the "Government of Guam," there is no settlement, and the Governor and plaintiff cannot obtain preliminary approval of a document that is not signed by counsel for the only proper defendant in this case, the "Government of Guam." Moreover, as time passes, the government of Guam continues to be exposed to statutory interest liability that is compounded

---

[1] *Cf. Ex parte Weaver*, 570 So.2d 675, 684 (1990) (Alabama Attorney General "has the power to manage and control all litigation on behalf of the State" and "is authorized to direct course of all litigation involving the State and its agencies" over objections of named defendant Commissioner of Insurance, but Governor may intervene to express contrary views).

Page 3
*Government of Guam's Submission in RE: October 13, 2005 Order*
District Court of Guam Civil Case Number 04-00006

Case 1:04-cv-00006   Document 260   Filed 10/28/2005   Page 3 of 32

daily and will increase the total liability of the government of Guam by millions of dollars as time passes. The estimated liability is now in the area of 237 million dollars.[2]

The tax laws on Guam mirror the federal law. *See* 48 U.S.C. § 1421i(a). And 48 U.S.C. § 1421i(e) of the Organic Act expressly substitutes the term "Guam" for "United States" in the Revenue Code.[3] Construing the Organic Act together with 26 U.S.C. § 7422(f) of the Internal Revenue Code, discussed below, and substituting the term "Guam" for "United States," as provided in 48 U.S.C. § 1421i(e), federal law is clear that suits for tax refunds are to be maintained only against the Government of Guam, and not any officer or employee thereof. 26 U.S.C. § 7422(f). The Court shall substitute the United States as a party for such officer or employee as of the time such action commenced. Id.

Federal law could not be more clear. Not only is the "Government of Guam" the *only* proper defendant in this action, but that the Governor and Directors of Revenue & Taxation and Administration have been misjoined in this action. They should never have been made parties to begin with, and should be dismissed.[4] That alone should answer the question posed by the Court. But there is more.

---

[2] In earlier discussions with Department of Revenue and Taxation, the yearly estimated liability was 20 million per tax year. The number of years now involved in the various suits include, 1995, 1996, 1998, 1999, 2000, 2001, 2002, 2003, and 2004, a total of nine (9) years. Nine tax years times twenty million dollars produces a total principal sum of 180 million dollars. Assuming interest at six percent per annum, the interest accrued will have exceeded 57 million.

[3] "Substitution of Terms. In applying as the Guam Territorial Income Tax the income tax laws in force in Guam pursuant to subsection (a) of this section, except where it is manifestly otherwise required, the applicable provisions of the Internal Revenue Codes of 1954 and 1939, shall be read so as to substitute 'Guam' for 'United States', 'Governor or his delegate' for 'Secretary or his delegate', 'Governor or his delegate' for 'Commissioner of Internal Revenue' and 'Collector of Internal Revenue', 'District Court of Guam' for 'district court' and with other changes in nomenclature and other language, including the omission of inapplicable language, where necessary to effect the intent of this section." 48 U.S.C. § 1421i(e).

[4] "Parties may be dropped or added by order of the court on motion of any party *or of its own initiative* at any stage of the action and on such terms as are just." F.RCiv.P. 21 (emphasis added).

Page 4
*Government of Guam's Submission in RE: October 13, 2005 Order*
District Court of Guam Civil Case Number 04-00006

Case 1:04-cv-00006    Document 260    Filed 10/28/2005    Page 4 of 32

1    Congress has spoken. Pursuant to 48 U.S.C. § 1421g(d)(1), the Attorney General

2    represents the "Government of Guam."

3    The Legislature of Guam too has spoken: "Notwithstanding any other provision of law,

4    **the Attorney General shall have cognizance of all legal matters**, excluding the Legislative

5    and Judicial Branches of the government of Guam, **involving the Executive Branch of the**

6    **government of Guam**, its agencies, instrumentalities, public corporations, ...." 5 G.C.A. §

7    30102. Title 5 G.C.A. § 30109(c) expressly provides that the Attorney General shall "by

8    himself, a deputy or assistant ... [c]onduct on behalf of the government of Guam all civil

9    actions in which the government is an interested party; provided that those branches,

10   departments or agencies which are authorized to employ their own legal counsel may use them

11   instead of the Attorney General."

12

13   And 5 G.C.A. § 30103 provides:

14        The Attorney General shall have, in addition to the powers expressly conferred
          upon him by this Chapter, those common law powers which include, but are not limited
15        to, the right to bring suit to challenge laws which he believes to be unconstitutional and
          to bring action on behalf of the Territory representing the citizens as a whole for redress
16        of grievances which the citizens individually cannot achieve, unless expressly limited by
          any law of Guam to the contrary.
17

18   Only recently has the Department of Revenue & Taxation been authorized to employ its

19   own attorney by local law. Chapter II, Part V, Section 3(e), of P.L. 28-68, signed into law by the

20   Governor on September 30, 2005, provides:

21        Revenue & Taxation Attorney (1) Authorization. A new Item (d) is added to §1106 of
          Chapter 11, Division 1 of the Guam Code Annotated as follow; [sic] (d) The Director
22        may appoint an attorney within the merit system, who shall serve at his pleasure and
          whose compensation shall be consistent with the local laws governing attorney's salaries.
23        The Director may appoint one assistant attorney. The Attorneys, who must have been
          admitted to the practice of law in Guam, shall advise the Director on all legal matters to
24        which the Department is a party or in which the Department is legally interested.

25

Page 5
*Government of Guam's Submission in RE: October 13, 2005 Order*
District Court of Guam Civil Case Number 04-00006

Case 1:04-cv-00006    Document 260    Filed 10/28/2005    Page 5 of 32

That the Director of Revenue and Taxation may now have his own in-house attorney(s) *to advise*, does not mean the Director assumes control of litigation, or can settle litigation against the "Government of Guam" without the Attorney General. That would fly in the face of the Organic Act which provides that the Attorney General is the Government of Guam's *Chief Legal Officer*. While the Commissioner of IRS and Secretary of Treasury have their own counsel, these circumstances do not mean that either or both of them may displace the U.S. Attorney General's/Department Of Justice's[5] control of litigation decisions.

While some divisions of the government of Guam may, under statutory authority, hire independent counsel, all must ultimately report to the Attorney General, the only person authorized by Congress to establish a coherent legal policy for the Government of Guam and authorized by federal and local law to decide litigation matters for the "Government of Guam" as a whole. In the federal system which Guam is required to mirror, it is not the Chief Counsel of the IRS, or the Treasury, but the Justice Department, that is expressly assigned the duties of prosecution and defense in all courts, other than the U.S. Tax Court, of all civil suits arising under the internal revenue laws. Consider the division of labor and the rationale expressed:

The following functions are assigned to and shall be conducted, handled, or supervised by, the Assistant Attorney General, Tax Division:

(a) Prosecution and defense in all courts, other than the [U.S.] Tax Court, of civil suits, and the handling of other matters, arising under the internal revenue laws, and litigation resulting from the taxing provisions of other Federal statutes (except civil forfeiture and civil penalty matters arising under laws relating to liquor, narcotics, gambling, and firearms assigned to the Criminal Division by Sec. 0.55(d)).

28 C.F.R. 0.70.

---

[5] On Guam, the functional equivalent are the Attorney General and Department of Law.

Page 6
*Government of Guam's Submission in RE: October 13, 2005 Order*
District Court of Guam Civil Case Number 04-00006

Case 1:04-cv-00006    Document 260    Filed 10/28/2005    Page 6 of 32

There are sound reasons for this division of labor, between the role of *advising* the Revenue Commissioner on day-to-day affairs versus the Attorney General's role in exercising global control of litigation that may affect more than one department or agency. Aside from establishing a coherent legal policy, the Justice Department is likely to be far more objective in assessing the merits of any particular claim.

Tax Division attorneys [of the U.S. Justice Department] are primarily trial lawyers, and their primary interest is litigation rather than taxes. Therefore, their approach to a case is likely to be the traditional one of the advocate: What are the chances of success in court? Moreover, neither they nor their agency has passed upon the case prior to litigation. A taxpayer who desires a compromise but has reached a stalemate at the administrative level may have more luck at settling the case with the Tax Division [of the U.S. Justice Department] *in a refund suit* than with the District Counsel and the Appeals Division of the [Internal Revenue] Service in a Tax Court case. Garbis, Junghans and Struntz, *Federal Tax Litigation, Civil Practice and Procedure*, § 2.02[2] (Warren, Gorham & Lamont, Inc. 1985) (emphasis added).

In light of Congress' and the Guam Legislature's express provision that the Attorney General, the Chief Legal Officer of Guam, has "cognizance of all legal matters ... involving the Executive Branch of the government of Guam," and that the "Government of Guam" is the only proper party to this action – the question is whether the Attorney General's common law powers, recognized and codified in 5 G.C.A. § 30103, grant him the authority to represent and control litigation on behalf of the "Government of Guam," including final settlement authority in this case over the objection of the Governor. The answer is obviously, "yes."

The admirable, Solomon-like efforts to reconcile competing legal strategies between the government's officers and its Chief Legal Counsel has created a problem of a unitary

Page 7
*Government of Guam's Submission in RE: October 13, 2005 Order*
District Court of Guam Civil Case Number 04-00006

Case 1:04-cv-00006    Document 260    Filed 10/28/2005    Page 7 of 32

government of Guam. This is not unique though throughout the states of the United States. Individually named officials, are but component parts of that unitary government, like fingers on a hand. The problem of "legal schizophrenia" arises from the possibility of multiple varied official positions from different official personalities throughout the singular government, each espousing their own particular view of what the government's legal position should be. This problem is precisely the Pandora's box of evil that Congress intended to prevent when it established the Office of Attorney General in the Organic Act as the Chief Legal Officer of Guam vested with the sole authority to determine the legal positions of the government of Guam. This is why in litigation the singular consistent views of the Attorney General designed to establish a consistent coherent legal policy for the Government of Guam are final, even though the Attorney General's views may conflict with those of another appointed or elected officer, up to and including the Governor. The fact the Attorney General is directly chosen and accountable to the People of Guam the increases significance that the Attorney General be independent of the control of any other official.

