SHANNON TAITANO, ESQ.
OFFICE OF THE GOVERNOR OF GUAM
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
Telephone: (671) 472-8931
Facsimile: (671) 477-4826

RODNEY J. JACOB, ESQ.
DANIEL M. BENJAMIN, ESQ.
CALVO & CLARK, LLP
Attorneys at Law
655 South Marine Corps Drive, Suite 202
Tamuning, Guam 96913
Telephone: (671) 646-9355
Facsimile: (671) 646-9403

Attorneys for *Felix P. Camacho, Governor of Guam*

FILED
DISTRICT COURT OF GUAM
NOV - 4 2005
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, et. al., <br><br> Petitioners, <br><br> -v- <br><br> FELIX P. CAMACHO, etc., et. al. <br><br> Respondents. | CIVIL CASE NO. 04-00006 <br><br> **THE GOVERNOR OF GUAM'S REPLY PURSUANT TO THE COURT'S ORDER OF OCTOBER 13, 2005 AND IN SUPPORT OF HIS OBJECTIONS TO THE MAGISTRATE'S ORDER OF SEPTEMBER 19, 2005 REGARDING THE GOVERNOR'S MOTION TO DISQUALIFY THE ATTORNEY GENERAL** |

Governor of Guam Felix P. Camacho respectfully files this reply brief in support of his objections to the Magistrate Judge's September 19, 2005 Order. The Court's October 13, 2005 Order instructs that this reply brief should address two inquiries: (1) who represents the Government of Guam as to litigation concerning the GTIT; and (2) who has final settlement authority in this case. As will be shown, the answer to both is "The Governor."

## I. THE GOVERNOR CONTROLS TAX LITIGATION AND SETTLEMENT

### A. The Plain Language of the Organic Act Controls

"In a statutory construction case, the beginning point must be the language of the statute ...." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992). "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253-254 (1992) (citations omitted). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Id.* at 254 (quotation omitted); *see also Estate of Cowart*, 505 U.S. at 475 ("when a statute speaks with clarity to an issue[,] judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished").

The Attorney General claims that the Governor "has the same powers to administer and enforce the GTIT <u>as do Federal tax officials</u> with respect to Federal tax." (AG Br. at 1-2 (emphasis added); *see also id.* 15, 18). This is debunked by the plain language of Organic Act.

The Governor does not only have the power of "tax officials"—he is expressly granted the powers of any ***executive branch*** official. 48 U.S.C. 1421i(d)(2) states: "The Governor or his delegate shall have the same administrative and enforcement powers and remedies with regard to the Guam Territorial income tax as the Secretary of the Treasury, **and other United States officials of the executive branch**, have with respect to the United States income tax" (emphasis added). "Officials of the executive branch" must mean all "officials of the executive branch"—including the U.S. Attorney General. *See Perrin v. United States*, 444 U.S. 37, 42 (1979) ("unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning"). The Governor thus has all powers held by the U.S. Attorney General, including the power to control and settle tax cases under 26 U.S.C. § 7122.

Almost as critical as the "executive" officer language is the provision in section 1421i(d)(2) that states that the Governor has the executive branch's "administrative and enforcement powers and remedies." The use the words "enforcement" and "remedies" requires that the Governor's powers include powers associated with litigation. If the Governor cannot control litigation regarding the GTIT, he has no real "enforcement" power at all. The ways in which taxes are "enforced" or "remedied"—*e.g.* civil suits, liens—are tied to the concept of litigation. *See In re County of Orange*, 262 F.3d 1014, 1019 (9th Cir. 2001) ("we must interpret the language as it is written, 'giv[ing] effect, if possible, to every clause and word of a statute.'") (quotation omitted).

