1  **SHANNON TAITANO, ESQ.**
   **OFFICE OF THE GOVERNOR OF GUAM**
2  Ricardo J. Bordallo Governor's Complex
   Adelup, Guam 96910
3  Telephone:    (671) 472-8931
4  Facsimile:    (671) 477-4826

5  **RODNEY J. JACOB, ESQ.**
   **DANIEL M. BENJAMIN, ESQ.**
6  **CALVO & CLARK, LLP**
7  Attorneys at Law
   655 South Marine Corps Drive, Suite 202
8  Tamuning, Guam 96913
   Telephone:    (671) 646-9355
9  Facsimile:    (671) 646-9403

10  Attorneys for *Felix P. Camacho, Governor of Guam*

11

12                    IN THE UNITED STATES DISTRICT COURT
13                              DISTRICT OF GUAM

14
    JULIE BABAUTA SANTOS, et. al.,            CIVIL CASE NO. 04-00006
15
                                             **THE GOVERNOR OF GUAM'S**
16                      Petitioners,          **COMPENDIUM OF AUTHORITIES IN**
                                             **SUPPORT OF HIS REPLY**
17          -v-                               **PURSUANT TO THE COURT'S**
                                             **ORDER OF OCTOBER 13, 2005 AND**
18  FELIX P. CAMACHO, etc., et. al.          **IN SUPPORT OF HIS OBJECTIONS**
                                             **TO THE MAGISTRATE'S ORDER OF**
19                      Respondents.          **SEPTEMBER 19, 2005 REGARDING**
                                             **THE GOVERNOR'S MOTION TO**
20                                           **DISQUALIFY THE ATTORNEY**
                                             **GENERAL**
21

22

23

24

25

26

27

28

FILED
DISTRICT COURT OF GUAM
NOV :- 4 2005 ᵧP
MARY L.M. MORAN
CLERK OF COURT

ORIGINAL

Governor of Guam Felix P. Camacho respectfully submits this compendium of authorities in support of his reply brief that he is today filing in support of his objections to the Magistrate Judge's September 19, 2005 Order. This compendium includes Guam court decisions cited in the Governor's reply brief that are not found on standard research websites such as Lexis and Westlaw, but located at the Guam Territorial Law Library and/or in the records of the Guam Courts. It is provided for the Court's convenience. The authorities included are as follows:

Tab 1: *Govt. of Guam v. United States*, Dist. Ct. of Guam Civil Case No. 82-0001 (August 3, 1982 Memorandum Order).

Tab 2: *Pangelinan v. Gutierrez*, Guam Sup. Ct. CVA 02-003 (February 10, 2003 Order)

Tab 3: *People of Guam v. Moylan*, Guam Super. Ct. Case CM864-03 (November 16, 2004 Order).

Tab 4: *Lourdes P. Aguon-Schulte v. The Guam Election Commission, et. al.,* Guam District Ct. CVA 04-00045 (October 29, 2004 Order) and *Jay Merrill v. The Guam Election Commission, et al.,* Guam District Ct. CVA 04-00046 (October 29, 2004 Order).

Tab 5: *Lourdes P. Aguon-Schulte v. The Guam Election Commission, et. al.,* Guam District Ct. CVA 04-00045 *and Jay Merrill v. The Guam Election Commission, et al.,* Guam District Ct. CVA 04-00046, (March 16, 2005 Findings and Recommendation by Magistrate Judge).

Tab 6: *Lourdes P. Aguon-Schulte v. The Guam Election Commission, et. al.,* Guam District Ct. CVA 04-00045 *and Jay Merrill v. The Guam Election Commission, et al.,* Guam District Ct. CVA 04-00046, (May 10, 2005 Order).

//
//
//
//
//
//
//

Tab 7: *Mary Grace Simpao v. Government of Guam,* Guam District Ct. CVA 04-00049

(September 12, 2005 Order re: Motion to Intervene).

DATED this 4th day of November, 2005.

OFFICE OF THE GOVERNOR OF GUAM
CALVO & CLARK, LLP
Attorneys for Defendant Felix P. Camacho,
Governor of Guam

By: _____
DANIEL M. BENJAMIN

# TAB 1

FILED
District Court of Guam
Agana, Guam

AUG 3 - 1982

CLERK

GOVERNMENT OF GUAM,           )
                              )
              Plaintiff,      )
                              )
        vs.                   )
                              )
UNITED STATES OF AMERICA,     )
                              )
              Defendant.      )
_____)

CIVIL CASE NO. 82-0001

MEMORANDUM ORDER

This quiet title action was instituted by Howard Trapp, Esq., for and in the name of the Government of Guam on January 6, 1982, pursuant to Title 28 USC §2409a. Plaintiff is claiming, under the authority of the Organic Act of Guam, more specifically 48 USC §1421f(a), present ownership in fee simple of certain real property in Guam condemned by the then Naval Government of Guam and quit-claimed by said Naval Government of Guam to the Defendant by a deed dated July 31, 1950, and filed for record with the Land Registrar of Guam on August 4, 1950, (Presentation No. 22063).

The Defendant filed a Motion to Dismiss or in the alter-native for Summary Judgment on April 5, 1982, contending that Howard Trapp, as a privately practicing attorney is not authorized to represent the Government of Guam and that the suit is not timely filed.

----------------------

----------------------

----------------------

The Defendant's Motion for Summary Judgment came on regularly to be heard by this Court on July 2, 1982. The Plaintiff was represented by Howard Trapp and the Defendant was represented by Milton E. Franke, Special Assistant U.S. Attorney.

The Court will only address the issue of Attorney Trapp's authority to institute a suit for and in the name of the Government of Guam.

Section 7001 and 7005 of the Government Code of Guam provided, at the time Public Law 16-53 §10 was enacted and this suit was instituted, as follows:

> "§7001.  Department of Law, cognizance.
>
> The Department of Law shall have cognizance of all legal matters in which the government of Guam is in anywise interested. Except as otherwise provided by this Section, the Attorney General shall not delegate to any attorney in private practice in Guam the collection of any account or other obligation owing to the government of Guam or to any agency or instrumentality thereof. The Attorney General may contract with private attorneys within the territory of Guam for the prompt collection of debts owned public corporations including but not limited to the Guam Power Authority, Guam Transit Authority, and the Guam Telephone Authority. For purposes of this Section, any attorney who contracts with the Attorney General shall be deemed to be an Assistant Attorney General. It shall have cognizance of all matters pertaining to public prosecution." [Enacted 1952; Amended by P.L. 9-150, effective February 23, 1968; Amended by P.L. 10-1, effective February 3, 1969; Amended by P.L. 12-199, effective January 10, 1975.]
>
> "§7005.  Divisions of Office.
>
> The Department of Law is composed of a Criminal Division and a Civil Division, under the general cognizance of the Attorney General. Each division shall be headed by a Deputy

> Attorney General. Every reference in law, rule
> or regulation to the Island Attorney, as to
> criminal matters, shall read and mean the Deputy
> Attorney General in charge of the Criminal
> Division. Every reference in law, rule or
> regulation to the Island Attorney as to civil
> matters, shall be read and mean the Deputy
> Attorney General in charge of the Civil Division."
> [Added by P.L. 10-1, effective February 3, 1969.]

The Affidavit of Jack Avery, the Attorney General of Guam, sets forth that he did not authorize Howard Trapp to represent the interest of the Government of Guam in this action pursuant to Section 7001 of the Government Code of Guam, nor pursuant to any other law or statute of the Territory of Guam and that Howard Trapp is not a designated or Special Assistant Attorney General for the Territory of Guam for any action pending before the District Court of Guam.

Attorney Trapp represents that he is authorized to institute this action pursuant to Public Law 16-53, Section 10 and a Professional Services Agreement entered into with the Sixteenth Guam Legislature.

Public Law 16-53, §10 provides:

> "Section 10. The Legislature of Guam may
> employ and fix the compensation of special
> private counsel to institute and prosecute causes
> of action and other legal action for and in the
> name of the government of Guam and against the
> United States of America and other parties to
> quiet the title of the government of Guam to the
> property owned by the United States of America
> and employed by the Naval Government of Guam in
> the administration of the civil affairs of the
> inhabitants of Guam."

Section 10 of the Professional Services Agreement sets forth the following duties of Attorney Trapp:

## "DUTIES OF CONTRACTOR

10. The Contractor agrees to provide the following services to the Legislature:

A. Legislature retains contractor to represent the Government of Guam as its attorney at law to institute and prosecute causes of action and take appeals and other legal actions for and in the name of the Government of Guam and against the United States of America....."

The Defendant argues that Public Law 16-53 §10 cannot provide Trapp with the necessary authority to institute this action since it is in violation of the doctrine of separation of powers set forth in the Organic Act of Guam, Title 48 USC §1421a.

Title 48 USC §1421a (1982 Supp.) provides in pertinent part:

"...the Government of Guam shall consist of three branches, executive, legislative, and judicial...."

The Executive, Legislative and Judicial Branches of the Government of Guam have only those powers conferred by Congress. Rodriguez v. Gaylord, 429 F.Supp. 797, 800(D.C. Hawaii, 1977).

Title 48 USC §§1422 and 1422c(a) sets forth the powers and duties of the Executive Branch as follows:

§1422: "The executive power of Guam shall be vested in an executive officer whose official title shall be the 'Governor of Guam'....

The Governor shall have general supervision and control of all the departments, bureaus, agencies, and other instrumentalities of the executive branch of the government of Guam.... He shall appoint, and may remove, all officers and employees of the executive branch of the government of Guam, except as otherwise provided

in this or any other Act of Congress, or under the laws of Guam.... He shall be responsible for the faithful execution of the laws of Guam and the laws of the United States applicable in Guam...".

§1422c(a): "The Governor shall, except as otherwise provided in this chapter or the laws of Guam, appoint, by and with the advise and consent of the legislature, all heads of executive agencies and instrumentalities...."

Title 48 USC §1423a defines the power of the Legislature as follows:

"The legislative power of Guam shall extend to all subjects of legislation of local application not inconsistent with the provisions of this chapter, and the laws of the United States applicable to Guam...".

It is clear that "the Guam Legislature's power to legislate is prescribed and limited by the Organic Act of Guam, by other acts of Congress and by the provisions of the United States Constitution." United States v. Borja, 191 F.Supp. 563, 566 (D.C. Guam, 1961). Therefore, after examining 48 USC §1423a, this Court comes to the same conclusion as did the Supreme Court of Guam in People v. Camacho, 1 Guam Rep. 501, 506 & 507 (1975), namely, that the Legislative Branch of the Government of Guam does not have an unlimited right of appointment of Executive Branch officers and employees.

The function of the Legislature is not to execute laws, but to make or enact them. Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 488 (1923). The appointment of a private counsel to institute and prosecute actions for and in the name of the Government of Guam cannot be construed as a legislative or judicial

function. It is clearly an executive function. Therefore, the Legislature by enacting Public Law 16-53 §10 and appointing private counsel to institute and prosecute causes of action and other legal action for and in the name of the Government of Guam, and fixing his compensation, has acted in excess of its authority and power by engaging in a purely executive function. The Court therefore finds Public Law 16-53 §10 in violation of the doctrine of separation of powers set forth in the Organic Act of Guam.

It is the further opinion of this Court that two branches of the Government of Guam cannot be vested with the authority to institute and prosecute causes of action and take appeals and other legal action for and in the name of the Government. This would, in effect, destroy the Executive Branch of the Government of Guam for the Legislature could at anytime enact legislation appointing private counsel to institute and prosecute in the name of the Government of Guam to challenge any Executive Branch position or decision. Not only would this violation of the doctrine of separation of powers amount to a dangerous concentration of power in the Legislative Branch, Chadha v. Immigration and Naturalization Service, 634 F.2d 408, 422 (9th Cir., 1980), but, would also result in chaos.

The only case cited by the Plaintiff on the separation of powers issue is Nixon v. Administrator of General Services, 433 U.S. 425 (1977). This Court does not find that case to be controlling in the case at bar.

----------------------

After careful consideration of all pleadings, memoranda of points and authorities, affidavits, and oral argument, and based on the foregoing, Defendant's Motion for Summary Judgment is hereby granted.

SO ORDERED.

Dated this 2nd day of August, 1982.

CRISTOBAL C. DUENAS
JUDGE, DISTRICT COURT OF GUAM

ENTERED IN CIVIL DOCKET 8-3-82

# TAB 2

# IN THE SUPREME COURT OF GUAM

VICENTE C. PANGELINAN
JOSEPH C. WESLEY,

     Plaintiff-Appellants.
     vs.

CARL T.C. GUTIERREZ, Governor,
JOHN F. TARATINO, Attorney General,
JAMES H. UNDERWOOD, Director of
the Department of Public Works;
EDWARD G. UNTALAN, Administrator
of the Guam Economic Development
Authority; CARL J.C. AGUON, Director
of the Department of Land Management;
Y'ASELA A. PEREIRA, Treasurer of
Guam; GOVERNMENT OF GUAM,

     Defendant-Appellee.

GUAM RESOURCE RECOVERY
PARTNERS,

     Intervening Defendant-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

SUPREME COURT CASE NO. 02-003
SUPERIOR COURT CASE NO. 212-00

**ORDER**

This matter is before the court upon the motion of Defendant-Appellee Douglas B. Moylan, Attorney General of Guam, to withdraw the government's brief. On February 6, 2003, at the oral argument in this matter, the court ordered the Attorney General to submit the written consent of all named government parties to withdraw the brief. The Attorney General submitted such written consent on February 6, 2003. Based upon the consent of all named government parties the court hereby grants the Attorney General's motion to withdraw brief.

At the oral argument, the Attorney General requested leave of the court to file a supplemental brief opposing the position of the Intervening Defendant-Appellee Guam Resources Recovery Partners ("GRRP"). This request was not made in the Attorney General's motion to withdraw brief. Moreover, the Attorney General's brief in reply to GRRP's opposition brief stressed that the filing

1  of a new brief or the making of certain arguments at oral argument were not issues being brought

2  before the court. The court finds that the Attorney General's last minute oral request to file a

3  supplemental brief in opposition to GRRP's positions is inappropriate, untimely, and without merit.

4  We hereby deny the request to file a supplemental brief and admonish the Attorney General for

5  making such a request just before the issues on appeal were to be orally argued.

6       **SO ORDERED**, this 10th day of February, 2003.

