

The Law Offices of
# PHILLIPS & BORDALLO
A Professional Corporation
410 West O'Brien Drive, Suite 102 Hagåtña, Guam 96910-5044
Tel: (671) 477-ABCD (2223) • Fax: (671) 477-2FAX (2329)
" I Erensia, Lina'la', Espiritu-ta"



FILED
DISTRICT COURT OF GUAM
NOV 14 2005
MARY L.M. MORAN
CLERK OF COURT

Attorneys for Petitioners

## DISTRICT COURT OF GUAM
## TERRITORY OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, et al., | |
| Petitioners, | CIVIL CASE NO. 04-00006 |
| vs. | COUNSEL FOR PETITIONER'S MOTION FOR ATTORNEYS' FEES AND COSTS |
| FELIX A. CAMACHO, etc., et al., | |
| Respondents. | |

Interim Class Counsel Michael F. Phillips, counsel for the Petitioner, individually and on behalf of the all those similarly situated, submits this Motion for Attorneys' Fees and Costs pursuant to Rules 23(h) and 54(d)(2). This motion is supported by the Points and Authorities below, the Declaration of Interim Class Counsel Michael F. Phillips, filed concurrently herewith, Petitioner's Motion for Appointment of Class Counsel, filed concurrently herewith, the record in this case, and any further evidence and arguments presented at a hearing, if any, on this matter.

ORIGINAL

# MEMORANDUM OF POINTS AND AUTHORITIES

The Background of this matter is contained and thoroughly discussed in Petitioner's Motion for Appointment of Class Counsel ("Pet.'s Mot. Appt. Class Counsel"), filed concurrently herewith, and which Interim Class Counsel respectfully incorporates by this reference.

## I. ARGUMENT

### A. Pursuant to FRCP Rules 23(h) and 54(d)(2), Interim Class Counsel Requests Attorneys' Fees and Costs in the Amount of Ten Percent (10%) of the Total Settlement Amount Recovered on Behalf of the EIC Class.

Interim Class Counsel initiated this matter on behalf of Petitioner and the EIC Class on February, 2004, seeking the implementation of the EIC program for Guam taxpayers and the ultimate payment of EIC refunds to eligible taxpayers. The Petition sought payment of amounts in excess of $112 million for the EIC Class. Interim Class Counsel recently entered into a Settlement Agreement on behalf of the EIC Class for the Settlement Amount of $90 million and the implementation of the EIC program for tax year 2005 and beyond, estimated to provide an additional benefit of approximately $15 to $20 million per tax year. Pursuant to the Settlement Agreement, attorneys' fees or costs are to be determined by the Court following a motion under FRCP Rule 23(h). See Settlement Agreement § II(a)(iii). For all the reasons set out below, subject to the opportunity of EIC class members to object as allowed by FRCP Rule 23(h)(2), Interim Class Counsel requests ten percent (10%) of the total settlement amount recovered on behalf and for the benefit of the EIC Class, pursuant to FRCP Rules 23(h) and 54(d)(2).

On September 19, 2005, the Magistrate Judge, recognizing the parties' desire to proceed with the June 20, 2005 Settlement Agreement, and subject to renewal by the moving parties, denied pending motions related to the earlier June 14, 2004 settlement agreement, including Petitioner's Motion for an order Preliminarily Approving the Granting of Attorneys' Fees and Costs.

In support of this motion, FRCP Rule 23(h) allows the court to award reasonable attorney fees and nontaxable costs pursuant to a motion under Rule 54(d)(2) for an award of attorney fees. According to the Advisory Committee Notes, Rule 23(h) applies to "cases in which there is a simultaneous proposal for class certification and settlement even though technically the class may not be certified unless the court approves the settlement pursuant to a review under Rule 23(e)".

Thus, "[w]hen a settlement is proposed for Rule 23(e) approval . . . with a request for certification, <u>notice to class members about class counsel's fee motion would ordinarily accompany the notice to the class about the settlement proposal itself</u>." Id. (emphasis added). The Advisory Committee Notes also state this Court should direct when the fee motion must be filed, and for "motions by class counsel in cases subject to court review of a proposed settlement under Rule 23(e), <u>it would be important to require the filing of at least the initial motion in time for inclusion of information about the motion in the notice to the class about the proposed settlement that is required by Rule 23(e)</u>." Id. (emphasis added). In addition, Rule 23(h)(2) requires that class members have the opportunity to object to the motion. Rule 23(h)(3) allows, but does not require this Court to hold a hearing on the motion.

