
FILED
DISTRICT COURT OF GUAM
MAR 10 2006
MARY L.M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>FELIX A. CAMACHO, *et al.*,<br><br>Defendants. | Civil Case No. 04-00006<br><br>**ORDER RE: OBJECTIONS TO MAGISTRATE ORDER OF SEPTEMBER 19, 2005** |

Presently before the court is the Governor of Guam's Objections to Magistrate Order of September 19, 2005 Regarding the Governor's Motion to Disqualify the Attorney General.[1] Because both the Governor and Attorney General purport to act on behalf of Guam, yet have taken inconsistent positions in this action, this court instructed the parties to submit additional briefing. Specifically, the court requested the parties to address the issue of whether the Governor of Guam or Guam's Attorney General represents the "Government of Guam" and which of the two, the Governor or the Attorney General, has final settlement authority in this case.[2]

The determination of these issues is important for the orderly and efficient resolution of this litigation, a goal that the court assumes the Governor and the Attorney General both share.

---

[1] *See* Docket No. 247.

[2] A Joinder to the Governor's Objections was filed by defendants Art Ilagan and Lourdes M. Perez. *See* Docket No. 249.

**ORIGINAL**

However, the court is convinced that the parties will reach no resolution unless the court determines which party represents the Government of Guam in this matter. After reviewing the record and filings, the court sustains the Governor's Objections.

## BACKGROUND

Currently there are three separate class actions filed in the District Court of Guam concerning Guam's Earned Income Tax Credit ("EIC"). The present case is the first of the three actions. It was filed on February 12, 2004. Thereafter, on August 9, 2004, Ms. Charmaine R. Torres filed a second putative EIC class action, *Torres v. Government of Guam, et. al.*, Guam Dist. Ct. Civil Case No. CV04-00038. The third class action, *Simpao v. Government of Guam*, Guam Dist. Ct. Civil Case No. CV04-00049 was filed in December 2004.

In the early stages of *Santos*, the Attorney General represented the Governor and the Directors of the Department of Revenue & Taxation and Administration ("Directors"). In June 2004, while the Governor was off-island, the Attorney General and the Acting Governor negotiated a settlement of this case for $60 million. When the Governor returned to Guam, the Governor and the Attorney General held discussions regarding the legality of the proposed settlement. *See* October 3, 2005 Declaration of Rodney J. Jacob ("Jacob Decl."), in Support of Objections to Magistrate Order of September 19, 2005, Exh. 2, attached thereto. In response to those discussions, the Governor instructed the Attorney General to take no action in furtherance of the settlement until the issues concerning the legality of the settlement could be resolved. Jacob Decl. Exh. 3, attached thereto.

Thereafter, the Attorney General filed another pleading regarding implementation of the settlement. Jacob Decl. Exh. 5, attached thereto. The Attorney General disclosed that the Governor disagreed with various aspects of the Agreement, and had purportedly instructed the Attorney General not to file pleadings on his behalf without his permission. The Attorney General claimed that his client was the people of Guam, not the Governor. The Governor and Directors then filed appearances through new counsel and stated their objections to the settlement. The Attorney General next moved to strike the appearances of new counsel.

-2-

Meanwhile, the Attorney General subpoenaed his former clients, the Governor and Directors. Jacob Decl. Exh. 6. On February 9, 2005, the court denied the Attorney General's motion to strike and upheld the right of the Governor and Directors to retain independent counsel.

On March 2, 2005, the court denied a motion to reconsider its February 9, 2005 Order. *See* March 2, 2005 Order. On August 12, 2005, Chief Judge Marshall of the Central District of California, sitting by designation in Guam, denied the Attorney General's challenge to the February 9, 2005 Order and March 2, 2005 Order. *See* August 12, 2005 Order.

On February 16, 2005, the Governor moved to disqualify the Attorney General from this action. While that motion was pending, the Governor and Directors reached a binding term sheet to settle this action. However, the Attorney General refused to sign it. Jacob Decl., Exh. 10, attached thereto.

Meanwhile, in *Simpao*, the court granted the plaintiffs summary judgment on the issue of whether EIC applies to Guam. In ruling on this issue, the court considered the Attorney General's concession that the EIC does apply to Guam. The court was at the time unaware that the concession was contrary to the Governor's position and that there was a pending settlement proposed by the Governor in *Santos*. Likewise in *Simpao*, the Attorney General conceded the issue of class certification. On September 12, 2005, the court granted the Governor intervention in *Simpao* to protect his interests in the case. Jacob Decl., Exh. 13, attached thereto.

