[Appearing Counsel on next page]

# DISTRICT COURT OF GUAM
## TERRITORY OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, *et. al.*,<br><br>        Petitioners,<br>-v-<br>FELIX P. CAMACHO, *et. al.*<br><br>        Respondents. | Civil Case No. 04-00006<br><br>**JOINT MOTION OF THE *SANTOS* AND *TORRES* PARTIES FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[ORAL ARGUMENT REQUESTED]** |
| CHARMAINE R. TORRES, *et al.*,<br><br>        Plaintiffs,<br>-v-<br>GOVERNMENT OF GUAM, *et al.*,<br><br>        Defendants. | Civil Case No. 04-00038 |
| MARY GRACE SIMPAO, *et al.*,<br><br>        Plaintiffs,<br>-v-<br>GOVERNMENT OF GUAM,<br><br>        Defendant.<br>-v-<br>FELIX P. CAMACHO, Governor of Guam,<br><br>        Intervenor-Defendant. | Civil Case No. 04-00049 |

**SHANNON TAITANO, ESQ.**
**OFFICE OF THE GOVERNOR OF GUAM**
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
Telephone: (671) 472-8931
Facsimile: (671) 477-4826

**EDUARDO A. CALVO, ESQ.**
**RODNEY J. JACOB, ESQ.**
**DANIEL M. BENJAMIN, ESQ.**
**CALVO & CLARK, LLP**
Attorneys at Law
655 South Marine Drive, Suite 202
Tamuning, Guam 96913
Telephone: (671) 646-9355
Facsimile: (671) 646-9403
Attorneys for *Felix P. Camacho, Governor of Guam*

**RAWLEN M.T. MANTANONA**
**CABOT MANTANONA LLP**
BankPacific Building, 2nd Floor
825 S. Marine Corps Drive
Telephone: (671) 646-2001
Facsimile: (671) 646-0777
Attorneys for Respondents *Lourdes M. Perez and Artemio R. Ilagan*

**MICHAEL F. PHILLIPS**
**PHILLIPS & BORDALLO, P.C.**
410 West O'Brien Drive
Hagåtña, Guam 96910
Telephone: (671) 477-2223
Facsimile: (671) 477-2329
Interim Class Counsel and Attorneys for Petitioner *Julie Babauta Santos*

**IGNACIO C. AGUIGUI**
**PETER C. PEREZ**
**LUJAN AGUIGUI & PEREZ LLP**
300 Pacific News Building
Hagåtña, Guam 96910
Telephone: (671) 477-8064
Facsimile: (671) 477-5297
Attorneys for Plaintiff *Charmaine R. Torres*

# MOTION

On April 6, 7, and 8, 2006, the parties to these three consolidated cases participated in mediation in Guam before the Hon. William J. Cahill (Ret. Judge). As a result of the mediation, parties in the *Santos* and *Torres* actions reached a settlement agreement in principle, subject to final documentation. By Order dated April 26, 2006, the Court gave the parties until May 26, 2006, to complete the documentation and submit it to the Court.

Accordingly, the Moving Parties[1] now jointly submit the resulting Settlement Agreement concurrently herewith and respectfully move the Court for an order: (1) granting preliminary approval of the Settlement Agreement; (2) setting all necessary Court dates and timetables under the Settlement Agreement; (3) approving and ordering the issuance of the class notices; (4) conditionally certifying the EIC settlement class, as defined in the Settlement Agreement and pursuant to a separate motion to be filed shortly within the time frame provided for under the Settlement Agreement; and (5) granting such other and further relief as the Court may deem just and proper. Pursuant to Section II(a)(v) of the Settlement Agreement, if the Court preliminarily approves the Settlement Agreement, conditionally certifies the class, and orders the issuance of class notice, the Moving Parties have agreed that the previous June 14, 2004 Settlement Agreement shall be mutually rescinded and of no further force or effect, and that the June 17, 2004 stipulated Order in the *Santos* action granting preliminary approval to that previous settlement shall be vacated. Accordingly, the Moving Parties ask that upon the occurrence of stated conditions, the Court enter an order vacating the June 17, 2004 stipulated Order.

