1    [Appearing Counsel on next page]

2

3                                                **FILED**

4                                          DISTRICT COURT OF GUAM

5            **DISTRICT COURT OF GUAM**        MAY 2 6 2006

6                 **TERRITORY OF GUAM**        MARY L.M. MORAN
                                               CLERK OF COURT
7

8
      JULIE BABAUTA SANTOS, *et. al.,*          Civil Case No. 04-00006
9
                         Petitioners,
10                                              **DECLARATION OF DANIEL M.
                                                BENJAMIN IN SUPPORT OF JOINT**
11              -v-                              **MOTION OF THE *SANTOS* AND
                                                *TORRES* PARTIES FOR**
12    FELIX P. CAMACHO, *et. al.*               **PRELIMINARY APPROVAL OF
                                                CLASS ACTION SETTLEMENT**
13                       Respondents.           **AGREEMENT; MEMORANDUM OF
                                                POINTS AND AUTHORITIES IN**
14                                              **SUPPORT THEREOF**
      CHARMAINE R. TORRES, *et al.,*
15                                              **[ORAL ARGUMENT REQUESTED]**
                         Plaintiffs,
16              -v-                             Civil Case No. 04-00038

17    GOVERNMENT OF GUAM, *et al.,*

18                       Defendants.

19

20    MARY GRACE SIMPAO, *et al.,*

21                       Plaintiffs,

22              -v-                             Civil Case No. 04-00049

23    GOVERNMENT OF GUAM,

24                       Defendant.

25              -v-

26    FELIX P. CAMACHO, Governor of Guam,

27                  Intervenor-Defendant.

28

*CIVIL CASE NOS. 04-00006, 04-00038, AND 04-00049*        **ORIGINAL**

1  **SHANNON TAITANO, ESQ.**
   **OFFICE OF THE GOVERNOR OF GUAM**
2  Ricardo J. Bordallo Governor's Complex
3  Adelup, Guam 96910
   Telephone:    (671) 472-8931
4  Facsimile:    (671) 477-4826

5  **EDUARDO A. CALVO, ESQ.**
   **RODNEY J. JACOB, ESQ.**
6  **DANIEL M. BENJAMIN, ESQ.**
7  **CALVO & CLARK, LLP**
   Attorneys at Law
8  655 South Marine Drive, Suite 202
   Tamuning, Guam 96913
9  Telephone:    (671) 646-9355
   Facsimile:    (671) 646-9403
10 Attorneys for *Felix P. Camacho, Governor of Guam*

11
   **RAWLEN M.T. MANTANONA**
12 **CABOT MANTANONA LLP**
   BankPacific Buiding, 2nd Floor
13 825 S. Marine Corps Drive
14 Telephone:    (671) 646-2001
   Facsimile:    (671) 646-0777
15 Attorneys for Respondents *Lourdes M. Perez and Artemio R. Ilagan*

16 **MICHAEL F. PHILLIPS**
   **PHILLIPS & BORDALLO, P.C.**
17 410 West O'Brien Drive
18 Hagåtña, Guam 96910
   Telephone:    (671) 477-2223
19 Facsimile:    (671) 477-2329
   Interim Class Counsel and Attorneys for Petitioner *Julie Babauta Santos*
20

21 **IGNACIO C. AGUIGUI**
   **PETER C. PEREZ**
22 **LUJAN AGUIGUI & PEREZ LLP**
   300 Pacific News Building
23 Hagåtña, Guam 96910
   Telephone:    (671) 477-8064
24 Facsimile:    (671) 477-5297
   Attorneys for Plaintiff *Charmaine R. Torres*
25

26

27

28

                                                   1

I, DANIEL M. BENJAMIN, declare that:

1.      I am an associate with the law firm of Calvo & Clark, LLP, counsel of record for Respondent, Felix P. Camacho, Governor of Guam in this action. I make this declaration on personal knowledge, and if called to testify I could and would testify competently thereto.

2.      Attached as Exhibit "1" is a true and correct copy of a Settlement Agreement entered into as of May 26, 2006 in the above-captioned *Santos* and *Torres* actions. Due to logistical issues, Petitioner Santos has yet to sign it, and a corrected version will be submitted Tuesday bearing her signature.

I declare under penalty of perjury pursuant to the laws of the United States and of the Territory of Guam that the foregoing declaration is true and correct.

Executed this 26th day of May, 2006, in Tamuning, Guam.

DANIEL M. BENJAMIN

# EXHIBIT 1

# SETTLEMENT AGREEMENT

**WHEREAS** Petitioner Julie B. Santos, on her own behalf and on behalf of an alleged class of similarly situated persons, filed a petition in the case of *Santos v. Camacho, et al.*, District Court of Guam CV04-00006 (the "Santos Petition"), against Respondents Governor of Guam Felix P. Camacho (the "Governor"), Director of Administration Lourdes M. Perez, Director of Revenue & Taxation Artemio B. Ilagan, and the Government of Guam (the "Government") (collectively "Respondents"), the parties to which proceeding are sometimes referred to herein as the "Santos Petition Parties"; and

**WHEREAS** the Santos Petition concerned the alleged failure of the Respondents to accept or pay claims for the earned income credit ("EIC") under federal and territorial law and sought both tax refunds and mandamus relief, and, as later amended included tax years 1995-1996 and 1998-2004; and

**WHEREAS** in their opposition to the Santos Petition, Respondents denied liability for the EIC and asserted numerous defenses including failure to exhaust and the statute of limitations; and

**WHEREAS** Plaintiff Charmaine Torres, on her own behalf and on behalf of an alleged class of similarly situated persons, filed a petition in the case of *Torres v. Camacho, et al.*, District Court of Guam CV04-00038 (the "Torres Petition"), against Respondents, the parties to which proceeding are sometimes referred to herein as the "Torres Petition Parties"; and

**WHEREAS** the Torres Petition also concerned the alleged failure of the Respondents to accept or pay claims for the EIC under federal and territorial law and sought both tax refunds and injunctive and declaratory relief, and, as later amended included tax years 1995-2004; and

**WHEREAS** 48 U.S.C. § 1421i(c) provides that "[t]he administration and enforcement of the Guam Territorial Income Tax shall be performed by or under the supervision of the Governor," and 48 U.S. C. § 1421i(d)(2) provides that the Governor of Guam or his delegate has "the same administrative and enforcement powers and remedies with regard to the Guam Territorial Income Tax as the Secretary of the Treasury, and other United States officials of the executive branch, have with respect to the United States income tax; and

**WHEREAS** the Governor has delegated the administration and processing of tax claims under the Guam Territorial Income Tax to the Department of Revenue & Taxation ("DRT"); and

**WHEREAS** the Governor has delegated the issuance of tax refund checks under the Guam Territorial Income Tax to the Department of Administration ("DOA"); and

**WHEREAS** on or about June 14, 2004 a previous settlement agreement (the "June 14, 2004 Settlement") was entered as to the Santos Petition, which was granted preliminary approval by the District Court of Guam (the "Court") on June 17, 2004; and

**WHEREAS** on July 6, 2004 Torres sought leave to intervene as a plaintiff/petitioner in the Santos action by filing a Motion for Leave to Intervene as a Plaintiff/Petitioner objecting to the June 14, 2004 Settlement Agreement; and

**WHEREAS** on July 12, 2004 Torres filed a Motion and Memorandum of Points and Authorities to Vacate the August 9, 2004 Objection and Opt-Out Date and to Vacate the September 9, 2004 Hearing date for Final Approval of Settlement Agreement; Request for Expedited Hearing on Motion and Briefing Schedule; and

**WHEREAS** the Court granted Torres' motion to vacate the dates scheduled by the Court for the filing of objections, to opt-out, and the hearing date for final approval of the June 14, 2004 Settlement Agreement; and

**WHEREAS** on July 16, 2004 the Court appointed Santos' counsel, Michael Phillips, Esq., Interim Class Counsel; and

**WHEREAS** after Petitioner moved to adopt an administration plan for the June 14, 2004 Settlement, the Governor objected and moved to vacate the Court's preliminary approval of the June 14, 2004 Settlement and raised challenges to the agreement including whether its payment terms complied with the Illegal Expenditures Act under Guam law; and

**WHEREAS**, on January 12, 2005, the Governor issued Executive Order 2005-001 (the "Executive Order") to permit the filing of EIC claims, which created a means of determining the nature of any potential class of EIC claimants; and

**WHEREAS** under the Executive Order, over 20,000 EIC claims have already been filed with DRT, thus providing substantial information regarding the potential class; and

**WHEREAS**, until all EIC claims have been filed, processed, and audited, it is not possible to determine the total value of such claims; and

WHEREAS it is the intent of Respondents to resolve all or substantially all EIC claims for tax years 1995-2004; and

WHEREAS on March 10, 2005 the Santos Petition Parties agreed to take the motions to enter the administration plan and to vacate the preliminary approval of the previous settlement off-calendar and to enter mediation before JAMS Mediator Catherine Yanni, Esq.; and

WHEREAS the Santos Petition Parties, through their counsels, engaged in extensive face-to-face negotiations with the assistance and active participation of the Mediator, from March 31, 2005 through April 2, 2005; and

WHEREAS the Santos Petition Parties continued to engage in subsequent negotiations with the assistance of the Mediator until they agreed to a term sheet; and

WHEREAS the Santos Petition Parties then engaged in subsequent negotiations in connection with the drafting of a final Agreement and conducted inquiries into what notice to the class was reasonably practicable; and

WHEREAS, the Santos Petition Parties completed their negotiations and reached a settlement that they believed protected the interests of the Government of Guam and fairly resolved the EIC claims of the class identified in the amended Santos Petition, and on that basis entered into a Settlement Agreement on June 20, 2005 (the "June 20, 2005 Settlement"); and

WHEREAS, there was then some delay in hearing the motions to approve the June 20, 2005 Settlement and to certify the applicable class due to a dispute between the Attorney General of Guam and the Governor of Guam with regard to who controlled GTIT litigation on behalf of the Government; and

**WHEREAS**, in September 2005, the Magistrate Judge of the District Court recommended that the Court deny a motion to dismiss the Torres Petition, and the Governor then filed objections to this recommendation, which have yet to be resolved by the Court; and

**WHEREAS**, on March 10, 2006, the District Court of Guam held that the Governor controlled all GTIT litigation, and disqualified the Attorney General of Guam from the Santos and Torres Petition cases, as well as one other later filed putative class action concerning the EITC; and

**WHEREAS,** the District Court later consolidated all three putative class actions concerning the EITC for pretrial purposes; and

**WHEREAS,** at the request of the Governor, the Court then ordered the parties to the consolidated cases to enter into a mediation under Local Rule 16, and the parties to these cases subsequently entered into a voluntary mediation starting on April 6, 2006 before a JAMS Mediator, the Honorable William J. Cahill (Ret.); and

**WHEREAS,** Santos and Torres were able to reach an agreement with Respondents; and

**WHEREAS,** pursuant to the agreement that was reached by Santos and Torres, the parties to this undersigned agreement are now entering into an amended version of the June 20, 2005 Agreement on the terms stated below, which agreement shall supersede the June 20, 2005 Agreement.

//

//

//

**NOW THEREFORE** the Parties hereto hereby agree as follows:

I.   PARTIES TO THIS AGREEMENT

a. **IDENTITY OF PARTIES.** The parties to this Agreement are Santos, Torres, and the EIC Class (defined below), on the one hand, and Respondents, on the other hand (collectively, the "Parties").

b. **DEFINITION OF EIC CLASS.** In this Agreement, the "EIC Class" is defined as including all persons who do not elect to request exclusion from the class under the procedures described below and: (1) were subject to the Guam Territorial Income Tax ("GTIT") established in 48 U.S.C. § 1421i for tax years 1995-1996 and/or 1999-2004 and would have been eligible to file (whether or not they actually filed) for the EIC established in 26 U.S.C. § 32 (as it applied in each respective tax year) if that program were applied in the Territory of Guam; and/or (2) were eligible to receive an EIC credit under certain Guam territorial laws for tax years 1995-1996 and/or 1999-2004 that mirrored the federal EIC law (26 U.S.C. § 32), including the Guam Earned Income Program (Chapter 42 of 11 G.C.A.); and/or (3) actually filed a claim for the EIC with DRT for tax year 1998 under the GTIT or Guam Earned Income Program (Chapter 42 of 11 G.C.A.) on or before April 15, 2002, and have not yet received full payment for that claim; and/or (4) actually filed a claim for the EIC with DRT for tax year 1997 under the GTIT or Guam Earned Income Program (Chapter 42 of 11 G.C.A.) on or before April 16, 2001 and have not yet received full payment for that claim.

//

//

//

## II.  SCHEDULE OF EVENTS

### a.  INITIAL SUBMISSIONS, PRELIMINARY APPROVAL, & ISSUANCE OF CLASS NOTICE

i.      Within seven days of executing this Agreement, the parties shall stipulate to the filing of a joint petition by Santos and Torres in the form attached hereto as Exhibit "A," with Santos' counsel, Michael Phillips, proceeding as lead counsel and Torres agreeing thereto.

ii.      Within seven days of executing this Agreement, Torres shall file a motion to dismiss the Attorney General as a party from the *Torres* action and the Parties shall support such motion;

iii.      Within seven days of executing this Agreement, the Parties shall file a joint motion in the form attached hereto as Exhibit "B" for preliminary approval of this Agreement, and Santos and Torres shall file a motion for a conditional ruling that this action may proceed as a class action as to the EIC Class, which Respondents shall support.  The parties shall further jointly request an order permitting them to proceed with class notice in the form attached hereto as Exhibit "C" and consistent with the procedures set forth in Section III of this Agreement.  As part of this request, the Parties shall request that the Court set the dates for all further events required by this Settlement Agreement consistent with the provisions of this Agreement so that the Parties may include these dates in the notice to the EIC Class.

iv.      So that the class may be advised of the pending motion in the class notice discussed below, counsel for Santos and/or Torres must file any motion(s) for attorneys' fees and costs within seven days of the execution of this Agreement.  Attorneys' fees or

costs awarded to the counsel for the EIC Class are to be determined by the Court following such a motion which shall be made under Federal Rules of Civil Procedure 23(h).

    **v.**    Upon preliminary approval by the Court of this Agreement, the conditional ruling that this action may proceed as a class action, and the order permitting the issuance of the class notice, the previous June 14, 2004 Settlement Agreement shall be mutually rescinded and of no further force or effect, and the stipulated Order dated June 17, 2004 granting preliminary approval to that previous settlement shall be vacated.

    **vi.**    The June 20, 2005 Agreement is amended and superseded by this present agreement as of the date of execution of this Agreement by all of the undersigned Parties.

    **b. OPPORTUNITY TO OPT-OUT**

    **i.**    Any person wishing to request exclusion from the class and this Settlement shall be required to do so in a signed, written statement that may be mailed by first class mail to the Clerk of Court or filed with the Clerk of Court. Any person who falls within the definition of the EIC Class shall be deemed an EIC Class member unless their written statement either: (1) is filed with the Clerk of Court no later than the sixtieth day (or if the sixtieth day falls on a holiday or weekend, the next day during which the Office of the Clerk of Court is open) after completion of the Class Notice Period defined in Section III below; or (2) is sent by first class mail to the Clerk of Court postmarked no later than the sixtieth day (or if the sixtieth day falls on a holiday or weekend, the next day during which the Office of the Clerk of Court is open) after completion of the Class

Notice Period defined in Section III below. This final date for requesting exclusion shall be known as the "Opt-Out Date."

ii. Any person requesting exclusion from the class and the Settlement Agreement must request exclusion from the class and the settlement in their entirety, and not just as to particular claim(s) for particular tax year(s).

c. **FINAL CLASS CERTIFICATION, FAIRNESS HEARING, ATTORNEYS' FEES, & FINAL COURT APPROVAL**

i. The Parties shall request a combined hearing to be held within sixty days after the Opt-Out Date in which the Court shall: (1) determine whether to grant final class certification; (2) review comments or objections regarding this Settlement Agreement, and consider its fairness, reasonableness, and adequacy under FRCP Rule 23; (3) determine whether to grant any motion(s) for attorneys' fees and costs; and (4) decide whether to grant final Court approval of this Settlement Agreement and enter a final judgment (the "Fairness Hearing"). Any motion to intervene must be filed no later than seven days after the Opt-Out Date.

ii. At least twenty-eight (28) days prior to the date the Court sets for the Fairness Hearing, the Parties shall file a joint motion for an Order of Approval and Final Judgment, and a proposed form of judgment. The Parties shall cooperate in good faith and with best efforts in the joint drafting of these pleadings.

iii. At least twenty-eight (28) days prior to the date the Court sets for the Fairness Hearing, Santos and Torres, and their counsel, shall file a motion for final certification of the EIC Class. Respondents shall support this motion.

**iv.** With the permission of the Court, counsel for Santos or Torres may supplement any attorneys' fees motion with supporting documents no later than twenty-eight (28) days prior to the date the Court sets for the Fairness Hearing. Pursuant to FRCP 23(h)(2), any EIC Class member, or a party from whom payment is sought, may object to the attorneys' fees motion by filing an objection to the motion no later than fourteen (14) days before the Fairness Hearing; any reply shall be due no later than seven (7) days before the Fairness Hearing. The application for attorneys' fees and costs shall be heard by the Court at the Fairness Hearing.

