1    [Appearing Counsel on next page]

2
                                        **FILED**
3
                                        DISTRICT COURT OF GUAM
4                                       MAY 31 2006
5         **DISTRICT COURT OF GUAM**    **MARY L.M. MORAN**
6                                       **CLERK OF COURT**
          **TERRITORY OF GUAM**
7

8    JULIE BABAUTA SANTOS, *et. al.,*          Civil Case No. 04-00006

9                        Petitioners,         **AMENDED DECLARATION OF
                                              DANIEL M. BENJAMIN IN SUPPORT
10            -v-                              OF JOINT MOTION OF THE *SANTOS*
                                              AND *TORRES* PARTIES FOR
11   FELIX P. CAMACHO, *et. al.*              PRELIMINARY APPROVAL OF
                                              CLASS ACTION SETTLEMENT
12                       Respondents.         AGREEMENT**

13                                            **[ORAL ARGUMENT REQUESTED]**

14   CHARMAINE R. TORRES, *et al.,*           Civil Case No. 04-00038

15                       Plaintiffs,
16            -v-
17   GOVERNMENT OF GUAM, *et al.,*
18                       Defendants.
19

20   MARY GRACE SIMPAO, *et al.,*             Civil Case No. 04-00049

21                       Plaintiffs,
22            -v-
23   GOVERNMENT OF GUAM,
24                       Defendant.
25            -v-
26   FELIX P. CAMACHO, Governor of Guam,
27                       Intervenor-Defendant.
28

*CIVIL CASE NOS. 04-00006, 04-00038, AND 04-00049*

**ORIGINAL**

SHANNON TAITANO, ESQ.
**OFFICE OF THE GOVERNOR OF GUAM**
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
Telephone:     (671) 472-8931
Facsimile:      (671) 477-4826

**EDUARDO A. CALVO, ESQ.**
**RODNEY J. JACOB, ESQ.**
**DANIEL M. BENJAMIN, ESQ.**
**CALVO & CLARK, LLP**
Attorneys at Law
655 South Marine Drive, Suite 202
Tamuning, Guam 96913
Telephone:     (671) 646-9355
Facsimile:      (671) 646-9403
Attorneys for *Felix P. Camacho, Governor of Guam*

**RAWLEN M.T. MANTANONA**
**CABOT MANTANONA LLP**
BankPacific Buiding, 2nd Floor
825 S. Marine Corps Drive
Telephone:     (671) 646-2001
Facsimile:      (671) 646-0777
Attorneys for Respondents *Lourdes M. Perez and Artemio R. Ilagan*

**MICHAEL F. PHILLIPS**
**PHILLIPS & BORDALLO, P.C.**
410 West O'Brien Drive
Hagåtña, Guam 96910
Telephone:     (671) 477-2223
Facsimile:      (671) 477-2329
Interim Class Counsel and Attorneys for Petitioner *Julie Babauta Santos*

**IGNACIO C. AGUIGUI**
**PETER C. PEREZ**
**LUJAN AGUIGUI & PEREZ LLP**
300 Pacific News Building
Hagåtña, Guam 96910
Telephone:     (671) 477-8064
Facsimile:      (671) 477-5297
Attorneys for Plaintiff *Charmaine R. Torres*

1

I, DANIEL M. BENJAMIN, declare that:

1.     I am an associate with the law firm of Calvo & Clark, LLP, counsel of record for Respondent, Felix P. Camacho, Governor of Guam in this action. I make this declaration on personal knowledge, and if called to testify I could and would testify competently thereto.

2.     Attached as Exhibit "1" is a true and correct copy of a Settlement Agreement entered into as of May 26, 2006 in the above-captioned *Santos* and *Torres* actions. Due to logistical issues, Petitioner Santos executed the Settlement Agreement on May 27, 2006.

I declare under penalty of perjury pursuant to the laws of the United States and of the Territory of Guam that the foregoing declaration is true and correct.

Executed this 31st day of May, 2006, in Tamuning, Guam.

_____
DANIEL M. BENJAMIN

2

# EXHIBIT 1

# SETTLEMENT AGREEMENT

**WHEREAS** Petitioner Julie B. Santos, on her own behalf and on behalf of an alleged class of similarly situated persons, filed a petition in the case of *Santos v. Camacho, et al.*, District Court of Guam CV04-00006 (the "Santos Petition"), against Respondents Governor of Guam Felix P. Camacho (the "Governor"), Director of Administration Lourdes M. Perez, Director of Revenue & Taxation Artemio B. Ilagan, and the Government of Guam (the "Government") (collectively "Respondents"), the parties to which proceeding are sometimes referred to herein as the "Santos Petition Parties"; and

**WHEREAS** the Santos Petition concerned the alleged failure of the Respondents to accept or pay claims for the earned income credit ("EIC") under federal and territorial law and sought both tax refunds and mandamus relief, and, as later amended included tax years 1995-1996 and 1998-2004; and

**WHEREAS** in their opposition to the Santos Petition, Respondents denied liability for the EIC and asserted numerous defenses including failure to exhaust and the statute of limitations; and

**WHEREAS** Plaintiff Charmaine Torres, on her own behalf and on behalf of an alleged class of similarly situated persons, filed a petition in the case of *Torres v. Camacho, et al.*, District Court of Guam CV04-00038 (the "Torres Petition"), against Respondents, the parties to which proceeding are sometimes referred to herein as the "Torres Petition Parties"; and

**WHEREAS** the Torres Petition also concerned the alleged failure of the Respondents to accept or pay claims for the EIC under federal and territorial law and sought both tax refunds and injunctive and declaratory relief, and, as later amended included tax years 1995-2004; and

**WHEREAS** 48 U.S.C. § 1421i(c) provides that "[t]he administration and enforcement of the Guam Territorial Income Tax shall be performed by or under the supervision of the Governor," and 48 U.S. C. § 1421i(d)(2) provides that the Governor of Guam or his delegate has "the same administrative and enforcement powers and remedies with regard to the Guam Territorial Income Tax as the Secretary of the Treasury, and other United States officials of the executive branch, have with respect to the United States income tax; and

**WHEREAS** the Governor has delegated the administration and processing of tax claims under the Guam Territorial Income Tax to the Department of Revenue & Taxation ("DRT"); and

**WHEREAS** the Governor has delegated the issuance of tax refund checks under the Guam Territorial Income Tax to the Department of Administration ("DOA"); and

**WHEREAS** on or about June 14, 2004 a previous settlement agreement (the "June 14, 2004 Settlement") was entered as to the Santos Petition, which was granted preliminary approval by the District Court of Guam (the "Court") on June 17, 2004; and

**WHEREAS** on July 6, 2004 Torres sought leave to intervene as a plaintiff/petitioner in the Santos action by filing a Motion for Leave to Intervene as a Plaintiff/Petitioner objecting to the June 14, 2004 Settlement Agreement; and

**WHEREAS** on July 12, 2004 Torres filed a Motion and Memorandum of Points and Authorities to Vacate the August 9, 2004 Objection and Opt-Out Date and to Vacate the September 9, 2004 Hearing date for Final Approval of Settlement Agreement; Request for Expedited Hearing on Motion and Briefing Schedule; and

**WHEREAS** the Court granted Torres' motion to vacate the dates scheduled by the Court for the filing of objections, to opt-out, and the hearing date for final approval of the June 14, 2004 Settlement Agreement; and

**WHEREAS** on July 16, 2004 the Court appointed Santos' counsel, Michael Phillips, Esq., Interim Class Counsel; and

**WHEREAS** after Petitioner moved to adopt an administration plan for the June 14, 2004 Settlement, the Governor objected and moved to vacate the Court's preliminary approval of the June 14, 2004 Settlement and raised challenges to the agreement including whether its payment terms complied with the Illegal Expenditures Act under Guam law; and

