1
2   [Appearing Counsel on next page]

# FILED
DISTRICT COURT OF GUAM
JUN - 6 2006
MARY L.M. MORAN
CLERK OF COURT

3
4
5   **DISTRICT COURT OF GUAM**
6   **TERRITORY OF GUAM**
7

8   JULIE BABAUTA SANTOS, *et. al.,*          Civil Case No. 04-00006

9                          Petitioners,

10               -v-                          **AMENDED MOTION FOR
                                              ATTORNEYS' FEES AND COSTS**
11  FELIX P. CAMACHO, *et. al.*               **PURSUANT TO SECTION II(a)(iv) OF
                                              THE MAY 26, 2006 CLASS ACTION**
12                         Respondents.       **SETTLEMENT AGREEMENT;
                                              MEMORANDUM OF POINTS AND**
13  _____          **AUTHORITIES IN SUPPORT
                                              THEREOF; STATEMENT PURSUANT**
14  CHARMAINE R. TORRES, *et al.,*            **TO FED. R. CIV. P. 23(e)(2)**

15                         Plaintiffs,        **[ORAL ARGUMENT REQUESTED]**
16               -v-
                                              **CLASS ACTION**
17  GOVERNMENT OF GUAM, *et al.,*

18                         Defendants.        Civil Case No. 04-00038
    _____
19  MARY GRACE SIMPAO, *et al.,*

20                         Plaintiffs,

21               -v-

22  GOVERNMENT OF GUAM,

23                         Defendant.

24               -v-                          Civil Case No. 04-00049

25  FELIX P. CAMACHO, Governor of Guam,

26                         Intervenor-Defendant.

27

28                      # ORIGINAL

**MICHAEL F. PHILLIPS, ESQ.**
**PHILLIPS & BORDALLO, P.C.**
410 West O'Brien Drive
Hagåtña, Guam 96910
Telephone (671) 477-2223
Facsimile (671) 477-2329

*Attorneys for Petitioner Julie Babauta Santos*
*And Interim Class Counsel*

**IGNACIO C. AGUIGUI, ESQ.**
**PETER C. PEREZ, ESQ.**
**LUJAN AGUIGUI & PEREZ LLP**
Pacific News Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone (671) 477-8064
Facsimile (671) 477-5297

*Attorneys for Plaintiff Charmaine R. Torres*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

MOTION FOR ATTORNEYS' FEES AND COSTS .................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

   I.    INTRODUCTION AND RELEVANT BACKGROUND ................................................. 1

   II.   ARGUMENT ................................................................................................................ 3

      A.   Nontaxable Costs Should Be Awarded as Well As Attorneys' Fees in the Amount of Ten Percent (10%) of the Total Amount Recovered By and For the Common Benefit of the EIC Class By Virtue of the May 26, 2006 Settlement Agreement. ......................................... 3

         1.   The Settlement Agreement and the Procedural Mechanism for the Award of Costs and Attorneys' Fees ........................................................................................................ 3

         2.   Application of the Percentage-of-the-Fund Method, Rather Than the Lodestar Method, is Appropriate for the Award of Attorneys' Fees ................................................ 4

      B.   Supplementation of This Motion is Requested Pursuant to the Terms of the Settlement Agreement .......................................................................................................... 15

   III.  CONCLUSION ......................................................................................................... 16

STATEMENT PURSUANT TO FED. R. CIV. P. 23(e)(2) ....................................................... 17

# TABLE OF AUTHORITIES

**Cases**

<u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, 421 U.S. 240, 95 S.Ct. 1612 (1975) ............ 5

<u>Blum v. Stenson</u>, 465 U.S. 886 (1984) ................................................................................. 9

<u>Boeing Co. v. Van Gemert</u>, 444 U.S. 472 (1980) ............................................................ 4, 5, 8

<u>Brown v. Phillips Petroleum Co.</u>, 838 F.2d 451 (10th Cir.), <u>cert</u>. <u>denied</u>, 488 U.S. 822, 109 S. Ct. 66, 102 L. Ed. 2d 43 (1988) ........................................................................................ 6

<u>Bussie v. Allamerica Fin. Corp.</u>, 1999 U.S. Dist. LEXIS 7793, 1999 WL 342042 (D. Mass. 1999) ............................................................................................................................. 9

<u>Central Railroad & Banking Co. v. Pettus</u>, 113 U.S. 116 (1885) ..................................... 4

<u>Fischel v. Equitable Life Assurance Soc'y</u>, 307 F.3d 997 (9th Cir. 2002).......................... 5

<u>In re Continental Ill. Sec. Litig.</u>, 962 F.2d 566 (7th Cir. 1992) ..................................... 10

<u>In re Pac. Enterprises. Sec. Litig.</u>, 47 F.3d 373 (9th Cir. 1995).......................................... 6

<u>In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.</u>, 56 F.3d 295 (1st Cir. 1995) ................................................................................... 5, 9, 10, 11

<u>In re Wash. Pub. Power Supply Sys. Sec. Litig.</u>, 19 F.3d 1291 (9th Cir. 1994) ........................ 6, 12

<u>Lewis v. Anderson</u>, 692 F.2d 1267 (9th Cir. 1982) ........................................................... 5

<u>Mills v. Electric Auto-Lite Co.</u>, 396 U.S. 375 (1970)......................................................... 4

<u>Petition of Hill</u>, 775 F.2d 1037 (9<sup>h</sup> Cir. 1985) ................................................................. 5, 6

<u>Paul, Johnson, Alston & Hunt v. Graulty</u>, 886 F.2d 268 (9th Cir. 1989) ...................................... 5, 6

