SHIMIZU CANTO & FISHER
Suite 101 Dela Corte Building
167 East Marine Corps Drive
Hagåtña, Guam 96910
671.472.1131

TOUSLEY BRAIN STEPHENS PLLC
Kim D. Stephens, P.S., *Pro Hac Vice*
Nancy A. Pacharzina, *Pro Hac Vice*
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
206.682.5600

*Attorneys for Plaintiffs Mary Grace Simpao, Christina Naputi and Janice Cruz*

FILED
DISTRICT COURT OF GUAM
JUN - 8 2007 *nba*
MARY L.M. MORAN
CLERK OF COURT

## DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

| | |
|---|---|
| MARY GRACE SIMPAO, CHRISTINA NAPUTI, and JANICE CRUZ, on behalf of themselves and a class of others similarly situated,<br><br>     Plaintiffs,<br><br> vs.<br><br>GOVERNMENT OF GUAM,<br><br>     Defendant,<br><br> vs.<br><br>FELIX P. CAMACHO, Governor of Guam,<br><br>     Intervenor-Defendant. | CASE NO. CV04-00049<br>CASE NO. CV04-00006<br><br><br>PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS |

### INTRODUCTION

For two and one-half years, the *Simpao* plaintiffs aggressively litigated the same claims at issue here to secure EITC's rightfully due Guam's poorest taxpayers. *Simpaos*' persistent and successful prosecution of their parallel class-case motivated and paved the way for expeditious settlement of *Santos* under terms much improved from those proposed in the first settlement

**ORIGINAL**

agreement reached in that case (hereinafter "*Santos I.*") Additionally, while the Defendant Government has chosen to settle with *Santos*, *Simpao* has continued to improve the position of the class through its role as an active watchdog over the *Santos* settlement process. In circumstances like these, fairness requires (as does Ninth Circuit case law) that *Simpao*'s counsel be compensated from the common fund settlement in accordance with their significant contribution.

*Simpao*'s contribution to the proposed settlement has been great. The Government's defense against the *Simpao* action was vigorous (and duplicative), with the Attorney General and the Governor contesting both jurisdiction and liability. Yet *Simpao*'s arguments have been heard and heeded by the Governor and four different federal judges with dramatic and palpable benefits for the Settlement Class proposed here.

First, *Simpao*'s complaint was the first and only of the EITC actions to seek immediate implementation of an EITC claims filing procedure. In response, the Governor quickly implemented such a procedure by Executive Order, issued January 2005, only one month after the *Simpao* complaint was filed. Several thousand class members filed claims before the settlement was reached.

Second, *Simpao*'s success in motions practice paved the way for this settlement and guided the revised settlement structure. For example, prior to Judge Lew's ruling on the Government's motion to dismiss the *Simpao* Complaint, the Governor claimed the jurisdictional and procedural defenses the Government raised there were also barriers to settlement. *Simpao*'s successful defense against that motion ensured the merits of Plaintiffs' EITC claims would be heard by the Court and showed how the Court could find jurisdiction over a proposed settlement. As a consequence, the validation of *Simpao*'s action by its

survival over this motion to dismiss inevitably contributed to the Governor's decision to settle claims for EITC generally.

*Simpao*'s motion for summary judgment (expeditiously brought, and ultimately successful) was also fully briefed and reviewed by the Governor before he signed on to any *Santos* settlement. While the favorable ruling was issued after the Governor agreed to the second settlement agreement reached in the *Santos* action ("Santos II"), it would be unreasonable to assume *Simpao*'s briefing and prior success did not facilitate the timing and substance of the Santos II settlement process. Moreover, the importance of the *Simpao* Summary Judgment holding to the third *Santos* settlement ("Santos III") is perhaps best demonstrated by the settling parties' own references to, and reliance on, that holding to support preliminary approval of the Santos III settlement by this Court. [1]

In addition to motivating a timely settlement, the successes of *Simpao* also directly expanded the benefits provided the proposed Settlement Class. Specifically, the Santos III Settlement Class has been expanded over that proposed in Santos I to include tax years 1995-1997. The settlement fund has correspondingly increased from 60 to 90 million dollars. Also importantly, Santos III at least attempts to provide a funding mechanism for the settlement in the form of Defendant's promise to properly administer the Tax Reserve Fund and Efficient Tax Refund Payment Fund (collectively the Tax Funds) and pledge of a portion of the latter to pay this settlement. Notably, *Simpao* urged in its First Amended Complaint that meaningful

---

[1] In fact, to stop *Simpao* who quickly moved on from summary judgment to file a motion for class certification, the Governor sought a stay of the *Simpao* action by promising it had a settlement that could be timely presented to the Court even though the Governor's dispute with the AG over the division of powers was far from resolved. *Simpao* even aided timely resolution of the Governor/AG power struggle issue (and thus the EITC issue) by noting for the Court that no party could efficiently or legitimately resolve EITC litigation without a ruling on this issue. In response the Court ordered briefing and ruled on the division of power issue freeing the EITC parties to proceed against one identified defendant.

EITC relief had to include the government's commitment to properly administer (and contribute to) these two Tax Funds. The Governor also recognized the crucial role of these mechanisms to providing EITC payments to any class (see Executive Order 2005-01).

Finally, *Simpao* has continued to improve the position of the class by serving as watchdog over the *Santos* settlement process and educating the Court on issues important to approval of this proposed settlement. It was *Simpao*'s efforts in this role that led the Court to seek additional briefing on certain key issues and ultimately led the settling parties (at the Court's urging) to redefine the Settlement Class. The revised scope of the class (which was the scope always advocated by *Simpao*) ensured the existence of the settlement itself, because if the Court did not adopt *Simpao*'s revision, it would simply have no jurisdiction whatsoever to hear an otherwise illegal settlement agreement.

