[Appearing Counsel on next page]



**FILED**
DISTRICT COURT OF GUAM
JUN -8 2007
MARY L.M. MORAN
CLERK OF COURT

# DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, *et. al.*,<br><br>        Petitioners,<br>-v-<br>FELIX P. CAMACHO, *et. al.*<br><br>        Respondents. | Civil Case No. 04-00006<br><br>**JOINT MOTION OF PETITIONERS AND RESPONDENTS IN *SANTOS* AND *TORRES* FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[ORAL ARGUMENT REQUESTED]** |
| CHARMAINE R. TORRES, *et al.*,<br><br>        Plaintiffs,<br>-v-<br>GOVERNMENT OF GUAM, *et al.*,<br><br>        Defendants. | Civil Case No. 04-00038 |
| MARY GRACE SIMPAO, *et al.*,<br><br>        Plaintiffs,<br>-v-<br>GOVERNMENT OF GUAM,<br><br>        Defendant.<br>-v-<br>FELIX P. CAMACHO, Governor of Guam,<br><br>        Intervenor-Defendant. | Civil Case No. 04-00049 |

MICHAEL F. PHILLIPS
PHILLIPS & BORDALLO, P.C.
410 West O'Brien Drive
Hagatña, Guam 96910
Telephone: (671) 477-2223
Facsimile: (671) 477-2329
Interim Class Counsel and Attorneys for Petitioner *Julie Babauta Santos*

IGNACIO C. AGUIGUI
PETER C. PEREZ
LUJAN AGUIGUI & PEREZ LLP
300 Pacific News Building
Hagatña, Guam 96910
Telephone: (671) 477-8064
Facsimile: (671) 477-5297
Attorneys for Plaintiff *Charmaine R. Torres*

SHANNON TAITANO, ESQ.
OFFICE OF THE GOVERNOR OF GUAM
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
Telephone: (671) 472-8931
Facsimile: (671) 477-4826

EDUARDO A. CALVO, ESQ.
RODNEY J. JACOB, ESQ.
DANIEL M. BENJAMIN, ESQ.
CALVO & CLARK, LLP
Attorneys at Law
655 South Marine Drive, Suite 202
Tamuning, Guam 96913
Telephone: (671) 646-9355
Facsimile: (671) 646-9403
Attorneys for *Felix P. Camacho, Governor of Guam*

RAWLEN M.T. MANTANONA
CABOT MANTANONA LLP
BankPacific Buiding, 2nd Floor
825 S. Marine Corps Drive
Telephone: (671) 646-2001
Facsimile: (671) 646-0777
Attorneys for Respondents *Lourdes M. Perez and Artemio R. Ilagan*

## MOTION

Julie B. Santos, Petitioner in CV04-00006, individually and on behalf of all those similarly situated (hereinafter "EIC Class"), through her attorneys of record Phillips and Bordallo, P.C., by Interim Class Counsel Michael F. Phillips; Charmaine R. Torres, Petitioner in CV04-00038, through her attorneys of record Lujan Aguigui & Perez LLP, by Peter C. Perez; "); Governor of Guam Felix P. Camacho (hereinafter "Governor Camacho"); Director of Revenue & Taxation Artemio B. Ilagan and the Director of Administration Lourdes M. Perez (hereinafter the "Directors") submit this Joint Motion for Final Approval of Class Action Settlement Agreement. The moving parties base this Motion on the Memorandum of Points and Authorities filed concurrently herewith, the record before the Court, and all other arguments and evidence this Court may otherwise permit.

Respectfully submitted this ____ day of June, 2007.

| | |
|---|---|
| **OFFICE OF THE GOVERNOR OF GUAM**<br>**CALVO & CLARK, LLP**<br>Attorneys for Felix P. Camacho, Governor of Guam | **PHILLIPS & BORDALLO, P.C.**<br>Interim Class Counsel and Attorneys for Petitioner Julie Babauta Santos |
| By:_____<br>EDUARDO A. CALVO | By:_____<br>MICHAEL F. PHILLIPS |
| **MANTANONA LAW OFFICE**<br>Attorneys for Respondents Lourdes M. Perez and Artemio R. Ilagan | **LUJAN AGUIGUI & PEREZ LLP**<br>Attorneys for Plaintiff Charmaine R. Torres |
| By:_____<br>RAWLEN M.T. MANTANONA | By:_____<br>PETER C. PEREZ |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Petitioners and Respondents in the Santos and Torres actions respectfully submit this Memorandum of Points and Authorities in Support of their Joint Motion for Final Approval of Class Action Settlement Agreement.

