*Counsel appearing on following page*



**FILED**
DISTRICT COURT OF GUAM

JUN 22 2007

MARY L.M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

JULIE BABAUTA SANTOS, *et.al*

        Petitioners,

v.

FELIX P. CAMACHO, et al.

        Respondents

---

CHARMAINE R. TORRES, *et al*.

        Plaintiffs

v.

GOVERNMENT OF GUAM, et al.

        Respondents

---

MARY GRACE SIMPAO, *et al*,

        Plaintiffs,

v.

GOVERNMENT OF GUAM

        Defendant.

v.

FELIX P. CAMACHO, Governor of Guam

        Intervenor-Defendant

Civil Case No. 04-0006

Civil Case No. 04-000 58

Civil Case No. 04-00049

**OPPOSITION OF JANICE CRUZ
AND MARY GRACE SIMPAO TO
JOINT MOTION FOR FINAL
CERTIFICATION OF EIC CLASS
FOR SETTLEMENT PURPOSES**

**ORIGINAL**

**Shimizu Canto & Fisher**
Suite 101 De La Corte Bldg.
167 East Marine Corps Drive
Hagatna Guam 96910
671.472.1131

**Tousley Brain Stephens PLLC**
Kim D. Stephens, P.S., WSBA #11984
Nancy A. Pacharzina, WSBA #25946
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
206.682.5600

Counsel for Simpao et al.

## Table of Authorities

Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231 (1997)…………......9-10

Armstrong v. Chicago Park District, 117 F.R.D. 623 (N.D. Ill. 1987)………..........11-12, 17

Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 94 S. Ct. 2140 (1974)…………………..……16

Fendler v. Westgate-California Corp., 527 F.2d 1168 (9th Cir. 1975)……………..……......19

In re General Motors Corp. Engine Interchange Litigation,
594 f.2d 1106 (7th Cir.1979)…………………………………………………….……..….11, 15, 17

In re Request of Governor Felix P. Camacho, 2004 Guam 10, 2004 WL 1293239
(Sup. Ct. Guam 2004)……………………………………………………………………....…….......1

Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,
456 U.S. 694, 102 S. Ct. 2099 (1982)……………………………………………...……...17, 18

Key v Gillette, 782 F.2d 5 (1986)……………………………………………………...……...11

Knisley v. Network Associates, Inc. 312 F.3d 1123(9th Cir. 2002)……………......………14

Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas,
244 F.3d 1152 (9th Cir. 2001)……………………………………………………….……..…10

Mendoza v. Tucson School Dist. No. 1, 623 F.2d 1338 (9th Cir. 1980)…………....….13-14

Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346 (9th Cir. 1984)………....………19

Rios v. Ada et al., Superior Court of Guam, SP0206-93 …………………………………….19

Santos v. Camacho, Civil Case No. 04-00006……………………….....………….…..……...1- 3, 13

Simpao et al v. Government of Guam, Civil Case No. 04-00049………...……….………..9, 17

Manual for Complex Litigation (4th ed. 2004)……………………………………….10, 14-17

Newberg & Conte, Newberg on Class Actions (4th ed. 2002)…………………………………13

26 U.S.C. §6621……………………………………………………………………………......8

48 U.S.C. §1421i………………………………………………………………………………...19

Fed. R. Civ. P. 23(a)…………………………………………………………………………...2, 7, 11, 23

## INTRODUCTION

Class members Janice Cruz and Mary Grace Simpao, Plaintiffs in *Simpao et al v. Government of Guam, Civil case No. 04-00049* (hereinafter referred to as *Simpao*), hereby submit their opposition to a *Joint Motion of the Petitioners in Santos and Torres for Final Certification of the EIC Class For Settlement Purposes filed June 8th, 2007.*

Class Members Simpao and Cruz oppose certification of the class for settlement since, as structured, there exists antagonism between two subsets of the class and lead plaintiff in the matter does not adequately represent the class as a whole.

