1    <u>Counsel appearing on following page</u>

**FILED**

**DISTRICT COURT OF GUAM**

**IJUN 2 2 2007**

**MARY L.M. MORAN**

**CLERK OF COURT**

2

3                    DISTRICT COURT OF GUAM

                        TERRITORY OF GUAM

4

5    JULIE BABAUTA SANTOS, *et al.,*                Civil Case No. 04-00006

6              Petitioners,

7         v.

8    FELIX P. CAMACHO, *et al.,*

               Respondents.

9

    _____

10   CHARMAINE R. TORRES, *et al.,*                 Civil Case No. 04-00038

11             Plaintiffs,

12        v.

13   GOVERNMENT OF GUAM, *et al.,*

               Defendants.

14

15   _____

     MARY GRACE SIMPAO, *et al,*                    Civil Case No. 04-00049

16             Plaintiffs,

17        v.                                        **DECLARATION OF THOMAS J.
                                                    FISHER IN SUPPORT OF**
18   GOVERNMENT OF GUAM,                            **OBJECTIONS OF SIMPAO AND
                                                    CRUZ TO PETITIONER**
               Defendant,                           **SANTOS' JOINT MOTION FOR**
19        v.                                        **FINAL APPROVAL OF A CLASS
                                                    ACTIO SETTLEMENT**
20   FELIX P. CAMACHO, Governor of Guam             **AGREEMENT**

21             Intervenor-Defendant.

22

23

24   ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

25

**SHIMIZU CANTO & FISHER**
East Marine Corps Drive
Hagåtña, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

ORIGINAL

1    SHIMIZU CANTO & FISHER
     Suite 101 Dela Corte Bldg.
2    167 East Marine Corps Drive
     Hagåtña, Guam 96910
3    671.472.1131

4    TOUSLEY BRAIN STEPHENS PLLC
     Kim D. Stephens, P.S., WSBA #11984
5    Nancy A. Pacharzina, WSBA #25946
     1700 Seventh Avenue, Suite 2200
6    Seattle, Washington 98101
     206.682.5600
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

25

Page 2    Case 1:04-cv-00006    Document 428    Filed 06/22/2007    Page 2 of 32

# DECLARATION OF THOMAS J. FISHER

I, Thomas J. Fisher, Esq., hereby declare and state the following under penalty of perjury:

1.     I am an attorney for the Plaintiffs in the matter of Plaintiffs *Mary Grace Simpao, et al., vs. Defendant Government of Guam and Intervenor-Defendant Felix P. Camacho, District Court of Guam Civil Case No. CIV04-00049;*

2.     The matters stated herein are based upon my personal knowledge or belief and as to those matters I swear that the extent of my knowledge is truthfully stated and as to those matters based on my belief, I believe those matters to be true. I further believe that, if I was called to give testimony upon the matters stated herein, I am competent to testify to those matters, the authentication of certain records having been established before my testimony;

3.     I declare and attest that "Exhibit A" attached to this Declaration is a true and correct copy of a declaration of Order, J. Martinez, June 15 2005, Partial SummaryJudgment Order.

4.     I declare and attest that "Exhibit B" attached to this Declaration is a true and correct copy of a Accountant's Report, dated September 7th 2006.

5.     I declare and attest that "Exhibit C.A" attached to this Declaration is a true and correct copy of a letter received from Director Department of Administration .

6.     I declare and attest that "Exhibit D" attached to this Declaration is a true and correct copy of a Supplemental Filing in Opposition to Preliminary Approval of a Class Action Settlement.

7.     I declare and attest that "Exhibit E" attached to this Declaration is a true and correct copy of Simpao Plaintiff's Opposition to Petitioner's Motion for Appointment of Lead Counsel.

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Page 3     Case 1:04-cv-00006     Document 428     Filed 06/22/2007     Page 3 of 32

8.     I declare and attest that "Exhibit F" attached to this Declaration is a true and correct copy of a declaration of Gina M. Intrepido.

9..     I declare and attest that "Exhibit F" attached to this Declaration is a true and correct copy of a declaration of Lucille M. Almazon.


.     FURTHER DELCARANT SAYETH NAUGHT this Friday, June 22, 2007 at Hagåtña, Guam, swearing and affirming the foregoing is true.


By: _____
        Thomas J. Fisher

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

# EXHIBIT A



**FILED**
DISTRICT COURT OF GUAM

JUN 1 5 2005

**MARY L.M. MORAN**
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

MARY GRACE SIMPAO, CHRISTINA
NAPUTI and JANICE CRUZ, on behalf of
themselves and a class of others similarly
situated,

        Plaintiffs,

        vs.

GOVERNMENT OF GUAM,

        Defendant.

Civil Case No. 04-00049

ORDER

This matter is before the Court on the Plaintiffs' Partial Summary Judgment motion. *See*
Docket No. 59. After hearing argument from counsel and reviewing the parties' submissions, as
well as relevant caselaw and authority, the Court hereby memorializes the bases for its rulings
herein.

**BACKGROUND**

In the tax years prior to 1995, Guam taxpayers claimed the Earned Income Tax Credit
("EIC") and the Government of Guam paid it.[1] However, in the years 1995 and 1996, the
Government of Guam stopped paying the EIC. In 1996 the Department of Revenue and Taxation

---

[1] The EIC also referred to as the EITC was first enacted by the United States Congress in
1975 and codified as Section 43 of the U.S. Internal Revenue Code of 1954. *See* U.S. Public
Law 94-12, § 204. The EIC is a refundable Federal income tax credit for low-income working
individuals and families. It allows an eligible individual to claim a tax credit against the amount
of income tax liability, if any, on his or her annual income tax return.

("DRT") issued a ruling ("Revenue Ruling No. 96-001") regarding whether the EIC applied in Guam under the Guam Territorial Income Tax ("GTIT"). *See* Canto Decl., at Exhibit C, attached thereto. It concluded that it did not. The Attorney General of Guam issued his own opinion on the matter and agreed with the DRT's ruling. *Id.,* Exhibit B ("Attorney General of Guam Memorandum Opinion DRT/DOA 96-001 ('1996 AG Opinion')), attached thereto.

In light of the DRT's ruling and Attorney General's opinion, the Government of Guam published that EIC was inapplicable in Guam on its tax return forms for the years 1995 and 1996 and 1999 through 2003.[2] *See* Answer at ¶ 3. For example, the 1999 1040A tax form contained the language **"Not Applicable"** where Earned Income Credit was listed. *See* Canto Decl., Exhibit L, attached thereto.[3] For the years 1997 and 1998, such prohibitory language was not on the Government of Guam's tax forms. *See Id.*, Exhibit E, attached thereto.

For tax years 1995 and 1996, the Government of Guam did not pay refunds associated with EICs. *See* Answer at ¶ 18. In the years 1997 and 1998, qualified Guam taxpayers could claim EIC on their tax returns. However, only some of the EIC claims were paid for the tax year 1997 and with the exception of one individual taxpayer, no EICs were paid for the tax year 1998. *Id.* at ¶s 7, 21 and 23. No EICs were paid for the tax years of 1999 through 2003.

On January 12, 2005, the Governor of Guam issued an Executive Order indicating the Government would establish a procedure whereby EIC claims would become a part of a qualified taxpayer's tax return. *See* Canto Decl., Exhibit F, attached thereto. Shortly after the Governor issued this order, the DRT published forms with which to make claims for the relevant tax years of 1995 though 2004. *Id.,* at Exhibit G, attached thereto.

The plaintiffs have collectively filed individual income tax returns with the Government of Guam during the tax years 1995 through 2003. *See* Canto Decl., at Exhibit L, attached thereto. None of the plaintiffs received an EIC offsetting the taxes paid during those years. Additionally,

---

[2]Guam issues it own 1040 forms.

[3] The plaintiffs in some of the years in question actually used the federal form 1040 which did not black out the EIC portion.

2

1  none of the plaintiffs filed an administrative claim for a refund of overpaid taxes.  The plaintiffs,

2  Mary Grace Simpoa, Christiana Naputi and Janice Cruz,[4] on behalf of themselves and a class of

3  other similarly situated, ("plaintiffs") brought this action against the Government of Guam

4  seeking declaratory relief regarding the applicability of the EIC to Guam taxpayers and refunds

5  from tax overpayments.

**DISCUSSION**

7      The plaintiffs now move for partial summary judgment and seek the following relief: (1)

8  A declaration that, under the GTIT, the EIC applies to Guam and requires refunds of properly

9  claimed EIC claims; (2) A declaration that, by filing income tax returns that contain no claim for

10  the EIC, the plaintiffs have nonetheless exhausted their administrative remedies as required by

11  the GTIT as a condition precedent to bringing suit; (3) A declaration and injunctive relief

12  requiring the Government of Guam to provide notice to plaintiffs of their right to file EIC claims

13  and creating procedures for filing such claims under the GTIT, or alternatively, a declaration that

14  the Government of Guam must refund EIC claims to plaintiffs upon filing proper amended tax

15  returns containing an EIC claim under the GTIT; and (4) A declaration and injunctive relief that

16  the Government of Guam must enforce certain local Guam laws concerning amounts that are

17  alleged to be required to be set aside to pay the EIC.

18      Summary judgment is appropriate when the evidence, read in the light most favorable to

19  the nonmoving party, demonstrates that there is no genuine issue as to any material fact, and the

20  moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The party

21  opposing summary judgment cannot rest on conclusory allegations, but must set forth specific

22  facts showing that there is a genuine issue for trial. *Leer v. Murphy*, 844 F.2d 628, 631 (9th Cir.

23  1988).  Moreover, to defeat a summary judgment motion, the nonmoving party must come

24  forward with evidence sufficient to establish the existence of any disputed element essential to

25  that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v.*

26

27      [4]On April 14, 2005, when the summary judgment motion was filed, Janice Cruz, was not
a named plaintiff.  However, on April 18, 2005, plaintiffs filed a Second Amended Complaint
28  wherein, plaintiff Cruz was added.

3

*Catrett*, 477 U.S. 317, 322, 102 S.Ct. 2548 (1986).

Before addressing the merits of the motion, the defendant makes a number of objections. The defendant first contends that the plaintiffs' motion is premature. The motion is based on the Second Amended Complaint. However, the motion was filed on April 14, 2005 and the Second Amended Complaint was filed on April 18, 2005, four days after the motion. The defendant claims that in filing the motion, the plaintiffs misrepresented that the Second Amended Complaint contained no new facts, "apart from the addition of the plaintiff. All of the defendant's answers therefore to the Second Amended Complaint are required to be identical to its answers to the First Amended Complaint, save for those referring to the newly added Plaintiff Janice Cruz." *See* Motion, p.2. The defendant claims that this is not true. This Court agrees. In comparing the First Amended Complaint with the Second Amended Complaint, the Court notes that there are changes in the Second Amended Complaint that pertain to the original plaintiffs, Ms. Simpao and Ms. Naputi.[5] Notwithstanding the changes to the Second Amended Complaint, the substance of the complaint remains the same. Moreover, the changes have no bearing on the relief sought in the motion requiring this Court to hold the motion in abeyance.

The defendant also argues that the Declaratory Judgment Act and Anti-Injunctive Relief Act prohibit the relief sought. The Declaratory Judgment Act states that:

> [i]n a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986 . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).

The defendant argues that the Declaratory Judgment Act prohibits declaratory relief with respect to *federal taxes*. (Emphasis added.) However, in this instance, the plaintiffs argue that GTIT is not a federal tax so therefore the Declaratory Judgment Act does not bar the relief

---

[5]The plaintiffs are admonished that they are to exercise care in making representations to the Court and are cautioned that any further misrepresentations may result in the imposition of sanctions and/or other action deemed appropriate.

4

1   sought. This Court notes that this issue was discussed and ruled upon in the Court's prior Order

2   concerning the defendant's motion to dismiss.[6] Honorable Ronald S.W. Lew agreed with the

3   plaintiffs and found that the Declaratory Judgment Act did apply. Likewise, the Court addressed

4   the applicability of the Anti-Injunction Act in its prior Order. The Anti-Injunction Act generally

5   prohibits suits "for the purpose of restraining the assessment or collection of any tax." 26

6   U.S.C. § 7421(a). Judge Lew held that the Anti-Injunction Act did not bar the plaintiffs' claims

7   because the suit was not brought for the purpose of restraining the assessment or collection of

8   taxes, but was instead brought for the applicability and enforcement of the EIC. This Court finds

9   Judge Lew's rulings to be the law of the case and will not otherwise disturb them. *See United*

10  *States v. Lummi Indian Tribe,* 235 F.3d 443, 452 (9th Cir.2000) ("Under the law of the case

11  doctrine, 'a court is generally precluded from reconsidering an issue previously decided by the

12  same court, or a higher court in the identical case.'").

13      Turning now to the real issue before the Court, does the EIC apply to Guam and if so,

14  what actions must the Government of Guam take in order to administer it. At the outset of its

15  discussion, the Court notes that this issue has been unsettled for years.

16      Apparently, the issue was first raised in 1989. The Attorney General concluded in

17  Memorandum Opinion No. DOA 89-0750 to the Director of Administration ("DOA"), that Guam

18  was obligated to pay the EIC in excess of the tax owing. *See Canto Decl.,* at Exhibit A, attached

19  thereto. The Attorney General stated that:

20          Guam currently uses a mirror image of the Internal Revenue Codes
            as its basis for collecting income taxes. Some time ago, the
21          Territory received the permission of Congress to enact its own tax
            code in the 1986 Tax Reform Act.[7] By Executive Order, we have
22          established the Guam Tax Reform Commission to determine and
            recommend how we will delink from IRC. The Earned Income
23          Credit (EIC) and its applicability to Guam is one of the issues
            currently before the Commission. We have been informed that
24          Guam had previously received an annual reimbursement from the

25  _____

26      [6]*See* Order, Docket No. 53.

27      [7]In 1986, Congress authorized Guam to "de-link" from the I.R.C. and pass its own tax
    laws that would go into effect "upon an exchange of notes" by the governments of Guam and the
28  United States. Tax Reform Act of 1986, §§ 1271, 1277(b), Pub.L. No. 99-514, 100 Stat.2085.

> federal government amounting to several million dollars, but that the practice was halted during the administration of President Carter.
>
> It appears that because we have the authority to delink from IRC, and yet choose not to do so (if only by our inaction), that we are in a position of being responsible for any shortfall resulting from following federal tax policies which are entirely discretionary upon us. We might be able to attempt to seek reimbursement for the estimated or actual shortfall caused by Earned Income Credit. However, the response of Congress is likely to be that we merely have to rewrite our local tax code to remove this burden.

A few years later, on or about January 4, 1996, the Attorney General revoked its earlier Memorandum Opinion DOA 89-0750 and adopted the DRT's Revenue Ruling 96-001. *See* Canto Decl., at Exhibit B, attached thereto. The Attorney General decided that: (1) EIC was not applicable in Guam and should not be administered by DRT, and (2) DRT should not certify to the DOA for the payment of any amounts owing as refundable EIC. *Id.*

In response to the change in tax policy the Legislature enacted its own program (Guam Earned Income Program) to ensure that Guam's taxpayers would receive the EIC. *See* 11 Guam Code Ann. § 4108. The program mirrored the federal program under 26 U.S.C. § 32. However, the program was never implemented and in 2000, the Legislature filed a declaratory judgment action with Guam's Supreme Court asking for its opinion as to whether Guam's taxpayers were entitled to the EIC, pursuant to Subtitle A of the IRC and applied to Guam by the operation of the Organic Act, 48 U.S.C. § 1421 et seq. *See In re Request of I Mina'Bente Sing'Kona Liheslaturan Guahan Relative to the Application of the Earned Income Tax Credit Program to Guam Taxpayers ("The EIC question"),* 2001 Guam 3, 2001 WL 113985 (Sup. Ct. Guam 2001). After providing a thorough description of the history of the EIC, the Guam Supreme Court held that the EIC must be applied in mirrored fashion to Guam. This Court agrees.

Guam's tax code is based on the Internal Revenue Code. It is made applicable to Guam by the Organic Act and by the provisions of the Code itself. Organic Act §1421i(k); Internal Revenue Code § 7651. In effect, the Congress established a mirror system of taxation.

The Organic Act of Guam states:

> (a) Applicability of Federal laws; separate tax

6

The income tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in Guam: *Provided,* That notwithstanding any other provision of law, the Legislature of Guam may levy a separate tax on all taxpayers in an amount not to exceed 10 per centum of their annual income tax obligation to the Government of Guam.

(b) Guam Territorial income tax

The income-tax laws in force in Guam pursuant to subsection (a) of this section shall be deemed to impose separate Territorial income tax, payable to the government of Guam, which tax is designated the "Guam Territorial income tax."

48 U.S.C. § 1421i(a) and (b).

Title 48 U.S.C. § 1421i(d) adds:

(1) The income tax laws in force in Guam pursuant to subsection (a) of this section include but are not limited to the following provisions of the Internal Revenue Code of 1986, where not manifestly inapplicable or incompatible with the intent of this section: Subtitle A [26 U.S.C.A. § 1 et seq.] . . . and all provisions of subtitle F [26 U.S.C.A. § 6001 et. seq.] . . .

Section 31 of the Organic Act specifically lists the mirroring provisions, including Subtitle A of the I.R.C. which creates and defines the EIC.[8] The EIC was enacted in 1975 to provide tax benefits to low-income workers in the hopes that these benefits would make working more attractive than welfare. Since that time, Guam taxpayers applied for and received EICs until 1995 when the Government of Guam had a shift in tax policy and decided that it was not responsible for the payment of the EIC.

However, it would appear that the shift in policy was more attributable to a shortfall in the public coffers than one in legal reasoning. In DRT's Revenue Ruling No. 96-001, the director stated that "[a] definitive ruling by the Director of DRT is necessary at this time because GovGuam has experienced large amounts of lost revenue and cash outlays under the EITC." *See* Canto Decl., at Exhibit C, attached thereto. Guam's taxpayers should not be made to pay for the financial woes of its sovereign. If Guam is unable to pay for the EIC, it alone, has the power to change its tax code by delinking from the IRC in accordance with the Tax Reform Act of

---

[8]Section 6401(a) of Subtitle F directs the taxing authority to refund the EIC to the taxpayer or credit the EIC overpayment against the taxpayer's liabilities.

7

1  1986, or by enacting an additional tax to cover its expenses. *See* 48 U.S.C. § 1421i(a). Short of

2  those options, the Court finds that as a matter of law, Guam must pay the EIC.

3      Moreover, the Court notes that the defendant seemingly has conceded that the EIC applies

4  to Guam. The defendant stated in its Clarification of Defendant's Opposition to Plaintiff's

5  Motion for Partial Summary Judgment that "[t]he position of the Office of the Attorney General,

6  on behalf of the Government of Guam, with respect to the Earned Income Tax Credit ("EIC") is

7  set forth in the Settlement Agreement entered into on June 14, 2004 . . ."[9] That Settlement

8  Agreement was attached as Exhibit A to a Stipulated Order Granting Preliminary Approval of

9  Class Action Settlement. Some of the positions set forth in the Stipulated Order were as follows:

> 2. "EIC Class" means all persons who (a) filed Guam tax returns
> and (b) were and are entitled to be paid refundable earned income
> tax credits under the Guam Territorial Income Tax and the Earned
> Income Program for any or all of the following tax years: 1996,
> 1998, 1999, 2000, 2001, 2002 and 2003.
>
> 3. The EIC Class members, otherwise eligible, are entitled to the
> Earned Income Tax Credit, pursuant to a provision in Subtitle A of
> the Internal Revenue Code and applied to Guam by operation of
> the Organic Act, 48 U.S.C. § 1421 et seq.
>
> 4. The Government of Guam is required to pay the Earned Income
> Tax Credit to eligible taxpayers.[10]

17  Additionally, the Government of Guam further stated "[t]he Government of Guam does not

18  oppose the Motion for Partial Summary Judgment to the extent it will determine whether the EIC

19  applies to the People of Guam as a matter of law."

20      Having decided that the EIC applies to Guam, the next question is whether the taxpayers

21  exhausted their administrative remedies in claiming the EIC. According to 26 U.S.C. § 7422(a) a

22  taxpayer is required to file a claim for a tax refund before filing suit.[11] However, in this instance,

23

---

24      [9]*See* Clarification of Defendant's Opposition to Plaintiff's Motion for Partial Summary
25  Judgment. Docket No. 81.

26      [10]*See* Certified Copy of Stipulated Order Granting Preliminary Approval of Class Action
    Settlement With Attached Settlement Agreement in Santos Case, CIV04-00006, Docket No. 82,
27  page 2.

28      [11]26 U.S.C. § 7422 states:

1 the plaintiffs argue that the filing of an income tax return acts as a claim for the EIC, since the

2 Government of Guam affirmatively took steps to prohibit a taxpayer from actually filing an EIC

3 claim. The Government of Guam represented to the taxpayers that the EIC was inapplicable or

4 not available on Guam. *See* Canto Decl., Exhibit L, attached thereto. The DRT's policy was to

5 reject claims where individual taxpayers attempted to write EIC claims on their Guam tax forms,

6 submit the U.S. versions of the forms (which did not block out the EIC box), submit the Form

7 1040 X[12] or submit letters or informal claims. *See* Camacho Decl., at ¶ 9. It was DRT's policy

8 to return such forms to the taxpayer and (sometimes) provide the taxpayer with a copy of the

9 Revenue Ruling stating the EIC did not apply in Guam. This Court is concerned that the

10 Government took actions that discouraged if not actually affirmatively prohibited the filing of a

11 return with the request for the EIC. The Court therefore finds under the circumstances, the filing

12 of the tax returns should be considered a claim satisfying the jurisdictional requirement under 26

13 U.S.C. § 6511.[13]

14     The plaintiffs next seek declaratory and injunctive relief requiring the Government of

15 Guam to provide notice to plaintiffs of their right to file EIC claims and creating procedures for

16 filing such claims under the GTIT, or alternatively, a declaration that the Government of Guam

17 must refund EIC claims to plaintiffs upon filing proper amended tax returns containing an EIC

18

19     (a) No suit prior to filing claim for refund.

20         No suit or proceeding shall be maintained in any court for the

21 recovery of any internal revenue tax alleged to have been
erroneously or illegally assessed or collected, or of any penalty

22 claimed to have been collected without authority, or of any sum
alleged to have been excessive or in any manner wrongfully

23 collected, until a claim for refund or credit has been duly filed with

24 the Secretary, according to the provisions of law in that regard, and
the regulations of the Secretary established pursuance thereof.

25

26 [12]As used in the federal system, Form 1040 X is used for amended tax claims.

27     [13]Although the Court has jurisdiction based on the filing of the claims, the Court will
refrain at this time from addressing whether the statute of limitations would act as a bar to many

28 of the claims pursued in a refund suit. *See* 26 U.S.C. § 6532(a)(1).

claim under the GTIT. The Government of Guam claims that this issue is moot and the request unnecessary as the Government of Guam is already accepting EIC claims and permitting the amendment of tax returns to facilitate such claims, to the extent permitted by federal and territorial law. *See* Camacho Decl., at Exhibit 2, attached thereto.

In January 2005, the Governor of Guam issued Executive Order 2005-001, requiring DRT to create supplemental EIC forms ("Guam Earned Income Credit Application") and to accept the submission of the EIC claims under territorial and, to the extent applicable, federal law. *See* Camacho Decl., at Exhibit 1, attached thereto. It applies to tax years 1995-1996 and 1999-2004, and into the future. *Id.* There are no forms for the years 1997-1998 because DRT had already created a form for the those years and had accepted claims. The Order expressly states that tax returns may be amended as part of such a submission, although amendments are limited to three years as provided under federal law. *Id.* Accompanying the forms is an EIC brochure prepared by DRT. *Id.* at Exhibit 4. Pursuant to the Executive Order, the EIC claims submitted under this procedure shall constitute sufficient claims for the EIC under the GTIT if the EIC is held to apply to Guam. *Id.* at Exhibit 1, ¶ 2. As of April 26, 2005, DRT has received 15,475 claims for the EIC under the Executive Order. *Id.* at ¶ 14 and Exhibit 5.

The plaintiffs state that they are concerned that the forms contain qualifying language that would allow the Government of Guam to ignore its obligation to pay the EIC. The offending language is as follows:

> By providing this form neither the Department of Revenue & Taxation nor any other part of the Government of Guam or its officers are agreeing to make any payment to any taxpayer or any offset in favor of any taxpayer or waiving any applicable law regarding submission of claims.

*See* Camacho Decl., at Exhibit 2.

The plaintiffs claim that since the Government of Guam is claiming there is no obligation to pay the EIC on the forms, the request for declaratory relief is not moot. This Court has reviewed the forms and notes that at the time they were created, the issue of the EIC had not been decided. It seems to reason that in drafting the documents, the Government wanted to preserve its rights should a Court subsequently rule that it had no legal obligation to pay the EIC. Despite

10

a history of non-payment by the Government, the Court finds the Government of Guam has taken efforts to create forms that would allow it to process the claims in the event it is found responsible for paying the claims.

Under the circumstances, the Court does not find the need to grant declaratory relief. Should the Government of Guam refuse to pay the claims after they have been found owing, the plaintiffs are free to take steps to enforce the payments. The Court is reluctant to grant declaratory relief where there is only the possibility of future harm. *Hodgers-Durgin v. de la Vina* 199 F.3d 1037, 1042 (9th Cir.,1999) ("The Supreme Court has repeatedly cautioned that, absent a threat of immediate and irreparable harm, the federal courts should not enjoin a state to conduct its business in a particular way."). The Court notes that the plaintiffs' complaint is also one for a refund. There is nothing preventing the plaintiffs from proceeding with this action. Accordingly, the Court denies the declaratory and injunctive relief as requested.

Lastly, the plaintiffs ask for injunctive relief requiring the Government of Guam to enforce certain local Guam law (11 Guam Code Ann. § 50101 et seq. and 11 Guam Code Ann. § 51101 et seq.) concerning amounts that are alleged to be required to be set aside to pay the EIC. In 1999, the Legislature amended the Income Tax Reserve Fund law (the "Reserve Fund"), to create a yearly reserve fund to reserve tax receipts for the payment of income tax refunds, the child tax credit, and the EIC. 11 Guam Code Ann. § 50103. It also requires the DOA, DRT and the Bureau of Budget & Management Research to establish a yearly formula for how much money should be reserved from income tax receipts. *Id.* This formula is to be used by DOA to pay projected income tax refunds, child tax credits, and EIC. 11 Guam Code Ann. § 50104.

In addition to the Reserve Fund, the Legislature enacted the Income Tax Refund Efficient Payment Trust Fund Act of 2002 (the "Trust Fund"). The Trust Fund is supposed to receive weekly, quarterly, and monthly deposits (depending on the source) of payroll and other income taxes. 11 Guam Code Ann. § 50102. The formula for such deposits is supposed to be the same formula as the yearly account under the Reserve Fund, except that the money in the Trust Fund account is being reserved for the coming year and is supposed to be earning interest. *Id.* When DOA is ready to release tax refunds, child tax credits, or the EIC, the money is to be transferred

11

1  from the Trust Fund into the Reserve Fund, and to the taxpayers. *Id.*

2  The Government of Guam argues that the plaintiffs have no right to sue for the
3  enforcement of the Reserve and Trust Fund laws. The Government of Guam states that these
4  laws are local budget laws designed to benefit the Legislature with regard to expenditures of
5  public funds. There is nothing in the laws themselves that create a generalized private cause of
6  action, much less a right to seek injunctive relief. The plaintiffs therefore should be denied
7  injunctive relief. *See Touche Ross & Co. v. Readington,* 442 U.S. 560, 568 (1979) (an implied
8  cause of action can only be created under a statute if it is consistent with the intent of the
9  legislature.)

10  The Government of Guam also states that it is complying with the laws to the degree
11  permitted by the intervening budget laws. In 2004, the Guam Legislature passed its budget for
12  fiscal year 2005, P.L. 27-106 (Bill 363), creating a tax refund reserve of $72 million. There was
13  no provision therein for the EIC or other reserves. *See* Guam P.L. 27-106. Based upon the
14  current financial figures available to the Government, $72 million is not sufficient to pay this
15  year's estimated tax refunds and EIC. Decl. of Lourdes Perez, at ¶ 4.

16  According to the Director of the DOA, an injunction that requires the Government of
17  Guam to immediately begin to set aside money for the EIC could cause a financial crisis. Decl.
18  of Lourdes Perez, at ¶ 8. The Court is concerned about the consequences of ordering the
19  Government of Guam to comply with these laws without a showing of actually how much money
20  would be required and the effects that would have on the operations of the Government. Under
21  the circumstances, the Court finds the request premature in light of the fact that the class has not
22  been certified. There simply are not enough facts to indicate what sum of monies should actually
23  be set aside. In addition, when the plaintiffs proceed with their refund suit, the Court can revisit
24  the issue of how refunds are to be paid if found owing. Should the Government of Guam choose
25  not to take action in paying its obligation, the Court can then take the appropriate action.
26  Accordingly, the Court denies summary judgment as to this request.

27  ///

28  ///

12

## CONCLUSION

In light of the foregoing, the Court grants partial summary judgment as to the issue of whether EIC applies to Guam and that, by filing income tax returns that contain no claim for the EIC, the plaintiffs have nonetheless exhausted their administrative remedies as required by the GTIT as a condition precedent to bringing suit. As to the other requests, the Court denies the relief sought. The plaintiffs are to take action to certify the class and proceed with this matter as a refund suit.[14]

SO ORDERED this _15_ day of June, 2005.

RICARDO S. MARTINEZ
Designated Judge

Notice is hereby given that this document was
entered on the docket on **JUN 1 5 2005**.
No separate notice of entry on the docket will
be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam
By: /s/ Shirlene A. Ishizu    **JUN 1 5 2005**
Deputy Clerk          Date

---

[14]The Court notes the conspicuous absence of the United States as a party in this action. The Court questions whether there may be an equal protection argument in light of the fact that Guam taxpayers are not entitled to the Advance EIC and an offset of their social security taxes paid to the federal government.

*The Honorable Ricardo S. Martinez, United States District Judge for the Western District of Washington, by designation.

13

# EXHIBIT B

# J. Scott Magliari
## & COMPANY

### CERTIFIED PUBLIC ACCOUNTANT

GUAM
P.O. BOX 12734 • TAMUNING, GUAM 96931
TEL: (671) 472-2680 • FAX: (671) 472-2686

SAIPAN
PMB 297 PPP BOX 10000 • SAIPAN, MP 96950
TEL: (670) 233-1837 • FAX: (670) 233-8214

**<u>Independent Accountant's Report</u>**
**<u>on Applying Agreed Upon Procedures</u>**

Van De Veld, Shimizu, Canto & Fisher
Attorneys At Law
Suite 101 De La Corte Building
167 East Marine Corps Drive
Hagatna, Guam 96910

At your request, we have performed the procedures enumerated below, which were agreed to by Van De Veld, Shimizu, Canto & Fisher, Attorneys at Law, solely to assist you with respect to the calculation of accumulated interest for various taxpayers for the period covering from April 15, 1996 through September 30, 2005. This engagement to apply agreed-upon procedures was performed in accordance with standards established by the American Institute of Certified Public Accountants. The sufficiency of these procedures is solely the responsibility of the specified users of the report. Consequently, we make no representation regarding the sufficiency of the procedures described below either for the purpose for which this report has been requested or for any other purpose.

Our procedures and findings are as follows:

1.  <u>Procedure:</u>

    Calculate the number of days in each period in which the interest rate was unchanged for the period covering from April 15, 1996 through September 30, 2005.

    <u>Finding:</u>

    No exceptions were noted as a result of this procedure.

2.  <u>Procedure:</u>

    Create excel spreadsheet to calculate interest compounded daily per Internal Revenue Code (IRC) Section 6621 for each taxpayer sample. The period calculated covered April 15, 1996 through September 30, 2005.

Finding:

No exceptions were noted as a result of this procedure. See the accompanying attachments listed by taxpayer as *Schedules A and B*. Based on the results of this procedure, we calculated total accumulated interest as follows:

|  |  |
|---|---|
| Low - $15,000,000: | $58,907,306.76 |
| Medium - $17,000,000: | $66,761,614.33 |
| High - $20,000,000: | $78,543,075.68 |

\* \* \* \* \* \* \* \*

We were not engaged to, and did not perform an audit, the objective of which would be the statement of an opinion on the specified elements, accounts or items. Accordingly, we do not express an opinion. Had we performed additional procedures, other matters might have come to our attention that would have been reported to you. We have no responsibility to update this report for events and circumstances occurring after the date of this report.

This report is intended solely for the information and use of Van De Veld, Shimizu, Canto & Fisher and should not be used by those who have not agreed to the procedures and taken responsibility for the sufficiency of the procedures for their purposes. This report relates only to the information specified above and does not extend to any financial statements as a whole.

*J. Scott Maglian & Company*

Hagåtña, Guam
September 7, 2005

**Van De Veld, Shimizu, Canto and Fisher**
**Attorneys At Law**
**Summary Schedule of Accumulated Interest**
**As of September 30, 2005**

*Schedule A*

| | Period Covered | Low- $15,000,000 | Medium- $17,000,000 | High- $20,000,000 |
|---|---|---|---|---|
| Taxpayer "A" | 4/15/96 - 9/30/05 | $ 13,596,226.52 | $ 15,409,056.72 | $ 18,128,302.03 |
| Taxpayer "B" | 4/15/97 - 9/30/05 | 11,453,611.53 | 12,980,759.73 | 15,271,482.04 |
| Taxpayer "C" | 4/15/98 - 9/30/05 | 9,429,341.72 | 10,686,587.28 | 12,572,455.63 |
| Taxpayer "D" | 4/15/99 - 9/30/05 | 7,769,186.85 | 8,805,078.43 | 10,358,915.80 |
| Taxpayer "E" | 4/15/00 - 9/30/05 | 6,006,130.16 | 6,806,947.51 | 8,008,173.55 |
| Taxpayer "F" | 4/15/01 - 9/30/05 | 4,205,733.88 | 4,766,498.39 | 5,607,645.17 |
| Taxpayer "G" | 4/15/02 - 9/30/05 | 2,920,677.92 | 3,310,101.65 | 3,894,237.23 |
| Taxpayer "H" | 4/15/03 - 9/30/05 | 1,925,291.71 | 2,181,997.27 | 2,567,055.62 |
| Taxpayer "I" | 4/15/04 - 9/30/05 | 1,178,587.07 | 1,335,732.01 | 1,571,449.43 |
| Taxpayer "J" | 4/15/05 - 9/30/05 | 422,519.40 | 478,855.32 | 563,359.20 |
| **Total Accumulated Interest** | | 58,907,306.76 | 66,761,614.33 | 78,543,075.68 |
| **Total Principal** *(Note 1)* | | 150,000,000.00 | 170,000,000.00 | 200,000,000.00 |
| **Total Principal and Accumulated Interest** | | $ 208,907,306.76 | $ 236,761,614.33 | $ 278,543,075.68 |

*Note 1:* Principal amounts for Low, Medium and High are $15,000,000, $17,000,000, and $20,000,000 respectively.

Case 1:04-cv-00006    Document 428    Filed 06/22/2007    Page 22 of 32

Schedule B

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 15,000,000.00 | 04/15/1996 - 06/30/1996 | 77 | 7.00% | 0.000191781 | $ 15,223,128.89 | $ 223,128.89 |
| $ 15,223,128.89 | 07/01/1996 - 03/31/1998 | 639 | 8.00% | 0.000219178 | $ 17,511,457.08 | $ 2,288,328.19 |
| $ 17,511,457.08 | 04/01/1998 - 03/31/1999 | 365 | 7.00% | 0.000191781 | $ 18,781,054.93 | $ 1,269,597.85 |
| $ 18,781,054.93 | 04/01/1999 - 03/31/2000 | 366 | 8.00% | 0.000219178 | $ 20,349,554.78 | $ 1,568,499.85 |
| $ 20,349,554.78 | 04/01/2000 - 03/31/2001 | 365 | 9.00% | 0.000246575 | $ 22,265,712.51 | $ 1,916,157.73 |
| $ 22,265,712.51 | 04/01/2001 - 06/30/2001 | 91 | 8.00% | 0.000219178 | $ 22,714,215.45 | $ 448,502.94 |
| $ 22,714,215.45 | 07/01/2001 - 12/31/2001 | 184 | 7.00% | 0.000191781 | $ 23,529,977.52 | $ 815,762.08 |
| $ 23,529,977.52 | 01/01/2002 - 12/31/2002 | 365 | 6.00% | 0.000164384 | $ 24,984,866.87 | $ 1,454,889.35 |
| $ 24,984,866.87 | 01/01/2003 - 09/30/2003 | 273 | 5.00% | 0.000136986 | $ 25,936,857.21 | $ 951,990.34 |
| $ 25,936,857.21 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 26,462,237.36 | $ 525,380.14 |
| $ 26,462,237.36 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 26,794,150.83 | $ 331,913.47 |
| $ 26,794,150.83 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 27,065,646.05 | $ 271,495.22 |
| $ 27,065,646.05 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 27,748,868.09 | $ 683,222.04 |
| $ 27,748,868.09 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 28,596,226.52 | $ 847,358.43 |

Total accumulated interest April 15, 1996 through September 30, 2005: $ 13,596,226.52

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 17,000,000.00 | 04/15/1996 - 06/30/1996 | 77 | 7.00% | 0.000191781 | $ 17,252,879.40 | $ 252,879.40 |
| $ 17,252,879.40 | 07/01/1996 - 03/31/1998 | 639 | 8.00% | 0.000219178 | $ 19,846,318.02 | $ 2,593,438.62 |
| $ 19,846,318.02 | 04/01/1998 - 03/31/1999 | 365 | 7.00% | 0.000191781 | $ 21,285,195.59 | $ 1,438,877.57 |
| $ 21,285,195.59 | 04/01/1999 - 03/31/2000 | 366 | 8.00% | 0.000219178 | $ 23,062,828.75 | $ 1,777,633.16 |
| $ 23,062,828.75 | 04/01/2000 - 03/31/2001 | 365 | 9.00% | 0.000246575 | $ 25,234,474.18 | $ 2,171,645.42 |
| $ 25,234,474.18 | 04/01/2001 - 06/30/2001 | 91 | 8.00% | 0.000219178 | $ 25,742,777.50 | $ 508,303.33 |
| $ 25,742,777.50 | 07/01/2001 - 12/31/2001 | 184 | 7.00% | 0.000191781 | $ 26,667,307.86 | $ 924,530.35 |
| $ 26,667,307.86 | 01/01/2002 - 12/31/2002 | 365 | 6.00% | 0.000164384 | $ 28,316,182.46 | $ 1,648,874.60 |
| $ 28,316,182.46 | 01/01/2003 - 09/30/2003 | 273 | 5.00% | 0.000136986 | $ 29,395,104.84 | $ 1,078,922.39 |
| $ 29,395,104.84 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 29,990,535.67 | $ 595,430.83 |
| $ 29,990,535.67 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 30,366,704.27 | $ 376,168.60 |
| $ 30,366,704.27 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 30,674,398.86 | $ 307,694.59 |
| $ 30,674,398.86 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 31,448,717.16 | $ 774,318.31 |
| $ 31,448,717.16 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 32,409,056.72 | $ 960,339.56 |

Total accumulated interest April 15, 1996 through September 30, 2005: $ 15,409,056.72

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 20,000,000.00 | 04/15/1996 - 06/30/1996 | 77 | 7.00% | 0.000191781 | $ 20,297,505.18 | $ 297,505.18 |
| $ 20,297,505.18 | 07/01/1996 - 03/31/1998 | 639 | 8.00% | 0.000219178 | $ 23,348,609.44 | $ 3,051,104.26 |
| $ 23,348,609.44 | 04/01/1998 - 03/31/1999 | 365 | 7.00% | 0.000191781 | $ 25,041,406.58 | $ 1,692,797.14 |
| $ 25,041,406.58 | 04/01/1999 - 03/31/2000 | 366 | 8.00% | 0.000219178 | $ 27,132,739.71 | $ 2,091,333.13 |
| $ 27,132,739.71 | 04/01/2000 - 03/31/2001 | 365 | 9.00% | 0.000246575 | $ 29,687,616.68 | $ 2,554,876.97 |
| $ 29,687,616.68 | 04/01/2001 - 06/30/2001 | 91 | 8.00% | 0.000219178 | $ 30,285,620.59 | $ 598,003.92 |
| $ 30,285,620.59 | 07/01/2001 - 12/31/2001 | 184 | 7.00% | 0.000191781 | $ 31,373,303.36 | $ 1,087,682.77 |
| $ 31,373,303.36 | 01/01/2002 - 12/31/2002 | 365 | 6.00% | 0.000164384 | $ 33,313,155.83 | $ 1,939,852.47 |
| $ 33,313,155.83 | 01/01/2003 - 09/30/2003 | 273 | 5.00% | 0.000136986 | $ 34,582,476.28 | $ 1,269,320.45 |
| $ 34,582,476.28 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 35,282,983.14 | $ 700,506.86 |
| $ 35,282,983.14 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 35,725,534.43 | $ 442,551.29 |
| $ 35,725,534.43 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 36,087,528.07 | $ 361,993.63 |
| $ 36,087,528.07 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 36,998,490.78 | $ 910,962.71 |
| $ 36,998,490.78 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 38,128,302.03 | $ 1,129,811.24 |

Total accumulated interest April 15, 1996 through September 30, 2005: $ 18,128,302.03

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

Schedule B, Continued

Note 1

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 15,000,000.00 | 04/15/1997 - 03/31/1998 | 351 | 8.00% | 0.000219178 | $ 16,199,385.00 | $ 1,199,385.00 |
| $ 16,199,385.00 | 04/01/1998 - 03/31/1999 | 365 | 7.00% | 0.000191781 | $ 17,373,856.34 | $ 1,174,471.34 |
| $ 17,373,856.34 | 04/01/1999 - 03/31/2000 | 366 | 8.00% | 0.000219178 | $ 18,824,833.99 | $ 1,450,977.66 |
| $ 18,824,833.99 | 04/01/2000 - 03/31/2001 | 365 | 9.00% | 0.000246575 | $ 20,597,420.74 | $ 1,772,586.75 |
| $ 20,597,420.74 | 04/01/2001 - 06/30/2001 | 91 | 8.00% | 0.000219178 | $ 21,012,318.92 | $ 414,898.18 |
| $ 21,012,318.92 | 07/01/2001 - 12/31/2001 | 184 | 7.00% | 0.000191781 | $ 21,766,958.81 | $ 754,639.89 |
| $ 21,766,958.81 | 01/01/2002 - 12/31/2002 | 365 | 6.00% | 0.000164384 | $ 23,112,838.40 | $ 1,345,879.59 |
| $ 23,112,838.40 | 01/01/2003 - 09/30/2003 | 273 | 5.00% | 0.000136986 | $ 23,993,499.44 | $ 880,661.04 |
| $ 23,993,499.44 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 24,479,514.69 | $ 486,015.25 |
| $ 24,479,514.69 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 24,786,559.05 | $ 307,044.36 |
| $ 24,786,559.05 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 25,037,712.09 | $ 251,153.04 |
| $ 25,037,712.09 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 25,669,742.69 | $ 632,030.60 |
| $ 25,669,742.69 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 26,453,611.53 | $ 783,868.84 |

Total accumulated interest April 15, 1997 through September 30, 2005: **$ 11,453,611.53**

Note 1: Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

Note 1

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 17,000,000.00 | 04/15/1997 - 03/31/1998 | 351 | 8.00% | 0.000219178 | $ 18,359,303.00 | $ 1,359,303.00 |
| $ 18,359,303.00 | 04/01/1998 - 03/31/1999 | 365 | 7.00% | 0.000191781 | $ 19,690,370.51 | $ 1,331,067.52 |
| $ 19,690,370.51 | 04/01/1999 - 03/31/2000 | 366 | 8.00% | 0.000219178 | $ 21,334,811.86 | $ 1,644,441.34 |
| $ 21,334,811.86 | 04/01/2000 - 03/31/2001 | 365 | 9.00% | 0.000246575 | $ 23,343,743.50 | $ 2,008,931.65 |
| $ 23,343,743.50 | 04/01/2001 - 06/30/2001 | 91 | 8.00% | 0.000219178 | $ 23,813,961.44 | $ 470,217.94 |
| $ 23,813,961.44 | 07/01/2001 - 12/31/2001 | 184 | 7.00% | 0.000191781 | $ 24,669,219.98 | $ 855,258.54 |
| $ 24,669,219.98 | 01/01/2002 - 12/31/2002 | 365 | 6.00% | 0.000164384 | $ 26,194,550.19 | $ 1,525,330.20 |
| $ 26,194,550.19 | 01/01/2003 - 09/30/2003 | 273 | 5.00% | 0.000136986 | $ 27,192,632.70 | $ 998,082.51 |
| $ 27,192,632.70 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 27,743,449.98 | $ 550,817.28 |
| $ 27,743,449.98 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 28,091,433.59 | $ 347,983.61 |
| $ 28,091,433.59 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 28,376,073.70 | $ 284,640.11 |
| $ 28,376,073.70 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 29,092,375.05 | $ 716,301.35 |
| $ 29,092,375.05 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 29,980,759.73 | $ 888,384.68 |

Total accumulated interest April 15, 1997 through September 30, 2005: **$ 12,980,759.73**

Note 1: Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

Note 1

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 20,000,000.00 | 04/15/1997 - 03/31/1998 | 351 | 8.00% | 0.000219178 | $ 21,599,180.00 | $ 1,599,180.00 |
| $ 21,599,180.00 | 04/01/1998 - 03/31/1999 | 365 | 7.00% | 0.000191781 | $ 23,165,141.78 | $ 1,565,961.79 |
| $ 23,165,141.78 | 04/01/1999 - 03/31/2000 | 366 | 8.00% | 0.000219178 | $ 25,099,778.65 | $ 1,934,636.87 |
| $ 25,099,778.65 | 04/01/2000 - 03/31/2001 | 365 | 9.00% | 0.000246575 | $ 27,463,227.65 | $ 2,363,449.00 |
| $ 27,463,227.65 | 04/01/2001 - 06/30/2001 | 91 | 8.00% | 0.000219178 | $ 28,016,425.23 | $ 553,197.58 |
| $ 28,016,425.23 | 07/01/2001 - 12/31/2001 | 184 | 7.00% | 0.000191781 | $ 29,022,611.74 | $ 1,006,186.51 |
| $ 29,022,611.74 | 01/01/2002 - 12/31/2002 | 365 | 6.00% | 0.000164384 | $ 30,817,117.87 | $ 1,794,506.12 |
| $ 30,817,117.87 | 01/01/2003 - 09/30/2003 | 273 | 5.00% | 0.000136986 | $ 31,991,332.59 | $ 1,174,214.72 |
| $ 31,991,332.59 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 32,639,352.92 | $ 648,020.33 |
| $ 32,639,352.92 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 33,048,745.40 | $ 409,392.48 |
| $ 33,048,745.40 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 33,383,616.12 | $ 334,870.72 |
| $ 33,383,616.12 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 34,226,323.59 | $ 842,707.47 |
| $ 34,226,323.59 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 35,271,482.04 | $ 1,045,158.45 |

Total accumulated interest April 15, 1997 through September 30, 2005: **$ 15,271,482.04**

Note 1: Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Schedule B, Continued*

### Note 1

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 15,000,000.00 | 04/15/1998 - 03/31/1999 | 351 | 7.00% | 0.000191781 | $ 16,044,382.94 | $ 1,044,382.94 |
| $ 16,044,382.94 | 04/01/1999 - 03/31/2000 | 366 | 8.00% | 0.000219178 | $ 17,384,329.62 | $ 1,339,946.68 |
| $ 17,384,329.62 | 04/01/2000 - 03/31/2001 | 365 | 9.00% | 0.000246575 | $ 19,021,275.38 | $ 1,636,945.77 |
| $ 19,021,275.38 | 04/01/2001 - 06/30/2001 | 91 | 8.00% | 0.000219178 | $ 19,404,424.94 | $ 383,149.56 |
| $ 19,404,424.94 | 07/01/2001 - 12/31/2001 | 184 | 7.00% | 0.000191781 | $ 20,101,318.66 | $ 696,893.72 |
| $ 20,101,318.66 | 01/01/2002 - 12/31/2002 | 365 | 6.00% | 0.000164384 | $ 21,344,209.53 | $ 1,242,890.88 |
| $ 21,344,209.53 | 01/01/2003 - 09/30/2003 | 273 | 5.00% | 0.000136986 | $ 22,157,481.08 | $ 813,271.55 |
| $ 22,157,481.08 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 22,606,305.72 | $ 448,824.64 |
| $ 22,606,305.72 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 22,889,854.58 | $ 283,548.87 |
| $ 22,889,854.58 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 23,121,789.02 | $ 231,934.43 |
| $ 23,121,789.02 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 23,705,455.70 | $ 583,666.68 |
| $ 23,705,455.70 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 24,429,341.72 | $ 723,886.02 |

**Total accumulated interest April 15, 1998 through September 30, 2005:**    **$ 9,429,341.72**

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

### Note 1

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 17,000,000.00 | 04/15/1998 - 03/31/1999 | 351 | 7.00% | 0.000191781 | $ 18,183,634.00 | $ 1,183,634.00 |
| $ 18,183,634.00 | 04/01/1999 - 03/31/2000 | 366 | 8.00% | 0.000219178 | $ 19,702,240.23 | $ 1,518,606.24 |
| $ 19,702,240.23 | 04/01/2000 - 03/31/2001 | 365 | 9.00% | 0.000246575 | $ 21,557,445.43 | $ 1,855,205.20 |
| $ 21,557,445.43 | 04/01/2001 - 06/30/2001 | 91 | 8.00% | 0.000219178 | $ 21,991,681.60 | $ 434,236.16 |
| $ 21,991,681.60 | 07/01/2001 - 12/31/2001 | 184 | 7.00% | 0.000191781 | $ 22,781,494.48 | $ 789,812.88 |
| $ 22,781,494.48 | 01/01/2002 - 12/31/2002 | 365 | 6.00% | 0.000164384 | $ 24,190,104.14 | $ 1,408,609.66 |
| $ 24,190,104.14 | 01/01/2003 - 09/30/2003 | 273 | 5.00% | 0.000136986 | $ 25,111,811.89 | $ 921,707.75 |
| $ 25,111,811.89 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 25,620,479.81 | $ 508,667.92 |
| $ 25,620,479.81 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 25,941,835.20 | $ 321,355.38 |
| $ 25,941,835.20 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 26,204,694.22 | $ 262,859.03 |
| $ 26,204,694.22 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 26,866,183.12 | $ 661,488.90 |
| $ 26,866,183.12 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 27,686,587.28 | $ 820,404.16 |

**Total accumulated interest April 15, 1998 through September 30, 2005:**    **$ 10,686,587.28**

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

### Note 1

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 20,000,000.00 | 04/15/1998 - 03/31/1999 | 351 | 7.00% | 0.000191781 | $ 21,392,510.58 | $ 1,392,510.58 |
| $ 21,392,510.58 | 04/01/1999 - 03/31/2000 | 366 | 8.00% | 0.000219178 | $ 23,179,106.16 | $ 1,786,595.57 |
| $ 23,179,106.16 | 04/01/2000 - 03/31/2001 | 365 | 9.00% | 0.000246575 | $ 25,361,700.51 | $ 2,182,594.35 |
| $ 25,361,700.51 | 04/01/2001 - 06/30/2001 | 91 | 8.00% | 0.000219178 | $ 25,872,566.59 | $ 510,866.08 |
| $ 25,872,566.59 | 07/01/2001 - 12/31/2001 | 184 | 7.00% | 0.000191781 | $ 26,801,758.21 | $ 929,191.62 |
| $ 26,801,758.21 | 01/01/2002 - 12/31/2002 | 365 | 6.00% | 0.000164384 | $ 28,458,946.05 | $ 1,657,187.84 |
| $ 28,458,946.05 | 01/01/2003 - 09/30/2003 | 273 | 5.00% | 0.000136986 | $ 29,543,308.11 | $ 1,084,362.06 |
| $ 29,543,308.11 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 30,141,740.96 | $ 598,432.85 |
| $ 30,141,740.96 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 30,519,806.11 | $ 378,065.15 |
| $ 30,519,806.11 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 30,829,052.02 | $ 309,245.91 |
| $ 30,829,052.02 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 31,607,274.26 | $ 778,222.24 |
| $ 31,607,274.26 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 32,572,455.63 | $ 965,181.37 |

**Total accumulated interest April 15, 1998 through September 30, 2005:**    **$ 12,572,455.63**

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

**Van De Veld, Shimizu, Canto and Fisher**
**Schedule of Accumulated Interest**
**Taxpayer "D"**
**As of September 30, 2005**

*Schedule B, Continued*

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 15,000,000.00 | 04/15/1999 - 03/31/2000 | 352 | 8.00% | 0.000219178 | $ 16,202,935.55 | $ 1,202,935.55 |
| $ 16,202,935.55 | 04/01/2000 - 03/31/2001 | 365 | 9.00% | 0.000246575 | $ 17,728,638.71 | $ 1,525,703.17 |
| $ 17,728,638.71 | 04/01/2001 - 06/30/2001 | 91 | 8.00% | 0.000219178 | $ 18,085,750.42 | $ 357,111.70 |
| $ 18,085,750.42 | 07/01/2001 - 12/31/2001 | 184 | 7.00% | 0.000191781 | $ 18,735,285.04 | $ 649,534.62 |
| $ 18,735,285.04 | 01/01/2002 - 12/31/2002 | 365 | 6.00% | 0.000164384 | $ 19,893,712.27 | $ 1,158,427.23 |
| $ 19,893,712.27 | 01/01/2003 - 09/30/2003 | 273 | 5.00% | 0.000136986 | $ 20,651,715.98 | $ 758,003.72 |
| $ 20,651,715.98 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 21,070,039.66 | $ 418,323.68 |
| $ 21,070,039.66 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 21,334,319.28 | $ 264,279.62 |
| $ 21,334,319.28 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 21,550,492.05 | $ 216,172.77 |
| $ 21,550,492.05 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 22,094,494.25 | $ 544,002.20 |
| $ 22,094,494.25 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 22,769,186.85 | $ 674,692.60 |

Total accumulated interest April 15, 1999 through September 30, 2005: **$ 7,769,186.85**

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 17,000,000.00 | 04/15/1999 - 03/31/2000 | 352 | 8.00% | 0.000219178 | $ 18,363,326.95 | $ 1,363,326.95 |
| $ 18,363,326.95 | 04/01/2000 - 03/31/2001 | 365 | 9.00% | 0.000246575 | $ 20,092,457.21 | $ 1,729,130.25 |
| $ 20,092,457.21 | 04/01/2001 - 06/30/2001 | 91 | 8.00% | 0.000219178 | $ 20,497,183.80 | $ 404,726.60 |
| $ 20,497,183.80 | 07/01/2001 - 12/31/2001 | 184 | 7.00% | 0.000191781 | $ 21,233,323.04 | $ 736,139.24 |
| $ 21,233,323.04 | 01/01/2002 - 12/31/2002 | 365 | 6.00% | 0.000164384 | $ 22,546,207.24 | $ 1,312,884.19 |
| $ 22,546,207.24 | 01/01/2003 - 09/30/2003 | 273 | 5.00% | 0.000136986 | $ 23,405,278.11 | $ 859,070.88 |
| $ 23,405,278.11 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 23,879,378.28 | $ 474,100.17 |
| $ 23,879,378.28 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 24,178,895.18 | $ 299,516.90 |
| $ 24,178,895.18 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 24,423,890.99 | $ 244,995.81 |
| $ 24,423,890.99 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 25,040,426.82 | $ 616,535.83 |
| $ 25,040,426.82 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 25,805,078.43 | $ 764,651.62 |

Total accumulated interest April 15, 1999 through September 30, 2005: **$ 8,805,078.43**

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 20,000,000.00 | 04/15/1999 - 03/31/2000 | 352 | 8.00% | 0.000219178 | $ 21,603,914.06 | $ 1,603,914.06 |
| $ 21,603,914.06 | 04/01/2000 - 03/31/2001 | 365 | 9.00% | 0.000246575 | $ 23,638,184.95 | $ 2,034,270.89 |
| $ 23,638,184.95 | 04/01/2001 - 06/30/2001 | 91 | 8.00% | 0.000219178 | $ 24,114,333.89 | $ 476,148.94 |
| $ 24,114,333.89 | 07/01/2001 - 12/31/2001 | 184 | 7.00% | 0.000191781 | $ 24,980,380.05 | $ 866,046.16 |
| $ 24,980,380.05 | 01/01/2002 - 12/31/2002 | 365 | 6.00% | 0.000164384 | $ 26,524,949.69 | $ 1,544,569.64 |
| $ 26,524,949.69 | 01/01/2003 - 09/30/2003 | 273 | 5.00% | 0.000136986 | $ 27,535,621.31 | $ 1,010,671.62 |
| $ 27,535,621.31 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 28,093,386.21 | $ 557,764.90 |
| $ 28,093,386.21 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 28,445,759.04 | $ 352,372.82 |
| $ 28,445,759.04 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 28,733,989.40 | $ 288,230.36 |
| $ 28,733,989.40 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 29,459,325.67 | $ 725,336.27 |
| $ 29,459,325.67 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 30,358,915.80 | $ 899,590.14 |

Total accumulated interest April 15, 1999 through September 30, 2005: **$ 10,358,915.80**

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Schedule B, Continued*

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 15,000,000.00 | 04/15/2000 - 03/31/2001 | 351 | 9.00% | 0.000246575 | $ 16,355,880.20 | $ 1,355,880.20 |
| $ 16,355,880.20 | 04/01/2001 - 06/30/2001 | 91 | 8.00% | 0.000219178 | $ 16,685,340.14 | $ 329,459.94 |
| $ 16,685,340.14 | 07/01/2001 - 12/31/2001 | 184 | 7.00% | 0.000191781 | $ 17,284,580.19 | $ 599,240.06 |
| $ 17,284,580.19 | 01/01/2002 - 12/31/2002 | 365 | 6.00% | 0.000164384 | $ 18,353,308.44 | $ 1,068,728.25 |
| $ 18,353,308.44 | 01/01/2003 - 09/30/2003 | 273 | 5.00% | 0.000136986 | $ 19,052,618.64 | $ 699,310.20 |
| $ 19,052,618.64 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 19,438,550.81 | $ 385,932.17 |
| $ 19,438,550.81 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 19,682,366.81 | $ 243,816.00 |
| $ 19,682,366.81 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 19,881,800.96 | $ 199,434.15 |
| $ 19,881,800.96 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 20,383,680.15 | $ 501,879.19 |
| $ 20,383,680.15 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 21,006,130.16 | $ 622,450.01 |

Total accumulated Interest April 15, 2000 through September 30, 2005: **$ 6,006,130.16**

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 17,000,000.00 | 04/15/2000 - 03/31/2001 | 351 | 9.00% | 0.000246575 | $ 18,536,664.22 | $ 1,536,664.22 |
| $ 18,536,664.22 | 04/01/2001 - 06/30/2001 | 91 | 8.00% | 0.000219178 | $ 18,910,052.16 | $ 373,387.93 |
| $ 18,910,052.16 | 07/01/2001 - 12/31/2001 | 184 | 7.00% | 0.000191781 | $ 19,589,190.89 | $ 679,138.73 |
| $ 19,589,190.89 | 01/01/2002 - 12/31/2002 | 365 | 6.00% | 0.000164384 | $ 20,800,416.23 | $ 1,211,225.35 |
| $ 20,800,416.23 | 01/01/2003 - 09/30/2003 | 273 | 5.00% | 0.000136986 | $ 21,592,967.80 | $ 792,551.56 |
| $ 21,592,967.80 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 22,030,357.59 | $ 437,389.79 |
| $ 22,030,357.59 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 22,306,682.39 | $ 276,324.80 |
| $ 22,306,682.39 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 22,532,707.75 | $ 226,025.37 |
| $ 22,532,707.75 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 23,101,504.17 | $ 568,796.42 |
| $ 23,101,504.17 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 23,806,947.51 | $ 705,443.35 |

Total accumulated Interest April 15, 2000 through September 30, 2005: **$ 6,806,947.51**

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 20,000,000.00 | 04/15/2000 - 03/31/2001 | 351 | 9.00% | 0.000246575 | $ 21,807,840.26 | $ 1,807,840.26 |
| $ 21,807,840.26 | 04/01/2001 - 06/30/2001 | 91 | 8.00% | 0.000219178 | $ 22,247,120.18 | $ 439,279.92 |
| $ 22,247,120.18 | 07/01/2001 - 12/31/2001 | 184 | 7.00% | 0.000191781 | $ 23,046,106.92 | $ 798,986.74 |
| $ 23,046,106.92 | 01/01/2002 - 12/31/2002 | 365 | 6.00% | 0.000164384 | $ 24,471,077.92 | $ 1,424,971.00 |
| $ 24,471,077.92 | 01/01/2003 - 09/30/2003 | 273 | 5.00% | 0.000136986 | $ 25,403,491.53 | $ 932,413.61 |
| $ 25,403,491.53 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 25,918,067.75 | $ 514,576.22 |
| $ 25,918,067.75 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 26,243,155.75 | $ 325,088.00 |
| $ 26,243,155.75 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 26,509,067.94 | $ 265,912.20 |
| $ 26,509,067.94 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 27,178,240.20 | $ 669,172.25 |
| $ 27,178,240.20 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 28,008,173.55 | $ 829,933.35 |

Total accumulated Interest April 15, 2000 through September 30, 2005: **$ 8,008,173.55**

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Schedule B, Continued*

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 15,000,000.00 | 04/15/2001 - 06/30/2001 | 77 | 8.00% | 0.000219178 | $ 15,255,270.72 | $ 255,270.72 |
| $ 15,255,270.72 | 07/01/2001 - 12/31/2001 | 184 | 7.00% | 0.000191781 | $ 15,803,151.03 | $ 547,880.31 |
| $ 15,803,151.03 | 01/01/2002 - 12/31/2002 | 365 | 6.00% | 0.000164384 | $ 16,780,280.57 | $ 977,129.54 |
| $ 16,780,280.57 | 01/01/2003 - 09/30/2003 | 273 | 5.00% | 0.000136986 | $ 17,419,654.20 | $ 639,373.63 |
| $ 17,419,654.20 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 17,772,508.83 | $ 352,854.64 |
| $ 17,772,508.83 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 17,995,427.82 | $ 222,918.98 |
| $ 17,995,427.82 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 18,177,768.84 | $ 182,341.02 |
| $ 18,177,768.84 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 18,636,632.90 | $ 458,864.06 |
| $ 18,636,632.90 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 19,205,733.88 | $ 569,100.98 |

Total accumulated interest April 15, 2001 through September 30, 2005:    $ 4,205,733.88

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 17,000,000.00 | 04/15/2001 - 06/30/2001 | 77 | 8.00% | 0.000219178 | $ 17,289,306.81 | $ 289,306.81 |
| $ 17,289,306.81 | 07/01/2001 - 12/31/2001 | 184 | 7.00% | 0.000191781 | $ 17,910,237.83 | $ 620,931.01 |
| $ 17,910,237.83 | 01/01/2002 - 12/31/2002 | 365 | 6.00% | 0.000164384 | $ 19,017,651.31 | $ 1,107,413.48 |
| $ 19,017,651.31 | 01/01/2003 - 09/30/2003 | 273 | 5.00% | 0.000136986 | $ 19,742,274.75 | $ 724,623.45 |
| $ 19,742,274.75 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 20,142,176.68 | $ 399,901.92 |
| $ 20,142,176.68 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 20,394,818.20 | $ 252,641.52 |
| $ 20,394,818.20 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 20,601,471.35 | $ 206,653.15 |
| $ 20,601,471.35 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 21,121,517.28 | $ 520,045.93 |
| $ 21,121,517.28 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 21,766,498.39 | $ 644,981.11 |

Total accumulated interest April 15, 2001 through September 30, 2005:    $ 4,766,498.39

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 20,000,000.00 | 04/15/2001 - 06/30/2001 | 77 | 8.00% | 0.000219178 | $ 20,340,360.96 | $ 340,360.96 |
| $ 20,340,360.96 | 07/01/2001 - 12/31/2001 | 184 | 7.00% | 0.000191781 | $ 21,070,868.03 | $ 730,507.08 |
| $ 21,070,868.03 | 01/01/2002 - 12/31/2002 | 365 | 6.00% | 0.000164384 | $ 22,373,707.42 | $ 1,302,839.39 |
| $ 22,373,707.42 | 01/01/2003 - 09/30/2003 | 273 | 5.00% | 0.000136986 | $ 23,226,205.59 | $ 852,498.17 |
| $ 23,226,205.59 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 23,696,678.45 | $ 470,472.85 |
| $ 23,696,678.45 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 23,993,903.76 | $ 297,225.31 |
| $ 23,993,903.76 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 24,237,025.12 | $ 243,121.36 |
| $ 24,237,025.12 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 24,848,843.86 | $ 611,818.75 |
| $ 24,848,843.86 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 25,607,645.17 | $ 758,801.31 |

Total accumulated interest April 15, 2001 through September 30, 2005:    $ 5,607,645.17

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Schedule B, Continued*

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 15,000,000.00 | 04/15/2002 - 12/31/2002 | 261 | 6.00% | 0.000164384 | $ 15,657,511.73 | $ 657,511.73 |
| $ 15,657,511.73 | 01/01/2003 - 09/30/2003 | 273 | 5.00% | 0.000136986 | $ 16,254,104.86 | $ 596,593.13 |
| $ 16,254,104.86 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 16,583,349.99 | $ 329,245.13 |
| $ 16,583,349.99 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 16,791,353.46 | $ 208,003.47 |
| $ 16,791,353.46 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 16,961,494.04 | $ 170,140.58 |
| $ 16,961,494.04 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 17,389,655.50 | $ 428,161.46 |
| $ 17,389,655.50 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 17,920,677.92 | $ 531,022.43 |

Total accumulated Interest April 15, 2002 through September 30, 2005:   $ 2,920,677.92

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 17,000,000.00 | 04/15/2002 - 12/31/2002 | 261 | 6.00% | 0.000164384 | $ 17,745,179.96 | $ 745,179.96 |
| $ 17,745,179.96 | 01/01/2003 - 09/30/2003 | 273 | 5.00% | 0.000136986 | $ 18,421,318.84 | $ 676,138.88 |
| $ 18,421,318.84 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 18,794,463.32 | $ 373,144.48 |
| $ 18,794,463.32 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 19,030,200.59 | $ 235,737.27 |
| $ 19,030,200.59 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 19,223,026.58 | $ 192,825.99 |
| $ 19,223,026.58 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 19,708,276.23 | $ 485,249.65 |
| $ 19,708,276.23 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 20,310,101.65 | $ 601,825.42 |

Total accumulated Interest April 15, 2002 through September 30, 2005:   $ 3,310,101.65

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 20,000,000.00 | 04/15/2002 - 12/31/2002 | 261 | 6.00% | 0.000164384 | $ 20,876,682.31 | $ 876,682.31 |
| $ 20,876,682.31 | 01/01/2003 - 09/30/2003 | 273 | 5.00% | 0.000136986 | $ 21,672,139.82 | $ 795,457.51 |
| $ 21,672,139.82 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 22,111,133.32 | $ 438,993.51 |
| $ 22,111,133.32 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 22,388,471.29 | $ 277,337.96 |
| $ 22,388,471.29 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 22,615,325.39 | $ 226,854.10 |
| $ 22,615,325.39 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 23,186,207.33 | $ 570,881.94 |
| $ 23,186,207.33 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 23,894,237.23 | $ 708,029.90 |

Total accumulated Interest April 15, 2002 through September 30, 2005:   $ 3,894,237.23

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Schedule B, Continued*

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 15,000,000.00 | 04/15/2003 - 09/30/2003 | 169 | 5.00% | 0.000136986 | $ 15,351,286.79 | $ 351,286.79 |
| $ 15,351,286.79 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 15,662,244.33 | $ 310,957.54 |
| $ 15,662,244.33 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 15,858,694.45 | $ 196,450.13 |
| $ 15,858,694.45 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 16,019,384.74 | $ 160,690.29 |
| $ 16,019,384.74 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 16,423,764.40 | $ 404,379.66 |
| $ 16,423,764.40 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 16,925,291.71 | $ 501,527.31 |

**Total accumulated interest April 15, 2003 through September 30, 2005:**   **$ 1,925,291.71**

Note 1: Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 17,000,000.00 | 04/15/2003 - 09/30/2003 | 169 | 5.00% | 0.000136986 | $ 17,398,125.03 | $ 398,125.03 |
| $ 17,398,125.03 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 17,750,543.57 | $ 352,418.54 |
| $ 17,750,543.57 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 17,973,187.05 | $ 222,643.48 |
| $ 17,973,187.05 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 18,155,302.71 | $ 182,115.66 |
| $ 18,155,302.71 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 18,613,599.65 | $ 458,296.94 |
| $ 18,613,599.65 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 19,181,997.27 | $ 568,397.62 |

**Total accumulated interest April 15, 2003 through September 30, 2005:**   **$ 2,181,997.27**

Note 1: Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 20,000,000.00 | 04/15/2003 - 09/30/2003 | 169 | 5.00% | 0.000136986 | $ 20,468,382.39 | $ 468,382.39 |
| $ 20,468,382.39 | 10/01/2003 - 03/31/2004 | 183 | 4.00% | 0.000109589 | $ 20,882,992.44 | $ 414,610.05 |
| $ 20,882,992.44 | 04/01/2004 - 06/30/2004 | 91 | 5.00% | 0.000136986 | $ 21,144,925.94 | $ 261,933.50 |
| $ 21,144,925.94 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 21,359,179.66 | $ 214,253.72 |
| $ 21,359,179.66 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 21,898,352.53 | $ 539,172.88 |
| $ 21,898,352.53 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 22,567,055.62 | $ 668,703.08 |

**Total accumulated interest April 15, 2003 through September 30, 2005:**   **$ 2,567,055.62**

Note 1: Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

Schedule B, Continued

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 15,000,000.00 | 04/15/2004 - 06/30/2004 | 77 | 5.00% | 0.000136986 | $ 15,159,045.61 | $ 159,045.61 |
| $ 15,159,045.61 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 15,312,646.62 | $ 153,601.01 |
| $ 15,312,646.62 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 15,699,185.98 | $ 386,539.36 |
| $ 15,699,185.98 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 16,178,587.07 | $ 479,401.09 |

Total accumulated interest April 15, 2004 through September 30, 2005:  $ 1,178,587.07

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 17,000,000.00 | 04/15/2004 - 06/30/2004 | 77 | 5.00% | 0.000136986 | $ 17,180,251.69 | $ 180,251.69 |
| $ 17,180,251.69 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 17,354,332.83 | $ 174,081.14 |
| $ 17,354,332.83 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 17,792,410.78 | $ 438,077.94 |
| $ 17,792,410.78 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 18,335,732.01 | $ 543,321.24 |

Total accumulated interest April 15, 2004 through September 30, 2005:  $ 1,335,732.01

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 20,000,000.00 | 04/15/2004 - 06/30/2004 | 77 | 5.00% | 0.000136986 | $ 20,212,060.82 | $ 212,060.82 |
| $ 20,212,060.82 | 07/01/2004 - 09/30/2004 | 92 | 4.00% | 0.000109589 | $ 20,416,862.16 | $ 204,801.34 |
| $ 20,416,862.16 | 10/01/2004 - 03/31/2005 | 182 | 5.00% | 0.000136986 | $ 20,932,247.97 | $ 515,385.82 |
| $ 20,932,247.97 | 04/01/2005 - 09/30/2005 | 183 | 6.00% | 0.000164384 | $ 21,571,449.43 | $ 639,201.45 |

Total accumulated interest April 15, 2004 through September 30, 2005:  $ 1,571,449.43

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Schedule B, Continued*

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 15,000,000.00 | 04/15/2005 - 09/30/2005 | 169 | 6.00% | 0.000164384 | $ 15,422,519.40 | $ 422,519.40 |
| | Total accumulated Interest April 15, 2005 through September 30, 2005: | | | | | $ 422,519.40 |

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 17,000,000.00 | 04/15/2005 - 09/30/2005 | 169 | 6.00% | 0.000164384 | $ 17,478,855.32 | $ 478,855.32 |
| | Total accumulated Interest April 15, 2005 through September 30, 2005: | | | | | $ 478,855.32 |

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

*Note 1*

| Beginning Balance | Period | Number of days | Interest Rate | Daily Interest Rate | Value | Accumulated Interest |
|---|---|---|---|---|---|---|
| $ 20,000,000.00 | 04/15/2005 - 09/30/2005 | 169 | 6.00% | 0.000164384 | $ 20,563,359.20 | $ 563,359.20 |
| | Total accumulated Interest April 15, 2005 through September 30, 2005: | | | | | $ 563,359.20 |

*Note 1:* Interest rate equals the Federal Short-term rate plus 3% and is subject to daily compounding per IRC Section 6621.

# EXHIBIT C

**GOVERNMENT OF GUAM**
*(Gubetnomention Guahan)*
**DEPARTMENT OF ADMINISTRATION**
*(Dipattamenton Atmenestrasion)*
**DIRECTOR'S OFFICE**
*(Ufisinan Direktot)*
Post Office Box 884, Hagatna, Guam 96932
Tel: (671) 475-1101/1250 Fax: (671) 477-6788

**Felix P. Camcho**
Governor
**Kaleo S. Moylan**
Lieutenant Governor



**Lourdes M. Perez**
**Director**
**Joseph C. Manibusan**
Deputy Director

January 26, 2005

Curtis C. Vam de Veld, Esq.
Attorney at Law
Ven De Veld Shimizu Canto Fisher
Attorneys at Law
Suite 101 De La Corte Building
167 East Marine Corps Drive
Hagatna, Guam  96910

Re:     Requests for Information under the "Sunshine Law"

Dear Attorney Van Veld:

In reference to your letter of January 20, 2005 requesting to inspect additional documents pursuant to the "Sunshine Law", please be advised that the documents identified below are available for your inspection at the Division of Accounts' office, located adjacent to my office.

- ➢ Additional pages of bank statements indicating deposits to or disbursements from these accounts. Enclosures of these bank statements are not being provided in compliance with the Guam Territorial Income Tax Law, Section 6103.
- ➢ Copies of communications between and among staff members concerning your Jan. 13, 2005 Sunshine Act request.
- ➢ Copies of bank statements of the Income Tax Refund Efficient Payment Trust Fund showing deposits and balance and any activities therein.

Also, as I have previously communicated to Attorney Fisher from your office, we have not been able to locate copies of reports addressed to the Guam Legislature pursuant to 11 Guam Code Annotated, Section 50107.

In reference to request #2, no formula derived pursuant to 11 Guam Code Annotated 50103 is in our possession at this time, however, in the spirit of compliance with the law, the formula presently being utilized to set aside for immediate pay out of refunds is based on total estimated tax refunds to pay out in the fiscal year, divided daily, based on 5 working days per week, and dependent upon actual receipts.

Please call my office when you are ready to inspect these records.

Sincerely,

Lourdes M. Perez
Director

# EXHIBIT D

FILED

DISTRICT COURT OF GUAM

AUG 1 1 2006

MARY L.M. MORAN
CLERK OF COURT

1  <u>Counsel appearing on following page</u>

2

3          DISTRICT COURT OF GUAM

4          TERRITORY OF GUAM

5  JULIE BABAUTA SANTOS, *et.al*          Civil Case No. 04-0006

6                    Petitioners,

7          v.

8  FELIX P. CAMACHO, et al.

                    Respondents

9

10                                          Civil Case No. 04-0003

11  CHARMAINE R. TORRES, *et al.*

12                    Plaintiffs

13          v.                              **CABOT MANTANONA, LLP**

                                            Date: 8·11·06
14  GOVERNMENT OF GUAM, et al.              Time: 3:50
                                            Initials: ℛ
                    Respondents

15

16                                          Civil Case No. 04-00049

17  MARY GRACE SIMPAO, *et al,*

                    Plaintiffs,            **SUPPLEMENTAL FILING IN
                                            OPPOSITION TO PRELIMINARY
18          v.                              APPROVAL OF CLASS ACTION
                                            SETTLEMENT**
19  GOVERNMENT OF GUAM

20                    Defendant.

21          v.

22  FELIX P. CAMACHO, Governor of Guam

                    Intervenor-Defendant

23





OFFICE OF THE
GOVERNOR

1 1 AUG 2006

DATE
LEGAL OFFICE

24  ─────────────────────────────

VAN DE VELD SHIMIZU CANTO & FISHER
Suite 101 Dela Corte Bldg.
167 East Marine Corps Drive
Hagatna, Guam 96910
671.472.1131

TOUSLEY BRAIN STEPHENS PLLC
Kim D. Stephens, P.S., WSBA #11984
Nancy A. Pacharzina, WSBA #25946
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-7332
206.682.5600

SUPPLEMENTAL FILING IN OPPOS.
TO PRELIM. APPROVAL OF CLASS
ACTION SETTLEMENT
Page 2

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006     Document 428-2     Filed 06/22/2007     Page 5 of 42

## Table of Contents

I. Introduction ........................................................................................................5

II. Facts Relevant to the Motion ..............................................................................6

   A. The Government's Malfeasance ........................................................................6

      1. The Government's failure to pay the EITC.....................................................6

      2. The Government's faiulure to maintain the Tax Refund Reserve Fund ..........6

   B. The Claims.......................................................................................................8

      1. Procedural nature of the claims.................................................................... 8

      2. Value of the claims ....................................................................................... 9

      3. Value of the settlement.................................................................................. 9

   C. The History of the Litigation.............................................................................10

      1. Santos I.........................................................................................................10

      2. The Simpao litigation.....................................................................................12

      3. Santos II........................................................................................................13

      4. The "global" mediation fiasco........................................................................14

      5. Santos III.......................................................................................................15

III. Preliminary Approval Should Be Denied...............................................................16

   A. The Standard for Preliminary Approval.............................................................16

   B. The Court Lacks Jurisdiction Over Some Proposed Claims ...............................16

   C. The Settlement is Illegal on Its Face.................................................................19

      1. Santos III Funding Violates the Tax Refund Reserve Fund Statute
         and the Illegal Expenditures Act ..................................................................20

         a. The Tax Refund Reserve Fund............................................................. 20

SUPPLEMENTAL FILING IN OPPOS.
TO PRELIM. APPROVAL OF CLASS
ACTION SETTLEMENT
Page 3

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 428-2    Filed 06/22/2007    Page 6 of 42

　　　　　　　　b. The Illegal Expenditures Act................................................22

　　D. The Settlement Creates Conflicts Between and Among Class Maembers............. 24

　　　　　1. Abandoning interest creates antagonism .........................................24

　　　　　2. Abandoning interest shifts damage to older claims ..............................25

　　　　　3. The Respondent's "zero netting" windfall ........................................26

　　E. Respondent Does Not Commit to Paying the Settlement Amount........................ 26

　　F. The Claim-Making and Notice Procedures are Unconscionable.......................... 27

　　　　　1. Claim making procedure is oppressive..............................................27

　　　　　2. The immediate payout to 1997 and 1998 is coercive.............................. 29

　　　　　3. Notice to class is inadequate.......................................................30

　　G. The Settlement is Unreasonable Because Compensation is Inadequate................ 32

　　　　　1. 1995, 1996, 1999 and 2000 suffer unnecessary injury.............................33

　　　　　2. The injury to 2000...................................................................34

　　　　　3. In light of the Simpao holding this settlement is wholly inadequate............. 35

IV. Conclusion.................................................................................................35

Appendix, Table of Authorities

SUPPLEMENTAL FILING IN OPPOS.
TO PRELIM. APPROVAL OF CLASS
ACTION SETTLEMENT
Page 4

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006　　Document 428-2　　Filed 06/22/2007　　Page 7 of 42

## I. INTRODUCTION

The Simpao Plaintiffs in these consolidated class cases oppose preliminary approval of the settlement proposed by the Government of Guam and the Santos and Torres Plaintiffs. This settlement is found as Exhibit 1 to the *Amended Declaration Of Daniel M. Benjamin In Support Of Joint Motion Of The* Santos *And* Torres *Parties For Preliminary Approval Of Class Action Settlement Agreement*, filed May 31, 2006 (hereinafter *"Santos III" or "Settlement"*). The settlement is as infirm, if not more so, than the prior two settlements proposed by the Santos plaintiffs - the first hastily entered into with the Attorney General and which the Governor opposed (the *Santos I* Settlement), and the second entered into with the Governor and which the Attorney General opposed (the *Santos II* Settlement).

Notably, after *Santos II* was filed, the Court sought briefing on which of the three Plaintiff's counsel should serve as lead counsel for these consolidated actions. Order, J. Robart, Dist. Ct. of Guam, CV04-00006, March 16, 2006, Docket No. 300. The Santos plaintiffs avoided such scrutiny by asking for a chance to conduct a "global" settlement. Instead however, the Santos plaintiffs failed to meaningfully negotiate with the Simpao plaintiffs and, over the objection of the Simpao plaintiffs, refused to include the Attorney General at all.

*Santos III* is merely old wine in a new skin. The only real differences between *Santos II* and *III* are: (1) the inclusion of 1997 EITC claimants -- a group included in the *Simpao* action but never until now included in *Santos*; (2) the proposal to rush out checks for 1997 and 1998 claims (i.e., claims already eight and nine years old) if recipients will forego a sufficient period to review the settlement terms before they cash them; and (3) a split of attorneys fees with the Torres attorneys.

SUPPLEMENTAL FILING IN OPPOS.
TO PRELIM. APPROVAL OF CLASS
ACTION SETTLEMENT
Page 5

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 428-2    Filed 06/22/2007    Page 8 of 42

1     *Santos III* also attempts to confer jurisdiction upon the Court where none exists.  In

2     addition to this fundamental infirmity, the settlement violates Guam law, inadequately represents

3     the class, is unfairly adhesive, provides no assurance of payment to class members and, in light

4     of a grant of partial judgment to Simpao Plaintiffs, utterly deficient.

5

6                          **II.  FACTS RELEVANT TO THE OPPOSITION**

7

8     **A.  The Government's Malfeasance.**

      1.   *The Government's Failure to Pay the EITC*

9              The Government of Guam, after properly paying the EITC since at least the 1970s,

10    abruptly stopped paying the refund and affirmatively prevented its poorest citizens from filing

11    claims. It did so to keep from having to pay this money.  The government continued to

12    wrongfully deny its citizens EITC's even after Guam's Supreme Court ruled it had a duty to pay

13    the credit.  See Order [for partial summary judgment], J. Martinez, Dist. Ct. of Guam, CV04-

14    00049, June 15, 2005, Docket No. 99, at p. 6.  It continues to deny the credit to this day and it

15    refuses to admit its lawful obligation to do so.  See Santos III, p. 39 at ¶ IX.d.

16
      2.   *The Government's Failure to Maintain the Tax Refund Reserve Fund* [1]
17
               This same Government ignores legislative mandates passed to create and maintain
18
      reserve funds designed to cure its chronic failure to pay any tax refund in a timely manner.  The
19
      Guam Legislature created two tools by which the government would be forced to set aside
20
      portions of tax receipts and devote the amounts to tax refunds and, since 1999, the EITC.  These
21

22    _____

      [1]  While the current settlement does not purport to resolve claims related to this misconduct, the history of
23    these funds is relevant to the adequacy of the proposed settlement.

24    ============================================================
      SUPPLEMENTAL FILING IN OPPOS.     VAN DE VELD SHIMIZU CANTO & FISHER   TOUSLEY BRAIN STEPHENS PLLC
      TO PRELIM. APPROVAL OF CLASS      167 East Marine Corps Drive          1700 Seventh Avenue, Suite 2200
      ACTION SETTLEMENT                 Hagatna, Guam 96910                  Seattle, Washington 98101-1332
25    Page 6                            TEL. 671.472.1131 • FAX 671.472.2886  TEL. 206.682.5600 • FAX 206.682.2992

      Case 1:04-cv-00006     Document 428-2     Filed 06/22/2007     Page 9 of 42

1  enactments are known as the Income Tax Refund Reserve Fund and the Income Tax Refund

2  Efficient Payment Trust Fund) *See 11 Guam Code Ann. Chapters 50 and 51.* If the Government

3  had abided by the law, it would have devised a formula for setting aside a portion of each dollar

4  received in proportion to projected refund amounts. As a result it would have sufficient reserves

5  available to return to the taxpayer the money owed him or her.

6  Yet the Government does not abide by the law. Simpao plaintiffs' counsel have made

7  inquiry to both the Guam Department of Administration and the Department of Revenue and

8  Taxation concerning compliance with the law. Director Perez of the Department of

9  Administration candidly admits that "we have not been able to locate files or copies of monthly

10 correspondence or transmittals indicating compliance with the public law since its enactment."

11 *See Declaration of Thomas J. Fisher in support of Supplemental Filing In Opposition To*

12 *Preliminary Approval Of Class Action Settlement* (hereinafter *"Fisher Decl."*), Exhibit A, Letter

13 from L. Perez to T. Fisher, dated Jan. 18, 2005. Further, the Director of the Department of

14 Revenue and Taxation admits, "As we discussed via our telephone conversation, DRT has been

15 unable to formulate a workable plan to ensure deposits into this fund. As you may already know,

16 the Government's tax revenues have been declining due to special interest legislations that have

17 exempted many from payment of the Business Privilege Tax (GRT) and the Bush Tax Cuts have

18 also impacted income taxes by lessening tax rates and the increasing deductions and credits such

19 as the Child tax Credits, Additional Child Tax Credit, etc." *Fisher Decl.* at Exhibit B, Letter

20 from A. Ilagan to T. Fisher, dated February 8, 2005.

21 Now in *Santos III*, the class is assured that the Government will pay the settlement by

22 setting aside 15% of the money placed into the Reserve. *See Settlement* at p. 18. However, 15%

23 of zero is zero.

24

SUPPLEMENTAL FILING IN OPPOS.
TO PRELIM. APPROVAL OF CLASS
ACTION SETTLEMENT
Page 7

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagåtña, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

## B. The Claims

### 1. Procedural Nature of The Claims

This is a tax case. Plaintiffs allege that since 1995, with the exception of certain tax years, the government has denied them the ability to claim the EITC and failed to pay EITC's due.[2] Resolution of the case requires the court to resolve two questions: (1) Does the EITC apply to Guam; and (2) if it does, who is still eligible to receive the credit for the tax years at issue. Because this is a tax case, the second issue turns on rigid statutory tax claim procedures applied in light of the government's conduct in this case. Specifically, absent any other consideration, the deadline to file administrative claims for EITCs for each tax years at issue is as follows:

| For tax year 1995 | 15 April 1999 |
|---|---|
| 1996 | 15 April 2000 |
| 1997 | 15 April 2001 |
| 1998 | 15 April 2002 |
| 1999 | 15 April 2003 |
| 2000 | 15 April 2004 |
| 2001 | 15 April 2005 |
| 2002 | 15 April 2006 |
| 2003 | 15 April 2007 |
| 2004 | 15 April 2008 |

See 26 U.S.C. § 6511.

Thus, pursuant to law, claims from tax years 1995 through 1999 are precluded. That is to say, if you haven't already made a claim, you never can. Claims for 2000 forward are still

---

[2] A claims procedure was provided for 1997 and 1998; some 1997 claims were paid; 1998 claims, save one, were not paid.

SUPPLEMENTAL FILING IN OPPOS.
TO PRELIM. APPROVAL OF CLASS
ACTION SETTLEMENT
Page 8

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

possible, owing to the doctrine of *American Pipe & Const. Co. v. Utah*[3] (414 U.S. 538, 94 S.Ct. 756 (1974))and the calendar.

### 2. *Value of the Claims*

It is not apparent that any settling party attempted to discover the value of the claims, nor the actual value of the settlement.

*Simpao* plaintiffs' counsel, on the other hand, caused the accounting firm of J. Scott Magliari & Company to produce an analysis of Respondent's probable liability. This analysis is based upon an assumption of EITC's per year at $15,000,000.00, $17,000,000.00 and $20,000,000.00 respectively, includes tax year 1997, includes statutory interest, and is current through 30 September 2005. This analysis reveals the following:

At $15,000,000.00 per annum, total liability; **$208,907,306.76**
At $17,000,000.00 per annum, total liability; **$236,761,614.33**
At $20,000,000.00 per annum, total liability; **$278,543,075.68**

*See Fisher Decl.* at Exhibit C, *Independent Accountant's Report on Applying Agreed Upon Procedures*, by J. Scott Magliari & Company, C.P.A., dated Sept. 7, 2005.

### 3. *Value of the Settlement*

Settling parties propose a settlement that offers the class years $15,000,000.00 per year with exception of years 1995, 1996, 1999, and 2000. Thus, based upon the settlement offer and the projected actual value of the claim, one can discover what the percentage recovery for each year actually is:

\\

---

[3] Settling parties reject *American Pipe* and include tax year 2000 in a pool of "potentially time barred claims" which they deeply discount. *See discussion infra.*

SUPPLEMENTAL FILING IN OPPOS.
TO PRELIM. APPROVAL OF CLASS
ACTION SETTLEMENT
Page 9

VAN DE-VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagåtña, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 428-2    Filed 06/22/2007    Page 12 of 42

| Class Year | Settlement compensation | Projected actual value including interest[4] | Settlement recovery as a percent of actual projected value |
|---|---|---|---|
| 1995 | $3,500,000.00[5] | $28,596,226.52 | 12% |
| 1996 | $3,500,000.00 | $26,453,611.53 | 13% |
| 1997 | Total | n/a | n/a |
| 1998 | $15,000,000.00 | $22,769,186.85 | 66% |
| 1999 | $3,500,000.00 | $21,006,130.16 | 16% |
| 2000 | $3,500,000.00 | $19,205,733.88 | 18% |
| 2001 | $15,000,000.00 | $17,920,677.92 | 83% |
| 2002 | $15,000,000.00 | $16,925,291,71 | 88% |
| 2003 | $15,000,000.00 | $16,178,587.07 | 93% |
| 2004 | $15,000,000.00 | $15,422,519.40 | 97% |

## C. The History of This Litigation

### 1. *Santos I.*

The *Santos* plaintiffs filed (and settled in less than 4 months) the first class action regarding the Government's failure to pay EITCs. That settlement did not include claimants for all tax years 1995, provided for a $60,000,000.00 payout over the years, and failed to plead jurisdiction.

On June 29, 2004, Ms. Christine Naputi, now a *Simpao* Plaintiff, on behalf of herself and a class of similarly situated individuals, cited serious deficiencies in the settlement and moved to intervene. *See Santos v. Camacho, CV 04-0006 at* Docket No. 18. Later, Plaintiff Charmaine

---

[4] Simpao plaintiffs' counsel had the accounting firm compute three calculations for each class year based on an assumption of total EITC claims of $15, $17 and $20 million. For purposes of this table we choose the more conservative number, $15 million.

[5] Tax years 1995, 1996, 1999 and 2000 each share a $15 million dollar award.

SUPPLEMENTAL FILING IN OPPOS.
TO PRELIM. APPROVAL OF CLASS
ACTION SETTLEMENT
Page 10

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagåtña, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 428-2    Filed 06/22/2007    Page 13 of 42

1  Torres also attempted to intervene. *Id.* at Docket No. 21. Both motions were denied. *Id. at*
2  Docket No. 76.

3       When Plaintiff Naputi's motion to intervene was denied, her counsel joined with *Tousley*
4  *Brain Stephens PLC*, a law firm with extensive nationwide class action expertise, in anticipation
5  of suit. Prior to suit, Torres filed an action seeking, inter alia, to represent those who wanted a
6  greater than 50% recovery of the EITC and otherwise would opt out of the Santos settlement. *See*
7  *Torres v. Government of Guam, CV 04-0038 at* Docket No. 1.

8       On December 3, 2004 *Simpao* filed a complaint for recovery of the EITC. Her
9  complaint, unlike *Santos*, properly pled jurisdiction, included all Guam taxpayers wrongly
10  denied EITC's and sought relief in the form of both a claims filing process and actual refund of
11  past and future EITC's, as well as other forms of necessary relief not contemplated by the *Santos*
12  petition. *See Simpao v. Government of Guam, CV 04-0049 at* Docket No. 1.

13       On November 29, 2004, the Governor of Guam filed an opposition to *Santos*' motion to
14  approve the administration plan implementing the settlement in *Santos I*. In his opposition, the
15  Governor cited certain flaws in the settlement including:

16     a. The Court's lack of subject matter jurisdiction (the Plaintiffs had not exhausted
17        administrative remedies pursuant to 26 U.S.C. §7422),
18     b. Illegality of the settlement under the Organic Act of Guam, 48 U.S.C. §1421 et seq.,
          and the Illegal Expenditures act of 5 Guam Code Ann. § 22401,
19     c. Failure of the parties to conduct any discovery as to several "worrisome indicia"
20        including certification of the class upon settlement, adequacy of class counsel, and notice
          to the class,
21     d. Failure of the parties to conduct any discovery as to the government's actual liability,
22     e. Lack of an adversarial relationship between the parties,

23

24  SUPPLEMENTAL FILING IN OPPOS.
    TO PRELIM. APPROVAL OF CLASS
    ACTION SETTLEMENT
25  Page 11

    VAN DE VELD SHIMIZU CANTO & FISHER
    167 East Marine Corps Drive
    Hagatna, Guam 96910
    TEL. 671.472.1131 • FAX 671.472.2886

    TOUSLEY BRAIN STEPHENS PLLC
    1700 Seventh Avenue, Suite 2200
    Seattle, Washington 98101-1332
    TEL. 206.682.5600 • FAX 206.682.2992

    Case 1:04-cv-00006   Document 428-2   Filed 06/22/2007   Page 14 of 42

f. A conflict of interest within the class between those whose claims are untimely and those whose are not,

g. The amount and payment of attorney fees,

h. Substantive fairness where class members receive only 50% of the money owed them.

*See Fisher Decl.* at Exhibit D, *Amended Memorandum Of Points And Authorities In Support Of Opposition To Petitioner's Motion For Approval Of The Administration Plan*, filed Nov. 29, 2004, CV04-00006, Docket No. 102.

Dispute over the *Santos I* settlement led to a battle between the Attorney General and the Governor of Guam as to which entity controlled this litigation and had the ultimate power to establish settlement terms. That dispute left all Plaintiffs in a quandary, essentially litigating against a single defendant that spoke with two voices.

### 2. The Simpao Litigation

While Santos pursued a second settlement, this time with the Governor, Simpao litigated the case. Simpao survived the Government's motion to dismiss and on April 14, 2005 filed a Motion for Partial Summary Judgment. *See Simpao, CV 04-0049 at* Docket No. 59. This motion was opposed by Respondent. On June 15, 2005, the Court granted Simpao's motion in part and held:

(1) *"as a matter of law, Guam must pay the EIC,"* Summ.J Order at 7-8; and

(2) *"under the circumstances, the filing of the tax returns should be considered a claim satisfying the jurisdiction requirement under 26 U.S.C. § 6511 [6].*

*See Fisher Decl.* at Exhibit E, Order, J. Martinez, Dist Ct. of Guam, CV04-00049, June 15, 2006 (hereinafter "*Summ. J. Order*").

---

[6] In that order, the Court expressed (and Plaintiffs do not dispute) that it made no determination as to whether class members' claims are time barred pursuant to 26 U.S.C. § 6532. However, it should be noted that both the Governor and the Government of Guam admit that plaintiffs did not receive any formal notice of disallowance of their EIC claims from the Government. Because no formal disallowance notices were issued, the limitation provision of 26 U.S.C. §6532 do not apply.

SUPPLEMENTAL FILING IN OPPOS. TO PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT
Page 12

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 428-2    Filed 06/22/2007    Page 15 of 42

1    The Court rightly held: (1) the EITC applies to Guam; and (2) given the government's

2    conduct in blocking out the EITC section of tax return forms, all those who filed a timely tax

3    return in any given tax year are deemed to have also filed a timely administrative claim for an

4    EITC. Thus, the court establish, that plaintiffs *who filed tax returns in the relevant years,* had

5    exhausted their administrative remedies thus conferring jurisdiction on the Court to hear their

6    refund claims.

7        The Court then ordered Simpao to proceed with class certification. See [partial summary

8    judgment] Order at p. 13.

9        *3. Santos II.*

10

11    Shortly after the Simpao plaintiffs won summary judgment, the Santos Plaintiffs and the

12    Governor submitted a second proposed settlement for preliminary approval. This was the

13    product of mediation between the parties, a mediation Simpao unsuccessfully asked to join. This

14    time the Attorney General objected to the settlement.

15        Despite the significant victories obtained for the class in *Simpao*, *Santos II* was no better

16    than *Santos I*. The settlement provided for a $90,000,000.00 recovery for the entire class (which

17    now included to groups forgotten in Santos I) but no difference for the individual years. In some

18    ways Santos II was actually worse, e.g. it provided for an illegal use of the Income Tax Refund

19    Reserve Fund and subjected the entire settlement to injunction. *Santos II*, like *Santos I*, grossly

20    under-compensated the class as a whole, compounded the injury as to class years 1995, 1996,

21    1999 and 2000, waived all interest, was produced without benefit of discovery, did not include

22    all taxpayers denied EITCs (it excluded tax year 1997 in which some but not all EITC claims

23

24   SUPPLEMENTAL FILING IN OPPOS.
     TO PRELIM. APPROVAL OF CLASS
     ACTION SETTLEMENT
25   Page 13

     VAN DE VELD SHIMIZU CANTO & FISHER    TOUSLEY BRAIN STEPHENS PLLC
     167 East Marine Corps Drive           1700 Seventh Avenue, Suite 2200
     Hagatna, Guam 96910                   Seattle, Washington 98101-1332
     TEL. 671.472.1131 • FAX 671.472.2886  TEL. 206.682.5600 • FAX 206.682.2992

     Case 1:04-cv-00006   Document 428-2   Filed 06/22/2007   Page 16 of 42

1  were paid), and did not require a class member to have filed a claim. Thus it neither alleged,

2  established nor required subject matter jurisdiction.

3      4. *The "Global" mediation fiasco*

4         On 14 March 2006 this Court ordered the Santos, Simpao and Torres suits consolidated

5  for hearing, *see Santos at* Docket No. 299. The court made it clear no settlement would be

6  considered until an issue of who represented the Government was resolved and expressed its

7  preference that all parties work together to achieve a global settlement. To that end, the Court

8  stayed the cases pending the outcome of the resolution of the representation issue but sought

9  briefing on who should be lead counsel.

10        Rather than face a judicial lead counsel determination, Respondent, who previously

11 rejected the Simpao Plaintiffs requests to join in settlement (see *Order*, J. Manibusan, CV04-

12 0006, Mar. 30, 2005, Docket No. 203), requested a delay to allow a "global" settlement

13 conference. See *Request For Settlement Conference Pursuant To Local Rule 16.6*, filed Mar. 16,

14 2006, CV04-00006, Docket No. 303. The Respondent's view of "global" settlement, however,

15 differed dramatically from that of *Simpao* (and apparently the Court).

16        Prior to the settlement conference, Simpao suggested to all parties that the Attorney

17 General of Guam be invited to participate. Simpao thought this advisable since, although the

18 Court had ruled it was the Governor who controlled tax refund litigation (see *Order*, J. Robart,

19 CV04-00006, Mar. 10, 2006, Docket No. 285), the Court observed that the question was close.

20 Simpao believed that a successful settlement with the Attorney General on board would ensure

21 the viability of the settlement. Torres, Santos and Respondent all rejected this suggestion.

22

23

24 SUPPLEMENTAL FILING IN OPPOS.    VAN DE VELD SHIMIZU CANTO & FISHER    TOUSLEY BRAIN STEPHENS PLLC
   TO PRELIM. APPROVAL OF CLASS     167 East Marine Corps Drive          1700 Seventh Avenue, Suite 2200
   ACTION SETTLEMENT                Hagatna, Guam 96910              Seattle, Washington 98101-1332
25 Page 14                    TEL. 671.472.1131 • FAX 671.472.2886    TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 428-2    Filed 06/22/2007    Page 17 of 42

1    The conference occurred on Guam on April 6 - 8, 2006. At the conference Respondent

2    informed the Simpao group that it would not negotiate with them, and that their presence was

3    unnecessary as Respondent would not include them in the negotiation. *See* Simpao *Plaintiffs'*

4    *Status Report*, filed April 18, 2006, CV04-00006, Docket No. 312.

5    Apparently, "global" settlement in Santos' view was simply to redefine its class to

6    include Simpao's putative class members previously left out of the Santos action and to eliminate

7    Torres as a potential objector by providing a cut of anticipated attorney's fees.

8    5. *Santos III*

9    On 26 May 2005 Santos and Respondent, now with Torres in tow, filed a motion for

10   preliminary approval of a class action settlement. *See Santos at* Docket No. 320. This

11   Settlement (*Santos III*) provides $90,000,000.00 for all years, includes the claims of an

12   additional class year, compensates tax year 1997, waives all interest but is otherwise not

13   substantively different from prior proposals. *Santos III* compromises all claims together at 43%

14   or less[7] and for individual tax years differently. For example, tax year 1995 receives

15   approximately 12% of total value and tax year 2004 receives approximately 97% of total value.

16   *See supra*. There is no evidence that Torres or Santos conducted any discovery with respect to

17   the amount owed the class, nor the capacity of Respondent to pay.

18   Today the Court is presented the third permutation of the *Santos* settlement; this time

19   with the addition of *Torres*, and with the same infirmities cited by Respondent in his objections

20   to *Santos I*.

21

22   ---
[7] $90,000,000.00 divided by $208,000,000.00 (the projected value of all claims as of September 2005). This is a

23   conservative estimate assuming principal amount of $15,000,000.00 per year. The actual value of the claims may be much higher.

24   ---
SUPPLEMENTAL FILING IN OPPOS. TO PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT

25   Page 15

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

# III. PRELIMINARY APPROVAL SHOULD BE DENIED

## A. The Standard for Preliminary Approval

A settling party submitting a settlement has "the burden of persuading the court that their compromise is fair, reasonable and adequate." *In re General Tire and Rubber Co. Securities Litigation*, 726 F.2d 1075, 1080 (6th Cir. 1984) *citing Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977). Additionally, "District courts must be skeptical of some settlement agreements put before them because they are presented with a "bargain proffered for ⋯ approval without benefit of an adversarial investigation.) *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998).

## B. The Court Lacks Jurisdiction Over Some Proposed Claims

The current settlement class includes claimants **who have never filed a tax return.** *See Settlement at p. 6 (class definition) and p. 22 (discussing settlement claim procedures for claimants who have not previously filed a tax return).* This Court has no jurisdiction over those claims and thus the class is overbroad.

In a tax refund action such as this, the Court's jurisdiction is dependent on the claimants' prior compliance with statutory requirements to exhaust administrative remedies. This is because these sections are waivers of sovereign immunity. *See 26 U.S.C. §§ 7422 and 6511. See also Thomas v. United States, 755 F.2d 728 (9th Cir. 1985).* In the Simpao litigation, it was established that the <u>filing of a tax return,</u> under these circumstances, was sufficient to meet the requirements of *§6511. Santos III,* though, allows a claimant to entirely evade both *§6511* and *§7422* and requires neither a return nor an administrative claim. Thus, a significant issue presented here is whether claims for tax years, for which the statutory time to file an

SUPPLEMENTAL FILING IN OPPOS.
TO PRELIM. APPROVAL OF CLASS
ACTION SETTLEMENT
Page 16

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006   Document 428-2   Filed 06/22/2007   Page 19 of 42

1 administrative claim or timely return has passed (i.e., 1995-1999, *see supra*), nevertheless meet

2 the jurisdictional requirements of §§ *7422* and *6511*.

3    The parties asserting jurisdiction, in this case the settling parties, bear the burden of

4 defeating the presumption that any given cause lies outside the statutorily limited jurisdiction of

5 the court. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673

6 (1994) (holding the Court did not have inherent power to enforce terms of settlement agreement).

7 This issue can only be resolved by Court ruling. No action of the parties (including waiver or

8 stipulation) can confer subject matter jurisdiction upon a federal court and consent of the parties

9 to jurisdiction, via a settlement agreement, is irrelevant. *Insurance Corp. of Ireland, Ltd. v.*

10 *Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701, 102 S.Ct. 2099 (1982); *Northern Life*

11 *Ins. Co. v. United States*, 685 F.2d 277, 279 (9th Cir. 1982); *Rosenbluth Trading, Inc. v. United*

12 *States*, 736 F.2d 43, 47 (2nd Cir. 1984). Further, such statutory mandates cannot be avoided for

13 judicial economy or any other seemingly beneficial reason. *Owen Equipment & Erection Co. v.*

14 *Kroger*, 437 U.S. 365, 98 S.Ct. 2396 (1978). In addition, no executive officer may waive

15 sovereign immunity in a settlement agreement; sovereign immunity can only be waived by strict

16 Congressional enactment. *Presidential Gardens Associates v. United States*, 175 F.3d 132, 140

17 (2nd Cir. 1999). *See also United States v. Garbutt Oil Co.*, 302 U.S. 528, 534, 58 S.Ct. 320

18 (1938); *Overhauser v. United States*, 45 F.3d 1085, 1088 (7th Cir. 1995).

19    The Motion for Preliminary Approval, however, contains no discussion of jurisdictional

20 issues. However, in prior briefing, the Government has acknowledged its reliance on the holding

21 obtained in the Simpao litigation to establish jurisdiction over certain potentially time-barred

22 claims. *See Government Reply in Support of a Motion to Stay, at 7 and n.6*, CV04-00049

23 *(Simpao)* at Docket No. 65 (noting *Simpao* convinced the Court the Government could not assert

24
SUPPLEMENTAL FILING IN OPPOS.
TO PRELIM. APPROVAL OF CLASS
ACTION SETTLEMENT
25 Page 17

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 428-2    Filed 06/22/2007    Page 20 of 42

1  non-exhaustion as a basis to deny jurisdiction and "the same reasoning provides the basis for

2  jurisdiction in *Santos.*") That holding, however, does not establish jurisdiction for the claims of

3  those who never <u>filed</u> a timely tax return.

4      *Simpao* sought and obtained an appropriately narrow (and sustainable) summary

5  judgment ruling that, among other things, given the government's obliteration of the EITC

6  section of its tax return forms, a claimant's filing of a timely tax return should be considered a

7  timely filing of an EIC claim. *See Summ J. Order at 8-9.* In doing so, *Simpao* sought to prevent

8  the government from asserting against claimants who had actually filed tax returns the defense

9  that a specific "EITC claim" was nevertheless not made because it was inadequately stated on

10  the claim form. In granting the holding the Court noted it was "concerned that the Government

11  took actions that discouraged if not actually affirmatively prohibited *the filing of a return with*

12  *the request for an EIC.*" *Summ.J. Order at 9 (emphasis added).* Thus the Court held: " . . .

13  under the circumstances, *the filing of the tax returns should be considered a claim satisfying the*

14  *jurisdictional requirement under 26 U.S.C. § 6511.*" *Summ.J. Order at 9.*

15      *Simpao* did not seek, and the Court never made a ruling, that the Government was

16  estopped from asserting a time bar against any untimely EITC claim (e.g., an EITC claim

17  untimely made by a person who never filed a timely tax return). Thus the Court's holding in

18  Simpao establishes jurisdiction only for claimants who previously filed tax returns.

19      Further, there is good reason for the Court not to overreach in equitably extending its

20  jurisdiction. Judicial expansion of a sovereign's consent to be sued should be done only in rare

21  circumstances. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456

22  U.S. 694, 701, 102 S.Ct. 2099 (1982) (noting federal courts are limited by the sovereign's

23  consent to be sued). The Court's prior holding limits but does not destroy the Government's

SUPPLEMENTAL FILING IN OPPOS.
TO PRELIM. APPROVAL OF CLASS
ACTION SETTLEMENT
Page 18

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 428-2    Filed 06/22/2007    Page 21 of 42

1  jurisdictional defenses. It properly recognized the difference between claimants who have

2  demonstrated diligence and sought tax refunds as opposed to those who did not, and the

3  government's need to close the door on late claims. The broader holding required to establish

4  jurisdiction over non-filers included in *Santos III* could easily be seen as impermissibly broad.

5       The Settling parties have not met their burden to demonstrate that jurisdictional

6  requirements are met for claimants who have not previously filed a timely tax return. As such,

7  preliminary approval for such claims should be denied. *See Boyd v. United States*, 762 F.2d

8  1369, 1371 (9th Cir. 1985) and *Sorenson v. Secretary of the Treasury*, 752 F.2d 1433 (9 th Cir.

9  1985).

10 **C. The Settlement is Illegal on Its Face**

11

12     In *Santos III* the Government does not stipulate to a judgment that the EITC applies to

13 Guam, yet it obligates the Government to pay past and future "EITC claims" from Legislatively

14 created Income Tax Refund Reserve and Trust Funds of 11 Guam Code Ann., Chapters 50 and

15 51.[8] However, the Governor has no authority to obligate the government to use its tax reserve

16 and trust funds to pay a tax credit the government has not recognized as legitimate. Such action

17 impermissibly encumbers these funds in violation of both their enacting statues and Guam's

18 Illegal Expenditures Act.

19     Guam law prohibits a government official, including the Governor, from "[Involving] the

20 government of Guam in any contract or other obligation, for the payment of money for any

21 purpose, in advance of the appropriation made for such purpose." *5 Guam Code Ann. §22401,*

22 _____

[8] The Legislature can stop the payments, not just by the deliberate delinking of its tax code and public abolishment
23 of the EITC, but also by simply eliminating the tax reserve and trust funds, mechanisms heretofore never used by the
government anyway. The effect of these provisions on the fairness of the settlement is discussed in section III.E.,
infra.

24

SUPPLEMENTAL FILING IN OPPOS.    VAN DE VELD SHIMIZU CANTO & FISHER   TOUSLEY BRAIN STEPHENS PLLC
TO PRELIM. APPROVAL OF CLASS     167 East Marine Corps Drive          1700 Seventh Avenue, Suite 2200
ACTION SETTLEMENT                Hagatna, Guam 96910                  Seattle, Washington 98101-1332
25 Page 19                       TEL. 671.472.1131 • FAX 671.472.2886  TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 428-2    Filed 06/22/2007    Page 22 of 42

1 *Illegal Expenditures.* Parties to the proposed settlement recognize this prohibition. *See*

2 *Settlement, p. 19, Concerns Regarding the Illegal Expenditures Act.*

3   This Court has no authority to approve a settlement that contains or embraces illegality.

4 *See Isby v. Bayh*, 75 F.3d 1191, 1197 (7th Cir. 1996); *see also Tennessee Ass'n of Health*

5 *Maintenance Organizations, Inc. v. Grier*, 262 F.3d 559, 565 (6th Cir. 2001). Because the

6 financial obligations *Santos III* creates are illegal, preliminary approval must be denied.

7   1.   *Santos III Funding Violates the Tax Refund Reserve Fund Statute and the Illegal*
8   *Expenditures Act.*

9     a. The Tax Refund Reserve Fund

10   The Income Tax Refund Reserve Fund and the Income Tax Refund Efficient Payment

11 Trust funds were created by the legislature in 1994 and 2002, respectively, to ensure money was

12 set aside from government revenues for tax refunds and credits. The enabling statute provides:

13
14     Any and all expenditures from the Fund shall be for the payment of
       income tax refunds, earned income tax credits, child tax credits,
       tax rebate relief and for no other purpose. The fund is *not* subject
15     to the provisions of 5 GCA §2214 which provisions would
       otherwise permit I Maga'lahen Guåhan [Governor of Guam] to
16     pledge the Fund.

17   *5 Guam Code Ann. § 50105. Expenditures from the Fund (emphasis added).* Thus, the

18 Legislature expressly prohibits the Governor from encroaching on these funds for his own

19 purposes.

20   Inherent in the Legislature's statement of purpose for these funds is that payments will

21 be made from them only for tax refunds and credits *properly due under Guam's tax laws.* The

22 funds are decidedly not dedicated to pay sums the Government offers to settle a legal dispute.

23

24

SUPPLEMENTAL FILING IN OPPOS.
TO PRELIM. APPROVAL OF CLASS
ACTION SETTLEMENT
Page 20

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 428-2    Filed 06/22/2007    Page 23 of 42

1 This is true even if those funds are labeled a "tax credit" and *would be* a tax credit *if* they were

2 being paid pursuant to a legitimate tax provision.

3     *Santos III* expressly states the Government's payment of EITC amounts under this

4 settlement is a "resolution of a dispute and not an admission of liability." *See Settlement* at p. 39.

5 Thus payments made pursuant to the settlement are not payment of an EITC, but rather

6 consideration given in return for a release of a claim for an EITC.[9] *See Settlement* at p.14

7 (characterizing the payments as consideration for the agreement.)

8     Had the Defendant actually admitted liability, the amounts promised could properly be

9 characterized as a compromised payment of a tax credit, and money from the tax reserve fund

10 could potentially be used to pay them. Absent that admission, however, *Santos III* does nothing

11 less than unilaterally create a new social welfare program illegally funded from the tax reserve

12 fund.

13     The Legislature has not authorized payment from these funds for this <u>settlement</u> of EITC

14 claims as distinguished from payment of an actual EITC (whether in full or compromised). In

15 fact, the Governor himself has lucidly noted that the very funding mechanism present in *Santos*

16 *III* is illegal. Moving in opposition to *Santos I*, the Governor said:

17     However, even as to the $54 million, the settlement fails to comply with the illegal

18     Expenditures Act. The settlement attempts to pay claims from tax years 1996, 1998

19     and 1999 (as well as 2000-2003). No reserves for the EITC were occurring at that

    time because there was no EITC reserves provision until June 1999. See P.L. 25-

20     43. The Illegal Expenditures Act states that no officer can make or authorize any

21     expenditure from, or create or authorize any obligation under, <u>any appropriation or</u>

22     [9] The fact that these settlement payments are not legitimate compromise payments of a tax credit is further supported
by the fact that there are specific statutory provisions prescribing how the government can close or compromise a

23 tax claims, see 26 U.S.C. §§7121 & 7122, and 26 CFR §§ 301.7121-1, 301.7122-1, 601.202 & 601.203 none of
which is incorporated in *Santos III*.

24 SUPPLEMENTAL FILING IN OPPOS.
TO PRELIM. APPROVAL OF CLASS
ACTION SETTLEMENT

25 Page 21

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 428-2    Filed 06/22/2007    Page 24 of 42

fund in excess of the amount available therein, or for other than an authorized purpose" or to continue such expenditures. 5 G.C.A. §22401(a)(1)-(2) (emphasis added). If the governor tried to use the reserve fund to pay for tax years 1996-1999 he would therefore be violating the Act . . . . Next, as everyone who lives on Guam knows, Guam does not have any income tax reserves at present. The "reserve funds are exhausted because Guam is trying to pay off a multi-year backlog of refunds developed during the previous administration.

*Amended Memorandum Of Points And Authorities In Support Of Opposition To Petitioner's Motion For Approval Of The Administration Plan*, at pp. 13-14, filed Nov. 29, 2004, CV04-00006, Docket No. 102 (found in *Fisher Decl.* Exhibit D) (hereinafter "Gov. Opp. to *Santos I*") (emphasis in original).

b. The Illegal Expenditures Act

Guam's Illegal Expenditures Act provides that no government official, including the Governor, can:

> (1) Make or authorize any expenditure from, or create or authorize any obligation under, any appropriation or fund. in excess of the amount available therein, or for other than an authorized purpose;
>
> (2) Involve the government of Guam in any contract or other obligation, for the payment of money for any purpose, in advance of the appropriation made for such purpose.

*5 Guam Code Ann. §22401, Illegal Expenditures.* [10]

It is well settled that settlement agreements are contracts (*Jeff D. v. Andrus I*, 889 F.2d 753, 759 (9th Cir. 1989)), subject to restrictions on the expenditure of unappropriated funds. *Cf. Blackhawk Heating & Plumbing Co., v. United States*, 622 F.2d 539, 542, 553 (Claims Ct. 1980)

---

[10] In *Pangelinan v. Gutierrez* (2003 Guam 13 at ¶ 17), the Guam Supreme Court noted the language of the Illegal Expenditures Act tracks that of the Federal Anti-Deficiency act (31 USC. §1341), and said the Act "addresses the problem that Executive branch officials were obligating funds before they were appropriated by Congress, and then making deficiency requests for appropriations that Congress had little choice in deciding because government agencies had basically committed to the United States to make good on the promise."

SUPPLEMENTAL FILING IN OPPOS. TO PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT
Page 22

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006   Document 428-2   Filed 06/22/2007   Page 25 of 42

1   (enforcing provision of settlement contract that was contingent on funding pursuant to

2   comparable federal Anti-Deficiency Act.)

3       Here, as argued above, *Santos III* obligates the use of the Reserve Fund for something

4   other than its authorized purpose, and as such it violates the Act.   This is an illegality of which

5   the Governor is fully aware, and this was a pillar of his argument opposing *Santos I*. As seen, he

6   argued to this Court that funding a settlement through the Income Tax Reserve and Trust Funds

7   would be illegal.  Specifically he noted:

8       1) The funds were not established until June 1999.  Accordingly, no money was ever

9   appropriated to these funds for payment of any tax claim from tax years 1995, 1996 and 1999,

10  yet such claims are included in this Settlement.  Thus, the Governor unambiguously concludes:

11  "If the Governor tried to use the reserve fund to pay for tax years 1996-1999 he would therefore

12  be violating the Act." See Gov. Opp. to *Santos I* at 13.

13      2) The Legislature appropriates funds for these accounts on a year-by-year basis using a

14  formula designed to predict only the present year's need for reserves.  Thus according to the

15  Governor, the Government cannot reserve in these funds any more than the formula predicts it

16  will need to pay the next year's returns.  Consequently there can never be enough in the funds

17  (nor is there intended to be), to pay both the current year's tax returns and the payments required

18  by this settlement. *Id. See also 5 Guam Code Ann. §22401*(prohibiting obligations for the

19  payment of money for any purpose, in advance of the appropriation made for such purpose).

20      3) The funds can not be used to pay attorneys fees. Notably, *Santos III* is silent on the

21  funding mechanism to be used for payment of fees. The Santos motion for fees however,

22  indicates fees are intended to be deducted from funds made available to pay the settlement

23

24  SUPPLEMENTAL FILING IN OPPOS.   VAN DE VELD SHIMIZU CANTO & FISHER   TOUSLEY BRAIN STEPHENS PLLC
    TO PRELIM. APPROVAL OF CLASS    167 East Marine Corps Drive          1700 Seventh Avenue, Suite 2200
    ACTION SETTLEMENT               Hagatna, Guam 96910                  Seattle, Washington 98101-1332
25  Page 23                         TEL 671.472.1131 • FAX 671.472.2886  TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006   Document 428-2   Filed 06/22/2007   Page 26 of 42

amounts. See *Amended Motion For Attorney's Fees And Costs Pursuant To Section II(a)(iv) Of The May 26, 2006 Class Action Settlement Agreement*, at p. 3, filed June 26, 2006, CV04-00006.

Further, the Attorney General prepared a written opinion for the Governor that stated any commitment to pay future EITCs would violate the Illegal Expenditures act. *See Fisher Decl., Exhibit F, Memorandum from C. Troutman to Attorney General,* dated October 13, 2004.

If Guam does not want to admit the EITC applies to Guam and properly compromise outstanding claims for EITC's pursuant to tax statutes, then it is for the Legislature, not the Governor, to determine if public funds will be spent for a settlement structured such as this one. *See 48 USC § 1423j* (Appropriations, except as otherwise provided in this chapter, and except such appropriations as shall be made from time to time by the Congress of the United States, shall be made by the legislature.) Because the Legislature has never appropriated funds for this settlement it violates the Illegal Expenditures act and is subject to injunction. *See Pangelinan,* 2003 Guam 13. On this basis alone, the court should deny preliminary approval.

## D. The Settlement Creates Conflicts Between and Among Class Members

The architecture of the settlement is inherently unsound. Many of the settlement's features, together and independently, result in inadequate representation of all years. Santos III abandons all interest, dramatically reduces compensation for all, unfairly shifts damage to earlier years, abandons the revenue code's "zero netting" mechanism to the advantage of the Government, and rejects the principal of "first in, first out" at the expense of earlier years.

1. *Abandoning interest creates antagonism.*

Under the structure, class years must queue for payment and wait for each precedent year to be satisfied. *See Settlement p. 25, ¶ e, When EIC Claims for Tax years 1995-1996 and 1998-*

SUPPLEMENTAL FILING IN OPPOS.
TO PRELIM. APPROVAL OF CLASS
ACTION SETTLEMENT
Page 24

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006   Document 428-2   Filed 06/22/2007   Page 27 of 42

1 | *2004 Will be Paid.* Naturally, because a class year suffers additional damage as each day elapses
2 | (they get no interest while waiting in line), each year would prefer to be at the head of the line.
3 | Additionally, each year would prefer to displace 1998 from its preferred position and share in the
4 | initial immediate distribution of $10,000,000.00. This is particularly true when one considers the
5 | indefinite nature of the funding. Put simply, the Guam Legislature could simply abolish the
6 | Reserve Fund and cut short all settlement payments.[11] In contrast to the years at the end of the
7 | queue, class year 1998 prefers the structured payout since it reduces the number of participants in
8 | the initial payout. The settlement creates an unnecessary antagonism among the years.

9 | In any event this structure is unnecessary. Respondent admits to having more than
10 | 20,000 "claims" in hand. If the "Goldbergian" structure is an attempt at "first in first out"
11 | theory, pay these claims first or, alternatively, pay 1995 through 2004 in chronological order;
12 | there is no reason for the settlement's artificial order of payment.

13 | 2. *Abandoning interest shifts damage to older claims.*

14 | Pursuant to law, unpaid tax refunds accumulate interest at the Federal short term interest
15 | rate plus 3%. *See 26 U.S.C. §6621.* The settlement, to the contrary, abandons all interest for all
16 | class years.[12] *See Settlement* at p. 17, *No Interest.* This waiver, because of the passage of time
17 | and the compounding of interest, hurts earlier years more than later. For example, a claim from
18 | 1995 has accumulated more interest than a 2004 claim. *See table, supra.* The injustice of this
19 | scheme and its illogical distribution of damage is particularly true in light of the settlement's
20 | reservation to Respondent of off-sets under 26 USC §6402.

21 |

---

22 | [11] This scenario is not farfetched; this court has noted that Guam's decision to stop paying the EITC was "more attributable to the shortfall in the public coffers than one in legal reasoning." *See Summ. J. Order*, p.7.

23 | [12] Tax year 1997 will receive interest, though. Presumably the Respondent concedes liability for this year; if it does not, there is no explanation for the payment of interest for 1997 and not for other years.

24 | SUPPLEMENTAL FILING IN OPPOS. TO PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT
25 | Page 25

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagåtña, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006   Document 428-2   Filed 06/22/2007   Page 28 of 42

1    3. *The respondent's "zero netting" windfall*

2          Many taxpayers may actually have underpaid the government throughout the years or

3    otherwise owe the Government money. The Respondent is keenly aware of this, otherwise the

4    settlement would not have insisted upon maintenance of the offset procedure in 26 USC §6402.

5    *See Settlement* at p. 24.   Under this provision, the Government reduces the amount of a

6    taxpayer's recovery by the amount owed to the Government.

7          A debt owed to the government by the taxpayer accumulates interest at the same rate as a

8    debt owed to the taxpayer by the government. Where taxpayer debt and government debt

9    overlap, tax law cancels interest in both directions. This is known as "zero netting". *See 26 USC*

10   *§6621(d)*[13].

11         *Santos III* does not retain this advantage for a class member. Because he loses all

12   interest, he loses the advantage of zero netting while the government continues to gather interest

13   to enlarge an offsetting debt. Thus, *Santos III* can actually result in an <u>increase</u> of taxpayer debt

14   to the Government[14].

15
**E. Respondent Does Not Commit to Paying the Settlement Amount**
16

17         Under the settlement, fifteen per centum (15%) of monies "set aside or earmarked by the

18   Government or Legislature for income tax refunds <u>and</u> placed into either the Income Tax

19   Reserve Fund . . . or the Income Tax Efficient Payment Trust Fund . . ." will be used to pay

20

21   [13] 26 U.S.C. §6621(d). Elimination of interest on overlapping periods of tax overpayments and underpayments.--To
     the extent that, for any period, interest is payable under subchapter A and allowable under subchapter B on
22   equivalent underpayments and overpayments by the same taxpayer of tax imposed by this title, the net rate of
     interest under this section on such amounts shall be zero for such period

23   [14] In the event the Court does grant preliminary approval of *Santos III*, the Court should insist that the potential
     class be noticed of this possibility.

24   SUPPLEMENTAL FILING IN OPPOS.      VAN DE VELD SHIMIZU CANTO & FISHER  TOUSLEY BRAIN STEPHENS PLLC
     TO PRELIM. APPROVAL OF CLASS      167 East Marine Corps Drive          1700 Seventh Avenue, Suite 2200
     ACTION SETTLEMENT                 Hagatna, Guam 96910                  Seattle, Washington 98101-1332
25   Page 26                           TEL. 671.472.1131 • FAX 671.472.2886  TEL. 206.682.5600 • FAX 206.682.2992

1  settlement amounts. *See Settlement* at p. 18, ¶ V.a.i, *Funding Source for the $90 Million.*

2  *(emphasis in the original).*

3  Payment to class members is predicated on two contingencies: money must be placed in

4  the reserve or trust fund, and the legislature must not repeal the statutes which created the fund.

5  The Legislature can stop the payments, not just by the deliberate de-linking of Guam from the

6  federal tax code and public abolishment of the EITC, but also by simply eliminating the tax

7  reserve and trust funds, mechanisms heretofore not used by the government anyway. *See Fisher*

8  *Decl.,* at Exhibit B. (The Director of Revenue and Taxation admits that Guam "has been unable

9  to formulate a workable plan to ensure deposits into this Fund."). The settlement amounts to a

10  promise to pay if money is collected into a specific pot <u>and</u> if the Government continues to allow

11  the pot to exist.

12  **F. The claim-making and notice procedures are unconscionable**

13

14  1. *Claim making procedure is oppressive*

15  The parties have agreed that the Respondent will determine who is eligible for a refund

16  in each class year. This will be done by identifying the name and social security number "of all

17  persons whose income level falls within the range of persons who may be eligible to receive the

18  EIC under 26 U.S.C. §32 <u>as it applied in each respective tax year</u> and whose filing status

19  otherwise indicates they could be eligible for the EIC under 26 U.S.C. §32 <u>as it applied in each</u>

20  <u>respective tax year.</u>" *See Settlement* at pp.11-12., *Class Notice* (emphasis added). "DRT shall

21  then combine the lists developed into one master list" and to each person on this list, even though

22  they may have a claim for multiple years, he or she "will be mailed <u>only one copy</u> of the notice"

23  *Id.* at pp.12-13 (emphasis added) addressing all class years.

24  SUPPLEMENTAL FILING IN OPPOS. TO PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT
25  Page 27

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006   Document 428-2   Filed 06/22/2007   Page 30 of 42

1    To make a claim however, a taxpayer must file a form for each year in which they were

2    eligible. *Id.* at pp.21-22, *How EIC Class Members Will File Their Claims for Tax Years 1995-*

3    *1996 and 1998-2004.* Each claim must be filed within sixty days of the completion of the class

4    notice period. See *Id., p. 23, When Members of the Class Must File Their Claims.* This class

5    notice period closes upon completion of court ordered publication and *mailing* of notices which

6    must be mailed within 35 days of the Court's order to publish class notice. *Id.* pp. 11-13, *Class*

7    *Notice.* While notice makes its way through the mails, the clock ticks.

8        Although the Department of Revenue and Taxation, through creation of the master lists,

9    knows in which years a taxpayer is eligible for an EITC, this is not revealed to the taxpayer (say,

10   by mailing them a form for each year). It is up to the taxpayer to determine in which years he or

11   she is eligible.

12       Within this sixty day period, a taxpayer must set aside the needs of daily life, find each of

13   his or her tax returns and, inevitably for many, request copies from the Department of Revenue

14   and Taxation (at his or her expense). While the clock ticks, the taxpayer then waits for the

15   arrival of these old returns. This is a risky strategy. After all, the Respondent is *still* processing

16   old filings. *See Id.* at p. 13, (it is not reasonably practicable for DRT to identify any tax filings

17   not yet entered into DRT's computer system . . . because this would substantially delay or even

18   prevent DRT's completion of its list.)

19       Class members must then uncover and *carefully* analyze the various changes of the EIC

20   program over the last 11 years to determine eligibility and then, for each year make a separate

21   claim. Attention in this matter is crucial. A mistake by the taxpayer in just one year could forfeit

22   all refunds for all years. *See Id* at p. 24, d.iii.

23

24   SUPPLEMENTAL FILING IN OPPOS.    VAN DE VELD SHIMIZU CANTO & FISHER    TOUSLEY BRAIN STEPHENS PLLC
     TO PRELIM. APPROVAL OF CLASS      167 East Marine Corps Drive           1700 Seventh Avenue, Suite 2200
     ACTION SETTLEMENT                 Hagatna, Guam 96910                   Seattle, Washington 98101-1332
25   Page 28                           TEL. 671.472.1131 • FAX 671.472.2886   TEL. 206.682.5600 • FAX 206.682.2992

     Case 1:04-cv-00006    Document 428-2    Filed 06/22/2007    Page 31 of 42

1   Again, this occurs in spite of the fact that the information is already in the hands of

2   Respondent. Clearly this is a deliberately constructed barrier to entry and participation in the

3   settlement.

4       Very few of the class members can be expected to work their way through this thicket.

5   This is notice given to the least educated and most disadvantaged of us,[15] many of whom speak

6   languages other than English. It is a notice replete with lawyer jargon, with sentences in the

7   conjunctive and disjunctive, informing people of "litigation pending before the District Court of

8   Guam" and directed to persons "who do not elect to request exclusion from the class" and on

9   whose behalf someone has filed a claim opposed by the Governor of Guam who has "filed

10  pleadings denying the claims and asserting various affirmative defenses." Further, class

11  members are placed on alert that unless they "opt out" they will be "releasing claims" and

12  entering "covenants not to sue" which have "limitations" that "shall not be construed to preclude

13  class members from undertaking administrative and/or judicial procedures." This is all presented

14  in 9 point font, running across 6 entire, single-spaced pages.

15      2. *The immediate payout to 1997 and 1998 is coercive*

16      In ancient days mariners were warned not to listen to the siren's song. Although her song

17  was beautiful, the sailor was eventually led on to the rocks and to his death.

18      This payout is a siren's song. The government intends to issue these checks (by and large

19  to the poor and needy) immediately upon preliminary approval. If the recipient cashes the check,

20  they lose the right to opt out. Thus before they may properly consider the settlement, determine

21

22  _____

[15] According to one study, 45% of recipients are single with children. Of these, 23 % are high school dropouts, 40%
23  graduated high school only and 6% graduated college. *See Making Work Pay; The Earned Income Tax Credit and
    Its Impact on America's Families,* Meyer and Holtz-Eakin, Russell Sage Foundation, New York, 2001, p.4.

24  _____

SUPPLEMENTAL FILING IN OPPOS.     VAN DE VELD SHIMIZU CANTO & FISHER    TOUSLEY BRAIN STEPHENS PLLC
TO PRELIM. APPROVAL OF CLASS      167 East Marine Corps Drive           1700 Seventh Avenue, Suite 2200
ACTION SETTLEMENT                 Hagatna, Guam 96910                   Seattle, Washington 98101-1332
25  Page 29                       TEL 671.472.1131 • FAX 671.472.2886    TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006     Document 428-2     Filed 06/22/2007     Page 32 of 42

1  their own anticipated compensation, or receive their old returns from the Department, they out of

2  necessity will bind themselves to this inadequate settlement. See settlement at 25-27.

3  Through this mechanism, Respondent binds many to a settlement greatly benifitting itself.

4  This might be good business practice but it is repellant when done by the Government. It is not

5  the place of Respondent to bully, deceive and prey upon those whom it is charged to serve.

6  3. *Notice to the class is inadequate*

7  Settling parties propose to notify class year members of the settlement in two ways;

8  publication in locally circulated newspapers and individual notice by mailing. Addresses for

9  potential claimants will be discovered by searching the Department of Revenue and Taxation's

10  computer data base for the last known address appearing in the Department's records. This

11  search extends through 2004. *See Settlement* at pp. 11-13.

12  The parties have agreed not to notice class members whose returns have not yet been

13  entered into the Department's data base. This is a factor entirely controlled by Respondent. By

14  not entering the information, they avoid liability to these claimant's. These class members also

15  receive no notice. Respondent states that the reason for this is that entering the information

16  would substantially delay or even prevent creation of the master list. It is difficult to see how

17  the Court can pass on the fairness of this provision without some showing of the number of un-

18  entered filings.

19  This scheme is guaranteed to miss many claimants. The Department has addresses of those

20  who have filed on Guam. For those who no longer live on Guam, the Department will have no

21  address since they no longer file here. The only reasonable way to reach them is by publication.

22  However, publication in local newspapers is unlikely to reach these individuals since they no

23

24 25

SUPPLEMENTAL FILING IN OPPOS.
TO PRELIM. APPROVAL OF CLASS
ACTION SETTLEMENT
Page 30

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

1  longer live here. It is equally important to remember that the right to a claim that attached to a

2  taxpayer is residue within their estate. Thus notice should also be designed to reach heirs.

3      Fair notice in this matter should include reasonable nation wide publication in order to reach

4  those who have moved off island throughout the last 10 years and also notice the estates of

5  decedents.

6      The parties have indicated no consideration of nation wide publication, even though due

7  process in this matter requires it. *See Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 94 S.Ct.

8  2140 (1974). Nor have they indicated consultation with an expert in the field of notice who

9  could analyze this scheme for adequacy (though such expertise is readily available). This notice

10  is shallow, limited and does not meet constitutional muster.

11      Settling parties will argue to the Court that they should receive 10% of the settlement

12  amount in fees. *See Motion for attorney fees*. If this Court grants preliminary approval to this

13  settlement, the class should be told that this award will reduce their settlement to approximately

14  $81,000,000.00 and told how these fees will affect each years payout. This is an important factor

15  for a member since he or she might elect to opt out based on this reduction in actual

16  compensation.

17      Although the attorneys did not mention when they will be paid, presumably they seek

18  payment from the initial award. Because they have structured such a protracted and uncertain

19  schedule of payment though, they should bear the same risks they create. Therefore fairness

20  dictates that attorney fees come as a proportional amount of each payout to the class, they should

21  receive no interest and just as for the class, their fees will not survive a legislative abolishment of

22  the Reserve Fund or delinkage.

23

24  SUPPLEMENTAL FILING IN OPPOS.   VAN DE VELD SHIMIZU CANTO & FISHER   TOUSLEY BRAIN STEPHENS PLLC
    TO PRELIM. APPROVAL OF CLASS      167 East Marine Corps Drive            1700 Seventh Avenue, Suite 2200
    ACTION SETTLEMENT                  Hagatna, Guam 96910                    Seattle, Washington 98101-1332
25  Page 31                            TEL. 671.472.1131 • FAX 671.472.2886   TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006   Document 428-2   Filed 06/22/2007   Page 34 of 42

## G. The Settlement is Unreasonable Because Compensation is Inadequate

Pleadings in this matter have, from time to time, referred to the importance of the EITC to the "working poor." "[T]he EITC goes primarily to very low income single parents, and it amounts to a large share of the resources this group has available to consume." *See Making Work Pay; The Earned Income Tax Credit and Its Impact on America's Families,* Meyer and Holtz-Eakin, Russell Sage Foundation, New York, 2001. Concern for this working poor is not much in evidence in this settlement, though. Assuming a taxpayer makes it safely through the claims-making forest, she will emerge to find dramatically discounted, and dramatically deferred, compensation.

"America's families" in this law suit is not an abstraction; it is a real group of neighbors, fellow villagers, family members and co-workers, on Guam. It is a group deserving the highest attention from the litigants.

The impact of the EITC upon the country has been well observed. One study found that:

- Two thirds of the recipients used the EITC payment on children as a priority
- Many families hope to save a portion of the EITC check
- Furniture is the most common post check purchase
- Some families save for down payments on homes
- Some use the check for transportation
- Just as significantly, people take joy in being able to finally give their kids money

*See How Families View and Use the Earned Income Tax Credit: Advance Payment Versus Lump-Sum Delivery, Romer and Weisner, in Making Work Pay; The Earned Income Tax Credit and Its Impact on America's Families, Id. at passim,* pp.366-91.

The EITC is no government giveaway; it is a well thought out program designed to raise people out of poverty. It is an expression of a mature society's mindfulness of those among us in

SUPPLEMENTAL FILING IN OPPOS.
TO PRELIM. APPROVAL OF CLASS
ACTION SETTLEMENT
Page 32

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 428-2    Filed 06/22/2007    Page 35 of 42

1 need. Settlement of this dispute then cannot tolerate the presence of cynicism in the structure
2 and miserliness in the amount.

3      In spite of this, settling parties create a scheme with both barriers to participation and
4 entry. They have developed a notice scheme that is unconscionably short, confounding in
5 design, and embracing of a generous discount in Respondent liability. In fact, there is no
6 indication that either the Torres or Santos parties have attempted an analysis of the amounts the
7 class is owed.

8      1. *Years 1995, 1996, 1999 and 2000 suffer unnecessary injury.*

9      Sovereigns are immune from suit except as they consent. Waivers of sovereign immunity
10 are strictly construed by courts. *Ruckleshaus v. Sierra Club*, 463 U.S. 680, 685, 103 S.Ct. 3274
11 (1983); *Block v. North Dakota*, 461 U.S. 273, 287, 103 S.Ct. 1811 (1983). As has been stated,
12 tax refund suits are subject to two waivers of sovereign immunity; 26 U.S.C.A. §§6511 and
13 7422. A plaintiff who fails to meet either section cannot be heard. *Zeier v. U.S.I.R.S.*, 80 F.3d
14 1360 (9th Cir. 1996); *Quarty v. United States*, 170 F.3d 961 (9th Cir. 1999).

15      26 U.S.C.A. §6511 requires that a claim for the refund of a tax be filed within three years
16 from the time the return was filed or within two years of paying the tax, whichever expires later.
17 *26 U.S.C. §6511(a).* If you have not made the claim for that refund within the allotted time, you
18 will not receive a refund, nor will a court hear your complaint. This occasionally leads to harsh
19 results, yet no estoppel will lie against the government in this regard. *U.S. v. Brockamp*, 519
20 U.S. 347, 117 S.Ct. 849 (1997). Because §6511 is jurisdictional, (*Zeier,* 80 F.3d 1360) and may
21 not be waived (*Gabelman v. C.I.R.*, 86 F.3d 609 (6th Cir. 1996)), it may fairly be stated that in tax
22 refund litigation, a plaintiff is either "in the tent or out" and there is no middle ground.

23

24 SUPPLEMENTAL FILING IN OPPOS.
TO PRELIM. APPROVAL OF CLASS
ACTION SETTLEMENT
25 Page 33

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 428-2    Filed 06/22/2007    Page 36 of 42

1       In the *Simpao* case, this threshold issue was addressed and the Court found that the class

2 years had met the jurisdictional bar of *§6511. See Summ. J. Order*.[16] Because of this, class years

3 1995, 1996, 1998 and 2000 are as fully "in the tent" as any other year. Had the Court found

4 otherwise, pursuant to law these years (with the exception of 2000, *see infra*) could not be a part

5 of the settlement and could collect nothing.

6       Despite this, the parties treat them as years "for which there is an arguable risk of a time

7 bar if litigated" and compromise all the claims at approximately twenty five per centum (25%) of

8 the other years. *See Joint Motion for Preliminary Approval at 8.*

9       However to the contrary, this point has already been litigated and this Court found these

10 years had met the jurisdictional bar. Because the years are in parity with later years, there is no

11 basis for different treatment, nor should Santos and Torres ignore the law of the case just because

12 Respondent still (apparently) disagrees.

13       The folly of Santos and Torres' position as to the law of the case suggests they have

14 compromised later year claims in order to reward what they believe to be stale claims.

15 Presumably but for the presence of "time barred claims," the Respondent would have at a

16 minimum another $15,000,000.00 to distribute among the other years. Later years' recovery,

17 though, is reduced to compensate the earlier years. This possibility is difficult to ignore given

18 the improper nature of the compromise and the disregard of the law of the case.

19      2. *The injury to year 2000.*

20       Inexplicably, class year 2000 is treated as a potentially time-barred year in spite of

21 Supreme Court precedent. *See Devlin v. Scardelletti*, 536 U.S. 1, 122 S.Ct. 2005 (2002) (non-

22 named class members are, for instance, parties in the sense that the filing of an action on behalf

23 ---

[16] Judge Martinez did note the potential existence of a time bar pursuant to 26 U.S.C. §6532, see fn. 6, *supra*.

24

SUPPLEMENTAL FILING IN OPPOS.   VAN DE VELD SHIMIZU CANTO & FISHER  TOUSLEY BRAIN STEPHENS PLLC
TO PRELIM. APPROVAL OF CLASS   167 East Marine Corps Drive     1700 Seventh Avenue, Suite 2200
ACTION SETTLEMENT         Hagatna, Guam 96910        Seattle, Washington 98101-1332

25 Page 34               TEL. 671.472.1131 • FAX 671.472.2886  TEL. 206.682.5600 • FAX 206.682.2992

1  of the class tolls a statute of limitations against them) *citing American Pipe & Const. Co. v.*

2  *Utah*, 414 U.S. 538, 94 S.Ct. 756 (1974). Class year 2000 was required to file a claim no later

3  than April 15, 2004. The filing of the *Santos* action on February 12, 2004, however, stopped the

4  clock for all class years two months before the expiration date, therefore there is no basis

5  whatsoever for treating 2000 as "potentially time-barred."

6     3. *In light of the Simpao holding, this settlement is wholly inadequate*

7     In a fundamental sense, this case has already been won for plaintiffs. This Court

8  determined that the EITC applies on Guam and that the claimants met the jurisdictional

9  requirements of 26 U.S.C. §6511. Against this victory stands a settlement that discounts the

10  class as a whole to 43% of the claims' worth, and for some years to 12%. A factor courts

11  consider when passing on a settlement is the adequacy of compensation in light of the risks of

12  litigation. *See e.g., Staton v. Boeing Co.*, 327 F.3d 938, 959-60 (9th Cir. 2003). The risks here

13  are minimal and thus counsel should instead be vigorous in assuring the plaintiffs adequate

14  compensation. The flaccidness of this settlement condemns its viability.

15

16  **IV. CONCLUSION**

17     This Court must make a determination on whether it will grant preliminary approval to

18  *Santos III*. In doing so, the Court will weigh a number of factors. It will consider the strength of

19  the Plaintiff's case, the amount offered in settlement, the experience and views of counsel, the

20  extent of discovery completed and the reaction of class members to the settlement, the risk of

21  maintaining class action status, the risk, expense and complexity of further litigation, and the

22  presence of a governmental participant . *See Churchill Village, L.L.C. v. General Electric*, 361

23  F.3d 566, 575(9th Cir. 2004).

24

SUPPLEMENTAL FILING IN OPPOS.
TO PRELIM. APPROVAL OF CLASS
ACTION SETTLEMENT
Page 35

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006   Document 428-2   Filed 06/22/2007   Page 38 of 42

1    Plaintiffs clearly have a very strong case. Simpao established that the EITC program is

2   part of Guam's tax code (*see Summ. J. Order*), and the Guam Supreme Court made the very

3   same determination. *See In re Request of I Mina 'Bente Sing 'Kona Liheslaturan Guahan*

4   *Relative to the Application of the Earned Income Tax Credit Program to Guam Taxpayers ("the*

5   *EIC question")*, 2001 Guam 3, 2001 WL 113985 (Sup. Ct. Guam 2001). To argue otherwise is

6   frivolous. Additionally, Simpao established the jurisdictional reach of this Court over *all* class

7   years and, in doing so, placed them in parity. Simpao's accomplishment in the litigation has

8   effectively removed any complexity which may have attended the case, and the strength of

9   Plaintiff's case makes the offered settlement unacceptably pale. While the law may not know

10   the phenomenon of the "dead bang" winner, this matter comes awfully close. This is a suit on

11   behalf of the poor and disadvantaged. An overall settlement of 43% or less, with one-half of the

12   class receiving less than 20%, is paltry to the extent of shame.

13    Simpao anticipates that the Government will plead near-insolvency in defense of the

14   amount. If this is so, Simpao is unaware of any evidence establishing it. Neither does it appear

15   that Santos or Torres engaged in any discovery to establish the state of Government finances.

16   Simpao plaintiffs are represented well by a team of attorneys with extensive class action and

17   litigation experience. The firm of Tousley Brain Stephens PLLC enjoys a national reputation for

18   class action litigation and has achieved numerous multi-million dollar judgments on behalf of

19   plaintiffs. This experienced group comes before the Court and submits for its consideration the

20   inequities, illegalities and inadequacies of *Santos III* and prays the Court decline preliminary

21   approval.

22

23

24
SUPPLEMENTAL FILING IN OPPOS.
TO PRELIM. APPROVAL OF CLASS
ACTION SETTLEMENT
Page 36

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

25

Case 1:04-cv-00006    Document 428-2    Filed 06/22/2007    Page 39 of 42

DATED this _____11ᵀᴴ_____ day of August, 2006.

VAN DE VELD SHIMIZU CANTO & FISHER

By: _____
Thomas J. Fisher

TOUSLEY BRAIN STEPHENS PLLC
Kim D. Stephens, P.S., *Pro Hac Vice*
Nancy A. Pacharzina, *Pro Hac Vice*

Attorneys for Plaintiffs Simpao, Naputi & Cruz

SUPPLEMENTAL FILING IN OPPOS.
TO PRELIM. APPROVAL OF CLASS
ACTION SETTLEMENT
Page 37

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 428-2    Filed 06/22/2007    Page 40 of 42

# TABLE OF AUTHORITIES

U.S. Supreme Court cases

American Pipe & Const. Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756 (1974) . . . 9, 35

Block v. North Dakota, 461 U.S. 273, 103 S.Ct. 1811(1983) . . . . 33

Devlin v. Scardaletti, 536 U.S. 1, 122 S.Ct. 2005(2002) . . . . . 34

Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 94 S.Ct. 2140 (1974). . . . 31

Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee
456 U.S. 694, 102 S.Ct. 2099 (1982) . . . . . . 17, 18

Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 114 S.Ct. 1673 (1994) . 17

Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 98 S.Ct. 2396 (1978) . . 17

Ruckelshaus v. Sierra Club, 463 U.S. 680, 103 S.Ct. 3274(1983) . . . . 33

U.S. v. Brockamp, 519 U.S. 347, 117 S.Ct. 849 (1997) . . . . . 33

U.S. v. Garbutt Oil Co., 302 U.S. 528, 58 S.Ct. 320 (1938) . . . . . 17


U.S. Federal Court cases

Blackhawk Heating & Plumbing Co., v. United States, 622 F.2d 539 (Claims Ct. 1980) . 22

Boyd v. United States, 762 F.2d 1369 (9th Cir. 1985) . . . . . 19

Churchill Village, LLC v. General Electric, 361 F.3d 566 (9th Cir. 2004) . . . 35

Cotton v. Hinton, 559 F.2d 1326 (5th Cir. 1977) . . . . . . 16

Gabelman v. C.I.R., 86 F.3d 609 (6th Cir. 1996) . . . . . . 33

Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998) . . . . . 16

In re General Tire and Rubber Co. Securities Litigation, 726 F.2d 1075 (6th Cir. 1984) . 16

Isby v. Bayh, 75 F.3d 1191 (7th Cir. 1996) . . . . . . . 20

Jeff D. v. Andrus I, 889 F.2d 753 (9th Cir. 1989) . . . . . . 22

Northern Life Ins. Co. v. United States, 685 F.2d 277 (9th Cir. 1982) . . . 17

Overhauser v. United States, 45 F.3d 1085 (7th Cir. 1995) . . . . . 17

Presidential Gardens Associates v. United States, 175 F.3d 132 (2nd Cir. 1999) . . 17

Quarty v. United States, 170 F.3d 961 (9th Cir. 1999) . . . . . 33

Rosenbluth Trading, Inc. v. United States, 736 F.2d 43 (2nd Cir. 1984) . . . 17

Santos et al., v. Camacho, et al., Dist. Ct. of Guam, CV 04-0006 . . . . passim

Simpao v. Govt. of Guam, Dist. Ct. of Guam, CV 04-0049 . . . . . passim

Sorenson v. Secretary of the Treasury, 752 F.2d 1433 (9th Cir. 1985) . . . 19

Staton v. Boeing Co., 327 F.3d 938 (9th Cir. 2003) . . . . . . 35

Tennessee Ass'n of Health Maintenance Organizations,
    Inc. v. Grier, 262 F.3d 559 (6th Cir. 2001) . . . . . . 20

Thomas v. United States, 755 F.2d 728 (9th Cir. 1985) . . . . . 16

Torres v. Camacho, et al., Dist. Ct. of Guam, CV 04-0038 . . . . . passim

Zeier v. U.S.I.R.S., 80 F.3d 1360 (9th Cir. 1996) . . . . . . 33

## Supreme Court of Guam cases

In re Request of I Mina' Bente Sing Kona Liheslaturan Guahan Relative
    to the Application of the Earned Income Tax Credit Program to
    Guam Taxpayers, 2001 Guam 3 . . . . . . . 36

Pangelinan v. Gutierrez, 2003 Guam 13 . . . . . . . 22

## Federal Statutes

26 U.S.C. § 6402 . . . . . . . . . . 25, 26

26 U.S.C. § 6511 . . . . . . . . . . 8, 16, 17, 33, 34, 35

26 U.S.C. § 6511(a) . . . . . . . . . . 33

# EXHIBIT E

1  Counsel appearing on following page

FILED
DISTRICT COURT OF GUAM
AUG 25 2006
MARY L.M. MORAN
CLERK OF COURT

3  DISTRICT COURT OF GUAM

4  TERRITORY OF GUAM

5  JULIE BABAUTA SANTOS, *et al.*,

Civil Case No. 04-00006

6       Petitioners,

7  v.

RECEIVED
AUG 25 2006
CALVO & CLARK LLP
By: _____

8  FELIX P. CAMACHO, *et al.*,

       Respondents.

10  CHARMAINE R. TORRES, *et al.*,

Civil Case No. 04-00038

11       Plaintiffs,

12  v.

CABOT MANTANONA, LLP

13  GOVERNMENT OF GUAM, *et al.*,

Date: 8·25·06
Time: 3·05
Initials: *ve*

       Defendants.

15  MARY GRACE SIMPAO, *et al*,

Civil Case No. 04-00049

16       Plaintiffs,

17  v.

**SIMPAO PLAINTIFFS'
OPPOSITION TO PETITIONER
SANTOS' AMENDED MOTION
FOR APPOINTMENT OF LEAD
COUNSEL**

18  GOVERNMENT OF GUAM,

19       Defendant,

20  v.

21  FELIX P. CAMACHO, Governor of Guam

OFFICE OF THE
GOVERNOR
25 AUG 2006
DATE 1:04 pm
LEGAL OFFICE

       Intervenor-Defendant.

The Law Offices of
PHILLIPS & BORDALLO

RECEIVED BY: _____
DATE: 25·____
TIME: 1:00

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006     Document 428-3     Filed 06/22/2007     Page 2 of 45

VAN DE VELD SHIMIZU CANTO & VAN DE VELD
Suite 101 Dela Corte Bldg.
167 East Marine Corps Drive
Hagåtña, Guam 96910
671.472.1131

TOUSLEY BRAIN STEPHENS PLLC
Kim D. Stephens, P.S., WSBA #11984
Nancy A. Pacharzina, WSBA #25946
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
206.682.5600

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006   Document 428-3   Filed 06/22/2007   Page 3 of 45

# I. INTRODUCTION

Petitioner Santos' counsel, Michael Phillips, has yet again wrongly asked this Court to appoint him lead counsel for the putative class(es) represented in the consolidated actions listed above. His motion is inappropriate at this time given the Court has not requested applications for lead counsel. Further, his motion goes beyond the scope of "supplemental" briefing requested by the Court. (*see Order,* J. Martinez, July 19, 2006, Docket No. 339, requesting supplemental briefing on five given motions only, none of which are motions for appointment of lead counsel).

In any event, Phillips' request to be appointed lead counsel should be denied because he has repeatedly demonstrated he is inadequate to serve as class counsel. His pleadings have failed to meet threshold requirements of tax cases and class actions; he has failed to comply with basic class action procedures; his irregular conduct during settlement has resulted in an inadequate and suspect settlement unsupported by any documentation; and his poor judgment and political tactics have caused recovery for the class to be delayed for almost two years. In addition, Phillips failed to protect important rights of all class members and failed to work cooperatively with other class counsel. The Court should deny his request to be appointed class counsel.[1]

---

[1] Where more than one counsel seeks the appointment, the Court should control the timing for submittal and format of applications for lead counsel. Manual for Complex Litigation (hereinafter "Manual") § 21.273 at 348. Should the Court wish to consider overall appointment of lead counsel at this time, counsel for the *Simpao* plaintiffs request the opportunity to make application. It should also be noted, however, counsel's qualifications and request to be appointed lead counsel is already before the Court in Simpao's Motion for class certification filed July 5, 2005 in the Simpao action prior to consolidation.

OPPOSITION TO SANTOS' AMENDED MOTION FOR APPOINTMENT AS LEAD COUNSEL
Page 1

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

## II. FACTS RELEVANT TO LEAD COUNSEL DETERMINATION

Phillips filed the *Santos* action February 12, 2004 -- three years after the Guam Supreme Court held the Earned Income Tax Credit (EITC) program applied on Guam.[2] Inexplicably, the action he filed sought recovery of EITCs only for tax years 1998–2003. It did not cover EITC claimants for tax years 1995–1997, nor claimants for 2004 and future tax years. It did not allege exhaustion of administrative remedies for either the named plaintiff or the class. *See Santos v. Camacho*, CV 04-00006 at Docket No. 1.[3]

Less than four months after he filed the petition, with no discernable discovery, and while the Governor was off-island, Phillips negotiated a settlement with the Lieutenant Governor that committed the Government of Guam to pay out $60 million and awarded Phillips $6 million in attorneys' fees.[4] Phillips had recently represented the Lieutenant Governor in a struggle with Governor Felix Camacho over the powers of the Office of Lieutenant Governor. See *In re Request of Governor Felix P. Camacho*, 2004 Guam 10, 2004 WL 1293239 (Sup. Ct. Guam 2004). Furthermore, at the same time he was negotiating the *Santos* settlement, Phillips was the lone bidder for a legal services contract to become the Lt Governor's permanent legal counsel. *See Decl. of Curtis C. Van de veld In Support Of Simpao Plaintiffs' Opposition To Petitioner*

---

[2] *See Class Action Petition for Recovery of Income Tax Refunds*, CV04-00006, Docket No. 1; see also *In re Request of I Mina'Bente Sing'Kona Liheslaturan Guahan Relative to the Application of the Earned Income Tax Credit Program to Guam Taxpayers ("the EIC question")*, 2001 Guam 3, 2001 WL 113985 (Sup. Ct. Guam 2001).

[3] On December 3, 2004, Plaintiffs Mary Grace Simpao and Christina Naputi filed a separate complaint. Prior to filing the complaint, Simpao counsel Van de veld & Shimizu Canto & Van de veld associated with Tousley Brain Stephens PLLC, a Seattle, Washington firm with a national reputation for complex class action litigation. *See Simpao v. Guam, Docket No. 1*. Unlike Santos', Simpao's complaint also sought recovery for tax years 1995, 1996, and 1997. Additionally Simpao, also unlike Santos, pled and established jurisdiction, standing, and interest in each class year. Simpao sought relief for each year, sought a mechanism for making claims, sought adequate individual notice for each class year, sought payment of EIC refunds for each year, and enforcement of the EIC program in future years.

[4] *Id* at Docket No. 14, Order Granting Prelim. Approval of Class Action Settlement entered June 17, 2005 with Settlement Agreement attached (hereinafter, *Santos I*).

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL
Page 2

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 428-3    Filed 06/22/2007    Page 5 of 45

*Santos' Amended Motion For Appointment Of Lead Counsel* (hereinafter referred to as "*Van de veld Decl.*") at "Exhibit A," KUAM Television News Station Reports.

Phillips, the Lieutenant Governor and the Attorney General announced *Santos I* in the press on Sunday, June 13, 2004. See *Van de veld Decl.* at "Exhibit B," KUAM Television News Station Report. The next day on June 14, 2004, they submitted a Stipulated Order of Preliminary Approval to the federal court. The settlement agreement attached to the Stipulated Order contained a provision that Phillips be awarded 10% of the recovery as attorneys' fees ($6 million dollars).

On June 17, 2004, the Court conducted what Phillips refers to as a "settlement conference" with Phillips, the Lieutenant Governor and the Attorney General. At the conclusion of the meeting, the magistrate signed a Stipulated Order Granting Preliminary Approval of Class Action Settlement. Phillips' fee in the attached settlement agreement, however, was now crossed out and replaced with a provision that the Court would determine attorneys' fees.[5]

The next day (June 18, 2004), Phillips submitted a separate stipulation signed by the Attorney General awarding himself $6 million dollars in attorney's fees. *Santos v. Camacho* at Docket No. 16. That Order was signed by Magistrate Manibusan and entered in the *Santos* action on June 24, 2004. *Id.* At this time, no class had been certified and Phillips had never moved for or been appointed lead counsel. No motion for attorneys' fees compliant with Federal Rules Of Civil Procedure (FRCP) Rule 23(h)(1) or 54(d)(2) had ever been filed.

*Santos I* provided for notice to the class solely through publication (one notice per week for three weeks) even though the parties fully acknowledged the Respondent had mailing addresses on file for the putative class claimants. *Santos I* at p. 17, ¶ V.2. The notice Phillips

---

[5] *Santos v. Camacho* at Docket No. 14, Order Granting Prelim. Approval of Class Action Settlement entered June 17, 2004 with Settlement Agreement attached. See *Van de veld Decl.* at "Exhibit C" for relevant page.

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL
Page 3

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 428-3    Filed 06/22/2007    Page 6 of 45

1   allowed to be published was inaccurate in several respects. The notice told class members they

2   would recover approximately 50% of their claim when, for some years, *Santos I* provided for

3   would be less than 20% recovery. *See Van de veld Decl.* at "Exhibit D," "Notice Of Class Action

4   And Proposed Settlement," Pacific Sunday News, June 27, 2004. It also incorrectly stated the

5   class had already been certified. *Id.* Additionally, although he held himself out as class counsel,

6   Phillips provided no contact information for himself and directed class members' inquiries to the

7   Respondent. *See Id.*

8          On July 14, 2004, after two motions to intervene had highlighted Phillips' numerous

9   errors, Phillips filed a belated motion to be appointed class counsel and re-requested his already

10  court-approved award of attorney fees. *Memorandum Of Points And Authorities In Support For*

11  *Petitioner's Motion For An Order Appointing Class Counsel*, CV04-00006, Docket No. 45. In

12  his words, he did so because "a number of attorneys are seeking to intervene and share in any

13  recovery" and he wanted "to ensure a clear record in this matter." *Id.* at p. 4. In his motion,

14  Philips acknowledged the parties had failed to accomplish even the minimal notice they had

15  promised (it was published only once) and now realized individual notice "would be best for all

16  parties involved." *Id.* at p. 24; see *Stipulation Of The Parties Regarding Additional Notices To*

17  *The Class*, CV04-00006, Docket No. 40. In addition, he obtusely acknowledged it necessary to

18  "clarify" the false information in the first *Santos* notice (i.e., that the class had been certified and

19  that the Court had already approved the attorneys' fee award) in order to now comply with the

20  Federal Rules of Civil Procedure. *Id.* at p. 24. The revised notice Phillips proposed, however,

21  still contained a statement that the Court had "preliminarily" approved a 10% attorney fee and

22  lists Phillips as "counsel" for the class. *See* CV04-00006, Docket No. 45 at Exhibit A. The

23  revised notice did not inform class members they could enter an appearance in the action through

24

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL
Page 4

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 428-3    Filed 06/22/2007    Page 7 of 45

counsel if they desired, nor did it inform the class there were two motions for intervention pending which cited deficiencies in the settlement. *Id.* The Court signed an order appointing Phillips interim class counsel on July 16, 2004. CV04-00006, Docket No. 54. The Court took no action on Phillips' second motion for attorneys' fees.

By this time, two competing class actions had been filed in response to the inadequacies of *Santos I* (the *Simpao*[6] *and Torres* actions now consolidated here), and the Governor was expressing his procedural concerns with the settlement. The Governor sought to investigate the circumstances under which *Santos I* had been reached. He was told by the Attorney General, "there is no written documentation regarding the history of the negotiations leading up to the Settlement Agreement." See *Amended Memorandum Of Points And Authorities In Support Of Opposition To Petitioner's Motion For The Approval Of The Administrative Plan*, CV04-00006, Docket No. 102, at p. 4 (hereinafter, *"Gov's Opp. To Settlement"*).

In an attempt to cure defects in the settlement, Phillips filed a motion for approval of a purported "Administrative Plan" that was, in reality, a revised settlement agreement. See *Van de veld Decl.* at 'Exhibit E," Correspondence between the Office of the Governor and the Attorney General's Office, dated September 16, 2004, referring to the Administrative Plan as "a new settlement under the guise of an administrative plan."

The Governor then appeared in the *Santos* action with his own counsel, Calvo and Clark, to oppose the settlement. See *Gov's Opp. To Settlement.* He noted the following defects:

1. The settlement was illegal because it was contrary to Guam's Illegal Expenditures Act, 5 G.C.A. § 22401, prohibiting an officer of the Government from obligating the Government to pay money in advance of an appropriation made by the Legislature for such purpose;

---

[6] See *Complaint*, <u>Simpao v. Govt. of Guam</u>, CV04-00049, Docket No. 1, found at "Exhibit F" of *Van de veld Decl.*

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL
Page 5

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 428-3    Filed 06/22/2007    Page 8 of 45

2.      The complaint was insufficient to establish jurisdiction because it did not allege exhaustion of administrative remedies; and

3.      Any approval of an "administrative plan" was improper unless and until final approval was given to the settlement.

4.      Additional defects noted by the Governor included:

- Numerous deficiencies in the notice;

- Attorney's fees had been resolved by stipulation as opposed to by motion and were disproportionately high ($6 million), given Plaintiff's counsel had done nothing but file a complaint and negotiate a settlement in less than a day;

- A noticeable lack of adversarial proceedings prior to settlement including a complete lack of discovery regarding the value of the claims;

- Conflicts within the class between members whose claims were time-barred and those whose were not;

- The settlement was substantively unfair given claimants would receive only 50% of the EITCs due (if that); and

- Attorney's fees were guaranteed regardless of how many members opted out of the settlement.

*See Gov's Opp. To Settlement, passim.*

Phillips negotiated with the government again, this time with the Governor. As a result, Phillips and the Governor came to the Court on June 20, 2005, with a new class action petition and a second settlement agreement (See *Declaration Of Rodney J. Jacob In Support Of Joint Motion For Preliminary Approval Of Settlement Agreement* at Exhibit 2, entitled "Settlement Agreement" [hereinafter referred to as "*Santos II*"]), but not before the unincluded Simpao Plaintiffs defeated a motion to dismiss for lack of jurisdiction and failure to state a claim on

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL
Page 6

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 428-3    Filed 06/22/2007    Page 9 of 45

1    March 17, 2005.[7]  The amended *Santos* petition now alleged exhaustion of administrative

2    remedies but did not explain how Plaintiffs had done so.  CV04-00006, Docket No. 210.  This

3    new petition and settlement included tax year 1995, but recoveries for tax years 1996, 1998,

4    1999, and 2000 *actually decreased* compared to *Santos I.*  Tax year 1997 was still not included.[8]

5    *Id.*

6          The new settlement changed few, if any, of the defects previously noted by the Governor

7    and Plaintiffs and added new ones:

8          • The Court still had no jurisdiction over much of the class as it included

9             claimants who had not filed tax returns;

10         • The class remained internally conflicted between time-barred and non-time-

11            barred class members;

12         • The funding mechanism contained the same objectionable and illegal features

             as in *Santos I;* and

13         • The settlement was substantively unfair with drastically discounted refund

14            amounts of the EITCs due (if that).

15         This time, the parties filed a joint motion for preliminary approval as opposed to a

16   stipulated order and, as required by the *Santos II* agreement, Phillips filed a motion for

17   conditional certification of a settlement class.  CV04-00006, Docket Nos. 211 & 212.

18         There was no indication that Phillips had attempted to discover or estimate the actual

19   damage suffered by the class, and to the very present Phillips has neglected to so investigate.

20   See, e.g., *Amended Declaration of Interim Class Counsel Michael F. Phillips in Support of*

21

22   _____
     [7] See *Order*, J. Lew, Mar. 15, 2005, Dist. Ct. of Guam, <u>Simpao v Govt. of Guam</u>, CV04-00049, Docket No. 53,
     found at "Exhibit G" of *Van de Veld Decl.*

23   [8] Other defects associated with Santos II are presented in Simpao's Objections to Santos III. As noted in that
     pleading, there is not much difference between Santos II and III.  See *Supplemental Filing In Opposition To*

24   *Preliminary Approval Of Class Action Settlement*, CV06-00004, Docket No. 345.
     ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

OPPOSITION TO SANTOS' AMENDED        VAN DE VELD SHIMIZU CANTO & FISHER        TOUSLEY BRAIN STEPHENS PLLC
25   MOTION FOR APPOINTMENT AS            East Marine Corps Drive                     1700 Seventh Avenue, Suite 2200
     LEAD COUNSEL                         Hagatna, Guam 96910                         Seattle, Washington 98101-1332
                                          Tel. 671.472.1131                           Tel. 206.682.5600
     Page 7                              Fax 671.472.2886                            Fax 206.682.2992

Case 1:04-cv-00006     Document 428-3     Filed 06/22/2007     Page 10 of 45

1  *Amended Motion for Appointment of Lead Class Counsel (Amending Docket No. 276)*, CV04-
2  00006, Docket No. 349, *passim*.

3      Although the Governor signed on to the settlement, this time it was the Attorney General
4  who did not. The Attorney General then opposed the settlement.

5      In the meantime, Simpao continued to litigate her case and, on June 15, 2005, the Court
6  granted Simpao partial summary judgment.[9] The Court ruled the EITC applies to Guam and,
7  under the circumstances present here, the Plaintiffs had exhausted administrative remedies by
8  filing tax returns. The court directed Simpao to file a motion to certify the class. *Order* [for
9  partial summary judgment], at 13. Simpao filed a motion for class certification on July 5, 2005.
10  CV04-00049, Docket No. 107.

11      At this point, the EITC litigation disintegrated into a morass of procedural battles
12  centered around the battle between the Attorney General and the Governor for control of the
13  action and the various procedural postures of the three pending class actions.

14      Ultimately, the Court ordered the cases consolidated and stayed them all until such time
15  as it could rule on the dispute between the Attorney General and the Governor. See CV04-
16  00006, *Santos v. Camacho*, Docket No. 299. Despite the stay, however, the Court did direct the
17  petitioners to file motions for appointment of lead counsel. *Santos v. Camacho*, Docket No. 300.
18  In response, the Governor requested and was granted time to conduct a global settlement
19  conference. Phillips again failed to work cooperatively with the Simpao Plaintiff's counsel.

20      Phillips, with petitioner Torres' counsel and the Governor, have now filed a new
21  settlement (hereinafter referred to as "*Santos III*") substantively no different from *Santos II* with
22  the exception that class year 1997 is now included and Phillips has split part of the proposed fee

---

[9] *Order* [granting partial summary judgment], J. Martinez, June 15, 2005, <u>Simpao v. Govt. of Guam</u>, CV04-00049, Docket No. 99, found at "Exhibit H" of *Van de veld Decl.*

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL

Page 8

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

1    award with counsel for Torres. See *Amended Declaration Of Daniel M. Benjamin In Support Of*

2    *Joint Motion Of The* Santos *And* Torres *Parties For Preliminary Approval Of Class Action*

3    *Settlement Agreement*, CV04-00006, *Santos v. Camacho*, Docket No. 324, at Exhibit 1. While

4    wearing a mantle of procedural folly upon his shoulders, Phillips now asks this Court to

5    officially appoint him lead counsel in this class action.

6                              **III. ARGUMENT**

7    **A.      Standard for Selection of Lead Counsel**

8            An attorney appointed to serve as class counsel must be able to fairly and adequately

9    represent the class. Fed. R. Civ. P.23(g)(1)(b). The Manual for Complex Litigation sets forth

10   the following criteria for appointment of class counsel.

11           In every case, the judge must inquire into the work counsel has
             done in investigating and identifying the particular case; counsel's
12           experience in handling class actions, other complex litigation, and
             claims of the type asserted in the action; counsel's knowledge of
13           the applicable law; the resources counsel will commit to
             representing the class; and any other factors that bear on the
14           attorney's ability to represent the class fairly and adequately. This
             last category may include the ability to coordinate the litigation
15           with other state and federal class and individual actions involving
             the same subject matter..:

16   David F. Herr, *Manual for Complex Litigation* (4th ed. 2004) (hereinafter "Manual") § 21.271 at

17   345. The attorney seeking the appointment has the burden to prove he is both qualified and

18   otherwise adequate.

19           The adequacy of counsel should be assessed at all stages of litigation. *See Key v Gillette*,

20   782 F.2d 5, 7 (1986). Counsel originally thought to be suitable may prove themselves unsuitable

21   through their conduct. *Id.* (approving decertification of a class because previously accepted

22   counsel's lackluster performance during trial reflected an inability to adequately protect the

23   interests of the class).

24

25   OPPOSITION TO SANTOS' AMENDED
     MOTION FOR APPOINTMENT AS
     LEAD COUNSEL
     Page 9

     VAN DE VELD SHIMIZU CANTO & FISHER
     East Marine Corps Drive
     Hagatna, Guam 96910
     Tel. 671.472.1131
     Fax 671.472.2886

     TOUSLEY BRAIN STEPHENS PLLC
     1700 Seventh Avenue, Suite 2200
     Seattle, Washington 98101-1332
     Tel. 206.682.5600
     Fax 206.682.2992

     Case 1:04-cv-00006    Document 428-3    Filed 06/22/2007    Page 12 of 45

1    Mistakes made by counsel in the early rounds of litigation can be indicative of

2    inadequacy. *Armstrong v. Chicago Park District*, 117 F.R.D. 623, 633 (N.D. Ill. 1987). Conduct

3    during settlement negotiations can be particularly relevant to an adequacy assessment. See *In re*

4    *General Motors Corp. Engine Interchange Litigation*, 594 f.2d 1106; 1121-1130 (7th Cir.1979).

5    In *General Motors*, the court identified several factors that may suggest representation of the

6    class during settlement negotiations is less than vigorous. They include: (1) Settlement reached

7    relatively early in the course of the action; (2) incomplete discovery; (3) counsel ill-informed

8    about the full value of the claims they were surrendering; (4) abandonment of some claims; and,

9    (5) failure to include all class counsel in negotiations. *Id.* [10]

10    At issue here is a tax refund case. There are few cases more procedurally difficult than a

11    tax refund class action as both tax cases and class actions present significant procedural hurdles.

12    These threshold requirements must be met to ensure the outcome is just and the effort put in to

13    resolve the matter is not wasted by subsequent reversal. Where government misconduct and

14    public funds are at issue, rigorous scrutiny is required. Phillips' record in this case cannot

15    withstand such scrutiny.

16

17

18    _____

[10] This is one reason The Manual for Complex Litigation recommends the Court conduct a hearing to determine if a

19    class action settlement is "within the range of possible approval" before authorizing notice to class members and
conducting a full fairness hearing. *In re General Motors* at 1124, citing Manual § 1.46 at 53-54 (reversing approval

20    of settlement based on irregularities in settlement negotiations). The Manual specifically advises:

> The judge should raise questions at the preliminary hearing and perhaps seek an

21    > independent review if there are reservations about the settlement, such as unduly
> preferential treatment of . . . segments of the class, inadequate compensation or

22    > harm to the class, the need for subclasses, or excessive compensation for
> attorneys. The parties then have an opportunity to resume negotiations in an

23    > effort to remove potential obstacles to court approval.

Manual, § 21.632 at 414.

24

**B.** **Phillips' Repeated Failure To Comply With Both Tax Litigation And Class Action Procedure Demonstrate He Is Inadequate Counsel**

      1.    <u>The Santos I Complaint was fatally flawed</u>

The complaint filed in *Santos* demonstrates Phillips did not adequately identify or investigate the potential claims in this action or develop an understanding of the applicable law. Fed. R. Civ. P. § 23(g)(1)(c)(i). While he claims to have prepared for years to bring an EITC action against the government, the action he actually filed evidences little attention to its procedural complexities. His complaint shows no attempt to meet the statutory requirements of a tax refund action as Santos never alleged she had filed tax returns for the relevant years or had otherwise met the exhaustion requirements of 26 U.S.C. § 7422. He also failed to define the class such that it could be alleged its members satisfied exhaustion requirements on a class-wide basis. Thus, the original *Santos* Petition would not have survived a motion to dismiss. *Cf., Order*, J. Lew, Mar. 17, 2005, *Simpao v. Guam*, CV04-00049, Docket No. 53 (denying Governor's motion to dismiss because Plaintiffs pled exhaustion).[12]

In addition, while claiming to represent all disadvantaged people of Guam, Phillips brought this important case with a class representative who apparently cannot represent all tax years at issue. As a result, when Phillips filed the complaint, he abandoned Guam citizens with EITC claims for tax years 1995-1997. Although tax year 1996 (but not 1995 or 1997) was eventually covered in the *Santos I* settlement (apparently at the request of government), there is no evidence Phillips sought relief on their behalf. "Counsel's choice of an incorrect opening date for a class period can seriously prejudice class members and has been considered by other courts

---

[12] *See Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995) (Moreover, if the parties fail to raise the question of the existence of jurisdiction, the federal court has the duty to raise and resolve the matter. . . . "[T]he rule . . . is inflexible and without exception, which requires [a] court, on its own motion, to deny its jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record") quoting *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S. Ct. 2099 (1982).

OPPOSITION TO SANTOS' AMENDED MOTION FOR APPOINTMENT AS LEAD COUNSEL
Page 11

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006   Document 428-3   Filed 06/22/2007   Page 14 of 45

1  as a factor justifying denial of class certification." *Armstrong v. Chicago Park Dist.*, 117 F.R.D.

2  623, 633 (N.D. Ill. 1987).

3      Finally, contrary to express statutory requirements, Phillips named the wrong party as a

4  defendant. Phillips named the Governor, the Attorney General, and two administrative

5  department heads, when the law expressly requires only "the government" can be named as a

6  defendant in tax refund actions. 26 U.S.C. § 7422(f)(1) (Internal Revenue Code), made

7  applicable by 48 U.S.C. §§ 1421i(a) & (h)(2) (Organic Act of Guam). Under normal

8  circumstances, this would be considered a hyper-technical criticism, but in this case, the error

9  arguably contributed to the resulting battle between the Governor and the Attorney General.

10      2.    The Procedural Irregularities In The *Santos I* Settlement Demonstrate Phillips Is
            Inadequate Counsel

11

12      More troubling than the deficiencies in his complaint is the poor judgment and disregard

    for class action settlement procedure Phillips exhibited in securing court approval for *Santos I*.

13  Courts have long recognized these procedures are important.

14

15      a.    *Phillips' Conduct Regarding Fee Negotiations Were Improper.*

16      First, and most egregious, the available record indicates Phillips negotiated his fee at the

    same time he negotiated the settlement for the class. The agreement executed by all parties on

17  June 14, 2004 and filed with the Court for preliminary approval contained a provision that

18  Phillips would receive 10% of the settlement fund. CV04-00006, Docket No. 14; see *Van de*

19  *veld Decl.* at Exhibit C. On June 17, 2004, apparently during the parties' meeting with the

20  Magistrate Judge, that provision was crossed over and replaced with the more proper wording

21  that the Court would determine appropriate fees. *Id.* Its presence in the original document and

22  the timing of its correction strongly suggest a prior agreement regarding fees had been reached

23  by the parties.

24

OPPOSITION TO SANTOS' AMENDED        VAN DE VELD SHIMIZU CANTO & FISHER    TOUSLEY BRAIN STEPHENS PLLC
MOTION FOR APPOINTMENT AS            East Marine Corps Drive               1700 Seventh Avenue, Suite 2200
LEAD COUNSEL                         Hagatna, Guam 96910                   Seattle, Washington 98101-1332
                                     Tel. 671.472.1131                     Tel. 206.682.5600
25                                   Fax 671.472.2886                      Fax 206.682.2992

Page 12

Case 1:04-cv-00006    Document 428-3    Filed 06/22/2007    Page 15 of 45

The Ninth Circuit has explained the problem with simultaneously negotiating attorney's fees with settlement terms.

> We cannot indiscriminately assume, without more, that the amount of fees have no influence on the ultimate settlement obtained for the class when, along with the substantive remedy issues, it is an active element of negotiation.

*Mendoza v. Tucson School Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980), citing *Prandini v. National Tea Co.*, 557 F.2d 1015, 1021 (3d Cir. 1977). *See also* H. Newberg & A. Conte, *Newberg on Class Actions* (4th ed. 2002) Newburg, § 15.31 at 108 (noting that where counsel has engaged in such conduct "the court would have the almost impossible task of deciding whether the class settlement was fair and adequate or whether it should have been increased by some or all of the funds allocated by the attorneys for fees."); *Knisley v. Network Associates, Inc.* 312 F.3d 1123, 1125 (9th Cir. 2002.) ("One risk of class action settlements is that class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee.").

The *Mendoza* Court specifically noted that even if actual impropriety is not found, the Court has a "duty to see to it that the administration of justice has the appearance of propriety as well as being so in fact." Mendoza, 623 F.2d at 1353, n.20. Thus the Court has directed:

> The presence of simultaneously negotiated attorneys' fees should cause the court to examine with special scrutiny the benefits negotiated for the class. It would rarely be an abuse of discretion for a trial court to reject a settlement proposal where such combined negotiation took place.

*Id.* at 1353. Phillips' failure to secure a settlement for the class before he worried about his fees demonstrates he is inadequate counsel for this class.

Further, Phillips has never provided the Court with any of the indicia of reliability that might overcome the presumption of impropriety caused by his conduct. As the Attorney General

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL

Page 13

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue; Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 428-3    Filed 06/22/2007    Page 16 of 45

informed the Governor, "there is no written documentation regarding the history of the

negotiations leading up to [Santos I]." *Gov's Opp. To Settlement*, CV04-00006, Docket No. 102,

at p. 4. In addition, Phillips never provided the Court the information it needs to "examine with

special scrutiny the benefits negotiated for the class" in any of the three settlements he has

presented to this Court. The Manual expressly notes:

> Where settlement is proposed early in the litigation . . . consider
> asking counsel to provide complete and detailed information abut
> the factors that indicate the value of the settlement. Such factors
> include:
>
> -likelihood of success at trial;
>
> -likelihood of class certification;
>
> -status of competing or overlapping actions;
>
> -claimants damages and value of claims;
>
> -total present value of monetary and non-monetary terms;
>
> -attorneys fees;
>
> -cost of litigation; and
>
> -defendant's ability to pay.

Manual § 21.631 at 413.

Phillips claims he conducted research on these claims and the government's ability to

pay the EIC but he has yet to even identify for the Court the full value of the class' EITC claims

inclusive of interest. He has presented no analysis of what the government's actual outlay would

be after the government accounts for all the offsets it has preserved in the settlement. He has

simply accepted the government's representation that this is all it will pay.

Phillips' failure to provide any specific evidence as to the factors related to the

reasonableness and adequacy of *Santos I, II* or *III*, especially in light of his inappropriate conduct

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL
Page 14

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 428-3    Filed 06/22/2007    Page 17 of 45

1  has produced a suspect settlement. See *In re General Motors*, 594 F.2d at 128 (noting vigorous

2  representation is absent where counsel is ill informed about the value of the claims he is

3  surrendering). In providing no such evidence he has demonstrated his inadequacy to serve as

4  lead counsel.

5      Other conduct regarding the fee award in Santos I further demonstrates Phillips is

6  indifferent to or completely unaware of the duties he owes the class. He inappropriately sought

7  and obtained approval of his proposed attorney fees without ever submitting a proper motion as

8  required by FRCP 23(h)(1). Thus, the class would have been deprived of any ability to scrutinize

9  the reasonableness of the fee. Phillips also caused the first notice of the proposed settlement to

10  include a statement that his six million dollar fee award had already been approved by the Court.

11  Even after he acknowledged the Court would have to asses the reasonableness of fees at a final

12  fairness hearing, he still sought to give his fee request an imprimatur of reasonableness by

13  proposing a notice that said the Court had "preliminarily" approved his fee. Phillips' complete

14  failure to follow procedures designed to mitigate the appearance of and actual potential for abuse

15  in the class action context (much less one involving precious government funds) makes him

16  unsuitable to serve as class counsel.

17          b.      *Conduct unrelated to fees also indicates Phillips is not likely to*
                    *adequately protect the interest of this class.*

18

19      In the *Santos I* notice, Phillips did not even identify himself and instruct class members to

20  contact him with their questions regarding the proposed settlement. Instead he delegated to the

21  defendant his duty to inform and advise the class he claims to represent. See Manual at § 21.641

22  at 416 ("Counsel must be available to answer questions from class members in the interval

23  between notice of the settlement and settlement hearing.")

24

25  OPPOSITION TO SANTOS' AMENDED
    MOTION FOR APPOINTMENT AS
    LEAD COUNSEL

    Page 15

    VAN DE VELD SHIMIZU CANTO & FISHER
    East Marine Corps Drive
    Hagatna, Guam 96910
    Tel. 671.472.1131
    Fax 671.472.2886

    TOUSLEY BRAIN STEPHENS PLLC
    1700 Seventh Avenue, Suite 2200
    Seattle, Washington 98101-1332
    Tel. 206.682.5600
    Fax 206.682.2992

    Case 1:04-cv-00006    Document 428-3    Filed 06/22/2007    Page 18 of 45

1    Further, Phillips' acquiescence to published notice versus individual notice belies any

2    vigor exercised on behalf of the class.  Because class members will be bound by the judgment in

3    a class action, notice of impending settlement is crucial.  The Supreme Court held that,

> in any class action maintained under subdivision (b)(3), each class
> member shall be advised that he has the right to exclude himself
> from the action on request or to enter an appearance through
> counsel, and further that the judgment, whether favorable or not,
> will bind all class members not requesting exclusion. To this end,
> the court is required to direct to class members 'the best notice
> practicable under the circumstances including individual notice to
> all members who can be identified through reasonable effort. We
> think the import of this language is unmistakable. Individual notice
> must be sent to all class members whose names and addresses may
> be ascertained through reasonable effort.

10   *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173, 94 S. Ct. 2140, 2150 (1974).  Phillips

11   apparently does not understand that class counsel, not defendant, has and will continue to have a

12   duty to ensure adequate informative interaction with the class throughout the settlement approval

13   process and through claims administration as well.

14       Phillips also failed to secure adequate treatment for tax year 2000 claims in the current

15   proposed settlement.  As noted in the *Simpao* Plaintiff's opposition to this settlement, *Santos III*

16   treats year 2000 claims as if they are potentially time-barred when they are not.  Other courts

17   have held mishandling of a limitations period reflects on the counsel's competence and diligence

18   in pursuing class claims. *Armstrong v. Chicago Park Dist.*, 117 F.R.D. 623, 633 (N.D. Ill. 1987).

19   This Court should hold the same.

20       Phillips' failure to include all class counsel in settlement negotiations also demonstrates

21   his inadequacy.  See Manual at §21.271 at 345.  The two class actions filed after Santos,

22   identified ways to strengthen the class' claims, yet Phillips refused to work cooperatively with

23

24

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL

Page 16

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 428-3    Filed 06/22/2007    Page 19 of 45

1  other class counsel, specifically rejecting the Simpao counsel's request to participate in the

2  negotiations that led to Santos II.  As courts note:

> . . . settlement negotiations with less than all class counsel
> weakens the class' tactical position even if the attorney who enters
> into the negotiations attempts to represent the class' interest
> vigorously.

*In re General Motors*, 594 F.2d at 1125.  Phillips repeated the mistake even after this Court made

known its desire for a global settlement.

        In addition to not working with other class counsel, Philips also did nothing to protect the

class' claims from potentially adverse, if not fatal, rulings in the competing class actions.  He

never moved to stay the competing actions in favor of *Santos* nor did he move to consolidate the

cases and seek to have himself appointed lead counsel.  The latter failure is especially glaring

given he had the advantage of having been first to file and had what he claimed was a fair and

reasonable settlement.  Instead, Phillips sat idly by while the government filed a motion to

dismiss in *Simpao*.  Notably, if the government had succeeded in dismissing *Simpao* based on

lack of jurisdiction, *Santos I* would have been invalidated as well.  The Court would have had no

jurisdiction to approve the settlement.  *Cf.*, *Order*, J. Lew, Mar. 17, 2005, *Simpao v. Guam*,

CV04-00049, Docket No. 53 (denying Governor's motion to dismiss for lack of jurisdiction); *see*

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 at 701,

102 S. Ct. 2099 (1982) (parties may not confer subject matter jurisdiction upon court via

settlement agreement where it does not otherwise exist).  Phillips also took no action when

*Simpao* moved for summary judgment even though his client's claims would have been damaged

if *Simpao*'s motion had failed.  Notably, Phillips and respondents now expressly attempt to rely

on holdings obtained in *Simpao* to claim this Court has jurisdiction over their flawed settlements.

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL

Page 17

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006     Document 428-3     Filed 06/22/2007     Page 20 of 45

3. **The Apparent Political Manipulation Associated with the *Santos I* Settlement was not in the Best Interest of the Class**

Based on the circumstances of the *Santos I* settlement, the Court can reasonably infer, and must at least consider the possibility, that Phillips used this class action as a political tool, putting the interest of certain political office holders ahead of the interest of the class. It does not take the benefit of 20/20 hindsight to know that entering a stipulated settlement creating a $60 million dollar liability for a cash-poor government without the knowledge or consent of the Governor is fraught with peril. Yet Phillips, along with the Lieutenant Governor and the Attorney General, hastily entered into and publicly announced a settlement in this matter while the Governor was off-island. Instead of using the strength of the EITC claims to ensure a secure settlement, he chose to negotiate with political opponents of the Governor, one of which was his client. Their collective actions placed the Governor in an untenable position politically. He either had to oppose the settlement publicly or allow his political opponents to (in his view) hamstring him financially. That tactic directly resulted in the political battle between the Governor and the Attorney General that has delayed relief for the class for over two years. It is difficult to believe Phillips was so insensitive to these political considerations when, by his own admission, he was thrice elected chair of the local Democratic party and is actively involved in Guam politics. See *Amended Motion Of Petitioner Julie Babauta Santos For Appointment Of Lead Class Counsel*, CV04-00006, Docket No. 348. Even if Phillips believed he had a better chance of securing a settlement from these political players than the Governor, the attempt to pull an end run around the Governor at best exhibited a profound lack of judgment. Had Phillips included the Governor from the outset, the EITC class might well be receiving their refunds today.

OPPOSITION TO SANTOS' AMENDED MOTION FOR APPOINTMENT AS LEAD COUNSEL
Page 18

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 428-3    Filed 06/22/2007    Page 21 of 45

1    Phillips' imprudent tactics resulted in two years of delay in the refund of money to the

2    claimants while a completely unnecessary internecine struggle in the Government of Guam

3    unfolded, none of which would have happened if Phillips had included the Governor in his initial

4    settlement discussions.  Had Phillips taken that course, the EITC class might well be receiving

5    their refunds today.

6        Phillips' long series of procedural irregularities demonstrate he cannot be relied on to

7    adequately represent the class.  *See Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346,

8    1352 (9th Cir. 1984) (a trial court rightly considers the competency of counsel when determining

9    class certification) *and Fendler v. Westgate-California Corp.*, 527 F.2d 1168, 1170 (9th Cir.

10   1975) (one of the criteria for adequacy of representation would appear to be the zeal and

11   competence of the counsel and party who wish to prosecute the action.).

12        4.    Phillips' Prior Representation Fails To Support His Ability To Adequately
              Represent The Class And Demonstrates Phillips Has A Conflict Of Interest
13

              a.    *Phillips' Class Action Experience.*
14

15       Mr. Phillips has cited his involvement in *Rios v. Ada et al.*, Superior Court of Guam,

     SP0206-93, the only cognizable class action that Mr. Phillips has been counsel for, though Mr.
16
     Phillips appears to be the only plaintiffs' counsel in the action.[13] In a case which has been slowly
17
     litigated since 1993, Mr. Phillips seeks to recover a judgment for unpaid cost of living
18
     adjustments to retirees from the government of Guam, in an amount seeking over a hundred
19
     million dollars.  Mr. Phillips let this class action languish for over 10 years now without the class
20
     receiving any monetary relief from the government defendant, even failing to do as little as
21
     change his individually named defendant Governors when they left office.  Recently, Mr.
22
     Phillips has seemingly resurrected this case from inactivity and is pursuing over a hundred
23

24   [13] See *Van de Veld Decl.* at ¶ 4 (j).

25   OPPOSITION TO SANTOS' AMENDED       VAN DE VELD SHIMIZU CANTO & FISHER    TOUSLEY BRAIN STEPHENS PLLC
     MOTION FOR APPOINTMENT AS          East Marine Corps Drive              1700 Seventh Avenue, Suite 2200
     LEAD COUNSEL                       Hagatna, Guam 96910                  Seattle, Washington 98101-1332
     Page 19                            Tel. 671.472.1131                    Tel. 206.682.5600
                                        Fax 671.472.2886                     Fax 206.682.2992

     Case 1:04-cv-00006   Document 428-3   Filed 06/22/2007   Page 22 of 45

1 million dollars from the same government in the EITC suit, which in both cases has claimed that

2 either judgment rendered against the government would have catastrophic effects because the

3 government claims it lacks the ability to pay either, a fact invariably conflicting with and

4 impacting upon Mr. Phillips' resolve in his settlement negotiations over the amount of EITC

5 refunds.

6                    b.        *Other Cases Phillips Touts as Experience Deserving of Lead Counsel.*

7          Mr. Phillips lists several cases in his amended declaration in support of lead counsel that

8 he holds out as examples of his experience and prowess which he believes qualify him for the

9 role as the EITC class lead counsel. A review of the Superior Court of Guam court Dockets of

10 nearly all these cases reveals that Phillips' reliance on any record of past accomplishment in these

11 cases is embellished and altogether unfounded. See *Van de veld Decl.* at ¶ 4 (a) through (i).

12 Many of the following cases cited by Phillips have languished without action for several years,

13 and some have resulted in dismissals of Phillips' claims, hardly evidencing the vigor and

14 diligence desired of lead counsel in this EITC tax refund class action. *Id.*

15

16                                    **IV. CONCLUSION**

17          For all the reasons stated herein this Court should deny Phillips' motion to be appointed

18 lead counsel. Should the Court desire to make a lead counsel appointment at this time, it should

19 order such briefing. Alternatively, if the Court believes the record before it is adequate, it should

20 appoint *Simpao* Plaintiffs' counsel as lead counsel for these consolidated class actions.

21

22

23

24

25 OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL
Page 20

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 428-3    Filed 06/22/2007    Page 23 of 45

Respectfully submitted this 25 day of August , 2006.

VAN DE VELD SHIMIZU CANTO & FISHER

By: _____
Curtis C. Van de veld

TOUSLEY BRAIN STEPHENS PLLC
Kim D. Stephens, P.S., *Pro Hac Vice*
Nancy A. Pacharzina, *Pro Hac Vice*

Attorneys for Plaintiffs Simpao, Naputi & Cruz

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 428-3    Filed 06/22/2007    Page 24 of 45

# TABLE OF CASES AND AUTHORITIES

## CASES

Armstrong v. Chicago Park District,
   117 F.R.D. 623 (N.D. Ill. 1987).     .    .    .    .    .    10, 11-12, 16

Eisen v. Carlisle & Jacquelin,
   417 U.S. 156, 94 S.Ct. 2140 (1974)    .    .    .    .    .    16

Fendler v. Westgate-California Corp.,
   527 F.2d 1168 (9th Cir. 1975)    .    .    .    .    .    .    19

In re General Motors Corp. Engine Interchange Litigation,
   594 F.2d 1106 (7th Cir.1979)    .    .    .    .    10, 15, 17

In re Request of Governor Felix P. Camacho Relative to the
Interpretation and Application of Sections 6 and 9 of the
Organic Act of Guam,
   2004 Guam 10 (Sup. Ct. Guam 2004)    .    .    .    2

In re Request of I Mina' Bente Sing'ko Na Liheslaturan Guahan
Relative to the Application of the Earned Income Tax Credit
Program to Guam Taxpayers,
   2001 Guam 3 (S.Ct. Guam 2001)    .    .    .    2

Insurance Corp. of Ireland, Ltd. v. Compagnie des
Bauxites de Guinee,
   456 U.S. 694, 102 S. Ct. 2099 (1982)    .    .    .    11, 17

Key v Gillette,
   782 F.2d 5 (1st Cir. 1986)    .    .    .    .    .    .    9

Knisley v. Network Associates, Inc.
   312 F.3d 1123 (9th Cir. 2002.)    .    .    .    .    .    13

Laughlin v. Kmart Corp.,
   50 F.3d 871 (10th Cir. 1995)    .    .    .    .    .    11

Mendoza v. Tucson School Dist. No. 1,
   623 F.2d 1338 (9th Cir. 1980)    .    .    .    .    .    13

Prandini v. National Tea Co.,
   557 F.2d 1015 (3d Cir. 1977)    .    .    .    .    .    13

<u>Wrighten v. Metropolitan Hospitals, Inc.</u>,   .   .   .   .   .   .   .   19
   726 F.2d 1346 (9th Cir. 1984)

## **STATUTES AND RULES**

26 U.S.C. § 7422(f)(1)   .   .   .   .   .   .   .   12

48 U.S.C. § 1421i(a)   .   .   .   .   .   .   .   12

48 U.S.C. § 1421i(h)(2)   .   .   .   .   .   .   .   12

Fed. R. Civ. P. § 23(g)(1)(b)   .   .   .   .   .   .   .   9

Fed. R. Civ. P. § 23(g)(1)(c)(i)   .   .   .   .   .   .   .   11

## **OTHER AUTHORITIES**

Herr, David F., *Manual for Complex Litigation*   .   .   .   .   .   9, 16
   (4th ed. 2004), § 21.271

Herr, David F., *Manual for Complex Litigation*   .   .   .   .   .   1
   (4th ed. 2004), § 21.273

Herr, David F., *Manual for Complex Litigation*   .   .   .   .   .   14
   (4th ed. 2004), § 21.631

Herr, David F., *Manual for Complex Litigation*   .   .   .   .   .   10
   (4th ed. 2004), § 21.632

Herr, David F., *Manual for Complex Litigation*   .   .   .   .   .   15
   (4th ed. 2004), § 21.641

Newberg, H. & Conte, A., *Newberg on Class Actions*   .   .   .   .   13
   (4th ed. 2002), § 15.31

Order, J. Lew, District Court of Guam Civil   .   .   .   .   .   7, 11, 17
   Case No. 04-00049, Mar. 17, 2005

Order, J. Martinez, District Court of Guam Civil
   Case No. 04-00049, June 15, 2005   .   .   .   .   .   8

Case 1:04-cv-00006     Document 428-3     Filed 06/22/2007     Page 26 of 45

# CERTIFICATE OF SERVICE

I, CURTIS C. VAN DE VELD, certify that I caused a copy of the foregoing document here filed to be served on the following individuals or entities on August 25, 2006, via hand delivery at the following addresses:

Counsel for Petitioner
   Charmaine Torres
Peter C. Perez, Esq.
Lujan, Aguigui & Perez, LLP
Pacific News Bldg., Ste. 300
238 Archbishop Flores St.
Hagatna, Guam 96910

Counsel for Respondent
   Felix P. Camacho
Daniel M. Benjamin, Esq.
Calvo & Clark, LLP
655 S. Marine Corps Drive, Ste. 202
Tamuning, Guam 96913

Counsel for Respondent
   Felix P. Camacho
Shannon Taitano, Esq.
Office of the Governor of Guam
Governor's Complex
East Marine Corps Drive
Adelup, Guam 96910

Counsel for Respondents
   Artemio Ilagan and Lourdes Perez
Rawlen M.T. Mantanona, Esq.
Cabot Mantanona LLP
BankPacific Building, 2nd Floor
825 South Marine Corps Drive
Tamuning, Guam 96913

Counsel for Petitioner
   Julie Babauta Santos
Michael F. Phillips, Esq.
Phillips & Bordallo, P.C.
410 West O'Brien Drive
Hagatna, Guam 96910

Respectfully submitted this _25 August 2006._

VAN DE VELD SHIMIZU CANTO & FISHER
TOUSLEY BRAIN STEPHENS PLLC

Curtis C. Van de veld
Attorneys for Plaintiffs

# EXHIBIT F

## DISTRICT OF GUAM

### TERRITORY OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, *et al.*, | Civil Case No. 04-00006 |
| Petitioners, | |
| -v- | |
| FELIX P. CAMACHO, *et al.*, | |
| Respondents. | |
| CHARMAINE R. TORRES, *et al.*, | |
| Plaintiffs, | Civil Case No. 04-00038 |
| -v- | |
| GOVERNMENT OF GUAM, *et al.*, | |
| Defendants. | |
| MARY GRACE SIMPAO, *et al.*, | |
| Plaintiffs, | Civil Case No. 04-00049 |
| -v- | |
| GOVERNMENT OF GUAM, | |
| Defendant. | |
| -v- | |
| FELIX P. CAMACHO, Governor of Guam, | |
| Intervenor-Defendant. | |

## DECLARATION OF GINA M. INTREPIDO ON ADEQUACY OF SETTLEMENT NOTICE

1. My name is Gina M. Intrepido. I have personal knowledge of the matters set forth herein, and I am competent to testify regarding these matters at a trial or hearing.

## INTRODUCTION

2. I am the Vice President and Media Director of Hilsoft Notifications; a company located near Philadelphia, in Souderton, Pennsylvania, that specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans. I have worked on many of the most significant class action lawsuits in the United States and Canada involving all aspects of notice dissemination.

## OVERVIEW

3. I have been asked by Class members Mary Grace Simpao and Janice Cruz to provide an opinion as to whether the class notice provided for the Santos-Torres settlement represents the best practicable notice under the circumstances and meets the standards widely accepted as necessary to ensure Class members' due process rights are met.

4. To form my opinion I reviewed the following documents: (1) the Notice of Submission of Amended Class Action Settlement Agreement filed January 8, 2007 (the "Settlement Agreement"), including the "Notice Program," the "Class Notice" attached thereto as Exhibit C, and the separate "Cover Letter" referring to the consequences of depositing or not depositing the check attached thereto as Exhibit D; (2) Ex Parte Request

for Approval of Additional Forms filed March 8, 1007 and attachments; and (3) the Joint Motion for Final Approval of the Class Action Settlement Agreement filed on June 8, 2007. Additionally, I reviewed related background materials that I regularly consult in the course of my work.

5. In my opinion, the Notice Program at issue was not the best practicable, and was not reasonably calculated to actually inform those affected by the Settlement. The Notice Program was defective and insufficient to satisfy Class members' due process rights. It suffered from a myriad of problems in a) how it was disseminated; b) the information the Class Notice contained (or did not contain); and c) how the Class Notice was designed. It did not incorporate common practices utilized in the legal notification field—practices that apply not only to worldwide or national class actions, but to all class actions big or small.

6. This declaration, following a summary of the credentials that allow me to provide the opinions expressed in this declaration, will provide detailed observations that support my conclusions.

## EXPERIENCE RELEVANT TO THIS CASE

7. Hilsoft Notifications' c.v., attached as **Exhibit 1**, identifies many of our more than 220 major cases, in the course of which our notices have appeared in more than 209 countries and 53 languages. It also contains numerous judicial comments citing our

expertise, as well as articles and publications that I and other experts on our staff have published on the subject of the adequacy and design of legal notice efforts.

8.      We have been recognized and appointed by courts in many of the largest and most significant cases in history, including *In re Holocaust Victims Assets Litig.* (the Swiss Banks litigation affecting Holocaust survivors and their heirs around the world), No. CV-96-4849, E.D. N.Y.; *In re Domestic Air Transp. Antitrust Litig.* (involving 50 million air travelers in the U.S.), MDL 861, N.D. Ga.; *Avery v. State Farm* (the aftermarket auto parts litigation affecting 30 million policyholders), No. 97-L-114, Ill. Cir. Ct., Williamson Co.; *Cox v. Shell Oil* (the $950 million settlement of the polybutylene pipe litigation), No. 18,844, Tenn. Ch.; *In re Dow Corning Corp.* (the global "Breast Implant" bankruptcy affecting millions of women in many countries), No. 95-20512-11-AJS, E.D. Mich.; *In re Synthroid Marketing Litig.* (involving nine million women in the U.S. and abroad), MDL 1182, N.D. Ill.; *Thompson v. Metropolitan Life Ins. Co.* (the race-based pricing litigation affecting 25 million policyholders and heirs since 1901), No. 00 Civ. 5071 (HB), S.D.N.Y.; *In re Royal Ahold Securities and ERISA Litig.* (the $1.1 billion settlement of the first globally certified and notified shareholder class), MDL 1539, D. Md.; *In re Residential Schools Class Action Litig.* (the approximately $4 billion settlement of numerous class actions in Canada involving century-old abuses of Aboriginal people), No. 00-cv-192059, Ont. S.C.J.; and many others.

9.     More specifically, our qualifications include leadership in both the method and form of notice, for example:

    a)     We brought to courts the methodology they now embrace to help them determine adequacy of notice: calculating, where possible, the percentage of class members who will be reached with notice through audience coverage analyses, *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534 (N.D. Ga. 1992), in order to objectively determine the adequacy of proposed notice plans; and

    b)     We were asked to collaborate with the Federal Judicial Center (the "FJC") to write and design the illustrative, "model" forms of notices—designed to be noticed—to embody the satisfaction of the new plain language requirements of Federal Rule of Civil Procedure 23(c)(2). To assist judges and attorneys, in state as well as federal courts, the FJC has posted the notices we created, with attribution, at www.fjc.gov.[1] Judge Lee H. Rosenthal, now Chair of the Advisory Committee on Civil Rules of the Judicial Conference of the United States, stated to Hilsoft Notification President, Todd B. Hilsee, at a January 22, 2002 public hearing in Washington, D.C. on the proposed changes to Rule 23:

> *I want to tell you how much we collectively appreciate your working with the Federal Judicial Center to improve the quality of the model notices that they're developing. That's a tremendous contribution and we appreciate that very much . . . You raised three points that are criteria for good noticing, and I was interested in your thoughts on how the rule itself that we've proposed could better support the*

---

[1] Mr. Hilsee served as the only notice expert, among other legal and academic commentators, who was invited to testify before the Advisory Committee on Civil Rules of the Judicial Conference of the United States during the comment period on the then proposed amendments to Federal Rule of Civil Procedure 23, calling for "concise, clear, 'plain language' notices."

> *creation of those or the insistence on those kinds of notices*
> . . . .

10.    Our President, Todd B. Hilsee, was the first notice expert recognized in

published decisions in the United States, and the first notice expert recognized in Canada:

   a)    Judge Marvin Shoob stated in his decision in *Domestic Air*, 141

F.R.D. 534, 548 (N.D. Ga. 1992):

> *The Court finds Mr. Hilsee's testimony to be credible. Mr.
> Hilsee's experience is in the advertising industry. It is his
> job to determine the best way to reach the most people.
> Mr. Hilsee answered all questions in a forthright and
> clear manner. Mr. Hilsee performed additional research
> prior to the evidentiary hearing in response to certain
> questions that were put to him by defendants at his
> deposition . . . The Court believes that Mr. Hilsee further
> enhanced his credibility when he deferred responding to
> the defendant's deposition questions at a time when he did
> not have the responsive data available and instead utilized
> the research facilities normally used in his industry to
> provide the requested information.*

   b)    Mr. Justice Cumming stated on September 13, 2000 in *Wilson v.*

*Servier* (the national fen/phen litigation"), No. 98-CV-158832, Ont. S.C.J:

> *[A] class-notification expert, Mr. Todd Hilsee, to provide
> advice and to design an appropriate class action notice
> plan for this proceeding. Mr. Hilsee's credentials and
> expertise are impressive. The defendants accepted him as
> an expert witness. Mr. Hilsee provided evidence through an
> extensive report by way of affidavit, upon which he had
> been cross-examined. His report meets the criteria for
> admissibility as expert evidence. R. v. Lavallee, [1990] 1
> S.C.R. 852.*

11.    Our staff has written numerous articles, including law review articles, on

notice and due process, teaching that effective notice and due process depend upon clear

communication with people affected—desiring to actually inform them—not just going through the motions. See, for example, Todd B. Hilsee, Shannon R. Wheatman & Gina M. Intrepido, *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice Is More Than Just Plain Language: A Desire to Actually Inform*, 18 GEO. J. LEGAL ETHICS 1359 (Fall 2005); and Todd B. Hilsee, Gina M. Intrepido, & Shannon R. Wheatman, Hurricanes, *Mobility and Due Process. The "Desire to Inform" Requirement for Effective Class Notice is Highlighted by Katrina*, 80 TULANE L. REV. 1771 (June 2006).

12.     Mr. Hilsee, who shares the opinions in this declaration, has been recognized by courts for his testimony as to which method of notification is appropriate for a given case, and has provided testimony on numerous occasions on whether a certain method of notice represents the best notice practicable under the circumstances. No court has ever rejected his opinions or found his testimony to be unreliable or incredible. For example:

    a)     Judge Eldon E. Fallon stated on January 30, 2007 in *Turner v. Murphy Oil, USA, Inc.* (2007 WL 283431, at *6, E.D. La.), involving environmental damage and remediation of property damage after Hurricane Katrina:

> *Mr. Hilsee is a highly regarded expert in class action notice who has extensive experience designing and executing notice programs that have been approved by courts across the country. Furthermore, he has handled notice plans in class action cases affected by Hurricanes Katrina, Rita, and Wilma, see In re High Sulfur Content Gasoline Products Liability Litigation, MDL 1632, p. 15-*

> *16 (E.D. La. Sept. 6, 2006) (Findings of Fact and Conclusions of Law in Support of Final Approval of Class Settlement), and has recently published an article on this very subject, see Todd B. Hilsee, Gina M. Intrepido, & Shannon R. Wheatman, Hurricanes, Mobility, and Due Process: The "Desire to Inform" Requirement for Effective Class Notice is Highlighted by Katrina, 80 Tul. L. Rev. 1771 (2006) (detailing obstacles and solutions to providing effective notice after Hurricane Katrina).*

b)    Judge Fred Biery stated on September 30, 2003 in *McManus v.*

*Fleetwood Enter., Inc.*, (No. SA-99-CA-464-FB, W.D. Tex.):

> *Based upon the uncontroverted showing Class Counsel have submitted to the Court, the Court finds that the settling parties undertook a thorough notice campaign designed by Todd Hilsee of Hilsoft Notifications, a nationally-recognized expert in this specialized field . . . . The Court finds and concludes that the Notice Program as designed and implemented provided the best practicable notice to the members of the Class, and satisfied the requirements of due process.*

c)    Judge James T. Genovese stated on May 27, 2003 in *West v. G&H*

*Seed Co.*, (No. 99-C-4984-A, La. Jud. Dist. Ct. St. Landry Parish), involving

crawfish crop decimation from chemicals:

> *The court finds that, considering the testimony of Mr. Hilsee, the nature of this particular case, and the certifications that this court rendered in its original judgment which have been affirmed by the – for the most part, affirmed by the appellate courts, the court finds Mr. Hilsee to be quite knowledgeable in his field and certainly familiar with these types of cases . . . the notice has to be one that is practicable under the circumstances. The notice provided and prepared by Mr. Hilsee accomplishes that purpose . . . .*

13.    We have been appointed to serve the United States government, the

Canadian government, as well as numerous international commissions and non-

Case 1:04-cv-00006    Document 428-3    Filed 06/22/2007    Page 36 of 45

governmental organizations, to develop and implement effective notice programs, for example, the $10 billion Tobacco Transition Payment Program for the United States Department of Agriculture (the largest claims process in history); the German Slave Labor Fund outreach program for the International Organization for Migration; and the Nazi-era European insurance policy media program for former U.S. Secretary of State Lawrence S. Eagleburger's International Commission on Holocaust Era Insurance Claims (ICHEIC).

14.    Mr. Hilsee has spoken on class action notice at law schools, judges' roundtables, and national and state bar association seminars, institutes, and symposiums. His notice and due process educational materials have been utilized at Columbia Law School, New York University School of Law, Temple Law School, Cleveland-Marshall College of Law, and Tulane Law School.[2]

15.    Numerous other court opinions, and comments as to his testimony and opinions on the adequacy of notice, are included in the attached c.v.

16.    In forming my opinions I draw from other experience in the communications industry. Coming from one of New York's largest "Madison Avenue" advertising agency media departments, my experience includes planning and buying media, the field most relevant for designing notice programs that reach a class effectively.

---

[2] Prof. Arthur R. Miller, Bruce Bromley Professor of Law, Harvard Law School, stated in a letter addressed to Mr. Hilsee dated June 2, 2004: "I read your piece on *Mullane* with great interest and am delighted to learn the details. Indeed, I will probably incorporate some of it in my teaching next fall. I think your analysis is rock solid."

I also have years of advertising media planning, buying, and research experience with dozens of Hilsoft Notifications' cases in which I have worked directly with Todd Hilsee.

## ANALYSIS

17.    Based on the experience outlined above as well as in our c.v., I am qualified to opine on the adequacy of this class action Notice Program including the dissemination of notice and the design and content of the notice materials. The following outlines the deficiencies of the Notice Program.

## *DEFICIENT METHOD OF DISSEMINATION*

18.    The Notice Program did not provide the Court with the proper research and analysis to determine its effectiveness in reaching the Class, including address updating techniques, mobility statistics, and reach calculating methodologies.

19.    *The Notice Program made no attempt to update addresses prior to mailing.* It is my understanding that the Class Notice was simply mailed to the last known address of any individual who may have fallen within the earned income credit "EIC" Class at the last known address appearing on the Department of Revenue and Taxation's ("DRT") computerized records. It is also my understanding that these addresses were not updated prior to mailing, even though the DRT's database contained addresses dating back to the 1995-2004 Class period. As the mobility data below will demonstrate, no mailing list is totally accurate and simple steps could and should have been performed to ensure that the mailing was effective.

20.    Addresses could have been easily and inexpensively updated prior to mailing by using the National Change of Address ("NCOA")[3] database compiled by the United States Postal Service ("U.S.P.S.") from the change of address information it receives. Further, with such a manageable list other third-party lookup services such as ALLFND, maintained by LexisNexis, could have been utilized. ALLFND uses a variety of third-party sources to compare latest addresses for U.S. adults, and returns updated addresses for them. When social security numbers are available, as they were here, an address updating service should certainly be employed—if not at the offset, than at least on the mailings that were returned as undeliverable—to ensure an effective mailing effort. Such updating efforts are routine practice in class action notice, yet I found no indication that any such steps were taken prior to or after the initial mailing effort—a simple effort that would reduce the number of returns.

21.    It is my understanding that one possible reason behind not employing such standard address updating efforts such as the social security number look-up may have been based on concern over disclosing individual taxpayer information to any third party except as authorized by law. This concern need not be an issue in a case such as this because there is no need to disclose any tax information to a third party service such as ALLFND, but rather a social security number. ALLFND would not need nor require any additional information to perform their look-up service. In fact, they would not even need

---

[3] The NCOA database contains records of all permanent changes of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and known address.

to know that the social security look-up service is being performed for a class action involving tax information.

22.    ***The Notice Program failed to address mobility concerns.***    According to the U.S. Census Bureau, 29.7% of persons five years of age and over lived at a different house in Guam over the five year period of 1995 to 2000, and another 17.4% no longer lived in Guam, thereby indicating that nearly half (47.1%) of Guam's population moved to a different address in only a five year period.[4]    Considering the Class here dates back twelve years and the Class period covers nine years, it is probable that many Class members may no longer live at the last known address available on the DRT's database for the Class period.

23.    ***The Notice Program does not acknowledge the mobility among the lower income Class member demographic.***    U.S. Census Bureau data also indicates that people with incomes below poverty, all of whom would qualify as EIC Class members, were more likely to move (24%) than those above poverty (13%), further intensifying the need for address updating for this particular Class.[5]    Compounding this problem even further, individuals in Guam are nearly twice as likely to be below the poverty level versus individuals in the United States—23.0% versus 12.4%.

---

[4] *See* U.S. Census Bureau's *Population and Housing Profile: 2000 for Geography: Guam*, available online at www.census.gov/Press-Release/www/2002/guamstatelevel.pdf (last visited June 20, 2007).
[5] *See* U.S. Census Bureau's *Geographic Mobility: 2002 to 2003 Population Characteristics*, available online at www.census.gov/prod/2004pubs/p20-549.pdf (last visited June 20, 2007).

24.     *The Notice Program failed to acknowledge the military segment of the*

*Class.* The Notice Program failed to address the likelihood that the military segment of the Class may no longer be stationed in Guam, further supporting the need for an effective address updating effort. The U.S. military maintains jurisdiction over bases comprising approximately one quarter of the island's area. Although only 7.0%-10.9% of Guam's population consisted of the military and their dependents during the Class period of 1995-2004,[6] the military is a population that changes on a regular basis. According to the assistant secretary of defense, accompanied tours in Guam have recently (as of January 1, 2006) increased from 24 to 36 months, and unaccompanied tours increased from 15 to 24 months.[7]

25.     *The Notice Program knowingly failed to provide individual mailed notice*

*to all reasonably identifiable Class members.* The Notice Program mailing effort failed to include those tax filings not yet entered into the DRT's computer system even though these filings may have included Class members. It is not clear to me why a Class member should be penalized as a result of the DRT's inability to keep its database current. I believe every effort should have been made by the DRT to update its database before potentially binding these Class members by the settlement. The notice expert is guided by case law and statute to provide individual notice when reasonable and practicable. In my opinion, individual mailed notice to these individuals was both reasonable and practicable in this instance.

---

[6] *See* COMNAVMAR (as reported by Guam Department of Commerce and other sources), available online at www.spc.int/prism/country/gu/stats/Census/military.htm. (last visited June 20, 2007).
[7] See *Guam Tour Lengths,* available online at usmilitary.about.com/b/a139665.htm. (last visited June 20, 2007).

26.     ***The Notice Program failed to provide any measurable data on the recommended publications.***  It is standard policy for media experts to provide rationale for their media selection, yet the Notice Program did not provide any information on the reader demographics, circulation, audience, etc. of the two local newspapers that were utilized, nor any indication as to the reach that they may have achieved among the Class.

27.     ***The Notice Program failed to provide any details about the mailings.***  In addition to the lack of address updating techniques, the Notice Program did not provide the Court with any details about the mailing, that is, the actual number of mailings that would be sent, information on whether or not they believed that the mailing lists were comprehensive, the date on which mailings were to be distributed, the method for handling mailings returned as undeliverable, a sample or description of how the mailer would actually look, a sample or description of how the outside of the mailer would actually look in order to overcome the perception of junk mail and attract Class members' attention.  It is common practice for a notice program to provide the detailed components of a mailing effort prior to court approval and implementation.

28.     ***The Notice Program failed to provide reach among the Class.***  The Notice Program provided no calculations as to the percentage of potential Class members it intended to reach, even though it is routine practice in notice planning to do so.  Courts have recognized the merits of reach quantification—even when challenged—and leading notice professionals have adopted this model since our introduction of it to the class action

notice field 15 years ago. It is reasonable to undertake reach calculations and provide them to the Court, because advertising media professionals do this work as part of routine media planning, and because courts need, expect, and are regularly provided with this information in notice planning situations.

29. It is extremely important to provide courts with reach statistics, because a notice program can appear to provide effective notice when readily available statistics show that it is actually reaching a small percentage of the class. State and federal courts have embraced and cited notice programs reaching an overwhelming majority (75%-90% or more) of a given class. **Exhibit 2** provides favorable comments on the reach of our notice programs that we have received from numerous state and federal courts.

## *CONCERNS WITH NOTICE DESIGN*

30. Due process requires the notice expert to execute notice the way he would if he "desired to actually inform."[8] Therefore, a class action notice—if it is to reach the people it needs to reach—must be designed to be noticed, with key information readily available, and be easy to act upon.

31. This Class Notice, even if received by any substantial percentage of Class members, is unlikely to have been noticed or understood. The Class Notice does not in any way follow the model notices that we designed in collaboration with the FJC: it

---

[8] *Mullane v.Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950), "But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."

Case 1:04-cv-00006    Document 428-3    Filed 06/22/2007    Page 43 of 45

contains no callout or headline to capture attention; it is difficult to read with its lengthy, small text; it does not invite response; and in fact, it does not incorporate any design features that are standard practice in the legal notification field, for class actions big or small. A more brief "summary" notice should have been provided, as is common practice, especially considering the lower income, less educated Class demographis for this particular case. In my opinion, it is the notice expert's duty to design a notice that will aspire to capture the attention of potential Class members in a format that is simple to read and follow, so that they can clearly understand their rights and options. That was not done here.

32.    ***The Class Notice lacks a headline.***    The Class Notice lacks a true headline. Instead, it provides a case caption that does not even alert readers who may be potential Class members that they should read the Notice and why it is important. The use of the case caption as a headline, in my opinion, did not help gain the attention of readers who had no idea that such a lawsuit affected them in any way, and did not prompt interest in reading the Notice.

33.    A headline—an attention-getting lead-in, in a large, noticeable, and bold font—is a critical device on a notice of any type in order to attract the attention of the people the notice is designed to reach. The FJC as well as the advertising industry understand the importance of a headline.

a)    The FJC's *Manual for Complex Litigation* advises practitioners to take steps to capture the attention of class members:

> *Published notice should be designed to catch the attention of the class members to whom it applies. In many cases, a one-page summary of the salient points is useful, leaving fuller explanation for a separate document. Headlines and formatting should draw the reader's attention to key features of the notice. A short, informative blurb ("If you were exposed to ___, you may have a claim in a proposed class action settlement") on the outside of a mailing envelope serves a similar purpose.*[9]

b)      A headline must be used to alert the proper individuals that it affects them and why it is important to read. In fact, "[t]he headline is the most important element in most advertisements. It is the telegram which tells the reader whether to read the copy . . ."[10] Without a noticeable headline, your audience may not read the notice at all. You must "[g]et your message in the headline . . . . Research shows that four out of five readers do not get further than the headline.[11]

c)      The FJC's model notices use the same language on the back of the outside of the mailer as they do on their publication notice and individual notice to call to the attention of the intended recipient by letting the reader know why they should read the notice and why it is important. Attached as **Exhibit 3** are the state of the art modern notices that we helped draft with the FJC.

34.      *The capitalized text is difficult to read.*      If a Class member even came across this Class Notice in the mail or in one of the two newspapers, they would have been met by the case caption and nine lines of bold text in all caps. **HEADLINES AND LONG STRINGS OF TEXT SHOULD NOT BE WRITTEN IN ALL CAPITAL LETTERS BECAUSE IT MAKES READABILITY EXTREMELY DIFFICULT**

---

[9] MANUAL FOR COMPLEX LITIGATION, §21.31(4th ed. 2004).
[10] DAVID OGILVY, CONFESSIONS OF AN ADVERTISING MAN 104 (1976).
[11] KENNETH ROMAN & JANE MAAS, HOW TO ADVERTISE 32 (1976).

**AND COMPREHENSION LESS LIKELY**. Readers quickly tune out and turn away from such notices. Long sentences written in all capital letters should always be avoided.

35.    _**The fine print and wall to wall words are cumbersome to read.**_  Fine print notices containing wall to wall words, such as we have here, have a high probability of being ignored as a blur amongst a plethora of ads and/or mailed solicitations; therefore, the Class Notice was not reasonably certain to inform the Class, and instead was virtually certain not to inform them. The Class Notice was presented to the Court in a six-page format (8.5" x 11"). It was then reformatted to fit into a two-page spread in tabloid publications, measuring approximately 10.5" x 15". For reference, the size of the Class Notice as it would be printed in the *Marianas Variety* (we were unable to obtain an actual copy) is attached as **Exhibit 4**. In my opinion, this runs afoul of the guidance the Supreme Court provided when it rejected a "bad" publication notice more than 50 years ago—because the word count is way too high to fit into these notices properly.[12]  We were unable to obtain a copy of the Class Notice as it was mailed to Class members; therefore, we can only assume that it was mailed in the six-page (8.5" x 11") format that was submitted to the Court. With that in mind, the mailing itself was also in fine print that is cumbersome and undesirable to read.

---

[12] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950), "Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed. The chance of actual notice is further reduced when as here the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention."

36.    ***The mailer envelope did not capture attention.*** It is common practice for a notice program to include the outside of the mailer for courts to see and approve prior to implementation, especially because the outside of the mailing is just as critical as the headline of a publication notice, yet it is my understanding that one was not provided here and that the mailings were sent in a plain, unmarked envelope. Consumers are jaded by so many solicitations that are disguised as "official mail" that they have become distrustful of direct mail solicitations. As such, consumers cannot easily tell the difference between a marketing offer and an official announcement. I have attached, as **Exhibit 5**, just a few illustrations of this sort of "junk mail" that consumers regularly receive, and are likely to disregard or discard. One typical piece of mail is an envelope that reports: "Important Document Enclosed" which turns out to be a pitch from a credit card company. Another typical mailing is a plain brown envelope with official type that says "Rate Overpayment Notification," which is in fact a long distance telephone service offer. A "Final Notice" from Exxon is in fact a credit card offer. Numerous manila envelopes with government-style return address indicia including the standard "penalty for private use . . ." language turn out to be various solicitations.[13]

37.    The U.S.P.S. data confirms that these trends are having a deleterious effect on readership of mail, and very few people read all the mail they get which they perceive

---

[13] Todd Hilsee has testified on these issues many times and the problems here are of the sort that he dealt with in *Ting v. AT&T*. In that case, Judge Bernard Zimmerman stated the following, based on my testimony on the topic: "[f]rom the perspective of affecting a person's legal rights, the most effective communication is generally one that is direct and specific. In this case, that would have been to boldly place on the separate mailing envelope at least the message that a new contract was enclosed rather than the generic 'Important Information' notification." *Ting v. AT&T*, 182 F. Supp. 2d 902, 912-913 (N.D. Cal. 2002), *aff'd in part, rev'd in part on other grounds*, 319 F. 3d 1126 (9th Cir. 2003).

to be solicitations. In 2006, the percentage of recipients who do not usually read all of their advertising mail increased to 89%.[14] Research done on comprehension of class action notices found that only 2% of participants receiving a notice (written in legalistic language like the Class Notice here) would read the notice carefully, while 39% reported they would throw it away or file it.[15]

38. The FJC's model notices were deliberately designed to avoid the perception of a notice being a solicitation, by including a careful return address: "Notice Administrator for U.S. District Court." Research done by the FJC found that the Court's name in the return address would motivate people to open the envelope because the mailing would seem more legitimate.[16]

39. Research done by the FJC also found that a direct declaration of the envelope's content would entice people to read the contents.[17] The model notices we created for, and which were endorsed by, the FJC include appropriate call-outs on the outside of the mailer.[18] For example, the FJC's securities notice states on the front: "**Notice to those who bought XYZ Corp. stock in 1999**" and on the back: "**If you**

---

[14] United States Postal Service, Household Diary Study, at 40 (2006) available at www.usps.com/householddiary/_pdf/usps_fy2006_report_finall_all.pdf (last visited May 17, 2007).

[15] Shannon Wheatman, The Effects of Plain Language Drafting on Layperson's Comprehension of Class Action Notices (2001) (unpublished Ph.D. dissertation, University of Georgia) (on file with the University of Georgia Library).

[16] *See* Shannon Wheatman et al., *Class Action Study: Final Report to the Advisory Committee on Civil Rules*, Federal Judicial Center (2002).

[17] *See* Shannon Wheatman et al., *Class Action Study: Final Report to the Advisory Committee on Civil Rules*, Federal Judicial Center (2002).

[18] *See* FJC's website at www.fjc.gov to see the models, including the envelopes, and for more details on their research (click on "Class Action Notices Page" and go to the link to see more information in the "Overview of Methodology" section).

**bought XYZ Corp. stock in 1999, you could get a payment from a class action settlement."** Numerous courts have approved our notices with such call-outs in actual practice.

40. *__The layout of the Class Notice does not follow the FJC model notices.__*
The Class Notice does not follow the format of the FJC model notices. Instead, it is written in a legal style pleading format that would certainly not attract the attention of any lay person, especially the lower income, less educated EIC Class member demographic. It is visually unappealing and extremely lengthy and cumbersome to read. According to the FJC "converting the notice to plain language is not the only way to improve communications with class members . . . experience tells us that attorneys and judges can significantly improve class members' motivation to read and comprehend class action notices by changing the language, organizational structure, format, and presentation of the notice."[19] As mentioned earlier, it is common practice to provide Class members with a "summary" notice that highlights all of the critical information about Class members' rights and options, but this was not done here. The notice format provided in this situation, in my opinion, is completely unacceptable dating class action notices to the *Mullane* era.

41. *__Section breaks are not logical and are difficult to navigate.__* The Class Notice is lengthy and illogical in its layout. For instance, the claims process is not clearly

---

[19] *See* FJC's website at www.fjc.gov for more details on their research (click on "Class Action Notices Page" and go to the link to see more information in the "Overview of Methodology" section).

defined in one distinct section, but rather broken into various unnecessary subsections adding confusion for the reader. Additionally, key dates are not clearly identifiable within the different sections, instead the reader is redirected throughout the notice to locate the simple information they desire. A notice must be well organized with categories and sub-headings. Redundancy only makes readers tired, and prevents them from understanding, because many stop reading such a notice altogether. Main points should be summarized early.

42. ***Simple reference mechanisms are not provided.*** The Class Notice does not contain a simple reference regarding Class member rights and options (and the deadline to exercise them). A summary box that clearly outlines Class members' rights and options should have been provided and the deadlines to exercise them should have been highlighted. The Class Notice does not even contain a simple reference regarding who is included in the Class. An easy to read graphical flow chart that asked simple questions, and depending on a "yes" or "no" answer of the reader would prompt them to continue on to the next question or inform them that they are not a Class member would have provided assistance in determining Class membership, however this simple design feature was not employed here. In addition, the last page of the Class Notice contains a "Deadlines" section; however, the entire section is bold and difficult to read. A more effective design feature would have been to bold key dates where ever they are located in the notice and have a summary box of rights, options, and corresponding dates. It is standard practice for notices to include simple summary mechanisms because it is visually

appealing and it allows class members to easily view and understand their rights and options.

## *DEFICIENCIES IN NOTICE CONTENT*

43. The Class Notice is not written in plain language nor is it designed to be readable and understandable. Many Class members would have a difficult if not impossible time understanding their rights and options in the lawsuit. From a communications perspective, the language used to inform Class members of their rights and options—both the words and the way in which they were written—is inadequate. The Class Notice does not follow accepted standards for effectively written notices.

44. ***The Class Notice does not provide a clear definition of confusing terms.***
Nowhere in the Class Notice are key terms that are not common to the average person defined. Any person who began to read the Class Notice would likely have been confused by the legalistic terminology. Class members do not naturally understand concepts in class actions. For example, the term "class members" will not be understood by most readers. The FJC found that "class" was a legal term that was often confused by participants in their study investigating comprehension of class action notices.[20] Other key terms that should be clearly defined include: "Exclusion," "Opt-out," "Objection," "Bound/Barred," "Plaintiff," "Respondent," and "Litigation."

---

[20] Shannon Wheatman, The Effects of Plain Language Drafting on Layperson's Comprehension of Class Action Notices (2001) (unpublished Ph.D. dissertation, University of Georgia) (on file with the University of Georgia Library).

45. ***The Class Notice uses confusing legalistic (legalese) words and phrases.***

The Class Notice uses complicated, legalistic words and phrases that Class members are
not likely to understand, such as:

       a)    Intervene
       b)    Disputed claims
       c)    Vacated
       d)    Waiving any right to interest
       e)    Rescission
       f)    Divided proportionately among each claimant
       g)    Related pending action
       h)    Application of Offsets
       i)    Asserting various affirmative defenses
       j)    Right to contend particular determinations
       k)    Compliance with the procedures and deadlines
       l)    Respondents admit liability
       m)    Commenced reserving money
       n)    Monitor compliance with the Settlement
       o)    Warranted
       p)    Sufficient
       q)    Reserved amount is insufficient
       r)    Utilize other funding sources
       s)    Pursuant to the provisions
       t)    Released and waived
       u)    Construed
       v)    Admission of liability or obligation
       w)    Set forth herein
       x)    Dismiss the Litigation with prejudice
       y)    Forever barred from prosecuting
       z)    Expressly and irrevocably release, waive, settle, and discharge
       aa)    Equitable
       bb)    Covenant not to sue
       cc)    Construed and preclude
       dd)    In compliance with the procedures set forth herein
       ee)    Seek to intervene in the Litigation

ff)    Rescind the previous settlement

gg)    Rendered void

It is important for the notice expert to remember that unlike lawyers, judges, and professionals engaged in the legal field, 83.2% of the 215 million adults in the United States have not graduated from college.[21] Similarly, 75.6% of Guam's adult 25+ population have less than an associated degree or higher.[22] In fact, about half of U.S. adults read at or below an eighth grade level.[23] Writing in plain language is of utmost importance, especially when communicating to a lower income, less educated class.


46.    ***Important points are lost due to confusing language.*** The Class Notice does not explain why no new claims are being accepted for tax years 1997 and 1998. Additionally, the exclusion date is confusing; Section VII. C. states that exclusion requests must be made by May 8, 2007; however, Section IV, E. 3. states that "you will retain the right to opt-out of the Settlement prior to final approval based upon the procedures set forth herein." The terms "exclusion" and "opt-out" are used interchangeably, but never defined as being different terms for the same action. The "Notice of Previous Settlement" discusses the Simpao case, but confuses readers by referring to it both as the "Simpao case" and "Other Litigation."

---

[21] United States Census Bureau, *Educational Attainment of the Population* (Mar. 2005).
[22] *See* U.S. Census Bureau's *2000 Population and Housing Profle: 2000 for Geography: Guam*, available online at www.census.gov/Press-Release/www/2002/guamstatelevel.pdf (last visited June 20, 2007).
[23] National Center for Education Statistics, *Adult Literacy Survey* (1992).

47. ***The Class Notice does not provide a toll free number or website address.***
It is common practice for a notice program to provide both a toll free number and website as a simple, convenient mechanism for class members to obtain additional information about the class action, if desired. An interactive home page on the worldwide web allows class members to obtain additional information and documents about the settlement, including the settlement agreement, answers to common questions, a claim form, notice in different languages (when necessary), and other information. It is common practice for the website address and toll free number to be prominently displayed in all advertising. However, in this case, no convenient response mechanisms were provided for Class members to use to obtain additional information.

### *OTHER NOTICE RELATED PROBLEMS*

48. ***The Notice Program did not address language concerns.*** According to the U.S. Census Bureau, only 38.3% of Guam's population of five years of age and older speak only English at home, with 61.7% speaking a language other than English.[24] Of those who speak another language at home, 22.2% speak Chamorro and 22.2% speak Philippine languages. It is common practice to have notices translated into other languages and made readily available to Class members by either calling a toll free phone number and requesting it or visiting a website with a link to translated notice documents.

---

[24] *See* U.S. Census Bureau's *2000 Population and Housing Profle: 2000 for Geography: Guam*, available online at www.census.gov/Press-Release/www/2002/guamstatelevel.pdf (last visited June 20, 2007).

DECLARATION OF GINA M. INTREPIDO ON ADEQUACY OF SETTLEMENT NOTICE
26

49.    *The Notice Program did not incorporate an informational release.*
Earned media activities (i.e., efforts to present a fair and neutral statement via an informational press release, not via paid advertising) provide an important role and help get the word out through credible news sources about this important matter. Earned media efforts may also generate electronic media coverage. It is common practice for a notice program to incorporate a party-neutral, Court-approved informational release into its efforts. A news release serves a potentially valuable role, providing additional notice exposure beyond that which will be provided through paid media. There is no guarantee that any news stories will result, but if they do, class members gain additional opportunities to learn that their rights are at stake in credible news media, adding to their understanding.


50.    *Procedures are onerous to Class members.* The objection process is onerous in that it requires an objector to send their objection to six different places. The claims process is even more complex in that eligibility is shifted entirely to the Class member who must file a form for each year in which they were eligible. During the sixty day notice period, these individuals were required to locate each of their qualifying tax returns, and inevitably for most, request copies from the Internal Revenue Service ("IRS") at their own expense. The IRS charges $39 for a copy of each return,[25] which seems ridiculous to pay in order to receive a tax credit withheld by the government.

---

[25] *See* Request for Copy of Tax Return available online at www.irs.gov/pub/irs-pdf/f4506.pdf (last visited June 20, 2007).

51.     In addition, Court documents were not readily available to Class members, instead they could only be obtained at the District Court of Guam during regular business hours. Class counsel was only available by mail or email, when in fact it is common practice for a phone number to be provided.

52.     *A final report on implementation should be provided to the Court prior to final approval.* Prior to approving any settlement, a court should be informed as to where and when the notices appeared so that the court knows that the plan was actually implemented as promised. It is also routine practice for the court to be provided with the actual "proof of performances" from the publications, that is, copies of the publications containing the notice as it appeared. Too often, courts are provided with a copy of a notice that is then shrunken down into illegible print for appearance in a publication. Also, it is important for the court to see where within the publication the actual notice appeared—upfront in a main reading section or buried in classifieds. Positioning of a notice obviously has an impact on its readership.

53.     Prior to approving a settlement, the court should also be informed as to the number of mailings sent successfully, the number returned as undeliverable, and how undeliverable addresses were updated and resent, and on what date mailings were sent. The Court should also be provided with samples of the mailings as actually printed and distributed to ensure that they too were not negatively altered. Considering that no address

updating services were undertaken in this case, the number of mailings that did not reach their intended recipient will likely be significant.

## CONCLUSIONS

54. In my opinion, based on the reasons stated above, the Class Notice and Notice Program in this case were woefully inadequate, and did not satisfy due process obligations, let alone statutory notice requirements.

55. In the course of planning our notification efforts, we take into account the guidance that the Supreme Court provided with respect to the communications principles underlying due process as articulated in *Mullane*: "[T]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."[26] I would not adopt a notification scheme such as the one undertaken here if I truly wished to inform Class members about their rights and options in the settlement. In my view the Class Notice and Notice Program did not satisfy due process of law.

56. We have studied numerous efforts to communicate important information in other class action cases, which I have identified earlier and listed on our c.v. Of all these experiences, the communication of the Class members' rights and options in the *Santos-Torres* settlement is among the least effective.

---

[26] *Mullane v. Central Hanover Trust*, 339 U.S. 306 at 315.

57.     The effort that was undertaken was deficient as to notice method, form and content, and in my opinion does not represent the "best practicable."

I declare under penalty of perjury under the laws of Pennsylvania and the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed at Souderton, Pennsylvania this 21 day of June , 2007.

Gina M. Intrepido

Gina M. Intrepido

© 2007 Hilsoft Notifications

DECLARATION OF GINA M. INTREPIDO ON ADEQUACY OF SETTLEMENT NOTICE

# Exhibit 1

# Hilsoft Notifications

*Philadelphia Area Office: 123 East Broad Street, Souderton, PA 18964, (215) 721-2120, (215) 721-6886 fax*

*Leading expert firm for large-scale notice plan design, implementation, and analysis, for claims processes, class actions and mass tort bankruptcies ❖ 1st notice expert recognized in the U.S. in published decisions, and 1ˢᵗ in Canada in published decisions ❖ Brought media audience data to courts to quantify "reach" among class members—now the cornerstone for notice adequacy determinations ❖ Only notice expert to testify to Advisory Committee on Rule 23's plain language req. ❖ Asked to write and design the 'model' notices for the FJC, available at www.fjc.gov ❖ More live testimony than any other expert ❖ Court-approved notice plans withstood challenge to U.S. Supreme Court ❖ 65+ favorable judicial comments–0 unfavorable ❖ Only firm with testifying media experts qualified to perform reach calculations ❖ Numerous critiques of opposing expert inconsistencies ❖ $200 million+ in media placement experience ❖ More than 25 published articles including in law reviews ❖ Leading notice and due process speaker ❖ More than 215 cases with notices appearing in 209 countries and 53 different languages ❖ 25 MDL cases ❖ Equal work for defendants and plaintiffs ❖ Case examples include (also see www.hilsoft.com):*

- Most comprehensive notice ever in a securities class action for the $1.1 billion settlement of *In re Royal Ahold Securities and ERISA Litigation.* Hilsee received court recognition upon settlement approval.
- Largest and most complex class action in Canadian history. Designed/implemented groundbreaking notice to disparate, remote aboriginal people in the multi-billion dollar *In re Residential Schools Litigation.*
- Largest race-based pricing case with national settlement notice to 25 million policyholders in *Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55, 62-68 (S.D. N.Y. 2003).
- Most complex notice program in history by providing worldwide notice in the $1.25 billion settlement of *In re Holocaust Victims Assets,* "Swiss Banks," No. CV-96-4849 (E.D.N.Y.). Designed/implemented all U.S. and international media notice with 500+ publications in 40 countries and 27 languages.
- The largest U.S. claims process ever. Designed/implemented multi-media notice campaign for the **U.S. Dept. of Agriculture's** $10 billion tobacco growers' transition payment program.
- National settlement notice to 40 million people in *Scott v. Blockbuster,* No. D 162-535 (Tex., 136th Jud. Dist.). Withstood collateral review, *Peters v. Blockbuster* 65 S.W.3d 295, 307 (Tex. App.-Beaumont, 2001).
- Multi-national claims bar date notice *In re The Babcock & Wilcox Co.,* No. 00-10992 (E.D. La.) to asbestos personal injury claimants. Opposing notice expert's reach methodology challenge rejected by court.
- National publication notice in *Avery v. State Farm,* No. 97-L-114 (Cir. Ct. Ill.) withstood challenges to Illinois Supreme Court and U.S. Supreme Court, and re-affirmed in *Avery v. State Farm,* 321 Ill. App. 3d 269 (5ᵗʰ Dist. 2001). Notice program untouched when Illinois Supreme Court decertified Class.
- National settlement notice *In re Synthroid Marketing Litlg.,* MDL 1182 (N.D. Ill.). Notice withstood appellate challenge, 264 F.3d 712, 716 (C.A.7 (Ill.), 2001).
- Scrutinized opposing notice expert opinion in *Parsons/Currie v. McDonalds* resulting in widely reported published decision, 2004 WL 40841 para. 49-58 (Ont. S.C.J. 2004); upheld on appeal *Currie v. McDonald's Rests. of Canada Ltd.,* 2005 CanLII 3360 (ON C.A.).
- *In re Dow Corning Corp.,* No. 95-20512-11-AJS (Bankr. E.D. Mich.). Designed global breast implant media plans (U.S. and foreign), ensuring that millions of additional women received effective notice of the bar date.
- Notice expertise cited in *Cox v. Shell Oil,* 1995 WL 775363, at *6 (Tenn. Ch. 1995). Notice evidence cited when collateral attack rejected, *Hospitality Mgmt. Assoc., Inc. v. Shell Oil* Co., 591 S.E.2d 611, 621 (S.C., 2004).
- National settlement notice, *Williams v. Weyerhaeuser Co.,* No. 995787, "Hardboard Siding Litigation" (Cal. Super. Ct.). Notice withstood appellate challenge, 2002 WL 373578, at 10 (Cal. App. 1 Dist.).

## KEY STAFF

***Todd B. Hilsee, President*** ~ Mr. Hilsee was the first to be recognized in the U.S. and Canada as an expert on the design and adequacy of notice, as a result of his work on *In re Domestic Air Transp. Litig.,* **141 F.R.D. 534 (N.D. Ga., 1992),** the first of many decisions citing his pioneering use of media audience data to quantify the "net reach" of unknown class members. A leading advocate of "noticeable" notices, he was the only notice expert invited to testify before the Advisory Committee on amendments to Fed. R. Civ. Proc. 23, and subsequently collaborated to write and design the illustrative "model" plain language notices for the Federal Judicial Center, available at www.fjc.gov. Todd has authored numerous articles on notice and due process including law review and journal articles, e.g., the *Georgetown Journal of Legal Ethics,* and the *Tulane Law Review.* His due process and notice educational materials have been utilized at law schools including: Harvard, Columbia, New York University, Temple and Cleveland-Marshall. As a communications professional, he spent the majority of his

advertising career with Foote, Cone & Belding, the largest U.S. domestic advertising firm, where he was awarded the American Marketing Association's award for effectiveness. He received his B.S. in Marketing from the Pennsylvania State University. Todd can be reached at hilsee@hilsoft.com.

**Barbara A. Coyle, Executive Vice President** ~ With 24 years of media advertising experience, Ms. Coyle specializes in complex media planning and is the leading expert in media efforts requiring global or foreign notification dissemination among highly targeted, hard-to-reach audiences, and, when necessary, broadcast media. From finding displaced holocaust survivors throughout the world to locating Aboriginal media vehicles in remote areas of Canada, from reaching minority tobacco farmers in hundreds of rural counties to prompting responses from securities class members globally, she has overcome challenges which attest to her expertise. Her hallmark negotiations in both print and broadcast media have dramatically extended media budgets, affording effective, defensible reach. She is a Cum Laude graduate of Temple University, with a B.A. in Journalism, where she also received the Carlisle Award for Journalism. Barbara can be reached at bcoyle@hilsoft.com.

**Gina M. Intrepido, Vice President, Media Director** ~ Ms. Intrepido is the leading reach and frequency expert in the notifications field. She hails from "Madison Avenue's" BBDO Worldwide advertising agency, where she devised sophisticated media plans for major accounts such as Gillette, GE, DuPont and HBO. With over 14 years of experience in media research, planning, and buying, she has designed scores of judicially approved notice plans. Her plans include meticulous analyses and bullet-proof validation of effective reach to demographically diverse groups such as displaced Hurricane Katrina victims, homeless people, crawfish farmers, and millions of consumers, including computer purchasers, video renters and prescription drug users. Combined with intense negotiating, she crafts media programs that outperform and cost less than typical plans. Her notice plan critiques have caused other experts to revise their plans to better meet due process obligations. She has also authored articles on effective class reach, notice dissemination, and CAFA issues. She holds a B.A. in Advertising from Penn State University, graduating Summa Cum Laude. Gina can be reached at gintrepido@hilsoft.com.

**Shannon R. Wheatman Ph.D., Vice President, Notice Director** ~ Dr. Wheatman joined Hilsoft Notifications after serving in the Research Division of the Federal Judicial Center in Washington, DC, where she worked with the Civil Rules Advisory Committee on class action studies and was instrumental in the development of model notices to satisfy the plain language notice amendment to Rule 23. Her research and notice expertise is further grounded in her education, including her doctorate dissertation: The effects of plain language drafting on layperson's comprehension of class action notices. She is a court-recognized expert who has composed dozens of court-approved notices, tackling the challenges of communicating complex legal content to distinct psychographic groups, ranging from rural, low income homeowners to affluent foreign stock investors, as well as broad sweeps of the U.S. population. She has authored numerous articles on class actions and other legal issues. Her Ph.D. in Social Psychology is from the University of Georgia; she also holds a Masters in Legal Studies from the University of Nebraska-Lincoln. Shannon can be reached at swheatman@hilsoft.com.

**Carla A. Peak, Notice Manager** ~ Ms. Peak oversees creation, production, and appearance of all manner and form of Hilsoft Notifications' notices. She has successfully implemented notice in more than 35 languages involving thousands of media placements and millions of mailings in both national and international markets. She focuses on delivering the highest quality standards of notice production, as well as research into the effectiveness of notification efforts, and ensuring that expert reports are fully and accurately documented. Her consumer notification experience includes high profile notifications worldwide. She is a Cum Laude graduate of Temple University, with a B.A. in Sociology. Carla can be reached at cpeak@hilsoft.com.

## JUDICIAL COMMENTS

**Judge Lee Rosenthal, Advisory Committee on Civil Rules of the Judicial Conference of the United States** (Jan. 22, 2002), addressing Mr. Hilsee in a public hearing on proposed changes to Rule 23:

> I want to tell you how much we collectively appreciate your working with the Federal Judicial Center to improve the quality of the model notices that they're developing. That's a tremendous contribution and we appreciate that very much…You raised three points that are criteria for good noticing, and I was interested in your thoughts on how the rule itself that we've proposed could better support the creation of those or the insistence on those kinds of notices . . .

**Judge Marvin Shoob, In re Domestic Air Transp. Antitrust Litig., 141 F.R.D. 534, 548 (N.D. Ga. 1992):**

> The Court finds Mr. Hilsee's testimony to be credible. Mr. Hilsee's experience is in the advertising industry. It is his job to determine the best way to reach the most people. Mr. Hilsee

2

*answered all questions in a forthright and clear manner. Mr. Hilsee performed additional research prior to the evidentiary hearing in response to certain questions that were put to him by defendants at his deposition . . . The Court believes that Mr. Hilsee further enhanced his credibility when he deferred responding to the defendant's deposition questions at a time when he did not have the responsive data available and instead utilized the research facilities normally used in his industry to provide the requested information.*

**Mr. Justice Cumming, *Wilson v. Servier Canada, Inc.,* "National Fen/Phen Litigation", 49 C.P.C. (4th) 233, [2000] O.J. No. 3392:**

*[A] class-notification expert, Mr. Todd Hilsee, to provide advice and to design an appropriate class action notice plan for this proceeding. Mr. Hilsee's credentials and expertise are impressive. The defendants accepted him as an expert witness. Mr. Hilsee provided evidence through an extensive report by way of affidavit, upon which he had been cross-examined. His report meets the criteria for admissibility as expert evidence. R. v. Lavallee, [1990] 1 S.C.R. 852.*

**Judge Elaine E. Bucklo, *Carnegie v. Household International,* (Aug. 28, 2006) No. 98 C 2178 (D. Ct. Ill.):**

*Class members received notice of the proposed settlement pursuant to an extensive notice program designed and implemented by Todd B. Hilsee, of Hilsoft Notifications. Mr. Hilsee has worked with the Federal Judicial Center to improve the quality of class notice. His work has been praised by numerous federal and state judges.*

**Judge Eldon E. Fallon, *Turner v. Murphy, USA, Inc.,* 2007 WL 283431, at *6 (E.D. La.):**

*Mr. Hilsee is a highly regarded expert in class action notice who has extensive experience designing and executing notice programs that have been approved by courts across the country. Furthermore, he has handled notice plans in class action cases affected by Hurricanes Katrina, Rita, and Wilma, see In re High Sulfur Content Gasoline Products Liability Litigation, MDL 1632, p. 15-16 (E.D. La. Sept. 6, 2006) (Findings of Fact and Conclusions of Law in Support of Final Approval of Class Settlement), and has recently published an article on this very subject, see Todd B. Hilsee, Gina M. Intrepido, & Shannon R. Wheatman, Hurricanes, Mobility, and Due Process: The "Desire to Inform" Requirement for Effective Class Notice is Highlighted by Katrina, 80 Tul. L.Rev. 1771 (2006) (detailing obstacles and solutions to providing effective notice after Hurricane Katrina).*

**Judge Kirk D. Johnson, *Zarebski v. Hartford Insurance Company of the Midwest,* (February 13, 2007) Cir. Ct. Ark., No. CV-2006-409-3:**

*Having admitted and reviewed the Affidavit of Todd Hilsee, and received testimony from Mr. Hilsee at the Settlement Approval Hearing concerning the success of the notice campaign, including the fact that written notice reached 91.8% of the potential Class Members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual Class Members who had an earlier opportunity to request exclusion but failed to do so. The Court also concludes that the extremely small number of objections to the Stipulation and Proposed Settlement embodied therein supports the Court's decision to not offer a second exclusion window.*

**Judge William A. Mayhew, *Nature Guard Cement Roofing Shingles Cases.,* (June 29, 2006) J.C.C.P. No. 4215 (Cal. Super. Ct.):**

*The method for dissemination of notice proposed by class counsel and described by the Declaration of Todd Hilsee of Hilsoft Notifications which is attached hereto as Exhibit A, constitute the fairest and best notice practicable under the circumstances of this case, comply with the*

**Judge Sarah S. Vance, *In re Educ. Testing Serv. PLT 7-12 Test Scoring Litig.,* 447 F.Supp.2d 612, 617 (E.D. La. 2006):**

*At the fairness hearing, the Court received testimony from the Notice Administrator, Todd Hilsee, who described the forms and procedure used to notify class members of the proposed settlement*

*and their rights with respect to it . . . The Court is satisfied that notice to the class fully complied with the requirements of Rule 23.*

**Judge Douglas L. Combs, *Morris v. Liberty Mutual Fire Ins. Co.,*** (Feb. 22, 2005), No. CJ-03-714 (D. Okla.):

*I want the record also to demonstrate that with regard to notice, although my experience – this Court's experience in class actions is much less than the experience of not only counsel for the plaintiffs, counsel for the defendant, but also the expert witness, Mr. Hilsee, I am very impressed that the notice was able to reach – be delivered to 97 ½ percent members of the class. That, to me, is admirable. And I'm also – at the time that this was initially entered, I was concerned about the ability of notice to be understood by a common, nonlawyer person, when we talk about legalese in a court setting. In this particular notice, not only the summary notice but even the long form of the notice were easily understandable, for somebody who could read the English language, to tell them whether or not they had the opportunity to file a claim.*

**Judge Catherine C. Blake, *In re Royal Ahold Securities and "ERISA" Litig.,*** (Jan. 6, 2006) MDL-1539 (D. Md.):

*I think it's remarkable, as I indicated briefly before, given the breadth and scope of the proposed Class, the global nature of the Class, frankly, that again, at least on a preliminary basis, and I will be getting a final report on this, that the Notice Plan that has been proposed seems very well, very well suited, both in terms of its plain language and in terms of its international reach, to do what I hope will be a very thorough and broad-ranging job of reaching as many of the shareholders, whether individual or institutional, as possibly can be done to participate in what I also preliminarily believe to be a fair, adequate and reasonable settlement.*

**Judge John Speroni, *Avery v. State Farm,*** (Feb. 25, 1998) No. 97-L-114, "Auto Parts Litigation" (Ill. Cir. Ct. Williamson Co.) (Withstood challenge to Illinois Supreme Court, and the United States Supreme Court denied certiorari on issues including the notice issues):

*[T]his Court having carefully considered all of the submissions, and reviewed their basis, finds Mr. Hilsee's testimony to be credible. Mr. Hilsee carefully and conservatively testified to the reach of the Plaintiffs' proposed Notice Plan, supporting the reach numbers with verifiable data on publication readership, demographics and the effect that overlap of published notice would have on the reach figure . . . This Court's opinion as to Mr. Hilsee's credibility, and the scientific basis of his opinions is bolstered by the findings of other judges that Mr. Hilsee's testimony is credible.*

**Judge Joseph R. Goodwin, *In re Serzone Products Liability Litig.,*** 231 F.R.D. 221, 231 (S.D. W. Va. 2005):

*The Notice Plan was drafted by Hilsoft Notifications, a Pennsylvania firm specializing in designing, developing, analyzing and implementing large-scale, unbiased legal notification plans. Hilsoft has disseminated class action notices in more than 150 cases, and it designed the model notices currently displayed on the Federal Judicial Center's website as a template for others to follow...To enhance consumer exposure, Hilsoft studied the demographics and readership of publications among adults who used a prescription drug for depression in the last twelve months. Consequently, Hilsoft chose to utilize media particularly targeting women due to their greater incidence of depression and heavy usage of the medication.*

**Judge John D. Allen, *Desportes v. American General Assurance Co.,*** (April 24, 2007) Ga. Super. Ct., No. SU-04-CV-3637:

*[T]he Parties submitted the Affidavit of Todd Hilsee, the Court-appointed Notice Administrator and one of the preeminent class action notice experts in North America. After completing the necessary rigorous analysis, including careful consideration of Mr. Hilsee's Affidavit, the Court finds that [the notice] . . .fully satisfied the requirements of the Georgia Rules of Civil Procedure (including Ga. Code Ann. § 9-11-23(c)(2) and (e)), the Georgia and United States Constitutions (including the Due Process Clause), the Rules of the Court, and any other applicable law.*

4

**Judge Michael Maloan,** *Cox v. Shell Oil,* "Polybutylene Pipe Litigation", 1995 WL 775363, at \*6, (Tenn. Ch. Ct.):

*Cox Class Counsel and the notice providers worked with Todd B. Hilsee, an experienced class action notice consultant, to design a class notice program of unprecedented reach, scope, and effectiveness. Mr. Hilsee was accepted by the Court as a qualified class notice expert . . . He testified at the Fairness Hearing, and his affidavit was also considered by the Court, as to the operation and outcome of this program.*

**Judge Marina Corodemus,** *Talalai v. Cooper Tire & Rubber Co.,* (Oct. 30, 2001) No. MID-L-8839-00 MT (N.J. Super. Ct. Middlesex Co.):

*The parties have crafted a notice program which satisfies due process requirements without reliance on an unreasonably burdensome direct notification process. The parties have retained Todd Hilsee, president of Hilsoft Notification, who has extensive experience designing similar notice programs…The form of the notice is reasonably calculated to apprise class members of their rights. The notice program is specifically designed to reach a substantial percentage of the putative settlement class members.*

**Currie v. McDonald's Rests. of Canada Ltd.,** 2005 CanLII 3360 (ON C.A.):

*The respondents rely upon the evidence of Todd Hilsee, an individual with experience in developing notice programs for class actions. In Hilsee's opinion, the notice to Canadian members of the plaintiff class in Boland was inadequate . . . In response to Hilsee's evidence, the appellants filed the affidavit of Wayne Pines, who prepared the Boland notice plan . . . I am satisfied that it would be substantially unjust to find that the Canadian members of the putative class in Boland had received adequate notice of the proceedings and of their right to opt out . . . I am not persuaded that we should interfere with the motion judge's findings . . . The right to opt out must be made clear and plain to the non-resident class members and I see no basis upon which to disagree with the motion judge's assessment of the notice. Nor would I interfere with the motion judge's finding that the mode of the notice was inadequate.*

**Judge Jerome E. Lebarre,** *Harp v. Qwest Commc'ns,* "Arbitration Litigation", (June 21, 2002) No. 0110-10986, (Ore. Cir. Ct. Multnomah Co.):

*So, this agreement is not calculated to communicate to plaintiffs any offer. And in this regard I accept the expert testimony conclusions of Mr. Todd Hilsee. Plaintiffs submitted an expert affidavit of Mr. Hilsee dated May 23 of this year, and Mr. Hilsee opines that the User Guide was deceptive and that there were many alternatives available to clearly communicate these matters….*

**Judge Dewey C. Whitenton,** *Ervin v. Movie Gallery, Inc.,* (Nov. 22, 2002) No. 13007 (Tenn. Ch.):

*Based on the evidence submitted and based on the opinions of Todd Hilsee, a well-recognized expert on the distribution of class notices . . . MGA and class counsel have taken substantial and extraordinary efforts to ensure that as many class members as practicable received notice about the settlement. As demonstrated by the affidavit of Todd Hilsee, the effectiveness of the notice campaign and the very high level of penetration to the settlement class were truly remarkable . . . The notice campaign was highly successful and effective, and it more than satisfied the due process and state law requirements for class notice.*

**Judge Joe E. Griffin,** *Beasley v. Hartford Insurance Company of the Midwest,* (June 13, 2006) No. CV-2005-58-1 (Cir. Ct. Ark.):

*Additionally, the Court was provided with expert testimony from Todd Hilsee at the Settlement Approval Hearing concerning the adequacy of the notice program. Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Individual Notice and the Publication Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminarily Approval Order, was the best notice practicable under the circumstances . . . and the requirements of due process under the Arkansas and United States Constitutions.*

5

**Judge Fred Biery, *McManus v. Fleetwood Enter., Inc.*,** (Sept. 30, 2003) No. SA-99-CA-464-FB, (W.D. Tex.):

*Based upon the uncontroverted showing Class Counsel have submitted to the Court, the Court finds that the settling parties undertook a thorough notice campaign designed by Todd Hilsee of Hilsoft Notifications, a nationally-recognized expert in this specialized field . . . The Court finds and concludes that the Notice Program as designed and implemented provided the best practicable notice to the members of the Class, and satisfied the requirements of due process.*

**Judge Richard G. Stearns, *In re Lupron Marketing and Sales Practice Litig.*,** 228 F.R.D. 75, 96 (D. Mass. 2005):

*With respect to the effectiveness of notice, in the absence of any evidence to the contrary, I accept the testimony of Todd Hilsee that the plan he designed achieved its objective of exposing 80 percent of the members of the consumer class…*

**Mr. Justice Cullity, *Parsons/Currie v. McDonald's Rests. of Can.*,** (Jan. 13, 2004) 2004 Carswell Ont. 76, 45 C.P.C. (5th) 304, [2004] O.J. No.83:

*I found Mr. Hilsee's criticisms of the notice plan in Boland to be far more convincing than Mr. Pines' attempts during cross-examination and in his affidavit to justify his failure to conduct a reach and frequency analysis of McDonald's Canadian customers. I find it impossible to avoid a conclusion that, to the extent that the notice plan he provided related to Canadian customers, it had not received more than a perfunctory attention from him. The fact that the information provided to the court was inaccurate and misleading and that no attempt was made to advise the court after the circulation error had been discovered might possibly be disregarded if the dissemination of the notice fell within an acceptable range of reasonableness. On the basis of Mr. Hilsee's evidence, as well as the standards applied in class proceedings in this court, I am not able to accept that it did.*

**Judge Catherine C. Blake, *In re Royal Ahold Securities & "ERISA" Litig.*,** (June 16, 2006) MDL-1539 (D. Md.):

*In that regard, I would also comment on the notice. The form and scope of the notice in this case, and I'm repeating a little bit what already appeared to me to be evident at the preliminary stage, but the form and scope of the notice has been again remarkable . . . The use of sort of plain language, the targeting of publications and media, the website with the translation into multiple languages, the mailings that have been done, I think you all are to be congratulated, and Mr. Hilsee and Claims Administrator as well.*

**Judge Paul H. Alvarado, *Microsoft I-V Cases*,** (July 6, 2004) J.C.C.P. No. 4106 (Cal. Super. Ct., J.C.C.P. No. 4106):

*[T]he Court finds the notice program of the proposed Settlement was extensive and appropriate. It complied with all requirements of California law and due process. Designed by an expert in the field of class notice, Todd B. Hilsee, the notice plan alone was expected to reach at least 80% of the estimated 14.7 million class members. (Hilsee Decl. Ex. 3, ¶28). The Settlement notice plan was ultimately more successful than anticipated and it now appears that over 80% of the class was notified of the Settlement.*

**Judge Marina Corodemus, *Talalai v. Cooper Tire & Rubber Co.*,** (Sept. 13, 2002) No. L-008830.00 (N.J. Super. Ct. Middlesex Co.):

*Here, the comprehensive bilingual, English and Spanish, court-approved Notice Plan provided by the terms of the settlement meets due process requirements. The Notice Plan used a variety of methods to reach potential class members. For example, short form notices for print media were place . . .throughout the United States and in major national consumer publications which include the most widely read publications among Cooper Tire owner demographic groups . . . Mr. Hilsee designed the notification plan for the proposed settlement in accordance with this court's Nov. 1,*

*2001 Order. Mr. Hilsee is the president of Hilsoft Notifications and is well versed in implementing and analyzing the effectiveness of settlement notice plans.*

**Judge Lewis A. Kaplan,** *In re Parmalat Securities Litig.,* (March 1, 2007) S.D. N.Y., MDL No. 1653 (LAK):

*The court approves, as to form and content, the Notice and the Publication Notice, attached hereto as Exhibits 1 and 2, respectively, and finds that the mailing and distribution of the Notice and the publication of the Publication Notice in the manner and the form set forth in Paragraph 6 of this Order and in the Affidavit of Todd B. Hilsee meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Securities Exchange Act of 1934, as emended by Section 21D(a)(7) of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons and entities entitled thereto.*

**Judge Richard J. Shroeder,** *St. John v. Am. Home Prods. Corp.,* (Aug. 2, 1999) No. 97-2-06368-4 (Wash. Super. Ct. Spokane Co.):

*[T]he Court considered the oral argument of counsel together with the documents filed herein, including the Affidavit of Todd B. Hilsee on Notice Plan...The Court finds that plaintiffs' proposed Notice Plan is appropriate and is the best notice practicable under the circumstances by which to apprise absent class members of the pendency of the above-captioned Class Action and their rights respecting that action.*

**Judge Carter Holly,** *Richison v. Am. Cemwood Corp.,* (Nov. 18, 2003) No. 005532 (Cal. Super. Ct. San Joaquin Co.):

*The parties undertook an extensive notice campaign designed by a nationally recognized class action notice expert. See generally, Affidavit of Todd B. Hilsee on Completion of Additional Settlement Notice Plan.*

**Judge Elaine E. Bucklo,** *Carnegie v. Household International,* (Aug. 28, 2006) No. 98 C 2178 (D. Ct. Ill.):

*[T]he Notice was disseminated pursuant to a plan consisting of first class mail and publication developed by Plaintiff's notice consultant, Hilsoft Notification and Todd Hilsee, who the Court recognized as experts in the design of notice plans in class actions. The Notice by first-class mail and publication was provided in an adequate and sufficient manner; constitutes the best notice practicable under the circumstances; and satisfies all requirements of Rule 23(e) and due process.*

**Judge James R. Williamson,** *Kline v. The Progressive Corp.,* (Nov. 14, 2002) No. 01-L-6 (Cir. Ct. Ill. Johnson Co.):

*Notice to the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated. The notice contained the essential elements necessary to satisfy due process . . .*

*Williams v. Weyerhaeuser Co.,* 2002 WL 373578, at *10 (Cal. App. 1 Dist.):

*The hybrid notice given here--a combination of individual notice and notice by publication--was, as the trial court found, the best practicable method under the circumstances. The mass media campaign in this case appears to have been far more extensive than that approved in Dunk, supra, 48 Cal.App.4th at pp. 1800, 1805, 56 Cal.Rptr.2d 483. Objectors' own experience indicates the campaign was effective. Three of them received individual notices, two learned of the settlement through advertisements, and the others apparently learned of the settlement when one of them went around the neighborhood and told his neighbors about the settlement.*

**Judge Richard G. Stearns,** *In re Lupron® Marketing and Sales Practice Litig.,* (Nov. 24, 2004) MDL 1430 (D. Mass.):

*After review of the proposed Notice Plan designed by Hilsoft Notifications...is hereby found to be the best practicable notice under the circumstances and, when completed, shall constitute due*

and sufficient notice of the Settlement and the Fairness Hearing to all persons and entities affected by and/or entitled to participate in the Settlement, in full compliance with the notice requirements of Rule 23 the Federal Rules of Civil Procedure and due process.

**Hospitality Mgmt. Assoc., Inc. v. Shell Oil Co.,** 356 S.C. 644, 663, 591 S.E.2d 611, 621 (Sup.Ct.S.C. 2004):

Clearly, the Cox court designed and utilized various procedural safeguards to guarantee sufficient notice under the circumstances. Pursuant to a limited scope of review, we need go no further in deciding the Cox court's findings that notice met due process are entitled to deference.

**Judge Samuel Conti, Ciabattari v. Toyota Motor Sales, U.S.A., Inc.,** (Nov. 17, 2006) No. C-05-04289-SC (N.D. Cal.):

After reviewing the evidence and arguments presented by the parties . . . the Court finds as follows: . . . The class members were given the best notice practicable under the circumstances, and that such notice meets the requirements of the Due Process Clause of the U.S. Constitution, and all applicable statutes and rules of court;

**Judge Stuart R. Pollak, Microsoft I-V Cases,** (April 1, 2001) J.C.C.P. No. CJC-00-004106 (Cal. Super. Ct. San Francisco Co.):

[C]oncerning dissemination of class notice; and I have reviewed the materials that have been submitted on that subject and basically I'm satisfied. I think it's amazing if you're really getting 80 percent coverage. That's very reassuring. And the papers that you submitted responded to a couple things that had been mentioned before and I am satisfied with all that.

**Judge Thomas M. Hart, Froeber v. Liberty Mutual Fire Ins. Co.,** (April 19, 2006) Cir. Ct. Ore., No. 00C15234:

The court has found and now reaffirms that dissemination and publication of the Class Notice in accordance with the terms of the Third Amended Order constitutes the best notice practicable under the circumstances.

**Judge Dudley Bowen, Andrews/Harper v. MCI,** (Aug. 18, 1995) No. CV 191-185, "900 Number Class Action" (S.D. Ga.):

Upon consideration of the submissions of counsel and the testimony adduced at the hearing, and upon the findings, observations and conclusions expressed from the bench into the record at the conclusion of the hearing, it is hereby ordered that the aforementioned proposed media plan is approved.

**Judge Ivan L.R. Lemelle, In re High Sulfur Content Gasoline Prods. Liability Litig.,** (Nov. 8, 2006) MDL No. 1632 (E.D. La.):

The Notice Plan for this Class Settlement was consistent with the best practices developed for modern-style "plain English" class notices; the Court and Settling Parties invested substantial effort to ensure notice to persons displaced by the Hurricanes of 2005; and as this Court has already determined, the Notice Plan met the requirements of Rule 23 and constitutional due process.

**Judge Catherine C. Blake, In re Royal Ahold Securities & "ERISA" Litig.,** 437 F.Supp.2d 467, 472 (D. Md. 2006):

The court hereby finds that the Notice and Notice Plan described herein and in the Order dated January 9, 2006 provided Class Members with the best notice practicable under the circumstances. The Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the Settlement and Plan of Allocation, to all persons entitled to such notice, and the Notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.

8

**Judge Salvatore F. Cozza, *Delay v. Hurd Millwork Co.*,** (Sept. 11, 1998) No. 97-2-07371-0 (Wash. Super. Ct. Spokane Co.):

> I'm very impressed by the notice plan which has been put together here. It seems to be very much a state of the art proposal in terms of notifying class members. It appears to clearly be a very good alternative for notification. The target audience seems to be identified very well, and the Court is very satisfied with the choice of media which has been selected to accomplish this.

**Judge James S. Moody, Jr., *Mantzouris v. Scarritt Motor Group Inc.*,** (Aug. 10, 2004) No. 8:03 CV 0015-T-30 MSS (M.D. Fla.):

> Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the members of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement, it is hereby determined that all members of the Class, except for Ms. Gwendolyn Thompson, who was the sole person opting out of the Settlement Agreement, are bound by this Order and Final Judgment entered herein.

**Judge Marvin Shoob, *In re Domestic Air Transp. Antitrust Litig.*,** 141 F.R.D. 534, 555 (N.D. Ga. 1992):

> The Court is convinced that the innovative notice program designed by plaintiffs not only comports with due process and is sensitive to defendants' res judicata rights, but it is the only notice program suitable for this unique and massive consumer class action.

**Judge Kirk D. Johnson, *Zarebski v. Hartford Insurance Company of the Midwest*,** (February 13, 2007) Cir. Ct. Ark., No. CV-2006-409-3:

> Accordingly, the Class Notice and Claim Form as disseminated are finally approved as fair, reasonable, and adequate notice under the circumstances. The Court finds and concludes that due and adequate notice of the pendency of this Action, the Stipulation, and the Final Settlement Hearing has been provided to members of the Settlement Class, and the Court further finds and concludes that the notice campaign described in the Preliminary Approval Order and completed by the parties complied fully with the requirements of Arkansas Rule of Civil Procedure 23 and the requirements of due process under the Arkansas and United States Constitutions.

**Judge Yada T. Magee, *Spitzfaden v. Dow Corning*,** (March 17, 1997) No. 92-2589, "Breast Implant Litigation" (La. Civ. Dist. Ct. Orleans Parish) (The Louisiana Supreme Court upheld the ruling, finding no error):

> Given the definition of this class and the potential size, the efforts taken to notify potential class members was more than sweeping...Accordingly the Court finds that the notice was adequate.

**Judge Michael J. O'Malley, *Defrates v. Hollywood Entm't Corp.*,** (June 24, 2005) No. 02 L 707 (Ill. Cir. Ct. St. Clair Co.):

> [T]his Court hereby finds that the notice program described in the Preliminary Approval Order and completed by HEC complied fully with the requirements of due process, the Federal Rules of Civil Procedure and all other applicable laws.

**Judge Robert H. Wyatt, Jr., *Gray v. New Hampshire Indemnity Co., Inc.*,** (Dec. 19, 2005) No. CV-2002-952-2-3 (Cir. Ct. Ark.):

> Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated. The Notice contained the essential elements necessary to satisfy due process, including the Settlement Class definition, the identities of the Parties and of their counsel, a summary of the terms of the proposed settlement, Class Counsel's intent to apply for fees, information regarding the manner in which objections could be submitted, and requests for exclusions could be filed.

**Judge Carter Holly, *Richison v. Am. Cemwood Corp.,* (Nov. 18, 2003) No. 005532 (Cal. Super. Ct. San Joaquin Co.):**

> *As to the forms of Notice, the Court finds and concludes that they fully apprised the Class members of the pendency of the litigation, the terms of the Phase 2 Settlement, and Class members' rights and options.*

**Judge Wilford D. Carter, *Thibodeaux v. Conoco Phillips Co.,* (May 26, 2005) No. 2003-481 F (14th J.D. Ct. La.):**

> *Notice given to Class Members . . . were reasonably calculated under all the circumstances and have been sufficient, both as to the form and content...*

**Judge David Flinn, *Westman v. Rogers Family Funeral Home,* (March 5, 2001) No. C 98-03165 (Cal. Super. Ct. Contra Costa Co.):**

> *The Court has determined that the Notice given to potential members of the Settlement Class fully and accurately informed potential Members of the Settlement Class of all material elements of the proposed settlement and constituted valid, due and sufficient notice to all potential members of the Settlement Class, and that it constituted the best practicable notice under the circumstances.*

**Judge Stuart R. Pollak, *Microsoft I-V Cases,* (March 30, 2001) J.C.C.P. No. 4106 (Cal. Super. Ct. San Francisco Co.):**

> *Plaintiffs and Defendant Microsoft Corporation have submitted a joint statement in support of their request that the Court approve the plan for dissemination of class action notice and proposed forms of notice, and amend the class definition. The Court finds that the forms of notice to Class members attached hereto as Exhibits A and B fairly and adequately inform the Class members of their rights concerning this litigation. The Court further finds that the methods for dissemination of notice are the fairest and best practicable under the circumstances, and comport with due process requirements.*

**Judge John R. Padova, *Rosenberg v. Academy Collection Service, Inc.* (Dec. 19, 2005) No. 04-CV-5585 (E.D. Pa.):**

> *[U]pon consideration of the Memorandum of Law in Support of Plaintiff's Proposed Class Questionnaire and Certification of Todd Hilsee, it is hereby ORDERED that Plaintiff's form of class letter and questionnaire in the form appended hereto is APPROVED. F.R.Civ.P. 23(c).*

**Judge Bernard Zimmerman, *Ting v. AT&T,* "Arbitration Litigation", 182 F.Supp.2d 902, 912-913 (N.D. Cal. 2002) (Hilsee had testified on the importance of wording and notice design features):**

> *The phrase 'Important Information' is increasingly associated with junk mail or solicitations . . . From the perspective of affecting a person's legal rights, the most effective communication is generally one that is direct and specific.*

**Judge Robert E. Payne, *Fisher v. Virginia Electric & Power Co.,* (July 1, 2004) No. 3:02CV431 (E.D. Va.):**

> *The record here shows that the class members have been fully and fairly notified of the existence of the class action, of the issues in it, of the approaches taken by each side in it in such a way as to inform meaningfully those whose rights are affected and to thereby enable them to exercise their rights intelligently.*

**Judge Robert H. Wyatt, Jr., *Gray v. New Hampshire Indemnity Co., Inc.,* (Dec. 19, 2005) No. CV-2002-952-2-3 (Cir. Ct. Ark.):**

> *Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort. Notice was also effected by publication in many newspapers and magazines*

Case 1:04-cv-00006    Document 428-4    Filed 06/22/2007    Page 25 of 43

*throughout the nation, reaching a large majority of the Class members multiple times. The Court finds that such notice constitutes the best notice practicable.*

**Judge Carter Holly, *Richison v. Am. Cemwood Corp.,* (Nov. 18, 2003) No. 005532 (Cal. Super. Ct. San Joaquin Co.):**

*The notice was reasonable and the best notice practicable under the circumstances, was due, adequate, and sufficient notice to all Class members, and complied fully with the laws of the State of California, the Code of Civil Procedure, due process, and California Rules of Court 1859 and 1860.*

***In re Synthroid Marketing Litig.,* 264 F.3d 712, 716 (C.A.7 (Ill.), 2001):**

*Although officially in the game, the objectors have not presented any objection to the settlement that was not convincingly addressed by the district court. The objectors contend that the settlement should have been larger, that the notice was not sufficient, and that the release of liabilities is too broad.*

**Judge Harold Baer, Jr., *Thompson v. Metropolitan Life Ins. Co.,* (Sept. 3, 2002) No. 00 Civ. 5071 (HB) (S.D. N.Y.):**

*The Court further finds that the Class Notice and Publication Notice provided in the Settlement Agreement are written in plain English and are readily understandable by Class Members. In sum, the Court finds that the proposed notice texts and methodology are reasonable, that they constitute due, adequate and sufficient notice to all persons entitled to be provided with notice, and that they meet the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law.*

**Judge Dewey C. Whitenton, *Ervin v. Movie Gallery, Inc.,* (Nov. 22, 2002) No. 13007 (Tenn. Ch.):**

*The content of the class notice also satisfied all due process standards and state law requirements . . . The content of the notice was more than adequate to enable class members to make an informed and intelligent choice about remaining in the class or opting out of the class.*

**Judge Edgar E. Bayley, *Dimitrios v. CVS, Inc.,* No. 99-6209; *Walker v. Rite Aid Corp.,* No. 99-6210; and *Myers v. Rite Aid Corp.,* No. 01-2771, (Nov. 27, 2002) (Pa. Ct. C.P. Cumberland Co.):**

*The Court specifically finds that: fair and adequate notice has been given to the class, which comports with due process of law.*

**Judge Robert E. Payne, *Fisher v. Virginia Electric & Power Co.,* (July 1, 2004) No. 3:02CV431 (E.D. Va.):**

*The success rate in notifying the class is, I believe, at least in my experience, I share Ms. Kauffman's experience, it is as great as I have ever seen in practicing or serving in this job . . . So I don't believe we could have had any more effective notice.*

**Judge Richard G. Stearns, *In re Lupron Marketing and Sales Practice Litig.,* (Nov. 23, 2004) MDL 1430 (D. Mass.):**

*I actually find the [notice] plan as proposed to be comprehensive and extremely sophisticated and very likely be as comprehensive as any plan of its kind could be In reaching those most directly affected.*

**Judge James D. Arnold,** *Cotten v. Ferman Mgmt. Servs. Corp.,* (Nov. 26, 2003) No. 02-08115 (Fla. Cir. Ct. Hillsborough Co.):

> *Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the member of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement . . .*

**Judge David De Alba,** *Ford Explorer Cases,* (Aug. 19, 2005) JCCP Nos. 4226 & 4270 (Cal. Super. Ct., Sacramento Co.):

> *It is ordered that the Notice of Class Action is approved. It is further ordered that the method of notification proposed by Todd B. Hilsee is approved.*

**Judge Judith K. Fitzgerald,** *In re Pittsburgh Corning Corp.,* (Nov. 26, 2003) No. 00-22876-JKF (Bankr. W.D. Pa.):

> *The procedures and form of notice for notifying the holders of Asbestos PI Trust Claims, as described in the Motion, adequately protect the interests of the holders of Asbestos PI Trust Claims in a manner consistent with the principles of due process, and satisfy the applicable requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.*

**Judge Wilford D. Carter,** *Thibodeaux v. Conoco Phillips Co.,* (May 26, 2005) No. 2003-481 F (14th J.D. Ct. La.):

> *Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due process and sufficient notice to all potential members of the Class as Defined.*

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55, 68 (S.D.N.Y. 2003):

> *The notice provides, in language easily understandable to a lay person, the essential terms of the settlement, including the claims asserted . . . who would be covered by the settlement . . .*

**Judge Catherine C. Blake,** *In re Royal Ahold Securities and "ERISA" Litig.,* (Jan. 6, 2006) MDL-1539 (D. Md.):

> *I do, at least preliminarily, certainly think this is a very extensive and excellent notice program that has been proposed.*

**Judge Thomas A. Higgins,** *In re Columbia/HCA Healthcare Corp.,* (June 13, 2003) No. 3-98-MDL-1227 (M.D. Tenn.):

> *Notice of the settlement has been given in an adequate and sufficient manner. The notice provided by mailing the settlement notice to certain class members and publishing notice in the manner described in the settlement was the best practicable notice, complying in all respects with the requirements of due process.*

**Judge Louis J. Farina,** *Soders v. General Motors Corp.* (Oct. 31, 2003) No. CI-00-04255, (Pa. C.P. Lancaster Co.):

> *In this instance, Plaintiff has solicited the opinion of a notice expert who has provided the Court with extensive information explaining and supporting the Plaintiff's notice plan...After balancing the factors laid out in Rule 1712(a), I find that Plaintiff's publication method is the method most reasonably calculated to inform the class members of the pending action.*

**Judge Eldon E. Fallon,** *Turner v. Murphy, USA, Inc.,* 2007 WL 283431, at *5 (E.D. La.):

> *Most of the putative class members were displaced following hurricane Katrina . . . With this challenge in mind, the parties prepared a notice plan designed to reach the class members*

12

*wherever they might reside. The parties retained Todd Hilsee of Hilsoft Notifications to ensure that adequate notice was given to class members in light of the unique challenges presented in this case.*

**Judge Anna J. Brown, *Reynolds v. The Hartford Financial Services Group, Inc.,* (February 27, 2007) D. Ore., No. CV-01-1529 BR:**

*[T]he court finds that the Notice Program fairly, fully, accurately, and adequately advised members of the Settlement Class and each Settlement Subclass of all relevant and material information concerning the proposed settlement of this action, their rights under Rule 23 of the Federal Rules of Civil Procedure, and related matters, and afforded the Settlement Class with adequate time and an opportunity to file objections to the Settlement or request exclusion from the Settlement Class. The court finds that the Notice Program constituted the best notice practicable under the circumstances and fully satisfied the requirements of Rule 23 and due process.*

**Judge Michael Canaday, *Morrow v. Conoco Inc.,* (May 25, 2005) No. 2002-3860 G (14th J.D. Ct. La.):**

*The objections, if any, made to due process, constitutionality, procedures, and compliance with law, including, but not limited to, the adequacy of notice and the fairness of the proposed Settlement Agreement, lack merit and are hereby overruled.*

**Judge Harold Baer, Jr., *Thompson v. Metropolitan Life Ins. Co.* 216 F.R.D. 55, 68 (S.D. N.Y. 2003):**

*[T]he notice campaign that defendant agreed to undertake was extensive . . . I am satisfied, having reviewed the contents of the notice package, and the extensive steps taken to disseminate notice of the settlement, that the class notice complies with the requirements of Rule 23 (c)(2) and 23(e). In summary, I have reviewed all of the objections, and none persuade me to conclude that the proposed settlement is unfair, inadequate or unreasonable.*

**Judge Ronald B. Leighton, *Grays Harbor Adventist Christian School v. Carrier Corporation,* (May 29, 2007) W.D. Wash., No. 05-05437:**

*The Court has considered this motion, the Affidavit of Todd B. Hilsee on Class Certification Notice Plan and the exhibits attached thereto, and the files and records herein. Based on the foregoing, the Court finds Plaintiffs' Motion for Approval of Proposed Form of Notice and Notice Plan is appropriate and should be granted.*

**Judge Richard J. Holwell, *In re Vivendi Universal, S.A. Securities Litig.,* 2007 WL 1490466, at \*34 (S.D.N.Y.):**

*In response to defendants' manageability concerns, plaintiffs have filed a comprehensive affidavit outlining the effectiveness of its proposed method of providing notice in foreign countries. (See Affidavit of Todd B. Hilsee on Ability to Provide Multi-National Notice to Class Members, Dec. 19, 2005 ("Hilsee Aff.") ¶ 7.) According to this . . . the Court is satisfied that plaintiffs intend to provide individual notice to those class members whose names and addresses are ascertainable, and that plaintiffs' proposed form of publication notice, while complex, will prove both manageable and the best means practicable of providing notice.*

**Judge Catherine C. Blake, *In re Royal Ahold Securities & "ERISA" Litig.,* 2006 WL 132080, at \*4 (D. Md.):**

*The Court further APPROVES the proposed Notice Plan, as set forth in the Affidavit of Todd B. Hilsee On International Settlement Notice Plan, dated December 19, 2005 (Docket No. 684). The Court finds that the form of Notice, the form of Summary Notice, and the Notice Plan satisfy the requirements of Fed.R.Civ.P. 23, due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all members of the Class.*

**Judge John Kraetzer,** *Baiz v. Mountain View Cemetery,* (April 14, 2004) No. 809869-2 (Cal. Super. Ct. Alameda Co.):

> The notice program was timely completed, complied with California Government Code section 6064, and provided the best practicable notice to all members of the Settlement Class under the circumstances. The Court finds that the notice program provided class members with adequate instructions and a variety of means to obtain information pertaining to their rights and obligations under the settlement so that a full opportunity has been afforded to class members and all other persons wishing to be heard.

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55, 62 (S.D. N.Y. 2003):

> In view of the extensive notice campaign waged by the defendant, the extremely small number of class members objecting or requesting exclusion from the settlement is a clear sign of strong support for the settlement.

**Judge John R. Padova, Nichols v. SmithKline Beecham Corp.,** (April 22, 2005) No. 00-6222 (E.D. Pa.):

> After reviewing the individual mailed Notice, the publication Notices, the PSAs and the informational release, the Court concludes that the substance of the Notice provided to members of the End-Payor Class in this case was adequate to satisfy the concerns of due process and the Federal Rules.

**Judge John Kraetzer,** *Baiz v. Mountain View Cemetery,* (April 14, 2004) No. 809869-2 (Cal. Super. Ct. Alameda Co.):

> The Court has determined that the Notice given to potential members of the Settlement Class fully and accurately informed potential Members of the Settlement Class of all material elements of the proposed settlement and constituted valid, due, and sufficient notice to all potential members of the Settlement Class, and that it constituted the best practicable notice under the circumstances.

**Judge Carter Holly,** *Richison v. Am. Cemwood Corp.,* (Nov. 18, 2003) No. 005532 (Cal. Super. Ct. San Joaquin Co.):

> Not a single Class member—out of an estimated 30,000—objected to the terms of the Phase 2 Settlement Agreement, notwithstanding a comprehensive national Notice campaign, via direct mail and publication Notice.

**Judge Elaine Bucklo,** *In re Synthroid Marketing Litig.,* (Aug. 14, 1998) MDL 1182 (N.D. Ill.) (Ultimately withstood challenge to 7th Circuit Court of Appeals):

> [T]he parties undertook an elaborate notice program…in numerous publications in the United States and abroad which those persons most likely to be class members would read . . . In fact from the affidavits filed, it would appear that notice was designed to reach most of the affected reading public.

**Judge Joseph R. Goodwin,** *In re Serzone Prods. Liability Litig.* 2004 U.S. Dist. LEXIS 28297, at *10 (S.D. W. Va.):

> The Court has considered the Notice Plan and proposed forms of Notice and Summary Notice submitted with the Memorandum for Preliminary Approval and finds that the forms and manner of notice proposed by Plaintiffs and approved herein meet the requirements of due process and Fed.R.Civ.P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.

14

**Judge Marina Corodemus,** *Talalal v. Cooper Tire & Rubber Co.,* (Oct. 29, 2001) No. L-8830-00 MT (N.J, Super. Ct. Middlesex Co.):

*I saw the various bar graphs for the different publications and the different media dissemination, and I think that was actually the clearest bar graph I've ever seen in my life . . . it was very clear of the time periods that you were doing as to each publication and which media you were doing over what market time, so I think that was very clear.*

**Judge John D. Allen,** *Carter v. North Central Life Ins. Co.,* (April 24, 2007) Ga. Super. Ct., No. SU-2006-CV-3764-6:

[T]he Parties submitted the Affidavit of Todd Hilsee, the Court-appointed Notice Administrator and one of the pre-eminent class action notice experts in North America. After completing the necessary rigorous analysis, including careful consideration of Mr. Hilsee's Affidavit, the Court finds that . . . The Notices prepared in this matter were couched in plain, easily understood language and were written and designed to the highest communication standards. The Notice Plan effectively reached a substantial percentage of Class Members and delivered noticeable Notices designed to capture Class Members' attention;

**Judge Louis J. Farina,** *Soders v. General Motors Corp.,* (Oct. 31, 2003) No. CI-00-04255, (Pa. C.P. Lancaster Co.):

*Plaintiff provided extensive information regarding the reach of their proposed plan. Their notice expert, Todd Hilsee, opined that their plan will reach 84.8% of the class members. Defendant provided the Court with no information regarding the potential reach of their proposed plan . . . There is no doubt that some class members will remain unaware of the litigation, however, on balance, the Plaintiff's plan is likely to reach as many class members as the Defendant's plan at less than half the cost. As such, I approve the Plaintiff's publication based plan.*

**Judge Paul H. Alvarado,** *Microsoft I-V Cases,* (July 6, 2004) J.C.C.P. No. 4106 (Cal. Super. Ct., J.C.C.P. No. 4106):

*The notification plans concerning the pendency of this class action were devised by a recognized class notice expert, Todd B. Hilsee. Mr. Hilsee devised two separate class certification notice plans that were estimated to have reached approximately 80% of California PC owners on each occasion.*

**Judge Robert E. Payne,** *Fisher v. Virginia Electric & Power Co.,* (Feb. 12, 2004) No. 3:02-CV-431 (E.D. Va.):

*The expert, Todd B. Hilsee, is found to be reliable and credible.*

**Judge Norma L. Shapiro,** *First State Orthopaedics et al. v. Concentra, Inc., et al.,* (May 1, 2006) No. 2:05-CV-04951-NS (E.D. Pa.):

*The Court finds that dissemination of the Mailed Notice, Published Notice and Full Notice in the manner set forth here and in the Settlement Agreement meets the requirements of due process and Pennsylvania law. The Court further finds that the notice is reasonable, and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, is the best practicable notice; and is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Lawsuit and of their right to object or to exclude themselves from the proposed settlement.*

**Judge Sarah S. Vance,** *In re Educ. Testing Serv. PLT 7-12 Test Scoring Litig.,* 447 F.Supp.2d 612, 627 (E.D. La. 2006):

*At the fairness hearing, class counsel, the Special Master, notice expert Todd Hilsee, and the Court Appointed Disbursing Agent detailed the reasons for requiring claims forms . . . As Todd Hilsee pointed out in his testimony, because plaintiffs had the choice of either individualized damages or an expedited payment, to send the expedited payments with the notice has the potential of encouraging plaintiffs to forego individualized recovery for far less than value, merely*

15

by cashing the check. The obvious undesirability of this suggestion gives the unmistakable appearance that the objection was captious. The objection to the claims process for expedited payments is overruled.

**Judge Richard G. Stearns, *In re Lupron® Marketing and Sales Practice Litig.*, 228 F.R.D. 75, 96 (D. Mass. 2005):**

I have examined the materials that were used to publicize the settlement, and I agree with Hilsee's opinion that they complied in all respects with the "plain, easily understood language" requirement of Rule 23(c). In sum, I find that the notice given meets the requirements of due process.

**Judge John R. Padova, Nichols v. SmithKline Beecham Corp., (Apr. 22, 2005) No. 00-CV-6222 (E.D. Pa.):**

As required by this Court in its Preliminary Approval Order and as described in extensive detail in the Affidavit of Todd B. Hilsee on Design Implementation and Analysis of Settlement Notice Program...Such notice to members of the Class is hereby determined to be fully in compliance with requirements of Fed. R. Civ. P. 23(e) and due process and is found to be the best notice practicable under the circumstances and to constitute due and sufficient notice to all entities entitled thereto.

**Judge Sarah S. Vance, *In re Babcock & Wilcox Co.*, (Aug. 25, 2000) No. 00-0558 (E.D. La.):**

Furthermore, the Committee has not rebutted the affidavit of Todd Hilsee, President of Hilsoft Notifications, that the (debtor's notice) plan's reach and frequency methodology is consistent with other asbestos-related notice programs, mass tort bankruptcies, and other significant notice programs...After reviewing debtor's Notice Plan, and the objections raised to it, the Court finds that the plan is reasonably calculated to apprise unknown claimants of their rights and meets the due process requirements set forth in Mullane . . . Accordingly, the Notice Plan is approved.

**Judge Joe E. Griffin, *Beasley v. Hartford Insurance Company of the Midwest*, (June 13, 2006) No. CV-2005-58-1 (Cir. Ct. Ark.):**

[R]eceived testimony from Mr. Hilsee at the Settlement Approval Hearing concerning the success of the notice campaign, including the fact that written notice reached 97.7% of the potential Class members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual Class Members who had an earlier opportunity to request exclusion, but did not do so. The Court also concludes that the lack of valid objections also supports the Court's decision to not offer a second exclusion window . . . Although the Notice Campaign was highly successful and resulted in actual mailed notice being received by over 400,000 Class Members, only one Class Member attempted to file a purported objection to either the Stipulation or Class Counsels' Application for Fees. The Court finds it significant that out of over 400,000 Class Members who received mailed Notice, there was no opposition to the proposed Settlement or Class Counsels' Application for Fees, other than the single void objection. The lack of opposition by a well-noticed Class strongly supports the fairness, reasonableness and adequacy of the Stipulation and Class Counsels' Application for Fees.

**Judge James R. Williamson, Kline v. The Progressive Corp., (Nov. 14, 2002) No. 01-L-6 (Cir. Ct. Ill. Johnson Co.):**

The Court has reviewed the Affidavit of Todd B. Hilsee, one of the Court-appointed notice administrators, and finds that it is based on sound analysis. Mr. Hilsee has substantial experience designing and evaluating the effectiveness of notice programs.

**Judge Joseph R. Goodwin, *In re Serzone Products Liability Litig.*, 231 F.R.D. 221, 236 (S.D. W. Va. 2005):**

As Mr. Hilsee explained in his supplemental affidavit, the adequacy of notice is measured by whether notice reached Class Members and gave them an opportunity to participate, not by actual participation. (Hilsee Supp. Aff. ¶ 6(c)(v), June 8, 2005)...Not one of the objectors support challenges to the adequacy of notice with any kind of evidence; rather, these objections consist of

16

*mere arguments and speculation. I have, nevertheless, addressed the main arguments herein, and I have considered all arguments when evaluating the notice in this matter. Accordingly, after considering the full record of evidence and filings before the court, I FIND that notice in this matter comports with the requirements of Due Process under the Fifth Amendment and Federal Rules of Civil Procedure 23(c)(2) and 23(e).*

**Judge Kirk D. Johnson,** *Zarebski v. Hartford Insurance Company of the Midwest,* (February 13, 2007) Cir. Ct. Ark., No. CV-2006-409-3:

*Additionally, the court was provided with expert testimony from Todd Hilsee at the Settlement Approval Hearing concerning the adequacy of the notice program . . . Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Class Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminary Approval Order, was the best notice practicable under the circumstances to all members of the Settlement Class.*

**Judge Catherine C. Blake,** *In re Royal Ahold Securities and "ERISA" Litig.,* (Nov. 2, 2006) MDL-1539 (D. Md.):

*The global aspect of the case raised additional practical and legal complexities, as did the parallel criminal proceedings in another district. The settlement obtained is among the largest cash settlements ever in a securities class action case and represents an estimated 40% recovery of possible provable damages. The notice process appears to have been very successful not only in reaching but also in eliciting claims from a substantial percentage of those eligible for recovery.*

**Judge Alfred G. Chiantelli,** *Williams v. Weyerhaeuser Co.,* (Dec. 22, 2000) No. 995787, "Hardboard Siding Litigation" (Cal. Super. Ct. San Francisco Co.):

*The Class Notice complied with this Court's Order, was the best practicable notice, and comports with due process . . . Based upon the uncontroverted proof Class Counsel have submitted to the Court, the Court finds that the settling parties undertook an extensive notice campaign designed by Todd Hilsee of Hilsoft Notifications, a nationally recognized expert in this specialized field.*

**Judge John R. Padova, Nichols v. SmithKline Beecham Corp.,** (April 22, 2005) No. 00-6222 (E.D. Pa.):

*Pursuant to the Order dated October 18, 2004, End-Payor Plaintiffs employed Hilsoft Notifications to design and oversee Notice to the End-Payor Class. Hilsoft Notifications has extensive experience in class action notice situations relating to prescription drugs and cases in which unknown class members need to receive notice.*

**Judge Ivan L.R. Lemelle,** *In re High Sulfur Content Gasoline Prods. Liability Litig.,* (November 8, 2006) MDL No. 1632 (E.D. La.):

*[T]his Court approved a carefully-worded Notice Plan, which was developed with the assistance of a nationally-recognized notice expert, Hilsoft Notifications . . . See Affidavit of Todd B. Hilsee on Motion by Billy Ray Kidwell, attached as Exhibit A; see also, Affidavit of Todd B. Hilsee, attached as Exhibit C to the Joint Motion for Final Approval of Class Settlement (Record Doc. No. 71); Testimony of Todd Hilsee at Preliminary Approval Hearing, Tr. pp 6-17, attached as Exhibit B; Testimony of Todd Hilsee at Final Fairness Hearing, Tr. pp. 10-22, attached as Exhibit C.*

**Regional Senior Justice Winkler,** *Baxter v. Canada (Attorney General),* (March 10, 2006) No. 00-CV-192059 CPA (Ont. Super. Ct.):

*The plaintiffs have retained Todd Hilsee, an expert recognized by courts in Canada and the United States in respect of the design of class action notice programs, to design an effective national notice program . . . the English versions of the Notices provided to the court on this motion are themselves plainly worded and appear to be both informative and designed to be readily understood. It is contemplated that the form of notice will be published in English, French and Aboriginal languages, as appropriate for each media vehicle.*

**Judge James T. Genovese, *West v. G&H Seed Co.,* (May 27, 2003) No. 99-C-4984-A (La. Jud. Dist. Ct. St. Landry Parish):**

*The court finds that, considering the testimony of Mr. Hilsee, the nature of this particular case, and the certifications that this court rendered in its original judgment which have been affirmed by the – for the most part, affirmed by the appellate courts, the court finds Mr. Hilsee to be quite knowledgeable in his field and certainly familiar with these types of cases...the notice has to be one that is practicable under the circumstances. The notice provided and prepared by Mr. Hilsee accomplishes that purpose . . .*

**Judge Milton Gunn Shuffield, *Scott v. Blockbuster Inc.,* (Jan. 22, 2002) No. D 162-535 (Tex. Jud. Dist. Ct. Jefferson Co.) (Ultimately withstood challenge to Court of Appeals of Texas. *Peters v. Blockbuster* 65 S.W.3d 295, 307 (Tex. App.-Beaumont, 2001):**

*In order to maximize the efficiency of the notice, a professional concern, Hilsoft Notifications, was retained. Todd Hilsee of that firm prepared and oversaw the notification plan. The record reflects that Mr. Hilsee is very experienced in the area of notification in class action settlements...This Court concludes that the notice campaign was the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the settlement and afford them an opportunity to present their objections . . . The notice campaign was highly successful and effective, and it more than satisfied the due process and state law requirements for class notice.*

**Judge Susan Illston** (N.D. Cal.), on Hilsoft Notifications presentation at the ABA's 7th Annual National institute on Class Actions, Oct. 24, 2003, San Francisco, Cal.:

*The notice program that was proposed here today, I mean, it's breathtaking. That someone should have thought that clearly about how an effective notice would get out. I've never seen anything like that proposed in practice . . . I thought the program was excellent. The techniques available for giving a notification is something that everyone should know about.*

## OTHER COMMENTS

**Geoffrey P. Miller, Max Greenberg Professor at Law, NYU,** testified at the *Scott v. Blockbuster* Fairness Hearing on Dec. 10-11, 2001, before Judge Milton Shuffield:

*I really have never seen in the many years I've been looking at class actions, a notice campaign in a consumer case that was done with this much care and this much real forethought and imagination. It's very difficult to reach 40 million people, and I can't imagine doing a better job than as what was done in this case.*

**Arthur R. Miller, Bruce Bromley Professor of Law, Harvard Law School,** in a letter addressed to Mr. Hilsee dated June 2, 2004:

*I read your piece on Mullane with great interest and am delighted to learn the details. Indeed, I will probably incorporate some of it in my teaching next fall. I think your analysis is rock solid.*

## PUBLICATIONS

Todd B. Hilsee, *Canadian Class Action Notice - A Rising Tide of Effectiveness?*, OSGOODE HALL LAW SCHOOL, YORK UNIVERSITY, 4TH NATIONAL SYMPOSIUM ON CLASS ACTIONS, (2007).

Shannon R. Wheatman & Thomas E. Willging, *Does Attorney Choice of Forum in Class Action Litigation Really Make a Difference?* 17 CLASS ACTIONS & DERIVATIVE SUITS 1 (2007).

Todd B. Hilsee, *The "Desire to Inform" Is in Your Hands: Creatively Design Your Notice Program to Reach the Class Members and Satisfy Due Process*, AMERICAN BAR ASSOCIATION, 10th Annual Institute on Class Actions (2006).

Todd B. Hilsee, Gina M. Intrepido, & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process: The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV. 1771 (2006); reprinted in course materials for: AMERICAN BAR ASSOCIATION, 10th Annual National Institute on Class Actions (2006); NATIONAL BUSINESS INSTITUTE, Class Action Update: Today's Trends & Strategies for Success (2006).

Thomas E. Wilging & Shannon R. Wheatman, *Attorney Choice of Forum in Class Action Litigation: What Difference Does it Make?* 81 NOTRE DAME LAW. REV. 591 (2006).

Gina M. Intrepido, *Notice Experts May Help Resolve CAFA Removal Issues, Notification to Officials*, 6 CLASS ACTION LITIG. REP. 759 (2005).

Todd B. Hilsee, Shannon R. Wheatman, & Gina M. Intrepido, *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice Is More Than Just Plain Language: A Desire to Actually Inform*, 18 GEORGETOWN JOURNAL LEGAL ETHICS 1359 (2005).

Thomas E. Wilging & Shannon R. Wheatman, *An Empirical Examination of Attorneys' Choice of Forum in Class Action Litigation,* FEDERAL JUDICIAL CENTER (2005).

Robert T. Reagan, Shannon R. Wheatman, Marie Leary, Natascha Blain, George Cort, & Dean N. Miletich, *Sealed Settlement Agreements in Federal District Courts*, FEDERAL JUDICIAL CENTER (2005).

Todd B. Hilsee, Notice *Provisions in S. 1751 Raise Significant Communications Problems*, 5 CLASS ACTION LITIG. REP. 30 (2004).

Todd B. Hilsee, *Plain Language is Not Enough*, FEDERAL TRADE COMMISSION, Protecting Consumer Interests in Class Actions (2004).

Todd B. Hilsee & Terri R. LeClercq, *The Federal Judicial Center's Model Plain Language Class Action Notices: A New Tool for Practitioners and the Judiciary*, 5 CLASS ACTION LITIG. REP. 182 (2003).

Todd B. Hilsee, *So you think your notice program is acceptable? Beware: it could be rejected*, AMERICAN BAR ASSOCIATION CLASS ACTIONS (2003).

Todd B. Hilsee, *Class Action Notice*, CALIFORNIA CLASS ACTIONS PRACTICE AND PROCEDURE, 8-1 (Elizabeth Cabraser ed., 2003).

Todd B. Hilsee & Terri R. LeClercq, *Creating the Federal Judicial Center's New Illustrative "Model" Plain Language Class Action Notices*, 13 CLASS ACTIONS & DERIVATIVE SUITS 10 (2003).

David Romine & Todd Hilsee, "*It Ain't Over 'Til It's Over"—Class Actions Against Microsoft*, 12 CLASS ACTIONS & DERIVATIVE SUITS 2 (2002).

Todd B. Hilsee, *Class Action Notice—How, Why, When and Where the Due Process Rubber Meets the Road*, LOUISIANA STATE BAR ASSOCIATION, 3rd Annual Class Action/Mass Tort Symposium (2002).

Todd B. Hilsee, *A Communications Analysis of the Third Circuit Ruling in MDL 1014: Guidance on the Adequacy of Notice*, 2 CLASS ACTION LITIG. REP. 712 (2001).

Shannon R. Wheatman & David R. Shaffer, *On finding for defendants who plead insanity: The crucial impact of dispositional instructions and opportunity to deliberate, 25* LAW AND HUMAN BEHAVIOR 165 (2001).

Shannon Wheatman, The Effects of Plain Language Drafting on Layperson's Comprehension of Class Action Notices (2001), (unpublished Ph.D. dissertation, University of Georgia, on file with the University of Georgia Library).

David R. Shaffer & Shannon R. Wheatman, *Does personality influence the effectiveness of judicial instructions? 6 PSYCH. PUB. POL'Y & LAW* 655 (2000).

Todd B. Hilsee, *Off of the Back Pages: The Evolution of Class Action Notice: An Analysis of Notice in Mullane v. Central Hanover Trust more than 50 years later*, MEALEY'S Judges & Lawyers in Complex Litigation Conference (1999).

Todd B. Hilsee, *Class Action Notice to Diet-Drug Takers: A Scientific Approach*, FEN-PHEN LITIG. STRATEGIST (1999).

Sidney Rosen & Shannon Wheatman, *Reactions to the fate of one's brain-child after its disclosure*. 17 CURRENT PSYCH. 135 (1997).

Todd B. Hilsee, *Class Action: The Role of the Media Expert*, EMPLOYMENT LITIG. REP. 19524 (1995); ASBESTOS LITIG. REP. 33279 (1995); AUTOMOTIVE LITIG. REP. 23193 (1995); MEDICAL DEVICES REPORTER 24 (1995); ASBESTOS PROPERTY LITIG. REP. 20845 (1995); TOXIC CHEMICALS LITIG. REP. 22280 (1995); DES LITIG. REP. 24310 (1995); SECURITIES AND COMMODITIES LITIG. REP. 15 (1996); AIDS LITIG. REP. 15559 (1996); LEVERAGED BUYOUTS & ACQUISITIONS LITIG. REP. 24 (1996); WRONGFUL DISCHARGE REPORT 16 (1996); CORPORATE OFFICERS AND DIRECTORS LIABILITY LITIG. REP. 19561 (1996); SEXUAL HARASSMENT LITIG. REP. 22 (1996).

## PANELS, SPEAKING AND EDUCATION

*Notice to Class Members: Is too Little Money Being Spent on Notice and will the Tide Turn?*, OSGOODE HALL LAW SCHOOL, YORK UNIVERSITY, 4TH NATIONAL SYMPOSIUM ON CLASS ACTIONS, (2007). Speaker: Todd B Hilsee.

*"Man on the Street" Interviews with Class Members, Vol. 2: Notice & Settlement Participation,* Educational DVD created and utilized at: AMERICAN BAR ASSOCIATION, 10th Annual National Institute on Class Actions (2006); NATIONAL BUSINESS INSTITUTE, Class Action Update: Today's Trends & Strategies for Success (2006); GEORGETOWN UNIVERSITY LAW SCHOOL (2006); TULANE LAW SCHOOL (2007).

*"Class Action Notice"*, NATIONAL BUSINESS INSTITUTE, Class Action Update: Today's Trends & Strategies for Success (2006). Speaker: Todd B. Hilsee.

*"If You Build It, They Will Come—Crafting Creative, Coupon-Free Settlements,* AMERICAN BAR ASSOCIATION, 10th Annual National Institute on Class Actions (2006). Speaker: Todd B Hilsee.

*"Man on the Street" Interviews with Class Members, Vol. 1: Plain Language,* Educational DVD created and utilized at: COLUMBIA LAW SCHOOL (2005); NEW YORK UNIVERSITY SCHOOL OF LAW (2005); TEMPLE LAW SCHOOL (2006); CLEVELAND-MARSHALL COLLEGE OF LAW (2006); TULANE LAW SCHOOL (2007).

*"How to Construct Effective Notice Campaigns to Best Protect Class Action Settlements",* Lecture at: CLEVELAND-MARSHALL COLLEGE OF LAW (3/28/06). Guest Lecturer: Todd B. Hilsee.

*"Judges Round Table",* SUPERIOR COURT OF CALIFORNIA, County of Los Angeles, Central Civil West Court House (3/21/06). Speaker: Todd B. Hilsee.

*"Do You Really Want Me to Know My Rights? The 'Ethics' Behind Due Process in Class Action Notice Is More Than Just Plain Language: A Desire to Actually Inform",* NATIONAL ASSOCIATION OF SHAREHOLDER AND CONSUMER ATTORNEYS (NASCAT), (2005). Speaker: Todd B. Hilsee.

*"Will the Settlement Survive Notice and Associated Due Process Concerns?"* LOUISIANA BAR ASSOCIATION, 5th Annual Class Action/Mass Tort Symposium (2004). Speaker: Todd B. Hilsee.

*"Let's Talk—The Ethical and Practical Issues of Communicating with Members of a Class",* AMERICAN BAR ASSOCIATION, 8th Annual National Institute on Class Actions (2004). Speaker: Todd B Hilsee.

*"Clear Notices, Claims Administration and Market Makers,"* FEDERAL TRADE COMMISSION, Protecting Consumer interests in Class Action Workshop (2004). Speaker: Todd B. Hilsee.

*"I've Noticed You've Settled—Or Have You,"* AMERICAN BAR ASSOCIATION, 7th Annual National Institute on Class Action (2003). Speaker: Todd B. Hilsee.

*"Class Action Notice—How, Why, When And Where the Due Process Rubber Meets The Road,"* LOUISIANA BAR ASSOCIATION, 3rd Annual Class Action/Mass Tort Symposium (2002). Speaker: Todd B. Hilsee.

*"Plain English Notices called for in August, 2001, proposed amendments to Rule 23,"* ADVISORY COMMITTEE ON CIVIL RULES OF THE JUDICIAL CONFERENCE OF THE UNITED STATES, Hearing on Rule 23 (2002). Witness: Todd B. Hilsee.

*"Generation X on Trial,"* AMERICAN BAR ASSOCIATION, Section of Litigation Annual Meeting (2001). Speaker: Todd B. Hilsee.

*"Tires, Technology and Telecommunications",* Class Action and Derivative Suits Committee, AMERICAN BAR ASSOCIATION, Section of Litigation Annual Meeting (2001). Speaker: Todd B. Hilsee.

"*Class Actions*," MEALEY'S Judges and Lawyers in Complex Litigation Conference (1999). Speaker: Todd B. Hilsee.

## LEGAL NOTICE CASES

Todd B. Hilsee and Hilsoft Notifications have served as notice experts for planning, implementation and/or analysis in the following partial listing of cases:

| | |
|---|---|
| *In re Domestic Air Transp. Antitrust Litig.* | N.D. Ga., MDL No. 861 |
| *In re Bolar Pharm. Generic Drugs Consumer Litig.* | E.D. Pa., MDL No. 849 |
| *In re Steel Drums Antitrust Litig.* | S.D. Ohio, C-1-91-208 |
| *In re Steel Pails Antitrust Litig.* | S.D. Ohio, C-1-91-213 |
| *In re GM Truck Fuel Tank Prods. Liability Litig.* | E.D. Pa., MDL No. 1112 |
| *In re Estate of Ferdinand Marcos (Human Rights Litig.)* | D. Hawaii, MDL No. 840 |
| *Andrews v. MCI (900 Number Litig.)* | S.D. Ga., CV 191-175 |
| *Harper v. MCI (900 Number Litig.)* | S.D. Ga., CV 192-134 |
| *Kellerman v. MCI Telecomms. Corp (Long Distance Telephone Litig.)* | Cir. Ct. Ill., 82 CH 11065 |
| *In re Bausch & Lomb Contact Lens Litig.* | N.D. Ala., 94-C-1144-WW |
| *In re Ford Motor Co. Vehicle Paint Litig.* | E.D. La., 95-0485, MDL No. 1063 |
| *Castano v. Am. Tobacco* | E.D. La., CV 94-1044 |
| *Cox v. Shell Oil (Polybutylene Pipe Litig.)* | Tenn. Ch., 18,844 |
| *Fry v. Hoercst Celanese (Polybutylene Pipe Litig.)* | Cir. Ct. Fla., 95-6414 CA11 |
| *Meers v. Shell Oil (Polybutylene Pipe Litig.)* | Cal. Super. Ct., M30590 |
| *In re Amino Acid Lysine Antitrust Litig.* | N.D. Ill., MDL No. 1083 |
| *In re Dow Corning Corp. (Breast Implant Bankruptcy)* | E.D. Mich., 95-20512-11-AJS |
| *Kunhel v. CNA Ins. Companies* | N.J. Super. Ct., ATL-C-0184-94 |
| *In re Factor Concentrate Blood Prods. Litig. (Hemophiliac HIV)* | N.D. Ill., MDL No. 986 |
| *In re Ford Ignition Switch Prods. Liability Litig.* | D. N.J., 96-CV-3125 |
| *Jordan v. A.A. Friedman (Non-Filing Ins. Litig.)* | M.D. Ga., 95-52-COL |
| *Kalhammer v. First USA (Credit Card Litig.)* | Cir. Ct. Cal., C96-45632010-CAL |
| *Navarro-Rice v. First USA (Credit Card Litig.)* | Cir. Ct. Ore., 9709-06901 |
| *Spitzfaden v. Dow Corning (Breast Implant Litig.)* | La. Civ. Dist. Ct., 92-2589 |
| *Robinson v. Marine Midland (Finance Charge Litig.)* | N.D. Ill., 95 C 5635 |
| *McCurdy v. Norwest Fin. Alabama* | Cir. Ct. Ala., CV-95-2601 |
| *Johnson v. Norwest Fin. Alabama* | Cir. Ct. Ala., CV-93-PT-962-S |
| *In re Residential Doors Antitrust Litig.* | E.D. Pa., MDL No. 1039 |
| *Barnes v. Am. Tobacco Co. Inc.* | E.D. Pa., 96-5903 |

21

| | |
|---|---|
| *Small v. Lorillard Tobacco Co. Inc.* | N.Y. Super. Ct., 110949/96 |
| *Naef v. Masonite Corp (Hardboard Siding Litig.)* | Cir. Ct. Ala., CV-94-4033 |
| *In re Synthroid Mktg. Litig.* | N.D. Ill., MDL No. 1182 |
| *Chisolm v. Transouth Fin.* | 4<sup>th</sup> Cir., 97-1970 |
| *Raysick v. Quaker State Slick 50 Inc.* | Dist. Tex., 96-12610 |
| *Castillo v. Mike Tyson (Tyson v. Holyfield Bout)* | N.Y. Super. Ct., 114044/97 |
| *Avery v. State Farm Auto. Ins. (Non-OEM Auto Parts Litig.)* | Cir. Ct. Ill., 97-L-114 |
| *Walls v. The Am. Tobacco Co. Inc.* | N.D. Okla., 97-CV-218-H |
| *Tempest v. Rainforest Café (Securities Litig.)* | D. Minn., 98-CV-608 |
| *Stewart v. Avon Prods. (Securities Litig.)* | E.D. Pa., 98-CV-4135 |
| *Goldenberg v. Marriott PLC Corp (Securities Litig.)* | D. Md., PJM 95-3461 |
| *Delay v. Hurd Millwork (Building Products Litig.)* | Wash. Super. Ct., 97-2-07371-0 |
| *Gutterman  v. Am. Airlines (Frequent Flyer Litig.)* | Cir. Ct. Ill., 95CH982 |
| *Hoeffner v. The Estate of Alan Kenneth Vieira (Un-scattered Cremated Remains Litig.)* | Cal. Super. Ct., 97-AS 02993 |
| *In re Graphite Electrodes Antitrust Litig.* | E.D. Pa., 97-CV-4182, MDL No. 1244 |
| *In re Silicone Gel Breast Implant Prods. Liability Litig., Altrichter v. INAMED* | N.D. Ala., MDL No. 926 |
| *St. John v. Am. Home Prods. Corp. (Fen/Phen Litig.)* | Wash. Super. Ct., 97-2-06368 |
| *Crane v. Hackett Assocs. (Securities Litig.)* | E.D. Pa., 98-5504 |
| *In re Holocaust Victims Assets Litig. (Swiss Banks Litig.)* | E.D. N.Y., CV-96-4849 |
| *McCall v. John Hancock (Settlement Death Benefits)* | Cir. Ct. N.M., No. CV-2000-2818 |
| *Williams v. Weyerhaeuser Co. (Hardboard Siding Litig.)* | Cal. Super. Ct., CV-995787 |
| *Kapustin v. YBM Magnex Int'l Inc. (Securities Litig.)* | E.D. Pa., 98-CV-6599 |
| *Leff v. YBM Magnex Int'l Inc. (Securities Litig.)* | E.D. Pa., 95-CV-89 |
| *Crawley v. Chrysler Corp. (Airbag Litig.)* | Pa. C.P., CV-4900 |
| *In re PRK/LASIK Consumer Litig.* | Cal. Super. Ct., CV-772894 |
| *Hill v. Galaxy Cablevision* | N.D. Miss., 1:98CV51-D-D |
| *Scott v. Am. Tobacco Co. Inc.* | La. Civ. Dist. Ct., 96-8461 |
| *Jacobs v. Winthrop Fin. Assocs. (Securities Litig.)* | D. Mass.,  99-CV-11363 |
| *Int'l Comm'n on Holocaust Era Ins. Claims – Worldwide Outreach Program* | Former Secretary of State Lawrence Eagleburger Commission |
| *Bownes v. First USA Bank (Credit Card Litig.)* | Cir. Ct. Ala., CV-99-2479-PR |
| *Whetman v. IKON (ERISA Litig.)* | E.D. Pa., Civil No. 00-87 |
| *Mangone v. First USA Bank (Credit Card Litig.)* | Cir. Ct. Ill., 99AR672a |
| *In re Babcock and Wilcox Co. (Asbestos Related Bankruptcy)* | E.D. La., 00-10992 |
| *Barbanti v. W.R. Grace and Co. (Zonolite / Asbestos Litig.)* | Wash. Super. Ct., 00201756-6 |

22

| | |
|---|---|
| *Brown v. Am. Tobacco* | Cal. Super. Ct., J.C.C.P. 4042 No. 711400 |
| *Wilson v. Servier Canada Inc. (Canadian Fen/Phen Litig.)* | Ont. Super. Ct., 98-CV-158832 |
| *Paul and Strode v. Country Mutual Ins. Co. (Non-OEM Auto Parts Litig.)* | Cir. Ct. Ill., 99-L-995 |
| *In re Texaco Inc. (Bankruptcy)* | S.D. N.Y. Nos. 87 B 20142, 87 B 20143, 87 B 20144. |
| *Olinde v. Texaco (Bankruptcy, Oil Lease Litig.)* | M.D. La., No. 96-390 |
| *Gustafson v. Bridgestone/Firestone, Inc. (Recall Related Litig.)* | S.D. Ill., Civil No. 00-612-DRH |
| *In re Bridgestone/Firestone Tires Prods. Liability Litig.* | S.D. Ind., MDL No. 1373 |
| *Gaynoe v. First Union Corp. (Credit Card Litig.)* | N.C. Super. Ct., No. 97-CVS-16536 |
| *Carson v. Daimler Chrysler Corp. (Fuel O-Rings Litig.)* | W.D. Tenn., No. 99-2896 TU A |
| *Providian Credit Card Cases* | Cal. Super. Ct., J.C.C.P. No. 4085 |
| *Fields v. Great Spring Waters of Am., Inc. (Bottled Water Litig.)* | Cal. Super. Ct., No. 302774 |
| *Sanders v. Great Spring Waters of Am., Inc. (Bottled Water Litig.)* | Cal. Super. Ct., No. 303549 |
| *Sims v. Allstate Ins. Co. (Diminished Auto Value Litig.)* | Cir. Ct. Ill., No. 99-L-393A |
| *Peterson v. State Farm Mutual Auto. Ins. Co. (Diminished Auto Value Litig.)* | Cir. Ct. Ill., No. 99-L-394A |
| *Microsoft I-V Cases (Antitrust Litig. Mirroring Justice Dept.)* | Cal. Super. Ct., J.C.C.P. No. 4106 |
| *Westman v. Rogers Family Funeral Home, Inc. (Remains Handling Litig.)* | Cal. Super. Ct., No. C-98-03165 |
| *Rogers v. Clark Equipment Co.* | Cir. Ct. Ill., No. 97-L-20 |
| *Garrett v. Hurley State Bank (Credit Card Litig.)* | Cir. Ct. Miss., No. 99-0337 |
| *Ragoonanan v. Imperial Tobacco Ltd. (Firesafe Cigarette Litig.)* | Ont. Super. Ct., No. 00-CV-183165 CP |
| *Dietschi v. Am. Home Prods. Corp. (PPA Litig.)* | W.D. Wash., No. C01-0306L |
| *Dimitrios v. CVS, Inc. (PA Act 6 Litig.)* | Pa. C.P., No. 99-6209 |
| *Jones v. Hewlett-Packard Co. (Inkjet Cartridge Litig.)* | Cal. Super. Ct., No. 302887 |
| *In re Tobacco Cases II (California Tobacco Litig.)* | Cal. Super. Ct., J.C.C.P. No. 4042 |
| *Scott v. Blockbuster, Inc (Extended Viewing Fees Litig.)* | 136th Tex. Jud. Dist. Jefferson Co., No. D 162-535 |
| *Anesthesia Care Assocs. v. Blue Cross of Cal.* | Cal. Super. Ct., No. 986677 |
| *Ting v. AT&T (Mandatory Arbitration Litig.)* | N.D. Cal., No. C-01-2969-BZ |
| *In re W.R. Grace & Co. (Asbestos Related Bankruptcy)* | Bankr. D. Del., No. 01-01139-JJF |
| *Talalai v. Cooper Tire & Rubber Co. (Tire Layer Adhesion Litig.)* | N.J. Super. Ct., Middlesex County, No. MID-L-8839-00 MT |
| *Kent v. Daimler Chrysler Corp. (Jeep Grand Cherokee Park-to-Reverse Litig.)* | N.D. Cal., No. C01-3293-JCS |
| *Int'l Org. of Migration – German Forced Labour Compensation Programme* | Geneva, Switzerland |
| *Madsen v. Prudential Federal Savings & Loan (Homeowner's Loan Account Litig.)* | 3rd Jud. Dist. Ct. Utah, No. C79-8404 |

| Bryant v. Wyndham Int'l., Inc. (Energy Surcharge Litig.) | Cal. Super. Ct., Nos. GIC 765441, GIC 777547 (Consolidated) |
|---|---|
| In re USG Corp. (Asbestos Related Bankruptcy) | Bankr. D. Del., No. 01-02094-RJN |
| Thompson v. Metropolitan Life Ins. Co. (Race Related Sales Practices Litig.) | S.D. N.Y., No. 00-CIV-5071 HB |
| Ervin v. Movie Gallery Inc. (Extended Viewing Fees) | Tenn. Ch. Fayette Co., No. CV-13007 |
| Peters v. First Union Direct Bank (Credit Card Litig.) | M.D. Fla., No. 8:01-CV-958-T-26 TBM |
| National Socialist Era Compensation Fund | Republic of Austria |
| In re Baycol Litig. | D. Minn., MDL No. 1431 |
| Claims Conference–Jewish Slave Labour Outreach Program | German Government Initiative |
| Wells v. Chevy Chase Bank (Credit Card Litig.) | Cir. Ct. Md. Balt. City, No. C-99-000202 |
| Walker v. Rite Aid of PA, Inc. (PA Act 6 Litig.) | C.P. Pa., No. 99-6210 |
| Myers v. Rite Aid of PA, Inc. (PA Act 6 Litig.) | C.P. Pa., No. 01-2771 |
| In re PA Diet Drugs Litig. | C.P. Pa. Phila. Co., No. 9709-3162 |
| Harp v. Qwest Communications (Mandatory Arbitration Litig.) | Circ. Ct. Ore., No. 0110-10986 |
| Tuck v. Whirlpool Corp. & Sears, Roebuck & Co. (Microwave Recall Litig.) | Cir. Ct. Ind. Marion Co., No. 49C01-0111-CP-002701 |
| Allison v. AT&T Corp. (Mandatory Arbitration Litig.) | $1^{st}$ Jud. D.C. N.M., No. D-0101-CV-20020041 |
| Kline v. The Progressive Corp. | Cir. Ct. Ill. Johnson Co., No. 01-L-6 |
| Baker v. Jewel Food Stores, Inc. & Dominick's Finer Foods, Inc. (Milk Price Fixing) | Cir. Ct. Ill. Cook Co., No. 00-L-9664 |
| In re Columbia/HCA Healthcare Corp. (Billing Practices Litig.) | M.D. Tenn., MDL No. 1227 |
| Foultz v. Erie Ins. Exchange (Auto Parts Litig.) | C.P. Pa., No. 000203053 |
| Soders v. General Motors Corp. (Marketing Initiative Litigation) | C.P. Pa., No. CI-00-04255 |
| Nature Guard Cement Roofing Shingles Cases | Cal. Super. Ct., J.C.C.P. No. 4215 |
| Curtis v. Hollywood Entm't Corp. (Additional Rental Charges) | Wash. Super. Ct., No. 01-2-36007-8 SEA |
| Defrates v. Hollywood Entm't Corp. | Cir. Ct. Ill. St. Clair. Co., No. 02L707 |
| Pease v. Jasper Wyman & Son, Merrill Blueberry Farms Inc., Allen's Blueberry Freezer Inc. & Cherryfield Foods Inc. | Me. Super. Ct., No. CV-00-015 |
| West v. G&H Seed Co. (Crawfish Farmers Litig.) | $27^{th}$ Jud. D. Ct. La., No. 99-C-4984-A |
| Linn v. Roto-Rooter Inc. (Miscellaneous Supplies Charge) | C.P. Ohio, No. CV-467403 |
| McManus v. Fleetwood Enter., Inc. (RV Brake Litigation) | D. Ct. Tex., No. SA-99-CA-464-FB |
| Balz v. Mountain View Cemetery (Burial Practices) | Cal. Super. Ct., No. 809869-2 |
| Stetser v. TAP Pharm. Prods, Inc. & Abbott Laboratories (Lupron Price Litigation) | N.C. Super. Ct., No. 01-CVS-5268 |
| Richison v. Am. Cemwood Corp. (Roofing Durability Settlement) | Cal. Super. Ct., No. 005532 |
| Cotten v. Ferman Mgmt. Servs. Corp. | $13^{th}$ Jud. Cir. Fla., No. 02-08115 |

24

| | |
|---|---|
| *In re Pittsburgh Corning Corp. (Asbestos Related Bankruptcy)* | Bankr. W.D. Pa., No. 00-22876-JKF |
| *Mostajo v. Coast Nat'l Ins. Co.* | Cal. Super. Ct., No. 00 CC 15165 |
| *Friedman v. Microsoft Corp. (Antitrust Litigation)* | Ariz. Super. Ct., No. CV 2000-000722 |
| *Multinational Outreach - East Germany Property Claims* | Claims Conference |
| *Davis v. Am. Home Prods. Corp. (Norplant Contraceptive Litigation)* | Civ. D. Ct. La., Div. K, No. 94-11684 |
| *Walker v. Tap Pharmaceutical Prods., Inc. (Lupron Price Litigation)* | N.J. Super. Ct., No. CV CPM-L-682-01 |
| *Munsey v. Cox Communications (Late Fee Litigation)* | D. Ct., La., Div. E, Sec. 9, No. 97 19571 |
| *Gordon v. Microsoft Corp. (Antitrust Litigation)* | 4th Jud. D. Ct. Minn., No. 00-5994 |
| *Clark v. Tap Pharmaceutical Prods., Inc.* | 5th Dist. App. Ct. Ill., No. 5-02-0316 |
| *Fisher v. Virginia Electric & Power Co.* | E.D. Va., No 3:02-CV-431 |
| *Mantzouris v. Scarritt Motor Group, Inc.* | M.D. Fla., No. 8:03-CV-0015-T-30-MSS |
| *Johnson v. Ethicon, Inc. (Product Liability Litigation)* | Cir. Ct. W. Va. Kanawha Co., Nos. 01-C-1530, 1531, 1533, 01-C-2491 to 2500 |
| *Schlink v. Edina Realty Title* | 4th Jud. D. Ct. Minn., No. 02-018380 |
| *Tawney v. Columbia Natural Res. (Oil & Gas Lease Litigation)* | Cir. Ct. W. Va. Roane Co., No. 03-C-10E |
| *White v. Washington Mutual, Inc. (Pre-Payment Penalty Litigation)* | 4th Jud. D. Ct. Minn., No. CT 03-1282 |
| *Acacia Media Techs. Corp. v. Cybernet Ventures Inc, (Patent Infringement Litigation)* | C.D. Cal., SACV03-1803 GLT (Anx) |
| *Bardessono v. Ford Motor Co. (15 Passenger Vans)* | Wash. Super. Ct., No. 32494 |
| *Gardner v. Stimson Lumber Co. (Forestex Siding Litigation)* | Wash. Super. Ct., No. 00-2-17633-3SEA |
| *Poor v. Sprint Corp. (Fiber Optic Cable Litigation)* | Cir. Ct. Ill. Madison Co., 99-L-421 |
| *Thibodeau v. Comcast Corp.* | E.D. Pa., No. 04-CV-1777 |
| *Cazenave v. Sheriff Charles C. Foti (Strip Search Litigation)* | E.D. La., No. 00-CV-1246 |
| *National Assoc. of Police Orgs., Inc. v. Second Chance Body Armor, Inc. (Bullet Proof Vest Litigation)* | Cir. Ct. Mich. Antrim Co., 04-8018-NP |
| *Nichols v. SmithKline Beecham Corp. (Paxil)* | E.D. Pa., No. 00-6222 |
| *Yacout v. Federal Pacific Electric Co. (Circuit Breaker)* | N.J. Super. Ct., No. MID-L-2904-97 |
| *Lewis v. Bayer AG (Baycol)* | 1st Jud. Dist. Ct. Pa., No. 002353 |
| *In re Educ. Testing Serv. PLT 7-12 Test Scoring Litig.* | E.D. La., MDL-1643 |
| *Stefanyshyn v. Consol. Indus. Corp. (Heat Exchanger)* | Ind. Super. Ct., No. 79 D 01-9712-CT-59 |
| *Barnett v. Wal-Mart Stores, Inc.* | Wash. Super. Ct., No. 01-2-24553-8 SEA |
| *In re Serzone Prods. Liability Litig.* | S.D. W. Va., MDL No. 1477 |
| *Ford Explorer Cases* | Cal. Super. Ct., JCCP Nos. 4226 & 4270 |
| *In re Solutia Inc. (Bankruptcy)* | S.D. N.Y., No. 03-17949-PCB |
| *In re Lupron Marketing & Sales Practices Litig.* | D. Mass., MDL No.1430 |
| *Morris v. Liberty Mutual Fire Ins. Co.* | D. Okla., No. CJ-03-714 |

| | |
|---|---|
| *Bowling, et al. v. Pfizer Inc. (Bjork-Shiley Convexo-Concave Heart Valve)* | S.D. Ohio, No. C-1-91-256 |
| *Thibodeaux v. Conoco Philips Co.* | D. La., No. 2003-481 |
| *Morrow v. Conoco Inc.* | D. La., No. 2002-3860 |
| *Tobacco Farmer Transition Program* | U.S. Dept. of Agric. |
| *Perry v. Mastercard Int'l Inc.* | Ariz. Super. Ct., No. CV2003-007154 |
| *Brown v. Credit Suisse First Boston Corp.* | C.D. La., No. 02-13738 |
| *In re Unum Provident Corp.* | D. Tenn. No. 1:03-CV-1000 |
| *In re Ephedra Prods. Liability Litig.* | D. N.Y., MDL-1598 |
| *Chesnut v. Progressive Casualty Ins. Co.* | Ohio C.P., No. 460971 |
| *Froeber v. Liberty Mutual Fire Ins. Co.* | Cir. Ct. Ore., No. 00C15234 |
| *Luikart v. Wyeth Am. Home Prods. (Hormone Replacment)* | Cir. Ct. W. Va., No. 04-C-127 |
| *Salkin v. MasterCard Int'l Inc. (Pennsylvania)* | Pa. C.P., No. 2648 |
| *Rolnik v. AT&T Wireless Servs., Inc.* | N.J. Super. Ct., No. L-180-04 |
| *Singleton v. Hornell Brewing Co. Inc.* | No. BC 288 754 |
| *Becherer v. Qwest Commc'ns Int'l, Inc.* | Cir. Ct. Ill. Clair Co., No. 02-L140 |
| *Clearview Imaging v. Progressive Consumers Ins. Co.* | Cir. Ct. Fla. Hillsborough Co., No. 03-4174 |
| *Mehl v. Canadian Pacific Railway, Ltd* | D. N.D., No. A4-02-009 |
| *Murray v. IndyMac Bank. F.S.B* | N.D. Ill., No. 04 C 7669 |
| *Gray v. New Hampshire Indemnity Co., Inc.* | Cir. Ct. Ark., No. CV-2002-952-2-3 |
| *George v. Ford Motor Co.* | M.D. Tenn., No. 3:04-0783 |
| *Allen v. Monsanto Co.* | Cir. Ct. W.Va., No 041465 |
| *Carnegie v. Household Int'l, Inc.* | N. D. Ill., No. 98-C-2178 |
| *Daniel v. AON Corp.* | Cir. Ct. Ill., No. 99 CH 11893 |
| *In re Royal Ahold Securities and "ERISA" Litig.* | D. Md., MDL 1539 |
| *In re Pharmaceutical Industry Average Wholesale Price Litig.* | D. Mass., MDL 1456 |
| *Meckstroth v. Toyota Motor Sales, U.S.A., Inc.* | 24th Jud. D. Ct. La., No. 583-318 |
| *Walton v. Ford Motor Co.* | Cal. Super. Ct., No. SCVSS 126737 |
| *Hill v. State Farm Mutual Auto Ins. Co.* | Cal. Super. Ct., No. BC 194491 |
| *First State Orthopaedics et al. v. Concentra, Inc., et al.* | E.D. Pa. No. 2:05-CV-04951-AB |
| *Sauro v. Murphy Oil USA, Inc.* | E.D. La., No. 05-4427 |
| *In re High Sulfur Content Gasoline Prods. Liability Litig.* | E.D. La., MDL No. 1632 |
| *Homeless Shelter Compensation Program* | City of New York |
| *Rosenberg v. Academy Collection Service, Inc.* | E.D. Pa., No. 04-CV-5585 |
| *Chapman v. Butler & Hosch, P.A.* | 2nd Jud. Cir. Fla., No. 2000-2879 |
| *In re Vivendi Universal, S.A. Securities Litig.* | S.D. N.Y., No. 02-CIV-5571 RJH |
| *Desportes v. American General Assurance Co.* | Ga. Super. Ct., No. SU-04-CV-3637 |

| | |
|---|---|
| *In re: Propulsid Products Liability Litig.* | E.D. La., MDL No. 1355 |
| *Baxter v. The Attorney General of Canada (Residential School Attendees)* | Ont. Super. Ct., 00-CV-192059 CPA |
| *McNall v. Mastercard Int'l, Inc. (Currency Conversion Fees)* | 13th Tenn. Jud. Dist. Ct. Memphis |
| *Lee v. Allstate* | Cir. Ct. Ill. Kane Co., No. 03 LK 127 |
| *Turner v. Murphy Oil USA, Inc.* | E.D. La., No. 2:05-CV-04206-EEF-JCW |
| *Carter v. North Central Life Ins. Co.* | Ga. Super. Ct., No. SU-2006-CV-3764-6 |
| *Harper v. Equifax* | E.D. Pa., No. 2:04-CV-03584-TON |
| *Beasley v. Hartford Insurance Co. of the Midwest* | Cir. Ct. Ark., No. CV-2005-58-1 |
| *Springer v. Biomedical Tissue Services, LTD (Human Tissue Litig.)* | Cir. Ct. Ind. Marion Co., No.1:06-CV-00332-SEB-VSS |
| *Spence v. Microsoft Corp. (Antitrust Litig.)* | Cir. Ct. Wis. Milwaukee Co., No. 00-CV-003042 |
| *Pennington v. The Coca Cola Co. (Diet Coke)* | Cir. Ct. Mo. Jackson Co., No. 04-CV-208580 |
| *Sunderman v. Regeneration Technologies, Inc. (Human Tissue Litig.)* | S.D. Ohio, No. 1:06-CV-075-MHW |
| *Peyroux v. The United States of America (New Orleans Levee Breech)* | E.D. La., No. 06-2317 |
| *Chambers v. DaimlerChrysler Corp. (Neon Head Gaskets)* | N.C. Super. Ct., No. 01:CVS-1555 |
| *Ciabattari v. Toyota Motor Sales, U.S.A., Inc. (Sienna Run Flat Tires)* | N.D. Cal., No. C-05-04289-BZ |
| *In re Bridgestone Securities Litig.* | M.D. Tenn. No. 3:01-CV-0017 |
| *In re Mutual Funds Investment Litig. (Market Timing)* | D. Md., MDL No. 1586 |
| *Peek v. Microsoft Corporation* | Cir. Ct. Ark., No. CV-2006-2612 |
| *Reynolds v. The Hartford Financial Services Group, Inc.* | D. Ore., No. CV-01-1529 BR |
| *Schwab v. Philip Morris USA, Inc.* | E.D. N.Y., CV-04-1945 |
| *Zarebski v. Hartford Insurance Co. of the Midwest* | Cir. Ct. Ark., No. CV-2006-409-3 |
| *In re Parmalat Securities Litig.* | S.D. N.Y., MDL No. 1653 (LAK) |
| *Beasley v. The Reliable Life Insurance Co.* | Cir. Ct. Ark., No. CV-2005-58-1 |
| *Satterfield v. Simon & Schuster* | N.D. Cal., No. C-06-2893-CW |
| *Govt. Employees Hospital Assoc. v. Serono Int., S.A.* | D. Mass., 06-CA-10613-PBS |
| *Gunderson v. Focus Healthcare Management, Inc.* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Gunderson v. F.A. Richard & Associates, Inc., et al.* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Perez v. Manor Care of Carrollwood* | 13th Jud. Cir. Fla., No. 06-00574-E |
| *Pope v. Manor Care of Carrollwood* | 13th Jud. Cir. Fla., No. 06-01451-B |
| *West v. Carfax, Inc.* | Ohio C.P., No. 04-CV-1898 (ADL) |
| *Hunsucker v. American Family Mutual Ins. Company* | Cir. Ct. Ark., No., CV-2007-155-3 |
| *In re Conagra Peanut Butter Litigation* | MDL No. 1845 |
| *Burgess v. Farmers Insurance Co., Inc.* | Dist. Ct. Comanche Co., Okla., CJ-2001-292 |
| *Grays Harbor v. Carrier Corporation* | W.D. Wash., No. 05-05437-RBL |

Case 1:04-cv-00006     Document 428-4     Filed 06/22/2007     Page 42 of 43

| Perrine v. E.I. Du Pont De Nemours & Co. | Cir. Ct. W. Va., No. 04-C-296-2 |
| In re Alstom SA Securities Litig. | S.D. N.Y., No. 03-CV-6595 VM |
| Brookshire Bros. v. Chiquita | S.D. Fla., No. 05-CIV-21962 |

Hilsoft-cv-83

# Exhibit 2

# JUDICIAL COMMENTS FROM STATE AND FEDERAL COURTS CITING
# THE REACH OF OUR NOTICE PROGRAMS

Judge Stuart R. Pollak, *Microsoft I-V Cases*, noted on April 1, 2001, J.C.C.P. No.

CJC-00-004106 (Cal. Super. Ct. San Francisco Co.):

> *[C]oncerning dissemination of class notice; and I have reviewed the materials that have been submitted on that subject and basically I'm satisfied. I think it's amazing if you're really getting 80 percent coverage. That's very reassuring. And the papers that you submitted responded to a couple things that had been mentioned before and I am satisfied with all that.*

Judge Louis J. Farina, *Soders v. General Motors Corp.*, stated on October 31,

2003, No. CI-00-04255, (Pa. C.P. Lancaster Co.):

> *Plaintiff provided extensive information regarding the reach of their proposed plan. Their notice expert, Todd Hilsee, opined that their plan will reach 84.8% of the class members. Defendant provided the Court with no information regarding the potential reach of their proposed plan . . . There is no doubt that some class members will remain unaware of the litigation, however, on balance, the Plaintiff's plan is likely to reach as many class members as the Defendant's plan at less than half the cost. As such, I approve the Plaintiff's publication based plan.*

Judge Joe E. Griffin, *Beasley v. Hartford Insurance Co. of the Midwest*, noted on

June 13, 2006, No. CV-2005-58-1 (Cir. Ct. Ark.):

> *[R]eceived testimony from Mr. Hilsee at the Settlement Approval Hearing concerning the success of the notice campaign, including the fact that written notice reached 97.7% of the potential Class members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual Class Members who had an earlier opportunity to request exclusion, but did not do so. The Court also concludes that the lack of valid objections also supports the Court's decision to not offer a second exclusion window . . . Although the Notice Campaign was highly successful and resulted in actual mailed notice being received by over 400,000 Class Members, only one Class Member attempted to file a purported objection to either the Stipulation or Class Counsels' Application for Fees. The Court finds it significant that out of over 400,000 Class Members who received mailed Notice, there was no opposition to the proposed Settlement or Class Counsels' Application for Fees, other than the single void objection. The lack of opposition by a well-noticed Class strongly supports the*

> *fairness, reasonableness and adequacy of the Stipulation and
> Class Counsels' Application for Fees.*

Judge Douglas L. Combs, *Morris v. Liberty Mutual Fire Ins. Co.*, stated on

February 22, 2005, No. CJ-03-714 (D. Okla.):

> *I want the record also to demonstrate that with regard to notice,
> although my experience – this Court's experience in class actions
> is much less than the experience of not only counsel for the
> plaintiffs, counsel for the defendant, but also the expert witness,
> Mr. Hilsee, I am very impressed that the notice was able to reach –
> be delivered to 97 ½ percent members of the class. That, to me, is
> admirable. And I'm also – at the time that this was initially
> entered, I was concerned about the ability of notice to be
> understood by a common, nonlawyer person, when we talk about
> legalese in a court setting. In this particular notice, not only the
> summary notice but even the long form of the notice were easily
> understandable, for somebody who could read the English
> language, to tell them whether or not they had the opportunity to
> file a claim.*

Judge Richard G. Stearns, *In re Lupron Marketing and Sales Practice Litig.*,

noted on May 12, 2005, 228 F.R.D. 75, 96 (D. Mass. 2005):

> *With respect to the effectiveness of notice, in the absence of any
> evidence to the contrary, I accept the testimony of Todd Hilsee that
> the plan he designed achieved its objective of exposing 80 percent
> of the members of the consumer class . . .*

Judge John Speroni, in *Avery v. State Farm*, specifically cited the conservative

reach calculations we made on February 25, 1998, No. 97-L-114 (Cir. Ct. Ill.):

> *Mr. Hilsee's opinion that Plaintiffs' proposed Notice Plan will
> have a 'net reach' of at least 76.4% of the potential class members
> through the publication plan, Hilsee Supp. Aff. at Paragraph 17, is
> supportable and verifiable. The 'net reach' of Plaintiffs' proposed
> Notice Plan among State Farm insureds who have had auto parts
> recently installed is slightly higher at 76.7%. This indicates to the
> court that the plan developed by Plaintiffs is particularly well-
> targeted at class members. The conservatism of these 'reach'
> numbers is highlighted by the fact that they do not include the
> effect of Plaintiff's proposed media and internet activities as the*

*additional reach those activities provide can not be scientifically
verified at this time.*

Judge John R. Padova, in *Nichols v. SmithKline Beecham Corp.*, noted when

approving the notice program on April 22, 2005, No. 00-6222 (E.D. Pa.):

> *As required by this court in its Preliminary Approval Order and as
> described in extensive detail in the Affidavit of Todd B. Hilsee on
> Design Implementation and Analysis of Settlement Notice Program
> . . . The Court finds that the Notice provided in this case satisfies
> the requirements of due process and Federal Rules of Civil
> Procedure . . . Pursuant to Order dated October 18, 2004, End-
> Payor Plaintiffs employed Hilsoft Notifications to design and
> oversee Notice to the End-Payor Class . . . End-Payor Plaintiffs
> used published Summary Notice to reach consumer members of the
> End-Payor Class, not individual mailed Notice . . . Todd Hilsee of
> Hilsoft Notifications, believes that Notice has reached 81.9% of all
> Paxil users . . .*

Chancellor Dewey C. Whitenton, *Ervin v. Movie Gallery, Inc.*, stated on

November 22, 2002, No. 13007 (Tenn. Ch.):

> *Based on the evidence submitted and based on the opinions of
> Todd Hilsee, a well-recognized expert in the distribution of class
> notices, the in-store notice alone accounted for an approximate
> 34% of all MGA class members and the combined efforts of the in-
> store notice and the other notice mechanisms reached at least
> 84.5% of the entire MGA settlement class. According to Mr.
> Hilsee, the notice effort - including the in-store personal
> distribution of notice that the MGA store personnel enacted 'was
> among the most successful and effective that I have observed in all
> my notification experience'.*

Judge Sarah S. Vance, *In re Educational Testing Services Praxis Principles of*

*Learning and Teaching: Grades 7-12 Litig.*, noted on August 31, 2006, MDL

1643 (D. Ct. La. 2005):

> *At the fairness hearing, the Court received testimony from the
> Notice Administrator, Todd Hilsee, who described the forms and
> procedure used to notify class members of the proposed settlement*

> *and their rights with respect to it. The Notice Administrator testified that the notice was mailed and actually delivered to 96% of the approximately 27,000 class members, which, according to Hilsee, was one of the highest success rates with direct mail he had ever been able to achieve...The Court is satisfied that notice to the class fully complied with the requirements of Rule 23.*

Judge Marina Corodemus, in *Talalai v. Cooper Tire & Rubber Co.,* stated on

October 30, 2001, No. MID-L-8839-00 MT (N.J. Super. Ct. Middlesex Co.):

> *The notice program is specifically designed to reach a substantial percentage of the putative settlement class members. Mr. Hilsee's report reveals that the proposed notice plan is designed to effectively reach 83.2% of owners of defendant's tires as well as the broader target of adults 35+, and 82.9% of key groups that account for the largest share of tire purchases such as men 35+.*

# Exhibit 3

LEGAL NOTICE

# If you are a woman and are or were employed by MNO, a class action lawsuit may affect your rights.

You may be affected by a class action lawsuit about whether MNO, Inc. discriminated against women.

The lawsuit is called *Johnson v. MNO, Inc.*, No. CV-00-1234, and is in the United States District Court for the District of State. The Court decided this lawsuit should be a class action on behalf of a "Class," or group of people, that could include you. This notice summarizes your rights and options before an upcoming trial. More information is in a detailed notice available at the website below. If you're included, you have to decide whether to stay in the Class and be bound by whatever results, or ask to be excluded and keep your right to sue MNO. **There is no money available now and no guarantee that there will be.**

## ARE YOU AFFECTED?

Women employed as account executives by MNO, Inc. at any time from June 6, 1996, through July 15, 2003, are Class members. This includes women currently employed, as long as they were hired on or before July 15, 2003, as well as those no longer employed, but who were employed any time from June 6, 1996, through July 15, 2003. Those who worked at MNO as independent contractors are NOT included.

## WHAT IS THIS CASE ABOUT?

The lawsuit claims that MNO discriminated against female account executives. The suit claims women received less pay than men in similar jobs. It also says that MNO required women to achieve more than men to get promoted. The lawsuit seeks to ensure an equal workplace for women, as well as money or benefits for the Class.

MNO denies it did anything wrong and says it has a fair workplace that gives women the same opportunities as men. **The Court has not decided whether the Class or MNO is right.** The lawyers for the Class will have to prove their claims at a trial set to begin on Month 00, 0000.

## Who's affected?

**Women account executives employed by MNO, Inc. any time from June 6, 1996, through July 15, 2003, including current and former employees, and full and part-time employees.**

## WHO REPRESENTS YOU?

The Court asked Lawfirm One, LLP of City, ST and Lawfirm Two, P.C. of City, ST, to represent you as "Class Counsel." You don't have to pay Class Counsel, or anyone else, to participate. Instead, if they get money or benefits for the Class, they may ask the Court for attorneys' fees and costs, which would be paid by MNO or out of any money recovered, before giving the rest to the Class. You may hire your own lawyer to appear in Court for you; if you do, you have to pay that lawyer. Mary Johnson and Louise Smith are Class members like you, and the Court accepted them as the "Class Representatives."

## WHAT ARE YOUR OPTIONS?

You have a choice of whether to stay in the Class or not, and **you must decide this now.** If you stay in the Class, you will be legally bound by all orders and judgments of the Court, and you won't be able to sue, or continue to sue, MNO—as part of any other lawsuit—for gender discrimination that occurred from June 6, 1996, through July 15, 2003. If money or benefits are obtained, you will be notified about how to get a share. To stay in the Class, you do not have to do anything now.

If you ask to be excluded from the Class, you cannot get any money or benefits from this lawsuit if any are awarded, but you will keep any rights to sue MNO for these claims, now or in the future, and will not be bound by any orders or judgments of the Court. To ask to be excluded, send a letter to the address below, postmarked by **Month 00, 0000,** that says you want to be excluded from *Johnson v. MNO, Inc.* Include your name, address, and telephone number.

## HOW CAN YOU GET MORE INFORMATION?

If you have questions or want a detailed notice or other documents about this lawsuit and your rights, visit www.mnoclassaction.com, or write to: MNO Class Action, P.O. Box 000, City, ST 00000-0000.

# www.mnoclassaction.com

# If you are a woman and are or were employed by MNO, a class action lawsuit may affect your rights.

*A court authorized this notice. This is not a solicitation from a lawyer.*

- Female employees have sued MNO, Inc., alleging discrimination against women.

- The Court has allowed the lawsuit to be a class action on behalf of all women employed by MNO as account executives at any time from June 6, 1996, through July 15, 2003.

- The Court has not decided whether MNO did anything wrong. There is no money available now, and no guarantee there will be. However, your legal rights are affected, and you have a choice to make now:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **DO NOTHING** | **Stay in this lawsuit. Await the outcome. Give up certain rights.** By doing nothing, you keep the possibility of getting money or benefits that may come from a trial or a settlement. But, you give up any rights to sue MNO separately about the same legal claims in this lawsuit. |
| **ASK TO BE EXCLUDED** | **Get out of this lawsuit. Get no benefits from it. Keep rights.** If you ask to be excluded and money or benefits are later awarded, you won't share in those. But, you keep any rights to sue MNO separately about the same legal claims in this lawsuit. |

- Your options are explained in this notice. To ask to be excluded, you must act before **Month 00, 0000.**

- Lawyers must prove the claims against MNO at a trial set to start Month 00, 0000. If money or benefits are obtained from MNO, you will be notified about how to ask for a share.

- **Any questions? Read on and visit www.mnoclassaction.com.**

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**............................................. PAGE 3
1. Why did I get this notice?
2. What is this lawsuit about?
3. What is a class action and who is involved?
4. Why is this lawsuit a class action?

**THE CLAIMS IN THE LAWSUIT**............................. PAGE 4
5. What does the lawsuit complain about?
6. How does MNO answer?
7. Has the Court decided who is right?
8. What are the Plaintiffs asking for?
9. Is there any money available now?

**WHO IS IN THE CLASS**.................................... PAGE 5
10. Am I part of this Class?
11. Which current and former employees are included?
12. Are any women who worked at MNO not included in the Class?
13. I'm still not sure if I am included.

**YOUR RIGHTS AND OPTIONS**........................... PAGE 6
14. What happens if I do nothing at all?
15. Why would I ask to be excluded?
16. How do I ask the Court to exclude me from the Class?

**THE LAWYERS REPRESENTING YOU**................... PAGE 7
17. Do I have a lawyer in this case?
18. Should I get my own lawyer?
19. How will the lawyers be paid?

**THE TRIAL**.................................................. PAGE 7
20. How and when will the Court decide who is right?
21. Do I have to come to the trial?
22. Will I get money after the trial?

**GETTING MORE INFORMATION**........................ PAGE 8
23. Are more details available?

# BASIC INFORMATION

## 1. Why did I get this notice?

MNO's records show that you currently work, or previously worked, for MNO, Inc. This notice explains that the Court has allowed, or "certified," a class action lawsuit that may affect you. You have legal rights and options that you may exercise before the Court holds a trial. The trial is to decide whether the claims being made against MNO, on your behalf, are correct. Judge Jane Jones of the United States District Court for the District of State is overseeing this class action. The lawsuit is known as *Johnson, et al., v. MNO, Inc.*, Civil Action No. CV-00-1234.

## 2. What is this lawsuit about?

This lawsuit is about whether MNO discriminated against female account executives based on their gender, by making it harder for them to advance in their careers. More information about federal laws prohibiting job discrimination can be found at the website of the U.S. Equal Employment Opportunity Commission, www.eeoc.gov.

## 3. What is a class action and who is involved?

In a class action lawsuit, one or more people called "Class Representatives" (in this case Mary Johnson and Louise Smith) sue on behalf of other people who have similar claims. The people together are a "Class" or "Class Members." The women who sued—and all the Class Members like them—are called the Plaintiffs. The company they sued (in this case MNO, Inc.) is called the Defendant. One court resolves the issues for everyone in the Class—except for those people who choose to exclude themselves from the Class.

## 4. Why is this lawsuit a class action?

The Court decided that this lawsuit can be a class action and move towards a trial because it meets the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts. Specifically, the Court found that:

- There are more than 90,000 women who are or were employed by MNO as account executives;
- There are legal questions and facts that are common to each of them;
- Mary Johnson's and Louise Smith's claims are typical of the claims of the rest of the Class;
- Ms. Johnson, Ms. Smith, and the lawyers representing the Class will fairly and adequately represent the Class' interests;
- The common legal questions and facts are more important than questions that affect only individuals; and
- This class action will be more efficient than having many individual lawsuits.

More information about why the Court is allowing this lawsuit to be a class action is in the Court's Order Certifying the Class, which is available at www.mnoclassaction.com.

# THE CLAIMS IN THE LAWSUIT

## 5. What does the lawsuit complain about?

In the lawsuit, the Plaintiffs say that MNO discriminated against women account executives. They claim that these women received less pay than men in similar jobs. They also say that MNO made promotions to account supervisor positions more difficult for women because they had to demonstrate greater achievements than men. You can read the Plaintiffs' <u>Class Action Complaint</u> at www.mnoclassaction.com.

## 6. How does MNO answer?

MNO denies that it did anything wrong and says that opportunities for hiring and promotion are equally available to women and men. MNO says that its policies are clear and that they neither allow, nor condone, discrimination against women. MNO says that women advanced as often as men, and that greater achievements are not necessary for women to qualify for a promotion. MNO's <u>Answer to the Complaint</u> is also at the website.

## 7. Has the Court decided who is right?

The Court hasn't decided whether MNO or the Plaintiffs are correct. By establishing the Class and issuing this Notice, the Court is not suggesting that the Plaintiffs will win or lose this case. The Plaintiffs must prove their claims at a trial starting Month 00, 0000. (See "The Trial" below on page 7.)

## 8. What are the Plaintiffs asking for?

The Plaintiffs are asking for changes in MNO's policies to ensure that women are treated fairly and equally in the workplace. They want MNO's policies to say that discrimination based on gender is banned. The Plaintiffs also want lost wages and money for emotional distress for Class Members.

## 9. Is there any money available now?

No money or benefits are available now because the Court has not yet decided whether MNO did anything wrong, and the two sides have not settled the case. There is no guarantee that money or benefits ever will be obtained. If they are, you will be notified about how to ask for a share.

# WHO IS IN THE CLASS

You need to decide whether you are affected by this lawsuit.

## 10. Am I part of this Class?

Judge Jones decided that all women who were employed by MNO, Inc. as account executives (full time or part time) at any time from June 6, 1996, through July 15, 2003, are Class Members. She also specified that "temp" employees and independent contractors are *not* part of the class. See question 12 below.

## 11. Which current and former employees are included?

Former employees are in the Class as long as they were employed by MNO any time from June 6, 1996, through July 15, 2003. If you were hired after July 15, 2003—even if you are a current employee—you are not included. In other words, these women are included:

- **Women account executives currently employed by MNO who were hired on or before July 15, 2003.**
- **Women account executives no longer employed by MNO but who were employed by MNO any time from June 6, 1996, through July 15, 2003.**

## 12. Are any women who worked at MNO not included in the Class?

If you *worked at* MNO during the time period in question 10, but you were not directly *employed by* MNO, you are NOT a Class Member. Think about whether you were paid for your work at MNO by a temporary staffing service or an independent contractor for MNO. If so, you were not employed by MNO. If you were later hired by MNO after a temporary period, you may be part of the Class as long as MNO hired you on or before July 15, 2003.

## 13. I'm still not sure if I am included.

If you are still not sure whether you are included, you can get free help at www.mnoclassaction.com, or by calling or writing to the lawyers in this case, at the phone number or address listed in question 23.

Case 1:04-cv-00006    Document 428-5    Filed 06/22/2007    Page 12 of 39

# YOUR RIGHTS AND OPTIONS

You have to decide whether to stay in the Class or ask to be excluded before the trial, and you have to decide this now.

## 14. What happens if I do nothing at all?

You don't have to do anything now if you want to keep the possibility of getting money or benefits from this lawsuit. By doing nothing you are staying in the Class. If you stay in and the Plaintiffs obtain money or benefits, either as a result of the trial or a settlement, you will be notified about how to apply for a share (or how to ask to be excluded from any settlement). Keep in mind that if you do nothing now, regardless of whether the Plaintiffs win or lose the trial, you will not be able to sue, or continue to sue, MNO—as part of any other lawsuit—about the same legal claims that are the subject of this lawsuit. This means that if you do nothing, you may only be able to sue for gender discrimination that occurred *before* June 6, 1996 or occurs *after* July 15, 2003 only. You will also be legally bound by all of the Orders the Court issues and judgments the Court makes in this class action.

## 15. Why would I ask to be excluded?

If you already have your own gender discrimination lawsuit against MNO and want to continue with it, you need to ask to be excluded from the Class. If you exclude yourself from the Class—which also means to remove yourself from the Class, and is sometimes called "opting-out" of the Class—you won't get any money or benefits from this lawsuit even if the Plaintiffs obtain them as a result of the trial or from any settlement (that may or may not be reached) between MNO and the Plaintiffs. However, you may then be able to sue or continue to sue MNO for employment discrimination that occurred or occurs at any time. If you exclude yourself, you will not be legally bound by the Court's judgments in this class action.

If you start your own lawsuit against MNO after you exclude yourself, you'll have to hire and pay your own lawyer for that lawsuit, and you'll have to prove your claims. If you do exclude yourself so you can start or continue your own lawsuit against MNO, you should talk to your own lawyer soon, because your claims may be subject to a statute of limitations.

Note that if you exclude yourself from this lawsuit and you are currently employed by MNO, any changes made to MNO's policies about the treatment of women would still apply to you.

## 16. How do I ask the Court to exclude me from the Class?

To ask to be excluded, you must send an "Exclusion Request" in the form of a letter sent by mail, stating that you want to be excluded from *Johnson v. MNO*. Be sure to include your name and address, and sign the letter. You must mail your Exclusion Request postmarked by **Month 00, 0000,** to: Johnson v. MNO Exclusions, P.O. Box 0000, City, ST 00000-0000. You may also get an Exclusion Request form at the website, www.mnoclassaction.com.

# THE LAWYERS REPRESENTING YOU

## 17. Do I have a lawyer in this case?

The Court decided that the law firms of Lawfirm One, LLP, of City, ST, and Lawfirm Two, P.C., of City, ST, are qualified to represent you and all Class Members. Together the law firms are called "Class Counsel." They are experienced in handling similar cases against other employers. More information about these law firms, their practices, and their lawyers' experience is available at www.lawfirmone.com and www.lawfirmtwo.com.

## 18. Should I get my own lawyer?

You do not need to hire your own lawyer because Class Counsel is working on your behalf. But, if you want your own lawyer, you will have to pay that lawyer. For example, you can ask him or her to appear in Court for you if you want someone other than Class Counsel to speak for you.

## 19. How will the lawyers be paid?

If Class Counsel get money or benefits for the Class, they may ask the Court for fees and expenses. You won't have to pay these fees and expenses. If the Court grants Class Counsels' request, the fees and expenses would be either deducted from any money obtained for the Class or paid separately by MNO.

# THE TRIAL

The Court has scheduled a trial to decide who is right in this case.

## 20. How and when will the Court decide who is right?

As long as the case isn't resolved by a settlement or otherwise, Class Counsel will have to prove the Plaintiffs' claims at a trial. The trial is set to start on Tuesday, Month 00, 0000, in the United States District Court for the District of State, 100 Court Street, City, State, in Courtroom 1. During the trial, a Jury or the Judge will hear all of the evidence to help them reach a decision about whether the Plaintiffs or Defendant are right about the claims in the lawsuit. There is no guarantee that the Plaintiffs will win, or that they will get any money for the Class.

## 21. Do I have to come to the trial?

You do not need to attend the trial. Class Counsel will present the case for the Plaintiffs, and MNO will present the defenses. You or your own lawyer are welcome to come at your own expense.

## 22. Will I get money after the trial?

If the Plaintiffs obtain money or benefits as a result of the trial or a settlement, you will be notified about how to participate. We do not know how long this will take.

# GETTING MORE INFORMATION

## 23. Are more details available?

Visit the website, www.mnoclassaction.com, where you will find the Court's Order Certifying the Class, the Complaint that the Plaintiffs submitted, the Defendant's Answer to the Complaint, as well as an Exclusion Request form. You may also speak to one of the lawyers by calling 1-000-000-0000, or by writing to: MNO Class Action, P.O. Box 000, City, ST 00000-0000.

DATE: MONTH 00, 0000.

# If you were exposed to Xbestos or other ABC products, you may have a claim in a proposed class action settlement.

A settlement of a class action lawsuit affects you if you were ever exposed to asbestos in Xinsulation, Xbestos, or other ABC Corporation products. The settlement will pay people who are suffering from an asbestos-related disease, as well as those who were exposed, but not sick, who need medical monitoring. If you qualify, you may send in a claim form to ask for payment, or you can exclude yourself from the settlement, or object.

The United States District Court for the District of State authorized this notice. The Court will have a hearing to consider whether to approve the settlement, so that the benefits may be paid.

## Who's Affected?

Construction workers who installed, or worked around, Xbestos, Xinsulation, and other ABC products (pictured and described to the right) are included in the settlement. Homeowners whose homes have or had Xinsulation are also included, as described in separate notices. *You're a 'Class Member' if you were exposed to asbestos fibers in any ABC Corporation products any time before Month 00, 0000.*

## What's this About?

The lawsuit claimed that ABC made and sold products knowing that the asbestos fibers contained in them posed a danger to the health and safety of anyone exposed to them. The suit claimed that exposure increased the risk of developing Asbestosis, Mesothelioma, Lung Cancer, or other diseases that scientists have associated with exposure to asbestos. ABC denies all allegations and has asserted many defenses. The settlement is not an admission of wrongdoing or an indication that any law was violated.

## What can you Get from the Settlement?

There will be an Injury Compensation Fund of $200 million for Class Members who have been diagnosed with an asbestos-related disease, and a $70 million Medical Monitoring Fund for checking the health of those who were exposed but are not



Did you work around ABC building products?

ABC Corp. made building products such as Xbestos, Xbestos and Zbestos, used in the construction of buildings and homes. You may have been exposed to asbestos by installing them or working at the site. Asbestos fibers on your clothing may have exposed your family. If you're not sure whether you worked around ABC products, call or visit the website below.

currently suffering from an asbestos-related disease. Compensation for injuries will be in varying amounts for specific diseases:

| Disease | Minimum | Maximum | Average |
|---|---|---|---|
| Mesothelioma | $10,000 | $100,000 | $20,000-$30,000 |
| Lung Cancer | $5,000 | $43,000 | $9,000-$15,000 |
| Other Cancer | $2,500 | $16,000 | $4,000-$6,000 |
| Non-Malignant | $1,250 | $15,000 | $3,000-$4,000 |

Medical monitoring payments will be $1,000 or the amount of your actual medical expenses, whichever is greater.

## How do you Get a Payment?

A detailed notice and claim form package contains everything you need. Just call or visit the website below to get one. **Claim forms are due by Month 00, 0000.** For an injury compensation claim, you'll have to submit a statement from a doctor that describes your current medical condition and confirms that you have one of the diseases in the box above. For a medical monitoring claim, you'll have to show proof of your exposure to an ABC asbestos-containing product.

## What are your Options?

If you don't want a payment and you don't want to be legally bound by the settlement, you must exclude yourself by **Month 00, 0000,** or you won't be able to sue, or continue to sue, ABC about the legal claims in this case. If you exclude yourself, you can't get a payment from this settlement. If you stay in the Class, you may object to the settlement by **Month 00, 0000.** The detailed notice describes how to exclude yourself or object. The Court will hold a hearing in this case (*Smith v. ABC Corp.*, Case No. CV-00-1234) on **Month 00, 0000,** to consider whether to approve the settlement and attorneys' fees and expenses totalling no more than $30 million. You may appear at the hearing, but you don't have to. For more details, call toll free 1-800-000-0000, go to www.ABCsettlement.com, or write to ABC Settlement, P.O. Box 000, City, ST 00000.

**1-800-000-0000**     **www.ABCsettlement.com**



Notice Administrator for U.S. District Court
P.O. Box 00000
City, ST 00000-0000

## Notice to those who worked around Xbestos and other ABC products.

John Q. Class Member
123 Anywhere Street
Anytown, ST 12345-1234

(Above: Front of outside of Notice mailing)

(Below: Back of outside of Notice mailing)

**If you were exposed to Xbestos or other ABC products, you could get a payment from a class action settlement.**

# If you were ever exposed to asbestos in ABC Corporation products, you could get a payment from a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- The settlement will provide $270 million to pay claims from those who are currently suffering from an asbestos-related disease, as well as those exposed but not sick, who need medical monitoring.

- To qualify, you must have been exposed to asbestos in ABC Corporation products. Your exposure may have happened in different ways:

  o **Homeowners may have had ABC's Xinsulation in their attics or walls.**

  o **Workers may have installed ABC building products like Xbestos.**

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment. |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that allows you to ever be part of any other lawsuit against ABC, about the legal claims in this case. |
| **OBJECT** | Write to the Court about why you don't like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no payment. Give up rights. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after appeals are resolved. Please be patient.

---

**QUESTIONS?** CALL 1-800-000-0000 TOLL FREE, OR VISIT ABCSETTLEMENT.COM

PARA UNA NOTIFICACIÓN EN ESPAÑOL., LLAMAR O VISITAR NUESTRO WEBSITE

# WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ................................................. PAGE 3
1. Why did I get this notice package?
2. What is this lawsuit about?
3. Why is this a class action?
4. Why is there a settlement?

**WHO IS IN THE SETTLEMENT** ........................................ PAGE 4
5. How do I know if I am part of the settlement?
6. Which ABC products are included?
7. If I was exposed but do not have any disease, am I included?
8. I'm still not sure if I am included.

**THE SETTLEMENT BENEFITS—WHAT YOU GET** ................... PAGE 5
9. What does the settlement provide?
10. What can I get from the settlement?
11. What if I get sick, or I am exposed to asbestos in ABC products, in the future?

**HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM** ...... PAGE 7
12. How can I get a payment?
13. When would I get my payment?
14. What am I giving up to get a payment or stay in the Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ................. PAGE 7
15. How do I get out of the settlement?
16. If I don't exclude myself, can I sue ABC for the same thing later?
17. If I exclude myself, can I get money from this settlement?

**THE LAWYERS REPRESENTING YOU** ................................. PAGE 8
18. Do I have a lawyer in the case?
19. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ................................... PAGE 8
20. How do I tell the Court that I don't like the settlement?
21. What's the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING** ................................... PAGE 9
22. When and where will the Court decide whether to approve the settlement?
23. Do I have to come to the hearing?
24. May I speak at the hearing?

**IF YOU DO NOTHING** ................................................. PAGE 10
25. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ...................................... PAGE 10
26. Are there more details about the settlement?
27. How do I get more information?

# BASIC INFORMATION

## 1. Why did I get this notice package?

You or someone in your family may have owned or lived in a home or other property with Xinsulation. Or you or a family member may have worked around Xbestos, Xinsulation, or other asbestos-containing products made or sold by ABC Corporation.

The Court sent you this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the settlement. If the Court approves it and after objections and appeals are resolved, an administrator appointed by the Court will make the payments that the settlement allows. You will be informed of the progress of the settlement.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the District of State, and the case is known as *Smith et al v. ABC Corporation*, Case No. CV-00-1234. The people who sued are called Plaintiffs, and the company they sued, ABC, is called the Defendant.

## 2. What is this lawsuit about?

The lawsuit claimed that ABC made and sold products knowing that the asbestos fibers contained in them posed a danger to the health and safety of anyone exposed to them. The lawsuit claimed that exposure increased the risk of developing asbestosis, mesothelioma, lung cancer, or other diseases that scientists have associated with exposure to asbestos. ABC denies they did anything wrong.

## 3. Why is this a class action?

In a class action, one or more people, called Class Representatives (in this case Frederick Smith), sue on behalf of people who have similar claims. All these people are a Class or Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class. U.S. District Judge Jane Jones is in charge of this class action.

## 4. Why is there a settlement?

The Court did not decide in favor of Plaintiffs or Defendants. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and the people affected will get compensation. The Class Representative and the attorneys think the settlement is best for everyone who was injured or exposed.

# WHO IS IN THE SETTLEMENT

To see if you will get money from this settlement, you first have to decide if you are a Class Member.

## 5. How do I know if I am part of the settlement?

Judge Jones decided that everyone who fits this description is a Class Member: *All people exposed to asbestos fibers in any ABC Corporation product any time before Month 00, 0000.*

## 6. Which ABC products are included?

If you're not sure whether you were exposed to ABC products, look at these pictures and captions:

### DID YOU WORK AROUND OR INSTALL ABC BUILDING PRODUCTS?

ABC made Xbestos, Xinsulation, and other building products called Ybestos and Zbestos. These products were sprayed on during the construction of high-rise office buildings and many other structures and homes. You may have been exposed to asbestos by either installing the products directly, or simply by working at the site. You may have brought asbestos fibers home on your clothing, exposing your family.

### DID YOUR HOME EVER HAVE XINSULATION?

Xinsulation is in the attics and walls of older homes. It's loose, white, and fluffy. It's shaped like a small cotton ball, varying from silver-blue to gray-black. It is layered with a glittery, puffy appearance that may have a translucent or brownish hue. After years in the attic, the granules may darken to black or gray. **Be careful not to disturb it.** It may be underneath other types of insulation. The settlement provides for someone to come and test it for you, if you call and ask.

 

**Did a family member ever work around ABC's asbestos products? He or she may be included.**

**Did your home or property ever have Xinsulation? You're included even if you don't live there anymore.**

Case 1:04-cv-00006     Document 428-5     Filed 06/22/2007     Page 21 of 39

## 7. If I was exposed but do not have any disease, am I included?

Yes. You don't have to have a disease to be part of this settlement. The Class includes all those who have certain asbestos-related diseases. The Class also includes those who were exposed but are not currently suffering from an asbestos-related disease and who may need medical monitoring—even those who haven't visited a doctor. The settlement payments are different for sick and for healthy people.

## 8. I'm still not sure if I am included.

If you are still not sure whether you are included, you can ask for free help. You can call 1-800-000-0000 and ask for an independent inspector to come see if your insulation is Xinsulation. **Some government agencies warn that the asbestos in Xinsulation is dangerous to your health, so do not disturb it.** For more information, you can also visit the website, www.ABCsettlement.com. Or you can fill out and return the claim form described on page 7, in question 12, to see if you qualify.

# THE SETTLEMENT BENEFITS—WHAT YOU GET

## 9. What does the settlement provide?

ABC has agreed to create an Injury Compensation Fund of $200 million for Class Members who have been diagnosed with an asbestos-related disease, and another $70 million Medical Monitoring Fund for assessing the health of those who were exposed but not currently suffering from an asbestos-related disease. ABC will also pay claims for future injuries among Class Members already exposed who request medical monitoring.

## 10. What can I get from the settlement?

### ARE YOU INJURED?

If you have been diagnosed with an asbestos-related disease, you may be eligible for payment from the Injury Compensation Fund. These are the payment amounts for specific asbestos-related diseases:

| INJURY COMPENSATION FUND PAYMENTS | | | |
|---|---|---|---|
| Disease | Minimum | Maximum | Average |
| Mesothelioma | $10,000 | $100,000 | $20,000-$30,000 |
| Lung Cancer | $5,000 | $43,000 | $9,000-$15,000 |
| Other Cancer | $2,500 | $16,000 | $4,000-$6,000 |
| Non-Malignant | $1,250 | $15,000 | $3,000-$4,000 |

If, after everyone sends in claim forms, the injury compensation claims total more than $200 million, the payments will be reduced. If the injury compensation claims are less than $200 million, the payments will be increased.

Your payment will be based on how severe your disease is, your medical expenses, and your lost earnings. To get the minimum payment in the table above, you do not have to detail your expenses or lost earnings. To get larger amounts up to the maximum amount, you'll have to prove your medical expenses and document your lost earnings.

## WERE YOU EXPOSED TO ASBESTOS? HAVE YOU BEEN TESTED?

If you were exposed to one or more of ABC's asbestos-containing products, but you are *not* currently suffering from an asbestos-related disease, you may be eligible for payment from the Medical Monitoring Fund according to this table:

| MEDICAL MONITORING FUND PAYMENTS | | |
|---|---|---|
| **Exposure to Asbestos** | **Medical Expenses** | **Payment** |
| You have evidence of exposure to asbestos in an ABC product. | You *do* have evidence of your medical expenses to test for an asbestos-related disease. | $1,000 or your actual expenses, whichever is greater. |
| | You *don't* have evidence of your medical expenses to test for an asbestos-related disease. | $1,000 |

If, after everyone sends in claim forms, the medical monitoring claims total more than $70 million, the payments will be reduced. If the total medical monitoring claims are less than $70 million, the payments will be increased.

### 11. What if I get sick, or I am exposed to asbestos in ABC products, in the future?

**If you were exposed to asbestos in ABC products before Month 00, 0000, you must send in a claim form now, or you will not be able to get a payment under this settlement for injuries that develop in the future.** If you do send a claim form now, and in the future you develop symptoms of the diseases listed in the table on page 5, in question 10, you will be eligible for a payment as shown in that table.

If, in the future, you determine that you need medical monitoring from exposure that took place *after* Month 00, 0000, then you are not bound by this settlement for those claims. This means you can pursue your claims separately from this settlement with your own lawyer.

# HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM

**12. How can I get a payment?**

To qualify for payment, you must send in a claim form. A claim form is attached to this Notice. You can also get a claim form on the Internet at www.ABCsettlement.com. Read the instructions carefully, fill out the form, include all the documents the form asks for, sign it, and mail it postmarked no later than **Month 00, 0000**.

For an injury compensation claim, you'll have to send in a statement from a doctor with a description of your current medical condition, including a diagnosis of one of the types of diseases in the table on page 5, in question 10. For a medical monitoring claim, you have to show that you were exposed to ABC products. You may be asked for additional documentation. Follow all the instructions on the claim form.

**13. When would I get my payment?**

The Court will hold a hearing on Month 00, 0000, to decide whether to approve the settlement. If Judge Jones approves the settlement after that, there may be appeals. It's always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Everyone who sends in a claim form will be informed of the progress of the settlement. Please be patient.

**14. What am I giving up to get a payment or stay in the Class?**

Unless you exclude yourself, you are staying in the Class, and that means that you can't sue, continue to sue, or be part of any other lawsuit against ABC about the legal issues in *this* case. It also means that all of the Court's orders will apply to you and legally bind you. If you sign the claim form, you will agree to a "Release of Claims," attached to the claim form, which describes exactly the legal claims that you give up if you get settlement benefits.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want keep the right to sue or continue to sue ABC, on your own, about the legal issues in this case, then you must take steps to get out. This is called excluding yourself—or is sometimes referred to as opting out of the settlement Class.

**15. How do I get out of the settlement?**

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *Smith v. ABC*. Be sure to include your name, address, telephone number, and your signature. You must mail your exclusion request postmarked no later than **Month 00, 0000**, to:

ABC Exclusions
P.O. Box 0000
City, ST 00000-0000

**QUESTIONS? CALL 1-800-000-0000 TOLL FREE, OR VISIT ABCSETTLEMENT.COM**

You can't exclude yourself on the phone or by e-mail. If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) ABC in the future.

### 16. If I don't exclude myself, can I sue ABC for the same thing later?

No. Unless you exclude yourself, you give up the right to sue ABC for the claims that this settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. You must exclude yourself from *this* Class to continue your own lawsuit. Remember, the exclusion deadline is **Month 00, 0000**.

### 17. If I exclude myself, can I get money from this settlement?

No. If you exclude yourself, do not send in a claim form to ask for any money. But, you may sue, continue to sue, or be part of a different lawsuit against ABC.

# THE LAWYERS REPRESENTING YOU

### 18. Do I have a lawyer in this case?

The Court asked the law firms of Lawfirm One LLP, of City, ST, and Lawfirm Two P.C., of City, ST, to represent you and other Class Members. Together, the lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 19. How will the lawyers be paid?

Class Counsel will ask the Court for attorneys' fees and expenses up to $23,990,000, and a payment of $10,000 to the Class Representative, Frederick Smith. The Court may award less than these amounts. ABC will separately pay the fees and expenses that the Court awards. These amounts will not come out of the funds for payments to Class Members. ABC has agreed not to oppose these fees and expenses. ABC will also separately pay the costs to administer the settlement.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the settlement or some part of it.

### 20. How do I tell the Court that I don't like the settlement?

If you're a Class Member, you can object to the settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object,

Case 1:04-cv-00006    Document 428-5    Filed 06/22/2007    Page 25 of 39

you must send a letter saying that you object to *Smith v. ABC*. Be sure to include your name, address, telephone number, your signature, and the reasons you object to the settlement. Mail the objection to these three different places postmarked no later than **Month 00, 0000**:

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court | Herman Green | Mary Jones |
| United States District Court for the | Lawfirm One LLP | Defensefirm LLP |
| District of State | 100 Main Street | 200 Broad Street |
| 100 Court Street | Suite 100 | Suite 200 |
| City, ST 00000-0000 | City, ST 00000-0000 | City ST, 00000-0000 |

## 21. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

## 22. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at 10:00 a.m. on Tuesday, Month 00, 0000, at the United States District Court for the District of State, 100 Court Street, City, State, in Courtroom One. At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Jones will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

## 23. Do I have to come to the hearing?

No. Class Counsel will answer questions Judge Jones may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

## 24. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Smith v. ABC*." Be sure to include

your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be postmarked no later than **Month 00, 0000,** and be sent to the Clerk of the Court, Class Counsel, and Defense Counsel, at the three addresses on page 9, in question 20. You cannot speak at the hearing if you excluded yourself.

# IF YOU DO NOTHING

## 25. What happens if I do nothing at all?

If you do nothing, you'll get no money from this settlement. But, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against ABC about the legal issues in this case, ever again.

# GETTING MORE INFORMATION

## 26. Are there more details about the settlement?

This notice summarizes the proposed settlement. More details are in a Settlement Agreement. You can get a copy of the Settlement Agreement by writing to Herman Green, Lawfirm One LLP, 100 Main Street, Suite 100, City, ST 00000-0000, or by visiting www.ABCsettlement.com.

## 27. How do I get more information?

You can call 1-800-000-0000 toll free; write to ABC Settlement, P.O. Box 000, City, ST 00000-0000; or visit the website at www.ABCsettlement.com, where you will find answers to common questions about the settlement, a claim form, plus other information to help you determine whether you are a Class Member and whether you are eligible for a payment.

DATE: MONTH 00, 0000.

# If you were exposed to asbestos in Xinsulation, you could get benefits from a class action settlement.

A settlement of a class action lawsuit affects you if you were ever exposed to asbestos in Xinsulation, Xbestos, or other ABC Corporation products. The settlement will pay people who are suffering from an asbestos-related disease, as well as those who were exposed but not sick, who need medical monitoring. If you qualify, you may send in a claim form to ask for payment, or you can exclude yourself from the settlement, or object.

The United States District Court for the District of State authorized this notice. The Court will have a hearing to consider whether to approve the settlement, so that the benefits may be paid.

## WHO'S AFFECTED?

Homeowners whose homes have or had Xinsulation (pictured and described to the right) are included in the settlement. Construction workers who installed, or worked around, Xbestos and other ABC products are also included, as described in separate notices. *You're a 'Class Member' if you were exposed to asbestos fibers in any ABC Corporation products any time before Month 00, 0000.*

## WHAT'S THIS ABOUT?

The lawsuit claimed that ABC made and sold products knowing that the asbestos fibers contained in them posed a danger to the health and safety of anyone exposed to them. The suit claimed that exposure increased the risk of developing Asbestosis, Mesothelioma, Lung Cancer, or other diseases that scientists have associated with exposure to asbestos. ABC denies all allegations and has asserted many defenses. The settlement is not an admission of wrongdoing or an indication that any law was violated.

## WHAT CAN YOU GET FROM THE SETTLEMENT?

There will be an Injury Compensation Fund of $200 million for Class Members who have been diagnosed with an asbestos-related disease, and a $70 million Medical Monitoring Fund for checking the health of those who were exposed but not currently suffering from an asbestos-related disease. Compen-



Did your home ever have Xinsulation?

Xinsulation is in the attics and walls of older homes. It's loose, white, and fluffy. Be careful not to disturb it - it might release other types of insulation. If you're not sure whether your home has or had Xinsulation, you can call toll free or visit the website below.

sation for injuries will be in varying amounts for specific diseases:

| DISEASE | MINIMUM | MAXIMUM | AVERAGE |
|---|---|---|---|
| MESOTHELIOMA | $10,000 | $100,000 | $20,000-$30,000 |
| LUNG CANCER | $5,000 | $43,000 | $9,000-$15,000 |
| OTHER CANCER | $2,500 | $16,000 | $4,000-$6,000 |
| NON-MALIGNANT | $1,250 | $15,000 | $3,000-$4,000 |

Medical monitoring payments will be $1,000 or the amount of your actual medical expenses, whichever is greater.

## HOW DO YOU GET A PAYMENT?

A detailed notice and claim form package contains everything you need. Just call or visit the website below to get one. **Claim forms are due by Month 00, 0000.** For an injury compensation claim, you'll have to submit a statement from a doctor that describes your current medical condition and confirms that you have one of the diseases in the box above. For a medical monitoring claim, you'll have to show proof of your exposure to an ABC asbestos-containing product.

## WHAT ARE YOUR OPTIONS?

If you don't want a payment and you don't want to be legally bound by the settlement, you must exclude yourself by **Month 00, 0000,** or you won't be able to sue, or continue to sue, ABC about the legal claims in this case. If you exclude yourself, you can't get a payment from this settlement. If you stay in the Class, you may object to the settlement by **Month 00, 0000.** The detailed notice describes how to exclude yourself or object. The Court will hold a hearing in this case (*Smith v. ABC Corp.*, Case No. CV-00-1234) on **Month 00, 0000,** to consider whether to approve the settlement and attorneys' fees and expenses totalling no more than $30 million. You may appear at the hearing, but you don't have to. For more details, call toll free 1-800-000-0000, go to www.ABCsettlement.com, or write to ABC Settlement, P.O. Box 000, City, ST 00000.

## 1-800-000-0000    www.ABCsettlement.com

 Notice Administrator for U.S. District Court
P.O. Box 00000
City, ST 00000-0000

## Notice to homeowners and others exposed to asbestos in Xinsulation.

Jane Q. Class Member
123 Anywhere Street
Anytown, ST 12345-1234

(Above: Front of outside of Notice mailing)

(Below: Back of outside of Notice mailing)

**If you were exposed to asbestos in Xinsulation,
you could get a payment from a class action settlement.**

# If you were ever exposed to asbestos in ABC Corporation products, you could get a payment from a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- The settlement will provide $270 million to pay claims from those who are currently suffering from an asbestos-related disease, as well as those exposed but not sick, who need medical monitoring.

- To qualify, you must have been exposed to asbestos in ABC Corporation products. Your exposure may have happened in different ways:

  o **Homeowners may have had ABC's Xinsulation in their attics or walls.**

  o **Workers may have installed ABC building products like Xbestos.**

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment. |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that allows you to ever be part of any other lawsuit against ABC, about the legal claims in this case. |
| **OBJECT** | Write to the Court about why you don't like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no payment. Give up rights. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after appeals are resolved. Please be patient.

---

**QUESTIONS?** CALL 1-800-000-0000 TOLL FREE, OR VISIT ABCSETTLEMENT.COM

PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO WEBSITE

# WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ................................................. PAGE 3
1. Why did I get this notice package?
2. What is this lawsuit about?
3. Why is this a class action?
4. Why is there a settlement?

**WHO IS IN THE SETTLEMENT** ........................................ PAGE 4
5. How do I know if I am part of the settlement?
6. Which ABC products are included?
7. If I was exposed but do not have any disease, am I included?
8. I'm still not sure if I am included.

**THE SETTLEMENT BENEFITS—WHAT YOU GET** .................. PAGE 5
9. What does the settlement provide?
10. What can I get from the settlement?
11. What if I get sick, or I am exposed to asbestos in ABC products, in the future?

**HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM** ...... PAGE 7
12. How can I get a payment?
13. When would I get my payment?
14. What am I giving up to get a payment or stay in the Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ................. PAGE 7
15. How do I get out of the settlement?
16. If I don't exclude myself, can I sue ABC for the same thing later?
17. If I exclude myself, can I get money from this settlement?

**THE LAWYERS REPRESENTING YOU** ................................ PAGE 8
18. Do I have a lawyer in the case?
19. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** .................................. PAGE 8
20. How do I tell the Court that I don't like the settlement?
21. What's the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING** ................................. PAGE 9
22. When and where will the Court decide whether to approve the settlement?
23. Do I have to come to the hearing?
24. May I speak at the hearing?

**IF YOU DO NOTHING** ................................................. PAGE 10
25. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ..................................... PAGE 10
26. Are there more details about the settlement?
27. How do I get more information?

# BASIC INFORMATION

## 1. Why did I get this notice package?

You or someone in your family may have owned or lived in a home or other property with Xinsulation. Or you or a family member may have worked around Xbestos, Xinsulation, or other asbestos-containing products made or sold by ABC Corporation.

The Court sent you this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the settlement. If the Court approves it and after objections and appeals are resolved, an administrator appointed by the Court will make the payments that the settlement allows. You will be informed of the progress of the settlement.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the District of State, and the case is known as *Smith et al v. ABC Corporation*, Case No. CV-00-1234. The people who sued are called Plaintiffs, and the company they sued, ABC, is called the Defendant.

## 2. What is this lawsuit about?

The lawsuit claimed that ABC made and sold products knowing that the asbestos fibers contained in them posed a danger to the health and safety of anyone exposed to them. The lawsuit claimed that exposure increased the risk of developing asbestosis, mesothelioma, lung cancer, or other diseases that scientists have associated with exposure to asbestos. ABC denies they did anything wrong.

## 3. Why is this a class action?

In a class action, one or more people, called Class Representatives (in this case Frederick Smith), sue on behalf of people who have similar claims. All these people are a Class or Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class. U.S. District Judge Jane Jones is in charge of this class action.

## 4. Why is there a settlement?

The Court did not decide in favor of Plaintiffs or Defendants. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and the people affected will get compensation. The Class Representative and the attorneys think the settlement is best for everyone who was injured or exposed.

# WHO IS IN THE SETTLEMENT

To see if you will get money from this settlement, you first have to decide if you are a Class Member.

**5. How do I know if I am part of the settlement?**

Judge Jones decided that everyone who fits this description is a Class Member: *All people exposed to asbestos fibers in any ABC Corporation product any time before Month 00, 0000.*

**6. Which ABC products are included?**

If you're not sure whether you were exposed to ABC products, look at these pictures and captions:

### DID YOU WORK AROUND OR INSTALL ABC BUILDING PRODUCTS?

ABC made Xbestos, Xinsulation, and other building products called Ybestos and Zbestos. These products were sprayed on during the construction of high-rise office buildings and many other structures and homes. You may have been exposed to asbestos by either installing the products directly, or simply by working at the site. You may have brought asbestos fibers home on your clothing, exposing your family.



### DID YOUR HOME EVER HAVE XINSULATION?

Xinsulation is in the attics and walls of older homes. It's loose, white, and fluffy. It's shaped like a small cotton ball, varying from silver-blue to gray-black. It is layered with a glittery, puffy appearance that may have a translucent or brownish hue. After years in the attic, the granules may darken to black or gray. **Be careful not to disturb it.** It may be underneath other types of insulation. The settlement provides for someone to come and test it for you, if you call and ask.



**Did a family member ever work around ABC's asbestos products? He or she may be included.**

**Did your home or property ever have Xinsulation? You're included even if you don't live there anymore.**

### 7. If I was exposed but do not have any disease, am I included?

Yes. You don't have to have a disease to be part of this settlement. The Class includes all those who have certain asbestos-related diseases. The Class also includes those who were exposed but are not currently suffering from an asbestos-related disease and who may need medical monitoring—even those who haven't visited a doctor. The settlement payments are different for sick and for healthy people.

### 8. I'm still not sure if I am included.

If you are still not sure whether you are included, you can ask for free help. You can call 1-800-000-0000 and ask for an independent inspector to come see if your insulation is Xinsulation. **Some government agencies warn that the asbestos in Xinsulation is dangerous to your health, so do not disturb it.** For more information, you can also visit the website, www.ABCsettlement.com. Or you can fill out and return the claim form described on page 7, in question 12, to see if you qualify.

## THE SETTLEMENT BENEFITS—WHAT YOU GET

### 9. What does the settlement provide?

ABC has agreed to create an Injury Compensation Fund of $200 million for Class Members who have been diagnosed with an asbestos-related disease, and another $70 million Medical Monitoring Fund for assessing the health of those who were exposed but not currently suffering from an asbestos-related disease. ABC will also pay claims for future injuries among Class Members already exposed who request medical monitoring.

### 10. What can I get from the settlement?

### ARE YOU INJURED?

If you have been diagnosed with an asbestos-related disease, you may be eligible for payment from the Injury Compensation Fund. These are the payment amounts for specific asbestos-related diseases:

| INJURY COMPENSATION FUND PAYMENTS | | | |
|---|---|---|---|
| Disease | Minimum | Maximum | Average |
| Mesothelioma | $10,000 | $100,000 | $20,000-$30,000 |
| Lung Cancer | $5,000 | $43,000 | $9,000-$15,000 |
| Other Cancer | $2,500 | $16,000 | $4,000-$6,000 |
| Non-Malignant | $1,250 | $15,000 | $3,000-$4,000 |

If, after everyone sends in claim forms, the injury compensation claims total more than $200 million, the payments will be reduced. If the injury compensation claims are less than $200 million, the payments will be increased.

Your payment will be based on how severe your disease is, your medical expenses, and your lost earnings. To get the minimum payment in the table above, you do not have to detail your expenses or lost earnings. To get larger amounts up to the maximum amount, you'll have to prove your medical expenses and document your lost earnings.

## WERE YOU EXPOSED TO ASBESTOS? HAVE YOU BEEN TESTED?

If you were exposed to one or more of ABC's asbestos-containing products, but you are *not* currently suffering from an asbestos-related disease, you may be eligible for payment from the Medical Monitoring Fund according to this table:

| MEDICAL MONITORING FUND PAYMENTS | | |
|---|---|---|
| **Exposure to Asbestos** | **Medical Expenses** | **Payment** |
| You have evidence of exposure to asbestos in an ABC product. | You *do* have evidence of your medical expenses to test for an asbestos-related disease. | $1,000 or your actual expenses, whichever is greater. |
| | You *don't* have evidence of your medical expenses to test for an asbestos-related disease. | $1,000 |

If, after everyone sends in claim forms, the medical monitoring claims total more than $70 million, the payments will be reduced. If the total medical monitoring claims are less than $70 million, the payments will be increased.

### 11. What if I get sick, or I am exposed to asbestos in ABC products, in the future?

**If you were exposed to asbestos in ABC products before Month 00, 0000, you must send in a claim form now, or you will not be able to get a payment under this settlement for injuries that develop in the future.** If you do send a claim form now, and in the future you develop symptoms of the diseases listed in the table on page 5, in question 10, you will be eligible for a payment as shown in that table.

If, in the future, you determine that you need medical monitoring from exposure that took place *after* Month 00, 0000, then you are not bound by this settlement for those claims. This means you can pursue your claims separately from this settlement with your own lawyer.

# HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM

## 12. How can I get a payment?

To qualify for payment, you must send in a claim form. A claim form is attached to this Notice. You can also get a claim form on the Internet at www.ABCsettlement.com. Read the instructions carefully, fill out the form, include all the documents the form asks for, sign it, and mail it postmarked no later than **Month 00, 0000**.

For an injury compensation claim, you'll have to send in a statement from a doctor with a description of your current medical condition, including a diagnosis of one of the types of diseases in the table on page 5, in question 10. For a medical monitoring claim, you have to show that you were exposed to ABC products. You may be asked for additional documentation. Follow all the instructions on the claim form.

## 13. When would I get my payment?

The Court will hold a hearing on Month 00, 0000, to decide whether to approve the settlement. If Judge Jones approves the settlement after that, there may be appeals. It's always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Everyone who sends in a claim form will be informed of the progress of the settlement. Please be patient.

## 14. What am I giving up to get a payment or stay in the Class?

Unless you exclude yourself, you are staying in the Class, and that means that you can't sue, continue to sue, or be part of any other lawsuit against ABC about the legal issues in *this* case. It also means that all of the Court's orders will apply to you and legally bind you. If you sign the claim form, you will agree to a "Release of Claims," attached to the claim form, which describes exactly the legal claims that you give up if you get settlement benefits.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want keep the right to sue or continue to sue ABC, on your own, about the legal issues in this case, then you must take steps to get out. This is called excluding yourself—or is sometimes referred to as opting out of the settlement Class.

## 15. How do I get out of the settlement?

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *Smith v. ABC*. Be sure to include your name, address, telephone number, and your signature. You must mail your exclusion request postmarked no later than **Month 00, 0000**, to:

ABC Exclusions
P.O. Box 0000
City, ST 00000-0000

You can't exclude yourself on the phone or by e-mail. If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) ABC in the future.

## 16. If I don't exclude myself, can I sue ABC for the same thing later?

No. Unless you exclude yourself, you give up the right to sue ABC for the claims that this settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. You must exclude yourself from *this* Class to continue your own lawsuit. Remember, the exclusion deadline is **Month 00, 0000**.

## 17. If I exclude myself, can I get money from this settlement?

No. If you exclude yourself, do not send in a claim form to ask for any money. But, you may sue, continue to sue, or be part of a different lawsuit against ABC.

# THE LAWYERS REPRESENTING YOU

## 18. Do I have a lawyer in this case?

The Court asked the law firms of Lawfirm One LLP, of City, ST, and Lawfirm Two P.C., of City, ST, to represent you and other Class Members. Together, the lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 19. How will the lawyers be paid?

Class Counsel will ask the Court for attorneys' fees and expenses up to $23,990,000, and a payment of $10,000 to the Class Representative, Frederick Smith. The Court may award less than these amounts. ABC will separately pay the fees and expenses that the Court awards. These amounts will not come out of the funds for payments to Class Members. ABC has agreed not to oppose these fees and expenses. ABC will also separately pay the costs to administer the settlement.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the settlement or some part of it.

## 20. How do I tell the Court that I don't like the settlement?

If you're a Class Member, you can object to the settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object,

you must send a letter saying that you object to *Smith v. ABC*. Be sure to include your name, address, telephone number, your signature, and the reasons you object to the settlement. Mail the objection to these three different places postmarked no later than **Month 00, 0000**:

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court | Herman Green | Mary Jones |
| United States District Court for the | Lawfirm One LLP | Defensefirm LLP |
| District of State | 100 Main Street | 200 Broad Street |
| 100 Court Street | Suite 100 | Suite 200 |
| City, ST 00000-0000 | City, ST 00000-0000 | City ST, 00000-0000 |

### 21. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

### 22. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at 10:00 a.m. on Tuesday, Month 00, 0000, at the United States District Court for the District of State, 100 Court Street, City, State, in Courtroom One. At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Jones will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

### 23. Do I have to come to the hearing?

No. Class Counsel will answer questions Judge Jones may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

### 24. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Smith v. ABC*." Be sure to include

Case 1:04-cv-00006   Document 428-5   Filed 06/22/2007   Page 38 of 39

your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be postmarked no later than **Month 00, 0000,** and be sent to the Clerk of the Court, Class Counsel, and Defense Counsel, at the three addresses on page 9, in question 20. You cannot speak at the hearing if you excluded yourself.

# IF YOU DO NOTHING

## 25. What happens if I do nothing at all?

If you do nothing, you'll get no money from this settlement. But, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against ABC about the legal issues in this case, ever again.

# GETTING MORE INFORMATION

## 26. Are there more details about the settlement?

This notice summarizes the proposed settlement. More details are in a Settlement Agreement. You can get a copy of the Settlement Agreement by writing to Herman Green, Lawfirm One LLP, 100 Main Street, Suite 100, City, ST 00000-0000, or by visiting www.ABCsettlement.com.

## 27. How do I get more information?

You can call 1-800-000-0000 toll free; write to ABC Settlement, P.O. Box 000, City, ST 00000-0000; or visit the website at www.ABCsettlement.com, where you will find answers to common questions about the settlement, a claim form, plus other information to help you determine whether you are a Class Member and whether you are eligible for a payment.

DATE: MONTH 00, 0000.

# Si usted ha estado expuesto al asbesto en productos de la Corporación ABC, podría recibir compensación como parte de un acuerdo legal en una demanda colectiva.

*Un tribunal federal autorizó este aviso. Esta no es una solicitud de un abogado.*

- El acuerdo proporcionará $270 millones para pagar reclamos de aquellos que en la actualidad sufran de alguna enfermedad relacionada con asbesto, al igual que a aquellos expuestos que no estén enfermos, quienes necesiten atención médica.

- Para calificar, usted debe haber estado expuesto a asbesto en productos de la Corporación ABC. Tal exposición podrá haber ocurrido de varias maneras:

  o **Propietarios de casa pueden haber tenido Xinsulation en sus áticos o paredes.**

  o **Obreros pueden haber instalado productos de construcción ABC como Xbestos.**

- Sus derechos legales se verán afectados sea que usted tome acción o no. Lea este aviso cuidadosamente.

| SUS DERECHOS LEGALES Y OPCIONES EN ESTE ACUERDO SON: | |
|---|---|
| **SOMETER UNA FORMA DE RECLAMACIÓN** | Es la única manera de recibir pago. |
| **EXCLUIRSE A SÍ MISMO** | No recibirá pago. Esta es la única opción que le permite formar parte de alguna otra demanda sobre reclamos legales en este caso en contra de ABC. |
| **OBJETAR** | Escriba al Tribunal explicando porqué no le agrada el acuerdo. |
| **COMPARECER A AUDIENCIA** | Pida hablar en el Tribunal acerca de que tan justo es el acuerdo. |
| **NO HACER NADA** | No recibirá pago. Renunciará a sus derechos. |

- Estos derechos y opciones—**y las fechas límite para ejercerlas**—están explicados en este aviso.

- El Tribunal encargado de este caso tiene aún que decidir si aprobará el acuerdo. Los pagos se harán si el Tribunal aprueba el acuerdo y después de que se resuelvan las apelaciones. Por favor sea paciente.

**¿PREGUNTAS? LLAME GRATIS AL 1-800-000-0000 O VISITE ABCSETTLEMENT.COM**

## TABLA DE CONTENIDO DE ESTE AVISO

**INFORMACIÓN BÁSICA** ............................................................... PÁGINA 3
1. ¿Por qué recibí este paquete informativo?
2. ¿De qué se trata esta demanda?
3. ¿Por qué es esta una demanda colectiva?
4. ¿Por qué hay un acuerdo?

**¿QUIÉN ES PARTE DEL ACUERDO?** ............................................. PÁGINA 4
5. ¿Cómo sé si soy parte del acuerdo?
6. ¿Qué productos de ABC se incluyen?
7. Si estuve expuesto pero no tengo ninguna enfermedad, ¿Estoy incluido?
8. Aún no estoy seguro de pertenecer al Colectivo.

**BENEFICIOS DEL ACUERDO–LO QUE GANARÁ** ............................. PÁGINA 5
9. ¿Qué provee el acuerdo?
10. ¿Qué puedo obtener del acuerdo?
11. ¿Qué ocurre si me enfermo o soy expuesto a asbesto en productos ABC en el futuro?

**COMO OBTENER UN PAGO–SOMETIENDO UNA FORMA DE RECLAMACIÓN...** PÁGINA 7
12. ¿Cómo puedo obtener un pago?
13. ¿Cuándo recibiré mi pago?
14. ¿A qué estoy renunciando al recibir un pago o al quedarme en el Colectivo?

**EXCLUIRSE A SÍ MISMO DEL ACUERDO** ...................................... PÁGINA 7
15. ¿Cómo me salgo del acuerdo?
16. Si no me excluyo a mi mismo, ¿podría demandar a ABC por la misma razón más adelante?
17. Si me excluyo a mi mismo, ¿podría recibir dinero del acuerdo?

**ABOGADOS QUE LO REPRESENTAN A USTED** ................................. PÁGINA 8
18. ¿Tengo un abogado en el caso?
19. ¿Cómo se pagará el abogado?

**OBJETANDO AL ACUERDO** ......................................................... PÁGINA 9
20. ¿Cómo le digo al Tribunal que no me agrada el acuerdo?
21. ¿Cuál es la diferencia entre objetar y excluir?

**AUDIENCIA DE EQUIDAD DEL TRIBUNAL** ..................................... PÁGINA 10
22. ¿Cuándo y dónde decidirá el Tribunal acerca de aprobar el acuerdo o no?
23. ¿Tengo que comparecer a la audiencia?
24. ¿Puedo hablar en la audiencia?

**SI USTED NO HACE NADA** .......................................................... PÁGINA 10
25. ¿Qué pasa si no hago nada?

**PARA OBTENER MÁS INFORMACIÓN** .......................................... PÁGINA 11
26. ¿Hay más detalles acerca del acuerdo?
27. ¿Cómo consigo más información?

# INFORMACIÓN BÁSICA

## 1. ¿Por qué recibí este paquete informativo?

Usted o alguien más en su familia puede haber tenido o vivido en una casa u otra propiedad con Xinsulation. O usted u otro miembro de su familia podría haber trabajado alrededor de Xbestos, Xinsulation, o algún otro producto conteniendo asbesto producido o vendido por Corporación ABC.

El Tribunal le envía este aviso porque usted tiene derecho a saber acerca de los acuerdos de demandas colectivas y de sus opciones antes de que el Tribunal decida aprobar el acuerdo. Si el Tribunal lo aprueba y después de que las objeciones y las apelaciones se resuelvan un administrador encargado por el Tribunal hará los pagos según permita el acuerdo. Se le informará acerca del progreso del acuerdo.

Este paquete explica la demanda, el acuerdo, sus derechos legales, los beneficios disponibles, quien es elegible para ellos y como obtenerlos.

El Tribunal encargado del caso es el Tribunal del Distrito de los Estados Unidos en el Distrito del Estado y el caso es conocido como *Smith et al v. ABC Corporation*, Case No. CV-00-1234. Las personas que entablaron la demanda se llamarán demandantes y la compañía a la que demandaron, ABC, se llamará el demandado.

## 2. ¿De qué se trata esta demanda?

La demanda alega que ABC fabricó y vendió productos sabiendo que las fibras de asbesto que contenían amenazaban la salud y la seguridad de quien se expusiera a ellos. La demanda alega que la exposición incrementaba el riesgo de desarrollar asbestosis, mesotelioma, cáncer del pulmón, u otras enfermedades que los científicos han asociado con la exposición a asbesto. ABC niega que hayan hecho nada incorrecto.

## 3. ¿Por qué es esta una demanda colectiva?

En una demanda colectiva, una o más personas, llamadas Representantes del Colectivo (en este caso Frederick Smith), demandan en favor de las personas quienes tengan alegaciones similares. Todas estas personas son un Colectivo o Miembros del Colectivo. Un tribunal resuelve los conflictos de todos los Miembros del Colectivo con excepción de aquellos que se excluyan a sí mismos del Colectivo. La Juez del Distrito de los Estados Unidos Jane Jones está a cargo de esta demanda colectiva.

## 4. ¿Por qué hay un acuerdo?

El Tribunal no decidió a favor de los Demandantes o los Demandados. En lugar de eso, ambas partes llegaron a un acuerdo. De esta manera evitan el costo de un juicio y las personas afectadas recibirán una compensación. El Representante del Colectivo y los abogados creen que el acuerdo es la mejor solución para todos aquellos afectados, heridos o expuestos.

Case 1:04-cv-00006   Document 428-6   Filed 06/22/2007   Page 3 of 33

# ¿QUIÉN ES PARTE DEL ACUERDO?

Para saber si obtendrá dinero de este acuerdo primero tiene que decidir si usted es Miembro del Colectivo.

## 5. ¿Cómo sé si soy parte del acuerdo?

La Juez Jones decidió que todo aquel que encaje en esta descripción es un Miembro del Colectivo: *Todas las personas expuestas a fibras de asbesto en cualquier producto de la Corporación ABC en cualquier fecha antes del 00 de mes del año 0000.*

## 6. ¿Qué productos de ABC se incluyen?

Si no está seguro acerca de si usted estuvo expuesto o no a productos de ABC revise las ilustraciones y subtítulos.

### ¿TRABAJÓ CERCA O INSTALÓ PRODUCTOSDE CONSTRUCCIÓN ABC?

ABC fabricó Xbestos, Xinsulation, y otros productos de construcción llamados Ybestos y Zbestos. Estos productos fueron rociados durante la construcción de edificios de oficinas de techos altos y en muchas otras estructuras y hogares. Usted puede haber sido expuesto a asbesto sea instalando los productos directamente o simplemente al trabajar en el lugar. Usted puede haber llevado fibras de asbesto a casa en su ropa exponiendo así a su familia.



### ¿SU CASA TUVO ALGUNA VEZ XINSULATION?

Hay Xinsulation en los áticos y paredes de casas viejas. Es ligero, blanco y blando. Tiene la forma de una pequeña bola de algodón, varía entre azul plateado y gris muy oscuro. Presenta capas con apariencia blanda y con brillos que puede tener un color translúcido y pardusco. Después de algunos años en el ático, los granulitos pueden oscurecerse a negro o gris. **Tenga cuidado de no esparcirlo.** Puede estar bajo otros tipos de aislamiento. El acuerdo brinda la posibilidad de alguien vaya y lo pruebe en su lugar si usted llama y lo solicita.



¿Un miembro de la familia trabajó alguna vez cerca de productos de asbesto de ABC? Esta persona puede ser incluida.

¿Su casa o propiedad tuvo Xinsulation alguna vez? Usted está incluido aún si ya no vive allí.

Case 1:04-cv-00006    Document 428-6    Filed 06/22/2007    Page 4 of 33

Sí. Usted no tiene que estar enfermo para hacer parte de este acuerdo. El Colectivo incluye todo aquel que haya tenido ciertas enfermedades relacionadas con asbesto. El Colectivo también incluye a aquellos que han estado expuestos aunque en el presente no sufran de ninguna enfermedad relacionada con asbesto y que puedan requerir observación médica—aún aquellos que no hayan visitado a un médico. Los pagos del acuerdo son diferentes para personas enfermas y personas que no lo están.

**8. Aún no estoy seguro de pertenecer al Colectivo.**

Si aún no está seguro de pertenecer al Colectivo, puede solicitar ayuda gratuita. Puede llamar al 1-800-000-0000 y solicitar que un inspector independiente vaya a inspeccionar si su aislamiento es Xinsulation. **Algunas agencias gubernamentales han dado la alerta de que el asbesto en Xinsulation es peligroso para su salud, así que no lo toque.** Para más información, visite la página web www.ABCsettlement.com o puede llenar y regresar la forma de reclamación descrita en la página 7, pregunta 12 para saber si usted califica.

# BENEFICIOS DEL ACUERDO–LO QUE GANARÁ

**9. ¿Qué provee el acuerdo?**

ABC ha acordado crear un Fondo de Compensación por Daños de $200 millones por Miembros del Colectivo que hayan sido diagnosticados con una enfermedad relacionada con asbesto y otros $70 millones de Fondo de Observación Médica para diagnosticar la salud de aquellos que estuvieron expuestos pero no se encuentran enfermos en la actualidad. ABC también pagará reclamos por futuros daños entre los Miembros del Colectivo ya expuestos que requieran observación médica.

**10. ¿Qué puedo obtener del acuerdo?**

### ¿ESTÁ USTED AFECTADO?

Si ha sido diagnosticado con una enfermedad relacionada a asbesto, usted puede calificar para un pago por El Fondo de Compensación por Daños. Estas son las cantidades de pago para enfermedades específicas relacionadas con asbesto:

| PAGOS POR EL FONDO DE COMPENSACIÓN POR DAÑOS | | | |
|---|---|---|---|
| **Enfermedad** | **Mínimo** | **Máximo** | **Media** |
| Mesotelioma | $10,000 | $100,000 | $20,000-$30,000 |
| Cáncer De Pulmón | $5,000 | $43,000 | $9,000-$15,000 |
| Otro Cáncer | $2,500 | $16,000 | $4,000-$6,000 |
| No-Maligno | $1,250 | $15,000 | $3,000-$4,000 |

Si después de que todos hayan enviado la forma de reclamación las compensaciones por daños suman una cantidad mayor de $200 millones, los pagos serán reducidos. Si las compensaciones por daños son menores de $200 millones, entonces los pagos serán incrementados.

Su pago estará basado en la gravedad de la enfermedad, sus gastos médicos y el total de las pérdidas. Para recibir el pago mínimo como se señala en la tabla anterior, no es necesario detallar sus gastos o pérdidas. Para obtener cantidades mayores que la cantidad máxima, necesitará probar sus gastos médicos y documentar sus pérdidas.

**HA ESTADO EXPUESTO A ASBESTO? HA RECIBIDO UNA PRUEBA MÉDICA?**

Si usted ha estado expuesto a uno o más productos que contienen asbesto de ABC, pero en la actualidad no sufre de ninguna enfermedad relacionada al asbesto, puede calificar para un pago por Fondos de Observación Médica, de acuerdo a la siguiente tabla:

| PAGOS POR FONDOS DE OBSERVACIÓN MÉDICA | | |
|---|---|---|
| Exposición a asbesto | Gastos Médicos | Pagos |
| Usted tiene evidencia de haber estado expuesto a asbesto en productos ABC. | Usted **tiene** evidencia de sus gastos médicos de haber realizado pruebas médicas para enfermedades relacionadas con asbesto. | $1,000 o sus gastos reales, cualquier cantidad mayor. |
| | Usted **no tiene** evidencia de sus gastos médicos de haber realizado pruebas médicas para enfermedades relacionadas con asbesto. | $1,000 |

Si después de que todos hayan enviado la forma de reclamación, las compensaciones por observación médica suman una cantidad mayor de $70 millones, los pagos serán reducidos. Si las compensaciones por observación médica son menores de $70 millones, entonces los pagos serán incrementados.

### 11. ¿Qué ocurre si me enfermo o soy expuesto a asbesto en productos ABC en el futuro?

**Si usted ha estado expuesto a asbesto en productos ABC antes del 00 de mes del año 0000, deberá enviar una forma de reclamación ahora, de lo contrario no será posible bajo este acuerdo obtener un pago por daños que se desarrollen en el futuro.** Si usted envía una reclamación ahora y en el futuro los síntomas de las enfermedades mencionadas en la tabla de la página 5 se desarrollan, usted califica para un pago por daños como se muestra en la tabla de Pagos por el Fondo de Compensación por Daños de la pregunta 10.

Si en el futuro usted determina que necesita observación médica por exposición que tuvo lugar después del 00 de mes del año 0000, entonces usted no está obligado a seguir este acuerdo para hacer dicha

reclamación. Esto quiere decir que usted puede solicitar su reclamo en forma separada al presente acuerdo y con su propio abogado.

## COMO OBTENER UN PAGO–SOMETIENDO UNA FORMA DE RECLAMACIÓN

### 12. ¿Cómo puedo obtener un pago?

Para calificar para un pago debe enviar una forma de reclamación. Dicha forma se encuentra adjunta a este Aviso. También puede obtener una forma de reclamación en la página web www.ABCsettlement.com. Lea las instrucciones cuidadosamente, incluya todos los documentos solicitados en la forma, fírmela, y envíela por correo, fechada no más tarde del **00 de mes del año 0000**.

Para una reclamación de compensación por daños, deberá enviar una constancia médica con la descripción de su condición médica actual, incluyendo el diagnóstico de uno de los tipos de enfermedades como se explica en la tabla de la página 5, pregunta 10. Para una reclamación por observación médica, deberá mostrar que usted estuvo expuesto a productos de ABC. Puede pedírsele documentación adicional. Siga todas las instrucciones de la forma de reclamación.

### 13. ¿Cuándo recibiré mi pago?

El Tribunal hará una audiencia en el 00 de mes del año 0000 para decidir si aprueba el acuerdo. Si la Juez Jones aprueba el acuerdo, después de esto, pueden haber apelaciones. No hay seguridad acerca de si estas apelaciones pueden ser resueltas o no y resolverlas puede tomar tiempo, quizá más de un año. Todo aquel que envíe una forma de reclamación recibirá información acerca del progreso del acuerdo. Por favor, tenga paciencia.

### 14. ¿A qué estoy renunciando al recibir un pago o al quedarme en el Colectivo?

A no ser que se excluya a sí mismo, usted permanecerá en el Colectivo, eso quiere decir que usted no puede demandar, continuar demandado o tomar parte de cualquier otra demanda en contra de ABC relacionada con asuntos legales en este caso. También quiere decir que todas las órdenes del Tribunal aplicarán a usted y lo obligarán legalmente. Al firmar la forma de reclamación, está dando su consentimiento a una "Renuncia de Reclamaciones" ("Release of Claims"). Esta forma, adjunta a la forma de reclamación, describe los derechos legales a los que usted renuncia si recibe beneficios del acuerdo.

## EXCLUIRSE A SÍ MISMO DEL ACUERDO

Si usted no desea recibir ningún pago por este acuerdo, pero desea conservar el derecho a demandar o continuar demandando a ABC por su propia cuenta acerca de asuntos relacionados con este caso, debe tomar

Case 1:04-cv-00006    Document 428-6    Filed 06/22/2007    Page 7 of 33

medidas para salirse del acuerdo. Esto se llama excluirse a uno mismo—o algunas veces se denomina optar por salirse del acuerdo del Colectivo.

## 15. Cómo me salgo del acuerdo?

Para excluirse a sí mismo del acuerdo, debe enviar una carta por correo dejando saber que desea ser excluido de *Smith v. ABC*. Asegúrese de incluir su nombre, dirección, número de teléfono, y su firma. Debe enviar por correo su petición de excluirse fechada no más tarde del **00 de mes del año 0000** a la siguiente dirección:

> ABC Exclusions
> P.O. Box 0000
> City, ST 00000-0000

Usted no puede excluirse a sí mismo por vía telefónica o mensaje electrónico. Si usted solicita ser excluido, no recibirá ningún pago del acuerdo, y tampoco podrá objetar al mismo. No estará obligado legalmente a nada de lo que pase en la demanda legal. Usted podrá demandar (o continuar demandando) a ABC en el futuro.

## 16. Si no me excluyo a mi mismo, ¿podría demandar a ABC por la misma razón más adelante?

No. A no ser que se excluya a sí mismo, usted renuncia al derecho a demandar a ABC por las reclamaciones relacionadas con este acuerdo. Si tiene pendiente una demanda legal, consulte a su abogado acerca de la misma inmediatamente. Debe excluirse a sí mismo de este Colectivo para continuar su propia demanda. Recuerde que la fecha para excluirse es el **00 de mes del año 0000**.

## 17. Si me excluyo a mi mismo, ¿podría recibir dinero del acuerdo?

No. Si se excluye a sí mismo, no envíe una forma de reclamación solicitando compensación monetaria. Sin embargo, puede demandar, continuar demandando, o tomar parte de una demanda legal diferente en contra de ABC.

# ABOGADOS QUE LO REPRESENTAN A USTED

## 18. ¿Tengo un abogado en el caso?

El Tribunal pidió a las firmas de Lawfirm One LLP, de Ciudad, Estado, y Lawfirm Two P. C., de Ciudad, Estado, representarlo a usted y a otros Miembros del Colectivo. Conjuntamente, los abogados reciben el nombre de Consejo del Colectivo (Class Counsel). No se le cobrará por los servicios de estos abogados. Si usted desea ser representado por su propio abogado, deberá contratar uno por su propia cuenta.

El Consejo del Colectivo cobrará al Tribunal los honorarios y gastos que ascienden a $23,900,000 y un pago de $10, 000 para el representante del Colectivo, Frederick Smith. El Tribunal podrá otorgar cantidades menores que éstas. ABC pagará por separado los honorarios y gastos que el Tribunal autorice. Estas cantidades no saldrán de los fondos para los pagos de los Miembros del Colectivo. ABC ha consentido no oponerse a estos honorarios y gastos. Además, ABC pagará por separado los costos para administrar el acuerdo.

## OBJETANDO AL ACUERDO

Usted puede manifestar al Tribunal su oposición al acuerdo o a alguna parte de este.

Si usted es un Miembro del Colectivo, puede objetar al acuerdo si no le agrada alguna parte del mismo. Puede dar las razones por las cuales usted piensa que el Tribunal no debería aprobarlo. El Tribunal considerará su punto de vista.

Para objetar usted debe enviar una carta comunicando su desacuerdo a *Smith v. ABC*. Asegúrese de incluir su nombre, dirección, número de teléfono, su firma y las razones por las cuales se opone al acuerdo. Envíe por correo su carta de oposición a los siguientes tres lugares, no más tarde del **00 de mes del año 0000**:

| TRIBUNAL | CONSEJO DEL COLECTIVO | CONSEJO DE LA DEFENSA |
|---|---|---|
| Clerk of the Court | Herman Green | Mary Jones |
| United States District Court for the | Lawfirm One LLP | Defensefirm LLP |
| District of State | 100 Main Street | 200 Broad Street |
| 100 Court Street | Suite 100 | Suite 200 |
| City, ST 00000-0000 | City, ST 00000-0000 | City ST, 00000-0000 |

Objetar es simplemente comunicar al Tribunal que a usted no le agrada algo acerca del acuerdo. Puede objetar solamente si usted permanece en el Colectivo. Al excluirse a sí mismo, está comunicando al Tribunal que no desea tomar parte del Colectivo. Si se excluye a sí mismo, no tiene bases para objetar, porque el caso ya no le afectará a usted.

## AUDIENCIA DE EQUIDAD DEL TRIBUNAL

El Tribunal oficiará una audiencia para decidir si aprueba el acuerdo. Usted puede asistir y participar, pero no es obligatorio.

### 22. ¿Cuándo y dónde decidirá el Tribunal acerca de aprobar el acuerdo o no?

El Tribunal oficiará una Audiencia de Equidad a las 10:00 am el martes, 00 de mes del año 0000 en el Tribunal del Distrito de los Estados Unidos en el Distrito del Estado. En esta audiencia el Tribunal considerará si el acuerdo es justo, razonable, y adecuado. Si hay objeciones, el Tribunal las considerará. La Juez Jones escuchará a las personas quienes hayan solicitado hablar en la audiencia. El Tribunal también decidirá cuanto pagar al Consejo del Colectivo. Después de la Audiencia el Tribunal decidirá si aprueba el acuerdo. No se sabe cuánto tardarán estas decisiones.

### 23. ¿Tengo que comparecer a la audiencia?

No. El Consejo del Colectivo responderá a las preguntas que la Juez Jones pueda tener. Sin embargo, usted es bienvenido a asistir por su cuenta. Si envía una objeción, no necesita ir al Tribunal para hablar de ella. El Tribunal considerará su objeción mientras la haya enviado a tiempo, en forma escrita y por correo. Usted también puede pagarle a su abogado para que asista, pero no es necesario.

### 24. ¿Puedo hablar en la audiencia?

Usted puede solicitar permiso del Tribunal para hablar en la Audiencia de Equidad. Para hacerlo, necesita enviar una carta notificando y ese es su Aviso de Intención de Comparecer a *Smith v. ABC* ("Notice of Intention to Appear in *Smith v. ABC*"). Asegúrese de incluir su nombre, dirección, número de teléfono y su firma. Su Aviso de Intención de Comparecer a *Smith v. ABC* deberá estar fechado no más tarde del **00 de mes del año 0000**, y enviado al Secretario del Tribunal (Clerk of the Court), al Consejo del Colectivo, al Consejo de la Defensa, a las tres direcciones que aparecen en la página 9, en la pregunta 20. Usted no puede hablar en la Audiencia si se excluyó a sí mismo.

## SI USTED NO HACE NADA

### 25. ¿Qué pasa si no hago nada?

Si no hace nada, no obtendrá ningún dinero de este acuerdo. Sin embargo, a no ser que se excluya a sí mismo, no le será posible empezar una demanda, continuar una demanda, o ser parte de cualquier otra demanda en ninguna otra ocasión en contra de ABC acerca de los asuntos legales relacionados con este caso.

Case 1:04-cv-00006    Document 428-6    Filed 06/22/2007    Page 10 of 33

# PARA OBTENER MÁS INFORMACIÓN

## 26. ¿Hay más detalles acerca del acuerdo?

Este aviso resume el acuerdo propuesto. Encontrará más detalles en el Acuerdo Realizado ("Settlement Agreement"). Usted puede obtener una copia de este Acuerdo escribiendo a Herman Green Lawfirm One LLP, 100 Main Street, Suite 100, City, ST 00000-0000, o visitando la página web www.ABCsettlement.com.

## 27. ¿Cómo consigo más información?

Puede llamar en forma gratuita al número 1-800-000-0000; escribir a ABC settlement, P.O. Box 000, City, ST 00000-0000; o visitar la página web www.ABCsettlement.com, donde encontrará: respuestas a las preguntas más comúnmente formuladas acerca del acuerdo, una forma de reclamación e información adicional para ayudarle a determinar si usted es un Miembro del Colectivo y si califica para un pago.

FECHA: 00 mes 0000.

# If you bought XYZ Corp. stock in 1999, you could get a payment from a class action settlement.

### Para una notificación en Español, llamar o visitar nuestro website,

A settlement has been proposed in a class action lawsuit about the price of XYZ Corporation stock. The settlement will provide $6.99 million to pay claims from XYZ investors who bought the company's stock during 1999. If you qualify, you may send in a claim form to get benefits, or you can exclude yourself from the settlement, or object to it.

The United States District Court for the District of State authorized this notice. Before any money is paid, the Court will have a hearing to decide whether to approve the settlement.

## Who's Included?

You are a Class Member and could get benefits if you bought shares of XYZ stock during 1999. You are a Class Member only if you bought shares of XYZ stock individually, not simply through a mutual fund. If you sold XYZ stock during 1999, you are a Class Member only if those shares you sold were purchased in 1999. XYZ officers and directors, as well as immediate family members of directors of XYZ during 1999, are not Class Members.

Contact your broker to see if you had shares of XYZ stock. If you're not sure you are included, you can get more information, including a detailed notice, at www.XYZsettlement.com or by calling toll free 1-800-000-0000.

## What's this About?

The lawsuit claimed that XYZ and its Chief Executive Officer, Anne Adams, misled investors by intentionally overstating the profits that the company expected to earn in the future. The lawsuit also claimed XYZ issued false and misleading information about income and earnings per share for 1999, and that XYZ executives sold their personal shares at inflated prices during that time. XYZ and Ms. Adams deny they did anything wrong. The Court did not decide which side was right. But both sides agreed to the settlement to resolve the case and get benefits to investors. The two sides disagree on how much money could have been won if the investors had won at a trial.

## What does the Settlement Provide?

XYZ agreed to create a fund of $6.99 million to be divided among all Class Members who send in valid claim forms. A Settlement Agreement, available at the website below, describes all of the details about the proposed settlement.

Your share of the fund will depend on the number of valid claim forms that Class Members send in, how many shares of XYZ stock you bought, and when you bought and sold them. Generally, if you bought more shares and have more Net Recognized Losses (as explained in the detailed notice), you will get more money. If you bought fewer shares and have fewer Net Recognized Losses, you will get less. All of the $6.99 million will be paid out.

If every eligible Class Member sends in a valid claim form, the average payment will be 17½ cents for each share of stock bought in 1999. The number of claimants who send in claims varies widely from case to case. If less than 100% of the Class sends in a claim form, you could get more money.

## How do you Ask for a Payment?

A detailed notice and claim form package contains everything you need. Just call or visit the website below to get one. To qualify for a payment, you must send in a claim form. **Claim forms are due by Month 00, 0000.**

## What are your Other Options?

If you don't want to be legally bound by the settlement, you must exclude yourself by **Month 00, 0000**, or you won't be able to sue, or continue to sue, XYZ about the legal claims in this case. If you exclude yourself, you can't get money from this settlement. If you stay in the settlement, you may object to it by **Month 00, 0000**. The detailed notice explains how to exclude yourself or object.

The Court will hold a hearing in this case (*North v. XYZ Corp.*, Case No. CV-00-5678) on **Month 00, 0000**, to consider whether to approve the settlement and a request by the lawyers representing all Class Members (Lawfirm LLP, of City, ST) for $3,010,000 (7½ cents per share) in attorneys' fees and costs, for investigating the facts, litigating the case, and negotiating the settlement. The fees and costs won't reduce the settlement fund. You may ask to appear at the hearing, but you don't have to. For more information, call toll free 1-800-000-0000, visit the website www.XYZsettlement.com, or write to XYZ Settlement, P.O. Box 000, City, ST 0000-0000.

## 1-800-000-0000        www.XYZsettlement.com

# If you bought XYZ Corporation stock in 1999, you could get a payment from a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- A settlement will provide $6,990,000 (17 ½ cents per share if claims are submitted for each share) to pay claims from investors who bought shares of XYZ Corporation stock during 1999.

- The settlement resolves a lawsuit over whether XYZ misled investors about its future earnings; it avoids costs and risks to you from continuing the lawsuit; pays money to investors like you; and releases XYZ from liability.

- Court-appointed lawyers for investors will ask the Court for up to $3,010,000 (7½ cents per share), to be paid separately by XYZ, as fees and expenses for investigating the facts, litigating the case, and negotiating the settlement.

- The two sides disagree on how much money could have been won if investors won a trial.

- Your legal rights are affected whether you act, or don't act. Read this notice carefully.

## YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT:

| | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment. |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that allows you to ever be part of any other lawsuit against XYZ, about the legal claims in this case. |
| **OBJECT** | Write to the Court about why you don't like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no payment. Give up rights. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after appeals are resolved. Please be patient.

**QUESTIONS? CALL 1-800-000-0000 TOLL FREE, OR VISIT XYZSETTLEMENT.COM**

**PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO WEBSITE**

## What This Notice Contains

**BASIC INFORMATION** ................................................................. **PAGE 3**
1. Why did I get this notice package?
2. What is this lawsuit about?
3. Why is this a class action?
4. Why is there a settlement?

**WHO IS IN THE SETTLEMENT** ..................................................... **PAGE 4**
5. How do I know if I am part of the settlement?
6. Are there exceptions to being included?
7. I'm still not sure if I am included.

**THE SETTLEMENT BENEFITS—WHAT YOU GET** ................................... **PAGE 4**
8. What does the settlement provide?
9. How much will my payment be?

**HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM** ................... **PAGE 5**
10. How can I get a payment?
11. When would I get my payment?
12. What am I giving up to get a payment or stay in the Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ................................. **PAGE 6**
13. How do I get out of the settlement?
14. If I don't exclude myself, can I sue XYZ for the same thing later?
15. If I exclude myself, can I get money from this settlement?

**THE LAWYERS REPRESENTING YOU** ................................................ **PAGE 7**
16. Do I have a lawyer in the case?
17. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ................................................... **PAGE 7**
18. How do I tell the Court that I don't like the settlement?
19. What's the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING** ................................................ **PAGE 8**
20. When and where will the Court decide whether to approve the settlement?
21. Do I have to come to the hearing?
22. May I speak at the hearing?

**IF YOU DO NOTHING** ................................................................. **PAGE 9**
23. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ..................................................... **PAGE 9**
24. Are there more details about the settlement?
25. How do I get more information?

**UNDERSTANDING YOUR PAYMENT** ................................................ **PAGE 10**

# BASIC INFORMATION

### 1. Why did I get this notice package?

You or someone in your family may have purchased shares of XYZ Corporation stock during 1999.

The Court sent you this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about all of your options, before the Court decides whether to approve the settlement. If the Court approves it and after objections and appeals are resolved, an administrator appointed by the Court will make the payments that the settlement allows. You will be informed of the progress of the settlement.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the District of State, and the case is known as *North et al v. XYZ Corporation and Anne Adams,* Case No. CV-00-5678. The people who sued are called Plaintiffs, and the company and the person they sued, XYZ and Anne Adams, are called the Defendants.

### 2. What is this lawsuit about?

The lawsuit claimed that XYZ and its Chief Executive Officer, Anne Adams, misled investors by intentionally overstating the profits that the company expected to earn in the future. The lawsuit also claimed that XYZ issued press releases and financial statements that had false and misleading information about XYZ's income and earnings per share for 1999, and that XYZ executives sold their personally held shares of XYZ stock at inflated prices during that time. XYZ and Ms. Adams deny they did anything wrong.

### 3. Why is this a class action?

In a class action, one or more people called Class Representatives (in this case Mary North), sue on behalf of people who have similar claims. All these people are a Class or Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class. U.S. District Judge Jane Jones is in charge of this class action.

### 4. Why is there a settlement?

The Court did not decide in favor of Plaintiffs or Defendants. The Plaintiffs think they could have won $3.03 per share if they won a trial. The Defendants think the Plaintiffs would not have won anything from a trial. But there was no trial. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and the people affected will get compensation. The Class Representative and the attorneys think the settlement is best for all Class Members.

# WHO IS IN THE SETTLEMENT

To see if you will get money from this settlement, you first have to decide if you are a Class Member.

## 5. How do I know if I am part of the settlement?

Judge Jones decided that everyone who fits this description is a Class Member: *All people who purchased shares of XYZ Corporation stock during 1999.*

## 6. Are there exceptions to being included?

You are not a Class Member if you are an officer or director of XYZ, or were one during 1999. Also, immediate family members of XYZ officers and directors are not in the Class.

If one of your mutual funds owns shares of XYZ stock, that alone does not make you a Class Member. You are a Class Member only if you purchased shares of XYZ stock individually. Contact your broker to see if you have or held XYZ stock.

If you sold XYZ stock during 1999, that alone does not make you a Class Member. You are a Class Member only if you bought shares in 1999.

## 7. I'm still not sure if I am included.

If you are still not sure whether you are included, you can ask for free help. You can call 1-800-000-0000 or visit www.XYZsettlement.com for more information. Or you can fill out and return the claim form described in question 10, to see if you qualify.

# THE SETTLEMENT BENEFITS—WHAT YOU GET

## 8. What does the settlement provide?

XYZ has agreed to create a $6,990,000 fund to be divided among all Class Members who send in a valid claim form.

## 9. How much will my payment be?

Your share of the fund will depend on the number of valid claim forms that Class Members send in, how many shares of XYZ stock you bought, and when you bought and sold them. Here's how it works:

Case 1:04-cv-00006   Document 428-6   Filed 06/22/2007   Page 16 of 33

There were about 40,000,000 shares of XYZ stock bought during 1999. For each day of that year, the settlement specifies that the stock price was "Artificially Inflated" by a certain amount. These amounts per share are listed on pages 11 and 12 of the "Understanding Your Payment" section of this Notice.

By following the instructions on page 10 of this Notice, you can calculate what is called your Net Recognized Loss. It's unlikely that you will get a payment for all of your Net Recognized Loss. After all Class Members have sent in their claim forms, the payment you get will reflect your Net Recognized Loss in relation to everyone's Net Recognized Loss. See the instructions on page 10 for more information on your Net Recognized Loss.

So those who bought more shares and have a larger Net Recognized Loss will get more money, and those who bought fewer shares and have a smaller Net Recognized Loss will get less. All of the $6.99 million available will be distributed.

If every eligible Class Member sends in a valid claim form, the average payment will be 17 ½ cents ($6,990,000 ÷ 40,000,000 shares) for each share bought in 1999. The number of claimants who send in claims varies widely from case to case. If less than 100% of the Class sends in a claim form, you could get more money.

# **HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM**

### 10. How can I get a payment?

To qualify for payment, you must send in a claim form. A claim form is attached to this Notice. You may also get a claim form on the internet at www.XYZsettlement.com. Read the instructions carefully, fill out the form, include all the documents the form asks for, sign it, and mail it postmarked no later than **Month 00, 0000**.

### 11. When would I get my payment?

The Court will hold a hearing on Month 00, 0000, to decide whether to approve the settlement. If Judge Jones approves the settlement after that, there may be appeals. It's always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Everyone who sends in a claim form will be informed of the progress of the settlement. Please be patient.

### 12. What am I giving up to get a payment or stay in the Class?

Unless you exclude yourself, you are staying in the class, and that means that you can't sue, continue to sue, or be part of any other lawsuit against XYZ about the legal issues in *this* case. It also means that all of the Court's orders will apply to you and legally bind you. If you sign the claim form, you will agree to a "Release of Claims," attached to the claim form, which describes exactly the legal claims that you give up if you get settlement benefits.

# Excluding Yourself From the Settlement

If you don't want a payment from this settlement, but you want to keep the right to sue or continue to sue XYZ, on your own, about the legal issues in this case, then you must take steps to get out. This is called excluding yourself—or is sometimes referred to as opting out of the settlement Class.

## 13. How do I get out of the settlement?

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *North v. XYZ*. Be sure to include your name, address, telephone number, and your signature. You must mail your exclusion request postmarked no later than **Month 00, 0000** to:

> XYZ Exclusions
> P.O. Box 0000
> City, ST 00000-0000

If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) XYZ in the future.

## 14. If I don't exclude myself, can I sue XYZ for the same thing later?

No. Unless you exclude yourself, you give up any right to sue XYZ for the claims that this settlement resolves. If you have a pending lawsuit speak to your lawyer in that case immediately. You must exclude yourself from *this* Class to continue your own lawsuit. Remember, the exclusion deadline is **Month 00, 0000**.

## 15. If I exclude myself, can I get money from this settlement?

No. If you exclude yourself, do not send in a claim form to ask for any money. But, you may sue, continue to sue, or be part of a different lawsuit against XYZ.

# The Lawyers Representing You

## 16. Do I have a lawyer in this case?

The Court asked the law firm of Lawfirm LLP in City, ST, to represent you and other Class Members. These lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 17. How will the lawyers be paid?

Class counsel will ask the Court to approve payment of up to $3,010,000 (7 1/2 cents per share) to them for attorneys' fees and expenses and payment of $10,000 to Mary North for her services as Class Representative. The fees would pay Class Counsel for investigating the facts, litigating the case, and negotiating the settlement. The Court may award less than these amounts. XYZ will separately pay the fees, expenses and payments that the Court awards. These amounts will not reduce the $6,990,000 available for Class Members. XYZ has agreed not to oppose these fees and expenses. XYZ will also pay the costs to administer the settlement.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the settlement or some part of it.

## 18. How do I tell the Court that I don't like the settlement?

If you're a Class Member, you can object to the settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter saying that you object to *North v. XYZ*. Be sure to include your name, address, telephone number, your signature, and the reasons you object to the settlement. Mail the objection to these three different places postmarked no later than **Month 00, 0000**:

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court | Herman Green | John Simmons |
| United States District Court for the | Lawfirm LLP | Defensefirm LLP |
| District of State | 100 Main Street | 200 Broad Street |
| 100 Court Street | Suite 100 | Suite 200 |
| City, ST 00000-0000 | City, ST 00000-0000 | City ST, 00000-0000 |

## 19. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

## 20. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at 9:00 AM on Tuesday, Month 00, 0000, at the United States District Court for the District of State, 100 Court Street, City, State, in Courtroom One. At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Jones will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay to Class Counsel. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

## 21. Do I have to come to the hearing?

No. Class Counsel will answer questions Judge Jones may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

## 22. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *North v. XYZ.*" Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be postmarked no later than **Month 00, 0000,** and be sent to the Clerk of the Court, Class Counsel, and Defense Counsel, at the three addresses in question 18. You cannot speak at the hearing if you excluded yourself.

# IF YOU DO NOTHING

## 23. What happens if I do nothing at all?

If you do nothing, you'll get no money from this settlement. But, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against XYZ about the legal issues in this case, ever again.

# GETTING MORE INFORMATION

## 24. Are there more details about the settlement?

This notice summarizes the proposed settlement. More details are in a Settlement Agreement. You can get a copy of the Settlement Agreement by writing to Herman Green, Lawfirm LLP, 100 Main Street, Suite 100, City, ST 00000-0000, or by visiting www.XYZsettlement.com.

## 25. How do I get more information?

You can call 1-800-000-0000 toll free; write to XYZ Settlement, P.O. Box 0000, City ST 00000-0000; or visit the website at www.XYZsettlement.com, where you will find answers to common questions about the settlement, a claim form, plus other information to help you determine whether you are a Class Member and whether you are eligible for a payment.

DATE: MONTH 00, 0000.

# UNDERSTANDING YOUR PAYMENT

STEP 1: Go to the table on the next page, find the date you bought your XYZ shares, and see what the artificial inflation rate per share ("Artificial Inflation") was on that date.

STEP 2: Multiply the number of shares you bought by the Artificial Inflation for that date. This result is your Recognized Loss. Skip to STEP 6 if you did not sell this stock during the class period. If you sold any of your XYZ stock during 1999, continue with STEP 3.

> STEP 3: Go to the table on the next page, find the date you sold your shares of XYZ stock that you had purchased in 1999, and see the Artificial Inflation for that date.

> STEP 4: Multiply the number of shares you sold by the Artificial Inflation for that date.

> STEP 5: Subtract the amount calculated in STEP 4 from the amount calculated in STEP 2. This is your Net Recognized Loss. If your Net Recognized Loss is less than zero, you do not have a claim in this settlement.

STEP 6: Your Net Recognized Loss is a percentage of the total Net Recognized Losses from all Class Members claims. This percentage is the same percentage of the settlement fund that you will get. This amount can be estimated only after the claims administrator receives all the claim forms. If less than 100% of the Class sends in a claim form, you could get more money.

STEP 7: The claims administrator will calculate your payment from the settlement fund.

| EXAMPLE—PAYMENT CALCULATION | |
|---|---|
| **Suppose John Smith bought 500 shares of XYZ stock on March 31, 1999, and sold 400 shares of XYZ stock on August 27, 1999:** | |
| **STEP 1:** | On 3/31/99 the Artificial Inflation = $8.03 |
| **STEP 2:** | 500 shares bought x $8.03 = $4,015 Recognized Loss |
| **STEP 3:** | On 8/27/99 the Artificial Inflation = $5.89 |
| **STEP 4:** | 400 shares sold x $5.89 = $2,356 to deduct from John Smith's Recognized Loss |
| **STEP 5:** | $4,015 - $2,356 = $1,659, John Smith's Net Recognized Loss |
| **STEP 6:** | Suppose in this example that there is a total Net Recognized Loss of $20 million claimed by all Class Members who send in claim forms: $1,659 ÷ $20,000,000 = John Smith's Net Recognized Loss per share is .0000829 of the total. |
| **STEP 7:** | .0000829 x $6,990,000 = John Smith's payment would be $579.47 |

| Date | Artificial Inflation Rate Per Share | Date | Artificial Inflation Rate Per Share | Date | Artificial Inflation Rate Per Share |
|---|---|---|---|---|---|
| 01/02/1999 | $3.01 | 03/12/1999 | $5.74 | 05/19/1999 | $7.19 |
| 01/05/1999 | $2.67 | 03/13/1999 | $5.74 | 05/20/1999 | $7.08 |
| 01/06/1999 | $2.67 | 03/16/1999 | $5.72 | 05/21/1999 | $7.36 |
| 01/07/1999 | $2.62 | 03/17/1999 | $5.72 | 05/22/1999 | $7.35 |
| 01/08/1999 | $2.50 | 03/18/1999 | $5.93 | 05/26/1999 | $7.36 |
| 01/09/1999 | $2.41 | 03/19/1999 | $5.94 | 05/27/1999 | $7.36 |
| 01/12/1999 | $2.44 | 03/20/1999 | $5.83 | 05/28/1999 | $7.33 |
| 01/13/1999 | $2.52 | 03/23/1999 | $5.93 | 05/29/1999 | $7.38 |
| 01/14/1999 | $2.52 | 03/24/1999 | $6.13 | 06/01/1999 | $7.40 |
| 01/15/1999 | $2.48 | 03/25/1999 | $6.47 | 06/02/1999 | $7.42 |
| 01/16/1999 | $2.45 | 03/26/1999 | $6.95 | 06/03/1999 | $7.54 |
| 01/20/1999 | $4.11 | 03/27/1999 | $7.12 | 06/04/1999 | $7.69 |
| 01/21/1999 | $4.07 | 03/30/1999 | $7.57 | 06/05/1999 | $7.84 |
| 01/22/1999 | $4.15 | 03/31/1999 | $8.03 | 06/08/1999 | $8.29 |
| 01/23/1999 | $4.07 | 04/01/1999 | $7.95 | 06/09/1999 | $8.42 |
| 01/26/1999 | $3.94 | 04/02/1999 | $8.37 | 06/10/1999 | $8.67 |
| 01/27/1999 | $3.88 | 04/03/1999 | $7.95 | 06/11/1999 | $8.90 |
| 01/28/1999 | $4.18 | 04/06/1999 | $8.10 | 06/12/1999 | $9.03 |
| 01/29/1999 | $4.15 | 04/07/1999 | $8.08 | 06/15/1999 | $8.73 |
| 01/30/1999 | $4.09 | 04/08/1999 | $8.08 | 06/16/1999 | $8.67 |
| 02/02/1999 | $3.99 | 04/09/1999 | $8.18 | 06/17/1999 | $8.50 |
| 02/03/1999 | $3.96 | 04/13/1999 | $8.14 | 06/18/1999 | $8.41 |
| 02/04/1999 | $4.09 | 04/14/1999 | $8.16 | 06/19/1999 | $8.75 |
| 02/05/1999 | $4.35 | 04/15/1999 | $8.25 | 06/22/1999 | $8.90 |
| 02/06/1999 | $4.88 | 04/16/1999 | $8.25 | 06/23/1999 | $9.11 |
| 02/09/1999 | $4.94 | 04/17/1999 | $8.31 | 06/24/1999 | $9.64 |
| 02/10/1999 | $5.00 | 04/20/1999 | $8.14 | 06/25/1999 | $9.60 |
| 02/11/1999 | $5.02 | 04/21/1999 | $8.22 | 06/26/1999 | $9.77 |
| 02/12/1999 | $4.96 | 04/22/1999 | $8.07 | 06/29/1999 | $9.56 |
| 02/13/1999 | $5.19 | 04/23/1999 | $8.07 | 06/30/1999 | $8.86 |
| 02/17/1999 | $5.60 | 04/24/1999 | $7.97 | 07/01/1999 | $9.14 |
| 02/18/1999 | $5.53 | 04/27/1999 | $7.46 | 07/02/1999 | $9.20 |
| 02/19/1999 | $5.47 | 04/28/1999 | $7.35 | 07/06/1999 | $9.05 |
| 02/20/1999 | $5.30 | 04/29/1999 | $7.12 | 07/07/1999 | $9.01 |
| 02/23/1999 | $5.45 | 04/30/1999 | $7.50 | 07/08/1999 | $8.97 |
| 02/24/1999 | $5.43 | 05/01/1999 | $7.80 | 07/09/1999 | $8.92 |
| 02/25/1999 | $5.49 | 05/04/1999 | $7.95 | 07/13/1999 | $8.84 |
| 02/26/1999 | $5.87 | 05/05/1999 | $7.88 | 07/14/1999 | $8.90 |
| 02/27/1999 | $5.87 | 05/06/1999 | $7.72 | 07/15/1999 | $8.88 |
| 03/02/1999 | $5.53 | 05/07/1999 | $7.57 | 07/16/1999 | $8.86 |
| 03/03/1999 | $5.60 | 05/08/1999 | $7.46 | 07/17/1999 | $8.86 |
| 03/04/1999 | $5.53 | 05/11/1999 | $7.50 | 07/20/1999 | $9.69 |
| 03/05/1999 | $5.43 | 05/12/1999 | $7.46 | 07/21/1999 | $8.48 |
| 03/06/1999 | $5.41 | 05/13/1999 | $7.46 | 07/22/1999 | $8.25 |
| 03/09/1999 | $5.76 | 05/14/1999 | $7.36 | 07/23/1999 | $7.65 |
| 03/10/1999 | $5.64 | 05/15/1999 | $7.40 | 07/24/1999 | $7.76 |
| 03/11/1999 | $5.49 | 05/18/1999 | $7.42 | 07/27/1999 | $7.76 |

| Date | Artificial Inflation Rate Per Share | Date | Artificial Inflation Rate Per Share | Date | Artificial Inflation Rate Per Share |
|---|---|---|---|---|---|
| 07/29/1999 | $7.42 | 09/18/1999 | $6.44 | 11/10/1999 | $5.89 |
| 07/30/1999 | $7.50 | 09/21/1999 | $6.36 | 11/11/1999 | $5.72 |
| 07/31/1999 | $7.27 | 09/22/1999 | $6.78 | 11/12/1999 | $5.45 |
| 08/03/1999 | $7.06 | 09/23/1999 | $6.76 | 11/13/1999 | $5.51 |
| 08/04/1999 | $7.16 | 09/24/1999 | $6.53 | 11/16/1999 | $5.70 |
| 08/05/1999 | $7.46 | 09/25/1999 | $5.89 | 11/17/1999 | $5.76 |
| 08/06/1999 | $7.78 | 09/28/1999 | $5.72 | 11/18/1999 | $5.93 |
| 08/07/1999 | $7.93 | 09/29/1999 | $5.43 | 11/19/1999 | $6.10 |
| 08/10/1999 | $7.86 | 09/30/1999 | $5.15 | 11/20/1999 | $6.04 |
| 08/11/1999 | $7.55 | 10/01/1999 | $3.99 | 11/23/1999 | $6.06 |
| 08/12/1999 | $7.57 | 10/05/1999 | $4.20 | 11/24/1999 | $5.85 |
| 08/13/1999 | $7.55 | 10/06/1999 | $4.18 | 11/25/1999 | $5.76 |
| 08/14/1999 | $7.50 | 10/07/1999 | $3.90 | 11/27/1999 | $5.76 |
| 08/17/1999 | $7.50 | 10/08/1999 | $3.75 | 11/30/1999 | $5.83 |
| 08/18/1999 | $8.03 | 10/09/1999 | $3.64 | 12/01/1999 | $5.72 |
| 08/19/1999 | $8.08 | 10/12/1999 | $4.05 | 12/02/1999 | $5.68 |
| 08/20/1999 | $7.99 | 10/13/1999 | $3.98 | 12/03/1999 | $5.66 |
| 08/21/1999 | $7.82 | 10/14/1999 | $3.86 | 12/04/1999 | $3.49 |
| 08/24/1999 | $7.57 | 10/15/1999 | $3.86 | 12/07/1999 | $1.54 |
| 08/25/1999 | $7.08 | 10/16/1999 | $3.79 | 12/08/1999 | $1.58 |
| 08/26/1999 | $6.27 | 10/19/1999 | $3.84 | 12/10/1999 | $1.58 |
| 08/27/1999 | $5.89 | 10/20/1999 | $4.39 | 12/11/1999 | $1.65 |
| 08/28/1999 | $5.66 | 10/21/1999 | $3.90 | 12/14/1999 | $1.54 |
| 08/31/1999 | $5.13 | 10/22/1999 | $3.94 | 12/15/1999 | $1.61 |
| 09/01/1999 | $5.36 | 10/23/1999 | $3.64 | 12/16/1999 | $1.56 |
| 09/02/1999 | $6.19 | 10/26/1999 | $3.64 | 12/17/1999 | $1.54 |
| 09/03/1999 | $5.83 | 10/27/1999 | $3.84 | 12/18/1999 | $1.64 |
| 09/04/1999 | $5.77 | 10/28/1999 | $4.24 | 12/21/1999 | $1.70 |
| 09/08/1999 | $6.21 | 10/29/1999 | $4.37 | 12/22/1999 | $1.60 |
| 09/09/1999 | $6.02 | 10/30/1999 | $4.54 | 12/23/1999 | $1.63 |
| 09/10/1999 | $5.59 | 11/02/1999 | $4.81 | 12/24/1999 | $1.63 |
| 09/11/1999 | $5.47 | 11/03/1999 | $5.30 | 12/28/1999 | $1.72 |
| 09/14/1999 | $5.74 | 11/04/1999 | $5.60 | 12/29/1999 | $1.74 |
| 09/15/1999 | $6.04 | 11/05/1999 | $5.96 | 12/30/1999 | $1.76 |
| 09/16/1999 | $5.91 | 11/06/1999 | $5.98 | 12/31/1999 | $1.86 |
| 09/17/1999 | $5.93 | 11/09/1999 | $6.06 | | |

Case 1:04-cv-00006    Document 428-6    Filed 06/22/2007    Page 24 of 33

# Exhibit 4

# Exhibit 5

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
DFS

Important Document Enclosed

1 ••••••**AUTO**3-DIGIT 189

U.S. Mail. The enclosed documents are intended solely for the addressee listed and should be opened by the aforementioned only. Do not bend, fold, tear or mutilate.

Dated Material. Open Immediately.



USA Bulk Rate

**EX**XON COMPANY, U.S.A.
P.O. BOX 061.45 • HOUSTON, TEXAS 77265 HOU

**FINAL NOTICE**





USA Bulk Rate

3200 W. Pleasant Run Rd.
Lancaster, TX 75146

## Rate Overpayment Notification

************ ECRWSS ** C005
0048

# EXHIBIT G

1

2 **AFFIDAVIT**

3

4 I, LUCILLE M. ALMAZAN, declare the following:

5

6 1.    I make this declaration based upon personal knowledge and this affidavit is true

7
and correct to the best of my knowledge and belief.
8

9 2.    On June 20, 2007, I made a phone call to Department of Revenue and Taxation

10 and I spoke with Lourdes Blas of the business license department.

11 3.    I had inquired the fee for a duplicate copy of old tax returns and I was told by

12 the above mentioned that there is a $35.00 charge.

13 I declare under penalty of perjury that the foregoing declaration is true and correct to

14 the best of my knowledge and belief.  Further affiant sayeth naught.

15

16 So stated this _____ day of June, 2007.

17

18

19 The undersigned, being first duly sworn, deposes and says that the foregoing document

is true of her own knowledge, and as to those matters she believes them to be true.
20

21

22

23 LUCILLE M. ALMAZAN

24

25

26 //

GUAM, U.S.A.                    )
                               ) ss:
CITY OF HAGÅTÑA                )

ON THIS **20th** day of June, 2007, before me, a Notary Public in and for Guam, U.S.A., personally appeared **LUCILLE M. ALMAZAN**, and executed before me the foregoing document, which **LUCILLE M. ALMAZAN**, being first duly sworn, deposes and says that the foregoing document is true of her own knowledge, and as to those matters contained therein, she believes them to be true.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

Notary Public

JACQUELINE W. CEPEDA
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: March 05, 2011
107 Kablak Ct., Martenas Terrace Yigo, Guam 96929