In this and other cases,[6] the court simply could not accept the idea that individual government officials sued in their official capacity are not automatically entitled to espouse their own views contrary to the legal policy decisions of the Attorney General, or that the Attorney General's decisions that are contrary to the desires of those officers ultimately control on behalf of the Government of Guam (People of Guam). But this is not a novel concept,[7]

---

[6] A court may take judicial notice of court records in another case. *See, Kourtis v. Cameron*, 419 F.3d 989, 995 n.3 (9th Cir. 2005).

[7] In *Wade v. Mississippi Cooperative Extension Service*, 392 F.Supp. 229, 234 (N.D. Miss. 1975) the District Court granted a motion to strike any references in briefs submitted by private counsel purportedly filed on behalf of members of a government board in their official capacities. The Court held, "it is easily perceptible that even if the foregoing statute purports to give [a party] authority to retain private legal counsel as professional advisors, no

Page 8
*Government of Guam's Submission in RE: October 13, 2005 Order*
District Court of Guam Civil Case Number 04-00006

Case 1:04-cv-00006    Document 260    Filed 10/28/2005    Page 8 of 32

although it may be new to Guam. Many jurisdictions, particularly those in which the powers and duties of the Attorney General are not exclusively defined by statute, it is the views of the Attorney General that prevail when a conflict arises between his views and those of the agency officers whom the Office of Attorney General represents.

The Attorney General's responsibility is not limited to serving or representing the particular interests of State agencies, including opposing State agencies, but embraces serving or representing the broader interests of the State. This responsibility will occasionally, if not

---

statutory enactment can override the well-established constitutional authority of the Attorney General in this area of strong State concern." See also *See Battle v. Anderson*, 708 F.2d 1523, 1529 (10th Cir. 1983) (the views of the Oklahoma Attorney General in litigation "must prevail" over the views of the legal counsel for any particular state defendant); *Prisco v State of New York*, 804 F.Supp. 518, 520 (S.D.N.Y. 1992) (Attorney General is authorized to represent individual state officers who are sued in their official capacities, despite claimed conflicts of interest); *Slezak v. Ousdigian*, 110 N.W.2d 1, 5 (1961) (Attorney General must do more than espouse individual views of state officials represented); *Ex parte Weaver*, 570 So. 2d 675, 684 (Ala. 1990) (authorizing the Governor to intervene and be heard when his views conflict with the Attorney General, but upholding the Attorney General's authority to dismiss state insurance department proceedings over objection of state insurance commissioner); *State ex rel. Derryberry v. Kerr-McGee Corp.*, 516 P.2d 813, 821 (Okla. 1973) (upholding authority of Attorney General to settle pending litigation). Congress intended that one official alone would be responsible for establishing a coherent legal policy for the Government of Guam in the courts. The Attorney General has the exclusive and absolute discretion to set that legal policy and to control all aspects of litigation for and against the Territory, its agencies, instrumentalities and officials. *See Ex parte Weaver*, 570 So.2d 675, 677 (Ala. 1990) ("As the state's chief legal officer, 'the attorney general has power, both under common law and by statute to make any disposition of the state's litigation that he deems for its best interest. ... He may abandon, discontinue, dismiss, *or compromise it*'") (emphasis added); *Feeney v. Commonwealth*, 366 N.E. 2d 1262, 1267 (Mass. 1977) upholding authority of Attorney General to prosecute appeal in the U.S. Supreme Court over express objections of state officials); *Slezak v. Ousdigian*, 110 N.W.2d 1, 5 (Minn. 1961) (stating that "the courts will not control the discretionary power of the attorney general in conducting litigation for the state"); *State ex rel. Igoe v. Bradford*, 611 S.W.2d 343, 347 (Mo. Ct. App. 1980) ("It is for the attorney general to decide where and how to litigate these issues involving public rights and duties and to prevent injury to the public welfare"); *Public Defender Agency v. Superior Court*, 534 P.2d 947, 950 (Alaska 1975) (Attorney General possesses "power to make any disposition of the state's litigation which he thinks best"); *State ex rel. Board of Transportation v. Fremont, E. & M.V.R. Co.*, 35 N.W. 118, 120 (Neb. 1887) (recognizing that Attorney General controls litigation and other state officials "cannot control his actions"); *Perillo v. Dreher*, 314 A.2d 74, 79 (N.J. Super. Ct. App. Div. 1974) (recognizing that Attorney General has "the exclusive power to control all litigation to which the State is a party"); *Opinion of the Justices*, 373 A.2d 647, 649 (N.H. 1977) (Attorney General has "broad authority to manage the state's litigation and to make any disposition of a case which he deems is in the state's best interest"); *Michigan State Chiropractic Ass'n v. Kelley*, 262 N.W.2d 676, 677 (Mich. App. 1977) (Attorney General "has statutory and common law authority to act on behalf of the people of the State of Michigan in any cause or matter, such authority being liberally construed"). There is but one attorney authorized to represent the "Government of Guam," in this litigation, because there is only one "Chief Legal Officer for the Government of Guam" authorized by the Organic Act.

Page 9
*Government of Guam's Submission in RE: October 13, 2005 Order*
District Court of Guam Civil Case Number 04-00006

Case 1:04-cv-00006    Document 260    Filed 10/28/2005    Page 9 of 32

1   frequently, include instances where State agencies are the opposing parties. It seems to us that

2   if the Attorney General is to have the unqualified role of chief legal officer of the State, he or

3   she must be able to direct the legal affairs of the State and its agencies. Only in this way will

4   the Attorney General properly serve the State and the public interest. To allow the numerous

5   State agencies the liberty to employ private counsel without the approval of the Attorney

6   General would be to invite chaos into the area of legal representation of the State.

7   *Environmental Protection Agency v Pollution Control Bd.*, 69 Ill.2d 394, 401-02, 372 N.E.2d

8   50, 53 (Ill. 1977). The Attorney General is the democratic choice of the People of Guam. In

9   *Environmental Protection Agency*, the court determined that a centralized legal advisory system

10  flowed from the phrase "chief legal officer," and this particular system benefited the

11  government. The benefits from centralization include, *inter alia*, the fact that centralization is

12  more efficient, and provides for a coherent legal policy throughout government. *Id.* 69 Ill.2d at

13  399, 400, 372 N.E.2d 51, 52.

14  ## II. The Government of Guam is Represented by the Attorney General.

15      Section 1421g of the Organic Act was amended in 1998 to allow for an elected Attorney

16  General. Congress did so to cure the perceived ills of an Attorney General controlled by the

17  Island's executive. "Guam's Attorney General is currently appointed by the Governor of Guam

18  with the advice and consent of the Guam Legislature. The appointment of the Attorney General

19  is to a four year term or until the end of the term of the appointing Governor, whichever is

20  sooner. The Governor may remove the Attorney General for cause. Controversies have arisen

21  in the past because of the appointment nature of the position of Attorney General. Public

22  concerns revolve around political interference with investigations, inefficiency of case work and

23  dismissal of the Attorney General without cause." H.R. Rep. No. 742, 105th Cong., 2nd Sess., at

24  2-3 (1998). As a result of the amendment, the Attorney General of Guam is now confirmed as

25  "the Chief Legal Officer of the Government of Guam" (48 USC §1421g), insulated from the

Page 10
*Government of Guam's Submission in RE: October 13, 2005 Order*
District Court of Guam Civil Case Number 04-00006

Case 1:04-cv-00006   Document 260   Filed 10/28/2005   Page 10 of 32

pressure of gubernatorial interference. *A.B. Won Pat Guam Intern. Airport Authority ex rel. Board of Directors v. Moylan,* 2005 Guam 5 (2005 WL 219577). In interpreting the powers of the Attorney General, the Guam Supreme Court held, "that the Attorney General, as Chief Legal Officer, is charged with all the powers and duties pertaining to the office at common law, except insofar as they have been expressly restricted or modified by statute." *Id.,* at 25. Guam Statute specifically directs the Attorney General to "conduct on behalf of the government of Guam all civil actions in which the government is an interested party; provided that those branches, departments or agencies which are authorized to employ their own legal counsel may use them instead of the Attorney General." Title 5 Guam Code Annotated § 30109(c).

A tax refund suit is maintained against the Government of Guam and not against a person or agency. 48 U.S.C. § 1421i(h)(2). Indeed, in the event such a suit is instituted against the Governor or an agency, the Court must "order, upon such terms as are just, that the pleadings be amended to substitute [Guam] as a party for such officer or employee as of the time such action commenced." 26 U.S.C. § 7422(f)(2), applied via 48 U.S.C. § 1421i(d)(1); *see also* 48 U.S.C. § 1421i(h)(2).

## III. The Organic Act Adopts the Federal Tax Code as Guam's Tax Law.

Guam is an unincorporated territory of the United States organized by Congress through 48 U.S.C. § 1421 *et seq.* (the Organic Act). This Act imposed upon Guam the Federal tax code as a separate territorial tax code (48 USC § 1421i) and christened this tax structure the "Guam Territorial Income Tax" ("GTIT"). 48 U.S.C. § 1421i(b). As a result, Guam taxpayers do not contribute to the Federal treasury, rather their taxes are paid to Guam as local taxes. This scheme unburdens the Federal treasury and provides for local needs. *Sayre & Co. v. Riddell,* 395 F.2d 407, 409 (9th Cir. 1968), *Bank of America, Nat. Trust and Sav. Ass'n v. Chaco,* 539 F.2d 1226, 1227 (9th Cir. 1976). Congress' intent in creating the GTIT was to insure uniform treatment for U.S. and Guam taxpayers. *Gumataotao v. Director of Department of Revenue and Taxation,* 236 F.3d 1077, 1082 (9th Cir. 2001).