Equally instructive is the companion statute concerning how enforcement shall occur. 48 U.S.C. § 1421i(c) provides: "The administration and enforcement of the Guam Territorial income tax shall be performed by or under the supervision of the Governor. Any function needful to the administration and enforcement of the income-tax laws in force in Guam . . . shall be performed by any officer or employee of the government of Guam duly authorized by the Governor...." (emphasis added). By reiterating that the Governor supervises any type of "enforcement," and then strengthening this even further by stating he supervises "any function" needed for such enforcement, Congress is employing definitive language that cannot reasonably be read to somehow exclude tax refund litigation. *Shell Oil Co. v. Iowa Dep't of Revenue*, 488 U.S. 19, 25-26 (1988) (to determine plain meaning, the court reads the statutory provisions in question "in the context of the *entire* section in which they appear") (emphasis in original). The defense of a tax refund lawsuit, and the settlement of such a case, is a "function needful to the administration and enforcement" of the GTIT. Consequently, under the plain language rule, the Governor controls this litigation and has the power to settle this litigation on behalf of the government of Guam.

### B. In 1958, Congress Granted the Governor Control of GTIT Suits; the 1998 Creation of the Attorney General's Office Did Not Impliedly Repeal that Law

The Attorney General states that "[b]efore 1998, the Governor was able to exercise *de facto* control over both tax disputes and tax lawsuits because the Governor appointed and could remove the Attorney General. In 1998 and 1999, *however* ... Congress amended the Organic Act to allow the people of Guam to elect the Attorney General." (AG Br. at 2 (emphasis in original)). But, before 1998, the Organic Act did not mention an "Attorney General." The 1998 amendment created the office, and gave the Guam Legislature the *option* of making it elected. *See* 48 U.S.C. § 1421g(d)(1). Because the office of the Attorney General was purely a creature of local law before 1998, it is impossible that the control the Governor exercised was "*de facto*," with the real authority vested in the Attorney General. Congress could not have placed *any* Organic Act power of *any* sort in the Attorney General before 1998 because there was no guarantee that office existed.[1] The GTIT statutes regarding refund suits were created in 1958. Because only the Governor existed at that time as an Organic Act office, the only possible conclusion is that Congress meant to grant to the Governor the powers to control and settle such litigation.

Nor is there any reason to think the general creation of the Attorney General's office removed the Governor's specific powers. *Radzanower v. Touche, Ross & Co.*, 426 U.S. 148, 153 (1976) ("It is a basic principle of statutory construction that a statute dealing with a narrow, precise and specific subject is not submerged by a later statute governing a more generalized spectrum."). Indeed, what the Attorney General is truly arguing is that in creating his office in 1998, Congress impliedly repealed the powers previously granted to the Governor in 1958. The doctrine of implied repeal is "heavily disfavored" by the Ninth Circuit and the Supreme Court. *Lujan-Armendariz v. INS*, 222 F.3d 728, 743 (9th Cir. 2000). Courts will not find implied repeal "unless the repugnancy [between the statutes] is clear and positive, so as to leave no doubt as to

---

[1] The most Congress could have done is indicate that, if there was an attorney general, it was assigned such powers. That occurred in 48 U.S.C. § 1424-4, a provision that pre-dates 1998 and that contains such optional language regarding granting either a Guam attorney general or another designated officer criminal prosecution powers. (*See infra* Part I (D) (discussing this statute)). No similar provision was created as to civil GTIT litigation. This demonstrates that Congress knew how to (conditionally) grant powers to an attorney general if one existed prior to the 1998 amendment creating the office on an Organic Act level. But it chose not to.

the intent of congress." *United States v. Sixty-Seven Packages of Dry Goods*, 58 U.S. 85, 93 (1854) (implied repeal particularly inapplicable to "the interpretation of our system of revenue laws, which is very complicated"); *Lujan-Armendariz*, 222 F.3d at 743 ("repeals by implication...may be found only where two statutes are in irreconcilable conflict or where one statute entirely displaces another"). Congress acted in its 1958 amendment to grant powers to the Governor at a time when the Organic Act-level position of "Attorney General" did not exist. There is no irreconcilable conflict between the 1958 statutes and the 1998 amendment creating the "Attorney General." No implied repeal occurred.

### C. Guam's Governor Has the Powers of the U.S. Attorney General in GTIT Litigation, Not Guam's Attorney General

The Attorney General spends much of his brief citing cases that stand for the proposition that the *United States* Attorney General litigates and settles tax refund suits filed in the Court of Federal Claims. (*E.g.* AG Br. at 12-13). Those cases are hardly surprising. They follow federal law. 26 U.S.C. § 7122 provides that, with respect to "civil or criminal case[s] arising under the internal revenue laws," "the [U.S.] Attorney General or his delegate may compromise any such cases after reference to the Department of Justice for prosecution or defense." 26 U.S.C. § 7122(a). What is surprising is the Attorney General's wholly unsupported argument that 26 U.S.C. § 7122 vests in his office the powers held by the United States Attorney General.