7

8  Frances M. Tydingco-Gatewood                    Peter C. Siguenza, Jr.

9  _____        _____
10  FRANCES TYDINGCO-GATEWOOD                    PETER C. SIGUENZA, JR.
     Chief Justice, Acting                              Justice Pro Tempore

11

12

13                        John A. Manglona

14                    _____
                              JOHN A. MANGLONA
                              Designated Justice

15

16

17

18

19

20       I do hereby certify that the foregoing
         is a full true and correct copy of the
21       original on file in the office of the
         clerk of the Supreme Court of Guam.
         Dated at Hagåtña, Guam

22                  FEB 1 0 2003

23

24       _____
         Deputy Clerk, Supreme Court of Guam

25

26

27

28                              2

# TAB 3

LAW
LIBRARY

FILED
SUPERIOR COURT
OF GUAM

2004 NOV 16 AM 11: 02

ALFREDO M. BORJAS
CLERK OF COURT
BY:

# IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| PEOPLE OF GUAM, | ) | CRIMINAL CASE NO. CM864-03 |
| | ) | |
| vs. | ) | **DECISIONS AND ORDER** |
| | ) | **RE MOTIONS TO DISMISS** |
| DOUGLAS B. MOYLAN, | ) | **& MOTION TO DISQUALIFY** |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

This matter came before the Honorable Katherine A. Maraman on May 7, 2004 on Defendant's Motion to Dismiss the Complaint and on September 17, 2004 on Defendant's Motion to Disqualify and Second Motion to Dismiss the Complaint. Attorney Louie J. Yanza appeared for the Government on May 7, 2004 and September 17, 2004. Attorney Michael J. Berman appeared for and with the Defendant on May 7, 2004. Attorney Gerald Gray appeared for and with the Defendant on September 17, 2004. Having considered the oral and written arguments of the attorneys for the parties and relevant documents in the record, the Court now issues its decisions.

## BACKGROUND

On July 23, 2003, the Office of the Attorney General, through the Chief Prosecutor, sent a letter to the Governor requesting that he appoint a special prosecutor in this matter. On July 25, 2003, Governor Camacho appointed Attorney D. Paul Vernier, Jr. as Special Prosecutor and on October 20, 2003, the Governor appointed Attorney Louie J. Yanza as Special Prosecutor.[1] On September 29, 2003, a complaint was filed charging the Defendant with four counts of Family Violence (as Misdemeanors) and two counts of False Statement Under Oath (as Misdemeanors).

On April 14, 2004, the Defendant filed a Motion to Dismiss the Complaint. The Government

---

[1] In this decision referred to as "Special Prosecutor" or "Vernier".

People v. Douglas B. Moylan
**Decision and Order**
Criminal Case No. CM0864-03

---

filed an opposition on April 13, 2004; the Defendant replied on May 3, 2004.

On August 2, 2004 the Defendant filed a Motion to Disqualify the Special Prosecutors in this matter. The Government filed an opposition on September 8, 2004; the Defendant replied on September 15, 2004.

On August 12, 2004 the Defendant filed a second Motion to Dismiss the Complaint. The Government filed an opposition on September 8, 2004; the Defendant replied on September 15, 2004.

### DISCUSSION

The Defendant has moved to dismiss the complaint and dismiss the special prosecutors on several grounds.

**A.      Motion to Dismiss re Special Prosecutor's Scope of Authority**

Did Vernier exceed his authority as special prosecutor when charging the Defendant with Family Violence and False Statements under oath (misdemeanors)?

The Defendant argues that the appointment letter from the Governor only allowed the Special Prosecutor to prosecute the Defendant if an arrest or indictment were filed. Because he was not arrested and an indictment was not filed, Defendant claims the special prosecutor exceeded his appointment authority when he brought misdemeanor charges by filing a magistrate's complaint.

Additionally, Defendant argues that the special prosecutor was not authorized to charge future acts (lying under oath). And, Defendant contends that the special prosecutor was not authorized to charge any acts relating to Doris Leon Guerrero because the events alleged by Deborah Crisostomo had nothing to do with Leon Guerrero. Although there was an amendment to the Agreement for Professional Services, Defendant claims that the amendment is *ultra vires* to the appointment letter and should not be construed as an amendment to the Governor's appointment

2

letter.

The Special Prosecutors argue that they did not exceed their appointment authority because in the Scope of Services to the amended Agreement for Professional Services, they are charged with investigating and prosecuting the Defendant for family violence and lying under oath. Because the language of the Governor's appointing document unambiguously and expressly gives the special prosecutor broad authority to investigate and prosecute the Defendant, Vernier argues he did not exceed his authority.

On July 23, 2004, the Chief Prosecutor from the Attorney General's Office sent a letter to the Governor requesting that a special prosecutor be appointed in this case because there was a conflict with the attorneys in the Office. As a result, on July 25, 2003, the Governor appointed Vernier as special prosecutor. In the Governor's appointment letter, Vernier was appointed to assist the Guam Police Department with investigating the case and to represent the Territory's interest if an arrest or indictment was filed.

In the amended agreement, signed September 15, 2003 the special prosecutor's authority was broadened. Specifically it states that the special prosecutor's authority extends to:

> [P]roviding the Guam Police Department **with any necessary investigative advice, reviewing, determining and prosecuting, if deemed warranted, the criminal complaint filed against Douglas Moylan and related official misconduct matters such as false statements,** misuse of Government resources and employees, **and any related matters arising from or connected to the initial complaint.** [emphasis supplied]

Clearly the amended agreement did not strictly limit the special prosecutor's authority to prosecute the Defendant only if an arrest was made or an indictment was filed. The special prosecutor in this case had the authority to charge the Defendant with the family violence charges as well as the charges of false statements under oath. The Defendant cites *State v. Wantz*, 2003

3

WL23100333 (Ohio App. 11 Dist.)) for the proposition that a special prosecutor cannot exceed his appointment authority. The Court finds that the special prosecutor did not exceed his authority when charging the Defendant with the instant charges.

Defendant also argues that the amended professional services agreement is not an amendment to the Governor's appointment letter because it is *ultra vires*. Specifically, the Defendant argues that the Chief Prosecutor's letter to the Governor limited the Governor's involvement to the complaint filed by Deborah Crisostomo and not to the alleged incidents of lying under oath or any incidents involving Doris Leon Guerrero. The amended agreement is not *ultra vires* because the Chief Prosecutor requested that a special prosecutor be appointed to review the matter. Vernier was appointed as special prosecutor for this case. As with any criminal case, the initial investigation is done by the Guam Police Department. The prosecutor is not prohibited from filing any charges that arise after further investigation. In fact it is the Prosecutor's duty to examine the evidence and file appropriate charges, determining the degree of each offense.

This is what happened here. During the investigation of the initial complaint filed by Deborah Crisostomo, the Special Prosecutors allege that the Defendant made false statements under oath while testifying at his domestic proceedings with Deborah Crisostomo. This was done before the complaint was filed. The Defendant cannot avoid the other charges purely because it is alleged they occurred after July 22, 2003 when the initial complaint was made to the police. Moreover, the charges in the magistrate complaint are connected to the initial police complaint. Therefore, the Court finds that the amended agreement is not *ultra vires* to the Governor's appointment letter. Thus, Defendant's motion to dismiss the complaint is denied.

**B.    Motion to Disqualify Special Prosecutor**

Defendant raises three arguments in his motion to disqualify the special prosecutor. First,

4

the retainer agreements with Vernier and Nancy Kaser-Boyd (an expert) are illegal because they are personal services contracts and prohibited under Public Laws 27-05 and 27-29. Second, the procurement laws were violated because the competitive bidding process was not followed. Third, the retainer agreement with Vernier limited his services to $15,000.00 and did not allow Vernier to bill for services of any subcontractor, including Nancy Kaser-Boyd.

With respect to Defendant's first argument, he asserts under Public Law 27-05, Chapter IV, Section 18 the Governor could not enter into a personal services contract. To support his position, the Defendant cites to two decisions from the Superior Court of Guam wherein the prosecutors were disqualified because they were retained in violation of Public Law 27-29. The language of 27-05 which prohibits personal services contracts is identical to the language in Public Law 27-29.

The Government argues that the agreement is not a personal services contract. Additionally, that Defendant erroneously relies on the two decisions from the Superior Court because in those cases, the Court held that the Attorney General's Office could not enter into a personal services contract. Moreover, none of the decisions address the Governor's organic authority to appoint special prosecutors.

Even assuming arguendo it is a personal services contract, the Government contends that Public Laws 27-05, Chapter IV, Section 18 and 27-29, Chapter V, Section 13 are inorganic and unenforceable because it prohibits the governor from faithfully executing the laws of Guam under the Organic Act. The Government cites *In re Gutierrez*, 2002 Guam 1 where the Supreme Court addressed the issue of a budget bill infringing on the Governor's authority to execute the laws of Guam.

Since the passage of Public Laws 27-05, and 27-29, a new budget law for the current fiscal year was passed and the language prohibiting personal services contracts has changed in order to

5

clarify prior provisions. Public Law 27-106, Chapter VI, Section 12 provides in relevant part:

**Prohibition on Personal Services Contracts.**

Except for positions filled in accordance with the merit system at the University of Guam, the Guam Community College, the Department of Education, the Unified Judiciary of Guam, the Guam Police Department, *I Liheslaturan Guåhan,* and licensed health professionals at the Guam Memorial Hospital, the Department of Public Health and Social Services and the Department of Mental Health and Substance Abuse, positions in the classified and unclassified service shall not be filled pursuant to a contractual arrangement.

Pursuant to the procurement law, government of Guam departments and agencies may enter into agreements with independent contractors provided that no such agreement may contract for services ordinarily provided by the positions defined in the classified service, unless permitted by the organic statute of an agency.

**It is not the intention of this Section to prohibit the use of independent contracts for obtaining commonly recognized professional services, such as** licensed health professionals, licensed architects, licensed engineers, **legal services,** actuarial services and auditing services (to include the Government of Guam Annual Single Financial Audit) **in those agencies that don't otherwise regularly provide such services by appointment of a regular employee.** (emphasis supplied).

Defendant claims that the professional services agreement between the Governor and Vernier is a personal services contract. Defendant also refers to two decisions[2] where it was held that the contract between the Attorney General's Office and two prosecutors were personal services contracts. The agreement between the Governor and Vernier is a professional services agreement not a personal services contract. The *Diaz* and *Tainatongo* cases are not applicable to the present case. Public Law 27-106 clarifies that the Governor may obtain legal services from an independent contractor. An *independent contractor* is a person who performs services for remuneration for another person who does not have the right to control and direct the person in the performance of such service, but is liable in contract to that other person for the results attained through such service.

---

[2] People v. Rosie Tainatongo, *et al.*, CF0060-04, Decision and Order June 25, 2004 and People v. Antonio M. Diaz, CF0050-03, Decision and Order July 23, 2004.

6

5 G.C.A. § 34301 (d).   Under this definition, Vernier is an independent contractor because he provides legal services for this case and is not controlled or directed by the Governor while providing these services.  Even if the Governor's Office regularly employs an attorney, Vernier's appointment as an independent contractor is specifically limited to this case.  Under the agreement, Vernier is providing professional services for this case only.  Moreover, the Governor's Office does not regularly obtain legal services to prosecute an Attorney General or any other prosecutor within the Attorney General's office, when there is a conflict of interest within the office.

The professional services agreement, as amended, between the Governor and Vernier is not a personal services contract.  The Governor may hire an independent contractor, in this case Vernier, to provide legal services specifically to investigate and prosecute the Defendant for the charges of family violence and false statements under oath.  Thus, the Defendant's motion to disqualify the special prosecutors in this case are denied on these grounds.[3]

The Defendant also alleges that the special prosecutor illegally obtained the services of Nancy Kaser-Boyd.  Section III (B) (2) of the Agreement provides for the reimbursement of other expenses upon approval by the Office of the Governor and subject to the availability of funds.  The Special Prosecutors maintain that the services provided by Ms. Kaser-Boyd is a reimbursable expense.  This Court agrees.  Moreover, the Defendant does not provide any evidence showing that Ms. Kaser-Boyd entered into a personal services contract with the Governor.  Therefore, the Defendant's motion to disqualify the special prosecutor on these grounds is denied.

Finally, the Defendant argues that the Agreement is null and void because there were

---

[3] Although the Court views the language in Public Law 27-106 as clarifying the earlier enactments, under *In Re Gutierrez*, 2002 Guam 1, a restriction of the nature contemplated by the Defendant's argument cannot stand.

7

procurement violations. Volume 1, Title 2, Section 9101 of the Guam Administrative Rules provides the legal and contractual remedies when there is an alleged procurement violation. Section 9101 (1) (a) defines an *interested party* as an actual or prospective bidder, offeror, or contractor that may be aggrieved by the solicitation or award of a contract and who files a protest. The Court finds that the Defendant is not an *interested party* as defined, nor does the Defendant qualify as a protestor. Therefore, the Defendant has no standing to challenge any alleged procurement violations regarding the Agreement.[4]

### C. Motion to Dismiss

Does the Governor have the authority to appoint a special prosecutor to prosecute the Attorney General when there is a conflict of interest in the Attorney General's Office?

The Defendant argues that the Governor does not have the authority to appoint a special prosecutor because Guam law does not authorize the Governor to make such an appointment. Defendant also argues that the Organic Act was amended in 1998 which elevated the position of the Attorney General to an Organic Act, constitutional office. In amending the Organic Act, the Defendant contends that Congress and the Legislature intended to free the Attorney General from gubernatorial control. Further, that the Governor does not have the authority to create an office of the special prosecutor. Thus, the Governor's appointment of the special prosecutors in this case are in derogation of the intent of Congress that the Governor no longer have any prosecutorial control or authority over the Attorney General. Additionally, Defendant argues that only the Attorney

---

[4] Further, it was reasonable for the Governor to assume that an investigation and prosecution of a misdemeanor case would be accomplished for $15,000.00. There have been numerous motions and hearings in this case necessitating the extraordinary number of hours performed by Vernier.

General's office can prosecute crimes as granted by common law and local statutory authority. Because the Governor does not have any statutory authority to appoint a special prosecutor, the Defendant asserts that the Complaint should be dismissed.

The Special Prosecutors argue that the Organic Act allows the Governor to appoint a special prosecutor when the Attorney General's office is disqualified. Specifically, that the Governor, as Chief Executive Officer has the overall inherent authority to appoint special prosecutors in special circumstances as the present case. As the Chief Executive Officer, the Special Prosecutors argue that the Governor is responsible under the Organic Act for the faithful execution of the laws of Guam. Finally, the Special Prosecutors argue that the Attorney General's Office is within the Executive Branch. There is nothing in the Organic Act which states that the prosecutorial powers are exclusively vested with the Attorney General's Office and therefore, does not prohibit the Governor from appointing a special prosecutor for this one-time matter.

The Organic Act establishes that the Governor is ultimately responsible for enforcing all laws:

> The Governor shall have general supervision and control of all the department, bureaus, agencies, and other instrumentalities of the executive branch of the government of Guam...**He shall be responsible for the faithful execution of the laws of Guam** and the laws of the United States applicable in Guam. 48 U.S.C.A. § 1422.