In June, 2005, Petitioners and Respondents presented this Court with a proposed Settlement Agreement to be reviewed and approved under the standards of Rule 23(e) together with a request for conditional class certification. As such, consistent with Rule 23(h) and the guidance of the Advisory Committee Notes thereto, Interim Class Counsel requests this Court allow the filing of this motion for attorneys' fees and costs for purposes of inclusion of information on the motion in the notice to the class about the proposed settlement as required by Rule 23(e).

Interim Class Counsel acknowledges and recognizes that pursuant to Rule 23(h)(2), the motion would not be acted upon until class members have the opportunity to object to the motion. In addition, Interim Class Counsel acknowledges and recognizes the provision of the proposed Settlement Agreement requesting this Court hear the merits of this motion in conjunction with a fairness hearing on the proposed Settlement Agreement. See Settlement Agreement, Section II (c).

The United States Supreme Court has historically and consistently recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." See Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980) (citing Trustees v. Greenough, 105 U.S. 527 (1882); Central Railroad & Banking Co. v. Pettus, 113 U.S. 116 (1885); Mills v. Electric Auto-Lite Co., 396 U.S. 375 (1970); and Sprague v. Ticonic National Bank, 307 U.S. 161 (1939). The Supreme Court found the common-fund doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. Id. (citations omitted). Thus, the doctrine allows a court to prevent this inequity by

assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit. Id. The Supreme Court further explained:

> In <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, supra, we noted the features that distinguished our common-fund cases from cases where the shifting of fees was inappropriate. First, the classes of persons benefited by the lawsuits "were small in number and easily identifiable." 421 U.S., at 265, n. 39. Second, "[the] benefits could be traced with some accuracy. . . ." *Ibid*. Finally, "there was reason for confidence that the costs [of litigation] could indeed be shifted with some exactitude to those benefiting." *Ibid*. Those characteristics are not present where litigants simply vindicate a general social grievance. *Id.*, at 263-267, and n. 39. On the other hand, <u>the criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf</u>. Once the class representatives have established the defendant's liability and the total amount of damages, members of the class can obtain their share of the recovery simply by proving their individual claims against the judgment fund. This benefit devolves with certainty upon the identifiable persons whom the court has certified as members of the class. <u>Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery</u>. See generally Dawson, Lawyers and Involuntary Clients in Public Interest Litigation, 88 Harv. L. Rev. 849, 916-922 (1975).

Id. at 478-479. See also <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 967 (9th Cir. 2003) ("[T]he common fund doctrine ensures that each member of the winning party contributes proportionately to the payment of attorneys' fees."); <u>Fischel v. Equitable Life Assurance Soc'y</u>, 307 F.3d 997, 1006 (9th Cir. 2002) ("When counsel recover a common fund which confers a 'substantial benefit' upon a class of beneficiaries, they are entitled to recover their attorney's fees from the fund.") (Citing <u>Lewis v. Anderson</u>, 692 F.2d 1267, 1270 (9th Cir. 1982); <u>In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza</u>

Case 1:04-cv-00006   Document 277   Filed 11/14/2005   Page 5 of 10

5

Hotel Fire Litig., 56 F.3d 295, 305 n.6 ("The common fund doctrine is founded on the equitable principle that those who have profited from litigation should share its costs."); and Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268 (9th Cir. 1989), where the Ninth Circuit Court explained:

> Although the common fund doctrine does not permit the shifting of the burden of the litigation expenses to the losing party, it does permit the burden to be shared among those who are benefited by the litigant's efforts. See Brown v. Phillips Petroleum Co., 838 F.2d 451, 454 (10th Cir.), cert. denied, 488 U.S. 822, 109 S. Ct. 66, 102 L. Ed. 2d 43 (1988); Vincent v. Hughes Air West, Inc., 557 F.2d 759, 770 (9th Cir. 1977). . . . The common fund doctrine is properly applied, however, only if "(1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting." Hill, 775 F.2d at 1041 (9th Cir. 1985).