On September 19, 2005, the magistrate judge denied the Governor's Motion to Disqualify the Attorney General from this action. The Governor then filed objections to that order which are presently before this court.

### DISCUSSION

Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge may "hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to

involuntarily dismiss an action." "Findings and Recommendations" are issued under 28 U.S.C. § 636(b)(1)(B) concerning matters specifically excepted under § 636(b)(1)(A). In this instance, the magistrate judge ruled on the issue of whether the Attorney General should be disqualified. The court finds that this issue was of a pretrial nature and not a dispositive matter needing a judicial referral and a Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(B).

Under Title 28 U.S.C. § 636(b)(1)(A) a district judge may reconsider a magistrate judge's order on a nondispositive pretrial motion if the order was "clearly erroneous or contrary to law"; it is not subject to *de novo* determination as are proposed findings and recommendations under 28 U.S.C. § 636(b)(1)(B). Similarly, Federal Rules of Civil Procedure 72(a) provides "[t]he district judge ... shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law ... ." Under this standard of review, the magistrate judge's order should be affirmed unless the district court is left with the "definite and firm conviction that a mistake has been committed." *Burdick v. Comm'r*, 979 F.2d 1369, 1370 (9th Cir.1992). The reviewing court may not simply substitute its judgment for that of the deciding court. *Grimes v. City & County of San Francisco*, 951 F.2d 236, 241 (9th Cir.1991).

In this matter, the Governor sought the disqualification of the Attorney General from continued representation of the Government of Guam. The Governor claimed their positions were in conflict. In addition the Governor alleged the Attorney General had initially represented the Governor and the Directors and was privy to their confidential information, and therefore had a conflict of interest. The magistrate judge found that the Attorney General's "paramount duty [was] to represent the public interest." *See* Order p. 5. Accordingly, the magistrate judge held that the court could not disqualify the Attorney General because the rules of professional conduct could not be "mechanically" applied and because he had to give meaning to the designation of the Attorney General as "chief legal officer" of the government of Guam.

The Governor claims that the magistrate judge's ruling was clearly erroneous and contrary to law because he relied upon two incorrect legal conclusions. The first conclusion

-4-

was that the Attorney General's ability to represent the "public" or state interest was coextensive with his ability to represent the Governor's interest and position on issues of Guam taxes. The second conclusion was even if the Attorney General had some applicable "public interest" power in this case, that would not cure the conflict of interest prohibiting his appearance in this case.

As to the first conclusion, the Governor argues that the Attorney General cannot equally represent the "public" or state interest as perceived by the Attorney General and the Governor's position on tax issues where there is a conflict between the two. The Organic Act of Guam states in relevant part:

**(c) Enforcement of tax**

The administration and enforcement of the Guam Territorial income tax shall be performed by or under the supervision of the Governor. Any function needful to the administration and enforcement of the income-tax laws in force in Guam . . . shall be performed by any officer or employee of the government of Guam duly authorized by the Governor (either directly, or indirectly by one or more redelegations of authority) to perform such function.

48 U.S.C. § 1421i(c).

In addition,

The **Governor or his delegate shall have the same administrative and enforcement powers and remedies with regard to the Guam Territorial income tax as the Secretary of the Treasury, and other United States officials of the executive branch**, have with respect to the United States income tax. Needful rules and regulations not inconsistent with the regulations prescribed under section 7654(e) of the Internal Revenue Code of 1986 [26 U.S.C.A. § 7654(e) ] for enforcement of the Guam Territorial income tax shall be prescribed by the Governor. The Governor or his delegate shall have authority to issue, from time to time, in whole or in part, the text of the income-tax laws in force in Guam pursuant to subsection (a) of this section.

48 U.S.C. § 1421i(d)(2) (emphasis added).

In light of sections 1421i(c) and 1421i(d)(2), the Governor argues that he has primacy as to tax matters and that his enforcement powers over the Guam Territorial income tax are clear. The Governor contends that the Attorney General lacks independent "authority to override the Governor's decisions which relate to the Guam Territorial Income Tax ("GTIT") laws." *See* Objections, quoting August 12, 2005 Order, pp. 4-5 (quoting February 9, 2004 Order at p. 6).