The Moving Parties recognize the Court has issued a stay in the three cases pending interlocutory appeal of Court's decision regarding disqualification of the Attorney General. *See* March 16, 2006 Order. Nonetheless, the Moving Parties believe that the interlocutory appeal should not preclude the Court from proceeding with approval of the instant Settlement

---

[1] The Moving Parties consist of parties to the *Santos* (CV04-00006) and *Torres* (CV04-00038) actions – *i.e.*, Petitioner Julie B. Santos ("Petitioner"), Interim Class Counsel Mike Phillips, Esq. ("Interim Class Counsel"), Governor of Guam Felix P. Camacho (the "Governor"), the Director of Revenue & Taxation Artemio B. Ilagan and the Director of Administration Lourdes M. Perez (the "Directors"), Charmaine R. Torres ("Torres"), and Lujan Aguigui & Perez LLP, counsel for Torres.

1

Agreement. The issues will be briefed and set forth in detail in the Governor of Guam's forthcoming motion to lift the stay, to be filed within the next few days.[2]

This Joint Motion is based upon the accompanying memorandum of points and authorities, the Declaration of Daniel M. Benjamin, the files and records in this action, and such other evidence and arguments as may be presented at or before the hearing on this motion.

The Moving Parties request oral argument. The statement pursuant to Local Rule 7.1(e)(2) will be submitted regarding oral argument dates with respect to this and certain other motions to be filed within the next several days. The Moving Parties will provide notice of the hearing date once the Court provides a date.

Respectfully submitted this 26th day of May, 2006.

| | |
|---|---|
| **OFFICE OF THE GOVERNOR OF GUAM** <br> **CALVO & CLARK, LLP** <br> Attorneys for Felix P. Camacho, Governor of Guam <br><br> By: _____ <br> DANIEL M. BENJAMIN | **PHILLIPS & BORDALLO, P.C.** <br> Interim Class Counsel and Attorneys for Petitioner Julie Babauta Santos <br><br><br> By: _____ <br> MICHAEL F. PHILLIPS |
| **CABOT MANTANONA LLP** <br> Attorneys for Respondents Lourdes M. Perez and Artemio R. Ilagan <br><br> By: _____ <br> RAWLEN M.T. MANTANONA | **LUJAN AGUIGUI & PEREZ LLP** <br> Attorneys for Plaintiff Charmaine R. Torres <br><br> By: _____ <br> ~~IGNACIO C. AGUIGUI~~ <br> PETER C. PEREZ |

---

[2] Furthermore, although the Attorney General technically remains a *party* to the Torres action, a motion will be filed within the next few days pursuant to the Settlement Agreement to dismiss the Attorney General from the case. In the *Torres* action, the Attorney General requested that he be dismissed as a party defendant pursuant to 26 U.S.C. § 7422(f), and the Magistrate Judge recommended that his request be granted. *See* Report and Recommendations of Magistrate Judge (CV04-00038) at 4-6 (filed Sept. 29, 2005).

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Moving Parties in the *Santos* and *Torres* actions respectfully submit this Memorandum of Points and Authorities in Support of their Joint Motion for Preliminary Approval of Class Action Settlement Agreement.

In light of the disputed issues involved in this litigation concerning the liability of Guam's government to pay Earned Income Tax Credits ("EIC") to eligible Guam taxpayers since 1995, the inherent uncertainties and risks involved in further litigation, the benefits to be received and potential recovery for EIC class members pursuant to the Settlement Agreement, and the expense and burden of continued litigation, the Moving Parties agree that settlement on the terms and conditions set forth in the Settlement Agreement is fair and reasonable and in the best interests of the Moving Parties and of the Class sought to be certified.

The Moving Parties ask the Court to take the first step in the approval process – *preliminary* approval of the Settlement Agreement. In determining whether preliminary approval is warranted, the Court makes a "preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Manual for Complex Litig.* (4th) § 21.632 (2004). The Court looks to see whether the Settlement Agreement is sufficiently within the range of possible approval to justify notifying Class Members of the settlement and scheduling the final fairness hearing. *See Armstrong v. Bd. Of School Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds, Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Parties may ask the Court for both class certification and settlement approval. *Manual for Complex Litig.* (4th) § 21.632. In such cases, the certification hearing and preliminary fairness evaluation can usually be combined. *Id.* If preliminary approval and certification are warranted, the Court directs the preparation of notice of the certification of the class, proposed settlement, and date of the final fairness hearing. *Id.*

As set forth in further detail in this filing, the Moving Parties submit that the Settlement Agreement satisfies the requirements for a preliminary (as well as a final) fairness evaluation by the Court. Accordingly, the Moving Parties are requesting that the Court issue an order that:

3

1. • Grants preliminary approval to the Settlement Agreement filed concurrently herewith;
2. • Sets all necessary Court dates and timetables under the Settlement Agreement;
3. • Approves and orders the issuance of the class notices provided for under the Settlement Agreement;
5. • Conditionally certifies the EIC Class, as defined in the Settlement Agreement, pursuant to this Joint Motion and a separate motion to be filed with the Court within a few days and within the time frame provided for under the Settlement Agreement;
8. • Vacates the June 14, 2004 stipulated Order in the *Santos* action, upon preliminary approval, conditional certification of the class, and approval of the issuance of class notice, pursuant to Section II(a)(v) of the Settlement Agreement;
11. • Grants such other and further relief as the Court deems just and proper.

The Moving Parties recognize the Court has issued a stay in the three consolidated cases pending interlocutory appeal of Court's decision regarding disqualification of the Attorney General. *See* March 16, 2006 Order. Nonetheless, the Moving Parties believe that the interlocutory appeal should not preclude the Court from proceeding with either preliminary or final approval of the instant Settlement Agreement. Such issues will be briefed and set forth in detail in the Governor of Guam's forthcoming motion to lift the stay, to be filed within the next few days. Moreover, although the Attorney General technically remains a *party* to the Torres action, a motion will be filed within the next few days pursuant to the Settlement Agreement to dismiss the Attorney General from the case. In the *Torres* action, the Attorney General had requested that he be dismissed as a party defendant pursuant to 26 U.S.C. § 7422(f), and the Magistrate Judge recommended that his request be granted. *See* Report and Recommendations of Magistrate Judge (CV04-00038) at 4-6 (filed Sept. 29, 2005).

## II. SUMMARY OF THE LITIGATION

The Court already is familiar with the lengthy history of this litigation, initiated first with the *Santos* action in February 2004, followed by the *Torres* action in August 2004, and then the (non-settling) *Simpao* action in December 2004. The litigation involves the Government of Guam's alleged non-payment of Earned Income Tax Credits to eligible Guam taxpayers. The

Court consolidated the cases for pretrial purposes in March 2006, and granted the Governor of Guam's request for mediation under Local Rule 16.6. *See* Order Re: Settlement Conference Pursuant to Local Rule 16.6 (March 21, 1006). The parties agreed on a mediator and engaged in mediation; however, only parties to the *Santos* and *Torres* actions were able to successfully reach a settlement, which then resulted in execution of the Settlement Agreement now being presented to the Court.

Prior to the execution of the instant Settlement Agreement, two prior settlement agreements were entered into in the *Santos* action, one in 2004, the other in 2005. Compared to the settlement reached in the *Santos* case on June 20, 2005 (the "2005 Settlement Agreement"), the instant Settlement Agreement involves parties to both the *Santos* and *Torres* actions. As stated above, it was the result of mediation held in Guam over three (3) full days, from April 6-8, 2006, before a distinguished JAMS mediator, the Hon. William J. Cahill. The agreement enlarges the putative class that will benefit from the settlement while providing enhanced benefits to the putative class compared to the benefits provided for under the 2005 Settlement Agreement.

### III. ARGUMENT SUPPORTING PRELIMINARY APPROVAL

#### A. Summary of the Settlement Agreement

In seeking preliminary approval of the Settlement Agreement so as to be able to proceed with class notice, the Moving Parties believe that the terms of the Settlement Agreement are fair, reasonable, and adequate. Further, they are aware that the Court cannot enter any final findings regarding the fairness of the Settlement Agreement until after there is notice and a fairness hearing occurs. *See* FRCP 23(e)(1)(C). The Moving Parties believe that the terms of the Settlement Agreement largely speak for themselves; nonetheless, the parties wish to highlight some of the key provisions of the Agreement and, where applicable, compare and contrast those provisions with those of the 2005 Settlement Agreement:

1. **Definition of the EIC Class.** Compared to the EIC Class defined in the 2005 Settlement Agreement, the definition of the EIC Cass in the instant Settlement Agreement has been expanded to include those taxpayers who actually filed an EIC claim with the Government of Guam for tax year 1997 under the Guam Territorial Income Tax ("GTIT") or

5

Guam Earned Income Program (Chapter 42, 11 G.C.A.) on or before April 16, 2001, and have not yet received full payment for those claims. As defined in the instant Settlement Agreement the EIC Class is now defined as follows:

> [A]ll persons who do not elect to request exclusion from the class under the procedures described below [in the Settlement Agreement] and: (1) were subject to the Guam Territorial Income Tax ("GTIT") established in 48 U.S.C. § 1421i for tax years 1995-1996 and/or 1999-2004 and would have been eligible to file (whether or not they actually filed) for the EIC established in 26 U.S.C. § 32 (as it applied in each respective tax year) if that program were applied in the Territory of Guam; and/or (2) were eligible to receive an EIC credit under certain Guam territorial laws for tax years 1995-1996 and/or 1999-2004 that mirrored the federal EIC law (26 U.S.C. § 32), including the Guam Earned Income Program (Chapter 42 of 11 G.C.A.); and/or (3) actually filed a claim for the EIC with DRT for tax year 1998 under the GTIT or Guam Earned Income Program (Chapter 42 of 11 G.C.A.) on or before April 15, 2002, and have not yet received full payment for that claim; and/or (4) actually filed a claim for the EIC with DRT for tax year 1997 under the GTIT or Guam Earned Income Program (Chapter 42 of 11 G.C.A.) on or before April 16, 2001 and have not yet received full payment for that claim.

Settlement Agreement § 1(b).

2. **Schedule of Events.** Section II(a) of the Settlement Agreement provides for the filing of certain submissions within seven (7) days of execution of the Settlement Agreement. These filings include a motion to amend the pleadings to conform to the EIC Class definition, motion for conditional class certification, and motion for attorneys' fees and costs. Such filings will be made within the allowed time frame. Furthermore under Section II(a) the parties have agreed that the instant Settlement Agreement amends and supersedes the 2005 Settlement Agreement. The parties have also agreed that upon preliminary approval of the instant Settlement Agreement, conditional certification of the EIC class, and approval of the issuance of class notice, the previous June 14, 2004 settlement agreement shall be mutually rescinded and of no further force and effect and that the stipulated order dated June 17, 2004 granting preliminary approval to that previous agreement shall be vacated.

Section II(b) provides a time frame ("Opt-Out Date") and the procedures through which persons wishing to request exclusion from the EIC Class and the Settlement Agreement may do

so. The time frame established is no later than sixty (60) days after the completion of the Class Notice period defined in Section III of the Settlement Agreement.

Section II(c) provides the time table in which the final Fairness Hearing shall occur as well as deadlines for filing any motions to intervene, motions for final certification of the EIC class, supplemental filings regarding attorneys' fees, filings regarding objections to or comments in favor of the Settlement Agreement.

      **3.**     **Class Notice.** Section III of the Settlement Agreement deals with notice to the EIC Class. Under the Settlement Agreement, in order to "achieve the best notice that is reasonably practicable, the Parties have determined to engage in both individual notice and notice by publication to the EIC Class." Settlement Agreement § II(a). Notice by publication shall include publication in a full-newspaper advertisement reprinted twice weekly for not less than four consecutive weeks in both the Pacific Daily News and the Marianas Variety. *Id.* § II(b). Individual notice shall be given by mail. The taxpayers who will receive such notice will be ascertained based on records compiled by the Guam Department of Revenue and Taxation in compliance with the extensive procedures provided for by the Settlement Agreement. Settlement Agreement §§ II(c)(i)-(vi).

      **4.**     **Settlement Benefits for Class Members.** The Settlement Agreement provides payments to EIC class members for Tax Years 1995-2004, and requires the Government of Guam to pay the EIC for tax years beyond 2004. *See generally* Settlement Agreement § IV. In contrast to the 2005 Settlement Agreement, the instant Settlement Agreement provides that upon preliminary approval, $10 million from the Government's tax reserve funds will be made available to pay a portion of EIC claims for tax year 1998. *Id.*, §§ V(i), VI(e)(ii). Additionally, upon preliminary approval, the Government will also begin paying remaining EIC claims for tax year 1997. *Id.*, § VI(e)(ii). These new provisions allow eligible Guam taxpayers to begin receiving EIC benefits without further delay. The prompt processing of such claims by the Department of Revenue and Taxation can occur in a relatively short time period because EIC claims for those two (2) tax years are already on file with the Department of Revenue and Taxation, as the Government allowed taxpayers to file for the EIC for those specific tax years

under the Guam Earned Income Program. Further specifics of the foregoing benefits are set forth below.