**v.** Any EIC Class member may object to the proposed settlement, or comment in favor of the settlement.

**vi.** Any EIC Class member objecting to the Settlement Agreement, or any EIC Class member or party objecting to attorneys' fees, or their counsel, shall be heard so long as they have filed a written statement of their objection or objections no later than fourteen (14) days before such a hearing. The Parties may file responses thereto no more than seven (7) days before such the Fairness Hearing.

**vii.** Upon granting of final approval of the Settlement Agreement and final class certification after the Fairness Hearing, the Court shall issue a judgment dismissing Petitioner's Complaint with prejudice. Notwithstanding the dismissal, the District Court of Guam shall have continuing and exclusive jurisdiction over this Agreement and any dispute related to this Agreement.

//

//

//

### III. CLASS NOTICE

**a.** To achieve the best notice that is reasonably practicable, the Parties have determined to engage in both individual notice and notice by publication to the EIC Class.

**b.** Notice by publication shall include the publication of Exhibit "C" in a full-page advertisement reprinted in full twice weekly for not less than four consecutive weeks in the Pacific Daily News and Marianas Variety. Publication in the Pacific Daily News shall include Sunday and any one other day. Publications in the Marianas Variety shall include any two days. Notice by publication shall commence on the first Sunday that occurs at least seven (7) days after the Court orders the publication of the class notice.

**c.** Individual notice shall consist of DRT mailing Exhibit "C" to the last known address of the individuals who may fall within the EIC Class whose identity it is reasonably practicable to identify, and shall be accomplished as follows:

    **i.** DRT shall first assemble a list of all persons who it is reasonably practicable to identify who may belong to the EIC class. The list shall be developed by assembling a list of the names and social security number (or taxpayer identification number) of the following persons:

        **1.** As to tax years 1995-1996, and 1999-2003, DRT shall use its computerized records of individual tax returns to identify the name and social security number (or taxpayer identification number) of all persons whose income level falls within the range of persons who may be eligible to receive the EIC under 26 U.S.C. § 32 as it applied in each respective tax year, and whose filing status otherwise indicates they

could be eligible for the EIC under 26 U.S.C. § 32 as it applied in each respective tax year.

**2.** As to tax years 1995-1996 and 1999-2003, DRT shall also determine the name and social security number of all persons who actually filed Form EIC-GU for each respective tax year.

**3.** As to tax year 1997, because all claims that will be accepted under this Settlement Agreement have already been filed, DRT shall use its computerized records to determine the name and social security number (or taxpayer identification number) of all persons who actually filed claims for tax year 1997 for the EIC under the GTIT or under the Guam Earned Income Program (Chapter 42 of Title 11 of the G.C.A.) and whose 1997 tax year claim has not yet been paid in full.

**4.** As to tax year 1998, because all claims that will be accepted under this Settlement Agreement have already been filed, DRT shall use its computerized records to determine the name and social security number (or taxpayer identification number) of all persons who actually filed claims for tax year 1998 for the EIC under the GTIT or under the Guam Earned Income Program (Chapter 42 of Title 11 of the G.C.A.).

**5.** As to tax year 2004, taxpayers were informed on the GTIT tax return forms for 2004 to complete Form 2004 EIC-GU if they wished to claim the EIC. Therefore, DRT shall determine the name and social security number (or taxpayer identification number) of all persons who actually filed Form EIC-GU for tax year 2004.

**6.** By comparing social security numbers (or taxpayer identification numbers), DRT shall then combine the lists developed into one master list.

**ii.** Once DRT has assembled its master list based on the foregoing provisions, DRT shall match each name and social security number (or taxpayer identification number) identified with the last known address appearing on DRT's computerized records.

**iii.** Except as otherwise specified herein, the Parties have determined that it is not reasonably practicable for DRT to identify any tax filings not yet entered into DRT's computer system or to use such un-entered filings in its determination of individuals or their last known addresses because this would substantially delay or even prevent DRT's completion of its list.

**iv.** One copy of Exhibit "C" shall then be mailed to each person so identified at the address so identified. Persons identified as potential class members who have potential claims in multiple tax years shall be mailed only one copy of the notice.

**v.** DRT shall complete its list of individuals and last known addresses, and shall mail Exhibit "C" by first class mail to each individual at their last known address, no later than 35 days after the Court orders the publication of the Class Notice.

**vi.** The Parties acknowledge that it is unlawful under federal law and territorial to disclose individual taxpayer information to any third party except for as authorized by law. None of the forgoing provisions regarding individual notice shall be construed to require such unauthorized disclosures, and DRT shall maintain the confidentiality of the master list and all other lists developed under the forgoing provisions.

**d.** The completion of the notice by publication and the mailing of the individual notice at the times stated herein shall constitute completion of the "Class Notice Period."

## IV.  SETTLEMENT AMOUNT

**a. $90 MILLION TOTAL PAYMENT FOR PAST EIC CLAIMS (other than tax year 1997).**  On the terms specified below, and as part of the consideration for the agreement herein, and for entry of Final Judgment as provided for in this Settlement Agreement, the Parties agree that the Government shall pay a total of not more than $90 million to the EIC Class for all EIC claims for tax years 1995-1996 and 1998-2004 ("Settlement Amount").

### i.  TAX YEAR 1998

**1.** The Government will pay the EIC Class not more than $15 million for EIC claims for tax year 1998, based upon the claims already filed with DRT for tax year 1998.

**2.** This amount shall be divided proportionally among each claimant found eligible by DRT applying the requirements of 26 U.S.C. § 32 (applying the version of the statute that was effective in 1998) based on the value of their claim.

**3.** In the event that DRT determines there are less eligible claims for tax year 1998 than the total amount available to pay such claims under this Agreement, the remainder shall be utilized to fund claims for tax years 1995, 1996, 1999, and 2000 (combined) as stated below.

### ii.  TAX YEARS 1995, 1996, 1999, AND 2000

**1.** The Government will pay the EIC Class not more than $15 million for all EIC claims for tax years 1995, 1996, 1999, and 2000 (combined), together with any remainder from the payment of claims for tax year 1998.

**2.** This amount shall be divided proportionally among each claimant found eligible by DRT applying the requirements of 26 U.S.C. § 32 (applying the version of the statute that was effective in each respective tax year) based on the total combined value of their claim or claims for tax years 1995, 1996, 1999, and 2000.

**3.** In the event that DRT determines there are less eligible claims for tax years 1995, 1996, 1999, and 2000 (combined) than the total amount available to pay such claims under this Agreement, the remainder shall be utilized to fund claims for tax year 2001 as stated below.

    **iii.**     **TAX YEAR 2001**

**1.** The Government will pay the EIC Class not more than $15 million for all EIC claims for tax year 2001, together with any remainder from the payment of claims for tax years 1995, 1996, 1999, and 2000 (combined).

**2.** This amount shall be divided proportionally among each claimant found eligible by DRT applying the requirements of 26 U.S.C. § 32 (applying the version of the statute that was effective in 2001) based on the value of their claim.

**3.** In the event that DRT determines there are less eligible claims for tax year 2001 than the total amount available to pay such claims under this Agreement, the remainder shall be utilized to fund claims for tax year 2002 as stated below.

    **iv.**     **TAX YEAR 2002**

**1.** The Government will pay the EIC Class not more than $15 million for all EIC claims for tax year 2002, together with any remainder from the payment of claims for tax year 2001.

**2.** This amount shall be divided proportionally among each claimant found eligible by DRT applying the requirements of 26 U.S.C. § 32 (applying the version of the statute that was effective in 2002) based on the value of their claim.

**3.** In the event that DRT determines there are less eligible claims for tax year 2002 than the total amount available to pay such claims under this Agreement, the remainder shall be utilized to fund claims for tax year 2003 as stated below.

**v.    TAX YEAR 2003**

**1.** The Government will pay the EIC Class not more than $15 million for all EIC claims for tax year 2003, together with any remainder from the payment of claims for tax year 2002.

**2.** This amount shall be divided proportionally among each claimant found eligible by DRT applying the requirements of 26 U.S.C. § 32 (applying the version of the statute that was effective in 2003) based on the value of their claim.

**3.** In the event that DRT determines there are less eligible claims for tax year 2003 than the total amount available to pay such claims under this Agreement, the remainder shall be utilized to fund claims for tax year 2004 as stated below.

**vi.    TAX YEAR 2004**

**1.** The Government will pay the EIC Class not more than $15 million for all EIC claims for tax year 2004, together with any remainder from the payment of claims for tax year 2003.

**2.** This amount shall be divided proportionally among each claimant found eligible by DRT applying the requirements of 26 U.S.C. § 32 (applying the version of the statute that was effective in 2004) based on the value of their claim.

**3.** In the event that DRT determines there are less eligible claims for tax year 2004 than the total amount available to pay such claims under this Agreement, the remainder shall be utilized to fund tax refund claims and the EIC in tax year 2005 and future tax years.

**b.** **NO INTEREST**. Members of the EIC Class shall not be paid any interest on their claims for tax years 1995-1996 and 1998-2004.

**c.** **NO USE OF SETTLEMENT AMOUNT FOR UNAUTHORIZED PURPOSES**. Respondents agree that no part of the $90 million paid under this Agreement shall be used for the potential EIC claims of class members who opt out of the EIC Class, or any other income tax refund claims, except as specifically provided in this Settlement Agreement.

**d.** **EIC IN 1997**. As further consideration for this settlement, the Parties agree that any remaining EIC claims for tax year 1997 that have not been paid in full shall be paid on the same terms as all previous tax year 1997 claims were paid (including any back interest, if applicable) under the applicable federal and local laws and in accordance with the requirements for the EIC established in 26 U.S.C. § 32 for tax year 1997.

**e.** **EIC IN FUTURE TAX YEARS**. As further consideration for this settlement, the Parties agree that EIC claims for tax year 2005 and all future years shall be accepted and paid the same as other tax refund claims under the applicable federal and local laws and in accordance with the requirements for the EIC established in 26 U.S.C. § 32.

## V. GOVERNMENT FUNDING FOR THE SETTLEMENT AGREEMENT

### a. FUNDING SOURCE FOR THE $90 MILLION.

i.     Using its best efforts and good faith to pay the Settlement Amount, the Government shall devote a minimum of fifteen percent (15%) of each amount set aside or earmarked by the Government or Legislature for income tax refunds and placed into either the Income Tax Refund Reserve Fund (Chapter 50 of Title 11 of the G.C.A.) or the Income Tax Refund Efficient Payment Trust Fund (Chapter 51 of Title 11 of the G.C.A.) to pay the Settlement Amount to the EIC Class for EIC claims pursuant to this Agreement.

ii.     In the event funds are transferred from the Income Tax Refund Efficient Payment Trust Fund to the Income Tax Refund Reserve Fund, or vice-versa, no additional reservation shall be required, because the fifteen percent (15%) is to be reserved the first time any amount is placed into either Fund and not when a transfer occurs between the two Funds.

iii.     If amounts being reserved within the Income Tax Refund Efficient Payment Trust Fund earn interest or investment earnings as provided in Chapter 51 of 11 G.C.A., such interest or investment earnings shall be utilized only for the purposes permitted by law under 11 G.C.A. §§ 51101(a) and 51103.

### b. ASSURANCES TO THE CLASS.

i.     Respondents represent and warrant that all monies used to pay GTIT tax refunds are and will be first placed into the Income Tax Refund Reserve Fund and/or the Income Tax Refund Efficient Payment Trust Fund prior to the issuance of tax refund checks; therefore, tying the payment of the EIC claims under this settlement to a fixed

percentage of the amount placed into those Funds will have the affect of ensuring that EIC claims are paid as money becomes available to pay tax refunds in general.

      ii.      After preliminary approval of the Settlement Agreement, to ensure that at least 15% is being set aside for the purposes of fulfilling the Government's obligations herein, DOA shall provide monthly reports on the tenth business day of each month to counsel for Santos and Torres, and to the Court, documenting: (1) the total amount of monies placed into the Income Tax Refund Reserve Fund and Income Tax Refund Efficient Payment Trust Fund in the previous month; (2) the total amount of money paid in tax refunds in the previous month; (3) the total amount of money that has been reserved for EIC payments under this Agreement in the previous month; and (4) the total amount of money paid for EIC claims pursuant to this Settlement Agreement in the previous month. To comply with federal and territorial law requiring the privacy of individual taxpayer's tax returns and related documents, such reports shall not require the disclosure of individual taxpayer information.

      c. **CONCERNS REGARDING THE ILLEGAL EXPENDITURES ACT**. The deposit and maintenance of the amounts necessary to pay the Settlement Amount within the Income Tax Refund Reserve Fund and/or Income Tax Refund Efficient Payment Trust Fund is intended to avoid the Government's concern regarding any potential violation of the Illegal Expenditures Act (5 G.C.A. §22401). It is not intended nor shall it be interpreted for any other purpose.

      d. **ALTERNATIVE FUNDING SOURCES FOR THE $90 MILLION AND FOR PAYMENT OF CLAIMS FOR TAX YEAR 1997**. The Governor may, at his discretion, utilize other funding sources for the $90 million and for payment of EIC claims for tax

year 1997 permitted by law to pay the EIC claims under this Agreement. At the Governor's request, class counsel and/or the Parties shall cooperate in good faith with any efforts by the Governor to obtain additional funding or otherwise speed payment.

**e. FUNDING FOR THE ADMINISTRATION OF CLAIMS.** Because the EIC claims under this Agreement will be administered as tax refund claims, Respondents shall use the funding for the processing of tax returns and refunds already available and shall not be obligated to obtain separate or additional funding for the administration of claims.

**f. FUNDING FOR CLASS NOTICE.** Respondents shall bear the expense of publishing, mailing, advertising, and/or otherwise disseminating the class notice on the terms stated herein, including the identification of potential individual class members, which expenses shall be paid from the following account: Governor's Account 5100A050200GA001.

**g. FUNDING FOR FUTURE TAX YEARS.** EIC claims for tax year 2005 and future tax years shall be funded in compliance with Chapters 50 and 51 of Title 11 of the G.C.A.

**h. FUNDING FOR TAX YEAR 1997.** EIC claims for tax year 1997 shall be paid from a reserved amount of $500,000.00 that is currently in the Income Tax Refund Reserve Fund (Chapter 50 of Title 11 of the G.C.A.) and/or the Income Tax Refund Efficient Payment Trust Fund (Chapter 51 of Title 11 of the G.C.A.) and which amount the government expressly warrants has been calculated by DRT to be sufficient to pay all outstanding 1997 claims. In the event that such reserved amount is insufficient to pay all outstanding 1997 claims, the Governor shall utilize other funding sources

permitted by law to pay all such claims. The Parties shall cooperate in good faith with any efforts by the Governor to obtain additional funding or otherwise speed payment.

**i. FUNDING FOR IMMEDIATE $10 MILLION PAYMENT FOR TAX YEAR 1998.** The immediate $10 million payment for tax year 1998 described in section VI(e)(i) shall be funded from the $10 million that is presently in either the Income Tax Refund Reserve Fund (Chapter 50 of Title 11 of the G.C.A.) or the Income Tax Refund Efficient Payment Trust Fund (Chapter 51 of Title 11 of the G.C.A.).

**VI. ADMINISTRATION OF THE CLAIMS PROCESS**

**a. EIC CLAIMS TO BE ADMINISTERED AS TAX REFUND CLAIMS SUBJECT TO THE CONTINUING JURISDICTION OF THE COURT.** The administration of EIC claims under this Agreement is to be handled by DRT, DOA, and any other appropriate Government agencies pursuant to existing procedures for evaluating claims for tax refunds and issuing tax refund checks under federal and territorial law. Because the Parties have agreed to administer the Settlement Amount in the manner provided herein, no separate administration plan will be required. Where any matter is not otherwise specified herein or not contrary to any provision herein, the law governing tax refund claims under federal and territorial law shall control.

**b. HOW EIC CLASS MEMBERS WILL FILE THEIR CLAIMS FOR TAX YEARS 1995-1996 AND 1998-2004**

**i. PROCEDURES APPLICABLE TO TAX YEARS 1995, 1996, 1999, 2000, 2001, 2002, 2003, 2004.**

**1.** For tax years 1995, 1996, 1999, 2000, 2001, 2002, 2003, and 2004, EIC Class members must file an EIC claim with DRT or mail a claim to DRT for each tax year in which they wish to make a claim.

**2.** Claims shall be submitted by submission of Form EIC-GU for each applicable tax year. These are the EIC tax forms employed by DRT, as may be amended from time to time.

**3.** Forms EIC-GU is and shall be made available at DRT and such other locations as GTIT tax forms are ordinarily made available.

**4.** If a taxpayer has already filed a Form EIC-GU with DRT, this shall be a claim under this Agreement; provided, however, that such claimants shall have the opportunity to request exclusion from this Settlement Agreement.

**5.** Those claimants who have filed incomplete or defective claims under Executive Order 2005-001 shall have the option to file a new Form EIC-GU as a substitute.

**6.** If an EIC Class member has not filed an income tax return for a tax year covered by this Agreement and they wish to submit a Form EIC-GU for that year, they also must file a tax return for that year as a necessary and required part of filing a claim under this Agreement.

**7.** EIC Class members shall retain the right to amend their tax returns as provided by federal and territorial law, but shall not be required to file an amended tax return for purposes of making a claim for EIC pursuant to this Settlement Agreement. Notwithstanding the acceptance of new tax returns by persons who never previously filed a tax return as stated above, Respondents shall not accept *amended* tax returns

unless filed within the time period required by federal and territorial law (which is three years from the date the original tax return was first due, whether or not it was actually timely filed).

ii.    **PROCEDURES APPLICABLE TO TAX YEAR 1997**

**1.** To be eligible to receive any payment under this Agreement for tax year 1997, EIC Class members must have filed a claim for the EIC under the GTIT or the Guam Earned Income Program for tax year 1997 on or before April 16, 2001.