**WHEREAS**, on January 12, 2005, the Governor issued Executive Order 2005-001 (the "Executive Order") to permit the filing of EIC claims, which created a means of determining the nature of any potential class of EIC claimants; and

**WHEREAS** under the Executive Order, over 20,000 EIC claims have already been filed with DRT, thus providing substantial information regarding the potential class; and

**WHEREAS**, until all EIC claims have been filed, processed, and audited, it is not possible to determine the total value of such claims; and

**WHEREAS** it is the intent of Respondents to resolve all or substantially all EIC claims for tax years 1995-2004; and

**WHEREAS** on March 10, 2005 the Santos Petition Parties agreed to take the motions to enter the administration plan and to vacate the preliminary approval of the previous settlement off-calendar and to enter mediation before JAMS Mediator Catherine Yanni, Esq.; and

**WHEREAS** the Santos Petition Parties, through their counsels, engaged in extensive face-to-face negotiations with the assistance and active participation of the Mediator, from March 31, 2005 through April 2, 2005; and

**WHEREAS** the Santos Petition Parties continued to engage in subsequent negotiations with the assistance of the Mediator until they agreed to a term sheet; and

**WHEREAS** the Santos Petition Parties then engaged in subsequent negotiations in connection with the drafting of a final Agreement and conducted inquiries into what notice to the class was reasonably practicable; and

**WHEREAS**, the Santos Petition Parties completed their negotiations and reached a settlement that they believed protected the interests of the Government of Guam and fairly resolved the EIC claims of the class identified in the amended Santos Petition, and on that basis entered into a Settlement Agreement on June 20, 2005 (the "June 20, 2005 Settlement"); and

**WHEREAS**, there was then some delay in hearing the motions to approve the June 20, 2005 Settlement and to certify the applicable class due to a dispute between the Attorney General of Guam and the Governor of Guam with regard to who controlled GTIT litigation on behalf of the Government; and

**WHEREAS,** in September 2005, the Magistrate Judge of the District Court recommended that the Court deny a motion to dismiss the Torres Petition, and the Governor then filed objections to this recommendation, which have yet to be resolved by the Court; and

**WHEREAS,** on March 10, 2006, the District Court of Guam held that the Governor controlled all GTIT litigation, and disqualified the Attorney General of Guam from the Santos and Torres Petition cases, as well as one other later filed putative class action concerning the EITC; and

**WHEREAS,** the District Court later consolidated all three putative class actions concerning the EITC for pretrial purposes; and

**WHEREAS,** at the request of the Governor, the Court then ordered the parties to the consolidated cases to enter into a mediation under Local Rule 16, and the parties to these cases subsequently entered into a voluntary mediation starting on April 6, 2006 before a JAMS Mediator, the Honorable William J. Cahill (Ret.); and

**WHEREAS,** Santos and Torres were able to reach an agreement with Respondents; and

**WHEREAS,** pursuant to the agreement that was reached by Santos and Torres, the parties to this undersigned agreement are now entering into an amended version of the June 20, 2005 Agreement on the terms stated below, which agreement shall supersede the June 20, 2005 Agreement.

//

//

//

**NOW THEREFORE** the Parties hereto hereby agree as follows:

I.     **PARTIES TO THIS AGREEMENT**

    **a. IDENTITY OF PARTIES.** The parties to this Agreement are Santos, Torres, and the EIC Class (defined below), on the one hand, and Respondents, on the other hand (collectively, the "Parties").

    **b. DEFINITION OF EIC CLASS.** In this Agreement, the "EIC Class" is defined as including all persons who do not elect to request exclusion from the class under the procedures described below and: (1) were subject to the Guam Territorial Income Tax ("GTIT") established in 48 U.S.C. § 1421i for tax years 1995-1996 and/or 1999-2004 and would have been eligible to file (whether or not they actually filed) for the EIC established in 26 U.S.C. § 32 (as it applied in each respective tax year) if that program were applied in the Territory of Guam; and/or (2) were eligible to receive an EIC credit under certain Guam territorial laws for tax years 1995-1996 and/or 1999-2004 that mirrored the federal EIC law (26 U.S.C. § 32), including the Guam Earned Income Program (Chapter 42 of 11 G.C.A.); and/or (3) actually filed a claim for the EIC with DRT for tax year 1998 under the GTIT or Guam Earned Income Program (Chapter 42 of 11 G.C.A.) on or before April 15, 2002, and have not yet received full payment for that claim; and/or (4) actually filed a claim for the EIC with DRT for tax year 1997 under the GTIT or Guam Earned Income Program (Chapter 42 of 11 G.C.A.) on or before April 16, 2001 and have not yet received full payment for that claim.

//

//

//

## II.   SCHEDULE OF EVENTS

### a. INITIAL SUBMISSIONS, PRELIMINARY APPROVAL, & ISSUANCE OF CLASS NOTICE

i.      Within seven days of executing this Agreement, the parties shall stipulate to the filing of a joint petition by Santos and Torres in the form attached hereto as Exhibit "A," with Santos' counsel, Michael Phillips, proceeding as lead counsel and Torres agreeing thereto.

ii.     Within seven days of executing this Agreement, Torres shall file a motion to dismiss the Attorney General as a party from the *Torres* action and the Parties shall support such motion;

iii.    Within seven days of executing this Agreement, the Parties shall file a joint motion in the form attached hereto as Exhibit "B" for preliminary approval of this Agreement, and Santos and Torres shall file a motion for a conditional ruling that this action may proceed as a class action as to the EIC Class, which Respondents shall support. The parties shall further jointly request an order permitting them to proceed with class notice in the form attached hereto as Exhibit "C" and consistent with the procedures set forth in Section III of this Agreement. As part of this request, the Parties shall request that the Court set the dates for all further events required by this Settlement Agreement consistent with the provisions of this Agreement so that the Parties may include these dates in the notice to the EIC Class.

iv.     So that the class may be advised of the pending motion in the class notice discussed below, counsel for Santos and/or Torres must file any motion(s) for attorneys' fees and costs within seven days of the execution of this Agreement. Attorneys' fees or

costs awarded to the counsel for the EIC Class are to be determined by the Court following such a motion which shall be made under Federal Rules of Civil Procedure 23(h).

v.    Upon preliminary approval by the Court of this Agreement, the conditional ruling that this action may proceed as a class action, and the order permitting the issuance of the class notice, the previous June 14, 2004 Settlement Agreement shall be mutually rescinded and of no further force or effect, and the stipulated Order dated June 17, 2004 granting preliminary approval to that previous settlement shall be vacated.

vi.    The June 20, 2005 Agreement is amended and superseded by this present agreement as of the date of execution of this Agreement by all of the undersigned Parties.

b. **OPPORTUNITY TO OPT-OUT**

i.    Any person wishing to request exclusion from the class and this Settlement shall be required to do so in a signed, written statement that may be mailed by first class mail to the Clerk of Court or filed with the Clerk of Court. Any person who falls within the definition of the EIC Class shall be deemed an EIC Class member unless their written statement either: (1) is filed with the Clerk of Court no later than the sixtieth day (or if the sixtieth day falls on a holiday or weekend, the next day during which the Office of the Clerk of Court is open) after completion of the Class Notice Period defined in Section III below; or (2) is sent by first class mail to the Clerk of Court postmarked no later than the sixtieth day (or if the sixtieth day falls on a holiday or weekend, the next day during which the Office of the Clerk of Court is open) after completion of the Class