<u>Sprague v. Ticonic National Bank</u>, 307 U.S. 161 (1939) ....................................................... 4

<u>Staton v. Boeing Co.</u>, 327 F.3d 938 (9th Cir. 2003) ............................................................ 5

<u>Swedish Hospital Corp. v. Shalala</u>, 1 F.3d 1261 (D.C. Cir. 1993) ....................................... 9

<u>Trustees v. Greenough</u>, 105 U.S. 527 (1881).................................................................. 4

<u>Vincent v. Hughes Air West, Inc.</u>, 557 F.2d 759 (9th Cir. 1977) ............................................... 6

<u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043 (9th Cir.), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u> <u>Vizcaino v. Waite</u>, 537 U.S. 1018 (2002) ............................................................................... 6, 9, 12

ii

**Other Authorities**

Alba Conte & Herbert B. Newberg, <u>3 Newberg on Class Actions</u> § 9:35 (4th ed.) .................... 2, 3

<u>Court Awarded Attorney Fees, Report of the Third Circuit Task Force</u>, 108 F.R.D. 237, 254-59
(1985) ................................................................................................................................... 9, 10

Dawson, Lawyers and Involuntary Clients in Public Interest Litigation, 88 Harv. L. Rev. 849,
916-922 (1975)........................................................................................................................... 5

<u>Manual for Complex Litigation</u> § 21.631 at 319 (4th ed. 2004) ....................................................... 3

<u>Manual for Complex Litigation</u> § 21.641 at 325 (4th ed. 2004) ....................................................... 2

Settlement Agreement § II(a)(iv) ............................................................................................... 1, 2

Settlement Agreement, § II(c) .......................................................................................................... 4

Settlement Agreement, § II(c)(iv) ................................................................................................... 16

Settlement Agreement, § IV(a)(i) ............................................................................................... 8, 11

Settlement Agreement, § IV(a)(ii) ................................................................................................... 8

Settlement Agreement, § IV(a)(iii) .................................................................................................. 8

Settlement Agreement, § IV(a)(iv-vi) ............................................................................................. 8

Settlement Agreement § IV(e) ......................................................................................................... 8

Settlement Agreement § V(a) ........................................................................................................... 8

Settlement Agreement § V(h) ........................................................................................................... 8

Settlement Agreement § VI(d)(vi) ................................................................................................... 3

Settlement Agreement § VI(e) .......................................................................................................... 8

Settlement Agreement § VIII ............................................................................................................ 8

**Rules**

Fed. R. Civ. P. 23(e)................................................................................ 3, 4, 16

Fed. R. Civ. P. 23(e)(2)............................................................................... 2, 17

Fed. R. Civ. P. 23(h) ...................................................................... 1, 2, 3, 4, 16

Fed. R. Civ. P. 23(h), Advisory Committee Notes ........................................... 3

Fed. R. Civ. P. 23(h)(2)..................................................................................... 4

Fed. R. Civ. P. 23(h)(3)..................................................................................... 4

Fed. R. Civ. P. 52(d)(2)................................................................................... 16

Fed. R. Civ. P. 54(d)(2)..................................................................................... 3

## MOTION FOR ATTORNEYS' FEES AND COSTS

Interim Class Counsel MICHAEL F. PHILLIPS, counsel for Petitioner JULIE BABAUTA SANTOS, individually and on behalf of the all those similarly situated, ("Interim Class Counsel"), and LUJAN AGUIGUI & PEREZ LLP, counsel for Plaintiff CHARMAINE R. TORRES, individually and on behalf of those similarly situated, ("Counsel for Torres") (collectively "Counsel"), submit this Motion for Attorneys' Fees and Costs pursuant to Section II(a)(iv) of the May 26, 2006 Settlement Agreement, and under the authority of Rule 23(h) of the Federal Rules of Civil Procedure. This motion is supported by the Memorandum of Points and Authorities below, the files and records in these actions including the Motion for Appointment of Class Counsel (filed 11/14/05; Docket #275, CV04-00006) and the Declaration of Interim Class Counsel Michael F. Phillips (filed 11/14/05; Docket #276, CV04-00006), and such other evidence and arguments as may be presented at or before the hearing on this motion. As stated in the parties' Joint Motion for Preliminary Approval of Class Action Settlement Agreement (filed May 26, 2006) (Joint Motion at 2), the required oral argument statements and notices regarding this and other motions filed in connection with the Settlement Agreement will be submitted at a later time.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION AND RELEVANT BACKGROUND

The background of this matter is set forth in various filings in this case, most recently in the May 26, 2006 Joint Motion of the <u>Santos</u> and <u>Torres</u> Parties for Preliminary Approval of Class Action Settlement Agreement, and in the preliminary recitations of the May 26, 2006 Settlement Agreement itself ("Settlement Agreement") (<u>see</u> Settlement Agreement at 1-5). This motion for attorneys' fees and costs is brought pursuant to Section II(a)(iv) of the Settlement Agreement which provides as follows:

> So that the [EIC] class may be advised of the pending motion in the class notice discussed below, counsel for Santos and/or Torres must file any motion(s) for attorneys' fees and costs within seven days of

1

the execution of this Agreement. Attorneys' fees or costs awarded to the counsel for the EIC class are to be determined by the Court following such a motion which shall be made under Federal Rules of Civil Procedure 23(h).

Settlement Agreement § II(a)(iv).