The benefits afforded this settlement class through the *Simpao*'s litigation are the result of hundreds of hours and significant resources expended by *Simpao* counsel. *Simpao* counsel researched and developed the winning legal strategy for class-wide prosecution of these complex tax claims, conducted discovery and independent factual research, and engaged experts and attended numerous hearings and meetings. These efforts were all reasonable and necessary to achieve the significant results described above.

It is well settled that Plaintiffs' counsel in common fund class action settlements should be paid by their clients (Class Members) for efforts such as those described above out of the common fund established for the benefit of the Class. It is also well settled that any or all Plaintiffs' counsel, not just counsel selected from the many to serve as settlement class counsel, are entitled to a fee award commensurate with the results they achieved for the Class, the risks taken and the resources constructively expended.

1    Should the Court approve this Settlement, this Court will also exercise its discretion to

2    determine how much of a fee award is appropriate for each of the plaintiffs' counsel. *Simpao*'s

3    counsel respectfully request they be awarded 5% of the common fund in recognition of their

4    significant accomplishments and the risk they took on behalf of this class. *Santos/Torres*

5    counsel have indicated they will ask for 10% of the common fund. Thus the Court can

6    accommodate *Simpao*'s request by either by reducing the *Santos/Torres* award by half or by

7    increasing the total fee award to 15% of the fund (a value still well below the 9th Circuit

8    benchmark of 25%).

9

10    In sum, counsel for the *Simpao* plaintiffs made substantial contributions that helped the

11    class obtain a common fund worth over $90 million, and one contribution which saved it

12    altogether. The *Simpao* plaintiffs therefore respectfully request the Court award them

13    attorneys' fees in the amount of five percent of the common fund, plus $22,129.38 in costs.

## I. PROSECUTION OF THE *SIMPAO* ACTION CONTINUALLY BENEFITED THE CLASS THROUGHOUT.

### A. From Its Inception, the *Simpao* Action Addressed all Class Members and Issues Necessary to Resolve the EITC Issues.

*Simpao* was filed in December 2004 in direct response to the problems perceived of the

Santos I settlement. *Simpao* plaintiffs originally moved to intervene in *Santos*, noting among

other defects that the lack of individual class notice in Santos I deprived class members of

constitutional due process. In response, the Government later adopted individual class notice in

1    its proposed settlement agreements.  The Court ultimately denied *Simpao* Plaintiffs intervention

2    but advised instead they should file a separate action.  Taking heed, *Simpao* Plaintiffs filed such

3    a Complaint, wherein the *Simpao* Plaintiffs included claimants from tax year 1995, which the

4    *Santos* action neglected to include.  The *Simpao* Complaint also ensured the viability of its

5    class by requiring that members filed a sufficient tax return, thus confirming necessary

6    jurisdictional requirements, which the *Santos* action also neglected, leaving its class vulnerable.

7    The Complaint in *Simpao* also sought an immediate claims filing procedure previously denied,

8    in order to ensure jurisdictionally capable claims.  The *Santos* action failed to further the ability

9    of the class to preserve claims in this manner.  *Simpao* filed an Amended Complaint shortly

10   after the initial Complaint, which secured a funding source for EITC payments by seeking that

11   the Government comply with the Tax Reserve Fund and Trust Fund laws (which it was

12   violating) and withhold tax receipts to ensure future EITC payment funds.  On the other hand,

13   the Santos I settlement agreement lacked any funding source for its proposed payments.

**B.    *Simpao* Obtained Immediate Relief in the Form of the Executive Order Establishing the Claims Procedure**.

The class reaped an important benefit simply from the *Simpao* plaintiffs filing their

complaint on December 3, 2004. Their complaint highlighted the fact that Guam taxpayers still

had no way to make a claim for the EITC.  Compl., CV04-00049, Dec. 3, 2004, Docket No. 1 ¶

1.10.  Just one month later, on January 12, 2005, Governor Camacho issued an Executive

Order creating a claims mechanism so that taxpayers would have a way to make EITC claims.

*See* Decl. of James L. Canto II in Support of [Simpao] Plaintiffs' Mtn. for Partial Summ. J.

CV04-00049, April 14, 2005, Docket No. 61 Ex. F, Executive Order 2005-01 *Relative to Filing*

*Earned Income Tax Credit*, Gov. J. Camacho.

C.   **The *Simpao* Plaintiffs were the Sole Litigants to Achieve Favorable Substantive Rulings On Jurisdiction and Guam's Obligation to Pay the Earned Income Tax Credit.**

The *Simpao* plaintiffs actively litigated important substantive issues critical to successful resolution of this case (in contrast to the *Santos* action). First, the *Simpao* plaintiffs defeated Guam's motion to dismiss for lack of jurisdiction with the Court finding subject matter jurisdiction over the EITC claims, insofar as the *Simpao* Plaintiffs exhausted their administrative remedies and sovereign immunity was unavailable to Defendant. *Order*, J. Lew, CV04-00049, Mar. 17, 2005, Docket No. 53.

Next, the *Simpao* plaintiffs obtained a critical ruling on summary judgment in which the Court held (1) that the filing of a tax return satisfies the jurisdictional requirement of 26 U.S.C. § 6511; and (2) that as a matter of law Guam must pay the EITC. *Order*, J. Martinez, CV04-00049, June 15, 2005, Docket No. 99 p.9. The former holding allowed class plaintiffs to establish exhaustion of administrative remedies on a class-wide basis and opened the way for the Court to rule on their claims as a class action. Of course the latter ruling greatly advanced the class by being the only judgment mandating their EITC claims being paid, placing the class in a superior position in the litigation and undeniably leveraging the ensuing settlement by the Government.