In light of the disputed issues involved in this litigation concerning the liability of the Government of Guam to pay Earned Income Tax Credits ("EIC") to eligible Guam taxpayers since 1995, the inherent uncertainties and risks involved in further litigation, the benefits to be received and potential recovery for EIC class members pursuant to the Settlement Agreement, and the expense and burden of continued litigation, the Moving Parties agree that settlement on the terms and conditions set forth in the Settlement Agreement is fair and reasonable and in the best interests of the Moving Parties and of the Class sought to be certified.

As set forth in further detail in this filing, the Moving Parties submit that the Settlement Agreement satisfies the requirements for a final fairness evaluation by the Court. Accordingly, the Moving Parties are requesting that the Court issue an order that:

- Grants final approval to the Settlement Agreement filed concurrently herewith;
- Approves Final Certification of the Settlement Class, as defined in the Settlement Agreement and amended pursuant to the parties' agreement of January 4, 2007, pursuant to this Joint Motion and a separate motion to be filed with the Court within a few days and within the time frame provided for under the Settlement Agreement;
- Grants such other and further relief as the Court deems just and proper.

## II. SUMMARY OF THE LITIGATION

On February 12, 2004, Petitioner Santos initiated a Class Action Petition for the recovery of unpaid refundable earned income tax refunds and to compel the full implementation of the Earned Income Program. In August of 2004, Petitioner Torres instituted a similar action. Pursuant to the Court's Order of March 21, 2006, both matters,

previously consolidated for trial, entered mediation on April 6, 2007. The mediation, facilitated by the Honorable William J. Cahill, resulted in the Settlement Agreement attached herein as Exhibit "A" which forms the basis for the instant motion. Petitioners in a third consolidated case, CV04-00049, are not party to the Settlement Agreement or the instant Motion.

### III. ARGUMENT SUPPORTING FINAL APPROVAL

#### A. Summary of the Settlement Agreement

As discussed in the Joint Motion for Preliminary Approval of Class Settlement Agreement, the agreement contains provisions addressing the following substantive issues:

**1. Definition of the EIC Class.**

As the parties agreed during the hearing on January 4, 2007 and as described in the Amendment to the Joint Motion for Conditional Certification of the EIC Class for Settlement Purposes, the EIC Class is now defined as follows:

> All persons who do not elect to request exclusion from the class under the procedures described below and: (1) were subject to the Guam Territorial Income Tax ("GTIT") established in 48 U.S.C. § 1421i for tax years 1995-1996 and/or 1999-2004 and would have been eligible to file for the EIC established in 26 U.S.C. § 32 (as it applied in each respective tax year) if that program were applied in the Territory of Guam, and filed a timely tax return for the applicable tax year or year(s) in which the credit is sought; and/or (2) were eligible to receive an EIC credit under certain Guam territorial laws for tax years 1995-1996 and/or 1999-2004 that mirrored the federal EIC law (26 U.S.C. § 32), including the Guam Earned Income Program (Chapter 42 of 11 G.C.A.), and filed a timely tax return for the applicable tax year or year(s) in which the credit is sought; and/or (3) actually filed a claim for the EIC with DRT for tax year 1998 under the GTIT or Guam Earned Income Program (Chapter 42 of 11 G.C.A.) on or before April 15, 2002, and have not yet received full payment for that claim; and/or (4) actually filed a claim for the EIC with DRT for tax year 1997 under the GTIT or Guam Earned Income Program (Chapter 42 of 11 G.C.A.) on or before April 16, 2001 and have not yet received full payment for that claim.