## FACTS RELEVANT TO THE OBJECTION

Phillips filed the *Santos* action February 12, 2004. That action sought recovery of EITCs only for tax years 1998–2003, and did not cover EITC claims for 1995–1997, 2004 and future tax years, nor did it allege exhaustion of administrative remedies. *See Santos v. Camacho, CV 04-00006 at Docket No. 1.*[1]

Four months after he filed the petition, with no discernable discovery, and while the Governor was off-island, Phillips negotiated a settlement with the Lieutenant Governor that committed the Government of Guam to pay out $60 million and awarded Phillips $6 million in attorneys' fees.[2] Phillips had recently represented the Lieutenant Governor in a struggle with Governor Felix Camacho over the powers of the Office of Lieutenant Governor. *See In re Request of Governor Felix P. Camacho, 2004 Guam 10 (Guam 2004).* Furthermore, at the same

---

[1] On December 3, 2004, Plaintiffs Mary Grace Simpao and Christina Naputi filed a separate complaint. *See Simpao v. Guam, Docket No. 1.* Simpao's complaint also sought recovery for tax years 1995, 1996, and 1997, and pled and established jurisdiction, standing, and interest in each class year. Additionally Simpao sought relief for each year, a mechanism for making claims, adequate individual notice, payment of EIC refunds for each year, and enforcement of the EIC program in future years.

[2] *Id at Docket No. 14,* Order Granting Prelim. Approval of Class Action Settlement entered June 17, 2005 with Settlement Agreement attached (hereinafter, *Santos I*).

time he was negotiating the *Santos* settlement, Phillips was the lone bidder for a legal services contract to become the Lt. Governor's permanent legal counsel. *See Decl. of Thomas J. Fisher at exhibit A.*

Phillips, the Lieutenant Governor and the Attorney General announced *Santos I* in the press on Sunday, June 13, 2004. *See Fisher Decl. at exhibit B.* The next day on June 14, 2004, they submitted a Stipulated Order of Preliminary Approval to the federal court. The settlement agreement attached to the Stipulated Order contained a provision that Phillips be awarded 10% of the recovery as attorneys' fees ($6 million dollars).

On June 17, 2004, the Court conducted what Phillips refers to as a "settlement conference" with Phillips, the Lieutenant Governor and the Attorney General. At the conclusion of the meeting, the magistrate signed a Stipulated Order Granting Preliminary Approval of Class Action Settlement. Phillips' fee in the attached settlement agreement, however, was now crossed out and replaced with a provision that the Court would determine attorneys' fees. *Santos v. Camacho at Docket No. 14.*

The next day, Phillips submitted a separate stipulation signed by the Attorney General awarding himself $6 million dollars in attorney's fees. *Santos v. Camacho* at Docket No. 16. That Order was signed by Magistrate Manibusan and entered in the *Santos* action on June 24, 2004. *Id.* At this time, no class had been certified and Phillips had never moved for or been appointed lead counsel. No motion for attorneys' fees compliant with Federal Rules of Civil Procedure (FRCP) Rule 23(h)(1) or 54(d)(2) had ever been filed.

*Santos I* provided for notice to the class solely through publication (one notice per week for three weeks) even though the parties fully acknowledged the Respondent had mailing addresses on file for the putative class claimants. *Santos I* at p. 17, ¶ V.2. The notice Phillips

allowed to be published was inaccurate in several respects; it told class members they would recover approximately 50% of their claim when, for some years, *Santos I* provided for less than 20% recovery. *See Fisher Decl. at exhibit C.* It also incorrectly stated the class had already been certified. *Id.* Additionally, although he held himself out as class counsel, Phillips provided no contact information for himself and directed class members' inquiries to the Respondent. *See Id.*

On July 14, 2004, after two motions to intervene had highlighted Phillips' numerous errors, Phillips filed a belated motion to be appointed class counsel and re-requested his already court-approved award of attorney fees. *Memorandum Of Points And Authorities In Support For Petitioner's Motion For An Order Appointing Class Counsel, CV04-00006, Docket No. 45.* In his words, he did so because "a number of attorneys are seeking to intervene and share in any recovery" and he wanted "to ensure a clear record in this matter." *Id. at p. 4.* In his motion, Philips acknowledged the parties had failed to accomplish even the minimal notice they had promised and now realized individual notice "would be best for all parties involved." *Id. at p. 24; see Stipulation of the Parties Regarding Additional Notices to the Class, CV04-00006, Docket No. 40.* In addition, he acknowledged it necessary to "clarify" the information in the first *Santos* notice (i.e., that the class had been certified and that the Court had already approved the attorneys' fee award) in order to now comply with the Federal Rules of Civil Procedure. *Id. at p. 24.* The revised notice still contained a statement that the Court had "preliminarily" approved a 10% attorney fee and lists Phillips as "counsel" for the class. *See CV04-00006, Docket No. 45 at Exhibit A.* The revised notice did not inform class members they could enter an appearance in the action through counsel, nor did it inform the class there were two motions for intervention pending which cited deficiencies in the settlement. *Id.* The Court signed an order appointing

Phillips interim class counsel on July 16, 2004. *CV04-00006, Docket No. 54.* The Court took no action on Phillips' second motion for attorneys' fees.