Page 11
*Government of Guam's Submission in RE: October 13, 2005 Order*
District Court of Guam Civil Case Number 04-00006

Case 1:04-cv-00006   Document 260   Filed 10/28/2005   Page 11 of 32

The Federal tax code is Guam's constitutionally mandated tax code "where not manifestly inapplicable or incompatible with the intent of this section." 48 USC §1421i(d)(1). "Of course, because the IRC was written for U.S. taxpayers, certain word substitutions must be made to the mirrored provisions of the GTIT in order to make those provisions applicable to Guam taxpayers. The Income Tax Section[8] specifically provides directions on when and how to make these word substitutions: [E]xcept where it is manifestly otherwise required, the applicable provisions of the [IRC] shall be read so as to substitute "Guam" for "United States," . . . "Governor or his delegate" for "Commissioner of Internal Revenue" . . . and with other changes in nomenclature and other language, including the omission of inapplicable language, where necessary to effect the intent of this section." *Gumataotao*, 236 F.3d at 1080, *citing* 48 U.S.C. §1421i(e). This word substitution is known as "mirroring". *Id.* Mirroring is done to effectuate the intent of Congress in achieving uniformity of application of the tax code on Guam and in the United States. "The interpretative omissions and substitutions of language ... are those which are necessary to effectuate this intention. [Courts] may not adopt a construction inconsistent with it, as we did in *Atkins-Kroll*, simply because we consider the result more equitable. Deviations from the intended dual structure by substantive revision of the basic scheme of the Code as applied to Guam must be left to Congress." *Sayre & Co. v. Riddell*, 395 F.2d 407, 409, 412-13 (9th Cir. 1968).

## A. Section 7122 of the Internal Revenue Code Applies to Guam.

Section 7122 of the Internal Revenue Code is a part of the GTIT. This is so since "[t]he income tax laws in force in Guam . . . include but are not limited to the following provisions of the Internal Revenue Code of 1954 . . . all provisions of subtitle F [26 U.S.C.A. § 6001 et seq.]"[9] 48 U.S.C. §1421i(d)(1). Section 7122 gives authority to settle tax disputes to the Governor

---

[8] (footnote not in original) See 48 U.S.C. §1421i(e).

[9] Subtitle F contains § 7122.

Page 12
*Government of Guam's Submission in RE: October 13, 2005 Order*
District Court of Guam Civil Case Number 04-00006

Case 1:04-cv-00006    Document 260    Filed 10/28/2005    Page 12 of 32

1  prior to a lawsuit being filed. Thereafter, settlement authority rests solely with the Attorney

2  General.

3      Properly mirrored (*see Sayre & Co., supra*), section 7122 of the GTIT provides that

4  "The Governor or his delegate may compromise any civil or criminal case arising under the

5  internal revenue laws prior to reference to the Attorney General for prosecution or defense; and

6  the Attorney General or his delegate may compromise any such case after reference to the

7  Attorney General for prosecution or defense."

**B. IRC § 7122 is Not Manifestly Inapplicable or Incompatible with the Organic Act.**

8      Sections of the Federal tax code that are not "manifestly inapplicable or incompatible"

9  apply to Guam. "What provisions are deemed incompatible must be construed strictly within

10  the Congressional intent." *Bank of America, Nat. Trust and Sav. Ass'n v. Chaco*, 539 F.2d at

11  1227 (9th Cir. 1976). Congress intended that the tax code be applied to the people of Guam just

12  as it is applied to persons and income within the United States. *See Gumataotao*, 236 F.3d at

13  *1082.* In *Gumataotao*, the Ninth Circuit addressed the question of whether Guam could tax

14  interest on bonds issued by the United States. Finding the tax permissible, the Court noted

15  "disallowing Guam from taxing them would create disparate tax treatment. Moreover, [w]hat

16  provisions are deemed incompatible must be construed strictly within the Congressional intent .

17  . . . We have never held a provision of the I.R.C. "manifestly inapplicable or incompatible"

18  with the intent of the Income Tax Section, and only one district court has done so." *Id.,* (internal

19  citations, internal quotations omitted.) Congress intended to avoid disparate treatment of Guam

20  and United States taxpayers. *Id.,* at 1080. Accordingly, no offense to the express terms of the

21  Organic Act occurs by the incorporation of 26 U.S.C. § 7122. To the contrary, reading § 7122

22  out of the Organic Act, as would the Governor, creates the disparate treatment Congress

23  expressly sought to avoid.

24

25

# IV. Tax Refund Suits are Litigated & Settled by the Attorney General.

Mirrored code § 7122 places settlement authority for tax refund suits with the Attorney General of Guam. Put another way, once a lawsuit is filed, it is the Attorney General who litigates and, in his discretion, settles a suit. *See International Paper Co. v. United States*, 36 Fed.Cl. 313, 321(1996), *citing U.S. Dept. of Justice v. Tax Analysts*, 492 U.S. 136, 138, 109 S.Ct. 2841 (1989) ("[A]fter a case leaves the administrative level and a tax refund case is filed in the Court of Federal Claims, the IRS no longer has primary responsibility over that case. Rather, the Department of Justice bears the responsibility for speaking on behalf of the government and conducting the proceedings in this court."); *United States v. Forma*, 784 F.Supp 1132, 1139 (S.D.N.Y. 1992) ("Once a tax matter is referred to the Department of Justice, only the Attorney General or a person to whom authority has been delegated by the Attorney General may settle the matter."); *Slovacek v. United States*, 40 Fed. Cl. 828, 830 (1998) ("[O]nce plaintiffs filed their refund action in court, their case was referred to DOJ, and the authority to settle their case shifted from the IRS to the Attorney General, or her delegate... This authority cannot be defeated by a settlement made by the IRS with another taxpayer, since the IRS can no more settle this case indirectly by binding DOJ to settlement terms the IRS negotiated with other taxpayers, than the IRS can settle the case directly.").

This is analogous to the Governor having control over public safety and healthcare in the Organic Act, however, when litigation is commenced, the position of Attorney General controls. If such were the case then there would be no need for an Attorney General as the Governor would control all litigation decisions and a private counsel, or appointed Attorney General would be the effect. One consequence of giving the Governor control over litigation is that he would now be in a position to control the prosecution and settlement of cases.

Page 14
*Government of Guam's Submission in RE: October 13, 2005 Order*
District Court of Guam Civil Case Number 04-00006

Case 1:04-cv-00006    Document 260    Filed 10/28/2005    Page 14 of 32

## V.    The Governor may Not Settle a Tax Refund Suit.

The Organic Act gives the Governor authority to administer and enforce the tax code of Guam. "The administration and enforcement of the Guam Territorial Income Tax shall be performed by or under the supervision of the Governor." 48 U.S.C. §1421i(c). "The Governor or his delegate shall have the same administrative and enforcement powers and remedies with regard to the Guam Territorial Income Tax as the Secretary of the Treasury, and other United States officials of the executive branch, have with respect to the United States income tax." *Id.*, at (d)(2).

The Governor claims that these provisions, particularly the phrase "and other United States officials of the executive branch," allow him the power of the Attorney General established in GTIT § 7122. Alternatively, he may advance that this language supercedes the application of § 7122. These positions are contrary to Congressional intent and produce a disparate treatment of the Guam taxpayer.

As a preliminary matter, it should be remembered that "other . . . officials of the executive branch" who are not the Secretary of the Treasury have oversight of tax matters. Title 26 U.S.C. § 7801 creates the Internal Revenue Service Oversight Board consisting of nine members, seven of whom are not within the reach of the Secretary's authority to delegate, yet are otherwise within the appointment power of the executive. 26 U.S.C. §7801(b) *et seq*. Pursuant to 48 U.S.C. §1421i(d)(2), the Governor holds the powers of these "other officials of the executive branch" who function as tax officials.

Page 15
*Government of Guam's Submission in RE: October 13, 2005 Order*
District Court of Guam Civil Case Number 04-00006

Case 1:04-cv-00006    Document 260    Filed 10/28/2005    Page 15 of 32

Under the Governor's reading, the Guam taxpayer litigates against the same administrative authority that denied him relief, while his mainland counterpart receives the benefit of an agency (the attorney general) with a greater and different interest. *See* Garbis Junghans and Struntz, *Federal Tax Litigation and Procedure,* §2.02[2] (Warren, Gorham & Lamont, Inc. 1985). Thus the Guam taxpayer is not treated in the same manner as a Federal taxpayer.

The disparity of treatment that would result from the Governor's reading is further illustrated with reference to 48 U.S.C. § 1424-4.

Exclusive, original jurisdiction over matters involving the Guam Territorial income tax is vested in the District Court of Guam. 48 U.S.C. §1421i(h). In § 1424-4 of the Organic Act, Congress provided that all the rules of procedure created by Congress and the United States Supreme Court under authority given to those entities pursuant to U.S.C. Titles 11, 18 and 28, whether then existing or thereafter created, apply to the District Court of Guam.

When applicable to cases arising under the laws of Guam, including the Guam Territorial Income Tax, the Federal Rules of Criminal Procedure shall substitute the Attorney General of Guam or such other person or persons as may be authorized by the laws of Guam to act therein, for "Attorney for the government" and "United States attorney." This provision of the Organic Act (§ 1424-4) when read in conjunction with § 1421i(f), demonstrate that the Attorney General of Guam is vested with exclusive authority over criminal matters in litigation. Had Congress meant the "Governor or his delegate," Congress knew how to say so (as it did so several times throughout other sections of 1421i). However, Congress chose to vest the authority over criminal matters "in the government of Guam, by appropriate officers thereof."

Page 16
*Government of Guam's Submission in RE: October 13, 2005 Order*
District Court of Guam Civil Case Number 04-00006

Case 1:04-cv-00006    Document 260    Filed 10/28/2005    Page 16 of 32

Clearly, Congress meant someone other than the "Governor or his delegate." *Kyungus v. U.S.*, 485 U.S. 759, 108 S.Ct. 1537 (1988).