Again, the Organic Act explicitly provides that the Governor has the powers of "officials of the executive branch." 48 U.S.C. § 1421i(d)(2). Such officials include the U.S. Attorney General. Thus, the Governor, not the Attorney General, has the authority to dictate the settlement terms in tax cases maintained against the Government of Guam. As mirrored in Guam, 26 U.S.C. § 7122(a) must be read to provide that, with respect to "civil or criminal case[s] arising under the internal revenue laws," the "Governor or his delegate may compromise any such cases."

The Attorney General's attempt to limit the Governor to the powers of the Secretary of Treasury (and other "tax officials") while he assumes the powers of the U.S. Attorney General is contrary to the statutory structure of the Organic Act. That Act seeks to mirror the federal tax system. 48 U.S.C. § 1421i(a). In that system, there is a sole executive officer ultimately in

charge of all tax matters. The Secretary of Treasury and U.S. Attorney General ultimately are appointed by and answer to the President. A division of power between the two subordinate executive officers—letting one control tax matters pre-litigation, and the other post-litigation—is a bureaucratic distinction. At the end of the day, the President can enforce a consistent policy.

To import a comparable structure as the divide between the Secretary of Treasury and U.S. Attorney General into Guam would have a very different result. The Governor and Attorney General are separately elected. Under the Attorney General's argument, he in litigation would be able to undo or countermand any tax policy the Governor set pre-litigation. This would wholly defeat the Governor's explicit GTIT powers. It also would create completely inconsistent tax policy—one policy for outside the courtroom, and another for inside.

The Attorney General argues that the phrase "other United States officials of the executive branch" excludes the U.S. Attorney General and the Department of Justice, suggesting it instead applies only to entities such as "the Internal Revenue Service Oversight Board." (AG Br. at 15). The Attorney General's only support for adopting this extremely narrow reading is his argument that the plain language would "produce a disparate treatment of the Guam taxpayer." (*Id.*) Such a narrow and bizarre reading of plain language cannot stand. *Old Colony R. Co. v. Comm'r of Internal Revenue*, 284 U.S. 552, 560 (1932) (recognizing the well established nature of the rule that "the plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense") (quoting *De Ganay v. Lederer*, 250 U.S. 376, 381 (1919)).

Granting the Governor control over settlement pre and post-litigation does not result in any material disparity between the treatment of Guam and federal taxpayers. Congress intended "to give taxpayers...subject to the [GTIT] certain remedies *equivalent* to those available under the United States income-tax laws," such as the right to sue the government for tax refunds. S. Rep. No. 85-2176, 1958 U.S.C.C.A.N. 3647, 3650 (emphasis added). The fact that the Governor of Guam, not the Attorney General, has the ultimate settlement authority does not affect taxpayer's remedies—except by ensuring a consistent policy (much as the President achieves federally).[2]

---

[2] The Governor's budget power also makes his role in settlements vital. (Sept. 12, 2005 Order in *Simpao* at 8). *In re Request of Gutierrez*, 2002 Guam 1, at ¶ 39, 2002 WL 187459, *12

### D. The Different Language Used in the Criminal and Civil Enforcement Provisions of the GTIT Underscores the Governor's Point in this Civil Case

The Attorney General tries to assert his equivalency to the U.S. Attorney General by noting two statutes regarding the criminal enforcement of GTIT laws, 48 U.S.C. §§ 1421i(f) and 1424-4. (AG Br. at 16). Section 1421i(f) provides: "Any act or failure to act with respect to the Guam Territorial income tax which constitutes a criminal offense under chapter 75 of subtitle F of the Internal Revenue Code of 1986, or the corresponding provisions of the Internal Revenue Code of 1939, ... shall be an offense against the government of Guam and may be prosecuted in the name of the government of Guam by the appropriate officers thereof." Section 1424-4 states that any references in "part II of Title 18 and of Title 28, United States Code ... shall apply to the District Court of Guam and appeals therefrom; except that the terms, 'Attorney for the government' and 'United States attorney', as used in the Federal Rules of Criminal Procedure, shall, when applicable to cases arising under the laws of Guam, including the Guam Territorial income tax, mean the Attorney General of Guam or such other person or persons as may be authorized by the laws of Guam to act therein."