Under the Organic Act, "it is the duty of the Governor to enforce the laws as enacted by the Legislature and Congress, and, in pursuit of the fulfillment of that duty, the Governor has the power to appoint executive employees and supervise the departments of the executive branch." *In Re Gutierrez*, 2002 Guam 1. Therefore, the Governor is responsible for enforcing the law and assumes responsibility over a case when the entire Attorney General's Office is recused frm prosecuting. In this case, the Chief Prosecutor referred the matter to the Governor when the complaint was made

9

because there was a conflict of interest with all the prosecutors in the Attorney General's Office. In order to enforce the laws of Guam as required by the Organic Act, the Governor appointed the Special Prosecutors to investigate the case and ensure that the laws of Guam are faithfully executed.

The Defendant argues that under the Organic Act, only the Attorney General's Office has the exclusive authority to prosecute crimes on Guam as the Chief Legal Officer. However, the Organic Act does not expressly grant the Attorney General or his office with exclusive authority over prosecution in special cases as this, when the elected Attorney General himself is being prosecuted for family violence charges and false statements under oath and a conflict of interest exists. The Attorney General's Office recognized its limitation when its Office referred the matter to the Governor.

The Defendant also argues that the amendment of the Organic Act to make the Attorney General's position an elected position strips the Governor's control over the Attorney General as well as his authority to appoint special prosecutors.

48 U.S.C.A. § 1421g(d) provides in relevant part that:

**Attorney General**

(1) The Attorney General of Guam shall be the Chief Legal Officer of the Government of Guam. At such time as the Office of the Attorney General of Guam shall next become vacant, the Attorney General of Guam shall be appointed by the Governor of Guam with the advice and consent of the legislature, and shall serve at the pleasure of the Governor of Guam.

(2) Instead of an appointed Attorney General, the legislature may, by law, provide for the election of the Attorney General of Guam by the qualified voters of Guam in general elections after 1998 in which the Governor of Guam is elected. The term of an elected Attorney General shall be 4 years. The Attorney General may be removed by the people of Guam according to the procedures specified in section 1422d of this title or may be removed for cause in accordance with procedures established by the legislature in law. **A vacancy in the office of an elected Attorney General shall be filled--**

10

> **(A) by appointment by the Governor of Guam** if such vacancy occurs less than 6 months before a general election for the Office of Attorney General of Guam; or

> **(B) by a special election** held no sooner than 3 months after such vacancy occurs and no later than 6 months before a general election for Attorney General of Guam, and **by appointment by the Governor of Guam** pending a special election under this subparagraph. (emphasis supplied.)

Even where the Attorney General's position is an elected position, when there is a vacancy, the Governor still has the power and authority to appoint an attorney general as provided in this section. Moreover, this section does not expressly prohibit the Governor from having any ties with the Attorney General's Office. If Congress or the Legislature felt that the Governor should have no control over the appointment of an attorney general when there is a vacancy it would have been expressly provided.

Even assuming *arguendo,* that the Governor has no authority to appoint a special prosecutor in this limited instance, how then will the Defendant be prosecuted for the alleged crimes? Changing the Attorney General's position to an elected position does not mean that the Governor has no inherent authority to appoint a special prosecutor. In the interests of justice and in order to fully execute the laws of Guam, the Governor is duty bound to appoint a special prosecutor in this matter. Here, the appointment is specifically, at the request of the Attorney General's Office, for a one-time matter because of the conflict of interest with the Attorney General's Office.

Therefore, the Court finds that the Governor has the inherent authority to appoint a special prosecutor to prosecute the Attorney General on charges of family violence and false statements under oath, when there is a clear conflict of interest in the Attorney General's Office.

11

People v. Douglas B. Moylan
**Decision and Order**
Criminal Case No. CM0864-03

## CONCLUSION

For the reasons above, the Court DENIES the Defendant's Motions to Dismiss and Motion to Disqualify the Special Prosecutors.

SO ORDERED this _16th_ day of November, 2004.

_Katherine A. Maraman_
Honorable Katherine A. Maraman
Judge, Superior Court of Guam

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam
Dated at Hagåtña

NOV 16 2004

Benny
Deputy Clerk, Superior Court of Guam
Deputy Clerk, Superior Court of Guam

12

# TAB 4

FILED
DISTRICT COURT OF GUAM

OCT 2 9 2004

MARY L. M. MORAN
CLERK OF COURT

# UNITED STATES DISTRICT COURT
## TERRITORY OF GUAM

LOURDES P. AGUON-SCHULTE,

      Plaintiff,

v.

THE GUAM ELECTION COMMISSION;
GERALD A. TAITANO, in his individual
capacity and in his capacity as Executive
Director of the Guam Election Commission; I
MINA' BENTE SIETE NA LIHESLATURAN
GUAHAN (The 27th Guam Legislature);
FELIX P. CAMACHO, in his official capacity
as the Governor of Guam,

      Defendants.

CIVIL CASE NO. CV-04-00045

ORDER

    Before the Court is a Stipulation and Proposed Order for Preliminary Injunction signed by Thomas L. Roberts, Esq., attorney for plaintiff and Robert M. Weinberg, Asst. Attorney General, purportedly on behalf of all defendants in this case. For the following reasons, the Court will not accept the stipulation and instead will stay the matter pending the November 2, 2004 election day.

## BACKGROUND

    On October 21, 2004, plaintiff filed this action in the Superior Court of Guam against the Guam Election Commission, Gerald Taitano in his individual and official capacity as Executive Director of the Guam Election Commission, the Legislature of Guam and Felix P. Camacho in his official capacity as the Governor of Guam. Claiming that the Guam Election Commission's actions violated federal constitutional law via 42 U.S.C. § 1983 as well as Guam statutory law, plaintiff sought,

1.      An immediate pre-election judicial declaration on (a) the legal efficiency of the Proposal A ballot pamphlets mailed to the voters by the Directors and the Guam Election Commission, (b) an immediate, pre-election judicial declaration on whether the results of any vote on Proposal A on November 2, 2004 will be invalid as a result of (i) the ballot pamphlets mailed to the voters, and/or (ii) as a result of the mass public uncertainty caused by the Attorney General's opinion.

2.      For a preliminary and permanent injunction (a) enjoining the scheduled November 2, 2004 vote on Proposal A, (b) compelling the Director and the Election Commission to remove the Proposal A ballots from the polling places on November 2, 2004, and (c) enjoining the Director and the Election Commission from tabulating any absentee votes cast on Proposal A.

3.      For an order compelling the Governor to call for a special election on Proposal A pursuant to 3 G.C.A. § 13103, or an order compelling the Legislature to call for a special election on Proposal A pursuant to 3 G.C.A. § 17203, or an order compelling the Election Commission to schedule and hold a special election on Proposal A, to be held not later than sixty (60) days after the date of the court's order...

Asserting the existence of federal question subject matter jurisdiction, the Attorney General of Guam removed the case to this Court on October 26, 2004. On October 27, 2004, plaintiff and the Attorney General of Guam ("AG") filed the Stipulation and Proposed Order for Preliminary Injunction now before the Court. In the Stipulation, the plaintiff and AG agreed that the Guam Election Commission violated Guam law and the United States Constitution. Counsel further agreed that, as a result of the Guam Election Commissions' failures, Proposal A was invalid. Finally, plaintiff and the AG agreed that the Guam Election Commission was preliminarily enjoined from counting and tabulating the votes for and against Proposal A. Subsequent to the filing of the Stipulation, the Guam Legislature and Governor Camacho filed objections to the Stipulation. Further, it has come to the attention of Court that the Legislature has passed, and the Governor has signed into law on October 27, 2004, Bill 374, a bill apparently meant to remedy any defects surrounding Proposal A.

## DISCUSSION

1. There now appears to be a controversy as to whether the AG represents the defendants in this case. In the Notice of Removal, the AG claims that it represents all defendants in this case. Nevertheless, separate attorneys have entered appearances on behalf of the Guam Election Commission, the Legislature and the Governor. Furthermore, the Legislature and the Governor filed objections to the

2

stipulation. It seems highly inappropriate to bind the Government of Guam to a stipulation and order where it appears that the AG may not be the government's counsel. Accordingly, the Court will not accept the stipulation.

2. The Court will not grant a preliminary injunction and will also *sua sponte* stay this action pending the November 2, 2004 election results.

    a. The probability of success for plaintiff has become less clear with the passage of Bill 347. Moreover, plaintiff will not suffer irreparable harm. Plaintiff will still be able to litigate the validity of Proposal A and possibly compel the government to conduct another election.

    b. The balance of harms also weighs in favor of not granting an injunction and staying this action pending the November 2, 2004 election results. If Proposal A passes, then this whole action becomes moot. If Proposal A fails, plaintiff still has an opportunity to test the lawfulness of Proposal A's electoral process. If the process is lawful, then Guam saves the expense of conducting another election. If found unlawful, then another election is conducted and plaintiff is exactly where she always wanted to be.

    c. Not granting a preliminary injunction and staying the action pending the November 2, 2004 election results will also be in the public interest. This is a matter of deep public concern. Much time, money and effort has been put into this election by all citizens on both sides of the issue. It is always in the public interest for the citizenry to have their say on an important matter such as Proposal A.

///
///
///
///
///
///

3

# CONCLUSION

Based on foregoing, it is **ORDERED** that the Stipulation and Proposed Order for Preliminary Injunction filed on October 27, 2004 is **DENIED**. It is further **ORDERED** that this matter is stayed pending the November 2, 2004 election results.

DATED this _22nd_ day of October, 2004

_Alex R. Munson_
Alex R. Munson
Designated Judge, United States District Court

4

FILED
DISTRICT COURT OF GUAM

OCT 29 2004

MARY L. M. MORAN
CLERK OF COURT

# UNITED STATES DISTRICT COURT
# TERRITORY OF GUAM

JAY MERRILL, on his own behalf and on
behalf of all other similarly situated voters
desirous of casting a vote in favor of Proposal
A at a fair and legal election,

Plaintiffs,

v.

THE GUAM ELECTION COMMISSION;
GERALD A. TAITANO, in his individual
capacity and in his capacity as Executive
Director of the Guam Election Commission; I
MINA' BENTE SIETE NA LIHESLATURAN
GUAHAN (The 27th Guam Legislature);
FELIX P. CAMACHO, in his official capacity
as the Governor of Guam,

Defendants.

CIVIL CASE NO. CV-04-00046

ORDER

Before the Court is an Amended Stipulation and Proposed Order for Preliminary Injunction signed by Thomas L. Roberts, Esq., attorney for plaintiff and Robert M. Weinberg, Asst. Attorney General, purportedly on behalf of all defendants in this case. For the following reasons, the Court will not accept the stipulation and instead will stay the matter pending the November 2, 2004 election day.

## BACKGROUND

On October 25, 2004, plaintiff filed this action in the Superior Court of Guam against the Guam Election Commission, Gerald Taitano in his individual and official capacity as Executive Director of the Guam Election Commission, the Legislature of Guam and Felix P. Camacho in his official capacity as the Governor of Guam. Claiming that the Guam Election Commission's actions violated federal constitutional law via 42 U.S.C. § 1983 as well as Guam statutory law, plaintiff sought,

1. An immediate pre-election judicial declaration on (a) the legal efficiency of the Proposal A ballot pamphlets mailed to the voters by the Directors and the Guam Election Commission, (b) an immediate, pre-election judicial declaration on whether the results of any vote on Proposal A on November 2, 2004 will be invalid as a result of (i) the ballot pamphlets mailed to the voters, and/or (ii) as a result of the mass public uncertainty caused by the Attorney General's opinion.

2. For a preliminary and permanent injunction (a) enjoining the scheduled November 2, 2004 vote on Proposal A, (b) compelling the Director and the Election Commission to remove the Proposal A ballots from the polling places on November 2, 2004, and (c) enjoining the Director and the Election Commission from tabulating any absentee votes cast on Proposal A.

3. For an order compelling the Governor to call for a special election on Proposal A pursuant to 3 G.C.A. § 13103, or an order compelling the Legislature to call for a special election on Proposal A pursuant to 3 G.C.A. § 17203, or an order compelling the Election Commission to schedule and hold a special election on Proposal A, to be held not later than sixty (60) days after the date of the court's order...

Asserting the existence of federal question subject matter jurisdiction, the Attorney General of Guam removed the case to this Court on October 26, 2004. On October 28, 2004, plaintiff and the Attorney General of Guam ("AG") filed the Amended Stipulation and Proposed Order for Preliminary Injunction now before the Court. In the Stipulation, the plaintiff and AG agreed that the Guam Election Commission violated Guam law and the United States Constitution. Counsel further agreed that, as a result of the Guam Election Commissions' failures, Proposal A was invalid. Finally, plaintiff and the AG agreed that the Guam Election Commission was preliminarily enjoined from counting and tabulating the votes for and against Proposal A. Subsequent to the filing of the Stipulation, the Guam Legislature and Governor Camacho filed objections to the Stipulation. Further, it has come to the attention of Court that the Legislature has passed, and the Governor has signed into law on October 27, 2004, Bill 374, a bill apparently meant to remedy any defects surrounding Proposal A.

## DISCUSSION

1. There now appears to be a controversy as to whether the AG represents the defendants in this case. In the Notice of Removal, the AG claims that it represents all defendants in this case. Nevertheless, separate attorneys have entered appearances on behalf of the Legislature and the Governor.

1  Furthermore, the Legislature and the Governor filed objections to the stipulation. It seems

2  inappropriate to bind the Government of Guam to a stipulation and order where it appears that the AG

3  may not be the government's counsel. Accordingly, the Court will not accept the stipulation.

4  **2.** The Court will not grant a preliminary injunction and will also *sua sponte* stay this action pending

5  the November 2, 2004 election results.

6  **a.** The probability of success for plaintiff has become less clear with the passage of Bill 347.

7  Moreover, plaintiff will not suffer irreparable harm. Plaintiff will still be able to litigate the

8  validity of Proposal A and possibly compel the government to conduct another election.

9  **b.** The balance of harms also weighs in favor of not granting a preliminary injunction and

10  staying this action pending the November 2, 2004 election results. If Proposal A passes, then

11  this whole action becomes moot. If Proposal A fails, plaintiff still has an opportunity to test

12  the lawfulness of Proposal A's electoral process. If the process is lawful, then Guam saves the

13  expense of conducting another election. If found unlawful, then another election is conducted

14  and plaintiff is exactly where he always wanted to be.

15  **c.** Not granting a preliminary injunction and staying the action pending the November 2, 2004

16  election results will also be in the public interest. This is a matter of deep public concern.

17  Much time, money and effort has been put into this election by all citizens on both sides of the

18  issue. It is always in the public interest for the citizenry to have their say on an important

19  matter such as Proposal A.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26

27

28

3

# CONCLUSION

Based on foregoing, it is **ORDERED** that Amended Stipulation and Proposed Order for Preliminary Injunction filed on October 28, 2004 is **DENIED**. It is further **ORDERED** that this matter is stayed pending the November 2, 2004 election results.