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002) (Citing In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1295-96 (9th Cir. 1994)). See also Graulty, 886 F.2d at 272 ("We leave to the district court the task of determining what would be reasonable compensation for creating this common fund . . . We believe that either method may, depending upon the circumstances, have its place in determining what would be reasonable compensation for creating a common fund.").

The Ninth Circuit recognized that 25% is the proper benchmark percentage in common fund cases:

> The sole remaining issue is what percentage of the common fund would provide PJAH reasonable compensation. The answer to that question, of course, depends on the individual circumstances of this case with which the district court is more familiar than we are. Ordinarily, however, such fee

6

awards range from 20 percent to 30 percent of the fund created. <u>We note with approval that one court has concluded that the "bench mark" percentage for the fee award should be 25 percent</u>. That percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in this case.

Id. See also In re Pac. Enters. Sec. Litig., 47 F.3d 373, 379 (9th Cir. 1995):

[T]wenty-five percent is the 'benchmark' that district courts should award in common fund cases.

In Vizcaino, the Ninth Circuit recognized some of the relevant factors and circumstances the district court may consider in determining a reasonable fee, including the fund size, exceptional results achieved by counsel for the class, the complexity of the issues and risks of the case, incidental or nonmonetary benefits conferred by the litigation, and the contingency basis of the litigation and the burdens on counsel. 290 F.3d 1047-1050.

In this class action, Interim Class Counsel, on behalf of Petitioner and the EIC Class, sought the implementation and payment of EIC for eligible Guam taxpayers amidst complete silence among all other attorneys and law firms. As thoroughly discussed in the Argument portion of Petitioner's Motion for Appointment of Class Counsel, filed concurrently herewith, and which portion is respectfully incorporated by this reference, Interim Class Counsel extensively researched and initiated this class action, defended the interests of the EIC Class against two applicants for intervention, negotiated a complex settlement agreement and defended its legality amid internal conflicts among the Respondents, and negotiated and executed a second proposed Settlement Agreement with Respondent Governor and Respondent Directors.

Counsel for Petitioners obtained a favorable settlement in the amount of $90 million for the EIC Class. The recovery of the settlement amount occurred after more than a decade of the Government of Guam's complete denial of the applicability of the EIC program to Guam taxpayers, the refusal to pay EIC, and the government's refusal to allow taxpayers to apply for EIC on Guam income tax returns, even in the face of a Supreme Court of Guam decision and local legislation demanding the implementation and payment of the EIC. Thus, despite this Class Action being filed in 2004, Petitioner and the EIC Class have waited almost an entire decade for their right to the implementation of the EIC program and payment of EIC refunds.

The proposed Settlement Agreement provides for the payment of the settlement amount by devoting at least 15% of any amount placed into the Government of Guam's tax refund reserve funds, which are the funds used to pay general tax refunds, including the assurance of an immediate reservation of at least $15 million. See Settlement Agreement §§ V(a) and VIII. In addition, the Settlement Agreement provides for full implementation of the EIC beginning with tax year 2005, estimated to benefit the EIC Class and other tax payers in the amount of $15 to $20 million per tax year. See Settlement Agreement Section IV(d).

The criteria to apply the common fund doctrine is easily met where, as here, each member of the EIC Class has an undisputed and mathematically ascertainable claim to part of a lump-sum settlement recovered on his behalf. See Van Gemert, 444 U.S. at 497. Under the Settlement Agreement, members of the EIC Class meeting the relevant qualifications for EIC for any or all of tax years 1995, 1996, 1999 and 2000, will

8

proportionately share $15 million of the settlement amount based on their total filed claims for EIC for all of those tax years. See Settlement Agreement, § IV(a)(i).

Members of the EIC Class who filed claims for EIC for tax year 1998 and otherwise met the relevant qualifications will also proportionately share $15 million of the settlement amount based on their total filed claims for EIC for tax year 1998. See Settlement Agreement, § IV(a)(ii). Members of the EIC Class meeting the relevant qualifications for EIC for tax year 2001 will proportionately share $15 million plus any funds allocated and unclaimed for tax year 1998, based on their total filed claims for EIC for tax year 2001. See Settlement Agreement, § IV(a)(ii-iii). Finally, members of the EIC Class meeting the relevant qualifications for EIC for each of tax years 2002, 2003 and 2004 will proportionately share $15 million plus any funds allocated and unclaimed for the immediate prior tax year, based on their total filed claims for EIC for each applicable tax year. See Settlement Agreement, § IV(a)(iii-vi).