In contrast, the Attorney General claims that he alone, as the "Chief Legal Officer," is

-5-

constitutionally empowered to *represent* the Government of Guam to the exclusion of the Governor and all other Guam officials, in these cases as well as in all cases to which the Government of Guam is a party. "The Organic Act serves the function of a constitution for Guam." *Hauser v. Department of Law,* 97 F.3d 1152, 1156 (9th Cir. 1996). In 1998, Congress amended the Organic Act to specifically provide for the office of the Attorney General.[3]

In addition, Guam's Legislation provides "[n]otwithstanding any other provision of law, the Attorney General shall have cognizance of all legal matters, excluding the Legislative and Judicial Branches of the government of Guam, involving the Executive Branch of the government of Guam, its agencies, instrumentalities, public corporations, . . . ." 5 Guam Code Ann. § 30102. Therefore, the Attorney General claims that his positions prevail when a conflict arises between his office and the Governor. Title 5 of the Guam Code Ann. Section 30109(c) provides that the Attorney General shall "by himself, a deputy or assistant . . . [c]onduct on behalf of the government of Guam all civil actions in which the government is an interested party; provided that those branches, departments or agencies which are authorized to employ their own legal counsel may use them instead of the Attorney General." Basically, the Attorney General argues that since the enactment of the 1998 Amendment of the Organic Act, once a tax suit is filed, authority transfers to the Attorney General.

The court notes, however, that there were no guarantees that before 1998 Guam would have an Attorney General.[4] And, after 1998, there were no guarantees that the Attorney General would necessarily be an elected position. For example, Congress gave Guam the option to either elect an Attorney General or to have the Governor appoint one.[5] The court concludes that

---

[3] The "Guam Organic Act Amendments of 1998", H.R. 2370, 105th Cong. (1998), created the position of the Attorney General of Guam.

[4] The Guam Territorial income tax statutes regarding refund suits were created in 1958.

[5] The Organic Act was amended to specifically provide for the office of the Attorney General. 48 U.S.C. § 1421g(d)(1). The provision in part, states as follows:

d) Attorney General

-6-

any power or authority to enforce the Guam Territorial Income Tax vests with the Governor. To hold otherwise, the court would have to conclude that Congress repealed or amended 48 U.S.C. § 1421i(d)(2) by implication when it amended the Organic Act in 1998 to provide that "the Attorney General of Guam shall be the Chief Legal Officer of the Government of Guam." 48 U.S.C. § 1421(g)(d)(1). The court is unwilling, absent clear evidence of congressional intent, to repeal section 1421i(d)(2). *Branch v. Smith*, 538 U.S. 254, 273 (2003); *see Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1017-1018 (1984) ("repeals by implication are disfavored" and "where two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective"); *see also United States v. Welden*, 377 U.S. 95, 102 n.12 (1964) ("amendments by implication,

---

(1) The Attorney General of Guam shall be the *Chief Legal Officer* of the Government of Guam. At such time as the Office of the Attorney General of Guam shall next become vacant, the Attorney General of Guam shall be appointed by the Governor of Guam with the advice and consent of the legislature, and shall serve at the pleasure of the Governor of Guam. (Emphasis Added).

(2) Instead of an appointed Attorney General, the legislature may, by law, provide for the election of the Attorney General of Guam by the qualified voters of Guam in general elections after 1998 in which the Governor of Guam is elected. The term of an elected Attorney General shall be 4 years. The Attorney General may be removed by the people of Guam according to the procedures specified in section 1422d of this title or may be removed for cause in accordance with procedures established by the legislature in law. A vacancy in the office of an elected Attorney General shall be filled—

    (A) by appointment by the Governor of Guam if such vacancy occurs less than 6 months before a general election for the Office of Attorney General of Guam; or

    (B) by a special election held no sooner than 3 months after such vacancy occurs and no later than 6 months before a general election for Attorney General of Guam, and by appointment by the Governor of Guam pending a special election under this subparagraph.

like repeals by implication, are also not favored").

The court does not find a basis to find that Congress intended to repeal or amend section 1421i(d)(2) by implication. In fact, when the Organic Act was amended to provide for the election of the Attorney General, Congress never amended Section 1421i(e) to substitute the Attorney General in place of the Governor or anyone else.