*EIC Payments for Tax Years 1995-2004* – If the Court approves the Settlement Agreement, amounts will be paid to EIC class members for tax years 1995-2004. Although class members will not receive interest on their claims, a substantial amount -- up to $90 million – will be made available for all EIC claims for tax years 1995-1996 and 1998-2004. *Id.*, § IV(a). All outstanding EIC claims for tax years 1997 constitute an additional amount outside of the $90 million and will be paid pursuant to the terms of the Settlement Agreement. *See, e.g., id.*, § IV(d). Funding for the $90 million amount will be obtained by devoting at least 15% of any amounts that are placed into the Government of Guam's tax refund reserve funds, which are the funds used to pay general tax refunds (*see* Settlement Agreement § V(a)). Funding for payment of 1997 claims will be obtained from a reserved amount currently in the Government of Guam's tax reserve funds. *Id.*, § V(h).

For tax years 1995, 1996, 1999, and 2000 (claims for which there is an arguable risk of a time bar if litigated), the Government has agreed to pay up to $15 million for all EIC claims for those years. *Id.*, § IV(a)(ii). The amount will be divided proportionally among each claimant found eligible by DRT (applying the requirements of 26 U.S.C. § 32 as it applied in each applicable year) based on the total combined value of their claim or claims for those years. For tax years 1998 and 1997, there does not exist as great a risk of a time bar because the Government allowed the filing of EIC claims for those years. Accordingly, the Government will make available up to $15 million for tax year 1998, and will pay remaining claims for tax year 1997. As noted above, processing of payments for those tax years will commence immediately upon preliminary approval of the Settlement Agreement. For tax years 2001-2004, up to $15 million will be made available to pay claims for each of those years. *Id.*, §§ IV(a)(iii)-(vi). The Settlement Agreement also contains certain "roll-over" provisions in which any remaining amounts in a particular year will be rolled-over to fund payments for certain other years. *E.g., id.*, §§ IV(a)(i)(3), -(ii)(1), -(ii)(3), -(iii)(1), -(iii)3). Payments for tax years other than 1997 and 1998, will not occur until final approval of the Settlement Agreement and until all claims for

8

those two years are paid pursuant to the terms of the Settlement Agreement. *Id.,* §§ VI(e)(iii)-(iv).

*EIC Payments for Tax Years Beyond 2004* – The Settlement Agreement provides for full implementation of the EIC beginning with tax year 2005 for all qualifying taxpayers (*see* Settlement Agreement § IV(d)).

      5.    **Funding.** Funding for the Settlement Agreement benefits will be made by reserving a minimum of 15% of each amount set aside or earmarked by the Government or Legislature for income tax refunds and placed into either the Income Tax Reserve Fund or the Income Tax Refund Efficient Payment Trust Fund. Settlement Agreement § V. And in order to assure the class that such funds are being set aside, the Guam Department of Administration ("DOA") will provide monthly reports. *Id.,* § V(b)(ii).

By providing funding mechanisms for each expenditure under the Settlement Agreement, the Agreement addresses concerns regarding the Illegal Expenditure Act (5 G.C.A. § 22401) that had caused, in part, opposition to the previous settlement agreement of June 14, 2004 (*see id.,* § V(c)). However, the Settlement Agreement also provides the flexibility for the Governor to utilize other funding sources to satisfy the Government's obligations under the Settlement Agreement, as permitted by law. *Id.,* § V(d). Notably, the Agreement leaves the Respondents free to pursue federal reimbursement of the EIC, while providing the class with a final resolution and payment of their claims now (*see* Settlement Agreement § X(e)).

      6.    **Claims Administration.** Section 6 of the Settlement Agreement deals with the administration of EIC claims. Despite creating a class action, the Settlement Agreement avoids imposing an undue burden on the Court or the Government by utilizing the existing structures to process tax claims (*see* Settlement Agreement § VI(a)). The Settlement Agreement uses the EIC claim forms created pursuant to Executive Order 2005-001 and otherwise tracks Executive Order 2005-001 in terms of claims procedures (*see* Settlement Agreement § VI(b))— the same forms and procedures that recently were upheld by the District Court of Guam in the Order dated June 16, 2005 in *Simpao, et al. vs. Govt. of Guam,* Dist. of Guam Case No. CV04-00049.