**2.** No new or amended tax returns for tax year 1997 shall be accepted.

iii.    **PROCEDURES APPLICABLE TO TAX YEAR 1998**

**1.** To be eligible to receive any payment under this Agreement for tax year 1998, EIC Class members must have filed a claim for the EIC under the GTIT or the Guam Earned Income Program for tax year 1998 on or before April 15, 2002.

iv.    No new or amended tax returns for tax year 1998 shall be accepted.

c.  **WHEN MEMBERS OF THE EIC CLASS MUST FILE THEIR CLAIMS**

i.    Claims for tax years 1995, 1996, 1999, 2000, 2001, 2002, 2003, and 2004 must be either be (1) filed with DRT no later than the sixtieth day (or if the sixtieth day falls on a holiday or weekend, the next day during which DRT is open) after completion of the Class Notice Period defined in Section III above; or (2) mailed to DRT by first class mail that is postmarked no later than the sixtieth day (or if the sixtieth day falls on a holiday or weekend, the next day during which DRT is open) after completion of the Class Notice Period defined in Section III above.

ii.    No new EIC claims for tax year 1997 or 1998 shall be accepted.

**d. HOW CLAIMS WILL BE PROCESSED**

     **i.**    In processing claims, Respondents shall retain the right to audit all EIC claims and to deny any claims found to be invalid under the federal and local laws governing EIC eligibility for each respective tax year.

     **ii.**    If a claimant is found eligible for the EIC, Respondents shall retain the right to offset the amount of an EIC claim as provided for GTIT refunds in general by 26 U.S.C. § 6402.

     **iii.**    Respondents shall retain the right to asses any applicable penalties permitted by federal or territorial law as to any false or inaccurate EIC claims submitted under this Settlement Agreement, including reducing or denying an EIC claim or assessing fines or other civil or criminal sanctions.

     **iv.**    In the event that a claimant shall be determined by Respondents to have engaged in prohibited conduct under 26 U.S.C. § 32(k) as to EIC claims starting with tax year 1997 (the tax year this section took effect), then this shall foreclose any EIC claim in future tax years consistent with the provisions of 26 U.S.C. § 32(k).

     **v.**    With regard to any denial of an EIC claim or any assessment of any civil or criminal penalties, a member of the EIC Class shall maintain the right to challenge such a determination through all administrative and judicial processes afforded under federal or territorial law to a taxpayer as to any tax refund claim.

     **vi.**    Nothing in this Agreement or the claims process shall be construed to prohibit any portion of any EIC claim being made subject to payment of attorneys' fees and costs, if any, if so ordered by the Court.

**e. WHEN EIC CLAIMS FOR TAX YEARS 1995-1996 AND 1998-2004 WILL BE PAID**

**i. SPECIAL PROVISIONS REGARDING IMMEDIATE $10 MILLION PAYMENT.** Because of the unanticipated delay in implementation of the June 20, 2005 Settlement Agreement, the Government presently has no less than $10 million set aside to pay EIC claims under that previous Agreement. As further consideration for this Agreement, the Government hereby agrees to release that $10 million to pay a portion of EIC claims for tax year 1998 on the following terms:

**1.** After the completion of the processing of all claims for 1998 *and* preliminary approval of this Agreement (whichever date is later), the Government shall pay $10 million of the $15 million applied by this Agreement to tax year 1998, proportionally divided to represent 66.6% of each 1998 tax year claimant's claim (as that claim has been processed under this Agreement to represent their proportional share of the $15 million total that will be paid for 1998 claims).

**2.** Any person who accepts such payment and deposits the check that issues shall be informed (in a form to be agreed upon by the parties) that acceptance of such payment shall cause them to have released and waived their right to opt-out of this Settlement Agreement *if and only if* the Court later grants final approval of this Agreement. No person accepting such a check shall be bound to this Agreement if final approval is denied. Instead, in the event final approval is denied, the payment accepted shall only operate as a partial

payment (based solely on the dollar value actually paid) of a claim for tax year 1998, should that person later be adjudicated to have a valid claim for that tax year. Such payment now is not, and shall not be construed to be, any admission of liability or obligation to pay any present or future claim, except as stated in this Agreement.

3. Any person who refuses a payment or fails to deposit their check within sixty days of the date stated on the check shall retain the right to opt-out of this Agreement prior to final approval based upon the procedures set forth herein. A person who refuses a payment or fails to deposit their check within sixty days of the date stated on the check, but who does not opt-out of this Agreement under the procedures set forth herein, shall still be entitled to their full proportional share of the $15 million devoted to tax year 1998 upon final approval of this Agreement.

4. Any person receiving a check under this subdivision shall receive the class notice (Exhibit "C") as well as a separate notice as to the consequences of depositing or not depositing the check, which shall be in the form of the notice attached hereto as Exhibit "D."

ii.    **SPECIAL PROVISIONS REGARDING TAX YEAR 1997**. Respondents may pay remaining EIC claims for tax year 1997 upon preliminary approval of this Settlement Agreement. The method and procedures governing such payments shall be as follows:

1. Any person who accepts such payment and deposits the check that issues shall be informed (in a form to be agreed upon by the parties) that acceptance

of such payment shall cause them to have released and waived their right to opt-out of this Settlement Agreement *if and only if* the Court later grants final approval of this Agreement. No person accepting such a check shall be bound to this Agreement if final approval is denied. Instead, in the event final approval is denied, the payment accepted shall only operate as a payment (based solely on the dollar value actually paid) of a claim for tax year 1997, should that person later be adjudicated to have a valid claim for that tax year. Such payment now is not, and shall not be construed to be, any admission of liability or obligation to pay any present or future claim, except as stated in this Agreement.

2. Any person who refuses a payment or fails to deposit their check within sixty days of the date stated on the check shall retain the right to opt-out of this Agreement prior to final approval based upon the procedures set forth herein. A person who refuses a payment or fails to deposit their check within sixty days of the date stated on the check, but who does not opt-out of this Agreement under the procedures set forth herein, shall still be entitled to full payment of their 1997 tax year claim upon final approval of this Agreement.

3. Any person receiving a check under this subdivision shall receive the class notice (Exhibit "C") as well as a separate notice as to the consequences of depositing or not depositing the check, which shall be in the form of the notice attached hereto as Exhibit "D."

### iii. CONDITIONS PRECEDENT FOR ANY PAYMENT.

**1.** Except as stated in Section VI(e)(i)&(ii) above, no payments of EIC claims for tax years 1995-2004 under this Agreement shall be made prior to final District Court approval of this Settlement Agreement and entry of the final judgment.

**2.** EIC claims for tax years 1995-2004 shall be paid only as the money to pay such claims becomes available under Section V of this Agreement.

**3.** No claims shall be paid for tax years 1995-2004 until the period to make a claim for a particular tax year has expired under the terms of this Agreement.

### iv. ORDER OF PAYMENT OF EACH TAX YEAR. Tax years covered by this Agreement will be paid in the following order.

**1.** First, all claims for tax years 1997 will be paid pursuant to the terms stated herein.

**2.** Once all claims for tax year 1997 have been paid, all claims for tax years 1998 will be paid pursuant to the terms stated herein (including the initial $10 million payment described above).

**3.** Once all claims for tax year 1998 have been paid, all claims for tax years 1995, 1996, 1999, and 2000 (collectively) will be paid pursuant to the terms stated herein.

**4.** Once all claims for tax year 1995, 1996, 1999, and 2000 have been paid, claims for tax year 2001 will be paid pursuant to the terms stated herein.

**5.** Once all claims for tax year 2001 have been paid, claims for tax year 2002 will be paid pursuant to the terms stated herein.

**6.** Once all claims for tax year 2002 have been paid, claims for tax year 2003 will be paid pursuant to the terms stated herein.

**7.** Once all claims for tax year 2003 have been paid, claims for tax year 2004 will be paid pursuant to the terms stated herein.

**v.** **ORDER OF PAYMENT OF EIC CLASS MEMBERS.** Within each tax year, once all claims have been submitted and the amount due to each EIC Class member has been calculated, claims shall be paid in the order filed with DRT by the members of the class.

**vi.** **TIMELY PROCESSING AND PAYMENT OF CLAIMS.**

**1.** All claims shall be processed by DRT and shall be processed on the terms and within the time stated below:

**A.** No later than sixty days after Preliminary Approval (or if that day falls on a holiday or weekend, the next day during which DRT is open), DRT will have processed all claims for tax year 1997 and 1998, and either: (1) determined if the claimant is eligible for the EIC under 26 U.S.C. § 32 (as it applied in 1997 or 1998, respectively) based upon the information provided by the claimant and the amount they are entitled to receive; or (2) informed the claimant that the claim has been selected for an audit, informed the claimant that additional information is required (including the information sought), or informed the claimant that the claim has been denied (including the ground(s) for denial). With regard to claims selected for audits or requiring additional information, DRT shall use best efforts to complete the processing of all such claims by the date stated above, understanding that it may not be possible for every

single claim to completed in this period given taxpayer's rights to administrative and judicial challenges to a DRT determination as described in this Agreement.

**B.** No later than the one hundred twenty days (or if that day falls on a holiday or weekend, the next day during which DRT is open) after completion of the Class Notice Period defined in Section III above, DRT will have processed all claims for tax years 1995, 1996, 1999, 2000, and 2001 and either: (1) determined if the claimant is eligible for the EIC under 26 U.S.C. § 32 (as it applied in each respective tax year) based upon the information provided by the claimant and the amount they are entitled to receive; or (2) informed the claimant that the claim has been selected for an audit, informed the claimant that additional information is required (including the information sought), or informed the claimant that the claim has been denied (including the ground(s) for denial). With regard to claims selected for audits or requiring additional information, DRT shall use best efforts to complete the processing of all such claims by the date stated above, understanding that it may not be possible for every single claim to completed in this period given taxpayer's rights to administrative and judicial challenges to a DRT determination as described in this Agreement.

**C.** No later than the one hundred eighty days (or if that falls on a holiday or weekend, the next day during which DRT is open) after completion of the Class Notice Period defined in Section III above, DRT will have processed all claims for tax years 2002, 2003, and 2004 and either: (1) determined if the claimant is eligible for the EIC under 26 U.S.C. § 32 (as it applied in each respective tax year) based upon the information provided by the claimant and the amount they are entitled to receive; or (2) informed the claimant that the claim has been selected for an audit, informed the

claimant that additional information is required (including the information sought), or informed the claimant that the claim has been denied (including the ground(s) for denial). With regard to claims selected for audits or requiring additional information, DRT shall use best efforts to complete the processing of all such claims by the date stated above, understanding that it may not be possible for every single claim to completed in this period given taxpayer's rights to administrative and judicial challenges to a DRT determination as described in this Agreement.

**2.** After the completion of the processing of claims for each respective tax year, DRT shall calculate the total amount of claims it has found to be valid for that respective tax year. DRT shall then:

**A.** Identify the portion of the Settlement Amount available to pay for claims for each respective tax year or years under the terms of this Agreement.

**B.** A determination of the exact portion of the Settlement Amount available for tax years other than 1997 and 1998 will require that DRT first complete the processing of claims for tax year 1998. A determination of the exact portion of the Settlement Amount available for each of tax years 2001, 2002, 2003, and 2004 will require that DRT first complete the processing of claims for each of the preceding tax years.

**C.** Based upon the total amount of claims found valid by DRT for a given year, compared to the portion of the Settlement Amount available to pay claims for that year or those years, DRT shall then determine the percentage of each claim (up to a maximum of 100%) that can be paid from the portion of the Settlement Amount

available to pay for claims for each respective tax year or years under the terms of this Agreement.

      **D.** Applying the percentages that applies to each tax year, DRT shall then certify to DOA the claims and percentage amounts that should be paid pursuant to the provisions of this Agreement.

      **3.** Upon receipt of DRT's certification, and once sufficient funds exist pursuant to the terms of this Agreement, DOA shall pay claims for the certified amount in the order of claim priority stated in Section VI(e)(ii) and Section VI(e)(iii) of this Agreement.

      **4.** With regard to amounts of EIC claims identified as being subject to offsets under Section VI(d) of this Agreement, such amounts shall be certified for payment to the appropriate entity or entities. The claimant shall be notified that the offset amount has been paid to such an entity or entities.

      **vii.** **EXCEPTION FOR HARDSHIP CASES.** Notwithstanding the priority for the payments of EIC claims, the Parties agree that DRT shall retain the right to make individual exceptions to the priority of payments based on standard pre-existing DRT policies and procedures governing the distribution of general income tax refunds.

      **viii.** **PROCEDURE GOVERNING CLAIMS APPROVED AFTER CLAIMS FOR THAT TAX YEAR HAVE BEEN PAID.**

      **1.** If a class members' claim for a particular year is denied or selected for an audit, and it is later determined in a judicial or administrative process that the claim was valid and should be paid, that class member shall receive the same proportional

payment of the amount found to be validly claimed as is paid to class members for that same tax year.

**2.** The funding of such a proportional payment shall depend upon whether DRT already completed the procedures set forth in Section VI(e)(iv)(2) of this Agreement:

**A.** If DRT has not completed the procedures set forth in Section VI(e)(iv)(2), then the claim shall be added to the other approved claims for that tax year and be factored into the calculation of the percentage each claimant will receive for that tax year and the certification for payment of such claims by DRT to DOA under Section VI(e)(iv)(2).

**B.** If DRT has completed the procedures set forth in Section VI(e)(iv)(2), DRT shall certify the payment of the claim (at the same proportional rate as applied to all other claims for that tax year) to DOA to be funded directly from amounts reserved in the Funds created by Chapters 50 and 51 of Title 11 of the G.C.A., as such amounts become available.

## VII.   RELEASE OF CLAIMS BY THE EIC CLASS

**a. GENERAL RELEASE.** Upon final approval of this Settlement Agreement by the Court, each and every member of the EIC Class expressly and irrevocably releases, waives, settles, and discharges all claims (whether legal or equitable), demands, actions (whether judicial or administrative), suits, and causes of action, including without limitation those asserted in *Santos v. Camacho, et al.*, District Court of Guam CV04-00006 and *Torres v. Government of Guam, et al.*, District Court of Guam CV04-00038, against the Government of Guam, the Governor of Guam, the Director of the

Department of Revenue & Taxation, the Department of Revenue & Taxation, the Director of the Department of Administration, the Department of Administration, and their employees, officers, agencies, instrumentalities, independent contractors, representatives, attorneys, and agents, whether in their individual or official capacities, with regard to claims for payment of the EIC under federal or Guam territorial law in tax years 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, and 2004, or any refusal to accept or pay such claims or to implement any government programs with regard to such claims. Such release and discharge includes all such claims whether known, unknown, asserted, unasserted, suspected, or unsuspected.

**b. COVENANT NOT TO SUE.** Upon final approval of the Settlement Agreement, the EIC Class separately covenants not to sue the Government of Guam, the Governor of Guam, the Director of the Department of Revenue & Taxation, the Department of Revenue & Taxation, the Director of the Department of Administration, the Department of Administration, and their employees, officers, agencies, instrumentalities, independent contractors, representatives, attorneys, and agents, whether in their individual or official capacities, with regard to claims for payment of the EIC under federal or Guam territorial law in tax years 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, and 2004, or any refusal to accept or pay such claims or to implement any government programs with regard to such claims

**c. WAIVER OF 18 G.C.A. § 82602.** With regard to the release of claims stated in Section V(a) above, each and every member of the EIC Class expressly waives their rights under 18 G.C.A. § 82602 or principle of common or civil law that is similar to or analogous to 18 G.C.A. § 82602, which provides: "A GENERAL RELEASE DOES NOT

EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

### d. LIMITATIONS ON RELEASE & COVENANT NOT TO SUE

i.      The general release and covenant not to sue stated above shall not be construed to preclude any member of the EIC Class from challenging through the administrative and/or judicial procedures that govern ordinary tax refund claims a particular determination as to: (1) the existence and/or value of their particular EIC claim(s) for tax years 1995-2004 by DRT, (2) any amount of off-set or other adjustment made to their EIC claims by DRT (including without limitation by way of audit, penalty, intercept program, or off-set); provided, however, that the procedures for payment of such claim(s) and the percentage of such claim(s) to be paid once determined shall remain subject to the terms of this Agreement.

ii.      The general release and covenant not to sue stated above exclude any future claims alleging solely a breach of this Settlement Agreement.

### VIII.   CONDITIONS PRECEDENT & RIGHTS TO TERMINATION

a. If the Court denies preliminary approval of this Agreement and/or denies conditional approval to proceed as a class action, this Agreement shall be terminated and of no further force or effect.  The Parties shall be restored to their respective positions as existed prior to executing the June 20, 2005 Settlement (as to parties to the Santos Petition) and prior to executing this Agreement (as to parties to the Torres

Petition), without having waived any objections to or support of the June 14, 2004 Agreement.

**b.** If the Court refuses to grant final class certification or final approval of the Settlement Agreement after the Fairness Hearing, or refuses to enter the final judgment, this Agreement shall be rendered void and of no effect and the conditional and/or final class certification shall be vacated.