Notice Period defined in Section III below. This final date for requesting exclusion shall be known as the "Opt-Out Date."

ii. Any person requesting exclusion from the class and the Settlement Agreement must request exclusion from the class and the settlement in their entirety, and not just as to particular claim(s) for particular tax year(s).

c. **FINAL CLASS CERTIFICATION, FAIRNESS HEARING, ATTORNEYS' FEES, & FINAL COURT APPROVAL**

i. The Parties shall request a combined hearing to be held within sixty days after the Opt-Out Date in which the Court shall: (1) determine whether to grant final class certification; (2) review comments or objections regarding this Settlement Agreement, and consider its fairness, reasonableness, and adequacy under FRCP Rule 23; (3) determine whether to grant any motion(s) for attorneys' fees and costs; and (4) decide whether to grant final Court approval of this Settlement Agreement and enter a final judgment (the "Fairness Hearing"). Any motion to intervene must be filed no later than seven days after the Opt-Out Date.

ii. At least twenty-eight (28) days prior to the date the Court sets for the Fairness Hearing, the Parties shall file a joint motion for an Order of Approval and Final Judgment, and a proposed form of judgment. The Parties shall cooperate in good faith and with best efforts in the joint drafting of these pleadings.

iii. At least twenty-eight (28) days prior to the date the Court sets for the Fairness Hearing, Santos and Torres, and their counsel, shall file a motion for final certification of the EIC Class. Respondents shall support this motion.

**iv.** With the permission of the Court, counsel for Santos or Torres may supplement any attorneys' fees motion with supporting documents no later than twenty-eight (28) days prior to the date the Court sets for the Fairness Hearing. Pursuant to FRCP 23(h)(2), any EIC Class member, or a party from whom payment is sought, may object to the attorneys' fees motion by filing an objection to the motion no later than fourteen (14) days before the Fairness Hearing; any reply shall be due no later than seven (7) days before the Fairness Hearing. The application for attorneys' fees and costs shall be heard by the Court at the Fairness Hearing.

**v.** Any EIC Class member may object to the proposed settlement, or comment in favor of the settlement.

**vi.** Any EIC Class member objecting to the Settlement Agreement, or any EIC Class member or party objecting to attorneys' fees, or their counsel, shall be heard so long as they have filed a written statement of their objection or objections no later than fourteen (14) days before such a hearing. The Parties may file responses thereto no more than seven (7) days before such the Fairness Hearing.

**vii.** Upon granting of final approval of the Settlement Agreement and final class certification after the Fairness Hearing, the Court shall issue a judgment dismissing Petitioner's Complaint with prejudice. Notwithstanding the dismissal, the District Court of Guam shall have continuing and exclusive jurisdiction over this Agreement and any dispute related to this Agreement.

//

//

//

## III.   CLASS NOTICE

**a.** To achieve the best notice that is reasonably practicable, the Parties have determined to engage in both individual notice and notice by publication to the EIC Class.

**b.** Notice by publication shall include the publication of Exhibit "C" in a full-page advertisement reprinted in full twice weekly for not less than four consecutive weeks in the Pacific Daily News and Marianas Variety. Publication in the Pacific Daily News shall include Sunday and any one other day. Publications in the Marianas Variety shall include any two days. Notice by publication shall commence on the first Sunday that occurs at least seven (7) days after the Court orders the publication of the class notice.

**c.** Individual notice shall consist of DRT mailing Exhibit "C" to the last known address of the individuals who may fall within the EIC Class whose identity it is reasonably practicable to identify, and shall be accomplished as follows:

**i.**     DRT shall first assemble a list of all persons who it is reasonably practicable to identify who may belong to the EIC class. The list shall be developed by assembling a list of the names and social security number (or taxpayer identification number) of the following persons:

**1.** As to tax years 1995-1996, and 1999-2003, DRT shall use its computerized records of individual tax returns to identify the name and social security number (or taxpayer identification number) of all persons whose income level falls within the range of persons who may be eligible to receive the EIC under 26 U.S.C. § 32 as it applied in each respective tax year, and whose filing status otherwise indicates they

could be eligible for the EIC under 26 U.S.C. § 32 as it applied in each respective tax year.

**2.** As to tax years 1995-1996 and 1999-2003, DRT shall also determine the name and social security number of all persons who actually filed Form EIC-GU for each respective tax year.

**3.** As to tax year 1997, because all claims that will be accepted under this Settlement Agreement have already been filed, DRT shall use its computerized records to determine the name and social security number (or taxpayer identification number) of all persons who actually filed claims for tax year 1997 for the EIC under the GTIT or under the Guam Earned Income Program (Chapter 42 of Title 11 of the G.C.A.) and whose 1997 tax year claim has not yet been paid in full.

**4.** As to tax year 1998, because all claims that will be accepted under this Settlement Agreement have already been filed, DRT shall use its computerized records to determine the name and social security number (or taxpayer identification number) of all persons who actually filed claims for tax year 1998 for the EIC under the GTIT or under the Guam Earned Income Program (Chapter 42 of Title 11 of the G.C.A.).

**5.** As to tax year 2004, taxpayers were informed on the GTIT tax return forms for 2004 to complete Form 2004 EIC-GU if they wished to claim the EIC. Therefore, DRT shall determine the name and social security number (or taxpayer identification number) of all persons who actually filed Form EIC-GU for tax year 2004.

**6.** By comparing social security numbers (or taxpayer identification numbers), DRT shall then combine the lists developed into one master list.

ii. Once DRT has assembled its master list based on the foregoing provisions, DRT shall match each name and social security number (or taxpayer identification number) identified with the last known address appearing on DRT's computerized records.

iii. Except as otherwise specified herein, the Parties have determined that it is not reasonably practicable for DRT to identify any tax filings not yet entered into DRT's computer system or to use such un-entered filings in its determination of individuals or their last known addresses because this would substantially delay or even prevent DRT's completion of its list.

iv. One copy of Exhibit "C" shall then be mailed to each person so identified at the address so identified. Persons identified as potential class members who have potential claims in multiple tax years shall be mailed only one copy of the notice.

v. DRT shall complete its list of individuals and last known addresses, and shall mail Exhibit "C" by first class mail to each individual at their last known address, no later than 35 days after the Court orders the publication of the Class Notice.

vi. The Parties acknowledge that it is unlawful under federal law and territorial to disclose individual taxpayer information to any third party except for as authorized by law. None of the forgoing provisions regarding individual notice shall be construed to require such unauthorized disclosures, and DRT shall maintain the confidentiality of the master list and all other lists developed under the forgoing provisions.

d. The completion of the notice by publication and the mailing of the individual notice at the times stated herein shall constitute completion of the "Class Notice Period."

## IV. SETTLEMENT AMOUNT

**a. $90 MILLION TOTAL PAYMENT FOR PAST EIC CLAIMS (other than tax year 1997).** On the terms specified below, and as part of the consideration for the agreement herein, and for entry of Final Judgment as provided for in this Settlement Agreement, the Parties agree that the Government shall pay a total of not more than $90 million to the EIC Class for all EIC claims for tax years 1995-1996 and 1998-2004 ("Settlement Amount").

### i. TAX YEAR 1998

**1.** The Government will pay the EIC Class not more than $15 million for EIC claims for tax year 1998, based upon the claims already filed with DRT for tax year 1998.

**2.** This amount shall be divided proportionally among each claimant found eligible by DRT applying the requirements of 26 U.S.C. § 32 (applying the version of the statute that was effective in 1998) based on the value of their claim.

**3.** In the event that DRT determines there are less eligible claims for tax year 1998 than the total amount available to pay such claims under this Agreement, the remainder shall be utilized to fund claims for tax years 1995, 1996, 1999, and 2000 (combined) as stated below.