As set forth in further detail below, Interim Class Counsel respectfully requests in this motion that the Court award his nontaxable costs, as well as total attorneys' fees in the amount of ten percent (10%) of the total amount recovered by and for the common benefit of the EIC class by virtue of the Settlement Agreement. Counsel for Torres requests that the Court award their nontaxable costs. With regard to attorneys' fees, Counsel for Torres and Interim Class Counsel agreed during the April 6-8, 2006, mediation held in Guam that Counsel for Torres would receive eleven percent (11%) of the first $5 million of the fee award, and then twenty-five percent (25%) of the amount of the award exceeding $5 million, provided that the Court award fees based on the percentage-of-the-fund method. Consequently, the <u>total</u> award of attorneys' fees being sought is not greater than ten (10%), counsel for Torres receiving only a percentage of the award based on the actual dollar amount awarded. <u>See</u> Statement Pursuant to Fed. R. Civ. P. 23(e)(2), set forth at the end of this filing.

In the event that the Court awards attorneys' fees based on the lodestar method, Interim Class Counsel and Counsel for Torres will seek the award of fees they believe they are entitled to based on the hours each has devoted to the litigation and resolution of the matter. <u>Id.</u> Counsel for Torres and Interim Class Counsel have further agreed to proceed in unity with regard to this motion for attorney's fees and costs, and Counsel for Torres has agreed to support Interim Class Counsel's pursuit of appointment as Lead Counsel. <u>Id.</u>

The disclosure of the foregoing agreements between counsel and made in connection with the Settlement Agreement is required. <u>See</u> Fed. R. Civ. P. 23(e)(2); <u>see also</u> <u>Manual for Complex Litigation</u> § 21.641 at 325 (4th ed. 2004) ("Counsel owe a duty of candor to the court to disclose all information relevant to the fairness of the settlement.") Such agreements regarding division of fees among counsel and the designation of lead and/or class counsel are not uncommon in settlement of class action disputes. <u>See</u> Alba Conte & Herbert B. Newberg, <u>3 Newberg on Class Actions</u> § 9:35 (4th ed.) ("[t]he court should always encourage the parties themselves to agree on

2

1  lead counsel, while imposing its own choice only in extraordinary circumstances") and at n.2

2  ("The plaintiffs may by agreement choose lead counsel"); <u>Manual for Complex Litigation</u>

3  § 21.631 at 319 ("Separate side agreements or understandings may encompass such matters as

4  resolution of claims outside the class settlement, positions to be taken on later fee applications,

5  division of fees among counsel....").

6  Accordingly, the Court is respectfully requested to grant the requested award of

7  nontaxable costs and, for attorneys' fees, ten percent (10%) of the total amount recovered by and

8  for the common benefit of the class through the Settlement Agreement executed on May 26,

9  2006. Such recovery would be obtained from the EIC payments made pursuant to the Settlement

10  Agreement and would not be inconsistent with the provisions thereof. <u>See</u> Settlement Agreement

11  § VI(d)(vi) ("Nothing in this Agreement or the claims process shall be construed to prohibit any

12  portion of any EIC claim being made subject to payment of attorneys' fees and costs, if any, if so

13  ordered by the Court.").

14  ## II.  ARGUMENT

15  ### A.  Nontaxable Costs Should Be Awarded as Well As Attorneys' Fees in the Amount of Ten Percent (10%) of the Total Amount Recovered By and For the Common Benefit of the EIC Class By Virtue of the May 26, 2006 Settlement Agreement.

16

17

18  #### 1.  The Settlement Agreement and the Procedural Mechanism for the Award of Costs and Attorneys' Fees

19  In class action cases, Fed. R. Civ. P. 23(h) allows the court to award nontaxable costs and

20  reasonable attorneys' fees pursuant to a motion under Rule 54(d)(2). According to the Advisory

21  Committee Notes, Rule 23(h) applies to "cases in which there is a simultaneous proposal for class

22  certification and settlement even though technically the class may not be certified unless the court

23  approves the settlement pursuant to a review under Rule 23(e)."

24  Thus, "[w]hen a settlement is proposed for Rule 23(e) approval . . . with a request for

25  certification, notice to class members about class counsel's fee motion would ordinarily

26  accompany the notice to the class about the settlement proposal itself." <u>Id</u>. (emphasis added).

27  The Advisory Committee Notes also state the court should direct when the fee motion must be

28  filed, and for "motions by class counsel in cases subject to court review of a proposed settlement

3

1   under Rule 23(e), it would be important to require the filing of at least the initial motion in time

2   for inclusion of information about the motion in the notice to the class about the proposed

3   settlement that is required by Rule 23(e)." Id. (emphasis added). In addition, Rule 23(h)(2)

4   requires that class members have the opportunity to object to the motion. Rule 23(h)(3) allows,

5   but does not require, the court to hold a hearing on the motion.

6        On May 26, 2006, the parties to the Santos and Torres actions presented this Court with a

7   proposed Settlement Agreement to be reviewed and approved under the standards of Rule 23(e),

8   together with a Joint Motion for Preliminary Approval.   Separate motions regarding class

9   certification for settlement purposes, amendment of pleadings, and dismissal of parties, were filed

10  on June 2, 2006, in addition to the motion for costs and attorneys' fees (which is amended by this

11  instant filing), pursuant to the requirements of Section II of the Settlement Agreement.

12       Consistent with Rule 23(h) and the guidance of the Advisory Committee Notes thereto,

13  Counsel ask this Court to allow the filing of this motion for attorneys' fees and costs so that

14  information regarding the instant motion be given to the EIC Class along with notice about the

15  proposed Settlement Agreement as required by Rule 23(e).

16       Counsel acknowledge and recognize that pursuant to Rule 23(h)(2), the motion will not be

17  finally acted upon until class members have the opportunity to object to the motion. Moreover,

18  the proposed Settlement Agreement requests that this Court hear the merits of this motion in

19  conjunction with the final fairness hearing. See Settlement Agreement, § II(c).