D.   **After the *Simpao* Plaintiffs Raised Objections, the Court Acknowledged Concerns Regarding the Third Proposed Settlement.**

When the *Santos* and *Torres* plaintiffs moved for preliminary approval of the third settlement, the *Simpao* plaintiffs filed a Supplemental Filing in Opposition to Preliminary

1 Approval of Class Action.[6] CV04-00049, filed Aug. 11, 2006, Docket No. 227. The most

2 important objection raised by *Simpao* plaintiffs in their briefing was that the proposed

3 settlement failed to establish jurisdiction by exhaustion of remedies, making it fatally defective,

4 and that it instead attempted to improperly confer jurisdiction on class members who never

5 filed tax returns.

6
7 After lifting the stay, following denial of the Attorney General's interlocutory appeal,

8 the Court considered both the third proposed settlement and the *Simpao* plaintiffs' opposition.

9 The Court issued an Order seeking "further briefing on the issue of whether it lacks jurisdiction

10 over those taxpayers who are included in the settlement class but never filed a tax return."

11 *Order*, J. Tydingco-Gatewood, CV 04-00006, Dec. 7, 2006, Docket 366 p.1. When ordering the

12 additional briefing, the Court referenced the prior *Simpao* ruling holding that plaintiffs

13 exhausted their administrative remedies by filing a tax return.

14
15 **E.    The Court Adopted *Simpao* Plaintiffs' Argument Regarding Jurisdiction.**

16 On January 4, 2007, the Court heard argument on the issues raised in its December 7

17 Order. The Court stated that while it was generally in favor of the settlement, it was concerned

18 it lacked jurisdiction over those who had not filed tax returns, acknowledging the validity of the

19 jurisdictional issue the *Simpao* plaintiffs raised. After a fifteen-minute recess, the *Santos* and

20 *Torres* parties redacted provisions from the proposed Settlement Agreement (removing non-

21 filers from its class definition but still failing to define the class as those who filed tax returns),

22 and the Court preliminarily approved the settlement. *Order*, J. Tydingco-Gatewood, CV04-

23
24
25
26 ───────────

[6] Although *Simpao* did not join in the motion for preliminary approval, *Santos* cited the *Simpao* case in its briefing as evidence of the sufficiency of the proposed settlement. Supplemental Mem. of Points and Authorities in Supp. of the *Santos* and *Torres* Parties' Joint Mot. for Prelim. Approval, filed Dec. 15, 2006, Docket No. 368, p.7.

00006, Jan. 9, 2007, Docket No. 384 p.2. The Court noted that the *Simpao* plaintiffs'

participation "was appreciated as they raised key issues concerning jurisdiction." *Id*.

### F. Direct Correlation Exists between Events in the *Simpao* Litigation and Improvements in the Three Proposed Settlements.

The correlations between the *Simpao* litigation and increased benefits in the three

settlements are summarized in the following chart:

| Date | Action | Date | Correlating Benefit to Settlement |
|------|--------|------|-----------------------------------|
| Dec. 3, 2004 | *Simpao* Complaint filed<br><br>•alleged injury from Guam's ongoing failure to establish EITC claims process<br><br>•proposed class included 1995-2004 claimants | January 12, 2005 | Executive Order 2005-01 issued by Governor Camancho<br><br>•created EITC claims process |
| March 17, 2005<br><br>June 15, 2005 | *Simpao* prevails against Guam's motion to dismiss<br><br>*Simpao's* partial summary judgment granted June 15<br><br>•Court holds Guam must pay EITC<br><br>•Court holds filing of tax return satisfies jurisdictional requirements for claimants | June 20, 2005 | Governor agrees to Santos II<br><br>Settlement fund is increased from $60 million to $90 million<br><br>• Class expanded to include 1995 and 2004 Tax years years (these were always part of *Simpao* action) |
| August 11, 2006 | *Simpao* files opposition to Santos III raising jurisdictional issues among other things | Dec. 7, 2006 | Court orders supplemental briefing regarding issues raised by *Simpao's* opposition<br><br>•whether Court has jurisdiction over non-filers<br><br>•early pay-outs to 1997 and 1998 claimants |
| January 8, 2007 | *Santos* and *Torres* modify third proposed settlement<br><br>•change resolves jurisdictional issues raised by *Simpao's* opposition | January 9, 2007 | Court preliminarily approves third proposed settlement<br><br>•Court notes that *Simpao* raised "key issues regarding jurisdiction" |

## II. THE *SIMPAO* PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS

Under the common fund doctrine, attorneys for successful plaintiffs are entitled to recover litigation costs and attorneys' fees from the common fund established for the benefit of the class .[7] *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) (stating that "stranger beneficiaries" should not receive their benefits at no cost to themselves). The doctrine is "based on the equitable notion that those who have benefited from litigation should share in its costs." *State of Florida v. Dunne*, 915 F.2d 542, 544-545 (9th Cir. 1990).

The *Simpao* plaintiffs are class members in the proposed settlement.[8] However, the *Simpao* plaintiffs brought their action parallel to the *Santos* and *Torres* actions, and they have raised objections to the proposed settlement. Although not satisfied with the proposed settlement, the *Simpao* plaintiffs are nonetheless named plaintiffs in a consolidated action whose prosecution assisted in obtaining a $90 million common fund for all members of the designated classes.

The *Simpao* case was brought at the burden and sole expense of plaintiffs' counsel. Their counsel are Kim Stephens and Nancy Pacharzina of Tousley Brain Stephens PLLC, admitted *pro hac vice,* and co-counsel, Curtis Van de veld, James Canto II, and Thomas Fisher of Van de veld Shimizu Canto & Fisher. Both firms were involved in the investigation, prosecution, and resolution of the *Simpao* action from its inception to the present. See Declaration of James L. Canto in Support of Simpao Plaintiffs' Application for Attorneys' Fees and Costs ¶ 3. Specifically, Tousley Brain Stephens focuses on complex civil and commercial litigation and is nationally recognized for its experience in class actions. Id. at Exhibit 2 (Decl.