**2. Schedule of Events.** Section II(a) of the Settlement Agreement provides for the filing of certain submission within seven (7) days of execution of the

3

Settlement Agreement. These filings include a motion to amend the pleadings to conform to the EIC Class definition, motion for conditional class certification, motion for attorneys' fees and costs. Such filings were made within the allowed time frame. Furthermore under Section II(a) the parties have agreed that the instant Settlement Agreement amends and supersedes the 2005 Settlement Agreement. Further, the parties previously agreed that upon preliminary approval of the instant Settlement Agreement, conditional certification of the EIC class, and approval of the issuance of class notice, all of which are complete as of the date of this filing, the previous June 14, 2004 settlement agreement shall be mutually rescinded and of no further force and effect and that the stipulated order dated June 17, 2004 granting preliminary approval to that previous agreement shall be vacated.

Section II(b) provides a time frame ("Opt-Out Date") and the procedures through which persons wishing to request exclusion from the EIC Class and the Settlement Agreement may do so. The time frame established is no later than sixty (60) days after the completion of the Class Notice period defined in Section III of the Settlement Agreement. The Opt-Out Date as provided in the Notice of Pendency and Proposed Settlement of Class Action ordered by the Court following Preliminary Approval of the Settlement in this matter occurred on May 8, 2007 at 3:00 p.m.

Section II(c) provides the time table in which the final Fairness Hearing shall occur as well as deadlines for filing any motions to intervene, motions for final certification of the EIC class, supplemental filings regarding attorneys' fees, filings regarding objections to or comments in favor of the Settlement Agreement.

    **3.**    **Class Notice.** Section III of the Settlement Agreement deals with notice to the EIC Class. Under the Settlement Agreement, in order to "achieve the best notice that is reasonably practicable, the Parties have determined to engage in both individual notice and notice by publication to the EIC Class." Settlement Agreement § II(a). Notice by publication was effected through publication in both the Pacific Daily News and the Marianas Variety and individual notice was issued by mail to potential

4

claimants ascertained based on records compiled by the Guam Department of Revenue and Taxation in compliance with the extensive procedures provided for by the Settlement Agreement. The parties submitted proof of Notice for the Court's reference. Both the Department of Administration and the Department of Revenue and Taxation have complied with the reporting requirements of the Court and final reports are expected to be issued following the relevant dates as ordered by the Court.

    **4. Settlement Benefits for Class Members.** The Settlement Agreement provides payments to EIC class members for Tax Years 1995-2004, and requires the Government of Guam to pay the EIC for tax years beyond 2004. *See generally* Settlement Agreement § IV. In contrast to the 2005 Settlement Agreement, the instant Settlement Agreement provides that upon preliminary approval, $10 million from the Government's tax reserve funds were to be made available to pay a portion of EIC claims for tax year 1998. Id., §§ V(i), VI(e)(ii). Additionally, upon preliminary approval, the Government was to begin paying remaining EIC claims for tax year 1997. *Id.,* § VI(e)(ii). These new provisions allow eligible Guam taxpayers to begin receiving EIC benefits without further delay. The prompt processing of such claims by the Department of Revenue and Taxation can occur in a relatively short time period because EIC claims for those two (2) tax years are already on file with the Department of Revenue and Taxation, as the Government allowed taxpayers to file for the EIC for those specific tax years under the Guam Earned Income Program. Further specifics of the foregoing benefits are set forth below.

    *EIC Payments for Tax Years 1995-2004* – If the Court approves the Settlement Agreement, amounts will be paid to EIC class members for tax years 1995-2004. Although class members will not receive interest on their claims, a substantial amount – up to $90 million – will be made available for all EIC claims for tax years 1995-1996 and 1998-2004. *Id.,* § IV(a). All outstanding EIC claims for tax years 1997 constitute an additional amount outside of the $90 million and will be paid pursuant to the terms of the Settlement Agreement. *See, e.g., id.,* § IV(d). Funding for the $90

5

million amount will be obtained by devoting at least 15% of any amounts that are placed into the Government of Guam's tax refund reserve funds, which are the funds used to pay general tax refunds (see Settlement Agreement § V(a)). Funding for payment of 1997 claims will be obtained from a reserved amount currently in the Government of Guam's tax reserve funds. *Id.*, § V(h).