By this time, two competing class actions had been filed; the *Simpao*[3] *and Torres* actions now consolidated here); and the Governor was now expressing his reservations with the settlement. The Governor sought to investigate the circumstances under which *Santos I* had been reached. He was told by the Attorney General, "there is no written documentation regarding the history of the negotiations leading up to the Settlement Agreement." See *Amended Memorandum Of Points And Authorities In Support Of Opposition To Petitioner's Motion For The Approval Of The Administrative Plan, CV04-00006, Docket No. 102, at p. 4 (hereinafter, "Gov's Opp. To Settlement").*

In an attempt to cure defects in the settlement, Phillips filed a motion for approval of a purported "Administrative Plan" that was, in reality, a revised settlement agreement. *See Fisher Decl. at exhibit E. Correspondence between the Office of the Governor and the Attorney General's Office referring to the Administrative Plan as "a new settlement under the guise of an administrative plan."* The Governor then appeared in the *Santos* action with his own counsel to oppose the settlement. *See Gov's Opp. To Settlement.*

Phillips negotiated with the government again, this time with the Governor. As a result, Phillips and the Governor came to the Court on June 20, 2005, with a new class action petition and a second settlement agreement (hereinafter referred to as "*Santos II*"), but not before the unincluded *Simpao* Plaintiffs defeated a motion to dismiss for lack of jurisdiction and failure to state a claim on March 17, 2005.[4] The amended *Santos* petition now alleged exhaustion of

---

[3] *See exhibit D of Fisher Decl.*

[4] *See exhibit F of Fisher Decl.*

administrative remedies but did not explain how Plaintiffs had done so. This new petition and settlement included tax year 1995, but recoveries for tax years 1996, 1998, 1999, and 2000 *actually decreased* compared to *Santos I*. Tax year 1997 was still not included.[5] *Id.*

The new settlement changed few, if any, of the defects previously noted by the Governor and Plaintiffs and added new ones. This time, the parties filed a joint motion for preliminary approval, not a stipulated order and, as required by the *Santos II* agreement, Phillips filed a motion for conditional certification of a settlement class. *CV04-00006, Docket Nos. 211 & 212*.

There was no indication that Phillips had attempted to discover or estimate the actual damage suffered by the class, and to the very present Phillips has neglected to so investigate. *See, e.g., Amended Declaration of Interim Class Counsel Michael F. Phillips in Support of Amended Motion for Appointment of Lead Class Counsel (Amending Docket No. 276), CV04-00006, Docket No. 349, passim*. The Attorney General refused to sign the settlement.

In the meantime, Simpao continued to litigate her case and, on June 15, 2005, the Court granted Simpao partial summary judgment.[6] The Court ruled the EITC applies to Guam and that Plaintiffs had exhausted administrative remedies by filing tax returns. The court then directed Simpao to file a motion to certify the class. Simpao filed a motion for class certification on July 5, 2005. *CV04-00049, Docket No. 107*.

At this point, the EITC litigation disintegrated into a procedural battle centered on the struggle between the Attorney General and the Governor for control of the action and the various procedural postures of the three pending class actions.

---

[5] Other defects associated with Santos II are presented in Simpao's Objections to Final Approval of *Santos-Torres*. III. As noted in that pleading, there is not much difference between Santos II and III. See *Supplemental Filing In Opposition To Preliminary Approval Of Class Action Settlement*, CV06-00004, Docket No. 345.

[6] See *Fisher Decl exhibit G.*.

Ultimately, the Court ordered the cases consolidated and stayed them all until such time as it could rule on the dispute between the Attorney General and the Governor. *See CV04-00006, Santos v. Camacho, Docket No. 299.* Despite the stay, however, the Court did direct the petitioners to file motions for appointment of lead counsel. *Santos v. Camacho, Docket No. 300.* In response, the Governor requested and was granted time to conduct a global settlement conference. Phillips again failed to work cooperatively with the Simpao Plaintiff's counsel.