As the exclusive authority to represent government of Guam in criminal matters is vested in the Attorney General of Guam, Congress' intent to give the Attorney General of Guam exclusive authority to resolve criminal cases involving nonpayment of taxes due the government of Guam, would be rendered meaningless if the Attorney General of Guam was not authorized to concurrently resolve the civil obligations of the defendant taxpayer without resort to the authority of the Governor of Guam. Plea bargaining issues of restitution and criminal liability would be held captive to the Governor's authority to compromise the civil liability of the taxpayer. The Attorney General would not be able to act without the consent of the Governor in discharging his duties in criminal matters. This is entirely opposite of the understood authority of the Attorney General pursuant to United States tax code § 7122(a) and accordingly not the proper construction of G.T.I.T. § 7122(a). The Governor's interpretation means that the Guam taxpayer receives disparate treatment when compared to his mainland counterpart. More importantly, Congress has specifically stated that the Governor's power is limited to that of a tax official (see *infra*). "When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc. et al.*, 467 U.S. 837, 842-43, 104 S.Ct. 2778 (1984).

**A. Congress Gave the Governor the Same Powers as Those of Tax Officials.**

Page 17
*Government of Guam's Submission in RE: October 13, 2005 Order*
District Court of Guam Civil Case Number 04-00006

Case 1:04-cv-00006    Document 260    Filed 10/28/2005    Page 17 of 32

In 1958, Congress amended the Organic Act and added 48 U.S.C. §§1421i(a)-(h). *See Government of Guam v. Koster,* 362 F.2d 248, 250 (9th Cir. 1966). In amending the tax code for Guam, Congress expressly intended "to give taxpayers who are subject to the tax certain remedies equivalent to those available under the United States income-tax laws. Amendments which are contained in the proposed new subsections (a) through (g) of § 31 are for the purpose of clarification. They expressly provided, among other things, that the separate Guam income tax is to continue to be enforced by the Governor of Guam and officials of the territorial government under him, and that these officials have available to them the enforcement powers as set forth in the internal revenue code." S. Rep. No. 85-2176, 85th Cong., 2nd Sess. 1958, *reprinted in* 1958 U.S.C.C.A.N. 3647, 3650 (emphasis added). Congress was yet more explicit when it discussed its intent in promulgating §1421i(d)(2) regarding the tax administration and enforcement powers of the governor: "Paragraph (2) of subsection (d) ties in with the reference in paragraph (1) of subsection (d), to subtitle F, the enforcement provisions of the internal revenue code of 1954. Paragraph (2) expressly indicates the intent that the governor or his delegate has the same enforcement powers as United States tax officials." 1958 U.S.C.C.A.N. at 3652 (emphasis added). **Attachment A.**

The Ninth Circuit has found the expression of Congressional intent in the legislative history authoritative. *Flores v. Government of Guam,* 444 F.2d 284, 287-88 (9th Cir. 1971) ("This excerpt from the legislative history of the 1958 amendments to section 31 is the most authoritative source upon which we can rely in determining the Congressional intent with regard to the specific provision here in issue. The Senate Report specifically states that section 932 is to be excluded from the tax laws of Guam. Therefore, we do not reach the difficult task of determining what modifications of section 932 would result in the requisite 'mirrored effect' because the section is simply not a part of the tax law of Guam.").

Because Congress has limited the Governor's powers to administer and enforce the tax to those reserved to a "tax official," he is constrained by GTIT § 7122. Tax officials, such as

the Secretary of the Treasury or his delegate, may not settle a case once suit has been filed. To read the Organic Act as the Governor asserts would destroy the plain meaning of GTIT § 7122. Such an interpretation would be "manifestly incompatible" with the express intent of Congress and with 26 U.S.C. § 7122 as Congress sought to incorporate that provision into the GTIT.

### B. The Governor's Powers of Enforcement & Administration.

The 1958 amendments to the Organic Act, particularly 48 USC § 1421i(d)(2), grew out of specific challenges to Guam's ability to collect a tax. Thus in *Wilson v. Kennedy,* (232 F.2d 153 (9th Cir. 1956)), a taxpayer disputed the authority of Guam to collect taxes. The Ninth Circuit found this authority implicit in the creation of the tax law. *Id.,* at 154. In order to codify the Governor's collection authority, Congress enacted 48 USC §§ 1421i(c) & (d) and defined the Governor's power to be one of collection and rule making. *See* 1958 U.S.C.C.A.N. at 3651 ("Subsection (c) expressly designates the Governor of Guam as the official to enforce the tax. This authority he may delegate, including authority to redelegate. *Laguana v. Ansell* [102 F.Supp. 919 (D.Guam 1952) *aff'd by* 212 F.2d 207 (9th Cir. 1954)] holds that the separate territorial tax is 'to be collected by the proper officials of the Government of Guam.' The present authority of other officials, under the Governor, is recognized in *Wilson v. Kennedy* [232 F.2d 153 (9th Cir. 1956)(holding the Governor and his delegates have the authority to enforce Guam tax law insofar as they may collect taxes)]." The truth of this proposition (that the Governor's powers of "administration and enforcement" are confined to tax collection and rule-making) is thus found in Congress' expression of intent. This truth is also found within the accompanying text of the section itself because, as the U.S. Supreme Court has said, "words and people are known by their companions." *Gutierrez v. Ada,* 528 U.S. 250, 255, 120 S.Ct. 740 (2000). Immediately following the Congressional award of authority to enforce and administer

Page 19
*Government of Guam's Submission in RE: October 13, 2005 Order*
District Court of Guam Civil Case Number 04-00006

Case 1:04-cv-00006    Document 260    Filed 10/28/2005    Page 19 of 32

is found the following language, "Needful rules and regulations not inconsistent with the regulations prescribed under section 7654(e) of the Internal Revenue Code of 1954 [26 U.S.C. § 7654(e)] for enforcement of the Guam Territorial Income Tax shall be prescribed by the Governor. The Governor or his delegate shall have the authority to issue, from time to time, in whole or in part, the text of the income tax laws in force in Guam pursuant to subsection (a) of this section." 48 U.S.C. §1421i(d)(2).[10] Thus, Congress intended and said that the Governor was granted powers to collect the tax consistent with the powers of a "tax official." These powers are not inconsiderable. For instance, the Governor may enter closing agreements, compromise assessments prior to suit, levy, file liens, assess taxes, engage in alternate dispute resolution and issue subpoenas among other powers. *See* 26 USC Subtitle F. *See also* 35 Am. Jur.2d, *Federal Tax Enforcement* §3. However, the Governor is not empowered to settle tax refund lawsuits, and any attempt by him to do so is unauthorized according to law.

Respectfully submitted this 28th day of October, 2005.

OFFICE OF THE ATTORNEY GENERAL
DOUGLAS B. MOYLAN, Attorney General of Guam

Joseph A. Guthrie
Deputy Attorney General

---

[10] Congress' intent is also evidenced by the 'companion' Organic Act section 48 U.S.C. §1421i(e), Substitution of Terms, which interchanges "Governor" with "Secretary [of the Treasury]", "Commissioner of Internal Revenue" and "Collector of Internal Revenue" (all tax collection officials) but significantly omits any substitution of "Governor" with "Attorney General."

Page 20
*Government of Guam's Submission in RE: October 13, 2005 Order*
District Court of Guam Civil Case Number 04-00006

Case 1:04-cv-00006    Document 260    Filed 10/28/2005    Page 20 of 32

S. REP. 85-2176, S. Rep. No. 2176, 85TH Cong., 2ND Sess. 1958, 1958 U.S.C.C.A.N.
3647, 1958 WL 3949 (Leg.Hist.)

**\*3647** P.L. 85-688, **GUAM**-- INCOME TAX
SENATE REPORT NO. 85-2176,
AUG. 4, 1958 (TO ACCOMPANY H.R. 12569)
HOUSE REPORT NO. 85-2273,
JULY 24, 1958 (TO ACCOMPANY H.R. 12569)
THE SENATE REPORT IS SET OUT.

(CONSULT NOTE FOLLOWING TEXT FOR INFORMATION ABOUT OMITTED MATERIAL.
EACH
COMMITTEE REPORT IS A SEPARATE DOCUMENT ON WESTLAW.)

## SENATE REPORT NO. 85-2176

### AUG. 4, 1958

THE COMMITTEE ON INTERIOR AND INSULAR AFFAIRS, TO WHOM WAS REFERRED THE
BILL (H.R. 12569) TO AMEND SECTION 31 OF THE ORGANIC ACT OF **GUAM,** AND FOR
OTHER PURPOSES, HAVING CONSIDERED THE SAME, REPORT FAVORABLY THEREON
WITHOUT AMENDMENT AND RECOMMEND THAT THE BILL DO PASS.

### SUMMARY

### PURPOSE

THE PURPOSE OF H.R. 12569 IS TO CLARIFY AND RESTATE SECTION 31 OF THE
ORGANIC ACT OF **GUAM** AND TO RATIFY ASSESSMENTS AND COLLECTIONS OF
INCOME TAXES THAT HAVE THERETOFORE BEEN MADE BY THE GUAMANIAN
AUTHORITIES UNDER SECTION 31. THE BILL ALLOWS SUITS AGAINST THE
GOVERNMENT OF **GUAM** TO RECOVER TAXES ERRONEOUSLY OR ILLEGALLY
COLLECTED OR ASSESSED. SUCH SUITS WOULD BE SUBJECT TO THE SAME
STATUTORY REQUIREMENTS AS APPLY IN SUITS AGAINST THE UNITED STATES WITH
RESPECT TO THE UNITED STATES INCOME TAX.