These *criminal* statutes prove the Governor's point in this *civil* case. In the criminal statutes, Congress specifically set out *different* "enforcement" procedures by specifically permitting criminal prosecutions for GTIT violations by the "the appropriate officers" of the government of Guam[3] (which is usually the Attorney General).[4]

Yet, having demonstrated its understanding of how to draft language allowing the

---

(Guam 2002) ("The Governor's duties to supervise and control the executive branch for the purpose of the proper execution of the laws includes the power of expenditure.").

[3] Although beyond the scope of this case, 48 U.S.C. §§ 1421i(f) and 1424-4 ought to be read in context with 48 U.S.C. §§ 1421i(c) & (d)(2) such that the Governor does have a role in GTIT criminal prosecutions as those fall within the language regarding "[a]ny function needful" for the enforcement of the GTIT. But what matters here is, even reading those statutes as the Attorney General does, they support the Governor's position as to control of this civil case.

[4] Overreaching into an issue not before the Court, the Attorney General claims his criminal prosecution powers are "exclusive." That is not true under 48 U.S.C. §§ 1421i(f) and 1424-4, which speak of "officers" and "person*s*." The courts of Guam have held that where there is a conflict of interest (as where the Attorney General is the focus of a criminal prosecution), the Governor may appoint a special prosecutor. *People of Guam v. Moylan*, Guam Super. Ct. Case CM864-03 (Nov. 16, 2004 Order) at 10 ("The Defendant argues that under the Organic Act, only the Attorney General's Office has the exclusive authority to prosecute crimes on Guam as the Chief Legal Officer. However, the Organic Act does not expressly grant the Attorney General or his office with exclusive authority over prosecution in special cases as this....").

appointment of "appropriate officers" in criminal cases, Congress has included no equivalent language in civil cases. 48 U.S.C. § 1421i(h)(2) simply states that tax refund suits are brought against the government of Guam, *without* including any equivalent language regarding their defense by "appropriate officers." Thus, there is nothing in this civil statute that would permit any exception to be made to the clear directive of 48 U.S.C. § 1421i(c)&(d)(2) that the Governor has all executive powers and supervises all enforcement of GTIT. This is further confirmed in 48 U.S.C. § 1421i(g)&(h)(4), which are the provisions regarding other civil remedies and enforcement of the GTIT, namely the provision governing tax liens and tax collection actions. These civil provisions similarly contain *no* language opening up such actions to being undertaken by "appropriate officers." This similarly indicates that as to civil cases Congress believed it spoke quite clearly in 48 U.S.C. §§ 1421i(c)&(d)(2). Thus, the criminal code provisions, with their differing language, simply reinforce Congress' clear choice in civil cases to leave all enforcement and remedies with the Governor.

### E. Legislative History Cannot Contradict the Statute's Plain Language, and Does Not Support the Attorney General Even if It Could

The Attorney General raises various arguments regarding legislative history. (AG Br. at 18-19). However, the court looks "first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress. Then, *if* the language of the statute is unclear, we look to its legislative history." *United States v. Boren*, 278 F.3d 911, 914-915 (9th Cir. 2002) (citing to *Alarcon v. Keller Indus., Inc.*, 27 F.3d 386, 389 (9th Cir. 1994) (emphasis added); *see Conn. Nat'l Bank*, 503 U.S. at 254 ("Germain says that legislative history points to a different result. But we think that judicial inquiry into the applicability of § 1292 begins and ends with what § 1292 does say and with what § 158(d) does not."). The statute here is clear; legislative history never enters the equation.

But even if it did, contrary to the Attorney General's claims, the legislative history does not indicate that Congress intended to "limit[] the Governor's powers to administer and enforce the tax to those reserved to a 'tax official.'" (AG Br. at 18.) Rather, Congress stated that, with respect to "enforcement powers," the Governor has the powers of United States tax officials.