**DATED** this _29_ day of October, 2004

_Alex R. Munson_
Alex R. Munson
Designated Judge, United States District Court

# TAB 5


1
2
3
4
5

DISTRICT COURT OF GUAM

6

TERRITORY OF GUAM

7

8  LOURDES P. AGUON-SCHULTE,   )      CIVIL CASE NO. 04-00045
                                 )

9            Plaintiff,          )     (as removed from the Superior Court of Guam
                                 )          Civil Case No. CV-1103-04)

10       vs.                 )

11  THE GUAM ELECTION COMMISSION, )
    GERALD A. TAITANO, in his official   )

12  capacity as the Executive Director of the  )
    Guam Election Commission, I MINA'    )

13  BENTE SIETE NA LIHESLATURAN    )
    GUAHAN (The 27th Guam Legislature) and )

14  FELIX P. CAMACHO, in his official     )
    capacity as the Governor of Guam,     )

15                                )
          Defendants.       )

16  _____ )

17  JAY MERRILL, on his own behalf and on )     CIVIL CASE NO. 04-00046
    behalf of all other similarly situated voters )

18  desirous of casting a vote in favor of    )    (as removed from the Superior Court of Guam
    Proposal A at a fair and legal election,   )      Civil Case No. CV-1111-04)

19                                   )

20            Plaintiffs,        )
                                 )

21       vs.                 )     **FINDINGS AND RECOMMENDATION**
                               )         **BY MAGISTRATE JUDGE**

22  THE GUAM ELECTION COMMISSION, )
    GERALD A. TAITANO, in his official   )

23  capacity as the Executive Director of the  )
    Guam Election Commission, I MINA'    )

24  BENTE SIETE NA LIHESLATURAN    )
    GUAHAN (The 27th Guam Legislature) and )

25  FELIX P. CAMACHO, in his official     )
    capacity as the Governor of Guam,     )

26                                )
          Defendants.       )

27  _____ )

28      On February 18, 2005, these consolidated cases came before the Court for hearing on the

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al. v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand



1   Attorney General's motions to strike the appearances by and pleadings of private counsel and the

2   defendants' motions to remand these actions to the Superior Court of Guam. At the conclusion

3   of the hearing, the Court took the motions under advisement. The Court now issues its findings

4   and recommendation for the parties' and the district judge's review.

## BACKGROUND

6   On or about October 18, 2004, Plaintiff Lourdes P. Aguon-Schulte filed a Complaint

7   (CV 1103-04) in the Superior Court of Guam against the Guam Election Commission, Gerald A.

8   Taitano, in his official and individual capacity, *I Mina Bente Siete Na Liheslaturan Guahan* (the

9   27th Guam Legislature), and Felix P. Camacho, in his official capacity as the Governor of Guam.

10  The plaintiff sought declaratory and injunctive relief, and an order from the Court requiring the

11  Governor to hold a special election on Proposal A.

12  On or about October 25, 2004, Plaintiff Jay Merrill, on his behalf and all others similarly

13  situated, filed a Complaint (CV 1111-04) in the Superior Court of Guam against the Guam

14  Election Commission, Gerald A. Taitano, in his official and individual capacity, *I Mina Bente*

15  *Siete Na Liheslaturan Guahan* (the 27th Guam Legislature), and Felix P. Camacho, in his official

16  capacity as the Governor of Guam. The plaintiffs sought declaratory and injunctive relief, and an

17  order from the Court requiring the Governor to hold a special election on Proposal A.

18  On October 26, 2004, the Attorney General of Guam filed a Notice of Removal of the

19  said cases to the District Court of Guam. In his removal petition, the Attorney General noted that

20  the Plaintiffs complained about alleged violations of their right to vote protected by the First and

21  Fourteenth Amendments to the Constitution and their right to vote for initiatives, a right

22  protected by the Organic Act of Guam, a federal statute. Furthermore, the Attorney General

23  alleged that as Chief Legal Officer of the Government of Guam, he represented all the named

24  defendants in the litigation. At the same time, the Attorney General lodged with this court a

25  Stipulation and Order for Preliminary Injunction in both cases.[1] The Stipulation was executed by

26

27  _____

[1] Copies of the Stipulation and Order for Preliminary Injunction are attached as Exhibits
28  A and B to this Findings and Recommendation.

Lourdes P. Aguon-Schulte v. Guam Election Commission, *et al.*, Civil Case No. 04-00045
Jay Merrill, etc., *et al.* v. Guam Election Commission, *et al.*, Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1  the Plaintiffs' counsel, Thomas L. Roberts, Esq.[2] and the Attorney General, through his assistant,

2  Robert M. Weinberg, on behalf of all the defendants.

3       On or about October 28, 2004, *I Mina Bente Siete Na Liheslaturan Guahan* (the 27th

4  Guam Legislature) filed an entry of appearance through its legislative counsel, Therese M.

5  Terlaje. At the same time, *I Mina Bente Siete Na Liheslaturan Guahan* (the 27th Guam

6  Legislature) lodged an objection to the proposed stipulation and order for preliminary injunction

7  executed between the plaintiffs and the Attorney General, on behalf of the defendant, *I Mina*

8  *Bente Siete Na Liheslaturan Guahan* (the 27th Guam Legislature). On the same day, Felix P.

9  Camacho, the Governor of Guam, filed an appearance through the law firm of Calvo & Clark

10  LLP, as attorneys for the Governor. The Governor simultaneously filed an objection to the

11  proposed stipulation and order for preliminary injunction. On or about the same time, Attorney

12  Cesar C. Cabot entered his appearance for the Guam Election Commission and Gerald Taitano,

13  in his individual and official capacities. Attorney Cabot also objected to the stipulation and order

14  for preliminary injunction on behalf of the Guam Election Commission and Director Taitano.

15       On October 29, 2004, the Attorney General filed motions[3] to strike the appearances of

16  the various counsel, made on behalf of the said named defendants. Also on the same date, the

17  Court denied the Attorney General and the Plaintiffs' request for a temporary injunction.

18       On or about November 22, 2004, *I Mina Bente Siete Na Liheslaturan Guahan* (the 27th

19  Guam Legislature) moved the Court to remand the cases[4] to Superior Court arguing that it did not

20  consent to the removal of the cases to federal court. The Governor, Executive Director Taitano,

21

22      [2] The Plaintiffs in both cases are represented by Attorney Roberts.

23

24      [3] Prior to consolidation of these two cases, the Attorney General filed a motion to strike
appearances and pleadings by private counsel in each action. See Docket No. 18 in Civil Case

25  No. 04-00045 and Docket No. 13 in Civil Case No. 04-00046. All further references to docket
numbers herein shall be to the docket in the lead case, Civil Case No. 04-00046, unless otherwise

26  specified.

27      [4] *I Mina Bente Siete Na Liheslaturan Guahan* (the 27th Guam Legislature) filed a motion
to remand in each case. See Docket No. 28 in Civil Case No. 04-00045 and Docket No. 30 in

28  Civil Case No. 04-00046.


Lourdes P. Aguon-Schulte v. Guam Election Commission, *et al.*, Civil Case No. 04-00045
Jay Merrill, etc., *et al.* v. Guam Election Commission, *et al.*, Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1 and the Guam Election Commission have joined in the said motion and for the same reason —

2 that they did not consent to the removal of the Superior Court actions to this Court.[5]

3       The motions to strike and to remand are two of several motions pending before this

4 Court. The Court has decided to hear the motions to strike first since a decision reached therein

5 ultimately decides whether these cases remain with this Court or are remanded back to the

6 Superior Court of Guam.

## DISCUSSION

7

8 **I.    Attorney General Provision in the Organic Act of Guam**

9       The pertinent provision of the Organic Act of Guam regarding the Attorney General

10 provides:

11     (d) Attorney General

12     (1) The Attorney General of Guam shall be the Chief Legal Officer of the
Government of Guam. At such time as the Office of the Attorney General of
13     Guam shall next become vacant, the Attorney General of Guam shall be appointed
by the Governor of Guam with the advice and consent of the legislature, and shall
14     serve at the pleasure of the Governor of Guam.

15     (2) Instead of an appointed Attorney General, the legislature may, by law, provide
for the election of the Attorney General of Guam by the qualified voters of Guam
16     in general elections after 1998 in which the Governor of Guam is elected. The
term of an elected Attorney General shall be 4 years. The Attorney General may
17     be removed by the people of Guam according to the procedures specified in
section 1422d of this title or may be removed for cause in accordance with
18     procedures established by the legislature in law. A vacancy in the office of an
elected Attorney General shall be filled —

19
    (A) by appointment by the Governor of Guam if such vacancy occurs less than 6
20     months before a general election for the Office of Attorney General of Guam; or

21     (B) by a special election held no sooner than 3 months after such vacancy occurs
and no later than 6 months before a general election for Attorney General of
22     Guam, and by appointment by the Governor of Guam pending a special election
under this subparagraph.

23

24 42 U.S.C. § 1421g(d).

25

26

27     [5] Subsequent to the filing of its motions to remand, *I Mina Bente Siete Na Liheslaturan Guahan* (the 27th Guam Legislature) was dismissed as a named defendant in each case. The

28 motions to remand, however, are still pending as to the remaining Defendants who have joined in the motions.

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al. v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand



1    Because the Attorney General is the Chief Legal Officer of the Government of Guam, he

2  argues that he has exclusive right to represent the Government of Guam's agencies and officials

3  in litigation in which the said agencies and officials are involved. In these actions, an entity of

4  the government of Guam, (the Guam Election Commission), and two government officials,

5  (Felix P. Camacho, the Governor of Guam and Gerald A. Taitano, the Executive Director of the

6  Guam Election Commission) are named defendants. Because the named defendants are parts and

7  parcel of the Government of Guam, the Attorney General has opined that he and only he or his

8  staff attorneys within the Office of Attorney General can legally represent them. The Attorney

9  General has stated the issue pending before this Court is constitutional in nature, i.e., his

10  congressional designation as Chief Legal Officer of the Government of Guam prevents any

11  entity, agency, and official of the Government of Guam from being represented by counsel other

12  than the Attorney General. Furthermore, he asserts that the Guam Legislature has no authority to

13  enact legislation which would allow any official, agency, or entity within the Government of

14  Guam to be represented by any attorney other than the Attorney General. The Court must

15  therefore decide whether Governor Felix P. Camacho, the Guam Election Commission, and its

16  Executive Director Gerald A. Taitano may be represented by the attorneys who have made

17  entries of appearances in this litigation on behalf of the said defendants or whether the Court

18  should strike their entries of appearances as motioned by the Attorney General.

19    In 1998, Congress was petitioned by the people of Guam to amend the Organic Act to

20  allow for the election of their Attorney General. Rather than providing outright for an elected

21  Attorney General, Congress deemed it best to allow the people of Guam to make that

22  determination through local legislation. In order to provide the framework for an elected

23  Attorney General, if such local legislation was to be enacted, Congress was required to create that

24  office (Attorney General) within the framework of Guam's Organic Act. Thus, Congress added a

25  new subsection (48 U.S.C. §1421g(d)) to the Organic Act and created and designated an office of

26  Attorney General of Guam. In so doing, Congress declared the Attorney General "shall be the

27  Chief Legal Officer of the Government of Guam." The Organic Act amendment became law

28  October 27, 1998. See Pub. L. No. 105-291.

Lourdes P. Aguon-Schulte v. Guam Election Commission, *et al.*, Civil Case No. 04-00045
Jay Merrill, etc., *et al.* v. Guam Election Commission, *et al.*, Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand



1    Because Congress did not allow outright for an elected Attorney General and there was

2    insufficient time in 1998 to pass local legislation providing for an elected Attorney General, the

3    selection of the next Attorney General (following the November 1998 gubernatorial general

4    election) would be governed by the appointment provisions of the Organic Act, *i.e.*, by

5    Section 1421g(d)(1). The next Attorney General would thus be appointed by the Governor of

6    Guam with the advice and consent of the Legislature. Furthermore, the Attorney General would

7    serve at the pleasure of the Governor.

8        On June 9, 1999, Substitute Bill No. 52 of the 25th Guam Legislature was signed into law

9    as P. L. 25-44 (the "Act"). The Act provided for the election of the Attorney General. The Act,

10   among other things, set forth the qualifications for the Attorney General, the procedure for the

11   election and removal of the Attorney General, and it further set forth the compensation of the

12   Attorney General. Thus, the enactment by the 25th Guam Legislature of the elected Attorney

13   General bill triggered the Organic Act provisions of Section 1421g(d)(2). The Attorney

14   General's election had to coincide with the election of Guam's governor and the Attorney

15   General would serve a four year term. In addition, the Attorney General could only be removed

16   under certain circumstances and a vacancy would be filled as provided under the provisions of 48

17   U.S.C. § 1421g(d)(2) of the Organic Act.

18       The Court takes note that when the Defendant Felix P. Camacho was chosen on

19   November 5, 2002 by the People of Guam as their seventh elected Governor of Guam, the People

20   of Guam also chose Douglas B. Moylan as their first elected Attorney General.

21       Whether Guam decided to elect its Attorney General or not, Congress was clear in its

22   1998 Organic Act amendment that the Attorney General was to be the Chief Legal Officer of the

23   Government of Guam. Congress did not articulate further the duties and responsibilities of the

24   Attorney General. One could speculate that Congress may have thought it inappropriate to

25   articulate the duties and responsibilities of that office since Guam's Attorney General had been

26   appointed since the Organic Act's inception in 1950 and continued to remain appointed (48 years

27   of gubernatorial appointments). Moreover, local legislation presently provided areas of duties

28   and responsibilities for the appointed Attorney General.

Lourdes P. Aguon-Schulte v. Guam Election Commission, *et al.*, Civil Case No. 04-00045
Jay Merrill, etc., *et al.* v. Guam Election Commission, *et al.*, Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand



1   Was Congress's then proclamation of the Attorney General as the Chief Legal Officer of

2   the Government of Guam merely an acknowledgment of all the existing powers of the Attorney

3   General, or did Congress intend to place a deeper and more substantive power into the office, an

4   authority and power which would negate executive as well as legislative intrusion into the

5   Attorney General's authority as Chief Legal Officer of the Government of Guam?  Whatever the

6   case may be, it appears to this Court that in interpreting the Attorney General's status as Chief

7   Legal Officer of the Government of Guam, it must attempt to give full meaning and expression to

8   Congress's declaration that the Attorney General shall be the Chief Legal Officer of the

9   Government of Guam.  How then does the Court give this declaration full expression and

10  meaning?  As it relates to the representation issue before the Court, it appears reasonable and

11  logical to conclude that the Attorney General's authority as Chief Legal Officer would generally

12  be negated and diminished  when an entity, agency or official within the Government of Guam is

13  represented by counsel other than the Attorney General.  This Court recognizes  as fundamental

14  to his authority under the Organic Act the Attorney General's ability to represent entities,

15  agencies and officers of the Government of Guam.