Based on the settlement amounts allocated for each respective tax year and the total qualified claims filed by each EIC Class member, it is unmistakable that under the Settlement Agreement, each member of the EIC Class has an undisputed and mathematically ascertainable claim to part of the settlement amount recovered for the EIC Class.

As provided above, this Court has the discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method. See Vizcaino, 290 F.3d at 1047. Like the Ninth Circuit, other Circuits and courts have recognized the advantages of the percentage-of-the-fund method in common fund cases. See Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237, 254-59

(1985) (where task force commissioned by the Third Circuit recommended that compensation for creating common funds be calculated by a percentage of the funds created); Blum v. Stenson, 465 U.S. 886, 900 n. 16 (1984) (noting that the percentage basis method is grounded in tradition and therefore an acceptable way of calculating the fee award); Bussie v. Allmerica Fin. Corp., 1999 U.S. Dist. LEXIS 7793, 1999 WL 342042 at 2 (D. Mass. 1999) (unreported opinion) ("From a public policy standpoint, the [percentage of fund] method of calculating fees more appropriately aligns the interests of the class with the interests of class counsel - the larger the value of the settlement, the larger the value of the fee award. Furthermore, the [percentage of fund] method encourages efficiency and avoids the disincentive to settle cases early created by the lodestar method."); and In re Thirteen Appeals, 56 F.3d at 307 (approving the percentage of fund approach as an acceptable method and recognizing "that use of the [percentage of fund] method in common fund cases is the prevailing praxis [with] . . . distinct advantages"). The Third Circuit explained:

> In complex litigation -- and common fund cases, by and large, tend to be complex -- the POF approach is often less burdensome to administer than the lodestar method. See Swedish Hosp., 1 F.3d at 1269 (finding POF approach "less demanding of scarce judicial resources"). Rather than forcing the judge to review the time records of a multitude of attorneys in order to determine the necessity and reasonableness of every hour expended, the POF method permits the judge to focus on "a showing that the fund conferring a benefit on the class resulted from" the lawyers' efforts. . . .
>
> For another thing, using the POF method in a common fund case enhances efficiency, or, put in the reverse, using the lodestar method in such a case encourages inefficiency. Under the latter approach, attorneys not only have a monetary incentive to spend as many hours as possible (and bill for them) but also face a strong disincentive to early

> settlement. See Third Circuit Report, 108 F.R.D. at 247-48 (finding that, in common fund cases, the lodestar method "encourages lawyers to expend excessive hours" and "creates a disincentive for the early settlement of cases"); see also FJC Report, supra, at 310. If the POF method is utilized, a lawyer is still free to be inefficient or to drag her feet in pursuing settlement options -- but, rather than being rewarded for this unproductive behavior, she will likely reduce her own return on hours expended.
>
> Another point is worth making: because the POF technique is result-oriented rather than process-oriented, it better approximates the workings of the marketplace. We think that Judge Posner captured the essence of this point when he wrote that "the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character." In re Continental Ill. Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992). In fine, the market pays for the result achieved.

Id.

Interim Class Counsel and his law firm are one of the few, if not the only, law firm on Guam that has consistently litigated to enforce public policies on Guam, whether popular or unpopular. The EIC program is a public policy that went unenforced by the government for a decade accompanied by wide-spread media attention as each successive tax year passed. Yet, on this small island territory, no other plaintiff counsels were willing to represent EIC claimants even after this high profile action was announced seeking more than $112 million in damages. Only upon settlement and media attention focused on the recovery for the EIC Class and the potential recovery of attorneys' fees did other law firms seek to enter this matter or file separate lawsuits seeking to take part in the recovery for the EIC Class.