In addition, the court notes that while Congress designated the Attorney General as the "Chief Legal Office of the Government of Guam," it did not describe the Attorney General's duties and powers or the restrictions on the Office's powers. In contrast, the Governor is described as the "executive officer . . . [having] general control and supervision of all the departments, bureaus, agencies and other instrumentalities of the executive branch of the Government of Guam . . . responsible for the faithful execution of the laws of Guam and the laws of the United States applicable in Guam." 48 U.S.C. § 1422.

The court concludes the Governor is the executive officer of the territory, and has power over the Attorney General. The Attorney General is the attorney representing his client, the Government of Guam. Accordingly, the Attorney General should not replace the Governor in setting policy whenever he disagrees with the Governor's positions. *Cf. Chun v. Board of Trustees of Employees' Retirement System of State of Hawaii*, 952 P.2d 1215, 1234 (Haw. 1998) ("[W]e do not accept the Attorney General's contention that, merely because she regards her duty to represent the 'state's' legal interests as being paramount to her duty to represent her statutory client's legal interests, she may, in her sole discretion, so control the course of litigation as to advance her view of the 'public welfare' when it squarely conflicts with the substantive position taken by the policymaking state governmental instrumentality whom she represents as a named party to the litigation").

This court and the magistrate judge have already recognized the Governor's statutory and exclusive responsibility for administering and enforcing the Guam Territorial income tax law. *See* February 9, 2005 and March 2, 2005 Orders. Likewise the Attorney General's position as the "Chief Legal Officer" has been recognized. *Id.* Apparently in recognition of the Governor's authority and that of the Attorney General, the various judges tasked with looking at

-8-

this case have allowed both to be heard on the matters.

It is unlikely this case will reach an efficient resolution if both the Governor and Attorney General are permitted to purportedly represent the Government of Guam. The court agrees with the Governor that in this instance the Attorney General is tasked as representing the "Government" as a distinct legal entity and interest. He is not representing the people of Guam or a generalized "public" interest. The interest is the Government's defense of a suit concerning the Guam Territorial Income Tax, which under 48 U.S.C. § 1421i(d)(2) can only be defined by the Governor. *See Graddick v. Newman*, 453 U.S. 928 (1981) (refusing to grant the Alabama attorney general's request for a stay of a federal district court order, where the governor maintained a different position than that of the attorney general and state statutes vested responsibility for state prison system in the governor).

In summary the court finds the Governor is the executive officer of the territory and has authority over the Attorney General. Accordingly, the court sustains the Governor's objection on this point and holds that the Governor is the proper representative of Guam in this proceeding.

In addition, the Governor states that the magistrate judge erred in failing to find that there was a conflict of interest necessitating the disqualification of the Attorney General under the rules of professional conduct. On February 11, 2005, the Guam Supreme Court adopted and made part of the Guam Rules of Professional Conduct the 2002 amendments to the ABA's Model Rules of Professional Conduct. *See* Promulgation Order No. 04-002.[6] Among the new provisions is Rule 1.11 entitled "Special Conflicts of Interest for Former and Current

---

[6]Section 1424-1(a) states: "[t]he Supreme Court of Guam shall be the highest court of the judicial branch of Guam (excluding the District Court of Guam) and shall . . . (7) govern attorney and judicial ethics and the practice of law in Guam, including admission to practice law and the conduct and discipline of persons admitted to practice law." 48 U.S.C. § 1424-1(a)(7). In addition, the District Court of Guam's local rules states that "[e]very attorney admitted to practice before this Court shall familiarize himself or herself with and comply with the standards of professional conduct required of members of the Bar of Guam and contained in the American Bar Association Model Rules of Professional Conduct as adopted on August 2, 1983, and as thereafter amended or judicially construed."