**7. Setting of Court Dates and Issuance of Class Notice.** Because this is a class action settlement, the execution of the Settlement Agreement requires that the Court establish a number of Court dates and timetables. These are as follows:

- The date by which the "Class Notice Period" defined in Section III(d) of the Settlement Agreement will be completed.
- The "Opt-Out Date" under Section II(b)(i) of the Settlement Agreement.
- The date by which any motions for intervention are to be filed and served under Section II(c)(i) of the Settlement Agreement.
- The date by which the parties to the Settlement Agreement shall file a joint motion for an Order of Approval and Final Judgment, and a proposed form of judgment, under Section II(c)(ii) of the Settlement Agreement.
- The date by which the motion for final certification of the class under Section II(c)(iii) of the Settlement Agreement shall be filed.
- The date by which any objection or comment on the Settlement Agreement must be filed and served, and the date by which any responses shall be filed, under Section III(c)(vi) of the Settlement Agreement.
- The dates for any additional filings, oppositions, or replies regarding attorneys' fees and costs under Section II(c)(iv)-(vi) of the Settlement Agreement.
- The date for the "Fairness Hearing" as that term is defined in Section II(c)(i) of the Settlement Agreement.

Once these dates are set, the Moving Parties will amend the draft form of class notice, which is an exhibit to the Settlement Agreement. Along with inserting the dates into the class notice, the Parties also will insert a brief description of Class Counsel's motion for attorneys' fees and costs. They will then submit the draft notice for the Court's approval so that the Court can authorize and order the publication and mailing of this notice pursuant to Section III of the Settlement Agreement. The parties also request that the Court approve the additional notice to be issued upon payment of the $10 million for 1998 claims, and payments for remaining 1997 claims. Settlement Agreement §§ V(e)(i)(4), -(ii)(3), and Exh. "D."

The proposed method of notice complies with Fed. R. Civ. P. 23 and the requirements of due process. *See* Fed. R. Civ. P. 23; ; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993), *cert. denied sub nom Reilley v. Tucson Elec. Power Co.*, 512 U.S. 1220 (1994). Under the Settlement Agreement, in order to "achieve the best notice that is reasonably practicable, the Parties have determined to engage in both individual notice and notice by publication to the EIC Class." Settlement Agreement § II(a). Notice by publication shall include publication in a full-newspaper advertisement reprinted twice weekly for not less than four consecutive weeks in both the Pacific Daily News and the Marianas Variety. *Id.* § II(b). Individual notice shall be given by mail. The taxpayers who will receive such notice will be ascertained based on records compiled by the Guam Department of Revenue and Taxation in compliance with the extensive procedures provided for by the Settlement Agreement. Settlement Agreement §§ II(c)(i)-(vi).

**B.     The Standards for Preliminary Approval**

Preliminary approval of a class action settlement agreement does not require the Court to make a final determination that the settlement is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to express their views of the settlement or to exclude themselves from the settlement. *See 5 James Wm. Moore, Moore's Fed. Practice* § 23.83[1] (3d ed. 2001).

Thus, when a Court views a settlement for preliminary approval, it determines whether there is a likelihood it could approve the settlement before conducting a full fairness hearing. William W. Schwarzer *et al., Cal. Practice Guide: Fed. Civ. Proc. Before Trial* § 10:818. In presenting the settlement for preliminary approval, the settling parties will usually submit briefs and supporting documents to the court along with the proposed settlement, arguing that the proposal is fair and should be tentatively approved. *Id.,* § 10:819. The court will examine the submitted material and determine whether the proposed settlement seems fair on its face and worth submitting to class members. *Id.,* § 10-821. Preliminary approval should be granted if the settlement reveals no obvious deficiencies or grounds to doubt its fairness and appears to fall within the range of possible approval. *See Manual for Complex Litig.* § 30.41 (3d ed. 1995).

11

Here the terms of the Settlement Agreement satisfy the standards for preliminary approval. There are no obvious deficiencies with the agreement and no grounds to doubt its fairness; the agreement falls within the range of possible approval.

### C. Settlement of Class Actions is Favored

As a matter of public policy, settlement of litigation is highly favored in the law. *See Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). The principle applies with particular force where, as here, settlement involves class action lawsuits. *See Officers for Justice v. Civil Serv. Comm'n*, 688 F2d 615, 625 (9th Cir. 1982), *cert. denied sub nom Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997). In this instance, settlement would resolve not one, but two of the class action cases involving the EIC, without the necessity, time, and expense of further protracted litigation.