**c.** The Parties acknowledge and understand that it is anticipated that the amounts that can be reserved pursuant to this Settlement Agreement at present and in the coming months (possibly using a higher percentage of reservation and/or other sources identified by the Governor) will be approximately Fifteen Million Dollars ($15,000,000) (which shall consist of the Ten Million Dollars to be paid after preliminary approval and an additional Five Million Dollars). If Respondents have failed to reserve and/or pay at least $15 million for the payment of claims under this Settlement Agreement by the time the Agreement is subject to the Fairness Hearing, Santos and Torres shall have the right to terminate the Settlement Agreement, which shall be void and of no effect, and the parties shall be returned to their respective positions as existed prior to executing the June 20, 2005 Settlement (as to parties to the Santos Petition) and prior to executing this Agreement (as to parties to the Torres Petition), as though this Settlement Agreement had never been preliminarily approved, subject to all previously pending motions.

## IX.  MISCELLANEOUS CLAUSES

**a. INTEGRATION.** This Agreement contains the entire, complete, and integrated statement of each and every term of the Parties' Agreement and is not subject to any

terms not specified herein. It shall not be modified except in a writing signed by all Parties. No Party has relied upon any warranty or representation unless expressly stated in this Agreement.

**b. NOTICE**. Any notice, request, instruction or other document to be given by any Party to another Party shall be in writing and delivered personally or by Certified Mail, Return Receipt Requested, to Counsel for the Parties as follows:

<u>If to the Santos, Torres or the EIC Class:</u>

Michael F. Phillips, Esq.
Phillips & Bordallo, P.C.
410 West O'Brien Drive, Suite 102
Hagåtña, Guam 96910

Ignacio C. Aguigui, Esq.
Lujan Aguigui & Perez LLP
300 Pacific News Building
Hagåtña, Guam 96910

<u>If to the Governor of Guam:</u>

Felix Camacho, Governor of Guam
Ricardo J. Bordallo Governor's Complex, Adelup
P.O. Box 2950
Hagatna, GU 96932

With copies to:

Shannon Taitano, Esq.
Legal Counsel, Office of the Governor
Ricardo J. Bordallo Governor's Complex, Adelup
P.O. Box 2950
Hagåtña, GU 96932

Rodney J. Jacob, Esq.
Calvo & Clark, LLP
655 South Marine Corps Drive, Suite 202
Tamuning, Guam 96913

<u>If to the Directors of DOA and DRT:</u>

Art Ilagan
Director of the Department of Revenue & Taxation
P.O. Box 23607
Barigada, GU 96921

Lourdes Perez
Director of the Department of Administration
Ricardo J. Bordallo Governor's Complex, Adelup
P.O. Box 884
Hagåtña, GU 96932

With copies to:

Shannon Taitano, Esq.
Legal Counsel, Office of the Governor
Ricardo J. Bordallo Governor's Complex, Adelup
P.O. Box 2950
Hagåtña, GU 96932

Rawlen M.T. Mantanona, Esq.
Cabot Mantanona LLP
BankPacific Building, 2nd Floor
825 S. Marine Corps Drive
Tamuning, Guam 96913

c. **AMENDMENT OF PRIOR CONFIDENTIALITY AGREEMENT.** The Parties

hereby amend and enter a limited waiver of their March 2005 and March 2006

Confidentiality Agreements governing their negotiations in March 2005 to June 2005 (as

to the Santos Petition), and again in March to April 2006 (as to the Santos and Torres

Petition). This limited waiver shall only permit the Mediator to disclose to the Court such

information as may be required, in the sole discretion of the Mediator, to assist the

Court in determining whether to grant preliminary or final approval of this Agreement;

provided, however, that this limited waiver is not, and shall not be construed as, a

waiver of any Party's attorney-client or work product privileges. This limited waiver shall

also permit any Party to disclose the Parties' previous term sheet executed in May 2005. In all other respects, the Confidentiality Agreements shall remain in effect except as ordered by the Court.

d. **NO ADMISSION OF LIABILITY**. This Agreement and any acts undertaken by the Parties pursuant to it are part of a resolution of a dispute and not an admission of liability. They may not be used as such in any other litigation, including any litigation brought by persons who opt-out of this Agreement.

e. **NO WAIVER OF CLAIMS CONCERNING FEDERAL GOVERNMENT.** Nothing in this Agreement or in the final judgment issued pursuant to this Agreement shall be construed to bar, preclude, or waive any right of Respondents to seek federal reimbursement of part or all of amounts paid for EIC claims, whether under this Agreement or otherwise. At the sole discretion of Respondents, Respondents may elect to state a claim or claims against the federal government or its officers, entities, or agencies as part of answering the amended joint Petition/Complaint in the Santos and/or Torres action. If this option is exercised, then the final judgment referenced herein shall instead be a partial final judgment pursuant to FRCP 54(b) that is a final and complete resolution of claims between Respondents and the EIC Class, but not as between Respondents and any such federal defendants. The determination of the Respondents not to exercise this option shall not preclude Respondents from bringing a separate suit or claims in a different action against any federal defendants. Santos, Torres, and their counsel shall cooperate in any efforts by Respondents to obtain reimbursement for all of amounts paid for EIC claims against the federal government or its officers, entities, or agencies, whether under this Agreement or otherwise.

**f. SEVERABILITY.** Except as otherwise specified herein, the provisions of this Settlement Agreement shall be severable.

**g. BINDING NATURE.** This Agreement shall be binding upon, and inure to the benefit of, each member of the EIC Class, each Party, and their respective heirs, executors, administrators, successors, and assigns.

**h. COOPERATION IN GOOD FAITH.** All parties expressly agree and warrant they will cooperate in good faith in the execution and implementation of this Agreement and that they will: (1) promptly recommend approval of this Settlement Agreement to the Court; (2) use their best efforts to publicly promote this Settlement Agreement and work to encourage prospective class members not to opt-out; and (3) use their best efforts to obtain approval of this Settlement Agreement and to carry out its terms.

**IN WITNESS THEREOF,** the Parties have duly executed this Settlement Agreement on the date provided below.

_____
**FELIX P. CAMACHO**
Governor of Guam

Dated: _26 May 2006_

_____
**LOURDES M. PEREZ**
Director of the Department of Administration

Dated: _May 26, 2006_

_____
**JULIE B. SANTOS**
Individually, and on Behalf of Those
Similarly Situated

Dated: _____

_____
**ARTEMIO B. ILAGAN**
Director of the Department of Revenue &
Taxation

Dated: _May 26, 2006_

_(signature)_

**CHARMAINE R. TORRES**
Individually, and on Behalf of Those
Similarly Situated

Dated: _May 26, 2006_

**CERTIFIED FUNDS AVAILABLE (regarding class notice expenses):**
Account No.: Governor's Account 5100A060200GA001.
Amount: $50,000.00

_(signature)_

**JOSE S. CALVO**
Certifying Officer

**CERTIFIED FUNDS AVAILABLE (regarding $10 million payment):**
Account No.: Account No.0601-025-339
Amount: $10,000,000.00

_(signature)_

**LOURDES M. PEREZ**
Certifying Officer

**CERTIFIED FUNDS AVAILABLE (regarding 1997 tax year payment):**
Account No.: Account No.0601-025-339
Amount: $500,000.00

_(signature)_

**LOURDES M. PEREZ**
Certifying Officer

**APPROVED:**

_(signature)_

**CARLOS BORDALLO**
In His Capacity as Director of the Bureau
of Budget and Management Research

Dated: _5/26/06_


**APPROVED AS TO LEGALITY AND FORM:**

CALVO & CLARK, LLP
Attorneys for Respondents Felix P.
Camacho, Governor of Guam and
Government of Guam

By: _(signature)_
    **RODNEY J. JACOB**

Dated: _5/26/06_

LAW OFFICES OF PHILLIPS &
BORDALLO
Attorneys for Julie B. Santos, Individually,
and on Behalf of Those Similarly Situated,
and Interim Class Counsel

By: _(signature)_
    **MICHAEL F. PHILLIPS**

Dated: _5/28/06_

CABOT MANTANONA, LLP
Attorneys for Respondents Lourdes M.
Perez and Artemio R. Ilagan

By: _(signature)_
    **RAWLEN M.T. MANTANONA**

Dated: _5/26/06_

LUJAN AGUIGUI & PEREZ
Attorneys for Charmaine Torres,
Individually, and on Behalf of Those
Similarly Situated

By: _(signature)_
    ~~**IGNACIO C. AGUIGUI**~~ PETER C. PEREZ

Dated: _5/26/06_

# EXHIBIT "A"

1  **MICHAEL F. PHILLIPS, ESQ.**
   **PHILLIPS & BORDALLO, P.C.**
2  410 West O'Brien Drive
   Hagåtña, Guam 96910
3  Telephone (671) 477-2223
   Facsimile (671) 477-2329
4

5  *Attorneys for Petitioner Julie B. Santos and Lead Counsel*

6  **IGNACIO C. AGUIGUI, ESQ.**
   **PETER C. PEREZ, ESQ.**
7  **LUJAN AGUIGUI & PEREZ** LLP
   Pacific News Building, Suite 300
8  238 Archbishop Flores Street
   Hagåtña, Guam  96910
9  Telephone (671) 477-8064
   Facsimile (671) 477-5297
10

11 *Attorneys for Petitioner Charmaine R. Torres*

12

13                    **DISTRICT COURT OF GUAM**

14                     **TERRITORY OF GUAM**

15

16 JULIE BABAUTA SANTOS and
   CHARMAINE R. TORRES, on behalf of        CIVIL CASE NOS. 04-00006 and 04-00038
17 themselves and a class of others similarly
   situated,
18
                Petitioners,                  **JOINT PETITION FOR DECLARATORY**
19                                            **AND INJUNCTIVE RELIEF, AND/OR FOR**
                -vs-                          **RECOVERY OF EARNED INCOME TAX**
20                                            **CREDITS, OR IN THE ALTERNATIVE**
   FELIX P. CAMACHO, Governor of Guam;       **FOR A WRIT IN THE NATURE OF**
21 ARTEMIO ILAGAN, Director of               **MANDAMUS**
   Department of Revenue and Taxation;
22 LOURDES M. PEREZ, Director of
   Department of Administration; and         **CLASS ACTION**
23 GOVERNMENT OF GUAM,

24              Respondents.

25

26

27                          Page 1 of 9

28 Julie B. Santos and Charmaine R. Torres *et al.* v. Felix P. Camacho *et al.*
   Civil Case Nos. 04-00006 and 04-00038
   *Joint Petition for Declaratory and Injunctive Relief, and/or*
   *for Recovery of Earned Income Tax Credits, or in the Alternative*
   *for a Writ in the Nature of Mandamus*

PETITIONERS JULIE BABAUTA SANTOS AND CHARMAINE R. TORRES

("Petitioners"), by and through their attorneys of record, Phillips & Bordallo, P.C. and Lujan

Aguigui & Perez LLP, allege as follows:

## JURISDICTION

1. This Court has jurisdiction over this action pursuant to 48 U.S.C. §§ 1421i(h) & 1424; 28 U.S.C. §§ 1331, 1361, 1367, & 2201; and other applicable law.

## THE PARTIES

2. Petitioners are United States citizens, residents of Guam, and taxpayers. Petitioners are over the age of eighteen (18) years and are, and have been, eligible to receive the earned income tax credits ("EIC") for eligible Guam taxpayers under federal law, 48 U.S.C. § 1421i (a provision of the Organic Act of Guam) and Guam law, known as the Guam Earned Income Program, 11 Guam Code Annotated ("G.C.A.") § 42101 *et seq.*, since at least tax years 1995 to 2004. Petitioners filed income tax returns with the Guam Department of Revenue & Taxation ("DRT") for the subject tax years.

3. Respondent Felix P. Camacho is the Governor of Guam and in such official capacity is responsible for the administration and enforcement of the Guam Territorial Income Tax ("GTIT") under 48 U.S.C. § 1421i. Under the Organic Act of Guam, Governor Camacho has general supervision and control of all the departments, bureaus, agencies, and other instrumentalities of the executive branch of the Government of Guam and is responsible for the faithful execution of the laws of Guam and the laws of the United States applicable to Guam. 48 U.S.C. § 1422.

4. Respondent Artemio Ilagan is the Director of DRT and is responsible under the Governor of Guam with the administration and enforcement of the GTIT, as provided by 11 G.C.A. §§ 1104 and 1107.

5. Respondent Lourdes M. Perez is the Director of the Department of Administration ("DOA") and is responsible for setting aside all money reserved for income tax refunds, earned

Page 2 of 9

Julie B. Santos and Charmaine R. Torres *et al.* v. Felix P. Camacho *et al.*
Civil Case Nos. 04-00006 and 04-00038
*Joint Petition for Declaratory and Injunctive Relief, and/or*
*for Recovery of Earned Income Tax Credits, or in the Alternative*
*for a Writ in the Nature of Mandamus*
Case 1:04-cv-00006    Document 322-3    Filed 05/26/2006    Page 3 of 27

income tax credits, and child tax credits from income tax receipts, as required by the Income Tax Reserve Fund Law, 11 G.C.A. § 50104.

6.   Respondent Government of Guam was created through enactment of the Organic Act of Guam, 48 U.S.C. § 1421 *et seq.*

## THE CLASS

7.   Petitioners bring this Joint Petition on their own behalf and on behalf of a class of persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

8.   The class Petitioners represent consists of the following persons:

> All persons who: (1) were subject to the Guam Territorial Income Tax ("GTIT") established in 48 U.S.C § 1421i for tax years 1995-1996 and/or 1999-2004 and would have been eligible to file (whether or not they actually filled) for the EIC established in 26 U.S.C. § 32 (as it applied in each respective tax year) if that program were applied in the Territory of Guam; and/or (2) were eligible to receive an EIC credit under certain Guam territorial laws for tax years 1995-1996 and/or 1999-2004 that mirrored the federal EIC law (26 U.S.C. § 32), including the Guam Earned Income Program (Chapter 42 of 11 G.C.A.); and/or (3) actually filed a claim for the EIC with DRT for tax year 1998 under the GTIT or Guam Earned Income Program (Chapter 42 of 11 G.C.A.) on or before April 15, 2002, and have not yet received full payment for that claim; and/or (4) actually filed a claim for the EIC with DRT for tax year 1997 under the GTIT or Guam Earned Income Program (Chapter 42 of 11 G.C.A.) on or before April 16, 2001 and have not yet received full payment for that claim.

9.   The class Petitioners represent is so numerous such that joinder of each member of the class is impracticable.

10.   There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members.

11.   The claims of Petitioners are typical of the claims of the class members.

12.   Petitioners can and will fairly and adequately protect the interests of the class.

13.   Petitioners and the class are represented by able and well-qualified counsel.

Page 3 of 9
Julie B. Santos and Charmaine R. Torres *et al.* v. Felix P. Camacho *et al.*
Civil Case Nos. 04-00006 and 04-00038
*Joint Petition for Declaratory and Injunctive Relief, and/or*
*for Recovery of Earned Income Tax Credits, or in the Alternative*
*for a Writ in the Nature of Mandamus*
Case 1:04-cv-00006   Document 322-3     Filed 05/26/2006     Page 4 of 27

14.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.    The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.    Respondents have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.    Furthermore, adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

## STATEMENT OF CLAIMS

15.    In 1950, Congress declared Guam to be an unincorporated territory of the United States through the Organic Act of Guam, codified at 48 U.S.C. § 1421 *et seq*.    The Organic Act established the framework for Guam's local government and, in addition, specifically provided for an income taxation scheme for the island mirroring certain provisions of the federal income tax laws then in effect and "those which may hereafter be enacted," 48 U.S.C. § 1421i(a). Congress designated this tax as the "Guam Territorial Income Tax" ("GTIT"), 48 U.S.C. § 1421i(b), which Guam residents pay to the Government of Guam and not the federal government.

16.    Among the provisions of the federal income tax laws that Congress made applicable to Guam through the GTIT is the federal earned income tax credit provision ("federal EIC"), 26 U.S.C. § 32, contained in Subtitle A of the Internal Revenue Code ("IRC").    This provision became effective in tax year 1975.

17.    Congress provided through the Organic Act that provisions of the IRC that are manifestly inapplicable or incompatible with the intent of the income tax provision of 48 U.S.C.

Page 4 of 9

Julie B. Santos and Charmaine R. Torres *et al.* v. Felix P. Camacho *et al.*
Civil Case Nos. 04-00006 and 04-00038
*Joint Petition for Declaratory and Injunctive Relief, and/or*
*for Recovery of Earned Income Tax Credits, or in the Alternative*
*for a Writ in the Nature of Mandamus*

§ 1421i shall not apply to Guam. The federal EIC provision is not manifestly inapplicable or incompatible with the intent of § 1421i. The federal EIC provision was enacted by Congress to provide an incentive to individuals with modest means to engage in income-earning activities.

18. In or about 1989, the Government of Guam questioned the applicability of the federal EIC to Guam taxpayers.

19. On or about January 4, 1996, the Attorney General of Guam issued an opinion stating that the EIC does not apply to Guam and that the Guam Department of Revenue & Taxation should not administer the EIC, thus hindering the implementation, execution, and enforcement of the EIC. Upon information and belief, the opinion of the Attorney General has not been rescinded.

20. The Guam Legislature subsequently enacted local statutes to implement the federal EIC through establishment of the Guam Earned Income Program.

21. 11 G.C.A. § 42103 requires that the Guam Earned Income Program be established using the same income levels as are used in the federal EIC provision "to compute a subsidy which will be paid to residents of Guam who file Income Tax Returns to the Department of Revenue and Taxation."