### ii. TAX YEARS 1995, 1996, 1999, AND 2000

**1.** The Government will pay the EIC Class not more than $15 million for all EIC claims for tax years 1995, 1996, 1999, and 2000 (combined), together with any remainder from the payment of claims for tax year 1998.

**2.** This amount shall be divided proportionally among each claimant found eligible by DRT applying the requirements of 26 U.S.C. § 32 (applying the version of the statute that was effective in each respective tax year) based on the total combined value of their claim or claims for tax years 1995, 1996, 1999, and 2000.

**3.** In the event that DRT determines there are less eligible claims for tax years 1995, 1996, 1999, and 2000 (combined) than the total amount available to pay such claims under this Agreement, the remainder shall be utilized to fund claims for tax year 2001 as stated below.

### iii. TAX YEAR 2001

**1.** The Government will pay the EIC Class not more than $15 million for all EIC claims for tax year 2001, together with any remainder from the payment of claims for tax years 1995, 1996, 1999, and 2000 (combined).

**2.** This amount shall be divided proportionally among each claimant found eligible by DRT applying the requirements of 26 U.S.C. § 32 (applying the version of the statute that was effective in 2001) based on the value of their claim.

**3.** In the event that DRT determines there are less eligible claims for tax year 2001 than the total amount available to pay such claims under this Agreement, the remainder shall be utilized to fund claims for tax year 2002 as stated below.

### iv. TAX YEAR 2002

**1.** The Government will pay the EIC Class not more than $15 million for all EIC claims for tax year 2002, together with any remainder from the payment of claims for tax year 2001.

2. This amount shall be divided proportionally among each claimant found eligible by DRT applying the requirements of 26 U.S.C. § 32 (applying the version of the statute that was effective in 2002) based on the value of their claim.

3. In the event that DRT determines there are less eligible claims for tax year 2002 than the total amount available to pay such claims under this Agreement, the remainder shall be utilized to fund claims for tax year 2003 as stated below.

v.   **TAX YEAR 2003**

1. The Government will pay the EIC Class not more than $15 million for all EIC claims for tax year 2003, together with any remainder from the payment of claims for tax year 2002.

2. This amount shall be divided proportionally among each claimant found eligible by DRT applying the requirements of 26 U.S.C. § 32 (applying the version of the statute that was effective in 2003) based on the value of their claim.

3. In the event that DRT determines there are less eligible claims for tax year 2003 than the total amount available to pay such claims under this Agreement, the remainder shall be utilized to fund claims for tax year 2004 as stated below.

vi.   **TAX YEAR 2004**

1. The Government will pay the EIC Class not more than $15 million for all EIC claims for tax year 2004, together with any remainder from the payment of claims for tax year 2003.

2. This amount shall be divided proportionally among each claimant found eligible by DRT applying the requirements of 26 U.S.C. § 32 (applying the version of the statute that was effective in 2004) based on the value of their claim.

**3.** In the event that DRT determines there are less eligible claims for tax year 2004 than the total amount available to pay such claims under this Agreement, the remainder shall be utilized to fund tax refund claims and the EIC in tax year 2005 and future tax years.

    **b.** **NO INTEREST.** Members of the EIC Class shall not be paid any interest on their claims for tax years 1995-1996 and 1998-2004.

    **c.** **NO USE OF SETTLEMENT AMOUNT FOR UNAUTHORIZED PURPOSES.** Respondents agree that no part of the $90 million paid under this Agreement shall be used for the potential EIC claims of class members who opt out of the EIC Class, or any other income tax refund claims, except as specifically provided in this Settlement Agreement.

    **d.** **EIC IN 1997.** As further consideration for this settlement, the Parties agree that any remaining EIC claims for tax year 1997 that have not been paid in full shall be paid on the same terms as all previous tax year 1997 claims were paid (including any back interest, if applicable) under the applicable federal and local laws and in accordance with the requirements for the EIC established in 26 U.S.C. § 32 for tax year 1997.

    **e.** **EIC IN FUTURE TAX YEARS.** As further consideration for this settlement, the Parties agree that EIC claims for tax year 2005 and all future years shall be accepted and paid the same as other tax refund claims under the applicable federal and local laws and in accordance with the requirements for the EIC established in 26 U.S.C. § 32.

## V. GOVERNMENT FUNDING FOR THE SETTLEMENT AGREEMENT

### a. FUNDING SOURCE FOR THE $90 MILLION.

 i. Using its best efforts and good faith to pay the Settlement Amount, the Government shall devote a minimum of fifteen percent (15%) of each amount set aside or earmarked by the Government or Legislature for income tax refunds <u>and</u> placed into either the Income Tax Refund Reserve Fund (Chapter 50 of Title 11 of the G.C.A.) or the Income Tax Refund Efficient Payment Trust Fund (Chapter 51 of Title 11 of the G.C.A.) to pay the Settlement Amount to the EIC Class for EIC claims pursuant to this Agreement.

 ii. In the event funds are transferred from the Income Tax Refund Efficient Payment Trust Fund to the Income Tax Refund Reserve Fund, or vice-versa, no additional reservation shall be required, because the fifteen percent (15%) is to be reserved the first time any amount is placed into either Fund and not when a transfer occurs between the two Funds.

 iii. If amounts being reserved within the Income Tax Refund Efficient Payment Trust Fund earn interest or investment earnings as provided in Chapter 51 of 11 G.C.A., such interest or investment earnings shall be utilized only for the purposes permitted by law under 11 G.C.A. §§ 51101(a) and 51103.

### b. ASSURANCES TO THE CLASS.

 i. Respondents represent and warrant that all monies used to pay GTIT tax refunds are and will be first placed into the Income Tax Refund Reserve Fund and/or the Income Tax Refund Efficient Payment Trust Fund prior to the issuance of tax refund checks; therefore, tying the payment of the EIC claims under this settlement to a fixed

percentage of the amount placed into those Funds will have the affect of ensuring that EIC claims are paid as money becomes available to pay tax refunds in general.

    **ii.**    After preliminary approval of the Settlement Agreement, to ensure that at least 15% is being set aside for the purposes of fulfilling the Government's obligations herein, DOA shall provide monthly reports on the tenth business day of each month to counsel for Santos and Torres, and to the Court, documenting: (1) the total amount of monies placed into the Income Tax Refund Reserve Fund and Income Tax Refund Efficient Payment Trust Fund in the previous month; (2) the total amount of money paid in tax refunds in the previous month; (3) the total amount of money that has been reserved for EIC payments under this Agreement in the previous month; and (4) the total amount of money paid for EIC claims pursuant to this Settlement Agreement in the previous month. To comply with federal and territorial law requiring the privacy of individual taxpayer's tax returns and related documents, such reports shall not require the disclosure of individual taxpayer information.

    **c. CONCERNS REGARDING THE ILLEGAL EXPENDITURES ACT.** The deposit and maintenance of the amounts necessary to pay the Settlement Amount within the Income Tax Refund Reserve Fund and/or Income Tax Refund Efficient Payment Trust Fund is intended to avoid the Government's concern regarding any potential violation of the Illegal Expenditures Act (5 G.C.A. §22401). It is not intended nor shall it be interpreted for any other purpose.

    **d. ALTERNATIVE FUNDING SOURCES FOR THE $90 MILLION AND FOR PAYMENT OF CLAIMS FOR TAX YEAR 1997.** The Governor may, at his discretion, utilize other funding sources for the $90 million and for payment of EIC claims for tax

year 1997 permitted by law to pay the EIC claims under this Agreement. At the Governor's request, class counsel and/or the Parties shall cooperate in good faith with any efforts by the Governor to obtain additional funding or otherwise speed payment.