20       **2. Application of the Percentage-of-the-Fund Method, Rather Than the
          Lodestar Method, is Appropriate for the Award of Attorneys' Fees**

21
22       The United States Supreme Court has historically and consistently recognized that "a

23  litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or

24  his client is entitled to a reasonable attorney's fee from the fund as a whole." See Boeing Co. v.

25  Van Gemert, 444 U.S. 472, 478 (1980) (citing Trustees v. Greenough, 105 U.S. 527 (1881);

26  Central Railroad & Banking Co. v. Pettus, 113 U.S. 116 (1885); Mills v. Electric Auto-Lite Co.,

27  396 U.S. 375 (1970); Sprague v. Ticonic National Bank, 307 U.S. 161 (1939). The common-fund

28  doctrine rests on the perception that persons who obtain the benefit of a lawsuit without

    contributing to its cost are unjustly enriched at the successful litigant's expense. Id. (citations

                                         4

omitted). Thus, the doctrine allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit. Id. In Boeing Co., the Supreme Court further explained:

> In Alyeska Pipeline Service Co. v. Wilderness Society, supra, we noted the features that distinguished our common-fund cases from cases where the shifting of fees was inappropriate. First, the classes of persons benefited by the lawsuits "were small in number and easily identifiable." 421 U.S., at 265, n. 39. Second, "[the] benefits could be traced with some accuracy. . . ." Ibid. Finally, "there was reason for confidence that the costs [of litigation] could indeed be shifted with some exactitude to those benefiting." Ibid. Those characteristics are not present where litigants simply vindicate a general social grievance. Id., at 263-267, and n. 39. On the other hand, the criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf. Once the class representatives have established the defendant's liability and the total amount of damages, members of the class can obtain their share of the recovery simply by proving their individual claims against the judgment fund. This benefit devolves with certainty upon the identifiable persons whom the court has certified as members of the class. Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery. See generally Dawson, Lawyers and Involuntary Clients in Public Interest Litigation, 88 Harv. L. Rev. 849, 916-922 (1975).

Id. at 478-479 (emphasis added). See also Staton v. Boeing Co., 327 F.3d 938, 967 (9th Cir. 2003) ("[T]he common fund doctrine ensures that each member of the winning party contributes proportionately to the payment of attorneys' fees."); Fischel v. Equitable Life Assurance Soc'y, 307 F.3d 997, 1006 (9th Cir. 2002) ("When counsel recover a common fund which confers a 'substantial benefit' upon a class of beneficiaries, they are entitled to recover their attorney's fees from the fund." (citing Lewis v. Anderson, 692 F.2d 1267, 1270 (9th Cir. 1982)); In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 305 n.6 (1st Cir. 1995) ("The common fund doctrine is founded on the equitable principle that those who have profited from litigation should share its costs."). In Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268 (9th Cir. 1989), the Ninth Circuit Court explained:

5

> Although the common fund doctrine does not permit the shifting of the burden of the litigation expenses to the losing party, it does permit the burden to be shared among those who are benefited by the litigant's efforts. See Brown v. Phillips Petroleum Co., 838 F.2d 451, 454 (10th Cir.), cert. denied, 488 U.S. 822, 109 S. Ct. 66, 102 L. Ed. 2d 43 (1988); Vincent v. Hughes Air West, Inc., 557 F.2d 759, 770 (9th Cir. 1977). . . . The common fund doctrine is properly applied, however, only if "(1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting." Hill, 775 F.2d at 1041 (9th Cir. 1985).

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002) (citing In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1295-96 (9th Cir. 1994)). See also Graulty, 886 F.2d at 272 ("We leave to the district court the task of determining what would be reasonable compensation for creating this common fund . . . We believe that either method may, depending upon the circumstances, have its place in determining what would be reasonable compensation for creating a common fund.").

The Ninth Circuit recognizes that 25% is the proper benchmark percentage in common fund cases:

> The sole remaining issue is what percentage of the common fund would provide PJAH reasonable compensation. The answer to that question, of course, depends on the individual circumstances of this case with which the district court is more familiar than we are. Ordinarily, however, such fee awards range from 20 percent to 30 percent of the fund created. We note with approval that one court has concluded that the "bench mark" percentage for the fee award should be 25 percent. That percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in this case.

Graulty, 886 F.2d at 272 (emphasis added). See also In re Pac. Enterprises Sec. Litig., 47 F.3d 373, 379 (9th Cir. 1995) ("[T]wenty-five percent is the 'benchmark' that district courts should award in common fund cases.").

In Vizcaino, the Ninth Circuit recognized some of the relevant factors and circumstances the district court may consider in determining a reasonable fee, including the fund size,

6

1     exceptional results achieved by counsel for the class, the complexity of the issues and risks of the

2     case, incidental or nonmonetary benefits conferred by the litigation, and the contingency basis of

3     the litigation and the burdens on counsel. 290 F.3d at 1047-1050.

4         In this class action, Interim Class Counsel, on behalf of Petitioner Julie Babauta Santos

5     and the class of those similarly situated, early on sought the implementation and payment of EIC

6     for eligible Guam taxpayers, and was the first to file the class action lawsuit seeking such relief in

7     February 2004. Interim Class Counsel extensively researched and initiated the lawsuit, defended

8     the interests of the EIC class, negotiated a complex settlement agreement and defended its legality

9     amid internal conflicts among the Respondents, and negotiated and executed a second proposed

10    Settlement Agreement with Respondent Governor and Respondent Directors in 2005. With the

11    participation, involvement, and assistance of Counsel for Torres, Interim Class Counsel then

12    negotiated a third Settlement Agreement in April-May 2006, which resulted in an expanded EIC

13    class (to include EIC claimants for tax year 1997 who have not been paid) and enhanced benefits

14    including the early pay-out of over $10 million dollars for EIC claims for tax years 1997 and

15    1998.