---

[7] Counsel for individual class members are entitled to a share of a common fund fee award. Alba Conte, JD, *Common-Fund Fee Awards.* 1 Attorney Fee Awards § 2:25 (3d ed.).

[8] Simpao and Cruz did not join in the motion requesting approval of the settlement, they did not opt-out, and their claims will therefore be resolved by the settlement. (*Simpao* plaintiff Christine Naputi, however, has chosen to opt-out of the class. *See* Statement from Christine M. Naputi in Requesting Exclusion, filed May 8, 2007, Docket No. 409.) Obviously, the *Simpao* plaintiffs' prospects of successfully obtaining results (previously believed possible) are substantially and adversely impacted by the pending settlement, essentially foreclosing their ability to go forward, even though they have devoted over two and one-half years to this litigation.

1   of Kim D. Stephens) at ¶¶ 2, 4.

2       In addition to researching and briefing all of the above-described motions which gained

3   substantial advances for the class, the *Simpao* plaintiffs also analyzed extensively Guam's

4   potential liability and ability to pay. They retained experts, at their counsel's sole expense, to

5   conduct this analysis and also contacted government officials to evaluate Guam's history of

6   payment and its ability to pay any EITC awarded. Decl. of James L. Canto ¶ 3. Counsel for the

7   *Simpao* plaintiffs have subsequently provided much of this information to the Court. *See e.g.*

8   Supplemental Filing in Opp. to Prelim. Approval of Class Action, CV04-00049, filed Aug. 11,

9   2006, Docket No. 227 at p.9.

10      *Simpao's* counsel performed an enormous amount of work in connection with the

11  prosecution and settlement of this case, including (but not limited to) the following:

12      - Objecting to the settlement first proposed in the *Santos* case and moving to

13        intervene in that action;

14      - Preparing pleadings and filing a separate action after *Santos* intervention was

15        denied;

16      - Drafting motions and other court filings, and arguing those motions before the

17        court, including defending against Guam's motion to dismiss as well as

18        bringing a partial summary judgment motion;

19      - Preparing and filing a motion for class certification;

20      - Interviewing fact witnesses;

21      - Retaining experts to analyze Guam's potential liability;

22      - Extensively analyzing Guam's tax laws and legislative history relating to EITC;

23      - Analyzing and formulating strategy to meet Guam's challenges;

24      - Formulating evidence to prove total losses suffered by the Class;

25      - Attending several hearings in Guam, requiring Mr. Stephens and Ms.

26        Pacharzina to travel to Guam from Seattle, Washington;

1          • Participating in mediation held in Guam;

2          • Communicating with Government officials in order to determine whether Guam

3          has funds to pay EITC, as well as to determine the history of payment of the EITC

4          in Guam; and

5          • Conducting research and developing evidence for motions and eventual trial on

6          the merits.

7   Decl. of James L. Canto ¶ 3.

8          Also, both on their own initiative and in response to the Court's Order, *Simpao's* counsel

9   extensively briefed legal issues related to problems with the proposed settlement. *Id.* In all,

10  *Simpao* plaintiffs' counsel devoted thousands of professional hours and expended a total of

11  $22,129.38 in unreimbursed expenses, all reasonably and necessarily incurred in the

12  prosecution of this case. See Decl. of James L. Canto at ¶¶ 4, 7 and Exhibit 2 (Decl. of Kim D.

13  Stephens) at ¶¶ 8, 10.

14         The *Simpao* plaintiffs are entitled to attorneys fees and costs because they actively

15  pursued an action that has resulted in a common fund for the benefit of the entire plaintiffs'

16  class. *State of Florida v. Dunne*, 915 F.2d 542, 544-545 (9th Cir. 1990).

17         The *Simpao* plaintiffs are entitled to reasonable attorneys fees reflecting the substantial

18  contributions made to the entire class by their extensive litigation conducted before

19  consolidation with the other cases. *See Frankenstein v. McCrory Corporation, Girsch v.*

20  *Lerner Stores Corp.*, 425 F.Supp. 762, 767 (D.C.N.Y. 1977) (attorneys for plaintiffs of a

21  consolidated case in securities class action entitled to attorneys' fees where, although not

22  participants in the settlement, they "broke much of the original ground" in the litigation). The

23  several attorneys in the three consolidated cases, including *Simpao* plaintiffs' counsel, should

24  be awarded fees apportioned from the entire common fund. Apportionment based on recovery

25  of individual classes is not required and would lead to the inequitable result of some class

26  members paying more for their benefit than others. *Melendres v. City of Los Angeles*, 45 Cal.

App. 3d 267, 280 (1975). Therefore, this Court should award attorneys' fees and costs to the various plaintiffs by allocating a percentage of the common fund for that purpose, and then allocating that amount among the various attorneys. *See Howes v. Atkins*, 668 F.Supp. 1021, 1025 (E.D. Ky. 1987) *citing* H. Newberg, *Attorney Fee Awards*, Ch. 2 pp. 53-54, 59-60 (1986). For example, in *Howes*, the Court awarded 40 percent of the entire settlement fund to counsel for numerous plaintiffs.[9] 668 F.Supp. at 1027.

In addition to providing substantial benefits to the class in their role as plaintiffs, the *Simpao* plaintiffs also enhanced the final proposed settlement and assisted the Court in evaluating it by raising objections. "Objectors" are entitled to attorneys' fees when they preserve or increase the common fund or substantially benefit the class. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051 -1052 (9th Cir. 2002). Objectors are also awarded attorneys' fees for assisting the court. *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.,* 212 F.R.D. 400, 413 (E.D. Wis. 2002) (noting objectors may be awarded fees if they enhance the recovery in "any discernible fashion").

The Court should award the Simpao plaintiffs their attorneys' fees and costs both for their role as plaintiffs and for their role as "objectors."