For tax years 1995, 1996, 1999, and 2000 (claims for which there is an arguable risk of a time bar if litigated), the Government has agreed to pay up to $15 million for all EIC claims for those years. *Id.*, § IV(a)(ii). The amount will be divided proportionally among each claimant found eligible by DRT (applying the requirements of 26 U.S.C. § 32 as it applied in each applicable year) based on the total combined value of their claim or claims for those years. For tax years 1998 and 1997, there does not exist the apparent risk of a time bar because the Government allowed the filing of EIC claims for those years. Accordingly, the Government will make available up to $15 million for tax year 1998, and will pay remaining claims for tax year 1997. As noted above, processing of payments for those tax years were to commence immediately upon preliminary approval of the Settlement Agreement. For tax years 2001-2004, up to $15 million will be made available to pay claims for those years. *Id.*, §§ IV(a)(iii)-(vi). The Settlement Agreement also contains certain "roll-over" provisions in which any remaining amounts in a particular year will be rolled-over to fund payments for certain other years. *E.g., id.*, §§ IV(a)(i)(3), -(ii)(1), -(ii)(3), -(iii)(1), -(iii)3). Payments for tax years other than 1997 and 1998, will not occur until final approval of the Settlement Agreement and until all claims for those two years are paid pursuant to the terms of the Settlement Agreement. *Id.*, §§ VI(e)(iii)-(iv).

*EIC Payments for Tax Years Beyond 2004* – The Settlement Agreement provides for full implementation of the EIC beginning with tax year 2005 for all qualifying taxpayers (see Settlement Agreement § IV(d)).

**5. Funding.** Funding for the Settlement Agreement benefits will be made by reserving a minimum of 15% of each amount set aside or earmarked by the

6

Government or Legislature for income tax refunds and placed into either the Income Tax Reserve Fund or the Income Tax Refund Efficient Payment Trust Fund. Settlement Agreement § V. And in order to assure the class that such funds are being set aside, the Guam Department of Administration ("DOA") will provide monthly reports. *Id.*, § V(b)(ii).

By providing funding mechanisms for each expenditure under the Settlement Agreement, the Agreement addresses concerns regarding the Illegal Expenditure Act (5 G.C.A. § 22401) that had caused, in part, opposition to the previous settlement agreement of June 14, 2004 (*see id.*, § V(c)). However, the Settlement Agreement also provides the flexibility for the Governor to utilize other funding sources to satisfy the Government's obligations under the Settlement Agreement, as permitted by law. *Id.*, § V(d). Notably, the Agreement leaves the Respondents free to pursue federal reimbursement of the EIC, while providing the class with a final resolution and payment of their claims now (*see* Settlement Agreement § X(e)).

**6. Claims Administration.** Section 6 of the Settlement Agreement deals with the administration of EIC claims. Despite creating a class action, the Settlement Agreement avoids imposing an undue burden on the Court or the Government by utilizing the existing structures to process tax claims (*see* Settlement Agreement § VI(a)). The Settlement Agreement uses the EIC claim forms created pursuant to Executive Order 2005-001 and otherwise tracks Executive Order 2005-001 in terms of claims procedures (*see* Settlement Agreement § VI(b))—the same forms and procedures that were upheld by the District Court of Guam in the Order dated June 16, 2005 in *Simpao, et al. vs. Govt. of Guam*, Dist. of Guam Case No. CV04-00049.

**7. Setting of Court Dates and Issuance of Class Notice.** Following and pursuant to the Court's Order granting preliminary approval, the parties amended the proposed Notice to Class Members to reflect the relevant dates set by the Court. The Notice provides the following dates:

- The "Opt-Out Date" under Section II(b)(i) of the Settlement Agreement was set for May 8, 2007 at 3:00 p.m.
- The date by which any motions for intervention are to be filed and served under Section II(c)(i) of the Settlement Agreement was set for May 15, 2007.
- The date by which any objection or comment on the Settlement Agreement must be filed and served, and the date by which any responses shall be filed, under Section III(c)(vi) of the Settlement Agreement was set for June 22, 2007.
- The date for the "Fairness Hearing" as that term is defined in Section II(c)(i) of the Settlement Agreement was set for July 6, 2007.