Phillips, with petitioner Torres' counsel and the Governor, have now filed a new settlement (hereinafter referred to as *"Santos-Torres"*) substantively no different from *Santos II* with the exception that class year 1997 is now included and Phillips has split part of the proposed fee award with counsel for Torres. *See CV04-00006, Santos v. Camacho, Docket No. 324, at Exhibit 1.* On August 25th, 2006 *Simpao* opposed Santos Counsel's earlier motion to be appointed lead counsel. In that opposition, *Simpao* cited many of the deficiencies noted herein and more. *See Fisher Decl. at exhibit H.*

On January 9th, 2007 this Court granted preliminary approval to *Santos-Torres* and ordered notice be made to the class members. The provided notice was not in accordance with Federal Rule of Civil Procedure 23, nor does it comport with the Federal Judicial Center's model for instructions as to class notice, and was not designed to actually reach class members. *See Fisher Decl. at exhibit I.*

On March 8th, 2007 Respondent and class representative realized that as to a significant number of class members a mistake had been made in notice and moved the Court to allow revised notice. This Court allowed them to do so on March 12th, 2007. Inexplicably, and contrary to law, Santos counsel again allowed defective notice to issue, and did not include the required "non-debtor spouse" provisions of 26 CFR 301.6402-6(i)(1). This was the second

round of defective notice issued by Santos counsel. *Santos-Torres* waives all interest for all

years, places all class years in an artificial queue and groups class years 1995, 1996, 1999, and

2000 together to share one $15 million dollar award.

## MEMORANDUM OF POINTS AND AUTHORITY

Federal Rules of Civil Procedure allow for certification of a class where;

 . . . (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *Fed. R. Civ. P. 23(a).*


*Santos* and *Torres* have asked this court to certify the class pursuant to Fed. R.Civ. P.

23(b)(3). *See Joint Motion of the Petitioners pp. 11-12.* This rule provides that;


 An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: . . . the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

In this matter, under the proposed settlement, this Court should not grant certification to

the class for two reasons 1) as the settlement is structured, class antagonism exists such that the

"class predominance" inquiry of Rule 23 (b)(3) is not met and 2) class representative does not

fairly and adequately represent the interests of the class.

I. Class Antagonism

The architecture of the settlement is inherently unsound. Four features, working in concert, produce an antagonism among the years and create competition for placement in the refund queue.;

    1. Pursuant to law, unpaid tax refunds accumulate interest at the Federal short term interest rate plus 3%. *See 26 U.S.C. §6621.* The settlement however abandons all interest for all class years[7]. This waiver, because of the passage of time and the compounding of interest, hurts earlier years more than later. This is particularly true in light of the settlement's reservation to Respondent of off-sets under 26 USC §6402.

    2. Class year 1997 is first paid, then 1998, then 1995, 1996, 1999 and 2000 together, followed by 2001, 2002, 2003 and finally 2004. This structure is in place despite the fact that the Respondent has already received in excess of 20,000 claims from the entire spectrum of years.

    3. A condition precedent to any distribution to any class year is the accumulation of funds for that year.

    4. The settlement contains no provision to guarantee payment for all years. Payment amounts are predicated on the continued existence of the Reserve Fund.

Under the structure, class years must queue for payment and wait for each precedent year to be satisfied. *See Settlement p. 25, ¶ e.* Naturally, because a class year suffers additional damage as each day elapses (they get no interest while waiting in line), each year would prefer to

---

[7] Tax year 1997 will receive interest. Presumably the Respondent concedes liability for this year.

be at the head of the line. Additionally, each year would prefer to displace 1998 from its preferred position and share in the initial immediate distribution of $10 million dollars. This is particularly true when one considers the indefinite nature of the funding. The Guam Legislature could simply abolish the Reserve Fund and cut short all settlement payments[8]. In contrast to the years at the end of the queue, class year 1998 prefers the structured payout since it reduces the number of participants in the initial payout.

The settlement creates an unnecessary antagonism among the years. Each year wants to be paid first in order to lessen injury from loss of interest. Because of this, the Court cannot find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." While it is true that each class year has suffered from non-payment of the EITC, this "overarching" question does not predominate. In *Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231 (1997),* the Supreme Court explored the predominance question in the context of mass tort asbestos litigation. In that case the Court noted that though all members suffered from exposure to asbestos, that fact did not predominate over the individual member's desires as to compensation. Some class members wanted immediate compensation as they were currently suffering an illness, other members were not sick but might later develop an illness. These two sub-groups had different interests; one wanted immediate compensation, the other delayed compensation so that their might be funds available to help them through a future illness. "Given the greater number of questions peculiar to the several categories of class members, and to individuals within each category, and the significance of those uncommon questions, any overarching dispute about the health