### NEED

EVER SINCE SECTION 31 WAS ENACTED IN 1951, THE GOVERNMENT OF **GUAM** HAS
BEEN HARASSED BY LITIGATION FOUNDED PRINCIPALLY ON THE CONTENTIONS THAT
SECTION 31 GAVE IT NO AUTHORITY TO ASSESS AND COLLECT THESE TAXES AND
THAT, EVEN IF IT DID HAVE THIS AUTHORITY, THE TAXPAYERS (OR MOST OF THEM)
WERE EXEMPT FROM PAYMENT THEREOF BY <u>SECTION 931 OF THE INTERNAL REVENUE
CODE OF 1954</u> OR SECTION 251 OF THE 1939 CODE. JUDICIAL DECISIONS IN THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF **GUAM** AND IN THE COURT
OF APPEALS FOR THE NINTH CIRCUIT HAVE SUSTAINED THE GUAMANIAN
GOVERNMENT'S POSITION, BUT A NUMBER OF SUITS FOR REFUND ARE NOW PENDING
IN THE COURT OF CLAIMS WHICH, IN A RECENT PRELIMINARY RULING IN JENNINGS V.
UNITED STATES, HAS INDICATED THAT IT MAY NOT AGREE WITH THE NINTH CIRCUIT.
SHOULD THE PLAINTIFFS PREVAIL IN THE COURT OF CLAIMS AND SHOULD A
JUDGMENT IN THEIR FAVOR BE SUSTAINED BY THE SUPREME COURT, THE REVENUES
OF THE GOVERNMENT OF **GUAM** COULD BE REDUCED BY MORE THAN \$3 MILLION A
YEAR, A SUBSTANTIAL NUMBER OF TAXPAYERS WOULD ESCAPE PAYMENT OF ALL
INCOME TAXES, AND THE WHOLE FINANCIAL STRUCTURE OF **GUAM** WOULD BE
THROWN INTO CONFUSION. WHILE THE COMMITTEE EXPECTS TO SURVEY THE ENTIRE

ATTACHMENT A

GUAMANIAN TAX AND FINANCIAL PICTURE DURING THE NEXT CONGRESS, THE PRESENT NEED FOR H.R. 12569 IS OBVIOUSLY URGENT.

## COST

ENACTMENT OF H.R. 12569 WILL ENTAIL NO COST TO THE UNITED STATES. HOWEVER, THE BILL COULD SAVE THE TREASURY AN AMOUNT OF MONEY ESTIMATED BY THE GOVERNOR OF GUAM TO BE $23 MILLION AND ESTIMATED BY THE OPPONENTS OF THE BILL TO BE $8 MILLION.

## *3648* DEPARTMENTAL RECOMMENDATION

H.R. 12569 WAS INTRODUCED AT THE REQUEST OF THE SECRETARY OF THE INTERIOR MADE IN AN EXECUTIVE COMMUNICATION DATED MAY 1, 1958. IT IS FAVORED BY THE LEGISLATIVE AND EXECUTIVE BRANCHES OF THE GOVERNMENT OF GUAM. THERE WAS ALSO MADE AVAILABLE TO THE COMMITTEE A PETITION FAVORING THIS TYPE OF LEGISLATION, WHICH PETITION BEARS THE SIGNATURES OF MORE THAN 5,000 GUAMANIANS.

## HOUSE AMENDMENT TO SECTION 2

THE HOUSE OF REPRESENTATIVES ADOPTED AN AMENDMENT OF SECTION 2 OF H.R. 12569 DESIGNED (1) TO BRING IT MORE CLOSELY INTO LINE WITH CONGRESSIONAL PRECEDENTS THE CONSTITUTIONALITY OF WHICH WAS SUSTAINED IN UNITED STATES V. HEINZEN & CO. (206 U.S. 370, 27 S.CT. 742, 51 L.ED. 1098 (1907)) AND RAFFERTY V. SMITH, BELL & CO. (257 U.S. 226, 42 .CT. 71, 66 L.ED. 208 (1921)), AND (2) TO AVOID ANY POSSIBLE CONFLICT WITH THE EX POST FACTO CLAUSE OF ARTICLE I, SECTION 9, OF THE CONSITUTION BY PROVIDING THAT NO PENALTIES SHALL BE ASSESSED AGAINST ANY TAXPAYER FOR HIS FAILURE TO COMPLY WITH THE INCOME TAX LAWS AND REGULATIONS OF GUAM IN THOSE CIRCUMSTANCES, IF ANY, WHERE IT IS JUDICIALLY DETERMINED THAT SUCH COMPLIANCE COULD NOT HAVE BEEN REQUIRED UNDER SECTION 31 PRIOR TO ITS AMENDMENT.

## SECTION-BY-SECTION ANALYSIS

SECTION 1 OF THE BILL IS AN AMENDMENT OF SECTION 31 OF THE ORGANIC ACT OF GUAM. SUBSECTION (A) IS A REITERATION OF THE PRESENT TEXT OF SECTION 31. SUBSECTION (B) DECLARES THAT THE INCOME TAXES IMPOSED BY VIRTUE OF THE ACT SHALL BE DEEMED TO BE A TERRITORIAL INCOME TAX. SUBSECTION (C) PROVIDES FOR ADMINISTRATION AND ENFORCEMENT OF THE TAX BY THE GOVERNOR OF GUAM AND THOSE TO WHOM HE DELEGATES HIS AUTHORITY. SUBSECTION (D)(1) PROVIDES THAT THE INCOME-TAX LAWS IN FORCE IN GUAM SHALL INCLUDE ALL PROVISIONS OF SUBTITLE A OF THE INTERNAL REVENUE CODE OF 1954 WHICH ARE NOT MANIFESTLY INAPPLICABLE OR INCOMPATIBLE WITH THE INTENT OF SECTION 1 OF THE BILL. TO THE EXTENT THAT THEY ARE NOT MANIFESTLY INAPPLICABLE OR INCOMPATIBLE, THE INCOME TAX LAWS IN FORCE IN GUAM ARE DECLARED TO INCLUDE ALL PROVISIONS OF LAW RELATING TO THE WITHHOLDING OF INCOME TAX WHICH ARE SET FORTH IN CHAPTERS 24 AND 25 SUBTITLE C OF THE 1954 CODE AND ALL PROVISIONS OF LAW RELATING TO ADMINISTRATION OF THE INCOME TAX (INCLUDING INCOME TAX WITHHOLDING) WHICH ARE SET FORTH IN SUBTITLE F OF THE 1954 CODE. THE CORRESPONDING PROVISIONS OF THE 1939 CODE ARE ALSO INCLUDED IN THE INCOME-TAX LAWS IN FORCE IN GUAM FOR THE APPROPRIATE PERIOD, THAT IS, FROM THE TIME WHEN THE PROVISIONS OF THE PRESENT SECTION 31 OF THE ORGANIC ACT OF GUAM BECAME OPERATIVE UNTIL THE EFFECTIVE DATE OF THOSE PROVISIONS OF THE 1954 CODE WHICH ARE INCLUDED IN

THE INCOME-TAX LAWS IN FORCE IN **GUAM.**

ON THE OTHER HAND, CHAPTER 2 AND <u>SECTION 931</u>, BOTH IN SUBTITLE A OF THE 1954 CODE, AND THEIR PREDECESSOR PROVISIONS OF THE 1939 CODE, ARE SPECIFICALLY INDICATED AS NOT CONSTITUTING A PART OF THE INCOME-TAX LAWS IN FORCE IN **GUAM.** CHAPTER 2 PROVIDES FOR A TAX ON SELF-EMPLOYMENT INCOME. <u>SECTION 931</u> PROVIDES AN EXCLUSION FROM GROSS INCOME IN RESPECT OF INCOME DERIVED FROM SOURCES OUTSIDE THE UNITED STATES AND RECEIVED OUTSIDE THE UNITED STATES BY CERTAIN CITIZENS OF THE UNITED STATES DERIVING AT LEAST 80 PERCENT OF THEIR INCOME (NOT INCLUDING FEDERAL SALARIES) DURING A PRESCRIBED **\*3649** PERIOD FROM SOURCES WITHIN A POSSESSION, INCLUDING **GUAM,** AND AT LEAST 50 PERCENT OF THEIR INCOME FROM THE ACTIVE CONDUCT OF A TRADE OR BUSINESS (INCLUDING THE PERFORMANCE OF SERVICES AS AN EMPLOYEE) IN A POSSESSION, INCLUDING **GUAM.** SINCE IT IS MADE CLEAR THAT <u>SECTION 931</u> AND THE CORRESPONDING PROVISIONS OF PRIOR LAW ARE NOT A PART OF THE INCOME-TAX LAWS IN FORCE IN **GUAM,** TAXPAYERS WILL NOT BE ABLE TO TRY TO CLAIM THE EXCLUSIONS PROVIDED IN THOSE SECTIONS IN DETERMINING THEIR INCOME-TAX LIABILITY TO **GUAM.** FOR EXAMPLE, A CONSTRUCTION WORKER WHOSE ENTIRE INCOME FOR 1951 CONSISTED OF WAGES EARNED AND RECEIVED IN **GUAM** WILL NOT BE ENTITLED TO EXCLUDE ANY PART OF THAT INCOME FROM THE COMPUTATION OF THE INCOME TAX WHICH HE OWED TO **GUAM** FOR THAT YEAR, EVEN THOUGH HE WAS ENGAGED IN A TRADE OR BUSINESS THERE WITHIN THE MEANING OF SECTION 251 OF THE 1939 INTERNAL REVENUE CODE AND HIS INCOME FOR THE PRESCRIBED PERIOD MET THE PERCENTAGE REQUIREMENTS STATED IN THAT SECTION. ON THE CONTRARY, ALL SUCH INCOME CONSTITUTES GROSS INCOME REPORTABLE TO THE GOVERNMENT OF **GUAM.** THIS IS THE EFFECT OBTAINED UNDER SUBSECTION (D)(1); IT IS ALSO THE EFFECT OBTAINED UNDER EXISTING LAW AS UNDERSTOOD BY THE COMMITTEE IN THE LIGHT OF THE LEGISLATIVE HISTORY OF PRESENT SECTION 31 OF THE ORGANIC ACT OF **GUAM.** THUS, IN THIS RESPECT AS WELL AS OTHERWISE, THE PROVISIONS OF SUBSECTION (D)(1) ARE MERELY IN CONFIRMATION OF PRESENT LAW AND OF THE ORIGINAL CONGRESSIONAL INTENT IN ENACTING SECTION 31 OF THE ORGANIC ACT OF **GUAM.**

THE SPECIFIC MENTION OF CHAPTER 2 AND SECTION 931 OF THE 1954 CODE AND OF CORRESPONDING PROVISIONS OF THE 1939 CODE FROM THE INCOME-TAX LAWS IN FORCE IN **GUAM** IS NOT INTENDED TO EXCLUDE OTHER PROVISIONS OF THE 1954 OR 1939 CODES FROM THE CATEGORY OF PROVISIONS WHICH ARE MANIFESTLY INAPPLICABLE OR INCOMPATIBLE WITH THE INTENT OF CONGRESS IN MAKING THE INCOME-TAX LAWS OF THE UNITED STATES APPLICABLE IN **GUAM.** OTHER PROVISIONS OF THE 1954 AND 1939 CODES WHICH ARE MANIFESTLY INAPPLICABLE OR INCOMPATIBLE WITH THAT INTENT (FOR INSTANCE, SECTION 932 OF THE 1954 CODE AND SECTION 252 OF THE 1939 CODE) ARE ALSO EXCLUDED EVEN THOUGH NOT SPECIFICALLY SINGLED OUT FOR MENTION.