1958 U.S.C.C.A.N. 3647, 3652. That simply indicates an intent to embrace all powers of tax officials *at minimum*, not to somehow limit the plain meaning of the phrase "other United States officials of the executive branch" to only the powers of tax officials.

Indeed, the history of that amendment in 1958 indicates that Congress's concern was in expanding the Governor's powers in light of recent cases, such as *Wilson v. Kennedy*, 232 F.2d 153 (9th Cir. 1956), where taxpayers claimed that the Government of Guam was "without authority" to collect income taxes. 1958 U.S.C.C.A.N. at 3647, 3652. Never has Congress suggested that this articulation of the Governor's power to enforce the tax laws somehow strips the Governor of his authority to also administer and determine tax policy. Indeed, the Attorney General misstates the holding in *Wilson v. Kennedy*. The court never limited the Governor's authority to enforcing Guam tax law "insofar as [he] may collect taxes." (AG Br. at 19.) Rather, holding that "the Government of Guam [is] the proper [tax] enforcement agency," the court went on to specifically name the Government of Guam, the Director of the Department of Finance, and the Commissioner of Revenue and Taxation as being "clothed with the authority to enforce the territorial income tax." *Wilson*, 232 F.2d at 154-155. The court conspicuously left out the Attorney General, even though he was the fourth official named in the suit. *Id.*

### F. The Attorney General's Powers Are Those Of A Lawyer, Not A Client

In arguing that he controls this litigation on behalf of the government of Guam, the Attorney General stresses that tax refund lawsuits are only maintained against the Government of Guam and that Congress and the Guam legislature respectively have designated him "chief legal officer"[5] and authorized him to represent the Government of Guam. (AG Br. 4-5 (citing 48 U.S.C. § 1421g(d)(1), 5 G.C.A. §§ 30102-30103 and 30109)).

The Attorney General is conflating *representation* of the government as "counsel" with

---

[5] In the U.S. Code, "chief legal officer" just means "attorney general." *E.g.* 15 U.S.C. § 15g(1) ("The term 'State attorney general' means the chief legal officer of a State...."); *accord* 15 U.S.C. §§ 5714(2), 6106(1); 42 U.S.C. § 1997c(b)(1)(A). As the Oklahoma Supreme Court has held, it is impossible to see how "legislative investiture of the mantle of 'Chief Law Officer' alone confer[s] upon the office a stature which it did not already have...." *Cartwright v. Georgia-Pacific Corp.*, 663 P.2d 718, 722-23 (Okla. 1983); *Williams v. McKiethen*, 1990 WL 265971, at *5 (M.D. La. July 20, 1990) ("chief legal officer" is just an explanatory phrase "without substantive meaning with regard to powers, function or duties").

*control* of the government as the "client." It is due to the Attorney General's constant confusion of the roles of attorney and client that the Governor has had to bring the motion to disqualify. It also has been the subject of at least seven Orders of the District Court of Guam by at least five different judges, all reaching the same decision that the Attorney General is representing clients who have a right to be heard and put forth their policies as government officers charged with executing particular laws.[6] Significantly, the Guam Supreme Court reached the same conclusion when this issue arose before it. *Pangelinan v. Gutierrez*, Guam Sup. Ct. CVA 02-003 (Feb. 10, 2003 Order) at 1 (requiring client's consent before Attorney General could withdraw brief).

These consistent orders all reflect a fundamental policy. Attorneys *represent* their clients. Clients control the ultimate objectives of a representation, including crucial issues such as settlement. GRCP 1.2(a) (client defines objectives of representation and lawyer shall abide by client's decision on settlement). This principle carries over into cases where an attorney general is representing government officials. *E.g. State ex rel. Amerland v. Hagan*, 175 N.W. 372, 374 (N.D. 1919) (attorney general's role as a lawyer "who happens to be an officer of the government" does not let him step "into the shoes" of a client "in opposition or contrary to the wishes and demands of his client or the officer or department concerned"), *overruled on other grounds in Benson v. North Dakota Workmen's Compensation Bureau*, 283 N.W.2d 96 (N.D. 1979); *Chun v. Bd. of Trustees*, 952 P.2d 1215, 1239 (Haw. 1998) ("Having perceived herself to be in a conflict of interest with the Board, the Attorney General was ethically obligated to recommend retention of other counsel ...").[7] This includes cases involving the power to settle a