16  Examining the provisions of Guam's Organic Act in relation to the Office of Attorney

17  General of Guam, the Court takes note of the Attorney General's statements that only once

18  previously did Congress enact legislation for an office of the Attorney General, that being the

19  creation of the Office of the Attorney General of the United States.  When Congress created the

20  Department of Justice and headed that office with the Attorney General, it reserved, however, to

21  the officers of the Department of Justice, under the direction of the Attorney General, the conduct

22  of all "litigation in which the United States, an agency, or officer thereof is a party, or is

23  interested." 28 U.S.C. § 516.  Furthermore, Congress prohibited the heads of all Executive and

24  military departments, unless expressly authorized by law or exempted under section 1037 of title

25  10, from employing an attorney or counsel for the "conduct of litigation in which the United

26  States, an agency, or employee thereof is a party, or is interested, or for the securing of evidence

27  therefor, but shall refer the matter to the Department of Justice." 5 U.S.C. § 3106.  Most

28  important, the Attorney General of the United States was required to "supervise all litigation to

Lourdes P. Aguon-Schulte v. Guam Election Commission, *et al.*, Civil Case No. 04-00045
Jay Merrill, etc., *et al.* v. Guam Election Commission, *et al.*, Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand



1  which the United States, an agency, or officer thereof is a party" unless otherwise provided by

2  law. 28 U.S.C. § 519.

3      In contrast, when Congress provided for the Office of the Attorney General of Guam, it

4  did not reserve to the Attorney General supervision over the conduct of all litigation in which the

5  Government of Guam's agencies and officials were parties. Congress simply proclaimed the

6  Attorney General the Chief Legal Officer of the Government of Guam. In this regard, the Court

7  notes that in 1999, the succeeding Attorney General of Guam became the first Attorney General

8  to be designated Chief Legal Officer of the Government of Guam pursuant to the provisions of

9  the Organic Act. Yet that Attorney General's ability to supervise litigation in which the

10  government's agencies or officials were involved was subject to the Governor's removal

11  authority.

12      There is little legislative history behind Congress's intent in designating the Attorney

13  General as the Chief Legal Officer of the Government of Guam. It has been argued that the

14  current designation was patterned after the designation of another state attorney general. A

15  review of state constitutional provisions and statutes does reflect that in many jurisdictions the

16  attorney general has received the designation as chief legal officer for the respective state. State

17  courts, however, differ in their interpretations of the powers and duties of their attorneys general

18  especially as it relates to the representation of state agencies and officials. Some courts have

19  taken the position that their attorney general has exclusive right to represent agencies which are

20  involved in litigation.

21      The Organic Act does not contain express language which reserves to the Attorney

22  General of Guam or the Department of Law all litigation in which the Government of Guam or

23  any of its agencies or officers are involved. A further review of Guam's statutes reveals that

24  there is no specific legislation which requires the Attorney General to represent officials of the

25  Government of Guam when sued as defendants. The Court, however, recognizes that the power

26  and authority of the Attorney General to represent such agencies and individuals is presumed and

27  implied as contained within his Organic Act designation as Chief Legal Officer of the

28  ///

Lourdes P. Aguon-Schulte v. Guam Election Commission, *et al.*, Civil Case No. 04-00045
Jay Merrill, etc., *et al.* v. Guam Election Commission, *et al.*, Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1  Government of Guam. However, while the authority to represent government agencies and

2  officials is implied, it is not expressed.

## II.    The Roles of the Attorney General

4  The Organic Act's designation of the Attorney General as Chief Legal Officer of the

5  Government of Guam appears to have adopted basic common law principles regarding the

6  Attorney General's primary role:  that of representing the interests of the government the attorney

7  general represents – in other words, the state interest or the public interest.  As chief legal officer

8  of the government, it is this interest that the attorney general must at all times represent.  In this

9  respect, it can be said that the attorney general's real client is the state he represents or the public

10 interest he represents.  It therefore necessarily embodies the principle that if the attorney general

11 finds his duties to the state and the public interest conflicting with his other duties, it is his duty

12 to represent the state and the public interest which is paramount.  In this role, the attorney

13 general's responsibility has generally been regarded as being the protector and guardian of the

14 public interest, *i.e.*, the state or government interest which he advocates.

15 In his role as guardian of the public interest and representative of the state and its

16 interests, the attorney general may bring suits against officials and agencies of the government.

17 See Moylan v. Camacho, Superior Court of Guam Special Proceeding No. SP230-03, Decision

18 and Order (November 10, 2003).  The Court notes that as advocate of the state government or the

19 public interest, the attorney general has generally not been restricted from prosecuting said

20 actions because of ethics considerations or the application of the rules of professional

21 responsibility to his office.

22 In addition to his role as representative of the state, the state's interest or the public

23 interest, the attorney general also has the dual role and responsibility of representing the

24 instrumentalities of that government, *i.e.*, the agencies and officials in matters in which the said

25 entities are involved as parties in any litigation.  While the Court has noted above that the

26 Organic Act does not expressly reserve to the Attorney General the representation of the

27 Government of Guam's agencies and officials in litigation in which they are involved, it is an

28 implied grant of authority.  In order to be the Chief Legal Officer of the Government of Guam,

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al. v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand



1   the Attorney General must necessarily be the primary legal counsel for its employees and

2   agencies. It is in this vein that this matter comes before the Court. As the Chief Legal Officer,

3   the Attorney General has appeared in this action as the legal representative of the Defendants.

4   The Defendants have also made entries of appearances but through separate counsel.

5       In light of the Defendants' conflicting legal representations, the Court must decide who

6   should represent the Defendants in the actions herein. Should the Court allow the Attorney

7   General to represent the Defendants to the exclusion of the other attorneys because he

8   exclusively represents the Governments's agencies and officials as Chief Legal Counsel? The

9   Court finds that in order to resolve this question, it must determine what role and responsibility

10  the Attorney General shoulders when undertaking the representation of the Defendants. The

11  parties offer differing positions.

12      The Attorney General argues that when he assumes the representation of the Defendants,

13  they speak through his voice, regardless of whether his voice represents their position or not.

14  This is so because he is the Chief Legal Officer of the Government of Guam, and this designation

15  prevents the Defendants from having any other attorney represent them other than the Attorney

16  General. The Attorney General justifies this position based upon the need and necessity for a

17  uniform litigation policy which can only be established by the Attorney General. The Attorney

18  General cites case law in various jurisdictions establishing the Attorney General's paramount

19  right to represent government agencies and officials to the exclusion of any other attorney.

20      The Guam Election Commission and Director Taitano argue that the Attorney General's

21  motions to strike should be denied because Guam law authorizes the Commission to have its

22  own attorney. Specifically, 2 GUAM CODE ANN. § 2103(b) authorizes the election board to retain

23  an attorney to advise the board and its executive director on all legal matters pertaining to the

24  Commission. Its attorney is also mandated to "represent the Commission in litigation in which

25  the Commission is interested or involved." The Defendants further argue that the Attorney

26  General's designation as Chief Legal Officer does not prevent the Guam Legislature from

27  allowing autonomous agencies to retain independent counsel. The election board is established

28  as an "autonomous instrumentality and an independent commission of the [G]overnment of

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al. v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand



1    Guam." 2 GUAM CODE ANN. § 2101. The Defendants cite the court to jurisdictions which have

2    allowed public agencies to employ independent counsel to protect its rights when not prohibited

3    by statute from doing so.

4       The Governor argues he has a right to appear in this litigation to object to the stipulated

5    preliminary injunction agreed to between the Attorney General and Plaintiffs. He emphasizes

6    that he is vested with the executive authority of the Government of Guam, and the Attorney

7    General cannot strip him of his executive authority and duties through the guise of a stipulation

8    for a preliminary injunction. The Governor further argues that once the Attorney General makes

9    a determination to represent him in these actions, the Attorney General must represent and serve

10    his client (the Governor) in the court litigation or, if he cannot do so, he must step aside and

11    allow the entry of independent counsel.

12       The Court has reviewed the decisions of other courts which have had to wrestle with the

13    situation similar to that presented here concerning the powers and duties of an attorney general to

14    represent state officials in civil actions. For instance, in Manchin v. Browning, 170 W. Va. 779,

15    296 S.E.2d 909 (1982), suit was brought against the secretary of state in his official capacity

16    challenging the state apportionment statute as unconstitutional. The matter was referred to the

17    attorney general, who was charged with defending suits against state officials. The secretary of

18    state agreed that the statute was unconstitutional, but the attorney general disagreed. The

19    attorney general attempted to take action that was contrary to the position of the secretary of

20    state. Because of the conflict in their respective positions, the secretary of state requested the

21    attorney general to appoint special counsel to represent him in the federal suit. The attorney

22    general refused, and the secretary of state sought relief before the West Virginia Supreme Court

23    of Appeals. The attorney general asserted that as the chief law officer of the state, he is "charged

24    with representing the public interest in any such litigation without interference from or the

25    approval of any other official." Id. at 783, 296 S.E.2d at 913. The court did not agree with the

26    attorney general's characterization of his powers and duties with respect to suits against state

27    officials. The court stated:

28    ///

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al. v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand



The Attorney General ordinarily exercises complete control of litigation conducted in his name. When the Attorney General appears in a proceeding on behalf of the state in his name, he exercises his discretion as to the course and conduct of the litigation. He assumes the role of a litigant and he is entitled to represent what he perceives to be the interest of the state and the public at large.

However, the Attorney General's representation of the state as an entity and the discretion that accompanies such representations are limited and finite propositions. In some cases, ... the Attorney General is statutorily charged as an administrator of the law and appears in civil proceedings on his own motion as the agent and legal representative of the state and the citizens thereof. ...

The Attorney General performs quite a different function when he appears to defend a state officer [or instrumentality] ... sued in [their] official capacity. In this circumstance the Attorney General does not appear as a party to the action. That role is filled by the state officer [or instrumentality] against whom the suit is brought. Rather, the Attorney General's function is to act as legal advisor and agent of the ... litigant and to prosecute or defend, within the bounds of the law, the decision or policy of such officer [or instrumentality] which is called into question by such lawsuit.

A problem arises, however, when, as here, the policy advocated by the state officer [or instrumentality] conflicts with what the Attorney General perceives to be the interest of the state. The [Attorney General] asserts that when such a conflict arises, the Attorney General's duty to represent the interests of the state takes preeminence over the interests the state officer [or instrumentality] seek[ ] to advocate. After all, he argues, any suit brought against a state officer [or instrumentality] is, in effect, a suit against the state and the interest of the public must predominate.

We cannot agree with the Attorney General's characterization of his powers and duties with respect to suits against state officials. Ordinarily the state acts only through its officers and agents. ... [I]n the performance of their statutorily prescribed duties, some officers [or instrumentalities] . . . are empowered to make good faith policy decisions which implement the laws they administer and comport with the requirements of our constitutions. ... When the official policies of a particular state officer or [instrumentality] are called into question in civil litigation, that officer or [instrumentality] is entitled to the same access to the courts and zealous and adequate representation by counsel to vindicate the public interest, as is the private citizen to vindicate his [or her] personal rights.

Id. at 788-89, 296 S.E.2d at 918-19 (citations omitted). The Manchin court further declared:

Since the Attorney General is designated as the statutory counsel for state officers sued in their official capacities, he is required by the Code of Professional Responsibility to make legal counsel available to those officers in such circumstances. The Attorney General is required to exercise his independent professional judgment on behalf of a state officer for whom he is bound to provide legal counsel. In this regard his duty is to analyze and advise his clients as to the permissible alternative approaches to the conduct of the litigation. The Attorney General should inform his client of the different legal strategies and defenses available and of his professional opinion as to the practical effect and probability of the outcome of each alternative, so as to enable the officer to make an intelligent decision with respect to how the litigation could be conducted. *He*

Lourdes P. Aguon-Schulte v. Guam Election Commission, *et al.*, Civil Case No. 04-00045
Jay Merrill, etc., *et al.* v. Guam Election Commission, *et al.*, Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand



*should then stand aside and allow his client to exercise his independent judgment on which course to pursue.* We emphasize the importance of this independent judgment because "advice of counsel" is not a defense to civil or criminal liability for nonfeasance, misfeasance or malfeasance in office. Once the state officer whom the Attorney General represents has determined the course he desires the litigation to take, it is the duty of the Attorney General to zealously advocate the public policy positions of his client in pleadings, in negotiations, and in the courtroom and to avoid even the appearance of impropriety by appearing to be in conflict with the desires of his client.

In summary, the Attorney General's statutory authority to prosecute and defend all actions brought by or against any state officer simply provides such officer with access to his legal services and does not authorize the Attorney General "to assert his vision of state interest." The Attorney General stands in a traditional attorney-client relationship to a state officer he is required by statute to defend. His authority to manage and control litigation on behalf of a state officer is limited to his professional discretion to organize legal arguments and to develop the case in the areas of practice and procedure so as to reflect and vindicate the lawful public policy of the officer he represents. The Attorney General is not authorized in such circumstances to place himself in the position of a litigant so as to represent his concept of the public interest, but he must defer to the decisions of the officer whom he represents concerning the merits and the conduct of the litigation and advocate zealously those determinations in court.

Id. at 790-91, 296 S.E.2d at 920-21 (emphasis in original, internal citation omitted). The West Virginia Supreme Court of Appeals further held that "[i]f, in the course of advising or counseling a state officer involved in litigation, it becomes apparent that the Attorney General is unable to adequately represent the officers as required by law or that such representation would create professional conflicts or adversity, the Attorney General must appoint counsel to represent such officer." Id. at 792, 296 S.E.2d at 922.

The Supreme Court of Hawaii also expressly approved and adopted the Manchin analysis. See Chun v. Board of Trustees of Employees' Retirement Sys. of the State of Hawaii, 87 Haw. 152, 174, 952 P.2d 1215, 1237 (1998). In Chun, the retirement board refused to authorize an appeal from a judgment entered in favor of the plaintiffs and against the board, but the state attorney general filed an appeal on behalf of the board anyway. The Supreme Court of Hawaii eventually dismissed the appeal and recognized that "the attorney general's professional obligations as legal counsel to her statutory client – a public officer or instrumentality of the state vested with policy-making authority – may clash with her vision of what is in the best global interests of the state or the public at large." Id. at 170, 952 P.2d at 1233. When the Attorney General's "paramount duty to represent the public interest cannot be discharged without conflict,

Lourdes P. Aguon-Schulte v. Guam Election Commission, *et al.*, Civil Case No. 04-00045
Jay Merrill, etc., *et al.* v. Guam Election Commission, *et al.*, Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1   [he] may consent to the employment of special counsel by a state agency or officer." Id. (*quoting*

2   D'Amico v. Board of Med. Exam'rs, 112 Cal. Rptr. 786, 800, 520 P.2d 10, 20 (1974).[6] Thus, the

3   Chun court stated that "[h]aving perceived [himself] to be in a conflict of interest with the Board,

4   the Attorney General was ethically obligated to recommend the retention of other counsel to

5   represent the Board and to take such other action as, in [his] opinion, the circumstances

6   required." Id. at 176, 952 P.2d 1239.