There are many reasons Guam attorneys hesitate to initiate challenges against this government regarding the enforcement of public policies on Guam. As this case

demonstrates, plaintiff attorneys are bound to face political and public scrutiny when seeking to change long-entrenched government behavior. Regardless of each firm's reasons, the lack of participation and unwillingness to litigate on behalf of contingent public policy or public interest causes is unmistakable. With the exception of counsel for Petitioners, Guam attorneys have no history filing large complex class action lawsuits against the government of Guam. The contingent nature of large complex class action lawsuits may not lend favorably to participation by what are primarily small or individually run law firms with concentrated practices outside of class actions, and with scarce resources committed to more necessary bottom line objectives.

It is safe to conclude that there is no active legal environment on Guam for a thriving contingent class action practice where attorneys may reasonably expect to recoup resources dedicated to losing causes from victorious cases. Rather, it is entirely reasonable to conclude that for most law firms on Guam, if not all, deciding whether to dedicate resources to one complex class action lawsuit could mean risking the ability to focus on and generate fees related to the firm's standard practice and at worst, the ability to meet the basic expenses necessary to continue the firm's existence. Most law firms instead choose to represent government agencies and departments.

It is this environment Interim Class Counsel submits necessitates the encouragement of Guam attorneys to take on causes that benefit large portions of Guam's people. If the recovery of fees from contingent class action cases is not worth the risks involved with the commitment of resources essentially dedicated from the outset of the suit, the participation of the Bar in furthering the enforcement of laws for the benefit of citizens would be even more non-existent. See In re Thirteen Appeals, 56

F.3d at 307 (recognizing that although the percentage of the fund method may sometimes result in the overpayment of attorneys, "law firms may be less willing to commit needed resources to common fund cases, even those for the public benefit, if the likely recovery is relatively small."). The percentage of the fund method does not always allow for higher recoveries, but the method clearly encourages law firms, especially in smaller legal environments such as this territory's, to take on causes that otherwise may go unchallenged. Interim Class Counsel respectfully requests the discretion of this Court in light of the entire circumstances of this case and the legal environment upon which it was filed, to choose the percentage of the fund method to determine the attorneys fees award in this matter.

In the Petition and proposed Amended Petition filed with this Court, Interim Class Counsel requested 10% of the recovery for the benefit of the class even with complete knowledge of the benchmark in the Ninth Circuit being 25%. Interim Class Counsel submits the factors recognized by the Ninth Circuit do not support a lowering of the fee to less than the percentage requested.

Members of the EIC Class have been denied for almost a decade not only the payment of earned income tax credit refunds, but in some cases the ability to even apply for such credits. Estimates of unpaid EIC have varied from between $10 to $15 million per tax year, with exact figures difficult to calculate in part due to the government's refusal to accept EIC applications in some cases. Tax year after tax year, with no legal challenges, the potential liability of the government increased substantially as a result of its legal position denying the applicability of the EIC program. The $90 million benefit to the EIC Class proposed by the Settlement Agreement is substantial.

Fund size was established as a relevant consideration in In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291 (9th Cir. 1994) ("WPPSS"), and explained in Vizcaino, 290 F.3d at 1047-1048.

In WPPSS, the Ninth Circuit agreed with the district court that in a case involving a $687 million settlement fund, "picking a percentage without reference to all the circumstances of the case, including the size of the fund, would be like picking a number out of the air." Id. at 1297. While the fund in this case is substantial, Interim Class Counsel submits the fund size is not of the magnitude referenced by the WPPSS which would necessitate an automatic reduction from the Ninth Circuit's benchmark, nor of the magnitude which would necessitate a reduction from Interim Class Counsel's request of 10%. On the contrary, the circumstances of this class action demonstrates that a 10% recovery under the percentage of the fund method is entirely reasonable.

The results achieved by counsel for Petitioners, as evidenced by the terms of the proposed Settlement Agreement, is also a relevant circumstance. The results achieved by the proposed Settlement Agreement generally speaks for itself. EIC Class members waited up to a decade in some cases for the ability to claim EIC on their tax returns, and most important, the ability to receive refundable earned income tax credits. EIC is intended to alleviate the financial difficulties faced by hard working individuals and families in the lowest income brackets. EIC payments are not tax refund windfalls that allow its recipients to enjoy luxuries otherwise unavailable. EIC payments are tax refunds that allow working recipients to make ends meet. By forcing the government to change its entrenched public policy denying EIC's applicability to Guam taxpayers, the terms of the proposed Settlement Agreement requires the government to implement the