-9-

Government Officers and Employees." Amended Rule 1.11(d)(1) provides as follows: "[e]xcept as law may otherwise expressly permit, a lawyer currently serving as a public officer or employee: (1) is subject to Rules 1.7 and 1.9; . . . "

The Governor claims that the magistrate judge erred in not applying Rules 1.7 and 1.9. Rules 1.7 and 1.9 provide in part:

**Rule 1.7: Conflict of Interest: Current Clients**

(a) [A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

    (1) the representation of one client will be directly adverse to another client; or

    (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

**Rule 1.9: Duties to Former Clients**

(a) [A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

    (1) the representation of one client will be directly adverse to another client; or

    (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer

Both Rules protect the trust and loyalty that forms the foundation of the attorney-client relationship. Since the Governor retained separate counsel, the Attorney General has subpoenaed his former clients, conducted a cross-examination with regard to his former representation, and taken actions in the *Simpao* matter inconsistent with the Governor's intent to settle this case.

The Attorney General claims that removing him from this case would establish unworkable precedent. For example, if each successor administration, or every administration that changed its mind in the middle of litigation, is permitted to renege on the deals it or its predecessor makes, and at the same time disqualify the "Chief Legal Counsel for the Government of Guam" there would never be a coherent legal policy for the Government.

-10-

However, the same could be said for a change in the Attorney General. For example, if each successor Attorney General changed his or her mind in the middle of litigation, likewise there could be a disruption in establishing a coherent legal policy for the Government.

The court is troubled that the Attorney General initially represented the Governor and the Directors, establishing an attorney-client relationship, only to later take an adverse position to them in the very same case. While the court agrees with the Attorney General that the rules of professional responsibility should not be applied "mechanically" when considering matters of conflict where the Attorney General is involved, that is not to suggest that they should not be applied at all. *See Deukmejian v. Brown*, 624 P.2d 1206, 1209 (Cal.1981)("nothing in that circumstance, however, . . . justifies relaxation of the prevailing rules governing an attorney's right to assume a position adverse to his clients or former clients, particularly in litigation that arose during the period of the attorney-client relationship"). Moreover, there is no Guam statute that exempts the Attorney General's Office from compliance with the Guam Rules of Professional Conduct.

The Attorney General should have faithfully represented the Governor in this matter and if that was impossible he should have stepped aside. *See Deukmejian v. Brown*, 624 P.2d 1206, 1209 (Cal. 1981) ("In short, the Attorney General cannot be compelled to represent state officers or agencies if he believes them to be acting contrary to law, and he may withdraw from his statutorily imposed duty to act as their counsel, but he may not take a position adverse to those same clients"). As shown, the Attorney General chose not to represent the Governor's interest in this matter and separate counsel was retained. It is that counsel that should now undertake the representation of the Government of Guam in this matter. Accordingly, the court finds the magistrate judge erred in not finding a conflict in this matter that required the dismissal of the Attorney General.

The court finds that, at least in this context, the Government of Guam's representative should be the Governor. Moreover, the court concludes, as a matter of law, that the Governor has authority over the enforcement of tax matters, and thus, may dictate the litigation strategy in this matter. The court believes that this case represents the exception rather than the rule and

that ordinarily, the Attorney General and Governor will share a unified position.[7]

## CONCLUSION

Although the court finds the Governor has the final authority to both be the representative of the Government of Guam and to settle the issues involved as discussed herein, nothing shall be construed to prevent the Attorney General from litigating his right to appear as a representative of the Government of Guam in other matters.[8] For purposes of the instant litigation, the Governor shall be the representative of the Government of Guam and shall be represented by independent counsel in the instant litigation. The court SUSTAINS the Governor's Objections as discussed herein. The magistrate judge is ordered to hereafter address the outstanding motions in this matter as he deems proper.

SO ORDERED this 9th day of March, 2006.

_____
JAMES L. ROBART for[*]
RICARDO S. MARTINEZ[**]
United States District Judge

---

[7] Having ruled on this matter, the court finds that even if an appellate court were to rule that the Governor through his counsel may not represent the Government of Guam in this matter, this court would likely permit the Governor to appear as an *amicus curiae*. Similarly, the court would likely permit the Attorney General to appear as an *amicus curiae*.

[8] The court is mindful that until this matter is finally determined, the issue will be revisited to potentially bog down the progress of this as well as other cases. Accordingly, the court notes the possibility of a motion to certify the issue as to the representation of the "Government of Guam" to the Ninth Circuit for interlocutory appeal.

[*] The Honorable James L. Robart, United States District Judge for the Western District of Washington, by designation

[**] The Honorable Ricardo S. Martinez, United States District Judge for the Western District of Washington, by designation.