### D. The Settlement Agreement Resulted from Arm's-Length Negotiations

There is an initial presumption that a proposed settlement agreement is fair and reasonable when it is the result of arm's-length negotiations. *See Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has completely evaluated the strength of his proofs"); *In re Inter-Op Hip Prothesis Liabl. Litig.*, 204 F.R.D. 330, 351 (N.D. Ohio 2001) ("when a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair").

Here, the proposed settlement is the product of arm's-length negotiations. The origin of negotiations for some of the core terms of the agreement began in 2005 in connection with settlement of the *Santos* action during that period. After the Court consolidated the actions, including the *Torres* action, the parties engaged in extensive mediation in April 2006 in Guam before an experienced JAMS mediator, the Hon. William J. Cahill, a retired jurist. The 2006 mediation resulted in an agreement that expanded the EIC class definition, incorporated settlement of an additional case (the *Torres* action), and resulted in enhanced EIC benefits for the expanded class including ultimate payment of all remaining EIC claims for tax year 1997, and

12

immediate payment (upon preliminary approval) of millions of dollars for a portion of 1998 and 1997 EIC claims.

### E. The Settlement Agreement Is Fair, Reasonable, and Adequate, and Falls Within the Range Justifying Preliminary Approval

Under the Settlement Agreement, the Respondents have agreed to make available a substantial sum of money ($90+ million) to compensate eligible Guam taxpayers for EIC claims from 1995-2004. Furthermore, EIC claims beginning with tax year 2005 will be paid henceforth on the same terms as they would be normally processed and paid, so that the risk of subsequent litigation regarding future EIC claims is significantly mitigated or altogether eliminated. Given the present financial condition and substantial obligations of the Government of Guam, the amounts to be paid under the Settlement Agreement are significant, and represent a fair compromise in light of the risks, costs, and delay associated with the prosecution of complex cases, particularly cases against a government entity. Even if the cases were to proceed to litigation and a judgment were obtained at trial against the Government and Respondents, the recovery might be of no greater utility to class members, and might be substantially less valuable, than the proposed settlement which establishes an immediate mechanism for processing and payment of claims so that Guam's working poor can begin receiving the financial assistance that the EIC was intended to provide for them.

### F. The Class Should be Preliminarily Certified for Settlement Purposes

Parties may present a case for both class certification and preliminary approval of a settlement agreement, where a class has not been previously certified by the court. *Manual for Complex Litig. (4th)* § 21.632. The Petitioner and Plaintiff in the *Santos* and *Torres* actions will submit a joint motion for conditional certification of EIC settlement class within the time frame provided for under the Section II of the Settlement Agreement. The prerequisites for a class action under the Federal Rules of Civil Procedure have been satisfied for purposes of settlement.

## IV. CONCLUSION

For the reasons stated herein and in other forthcoming filings to be made pursuant to the Settlement Agreement, the Moving Parties respectfully request that the Court (1) grant preliminary approval of the Settlement Agreement; (2) set all required Court dates and timetables

13

under the Settlement Agreement; (3) approve the issuance of the required class notices; (4) conditionally certify the EIC class as defined in the Settlement Agreement for settlement purposes; (4) vacate the June 17, 2004 stipulated Order in the *Santos* action, upon preliminary approval, conditional certification, and approval of the issuance class notice; and (5) grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 26th day of May, 2006.

| | |
|---|---|
| **OFFICE OF THE GOVERNOR OF GUAM**<br>**CALVO & CLARK, LLP**<br>Attorneys for Respondent Felix P. Camacho,<br>Governor of Guam<br><br>By: _____<br>**DANIEL M. BENJAMIN** | **PHILLIPS & BORDALLO, P.C.**<br>Interim Class Counsel & Attorneys for<br>Petitioner Julie Babauta Santos<br><br>By: _____<br>**MICHAEL F. PHILLIPS** |
| **CABOT MANTANONA LLP**<br>Attorneys for Respondents Lourdes M. Perez<br>and Artemio R. Ilagan<br><br>By: _____<br>**RAWLEN M.T. MANTANONA** | **LUJAN AGUIGUI & PEREZ LLP**<br>Attorneys for Plaintiff Charmaine R. Torres<br><br>By: _____<br>~~IGNACIO C. AGUIGUI~~<br>PETER C. PEREZ |