22. The Guam Supreme Court has held that eligible Guam taxpayers are entitled to the EIC and that the EIC must be applied in a mirrored fashion to Guam. The Supreme Court further held that the Governor is required to enforce and administer the EIC. *In Re Request of I Mina' Bente Sing'ko Na Liheslaturan Guahan Relative to the Application of the Earned Income Tax Credit Program to Guam Taxpayers ("The EIC question"), 2001 Guam 3.*

23. The administration, execution, and enforcement of the GTIT and the Guam Earned Income Program are performed by or under the general supervision of the Governor of Guam, 48 U.S.C. §§ 1421i(c) & 1422.

Page 5 of 9
Julie B. Santos and Charmaine R. Torres *et al.* v. Felix P. Camacho *et al.*
Civil Case Nos. 04-00006 and 04-00038
*Joint Petition for Declaratory and Injunctive Relief, and/or
for Recovery of Earned Income Tax Credits, or in the Alternative
Case Writ in the Nature of Mandamus* Document 322-3    Filed 05/26/2006    Page 6 of 27

24.   Respondent Ilagan, in consultation with Respondent Perez and the Director of the Bureau of Budget and Management Research, is required to establish a formula for reserving income tax receipts to pay income tax refunds, earned income tax credits, and child tax credits. 11 G.C.A. § 50103.

25.   Respondent Perez is required to set aside all money reserved for income tax refunds, earned income tax credits, and child tax credits from income tax receipts. 11 G.C.A. § 50104.

26.   Despite the foregoing statutory and judicial mandates to implement and enforce the EIC, Respondents have nonetheless systematically refused requests by eligible Guam taxpayers for earned income tax credits, hindered or denied the ability of eligible taxpayers to claim the EIC, failed to establish systemwide mechanisms to implement the EIC, and have denied and continue to deny Guam taxpayers, including Petitioners and the class Petitioners represent, the full benefits of the EIC, all in violation of the entitlements guaranteed to eligible Guam taxpayers under the Organic Act of Guam and the Guam Earned Income Program.

27.   More specifically, upon information and belief, the Government of Guam (acting by and through Respondents and their predecessors) denied the ability of eligible Guam taxpayers to claim entitlement to the EIC since at least tax year 1995.  Upon information and belief, the Government of Guam allowed eligible Guam taxpayers to claim the EIC for tax years 1997 and 1998, but only paid the EIC for tax year 1997.  Even then, EIC claims for tax year 1997 were not paid in full and/or to all eligible Guam taxpayers who had filed claims.

28.   Petitioners and the class Petitioners represent have suffered and will continue to suffer economic hardship from Respondents' refusal to enforce and implement the EIC as required by the Organic Act and the Guam Earned Income Program and from the delay in implementing and enforcing the EIC at the administrative level.

Julie B. Santos and Charmaine R. Torres *et al.* v. Felix P. Camacho *et al.*
Civil Case Nos. 04-00006 and 04-00038
*Joint Petition for Declaratory and Injunctive Relief, and/or*
*for Recovery of Earned Income Tax Credits, or in the Alternative*
*for a Writ in the Nature of Mandamus*

1    29.    Petitioners and the class Petitioners represent are entitled to an award of damages

2    for all unpaid EIC for all years in which such credits were not paid as required by law, with

3    interest.

4    30.    In the alternative, Petitioners and the class Petitioners represent are entitled to the

5    issuance of a writ in the nature of mandamus compelling Respondents to implement the EIC as is

6    required by the Organic Act and Guam law, including allowing and accepting EIC claims from

7    Guam taxpayers, and to pay Petitioners and the class Petitioners represent all unpaid EIC for all

8    years such credits were not paid as required by law, with interest. Petitioners and the class

9    Petitioners represent have a clear right to the relief sought, and Respondents have plainly defined,

10   peremptory, and non-discretionary duties to implement the EIC, including the allowance and

11   acceptance of EIC claims, and the payment of all unpaid EIC for all years in which such credits

12   were not paid as required by law, with interest, and no other adequate remedy is available.

13   31.    Petitioners have incurred, and will continue to incur, expenses for costs and

14   attorneys' fees necessary for the investigation, institution, and prosecution of this action.  Such

15   fees and expenditures will result in benefits to all members of the class Petitioners represent.

16

17   **PRAYER FOR RELIEF**

18   **WHEREFORE**, Petitioners, on behalf of themselves and all others similarly situated,

19   pray that Respondents be served with copies of this Joint Petition and be directed to appear and

20   answer it according to law; and that this Honorable Court:

21   1.    Advance this case on the docket and cause this case to be in every way expedited;

22   2.    Certify this as a class action pursuant to the Federal Rules of Civil Procedure;

23   3.    Issue a declaratory judgment that the Respondents' acts, policies, practices, and

24   procedures complained of herein violate the rights of Petitioners and the class Petitioners

25

26

27                                    Page 7 of 9
Julie B. Santos and Charmaine R. Torres *et al.* v. Felix P. Camacho *et al.*

28   Civil Case Nos. 04-00006 and 04-00038
*Joint Petition for Declaratory and Injunctive Relief, and/or
for Recovery of Earned Income Tax Credits, or in the Alternative
for a Writ in the Nature of Mandamus*

Case 1:04-cv-00006    Document 322-3    Filed 05/26/2006    Page 8 of 27

represent to be entitled to the EIC under the Organic Act of Guam and the Guam Earned Income Program;

4. Issue a declaratory judgment that the Petitioners and the class Petitioners represent are entitled to the receive the EIC under the Organic Act of Guam and/or the Guam Earned Income Program for all years in which such credits were not paid as required by law, together with interest and other amounts allowed by law;

5. Issue preliminary and permanent injunctions compelling Respondents to do all that is necessary and proper to implement and enforce the EIC to the full extent required by the Organic Act of Guam and the Guam Earned Income Program, and to rescind, modify, and/or amend any and all rulings, opinions, determinations, orders, or circulars that have the effect of denying entitlement of eligible Guam taxpayers to the EIC;

6. In addition or in the alternative to declaratory and injunctive relief, award Petitioners and the class Petitioners represent damages in the amount of all unpaid EIC for all years in which such credits were not paid as required by law, with interest;

7. In addition or in the alternative to the relief prayed for herein, issue a writ in the nature of mandamus compelling Respondents to implement the EIC, including the allowance and acceptance of EIC claims, and pay to Petitioners and the class Petitioners represent all amounts of unpaid EIC for all years in which such credits were not paid as required by law, with interest;

8. Award Petitioners and the class Petitioners represent costs, and attorney's fees in the amount of ten percent (10%) of the total amount recovered by and/or for the benefit of the class;

9. Award costs and attorneys' fees from the amount recovered by and/or for the common benefit of the class;

Julie B. Santos and Charmaine R. Torres *et al.* v. Felix P. Camacho *et al.*
Civil Case Nos. 04-00006 and 04-00038
*Joint Petition for Declaratory and Injunctive Relief, and/or*
*for Recovery of Earned Income Tax Credits, or in the Alternative*
*for a Writ in the Nature of Mandamus*

1    10.    Retain jurisdiction over this action to assure full compliance with the Orders of

2    this Court and with applicable law and require Respondents to file such reports as the Court

3    deems necessary to evaluate such compliance;

4    11.    Grant such additional and further relief as this Court deems proper and just.

5    Respectfully submitted this 26th day of May, 2006.

6
                                              **PHILLIPS & BORDALLO, P.C.**
7

8
                                              By:_____
9                                                 **MICHAEL F. PHILLIPS, ESQ.**

10                                            *Attorneys for Petitioner Julie Babauta Santos*
                                              *and Lead Counsel*
11
                                              **LUJAN AGUIGUI & PEREZ LLP**
12

13
                                              By:_____
                                                 **IGNACIO C. AGUIGUI, ESQ.**
14

15                                            *Attorneys for Petitioner Charmaine R. Torres*

16

17

18

19

20

21

22

23

24

25

26

27                                            Page 9 of 9
Julie B. Santos and Charmaine R. Torres *et al.* v. Felix P. Camacho *et al.*
28    Civil Case Nos. 04-00006 and 04-00038
      *Joint Petition for Declaratory and Injunctive Relief, and/or*
      *for Recovery of Earned Income Tax Credits, or in the Alternative*
      *for a Writ in the Nature of Mandamus*

Case 1:04-cv-00006    Document 322-3    Filed 05/26/2006    Page 10 of 27

# EXHIBIT "B"

1 [Appearing Counsel on next page]

2

3

4

5 **DISTRICT COURT OF GUAM**

6 **TERRITORY OF GUAM**

7

8

JULIE BABAUTA SANTOS, *et. al.,*                     Civil Case No. 04-00006
9
                              Petitioners,
10                                                    **JOINT MOTION OF THE *SANTOS***
                     -v-                              **AND *TORRES* PARTIES FOR**
11                                                    **PRELIMINARY APPROVAL OF**
FELIX P. CAMACHO, *et. al.*                           **CLASS ACTION SETTLEMENT**
12                                                    **AGREEMENT; MEMORANDUM OF**
                              Respondents.            **POINTS AND AUTHORITIES IN**
13                                                    **SUPPORT THEREOF**

14 ───────────────────────────────                    **[ORAL ARGUMENT REQUESTED]**
CHARMAINE R. TORRES, *et al.,*
15
                              Plaintiffs,             Civil Case No. 04-00038
16
                     -v-
17
GOVERNMENT OF GUAM, *et al.,*
18
                              Defendants.
19

20 ───────────────────────────────
MARY GRACE SIMPAO, *et al.,*
21
                              Plaintiffs,             Civil Case No. 04-00049
22
                     -v-
23
GOVERNMENT OF GUAM,
24
                              Defendant.
25
                     -v-
26
FELIX P. CAMACHO, Governor of Guam,
27
                              Intervenor-Defendant.
28 ───────────────────────────────

**SHANNON TAITANO, ESQ.**
**OFFICE OF THE GOVERNOR OF GUAM**
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
Telephone:    (671) 472-8931
Facsimile:    (671) 477-4826

**EDUARDO A. CALVO, ESQ.**
**RODNEY J. JACOB, ESQ.**
**DANIEL M. BENJAMIN, ESQ.**
**CALVO & CLARK, LLP**
Attorneys at Law
655 South Marine Drive, Suite 202
Tamuning, Guam 96913
Telephone:    (671) 646-9355
Facsimile:    (671) 646-9403
Attorneys for *Felix P. Camacho, Governor of Guam*

**RAWLEN M.T. MANTANONA**
**CABOT MANTANONA LLP**
BankPacific Building, 2nd Floor
825 S. Marine Corps Drive
Telephone:    (671) 646-2001
Facsimile:    (671) 646-0777
Attorneys for Respondents *Lourdes M. Perez and Artemio R. Ilagan*

**MICHAEL F. PHILLIPS**
**PHILLIPS & BORDALLO, P.C.**
410 West O'Brien Drive
Hagåtña, Guam 96910
Telephone:    (671) 477-2223
Facsimile:    (671) 477-2329
Interim Class Counsel and Attorneys for Petitioner *Julie Babauta Santos*

**IGNACIO C. AGUIGUI**
**PETER C. PEREZ**
**LUJAN AGUIGUI & PEREZ LLP**
300 Pacific News Building
Hagåtña, Guam 96910
Telephone:    (671) 477-8064
Facsimile:    (671) 477-5297
Attorneys for Plaintiff *Charmaine R. Torres*

On April 6, 7, and 8, 2006, the parties to these three consolidated cases participated in mediation in Guam before the Hon. William J. Cahill (Ret. Judge). As a result of the mediation, parties in the *Santos* and *Torres* actions reached a settlement agreement in principle, subject to final documentation. By Order dated April 26, 2006, the Court gave the parties until May 26, 2006, to complete the documentation and submit it to the Court.

Accordingly, the Moving Parties[1] now jointly submit the resulting Settlement Agreement concurrently herewith and respectfully move the Court for an order: (1) granting preliminary approval of the Settlement Agreement; (2) setting all necessary Court dates and timetables under the Settlement Agreement; (3) approving and ordering the issuance of the class notices; (4) conditionally certifying the EIC settlement class, as defined in the Settlement Agreement and pursuant to a separate motion to be filed shortly within the time frame provided for under the Settlement Agreement; and (5) granting such other and further relief as the Court may deem just and proper. Pursuant to Section II(a)(v) of the Settlement Agreement, if the Court preliminarily approves the Settlement Agreement, conditionally certifies the class, and orders the issuance of class notice, the Moving Parties have agreed that the previous June 14, 2004 Settlement Agreement shall be mutually rescinded and of no further force or effect, and that the June 17, 2004 stipulated Order in the *Santos* action granting preliminary approval to that previous settlement shall be vacated. Accordingly, the Moving Parties ask that upon the occurrence of stated conditions, the Court enter an order vacating the June 17, 2004 stipulated Order.

The Moving Parties recognize the Court has issued a stay in the three cases pending interlocutory appeal of Court's decision regarding disqualification of the Attorney General. *See* March 16, 2006 Order. Nonetheless, the Moving Parties believe that the interlocutory appeal should not preclude the Court from proceeding with approval of the instant Settlement

---

[1] The Moving Parties consist of parties to the *Santos* (CV04-00006) and *Torres* (CV04-00038) actions – *i.e.*, Petitioner Julie B. Santos ("Petitioner"), Interim Class Counsel Mike Phillips, Esq. ("Interim Class Counsel"), Governor of Guam Felix P. Camacho (the "Governor"), the Director of Revenue & Taxation Artemio B. Ilagan and the Director of Administration Lourdes M. Perez (the "Directors"), Charmaine R. Torres ("Torres"), and Lujan Aguigui & Perez LLP, counsel for Torres.

1  Agreement. The issues will be briefed and set forth in detail in the Governor of Guam's

2  forthcoming motion to lift the stay, to be filed within the next few days.[2]

3      This Joint Motion is based upon the accompanying memorandum of points and

4  authorities, the Declaration of Rodney J. Jacob, the files and records in this action, and such other

5  evidence and arguments as may be presented at or before the hearing on this motion.

6      The Moving Parties request oral argument. The statement pursuant to Local Rule

7  7.1(e)(2) will be submitted regarding oral argument dates with respect to this and certain other

8  motions to be filed within the next several days. The Moving Parties will provide notice of the

9  hearing date once the Court provides a date.

10      Respectfully submitted this 26th day of May, 2006.

11

12  **OFFICE OF THE GOVERNOR OF GUAM**    **PHILLIPS & BORDALLO, P.C.**
    **CALVO & CLARK, LLP**    Interim Class Counsel and Attorneys for Petitioner
13  Attorneys for Felix P. Camacho, Governor of    Julie Babauta Santos
    Guam

14  By:_____    By:_____
15      **RODNEY J. JACOB**    **MICHAEL F. PHILLIPS**

16  **MANTANONA LAW OFFICE**    **LUJAN AGUIGUI & PEREZ LLP**
    Attorneys for Respondents Lourdes M. Perez and    Attorneys for Plaintiff Charmaine R. Torres
17  Artemio R. Ilagan

18  By:_____    By:_____
        **RAWLEN M.T. MANTANONA**    **IGNACIO C. AGUIGUI**
19

20

21

22

23

24

25  _____

26      [2] Furthermore, although the Attorney General technically remains a *party* to the Torres
27  action, a motion will be filed within the next few days pursuant to the Settlement Agreement to
    dismiss the Attorney General from the case. In the *Torres* action, the Attorney General requested
28  that he be dismissed as a party defendant pursuant to 26 U.S.C. § 7422(f), and the Magistrate
    Judge recommended that his request be granted. *See* Report and Recommendations of Magistrate
    Judge (CV04-00038) at 4-6 (filed Sept. 29, 2005).

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Moving Parties in the *Santos* and *Torres* actions respectfully submit this Memorandum of Points and Authorities in Support of their Joint Motion for Preliminary Approval of Class Action Settlement Agreement.

In light of the disputed issues involved in this litigation concerning the liability of Guam's government to pay Earned Income Tax Credits ("EIC") to eligible Guam taxpayers since 1995, the inherent uncertainties and risks involved in further litigation, the benefits to be received and potential recovery for EIC class members pursuant to the Settlement Agreement, and the expense and burden of continued litigation, the Moving Parties agree that settlement on the terms and conditions set forth in the Settlement Agreement is fair and reasonable and in the best interests of the Moving Parties and of the Class sought to be certified.

The Moving Parties ask the Court to take the first step in the approval process – *preliminary* approval of the Settlement Agreement. In determining whether preliminary approval is warranted, the Court makes a "preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Manual for Complex Litig. (4th) § 21.632 (2004).* The Court looks to see whether the Settlement Agreement is sufficiently within the range of possible approval to justify notifying Class Members of the settlement and scheduling the final fairness hearing. *See Armstrong v. Bd. Of School Dirs.,* 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds, Felzen v. Andreas,* 134 F.3d 873 (7th Cir. 1998). Parties may ask the Court for both class certification and settlement approval. *Manual for Complex Litig. (4th) § 21.632.* In such cases, the certification hearing and preliminary fairness evaluation can usually be combined. *Id.* If preliminary approval and certification are warranted, the Court directs the preparation of notice of the certification of the class, proposed settlement, and date of the final fairness hearing. *Id.*

As set forth in further detail in this filing, the Moving Parties submit that the Settlement Agreement satisfies the requirements for a preliminary (as well as a final) fairness evaluation by the Court. Accordingly, the Moving Parties are requesting that the Court issue an order that:

1   •   Grants preliminary approval to the Settlement Agreement filed concurrently herewith;

2   •   Sets all necessary Court dates and timetables under the Settlement Agreement;

3   •   Approves and orders the issuance of the class notices provided for under the Settlement

4       Agreement;

5   •   Conditionally certifies the EIC Class, as defined in the Settlement Agreement, pursuant to

6       this Joint Motion and a separate motion to be filed with the Court within a few days and

7       within the time frame provided for under the Settlement Agreement;

8   •   Vacates the June 14, 2004 stipulated Order in the *Santos* action, upon preliminary

9       approval, conditional certification of the class, and approval of the issuance of class

10      notice, pursuant to Section II(a)(v) of the Settlement Agreement;

11   •   Grants such other and further relief as the Court deems just and proper.