**e. FUNDING FOR THE ADMINISTRATION OF CLAIMS.** Because the EIC claims under this Agreement will be administered as tax refund claims, Respondents shall use the funding for the processing of tax returns and refunds already available and shall not be obligated to obtain separate or additional funding for the administration of claims.

**f. FUNDING FOR CLASS NOTICE.** Respondents shall bear the expense of publishing, mailing, advertising, and/or otherwise disseminating the class notice on the terms stated herein, including the identification of potential individual class members, which expenses shall be paid from the following account: Governor's Account 5100A050200GA001.

**g. FUNDING FOR FUTURE TAX YEARS.** EIC claims for tax year 2005 and future tax years shall be funded in compliance with Chapters 50 and 51 of Title 11 of the G.C.A.

**h. FUNDING FOR TAX YEAR 1997.** EIC claims for tax year 1997 shall be paid from a reserved amount of $500,000.00 that is currently in the Income Tax Refund Reserve Fund (Chapter 50 of Title 11 of the G.C.A.) and/or the Income Tax Refund Efficient Payment Trust Fund (Chapter 51 of Title 11 of the G.C.A.) and which amount the government expressly warrants has been calculated by DRT to be sufficient to pay all outstanding 1997 claims. In the event that such reserved amount is insufficient to pay all outstanding 1997 claims, the Governor shall utilize other funding sources

permitted by law to pay all such claims. The Parties shall cooperate in good faith with any efforts by the Governor to obtain additional funding or otherwise speed payment.

**i. FUNDING FOR IMMEDIATE $10 MILLION PAYMENT FOR TAX YEAR 1998.** The immediate $10 million payment for tax year 1998 described in section VI(e)(i) shall be funded from the $10 million that is presently in either the Income Tax Refund Reserve Fund (Chapter 50 of Title 11 of the G.C.A.) or the Income Tax Refund Efficient Payment Trust Fund (Chapter 51 of Title 11 of the G.C.A.).

**VI. ADMINISTRATION OF THE CLAIMS PROCESS**

**a. EIC CLAIMS TO BE ADMINISTERED AS TAX REFUND CLAIMS SUBJECT TO THE CONTINUING JURISDICTION OF THE COURT.** The administration of EIC claims under this Agreement is to be handled by DRT, DOA, and any other appropriate Government agencies pursuant to existing procedures for evaluating claims for tax refunds and issuing tax refund checks under federal and territorial law. Because the Parties have agreed to administer the Settlement Amount in the manner provided herein, no separate administration plan will be required. Where any matter is not otherwise specified herein or not contrary to any provision herein, the law governing tax refund claims under federal and territorial law shall control.

**b. HOW EIC CLASS MEMBERS WILL FILE THEIR CLAIMS FOR TAX YEARS 1995-1996 AND 1998-2004**

**i. PROCEDURES APPLICABLE TO TAX YEARS 1995, 1996, 1999, 2000, 2001, 2002, 2003, 2004.**

1. For tax years 1995, 1996, 1999, 2000, 2001, 2002, 2003, and 2004, EIC Class members must file an EIC claim with DRT or mail a claim to DRT for each tax year in which they wish to make a claim.

2. Claims shall be submitted by submission of Form EIC-GU for each applicable tax year. These are the EIC tax forms employed by DRT, as may be amended from time to time.

3. Forms EIC-GU is and shall be made available at DRT and such other locations as GTIT tax forms are ordinarily made available.

4. If a taxpayer has already filed a Form EIC-GU with DRT, this shall be a claim under this Agreement; provided, however, that such claimants shall have the opportunity to request exclusion from this Settlement Agreement.

5. Those claimants who have filed incomplete or defective claims under Executive Order 2005-001 shall have the option to file a new Form EIC-GU as a substitute.

6. If an EIC Class member has not filed an income tax return for a tax year covered by this Agreement and they wish to submit a Form EIC-GU for that year, they also must file a tax return for that year as a necessary and required part of filing a claim under this Agreement.

7. EIC Class members shall retain the right to amend their tax returns as provided by federal and territorial law, but shall not be required to file an amended tax return for purposes of making a claim for EIC pursuant to this Settlement Agreement. Notwithstanding the acceptance of new tax returns by persons who never previously filed a tax return as stated above, Respondents shall not accept *amended* tax returns

unless filed within the time period required by federal and territorial law (which is three years from the date the original tax return was first due, whether or not it was actually timely filed).

    ii.    **PROCEDURES APPLICABLE TO TAX YEAR 1997**

    **1.** To be eligible to receive any payment under this Agreement for tax year 1997, EIC Class members must have filed a claim for the EIC under the GTIT or the Guam Earned Income Program for tax year 1997 on or before April 16, 2001.

    **2.** No new or amended tax returns for tax year 1997 shall be accepted.

    iii.    **PROCEDURES APPLICABLE TO TAX YEAR 1998**

    **1.** To be eligible to receive any payment under this Agreement for tax year 1998, EIC Class members must have filed a claim for the EIC under the GTIT or the Guam Earned Income Program for tax year 1998 on or before April 15, 2002.

    iv.    No new or amended tax returns for tax year 1998 shall be accepted.

  c. **WHEN MEMBERS OF THE EIC CLASS MUST FILE THEIR CLAIMS**

    i.    Claims for tax years 1995, 1996, 1999, 2000, 2001, 2002, 2003, and 2004 must be either be (1) filed with DRT no later than the sixtieth day (or if the sixtieth day falls on a holiday or weekend, the next day during which DRT is open) after completion of the Class Notice Period defined in Section III above; or (2) mailed to DRT by first class mail that is postmarked no later than the sixtieth day (or if the sixtieth day falls on a holiday or weekend, the next day during which DRT is open) after completion of the Class Notice Period defined in Section III above.

    ii.    No new EIC claims for tax year 1997 or 1998 shall be accepted.

### d. HOW CLAIMS WILL BE PROCESSED

i.      In processing claims, Respondents shall retain the right to audit all EIC claims and to deny any claims found to be invalid under the federal and local laws governing EIC eligibility for each respective tax year.

ii.     If a claimant is found eligible for the EIC, Respondents shall retain the right to offset the amount of an EIC claim as provided for GTIT refunds in general by 26 U.S.C. § 6402.

iii.    Respondents shall retain the right to asses any applicable penalties permitted by federal or territorial law as to any false or inaccurate EIC claims submitted under this Settlement Agreement, including reducing or denying an EIC claim or assessing fines or other civil or criminal sanctions.

iv.     In the event that a claimant shall be determined by Respondents to have engaged in prohibited conduct under 26 U.S.C. § 32(k) as to EIC claims starting with tax year 1997 (the tax year this section took effect), then this shall foreclose any EIC claim in future tax years consistent with the provisions of 26 U.S.C. § 32(k).

v.      With regard to any denial of an EIC claim or any assessment of any civil or criminal penalties, a member of the EIC Class shall maintain the right to challenge such a determination through all administrative and judicial processes afforded under federal or territorial law to a taxpayer as to any tax refund claim.

vi.     Nothing in this Agreement or the claims process shall be construed to prohibit any portion of any EIC claim being made subject to payment of attorneys' fees and costs, if any, if so ordered by the Court.