16        The ultimate recovery of the $90+ million settlement amount in 2006 occurred after more

17    than a decade of the Government of Guam's complete denial of the applicability of the EIC

18    program to Guam taxpayers, the refusal to pay EIC, and the government's refusal to allow

19    taxpayers to apply for EIC on Guam income tax returns, even in the face of a Guam Supreme

20    Court decision and local legislation demanding the implementation and payment of the EIC.

21    Thus, despite this class action being filed in 2004, Petitioner Santos, Plaintiff Torres, and the EIC

22    Class have waited almost an entire decade for their right to the implementation of the EIC

23    program and the payment of EIC refunds.

24        The proposed Settlement Agreement speaks for itself. It provides for settlement payments

25    to be made by continually reserving at least 15% of each amount placed (periodically) into the

26    Government of Guam's tax refund reserve funds, which are the funds used to pay general tax

27    refunds, until all of the payments provided for under the Settlement Agreement are made. Over

28    the next few months, the reserves devoted to the settlement are envisioned to accumulate in the

7

approximate amount of $15 million. See Settlement Agreement §§ V(a) and VIII. Ten Million Dollars ($10 million) of that amount will be used to immediately pay portions of 1998 EIC claims upon preliminary approval of the Settlement Agreement, and the remaining EIC claims for 1997 will be paid. Five Hundred Thousand Dollars ($500,000) have been reserved to pay the remaining 1997 claims. Settlement Agreement § V(h). In addition, the Settlement Agreement provides for full implementation of the EIC beginning with tax year 2005 (estimated to benefit the EIC Class and other taxpayers in the amount of $15 to $20 million per tax year). See Settlement Agreement Section IV(e).

The criteria for applying the common fund doctrine is easily met where, as here, each member of the EIC Class has an undisputed and mathematically ascertainable claim to part of a lump-sum settlement recovered on his behalf. See Van Gemert, 444 U.S. at 497. Under the Settlement Agreement, members of the EIC Class who filed claims for EIC for tax year 1998 and have otherwise met the relevant qualifications will proportionately share $15 million of the settlement amount based on the value of their EIC claim for tax year 1998. See Settlement Agreement, § IV(a)(i). As stated above, these claimants will receive early payments from a reserved amount of $10 million. See Settlement Agreement § VI(e). EIC claims for tax year 1997 will also be paid (with interest) along with the early payout of 1998 EIC claims. Id. Members of the EIC Class meeting the relevant qualifications for EIC for any or all of tax years 1995, 1996, 1999 and 2000, will proportionately share $15 million of the settlement amount based on the total combined value of their EIC claim or claims for all of those tax years, along with any remainder of funds for payment of tax year 1998 claims. See Settlement Agreement, § IV(a)(ii). Members of the EIC Class meeting the relevant qualifications for EIC for tax year 2001 will proportionately share $15 million plus any funds allocated and unclaimed for tax years 1995, 1996, 1999, and 2000 (combined), based on their total filed claims for EIC for tax year 2001. See Settlement Agreement, § IV(a)(iii). Finally, members of the EIC Class meeting the relevant qualifications for EIC for each of tax years 2002, 2003 and 2004 will proportionately share $15 million plus any funds allocated and unclaimed for the immediate prior tax year, based on their total filed claims for EIC for each applicable tax year. See Settlement Agreement, § IV(a)(iv-vi).

8

Based on the settlement amounts allocated for each respective tax year and the total qualified claims filed by each EIC Class member, it is unmistakable that under the Settlement Agreement, each member of the EIC Class has an undisputed and mathematically ascertainable claim to part of the settlement amount recovered for the EIC Class.

As provided above, this Court has the discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method. See Vizcaino, 290 F.3d at 1047. Like the Ninth Circuit, other Circuits and courts have recognized the advantages of the percentage-of-the-fund method in common fund cases. See Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237, 254-59 (1985) (where task force commissioned by the Third Circuit recommended that compensation for creating common funds be calculated by a percentage of the funds created); Blum v. Stenson, 465 U.S. 886, 900 n. 16 (1984) (noting that the percentage basis method is grounded in tradition and therefore an acceptable way of calculating the fee award); Bussie v. Allamerica Fin. Corp., 1999 U.S. Dist. LEXIS 7793, 1999 WL 342042 at 2 (D. Mass. 1999) (unreported opinion) ("From a public policy standpoint, the [percentage of fund] method of calculating fees more appropriately aligns the interests of the class with the interests of class counsel - the larger the value of the settlement, the larger the value of the fee award. Furthermore, the [percentage of fund] method encourages efficiency and avoids the disincentive to settle cases early created by the lodestar method."); In re Thirteen Appeals, 56 F.3d at 307 (approving the percentage of fund approach as an acceptable method and recognizing "that use of the [percentage of fund] method in common fund cases is the prevailing praxis [with] . . . distinct advantages"). As explained by the First Circuit:

> In complex litigation -- and common fund cases, by and large, tend to be complex -- the POF approach is often less burdensome to administer than the lodestar method. See Swedish Hosp., 1 F.3d at 1269 (finding POF approach "less demanding of scarce judicial resources"). Rather than forcing the judge to review the time records of a multitude of attorneys in order to determine the necessity and reasonableness of every hour expended, the POF method permits the judge to focus on "a showing that the fund conferring a benefit on the class resulted from" the lawyers' efforts.
> . . .