**A.      The *Simpao* Plaintiffs' Diligent Litigation Substantially Benefited the Class.**

In a fundamental sense, because of the substantial legal work done by the *Simpao* plaintiffs, the case is nearly "won." This is because the *Simpao* rulings determined: 1) the Court has jurisdiction, 2) the class exhausted its administrative remedies, and 3) Guam is required to pay the EITC. Based on these rulings, it became nearly inevitable that the class would obtain an excellent recovery, whether by settlement or judgment. The *Simpao* plaintiffs'

---

[9] The *Howes* court also instructed the attorneys to apportion the award among themselves. However, a percentage award to all plaintiffs' counsel as a group, rather than apportioning a specific percentage to each, poses potential problems and may prove highly inefficient. As the *Howes* court noted, assigning a lump sum to be divided amongst various plaintiffs' attorneys may create a situation "analogous to a lifeboat full of castaways who have discovered a single can of Spam in the food locker." *Howes*, 668 F. Supp. At 1027.

efforts in obtaining these rulings assisted the entire class by removing much of the complexity that originally attended the case for all plaintiffs. More importantly, the rulings benefited the class by allowing the case to proceed in this Court, preserving claims that otherwise would have been barred, and establishing the Government's liability.

The *Simpao* plaintiffs success against Defendant's Motion to Dismiss is perhaps the most important contribution to the class: had they lost the motion, the Court would not have jurisdiction to approve the present proposed settlement, or any settlement, of this case. *Order*, J. Lew, CV04-00049, Mar. 17, 2005, Docket No. 53 (denying Governor's motion to dismiss for lack of jurisdiction); *See also Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 at 701, 102 S. Ct. 2099 (1982) (parties may not confer subject matter jurisdiction upon court via settlement agreement where it does not otherwise exist).

If the *Simpao* plaintiffs had not obtained the partial summary judgment order finding that the filing of a tax return constituted exhaustion of administrative remedies, the Government could have avoided liability for many class members' claims. *Order*, J. Martinez, CV04-00049, June 15, 2005, Docket No. 99, p. 9. This is because for many years, the Government affirmatively blocked EITC claims, so taxpayers were unable to make them. *Id.*

The ruling finding Guam is <u>required</u> to pay the EITC is also an important contribution made by the *Simpao* plaintiffs. This favorable ruling increased negotiating leverage, as evidenced by the subsequent improvements in the proposed settlements. While the *Simpao* plaintiffs do not claim full credit for improvements to the settlement proposals, it would be incredible to suggest that their successes had <u>no</u> bearing on those increased benefits. Because the timing of the increased benefits corresponds to favorable rulings in the *Simpao* litigation (see chart on pages 8 and 9, *supra*), the Court can track those benefits with "enough accuracy to

inspire confidence," thereby entitling the *Simpao* plaintiffs to an award of their costs and fees. *Wininger v. SI Management*, 301 F.3d 1115, 1121 (9th Cir. 2002) ("because the district court has jurisdiction over the resulting fund, it [is] within its equitable power to award fees for work that helped create the fund, even though . . . done outside the strict confines of the litigation immediately before the court").

**B.     The *Simpao* Plaintiffs Benefited the Class by Increasing its Scope.**

The *Simpao* plaintiffs also benefited the class by increasing its scope. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) (class was benefited by efforts to streamline and simplify claims process, thereby increasing number of eligible class members). The *Simpao* plaintiffs always sought recovery for taxpayers from 1995 to present. The *Santos* plaintiffs, on the other hand, originally sought EITC recovery only for tax years 1998-2003. Santos' second settlement, brought after *Simpao* moved for partial summary judgment, then added 1995 and 2004 claimants. Joint Mot. for Prelim. Approval of Settlement Agreement, CV04-00006, filed June 20, 2005, Docket No. 212. The current settlement proposal, entered after the favorable partial summary judgment rulings and after the *Simpao* action was consolidated with the other two cases, further improved the total settlement by adding 1997 claimants. Joint Mot. for Prelim. Approval of Class Action Settlement Agreement, CV04-00006, May 26, 2006, Docket No. 320.

The *Simpao* plaintiffs' litigation also obtained relief for the Class outside of the litigation context. *Wininger*, 301 F.3d at 1121 (9th Cir. 2002) (award of attorneys' fees to Plaintiffs' counsel for actions taken to call vote of limited partners was proper, because class benefited when actions caused general partner to withdraw liquidation plan). The Court can infer this connection based on the timing of Guam's creation of its EITC claims procedure: just

one month after *Simpao's* complaint alleging *ongoing* injury from Guam's failure to establish

one. The class benefited by Guam's establishment of the claims procedure, as it facilitated

claimants' ability to make EITC claims.

###### C. The *Simpao* Plaintiffs Provided Assistance to the Court So That It Was Not Required to Consider the Proposed Settlement "In a Vacuum"

Objections can provide "a useful, historical, and comparative backdrop" so that the

Court is not required to consider a settlement "in a vacuum." *In re Horizon/CMS Healthcare*

*Corp. Sec. Litig.*, 3 F. Supp.2d 1208, 1215 (D.N.M. 1998). Courts recognize that having a

broad range of participants during the settlement process mitigates the risk of collusion over

attorneys' fees and the terms of the settlement generally. *Great Neck Capital*, 212 F.R.D. at

412-417. As the *Great Neck Capital* Court recognized, after a settlement is reached, class

counsel and the Court are inclined towards an atmosphere that is largely cooperative; therefore,

a lawyer who raises pertinent questions about the terms or effects of a proposed settlement

renders an important service for class members, the court and the public generally. *Id.*

The *Simpao* plaintiffs' objections benefited the class in ways both specific and general.