Additionally, Notice included a brief description of Class Counsel's motion for attorneys' fees and costs.

### B. The Legal Standard for Final Approval

The parties presently seek final approval of the Settlement Agreement pursuant to the terms of the Settlement Agreement as well as the express terms of Rule 23 of the Federal Rules of Civil Procedure. As provided in Rule 23(c), "the court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate." The Moving Parties submit that the Settlement Agreement reached in this matter meets the requirements of law and accordingly seek this Court's final approval.

There is strong judicial policy in favor of settlement. Principe v. Ukropina (In re Pacific Enters. Sec. Litig.), 47 F.3d 373, 378 (9th Cir. 1995). See also Util. Reform Project v. Bonneville Power Admin., 869 F.2d 437, 443 (9th Cir. 1989). The principle applies with particular force where, as here, settlement involves class action lawsuits. See Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 615 (9th Cir. 1982); Van

8

Bronkhorst v. Safeco Corp., 529 F.2d 943, 950 (9th Cir. 1976); Wilkerson v. Martin Marietta Corp., 171 F.R.D. 273, 284 (D. Colo. 1997).

As the Ninth Circuit held in Hanlon v. Chrysler Corp.,

> [a]ssessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

150 F.3d 1011, 1027 (9th Cir. 1998)(citing Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993). Further, "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness...The settlement must stand or fall in its entirety." Hanlon v. Chrysler Corp., supra at 1027 (citing Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982)). The Court may not "delete, modify or substitute certain provisions." Id.

All parties to the settlement in this matter attest to the fairness of the agreement reached without reservations. As described above, this agreement is the product of almost three years of pleadings, motions and negotiations. Prior to this agreement, the parties made multiple attempts at resolution of this matter with mixed results. The parties agree that the instant agreement fully considers and accounts for the interests of all parties involved, offers real relief to the Petitioners and the Class while simultaneously providing workable and efficient methodology for disbursement of funds.

The parties stipulate that the actions Petitioners instituted are meritorious and that Petitioners and the Class are entitled to the relief provided in the settlement agreement. Given the relative rarity of class action cases in this jurisdiction, this settlement alleviates the extreme risk involved in fully litigating Petitioners' claims, which

9

involve questions of law that by all accounts are matters of first impression for this or any Court. Further, because no case like this has ever been previously attempted in this jurisdiction, the potential outcome could have staggering consequences for either or both Petitioners and Respondents in the event these matters are fully litigated.

In contrast, Settlement provides an opportunity for the parties to provide substantial, certain, and immediate redress for Petitioners' claims in an amount and manner that is acceptable to Respondents. Under the Settlement Agreement, the Respondents have agreed to allocate over $90 million to compensate eligible Guam taxpayers for EIC claims from 1995-2004. Furthermore, EIC claims beginning with tax year 2005 will be paid henceforth on the same terms as they would be normally processed and paid, so that the risk of subsequent litigation regarding future EIC claims is significantly mitigated or altogether eliminated.

The requisite fairness review does not require a finding that the settlement represents the best possible outcome for a particular party.

> ...[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." Officers for Justice v. Civil Serv. Comm'n, 688 F.2d at 625 (emphasis in original). Thus, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" Id. at 624 (citations omitted). As the Second Circuit has pointed out: "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." City of Detroit v. Grinnell Corp., 495 F.2d 448, 455 & n.2 (2nd Cir. 1974).

Linney v. Cellular Alaska Pshp., 151 F.3d 1234, 1242 (9th Cir. 1998). Given the present financial condition and substantial obligations of the Government of Guam, the amounts

to be paid under the Settlement Agreement are significant, and represent a fair compromise in light of the risks, costs, and delay associated with the prosecution of complex cases, particular cases against a government entity. Even if the cases were to proceed to litigation and a judgment were obtained at trial against the Government and Respondents, the recovery might be of no greater utility to class members, and might be substantially less valuable, than the proposed settlement which establishes an immediate mechanism for processing and payment of claims so that Guam's working poor can begin receiving the financial assistance that the EIC was intended to provide for them. As the Court in Hanlon, supra, propounded:

> Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion. In this regard, the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness.