---

[8] This scenario is not farfetched; this court has noted that Guam's decision to stop paying the EITC was "more attributable to the shortfall in the public coffers than one in legal reasoning." *See Order, 15 June 2006, Simpao et al v. Government of Guam, CV 04-00049,p.7 (J. Martinez).*

consequences of asbestos exposure cannot satisfy the Rule 23(b)(3) predominance standard." *Amchem at* 624. As in *Amchem*, *Santos-Torres* members have all suffered common injury but this does not predominate over each years need to lessen its injury from loss of accumulated interest. All want to be paid first, and all are pitted one against the other for position because of the settlement.

II. Class Representative Does Not Fairly and Adequately Represent the Interests of the Class

Rule 23 (a)(4) requires that "the representative parties [must] fairly and adequately protect the interests of the class." "Adequate representation 'depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive" *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas, 244 F.3d 1152, 1162 (9th Cir. 2001)(internal citations omitted.)*

Thus, in order to adequately represent the class and make a class action sustainable, an attorney appointed to serve as class counsel must be able to fairly and adequately represent the class. *Fed. R. Civ. P.23 (g)(1)(b)*. The Manual for Complex Litigation sets forth the following criteria for appointment of class counsel.

> In every case, the judge must inquire into the work counsel has done in investigating and identifying the particular case; counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; counsel's knowledge of the applicable law; the resources counsel will commit to representing the class; and any other factors that bear on the attorney's ability to represent the class fairly and adequately.

David F. Herr, *Manual for Complex Litigation (4th ed. 2004) (hereinafter "Manual") § 21.271 at 345*. The attorney seeking the appointment has the burden to prove he is both qualified and otherwise adequate.

The adequacy of counsel should be assessed at all stages of litigation. *See Key v Gillette, 782 F.2d 5, 7 (1986).* Counsel originally thought to be suitable may prove themselves unsuitable through their conduct. *Id.* (approving decertification of a class because previously accepted counsel's lackluster performance during trial reflected an inability to adequately protect the interests of the class).

Mistakes made by counsel in the early rounds of litigation can be indicative of inadequacy. *Armstrong v. Chicago Park District, 117 F.R.D. 623, 633 (N.D. Ill. 1987).* Conduct during settlement negotiations can be particularly relevant to an adequacy assessment. *See In re General Motors Corp. Engine Interchange Litigation, 594 f.2d 1106, 1121-1130 (7th Cir.1979).* In *General Motors,* the court identified several factors that may suggest representation of the class during settlement negotiations is less than vigorous. They include: (1) Settlement reached relatively early in the course of the action; (2) incomplete discovery; (3) counsel ill-informed about the full value of the claims they were surrendering; (4) abandonment of some claims; and, (5) failure to include all class counsel in negotiations. *Id.*

At issue here is a tax refund case. There are few cases more procedurally difficult than a tax refund class action as both tax cases and class actions present significant procedural hurdles. These threshold requirements must be met to ensure the outcome is just and the effort put in to resolve the matter is not wasted by subsequent reversal. Where government misconduct and public funds are at issue, rigorous scrutiny is required. Phillips' record in this case cannot withstand such scrutiny.

The complaint filed in *Santos I* demonstrates Phillips did not adequately identify or investigate the potential claims in this action or develop an understanding of the applicable law. *Fed. R. Civ. P. § 23(g)(1)(c)(i).* While he claims to have prepared for years to bring an EITC

action against the government, the action he actually filed evidences little attention to its procedural complexities. His complaint shows no attempt to meet the statutory requirements of a tax refund action as Santos never alleged she had filed tax returns for the relevant years or had otherwise met the exhaustion requirements of 26 U.S.C. § 7422. He also failed to define the class such that it could be alleged its members satisfied exhaustion requirements on a class-wide basis. Thus, the original *Santos* Petition would not have survived a motion to dismiss. *Cf., Order, J. Lew, Mar. 17, 2005, Simpao v. Guam, CV04-00049, Docket No. 53 (denying Governor's motion to dismiss because Plaintiffs pled exhaustion)*.