SUBSECTION (D)(2) AND SUBSECTION (E) ARE COMPLEMENTARY TO SUBSECTION (C) AND SET UP THE MECHANICS OF ADMINISTERING AND ENFORCING THE INCOME-TAX LAWS IN **GUAM.** SUBSECTION (F) DEALS WITH THE PROSECUTION OF CRIMINAL OFFENSES AND SUBSECTION (G) WITH LIENS. SUBSECTION (H) GIVES THE DISTRICT COURT OF **GUAM** EXCLUSIVE ORIGINAL JURISDICTION OVER SUITS AND PROSECUTIONS IN **GUAM** INVOLVING THE TERRITORIAL INCOME TAX. IT ALSO PROVIDES THE MEANS OF RECOVERY OF TAXES WRONGFULLY ASSESSED OR COLLECTED BY THE GOVERNMENT OF **GUAM** AND FOR CIVIL ACTIONS BY IT TO COLLECT ITS TAXES.

SECTION 2 OF THE BILL DECLARES THAT SUBSECTIONS (B) AND (G), INCLUSIVE, OF SECTION 1 EXPRESS THE TRUE MEANING AND INTENT OF SECTION 31 AS IT HAS HERETOFORE EXISTED. SECTION 2 ALSO RATIFIES THE INCOME TAXES ASSESSED AND COLLECTED UNDER SECTION 31 AND ALL ACTS DONE TO EFFECTUATE THEIR ASSESSMENT AND COLLECTION INSOFAR AS THESE ARE IN ACCORD WITH THE

AMENDED SECTION 31. PROVISION IS MADE, HOWEVER, THAT NO PENALTIES SHALL
BE IMPOSED FOR FAILURE TO HAVE COMPLIED WITH A REQUIREMENT IF IT IS
JUDICIALLY DETERMINED THAT, IN THE CIRCUMSTANCES, THAT REQUIREMENT COULD
NOT LAWFULLY HAVE BEEN MADE UNDER THE ORIGINAL SECTION 31. THIS WILL NOT
EXCUSE FAILURE TO COMPLY AFTER 60 DAYS FROM ENACTMENT OF THE BILL.

## *3650* EXECUTIVE COMMUNICATION

THE EXECUTIVE COMMUNICATION OF THE DEPARTMENT OF THE INTERIOR IS SET
FORTH BELOW IN FULL:

### COMMITTEE RECOMMENDATION

THE COMMITTEE ON INTERIOR AND INSULAR AFFAIRS RECOMMENDS ENACTMENT OF
H.R. 12569, AS AMENDED.
DEPARTMENT OF THE INTERIOR,
OFFICE OF THE SECRETARY,
WASHINGTON, D.C., MAY 1, 1958.
HON. SAM RAYBURN,
SPEAKER OF THE HOUSE OF REPRESENTATIVES,
WASHINGTON, D.C.
DEAR MR. SPEAKER: ENCLOSED HEREWITH IS A DRAFT OF A PROPOSED BILL, TO
AMEND SECTION 31 OF THE ORGANIC ACT OF **GUAM,** AND FOR OTHER PURPOSES.
I SUGGEST THAT THE PROPOSED BILL BE REFERRED TO THE APPROPRIATE
COMMITTEE FOR CONSIDERATION, AND I RECOMMEND THAT IT BE ENACTED.
THE PURPOSE OF THE PROPOSED BILL IS TO CONTINUE THE PRESENT SEPARATE
TERRITORIAL INCOME TAX FOR THE TERRITORY OF **GUAM,** AS PROVIDED BY SECTION
31 OF THE ORGANIC ACT OF **GUAM** (48 U.S.C., SEC. 1421I), BUT TO ADD VARIOUS
**CLARIFYING PROVISIONS AND, IN ADDITION, TO GIVE TAXPAYERS WHO ARE
SUBJECT TO THE TAX CERTAIN REMEDIES EQUIVALENT TO THOSE AVAILABLE
UNDER THE UNITED STATES INCOME-TAX LAWS.
AMENDMENTS WHICH ARE CONTAINED IN THE PROPOSED NEW SUBSECTIONS
(A) THROUGH (G) OF SECTION 31 ARE FOR THE PURPOSE OF CLARIFICATION.
THEY EXPRESSLY PROVIDED, AMONG OTHER THINGS, THAT THE SEPARATE
GUAM INCOME TAX IS TO CONTINUE TO BE ENFORCED BY THE GOVERNOR OF
GUAM AND OFFICIALS OF THE TERRITORIAL GOVERNMENT UNDER HIM, AND
THAT THESE OFFICIALS HAVE AVAILABLE TO THEM THE ENFORCEMENT
POWERS AS SET FORTH IN THE INTERNAL REVENUE CODE.** THE PROVISIONS IN
SUBSECTION (A) THROUGH (G) OF SECTION 31 ACCORD WITH NUMEROUS JUDICIAL
AND ADMINISTRATIVE DECISIONS, ALL OF WHICH ARE CITED IN AN EXPLANATORY
NOTE ATTACHED HERETO. WE ARE AWARE OF ONLY ONE DECISION CONTRARY TO THE
HOLDINGS IN THE CITED CASES, NAMELY, THE RECENT DECISION OF THE COURT OF
CLAIMS ON A PRELIMINARY MOTION IN JENNINGS ET AL. V. UNITED STATES. IN
DENYING THE UNITED STATES MOTION TO DISMISS THE PLAINTIFFS' PETITIONS IN
THAT CASE, THE COURT OF CLAIMS INDICATED THE VIEW THAT SECTION 31 DID NOT
CREATE A SEPARATE TERRITORIAL INCOME TAX. ALTHOUGH THE GOVERNMENT OF
**GUAM** IS CONTINUING TO ADHERE TO THE LONG LINE OF DECISIONS TO THE
CONTRARY, THE COURT OF CLAIMS ACTION HAS CREATED CONSIDERABLE
CONFUSION IN **GUAM** AND CONSEQUENTLY ENACTMENT OF THE PROPOSED BILL HAS
BECOME URGENT.
UNDER THE PROPOSED SUBSECTION (H), TAXPAYERS ARE GIVEN THE RIGHT TO
CONTEST THEIR TAX LIABILITY BY SUING THE GOVERNMENT OF **GUAM** DIRECTLY IN
THE DISTRICT COURT OF **GUAM** FOR A REFUND OF TAXES COLLECTED. AT PRESENT
THE ONLY REMEDY AVAILABLE TO A TAXPAYER IN **GUAM** IS TO SUE THE TAX-
COLLECTING OFFICIAL OF THE GOVERNMENT OF **GUAM.**
A MORE DETAILED EXPLANATION OF THE PROPOSED BILL IS ENCLOSED HEREWITH.

THE BUREAU OF THE BUDGET HAS ADVISED THAT THERE IS NO OBJECTION TO THE PRESENTATION OF THIS PROPOSED LEGISLATION TO THE CONGRESS.
SINCERELY YOURS,
ROGER ERNST,
ASSISTANT SECRETARY OF THE INTERIOR.

***3651** EXPLANATORY NOTE TO ACCOMPANY BILL TO AMEND SECTION 31 OF THE ORGANIC ACT OF GUAM

SECTION 31 OF THE ORGANIC ACT OF GUAM (64 STAT. 384, 392, 48 U.S.C., SEC. 1421I) READS AS FOLLOWS:
'THE INCOME-TAX LAWS IN FORCE IN THE UNITED STATES OF AMERICA AND THOSE WHICH MAY HEREAFTER BE ENACTED SHALL BE HELD TO BE LIKEWISE IN FORCE IN GUAM.'
THIS SECTION HAS BEEN HELD TO PROVIDE A SEPARATE TERRITORIAL TAX TO BE ENFORCED BY THE GOVERNMENT OF GUAM, COMPARABLE TO THE INCOME TAX OF THE VIRGIN ISLANDS ENACTED BY THE ACT OF JULY 12, 1921 (47 STAT. 122, 123; 48 U.S.C., SEC. 1397):
LAGUANA V. ANSELL (D.C. GUAM, 1952) 102 F.SUPP. 919, AFF'D (C.A. 9, 1954) 212 F.2D 207, CERTIORARI DENIED 348 U.S. 830, 75 S.CT. 51, 99 L.ED. 654.
WILSON V. KENNEDY (D.C. GUAM, 1954) 123 F.SUPP. 156 AFF'D (C.A. 9, 1956) 232 F.2D 153.
LAMKIN V. BROWN AND ROOT (C.A. 9, 1956) 233 F.2D 320.
PHELAN V. TAITANO (C.A. 9, 1956) 233 F.2D 117.
HOLBROOK V. TAITANO (D.C. GUAM, 1954) 125 F.SUPP. 14.
GOVERNMENT OF GUAM V. KAANEHE (D.C. GUAM, APPELLATE DIVISION, 1956) 137 F.SUPP. 189.
I.T. 4046 (1951-1 CUM. BULL. 57).
I.T. 2946 (CUM. BULL. X14-2, 109 (1935) (CONCERNS VIRGIN ISLANDS TAX).
REV. RUL. 8, 1953-1 CUM. BULL. 300, 301.
REV. RUL. 56, 1953-1 CUM. BULL. 303.
REV. RUL. 55-184, 1955-13 INT. REV. BULL. 39, 1955-47 INT. REV. BULL. 18.
DECISION OF THE COMPTROLLER GENERAL, B-126996, MAY 4, 1956.
THE PURPOSE OF THIS BILL TO AMEND SECTION 31 IS TO CONTINUE THE TAX PROVIDED BY SECTION 31 BUT TO ADD CLARIFICATION IN ACCORDANCE WITH THE INTERPRETATIONS IN THE FOREGOING RULINGS AND COURT DECISIONS, AND TO AUTHORIZE SUITS FOR REFUNDS AGAINST THE GOVERNMENT OF GUAM.