---

[6] Except for the Orders in this case, these Orders (and three other authorities) are in the compendium filed herewith. They are: (1) District Judge Munson's October 29, 2004 Orders in the Proposal A litigation; (2) Magistrate Judge Manibusan's February 9, 2005 Order in this case; (3) Magistrate Judge Manibusan's March 2, 2005 Order in this case; (4) Magistrate Judge Manibusan's March 16, 2005 Report & Recommendation in Proposal A; (5) District Judge Carter's May 10, 2005 Order in Proposal A; (6) District Judge Marshall's August 12, 2005 Order in this case; and (7) District Judge Martinez's September 12, 2005 Order in *Simpao*.

[7] *Accord Tice v. Dep't of Transp.*, 312 S.E.2d 241, 245 (N.C. App. 1984) ("[T]he legislature intended that when the Attorney General represents a State department...the traditional attorney-client relationship should exist."); *State ex rel. Howard v. Oklahoma Corp. Comm'n*, 614 P.2d 45, 50 (Okla. 1980) ("any semblance of even-handed justice[] must require that [the Commission] be represented ... by counsel who can and will ably and conscientiously express its views"); *Santa Rita Mining Co. v. Dept. of Property Valuation*, 530 P.2d 360, 363 (Ariz. 1975) (similar).

case. *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 842 (5th Cir. 1993) (en banc) ("The Attorney General's power to settle for his clients is certainly no less than that of other lawyers, but ... [it is not] any greater. No lawyer may forge a settlement agreement over the express objection of his client.").

The authority of the Attorney General to *represent* the Government of Guam is not unlimited. In *A.B. Won Pat Guam Int'l Airport Auth. v. Moylan*, the Guam Supreme Court held that the Attorney General of Guam "is charged with all the common-law powers and duties pertaining to the office, *except insofar as they have been expressly restricted or modified by statute.*" 2005 Guam 5, at ¶ 62, 2005 WL 291577, *17, *cert. denied* 126 S.Ct. 338 (2005) (emphasis added). Here, the Attorney General's authority to represent the Government of Guam is "expressly restricted" by the Organic Act's grant to the Governor of "ultimate and exclusive authority" to administer and enforce tax laws. (February 9, 2005 Order at 6 (citing 48. U.S.C. § 1421i(d)(2)).[8] Because the Attorney General has proven unable and unwilling to represent the Governor's positions on tax policy, he is similarly unfit to represent the Government of Guam. To hold otherwise would directly contradict the previous Order that "the Attorney General should not have the authority to override the Governor's decisions as they relate to the Guam Territorial income tax laws." (August 12, 2005 Order at 4-5 (adopting Magistrate's earlier Order)).

The Attorney General claims "the sole authority to determine the legal positions of the government of Guam." (AG Br. at 8.) He cites *Envt'l Protection Agency v. Pollution Control Bd.*, 372 N.E. 2d 50, 53 (Ill. 1977), for the proposition that the Attorney General determines coherent legal policy. (AG Br. at 10.) To the contrary, it is established that it is "the Governor [who] has the responsibility for setting a 'coherent and uniform tax policy' for the island,"

---

[8] Even outside the GTIT context, when the Attorney General represents an executive branch official regarding his or her executive functions, that representation is limited to representing that client because the control of all executive functions is expressly placed in the Governor of Guam by 48 U.S.C. § 1422. That statute vests in the Governor: (1) "The executive power of Guam...."; (2) "[G]eneral supervision and control of all the departments, bureaus, agencies, and other instrumentalities of the executive branch of the government of Guam"; and (3) "Responsib[ility] for the faithful execution of the laws of Guam and the laws of the United States applicable in Guam." *See also Govt. of Guam v. United States*, Dist. Ct. of Guam Civil Case No. 82-0001 (Aug. 3, 1982 Memorandum Order) at 6 (representation of the government "is clearly an executive function").

without interference from the Attorney General. (March 2, 2005 Order at 4.) And, *Environmental Protection Agency* cannot be guidance here. The applicability of Illinois interpretations of the Attorney General's powers to Guam has been rejected by Guam's Supreme Court. As the court noted, Illinois has been criticized for giving its attorney general "perhaps the broadest power of all the Attorney Generals within the United States." *Airport Auth.*, 2005 Guam 5, at ¶ 52, 2005 WL 291577, at *14. As the Guam Supreme Court held: "[O]nly two relevant words in the language in our Organic Act can be found in the 1970 Illinois constitution: legal officer. It is therefore unreasonable to assume, as the Attorney General asserts, that 'the model for Guam's Attorney General was based upon the Illinois Attorney General Constitution,' and even more unreasonable that this court should feel compelled to follow the Illinois court's interpretation." 2005 Guam 5, at ¶ 49, 2005 WL 291577, at *13.