7       In another case, Tennessee *ex rel.* Comm'r of Transp. v. Medicine Bird Black Bear White

8   Eagle, 63 S.W.3d 734, (Tenn. Ct. App. 2001), the state attorney general had been disqualified

9   from simultaneously representing the Tennessee Department of Transportation and the Tennessee

10  Commission of Indian Affairs. The Court of Appeals of Tennessee eventually reversed the trial

11  court's ruling but stated the following with regard to the attorney general's ethical obligations:

12          By statute, the General Assembly has mandated a relationship akin to the
            traditional attorney-client relationship between the Attorney General and the state
13          officials and agencies the Attorney General represents. Thus, the Attorney
            General owes a duty of undivided loyalty to his or her clients and must exercise
14          the utmost good faith to protect their interests. The Attorney General must (1)
            preserve client confidences to the extent public clients are permitted confidences,
15          (2) exercise independent judgment on his or her client's behalf, and (3) represent
            his or her clients zealously within the bounds of the law.

16
            Unlike the conflict-of-interest rules governing the conduct of lawyers
17          representing private clients, the Attorney General is not necessarily prohibited
            from representing governmental clients whose interests may be adverse to each
18          other. The majority rule is that the Attorney General, through his or her assistants,
            may represent adverse state agencies in intra-governmental disputes. This rule
19          applies, however, only when the Attorney General is not an actual party to the
            litigation. When the Attorney General is an actual party to the litigation,

20

21

22      [6] The Supreme Court of Hawaii also recognized that because of the Attorney General's
    various statutorily mandated roles, the Hawaii Code of Professional Responsibility ("HRPC")
23  could not be mechanically applied to the Attorney General's office. Chun, 87 Haw. at 173, 952
    P.2d at 1236 (*quoting* Hawaii v. Klattenhoff, 71 Haw. 598, 602, 801 P.2d 548, 550-51 (1990)).
24  Nevertheless, the court stated that the Attorney General's office was never relieved of all
    obligations to conform its conduct to the HRPC, which was applicable to all attorneys licensed to
25  practice in the Hawaii courts. Id. at 174, 952 P.2d at 1237. Specifically, the court discussed
    HRPC Rule 1.7 dealing with conflicts of interest and the comments to said rule which explained
26  that "loyalty to a client is . . . impaired when a lawyer cannot consider, recommend, or carry out
    an appropriate course of action because of the lawyer's other responsibilities or interests." Id.
27  (*quoting* comment [4] to HRPC Rule 1.7). This rule is similar to Rule 1.7 of the Guam Rules of
    Professional Conduct.
28

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al. v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1            independent counsel should be appointed for the state agency in order to remedy
the ethical impediment to the Attorney General's position as a party.

2

3   Id., 63 S.W.3d at 773 (citations omitted).

4        Again, the Court points out the Attorney General's position that only he is authorized to

5   represent the named Defendants and that the named Defendants have no voice. The Attorney

6   General contends that the Defendants' voice, if any, is what he decides is the government's legal

7   position or what he determines to be the governmental or public interest. The Court has alluded

8   above to the Attorney General's authority to sue government entities, agencies and officials on

9   behalf of the public interest. Such was the case in Moylan v. Camacho. Therein, the Attorney

10   General sued the Governor to compel the appointment of members to the Guam's Procurement

11   Board. In that case, the Governor retained the same firm representing him in these cases. The

12   Attorney General never moved to strike the appearances of the Governor's independently

13   retained counsel. A motion to strike was never made because it would have been a conflict of

14   interest for the Attorney General to sue the Governor and represent him at the same time.

15   Moylan v. Camacho thus stands for the proposition that independent counsel may be retained to

16   defend a government official in a case where the Attorney General has a conflict of interest.

17        In determining whether to strike the appearances of the defendants' independent

18   attorneys, the Court looks at the nature of the appearances and the reasons for it. In these

19   consolidated cases, the Plaintiffs have sued the Defendants to obtain an injunction declaring that

20   the Guam Election Commission violated the law by failing to mail ballot pamphlets which

21   contained the complete text of the Proposal A gambling initiative which was to be voted upon

22   during the November 2004 general election. The Court notes that prior to the Defendants filing

23   answers to the Complaints, the Attorney General filed a notice of removal of both cases to this

24   Court. At the same time that the Attorney General filed the removal, it submitted a "Stipulation

25   and Order for Preliminary Injunction." The stipulation provided:

26        1. With respect to the scheduled November 2, 2004 election on the Guam Casino
Gaming Commission Act, otherwise known as Proposal A ("the Proposal A"), the

27        Guam Election Commission and the Executive Director of the Guam Election
Commission failed to follow the relevant Guam election statutes and duly adopted

28        Guam election rules governing the peoples' right to vote by initiative.

Lourdes P. Aguon-Schulte v. Guam Election Commission, *et al.*, Civil Case No. 04-00045
Jay Merrill, etc., *et al.* v. Guam Election Commission, *et al.*, Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1    Specifically, the failure to follow Guam law constituted a violation of vested
rights of the registered voters of Guam under the First and Fourteenth
2    Amendments to the United States Constitution, and under the Organic Act, 48
U.S.C. §§ 1421(b) and 1422(a).

3
2. The scheduled November 2, 2004 election on Proposal A is constitutionally,
4    organically and statutorily invalid as a result of their failure of the Guam Election
Commission and the Executive Director of the Guam Election Commission to
5    follow all relevant Guam election statutes duly adopted election rules related to
the peoples' right to vote by initiative.
6
3. Pending further order of this Court, the Guam Election Commission and the
7    Executive Director of the Guam Election Commission, their agents, employees
and assigns, and all those acting in concert with them, are preliminarily enjoined
8    from counting, tabulating or certifying the results of any votes for or against
Proposal A, and if that is not possible without affecting the other races for elected
9    office, from printing or in any manner reporting, disclosing or certifying the
results of any votes for or against Proposal A, whether by absentee ballot or
10   otherwise, in connection with the scheduled November 2, 2004 election of
Proposal A. This provision does not prevent defendants from moving for the
11   disclosure of the results of the vote on Proposal A, after the November 2, 2004
election.
12

13   The filing of the proposed stipulation caused a flurry of filings of entries of appearances

14   by the then named defendants and objections to the proposed stipulation. *I Mina Bente Siete Na*

15   *Liheslaturan Guahan* (the 27th Guam Legislature) and the Governor filed appearances through

16   independent counsel on October 28[th,] and the Guam Election Commission and Executive

17   Director Taitano subsequently filed their entries. The Defendants made appearances for the

18   purpose of opposing the execution of the proposed stipulation by this Court.

19   Had the Court executed and approved the proposed stipulation, this would have resulted

20   in (1) the scheduled November 2, 2004 vote on Proposal A being found to have constituted a

21   violation of the rights of the registered voters of Guam under the First and Fourteenth

22   Amendments of the United States Constitution and under the Organic Act; (2) the scheduled vote

23   on Proposal A being found by the Court to be unconstitutional, inorganic, and statutorily invalid

24   based upon the Election Commission and Executive Director Taitano's violation of Guam's laws

25   and rules relative to the people's right to vote by initiative; and (3) the Election Commission

26   would have been enjoined from tabulating the results of the votes on Proposal A on

27   November 2, 2004.

28   ///



Lourdes P. Aguon-Schulte v. Guam Election Commission, *et al.*, Civil Case No. 04-00045
Jay Merrill, etc., *et al.* v. Guam Election Commission, *et al.*, Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1   When the Attorney General entered his appearance on behalf of the Defendants, he did so

2   in his role as protector and guardian of the public and government's interest and representative of

3   the Government of Guam. He has come to Court – argued and advocated the legal position of

4   the Government of Guam and *his* views as protector and guardian of the public interest. *He has*

5   *not advocated and is not advocating the legal positions of the Defendants.* The Defendants

6   maintain and advise the Court that they have complied with Guam law relating to the people's

7   right to vote by initiative. Furthermore, they believe that the Proposal A vote on

8   November 2, 2004 was constitutional, organic and statutorily valid. The Court finds the

9   positions of the Attorney General and the Defendants to be directly in conflict.

10   The Defendants entered their appearances and sought only to have their voices heard and

11   their positions defended. Their voices will not be heard and their positions will not be defended

12   if the Court grants the Attorney General's motions to strike their attorneys' appearances. As the

13   Court has pointed out, in the <u>Moylan v. Camacho</u> case, the Attorney General never questioned

14   the ability of the Governor to procure independent counsel. He legally could not because the

15   matter involved a clear conflict and resulted in the representation of the Governor by independent

16   counsel.

17   Having entered his appearance as attorney for the Defendants, the Attorney General has a

18   duty to zealously represent the interests of these Defendants. This entails representing and

19   zealously defending their positions. The Attorney General, however, did not enter his

20   appearance for the purpose of advocating or defending the Defendants' positions. He entered his

21   appearance on behalf of these Defendants for the purpose of advocating the position of the

22   Government – what he believes is in the public interest and should be the legal position of the

23   Government. In essence, he has advocated the position of his primary client (the public and

24   governmental interest) and not those of his secondary clients (the respective Defendants). While

25   the Court does not deny that the Attorney General can advance and advocate the public and

26   governmental position, he cannot do so in the name of and at the expense of the Defendants in

27   this case, his secondary clients. In essence, the Attorney General, in substance, has appeared as

28   ///

Lourdes P. Apuon-Schulte v. Guam Election Commission, *et al.*, Civil Case No. 04-00045
Jay Merrill, etc., *et al.* v. Guam Election Commission, *et al.*, Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand



1  a separate party in this action even though he has not formally entered an appearance as a

2  separate party.

3       The Court thus finds and concludes that under the circumstances of these cases the

4  Attorney General has a conflict of interest. The Attorney General has chosen to exercise his dual

5  role as (1) representative of the government and protector of the public interest and (2)

6  representative and attorney for the Defendants. The Attorney General cannot represent both

7  interests because these interests directly conflict with each other. Moreover, the Attorney

8  General has confused the issue further by advocating the public and governmental interest in his

9  representation of the Defendants. This poses a direct conflict of interest. <u>See</u> Rule 1.7(a) of the

10  Guam Rules of Professional Conduct.[7] Under the authorities cited by the Court, once the

11  Attorney General decides to undertake the representation of an governmental agency and/or a

12  public official, he has a duty to zealously defend the positions advocated by the said agency or

13  official. If he is unable to do so, the Attorney General must allow the party to be represented by

14  independent counsel. Based upon the conflicts which are clearly apparent in these cases, the

15  Court finds there is a need for independent counsel to represent the Defendants. The Court

---

[7] This rule provides:

**RULE 1.7: CONFLICT OF INTEREST: CURRENT CLIENTS**

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

    (1) the representation of one client will be directly adverse to another client; or

    (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Like other courts, this Court recognizes that the Guam Rules of Professional Conduct can not be mechanically applied to the Attorney General's office. Nevertheless, the unique circumstances presented here clearly present a direct conflict of interest for the Attorney General. Additionally, the Court takes judicial notice of the fact that the Attorney General's civil division is comprised of a small number of attorneys such that it would not be feasible for an assistant attorney general to represent the Defendants in this dispute.

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al. v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand



1  comes to this conclusion based upon its finding that the Attorney General has opined and

2  concluded that the election board has violated the initiative law and that the Proposal A election

3  was unconstitutional, inorganic and statutorily invalid. The Defendants do not share these

4  positions and the Attorney General cannot defend these positions. The Court must therefore

5  deny the Attorney General's motions to strike the appearances of the attorneys for the

6  Defendants. In so doing, the Court notes that the more appropriate action would have been for

7  the Attorney General to intervene and join this action as a co-plaintiff, or the Attorney General

8  could maintain a new and separate suit against the Defendants rather than espousing the

9  government's position in the course of the representation of the Defendants.

10  The Guam Election Commission has asked the Court to decide the constitutional issue

11  which the Attorney General has advocated before the Court. The election board asks the Court to

12  find that Guam law authorizes the commission to retain its own attorneys to represent them in

13  this matter. It also asks this Court to affirm the recent opinion by the Supreme Court of Guam on

14  the same subject matter. The Court finds that it is not necessary to a decision of this case for this

15  Court to make a finding that the Election Commission has authority to retain its own attorneys to

16  represent the board in this case nor does such a finding resolve the representation issues before

17  the Court. Assuming, the constitutionality of the statute authorizing the *Board* to retain an

18  attorney to *advise* the board and its executive director on all legal matters pertaining to the

19  Commission, the statute does not authorize the board's counsel to represent *Executive Director*

20  *Taitano* in this litigation. The Court will decline ruling on that issue until it is necessary to do so

21  as federal courts generally avoid deciding constitutional issues if a case can be resolved on other

22  grounds. See Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 445, 108 S.

23  Ct. 1319, 1323 (1988) ("A fundamental and longstanding principle of judicial restraint requires

24  that courts avoid reaching constitutional questions in advance of the necessity of deciding

25  them.").

26  **III.  Motions to Remand Action to the Superior Court**

27  Having decided to recommend denial of the Attorney General's motions to strike the

28  appearances of counsel representing the Defendants, the Court must therefore also recommend

Lourdes P. Aguon-Schulte v. Guam Election Commission, *et al.*, Civil Case No. 04-00045
Jay Merrill, etc., *et al.* v. Guam Election Commission, *et al.*, Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand



1  that this matter be remanded to the Superior Court of Guam because the Defendants have not

2  consented to the removals. Unanimous consent to the removal by all defendants is a procedural

3  requirement under 28 U.S.C. § 1446 for federal question removal under Section 1441. The Ninth

4  Circuit has stated that "[o]rdinarily, under 28 U.S.C. § 1446(a), all defendants in a state action

5  must join in the petition for removal." Emrich v. Touche Ross & Co., 846 F.2d 1190, 1193 n.1

6  (9th Cir. 1988). "The failure to join all proper defendants in a removal petition may otherwise

7  render the removal petition procedurally defective." Id. See also Parrino v. FHP, Inc., 146 F.3d

8  699, 703 (9th cir. 1998), *cert. denied*, 119 S. Ct. 510 (1998); Hewitt v. City of Stanton, 789 F.2d

9  1230, 1232-33 (9th Cir. 1986). Because the Attorney General did not obtain the consent of the

10  Defendants when he removed this action, the removal of these cases from the Superior Court of

11  Guam to this Court was procedurally defective and improper.

12  The Court therefore recommends to the District Judge that the Attorney General's

13  motions to strike be denied and the Defendants' motion to remand be granted. The Court finds

14  the posture of the instant case to be the rare case. Normally, government entities and officials

15  appearing before the Courts will find representation in their respective litigations by the Attorney

16  General. This must be the case because the Attorney General is the Chief Legal Officer of the

17  Government of Guam. In exercising his powers of representation in cases similar to the one

18  before this Court, the Attorney General must decide whether he wishes to advocate the position

19  of (1) the government (the public interest) or (2) the government entity or official involved in the

20  litigation. If the Attorney General desires to advocate the public interest, he must determine

21  whether in the course of representing the public interest he will still be able to zealously advocate

22  and represent the interests and desires of the named government entity or official. If he is unable

23  to do so, or if he finds the agency or official's position to be in conflict with his position, the

24  Attorney General should allow the aggrieved agency or government official to be represented by

25  independent counsel.