14

EIC program beginning with tax year 2005 and beyond, to allow eligible Guam taxpayers to claim the EIC on their tax returns, and to pay such refundable earned income tax refunds as required by the Organic Act and the Guam Territorial Income Tax law. In addition, the terms of the proposed Settlement Agreement recognizes both the limitations of the government's ability to pay past EIC in light of its financial condition, and the obligations of the government for denying EIC's applicability for almost a decade. The terms of the proposed Settlement Agreement identifies a total settlement amount of $90 million for all EIC payments due for years the government has either refused applications for EIC, or refused payment for filed EIC claims. These tax years include 1995, 1996, 1998 and 1999-2004.

If the proposed Settlement Agreement is finally approved by this Court, EIC Class members will benefit not only in the form of being compensated for the government's refusal to recognize federal and local law demanding implementation of the EIC program, but also from the injunctive nature of the terms of the Settlement Agreement requiring future implementation of the EIC program. No longer will Guam taxpayers fill out Guam income tax returns with the EIC portion "blacked out" or otherwise made inapplicable. The exceptional results achieved by this class action and the work of Interim Class Counsel is evident in the benefits that all EIC class members will receive in the form of compensation and in their ability to file for EIC in the future. The relevancy of results achieved by this class action supports a recovery of attorneys' fees in the area of the Ninth Circuit's benchmark of 25%. Interim Class Counsel's request of 10% is reasonable under these circumstances.

Case 1:04-cv-00006    Document 277-2    Filed 11/14/2005    Page 5 of 10

15

Even disregarding the internal conflicts and challenges among Respondents Governor and Attorney General, this class action from the outset included inherent risks due in part to the complexity of issues involved. The record in this case from its initiation to settlement more than substantiates the inherent and diverse issues in this action. The defenses set forth by the government throughout its denial of EIC, whether in public or before the courts, includes issues related to federal mandates, the alleged necessity of federal or local government appropriations, the alleged characteristic of EIC as government subsidies, the authority over expenditures by the local government, statute of limitation concerns, including jurisdictional requirements, Congressional intent of EIC as it applies to Guam, including such allegations as it relates to Congress' passage of the Organic Act of Guam, the alleged supremacy of local tax commissioner revenue rulings, allegations regarding the limited authority of this Court over tax remedies, and of course, the intricacies of complex income tax procedures and regulations regarding the implementation of the EIC program. The complexity of issues evolved to now also include the scope of authority of Guam's first elected Attorney General, an issue now raised in every court on Guam and the Ninth Circuit.

In addition, this class action involves a large amount of Guam taxpayers, estimated to be more than 10,000 individuals, and involves nine separate tax years. To properly address claims, the class action required by necessity an analysis of past and current provisions of the Internal Revenue Code (Guam's GTIT mirrors such provisions) to determine relevant procedures and qualifications for both the application and receipt of EIC. The government's behavior requiring this action required Interim Class

Counsel's research of tax return documents, public statements, and other factual documentation over almost a decade relevant to the claims of the EIC Class.

Although Interim Class Counsel submits his confidence in success on the merits never waivered, such confidence was tempered by the inherent complexity and diversity of issues involved in this action. As evident from the above, the success of the class action depended on the success not of a few manageable issues, but on the legal success of a variety of jurisdictional and statutory and constitutional issues raised by the government. The risks of success in applying an entire federally mandated program to Guam taxpayers, in the face of almost a decade of local government denial, was apparent from the outset, and supports Interim Class Counsel's request of a recovery of attorneys fees well below the Ninth Circuit's benchmark of 25%.

The incidental benefits is also a relevant circumstance to consider. Under the terms of the proposed Settlement Agreement, monetary compensation for past EIC claims is evidently the highlight of the benefits conferred upon EIC Class members. However, even though monetary benefits is also the ultimate objective of the entire implementation of the EIC program, the incidental benefits of mandating the implementation of the EIC program for 2005 and beyond and the monetary benefits outside of the established $90 million fund is significant and substantial. Unlike previous tax years, EIC Class members and other new Guam taxpayers will have their rights restored to apply for EIC on their income tax returns. The implementation of the entire EIC program, including the application and consideration process, as well as the receipt of eligible refunds, is the cornerstone of this class action. The incidental benefits

17

conferred by the terms of the proposed Settlement Agreement supports Interim Class Counsel's request for a recovery of attorneys' fees.