12       The Moving Parties recognize the Court has issued a stay in the three consolidated cases

13 pending interlocutory appeal of Court's decision regarding disqualification of the Attorney

14 General. *See* March 16, 2006 Order. Nonetheless, the Moving Parties believe that the

15 interlocutory appeal should not preclude the Court from proceeding with either preliminary or

16 final approval of the instant Settlement Agreement. Such issues will be briefed and set forth in

17 detail in the Governor of Guam's forthcoming motion to lift the stay, to be filed within the next

18 few days. Moreover, although the Attorney General technically remains a *party* to the Torres

19 action, a motion will be filed within the next few days pursuant to the Settlement Agreement to

20 dismiss the Attorney General from the case. In the *Torres* action, the Attorney General had

21 requested that he be dismissed as a party defendant pursuant to 26 U.S.C. § 7422(f), and the

22 Magistrate Judge recommended that his request be granted. *See* Report and Recommendations of

23 Magistrate Judge (CV04-00038) at 4-6 (filed Sept. 29, 2005).

24 **II.**    **SUMMARY OF THE LITIGATION**

25       The Court already is familiar with the lengthy history of this litigation, initiated first with

26 the *Santos* action in February 2004, followed by the *Torres* action in August 2004, and then the

27 (non-settling) *Simpao* action in December 2004. The litigation involves the Government of

28 Guam's alleged non-payment of Earned Income Tax Credits to eligible Guam taxpayers. The

1   Court consolidated the cases for pretrial purposes in March 2006, and granted the Governor of

2   Guam's request for mediation under Local Rule 16.6. *See* Order Re: Settlement Conference

3   Pursuant to Local Rule 16.6 (March 21, 1006).   The parties agreed on a mediator and engaged in

4   mediation; however, only parties to the *Santos* and *Torres* actions were able to successfully reach

5   a settlement, which then resulted in execution of the Settlement Agreement now being presented

6   to the Court.

7          Prior to the execution of the instant Settlement Agreement, two prior settlement

8   agreements were entered into in the *Santos* action, one in 2004, the other in 2005.  Compared to

9   the settlement reached in the *Santos* case on June 20, 2005 (the "2005 Settlement Agreement"),

10  the instant Settlement Agreement involves parties to both the *Santos* and *Torres* actions.  As

11  stated above, it was the result of mediation held in Guam over three (3) full days, from April 6-8,

12  2006, before a distinguished JAMS mediator, the Hon. William J. Cahill.  The agreement enlarges

13  the putative class that will benefit from the settlement while providing enhanced benefits to the

14  putative class compared to the benefits provided for under the 2005 Settlement Agreement.

15  **III.    ARGUMENT SUPPORTING PRELIMINARY APPROVAL**

16          **A.    Summary of the Settlement Agreement**

17          In seeking preliminary approval of the Settlement Agreement so as to be able to proceed

18  with class notice, the Moving Parties believe that the terms of the Settlement Agreement are fair,

19  reasonable, and adequate.  Further, they are aware that the Court cannot enter any final findings

20  regarding the fairness of the Settlement Agreement until after there is notice and a fairness

21  hearing occurs. *See* FRCP 23(e)(1)(C).  The Moving Parties believe that the terms of the

22  Settlement Agreement largely speak for themselves; nonetheless, the parties wish to highlight

23  some of the key provisions of the Agreement and, where applicable, compare and contrast those

24  provisions with those of the 2005 Settlement Agreement:

25          **1.    Definition of the EIC Class.**  Compared to the EIC Class defined in the

26  2005 Settlement Agreement, the definition of the EIC Cass in the instant Settlement Agreement

27  has been expanded to include those taxpayers who actually filed an EIC claim with the

28  Government of Guam for tax year 1997 under the Guam Territorial Income Tax ("GTIT") or

1     Guam Earned Income Program (Chapter 42, 11 G.C.A.) on or before April 16, 2001, and have not

2     yet received full payment for those claims. As defined in the instant Settlement Agreement the

3     EIC Class is now defined as follows:

> [A]ll persons who do not elect to request exclusion from the class
> under the procedures described below [in the Settlement
> Agreement] and: (1) were subject to the Guam Territorial Income
> Tax ("GTIT") established in 48 U.S.C. § 1421i for tax years 1995-
> 1996 and/or 1999-2004 and would have been eligible to file
> (whether or not they actually filed) for the EIC established in 26
> U.S.C. § 32 (as it applied in each respective tax year) if that
> program were applied in the Territory of Guam; and/or (2) were
> eligible to receive an EIC credit under certain Guam territorial laws
> for tax years 1995-1996 and/or 1999-2004 that mirrored the federal
> EIC law (26 U.S.C. § 32), including the Guam Earned Income
> Program (Chapter 42 of 11 G.C.A.); and/or (3) actually filed a
> claim for the EIC with DRT for tax year 1998 under the GTIT or
> Guam Earned Income Program (Chapter 42 of 11 G.C.A.) on or
> before April 15, 2002, and have not yet received full payment for
> that claim; and/or (4) actually filed a claim for the EIC with DRT
> for tax year 1997 under the GTIT or Guam Earned Income Program
> (Chapter 42 of 11 G.C.A.) on or before April 16, 2001 and have not
> yet received full payment for that claim.

15     Settlement Agreement § 1(b).

16           **2.**     **Schedule of Events.** Section II(a) of the Settlement Agreement provides

17     for the filing of certain submissions within seven (7) days of execution of the Settlement

18     Agreement. These filings include a motion to amend the pleadings to conform to the EIC Class

19     definition, motion for conditional class certification, and motion for attorneys' fees and costs.

20     Such filings will be made within the allowed time frame. Furthermore under Section II(a) the

21     parties have agreed that the instant Settlement Agreement amends and supersedes the 2005

22     Settlement Agreement. The parties have also agreed that upon preliminary approval of the instant

23     Settlement Agreement, conditional certification of the EIC class, and approval of the issuance of

24     class notice, the previous June 14, 2004 settlement agreement shall be mutually rescinded and of

25     no further force and effect and that the stipulated order dated June 17, 2004 granting preliminary

26     approval to that previous agreement shall be vacated.

27           Section II(b) provides a time frame ("Opt-Out Date") and the procedures through which

28     persons wishing to request exclusion from the EIC Class and the Settlement Agreement may do

1    so. The time frame established is no later than sixty (60) days after the completion of the Class

2    Notice period defined in Section III of the Settlement Agreement.

3          Section II(c) provides the time table in which the final Fairness Hearing shall occur as

4    well as deadlines for filing any motions to intervene, motions for final certification of the EIC

5    class, supplemental filings regarding attorneys' fees, filings regarding objections to or comments

6    in favor of the Settlement Agreement.

7          **3.**    **Class Notice.** Section III of the Settlement Agreement deals with notice to

8    the EIC Class. Under the Settlement Agreement, in order to "achieve the best notice that is

9    reasonably practicable, the Parties have determined to engage in both individual notice and notice

10   by publication to the EIC Class." Settlement Agreement § II(a). Notice by publication shall

11   include publication in a full-newspaper advertisement reprinted twice weekly for not less than

12   four consecutive weeks in both the Pacific Daily News and the Marianas Variety. *Id.* § II(b).

13   Individual notice shall be given by mail. The taxpayers who will receive such notice will be

14   ascertained based on records compiled by the Guam Department of Revenue and Taxation in

15   compliance with the extensive procedures provided for by the Settlement Agreement. Settlement

16   Agreement §§ II(c)(i)-(vi).

17         **4.**    **Settlement Benefits for Class Members.** The Settlement Agreement

18   provides payments to EIC class members for Tax Years 1995-2004, and requires the Government

19   of Guam to pay the EIC for tax years beyond 2004. *See generally* Settlement Agreement § IV. In

20   contrast to the 2005 Settlement Agreement, the instant Settlement Agreement provides that upon

21   preliminary approval, $10 million from the Government's tax reserve funds will be made

22   available to pay a portion of EIC claims for tax year 1998. *Id.*, §§ V(i), VI(e)(ii). Additionally,

23   upon preliminary approval, the Government will also begin paying remaining EIC claims for tax

24   year 1997. *Id.,* § VI(e)(ii). These new provisions allow eligible Guam taxpayers to begin

25   receiving EIC benefits without further delay. The prompt processing of such claims by the

26   Department of Revenue and Taxation can occur in a relatively short time period because EIC

27   claims for those two (2) tax years are already on file with the Department of Revenue and

28   Taxation, as the Government allowed taxpayers to file for the EIC for those specific tax years

1    under the Guam Earned Income Program.   Further specifics of the foregoing benefits are set forth

2    below.

3                    *EIC Payments for Tax Years 1995-2004* – If the Court approves the

4    Settlement Agreement, amounts will be paid to EIC class members for tax years 1995-2004.

5    Although class members will not receive interest on their claims, a substantial amount -- up to

6    $90 million – will be made available for all EIC claims for tax years 1995-1996 and 1998-2004.

7    *Id.,* § IV(a).  All outstanding EIC claims for tax years 1997 constitute an additional amount

8    outside of the $90 million and will be paid pursuant to the terms of the Settlement Agreement.

9    *See, e.g., id.,* § IV(d).  Funding for the $90 million amount will be obtained by devoting at least

10   15% of any amounts that are placed into the Government of Guam's tax refund reserve funds,

11   which are the funds used to pay general tax refunds (*see* Settlement Agreement § V(a)).  Funding

12   for payment of 1997 claims will be obtained from a reserved amount currently in the Government

13   of Guam's tax reserve funds. *Id.,* § V(h).

14                   For tax years 1995, 1996, 1999, and 2000 (claims for which there is an

15   arguable risk of a time bar if litigated), the Government has agreed to pay up to $15 million for all

16   EIC claims for those years. *Id.,* § IV(a)(ii).  The amount will be divided proportionally among

17   each claimant found eligible by DRT (applying the requirements of 26 U.S.C. § 32 as it applied in

18   each applicable year) based on the total combined value of their claim or claims for those years.

19   For tax years 1998 and 1997, there does not exist as great a risk of a time bar because the

20   Government allowed the filing of EIC claims for those years.  Accordingly, the Government will

21   make available up to $15 million for tax year 1998, and will pay remaining claims for tax year

22   1997.  As noted above, processing of payments for those tax years will commence immediately

23   upon preliminary approval of the Settlement Agreement.  For tax years 2001-2004, up to $15

24   million will be made available to pay claims for each of those years. *Id.,* §§ IV(a)(iii)-(vi).  The

25   Settlement Agreement also contains certain "roll-over" provisions in which any remaining

26   amounts in a particular year will be rolled-over to fund payments for certain other years. *E.g.,*

27   *id.,* §§  IV(a)(i)(3), -(ii)(1), -(ii)(3), -(iii)(1), -(iii)3).  Payments for tax years other than 1997 and

28   1998, will not occur until final approval of the Settlement Agreement and until all claims for

1  those two years are paid pursuant to the terms of the Settlement Agreement. *Id.,* §§ VI(e)(iii)-

2  (iv).

3  *EIC Payments for Tax Years Beyond 2004* – The Settlement Agreement

4  provides for full implementation of the EIC beginning with tax year 2005 for all qualifying

5  taxpayers (*see* Settlement Agreement § IV(d)).

6  **5.** **Funding.** Funding for the Settlement Agreement benefits will be made by

7  reserving a minimum of 15% of each amount set aside or earmarked by the Government or

8  Legislature for income tax refunds and placed into either the Income Tax Reserve Fund or the

9  Income Tax Refund Efficient Payment Trust Fund. Settlement Agreement § V. And in order to

10  assure the class that such funds are being set aside, the Guam Department of Administration

11  ("DOA") will provide monthly reports. *Id.,* § V(b)(ii).

12  By providing funding mechanisms for each expenditure under the Settlement Agreement,

13  the Agreement addresses concerns regarding the Illegal Expenditure Act (5 G.C.A. § 22401) that

14  had caused, in part, opposition to the previous settlement agreement of June 14, 2004 (*see id.,* §

15  V(c)). However, the Settlement Agreement also provides the flexibility for the Governor to

16  utilize other funding sources to satisfy the Government's obligations under the Settlement

17  Agreement, as permitted by law. *Id.,* § V(d). Notably, the Agreement leaves the Respondents free

18  to pursue federal reimbursement of the EIC, while providing the class with a final resolution and

19  payment of their claims now (*see* Settlement Agreement § X(e)).

20  **6.** **Claims Administration.** Section 6 of the Settlement Agreement deals

21  with the administration of EIC claims. Despite creating a class action, the Settlement Agreement

22  avoids imposing an undue burden on the Court or the Government by utilizing the existing

23  structures to process tax claims (*see* Settlement Agreement § VI(a)). The Settlement Agreement

24  uses the EIC claim forms created pursuant to Executive Order 2005-001 and otherwise tracks

25  Executive Order 2005-001 in terms of claims procedures (*see* Settlement Agreement § VI(b))—

26  the same forms and procedures that recently were upheld by the District Court of Guam in the

27  Order dated June 16, 2005 in *Simpao, et al. vs. Govt. of Guam,* Dist. of Guam Case No. CV04-

28  00049.

1        **7.**    **Setting of Court Dates and Issuance of Class Notice.** Because this is a

2 class action settlement, the execution of the Settlement Agreement requires that the Court

3 establish a number of Court dates and timetables. These are as follows:

- The date by which the "Class Notice Period" defined in Section III(d) of the Settlement Agreement will be completed.

- The "Opt-Out Date" under Section II(b)(i) of the Settlement Agreement.

- The date by which any motions for intervention are to be filed and served under Section II(c)(i) of the Settlement Agreement.

- The date by which the parties to the Settlement Agreement shall file a joint motion for an Order of Approval and Final Judgment, and a proposed form of judgment, under Section II(c)(ii) of the Settlement Agreement.

- The date by which the motion for final certification of the class under Section II(c)(iii) of the Settlement Agreement shall be filed.

- The date by which any objection or comment on the Settlement Agreement must be filed and served, and the date by which any responses shall be filed, under Section III(c)(vi) of the Settlement Agreement.

- The dates for any additional filings, oppositions, or replies regarding attorneys' fees and costs under Section II(c)(iv)-(vi) of the Settlement Agreement.

- The date for the "Fairness Hearing" as that term is defined in Section II(c)(i) of the Settlement Agreement.

21       Once these dates are set, the Moving Parties will amend the draft form of class notice,

22 which is an exhibit to the Settlement Agreement. Along with inserting the dates into the class

23 notice, the Parties also will insert a brief description of Class Counsel's motion for attorneys' fees

24 and costs. They will then submit the draft notice for the Court's approval so that the Court can

25 authorize and order the publication and mailing of this notice pursuant to Section III of the

26 Settlement Agreement. The parties also request that the Court approve the additional notice to be

27 issued upon payment of the $10 million for 1998 claims, and payments for remaining 1997

28 claims. Settlement Agreement §§ V(e)(i)(4), -(ii)(3), and Exh. "D."

1    The proposed method of notice complies with Fed. R. Civ. P. 23 and the requirements of

2    due process. *See* Fed. R. Civ. P. 23; ; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th

3    Cir. 1993), *cert. denied sub nom Reilley v. Tucson Elec. Power Co.*, 512 U.S. 1220 (1994). Under

4    the Settlement Agreement, in order to "achieve the best notice that is reasonably practicable, the

5    Parties have determined to engage in both individual notice and notice by publication to the EIC

6    Class." Settlement Agreement § II(a). Notice by publication shall include publication in a full-

7    newspaper advertisement reprinted twice weekly for not less than four consecutive weeks in both

8    the Pacific Daily News and the Marianas Variety. *Id.* § II(b). Individual notice shall be given by

9    mail. The taxpayers who will receive such notice will be ascertained based on records compiled

10   by the Guam Department of Revenue and Taxation in compliance with the extensive procedures

11   provided for by the Settlement Agreement. Settlement Agreement §§ II(c)(i)-(vi).

12       **B.    The Standards for Preliminary Approval**

13       Preliminary approval of a class action settlement agreement does not require the Court to

14   make a final determination that the settlement is fair, reasonable, and adequate. Rather, that

15   decision is made only at the final approval stage, after notice of the settlement has been given to

16   the class members and they have had an opportunity to express their views of the settlement or to

17   exclude themselves from the settlement. *See 5 James Wm. Moore, Moore's Fed. Practice*

18   § 23.83[1] (3d ed. 2001).

19       Thus, when a Court views a settlement for preliminary approval, it determines whether

20   there is a likelihood it could approve the settlement before conducting a full fairness hearing.

21   William W. Schwarzer *et al., Cal. Practice Guide: Fed. Civ. Proc. Before Trial* § 10:818. In

22   presenting the settlement for preliminary approval, the settling parties will usually submit briefs

23   and supporting documents to the court along with the proposed settlement, arguing that the

24   proposal is fair and should be tentatively approved. *Id.,* § 10:819. The court will examine the

25   submitted material and determine whether the proposed settlement seems fair on its face and

26   worth submitting to class members. *Id.,* § 10-821. Preliminary approval should be granted if the

27   settlement reveals no obvious deficiencies or grounds to doubt its fairness and appears to fall

28   within the range of possible approval. *See Manual for Complex Litig.* § 30.41 (3d ed. 1995).