**e. WHEN EIC CLAIMS FOR TAX YEARS 1995-1996 AND 1998-2004 WILL BE PAID**

**i.** **SPECIAL PROVISIONS REGARDING IMMEDIATE $10 MILLION PAYMENT.** Because of the unanticipated delay in implementation of the June 20, 2005 Settlement Agreement, the Government presently has no less than $10 million set aside to pay EIC claims under that previous Agreement. As further consideration for this Agreement, the Government hereby agrees to release that $10 million to pay a portion of EIC claims for tax year 1998 on the following terms:

**1.** After the completion of the processing of all claims for 1998 *and* preliminary approval of this Agreement (whichever date is later), the Government shall pay $10 million of the $15 million applied by this Agreement to tax year 1998, proportionally divided to represent 66.6% of each 1998 tax year claimant's claim (as that claim has been processed under this Agreement to represent their proportional share of the $15 million total that will be paid for 1998 claims).

**2.** Any person who accepts such payment and deposits the check that issues shall be informed (in a form to be agreed upon by the parties) that acceptance of such payment shall cause them to have released and waived their right to opt-out of this Settlement Agreement *if and only if* the Court later grants final approval of this Agreement. No person accepting such a check shall be bound to this Agreement if final approval is denied. Instead, in the event final approval is denied, the payment accepted shall only operate as a partial

payment (based solely on the dollar value actually paid) of a claim for tax year 1998, should that person later be adjudicated to have a valid claim for that tax year. Such payment now is not, and shall not be construed to be, any admission of liability or obligation to pay any present or future claim, except as stated in this Agreement.

3. Any person who refuses a payment or fails to deposit their check within sixty days of the date stated on the check shall retain the right to opt-out of this Agreement prior to final approval based upon the procedures set forth herein. A person who refuses a payment or fails to deposit their check within sixty days of the date stated on the check, but who does not opt-out of this Agreement under the procedures set forth herein, shall still be entitled to their full proportional share of the $15 million devoted to tax year 1998 upon final approval of this Agreement.

4. Any person receiving a check under this subdivision shall receive the class notice (Exhibit "C") as well as a separate notice as to the consequences of depositing or not depositing the check, which shall be in the form of the notice attached hereto as Exhibit "D."

ii.     **SPECIAL PROVISIONS REGARDING TAX YEAR 1997**. Respondents may pay remaining EIC claims for tax year 1997 upon preliminary approval of this Settlement Agreement. The method and procedures governing such payments shall be as follows:

1. Any person who accepts such payment and deposits the check that issues shall be informed (in a form to be agreed upon by the parties) that acceptance

of such payment shall cause them to have released and waived their right to opt-out of this Settlement Agreement *if and only if* the Court later grants final approval of this Agreement. No person accepting such a check shall be bound to this Agreement if final approval is denied. Instead, in the event final approval is denied, the payment accepted shall only operate as a payment (based solely on the dollar value actually paid) of a claim for tax year 1997, should that person later be adjudicated to have a valid claim for that tax year. Such payment now is not, and shall not be construed to be, any admission of liability or obligation to pay any present or future claim, except as stated in this Agreement.

2. Any person who refuses a payment or fails to deposit their check within sixty days of the date stated on the check shall retain the right to opt-out of this Agreement prior to final approval based upon the procedures set forth herein. A person who refuses a payment or fails to deposit their check within sixty days of the date stated on the check, but who does not opt-out of this Agreement under the procedures set forth herein, shall still be entitled to full payment of their 1997 tax year claim upon final approval of this Agreement.

3. Any person receiving a check under this subdivision shall receive the class notice (Exhibit "C") as well as a separate notice as to the consequences of depositing or not depositing the check, which shall be in the form of the notice attached hereto as Exhibit "D."

**iii. CONDITIONS PRECEDENT FOR ANY PAYMENT.**

**1.** Except as stated in Section VI(e)(i)&(ii) above, no payments of EIC claims for tax years 1995-2004 under this Agreement shall be made prior to final District Court approval of this Settlement Agreement and entry of the final judgment.

**2.** EIC claims for tax years 1995-2004 shall be paid only as the money to pay such claims becomes available under Section V of this Agreement.

**3.** No claims shall be paid for tax years 1995-2004 until the period to make a claim for a particular tax year has expired under the terms of this Agreement.

**iv. ORDER OF PAYMENT OF EACH TAX YEAR.** Tax years covered by this Agreement will be paid in the following order.

**1.** First, all claims for tax years 1997 will be paid pursuant to the terms stated herein.

**2.** Once all claims for tax year 1997 have been paid, all claims for tax years 1998 will be paid pursuant to the terms stated herein (including the initial $10 million payment described above).

**3.** Once all claims for tax year 1998 have been paid, all claims for tax years 1995, 1996, 1999, and 2000 (collectively) will be paid pursuant to the terms stated herein.

**4.** Once all claims for tax year 1995, 1996, 1999, and 2000 have been paid, claims for tax year 2001 will be paid pursuant to the terms stated herein.

**5.** Once all claims for tax year 2001 have been paid, claims for tax year 2002 will be paid pursuant to the terms stated herein.

**6.** Once all claims for tax year 2002 have been paid, claims for tax year 2003 will be paid pursuant to the terms stated herein.

**7.** Once all claims for tax year 2003 have been paid, claims for tax year 2004 will be paid pursuant to the terms stated herein.

**v.** **ORDER OF PAYMENT OF EIC CLASS MEMBERS.** Within each tax year, once all claims have been submitted and the amount due to each EIC Class member has been calculated, claims shall be paid in the order filed with DRT by the members of the class.

**vi.** **TIMELY PROCESSING AND PAYMENT OF CLAIMS.**

**1.** All claims shall be processed by DRT and shall be processed on the terms and within the time stated below:

**A.** No later than sixty days after Preliminary Approval (or if that day falls on a holiday or weekend, the next day during which DRT is open), DRT will have processed all claims for tax year 1997 and 1998, and either: (1) determined if the claimant is eligible for the EIC under 26 U.S.C. § 32 (as it applied in 1997 or 1998, respectively) based upon the information provided by the claimant and the amount they are entitled to receive; or (2) informed the claimant that the claim has been selected for an audit, informed the claimant that additional information is required (including the information sought), or informed the claimant that the claim has been denied (including the ground(s) for denial). With regard to claims selected for audits or requiring additional information, DRT shall use best efforts to complete the processing of all such claims by the date stated above, understanding that it may not be possible for every

single claim to completed in this period given taxpayer's rights to administrative and judicial challenges to a DRT determination as described in this Agreement.

**B.** No later than the one hundred twenty days (or if that day falls on a holiday or weekend, the next day during which DRT is open) after completion of the Class Notice Period defined in Section III above, DRT will have processed all claims for tax years 1995, 1996, 1999, 2000, and 2001 and either: (1) determined if the claimant is eligible for the EIC under 26 U.S.C. § 32 (as it applied in each respective tax year) based upon the information provided by the claimant and the amount they are entitled to receive; or (2) informed the claimant that the claim has been selected for an audit, informed the claimant that additional information is required (including the information sought), or informed the claimant that the claim has been denied (including the ground(s) for denial). With regard to claims selected for audits or requiring additional information, DRT shall use best efforts to complete the processing of all such claims by the date stated above, understanding that it may not be possible for every single claim to completed in this period given taxpayer's rights to administrative and judicial challenges to a DRT determination as described in this Agreement.

**C.** No later than the one hundred eighty days (or if that falls on a holiday or weekend, the next day during which DRT is open) after completion of the Class Notice Period defined in Section III above, DRT will have processed all claims for tax years 2002, 2003, and 2004 and either: (1) determined if the claimant is eligible for the EIC under 26 U.S.C. § 32 (as it applied in each respective tax year) based upon the information provided by the claimant and the amount they are entitled to receive; or (2) informed the claimant that the claim has been selected for an audit, informed the

claimant that additional information is required (including the information sought), or informed the claimant that the claim has been denied (including the ground(s) for denial). With regard to claims selected for audits or requiring additional information, DRT shall use best efforts to complete the processing of all such claims by the date stated above, understanding that it may not be possible for every single claim to completed in this period given taxpayer's rights to administrative and judicial challenges to a DRT determination as described in this Agreement.