> For another thing, using the POF method in a common fund case enhances efficiency, or, put in the reverse, using the lodestar method in such a case encourages inefficiency. Under the latter approach, attorneys not only have a monetary incentive to spend as many hours as possible (and bill for them) but also face a strong disincentive to early settlement. See Third Circuit Report, 108 F.R.D. at 247-48 (finding that, in common fund cases, the lodestar method "encourages lawyers to expend excessive hours" and "creates a disincentive for the early settlement of cases"); see also FJC Report, supra, at 310. If the POF method is utilized, a lawyer is still free to be inefficient or to drag her feet in pursuing settlement options -- but, rather than being rewarded for this unproductive behavior, she will likely reduce her own return on hours expended.
>
> Another point is worth making: because the POF technique is result-oriented rather than process-oriented, it better approximates the workings of the marketplace. We think that Judge Posner captured the essence of this point when he wrote that "the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character." In re Continental Ill. Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992). In fine, the market pays for the result achieved.

In re Thirteen Appeals, 56 F.3d at 307.

Interim Class Counsel and his law firm are one of the few firms on Guam that has consistently litigated over many years to enforce public policies on Guam, whether popular or unpopular. The EIC program is a public policy that went unenforced by the government for a decade accompanied by wide-spread media attention as each successive tax year passed. Nonetheless, up until the time that the Santos action was filed in February 2004 by Interim Class Counsel, no other attorneys on Guam had filed any class action suit on behalf of EIC claimants.

There are many reasons Guam attorneys hesitate to initiate challenges against the Government of Guam regarding the enforcement of public policies. As this case demonstrates, plaintiff attorneys are bound to face political and public scrutiny when seeking to change long-entrenched government behavior. Regardless of each firm's reasons, the lack of participation and unwillingness to litigate on behalf of public policy or public interest causes is apparent. With the exception of Interim Class Counsel, Guam attorneys have little if no history of filing large complex class action lawsuits against the Government of Guam. The contingent nature of large complex class action lawsuits may not lend favorably to participation by what are relatively small

10

1    or individually-run law firms with concentrated practices outside of class actions, and with scarce

2    resources committed to more necessary bottom line objectives.

3         It is safe to conclude that there is presently no substantial legal environment on Guam for

4    a thriving contingent class action practice where attorneys may reasonably expect to recoup from

5    victorious cases, the resources otherwise expended for losing causes.  Rather, it is entirely

6    reasonable to conclude that for most law firms on Guam, if not all, deciding whether to dedicate

7    resources to one or several complex class action lawsuits could mean risking the ability to focus

8    on and generate fees related to the firm's standard practice and, most likely, fees that are

9    necessary in order for the firm to meet basic day-to-day expenses.  If given the choice, most law

10   firms would understandably choose to represent government agencies and departments instead of

11   taking on contingent class action cases.

12        It is this environment that necessitates the encouragement of Guam attorneys to take on

13   causes that benefit large portions of Guam's people.  If the recovery of fees from contingent class

14   action cases is proven to be not the worth the risk of committing, dedicating, and expending

15   substantial resources for the prosecution of such cases, the participation of Guam's Bar in

16   furthering the enforcement of laws for the benefit of its citizens will be eviscerated altogether.

17   See In re Thirteen Appeals, 56 F.3d at 307 (recognizing that although the percentage of the fund

18   method may sometimes result in the overpayment of attorneys, "law firms may be less willing to

19   commit needed resources to common fund cases, even those for the public benefit, if the likely

20   recovery is relatively small.").  The percentage of the fund method does not always allow for

21   higher recoveries, but the method clearly encourages law firms, especially in smaller legal

22   environments such as Guam's, to take on causes that otherwise may go unchallenged.  Counsel

23   respectfully request the Court's discretion, in light of the entire circumstances of this case and the

24   legal environment in which it was filed, to choose the percentage-of-the-fund method to

25   determine the attorneys' fees award in this matter.

26        Interim Class Counsel has consistently sought in his pleadings throughout this case

27   (including the proposed Joint Petition with the Torres plaintiff submitted to the Court pursuant to

28   Section II(a)(i) of the Settlement Agreement), 10% of the recovery for the benefit of the class

11

1   even with complete knowledge that the benchmark in the Ninth Circuit is 25% of the recovery.

2   (Indeed, now Interim Class Counsel's proposed 10% recovery will be shared with Counsel for

3   Torres, if such overall recovery is approved by the Court.)   The factors recognized by the Ninth

4   Circuit do not support a lowering of the fee to less than the percentage requested.

5          Members of the EIC Class have been denied for almost a decade not only the payment of

6   earned income tax credit refunds, but in some cases the ability to even apply for such credits.

7   Estimates of unpaid EIC have varied from between $10 to $15 million per tax year, with exact

8   figures difficult to calculate in part due to the government's refusal to accept EIC applications in

9   some cases.   Tax year after tax year, with no legal challenges, the potential liability of the

10  government increased substantially as a result of its legal position denying the applicability of the

11  EIC program.   The $90+ million benefit to the EIC Class contained in the Settlement Agreement

12  is substantial.

13         In In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291 (9th Cir. 1994)

14  ("WPPSS"), and explained in Vizcaino, 290 F.3d at 1047-1048, fund size was established as a

15  relevant consideration.   In WPPSS, the Ninth Circuit agreed with the district court that in a case

16  involving a $687 million settlement fund, "picking a percentage without reference to all the

17  circumstances of the case, including the size of the fund, would be like picking a number out of

18  the air."   Id. at 1297. While the fund in this case is substantial, the fund size is not of the

19  magnitude referenced by the Ninth Circuit in WPSS which would necessitate a reduction from the

20  Ninth Circuit's benchmark, nor is it of the magnitude which would necessitate a reduction from

21  the instant request of 10%.   On the contrary, the circumstances of this class action demonstrate

22  that a 10% recovery under the percentage-of-the-fund method is entirely reasonable.