For example, a specific benefit resulted from the *Simpao* plaintiffs' objection regarding

jurisdiction. This objection resulted in revision to the class definition to ensure the Court had

jurisdiction of the entire proposed settlement class. *Simpao* raised this issue in it objections to

Santos II which prompted the Court to ask for briefing on the issue in the context of Santos III

The Court ultimately relied on *Simpao*'s reasoning in recommending the parties revise the class

definition. Court recognized it would be "unfair to counsel when . . . he spends time and effort

to prepare and advance an argument which is openly quoted by the Court, but then receives no

credit . . ." *White v. Auerbach*, 500 F. 2d 822, 829 (2d Cir. 1974) *citing Green v. Transitron*

*Elec. Corp.*, 326 F.2d 492, 499 (1st Cir. 1964).

The *Simpao* plaintiffs may also be awarded fees for the general benefit of "contribut[ing] materially to the proceeding by sharpening the debate, enhancing the adversarial process, and aiding the court." *Id.*; *see also Frankenstein v. McCrory Corp.*, 425 F. Supp. 762, 767 (S.D.N.Y. 1977) (objections, although ultimately overruled, were not frivolous, and the presence of an objector transformed the settlement into a truly adversarial proceeding); *In re the Prudential Ins. Co. of Am. Sales Practices Litig.*, 273 F.Supp.2d 563 (D.N.J. 2003) ("Objectors serve as a highly useful vehicle for members of the class and for the public generally").

In addition to their substantial role as plaintiffs, through their objections the *Simpao* plaintiffs "ably performed the role of devil's advocate." *Howes*, 668 F. Supp. at 1027 (awarding 10% of the common fund to objectors because, by making a "vigorous" attack on the settlement, they assisted the court in determining that the proposed settlement was fair). In the *Prudential Insurance Company case,* the court awarded attorneys' fees to objectors recognizing that a lawyer for an objector who "raises pertinent questions about the terms or effects, intended or unintended, of a proposed settlement renders an important service." 273 F.Supp. 2d at 570. In the instant case, the *Simpao* plaintiffs rendered this important service.

## III. AWARD TO *SIMPAO* PLAINTIFFS OF FIVE PERCENT OF COMMON FUND IS REASONABLE AND EQUITABLE

The Court has inherent equitable power to allocate attorneys' fees to fairly distribute compensation based on the benefits conferred on the class. *In re Horizon/CMS Healthcare Corp.*, 3 F. Supp. at 1215 *citing Vincent,* 557 F.2d 759. The Court is simply required to determine that fee awards are reasonable under the circumstances. *Dunne*, 915 F.2d at 545.

In the Ninth Circuit, a district court may award attorneys' fees in common fund cases using either the percentage-of-the fund or lodestar method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). A Third Circuit task force appointed to compare the lodestar and percentage-of-the fund approaches concluded that in common fund cases the best method is percentage-of-the-fund. *Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261, 1267-1270 (D.C. Cir. 1991). ("the percentage-of-the-fund approach is less demanding of scarce judicial resources"). Moreover, the Supreme Court has never formally adopted the lodestar method in a common fund case. *Shaw v. Toshiba Am. Info. Servs.*, 91 F. Supp. 942, 964 (E.D. Tex. 2000) *citing Manual for Complex Litigation* (Third) § 24.12 198 (1995).

A percentage-fee award may give little weight to the amount of attorney time expended. *Ann. Manual Complex Litig.* § 14.121 (4th ed.). Generally, the greatest emphasis is on the size of the fund created, because that is the measure of success. *Id.* However, attorneys' hours are sometimes considered through use of a lodestar "cross-check" as a method of verifying the reasonableness of a percentage award. *Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*, 364 F.Supp.2d 980, 999 (D.Minn. 2005). The resulting multiplier does not have to fall within a specific range, but should be determined by the unique circumstances of each case. *Id.* Where the lodestar method is used as a cross-check, percentage award multipliers greater than four times lodestar are not uncommon. *Rite Aid Corp. Sec. Litig.*, 362 F.Supp.2d 587, 589-590 (E.D.Pa. 2005) (awarding a percentage amount equivalent to a 6.96 multiplier); *Roberts v. Texaco, Inc.*, 979 F.Supp. 185, 197 (S.D.N.Y. 1997) (awarding a percentage amount equivalent to a 5.5 times multiplier), *citing In re Beverly Hills Fire Litig.*, 639 F.Supp. 915 (E.D.Ky. 1986) (lodestar with 5 times multiplier); *see also In re Boston and Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890 (1st Cir. 1985) (lodestar

with 6 times multiplier); *Xcel Energy, Inc. Sec.*, 364 F.Supp.2d at 99 (awarding percentage amount equivalent to a 4.7 multiplier) *and citing In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134-35 (D.N.J. 2002) (awarding percentage amount equivalent to a 4.3 multiplier); *see also Maley v. Del Global Techs. Corp.*, 186 F.Supp.2d 358, 371 (S.D.N.Y. 2002) (percentage fee resulted in "modest multiplier of 4.65").

The "benchmark" for attorneys' fee awards in a common fund case is 25% of the common fund. *Six (6) Mexican Worker* v. *Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990). The *Santos* plaintiffs seek a combined total of ten percent of the settlement fund for their attorneys' fees. [11]    Mot. for Attys' Fees and Costs Pursuant to Section II (a)(iv) of the May 26, 2006 Class Action Settlement Agreement, CV04-00006, filed June 2, 2006, Docket No. 328.  Counsel for the *Simpao* plaintiffs provided substantial legal services at their own expense, with the expectation of recovering on the contingency, and would normally seek to recover fees based on the 25% benchmark, deviating upward or downward as appropriate. Here given the nature of the class and  because the proposed settlement provides class members substantially less than counsel for *Simpao* envisioned, the *Simpao* plaintiffs join *Santos* in applying a significant downward deviation and seek only five percent of the $90 million common fund for all their work as plaintiffs and objectors.[12]

Given the Ninth circuit 25% benchmark, a five percent request is extremely conservative. Greater percentage awards have even been given to "objectors" counsel who only arrived on the scene upon the eve of settlement. For example, in *In re the Horizon/CMS*

---

[11] It appears *Torres* has agreed to share in the fees awarded to *Santos*.  Accordingly, Simpao treats *Santos* and *Torres* as one attorneys' fee claim referred to as "*Santos.*" *See* Mot. for Attorneys' Fees and Costs, CV04-00006, filed June 2, 2006, Docket No. 328.