Similarly, to date over 54,000 claims have been filed following Notice given pursuant to this Court's preliminary approval of the settlement agreement. Though a few days remain for the filing of objections, no objections have been filed thus far, indicating the general perception among the Class that the settlement is fair, adequate and reasonable with regards to their rights in this matter. To the extent that any individual member believes the agreement reached by the parties is not in the member's best interest, that member has the opportunity to opt-out. Notably, only one of the three petitioners in the Simpao matter, Petitioner Christina M. Naputi, has opted out of the settlement thus far. To date, only four (4) individuals including Ms. Naputi have opted out of the settlement. To say that the agreement has received overwhelming support from would-be members of the Class would be a severe understatement.

As discussed in the Joint Motion for Preliminary Approval of Class Action Settlement, counsel for all parties involved in this matter indisputably engaged in rigorous and skilled representation of the parties' respective interests at all stages of litigation. The agreement ultimately reached through mediation is the product of the collective efforts of counsel in extensive arms-lengths negotiations. There is an initial presumption that a proposed settlement agreement is fair and reasonable when it is the result of arm's-length negotiations. See Williams v. Vukovich, 720 F.2d 909, 922-923 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has completely evaluated the strength of his proofs"); In re Inter-Op Hip Prosthesis Liab. Litig., 204 F.R.D. 359, 380 (N.D. Ohio 2001) ("when a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair"); Hanlon, supra at 1027 ("the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned" (citations omitted).

Here, the proposed settlement is the product of arm's-length negotiations. The origin of negotiations for some of the core terms of the agreement began in 2005 in connection with settlement of the Santos action during that period. After the Court consolidated the actions, including the Torres action, the parties engaged in extensive mediation in April 2006 in Guam before an experienced JAMS mediator, the Hon. William J. Cahill, a retired jurist. The 2006 mediation resulted in an agreement that expanded the EIC class definition, incorporated settlement of an addition case (the Torres action), and resulted in enhanced EIC benefits for the expanded class including

ultimate payment of all remaining EIC claims for tax year 1997, and immediate payment of millions of dollars for a portion of 1998 and 1997 EIC claims.

### C. The Class Should Receive Final Certification for Settlement Purposes

The Petitioner and Plaintiff in the *Santos* and *Torres* actions will submit a joint motion for final certification of EIC settlement class within the time frame provided for under the Section II of the Settlement Agreement. The prerequisites for a class action under the Federal Rules of Civil Procedure have been satisfied for purposes of settlement.

### IV. CONCLUSION

For the reasons stated herein and in other forthcoming filings to be made pursuant to the Settlement Agreement, the Moving Parties respectfully request that the Court (1) grant final approval of the Settlement Agreement; (2) grant final certification of the EIC class as defined in the Settlement Agreement for settlement purposes; and (3) grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 26th day of May, 2006.

| | |
|---|---|
| **OFFICE OF THE GOVERNOR OF GUAM**<br>**CALVO & CLARK, LLP**<br>Attorneys for Respondent Felix P. Camacho, Governor of Guam<br><br>By:_____<br>**EDUARDO A. CALVO** | **PHILLIPS & BORDALLO, P.C.**<br>Interim Class Counsel & Attorneys for Petitioner Julie Babauta Santos<br><br>By:_____<br>**MICHAEL F. PHILLIPS** |
| **CABOT MANTANONA LLP**<br>Attorneys for Respondents Lourdes M. Perez and Artemio R. Ilagen<br><br>By:_____<br>**RAWLEN M.T. MANTANONA** | **LUJAN AGUIGUI & PEREZ LLP**<br>Attorneys for Plaintiff Charmaine R. Torres<br><br>By:_____<br>**PETER C. PEREZ** |

F:\Clients\Santos-EIC\EITC Joint Mot FINAL App (6-4-07 draft).doc

13