In addition, while claiming to represent all disadvantaged people of Guam, Phillips brought this important case with a class representative who apparently cannot represent all tax years at issue. As a result, when Phillips filed the complaint, he abandoned Guam citizens with EITC claims for tax years 1995-1997. Although tax year 1996 (but not 1995 or 1997) was eventually covered in the *Santos I* settlement (apparently at the request of government), there is no evidence Phillips sought relief on their behalf. "Counsel's choice of an incorrect opening date for a class period can seriously prejudice class members and has been considered by other courts as a factor justifying denial of class certification." *Armstrong v. Chicago Park Dist.*, 117 F.R.D. 623, 633 (N.D. Ill. 1987).

Finally, contrary to express statutory requirements, Phillips named the wrong party as a defendant. Phillips named the Governor, the Attorney General, and two administrative department heads, when the law expressly requires only "the government" be named as a defendant in tax refund actions. *48 U.S.C. §§ 1421i(a) & (h)(2)* (Organic Act of Guam). Under normal circumstances, this would be considered a hyper-technical criticism, but in this case, the error arguably contributed to the resulting battle between the Governor and the Attorney General.

More troubling than the deficiencies in his complaint is the poor judgment and disregard for class action settlement procedure Phillips exhibited in securing court approval for *Santos I.* Courts have long recognized these procedures are important.

> a.      *Phillips' Conduct Regarding Fee Negotiations Were Improper.*

First, and most egregious, the available record indicates Phillips negotiated his fee at the same time he negotiated the settlement for the class. The agreement executed by all parties on June 14, 2004 and filed with the Court for preliminary approval contained a provision that Phillips would receive 10% of the settlement fund. *CV04-00006, Docket No. 14*; *see Fisher Decl. at Exhibit C.* On June 17, 2004, apparently during the parties' meeting with the Magistrate Judge, that provision was crossed over and replaced with the more proper wording that the Court would determine appropriate fees. *Id.* Its presence in the original document and the timing of its correction strongly suggest a prior agreement regarding fees had been reached by the parties.

The Ninth Circuit has explained the problem with simultaneously negotiating attorney's fees with settlement terms.

> We cannot indiscriminately assume, without more, that the amount of fees have no influence on the ultimate settlement obtained for the class when, along with the substantive remedy issues, it is an active element of negotiation.

*Mendoza v. Tucson School Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980), citing *Prandini v. National Tea Co.*, 557 F.2d 1015, 1021 (3d Cir. 1977). *See also* H. Newberg & A. Conte, *Newberg on Class Actions* (4th ed. 2002) Newburg, § 15.31 at 108 (noting that where counsel has engaged in such conduct "the court would have the almost impossible task of deciding whether the class settlement was fair and adequate or whether it should have been increased by some or all of the funds allocated by the attorneys for fees."); *Knisley v. Network Associates, Inc. 312 F.3d 1123, 1125 (9th Cir. 2002.)* ("One risk of class action settlements is that class counsel

may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee.").

The *Mendoza* Court specifically noted that even if actual impropriety is not found, the Court has a "duty to see to it that the administration of justice has the appearance of propriety as well as being so in fact." *Mendoza, 623 F.2d at 1353, n.20.* Thus the Court has directed:

> The presence of simultaneously negotiated attorneys' fees should cause the court to examine with special scrutiny the benefits negotiated for the class. It would rarely be an abuse of discretion for a trial court to reject a settlement proposal where such combined negotiation took place.

*Id.* at 1353. Phillips' failure to secure a settlement for the class before he worried about his fees demonstrates he is inadequate counsel for this class.

Further, Phillips has never provided the Court with any of the indicia of reliability that might overcome the presumption of impropriety caused by his conduct. As the Attorney General informed the Governor, "there is no written documentation regarding the history of the negotiations leading up to [Santos I]." *Gov's Opp. To Settlement, CV04-00006, Docket No. 102, at p. 4.* In addition, Phillips never provided the Court the information it needs to "examine with special scrutiny the benefits negotiated for the class" in any of the three settlements he has presented to this Court. The Manual expressly notes:

> Where settlement is proposed early in the litigation . . . consider asking counsel to provide complete and detailed information abut the factors that indicate the value of the settlement. Such factors include:-likelihood of success at trial;-likelihood of class certification;-status of competing or overlapping actions;-claimants damages and value of claims;-total present value of monetary and non-monetary terms;-attorneys fees;-cost of litigation; and - defendant's ability to pay.

*Manual § 21.631 at 413.*

Phillips claims he conducted research on these claims and the government's ability to pay the EIC but he has yet to even identify for the Court the full value of the class' EITC claims inclusive of interest. He has presented no analysis of what the government's actual outlay would be after the government accounts for all the offsets it has preserved in the settlement. He has simply accepted the government's representation that this is all it will pay.