SUBSECTION (A)

THE PRESENT SECTION 31 IS DESIGNATED SUBSECTION (A) OF THE AMENDED SECTION.

SUBSECTION (B)

SUBSECTION (B) SETS FORTH THE BASIC INTERPRETATION OF THE PRESENT SECTION 31 AS PRESENTLY ENFORCED AND AS SET FORTH IN LAGUANA V. ANSELL WHICH IN TURN FOLLOWED I.T. 4046 AND I.T. 2946, THE LATTER BEING WITH REFERENCE TO THE VIRGIN ISLANDS TAX. THE LAST PORTION OF THE SUBSECTION DESIGNATES A NAME FOR THE SEPARATE TAX FOR CONVENIENT REFERENCE.

SUBSECTION (C)

SUBSECTION (C) EXPRESSLY DESIGNATES THE GOVERNOR OF GUAM AS THE OFFICIAL TO ENFORCE THE TAX. THIS AUTHORITY HE MAY DELEGATE, INCLUDING

AUTHORITY TO REDELEGATE. LAGUANA V. ANSELL HOLDS THAT THE SEPARATE
TERRITORIAL TAX IS 'TO BE COLLECTED BY THE PROPER OFFICIALS OF THE
GOVERNMENT OF **GUAM.'** THE PRESENT AUTHORITY OF OTHER OFFICIALS, UNDER
THE GOVERNOR, IS RECOGNIZED IN WILSON V. KENNEDY.
**\*3652** THE LANGUAGE IS BASED ON SECTIONS 7801(A) AND 7701(A)(12) OF THE
INTERNAL REVENUE CODE OF 1954.

### SUBSECTION (D)(1)

PARAGRAPH (1) OF SUBSECTION (D) DEFINES 'INCOME-TAX LAWS' MENTIONED IN
SUBPARAGRAPH (A) BY REFERRING TO SUBTITLES A, C, AND P OF THE INTERNAL
REVENUE CODE OF 1954, AND THE CORRESPONDING PROVISIONS OF THE INTERNAL
REVENUE CODE OF 1939. AN UNCONDITIONAL INCORPORATION BY REFERENCE IS
NOT POSSIBLE SINCE VARIOUS PROVISIONS REFER TO OTHER TAXES THAN INCOME
TAXES, AND THE NOMENCLATURE THROUGHOUT IS WITH REGARD TO THE UNITED
STATES TAX. MOREOVER CERTAIN PROVISIONS MUST BE CONSIDERED INAPPLICABLE
IN ORDER TO CARRY OUT THE INTENT OF THE SEPARATE TAX. THUS IN LAGUANA V.
ANSELL, SUPRA, THE COURT HELD THAT SECTIONS 251, 252, AND 1621(A)(8)(B) OF
THE 1939 CODE, DEALING WITH EXEMPTIONS FOR INCOME EARNED IN A POSSESSION
OF THE UNITED STATES, DID NOT APPLY TO THE TERRITORIAL TAX, ALTHOUGH
LITERALLY THE PLAINTIFF CAME WITHIN THE PROVISIONS. IN DISPOSING OF A
PRELIMINARY MOTION IN (JENNINGS ET AL. V. UNITED STATES), THE COURT OF
CLAIMS SUGGESTED OTHERWISE WITH RESPECT TO SECTION 931 OF THE 1954 CODE
(THE SUCCESSOR TO SECTION 251), AND THIS POINT IS TAKEN INTO ACCOUNT IN
SUBSECTION (D)(1) BY THE SPECIFIC EXCLUSION OF SECTION 931 FROM THE **GUAM**
TERRITORIAL INCOME TAX.
SPECIAL REFERENCE IS MADE TO CRIMINAL PROVISIONS IN VIEW OF THEIR UNIQUE
CHARACTER IN LAW. IN GOVERNMENT OF **GUAM** V. KAANEHE THEY HAVE BEEN HELD
TO BE INCORPORATED BY REFERENCE.
REFERENCE TO THE INTERNAL REVENUE CODE OF 1939 IS NECESSARY IN THIS
PARAGRAPH AND ELSEWHERE IN THE BILL, SINCE IT WAS IN EFFECT WHEN THE
SEPARATE TAX UNDER SECTION 31 WENT INTO EFFECT ON JANUARY 1, 1951, AND
CONSTITUTES THE INCOME-TAX LAWS FOR THE PERIOD PRIOR TO THE
EFFECTIVENESS OF THE CODE OF 1954.
THE USE OF SUCH QUALIFYING TERMS AS 'WHERE NOT MANIFESTLY INAPPLICABLE OR
INCOMPATIBLE'; 'INCLUDE BUT ARE NOT LIMITED TO'; 'WHICH CORRESPOND TO ONE
OR MORE OF THOSE PROVISIONS', 'APPLICABLE PROVISIONS'; AND 'CORRESPONDING
PROVISIONS', IN THIS PARAGRAPH AND ELSEWHERE IN THE BILL IS AN OBVIOUS
NECESSITY AND IS SIMILAR TO LANGUAGE USED IN THE INTERNAL REVENUE CODE OF
1954. THUS:
'MANIFESTLY INCOMPATIBLE': SECTIONS 7701(C), 7851(B)(3), 7851(B)(2)(C),
7852(B).
'ALL PROVISIONS \* \* \* APPLICABLE TO THE ADMINISTRATION, COLLECTION AND
ENFORCEMENT': SECTIONS 7651(1), 7651(2)(B).
'CORRESPONDING PROVISION: SECTIONS 7851(E), 7852(B), 7807(B)(1) AND (2).

### SUBSECTION (D)(2)

PARAGRAPH (2) OF SUBSECTION (D) TIES IN WITH THE REFERENCE, IN PARAGRAPH
(1) OF SUBSECTION (D), TO SUBTITLE F, THE ENFORCEMENT PROVISIONS OF THE
INTERNAL REVENUE CODE OF 1954. PARAGRAPH (2) EXPRESSLY INDICATES THE
INTENT THAT THE GOVERNOR OR HIS DELEGATE HAS THE SAME ENFORCEMENT
POWERS AS UNITED STATES TAX OFFCIALS. THIS IS IN ACCORDANCE WITH THE
DECISION IN WILSON V. KENNEDY.

PARAGRAPH (2) ALSO AUTHORIZES THE ISSUANCE OF REGULATIONS BY THE GOVERNOR, IN CONNECTION WITH THE GUAM TERRITORIAL INCOME TAX, AND AUTHORIZES THE GOVERNOR OR HIS DELEGATE TO PUBLISH THE TEXT OF THE TAX FROM TIME TO *3653 TIME IN WHOLE OR IN PART. HE IS THUS AUTHORIZED TO ADAPT IN WRITTEN VERSION THE INCOME-TAX LAWS OF THE UNITED STATES AS THE GUAM TERRITORIAL INCOME TAX IN ACCORDANCE WITH THE INTENT AND UNDER THE TERMS OF SECTION 31.

THE PUBLICATION OF SUCH A TEXT BY THE GOVERNOR IS NOT INTENDED TO BE A PREREQUISITE OR CONDITION TO TAX LIABILITY BUT ONLY TO AFFORD A CONVENIENCE TO TAXPAYERS.

## SUBSECTION (E)

SUBSECTION (E) AUTHORIZED THE SUBSTITUTION OF NOMENCLATURE AND OTHER CHANGES IN LANGUAGE IN APPLYING THE INCOME-TAX LAWS OF THE UNITED STATES AS THE GUAM TERRITORIAL INCOME TAX. THIS IS AN OBVIOUS NECESSITY, AND IS IN ACCORD WITH WILSON V. KENNEDY (I.T. 4046, AND I.T. 2946).

## SUBSECTION (F)

SUBSECTION (F) MAKES CLEAR THAT THE INCORPORATION OF THE CRIMINAL PROVISIONS OF THE INTERNAL REVENUE CODE ESTABLISHED OFFENSES AGAINST THE GOVERNMENT OF GUAM TO BE PROSECUTED BY OFFICIALS OF THE GOVERNMENT OF GUAM.

## SUBSECTION (G)

SUBSECTION (G) MAKES CLEAR THAT THE TAX LEIN PROVISIONS OF THE INTERNAL REVENUE CODE APPLY IN FAVOR OF THE GOVERNMENT OF GUAM, AND THAT NOTICES OF LIEN ARE TO BE FILED WITH THE CLERK OF THE DISTRICT COURT OF GUAM. THE TERM 'IN THE SAME MANNER AND WITH THE SAME EFFECT' IS USED IN SECTION 7851(C) OF THE INTERNAL REVENUE CODE OF 1954.

## SUBSECTION (H)(1)

PARAGRAPH (1) OF SUBSECTION (H) GIVES THE DISTRICT COURT OF GUAM EXCLUSIVE ORIGINAL JURISDICTION OVER ALL LITIGATION IN GUAM CONCERNING THE GUAM TERRITORIAL INCOME TAX, BOTH CIVIL AND CRIMINAL. JURISDICTION OF DISTRICT COURTS ELSEWHERE IS COVERED IN PARAGRAPH (4). AT THE PRESENT TIME THE ISLAND COURT OF GUAM, A COURT CREATED BY THE GUAM LEGISLATURE, HAS JURISDICTION OVER MISDEMEANORS AND SUITS INVOLVING SUMS UP TO $2,000. THE PURPOSE OF THIS PARAGRAPH IS TO INSURE THAT JURISDICTION AS TO ALL CASES INVOLVING THE GUAM TERRITORIAL INCOME TAX SHALL BE IN THE DISTRICT COURT.

THE LANGUAGE IS SUGGESTED BY TITLE 28, U.S.C. SECTION 1340, WITH THE ADDITIONAL OF CRIMINAL JURISDICTION.