The Attorney General launches into a generalized discussion (backed by a string cite footnote) of a supposed need to centralize power in attorney generals. (AG Br. at 8-10 & n. 7). His claim is that, in "[m]any jurisdictions . . . the views of the Attorney General . . . prevail when a conflict arises between his views and those of the agency officers whom the Office of the Attorney General represents." (AG Br. at 9.) Noticeably absent from the footnote is a *single* case standing for the proposition that the Attorney General's views should prevail when they conflict with the position of the governmental officer or entity actually authorized to dictate policy on the relevant issue. In part, the Attorney General is citing cases that deal with situations where an attorney general is exercising nebulous public interest powers.[9] In any case, none of his cites involve representations where there are specific grants of power to state officials to make the policy decision, as is the case here under U.S.C. §§ 1421i(c)&(d)(2). Cases that address this issue have come out squarely against the Attorney General, holding that the views of the "policy-making state governmental instrumentality"–and not the attorney general–must prevail. *See, e.g.*,

---

[9] *E.g., Mich. State Chiropractic Assoc. v. Kelley*, 262 N.W.2d 676, 677 (1977) (attorney general's "authority to act on behalf of the people of the State of Michigan," includes "authority to sue to abate a public nuisance"); *State ex rel. Derryberry v. Kerr-McGee Corp.*, 516 P.2d 813, 818 (1973) (reasoning that because "[t]he Attorney General has authority to bring law suits," he also has "the authority to settle and dismiss a suit brought by him on behalf of the State").

*Chun*, 952 P.2d at 1234 (attorney general may not "control the course of litigation as to advance her view of the 'public welfare' when it squarely conflicts with the substantive position taken by the policy-making state governmental instrumentality"); *People ex rel. Deukmejian v. Brown*, 29 Cal. 3d 150, 157-158 (1981) (where the governor has the power "to determine the public interest," the attorney general must abide by the governor's determination).[10]

## II. THE ATTORNEY GENERAL SHOULD BE DISQUALIFIED

Completely absent from the Attorney General's opposition brief is any mention as to why he should not be disqualified. The Magistrate has permitted the Attorney General to remain in this case to represent some type of "public interest" and because he wished to avoid "mechanical application" of the rules of professional conduct. (Magistrate's Order at 4-5). Of course, this approach does not defeat the Governor's ability to ultimately control this litigation or settle this case, in the sense that the Governor has these powers whether or not the Attorney General is disqualified. Nonetheless, respectfully, the Magistrate Judge's reasoning was in error. The Attorney General's only reason for being in this case as counsel is to represent the defendant Government of Guam, not to play some type of nebulous "public policy" role. The Attorney General plainly disagrees with the Governor on government GTIT policy, and will not enforce (and actually will seek to block) that policy in litigation. But the policy is the Governor's to set under the Organic Act. And, the Attorney General has not merely acted under a non-mechanical application of the rules of professional conduct; he rather has acted as though the rules do not apply to him at all. He should be disqualified from this action.

DATED this 4th day of November, 2005.

OFFICE OF THE GOVERNOR OF GUAM
CALVO & CLARK, LLP
Attorneys for Defendant Felix P. Camacho,
Governor of Guam

By: _____
DANIEL M. BENJAMIN

---

[10] The Attorney General also seeks to relitigate the issue of whether the Governor or his delegates are proper parties to the suit. (AG Br. 4). Yet, the Attorney General has produced no evidence to counter the Court's prior Order that the Governor is properly in a GTIT suit where the Attorney General refuses to represent the Government of Guam according to the policy interests and positions of the Governor. (September 12, 2005 Order in *Simpao*).