26  The Court finds its recommendations and findings herein to be reasonable. Imposing a

27  duty upon the Attorney General to zealously represent the interests of the clients for which the

28  Attorney General has entered his appearance allows those clients to have a voice in the Court

Lourdes P. Aguon-Schulte v. Guam Election Commission, et al., Civil Case No. 04-00045
Jay Merrill, etc., et al. v. Guam Election Commission, et al., Civil Case No. 04-00046
Order Denying Motions to Strike and Granting Motions to Remand

1  proceeding. It is crucial in cases similar to the one before the Court that a government agency

2  which maintains that it has not violated election initiative laws, even though the Attorney

3  General has concluded that it has, have the necessary representation to argue and defend that

4  position in the litigation. A failure by this Court to allow that defendant's voice to be heard is a

5  failure by the court's system of fairness and justice.

### CONCLUSION

7  Based on the Court's findings and recommendations, IT IS RECOMMENDED that the

8  Attorney General's motions to strike the appearances of the Defendants' private counsel be

9  denied and the Defendants' motions to remand these cases back to the Superior Court of Guam

10  be granted.

11  Dated this  _16th_  day of March 2005.

JOAQUIN V.E. MANISUBAN, JR.
U.S. Magistrate Judge

### NOTICE

**Failure to serve and file written objections to the Report's findings and
recommendations within ten (10) days from the date of its service shall bar
an aggrieved party from attacking such Report and Recommendations
before the assigned/designated District Judge. 28 U.S.C. § 636(b)(1).**

Notice is hereby given that this document was
entered on the docket on _3/16/05_.
No separate notice of entry on the docket will
be issued by this Court.
            Mary L. M. Moran
        Clerk, District Court of Guam
By _____  _3/16/05_
    Deputy Clerk        Date



Douglas B. Moylan
Attorney General of Guam
Robert M. Weinberg
Assistant Attorney General
Civil Division
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 • USA
(671) 475-3324 • (671) 472-2493 (Fax)

Attorneys for the Government of Guam

# IN THE DISTRICT COURT
# FOR THE TERRITORY OF GUAM

LOURDES P. AGUON-SCHULTE, )
)
Plaintiff, )
)
vs. )
)
THE GUAM ELECTION COMMISSION, )
et al. )
)
Defendants. )
)
————————————————————————

Civil Case No. CIV04-00045

(removed from the Superior Court of Guam
Civil Case No. CV-1103-04)

**STIPULATION AND ORDER FOR**

**PRELIMINARY INJUNCTION**

COME NOW Plaintiff Lourdes P. Aguon-Schulte, through her attorneys Dooley Roberts & Fowler LLP, by Thomas L. Roberts, Esq., and all of the Defendants named herein, represented by their counsel, the Office of the Attorney General, Government of Guam, by Assistant Attorney General Robert Weinberg, and hereby stipulate as follows:

1. With respect to the scheduled November 2, 2004 election on the Guam Casino Gaming Control Commission Act, otherwise known as Proposal A ("Proposal A"), the Guam Election Commission and the Executive Director of the Guam Election Commission failed to follow the relevant Guam election statutes and duly adopted Guam election rules governing the

peoples' right to vote by initiative. Specifically, the failure to follow Guam law constituted a violation of vested rights of the registered voters of Guam under the First and Fourteenth Amendments to the United States Constitution, and under the Organic Act, 48 U.S.C. §§ 1421(b) and 1422(a).

2.    The scheduled November 2, 2004 election on Proposal A is constitutionally, organically and statutorily invalid as a result of the failure of the Guam Election Commission and the Executive Director of the Guam Election Commission to follow all relevant Guam election statutes and duly adopted election rules related to the peoples' right to vote by initiative.

3.    Pending further order of this Court, the Guam Election Commission and the Executive Director of the Guam Election Commission, their agents, employees and assigns, and all those acting in concert with them, are preliminarily enjoined from counting, tabulating or certifying the votes for or against Proposal A, and if that is not possible without affecting the other races for elected office, from printing or in any manner reporting, disclosing or certifying the results of any votes for or against Proposal A, whether by absentee ballot or otherwise, in connection with the scheduled November 2, 2004 election on Proposal A. This provision does not prevent defendants from moving for the disclosure of the results of the vote on Proposal A, after the November 2, 2004 election.

4. All further Proceedings in this case shall be held on the _____ day of _____, 2004 at the hour of _____ ____.m. to address Plaintiff's remaining claims for relief as well as any and all other issues the parties may wish to raise.

DOOLEY ROBERTS & FOWLER LLP

Dated: <u>October 27, 2004</u>          By: _____
                                              **THOMAS L. ROBERTS**
                                              Attorneys for Plaintiff Lourdes P. Aguon-Schulte

//

//

                                              DOUGLAS B. MOYLAN
                                              Attorney General of Guam

Dated: <u>October 27, 2004</u>          By: _____
                                              **ROBERT M. WEINBERG**
                                              Attorneys for Defendants the Guam Election
                                              Commission, Gerald A. Taitano, in his capacity as
                                              the Executive Director of the Guam Election
                                              Commission, I Mina' Bente Siete Na Liheslaturan
                                              Guahan (The 27th Guam Legislature); Felix P.
                                              Camacho, In His Official Capacity As The Governor
                                              Of Guam

          SO ORDERED: this _____ day of _____, 2004.

**RECEIVED**

OCT 2 7 2004

DISTRICT COURT OF GUAM
HAGATNA, GUAM

                                              _____
                                              **HONORABLE ALEX R. MUNSON**
                                              Judge, District Court of Guam

Courtesy copies:    Cesar Cabot, Esq.
                     For Guam Election Commission
                     Gerald Taitano
                    Shannon Taitano, Esq.
                     For Governor of Guam
                    Therese Terlaje', Esq.
                      Legislature of Guam
                    Joaquin C. Arriola, Jr., Esq.
                     For proposed Intervenor, Lina'La'Sin Casino



Douglas B. Moylan
Attorney General of Guam
Robert M. Weinberg
Assistant Attorney General
Civil Division
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 • USA
(671) 475-3324  •  (671) 472-2493 (Fax)

Attorneys for the Government of Guam

# IN THE DISTRICT COURT
# FOR THE TERRITORY OF GUAM

| | | |
|---|---|---|
| JAY MERRILL, etc., et al., | ) | |
| | ) | |
| Plaintiff, | ) | **Civil Case No. CIV04-00046** |
| | ) | |
| vs. | ) | (removed from the Superior Court of Guam Civil Case No. CV-1111-04) |
| | ) | |
| THE GUAM ELECTION COMMISSION, et al. | ) | **STIPULATION AND ORDER FOR** |
| | ) | |
| Defendants. | ) | **PRELIMINARY INJUNCTION** |
| | ) | |

COME NOW Plaintiff Lourdes P. Aguon-Schulte, through her attorneys Dooley Roberts & Fowler LLP, by Thomas L. Roberts, Esq., and all of the Defendants named herein, represented by their counsel, the Office of the Attorney General, Government of Guam, by Assistant Attorney General Robert Weinberg, and hereby stipulate as follows:

1.      With respect to the scheduled November 2, 2004 election on the Guam Casino Gaming Control Commission Act, otherwise known as Proposal A ("Proposal A"), the Guam Election Commission and the Executive Director of the Guam Election Commission failed to follow the relevant Guam election statutes and duly adopted Guam election rules governing the

peoples' right to vote by initiative. Specifically, the failure to follow Guam law constituted a violation of vested rights of the registered voters of Guam under the First and Fourteenth Amendments to the United States Constitution, and under the Organic Act, 48 U.S.C. §§ 1421(b) and 1422(a).

2. The scheduled November 2, 2004 election on Proposal A is constitutionally, organically and statutorily invalid as a result of the failure of the Guam Election Commission and the Executive Director of the Guam Election Commission to follow all relevant Guam election statutes and duly adopted election rules related to the peoples' right to vote by initiative.

3. Pending further order of this Court, the Guam Election Commission and the Executive Director of the Guam Election Commission, their agents, employees and assigns, and all those acting in concert with them, are preliminarily enjoined from counting, tabulating or certifying the votes for or against Proposal A, and if that is not possible without affecting the other races for elected office, from printing or in any manner reporting, disclosing or certifying the results of any votes for or against Proposal A, whether by absentee ballot or otherwise, in connection with the scheduled November 2, 2004 election on Proposal A. This provision does not prevent defendants from moving for the disclosure of the results of the vote on Proposal A, after the November 2, 2004 election.

4. All further Proceedings in this case shall be held on the _____ day of
_____, 2004 at the hour of _____ ____.m. to address Plaintiff's
remaining claims for relief as well as any and all other issues the parties may wish to raise.

DOOLEY ROBERTS & FOWLER LLP

Dated: October 27, 2004          By: _____

**THOMAS L. ROBERTS**
Attorneys for Plaintiff Lourdes P. Aguon-Schulte

//

//

DOUGLAS B. MOYLAN
Attorney General of Guam

Dated: October 27, 2004          By: _____

ROBERT M. WEINBERG
Attorneys for Defendants the Guam Election
Commission, Gerald A. Taitano, in his capacity as
the Executive Director of the Guam Election
Commission, I Mina' Bente Siete Na Liheslaturan
Guahan (The 27th Guam Legislature); Felix P.
Camacho, In His Official Capacity As The Governor
Of Guam

SO ORDERED: this _____ day of _____, 2004.

RECEIVED

OCT 27 2004

DISTRICT COURT OF GUAM
HAGATNA, GUAM

_____
**HONORABLE ALEX R. MUNSON**
Judge, District Court of Guam

Page 3

Courtesy copies:     Cesar Cabot, Esq.
                      For Guam Election Commission
                      Gerald Taitano
                     Shannon Taitano, Esq.
                      For Governor of Guam
                     Therese Terlaje', Esq.
                      Legislature of Guam
                     Joaquin C. Arriola, Jr., Esq.
                      For proposed Intervenor, Lina'La'Sin Casino

# TAB 6

FILED

DISTRICT COURT OF GUAM

MAY 10 2005

MARY L.M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| LOURDES P. AGUON-SCHULTE,<br><br>   Plaintiff,<br><br>  vs.<br><br>THE GUAM ELECTION COMMISSION,<br>GERALD A. TAITANO, in his official<br>capacity as the Executive Director of the<br>Guam Election Commission, I MINA'<br>BENTE SIETE NA LIHESLATURAN<br>GUAHAN (The 27th Guam Legislature) and<br>FELIX P. CAMACHO, in his official<br>capacity as the Governor of Guam,<br><br>   Defendants.<br>_____<br>JAY MERRILL, on his own behalf and on<br>behalf of all other similarly situated voters<br>desirous of casting a vote in favor of<br>Proposal A at a fair and legal election,<br><br>   Plaintiffs,<br><br>  vs.<br><br>THE GUAM ELECTION COMMISSION,<br>GERALD A. TAITANO, in his official<br>capacity as the Executive Director of the<br>Guam Election Commission, I MINA'<br>BENTE SIETE NA LIHESLATURAN<br>GUAHAN (The 27th Guam Legislature) and<br>FELIX P. CAMACHO, in his official<br>capacity as the Governor of Guam,<br><br>   Defendants.<br>_____ | CIVIL CASE NO. 04-00045<br><br>(as removed from the Superior Court of Guam<br>Civil Case No. CV-1103-04)<br><br><br><br><br><br><br><br><br><br><br><br>CIVIL CASE NO. 04-00046<br><br>(as removed from the Superior Court of Guam<br>Civil Case No. CV-1111-04)<br><br><br>**ORDER** |

This matter comes before the Court on Defendants' Motion to Remand and the Attorney

General's Motion to Strike Appearance by and Pleadings of Private Counsel. These motions were referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and General Order No. 04-00016 on December 12, 2004.[1] Docket No. 63. The Magistrate Judge reviewed the submissions and held oral argument on February 18, 2005. Thereafter the Magistrate Judge filed his Findings and Recommendations on March 15, 2005. Docket No. 102. On March 29, 2005 the Attorney General's filed objections to the Findings and Recommendations. Docket No. 104.

The Attorney General states that the Magistrate Judge's recommendation and findings in effect eviscerate the authority of the Attorney General with "respect to litigation decisions of agencies and instrumentalities of the Government of Guam." *See* Docket No. 104, p.2. This Court does not agree. The Magistrate Judge's analysis does not eviscerate the Attorney General's authority as much as he seeks to define the balancing act required of the Attorney General in representing the needs of public with those of elected officials and/or governmental agencies. There are those instances, when the Attorney General may need to step aside and let independent counsel represent elected officials and/or public agencies when the Attorney General is also seeking to represent and protect the public's interests.

Under 28 U.S.C. § 636(b)(1)(C), the Court may accept, reject or modify in whole or in part the Magistrate Judge's recommendation, but must make a *de novo* determination as to any portion of the recommendation has been filed. Having thoroughly considered the entire case and relevant law, the Court hereby adopts the Magistrate's Findings and Recommendations in full. Accordingly, the defendants' Motions to Remand is GRANTED and the Attorney General's Motion to Strike the Appearances of the Private is DENIED. In addition all remaining motions

///
///
///
///

---

[1] At the time of the hearing there were several motions pending before the Magistrate Judge. He decided to consider and rule on the two motions discussed herein first since a decision on those matters could obviate the need to consider the remaining motions.

pending are considered moot and will not be further considered by this Court.

SO ORDERED this _10_ day of May, 2005.

_hhuril O. Carter_
District Judge David O. Carter[*]
United States District Judge

Notice is hereby given that this document was
entered on the docket on MAY 1 0 2005
No separate notice of entry on the docket will
be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam

By: _____   MAY 1 0 2005
Deputy Clerk        Date

---

[*]The Honorable David O. Carter, United States District Judge for the Central District of California, sitting
by designation.

# TAB 7

1

2

3

4

5

6                        DISTRICT COURT OF GUAM

7                         TERRITORY OF GUAM

8

9    MARY GRACE SIMPAO, CHRISTINA          )        Civil Case No. 04-00049
     NAPUTI and JANICE CRUZ, on behalf of  )
10   themselves and a class of others similarly )
     situated,                             )
11                                         )
                                           )
12          Plaintiffs,                    )
                                           )
13      vs.                                )
                                           )
14   GOVERNMENT OF GUAM,                   )        ORDER RE: MOTION TO INTERVENE
                                           )
15          Defendant.                     )
                                           )
16      vs.                                )
                                           )
17   FELIX P. CAMACHO, in his official     )
     capacity as Governor of Guam          )
18                                         )
            Intervenor-Defendant           )
19   _____      )

20

21          This matter is before the Court on the Governor of Guam's Motion to Intervene. Pursuant

22   to Local Civil Rule 7.1(e)(3), this matter is appropriate for decision without the need for oral

23   argument.[1]  After reviewing the filings, as well as relevant caselaw and authority, the Court hereby

24   GRANTS the motion and sets forth the basis for its decision herein.

25

26   _____

27          [1]Local Civ.R. 7.1(e)(3) states "[i]n cases where the parties have requested oral argument, such oral
     argument may be taken off calendar by Order of the Court, in the discretion of the Court, and a decision rendered on
28   the basis of the written materials on file."