Finally, the contingency basis of this class action and the burden on class counsel, including the time and resources Interim Class Counsel has devoted and will continue to devote, is also a relevant consideration. As previously mentioned, a class action suit against this government by its nature involves significant burdens to initiating counsel. As this class action has evolved, the internal conflicts of Respondents has only added to the burdens faced by Petitioners and Interim Class Counsel. Interim Class Counsel remains confident in the legality of the original settlement agreement entered into by the Acting Governor of Guam, the Respondent Directors, and the Attorney General. Interim Class Counsel endured not only public scrutiny of backdoor intervening counsels, but harsh public statements of impropriety from the Governor when he decided to enter an appearance and challenge the original settlement agreement. Nevertheless, in the interest of the EIC Class, Interim Class Counsel submitted to mediation with all Respondents, and concluded negotiations with a settlement agreement providing additional benefits to the EIC Class. As a result of keeping the EIC Class' interest primary, Interim Class Counsel now bears the public scrutiny of the Attorney General, who opposes the new settlement agreement on questionable grounds. Indeed, the Attorney General publicly challenged Interim Class Counsel's motivation in seeking redress on behalf of the EIC Class, suggesting he would support the new proposed settlement if Interim Class Counsel waived all attorneys' fees.

Aside from facing the political nuances of challenging the elected power structure of the government of Guam, Interim Class Counsel submits the record in the case evidences that settlement has not removed the burdens Interim Counsel may have faced if the case proceeded through normal channels of litigation. This class action was initiated in February, 2004 and settled in June, 2004. In August, 2004, Interim Class Counsel thwarted intervening counsels armed with meritless arguments and groundless public accusations of collusion. In late 2004, the entrance of Respondent Governor and Respondent Directors required the devotion of resources to defend not only the legality of the original settlement, but in part the merits of the class action.

Interim Class Counsel participated extensively over the course of three months to negotiate an additional settlement agreement to resolve disputes raised by Respondent Governor and Respondent Directors. Interim Class Counsel devoted and committed significant resources necessary to obtain the most favorable benefits for the EIC Class, and Interim Class Counsel will be required and is willing to continue to devote such resources as this case proceeds. Interim Class Counsel's commitment of scarce resources on a contingency basis, further supports his request for a recovery of attorneys' fees.

Interim Class Counsel submits a consideration of the entire circumstances of this case is consistent with a finding that Interim Class Counsel's request for attorneys' fees of 10% of the amount recovered for the EIC Class is reasonable under the relevant standards mandated by federal law. As this class action requires additional procedures and continued work, Interim Class Counsel respectfully requests the opportunity, if necessary, to supplement this Memorandum as such conditions require.

## II. CONCLUSION

For all of the above reasons, Interim Class Counsel requests that this Court allow the filing of this motion for attorneys' fees and costs pursuant FRCP Rules 52(d)(2) and 23(h) for purposes of inclusion of information regarding the motion in the notice to the class required by FRCP Rule 23(e). Interim Class Counsel, pursuant to Federal Rules of Civil Procedure 54(d)(2) and Rule 23(h), respectfully requests attorneys' fees and costs in the amount of ten percent (10%) of the amount recovered for the common benefit of the EIC Class, subject to an opportunity provided class members to object to this motion. Interim Class Counsel respectfully requests this Court's discretion under the guidance of the Ninth Circuit, to apply the percentage-of-the-fund method in calculating the fee award in this class action.

With the acknowledgement that class members may file objections to this motion and that continued work is necessary as this class action proceeds, Interim Class Counsel also respectfully request an additional opportunity, consistent with requests by the parties under the provisions of the proposed Settlement Agreement (see Settlement Agreement Section II (c)), to respond and/or supplement this motion as such class objections, if any, require, and as this Court may otherwise order.

Respectfully submitted this 10th day of November, 2005.

PHILLIPS & BORDALLO, P.C.
Attorneys for Petitioners

By: _____
Michael F. Phillips