1     Here the terms of the Settlement Agreement satisfy the standards for preliminary

2     approval. There are no obvious deficiencies with the agreement and no grounds to doubt its

3     fairness; the agreement falls within the range of possible approval.

4         **C.    Settlement of Class Actions is Favored**

5         As a matter of public policy, settlement of litigation is highly favored in the law. *See Util.*

6     *Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). The principle

7     applies with particular force where, as here, settlement involves class action lawsuits. *See*

8     *Officers for Justice v. Civil Serv. Comm'n*, 688 F2d 615, 625 (9th Cir. 1982), *cert. denied sub nom*

9     *Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d

10    943, 950 (9th Cir. 1976); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo.

11    1997). In this instance, settlement would resolve not one, but two of the class action cases

12    involving the EIC, without the necessity, time, and expense of further protracted litigation.

13        **D.    The Settlement Agreement Resulted from Arm's-Length Negotiations**

14        There is an initial presumption that a proposed settlement agreement is fair and reasonable

15    when it is the result of arm's-length negotiations. *See Williams v. Vukovich*, 720 F.2d 909, 922-

16    923 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has

17    completely evaluated the strength of his proofs"); *In re Inter-Op Hip Prothesis Liabl. Litig.*, 204

18    F.R.D. 330, 351 (N.D. Ohio 2001) ("when a settlement is the result of extensive negotiations by

19    experienced counsel, the Court should presume it is fair").

20        Here, the proposed settlement is the product of arm's-length negotiations. The origin of

21    negotiations for some of the core terms of the agreement began in 2005 in connection with

22    settlement of the *Santos* action during that period. After the Court consolidated the actions,

23    including the *Torres* action, the parties engaged in extensive mediation in April 2006 in Guam

24    before an experienced JAMS mediator, the Hon. William J. Cahill, a retired jurist. The 2006

25    mediation resulted in an agreement that expanded the EIC class definition, incorporated

26    settlement of an additional case (the *Torres* action), and resulted in enhanced EIC benefits for the

27    expanded class including ultimate payment of all remaining EIC claims for tax year 1997, and

28

immediate payment (upon preliminary approval) of millions of dollars for a portion of 1998 and 1997 EIC claims.

**E.    The Settlement Agreement Is Fair, Reasonable, and Adequate, and Falls Within the Range Justifying Preliminary Approval**

Under the Settlement Agreement, the Respondents have agreed to make available a substantial sum of money ($90+ million) to compensate eligible Guam taxpayers for EIC claims from 1995-2004.  Furthermore, EIC claims beginning with tax year 2005 will be paid henceforth on the same terms as they would be normally processed and paid, so that the risk of subsequent litigation regarding future EIC claims is significantly mitigated or altogether eliminated.   Given the present financial condition and substantial obligations of the Government of Guam, the amounts to be paid under the Settlement Agreement are significant, and represent a fair compromise in light of the risks, costs, and delay associated with the prosecution of complex cases, particularly cases against a government entity.  Even if the cases were to proceed to litigation and a judgment were obtained at trial against the Government and Respondents, the recovery might be of no greater utility to class members, and might be substantially less valuable, than the proposed settlement which establishes an immediate mechanism for processing and payment of claims so that Guam's working poor can begin receiving the financial assistance that the EIC was intended to provide for them.

**F.    The Class Should be Preliminarily Certified for Settlement Purposes**

Parties may present a case for both class certification and preliminary approval of a settlement agreement, where a class has not been previously certified by the court. *Manual for Complex Litig. (4th)* § 21.632.  The Petitioner and Plaintiff in the *Santos* and *Torres* actions will submit a joint motion for conditional certification of EIC settlement class within the time frame provided for under the Section II of the Settlement Agreement.  The prerequisites for a class action under the Federal Rules of Civil Procedure have been satisfied for purposes of settlement.

## IV.    CONCLUSION

For the reasons stated herein and in other forthcoming filings to be made pursuant to the Settlement Agreement, the Moving Parties respectfully request that the Court (1) grant preliminary approval of the Settlement Agreement; (2) set all required Court dates and timetables

under the Settlement Agreement; (3) approve the issuance of the required class notices; (4) conditionally certify the EIC class as defined in the Settlement Agreement for settlement purposes; (4) vacate the June 17, 2004 stipulated Order in the *Santos* action, upon preliminary approval, conditional certification, and approval of the issuance class notice; and (5) grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 26th day of May, 2006.

**OFFICE OF THE GOVERNOR OF GUAM**
**CALVO & CLARK, LLP**
Attorneys for Respondent Felix P. Camacho,
Governor of Guam

**PHILLIPS & BORDALLO, P.C.**
Interim Class Counsel & Attorneys for
Petitioner Julie Babauta Santos

By:_____
      **RODNEY J. JACOB**

By:_____
      **MICHAEL F. PHILLIPS**

**CABOT MANTANONA LLP**
Attorneys for Respondents Lourdes M. Perez
and Artemio R. Ilagan

**LUJAN AGUIGUI & PEREZ LLP**
Attorneys for Plaintiff Charmaine R. Torres

By:_____
      **RAWLEN M.T. MANTANONA**

By:_____
      **IGNACIO C. AGUIGUI**

# EXHIBIT "C"

JULIE BABAUTA SANTOS and CHARMAINE R.
TORRES, on behalf of themselves and a class of others
similarly situated,

Petitioners,

v.

FELIX P. CAMACHO, etc., et. al.

Respondents.

CIVIL CASE NO. 04-00006 and 04-00038

**NOTICE OF PENDENCY AND PROPOSED
SETTLEMENT OF CLASS ACTION**

TO:     **ALL PERSONS WHO CLAIMED OR COULD HAVE CLAIMED AN EARNED INCOME TAX CREDIT
UNDER THE GUAM TERRITORIAL INCOME TAX OR GUAM TERRITORIAL LAW FOR TAX YEARS 1995, 1996,
1999, 2000, 2001, 2002, 2003, OR 2004; AND
ALL PERSONS WHO FILED AN EARNED INCOME TAX CREDIT CLAIM UNDER THE GUAM EARNED
INCOME PROGRAM OR THE GUAM TERRITORIAL INCOME TAX FOR TAX YEAR 1997 AND HAVE YET TO
RECEIVE PAYMENT IN FULL FOR TAX YEAR 1997; AND
ALL PERSONS WHO FILED AN EARNED INCOME TAX CREDIT CLAIM UNDER THE GUAM EARNED
INCOME PROGRAM OR THE GUAM TERRITORIAL INCOME TAX FOR TAX YEAR 1998 AND HAVE YET TO
RECEIVE PAYMENT IN FULL FOR TAX YEAR 1998.**

The above-captioned proceeding (the "Litigation") is pending before the District Court of Guam (the "Court"). In the Litigation, Julie B. Santos and Charmaine R. Torres (the "Plaintiffs") claim that they and other Guam taxpayers have been denied the right to file claims for earned income tax credit (the "EIC"), and have been denied the right to receive a refund of the EIC. The tax years covered by the Litigation are 1995 to 2004. The Respondents in the Litigation are the Government of Guam (the "Government"), Governor Felix P. Camacho, Director of Administration Lourdes M. Perez, and Director of Revenue & Taxation Artemio B. Ilagan (collectively "Respondents"). They have filed pleadings denying the claims and asserting various affirmative defenses.

The Court has conditionally ruled that the Litigation may be maintained on behalf of the following Class:

All persons who do not elect to request exclusion from the class under the procedures described below and: (1) were subject to the Guam Territorial Income Tax ("GTIT") established in 48 U.S.C. § 1421i for tax years 1995-1996 and/or 1999-2004 and would have been eligible to file (whether or not they actually filed) for the EIC established in 26 U.S.C. § 32 (as it applied in each respective tax year) if that program were applied in the Territory of Guam; and/or (2) were eligible to receive an EIC credit under certain Guam territorial laws for tax years 1995-1996 and/or 1999-2004 that mirrored the federal EIC law (26 U.S.C. § 32), including the Guam Earned Income Program (Chapter 42 of 11 G.C.A.); and/or (3) actually filed a claim for the EIC with DRT for tax year 1998 under the GTIT or Guam Earned Income Program (Chapter 42 of 11 G.C.A.) on or before April 15, 2002, and have not yet received full payment for that claim; and/or (4) actually filed a claim for the EIC with DRT for tax year 1997 under the GTIT or Guam Earned Income Program (Chapter 42 of 11 G.C.A.) on or before April 16, 2001 and have not yet received full payment for that claim.

This definition of persons who fall within or are excluded from the Class is referred to in this Notice as the "Class Definition."

## I. PURPOSE OF THIS NOTICE

The purpose of this notice is to inform you, as a potential member of the Class, of (a) the existence of the Litigation; (b) the proposed Class Action Settlement of the Litigation, described below; and (c) your rights with respect to the proposed Settlement. Those rights include the right to be excluded from the Class and the Settlement. If you are a Class Member and do not request exclusion in compliance with the procedures and deadline stated below, you will remain in the Class and be bound by the Settlement terms.

Plaintiffs' Counsel has investigated and evaluated the claims asserted in the Litigation and has determined that the proposed Settlement is fair, reasonable, and adequate for the Class as a whole, in light of the benefits of the Settlement and the disadvantages of continuing the Litigation. The proposed Settlement is a compromise of disputed claims and does not mean that Respondents admit liability.

## II. SETTLEMENT BENEFITS FOR CLASS MEMBERS

If the Court approves the Settlement, Respondents will make payments totaling up to $90 million for tax years 1995-96 and 1998-2004 to the Class Members to resolve their EIC claims. Tax year 1997 will be paid separately as stated below. Class Members will not receive interest on their EIC claims (except as to tax year 1997) and are waiving any right to interest on their EIC claims (except as to tax year 1997). The payment will be divided among Class Members as follows:

**A.      Tax Year 1997:** The Government will pay the EIC Class 100% of any remaining amount owed for tax year 1997, together with any interest, on the same terms as it has paid previous tax year 1997 claims.

**B.      Tax Year 1998:** The Government will pay the EIC Class not more than $15 million for their EIC claims for tax year 1998. This amount shall be divided proportionally among each claimant found eligible for the EIC by the Guam Department of Revenue & Taxation ("DRT") based on the value of his or her claim, up to 100%. Remaining amounts, if any, shall be utilized to fund claims for tax years Tax Years 1995, 1996, 1999, & 2000 as stated below.

**C.      Tax Years 1995, 1996, 1999, & 2000:** The Government will pay the EIC Class not more than $15 million for their EIC claims for tax years 1995, 1996, 1999, and 2000 (combined), together with any remainder from the payment for tax year 1998. This amount shall be divided proportionally among each claimant found eligible for the EIC by DRT based on the value of their claim, up to 100%. Remaining amounts, if any, shall be utilized to fund claims for tax year 2001 as stated below.

**D.      Tax Year 2001:** The Government will pay the EIC Class not more than $15 million for their EIC claims for tax year 2001, together with any remainder from the payment for tax years 1995, 1996, 1999, and 2000 (combined). This amount shall be divided proportionally among each claimant found eligible for the EIC by DRT based on the value of his or her claim, up to 100%. Remaining amounts, if any, shall be utilized to fund claims for tax year 2002 as stated below.

**E.      Tax Year 2002:** The Government will pay the EIC Class not more than $15 million for their EIC claims for tax year 2002, together with any remainder from the payment for tax year 2001. This amount shall be divided proportionally among each claimant found eligible for the EIC by DRT based on the value of his or her claim, up to 100%. Remaining amounts, if any, shall be utilized to fund claims for tax year 2003 as stated below.

**F.      Tax Year 2003:** The Government will pay the EIC Class not more than $15 million for their EIC claims for tax year 2003, together with any remainder from the payment for tax year 2002. This amount shall be divided proportionally among each claimant found eligible for the EIC by DRT based on the value of his or her claim, up to 100%. Remaining amounts, if any, shall be utilized to fund claims for tax year 2004 as stated below.

**G.      Tax Year 2004:** The Government will pay the EIC Class not more than $15 million for their EIC claims for tax year 2004, together with any remainder from the payment for tax year 2003. This amount shall be divided proportionally among each claimant found eligible for the EIC by DRT based on the value of his or her claim, up to 100%. Remaining amounts, if any, shall be utilized to fund tax refunds and the EIC in tax year 2005 and future tax years.

**H.      Payment of EIC Claims in Future Tax Years:** If the Settlement is approved by the Court as described below, the Government has agreed to pay the EIC to all qualifying persons in tax year 2005 and future tax years. Persons do not have to be Class Members to receive this benefit.

## III.      CLAIMS PROCESS & DEADLINES

**A.      Deadlines for Submitting a Claim (Except as to Tax Year 1997 and 1998).** The deadlines for Class Members to submit EIC claims for tax years 1995, 1996, 1999, 2000, and 2001 is _____. The deadline for Class Members to submit EIC Claims for tax years 2002, 2003, and 2004 is _____. No new claims are being accepted for tax years 1997 and 1998.

**B.      Submit a Claim by Filing Form EIC-GU (Except as to Tax Year 1997 and 1998).** To submit a claim as a Class Member, you must submit the Form EIC-GU applicable to *each* year in wish you wish to make a claim. Claims must be filed with DRT or mailed to DRT on or before the deadline for the applicable tax year stated above. Form EIC-GU can be found at DRT and at other locations where Guam tax forms ordinarily are available. It also can be viewed and printed on-line at http://www.GovGuamdocs.com.

**C.      Tax Return Required For Each Year.** If you have not previously submitted a tax return (*e.g.* a Form 1040, 1040A, or 1040EZ) for a tax year in which you wish to make an EIC claim, you <u>must</u> submit a tax return for that year along with submitting a Form EIC-GU to make a claim. If you already submitted a tax return for a tax year, you do not need to file a new tax return. However, you can amend the return, if you wish, anytime within three years of when that return was first due. If more than three years have passed since that return was first due, you will not be able to amend it.

**D.      Persons Who Already Filed Form EIC-GU.** If you already submitted a Form EIC-GU for a tax year covered by the Litigation and the proposed Settlement, you do not need to file a new Form EIC-GU for that year. However, you may file a new Form EIC-GU

within the time otherwise provided to file a claim if you wish to amend your previous filing or to correct an incomplete or defective Form EIC-GU filing. If you have already filed a Form EIC-GU, you will be included within the Class unless you request exclusion under the procedures and deadlines set forth below.

**E.** **Procedures Governing Tax Year 1997.** To be eligible to receive any payment under this Agreement for tax year 1997, Class Members must have filed a claim for the EIC under the GTIT or the Guam Earned Income Program for tax year 1997 on or before April 16, 2001. No new or amended tax returns for tax year 1997 will be accepted. If you already filed a tax year 1997 EIC claim as stated herein, and you have not yet been paid in full for that claim, you will be included within the Class unless you request exclusion under the procedures and deadlines set forth below.

**F.** **Procedures Governing Tax Year 1998.** To be eligible to receive any payment under this Agreement for tax year 1998, Class Members must have filed a claim for the EIC under the GTIT or the Guam Earned Income Program for tax year 1998 on or before April 15, 2002. No new or amended tax returns for tax year 1998 will be accepted. If you already filed a tax year 1998 EIC claim as stated herein, and you have not yet been paid in full for that claim, you will be included within the Class unless you request exclusion under the procedures and deadlines set forth below.

**G.** **Processing of Claims and Governing Laws.** Once submitted, all EIC claims will be processed by the DRT, which shall apply all laws that ordinarily apply to tax refund claims except as otherwise provided in the Settlement. Claims are still subject to an audit, and claims will be denied if found to be invalid under the federal and local laws governing EIC eligibility for each respective tax year. False or inaccurate EIC claims shall remain subject to applicable penalties permitted by federal or territorial law, including reducing or denying an EIC claim or assessing fines or other civil or criminal sanctions. If it is found that you intentionally or recklessly submitted a false claim you can be barred from receiving the EIC in future years beginning with tax year 1997 pursuant to 26 U.S.C. § 32(k), a federal statute that applies to all claims for the EIC beginning January 1, 1997.

**H.** **Application of Offsets.** If a claimant is found eligible for the EIC, Respondents shall retain the right to offset the amount of an EIC claim as provided for GTIT refunds in general by 26 U.S.C. § 6402. If your claim is subject to an offset, you will be notified regarding whom the offset amount has been paid to.

**I.** **Right to Contest Particular Determinations**. With regard to any denial of a particular EIC claim or any assessment of any civil or criminal penalties, you shall maintain the right to challenge such a determination through all administrative and judicial processes afforded under federal or territorial law to a taxpayer as to any tax refund claim.

## IV. WHEN CLAIMS WILL BE PAID

**A.** **Funding (except as to Tax Year 1997).** The Government has agreed to reserve at least fifteen percent (15%) of all amounts it places into the accounts it uses to pay general tax refunds to pay for the $90 million settlement payment. It is not known exactly how fast money will be reserved. But, the Respondents have already commenced reserving money and Respondents will be supplying monthly reports to the Court and Plaintiffs' Counsel regarding how much money has been reserved so that the Court can monitor compliance with the Settlement. Further, Respondents can utilize other funding should they become available to speed payment.