2. After the completion of the processing of claims for each respective tax year, DRT shall calculate the total amount of claims it has found to be valid for that respective tax year. DRT shall then:

A. Identify the portion of the Settlement Amount available to pay for claims for each respective tax year or years under the terms of this Agreement.

B. A determination of the exact portion of the Settlement Amount available for tax years other than 1997 and 1998 will require that DRT first complete the processing of claims for tax year 1998. A determination of the exact portion of the Settlement Amount available for each of tax years 2001, 2002, 2003, and 2004 will require that DRT first complete the processing of claims for each of the preceding tax years.

C. Based upon the total amount of claims found valid by DRT for a given year, compared to the portion of the Settlement Amount available to pay claims for that year or those years, DRT shall then determine the percentage of each claim (up to a maximum of 100%) that can be paid from the portion of the Settlement Amount

available to pay for claims for each respective tax year or years under the terms of this Agreement.

**D.** Applying the percentages that applies to each tax year, DRT shall then certify to DOA the claims and percentage amounts that should be paid pursuant to the provisions of this Agreement.

**3.** Upon receipt of DRT's certification, and once sufficient funds exist pursuant to the terms of this Agreement, DOA shall pay claims for the certified amount in the order of claim priority stated in Section VI(e)(ii) and Section VI(e)(iii) of this Agreement.

**4.** With regard to amounts of EIC claims identified as being subject to offsets under Section VI(d) of this Agreement, such amounts shall be certified for payment to the appropriate entity or entities. The claimant shall be notified that the offset amount has been paid to such an entity or entities.

**vii. EXCEPTION FOR HARDSHIP CASES**. Notwithstanding the priority for the payments of EIC claims, the Parties agree that DRT shall retain the right to make individual exceptions to the priority of payments based on standard pre-existing DRT policies and procedures governing the distribution of general income tax refunds.

**viii. PROCEDURE GOVERNING CLAIMS APPROVED AFTER CLAIMS FOR THAT TAX YEAR HAVE BEEN PAID**.

**1.** If a class members' claim for a particular year is denied or selected for an audit, and it is later determined in a judicial or administrative process that the claim was valid and should be paid, that class member shall receive the same proportional

payment of the amount found to be validly claimed as is paid to class members for that same tax year.

**2.** The funding of such a proportional payment shall depend upon whether DRT already completed the procedures set forth in Section VI(e)(iv)(2) of this Agreement:

**A.** If DRT has not completed the procedures set forth in Section VI(e)(iv)(2), then the claim shall be added to the other approved claims for that tax year and be factored into the calculation of the percentage each claimant will receive for that tax year and the certification for payment of such claims by DRT to DOA under Section VI(e)(iv)(2).

**B.** If DRT has completed the procedures set forth in Section VI(e)(iv)(2), DRT shall certify the payment of the claim (at the same proportional rate as applied to all other claims for that tax year) to DOA to be funded directly from amounts reserved in the Funds created by Chapters 50 and 51 of Title 11 of the G.C.A., as such amounts become available.

## VII. RELEASE OF CLAIMS BY THE EIC CLASS

**a. GENERAL RELEASE.** Upon final approval of this Settlement Agreement by the Court, each and every member of the EIC Class expressly and irrevocably releases, waives, settles, and discharges all claims (whether legal or equitable), demands, actions (whether judicial or administrative), suits, and causes of action, including without limitation those asserted in *Santos v. Camacho, et al.*, District Court of Guam CV04-00006 and *Torres v. Government of Guam, et al.*, District Court of Guam CV04-00038, against the Government of Guam, the Governor of Guam, the Director of the

Department of Revenue & Taxation, the Department of Revenue & Taxation, the Director of the Department of Administration, the Department of Administration, and their employees, officers, agencies, instrumentalities, independent contractors, representatives, attorneys, and agents, whether in their individual or official capacities, with regard to claims for payment of the EIC under federal or Guam territorial law in tax years 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, and 2004, or any refusal to accept or pay such claims or to implement any government programs with regard to such claims. Such release and discharge includes all such claims whether known, unknown, asserted, unasserted, suspected, or unsuspected.

b. **COVENANT NOT TO SUE.** Upon final approval of the Settlement Agreement, the EIC Class separately covenants not to sue the Government of Guam, the Governor of Guam, the Director of the Department of Revenue & Taxation, the Department of Revenue & Taxation, the Director of the Department of Administration, the Department of Administration, and their employees, officers, agencies, instrumentalities, independent contractors, representatives, attorneys, and agents, whether in their individual or official capacities, with regard to claims for payment of the EIC under federal or Guam territorial law in tax years 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, and 2004, or any refusal to accept or pay such claims or to implement any government programs with regard to such claims

c. **WAIVER OF 18 G.C.A. § 82602.** With regard to the release of claims stated in Section V(a) above, each and every member of the EIC Class expressly waives their rights under 18 G.C.A. § 82602 or principle of common or civil law that is similar to or analogous to 18 G.C.A. § 82602, which provides: "A GENERAL RELEASE DOES NOT

EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

### d. LIMITATIONS ON RELEASE & COVENANT NOT TO SUE

i.     The general release and covenant not to sue stated above shall not be construed to preclude any member of the EIC Class from challenging through the administrative and/or judicial procedures that govern ordinary tax refund claims a particular determination as to: (1) the existence and/or value of their particular EIC claim(s) for tax years 1995-2004 by DRT, (2) any amount of off-set or other adjustment made to their EIC claims by DRT (including without limitation by way of audit, penalty, intercept program, or off-set); provided, however, that the procedures for payment of such claim(s) and the percentage of such claim(s) to be paid once determined shall remain subject to the terms of this Agreement.

ii.     The general release and covenant not to sue stated above exclude any future claims alleging solely a breach of this Settlement Agreement.

### VIII.  CONDITIONS PRECEDENT & RIGHTS TO TERMINATION

a. If the Court denies preliminary approval of this Agreement and/or denies conditional approval to proceed as a class action, this Agreement shall be terminated and of no further force or effect. The Parties shall be restored to their respective positions as existed prior to executing the June 20, 2005 Settlement (as to parties to the Santos Petition) and prior to executing this Agreement (as to parties to the Torres

Petition), without having waived any objections to or support of the June 14, 2004 Agreement.

**b.** If the Court refuses to grant final class certification or final approval of the Settlement Agreement after the Fairness Hearing, or refuses to enter the final judgment, this Agreement shall be rendered void and of no effect and the conditional and/or final class certification shall be vacated.

**c.** The Parties acknowledge and understand that it is anticipated that the amounts that can be reserved pursuant to this Settlement Agreement at present and in the coming months (possibly using a higher percentage of reservation and/or other sources identified by the Governor) will be approximately Fifteen Million Dollars ($15,000,000) (which shall consist of the Ten Million Dollars to be paid after preliminary approval and an additional Five Million Dollars). If Respondents have failed to reserve and/or pay at least $15 million for the payment of claims under this Settlement Agreement by the time the Agreement is subject to the Fairness Hearing, Santos and Torres shall have the right to terminate the Settlement Agreement, which shall be void and of no effect, and the parties shall be returned to their respective positions as existed prior to executing the June 20, 2005 Settlement (as to parties to the Santos Petition) and prior to executing this Agreement (as to parties to the Torres Petition), as though this Settlement Agreement had never been preliminarily approved, subject to all previously pending motions.