23         The substantial results achieved by Counsel (both Interim Class Counsel and Counsel for

24  Torres), as evidenced by the terms of the proposed Settlement Agreement, are highly relevant in

25  determining attorneys' fees.   The results achieved, as demonstrated in the proposed Settlement

26  Agreement, generally speak for themselves.   EIC Class members waited up to a decade in some

27  cases for the ability to claim EIC on their tax returns, and most importantly, the ability to receive

28  refundable earned income tax credits.   EIC is intended to alleviate the financial difficulties faced

12

1   by hard working individuals and families in the lowest income brackets. EIC payments are not

2   tax refund windfalls that allow recipients to enjoy luxuries otherwise unavailable. EIC payments

3   are tax refunds that allow working recipients to make ends meet. The terms of the proposed

4   Settlement Agreement require the government to implement the EIC program beginning with tax

5   year 2005 and beyond, to allow eligible Guam taxpayers to claim the EIC on their tax returns, and

6   to pay such refundable earned income tax refunds as required by the Organic Act and the Guam

7   Territorial Income Tax law. Thus, the Settlement Agreement has caused the government to

8   change its entrenched public policy of denying the EIC's applicability to Guam taxpayers. In

9   addition, the terms of the proposed Settlement Agreement recognize both the limitations of the

10  government's ability to pay past EIC in light of its financial condition, and the obligations of the

11  government for denying applicability of the EIC for almost a decade. The terms of the proposed

12  Settlement Agreement identify a total settlement amount of $90+ million for all EIC payments

13  due for years the government has either refused applications for EIC, or refused payment for filed

14  EIC claims. These tax years include 1995, 1996, 1997, 1998 and 1999-2004.

15      If the proposed Settlement Agreement is finally approved by this Court, EIC Class

16  members will benefit not only in the form of being compensated for the government's refusal to

17  recognize federal and local law demanding implementation of the EIC program, but also from the

18  injunctive nature of the terms of the Settlement Agreement requiring future implementation of the

19  EIC program. No longer will Guam taxpayers fill out Guam income tax returns with the EIC

20  portion "blacked out" or otherwise made inapplicable. The exceptional results achieved by this

21  class action and the work of Interim Class Counsel and Counsel for Torres are evident in the

22  benefits that all EIC class members will receive in the form of compensation and in their ability to

23  file for the EIC in the future. The results achieved through Counsel's efforts support a recovery

24  of attorneys' fees in the area of the Ninth Circuit's benchmark of 25%. Counsel's request of 10%

25  overall is therefore entirely reasonable under the circumstances.

26      This class action from the outset included inherent risks due in part to the complexity of

27  issues involved and, at critical times, the politics involved. The record in this case from its

28  initiation to settlement more than substantiates the inherent and diverse issues in this action. The

13

defenses set forth by the government throughout its denial of EIC, whether in public or before the courts, include issues related to federal mandates, the alleged necessity of federal or local government appropriations, the alleged character of EIC as a government subsidy, the authority over expenditures by the local government, statute of limitations concerns, jurisdictional requirements, Congressional intent of EIC as it applies to Guam, the alleged supremacy of local tax commissioner revenue rulings, allegations regarding the limited authority of this Court over tax remedies, and of course, the intricacies of complex income tax procedures and regulations regarding the implementation of the EIC program. The complexity of issues has evolved to now include the scope of authority of Guam's first elected Attorney General, an issue raised in every court on Guam and in the Ninth Circuit.

In addition, this class action involves a large number of Guam taxpayers, estimated to be more than 10,000 individuals, and involves ten separate tax years. To properly address claims, the lawsuit required an analysis of past and current provisions of the Internal Revenue Code (made applicable to Guam in a mirrored fashion) to determine relevant procedures and qualifications for both the application and receipt of EIC. Further research was needed including reviews and analyses of tax return documents and forms, public statements, and other factual documentation over almost a decade.

Although Counsel's confidence in success on the merits never wavered, such confidence was tempered by the inherent complexity and diversity of issues involved in this litigation, including a vigorous defense against jurisdictional, statutory, and constitutional arguments raised by the government. The risk of applying an entire federally-mandated program to Guam taxpayers, in the face of almost a decade of local government denial, was apparent from the outset, and supports Counsel's request for the recovery of attorneys' fees, the amount of which falls well below the Ninth Circuit's 25% benchmark standard.

The incidental benefits of the settlement are also a relevant circumstance to consider. Under the terms of the proposed Settlement Agreement, although monetary compensation for past EIC claims is evidently the highlight of the benefits conferred upon EIC Class members, the incidental benefits of mandating the implementation of the EIC program for 2005 and beyond and

14

the monetary benefits outside of the established $90+ million fund are significant and substantial. Unlike previous tax years, EIC Class members and other new Guam taxpayers will have their rights restored. The implementation of the entire EIC program, including the receipt of eligible refunds, is the cornerstone of this class action. The incidental benefits conferred by the terms of the proposed Settlement Agreement further support the instant request for a recovery of attorneys' fees.