[12] In the 9th Circuit, it is established that attorneys' fees should be based on the total fund available, regardless of the number of claims actually made. *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).

*Healthcare Corp.,* the Court awarded six percent to the objectors. 3 F. Supp. 2d at 1215 (the award was made by reallocating the attorneys' fee award of two other counsel by three percent each). The *Howes* Court apportioned ten percent of the entire settlement fund as fees for the objectors. 668 F. Supp. at 1027.

If the Court finds the total award of fees to all Plaintiffs should remain at the 10% of the common fund requested by *Santos* counsel, the *Simpao* award can be accommodated by a corresponding reduction in the requested *Santos* award i.e., the Court can award both *Santos* and *Simpao* counsel 5% of the common fund  See *In re Horizon/CMS Healthcare,* 3 F. Supp. 2d at 1215; *Vincent,* 557 F.2d at 772 (Court may use its inherent equitable power to assess fees paid to certain attorneys in order to compensate other attorneys for benefits provided to the entire class).  Alternatively, the Court may award *Simpao* attorneys' fees from the common fund generally, recognizing the contributions all counsel brought to the class in the amount of 15% of the common fund.

## IV. APPOINTMENT AS "LEAD COUNSEL" DOES NOT ENTITLE *SANTOS*' COUNSEL TO A GREATER SHARE OF ATTORNEYS FEES

While on first blush it might seem that Santos, as lead counsel for settlement, would receive a larger attorneys' fee award than *Simpao,* "lead counsel has no right to harbor any expectation beyond a fair day's pay for a fair day's work." *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.,* 56 F.3d 295, 310 (1st Cir. 1995) (noting "we are troubled by the implications of a scheme" in which the trial judge selects lead attorneys from many volunteers and then in making an attorneys' fee award penalizes those who were not chosen, thereby interfering with the non-lead attorneys' reasonable expectations and creating a potential appearance of favoritism).

While *Santos'* counsel is entitled to recover reasonable attorneys' fees for its role in

1  creating the common fund, it is not entitled to a greater portion of the attorneys' fees simply for

2  acting as lead counsel. This is especially true since *Santos'* counsel was not even appointed as

3  lead counsel until the hearing on preliminary approval of the settlement. In making its award,

4  the Court should consider the time, effort, risks and value contributed by each party. The Court

5  should also consider the reasonable expectations of *Simpao's* counsel, who diligently

6

7  prosecuted this matter at their own expense with the reasonable expectation that when they

8  prevailed they would be reasonably compensated. *See Washington Pub. Power Supply Sys. Sec.*

9  *Lit. v. City of Seattle*, 19 F.3d 1291, 1302 (9th Cir. 1994) (finding district court abused its

10  discretion in denying a risk multiplier where the record showed counsel had accepted the

11  contingency case with the expectation of enhancement). The *Simpao* plaintiffs' counsel

12  undertook a substantial amount of work that benefited the entire class and that was <u>not</u>

13  undertaken by the other parties, thereby shouldering a substantial burden of the litigation that

14  ultimately contributed to the class recovering a $90 million common fund. Plus, *Simpao* served

15

16  the additional function of objector. Therefore, the *Simpao* plaintiffs' contributions should

17  properly be valued as worth at least as much to the class as the work done by *Santos*.

18  **CONCLUSION**

19  The *Simpao* plaintiffs are entitled to recover attorneys' fees both as plaintiffs and as

20  "objectors." The *Simpao* plaintiffs vigorously prosecuted the case and "broke ground" on

21  underlying substantive issues. The *Simpao* plaintiffs' work benefited the entire class by

22  obtaining favorable substantive rulings that increased both settlement leverage and the scope of

23  the class. The *Simpao* plaintiffs also benefited the entire class by performing the valuable

24  service of acting as objectors. As a result, *Simpao* is entitled to an award of attorneys' fees

25  consistent with their role in undertaking the lion's share of the substantive legal work leading

26  up to the settlement and for serving as objectors.

If the Court grants final approval of the proposed settlement, the *Simpao* plaintiffs respectfully request the Court award them their attorneys' fees in the amount of five percent of the $90 million common fund, plus reimbursement for actual costs incurred in the amount of $22,129.38.

DATED this 8th day of June, 2007.

SHIMIZU CANTO & FISHER

By: _____
James L. Canto II

TOUSLEY BRAIN STEPHENS PLLC

Kim D. Stephens, P.S., *Pro Hac Vice*
Nancy A. Pacharzina, *Pro Hac Vice*

*Attorneys for Simpao Plaintiffs*

# TABLE OF CASES AND AUTHORITIES

## CASES

Frankenstein v. McCrory Corporation,
    425 F.Supp. 762 (D.C.N.Y. 1977)                    12, 17

Great Neck Capital Appreciation Inv. P'ship, L.P.
    v. PricewaterhouseCoopers, L.L.P.,
    212 F.R.D. 400 (E.D. Wis. 2002),             13, 16

Green v. Transitron Elec. Corp.,
    326 F.2d 492 (1st Cir. 1964)                  16

Howes v. Atkins,
    668 F.Supp. 1021(E.D. Ky. 1987)            13, 17, 20

In re Aremissoft Corp. Sec. Litig.,
    210 F.R.D. 109 (D.N.J. 2002)                 19