Phillips' failure to provide any specific evidence as to the factors related to the reasonableness and adequacy of *Santos I, II, and Santos-Torres*, especially in light of his inappropriate conduct has produced a suspect settlement. See *In re General Motors, 594 F.2d at 128* (noting vigorous representation is absent where counsel is ill informed about the value of the claims he is surrendering). In providing no such evidence he has demonstrated his inadequacy to serve as lead counsel.

Other conduct regarding the fee award in *Santos I* further demonstrates Phillips is indifferent to or completely unaware of the duties he owes the class. He inappropriately sought and obtained approval of his proposed attorney fees without ever submitting a proper motion as required by Fed.R.Civ.P. 23(h)(1). Thus, the class would have been deprived of any ability to scrutinize the reasonableness of the fee. Phillips also caused the first notice of the proposed settlement to include a statement that his six million dollar fee award had already been approved by the Court. Even after he acknowledged the Court would have to asses the reasonableness of fees at a final fairness hearing, he still sought to give his fee request an imprimatur of reasonableness by proposing a notice that said the Court had "preliminarily" approved his fee. Phillips' complete failure to follow procedures designed to mitigate the appearance of and actual potential for abuse in the class action context (much less one involving precious government funds) makes him unsuitable to serve as class counsel.

> b. *Conduct unrelated to fees also indicates Phillips is not likely to adequately*
> *protect the interest of this class.*

In the *Santos I* notice, Phillips did not even identify himself and instruct class members to contact him with their questions regarding the proposed settlement. Instead he delegated to the defendant his duty to inform and advise the class he claims to represent. *See Manual at § 21.641 at 416* ("Counsel must be available to answer questions from class members in the interval between notice of the settlement and settlement hearing.")

Further, Phillips' acquiescence to published notice versus individual notice belies any vigor exercised on behalf of the class. Because class members will be bound by the judgment in a class action, notice of impending settlement is crucial. The Supreme Court held that,

> in any class action maintained under subdivision (b)(3), each class
> member shall be advised that he has the right to exclude himself
> from the action on request or to enter an appearance through
> counsel, and further that the judgment, whether favorable or not,
> will bind all class members not requesting exclusion. To this end,
> the court is required to direct to class members 'the best notice
> practicable under the circumstances including individual notice to
> all members who can be identified through reasonable effort. We
> think the import of this language is unmistakable. Individual notice
> must be sent to all class members whose names and addresses may
> be ascertained through reasonable effort.

*Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173, 94 S. Ct. 2140, 2150 (1974). Phillips apparently does not understand that class counsel, not defendant, has and will continue to have a duty to ensure adequate informative interaction with the class throughout the settlement approval process and through claims administration as well.

Phillips also failed to secure adequate treatment for tax year 2000 claims in the current proposed settlement. As noted in the *Simpao* Plaintiff's opposition to this settlement, *Santos-Torres* treats year 2000 claims as if they are potentially time-barred when they are not. Other courts have held mishandling of a limitations period reflects on the counsel's competence and

diligence in pursuing class claims. *Armstrong v. Chicago Park Dist., 117 F.R.D. 623, 633 (N.D. Ill. 1987).* This Court should hold the same.

Phillips' failure to include all class counsel in settlement negotiations also demonstrates his inadequacy. *See Manual at §21.271 at 345.* The two class actions filed after Santos, identified ways to strengthen the class' claims, yet Phillips refused to work cooperatively with other class counsel, specifically rejecting the Simpao counsel's request to participate in the negotiations that led to *Santos II.* As courts note:

> . . . settlement negotiations with less than all class counsel
> weakens the class' tactical position even if the attorney who enters
> into the negotiations attempts to represent the class' interest
> vigorously.

*In re General Motors, 594 F.2d at 1125.* Phillips repeated the mistake even after this Court made known its desire for a global settlement.