## SUBSECTION (H)(2)

PARAGRAPH (2) OF SUBSECTION (H) PROVIDES THAT THE GOVERNMENT OF GUAM MAY BE SUED FOR REFUND OF TAXES AND FOR PAYMENT OF ANY FINAL JUDGMENT IN SUCH LITIGATION. AT THE PRESENT TIME IT IS PROBABLE THAT THE GOVERNMENT WOULD BE HELD IMMUNE. CRAIN V. GOVERNMENT OF GUAM (195 F.2D 414). AS A RESULT THE ONLY REMEDY OF THE TAXPAYER IS TO SUE THE COLLECTING OFFICIAL PERSONALLY FOR REFUND, AS WAS DONE IN LAGUANA V. ANSELL AND WILSON V.

KENNEDY.
THE LANGUAGE IS BASED ON <u>TITLE 28, U.S.C. SECTIONS 1346(A)(1)</u> AND <u>2006</u>, AND
<u>SECTION 7422(A) OF THE INTERNAL REVENUE CODE OF 1954</u>.

## SUBSECTION (H)(3)

PARAGRAPH (3) OF SUBSECTION (H) PRECLUDES EXECUTION AGAINST AN OFFICER
OR EMPLOYEE OF THE GOVERNMENT OF **GUAM** AGAINST WHOM A JUDGMENT IS
OBTAINED IN A PERSONAL SUIT FOR A TAX REFUND OR FOR OTHER ACTS IN
CONNECTION ***3654*** WITH ENFORCEMENT OF THE **GUAM** TERRITORIAL INCOME TAX.
INSTEAD, PROVISION IS MADE FOR PAYMENT OF THE JUDGMENT BY THE
GOVERNMENT OF **GUAM.**
THE LANGUAGE IS BASED ON <u>TITLE 28, U.S.C. SECTION 2006</u>.

## SUBSECTION (H)(4)

PARAGRAPH (4) OF SUBSECTION (H) ENABLES THE GOVERNMENT OF **GUAM** TO BRING
SUIT IN ANY DISTRICT COURT, CONSTITUTIONAL OR LEGISLATIVE, FOR COLLECTION
OF THE **GUAM** TERRITORIAL INCOME TAX OR RECOVERY OF EXCESSIVE REFUNDS
AGAINST TAX DELINQUENTS WHO HAVE LEFT **GUAM.** THIS WILL ELIMINATE ANY
PROBLEM OF WHETHER A STATE COURT MAY HAVE JURISDICTION OVER TAX CASES
OF ANOTHER POLITICAL ENTITY.

## SUBSECTION (H)(5)

PARAGRAPH (5) OF SUBSECTION (H) PRECLUDES THE **GUAM** LEGISLATURE FROM
DIVESTING THE DISTRICT COURT OF **GUAM** OF ITS JURISDICTION OVER THE **GUAM**
TERRITORIAL INCOME TAX.

## SECTION 2

SECTION 2 OF THE BILL PROVIDES AN EFFECTIVE DATE FOR THE PROVISIONS
CONTAINED IN SECTION 1 AND RATIFIES AND CONFIRMS THE AUTHORITY OF THE
GOVERNOR AND OFFICIALS AND EMPLOYEES OF THE GOVERNMENT OF **GUAM** SINCE
JANUARY 1, 1951, THE DATE THE SEPARATE TAX ORIGINALLY WENT INTO EFFECT.

(Note: 1. PORTIONS OF THE SENATE, HOUSE AND CONFERENCE REPORTS, WHICH ARE
DUPLICATIVE OR ARE DEEMED TO BE UNNECESSARY TO THE INTERPRETATION OF THE
LAWS,
ARE OMITTED. OMITTED MATERIAL IS INDICATED BY FIVE ASTERISKS: *****.
2. TO RETRIEVE REPORTS ON A PUBLIC LAW, RUN A TOPIC FIELD SEARCH
USING THE PUBLIC LAW NUMBER, e.g., TO(99-495))

S. REP. 85-2176, S. Rep. No. 2176, 85TH Cong., 2ND Sess. 1958, 1958 U.S.C.C.A.N.
3647, 1958 WL 3949 (Leg.Hist.)
END OF DOCUMENT

# TABLE OF AUTHORITY

**Federal Cases**

*Bank of America, Nat. Trust and Sav. Ass'n v. Chaco,* ...............................................................11, 13
539 F.2d 1226 (9th Cir. 1976)

*Battle v. Anderson,* ....................................................................................................................9
708 F.2d 1523 (10th Cir. 1983)

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc. et al.,* ...............................17
467 U.S. 837, 104 S.Ct. 2778 (1984)

*Flores v. Government of Guam,* ..............................................................................................18
444 F.2d 284 (9th Cir. 1971)

*Government of Guam v. Koster,* ..............................................................................................18
362 F.2d 248 (9th Cir. 1966)

*Gumataotao v. Director of Department of Revenue and Taxation,* .............................11, 12, 13
236 F.3d 1077 (9th Cir. 2001)

*Gutierrez v. Ada,* .....................................................................................................................19
528 U.S. 250, 120 S.Ct. 740 (2000)

*Haeuser v. Department of Law, Government of Guam,* ..............................................................1
97 F.3d 1152 (9th Cir. 1996)

*International Paper Co. v. United States,* ................................................................................14
36 Fed.Cl. 313 (1996)

*Kourtis v. Cameron,* ..................................................................................................................8
419 F.3d 989 (9th Cir. 2005)

*Kungys v. U.S.,* ........................................................................................................................17
485 U.S. 759, 108 S.Ct. 1537 (1988)

*Laguana v. Ansell,* ..................................................................................................................19
102 F.Supp. 919 (D. Guam 1952), *aff'd* 212 F.2d 207 (9th Cir. 1954) *cert. denied* 348 U.S. 830

*Prisco v. State of New York,* ......................................................................................................9
804 F.Supp. 518 (S.D.N.Y. 1992)

*Sayre & Co. v. Riddell,* ...............................................................................11, 12, 13
395 F.2d 407, 409 (9th Cir. 1968)

*Slovacek v. U.S.,* ...............................................................................................14
40 Fed. Cl. 828 (1998)

*U.S. Dept. of Justice v. Tax Analysts,* ...........................................................14
492 U.S. 136, 109 S.Ct. 2841 (1989)

*U.S. v. Forma,* ...................................................................................................14
784 F.Supp 1132 (S.D.N.Y. 1992)

*Wade v. Mississippi Cooperative Extension Service,* ...................................8
392 F.Supp.229 (N.D. Miss. 1975)

*Wilson v. Kennedy,* ...........................................................................................19
232 F.2d 153 (9th Cir. 1956)

**State Cases**

*A.B. Won Pat Guam Intern. Airport Authority ex rel. Board of Directors v. Moylan,*...................11
2005 WL 219577 (1 Guam 2005).

*Derryberry v. Kerr-McGee Corp.,* .................................................................9
516 P.2d 813 (Okla. 1973)

*Environmental Protection Agency v Pollution Control Bd.,* ........................10
69 Ill.2d 394, 372 N.E.2d 50 (Ill. 1977)

*Ex parte Weaver,* ...............................................................................................9
570 So. 2d 675 (Ala. 1990)

*Feeney v. Commonwealth,* .................................................................................9
366 N.E. 2d 1262 (Mass. 1977)..

*Michigan State Chiropractic Ass'n v. Kelley,* ...............................................9
262 N.W.2d 676 (Mich. App. 1977)

*Opinion of the Justices,* ...................................................................................9
373 A.2d 647 (N.H. 1977)

*Perillo v. Dreher,* ..............................................................................................9
314 A.2d 74 (N.J. Super. Ct. App. Div. 1974)

*Public Defender Agency v. Superior Court*, ..................................................................9
534 P.2d 947 (Alaska 1975)

*Slezak v. Ousdigian*, ..................................................................9
110 N.W.2d 1 (1961)

*State ex rel. Board of Transportation v. Fremont, E. & M.V.R. Co.*, ..................................................................9
35 N.W. 118 (Neb. 1887)

*State ex rel. Igoe v. Bradford*, ..................................................................9
611 S.W.2d 343 (Mo. Ct. App. 1980)

**Federal Statutes**

26 U.S.C. §7122..................................................................2, 12, 14, 15, 17, 18, 19

26 U.S.C. §7654(e)..................................................................20

26 U.S.C. §7801 ..................................................................15

26 U.S.C. §7422(f)..................................................................4, 20

48 U.S.C. §1421 et seq...................................................................1, 11

48 U.S.C. §1421i..................................................................11

48 U.S.C. §1421i(a)..................................................................4

48 U.S.C. §1421i(b)..................................................................11

48 U.S.C. §1421i(c) ..................................................................2, 15

48 U.S.C. §1421i(d)(1)..................................................................1, 12

48 U.S.C. §1421i(d)(2)..................................................................2, 15, 19, 20

48 U.S.C. §1421i(e)..................................................................4, 12, 20

48 U.S.C. §1421i(f)..................................................................16

48 U.S.C. §1421i(h)(2)..................................................................11, 16

48 U.S.C. §1421(g)(d)(1). ............................................................................5, 10

48 U.S.C. §1424-4.............................................................................16

.

**State Statutes**

5 G.C.A. §30101............................................................................2

5 G.C.A. § 30102............................................................................5

5 G.C.A. § 30103............................................................................7

..

5 G.C.A. § 30109(c)............................................................................5

Public Law 28-68, Chapter II Part V, §3(e)............................................................5

**Congressional Reports**

S. Rep. No. 85-2176, 85th Cong., 2nd Sess. (1958)............................................18, 19

H.R. Rep. No. 742, 105th Cong., 2nd Sess.(1998)............................................10

**Rule**

Fed. R.Civ.P. 21 ............................................................................4

**Regulations**

28 C.F.R. 0.70............................................................................6

**Other Sources/ Treatises**

Garbis Junghans and Struntz, Federal Tax Litigation and Procedure,............................7, 16
(Warren, Gorham & Lamont, Inc. 1985).

35 Am. Jur.2d., Federal Tax Enforcement §3............................................................20