1

**BACKGROUND**

2        This is the third of three actions filed in the District Court of Guam concerning Guam's

3   Earned Income Tax Credit ("EIC"). Apparently, the Government of Guam had a history of paying

4   its taxpayers the EIC. However, in the years 1995 and 1996, the Government of Guam stopped

5   paying the EIC. As a result of the Government's failure to pay the EIC, the first of the three actions,

6   *Santos v. Camacho, et al.*, Guam Dist. Ct. Civil Case No. CV 04-00006 was filed in February 2004.

7   The *Santos* action sought to create a class action as to all persons alleged to be eligible to receive

8   the EIC under Guam's tax scheme. The named defendants included the Government, the Governor

9   of Guam, and the Directors of Administration and Revenue & Taxation.

10       In June 2004, while the Governor of Guam ("Governor") was off-island, a proposed $60

11  million class action settlement was reached in the *Santos* action between the then acting-Governor,

12  the Attorney General, certain government officers, and the plaintiff and her counsel. Benjamin

13  Decl., Exh. B. The Magistrate Judge gave the agreement his preliminary approval on June 17, 2004.

14  *Id.* On June 24, 2004, the Magistrate Judge issued an order approving attorney's fees and costs in

15  the amount of 10 percent of the settlement amount. *Id.*, Exh. C.

16       Days later, Christina Naputi ("Ms. Naputi"), a plaintiff in the present case, and Charmaine

17  Torres ("Ms. Torres") filed motions to intervene. The Court denied both motions on August 5,

18  2004. Benjamin Decl., Exh. E. Thereafter, on August 9, 2004, Ms. Torres filed her own putative

19  EIC class action, *Torres v. Government of Guam, et. al.,* Guam Dist. Ct. Civil Case No. CV04-

20  00038. *Id.,* Exh. F. Ms. Torres named the Governor, Attorney General, and the Government as

21  defendants.[2] Meanwhile, Ms. Naputi filed an appeal of the Court's order denying her the right to

22  intervene. *Id.,* Exh. G.

23       Concerned over possible illegalities with the settlement, the Governor filed an appearance

24  in the *Santos* action through independent counsel in November 2004. Benjamin Decl., Exh. L. The

25  Attorney General moved to strike this appearance. The Magistrate Judge denied the Attorney

26  General's motion and found that the Governor was responsible for complying with any judgment

27  _____

28       [2]There has been little activity in the *Torres* action.

2

1    regarding Guam's tax and should have his interests in the litigation represented. *Id.,* Exh. N. The

2    Attorney General moved for reconsideration of that decision, which the Magistrate Judge denied.[3]

3    *Id.,* Exh. O.

4         In December 2004, Ms. Naputi dismissed her appeal of the intervention order and filed the

5    instant action with plaintiff Mary Simpao, *Simpao v. Government of Guam,* Guam Dist. Ct. Civil

6    Case No. CV04-00049.[4] Plaintiffs, Naputi and Simpao also sought to create a class action to recover

7    the EIC.

8         In March 2005, the parties in the *Santos* case entered into mediation before JAMS Mediator

9    Catherine Yanni, Esq. Benjamin Decl., Exh. P. In May 2005, all of the parties with the exception

10   of the Attorney General entered into a binding term sheet. *Id.,* Exh. R.

11        On June 7, 2005, the Governor through his attorneys requested that the Attorney General

12   give notice of the term sheet in this action. Benjamin Decl., Exh. T. The Attorney General did not

13   respond to the Governor's request. *Id.* at ¶ 21. The Governor then filed his own notice in this

14   action.

15        On June 14, 2005, the present case came before the Court on the plaintiffs' motion for partial

16   summary judgment. Based in part on the Attorney General's concession on the issue, the Court

17   granted the plaintiffs summary judgment on the issue of whether EIC applies to Guam.

18        On June 20, 2005, all parties and attorneys to the *Santos* mediation, with the exception of

19   the Attorney General, executed a binding settlement agreement for $90 million. Benjamin Decl.,

20   Exh. U. On June 20 and 21, 2005, they filed pleadings to request preliminary approval of the

21   settlement and conditional class certification so that they could proceed with class notice. *Id.,* Exhs.

22   V, W, & X. The Attorney General has yet to approve the settlement.

23   ///

24   ///

25   _____

26        [3]Chief District Judge, Consuelo B. Marshal, sitting by designation, affirmed the
     Magistrate Judge's ruling on this issue. *See Santos v. Camacho et. al.,* Guam Dist. Ct. Civ. Case
27   No. 04-0006, August 12, 2005 Order.

28        [4]Janice Cruz was subsequently added as a plaintiff.

3

1   ///

2   **DISCUSSION**

3   The Governor now brings this motion to intervene for the following reasons: (1) his

4   exclusive control over the administration of the Guam Territorial Income Tax ("GTIT") as

5   established by the District Court of Guam; (2) his status as a named defendant in two almost-

6   identical putative EIC class actions; (3) the *Santos* settlement and his need to be able to move to stay

7   this action based on this settlement and to be able to assert that settlement as a defense in this action;

8   and (4) the Attorney General's apparent refusal to represent the Governor's position regarding the

9   GTIT or *Santos* settlement. *See* Memorandum in Support of the Motion to Intervene.

10   The Governor first asserts that pursuant to Rule 24(a) of the Federal Rules of Civil Procedure

11   intervention is allowed as a matter of right. In the alternative, the Governor argues that intervention

12   is permissible under Fed. R. Civ. P. 24(b).

13   Rule 24(a) provides:

14   Upon timely application anyone shall be permitted to intervene in an
     action: (1) when a statute of the United States confers an
15   unconditional right to intervene; or (2) when the applicant claims an
     interest relating to the property or transaction which is the subject of
16   the action and the applicant is so situated that the disposition of the
     action may as a practical matter impair or impede the applicant's
17   ability to protect that interest, unless the applicant's interest is
     adequately represented by existing parties.

18   Fed. R. Civ. P. 24(a).

19   The Ninth Circuit has adopted a four-prong test for intervention. A party seeking to

20   intervene as a matter of right must show: (1) the application is timely; (2) the applicant has a

21   significant protectable interest relating to the property or transaction that is the subject of the action;

22   (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability

23   to protect its interest; and (4) the existing parties may not adequately represent the applicant's

24   interest. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (quoting *United

25   States v. City of Los Angeles*, 228 F.3d 391, 397 (9th Cir. 2002)). The applicant for intervention

26   bears the burden of proving that all four requirements for intervention have been met. *Alisal Water*,

27   370 F.3d at 919. "In determining whether intervention is appropriate, courts are guided primarily

28

4

by practical and equitable considerations, and the requirements for intervention are broadly

interpreted in favor of intervention." *Id.* "[C]ourts generally construe [the Rule] broadly in favor

of proposed intervenors." *United States v. City of Los Angeles*, 228 F.3d at 397.

> 'A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court.'

*Id.* at 397-398 (citations omitted).

Before even addressing the four-prong test, the plaintiffs first claim that the Governor cannot

be added as a party in this action because he could not have been named as a defendant when the

action was first brought. Therefore, intervention is improper. Specifically, the plaintiffs argue that

Congress has limited the scope of Guam's waiver of sovereign immunity in a tax refund suit.

Pursuant to 48 U.S.C. § 1421(h)(2) only the Government of Guam may be made a party.

> (2) Suits for the recovery of any Guam Territorial Income Tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, under the income tax laws in force in Guam, pursuant to subsection (a) of this section, may, regardless of the amount of the claim, be maintained against the government of Guam subject to the same statutory requirements as are applicable to suits for the recovery of such amounts maintained against the United States in the United States district courts with respect to the United States Income Tax.

48 U.S.C. § 1421(h)(2).

In this instance, the Court finds that the issue of whether the Governor of Guam could be

made a party is inapplicable to the analysis of whether intervention in this matter is proper. The

Court is not persuaded that the caselaw cited by the plaintiffs precludes the Governor from seeking

to intervene. The Governor's role is inextricably intertwined with respect to the GTIT, the subject

matter of this case, and his interests should be represented. Accordingly, the Court focuses on

whether there is a basis to permit the Governor of Guam to intervene as a matter of right under the

four-prong test for intervention.

As noted above, a party seeking to intervene as a matter of right must show four things. One

of the first things the party must show is that the application is timely. Timeliness is a threshold

5

1  issue requirement for intervention as a right. *League of United Latin Am. Citizens v. Wilson*, 131

2  F.3d 1297, 1302 (9th Cir. 1997). In determining whether a filing is timely, courts consider "(1) the

3  stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties;

4  and (3) the reason for the length of the delay." *Alisal Water*, 370 F.3d at 921 (quoting *Cal. Dep't*

5  *of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir.

6  2002)).

7      The plaintiffs argue that the motion is untimely because the cause of action is not in the

8  "early stage." Further, they claim that this Court has already found in favor of the plaintiffs by

9  ruling that the defendant "must pay the EIC in full to eligible claimants and that all tax returns filed

10  during relevant years constitute sufficient claims made for EIC amounts due to those taxpayers (*i.e.,*

11  none of the claims are time barred)." Plaintiffs' Opposition to Proposed Intervenor-Defendant Felix

12  P. Camacho's Motion to Intervene, p. 12. The plaintiffs have misread this Court's prior order. At

13  no time did this Court state that the claims were not time barred. In fact, the Court stated that "it

14  would refrain from addressing whether the statute of limitations would act as a bar to many of the

15  claims pursued in a refund suit." *See* June 15, 2005 Order, Docket No. 99. The only conclusion this

16  Court previously reached was that the EIC applied to Guam.

17      The Court finds that this matter is still very much in the early stages. Pleadings have only

18  recently been closed in this case, with an amended answer filed on June 7, 2005. There has been

19  no certification of the class in this matter and no real discovery taken thus far.[5] Any delay on the

20  part of the Governor seeking to intervene was due to the Governor's belief that the Attorney General

21  would adequately represent his concerns to this Court. However, it is clear from the record in this

22  case that conflicting positions developed between the Attorney General and the Governor, thereby

23  necessitating the need for the Governor to intervene in this matter in order to have his voice heard.

24  This Court finds that the Governor has met the first prong and that the motion is timely.

25

26      [5]Moreover, the Court is aware of the fact that the Governor is further along in the
settlement process in the related *Santos* case. This Court notes that many of the putative class

27  members may fare better under a structured settlement agreement. Should they proceed with a
tax refund suit the relief sought for many of the tax years in question may be barred because of a

28  statute of limitations problem.

6

1    The next requirement for intervention as a matter of right, concerns whether the Governor
2 has a significant protectable interest relating to the property or transaction that is the subject of the
3 action. The Ninth Circuit has stated that "[a]n applicant for intervention has a significantly
4 protectable interest if the interest is protected by law and there is a relationship between the legally
5 protected interest and the plaintiff's claims." *Alisal Water,* 370 F.3d at 919. Here, the Governor
6 has an interest protected by law in this matter. The Governor of Guam is charged with the execution
7 and administration of the GTIT. *See* 48 U.S.C. § 1421i. For the orderly administration of
8 government, it is necessary that the Governor be able to set and administer tax policy on behalf of
9 the Government of Guam. Moreover, the Governor is currently trying to settle the *Santos* case and
10 may seek to assert the settlement as a defense in this matter. Additionally, there is a relationship
11 between his interest in administering the GTIT and the plaintiffs' claims to the EIC. Accordingly,
12 the Court finds the Governor has met the second requirement.

13    The third requirement for intervention concerns whether the disposition of the action may
14 impair or impede his ability to protect that interest. The Court is aware of the fact that the Governor
15 has entered into a settlement agreement in the *Santos* matter and that the disposition of this case may
16 impact that settlement. For example, there are presently two requests for class certification, one in
17 this case and the second request in the *Santos* matter. The interests between the putative two classes
18 are so similar it is likely that there would be interference and a possible collapse of the settlement
19 agreement in *Santos* if the Court first certified the class in this action. Accordingly, the Court finds
20 that the Governor's interest in the administration and execution of the GTIT may be impaired or
21 impeded by the disposition of this case. Thus, the third requirement has been satisfied.

22    Lastly, in order to intervene in this action, the Governor needs to show that the existing
23 parties do not adequately represent his interests. The Ninth Circuit considers three factors in
24 determining the adequacy of representation: "(1) whether the interest of a present party is such that
25 it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is
26 capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any
27 necessary elements to the proceeding that other parties would neglect." *Araki v. Cayetano,* 324 F.3d
28 1078, 1086 (9th Cir. 2003). "The most important factor in determining the adequacy of

7

1   representation is how the interest compares with the interests of existing parties. *Id.* "Where parties
2   share the same ultimate objective, differences in litigation strategy do not normally justify
3   intervention." *Id.*

4       Undoubtedly, the Governor should have input in this matter and his concerns considered
5   because of his role in the administration of the GTIT.   Whether the case proceeds via litigation or
6   settlement, the Governor needs to be able to plan his budget in the event judgment is entered against
7   the Government of Guam, or the matter settles.   It is inconceivable that this case can be resolved
8   without him.  However, it appears that the Attorney General's representation of the Governor's
9   concerns in this matter may be lacking.  For example, the Governor claims that at the hearing for
10  partial summary judgment on June 14, 2005, the Attorney General abandoned the arguments raised
11  in the opposition brief that had been prepared after consultation with the Governor's counsel, and
12  conceded key issues. *See* Reply in Support of the Governor of Guam's Motion to Intervene, at p.
13  2. And, the Attorney General did not disclose the *Santos* settlement agreement to this Court, despite
14  the Governor's request that he do so.  *Id.*  Under the circumstances, the record supports a finding
15  that the Governor of Guam is not being adequately represented in this matter.  Accordingly, the
16  Governor has met the fourth requirement for intervention as of right.[6]

17                              **CONCLUSION**

18      Based upon the foregoing, the Court hereby **GRANTS** the Motion to Intervene, finding that
19  the Governor has established a right to intervene.

20

21      SO ORDERED this 12th day of September  2005.

22

23                              /s/ Ricardo S. Martinez
                                UNITED STATES DISTRICT JUDGE
24

25  ─────────────────────

26      [6]Having concluded that the Governor has a right to intervene, the Court need not consider
    whether permissive intervention is warranted.

27
        *The Honorable Ricardo S. Martinez, United States District Judge for the Western District of
28  Washington, by designation.

                                  8