**B.** **Funding (as to Tax Year 1997).** The Government has agreed to pay remaining EIC claims for tax year 1997 (most such claims having already been paid) from a reserved amount of $500,000.00 that is currently in the accounts the Government uses to pay general tax refunds. It has further warranted that this amount has been calculated by DRT to be sufficient to pay all outstanding 1997 claims. In the event that such reserved amount is insufficient to payment all outstanding 1997 claims, the Government shall utilize other funding sources permitted by law to pay all remaining 1997 claims.

**C.** **Order of Payments.** As money is reserved, and only after final approval of the settlement and entry of the judgment by the Court, claims will be paid in the following order: (1) claims for tax years 1997 and 1998 (except as tax year 1997 and 1998 claims have been subject to "early" payment as described below); (2) claims for tax years 1995, 1996, 1999, and 2000 (collectively); (3) claims for tax year 2001; (4) claims for tax year 2002; (5) claims for tax year 2003; and (6) claims for tax year 2004. Within each tax year, claims will be paid in the order submitted to DRT.

**D.** **Timely Processing of Claims.** On or before _____, DRT will have processed all claims for tax years 1997 and 1998. On or before _____, DRT will have processed all claims for tax years 1995, 1996, 1999, 2000, and 2001. On or before _____, DRT will have processed all claims for tax years 2002, 2003, and 2004. After the completion of the periods for processing claims for each respective tax year, DRT will calculate the total amount of claims it has found to be valid for that respective tax year and calculate the percentage of each claim that shall be paid (up to 100%). DRT will then certify the claims and percentage amounts that should be paid pursuant to the provisions of this Agreement. DRT does retain the right to make individual hardship exceptions to the priority of payments based on standard pre-existing DRT policies and procedures. If your claim is denied or selected for an audit, and it is later determined in a judicial or administrative process that your claim was valid and should be paid, you will receive the same proportional payment of the amount found to be validly claimed as is paid to class members for that same tax year.

E.     **"Early" Payment of 1997 and 1998 Claims.** The Court has authorized the Government to pay certain claims prior to final approval of the Settlement on the terms explained below. If you are eligible to receive an "early" payment, you also will receive a separate notice that you should review carefully prior to accepting or depositing the check.

1.     Once all claims for 1997 are processed, the Government shall pay the full value of all 1997 tax year claims by issuing a check payable to each eligible Class Member in the amount owed.

2.     Once all claims for tax year 1998 are processed, the Government shall pay two-thirds of the $15 million for tax year 1998 (in other words, $10 million) to each eligible Class Members who has a valid claim for tax year 1998. The Government shall do this by issuing a check payable to each eligible Class Member that represents 66.6% of that member's proportional share of the $15 million devoted by the Settlement to tax year 1998. This means that if you are eligible to receive a payment for tax year 1998, you will receive 66.6% of your payment under the terms of the Settlement prior to final approval of the Settlement. The remaining 33.4% will only be paid after final approval of the Settlement.

3.     If you receive an "early" payment check and cash or deposit it, you will have released and waived your right to opt-out of this Settlement Agreement *if the Court later grants final approval of the Settlement*. If you cash or deposit such a check, but final approval is denied, you will not be bound by the Settlement. In the event final approval is denied, the payment shall operate as a payment (based solely on the dollar value actually paid) of a claim for tax year 1997 and/or 1998, should you later be found to have a valid claim for that tax year. Such payment now is not, and shall not be construed to be, an admission of liability or obligation to pay any present or future claim, except as stated in the Settlement. If you refuse the payment or fail to deposit a check within sixty days of the date stated on the check, you will retain the right to opt-out of the Settlement prior to final approval based upon the procedures set forth herein. If you refuse a payment or fail to deposit your check within sixty days of the date stated on the check, but you do not opt-out of the Settlement under the procedures set forth herein, you will still be entitled to payment of your tax year 1997 and/or 1998 claim (if any) upon final approval of the Settlement.

## V.     DISMISSAL OF LITIGATION, ENTRY OF JUDGMENT, RELEASE OF CLAIMS, & COVENANT NOT TO SUE

A.     **Final Judgment.** If the Court approves the proposed settlement, it will enter a judgment that will dismiss the Litigation with prejudice as to all Class Members, except those Class Members who request to be excluded. All people who meet the Class Definition and do not validly and timely request exclusion from the Class will be forever barred from prosecuting their own lawsuits to recover the EIC or obtain related relief regarding the EIC from Respondents for tax years 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, and 2004.

B.     **Release of Claims.** Further, upon final approval of the Settlement Agreement, each and every member of the EIC Class will expressly and irrevocably release, waive, settle, and discharge all claims (whether legal or equitable), demands, actions (whether judicial or administrative), suits, and causes of action, including without limitation those asserted in the Litigation, against the Government of Guam, the Governor of Guam, the Director of the Department of Revenue & Taxation, the Department of Revenue & Taxation, the Director of the Department of Administration, the Department of Administration, and their employees, officers, agencies, instrumentalities, independent contractors, representatives, attorneys, and agents, whether in their individual or official capacities, with regard to claims for payment of the EIC under federal or Guam territorial law in tax years 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, and 2004, or any refusal to accept or pay such claims or to implement any government programs with regard to such claims. Such release and discharge includes all such claims whether known, unknown, asserted, unasserted, suspected, or unsuspected. With regard to the release of claims, each and every member of the EIC Class expressly waives their rights under 18 G.C.A. § 82602 or principle of common or civil law that is similar to or analogous to 18 G.C.A. § 82602, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

C.     **Covenant Not to Sue.** Also upon final approval of the Settlement Agreement, the EIC Class separately covenants not to sue the Government of Guam, the Governor of Guam, the Director of Revenue & Taxation, the Department of Revenue & Taxation, the Director of the Department of Administration, the Department of Administration, and their employees, officers, agencies, instrumentalities, independent contractors, representatives, attorneys, and agents, whether in their individual or official capacities, with regard to claims for payment of the EIC under federal or Guam territorial law in tax years 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, and 2004, or any refusal to accept or pay such claims or to implement any government programs with regard to such claims

D.     **Limitations.** The general release and covenant not to sue stated above shall not be construed to preclude any Class Member from challenging through the administrative and/or judicial procedures that govern ordinary tax refund claims a particular determination as to: (1) the existence and/or value of their particular EIC claim(s) for tax years 1995-2004 by DRT, (2) any amount of off-set or other adjustment made to their EIC claims by DRT (including without limitation by way of audit, penalty, intercept program, or off-set). The general release and covenant not to sue stated above exclude any future claims alleging solely a breach of this Settlement Agreement.

## VI.     COSTS, EXPENSES, AND ATTORNEYS' FEES

Respondents have agreed to pay all costs of mailing and publishing this Notice and administering the Settlement. Plaintiffs' Counsel has filed a motion asking that if the Court approves the proposed settlement, the Court _____ [TO BE INSERTED ONCE MOTION IS FILED].

## VII. RIGHTS AND OPTIONS OF CLASS MEMBERS

**A. Remain a Class Member.** If you do not request exclusion from the Class, you will remain a Class Member. On July 17, 2004, the Court appointed counsel for Plaintiff Santos, Attorney Michael Phillips, Esq. of the law firm of Phillips & Bordallo, P.C., 410 West O'Brien Drive, Suite 102, Hagåtña, Guam 96910 as Interim Class Counsel. Plaintiff Torres is represented by Ignacio C. Aguigui, Esq., Lujan Aguigui & Perez LLP, 300 Pacific News Building, Hagåtña, Guam 96910. Subject to the Court's final appointment of Class Counsel, the Plaintiffs and their counsel will represent your interests in connection with the proposed Settlement. If the Court approves the Settlement and the judgment becomes final, you will be entitled to the benefits described in Section II, above. As a Class Member, you will be bound by any judgment or other disposition of the Litigation, even if you do not submit a claim or take advantage of any of the benefits of the Settlement. Furthermore, you and your heirs, executors, administrators, successors, and assigns will be deemed to have agreed to the terms of the release and covenant not to sue described in Section V above.

**B. Objections to or Comments on the Settlement.** As a Class Member, you have the right to object to or comment on the proposed Settlement or the motion for attorneys' fees and costs. The procedures for doing so are explained in Section VIII(B) below.

**C. Request Exclusion.** You have the right to request exclusion from the Class. If you request exclusion from the Class, you will not be bound by any judgment or settlement of the Litigation, you will not receive the benefits of the Settlement, and you will not be able to object to or comment in support of the Settlement. If you wish to be excluded from the Class, you must submit a signed, written statement requesting exclusion that either: (1) is filed with the Office of the Clerk of Court, District Court of Guam, 520 West Soledad Avenue, Hagåtña, GU 96910 on or before _____, 2006 at 3 p.m.; or (2) is sent by first class mail to the Office of the Clerk of Court, District Court of Guam, 520 West Soledad Avenue, Hagåtña, GU 96910 bearing a postmark of _____, 2006 or earlier. Any person requesting exclusion from the class and the Settlement Agreement must request exclusion from the class and the settlement in their entirety, and not just as to particular claim(s) for particular tax year(s). If you submit a request for exclusion that does not comply with these requirements, your request will be deemed invalid, and you will not be excluded from the Class.

**D. Retain Your Own Attorney and Seek Intervention.** You have the right to consult and/or retain an attorney of your choice, at your own expense, to advise you regarding the Settlement and your rights in connection with the Settlement. You also have the right, either personally or through an attorney retained by you, at your own expense, to seek to intervene in the Litigation. Any such motion must be filed no later than _____.

## VIII. FAIRNESS HEARING

**A. Time, Place, and Purpose of Hearing.** A Fairness Hearing will be held on _____, _____ __, at ____, before the District Court of Guam, 520 West Soledad Avenue, Hagåtña, GU 96910, to determine: (1) Whether the proposed settlement of the Litigation on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate for the Class as a whole and should be granted final approval; (2) Whether the certification of the Class should be made final; (3) Whether the Court should enter the proposed judgment dismissing the Litigation with prejudice; and (4) Whether the Court should grant the application of Plaintiffs' Counsel for attorneys' fees and reimbursement of expenses, and, if so, in what amount.

**B. Procedures for Objecting to or Commenting in Support of Settlement**

**1. Written Objections or Comments.** If you have not requested exclusion from the Class, you, or an attorney retained by you, may file with the Office of the Clerk of Court, District Court of Guam, 520 West Soledad Avenue, Hagåtña, GU 96910 a statement objecting to or commenting on the settlement and/or the motion for attorneys' fees on or before _____, 2005. Such statement must also be served upon all counsel in the litigation, who are: (1) Phillips & Bordallo, P.C., 410 West O'Brien Drive, Suite 102, Hagåtña, Guam 96910; (2) Lujan Aguigui & Perez LLP, 300 Pacific News Building, Hagåtña, Guam 96910; (3) Shannon Taitano, Esq., Legal Counsel, Office of the Governor, Ricardo J. Bordallo Governor's Complex, Adelup, P.O. Box 2950, Hagåtña, GU 96932 (4) Calvo & Clark, LLP, 655 South Marine Corps Drive, Suite 202, Tamuning, Guam 96913; and (5) Mantanona Law Office, Suite 601B, GCIC Bldg., 414 W Soledad Ave., Hagåtña, Guam 96910.

**2. Presentation of Objections and Supporting Comments at Fairness Hearing.** You may also attend the Fairness Hearing, either personally or through an attorney retained by you, at your own expense, and ask to be heard by the Court on your comments or objections. If you wish to do so, you must submit your objections or comments in writing in compliance with section VIII(B)(1) above **and** include in your comments a statement that you intend to appear and wish to attend the Fairness Hearing.

## IX. ADDITIONAL INFORMATION

**A.** **Rescission of Previous Settlement.** Previously, Respondents had entered into a $60 million settlement agreement dated June 14, 2004 with Plaintiff Santos and published a notice regarding this settlement, which had received preliminary, but not final, Court approval. This settlement would have covered some, but not all, of the Members of the Class identified herein. As part of the new settlement, Plaintiff Santos and her counsel and Respondents have agreed to rescind the previous settlement, which is no longer in effect. It is possible that Class Members under the new settlement will receive more, less, or be unaffected by the new settlement. If Respondents have failed to reserve a least $15 million for the payment of claims under the Settlement Agreement described in this Notice by the time the Agreement is subject to the Fairness Hearing, Plaintiffs have the right to terminate the Settlement Agreement, which then shall be void and of no effect, and the June 14, 2004 Settlement shall be returned to effect, subject to all previously pending motions.

**B.** **Notice of Related Pending Litigation.** There is one other case pending in the District Court of Guam that seeks to establish a class action regarding classes of persons similar to, and overlapping with, the Class identified herein. It is entitled *Simpao, et al. vs. Govt. of Guam*, Dist. of Guam Civ. Case No. CV04-00049 (the "Other Litigation"). No class has yet been certified in the Other Litigation and the defendants in those cases oppose class certification. However, it is possible that if a Class Member requests exclusion from this Class, they could later be able to become part of the Other Litigation either by moving to join that Other Litigation or by becoming class members, should that case be certified as a class action. It is not known what the final outcome of the Other Litigation will be. In *Simpao*, the Court has held that the EIC applies to Guam and that filing a tax return establishes jurisdiction over those plaintiffs' claims. It is possible that by moving to join or by becoming part of a class in that case (if a motion for joinder or class certification were granted), a potential Class Member would ultimately receive less, more, or the same relief as they would receive by remaining a Class Member in this Litigation, or would possibly receive no relief at all. Class Members who do not request exclusion under the procedures set forth in Section VII(C) above will be barred forever from being part of the Other Litigation either as class members or by moving to join that case.

**C.** **Effect of Court Disapproval.** If the Court refuses to grant final class certification or final approval of the Settlement Agreement after the Fairness Hearing, or refuses to enter the final judgment, the Settlement shall be rendered void and of no effect and any class certification shall be vacated.

**D.** **Questions.** Any questions regarding the Settlement should be directed to Plaintiffs' counsel, Phillips & Bordallo, P.C., 410 West O'Brien Drive, Suite 102, Hagåtña, Guam 96910, or Lujan Aguigui & Perez LLP, 300 Pacific News Building, Hagåtña, Guam 96910 You also can contact Plaintiffs' Counsel by email at mphillips@phillipsbordallo.com or ica@lujanaguiguiperez.com. Please do not submit questions to the Court. Copies of the Settlement Agreement and the pleadings and other documents filed in the Litigation and the Other Litigation are on file at the District Court of Guam, and may be examined and copied during regular office hours at the Office of the Clerk of Court, District Court of Guam, 520 West Soledad Avenue, Hagåtña, GU 96910.

## X.    DEADLINES

**Remember:**

- **If you wish to be excluded from the class, you must submit a written statement requesting exclusion that either (1) is filed with the Office of the Clerk of Court, District Court of Guam, 520 West Soledad Avenue, Hagåtña, GU 96910, on or before _____ at 3:00 p.m.; or (2) is mailed by first class mail postmarked on or before to: Office of the Clerk of Court, District Court of Guam, 520 West Soledad Avenue, Hagåtña, GU 96910.**
- **If you wish to submit objections or comments, you must submit file them Clerk of Court at the address listed above and serve them on all counsel listed in section VII*(B)(1) above on or before _____.**
- **If you wish to intervene, you must file and serve a motion on or before _____.**
- **The deadline for filing or mailing by first class mail claims for the EIC under the Settlement to DRT for tax years 1995, 1996, 1999, 2000, 2001, 2002, 2003, and 2004 is _____.**

Dated: _____ ___, 2006                    **BY ORDER OF THE**
                                                     **DISTRICT COURT OF GUAM**

# EXHIBIT "D"

# IMPORTANT NOTICE

# READ *BEFORE* CASHING OR DEPOSITING ACCOMPANYING CHECK

Records at the Guam Department of Revenue and Taxation indicate that you filed a claim for the earned income tax credit for tax year 1997 and/or tax year 1998 that has yet to be paid. You are receiving the accompanying check because the Government of Guam has agreed to settle all claims for the earned income tax credit for tax years 1995-2004. That settlement is contingent upon final approval by the Guam District Court. But, the Government has agreed as part of that settlement to make an "early" payment for tax years 1997 and 1998 prior to final Court approval of the Settlement. This check is a payment for tax year 1997 or 1998 under the terms of that Settlement.

**BY CASHING OR DEPOSITING THE ACCOMPANYING CHECK, YOU WILL BE AGREEING TO BE PERMANENTLY BOUND BY THE TERMS OF THAT SETTLEMENT IF IT RECEIVES FINAL COURT APPROVAL.** This applies to *all tax years* covered by the Settlement, which are tax years 1995-2004. The complete terms of that settlement are explained in the accompanying "Notice of Pendency and Proposed Settlement of Class Action." Please read that "Notice" carefully.

If you cash or deposit your check, but final approval of the settlement is denied, you will not be bound by the Settlement. In the event final approval is denied, the payment accepted shall operate as a payment (based solely on the dollar value actually paid) of a claim for tax year 1997 and/or 1998, should you later be found to have a valid claim for that tax year.

Any payment now is not, and shall not be construed to be, an admission of liability or obligation to pay any present or future claim, except as stated in the Settlement. If you refuse the payment or fail to deposit the accompanying check within sixty days of the date stated on the check, you will retain the right to opt-out of the Settlement prior to final approval based upon the procedures set forth in the accompanying "Notice." If you refuse a payment or fail to deposit your check within sixty days of the date stated on the check, but you do not opt-out of the Settlement under the procedures set forth in the accompanying "Notice," you will still be entitled to payment under the terms of the Settlement upon final approval of the Settlement.