## IX. MISCELLANEOUS CLAUSES

**a. INTEGRATION.** This Agreement contains the entire, complete, and integrated statement of each and every term of the Parties' Agreement and is not subject to any

terms not specified herein. It shall not be modified except in a writing signed by all Parties. No Party has relied upon any warranty or representation unless expressly stated in this Agreement.

**b. NOTICE.** Any notice, request, instruction or other document to be given by any Party to another Party shall be in writing and delivered personally or by Certified Mail, Return Receipt Requested, to Counsel for the Parties as follows:

<u>If to the Santos, Torres or the EIC Class:</u>

Michael F. Phillips, Esq.
Phillips & Bordallo, P.C.
410 West O'Brien Drive, Suite 102
Hagåtña, Guam 96910

Ignacio C. Aguigui, Esq.
Lujan Aguigui & Perez LLP
300 Pacific News Building
Hagåtña, Guam 96910

<u>If to the Governor of Guam:</u>

Felix Camacho, Governor of Guam
Ricardo J. Bordallo Governor's Complex, Adelup
P.O. Box 2950
Hagatna, GU 96932

With copies to:

Shannon Taitano, Esq.
Legal Counsel, Office of the Governor
Ricardo J. Bordallo Governor's Complex, Adelup
P.O. Box 2950
Hagåtña, GU 96932

Rodney J. Jacob, Esq.
Calvo & Clark, LLP
655 South Marine Corps Drive, Suite 202
Tamuning, Guam 96913

If to the Directors of DOA and DRT:

Art Ilagan
Director of the Department of Revenue & Taxation
P.O. Box 23607
Barigada, GU 96921

Lourdes Perez
Director of the Department of Administration
Ricardo J. Bordallo Governor's Complex, Adelup
P.O. Box 884
Hagåtña, GU 96932

With copies to:

Shannon Taitano, Esq.
Legal Counsel, Office of the Governor
Ricardo J. Bordallo Governor's Complex, Adelup
P.O. Box 2950
Hagåtña, GU 96932

Rawlen M.T. Mantanona, Esq.
Cabot Mantanona LLP
BankPacific Building, 2nd Floor
825 S. Marine Corps Drive
Tamuning, Guam 96913

c. **AMENDMENT OF PRIOR CONFIDENTIALITY AGREEMENT.** The Parties hereby amend and enter a limited waiver of their March 2005 and March 2006 Confidentiality Agreements governing their negotiations in March 2005 to June 2005 (as to the Santos Petition), and again in March to April 2006 (as to the Santos and Torres Petition). This limited waiver shall only permit the Mediator to disclose to the Court such information as may be required, in the sole discretion of the Mediator, to assist the Court in determining whether to grant preliminary or final approval of this Agreement; provided, however, that this limited waiver is not, and shall not be construed as, a waiver of any Party's attorney-client or work product privileges. This limited waiver shall

also permit any Party to disclose the Parties' previous term sheet executed in May 2005. In all other respects, the Confidentiality Agreements shall remain in effect except as ordered by the Court.

d. **NO ADMISSION OF LIABILITY**. This Agreement and any acts undertaken by the Parties pursuant to it are part of a resolution of a dispute and not an admission of liability. They may not be used as such in any other litigation, including any litigation brought by persons who opt-out of this Agreement.

e. **NO WAIVER OF CLAIMS CONCERNING FEDERAL GOVERNMENT**. Nothing in this Agreement or in the final judgment issued pursuant to this Agreement shall be construed to bar, preclude, or waive any right of Respondents to seek federal reimbursement of part or all of amounts paid for EIC claims, whether under this Agreement or otherwise. At the sole discretion of Respondents, Respondents may elect to state a claim or claims against the federal government or its officers, entities, or agencies as part of answering the amended joint Petition/Complaint in the Santos and/or Torres action. If this option is exercised, then the final judgment referenced herein shall instead be a partial final judgment pursuant to FRCP 54(b) that is a final and complete resolution of claims between Respondents and the EIC Class, but not as between Respondents and any such federal defendants. The determination of the Respondents not to exercise this option shall not preclude Respondents from bringing a separate suit or claims in a different action against any federal defendants. Santos, Torres, and their counsel shall cooperate in any efforts by Respondents to obtain reimbursement for all of amounts paid for EIC claims against the federal government or its officers, entities, or agencies, whether under this Agreement or otherwise.

**f. SEVERABILITY.** Except as otherwise specified herein, the provisions of this Settlement Agreement shall be severable.

**g. BINDING NATURE.** This Agreement shall be binding upon, and inure to the benefit of, each member of the EIC Class, each Party, and their respective heirs, executors, administrators, successors, and assigns.

**h. COOPERATION IN GOOD FAITH.** All parties expressly agree and warrant they will cooperate in good faith in the execution and implementation of this Agreement and that they will: (1) promptly recommend approval of this Settlement Agreement to the Court; (2) use their best efforts to publicly promote this Settlement Agreement and work to encourage prospective class members not to opt-out; and (3) use their best efforts to obtain approval of this Settlement Agreement and to carry out its terms.

**IN WITNESS THEREOF,** the Parties have duly executed this Settlement Agreement on the date provided below.

_____
**FELIX P. CAMACHO**
Governor of Guam

Dated: _26 May 2006_

_____
**JULIE B. SANTOS**
Individually, and on Behalf of Those
Similarly Situated

Dated: _5-27-06_

_____
**LOURDES M. PEREZ**
Director of the Department of Administration

Dated: _May 26, 2006_

_____
**ARTEMIO B. ILAGAN**
Director of the Department of Revenue &
Taxation

Dated: _May 26, 2006_

RECEIVED
MAY 30 2006
CALVO & CLARK LLP
By: ___

_(signature)_

**CHARMAINE R. TORRES**
Individually, and on Behalf of Those
Similarly Situated

Dated: _May 26, 2006_

**CERTIFIED FUNDS AVAILABLE (regarding class notice expenses):**
Account No.: Governor's Account 5100A050200GA001.
Amount: $50,000.00

_(signature)_

**JOSE S. CALVO**
Certifying Officer

**CERTIFIED FUNDS AVAILABLE (regarding $10 million payment):**
Account No.: Account No.0601-025-339
Amount: $10,000,000.00

_(signature)_

**LOURDES M. PEREZ**
Certifying Officer

**CERTIFIED FUNDS AVAILABLE (regarding 1997 tax year payment):**
Account No.: Account No.0601-025-339
Amount: $500,000.00

_(signature)_

**LOURDES M. PEREZ**
Certifying Officer

**APPROVED:**

CARLOS BORDALLO
In His Capacity as Director of the Bureau
of Budget and Management Research

Dated: _____5/26/06_____

**APPROVED AS TO LEGALITY AND FORM:**

CALVO & CLARK, LLP
Attorneys for Respondents Felix P.
Camacho, Governor of Guam and
Government of Guam

By: _____
RODNEY J. JACOB

Dated: _____5/26/06_____

CABOT MANTANONA, LLP
Attorneys for Respondents Lourdes M.
Perez and Artemio R. Ilagan

By: _____
RAWLEN M.T. MANTANONA

Dated: _____5/26/06_____

LAW OFFICES OF PHILLIPS &
BORDALLO
Attorneys for Julie B. Santos, Individually,
and on Behalf of Those Similarly Situated,
and Interim Class Counsel

By: _____
MICHAEL F. PHILLIPS

Dated: _____5/26/06_____

LUJAN AGUIGUI & PEREZ
Attorneys for Charmaine Torres,
Individually, and on Behalf of Those
Similarly Situated

By: _____
~~IGNACIO C. AGUIGUI~~ PETER C. PEREZ

Dated: _____5/26/06_____