Finally, the contingency basis of this class action and the burden on counsel, including the time and resources Counsel have devoted and will continue to devote, is also a relevant consideration. As previously mentioned, a class action suit against the government, by its nature, involves significant burdens on plaintiff's counsel. As this class action has evolved, the internal conflicts of Respondents have only added to the burdens of the litigation. Nevertheless, in the interest of the EIC Class, Counsel engaged in mediation with all Respondents (in the case of Interim Class Counsel, on more than one occasion), and concluded negotiations for a settlement agreement providing additional and enhanced benefits to the EIC Class. Substantial resources have been devoted and committed in order to obtain the most favorable benefits for the EIC Class. Further substantial resources will have to be devoted toward approval and implementation of the settlement. Counsel's commitment of scarce resources on a contingency basis further supports the request for a recovery of attorneys' fees. Consideration of the entire circumstances of this case warrants a finding that the request for attorneys' fees of 10% of the amount recovered for the benefit of the EIC Class is reasonable and is consistent with the relevant standards under federal law.

**B.**     **Supplementation of This Motion is Requested Pursuant to the Terms of the Settlement Agreement**

Because the Settlement Agreement provides an opportunity to object and comment on any motion for attorneys' fees and costs and because further information may be required in order for the Court to finally act upon the motion at the fairness hearing (including information pertinent to a lodestar method of award, if the Court expresses an inclination to proceed in such fashion), Counsel respectfully request the opportunity, if necessary, to supplement this

15

1    Memorandum and motion as required, prior to the final fairness hearing (see, e.g., Settlement

2    Agreement § II(c)(iv).

3    **III.    CONCLUSION**

4            For all of the above reasons, Counsel request that this Court allow the filing of this motion

5    for attorneys' fees and costs pursuant to Fed. R. Civ. P. 23(h) and 52(d)(2) for purposes of

6    inclusion of information regarding the motion in the notice to the class required by Fed. R. Civ. P.

7    23(e).  Counsel respectfully request their costs, as well as attorneys' fees in the amount of ten

8    percent (10%) of the amount recovered for the common benefit of the EIC Class.  Counsel

9    respectfully request that this Court apply the percentage-of-the-fund method in calculating the fee

10   award in this class action.

11           With the acknowledgement that class members may file objections to or comments on this

12   motion and that continued work is necessary as this class action proceeds and approval of the

13   Settlement Agreement moves forward, Counsel also respectfully request an additional

14   opportunity, consistent with requests by the parties under the provisions of the proposed

15   Settlement Agreement, to respond and/or supplement this motion as required and as this Court

16   may otherwise deem necessary.

17           Respectfully submitted this 6th day of June, 2006.

18

19                                              **PHILLIPS & BORDALLO, P.C.**

20

21                                              By:_____
                                                        **MICHAEL F. PHILLIPS, ESQ.**

22                                              *Attorneys for Petitioner Julie Babauta Santos*
                                                *and Interim Class Counsel*

23

24                                              **LUJAN AGUIGUI & PEREZ LLP**

25

26                                              By: _____
                                                        **IGNACIO C. AGUIGUI, ESQ.**

27                                              *Attorneys for Plaintiff Charmaine R. Torres*

28

                                                16

## STATEMENT PURSUANT TO FED. R. CIV. P. 23(e)(2)

Interim Class Counsel MICHAEL F. PHILLIPS, counsel for Petitioner JULIE BABAUTA SANTOS, individually and on behalf of the all those similarly situated, ("Interim Class Counsel"), and LUJAN AGUIGUI & PEREZ LLP, counsel for Plaintiff CHARMAINE R. TORRES, individually and on behalf of those similarly situated, ("Counsel for Torres") submit this statement pursuant to Fed. R. Civ. P. 23(e)(2) which requires disclosure of any "agreement made in connection with the proposed settlement."

During the mediation held in Guam from April 6-8, 2006, and conducted before and assisted by the Hon. William J. Cahill (Ret. Judge), Counsel for Torres and Interim Class Counsel engaged in discussions (with the assistance and participation of Judge Cahill) regarding the issue of attorneys' fees and costs and the designation of lead and/or class counsel. These discussions took place on the last day of the mediation, on April 8, 2006, and only after the parties had already come to an agreement in principle on the core terms of the settlement eventually reduced to written form and executed on May 26, 2006.

Interim Class Counsel expressed that he would seek an award of costs, and attorneys' fees of ten percent (10%) of the amount recovered by and for the common benefit of the EIC class, based on the percentage-of-the-fund theory of recovery. Counsel for Torres agreed to work with Interim Class Counsel and the parties to advance and implement the settlement for the interests of the EIC class. Counsel for Torres and Interim Class Counsel then negotiated and eventually agreed that if Interim Class Counsel received an award of fees based on the percentage-of-the-fund recovery, the award would be shared as follows: Counsel for Torres would receive eleven percent (11%) of the first $5 million of fees awarded, and twenty-five percent (25%) of the award of fees exceeding $5 million. Consequently, the total award of attorneys' fees to be sought from the Court under a percentage-of-the-fund recovery would not be greater than ten (10%) percent. In the event that the Court awards attorneys' fees based on the lodestar method, Interim Class Counsel and Counsel for Torres will seek the award of fees they believe they are entitled to based on the hours each has devoted to the litigation and resolution of the matter.

17

Counsel for Torres and Interim Class Counsel further agreed to proceed in unity with

regard to the motion for attorneys' fees and costs, and Counsel for Torres agreed to support

Interim Class Counsel's pursuit of appointment as Lead Counsel.

Respectfully submitted this 6th day of June, 2006.

**PHILLIPS & BORDALLO, P.C.**

By:_____
     **MICHAEL F. PHILLIPS, ESQ.**

*Attorneys for Petitioner Julie Babauta Santos*
*and Interim Class Counsel*

**LUJAN AGUIGUI & PEREZ** LLP

By:_____
     **IGNACIO C. AGUIGUI, ESQ.**

*Attorneys for Plaintiff Charmaine R. Torres*

18