In re Beverly Hills Fire Litig.,
    639 F.Supp. 915 (E.D.Ky. 1986)              18

In re Boston and Maine Corp. v. Sheehan,
    Phinney, Bass & Green, P.A.,
    778 F.2d 890 (1st Cir. 1985)                18-19

In re Domestic Air Transp. Antitrust Litig.,
    148 F.R.D. 297 (N.D. Ga. 1993)              15

In re Horizon/CMS Healthcare Corp. Sec. Litig.,
    3 F. Supp.2d 1208 (D.N.M. 1998)      16, 17, 19-20, 20

In re the Prudential Ins. Co. of Am. Sales Practices Litig.,
    273 F.Supp.2d 563 (D.N.J. 2003)             17

In re Thirteen Appeals Arising Out of San Juan
    Dupont Plaza Hotel Fire Litig.,
    56 F.3d 295 (1st Cir. 1995)                 20

Insurance Corp. of Ireland, Ltd. v. Compagnie
    des Bauxites de Guinee,
    456 U.S. 694, 102 S.Ct. 2099 (1982)            14

Maley v. Del Global Techs. Corp.,
    186 F.Supp.2d 358 (S.D.N.Y. 2002)            19

Melendres v. City of Los Angeles,    .    .    .    .    .    12-13
    45 Cal. App. 3d 267 (1975)

Rite Aid Corp. Sec. Litig.,    .    .    .    .    .    18
    362 F.Supp.2d 587 (E.D.Pa. 2005)

Roberts v. Texaco, Inc.    .    .    .    .    .    18
    979 F.Supp. 185 (S.D.N.Y. 1997)

Shaw v. Toshiba Am. Info. Sys., Inc.,    .    .    .    .    .    17, 18
    91 F. Supp. 942 (E.D. Tex. 2000)

Six (6) Mexican Worker v. Arizona Citrus Growers,    .    .    19
    904 F.2d 1301 (9th Cir. 1990)

State of Florida v. Dunne,    .    .    .    .    .    .    10, 12, 17
    915 F.2d 542 (9th Cir. 1990)

Swedish Hospital Corp. v. Shalala,    .    .    .    .    .    18
    1 F.3d 1261, 1267 (D.C. Cir. 1991)

Vincent v. Hughes Air West, Inc.,    .    .    .    .    .    10, 17, 20
    557 F.2d 759 (9th Cir. 1977)

Vizcaino v. Microsoft Corp.,    .    .    .    .    .    13, 17, 18
    290 F.3d 1043 (9th Cir. 2002)

Washington Pub. Power Supply Sys. Sec. Lit. v. City of Seattle,    .    .    21
    19 F.3d 1291 (9th Cir. 1994)

White v. Auerbach,    .    .    .    .    .    16
    500 F. 2d 822 (2d Cir. 1974)

Williams v. MGM-Pathe Commc'ns Co.,    .    .    .    .    19
    129 F.3d 1026 (9th Cir. 1997)

Wininger v. SI Management,    .    .    .    .    .    .    15
    301 F.3d 1115 (9th Cir. 2002)

Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.,    .    .    .    18, 19
    364 F.Supp.2d 980 (D.Minn. 2005)

## COURT ORDERS

Order, J. Lew, District Court of Guam Civil
    Case No. 04-00049, Mar. 17, 2005 . . . . 7

Order, J. Martinez, District Court of Guam Civil
    Case No. 04-00049, June 15, 2005 . . . . 7, 14

Order, J. Tydingco-Gatewood, District Court of Guam Civil
    Case No. 04-00006, Dec. 7, 2006 . . . . 8

Order, J. Tydingco-Gatewood, District Court of Guam Civil
    Case No. 04-00006, Jan. 9, 2007 . . . . 8-9

## LEGAL TREATISES

Alba Conte, J.D., Common-Fund Fee Awards
    1 Attorney Fee Awards § 2:25 (3d Ed.) . . . . 10

H. Newberg, *Attorney Fee Awards*
    Ch. 2 pp. 53-54, 59-60 (1986) . . . . 13

Ann. Manual Complex Litig. § 14.121 (4th ed.). . . . . 18

Manual for Complex Litigation
    (Third Ed.) § 24.12 198 (1995) . . . . 18

# CERTIFICATE OF SERVICE

I, JAMES L. CANTO II, certify that I caused a copy of the foregoing document here filed to be served on the following individuals or entities on June 8, 2007, via hand delivery at the following addresses:

Counsel for Petitioner
   Charmaine Torres
Peter C. Perez, Esq.
Lujan, Aguigui & Perez, LLP
Pacific News Bldg., Ste. 300
238 Archbishop Flores St.
Hagatna, Guam 96910

Counsel for Respondent
   Felix P. Camacho
Daniel M. Benjamin, Esq.
Calvo & Clark, LLP
655 S. Marine Corps Drive, Ste. 202
Tamuning, Guam 96913

Counsel for Respondent
   Felix P. Camacho
Shannon Taitano, Esq.
Office of the Governor of Guam
Governor's Complex
East Marine Corps Drive
Adelup, Guam 96910

Counsel for Respondents
   Artemio Ilagan and Lourdes Perez
Rawlen M.T. Mantanona, Esq.
Cabot Mantanona LLP
BankPacific Building, 2nd Floor
825 South Marine Corps Drive
Tamuning, Guam 96913

Counsel for Petitioner
   Julie Babauta Santos
Michael F. Phillips, Esq.
Phillips & Bordallo, P.C.
410 West O'Brien Drive
Hagatna, Guam 96910

Respectfully submitted this _JUNE 8, 2007_

SHIMIZU CANTO & FISHER
TOUSLEY BRAIN STEPHENS PLLC

_____
James L. Canto II
Attorneys for Plaintiffs