In addition to not working with other class counsel, Philips also did nothing to protect the class' claims from potentially adverse, if not fatal, rulings in the competing class actions. He never moved to stay the competing actions in favor of *Santos* nor did he move to consolidate the cases and seek to have himself appointed lead counsel. The latter failure is especially glaring given he had the advantage of having been first to file and had what he claimed was a fair and reasonable settlement. Instead, Phillips sat idly by while the government filed a motion to dismiss in *Simpao.* Notably, if the government had succeeded in dismissing *Simpao* based on lack of jurisdiction, *Santos I* would have been invalidated as well. The Court would have had no jurisdiction to approve the settlement. *Cf., Order, J. Lew, Mar. 17, 2005, Simpao v. Guam, CV04-00049, Docket No. 53* (denying Governor's motion to dismiss for lack of jurisdiction); *see Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694 at 701, 102 S. Ct. 2099 (1982)* (parties may not confer subject matter jurisdiction upon court via

settlement agreement where it does not otherwise exist). Phillips also took no action when *Simpao* moved for summary judgment even though his client's claims would have been damaged if *Simpao*'s motion had failed. Notably, Phillips and respondents now expressly attempt to rely on holdings obtained in *Simpao* to claim this Court has jurisdiction over their flawed settlements.

### c. The Apparent Political Manipulation Associated with the Santos I Settlement was not in the Best Interest of the Class

Based on the circumstances of the *Santos I* settlement, the Court can reasonably infer, and must at least consider the possibility, that Phillips used this class action as a political tool, putting the interest of certain political office holders ahead of the interest of the class. It does not take the benefit of 20/20 hindsight to know that entering a stipulated settlement creating a $60 million dollar liability for a cash-poor government without the knowledge or consent of the Governor is fraught with peril. Yet Phillips, along with the Lieutenant Governor and the Attorney General, hastily entered into and publicly announced a settlement in this matter while the Governor was off-island. Instead of using the strength of the EITC claims to ensure a secure settlement, he chose to negotiate with political opponents of the Governor, one of which was his client. Their collective actions placed the Governor in an untenable position politically. He either had to oppose the settlement publicly or allow his political opponents to (in his view) hamstring him financially. That tactic directly resulted in the political battle between the Governor and the Attorney General that has delayed relief for the class for over two years. It is difficult to believe Phillips was so insensitive to these political considerations when, by his own admission, he was thrice elected chair of the local Democratic party and is actively involved in Guam politics. See *Amended Motion Of Petitioner Julie Babauta Santos For Appointment Of Lead Class Counsel, CV04-00006, Docket No. 348.* Even if Phillips believed he had a better chance of securing a settlement from these political players than the Governor, the attempt to

pull an end run around the Governor at best exhibited a profound lack of judgment. Had Phillips included the Governor from the outset, the EITC class might well be receiving their refunds today.

Phillips' long series of procedural irregularities demonstrate he cannot be relied on to adequately represent the class. *See Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346, 1352 (9th Cir. 1984)* (a trial court rightly considers the competency of counsel when determining class certification) *and Fendler v. Westgate-California Corp., 527 F.2d 1168, 1170 (9th Cir. 1975)* (one of the criteria for adequacy of representation would appear to be the zeal and competence of the counsel and party who wish to prosecute the action.).

> *d. Phillips' Prior Representation Fails To Support His Ability To Adequately Represent The Class*

Mr. Phillips has cited his involvement in *Rios v. Ada et al., Superior Court of Guam, SP0206-93*, in support of his class action experience. *Rios* is a case which has been slowly litigated since 1993. Mr. Phillips seeks to recover a judgment for unpaid cost of living adjustments to retirees from the government of Guam, in an amount seeking over a hundred million dollars. Mr. Phillips let this class action languish for over 10 years without the class receiving any monetary relief from the government defendant, even failing to do as little as change his individually named defendant Governors when they left office. Recently, Mr. Phillips has seemingly resurrected this case from inactivity and is pursuing over a hundred million dollars from the same government in the EITC suit, which in both cases has claimed that either judgment rendered against the government would have catastrophic effects because the government claims it lacks the ability to pay either, a fact invariably conflicting with and impacting upon Mr. Phillips' resolve in his settlement negotiations over the amount of EITC refunds.

## CONCLUSION

This Court should not grant final class certification. The class, due entirely to an artificial and imposed structure for settlement is embroiled in antagonism. This is related to, and flows from class representative's failure to adequately protect class interests.

Finally, the pattern of error evidenced through *Santos I, II* and *Santos-Torres* illustrate that Santos is not suited to represent the class; she has had a sufficient number of "at bats" and struck out each time. Simpao and Cruz respectfully request that counsel for Simpao be appointed lead counsel.

Dated this 22nd day of June, 2007

Thomas J. Fisher
Attorney for Janice Cruz and Mary Grace Simpao
Shimizu Canto & Fisher
Tousley Brain Stephens, PLLC