1 | Counsel appearing on following page

2

3 | DISTRICT COURT OF GUAM

4 | TERRITORY OF GUAM

5 | JULIE BABAUTA SANTOS, *et al.,* | Civil Case No. 04-00006

6 | Petitioners,

**FILED**

7 | v. | DISTRICT COURT OF GUAM

JUN 22 2007

8 | FELIX P. CAMACHO, *et al.,*

Respondents. | **MARY L.M. MORAN**

9 | **CLERK OF COURT**

10 | CHARMAINE R. TORRES, *et al.,* | Civil Case No. 04-00038

11 | Plaintiffs,

12 | v.

13 | GOVERNMENT OF GUAM, *et al.,*

Defendants.

14

15 | MARY GRACE SIMPAO, *et al,* | Civil Case No. 04-00049

16 | Plaintiffs,

17 | v. | **DECLARATION OF THOMAS J.
FISHER IN SUPPORT OF
SIMPAO PLAINTIFFS'**

18 | GOVERNMENT OF GUAM, | **OPPOSITION TO PETITIONER
SANTOS' JOINT MOTION FOR**

Defendant, | **FINAL CERTIFICATION OF
THE EIC CLASS FOR**

19 | v. | **SETTLEMENT PURPOSES**

20 | FELIX P. CAMACHO, Governor of Guam

21 | Intervenor-Defendant.

22

23 | ORIGINAL

24

25 | SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

VAN DE VELD SHIMIZU CANTO & FISHER
Suite 101 Dela Corte Bldg.
167 East Marine Corps Drive
Hagåtña, Guam 96910
671.472.1131

TOUSLEY BRAIN STEPHENS PLLC
Kim D. Stephens, P.S., WSBA #11984
Nancy A. Pacharzina, WSBA #25946
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
206.682.5600

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Page 2   Case 1:04-cv-00006   Document 429   Filed 06/22/2007   Page 2 of 48

# DECLARATION OF THOMAS J. FISHER

I, Thomas J. Fisher, Esq., hereby declare and state the following under penalty of perjury:

1. I am an attorney for the Plaintiffs in the matter of Plaintiffs *Mary Grace Simpao, et al., vs. Defendant Government of Guam and Intervenor-Defendant Felix P. Camacho, District Court of Guam Civil Case No. CIV04-00049*;

2. The matters stated herein are based upon my personal knowledge or belief and as to those matters I swear that the extent of my knowledge is truthfully stated and as to those matters based on my belief, I believe those matters to be true. I further believe that, if I was called to give testimony upon the matters stated herein, I am competent to testify to those matters, the authentication of certain records having been established before my testimony;

3. I declare and attest that "Exhibit A" attached to this Declaration are true and correct copies of KUAM Television Station News Reports downloaded from the KUAM internet website (www. KUAM.com) of three separate news stories entitled: "Lieutenant Governor still negotiating legal representation" dated June 18, 2004; "Lieutenant Governor's Office still working out detail with single legal services bidder" dated June 22, 2004; and "Lieutenant Governor reportedly in final stages of negotiations with legal counsel" dated July 2, 1994;

4. I declare and attest that "Exhibit B" attached to this Declaration is a true and correct copy of a KUAM Television Station News Report downloaded from the KUAM internet website (www. KUAM.com) of a news story entitled "Acting Governor, Attorney General announce EITC will be paid over six years" dated June 13, 2004;

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

1    5.    I declare and attest that "Exhibit C" attached to this Declaration is a true and

2    correct copy of page 25 of the edition of the Pacific Sunday News newspaper published June 27,

3    2004 and entitled "Notice of Class Action and Proposed Settlement";

4    6.    I declare and attest that "Exhibit D" attached to this Declaration is a true and

5    correct copy of the *Complaint* filed in *Simpao v. Govt. of Guam, District Court of Guam Civil*

6    *Case No. CV04-00049, Docket No. 1*;

7    7.    I declare and attest that "Exhibit E" attached to this Declaration is a true and

8    correct copy of correspondence between the Office of the Governor and the Attorney General's

9    Office, dated September 16, 2004, referring to the Administrative Plan as "a new settlement

10   under the guise of an administrative plan.";

11   8.    I declare and attest that "Exhibit F" attached to this Declaration is a true and

12   correct copy of the *Order* [denying motion to dismiss], issued by Judge Ronald Lew on March

13   17, 2005 in District Court of Guam Civil Case, *Simpao v Govt. of Guam, No. CV04-00049,*

14   *Docket No. 53*;

15   9.    I declare and attest that "Exhibit G" attached to this Declaration is a true and

16   correct copy of the *Order* [granting partial summary judgment], issued by Judge Ricardo.

17   Martinez on June 15, 2005 in District Court of Guam Civil Case *Simpao v. Govt. of Guam, No.*

18   *CV04-00049, Docket No. 99*;

19   10.   I declare and attest that "Exhibit H" attached to this Declaration is a true and

20   correct copy of the Simpao Opposition to Santos Amended Motion for Appointment as Lead

21   Counsel, filed August 25th, 2006

22   11.   I declare and attest that "Exhibit I" attached to this Declaration is a true and

23   correct copy of a declaration of Ms. Gina M. Intrepido, Hilsoft Notifications.

24   ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

    .                                    SHIMIZU CANTO & FISHER              TOUSLEY BRAIN STEPHENS PLLC
25                                         East Marine Corps Drive            1700 Seventh Avenue, Suite 2200
                                           Hagatna, Guam 96910                Seattle, Washington 98101-1332
                                           Tel. 671.472.1131                  Tel. 206.682.5600
                                           Fax 671.472.2886                   Fax 206.682.2992
     Page 4   Case 1:04-cv-00006        Document 429       Filed 06/22/2007      Page 4 of 48

FURTHER DELCARANT SAYETH NAUGHT this Friday, June 22, 2007 at Hagåtña, Guam, swearing and affirming the foregoing is true.

By: _____
Thomas J. Fisher

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Page 5   Case 1:04-cv-00006     Document 429     Filed 06/22/2007     Page 5 of 48

# EXHIBIT A


# Lieutenant Governor still negotiating legal representation

**by Ken Wetmore, KUAM News**
**Friday, June 18, 2004**

The Office of the Lieutenant Governor is still in negotiations for the services of an attorney. The Lieutenant Governor's Office only received one bidder on their request for proposal for legal services in May. While the Lieutenant Governor's Office hasn't revealed whom the proposal came from, saying procurement law bars them from answering that question, Attorney Mike Phillips says his law firm submitted the bid.

Phillips says while his firm has not dropped its proposal negotiations are not actively ongoing. According to news files the Lieutenant Governor's Office is contending since both the Superior and Supreme courts have found the Office of the Lieutenant Governor to be an individual entity outside of the Governor's Office, the Lieutenant Governor should have his own attorney to represent and give legal advice to his office.

Copyright © 2000-2006 by Pacific Telestations, Inc.





# Lieutenant Governor's Office still working out detail with single legal services bidder

**by Ken Wetmore, KUAM News**
**Tuesday, June 22, 2004**

The Office of the Lieutenant Governor still has to finalize negotiations with the single bidder on a request for proposal for an attorney to represent the office. Lieutenant Governor's spokesperson Phil Roberto would only say on the matter that negotiations are ongoing.

While the Lieutenant Governor's Office would not reveal who the single bidder is, KUAM News has confirmed with Attorney Mike Phillips that his law firm was the lone bidder. The original deadline to turn in proposals was May 7, but the request for proposal had to be extended to May 19, when there were no takers for the original RFP.

The Lieutenant Governor's Office is contending since both the Superior and Supreme courts have found the Office of the Lieutenant Governor to be an individual entity outside of the Lieutenant Governor, he should have his own attorney to represent and give legal advice to his office.

Copyright © 2000-2006 by Pacific Telestations, Inc.


Print this story



# Lieutenant Governor reportedly in final stages of negotiations with legal counsel

**by Ken Wetmore, KUAM News**
**Friday, July 02, 2004**

Guam's Lieutenant Governor is in the final stages of negotiations with a law firm to represent his office. Lieutenant Governor Kaleo Moylan's spokesperson Phil Roberto today told KUAM News the Lieutenant Governor's Office was very close to closing a deal with the single bidder on the Lieutenant Governor's request for proposal for legal services.

According to news files the Lieutenant Governor's Office is contending since both the Superior and Supreme courts have found the Office of the Lieutenant Governor to be an individual entity outside of the Governor's Office, the Lieutenant Governor should have his own attorney to represent and give legal advice to his office. While Roberto has declined to name the law firm who bid on the request for proposal, Attorney Mike Phillips earlier confirmed that his law firm in the lone bidder.

Phillips represented Lieutenant Governor Moylan in Governor Felix Camacho's request for a declaratory motion before the Supreme Court and interestingly is also the chair of the Guam Democrat Party.

Copyright © 2000-2006 by Pacific Telestations, Inc.

 Print this story

# EXHIBIT B

# Acting Governor, Attorney General announce EITC will be paid over six years

**by Zita Taitano, KUAM News**
**Sunday, June 13, 2004**

A settlement agreement was reached on the Earned Income Tax Credit for eligible taxpayers, as well as for the payment of overtime payments for public safety officers. The announcement was made during a joint press conference between Acting Governor Kaleo Moylan and Attorney General Douglas Moylan at the Office of the Governor at Adelup.

Saying it has always been the Administration's intent to pay the EITC, Acting Governor Moylan announced a settlement in a class action lawsuit to force the Government of Guam to pay out an estimated $120-160 million in tax credits over six years. The acting governor was flanked by the Attorney General, who represented the government in the case, and Attorney Mike Phillips, who was the legal counsel representing the plaintiffs in the class action suit.

The two sides announced they had agreed on terms that called for $60 million in owed EITCs to be paid out over eight years. GovGuam is required to immediately post $3 million to an account for payouts of the tax credit and must put an additional $17 million in over the next year. For the next eight years, $5 million would be set aside. The settlement also calls for the government to pay out the Earned Income Tax Credit in full in from this point on.

The $60 million settlement represents only about half of what is owed to eligible taxpayers. AG Moylan called the settlement "great for the Government of Guam as it means the government will only have to come up with half of what a court might have ordered by paid." At the same time, opposing attorney Phillips said the settlement was good for his clients because it allowed them to finally get at least a portion of the money owed to them.

As for where the public sector is going to come up with $60 million, Department of Revenue and Taxation director Art Ilagan said it is likely that payout of income tax refunds, as well as vendor payments may be slowed down as the government tries to find the cash to come up with the $3 million immediately and the additional $17 million over the next year. In future years the revenue projections will be adjusted to reflect the EITC payments.

According to Attorney Phillips, he was approached by the Attorney General on Thursday about the terms of this settlement and the along with the acting governor and Administration cabinet members worked out the details over the last several days. AG Moylan said today the settlement was not forced by the payment of a single EITC in March of this year. Moylan said the payment did not force the government into the settlement and said it has always been his desire to see the case settled.

It was also announced at this afternoon's press conference that a settlement had been reached between the Camacho Administration and the Guam Attorney General regarding the payment overtime to the Department of Corrections, the Guam Fire Department and the Guam Police Department. Acting Governor Moylan says that with an increase in business license renewals this year the Administration has been able to find the $2.7 million necessary to pay the past due overtime.

It was noted that this is the first time in years that the government does not owe overtime to the agencies.

**Copyright © 2000-2004 by Pacific Telestations, Inc.**



# EXHIBIT C

## UNITED STATES DISTRICT COURT OF GUAM

CIVIL NO. CIV04-00006

JULIE BABAUTA SANTOS, individually, and on behalf of all those similarly situated,

Petitioner.

vs.

FELIX A. CAMACHO, Governor of Guam, ART ILAGAN, Director of Department of Revenue and Taxation, LOURDES M. PEREZ, Director of Department of Administration; and GOVERNMENT OF GUAM,

Respondents.

## NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT

To: All individuals who filed Guam income tax returns and qualified for earned income tax credits for any or all of tax years 1996, 1998, 1999, 2000, 2001, 2002 or 2003.

**Summary of the Lawsuit.** This lawsuit sought payment of refundable earned income tax credits for tax years 1996, 1998, 1999, 2000, 2001, 2002, and 2003 (the "applicable tax period"). This lawsuit has been certified by the Court as a class action. The counsel for the petitioner and the class is Michael F. Phillips of Phillips & Bordallo, P.C. The counsel for the respondents is Douglass B. Moylan, Attorney General of Guam.

**Definition of the Class.** You are a member of the class if you (a) filed Guam income tax returns and (b) were and are entitled to be paid refundable earned income tax credits under the Guam Territorial Income Tax and the Earned Income Program for any or all of the following tax years: 1996, 1998, 1999, 2000, 2001, 2002 and 2003.

**Proposed Settlement.** The petitioner and the Government of Guam reached a Settlement of this lawsuit. The Court preliminarily approved the Settlement. The Settlement will provide payments, before Court-ordered deductions, to you of approximately fifty percent (50%) or more of the estimated refundable earned income tax credits you may have claimed for the applicable tax period. The Settlement Amount is **$60 Million Dollars.** The Settlement Amount will be deposited into an EIC Settlement Fund as follows: At least $3 Million Dollars by July 17, 2004; at least $17 Million Dollars over eleven months following the first installment; and at least Five Million Dollars on or before June 30th of each subsequent year, beginning on June 30, 2006 and ending June 30, 2013. The Settlement also provides that the Government of Guam will fully implement the earned income tax program for tax years 2004 and beyond. The Court awarded attorneys' fees and court costs to petitioner and Class Counsel in the amount of ten percent (10%) of the Settlement Amount. This Settlement will release the Government of Guam from all further liability for refundable earned income tax credits to Class Members for the applicable tax period.

**Procedures Concerning the Settlement.** On September 9, 2004, at 10:00 a.m., the Court will hold a hearing at the District Court of Guam before Magistrate Judge Joaquin V.E. Manibusan, Jr. to determine whether the Settlement is fair and reasonable and should be given Final Approval.

**Objections to the Settlement and Requests for Exclusion.** If you believe the Court should not approve the Settlement, you may deliver or mail to the Court written objections to the Settlement no later than August 9, 2004, together with evidence of qualification for earned income tax credits for any tax year within the applicable tax period. You may also appear at the hearing on Final Approval, provided, however, that no Class member shall be heard unless he or she complies with the requirements to file written objections. If you do **NOT** want to participate in the Settlement Amount of $60 Million Dollars, or if you want to pursue separate claims, you may request exclusion from the class by delivering to the Court a written request to opt out of the class by August 9, 2004. All objections and requests for exclusion shall be personally signed by the Class member and delivered to EIC Settlement, c/o Clerk of Court, 4th Floor, U.S. Courthouse, 520 West Soledad Avenue, Hagatna, Guam 96910.

**Participation in Settlement.** If you want to participate in the Settlement Amount of $60 Million Dollars, you do not have to take any action at this time. If the Settlement becomes final, you will be mailed a notice informing you of the information that must be provided to the Department of Revenue and Taxation and all other procedures necessary to obtain your portion of the Settlement Amount. Those who do NOT request exclusion will be bound by the judgment in this Class Action and by the Settlement if it becomes final. Any person who provides false information in an attempt to obtain a portion of the settlement will be prosecuted to the fullest extent of the law.

**Further Information.** For further details of this Settlement, you may request further information from the Department of Revenue and Taxation at Bldg. 13-1, Mariner Avenue,Tiyan, Guam, 96913, or visit the Attorney General of Guam's website at www.guamattorneygeneral.com.

PLEASE FOLLOW THE PROCEDURES SET OUT ABOVE. DO NOT CONTACT THE COURT FOR QUESTIONS ABOUT THE SETTLEMENT.

# EXHIBIT D

1   VAN DE VELD SHIMIZU CANTO & FISHER
    Suite 101 De La Corte Bldg.
2   167 East Marine Corps Drive
    Hagatna Guam 96910
3   671.472.1131

4   TOUSLEY BRAIN STEPHENS PLLC
    Kim D. Stephens, P.S., WSBA #11984
5   Nancy A. Pacharzina, WSBA #25946
    700 Fifth Avenue, Suite 5600
6   Seattle, Washington 98104-5056
    206.682.5600

7

8   *Attorneys for Plaintiffs Christina Naputi and Mary Grace Simpao.*

9

10

11

12                    DISTRICT COURT OF GUAM

13                     TERRITORY OF GUAM

14  MARY GRACE SIMPAO, CHRISTINA
    NAPUTI on behalf of themselves and a class       Civil Case No.  **04 - 00 0 49**
    of others similarly situated,
15

16               Plaintiffs,                          **COMPLAINT**

17        v.

18  GOVERNMENT OF GUAM
                                                      **CLASS ACTION**
19               Defendants.

20

21                    **I. INTRODUCTION**

22        1.1    Plaintiffs bring this action on behalf of themselves and all others similarly

23  situated who paid income taxes on Guam.

24        1.2    . They seek redress for, and to put an end to, the unfairness and uncertainty

25  associated with the income tax Earned Income Credit (the "EIC"), as it has been administered

26  by the government of Guam (the "Government").

- 1                          VAN DE VELD SHIMIZU CANTO & FISHER        TOUSLEY BRAIN STEPHENS PLLC
4162/001/173540.1                    167 East Marine Corps Drive           700 Fifth Avenue, Suite 5600
                                        Hagatna, Guam 96910              Seattle, Washington 98104-5056
                            TEL. 671.472.1131• FAX 671.472.2886      TEL. 206.682.5600 • FAX 206.682.2992

FILED
DISTRICT COURT OF GUAM
DEC - 3 2004
MARY L. M. MORAN
CLERK OF COURT

1.3     Prior to 1995, the Government provided its taxpayers a means to claim the EIC and routinely processed such claims. In tax year 1994 more than 9,400 Guam taxpayers received approximately $11 million in EIC payments.

1.4     But in tax years 1995 and 1996, the Government wrongly represented on its published tax return forms that the EIC was "inapplicable in Guam." Guam tax payers who filed an income tax return and qualified for the EIC in those years were provided no mechanism or procedure to make a claim for their EIC, other than filing their general, income-tax return. Not surprisingly, the Government did not compute or refund any EICs rightfully due qualifying taxpayers in those years.

1.5     In tax years 1997 and 1998, the Government once again provided a mechanism for those filing an income tax return to claim the EIC. As before, the procedure included filling out a section of the income tax form applicable to the EIC, and filing a supplemental form specifically for the EIC claim.

1.6     Based upon information and belief, the Government paid only a portion of the EICs legitimately claimed for 1997 and paid none of the EICs claimed for 1998.

1.7     Then, in tax years 1999 through 2003, the Government returned to its behavior of 1995 and 1996. Once again, the Government wrongly represented on its published tax return forms that the EIC was "Not applicable" and, in some years, obscured or placed cross-hatching over the EIC claims section of the return. Once again, qualifying taxpayers were provided no mechanism or procedure to make a claim for their EIC other than filing their general, income-tax return. And once again, the Government did not compute or refund any EICs rightfully due qualifying taxpayers.

1.8     Inexplicably, however, in 2004 one taxpayer was paid an EIC he had claimed for tax year 1998. The Government also indicated it might pay some claims but not others

1.9     Through this action, Plaintiffs who qualified for the EIC in 1995–2003 seek to establish they have either (1) already made timely claims for their EICs by filing income tax

COMPLAINT - 2
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131• FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006     Document 429     Filed 06/22/2007     Page 17 of 48

returns or that the returns they have already filed are at the least sufficient to allow amendment of an EIC claim; and/or (2) in the alternative, still have the right to make such claims for the tax years 1995, 1996 and 1999–2003.

1.10    In the latter case, Plaintiffs also seek to require the Government to: (1) notify all taxpayers who filed a tax return in 1995, 1996 and 1999-2003 that, if they were eligible for the EIC in any or all of those years, they have a right to file a claim for the EIC; (2) to provide all such taxpayers a procedural mechanism to make a claim for an EIC; and (3) to ensure the Government continues to provide a mechanism for eligible Guam tax payers to make specific claims for an EIC on future income tax return forms.

1.11    Finally, Plaintiffs seek refund of the EIC overpayments due all eligible taxpayers who filed a timely claim for an EIC in any or all of tax years 1995-2003 but did not receive the corresponding EIC refund or offset to their income tax liability; and for those who will file a timely claim for an EIC pursuant to the relief described in Paragraph 1.9, or in the future.

## II. JURISDICTION AND VENUE

2.1    The Court has original jurisdiction over this matter pursuant to 48 U.S.C. §§ 1421i(h) and 1424, and 28 U.S.C. §§ 1330 and 1361.

## III. THE PARTIES

3.1    Plaintiff Naputi is a resident of Guam, paid income taxes and filed income tax returns for tax years 2001-2003. Plaintiff Naputi was eligible for the EIC for tax years 2001-03 and was prevented from making the claim in tax years 2001-2003. She received her EIC for none of these years. Plaintiff Naputi expects to qualify for the EIC for tax year 2004.

3.2    Plaintiff Simpao is a resident of Guam, paid income taxes and filed income tax returns for tax years 1996-2003. Plaintiff Naputi was eligible for the EIC for tax years 1996, 1997, 1998, 2002-03 and was prevented from making the claim in tax years 1996, 2001-2003.

COMPLAINT - 3
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131• FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429    Filed 06/22/2007    Page 18 of 48

She received her EIC for none of these years. Plaintiff Simpao expects to qualify for the EIC for tax year 2004.

  3.3  Defendant the Government of Guam is an organized unincorporated territory of the United States of America, formed August 1, 1950, by enactment of the Organic Act, 48 U.S.C. § 1421 *et seq.* Defendant is a sovereign government entity.

# IV. FACTUAL ALLEGATIONS

## A. History of the EIC in Guam

  4.1  The Organic Act provides that the income tax applicable to Guam taxpayers must mirror the income tax applicable to United States citizens under certain provisions of the United States Internal Revenue Service Code (IRC). One of these mirroring provisions, Subtitle A of the IRC, contains the EIC.

  4.2  The EIC became effective in the U.S., and, therefore, in Guam, in 1975.

  4.3  On information and belief, the Government provided a mechanism for its citizens to make claims for the EIC and paid the credit due from 1975 through 1994.

  4.4  In fact, more than 9,400 Guam taxpayers received approximately $11 million in EIC payments for tax year 1994.

  4.5  On June 23, 1989, the Government, through its Attorney General's office (the "AG"), expressly acknowledged it is obligated to pay the EIC to eligible taxpayers in the same manner as ordinary tax refunds, *i.e.*, from the General Fund. *See* Memorandum Opinion No. DOA 89-0750 (the "1989 AG Opinion").

  4.6  Six years later, however, the Director of the Department of Revenue and Taxation (the "Department") unilaterally decided to terminate the EIC in Guam.

  4.7  In direct contradiction to the 1989 AG Opinion, the Department issued Revenue Ruling 96-001 (the "1996 Revenue Ruling") stating the EIC did not apply to Guam and, even if it did, the Department could not certify EICs due for payment because the Legislature had made no appropriation to fund the EIC.

COMPLAINT - 4
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL 671.472.1131• FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006  Document 429  Filed 06/22/2007  Page 19 of 48

4.8   On January 4, 1996, Guam's AG at the time, issued Memorandum Opinion No. DRT/DOA 96-001 (the "1996 AG Opinion") adopting the Department's misguided 1996 Revenue Ruling.

4.9   As a result of the 1996 AG Opinion and Revenue Ruling, the 1996 tax return forms published by the Government included the words "not applicable in Guam" over the section providing taxpayers a mechanism to claim the EIC. Further, no specific form to claim the EIC was made available to taxpayers. On information and belief this was true of 1995 income tax returns as well.

4.10   The Government did not compute or pay any individual EICs for either tax year 1995 or 1996.

4.11   In response to the Executive Branch's unilateral reversal of tax policy, in 1997 the Legislative Branch of the Government passed several laws to implement the Guam Earned Income Program (the "Guam EIC") and to ensure continuous funding of the Program. *See* Public Law 23-74, 11 Guam Code Ann. §§ 42101 et seq.

4.12   As such, the 1997 and 1998 income tax forms published by the Government included a mechanism for eligible taxpayers to specifically claim the EIC.

4.13   The Government paid some, but not all, EICs for the 1997 tax year.

4.14   The Government did not pay any EICs for the 1998 tax year.

4.15   The 1999-2003 income tax forms published by the Government once again included the words "Not Applicable" over the section providing the mechanism to claim the EIC. Once again the Government did not provide a supplemental form to make a specific claim for the EIC.

4.16   Instead, despite the action of the Legislatures in 1997, the Executive Branch once again refused to implement the EIC.

4.17   The Government did not change its conduct even though in 2001, the Supreme Court of Guam, at the request of the Legislative Branch, published an opinion stating the

COMPLAINT - 5
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006   Document 429   Filed 06/22/2007   Page 20 of 48

Organic Act required Guam taxpayers receive the benefits of the EIC and thus, the Director of the Department is obligated to pay the EIC to eligible Guam taxpayers.[1]

4.18    The Government has not calculated or paid any EICs for the 1995, 1996, 1999-2003 tax years with one exception.

4.19    In 2004, the Government paid an EIC to one taxpayer who persistently complained to the Governor he was entitled to the credit and who, upon information and belief, claimed the EIC in 1998. No other taxpayers have received an EIC refund for tax year 1998 or any year subsequent.

**B.    The Plaintiff's Experience With the EIC**

1.    <u>Plaintiff Naputi</u>

4.20    Plaintiff Naputi has been a resident of Guam during all relevant tax years. In 2001 she filed as "single", In 2002 as "married filing jointly" and in 2003 as "single" and had one qualifying child in each tax year. She never had a taxable income greater than that allowed to qualify for the EIC. In each tax year she provided all information requested on the form relevant to her as a taxpayer.

4.21    Naputi estimates she qualified for an EIC of $1,200.00 in 2001, $1,466.00 in 2002 and $1,964.00 in 2003.

4.22    Naputi did not receive an EIC payment or offset against their taxes for any of those tax years.

4.23    Naputi never received a formal notice of disallowance of her claims to an EIC, nor did she waive her right to such notice for any of the tax years.

4.24    Naputi expects she will qualify for the EIC in 2004.

---

[1] *In Re Request of I Mina' Bente Sing'ko Na Liheslaturan Guahan Relative to the Application of the Earned Income Tax Credit Programto Guam Taxpayers ("the EIC question")*, 2001 Guam 3 at 9.

COMPLAINT - 6
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131• FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429    Filed 06/22/2007    Page 21 of 48

2. <u>Plaintiff Simpao</u>

4.25    Plaintiff Simpao has been a resident of Guam during all relevant tax years. In 1996 she filed as "single" with one qualifying child, in 1997 she filed as "married filing jointly" with one qualifying child, in 1998 she filed as "married filing jointly" with two qualifying children, in 1999 she filed as "married filing separately" with one qualifying child, in 2000 she filed as "married filing separately" with one qualifying child, in 2001 she filed as "married filing separately" with two qualifying children, in 2002 as "head of household" with two qualifying children, and in 2003 as "head of household" with three qualifying children. She never had a taxable income greater than that allowed to qualify for the EIC. In each tax year she provided all information requested on the form relevant to her as a taxpayer.

4.26    In tax years 1997 and 1998 she qualified for an claimed the EIC by completing the provided Guam Earned Income Program Application (GEIPA).

4.27    Simpao estimates she qualified for an EIC of $1,750.00 in 1996, $837.00 in 1997, $868.00 in 1998, $3,128.00 in 2002 and $2,984.00 in 2003.

4.28    Based upon information and belief, Simpao did not receive an EIC payment or offset against her taxes for any of those tax years.

4.29    Simpao never received a formal notice of disallowance of her claims to an EIC, nor did she waive her right to such notices for any of the tax years.

4.30    Simpao expects she will qualify for the EIC in 2004.

C.    **Tax payers' efforts to recover the EIC through litigation**

4.31    On February 12, 2004, Julie Babauta Santos filed a class action complaint seeking to recover the unpaid EICs due Guam taxpayers for tax years 1998 through 2003.[2] *See Santos v. Camacho, et al.*, No. 04-00006, District Court of Guam, February 12, 2004.

---

[2] *Santos* Complaint

COMPLAINT - 7
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

1    4.32    Santos sought to certify a class of "all Guam taxpayers who were and are

2  entitled to be paid . . . [EICs]," presumably for tax years 1998–2003, irrespective of each

3  taxpayer's compliance with administrative income tax filing procedures.

4    4.33    Santos sought actual refund of the EIC or in the alternative a writ compelling the

5  Government to implement the "EIC" and to pay EICs due for those tax years.[3]

6    4.34    Approximately five months after the Santos action was filed, the Court entered a

7  "Stipulated Order Granting Preliminary Approval of Class Action Settlement."

8    4.35    The settlement class was expanded to include:  "all persons who (a) filed Guam

9  tax returns and (b) were and are entitled to be paid . . . [EICs] for any or all of the following tax

10  years:  1996, and 1998 . . . [through] 2003."

11    4.36    Concerned that the Santos action was procedurally and substantively flawed,

12  Plaintiff Naputi sought to intervene. Her petition to intervene was denied August 5, 2004. See

13  August 5, 2004 Order in Santos v. Camacho, et al., No. 04-00006, District Court of Guam.  In

14  the Order denying the Petition, the Court noted the proper procedure for Plaintiff Naputi, and

15  others who sought to intervene, was to participate in the Santos action as objectors or to file a

16  parallel action of their own. Id. at 5.

17    4.37    This Complaint in the Nature of a Class Action Petition represents Plaintiffs'

18  efforts (1) to secure specific relief for themselves and other Guam tax payers not addressed in

19  the Santos action; and (2) where the claims overlap with those in the Santos action, to bring

20  those claims in a procedural posture more likely to produce some or all of the relief, sought for

21  themselves and for the class they seek to represent.

22    **V.  CLASS ACTION ALLEGATIONS**

23  **A. The Proposed Classes**

24    5.1    Plaintiffs seek to certify three separate but related classes:  a "Claims Made"

25  Class, a "Refund" Class, and a "Future Refund" Class.

26

_____

[3] Id.

COMPLAINT - 8
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131• FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

## I. The Claims Made Class

5.2 The Claims Made Class seeks to ensure all its class members have been or are afforded the opportunity to file a timely and allowable administrative claim for any EIC to which they were entitled in tax years 1995, 1996, and 1999-2003.[4]

5.3 The Claims Made Class is defined as:

> All Guam income tax payers who, for any or all of tax years, 1995, 1996 and 1999-2003 were: (1) eligible to claim an EIC pursuant to the Organic Act and/or the Guam EIC; (2) filed a sufficient tax return; and (3) have not received a refund or an overpayment associated with their EIC claim, nor has such overpayment been applied to their tax liability.

5.4 The Claims Made Class includes a subclass consisting of Potentially Time Barred Claims. The subclass is defined as: all members of the Claims Made Class who were eligible for an EIC and filed a tax return for tax years 1995, 1996 and 1999.[5]

5.5 The specific relief sought for the Claims Made Class, as a whole, consists of either: (i) declaratory relief stating the tax returns they have already filed constitute timely and allowable claims for refund of the overpayment associated with their EICs, or are sufficient to allow amendment of such claims; or, alternatively, (ii) injunctive relief requiring the Government to provide class members notice of their entitlement to the EIC and a procedure and schedule under which such claims should be made.

5.6 The additional or alternative relief sought for the Potentially Time Barred Subclass includes declaratory relief that the Government is estopped from asserting the applicable statutory limitations period to bar Plaintiffs from filing claims now for refund of

---

[4] Tax years 1997 and 1998 are excluded from this class because, on information and belief the Government of Guam provided an adequate EIC claims mechanism and procedure for those tax years. Should discovery indicate adequate claims procedures were not provided, Plaintiffs preserve their right to amend the Complaint to include tax payers with claims based on their 1997 and 1998 tax returns to the Claims Made Class.

[5] Tax year 2000 is not included because in the potentially Time Barred Claims Class the Santos action tolled the time period for filing an EIC claim as of February 12, 2004. Absent tolling, the limitations period for tax year 2000 would have expired April 15, 2004. If tolling does not apply, tax payers asserting claims for tax year 2000 should be included in the Potentially Time Barred Subclass.

COMPLAINT - 9
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429    Filed 06/22/2007    Page 24 of 48

1   1995, 1996, and 1999-2003 EIC overpayments. Such claims may be filed within a reasonable

2   time as set by the Court.

3       II. The Refund Class

4       5.7    The "Refund Class" is defined as:

5               all Guam income tax payers who, for any or all of tax years 1995-
6               2003, were: (1) eligible to receive the EIC pursuant to the
                Organic Act and/or the Guam EIC, (2) filed a timely and
7               allowable administrative claim for refund of the overpayment of
                their EIC, and (3) have not received a refund of the overpayment
8               nor has the overpayment been applied to offset their tax liability.
                For purposes of this class definition a "timely and allowable
9               administrative claim" includes claims filed pursuant to any relief
                granted any portion of the "Claims Made Class," as well as
10              claims timely filed pursuant to applicable provisions of the tax
                code.

11      5.8    The relief sought for the Refund Class is payment of the refund due based on the

12  EIC claims, with interest, plus attorneys' fees and costs.

13      III. The Future Refund Class

14      5.9    The Future Refund Class includes:

15              all Guam citizens who, for any or all of tax year 2000 and any
16              subsequent year in which the EIC remains authorized by law: (1)
                were or will be eligible to receive the EIC pursuant to either the
17              Organic Act and/or the Guam EIC, (2) have not yet filed a tax
                return; (3) are still able to file a timely and allowable
18              administrative claim, pursuant to 26 U.S.C. § 6511, for refund of
                an overpayment associated with an EIC to which they are
19              entitled; and (4) have not received a refund of an overpayment
                associated with an EIC, nor has such an overpayment been
20              applied to offset their tax liability.

21      5.10   The relief sought for the Future Refund Class includes declaratory relief that the

22  EIC applies to Guam taxpayers either through the Organic Act or pursuant to the Guam EIC

23  and that the Government is obligated to pay, in a time and manner required by law, class

24  members' properly made administrative claims for refund of an overpayment associated with

25  an EIC to which they are entitled.

26

COMPLAINT - 10
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131• FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429    Filed 06/22/2007    Page 25 of 48

## B. The Requirements of Fed. R. Civ. P. 23 (a)

5.11 All of these classes meet the prerequisites of Fed. R. Civ. P. 23(a) for a class action.

5.12 The classes consist of thousands of Guam's poorest taxpayers making joinder of all members impracticable.

5.13 There are numerous questions of law or fact common to the classes.

5.14 Questions common to all classes include the following:

5.15 Whether pursuant to the Organic Act or the Guam EIC, the Government was and/or is required to refund income tax overpayments and/or offset income tax liabilities in response to tax payers' administratively sufficient claims made for an EIC.

5.16 Whether the Government has, in the manner and time required by law, refunded Plaintiffs' overpayments associated with properly made claims for an EIC.

5.17 Questions common to the claims made class include, among others, all of the following:

5.18 Whether Guam tax payers are entitled to notice now, that they were entitled to claim the EIC on income tax returns for tax years 1995, 1996 and 1999-2003.

5.19 Whether the Government wrongly represented on published tax forms and through other means that the EUIC was unavailable to Guam taxpayers in any or all of tax years 1995, 1996, 1999-2003.

5.20 Whether the Government provided notice and a process for EIC claims sufficient to satisfy the basic requirements of Due Process for tax years 1995, 1996 and 1999-2003.

5.21 Whether the Government has waived any requirement that taxpayers who filed income tax returns for tax years 1995, 1996 and 1999-2003 are required to make a more sufficient claim for an EIC.

5.22 Whether Plaintiffs are entitled to the declaratory relief requested in ¶5.5.

COMPLAINT - 11
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131• FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429    Filed 06/22/2007    Page 26 of 48

5.23    Whether the Government acted in bad faith in 1996 when it terminated the EIC made applicable to Guam tax payers through the Organic Act.

5.24    Whether the Government acted in bad faith in 1999 and all years subsequent when it refused to pay EIC claims and/or provide notice and a procedure to make EIC claims despite provisions of the Organic Act and the Guam EIC requiring it to do so.

5.25    Whether the EIC claims of the Potentially Time Barred subclass are, in fact, time barred, in light of the Governments conduct directed toward all subclass members.

5.26    Whether the Government's conduct has caused a serious injustice.

5.27    Whether payment of EIC claims will cause the public's interest to suffer undue damage.

5.28    Whether the Government has provided a clear and certain post-deprivation remedy by which Plaintiffs could have claimed their right to a refund of EIC overpayments to which they were entitled

5.29    Whether Plaintiffs who were denied a post-deprivation remedy have no alternative adequate remedy at law, thus entitling them to the injunctive relief requested in ¶ 5.5 and 5.6.

5.30    The claims of the class representatives proposed for each class are typical of the claims of the class members in each class, in that each named Plaintiff was denied access to their EIC despite having filed a sufficient tax return.

5.31    Because their interests are identically aligned, the proposed class representatives will fairly and adequately protect the interest of the Classes.   In addition, the named plaintiffs have engaged counsel with significant experience prosecuting similar class actions.

C. The Requirements of Fed. R. Civ. P. 23(b)

5.32    The Claims Made Class and Future Refund Classes meet all requirements for class certification under Fed R. Civ. P. 23(b)(1) and (b)(2).

COMPLAINT - 12
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429    Filed 06/22/2007    Page 27 of 48

1  5.33  The prosecution of separate actions by individual class members will create a
2  risk of inconsistent or incompatible standards as to which EIC claims already made must be
3  paid to the Government; and which claims, if any, will be paid in the future.

4  5.34  The prosecution of any one individual action could, as a practical matter, be
5  dispositive of the interest of members in both classes, thus substantially impairing or impeding
6  their ability to protect their interests.

7  5.35  The Government has acted and refused to act on grounds applicable to all
8  members of both classes, thereby making appropriate declaratory and injunctive relief with
9  respect to the classes as a whole.

10  5.36  The Refund Class also meets the requirements for certification under Fed R.
11  Civ. P. 23(b)(3).

12  5.37  The questions of law and fact common to the Refund Class predominate over
13  any questions affecting only individual class members.

14  5.38  The class action is superior to other available methods for the fair and efficient
15  adjudication of the controversy.

16  5.39  In particular, individual class members' have little incentive and ability to
17  prosecute this action on their own. By definition these individuals do not have extra resources
18  available to prosecute claims against the Government.  Further, each individual's damages are
19  relatively small, ranging from a few hundred dollars to no more than $5000 dollars per tax year.
20  Thus, a class action may be the class members' only way to recover their damages or to at least
21  establish their right to make a claim for a refund. Further, concentration of the individual
22  claims in one action will conserve judicial resources and promote consistency in the treatment
23  of each class members' claim.

24

25

26

COMPLAINT - 13
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429    Filed 06/22/2007    Page 28 of 48

# VI. CLAIMS

**A.    Claim One – Action for Declaratory Relief Regarding Sufficiency of Certain EIC Administrative Claims Already Made**

6.1    Plaintiffs incorporate by reference all allegations made in the preceding paragraphs as if fully stated herein.

6.2    Plaintiffs assert this claim on behalf of themselves and all members of the Claims Made Class.

6.3    Unless otherwise stated all allegations are for any or all of tax years 1995, 1996 and 1999-2003.

6.4    The Government assessed and collected income tax from Plaintiffs.

6.5    Plaintiffs filed sufficient income tax returns.

6.6    Plaintiffs were eligible for an EIC in one or all of the tax years for which they filed a sufficient return.

6.7    An EIC represents an overpayment of taxes in the amount of the EIC.

6.8    The Government is required to refund properly claimed overpayments or use them to off set tax liabilities pursuant to 26 U.S.C. § 6402(a).

6.9    The Government provided no notice to Plaintiffs they were entitled to the EIC.

6.10    The Government affirmatively misrepresented to Plaintiffs they were not entitled to the EIC.

6.11    The Government provided no procedural mechanism for Plaintiffs to make a specific claim for an overpayment associated with an EIC consistent with the mechanism the Government provided prior to 1995 and in 1997 and 1998.

6.12    To the extent Plaintiffs' income tax returns were claims for EICs, the Government has investigated and acted on Plaintiffs' claim by (1) affirmatively stating it is not required to pay EIC claims; and (2) not refunding in the time and manner required by law, the amount of overpayment associated with the EICs to which Plaintiffs are entitled.

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

6.13    As such, the Government has waived any regulatory requirement that Plaintiffs must file a more specific claim for their EIC other than the income tax returns already filed.

6.14    Plaintiffs are entitled to a declaratory judgment that the income tax returns they have already filed are adequate to exhaust administration remedies as required by 26 U.S.C. § 7422(a), such that Plaintiffs are eligible to bring a tax refund action for all years they were eligible for the EIC.

**B.    Claim Two — Action for Declaratory Relief Regarding Application of 26 U.S.C.§ 6511 to Certain Plaintiffs' Right to Claim an EIC**

6.15    Plaintiffs incorporate by reference all allegations made in the preceding paragraphs as if fully stated herein.

6.16    Plaintiffs assert this claim on behalf of themselves and all members of the Potentially Time Barred Subclass of the Claims Made Class.

6.17    Unless otherwise stated all allegations are for any or all of tax years 1995, 1996 and 1999.

6.18    The Government affirmatively, and non-negligently, represented to Plaintiffs they were not entitled to the EIC through published rulings, oral comments and by printing "Not applicable in Guam" or "Not applicable" and cross hatching or otherwise obscuring that section of the official government tax return form applicable to the EIC.

6.19    The Government provided no procedural mechanism for Plaintiffs to make a claim for an overpayment associated with an EIC consistent with the mechanism the Government provided prior to 1995 and in 1997 and 1998.

6.20    The Government knew Plaintiffs were entitled to the EIC under the Organic Act and/or the Guam EIC, or at the very least, that there was a dispute as to whether Plaintiffs were entitled to the EIC.

6.21    The Government intended Plaintiffs to refrain from making claims for overpayments associated with EICs based on its conduct; and/or, Plaintiffs had a right to

COMPLAINT - 15
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 423    Filed 06/22/2007    Page 30 of 348

believe the Government intended them to refrain from making claims for overpayments associated with EICs based on its conduct.

6.22    Plaintiffs did not know if they were entitled to the EIC, even though they believed they were eligible for the EIC.

6.23    Plaintiffs relied on the Government's conduct to their detriment in that they did not make timely claims for, and have not received a refund of, overpayments associated with the EIC to which they are entitled, nor has such overpayment been applied to their tax liability.

6.24    Absent the relief requested in Claim One or in this Claim, Plaintiffs' EIC claims, for a tax refund are time barred pursuant to 26 U.S.C. § 6511.

6.25    The Government's conduct has caused a serious injustice in that Guam's poorest taxpayers have been deprived of their right to claim a tax credit specifically developed for them,

6.26    The public's interest will not suffer undue damage by allowing Plaintiffs to claim the EIC they were always entitled to.

6.27    Plaintiffs are entitled to a declaratory judgment that the Government is estopped from asserting the applicable statutory limitations periods of 26 USC 6511 to bar them from filing a civil action claim for a refund pursuant to 26 USC § 7422.

C.    **Claim Three -- For Injunctive Declaratory Relief Providing Notice of the Entitlement to the EIC and Availability of a Procedure to Make a Claim for Refund of an EIC Overpayment**

6.28    Plaintiffs incorporate by reference all allegations made in the preceding paragraphs as if fully stated herein.

6.29    Plaintiffs assert this claim on behalf of themselves and all members of the Claims Made Class, in addition, and as an alternative, to Claim One.

6.30    Unless otherwise stated all allegations are for any or all of tax years 1995, 1996 and 1999-2003.

COMPLAINT - 16
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

6.31    Plaintiffs are eligible to file a timely and allowable claim for refund of any EIC overpayments, either pursuant to 26 U.S.C. § 6511 or pursuant to relief granted certain Plaintiffs under Claim Two.

6.32    The Government, however, in violation of the Due Process Clause of the Fifth Amendment, has provided no clear and certain post-deprivation remedy by which Plaintiffs could or can claim their right to a refund of any EIC overpayments to which they were or are entitled.

6.33    Plaintiffs private property interest in their refund is significant.

6.34    The risk Plaintiffs will wrongly be permanently deprived of their overpayment through the procedures used by the Government is substantial.

6.35    The value of providing additional specific notice for these Plaintiffs is great as they have no other way of knowing they are entitled to claim an EIC refund.

6.36    The Government's interest in not providing the notice is small.

6.37    Plaintiffs only remedy at law to recover their overpayment is predicated on exhausting post-deprivation remedies and the Government has prevented them from doing so. Thus, Plaintiffs have no adequate remedy at law.

6.38    Plaintiffs are entitled to injunctive relief requiring the Government to notify them of their entitlement to make a claim for a refund of any EIC overpayment to which they were or are entitled, and to inform them of the procedure and schedule under which such claims can be made.

6.39    Plaintiffs are entitled to Declaratory Relief stating the Government is required to refund to them any overpayment associated with an EIC properly claimed under the relief provided in ¶ 6.40.

D.    Claim Four — Claim for Refund of Tax Overpayment Pursuant to 26 U.S.C. § 7422

6.40    Plaintiffs incorporate by reference all allegations made in the preceding paragraphs as if fully stated herein.

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131• FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

6.41 Plaintiffs assert this claim on behalf of themselves and all members of the Refund Class.

6.42 Unless otherwise stated all allegations are for any or all of tax years 1995-2003.

6.43 Plaintiffs have complied with 26 USC § 7422 by filing sufficient administrative claims for refund of overpayments associated with EICs to which they are entitled. The administrative claims are both timely and allowable either pursuant to 26 U.S.C. § 6511, or pursuant to the relief granted in Claims 1, 2, or 3.

6.44 The Government is required to refund Plaintiffs' properly claimed overpayment pursuant to 26 U.S.C. § 6402(a).

6.45 The Government has not, in the manner and time required by law, refunded Plaintiffs' overpayments associated with EICs to which they are entitled, or used the overpayments to offset Plaintiffs' tax liability

6.46 Plaintiffs are entitled to payment of their refund, with interest, plus attorneys fees and costs.

**E. Claim Five — Claim for Declaratory Relief re Future Refunds of Tax Overpayments Associated with the EIC**

6.47 Plaintiffs incorporate by reference all allegations made in the preceding paragraphs as if fully stated herein.

6.48 Plaintiffs assert this claim on behalf of themselves and all members of the Future Refund Class.

6.49 Unless otherwise stated, all allegations are for any or all of tax year 2000 and any subsequent year in which the EIC remains authorized by law.

6.50 The Government has, or will, assess and collect income tax from Plaintiffs.

6.51 Plaintiffs were, or will be, eligible for an EIC in one or all of the applicable tax years. The EIC entitles, or will entitle, Plaintiffs to a refund of an overpayment or application of the overpayment to offset their tax liability.

COMPLAINT - 18
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131• FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600• FAX 206.682.2992

Case 1:04-cv-00006   Document 429   Filed 06/22/2007   Page 33 of 48

6.52    Plaintiffs are still able to file timely and allowable administrative claims, pursuant to either 26 U.S.C. § 6511 or the relief granted in response to Claim Three, for refund of the overpayment associated with EICs to which they are, or will be, entitled.

6.53    The Government is required to refund overpayments for which a proper administrative claim is made pursuant to  26 U.S.C. §6402 and 6511.

6.54    Since 1996, the Government has not, on any consistent basis, provided notice of any taxpayer's entitlement to the EIC, provided a procedural mechanism for taxpayers to make a claim for an EIC overpayment consistent with mechanisms provided in the past, or paid timely and allowable claims for refunds of EIC overpayments.  Some administrative claims have been paid, others have not.

6.55    Since June 23, 1989 , the date of first AG's opinion], the Government has represented that Plaintiffs are both entitled to the EIC and that they are not.

6.56    Absent resolution and notice of the status of the EIC in Guam, Plaintiffs cannot modify their conduct related to taxable income to ensure they take advantage of applicable tax laws.  In addition, Plaintiffs are, or will be, forced to incur time and expense associated with filing a potentially futile administrative claim, or risk losing entitlement to their claim altogether.

6.57    As such, Plaintiffs seek declaratory relief that the EIC applies to Guam taxpayers and the Government will be obligated to pay, in the time and manner required by law, Plaintiffs' properly made administrative claims for refund of overpayments associated with EICs to which they are entitled.

## VII. PRAYER FOR RELIEF

7.0    Wherefore, Plaintiffs on behalf of themselves and the classes they seek to represent,   request the Court enter judgment against Defendant and in favor of Plaintiffs and Class Members, and to award the following relief:

COMPLAINT - 19
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131• FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429    Filed 06/22/2007    Page 34 of 48

1    7.1    Enter an Order certifying the proposed classes and where applicable, subclasses
2    and/or issues;

3    7.2    Declare that the EIC is applicable in Guam such that the Defendant is obligated
4    to refund to Plaintiffs and all members of the Claims Made, Refund and Future Refund Classes,
5    in the time and manner required by law, the overpayments associated with properly claimed
6    EICs.

7    7.3    Declare that the 1995, 1996 and 1999-2003 income tax returns already filed by
8    Plaintiffs and all members of the Claims Made Class adequately exhaust administrative
9    remedies as required by 26 U.S.C. § 7422(a) such that Plaintiffs and class members are eligible
10    to bring a tax refund action to recover overpayments associated with their EIC, for all years
11    they were eligible for the EIC.

12    7.4    Declare that the 1995, 1996 and 1999-2003 income tax returns already filed by
13    Plaintiffs and the members of the Claims Made Class are sufficient to allow amendment of an
14    EIC claim as of the date of judgment and until a date certain as set by the Court;

15    7.5    Declare that Plaintiffs and all members of the Potentially Time Barred Subclass
16    of the Claims Made Class are not time barred from asserting claims for refunds of the
17    overpayment associated with EICs for which they were eligible in tax years 1995, 1996 and
18    1999.

19    7.6    Enter an order requiring Defendant to notify Plaintiffs and all members of the
20    Claims Made Class of their entitlement to make a claim for any EIC overpayment to which
21    they were or are entitled and establishing a procedure and schedule for such claims to be made.

22    7.7    Award Plaintiffs and all members of the Refund Class income tax refunds in
23    amounts to be proven at trial;

24    7.8    Award pre- and post-judgment interest as allowed by law;

25    7.9    Award attorneys' fees and costs of suit as allowed by law;  and

26    7.10    Award any such other relief the Court deems just and equitable.

COMPLAINT - 20
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429    Filed 06/22/2007    Page 35 of 48

DATED this 3rd day of December, 2004.

VAN DE VELD SHIMIZU CANTO & FISHER
TOUSLEY BRAINS STEPHENS PLLC

By: _____
Thomas J. Fisher, Esq.
**Attorneys for Plaintiffs**

COMPLAINT - 21
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006     Document 429     Filed 06/22/2007     Page 36 of 46

# EXHIBIT E



**Office of the Governor of Guam**

P.O. Box 2950 Hagåtña, Guam 90932
TEL (671) 472-8931 · FAX (671) 477-4826 · EMAIL: governor@mail.gov.gu

**Felix Perez Camacho**
*Governor*

**Kaleo Scott Moylan**
*Lieutenant Governor*



Stephen A. Cohen
Assistant Attorney General
Office of the Attorney General
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910

**1 6 SEP 2004**

> Re:   Julie Babauta Santos v. Felix P. Camacho, Governor of Guam, et al:
>          District Court of Guam, Civil Case No. 04-00006

Dear Steve:

We have reviewed the materials that you forwarded to our offices on September 9 from Mike Phillips. We have concerns regarding Mr. Phillips' proposal. I understand from Ray Souza that you described it as an attempt by Mr. Phillips to get a new settlement under the guise of an administration plan. We agree.

However, we have greater concerns regarding the settlement as a whole that we would like addressed before any consideration is given to Mr. Phillips' proposal. As you know, Governor Camacho was never consulted with regard to the June 2004 settlement agreement entered into by Attorney General Moylan and Acting Governor Moylan. Therefore, we would like this opportunity to raise the concerns the Governor has regarding the agreement.

The Governor's most significant concern is that the settlement is not contingent on legislative funding. This is a concern as a practical matter because the Legislature has failed to make an appropriation since the settlement was executed. However, even if the Legislature had made an appropriation, we would be concerned because we are unsure of whether the contract complies with Guam law.

Guam law forbids any officer of the Government of Guam from involving "the government of Guam in any contract or other obligation, for the payment of money for any purpose, in advance of the appropriation made for such purpose." 5 G.C.A. § 22401(a)(3); *see Pangelinan v. Gutierrez*, 2003 Guam 13 (2003), *reconsidered in part on other grounds* 2004 Guam 16. Further, Guam law forbids the participation in any contract that requires the expenditure of non-appropriated funds. *See* 5 G.C.A. § 22401(a)(2).

Based on these laws, we are concerned that the settlement agreement is invalid. We therefore require an explanation as to how the settlement agreement complies with Section 22401's ("Illegal Expenditures") provisions before we can further respond.

We also are concerned with certain structural problems that we see with the settlement agreement. It appears that under the settlement agreement, and under Mr. Phillips' proposed administrative plan, Mr. Phillips will receive 10% of the $60 million no matter how many prospective class members may opt-out. Given that the settlement has not led to a complete peace for the Government, but instead gave birth to both the intervention motions and the new *Torres* case, we are concerned that the Government will be spending $6 million to purchase a

settlement with only a limited number of plaintiffs while facing future liability to a greater number of plaintiffs. This is another area that we would like to have addressed in your response.

Further, as the agreement is written, the Government could end up paying the opt-in plaintiffs 100% if there are a substantial number of opt-outs. Given the potentially strong defenses that existed to the class action and lack of any litigation in the case, we would like to know what procedural safeguards exist regarding this matter.

We also would like a better understanding of how the determination was made to include what appear to be time-barred claims. Related to this, we would like to know why claims from 1996 were favored in the settlement, even though those claims are arguably less meritorious given the statute of limitations issue.

The final concern we have regarding the settlement is our lack of knowledge of the history of the negotiations of the settlement. We want to review all information concerning the settlement and its negotiations so that we are fully informed prior to the hearing. Therefore, please transmit to us the information you have on the negotiations, including the materials exchanged in negotiating the settlement, how fees were agreed to in the settlement, letters and memos regarding compliance with Guam's illegal expenditure laws (§ 22401), and any other information that may be relevant. We want to review this information to evaluate Mr. Phillips' request and to give your office instructions on how to proceed. Further, we want to ensure that all such information is preserved during any litigation relating to EITC.

Assuming our concerns regarding the settlement are addressed, we also have concerns regarding Mr. Phillips' proposal. The objective of the plan appears to be securing payments of attorneys' fees as each payment is made into the settlement fund. Any condition permitting lawyers to receive fees before amounts are actually disbursed to class members is obviously unacceptable to the Governor.

Next, Mr. Phillips' plan seeks to place the burden of almost one million dollars in administration costs on the Government. This would appear to be another unappropriated expenditure, and on that ground alone the Governor must refuse. Further, one million dollars would be a material change to the settlement at a time when we all know the Government of Guam continues to be strapped for cash.

Lastly, we are concerned that the proposed dates in the administrative plan are all in the immediate future. Given the appeal filed by one of the would-be interveners, it would be of concern to us were the settlement to be approved before the appeal is resolved. It would be unfortunate if funds were distributed, only to have the settlement thrown out based on the appeal.

We realize that we have raised multiple issues, responding to which will require some effort. However, we hope that you are able to respond quickly as some of the issues (particularly with regard to the illegal expenditures issue) place the Governor in a position where he may need to act. Thank you for your time on this matter.

Very truly yours,

Shannon Taitano

# EXHIBIT F

FILED

DISTRICT COURT OF GUAM

MAR 1 7 2005

MARY L.M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM
TERRITORY OF GUAM

| | | |
|---|---|---|
| MARY GRACE SIMPAO, CHRISTINA NAPUTI on behalf of themselves and a class of others similarly situated | ) ) ) ) ) ) | CV 04-00049 **ORDER** |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | |
| GOVERNMENT OF GUAM | ) ) ) | |
| Defendant. | ) ) ) ) | |

On March 17, 2005, the Court heard Defendant's Motion to Dismiss the First Amended Complaint ("FAC"). Having considered all papers and argument submitted in the matter, the Court now rules as follows:

1

## I.    INTRODUCTION

Plaintiffs Mary Grace Simpoa and Christina Naputi, on behalf of themselves and a class of others similarly situated, (collectively "Plaintiffs") bring this action against the Government of Guam for inconsistency in acknowledging the applicability of the Earned Income Credit ("EIC").

Primarily before the Court is Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim upon which relief can be granted pursuant to the Federal Rules of Civil Procedure 12(b)(1) and (6).[1]

## II.    BACKGROUND

The Organic Act imposes several Internal Revenue Codes on Guam residents. <u>See</u> 48 U.S.C. § 1421 *et seq.* Within those tax codes is the EIC, which was enacted in 1975. The EIC provides some tax benefits to low-income workers in the hopes that these benefits will make working more attractive that welfare.

---

[1]In conjunction with their Motion to Dismiss, Defendant filed several other motions including: 1)Defendant's Objection to Plaintiff's Stated Intention to File a Second Opposition to Defendant's Motion to Dismiss FAC and Motion to Strike if Second Opposition is Filed; 2)Motion to Shorten Time for Hearing or Consideration of Defendant's Objection; and 3)Motion to Strike Plaintiffs' March 8, 2004 Opposition for Using Less Than a Standard 12 Point Font Type and Failure to Meet Court's Limitation of 20 pages.

2

1    Prior to 1995, Defendant allowed Plaintiffs to claim

2  the EIC, and subsequently processed thousands of claims.

3  During the 1995-1996 tax years, Defendant represented on it

4  tax forms that the EIC was "inapplicable in Guam."  In thos

5  years, Defendant did not allow Plaintiffs to claim credits

6  and did not issue refunds associated with EIC.  During the

7  1997-1998 tax years, Defendant once again allowed Plaintiff

8  to claim EIC, however they paid only a portion of the 1997

9  claims and only one 1998 claim.[2]  During the 1999-2003 tax

10  years, Defendant again represented that the EIC was

11  inapplicable to Guam residents.  Plaintiffs allege there

12  were no other mechanisms for applying for an EIC during

13  those years.

14

15    On December 3, 2004, Plaintiffs filed a complaint

16  against Defendant seeking declaratory judgments regarding

17  the applicability of the EIC to Guam residents and refunds

18  from tax overpayments.  On February 1, 2005, Plaintiffs

19  filed the FAC with six specific claims: 1) Declaratory

20  relief regarding sufficiency of Certain EIC Administrative

21  Claims already made; 2) Declaratory relief regarding the

22  application of 26 U.S.C. § 6511 to certain Plaintiffs' Right

23  to Claim an EIC; 3) Injunctive Declaratory relief providing

24  notice of the entitlement to the EIC and availability of a

25

26    [2]The 1998 claim was not paid out until 2004.

3

procedure to make a refund claim; 4) Refund of tax overpayment; 5) Declaratory relief regarding future refunds of EIC overpayments; and 6) Injunctive relief requiring Defendant to establish an EIC reserve and trust fund.

In the instant matter, Defendant contends Plaintiffs' FAC should be dismissed for lack of subject matter jurisdiction and failure to state a claim. Defendant's contention is based on several distinct arguments including state immunity, failure to exhaust administrative remedies, statute of limitations, applicability of the Declaratory Judgment and Anti-injunctive Acts, and improper proposed classes. This matter was originally set for March 11, 2005, but the Court partially granted the parties' stipulation for continuance, which moved the hearing to March 17, 2005.

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Defendant first contends Plaintiffs' FAC should be dismissed for lack of subject matter jurisdiction.

#### 1. Legal Standard: Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374, 98 S. Ct. 2396, 2403 (1978). A federal court has jurisdiction over actions that either arise under federal law, or where

4

the amount in controversy exceeds $75,000 and is between (1)
citizens of different States; (2) citizens of a State and
citizens or subjects of a foreign state; (3) citizens of
different States and citizens or subjects of a foreign state
that are additional parties; or (4) a foreign state as
plaintiff and citizens of a State or different States.
See 28 U.S.C. §§ 1331, 1332(a).

The plaintiff bears the burden of establishing subject
matter jurisdiction, and the court presumes lack of
jurisdiction until the plaintiff proves otherwise. Kokkonen
v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377
(1994); Stock West, Inc. v. Confederated Tribes, 873 F.2d
1221, 1225 (9th Cir. 1989).

Pursuant to Fed. R. Civ. Proc. 12(b)(1), subject matter
jurisdiction may be challenged at any time. Albrecht v.
Lund, 845 F.2d 193, 194 (9th Cir. 1988). If the court
concludes that it lacks jurisdiction over the subject matter
of the complaint, it must dismiss the action. See Fed. R.
Civ. Proc. 12(h)(3).

## 2. Analysis: Subject Matter Jurisdiction

Plaintiffs have pled sufficient facts to give the Court
jurisdiction under 48 U.S.C. § 1424 and 48 U.S.C. § 1421i(h)
which states, "the District Court of Guam shall have

5

exclusive original jurisdiction over all judicial
proceedings in Guam...with respect to the Guam Territorial
income tax." 48 U.S.C. § 1421i(h). This case pertains
directly to the income tax filings of Guam residents. Thus
as a general matter, this case presents a federal question
over which the Court has subject matter jurisdiction.

Defendant also alleges a lack of subject matter
jurisdiction in three specific areas. Defendant argues the
Court lacks jurisdiction over Plaintiffs' first through
fifth claims because: 1) Defendant has sovereign immunity;
2) Plaintiffs failed to exhaust administrative remedies;
and, 3) should the Court find that subject matter
jurisdiction does not exist with respect to Plaintiffs'
first through fifth claims, the Court cannot exercise
supplemental jurisdiction over the sixth claim.

### a. Sovereign Immunity

Defendant first contends the Court lacks subject matter
jurisdiction because the Defendant has sovereign immunity.
Indeed, in <u>Crain v. Gov. of Guam</u>, the Ninth Circuit held
that Defendant had sovereign immunity and could not be sued
without permission. 195 F.2d 414 (9th Cir. 1952). The
Ninth Circuit later found, however, that 28 U.S.C. §
1421i(h), which gives the Court jurisdiction over the Guam
Territorial Income Tax ("GTIT"), is effectively a waiver of

6

immunity, and thereby grants the Court jurisdiction over Defendant. <u>See</u> <u>Forbes v. Maddox</u>, 339 F.2d 387 (9th Cir. 1964).

Accordingly, the Court can exercise jurisdiction, as Defendant cannot claim sovereign immunity.

### b. Administrative Remedies

Defendant next contends Plaintiffs' first through fifth claims should be dismissed for failure to exhaust administrative remedies.[3]

The tax code states, "no suit or proceeding shall be maintained in any court for the recovery of any ... [refund] ... until a claim for refund or credit has been duly filed." 26 U.S.C. § 7422(a).

Plaintiffs argue the mere filing of a tax return, without any specific application for the EIC, constitutes a claim. This argument is unpersuasive as it effectively places the burden on Defendant to determine whether someone is eligible for a refund or credit. <u>See</u> <u>United States v. Felt & Tarrant Mfg. Co.</u>, 283 U.S. 269 (1931).

---

[3]Because Plaintiffs did file EIC requests in 1997 and 1998, Defendant's argument does not relate to those years.

7

1    Nevertheless, because Defendant affirmatively prevente[d]
2    Plaintiffs from filing EIC claims by blocking out the
3    relevant section on tax returns with the words "inapplicabl[e]
4    in Guam." Any attempt to claim and EIC credit would have
5    been futile. Thus, Defendant's argument is unpersuasive in
6    that there were no additional administrative remedies
7    available, and further exhaustion would have been futile.[4]
8
9         c. Monetary Relief
10        Defendant next contends Plaintiffs' fourth claim,
11   refund of tax overpayment, should be dismissed for lack of
12   jurisdiction because the Court cannot grant monetary relief
13   under 26 U.S.C. § 7422(a), unless Plaintiffs first exhaust
14   administrative remedies.
15
16        Again, the tax code states, "no suit or proceeding
17   shall be maintained in any court for the recovery of any ...
18   [refund] ... until a claim for refund or credit has been
19   duly filed." 26 U.S.C. § 7422(a). In their FAC, Plaintiffs
20   allege they did file "sufficient administrative claims for
21
22   _____
23   [4]Curiously, in the declaration of Thomas J. Fisher, Plaintiffs
     submitted Guam's EIC application form for the 1995-1996 and 1999-2004
     tax years. Although it is unclear how these forms support Plaintiffs'
24   arguments as they suggest Plaintiffs should have filled them out, the
     alleged facts taken in light most favorable to the Plaintiffs suggest
25   that Defendant effectively prevented any exhaustion of administrative
     remedies.
26

8

refund of overpayments associated with EIC's to which they are entitled." Complaint at ¶ 6.43. Thus, Plaintiffs allege sufficient facts to support an exhaustion of administrative remedies. Because Plaintiffs pled that a refund claim was filed and Defendant has yet to pay, Plaintiffs' suit is proper under 26 U.S.C. § 7422(a), and the Court may grant monetary relief if deemed appropriate.

### d. Supplemental Jurisdiction

Defendant next contends that Plaintiffs' Sixth Claim, injunctive relief requiring the Defendant to comply with provisions of 11 G.C.A. §§ 50101 and 51101 in establishing an EIC reserve fund and trust fund, should be dismissed for lack of subject matter jurisdiction. Because the Court has jurisdiction of the other claims under 48 U.S.C. §§ 1421i(h) and 1424, Defendant's argument fails in that the Court can exercise supplemental jurisdiction over Plaintiff's Sixth Claim under 28 U.S.C § 1367(a).

## B. Failure to State a Claim

Defendant also contends Plantiffs' first through sixth claims in their FAC should be dismissed for failure to state a claim upon which the Court can grant relief.

### 1. Legal Standard: Failure to State a Claim

9

In a Rule 12(b)(6) motion to dismiss, the Court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party. Klarfeld v. United States, 944 F.2d 583, 585 (9th Cir. 1991). A dismissal can be based on the lack of cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). A party need not, however, state the legal basis for his claim, only the facts underlying it. McCalden v. California Library Ass'n, 955 F.2d 1214, 1223 (9th Cir. 1990).

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Klarfeld, 944 F.2d at 585; Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987) see also, NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). The court need not, however, accept conclusory allegations or unreasonable inferences as true. Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

## 2. Analysis: Failure to State a Claim

Specifically, Defendant argues Plaintiffs' FAC fails to

10

state a claim because: 1) claims are barred by the applicable statute of limitations; 2) declaratory judgments are not available remedies; 3) injunctive relief is not an available remedy; and, 4) Plaintiffs' proposed classes do not meet the requirements of Fed. R. Civ. Pro. 23.

### a. Statute of Limitations

Defendant first contends Plaintiffs' first through fifth claims are barred by the statute of limitations. This contention is primarily based on Defendant's argument that Plaintiffs' claims should be reclassified as a 42 U.S.C. § 1983 Civil Rights action, and therefore be subjected to a two-year limitations period.

Plaintiffs, however, never classified their claims as civil rights violations and have not sought damages for denial of fundamental Constitutional rights. Although they allege that they have been deprived of their rights and privileges granted by law, see 42 U.S.C. § 1983, Defendant may not reclassify Plaintiffs' claims to avoid liability. Accordingly, a two-year statute of limitations period is not appropriate.

Defendant in the alternative, contends that all EIC

11

refund claims prior to 2001 should be barred by the limitations period set forth in 26 U.S.C. § 6511(a). The Internal Revenue Code states that all refund claims "shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." 26 U.S.C. § 6511(a). Furthermore, the Court also notes the Supreme Court's elimination of the possibility of equitable tolling by declaring, "[s]ection 6511's detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions...indicate to us that Congress did not intend courts to read other unmentioned, open-ended, "equitable" exceptions into the statute." United States v. Brockamp, 519 U.S. 347, 352 (1997). Thus, any argument by Plaintiffs that the Statute of Limitations should be tolled due to any action by Defendant cannot survive.

Plaintiffs argue that the mere filing of their tax returns constitutes an EIC claim. Plaintiffs argue that their general filing of a tax return constitutes "a claim" because the tax return contained the relevant information for EIC eligibility. Again, the Court finds this argument unpersuasive because although the Defendant determines how much of an EIC refund is due, it is not their burden to

12

1  determine whether an individual qualifies for a tax credit.
2  Taken to the extreme, Plaintiffs' argument suggests that
3  taxpayers should simply send any relevant paperwork to the
4  IRS and require the government to play the role of H&R Bloc
5  in determining how best to calculate and individual's tax
6  liability.

7

8

9  Regardless of this argument by Plaintiffs, their FAC
10  alleges that sufficient administrative refund claims
11  associated with EICs were timely filed pursuant to 26 U.S.C.
12  § 6511(a).  See Complaint at ¶ 6.43.  Although specific
13  facts regarding these administrative claims are lacking in
14  the Complaint, Plaintiffs' conclusory statement is
15  sufficient to survive a motion to dismiss, as the Court must
16  interpret the facts in the light most favorable to
17  Plaintiffs.  Therefore, the Court can concludes that the
18  statute of limitations does not bar Plaintiffs' claims.

19

20  **b. The Declaratory Judgment Act**

21  Defendant next contends Plaintiffs' FAC should be
22  dismissed for failure to state a claim because declaratory
23  judgments are not available in cases involving federal taxes
24  or the Guam Territorial Income Tax.  The Declaratory
25  Judgment Act states,

26

13

> "[i]n a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking declaration, whether or not further relief is or could be sought."

28 U.S.C. § 2201(a). Section 7428 applies to the classification of organizations, which is not at issue in this case. See 28 U.S.C. § 7428.

Defendant first argues declaratory judgment is not available because it is not specifically mentioned in the GTIT as a remedy. The GTIT, however, does not specifically mention available remedies of any kind. See 28 U.S.C. § 2201. Although there are some limitations on enforcing the GTIT, there is no indication these limitations extend beyond the executive branch. See 48 U.S.C. § 1421i(d)(2). Because Plaintiffs' claim falls within the jurisdiction of the Court, declaratory judgment is available. See 28 U.S.C. § 2201(a).

Defendant also argues Plaintiffs cannot receive declaratory judgment because the GTIT is a federal tax, to which the Declaratory Judgement Act does not apply. See 28 U.S.C. § 2201(a). The Ninth Circuit, however, has repeatedly held that the GTIT is a territorial tax, and not a federal tax. See Bank of America v. Chaco, 539 F.2d 1226,

14

1227 (9th Cir. 1976); <u>Forbes v. Maddox</u>, 339 F.2d 387, 389
(9th Cir. 1964); <u>Phelan v. Taitano</u>, 233 F.2d 117, 118 (9th
Cir. 1956). Thus, the Declaratory Judgment Act is
applicable to Plaintiffs' claim.[5]

## c. The Anti-Injunctive Act

Defendant next contends Plaintiffs' third claim for
Injunctive Declaratory Relief should be dismissed for
failure to state a claim because the Anti-Injunctive Act
bars Plaintiffs' claim.

The Anti-Injunctive acts provides, "no suit for the
purpose of restraining the assessment or collection of any
tax shall be maintained in any court by any person." 26
U.S.C. § 7421(a). Plaintiffs persuasively argue that their
suit is not brought for the purpose of restraining the
assessment of collection of any tax, but for the enforcement
of the EIC. Because assessment and collection of taxes has
already taken place, Plaintiffs' suit does not restrain or
interfere in those activities. <u>See</u> <u>Sorenson v. Sec'y of the
Treasury</u>, 557 F. Supp. 729 (D. Wash. 1982), *aff'd*, 752 F.2d

---

[5]Although Defendant is now contesting the applicability of the
Declaratory Judgment Act, the Court notes that it relied on the same
act to seek relief from the Supreme Court of Guam when Guam's
legislative branch attempted to force the executive branch to
implement the EIC. <u>See</u> <u>In re Request of I Mina' Bente Sing'ko Na
Lihelaturan Guahna</u>, 2001 Guam 3 (2001).

15

1433 (9th Cir. 1985), *aff'd*, 475 U.S. 851 (1986).
Accordingly, the Anti-Injunctive Act does not bar
Plaintiffs' claim.

### d. Class Certification

Next, Defendant contends Plaintiffs' claims should be
dismissed for failure to state a claim because the proposed
classes do not meet the requirements of commonality and
typicality as required by Fed. R. Civ. Pro. 23(a)(3) and
(b)(3). This argument goes to whether certification of the
proposed classes is proper. As Plaintiffs have not yet
brought a motion to certify the classes, Defendant's
argument is premature.

## IV. CONCLUSION

As a preliminary matter, Defendant has filed the
following additional motions: (1) Objection to Plaintiffs'
stated intention to file a second opposition and Motion to
strike if second opposition is filed; (2) Motion to shorten
time for hearing or consideration of Defendant's Objection
to Plaintiffs' stated intention; (3) Motion to strike
Plaintiffs' March 8, 2005 Opposition for using less than
twelve point font and exceeding page limit; and (4) Motion
to shorten time for hearing or consideration of Defendant's

16

motion to strike Plaintiffs' March 8, 2005 Opposition. The Court notes any formatting and procedural deficiencies, but **DENIES** all such motions and accordingly will rule on the substantive merits of the case.

The Court has valid subject matter jurisdiction over Plaintiffs' first through fifth claims under 48 U.S.C §§ 1421i(h) and 1424. Defendant cannot validly claim sovereign immunity and Plaintiffs have exhausted any administrative remedies which were not deliberately impeded by Defendant. Additionally, because the Court has valid subject matter jurisdiction over the first through fifth claims, it can validly exercise supplemental jurisdiction over Plaintiffs' sixth claim.

As to Defendant's argument that Plaintiffs' first through third and fifth claims should be dismissed for failure to state a claim upon which relief can be granted, the Court first finds that the statute of limitation does not bar any of Plaintiffs' claims. Second, the Declaratory Judgment and Anti-Injunctive Acts do not bar Plaintiffs' claims and do not prevent the Court from granting declaratory judgments and injunctions in Plaintiffs' case. Third improper class definition does not prevent Plaintiffs' case from proceeding at this stage, and Defendant is

17

1   premature in contesting possible certification.

2   Accordingly, Defendant's Motion to Dismiss is **DENIED** in its

3   entirety.

4   **IT IS SO ORDERED**.

_____

**RONALD S.W. LEW**
United States District Judge

DATED: March 17, 2005

Notice is hereby given that this document was
entered on the docket on **MAR  1 8  2005** .
No separate notice of entry on the docket will
be issued by this Court.
        Mary L. M. Moran
        Clerk, District Court of Guam
By: _/s/ Shirlene A. Ishizu_ MAR  1 8  2005
        Deputy Clerk         Date

18

# EXHIBIT G

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

MARY GRACE SIMPAO, CHRISTINA
NAPUTI and JANICE CRUZ, on behalf of
themselves and a class of others similarly
situated,

        Plaintiffs,

        vs.

GOVERNMENT OF GUAM,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Case No. 04-00049

ORDER

This matter is before the Court on the Plaintiffs' Partial Summary Judgment motion. *See* Docket No. 59. After hearing argument from counsel and reviewing the parties' submissions, as well as relevant caselaw and authority, the Court hereby memorializes the bases for its rulings herein.

## BACKGROUND

In the tax years prior to 1995, Guam taxpayers claimed the Earned Income Tax Credit ("EIC") and the Government of Guam paid it.[1] However, in the years 1995 and 1996, the Government of Guam stopped paying the EIC. In 1996 the Department of Revenue and Taxation

---

[1] The EIC also referred to as the EITC was first enacted by the United States Congress in 1975 and codified as Section 43 of the U.S. Internal Revenue Code of 1954. *See* U.S. Public Law 94-12, § 204. The EIC is a refundable Federal income tax credit for low-income working individuals and families. It allows an eligible individual to claim a tax credit against the amount of income tax liability, if any, on his or her annual income tax return.

1 ("DRT") issued a ruling ("Revenue Ruling No. 96-001") regarding whether the EIC applied in
2 Guam under the Guam Territorial Income Tax ("GTIT"). *See* Canto Decl., at Exhibit C, attached
3 thereto. It concluded that it did not. The Attorney General of Guam issued his own opinion on
4 the matter and agreed with the DRT's ruling. *Id.,* Exhibit B ("Attorney General of Guam
5 Memorandum Opinion DRT/DOA 96-001 ('1996 AG Opinion')), attached thereto.

6       In light of the DRT's ruling and Attorney General's opinion, the Government of Guam
7 published that EIC was inapplicable in Guam on its tax return forms for the years 1995 and 1996
8 and 1999 through 2003.[2] *See* Answer at ¶ 3. For example, the 1999 1040A tax form contained
9 the language "**Not Applicable**" where Earned Income Credit was listed. *See* Canto Decl.,
10 Exhibit L, attached thereto.[3] For the years 1997 and 1998, such prohibitory language was not on
11 the Government of Guam's tax forms. *See Id.,* Exhibit E, attached thereto.

12       For tax years 1995 and 1996, the Government of Guam did not pay refunds associated
13 with EICs. *See* Answer at ¶ 18. In the years 1997 and 1998, qualified Guam taxpayers could
14 claim EIC on their tax returns. However, only some of the EIC claims were paid for the tax year
15 1997 and with the exception of one individual taxpayer, no EICs were paid for the tax year 1998.
16 *Id.* at ¶s 7, 21 and 23. No EICs were paid for the tax years of 1999 through 2003.

17       On January 12, 2005, the Governor of Guam issued an Executive Order indicating the
18 Government would establish a procedure whereby EIC claims would become a part of a qualified
19 taxpayer's tax return. *See* Canto Decl., Exhibit F, attached thereto. Shortly after the Governor
20 issued this order, the DRT published forms with which to make claims for the relevant tax years
21 of 1995 though 2004. *Id.,* at Exhibit G, attached thereto.

22       The plaintiffs have collectively filed individual income tax returns with the Government
23 of Guam during the tax years 1995 through 2003. *See* Canto Decl., at Exhibit L, attached thereto.
24 None of the plaintiffs received an EIC offsetting the taxes paid during those years. Additionally,
25
26       [2]Guam issues it own 1040 forms.
27
28       [3] The plaintiffs in some of the years in question actually used the federal form 1040 which
did not black out the EIC portion.

2

none of the plaintiffs filed an administrative claim for a refund of overpaid taxes. The plaintiffs,
2 Mary Grace Simpoa, Christiana Naputi and Janice Cruz,[4] on behalf of themselves and a class of
3 other similarly situated, ("plaintiffs") brought this action against the Government of Guam
4 seeking declaratory relief regarding the applicability of the EIC to Guam taxpayers and refunds
5 from tax overpayments.

6 ## DISCUSSION

7      The plaintiffs now move for partial summary judgment and seek the following relief: (1)
8 A declaration that, under the GTIT, the EIC applies to Guam and requires refunds of properly
9 claimed EIC claims; (2) A declaration that, by filing income tax returns that contain no claim for
10 the EIC, the plaintiffs have nonetheless exhausted their administrative remedies as required by
11 the GTIT as a condition precedent to bringing suit; (3) A declaration and injunctive relief
12 requiring the Government of Guam to provide notice to plaintiffs of their right to file EIC claims
13 and creating procedures for filing such claims under the GTIT, or alternatively, a declaration that
14 the Government of Guam must refund EIC claims to plaintiffs upon filing proper amended tax
15 returns containing an EIC claim under the GTIT; and (4) A declaration and injunctive relief that
16 the Government of Guam must enforce certain local Guam laws concerning amounts that are
17 alleged to be required to be set aside to pay the EIC.

18      Summary judgment is appropriate when the evidence, read in the light most favorable to
19 the nonmoving party, demonstrates that there is no genuine issue as to any material fact, and the
20 moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party
21 opposing summary judgment cannot rest on conclusory allegations, but must set forth specific
22 facts showing that there is a genuine issue for trial. *Leer v. Murphy*, 844 F.2d 628, 631 (9th Cir.
23 1988). Moreover, to defeat a summary judgment motion, the nonmoving party must come
24 forward with evidence sufficient to establish the existence of any disputed element essential to
25 that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v.*

26 ────────────────

27     [4]On April 14, 2005, when the summary judgment motion was filed, Janice Cruz, was not
a named plaintiff. However, on April 18, 2005, plaintiffs filed a Second Amended Complaint
28 wherein, plaintiff Cruz was added.

3

1    *Catrett*, 477 U.S. 317, 322, 102 S.Ct. 2548 (1986).

2         Before addressing the merits of the motion, the defendant makes a number of objections.

3    The defendant first contends that the plaintiffs' motion is premature. The motion is based on the

4    Second Amended Complaint. However, the motion was filed on April 14, 2005 and the Second

5    Amended Complaint was filed on April 18, 2005, four days after the motion. The defendant

6    claims that in filing the motion, the plaintiffs misrepresented that the Second Amended

7    Complaint contained no new facts, "apart from the addition of the plaintiff. All of the

8    defendant's answers therefore to the Second Amended Complaint are required to be identical to

9    its answers to the First Amended Complaint, save for those referring to the newly added Plaintiff

10   Janice Cruz." *See* Motion, p.2. The defendant claims that this is not true. This Court agrees. In

11   comparing the First Amended Complaint with the Second Amended Complaint, the Court notes

12   that there are changes in the Second Amended Complaint that pertain to the original plaintiffs,

13   Ms. Simpao and Ms. Naputi.[5] Notwithstanding the changes to the Second Amended Complaint,

14   the substance of the complaint remains the same. Moreover, the changes have no bearing on the

15   relief sought in the motion requiring this Court to hold the motion in abeyance.

16         The defendant also argues that the Declaratory Judgment Act and Anti-Injunctive Relief

17   Act prohibit the relief sought. The Declaratory Judgment Act states that:

18                 [i]n a case of actual controversy within its jurisdiction, except with
                   respect to Federal taxes other than actions brought under section
19                 7428 of the Internal Revenue Code of 1986 . . . any court of the
                   United States . . . may declare the rights and other legal relations of
20                 any interested party seeking declaration, whether or not further
                   relief is or could be sought.
21

22   28 U.S.C. § 2201(a).

23         The defendant argues that the Declaratory Judgment Act prohibits declaratory relief with

24   respect to *federal taxes*. (Emphasis added.) However, in this instance, the plaintiffs argue that

25   GTIT is not a federal tax so therefore the Declaratory Judgment Act does not bar the relief

26   _____

27         [5]The plaintiffs are admonished that they are to exercise care in making representations to
     the Court and are cautioned that any further misrepresentations may result in the imposition of
28   sanctions and/or other action deemed appropriate.

4

1 sought. This Court notes that this issue was discussed and ruled upon in the Court's prior Order

2 concerning the defendant's motion to dismiss.[6] Honorable Ronald S.W. Lew agreed with the

3 plaintiffs and found that the Declaratory Judgment Act did apply. Likewise, the Court addressed

4 the applicability of the Anti-Injunction Act in its prior Order. The Anti-Injunction Act generally

5 prohibits suits "for the purpose of restraining the assessment or collection of any tax."  26

6 U.S.C. § 7421(a). Judge Lew held that the Anti-Injunction Act did not bar the plaintiffs' claims

7 because the suit was not brought for the purpose of restraining the assessment or collection of

8 taxes, but was instead brought for the applicability and enforcement of the EIC. This Court finds

9 Judge Lew's rulings to be the law of the case and will not otherwise disturb them. *See United*

10 *States v. Lummi Indian Tribe,* 235 F.3d 443, 452 (9th Cir.2000) ("Under the law of the case

11 doctrine, 'a court is generally precluded from reconsidering an issue previously decided by the

12 same court, or a higher court in the identical case.'").

13       Turning now to the real issue before the Court, does the EIC apply to Guam and if so,

14 what actions must the Government of Guam take in order to administer it. At the outset of its

15 discussion, the Court notes that this issue has been unsettled for years.

16       Apparently, the issue was first raised in 1989. The Attorney General concluded in

17 Memorandum Opinion No. DOA 89-0750 to the Director of Administration ("DOA"), that Guam

18 was obligated to pay the EIC in excess of the tax owing. *See* Canto Decl., at Exhibit A, attached

19 thereto. The Attorney General stated that:

20         Guam currently uses a mirror image of the Internal Revenue Codes
        as its basis for collecting income taxes. Some time ago, the

21         Territory received the permission of Congress to enact its own tax
        code in the 1986 Tax Reform Act.[7] By Executive Order, we have

22         established the Guam Tax Reform Commission to determine and
        recommend how we will delink from IRC. The Earned Income

23         Credit (EIC) and its applicability to Guam is one of the issues
        currently before the Commission. We have been informed that

24         Guam had previously received an annual reimbursement from the

25 _____

26     [6]*See* Order, Docket No. 53.

27     [7]In 1986, Congress authorized Guam to "de-link" from the I.R.C. and  pass its own tax

28 laws that would go into effect "upon an exchange of notes" by the governments of Guam and the
United States. Tax Reform Act of 1986, §§ 1271, 1277(b), Pub.L. No. 99-514, 100 Stat.2085.

> federal government amounting to several million dollars, but that the practice was halted during the administration of President Carter.
>
> It appears that because we have the authority to delink from IRC, and yet choose not to do so (if only by our inaction), that we are in a position of being responsible for any shortfall resulting from following federal tax policies which are entirely discretionary upon us. We might be able to attempt to seek reimbursement for the estimated or actual shortfall caused by Earned Income Credit. However, the response of Congress is likely to be that we merely have to rewrite our local tax code to remove this burden.

A few years later, on or about January 4, 1996, the Attorney General revoked its earlier Memorandum Opinion DOA 89-0750 and adopted the DRT's Revenue Ruling 96-001. *See* Canto Decl., at Exhibit B, attached thereto. The Attorney General decided that: (1) EIC was not applicable in Guam and should not be administered by DRT, and (2) DRT should not certify to the DOA for the payment of any amounts owing as refundable EIC. *Id.*

In response to the change in tax policy the Legislature enacted its own program (Guam Earned Income Program) to ensure that Guam's taxpayers would receive the EIC. *See* 11 Guam Code Ann. § 4108. The program mirrored the federal program under 26 U.S.C. § 32. However, the program was never implemented and in 2000, the Legislature filed a declaratory judgment action with Guam's Supreme Court asking for its opinion as to whether Guam's taxpayers were entitled to the EIC, pursuant to Subtitle A of the IRC and applied to Guam by the operation of the Organic Act, 48 U.S.C. § 1421 et seq. *See In re Request of I Mina 'Bente Sing 'Kona Liheslaturan Guahan Relative to the Application of the Earned Income Tax Credit Program to Guam Taxpayers ("The EIC question"),* 2001 Guam 3, 2001 WL 113985 (Sup. Ct. Guam 2001). After providing a thorough description of the history of the EIC, the Guam Supreme Court held that the EIC must be applied in mirrored fashion to Guam. This Court agrees.

Guam's tax code is based on the Internal Revenue Code. It is made applicable to Guam by the Organic Act and by the provisions of the Code itself. Organic Act §1421i(k); Internal Revenue Code § 7651. In effect, the Congress established a mirror system of taxation.

The Organic Act of Guam states:

> (a) Applicability of Federal laws; separate tax

6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The income tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in Guam: *Provided,* That notwithstanding any other provision of law, the Legislature of Guam may levy a separate tax on all taxpayers in an amount not to exceed 10 per centum of their annual income tax obligation to the Government of Guam.

(b) Guam Territorial income tax

The income-tax laws in force in Guam pursuant to subsection (a) of this section shall be deemed to impose separate Territorial income tax, payable to the government of Guam, which tax is designated the "Guam Territorial income tax."

48 U.S.C. § 1421i(a) and (b).

Title 48 U.S.C. § 1421i(d) adds:

(1) The income tax laws in force in Guam pursuant to subsection (a) of this section include but are not limited to the following provisions of the Internal Revenue Code of 1986, where not manifestly inapplicable or incompatible with the intent of this section: Subtitle A [26 U.S.C.A. § 1 et seq.] . . . and all provisions of subtitle F [26 U.S.C.A. § 6001 et. seq.] . . .

Section 31 of the Organic Act specifically lists the mirroring provisions, including Subtitle A of the I.R.C. which creates and defines the EIC.[8] The EIC was enacted in 1975 to provide tax benefits to low-income workers in the hopes that these benefits would make working more attractive than welfare. Since that time, Guam taxpayers applied for and received EICs until 1995 when the Government of Guam had a shift in tax policy and decided that it was not responsible for the payment of the EIC.

However, it would appear that the shift in policy was more attributable to a shortfall in the public coffers than one in legal reasoning. In DRT's Revenue Ruling No. 96-001, the director stated that "[a] definitive ruling by the Director of DRT is necessary at this time because GovGuam has experienced large amounts of lost revenue and cash outlays under the EITC." *See* Canto Decl., at Exhibit C, attached thereto. Guam's taxpayers should not be made to pay for the financial woes of its sovereign. If Guam is unable to pay for the EIC, it alone, has the power to change its tax code by delinking from the IRC in accordance with the Tax Reform Act of

[8]Section 6401(a) of Subtitle F directs the taxing authority to refund the EIC to the taxpayer or credit the EIC overpayment against the taxpayer's liabilities.

7

1986, or by enacting an additional tax to cover its expenses. *See* 48 U.S.C. § 1421i(a). Short of those options, the Court finds that as a matter of law, Guam must pay the EIC.

Moreover, the Court notes that the defendant seemingly has conceded that the EIC applies to Guam. The defendant stated in its Clarification of Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment that "[t]he position of the Office of the Attorney General, on behalf of the Government of Guam, with respect to the Earned Income Tax Credit ("EIC") is set forth in the Settlement Agreement entered into on June 14, 2004 . . ."[9] That Settlement Agreement was attached as Exhibit A to a Stipulated Order Granting Preliminary Approval of Class Action Settlement. Some of the positions set forth in the Stipulated Order were as follows:

> 2. "EIC Class" means all persons who (a) filed Guam tax returns and (b) were and are entitled to be paid refundable earned income tax credits under the Guam Territorial Income Tax and the Earned Income Program for any or all of the following tax years: 1996, 1998, 1999, 2000, 2001, 2002 and 2003.
>
> 3. The EIC Class members, otherwise eligible, are entitled to the Earned Income Tax Credit, pursuant to a provision in Subtitle A of the Internal Revenue Code and applied to Guam by operation of the Organic Act, 48 U.S.C. § 1421 et seq.
>
> 4. The Government of Guam is required to pay the Earned Income Tax Credit to eligible taxpayers.[10]

Additionally, the Government of Guam further stated "[t]he Government of Guam does not oppose the Motion for Partial Summary Judgment to the extent it will determine whether the EIC applies to the People of Guam as a matter of law."

Having decided that the EIC applies to Guam, the next question is whether the taxpayers exhausted their administrative remedies in claiming the EIC. According to 26 U.S.C. § 7422(a) a taxpayer is required to file a claim for a tax refund before filing suit.[11] However, in this instance,

---

[9]*See* Clarification of Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment. Docket No. 81.

[10]*See* Certified Copy of Stipulated Order Granting Preliminary Approval of Class Action Settlement With Attached Settlement Agreement in Santos Case, CIV04-00006, Docket No. 82, page 2.

[11]26 U.S.C. § 7422 states:

8

1 the plaintiffs argue that the filing of an income tax return acts as a claim for the EIC, since the
2 Government of Guam affirmatively took steps to prohibit a taxpayer from actually filing an EIC
3 claim. The Government of Guam represented to the taxpayers that the EIC was inapplicable or
4 not available on Guam. *See* Canto Decl., Exhibit L, attached thereto. The DRT's policy was to
5 reject claims where individual taxpayers attempted to write EIC claims on their Guam tax forms,
6 submit the U.S. versions of the forms (which did not block out the EIC box), submit the Form
7 1040 X[12] or submit letters or informal claims. *See* Camacho Decl., at ¶ 9. It was DRT's policy
8 to return such forms to the taxpayer and (sometimes) provide the taxpayer with a copy of the
9 Revenue Ruling stating the EIC did not apply in Guam. This Court is concerned that the
10 Government took actions that discouraged if not actually affirmatively prohibited the filing of a
11 return with the request for the EIC. The Court therefore finds under the circumstances, the filing
12 of the tax returns should be considered a claim satisfying the jurisdictional requirement under 26
13 U.S.C. § 6511.[13]

14 The plaintiffs next seek declaratory and injunctive relief requiring the Government of
15 Guam to provide notice to plaintiffs of their right to file EIC claims and creating procedures for
16 filing such claims under the GTIT, or alternatively, a declaration that the Government of Guam
17 must refund EIC claims to plaintiffs upon filing proper amended tax returns containing an EIC

18

---

19    (a) No suit prior to filing claim for refund.

20

21      No suit or proceeding shall be maintained in any court for the
recovery of any internal revenue tax alleged to have been
22 erroneously or illegally assessed or collected, or of any penalty
claimed to have been collected without authority, or of any sum
23 alleged to have been excessive or in any manner wrongfully
collected, until a claim for refund or credit has been duly filed with
24 the Secretary, according to the provisions of law in that regard, and
the regulations of the Secretary established pursuance thereof.
25

26   [12]As used in the federal system, Form 1040 X is used for amended tax claims.

27    [13]Although the Court has jurisdiction based on the filing of the claims, the Court will
refrain at this time from addressing whether the statute of limitations would act as a bar to many
28 of the claims pursued in a refund suit. *See* 26 U.S.C. § 6532(a)(1).

9

1  claim under the GTIT. The Government of Guam claims that this issue is moot and the request
2  unnecessary as the Government of Guam is already accepting EIC claims and permitting the
3  amendment of tax returns to facilitate such claims, to the extent permitted by federal and
4  territorial law. *See* Camacho Decl., at Exhibit 2, attached thereto.

5      In January 2005, the Governor of Guam issued Executive Order 2005-001, requiring DRT
6  to create supplemental EIC forms ("Guam Earned Income Credit Application") and to accept the
7  submission of the EIC claims under territorial and, to the extent applicable, federal law.
8  *See* Camacho Decl., at Exhibit 1, attached thereto. It applies to tax years 1995-1996 and 1999-
9  2004, and into the future. *Id.* There are no forms for the years 1997-1998 because DRT had
10 already created a form for the those years and had accepted claims. The Order expressly states
11 that tax returns may be amended as part of such a submission, although amendments are limited
12 to three years as provided under federal law. *Id.* Accompanying the forms is an EIC brochure
13 prepared by DRT. *Id.* at Exhibit 4. Pursuant to the Executive Order, the EIC claims submitted
14 under this procedure shall constitute sufficient claims for the EIC under the GTIT if the EIC is
15 held to apply to Guam. *Id.* at Exhibit 1, ¶ 2. As of April 26, 2005, DRT has received 15,475
16 claims for the EIC under the Executive Order. *Id.* at ¶ 14 and Exhibit 5.

17      The plaintiffs state that they are concerned that the forms contain qualifying language that
18 would allow the Government of Guam to ignore its obligation to pay the EIC. The offending
19 language is as follows:

20      By providing this form neither the Department of Revenue & Taxation nor any
        other part of the Government of Guam or its officers are agreeing to make any
21      payment to any taxpayer or any offset in favor of any taxpayer or waiving any
        applicable law regarding submission of claims.
22

23      *See* Camacho Decl., at Exhibit 2.

24      The plaintiffs claim that since the Government of Guam is claiming there is no obligation
        to pay the EIC on the forms, the request for declaratory relief is not moot. This Court has
25      reviewed the forms and notes that at the time they were created, the issue of the EIC had not been
26      decided. It seems to reason that in drafting the documents, the Government wanted to preserve
27      its rights should a Court subsequently rule that it had no legal obligation to pay the EIC. Despite
28

10

a history of non-payment by the Government, the Court finds the Government of Guam has taken efforts to create forms that would allow it to process the claims in the event it is found responsible for paying the claims.

Under the circumstances, the Court does not find the need to grant declaratory relief. Should the Government of Guam refuse to pay the claims after they have been found owing, the plaintiffs are free to take steps to enforce the payments. The Court is reluctant to grant declaratory relief where there is only the possibility of future harm. *Hodgers-Durgin v. de la Vina* 199 F.3d 1037, 1042 (9th Cir.,1999) ("The Supreme Court has repeatedly cautioned that, absent a threat of immediate and irreparable harm, the federal courts should not enjoin a state to conduct its business in a particular way."). The Court notes that the plaintiffs' complaint is also one for a refund. There is nothing preventing the plaintiffs from proceeding with this action. Accordingly, the Court denies the declaratory and injunctive relief as requested.

Lastly, the plaintiffs ask for injunctive relief requiring the Government of Guam to enforce certain local Guam law (11 Guam Code Ann. § 50101 et seq. and 11 Guam Code Ann. § 51101 et seq.) concerning amounts that are alleged to be required to be set aside to pay the EIC. In 1999, the Legislature amended the Income Tax Reserve Fund law (the "Reserve Fund"), to create a yearly reserve fund to reserve tax receipts for the payment of income tax refunds, the child tax credit, and the EIC. 11 Guam Code Ann. § 50103. It also requires the DOA, DRT and the Bureau of Budget & Management Research to establish a yearly formula for how much money should be reserved from income tax receipts. *Id.* This formula is to be used by DOA to pay projected income tax refunds, child tax credits, and EIC. 11 Guam Code Ann. § 50104.

In addition to the Reserve Fund, the Legislature enacted the Income Tax Refund Efficient Payment Trust Fund Act of 2002 (the "Trust Fund"). The Trust Fund is supposed to receive weekly, quarterly, and monthly deposits (depending on the source) of payroll and other income taxes. 11 Guam Code Ann. § 50102. The formula for such deposits is supposed to be the same formula as the yearly account under the Reserve Fund, except that the money in the Trust Fund account is being reserved for the coming year and is supposed to be earning interest. *Id.* When DOA is ready to release tax refunds, child tax credits, or the EIC, the money is to be transferred

11

1    from the Trust Fund into the Reserve Fund, and to the taxpayers. *Id.*

2           The Government of Guam argues that the plaintiffs have no right to sue for the

3    enforcement of the Reserve and Trust Fund laws. The Government of Guam states that these

4    laws are local budget laws designed to benefit the Legislature with regard to expenditures of

5    public funds. There is nothing in the laws themselves that create a generalized private cause of

6    action, much less a right to seek injunctive relief. The plaintiffs therefore should be denied

7    injunctive relief. *See Touche Ross & Co. v. Readington,* 442 U.S. 560, 568 (1979) (an implied

8    cause of action can only be created under a statute if it is consistent with the intent of the

9    legislature.)

10          The Government of Guam also states that it is complying with the laws to the degree

11   permitted by the intervening budget laws. In 2004, the Guam Legislature passed its budget for

12   fiscal year 2005, P.L. 27-106 (Bill 363), creating a tax refund reserve of $72 million. There was

13   no provision therein for the EIC or other reserves. *See* Guam P.L. 27-106. Based upon the

14   current financial figures available to the Government, $72 million is not sufficient to pay this

15   year's estimated tax refunds and EIC. Decl. of Lourdes Perez, at ¶ 4.

16          According to the Director of the DOA, an injunction that requires the Government of

17   Guam to immediately begin to set aside money for the EIC could cause a financial crisis. Decl.

18   of Lourdes Perez, at ¶ 8. The Court is concerned about the consequences of ordering the

19   Government of Guam to comply with these laws without a showing of actually how much money

20   would be required and the effects that would have on the operations of the Government. Under

21   the circumstances, the Court finds the request premature in light of the fact that the class has not

22   been certified. There simply are not enough facts to indicate what sum of monies should actually

23   be set aside. In addition, when the plaintiffs proceed with their refund suit, the Court can revisit

24   the issue of how refunds are to be paid if found owing. Should the Government of Guam choose

25   not to take action in paying its obligation, the Court can then take the appropriate action.

26   Accordingly, the Court denies summary judgment as to this request.

27   ///

28   ///

12

CONCLUSION

In light of the foregoing, the Court grants partial summary judgment as to the issue of whether EIC applies to Guam and that, by filing income tax returns that contain no claim for the EIC, the plaintiffs have nonetheless exhausted their administrative remedies as required by the GTIT as a condition precedent to bringing suit. As to the other requests, the Court denies the relief sought. The plaintiffs are to take action to certify the class and proceed with this matter as a refund suit.[14]

SO ORDERED this __15__ day of June, 2005.

RICARDO S. MARTINEZ[*]
Designated Judge

Notice is hereby given that this document was
entered on the docket on ___JUN 1 5 2005___.
No separate notice of entry on the docket will
be issued by this Court.
          Mary L. M. Moran
     Clerk, District Court of Guam
By: /s/ Shirlene A. Ishizu        JUN 1 5 2005
     Deputy Clerk          Date

---

[14]The Court notes the conspicuous absence of the United States as a party in this action. The Court questions whether there may be an equal protection argument in light of the fact that Guam taxpayers are not entitled to the Advance EIC and an offset of their social security taxes paid to the federal government.

[*]The Honorable Ricardo S. Martinez, United States District Judge for the Western District of Washington, by designation.

13

# EXHIBIT H

1 | Counsel appearing on following page

2

3 DISTRICT COURT OF GUAM

4 TERRITORY OF GUAM

5 JULIE BABAUTA SANTOS, *et al.*, | Civil Case No. 04-00006

6     Petitioners,

7   v.

  RECEIVED

  AUG 25 2006

  CALVO & CLARK LLP

  By:_____

8 FELIX P. CAMACHO, *et al.*,

    Respondents.

9

10 CHARMAINE R. TORRES, *et al.*, | Civil Case No. 04-00038

11     Plaintiffs,

12   v. | **CABOT MANTANONA, LLP**

Date: 8-25-06
Time: 3:05
Initials: vc

13 GOVERNMENT OF GUAM, *et al.*,

14     Defendants.

15 MARY GRACE SIMPAO, *et al*, | Civil Case No. 04-00049

16     Plaintiffs,

17   v. | **SIMPAO PLAINTIFFS' OPPOSITION TO PETITIONER SANTOS' AMENDED MOTION FOR APPOINTMENT OF LEAD COUNSEL**

18 GOVERNMENT OF GUAM,

19     Defendant,

  v.

20 FELIX P. CAMACHO, Governor of Guam

  OFFICE OF THE GOVERNOR

  25 AUG 2006

  DATE 1:04 pm

  LEGAL OFFICE

21     Intervenor-Defendant.

22 The Law Offices of
PHILLIPS & BORDALLO

23 AUG 2 ...

RECEIVED BY:
DATE: 25 ...
TIME: 1:0...

24

25 | OPPOSITION TO SANTOS' AMENDED MOTION FOR APPOINTMENT AS LEAD COUNSEL | VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886 | TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 429-2    Filed 06/22/2007    Page 28 of 30

1   VAN DE VELD SHIMIZU CANTO & VAN DE VELD
    Suite 101 Dela Corte Bldg.
2   167 East Marine Corps Drive
    Hagåtña, Guam 96910
3   671.472.1131

4   TOUSLEY BRAIN STEPHENS PLLC
    Kim D. Stephens, P.S., WSBA #11984
5   Nancy A. Pacharzina, WSBA #25946
    1700 Seventh Avenue, Suite 2200
6   Seattle, Washington 98101
    206.682.5600

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

OPPOSITION TO SANTOS' AMENDED     VAN DE VELD SHIMIZU CANTO & FISHER     TOUSLEY BRAIN STEPHENS PLLC
MOTION FOR APPOINTMENT AS         East Marine Corps Drive                1700 Seventh Avenue, Suite 2200
25  LEAD COUNSEL                  Hagatna, Guam 96910                    Seattle, Washington 98101-1332
                                  Tel. 671.472.1131                      Tel. 206.682.5600
                                  Fax 671.472.2886                       Fax 206.682.2992

Case 1:04-cv-00006    Document 429-2    Filed 06/22/2007    Page 29 of 30

# I. INTRODUCTION

Petitioner Santos' counsel, Michael Phillips, has yet again wrongly asked this Court to appoint him lead counsel for the putative class(es) represented in the consolidated actions listed above. His motion is inappropriate at this time given the Court has not requested applications for lead counsel. Further, his motion goes beyond the scope of "supplemental" briefing requested by the Court. (*see Order*, J. Martinez, July 19, 2006, Docket No. 339, requesting supplemental briefing on five given motions only, none of which are motions for appointment of lead counsel).

In any event, Phillips' request to be appointed lead counsel should be denied because he has repeatedly demonstrated he is inadequate to serve as class counsel. His pleadings have failed to meet threshold requirements of tax cases and class actions; he has failed to comply with basic class action procedures; his irregular conduct during settlement has resulted in an inadequate and suspect settlement unsupported by any documentation; and his poor judgment and political tactics have caused recovery for the class to be delayed for almost two years. In addition, Phillips failed to protect important rights of all class members and failed to work cooperatively with other class counsel. The Court should deny his request to be appointed class counsel.[1]

---

[1] Where more than one counsel seeks the appointment, the Court should control the timing for submittal and format of applications for lead counsel. Manual for Complex Litigation (hereinafter "Manual") § 21.273 at 348. Should the Court wish to consider overall appointment of lead counsel at this time, counsel for the *Simpao* plaintiffs request the opportunity to make application. It should also be noted, however, counsel's qualifications and request to be appointed lead counsel is already before the Court in Simpao's Motion for class certification filed July 5, 2005 in the Simpao action prior to consolidation.

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL

Page 1

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 429-2    Filed 06/22/2007    Page 30 of 30

## II. FACTS RELEVANT TO LEAD COUNSEL DETERMINATION

Phillips filed the *Santos* action February 12, 2004 -- three years after the Guam Supreme Court held the Earned Income Tax Credit (EITC) program applied on Guam.[2] Inexplicably, the action he filed sought recovery of EITCs only for tax years 1998–2003. It did not cover EITC claimants for tax years 1995–1997, nor claimants for 2004 and future tax years. It did not allege exhaustion of administrative remedies for either the named plaintiff or the class. *See Santos v. Camacho*, CV 04-00006 at Docket No. 1.[3]

Less than four months after he filed the petition, with no discernable discovery, and while the Governor was off-island, Phillips negotiated a settlement with the Lieutenant Governor that committed the Government of Guam to pay out $60 million and awarded Phillips $6 million in attorneys' fees.[4] Phillips had recently represented the Lieutenant Governor in a struggle with Governor Felix Camacho over the powers of the Office of Lieutenant Governor. See *In re Request of Governor Felix P. Camacho*, 2004 Guam 10, 2004 WL 1293239 (Sup. Ct. Guam 2004). Furthermore, at the same time he was negotiating the *Santos* settlement, Phillips was the lone bidder for a legal services contract to become the Lt Governor's permanent legal counsel. *See Decl. of Curtis C. Van de veld In Support Of Simpao Plaintiffs' Opposition To Petitioner*

---

[2] *See Class Action Petition for Recovery of Income Tax Refunds, CV04-00006, Docket No. 1; see also In re Request of I Mina'Bente Sing'Kona Liheslaturan Guahan Relative to the Application of the Earned Income Tax Credit Program to Guam Taxpayers ("the EIC question"),* 2001 Guam 3, 2001 WL 113985 (Sup. Ct. Guam 2001).

[3] On December 3, 2004, Plaintiffs Mary Grace Simpao and Christina Naputi filed a separate complaint. Prior to filing the complaint, Simpao counsel Van de veld Shimizu Canto & Van de veld associated with Tousley Brain Stephens PLLC, a Seattle, Washington firm with a national reputation for complex class action litigation. *See Simpao v. Guam, Docket No. 1.* Unlike Santos', Simpao's complaint also sought recovery for tax years 1995, 1996, and 1997. Additionally Simpao, also unlike Santos, pled and established jurisdiction, standing, and interest in each class year. Simpao sought relief for each year, sought a mechanism for making claims, sought adequate individual notice for each class year, sought payment of EIC refunds for each year, and enforcement of the EIC program in future years.

[4] *Id* at Docket No. 14, Order Granting Prelim. Approval of Class Action Settlement entered June 17, 2005 with Settlement Agreement attached (hereinafter, *Santos I*).

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL
Page 2

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006   Document 429-3   Filed 06/22/2007   Page 1 of 23

1   *Santos' Amended Motion For Appointment Of Lead Counsel* (hereinafter referred to as "*Van de*

2   *veld Decl.*") at "Exhibit A," KUAM Television News Station Reports.

3       Phillips, the Lieutenant Governor and the Attorney General announced *Santos I* in the

4   press on Sunday, June 13, 2004. See *Van de veld Decl.* at "Exhibit B," KUAM Television News

5   Station Report. The next day on June 14, 2004, they submitted a Stipulated Order of Preliminary

6   Approval to the federal court. The settlement agreement attached to the Stipulated Order

7   contained a provision that Phillips be awarded 10% of the recovery as attorneys' fees ($6 million

8   dollars).

9       On June 17, 2004, the Court conducted what Phillips refers to as a "settlement

10   conference" with Phillips, the Lieutenant Governor and the Attorney General. At the conclusion

11   of the meeting, the magistrate signed a Stipulated Order Granting Preliminary Approval of Class

12   Action Settlement. Phillips' fee in the attached settlement agreement, however, was now crossed

13   out and replaced with a provision that the Court would determine attorneys' fees.[5]

14       The next day (June 18, 2004), Phillips submitted a separate stipulation signed by the

15   Attorney General awarding himself $6 million dollars in attorney's fees. *Santos v. Camacho* at

16   Docket No. 16. That Order was signed by Magistrate Manibusan and entered in the *Santos*

17   action on June 24, 2004. *Id.* At this time, no class had been certified and Phillips had never

18   moved for or been appointed lead counsel. No motion for attorneys' fees compliant with Federal

19   Rules Of Civil Procedure (FRCP) Rule 23(h)(1) or 54(d)(2) had ever been filed.

20       *Santos I* provided for notice to the class solely through publication (one notice per week

21   for three weeks) even though the parties fully acknowledged the Respondent had mailing

22   addresses on file for the putative class claimants. *Santos I* at p. 17, ¶ V.2. The notice Phillips

23

24   [5] *Santos v. Camacho* at Docket No. 14, Order Granting Prelim. Approval of Class Action Settlement entered June 17, 2004 with Settlement Agreement attached. See *Van de veld Decl.* at "Exhibit C" for relevant page.

25   OPPOSITION TO SANTOS' AMENDED MOTION FOR APPOINTMENT AS LEAD COUNSEL
Page 3

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 429-3    Filed 06/22/2007    Page 2 of 23

1 allowed to be published was inaccurate in several respects. The notice told class members they
2 would recover approximately 50% of their claim when, for some years, *Santos I* provided for
3 would be less than 20% recovery. *See Van de veld Decl.* at "Exhibit D," "Notice Of Class Action
4 And Proposed Settlement," Pacific Sunday News, June 27, 2004. It also incorrectly stated the
5 class had already been certified. *Id.* Additionally, although he held himself out as class counsel,
6 Phillips provided no contact information for himself and directed class members' inquiries to the
7 Respondent. *See Id.*

8      On July 14, 2004, after two motions to intervene had highlighted Phillips' numerous
9 errors, Phillips filed a belated motion to be appointed class counsel and re-requested his already
10 court-approved award of attorney fees. *Memorandum Of Points And Authorities In Support For*
11 *Petitioner's Motion For An Order Appointing Class Counsel*, CV04-00006, Docket No. 45. In
12 his words, he did so because "a number of attorneys are seeking to intervene and share in any
13 recovery" and he wanted "to ensure a clear record in this matter." *Id.* at p. 4. In his motion,
14 Philips acknowledged the parties had failed to accomplish even the minimal notice they had
15 promised (it was published only once) and now realized individual notice "would be best for all
16 parties involved." *Id.* at p. 24; see *Stipulation Of The Parties Regarding Additional Notices To*
17 *The Class*, CV04-00006, Docket No. 40. In addition, he obtusely acknowledged it necessary to
18 "clarify" the false information in the first *Santos* notice (i.e., that the class had been certified and
19 that the Court had already approved the attorneys' fee award) in order to now comply with the
20 Federal Rules of Civil Procedure. *Id.* at p. 24. The revised notice Phillips proposed, however,
21 still contained a statement that the Court had "preliminarily" approved a 10% attorney fee and
22 lists Phillips as "counsel" for the class. *See* CV04-00006, Docket No. 45 at Exhibit A. The
23 revised notice did not inform class members they could enter an appearance in the action through
24

25 OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL
Page 4

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006   Document 429-3   Filed 06/22/2007   Page 3 of 23

1 counsel if they desired, nor did it inform the class there were two motions for intervention
2 pending which cited deficiencies in the settlement. *Id.* The Court signed an order appointing
3 Phillips interim class counsel on July 16, 2004. CV04-00006, Docket No. 54. The Court took
4 no action on Phillips' second motion for attorneys' fees.

5     By this time, two competing class actions had been filed in response to the inadequacies
6 of *Santos I* (the *Simpao*[6] *and Torres* actions now consolidated here), and the Governor was
7 expressing his procedural concerns with the settlement. The Governor sought to investigate the
8 circumstances under which *Santos I* had been reached. He was told by the Attorney General,
9 "there is no written documentation regarding the history of the negotiations leading up to the
10 Settlement Agreement." See *Amended Memorandum Of Points And Authorities In Support Of*
11 *Opposition To Petitioner's Motion For The Approval Of The Administrative Plan*, CV04-00006,
12 Docket No. 102, at p. 4 (hereinafter, *"Gov's Opp. To Settlement"*).

13     In an attempt to cure defects in the settlement, Phillips filed a motion for approval of a
14 purported "Administrative Plan" that was, in reality, a revised settlement agreement. See *Van de*
15 *veld Decl.* at 'Exhibit E," Correspondence between the Office of the Governor and the Attorney
16 General's Office, dated September 16, 2004, referring to the Administrative Plan as "a new
17 settlement under the guise of an administrative plan."

18     The Governor then appeared in the *Santos* action with his own counsel, Calvo and Clark,
19 to oppose the settlement. See *Gov's Opp. To Settlement*. He noted the following defects:

20     1.     The settlement was illegal because it was contrary to Guam's Illegal Expenditures
21 Act, 5 G.C.A. § 22401, prohibiting an officer of the Government from obligating the
22 Government to pay money in advance of an appropriation made by the Legislature for such
23 purpose;

24 [6] See *Complaint*, Simpao v. Govt. of Guam, CV04-00049, Docket No. 1, found at "Exhibit F" of *Van de veld Decl.*

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL
Page 5

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 429-3    Filed 06/22/2007    Page 4 of 23

2.     The complaint was insufficient to establish jurisdiction because it did not allege exhaustion of administrative remedies; and

3.     Any approval of an "administrative plan" was improper unless and until final approval was given to the settlement.

4.     Additional defects noted by the Governor included:

- Numerous deficiencies in the notice;

- Attorney's fees had been resolved by stipulation as opposed to by motion and were disproportionately high ($6 million), given Plaintiff's counsel had done nothing but file a complaint and negotiate a settlement in less than a day;

- A noticeable lack of adversarial proceedings prior to settlement including a complete lack of discovery regarding the value of the claims;

- Conflicts within the class between members whose claims were time-barred and those whose were not;

- The settlement was substantively unfair given claimants would receive only 50% of the EITCs due (if that); and

- Attorney's fees were guaranteed regardless of how many members opted out of the settlement.

*See Gov's Opp. To Settlement, passim.*

Phillips negotiated with the government again, this time with the Governor. As a result, Phillips and the Governor came to the Court on June 20, 2005, with a new class action petition and a second settlement agreement (See *Declaration Of Rodney J. Jacob In Support Of Joint Motion For Preliminary Approval Of Settlement Agreement* at Exhibit 2, entitled "Settlement Agreement" [hereinafter referred to as "*Santos II*"]), but not before the unincluded Simpao Plaintiffs defeated a motion to dismiss for lack of jurisdiction and failure to state a claim on

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Page 6

Case 1:04-cv-00006     Document 429-3     Filed 06/22/2007     Page 5 of 23

March 17, 2005.[7] The amended *Santos* petition now alleged exhaustion of administrative

remedies but did not explain how Plaintiffs had done so. CV04-00006, Docket No. 210. This

new petition and settlement included tax year 1995, but recoveries for tax years 1996, 1998,

1999, and 2000 *actually decreased* compared to *Santos I.* Tax year 1997 was still not included.[8]

*Id.*

The new settlement changed few, if any, of the defects previously noted by the Governor

and Plaintiffs and added new ones:

- The Court still had no jurisdiction over much of the class as it included
  claimants who had not filed tax returns;

- The class remained internally conflicted between time-barred and non-time-
  barred class members;

- The funding mechanism contained the same objectionable and illegal features
  as in *Santos I;* and

- The settlement was substantively unfair with drastically discounted refund
  amounts of the EITCs due (if that).

This time, the parties filed a joint motion for preliminary approval as opposed to a

stipulated order and, as required by the *Santos II* agreement, Phillips filed a motion for

conditional certification of a settlement class. CV04-00006, Docket Nos. 211 & 212.

There was no indication that Phillips had attempted to discover or estimate the actual

damage suffered by the class, and to the very present Phillips has neglected to so investigate.

See, e.g., *Amended Declaration of Interim Class Counsel Michael F. Phillips in Support of*

---

[7] See *Order*, J. Lew, Mar. 15, 2005, Dist. Ct. of Guam, Simpao v Govt. of Guam, CV04-00049, Docket No. 53,
found at "Exhibit G" of *Van de Veld Decl.*

[8] Other defects associated with Santos II are presented in Simpao's Objections to Santos III. As noted in that
pleading, there is not much difference between Santos II and III. See *Supplemental Filing In Opposition To
Preliminary Approval Of Class Action Settlement*, CV06-00004, Docket No. 345.

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL

Page 7

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 429-3    Filed 06/22/2007    Page 6 of 23

1  *Amended Motion for Appointment of Lead Class Counsel (Amending Docket No. 276)*, CV04-

2  00006, Docket No. 349, *passim*.

3       Although the Governor signed on to the settlement, this time it was the Attorney General

4  who did not. The Attorney General then opposed the settlement.

5       In the meantime, Simpao continued to litigate her case and, on June 15, 2005, the Court

6  granted Simpao partial summary judgment.[9] The Court ruled the EITC applies to Guam and,

7  under the circumstances present here, the Plaintiffs had exhausted administrative remedies by

8  filing tax returns. The court directed Simpao to file a motion to certify the class. *Order* [for

9  partial summary judgment], at 13. Simpao filed a motion for class certification on July 5, 2005.

10  CV04-00049, Docket No. 107.

11       At this point, the EITC litigation disintegrated into a morass of procedural battles

12  centered around the battle between the Attorney General and the Governor for control of the

13  action and the various procedural postures of the three pending class actions.

14       Ultimately, the Court ordered the cases consolidated and stayed them all until such time

15  as it could rule on the dispute between the Attorney General and the Governor. See CV04-

16  00006, *Santos v. Camacho*, Docket No. 299. Despite the stay, however, the Court did direct the

17  petitioners to file motions for appointment of lead counsel. *Santos v. Camacho*, Docket No. 300.

18  In response, the Governor requested and was granted time to conduct a global settlement

19  conference. Phillips again failed to work cooperatively with the Simpao Plaintiff's counsel.

20       Phillips, with petitioner Torres' counsel and the Governor, have now filed a new

21  settlement (hereinafter referred to as "*Santos III*") substantively no different from *Santos II* with

22  the exception that class year 1997 is now included and Phillips has split part of the proposed fee

23  ---
[9] *Order* [granting partial summary judgment], J. Martinez, June 15, 2005, <u>Simpao v. Govt. of Guam</u>, CV04-00049,
Docket No. 99, found at "Exhibit H" of *Van de veld Decl.*

24

25  OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL
Page 8

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006     Document 429-3     Filed 06/22/2007     Page 7 of 23

1  award with counsel for Torres.  See *Amended Declaration Of Daniel M. Benjamin In Support Of*

2  *Joint Motion Of The* Santos *And* Torres *Parties For Preliminary Approval Of Class Action*

3  *Settlement Agreement*, CV04-00006, *Santos v. Camacho*, Docket No. 324, at Exhibit 1.  While

4  wearing a mantle of procedural folly upon his shoulders, Phillips now asks this Court to

5  officially appoint him lead counsel in this class action.

6  ### III.  ARGUMENT

7  A.  **Standard for Selection of Lead Counsel**

8      An attorney appointed to serve as class counsel must be able to fairly and adequately

9  represent the class.  Fed. R. Civ. P.23(g)(1)(b).  The Manual for Complex Litigation sets forth

10  the following criteria for appointment of class counsel.

> In every case, the judge must inquire into the work counsel has
> done in investigating and identifying the particular case; counsel's
> experience in handling class actions, other complex litigation, and
> claims of the type asserted in the action; counsel's knowledge of
> the applicable law; the resources counsel will commit to
> representing the class; and any other factors that bear on the
> attorney's ability to represent the class fairly and adequately.  This
> last category may include the ability to coordinate the litigation
> with other state and federal class and individual actions involving
> the same subject matter..:

16  David F. Herr, *Manual for Complex Litigation* (4th ed. 2004) (hereinafter "Manual") § 21.271 at

17  345.  The attorney seeking the appointment has the burden to prove he is both qualified and

18  otherwise adequate.

19      The adequacy of counsel should be assessed at all stages of litigation.  *See Key v Gillette,*

20  782 F.2d 5, 7 (1986).  Counsel originally thought to be suitable may prove themselves unsuitable

21  through their conduct.  *Id.* (approving decertification of a class because previously accepted

22  counsel's lackluster performance during trial reflected an inability to adequately protect the

23  interests of the class).

24

25  OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL
Page 9

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006   Document 429-3   Filed 06/22/2007   Page 8 of 23

1   Mistakes made by counsel in the early rounds of litigation can be indicative of

2   inadequacy. *Armstrong v. Chicago Park District,* 117 F.R.D. 623, 633 (N.D. Ill. 1987). Conduct

3   during settlement negotiations can be particularly relevant to an adequacy assessment. See *In re*

4   *General Motors Corp. Engine Interchange Litigation,* 594 f.2d 1106, 1121-1130 (7th Cir.1979).

5   In *General Motors,* the court identified several factors that may suggest representation of the

6   class during settlement negotiations is less than vigorous. They include: (1) Settlement reached

7   relatively early in the course of the action; (2) incomplete discovery; (3) counsel ill-informed

8   about the full value of the claims they were surrendering; (4) abandonment of some claims; and,

9   (5) failure to include all class counsel in negotiations. *Id.* [10]

10  At issue here is a tax refund case. There are few cases more procedurally difficult than a

11  tax refund class action as both tax cases and class actions present significant procedural hurdles.

12  These threshold requirements must be met to ensure the outcome is just and the effort put in to

13  resolve the matter is not wasted by subsequent reversal. Where government misconduct and

14  public funds are at issue, rigorous scrutiny is required. Phillips' record in this case cannot

15  withstand such scrutiny.

16

17

18  [10] This is one reason The Manual for Complex Litigation recommends the Court conduct a hearing to determine if a

19  class action settlement is "within the range of possible approval" before authorizing notice to class members and
    conducting a full fairness hearing. *In re General Motors* at 1124, citing Manual § 1.46 at 53-54 (reversing approval

20  of settlement based on irregularities in settlement negotiations). The Manual specifically advises:

21          The judge should raise questions at the preliminary hearing and perhaps seek an
            independent review if there are reservations about the settlement, such as unduly
            preferential treatment of . . . segments of the class, inadequate compensation or

22          harm to the class, the need for subclasses, or excessive compensation for
            attorneys. The parties then have an opportunity to resume negotiations in an
            effort to remove potential obstacles to court approval.

23
    Manual, § 21.632 at 414.

24
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
OPPOSITION TO SANTOS' AMENDED                VAN DE VELD SHIMIZU CANTO & FISHER    TOUSLEY BRAIN STEPHENS PLLC
MOTION FOR APPOINTMENT AS                    East Marine Corps Drive              1700 Seventh Avenue, Suite 2200
25  LEAD COUNSEL                             Hagatna, Guam 96910                 Seattle, Washington 98101-1332
                                             Tel. 671.472.1131                   Tel. 206.682.5600
    Page 10                                  Fax 671.472.2886                    Fax 206.682.2992

Case 1:04-cv-00006    Document 429-3    Filed 06/22/2007    Page 9 of 23

## B. Phillips' Repeated Failure To Comply With Both Tax Litigation And Class Action Procedure Demonstrate He Is Inadequate Counsel

### 1. The Santos I Complaint was fatally flawed

The complaint filed in *Santos* demonstrates Phillips did not adequately identify or investigate the potential claims in this action or develop an understanding of the applicable law. Fed. R. Civ. P. § 23(g)(1)(c)(i). While he claims to have prepared for years to bring an EITC action against the government, the action he actually filed evidences little attention to its procedural complexities. His complaint shows no attempt to meet the statutory requirements of a tax refund action as Santos never alleged she had filed tax returns for the relevant years or had otherwise met the exhaustion requirements of 26 U.S.C. § 7422. He also failed to define the class such that it could be alleged its members satisfied exhaustion requirements on a class-wide basis. Thus, the original *Santos* Petition would not have survived a motion to dismiss. *Cf., Order*, J. Lew, Mar. 17, 2005, *Simpao v. Guam*, CV04-00049, Docket No. 53 (denying Governor's motion to dismiss because Plaintiffs pled exhaustion).[12]

In addition, while claiming to represent all disadvantaged people of Guam, Phillips brought this important case with a class representative who apparently cannot represent all tax years at issue. As a result, when Phillips filed the complaint, he abandoned Guam citizens with EITC claims for tax years 1995-1997. Although tax year 1996 (but not 1995 or 1997) was eventually covered in the *Santos I* settlement (apparently at the request of government), there is no evidence Phillips sought relief on their behalf. "Counsel's choice of an incorrect opening date for a class period can seriously prejudice class members and has been considered by other courts

---

[12] *See Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995) (Moreover, if the parties fail to raise the question of the existence of jurisdiction, the federal court has the duty to raise and resolve the matter. . . . "[T]he rule . . . is inflexible and without exception, which requires [a] court, of its own motion, to deny its jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record") quoting *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S. Ct. 2099 (1982).

OPPOSITION TO SANTOS' AMENDED MOTION FOR APPOINTMENT AS LEAD COUNSEL
Page 11

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006   Document 429-3   Filed 06/22/2007   Page 10 of 23

1  as a factor justifying denial of class certification." *Armstrong v. Chicago Park Dist.*, 117 F.R.D.

2  623, 633 (N.D. Ill. 1987).

3       Finally, contrary to express statutory requirements, Phillips named the wrong party as a

4  defendant. Phillips named the Governor, the Attorney General, and two administrative

5  department heads, when the law expressly requires only "the government" can be named as a

6  defendant in tax refund actions. 26 U.S.C. § 7422(f)(1) (Internal Revenue Code), made

7  applicable by 48 U.S.C. §§ 1421i(a) & (h)(2) (Organic Act of Guam). Under normal

8  circumstances, this would be considered a hyper-technical criticism, but in this case, the error

9  arguably contributed to the resulting battle between the Governor and the Attorney General.

10      2.    The Procedural Irregularities In The Santos I Settlement Demonstrate Phillips Is
             Inadequate Counsel

11

12      More troubling than the deficiencies in his complaint is the poor judgment and disregard

13  for class action settlement procedure Phillips exhibited in securing court approval for *Santos I.*

14  Courts have long recognized these procedures are important.

15      a.    *Phillips' Conduct Regarding Fee Negotiations Were Improper.*

16      First, and most egregious, the available record indicates Phillips negotiated his fee at the

17  same time he negotiated the settlement for the class. The agreement executed by all parties on

18  June 14, 2004 and filed with the Court for preliminary approval contained a provision that

19  Phillips would receive 10% of the settlement fund. CV04-00006, Docket No. 14; see *Van de*

20  *veld Decl.* at Exhibit C. On June 17, 2004, apparently during the parties' meeting with the

21  Magistrate Judge, that provision was crossed over and replaced with the more proper wording

22  that the Court would determine appropriate fees. *Id.* Its presence in the original document and

23  the timing of its correction strongly suggest a prior agreement regarding fees had been reached

24  by the parties.

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL

Page 12

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 429-3    Filed 06/22/2007    Page 11 of 23

The Ninth Circuit has explained the problem with simultaneously negotiating attorney's fees with settlement terms.

> We cannot indiscriminately assume, without more, that the amount of fees have no influence on the ultimate settlement obtained for the class when, along with the substantive remedy issues, it is an active element of negotiation.

*Mendoza v. Tucson School Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980), citing *Prandini v. National Tea Co.*, 557 F.2d 1015, 1021 (3d Cir. 1977). *See also* H. Newberg & A. Conte, *Newberg on Class Actions* (4th ed. 2002) Newburg, § 15.31 at 108 (noting that where counsel has engaged in such conduct "the court would have the almost impossible task of deciding whether the class settlement was fair and adequate or whether it should have been increased by some or all of the funds allocated by the attorneys for fees."); *Knisley v. Network Associates, Inc.* 312 F.3d 1123, 1125 (9th Cir. 2002.) ("One risk of class action settlements is that class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee.").

The *Mendoza* Court specifically noted that even if actual impropriety is not found, the Court has a "duty to see to it that the administration of justice has the appearance of propriety as well as being so in fact." Mendoza, 623 F.2d at 1353, n.20. Thus the Court has directed:

> The presence of simultaneously negotiated attorneys' fees should cause the court to examine with special scrutiny the benefits negotiated for the class. It would rarely be an abuse of discretion for a trial court to reject a settlement proposal where such combined negotiation took place.

*Id.* at 1353. Phillips' failure to secure a settlement for the class before he worried about his fees demonstrates he is inadequate counsel for this class.

Further, Phillips has never provided the Court with any of the indicia of reliability that might overcome the presumption of impropriety caused by his conduct. As the Attorney General

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL

Page 13

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue; Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 429-3    Filed 06/22/2007    Page 12 of 23

1   informed the Governor, "there is no written documentation regarding the history of the

2   negotiations leading up to [Santos I]." *Gov's Opp. To Settlement*, CV04-00006, Docket No. 102,

3   at p. 4. In addition, Phillips never provided the Court the information it needs to "examine with

4   special scrutiny the benefits negotiated for the class" in any of the three settlements he has

5   presented to this Court. The Manual expressly notes:

> Where settlement is proposed early in the litigation . . . consider
> asking counsel to provide complete and detailed information abut
> the factors that indicate the value of the settlement. Such factors
> include:
>
> -likelihood of success at trial;
>
> -likelihood of class certification;
>
> -status of competing or overlapping actions;
>
> -claimants damages and value of claims;
>
> -total present value of monetary and non-monetary terms;
>
> -attorneys fees;
>
> -cost of litigation; and
>
> -defendant's ability to pay.

16  Manual § 21.631 at 413.

17      Phillips claims he conducted research on these claims and the government's ability to

18  pay the EIC but he has yet to even identify for the Court the full value of the class' EITC claims

19  inclusive of interest. He has presented no analysis of what the government's actual outlay would

20  be after the government accounts for all the offsets it has preserved in the settlement. He has

21  simply accepted the government's representation that this is all it will pay.

22      Phillips' failure to provide any specific evidence as to the factors related to the

23  reasonableness and adequacy of *Santos I, II* or *III*, especially in light of his inappropriate conduct

24

25  OPPOSITION TO SANTOS' AMENDED
    MOTION FOR APPOINTMENT AS
    LEAD COUNSEL
    Page 14

    VAN DE VELD SHIMIZU CANTO & FISHER
    East Marine Corps Drive
    Hagatna, Guam 96910
    Tel. 671.472.1131
    Fax 671.472.2886

    TOUSLEY BRAIN STEPHENS PLLC
    1700 Seventh Avenue, Suite 2200
    Seattle, Washington 98101-1332
    Tel. 206.682.5600
    Fax 206.682.2992

    Case 1:04-cv-00006    Document 429-3    Filed 06/22/2007    Page 13 of 23

1   has produced a suspect settlement. See *In re General Motors*, 594 F.2d at 128 (noting vigorous

2   representation is absent where counsel is ill informed about the value of the claims he is

3   surrendering). In providing no such evidence he has demonstrated his inadequacy to serve as

4   lead counsel.

5        Other conduct regarding the fee award in Santos I further demonstrates Phillips is

6   indifferent to or completely unaware of the duties he owes the class. He inappropriately sought

7   and obtained approval of his proposed attorney fees without ever submitting a proper motion as

8   required by FRCP 23(h)(1). Thus, the class would have been deprived of any ability to scrutinize

9   the reasonableness of the fee. Phillips also caused the first notice of the proposed settlement to

10  include a statement that his six million dollar fee award had already been approved by the Court.

11  Even after he acknowledged the Court would have to asses the reasonableness of fees at a final

12  fairness hearing, he still sought to give his fee request an imprimatur of reasonableness by

13  proposing a notice that said the Court had "preliminarily" approved his fee. Phillips' complete

14  failure to follow procedures designed to mitigate the appearance of and actual potential for abuse

15  in the class action context (much less one involving precious government funds) makes him

16  unsuitable to serve as class counsel.

17              b.      *Conduct unrelated to fees also indicates Phillips is not likely to*
                        *adequately protect the interest of this class.*
18

19        In the *Santos I* notice, Phillips did not even identify himself and instruct class members to

20  contact him with their questions regarding the proposed settlement. Instead he delegated to the

21  defendant his duty to inform and advise the class he claims to represent. See Manual at § 21.641

22  at 416 ("Counsel must be available to answer questions from class members in the interval

23  between notice of the settlement and settlement hearing.")

24

25  OPPOSITION TO SANTOS' AMENDED        VAN DE VELD SHIMIZU CANTO & FISHER    TOUSLEY BRAIN STEPHENS PLLC
    MOTION FOR APPOINTMENT AS           East Marine Corps Drive              1700 Seventh Avenue, Suite 2200
    LEAD COUNSEL                        Hagatna, Guam 96910                  Seattle, Washington 98101-1332
                                        Tel. 671.472.1131                    Tel. 206.682.5600
    Page 15                             Fax 671.472.2886                     Fax 206.682.2992

    Case 1:04-cv-00006    Document 429-3    Filed 06/22/2007    Page 14 of 23

1    Further, Phillips' acquiescence to published notice versus individual notice belies any

2    vigor exercised on behalf of the class. Because class members will be bound by the judgment in

3    a class action, notice of impending settlement is crucial. The Supreme Court held that,

4              in any class action maintained under subdivision (b)(3), each class
              member shall be advised that he has the right to exclude himself
5             from the action on request or to enter an appearance through
              counsel, and further that the judgment, whether favorable or not,
6             will bind all class members not requesting exclusion. To this end,
              the court is required to direct to class members 'the best notice
7             practicable under the circumstances including individual notice to
              all members who can be identified through reasonable effort. We
8             think the import of this language is unmistakable. Individual notice
              must be sent to all class members whose names and addresses may
9             be ascertained through reasonable effort.

10   *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173, 94 S. Ct. 2140, 2150 (1974). Phillips

11   apparently does not understand that class counsel, not defendant, has and will continue to have a

12   duty to ensure adequate informative interaction with the class throughout the settlement approval

13   process and through claims administration as well.

14        Phillips also failed to secure adequate treatment for tax year 2000 claims in the current

15   proposed settlement. As noted in the *Simpao* Plaintiff's opposition to this settlement, *Santos III*

16   treats year 2000 claims as if they are potentially time-barred when they are not. Other courts

17   have held mishandling of a limitations period reflects on the counsel's competence and diligence

18   in pursuing class claims. *Armstrong v. Chicago Park Dist.*, 117 F.R.D. 623, 633 (N.D. Ill. 1987).

19   This Court should hold the same.

20        Phillips' failure to include all class counsel in settlement negotiations also demonstrates

21   his inadequacy. See Manual at §21.271 at 345. The two class actions filed after Santos,

22   identified ways to strengthen the class' claims, yet Phillips refused to work cooperatively with

23

24

OPPOSITION TO SANTOS' AMENDED            VAN DE VELD SHIMIZU CANTO & FISHER      TOUSLEY BRAIN STEPHENS PLLC
MOTION FOR APPOINTMENT AS                East Marine Corps Drive                1700 Seventh Avenue, Suite 2200
LEAD COUNSEL                             Hagatna, Guam 96910                    Seattle, Washington 98101-1332
                                         Tel. 671.472.1131                     Tel. 206.682.5600
Page 16                                  Fax 671.472.2886                      Fax 206.682.2992

Case 1:04-cv-00006    Document 429-3    Filed 06/22/2007    Page 15 of 23

1  other class counsel, specifically rejecting the Simpao counsel's request to participate in the

2  negotiations that led to Santos II. As courts note:

3

4       . . . settlement negotiations with less than all class counsel weakens the class' tactical position even if the attorney who enters into the negotiations attempts to represent the class' interest vigorously.

5

6

7  *In re General Motors*, 594 F.2d at 1125. Phillips repeated the mistake even after this Court made

known its desire for a global settlement.

8

9       In addition to not working with other class counsel, Philips also did nothing to protect the

class' claims from potentially adverse, if not fatal, rulings in the competing class actions. He

10  never moved to stay the competing actions in favor of *Santos* nor did he move to consolidate the

11  cases and seek to have himself appointed lead counsel. The latter failure is especially glaring

12  given he had the advantage of having been first to file and had what he claimed was a fair and

13  reasonable settlement. Instead, Phillips sat idly by while the government filed a motion to

14  dismiss in *Simpao*. Notably, if the government had succeeded in dismissing *Simpao* based on

15  lack of jurisdiction, *Santos I* would have been invalidated as well. The Court would have had no

16  jurisdiction to approve the settlement. *Cf., Order*, J. Lew, Mar. 17, 2005, *Simpao v. Guam*,

17  CV04-00049, Docket No. 53 (denying Governor's motion to dismiss for lack of jurisdiction); *see*

18  *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 at 701,

19  102 S. Ct. 2099 (1982) (parties may not confer subject matter jurisdiction upon court via

20  settlement agreement where it does not otherwise exist). Phillips also took no action when

21  *Simpao* moved for summary judgment even though his client's claims would have been damaged

22  if *Simpao's* motion had failed. Notably, Phillips and respondents now expressly attempt to rely

23  on holdings obtained in *Simpao* to claim this Court has jurisdiction over their flawed settlements.

24

OPPOSITION TO SANTOS' AMENDED MOTION FOR APPOINTMENT AS LEAD COUNSEL
Page 17

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 429-3    Filed 06/22/2007    Page 16 of 23

3. **The Apparent Political Manipulation Associated with the *Santos I* Settlement was not in the Best Interest of the Class**

Based on the circumstances of the *Santos I* settlement, the Court can reasonably infer, and must at least consider the possibility, that Phillips used this class action as a political tool, putting the interest of certain political office holders ahead of the interest of the class. It does not take the benefit of 20/20 hindsight to know that entering a stipulated settlement creating a $60 million dollar liability for a cash-poor government without the knowledge or consent of the Governor is fraught with peril. Yet Phillips, along with the Lieutenant Governor and the Attorney General, hastily entered into and publicly announced a settlement in this matter while the Governor was off-island. Instead of using the strength of the EITC claims to ensure a secure settlement, he chose to negotiate with political opponents of the Governor, one of which was his client. Their collective actions placed the Governor in an untenable position politically. He either had to oppose the settlement publicly or allow his political opponents to (in his view) hamstring him financially. That tactic directly resulted in the political battle between the Governor and the Attorney General that has delayed relief for the class for over two years. It is difficult to believe Phillips was so insensitive to these political considerations when, by his own admission, he was thrice elected chair of the local Democratic party and is actively involved in Guam politics. See *Amended Motion Of Petitioner Julie Babauta Santos For Appointment Of Lead Class Counsel*, CV04-00006, Docket No. 348. Even if Phillips believed he had a better chance of securing a settlement from these political players than the Governor, the attempt to pull an end run around the Governor at best exhibited a profound lack of judgment. Had Phillips included the Governor from the outset, the EITC class might well be receiving their refunds today.

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL

Page 18

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 429-3    Filed 06/22/2007    Page 17 of 23

1    Phillips' imprudent tactics resulted in two years of delay in the refund of money to the

2    claimants while a completely unnecessary internecine struggle in the Government of Guam

3    unfolded, none of which would have happened if Phillips had included the Governor in his initial

4    settlement discussions. Had Phillips taken that course, the EITC class might well be receiving

5    their refunds today.

6        Phillips' long series of procedural irregularities demonstrate he cannot be relied on to

7    adequately represent the class. *See Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346,

8    1352 (9th Cir. 1984) (a trial court rightly considers the competency of counsel when determining

9    class certification) *and Fendler v. Westgate-California Corp.*, 527 F.2d 1168, 1170 (9th Cir.

10   1975) (one of the criteria for adequacy of representation would appear to be the zeal and

11   competence of the counsel and party who wish to prosecute the action.).

12       4.    <u>Phillips' Prior Representation Fails To Support His Ability To Adequately
            Represent The Class And Demonstrates Phillips Has A Conflict Of Interest</u>

13

14       a.    *Phillips' Class Action Experience.*

15   Mr. Phillips has cited his involvement in *Rios v. Ada et al.*, Superior Court of Guam,

16   SP0206-93, the only cognizable class action that Mr. Phillips has been counsel for, though Mr.

17   Phillips appears to be the only plaintiffs' counsel in the action.[13] In a case which has been slowly

18   litigated since 1993, Mr. Phillips seeks to recover a judgment for unpaid cost of living

19   adjustments to retirees from the government of Guam, in an amount seeking over a hundred

20   million dollars. Mr. Phillips let this class action languish for over 10 years now without the class

21   receiving any monetary relief from the government defendant, even failing to do as little as

22   change his individually named defendant Governors when they left office. Recently, Mr.

23   Phillips has seemingly resurrected this case from inactivity and is pursuing over a hundred

---

24   [13] See *Van de Veld Decl.* at ¶ 4 (j).

25   OPPOSITION TO SANTOS' AMENDED
     MOTION FOR APPOINTMENT AS
     LEAD COUNSEL
     Page 19

     VAN DE VELD SHIMIZU CANTO & FISHER
     East Marine Corps Drive
     Hagatna, Guam 96910
     Tel. 671.472.1131
     Fax 671.472.2886

     TOUSLEY BRAIN STEPHENS PLLC
     1700 Seventh Avenue, Suite 2200
     Seattle, Washington 98101-1332
     Tel. 206.682.5600
     Fax 206.682.2992

     Case 1:04-cv-00006    Document 429-3    Filed 06/22/2007    Page 18 of 23

1   million dollars from the same government in the EITC suit, which in both cases has claimed that

2   either judgment rendered against the government would have catastrophic effects because the

3   government claims it lacks the ability to pay either, a fact invariably conflicting with and

4   impacting upon Mr. Phillips' resolve in his settlement negotiations over the amount of EITC

5   refunds.

6          b.      *Other Cases Phillips Touts as Experience Deserving of Lead Counsel.*

7          Mr. Phillips lists several cases in his amended declaration in support of lead counsel that

8   he holds out as examples of his experience and prowess which he believes qualify him for the

9   role as the EITC class lead counsel. A review of the Superior Court of Guam court Dockets of

10  nearly all these cases reveals that Phillips' reliance on any record of past accomplishment in these

11  cases is embellished and altogether unfounded. See *Van de veld Decl.* at ¶ 4 (a) through (i).

12  Many of the following cases cited by Phillips have languished without action for several years,

13  and some have resulted in dismissals of Phillips' claims, hardly evidencing the vigor and

14  diligence desired of lead counsel in this EITC tax refund class action. *Id.*

15

16                          **IV. CONCLUSION**

17         For all the reasons stated herein this Court should deny Phillips' motion to be appointed

18  lead counsel. Should the Court desire to make a lead counsel appointment at this time, it should

19  order such briefing. Alternatively, if the Court believes the record before it is adequate, it should

20  appoint *Simpao* Plaintiffs' counsel as lead counsel for these consolidated class actions.

21

22

23

24

25  OPPOSITION TO SANTOS' AMENDED
    MOTION FOR APPOINTMENT AS
    LEAD COUNSEL
    Page 20

    VAN DE VELD SHIMIZU CANTO & FISHER
    East Marine Corps Drive
    Hagatna, Guam 96910
    Tel. 671.472.1131
    Fax 671.472.2886

    TOUSLEY BRAIN STEPHENS PLLC
    1700 Seventh Avenue, Suite 2200
    Seattle, Washington 98101-1332
    Tel. 206.682.5600
    Fax 206.682.2992

    Case 1:04-cv-00006   Document 429-3   Filed 06/22/2007   Page 19 of 23

Respectfully submitted this 25 day of August, 2006.

VAN DE VELD SHIMIZU CANTO & FISHER

By: _____
Curtis C. Van de veld

TOUSLEY BRAIN STEPHENS PLLC
Kim D. Stephens, P.S., *Pro Hac Vice*
Nancy A. Pacharzina, *Pro Hac Vice*

Attorneys for Plaintiffs Simpao, Naputi & Cruz

OPPOSITION TO SANTOS' AMENDED
MOTION FOR APPOINTMENT AS
LEAD COUNSEL

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 429-3    Filed 06/22/2007    Page 20 of 23

# TABLE OF CASES AND AUTHORITIES

## CASES

Armstrong v. Chicago Park District,
    117 F.R.D. 623 (N.D. Ill. 1987).   •   •   •   •   •   10, 11-12, 16

Eisen v. Carlisle & Jacquelin,
    417 U.S. 156, 94 S.Ct. 2140 (1974)   •   •   •   •   •   16

Fendler v. Westgate-California Corp.,
    527 F.2d 1168 (9th Cir. 1975)   •   •   •   •   •   19

In re General Motors Corp. Engine Interchange Litigation,
    594 F.2d 1106 (7th Cir.1979)   •   •   •   10, 15, 17

In re Request of Governor Felix P. Camacho Relative to the
Interpretation and Application of Sections 6 and 9 of the
Organic Act of Guam,
    2004 Guam 10 (Sup. Ct. Guam 2004)   •   •   •   2

In re Request of I Mina' Bente Sing'ko Na Liheslaturan Guahan
Relative to the Application of the Earned Income Tax Credit
Program to Guam Taxpayers,
    2001 Guam 3 (S.Ct. Guam 2001)   •   •   •   2

Insurance Corp. of Ireland, Ltd. v. Compagnie des
Bauxites de Guinee,
    456 U.S. 694, 102 S. Ct. 2099 (1982)   •   •   •   •   11, 17

Key v Gillette,
    782 F.2d 5 (1st Cir. 1986)   •   •   •   •   •   •   9

Knisley v. Network Associates, Inc.
    312 F.3d 1123 (9th Cir. 2002.)   •   •   •   •   •   •   13

Laughlin v. Kmart Corp.,
    50 F.3d 871 (10th Cir. 1995)   •   •   •   •   •   •   11

Mendoza v. Tucson School Dist. No. 1,
    623 F.2d 1338 (9th Cir. 1980)   •   •   •   •   •   •   13

Prandini v. National Tea Co.,
    557 F.2d 1015 (3d Cir. 1977)   •   •   •   •   •   •   13

<u>Wrighten v. Metropolitan Hospitals, Inc.</u>, . . . . . . . 19
   726 F.2d 1346 (9th Cir. 1984)

## STATUTES AND RULES

26 U.S.C. § 7422(f)(1)    .   .   .   .   .   .   .   12

48 U.S.C. § 1421i(a)    .   .   .   .   .   .   .   12

48 U.S.C. § 1421i(h)(2)    .   .   .   .   .   .   .   12

Fed. R. Civ. P. § 23(g)(1)(b)    .   .   .   .   .   .   .   9

Fed. R. Civ. P. § 23(g)(1)(c)(i)    .   .   .   .   .   .   .   11

## OTHER AUTHORITIES

Herr, David F., *Manual for Complex Litigation*   .   .   .   .   .   9, 16
   (4<sup>th</sup> ed. 2004), § 21.271

Herr, David F., *Manual for Complex Litigation*   .   .   .   .   .   1
   (4<sup>th</sup> ed. 2004), § 21.273

Herr, David F., *Manual for Complex Litigation*   .   .   .   .   .   14
   (4<sup>th</sup> ed. 2004), § 21.631

Herr, David F., *Manual for Complex Litigation*   .   .   .   .   .   10
   (4<sup>th</sup> ed. 2004), § 21.632

Herr, David F., *Manual for Complex Litigation*   .   .   .   .   .   15
   (4<sup>th</sup> ed. 2004), § 21.641

Newberg, H. & Conte, A., *Newberg on Class Actions*   .   .   .   .   13
   (4th ed. 2002), § 15.31

Order, J. Lew, District Court of Guam Civil   .   .   .   .   .   7, 11, 17
   Case No. 04-00049, Mar. 17, 2005

Order, J. Martinez, District Court of Guam Civil
   Case No. 04-00049, June 15, 2005   .   .   .   .   .   8

# CERTIFICATE OF SERVICE

I, CURTIS C. VAN DE VELD, certify that I caused a copy of the foregoing document here filed to be served on the following individuals or entities on August 25, 2006, via hand delivery at the following addresses:

Counsel for Petitioner
   Charmaine Torres
Peter C. Perez, Esq.
Lujan, Aguigui & Perez, LLP
Pacific News Bldg., Ste. 300
238 Archbishop Flores St.
Hagatna, Guam 96910

Counsel for Respondent
   Felix P. Camacho
Daniel M. Benjamin, Esq.
Calvo & Clark, LLP
655 S. Marine Corps Drive, Ste. 202
Tamuning, Guam 96913

Counsel for Respondent
   Felix P. Camacho
Shannon Taitano, Esq.
Office of the Governor of Guam
Governor's Complex
East Marine Corps Drive
Adelup, Guam 96910

Counsel for Respondents
   Artemio Ilagan and Lourdes Perez
Rawlen M.T. Mantanona, Esq.
Cabot Mantanona LLP
BankPacific Building, 2nd Floor
825 South Marine Corps Drive
Tamuning, Guam 96913

Counsel for Petitioner
   Julie Babauta Santos
Michael F. Phillips, Esq.
Phillips & Bordallo, P.C.
410 West O'Brien Drive
Hagatna, Guam 96910

Respectfully submitted this _25 August 2006_.

VAN DE VELD SHIMIZU CANTO & FISHER
TOUSLEY BRAIN STEPHENS PLLC

Curtis C. Van de veld
Attorneys for Plaintiffs

1 | Counsel appearing on following page

2

3 | DISTRICT COURT OF GUAM

4 | TERRITORY OF GUAM

5 | JULIE BABAUTA SANTOS, *et al.*,

Civil Case No. 04-00006

6 | Petitioners,

7 | v.

8 | FELIX P. CAMACHO, *et al.*,

Respondents.

9

10 | CHARMAINE R. TORRES, *et al.*,

Civil Case No. 04-00038

11 | Plaintiffs,

12 | v.

13 | GOVERNMENT OF GUAM, *et al.*,

14 | Defendants.

**RECEIVED**
AUG 25 2006
CALVO & CLARK LLP
By: _____

**CABOT MANTANONA, LLP**
Date: 8-25-06
Time: 2:05
Initials: VE

15 | MARY GRACE SIMPAO, *et al*,

Civil Case No. 04-00049

16 | Plaintiffs,

17 | v.

18 | GOVERNMENT OF GUAM,

19 | Defendant,

v.

20 | FELIX P. CAMACHO, Governor of Guam

21 | Intervenor-Defendant.

**DECLARATION OF CURTIS C. VAN DE VELD IN SUPPORT OF SIMPAO PLAINTIFFS' OPPOSITION TO PETITIONER SANTOS' AMENDED MOTION FOR APPOINTMENT OF LEAD COUNSEL**

OFFICE OF THE
GOVERNOR
25 AUG 2006
DATE 1:04 pm
LEGAL OFFICE

22 | The Law Offices of

23 | PHILLIPS & BORDALLO

24

AUG 2 ... 2006

25

DECLARATION OF CURTIS C. VAN DE VELD IN SUPPORT OF OPPOSITION

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Page 1

1

VAN DE VELD SHIMIZU CANTO & FISHER
Suite 101 Dela Corte Bldg.
167 East Marine Corps Drive
Hagåtña, Guam 96910
671.472.1131

2

3

4

TOUSLEY BRAIN STEPHENS PLLC
Kim D. Stephens, P.S., WSBA #11984
Nancy A. Pacharzina, WSBA #25946
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
206.682.5600

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DECLARATION OF CURTIS C.
VAN DE VELD IN SUPPORT OF
OPPOSITION

Page 2

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 429-4    Filed 06/22/2007    Page 2 of 46

# DECLARATION OF CURTIS C. VAN DE VELD

I, Curtis C. Van de veld, Esq., hereby declare and state the following under penalty of perjury:

1. I am an attorney for the Plaintiffs in the matter of Plaintiffs Mary Grace Simpao, et al., vs. Defendant Government of Guam and Intervenor-Defendant Felix P. Camacho, District Court of Guam Civil Case No. CIV04-00049;

2. The matters stated herein are based upon my personal knowledge or belief and as to those matters I swear that the extent of my knowledge is truthfully stated and as to those matters based on my belief, I believe those matters to be true. I further believe that, if I was called to give testimony upon the matters stated herein, I am competent to testify to those matters, the authentication of certain records having been established before my testimony;

3. I have read and reviewed the matters set forth in the *AMENDED DECALRATION OF INTERIM CLASS COUNSEL MICHAEL F. PHILLIPS IN SUPPORT OF AMENDED MOTION FOR APPOINTMENT OF LEAD CLASS COUNSEL (AMENDING DOCKET NO. 276)* (hereinafter "*Phillips Amend. Decl.*"); CV04-00006, Docket No. 349;

4. At ¶ 12 of *Phillips Amend. Decl.*, Mr. Phillips lists several cases that he holds out as examples of his experience and prowess which he believes qualify him as the EITC class lead counsel. I have reviewed the Superior Court of Guam court Dockets of nearly all these cases to reveal that Phillips' reliance on any record of past accomplishment in these cases is embellished and altogether unfounded. As shown below, many of the following cases cited by Phillips have languished without action for several years, and some have resulted in dismissals of Phillips' claims:

DECLARATION OF CURTIS C.
VAN DE VELD IN SUPPORT OF
OPPOSITION
Page 3

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 429-4    Filed 06/22/2007    Page 3 of 46

1    (a) Mr. Phillips informs this court that he filed a suit titled "*Vicente C.*

2    *Pangelinan, Senator, Individually and on behalf of the People of Guam v. Carl T.C. Gutierrez, et*

3    *al., SP0086-00*. However, Mr. Phillips neglects the fact that no law or rule authorizes him to act

4    in that matter for "the People of Guam." More importantly, shortly after this political suit was

5    commenced, the matter was dismissed with prejudice on April 20, 2000.

6        (b) Another case referenced by Mr. Phillips is the matter of *Angel Santos and the*

7    *Chamorro Nation v. Joseph F. Ada*. I reviewed this Docket that I received from the office of the

8    Clerk of Court, Superior Court of Guam, and it demonstrates that the matter was filed March 25,

9    1992, had some activity in late 1994 and early 1995 but has been dormant of any activity since

10   then. No Judgment has issued in that case, despite the assertion by Mr. Phillips that the case

11   produced a "landmark decision mandating grant of tens of thousands of acres …"

12       (c) Mr. Phillips cites another matter of *Celestine C. Babauta, individually and on*

13   *behalf of all persons similarly situated … vs. Government of Guam, SP0339-96*. I reviewed this

14   Docket that I received from the office of the Clerk of Court, Superior Court of Guam, and it

15   shows Mr. Phillips filed that action on December 31, 1996, some activity occurred through to

16   December 2002, however, since that time the case has had no activity. No Judgment has issued

17   in that case.

18       (d) In another matter cited, the case of *Vicente C. Pangelinan, Senator and*

19   *Joseph C. Wesley, Mayor, et al vs. Carl T.C. Gutierrez, et al, Special Proceedings Case No.*

20   *SP0073-98*, that matter was combined with SP0114-95, Civil Cases CV1383-95 and CV1856-95.

21   According my review of the court's files in those matters and Docket of those cases, the cases

22   have not had any court activity since February 4, 1998 and no judgment has issued in those

23   matters.

24

DECLARATION OF CURTIS C.
VAN DE VELD IN SUPPORT OF
OPPOSITION

Page 4

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 429-4    Filed 06/22/2007    Page 4 of 46

1    (e)  Another case touted by Mr. Phillips is the case of *Pacita Aguon v. Carl T.C.*

2    *Gutierrez, et al., SP20797.* Mr. Phillips refers to that matter as "Class action prosecuted

3    attempting to secure statutory supplement for retirees." I have reviewed this Docket from that

4    matter and it indicates that case was filed on July 18, 1997, that the court issued a Decision And

5    Order granting the Respondents' motion for summary judgment, a Judgment for Respondents

6    rendering all other motions moot was filed on March 21, 2001, and at no time were issues of a

7    class action addressed.

8           (f)  In another example, Mr. Phillips filed several cases, SP0114-95, CV1383-95,

9    CV1856-95 and SP0024-96, all of which were designed to challenge the constitutionality of the

10   drawing of school districts based on the precept of 'one man – one vote.' The cases were

11   eventually consolidated for hearing and the court found that the manner of the districting violated

12   law. Despite orders from the court for Respondents to submit redistricting plans, none were filed.

13   Thereafter, then Judge Gatewood became Associate Justice Gatewood and the cases have been

14   inactive since 1998. No judgment has been entered in those cases.

15          (g)  Another case Mr. Phillips holds out as part of his record (See *Phillips Amend.*

16   *Decl.* at ¶ 7) is *Western Systems, Inc. et al. vs. Atkins Kroll, Inc., et al. Civil Case No. CV1314-*

17   *01.* Mr. Phillips claims that the case was a discovery intensive case involving multi-million

18   dollars claims. I have reviewed the Docket of that matter which discloses that the Complaint was

19   filed August 1, 2001, and on October 30, 2003 was dismissed with prejudice by stipulation (each

20   party bearing their own costs) while many depositions and discovery motions were pending.

21          (i)  In another case offered by Phillips, *Ignacio J. Pangelinan et al. vs. Carl T.C.*

22   *Gutierrez, et al., SP0098-00,* the matter was dismissed under a Judgment entered on April 9,

23

24

DECLARATION OF CURTIS C.
VAN DE VELD IN SUPPORT OF
OPPOSITION

Page 5

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 429-4    Filed 06/22/2007    Page 5 of 46

1 | 2001, holding that plaintiff not recover from his complaint and that the issues raised had become

2 | moot.

3 |          (j) Finally, Mr. Phillips has cited his involvement in *Rios v. Ada et al.*, *SP0206-*

4 | *93*, the only cognizable class action that Mr. Phillips has been counsel for, though Mr. Phillips

5 | appears to be the only plaintiffs' counsel in the action. In a case which has been slowly litigated

6 | since 1993, Mr. Phillips seeks to recover a judgment for unpaid cost of living adjustments to

7 | retirees from the government of Guam, in an amount seeking over a hundred million dollars.

8 | Mr. Phillips let this class action languish for over 10 years now without the class receiving any

9 | monetary relief from the government defendant, even failing to do as little as change his

10 | individually named defendant Governors when they left office. Recently, Mr. Phillips has

11 | seemingly resurrected this case from inactivity and is pursuing over a hundred million dollars

12 | from the same government in the EITC suit, which in both cases has claimed that either

13 | judgment rendered against the government would have catastrophic effects because the

14 | government lacks the ability to pay either, a fact invariably conflicting with and impacting upon

15 | Mr. Phillips' resolve in his settlement negotiations over the amount of EITC refunds.

16 |

17 |      5.      I declare and attest that "Exhibit A" attached to this Declaration are true and

18 | correct copies of KUAM Television Station News Reports downloaded from the KUAM internet

19 | website (www. KUAM.com) of three separate news stories entitled: "Lieutenant Governor still

20 | negotiating legal representation" dated June 18, 2004; "Lieutenant Governor's Office still

21 | working out detail with single legal services bidder" dated June 22, 2004; and "Lieutenant

22 | Governor reportedly in final stages of negotiations with legal counsel" dated July 2, 1994;

23 |

24 |

DECLARATION OF CURTIS C.
VAN DE VELD IN SUPPORT OF
OPPOSITION
Page 6

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 429-4    Filed 06/22/2007    Page 6 of 46

6.     I declare and attest that "Exhibit B" attached to this Declaration is a true and correct copy of a KUAM Television Station News Report downloaded from the KUAM internet website (www. KUAM.com) of a news story entitled "Acting Governor, Attorney General announce EITC will be paid over six years" dated June 13, 2004;

7.     I declare and attest that "Exhibit C" attached to this Declaration is a true and correct copy of page 21 of the "Settlement Agreement" which is attached as Exhibit A to the *Order Granting Preliminary Approval of Class Action Settlement* entered June 17, 2004, in District Court of Guam Civil Case No. CV04-00006, *Santos v. Camacho* at Docket No. 14;

8.     I declare and attest that "Exhibit D" attached to this Declaration is a true and correct copy of page 25 of the edition of the Pacific Sunday News newspaper published June 27, 2004 and entitled "Notice Of Class Action And Proposed Settlement";

9.     I declare and attest that "Exhibit E" attached to this Declaration is a true and correct copy of correspondence between the Office of the Governor and the Attorney General's Office, dated September 16, 2004, referring to the Administrative Plan as "a new settlement under the guise of an administrative plan.";

10.     I declare and attest that "Exhibit F" attached to this Declaration is a true and correct copy of the *Complaint* filed in Simpao v. Govt. of Guam, District Court of Guam Civil Case No. CV04-00049, Docket No. 1;

11.     I declare and attest that "Exhibit G" attached to this Declaration is a true and correct copy of the *Order* [denying motion to dismiss], issued by Judge Ronald Lew on March 15, 2005 in District Court of Guam Civil Case, Simpao v Govt. of Guam, No. CV04-00049, Docket No. 53;

DECLARATION OF CURTIS C.
VAN DE VELD IN SUPPORT OF
OPPOSITION
Page 7

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006     Document 429-4     Filed 06/22/2007     Page 7 of 46

1    12.    I declare and attest that "Exhibit H" attached to this Declaration is a true and

2    correct copy of the *Order* [granting partial summary judgment], issued by Judge Ricardo.

3    Martinez on June 15, 2005 in District Court of Guam Civil Case <u>Simpao v. Govt. of Guam</u>, No.

4    CV04-00049, Docket No. 99;

5        13.    I declare and attest that "Exhibit I" attached to this Declaration is a true and

6    correct copy of *Plaintiffs' Motion For Class Certification*, filed on July 5, 2005 in District Court

7    of Guam in Civil Case No. 04-00049.

8

9        FURTHER DELCARANT SAYETH NAUGHT this Friday, August 25, 2006 at

10   Hagåtña, Guam, swearing and affirming the foregoing is true.

11

12                                    By: _____

13                                        Curtis C. Van de veld

14

15

16

17

18

19

20

21

22

23

24

25

DECLARATION OF CURTIS C.
VAN DE VELD IN SUPPORT OF
OPPOSITION

Page 8

VAN DE VELD SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 429-4    Filed 06/22/2007    Page 8 of 46

# EXHIBIT A



# Lieutenant Governor still negotiating legal representation

**by Ken Wetmore, KUAM News**
**Friday, June 18, 2004**

The Office of the Lieutenant Governor is still in negotiations for the services of an attorney. The Lieutenant Governor's Office only received one bidder on their request for proposal for legal services in May. While the Lieutenant Governor's Office hasn't revealed whom the proposal came from, saying procurement law bars them from answering that question, Attorney Mike Phillips says his law firm submitted the bid.

Phillips says while his firm has not dropped its proposal negotiations are not actively ongoing. According to news files the Lieutenant Governor's Office is contending since both the Superior and Supreme courts have found the Office of the Lieutenant Governor to be an individual entity outside of the Governor's Office, the Lieutenant Governor should have his own attorney to represent and give legal advice to his office.

Copyright © 2000-2006 by Pacific Telestations, Inc.





# Lieutenant Governor's Office still working out detail with single legal services bidder

**by Ken Wetmore, KUAM News**
**Tuesday, June 22, 2004**

---

The Office of the Lieutenant Governor still has to finalize negotiations with the single bidder on a request for proposal for an attorney to represent the office. Lieutenant Governor's spokesperson Phil Roberto would only say on the matter that negotiations are ongoing.

While the Lieutenant Governor's Office would not reveal who the single bidder is, KUAM News has confirmed with Attorney Mike Phillips that his law firm was the lone bidder. The original deadline to turn in proposals was May 7, but the request for proposal had to be extended to May 19, when there were no takers for the original RFP.

The Lieutenant Governor's Office is contending since both the Superior and Supreme courts have found the Office of the Lieutenant Governor to be an individual entity outside of the Lieutenant Governor, he should have his own attorney to represent and give legal advice to his office.

---

**Copyright © 2000-2006 by Pacific Telestations, Inc.**


# Lieutenant Governor reportedly in final stages of negotiations with legal counsel

**by Ken Wetmore, KUAM News**
**Friday, July 02, 2004**

Guam's Lieutenant Governor is in the final stages of negotiations with a law firm to represent his office. Lieutenant Governor Kaleo Moylan's spokesperson Phil Roberto today told KUAM News the Lieutenant Governor's Office was very close to closing a deal with the single bidder on the Lieutenant Governor's request for proposal for legal services.

According to news files the Lieutenant Governor's Office is contending since both the Superior and Supreme courts have found the Office of the Lieutenant Governor to be an individual entity outside of the Governor's Office, the Lieutenant Governor should have his own attorney to represent and give legal advice to his office. While Roberto has declined to name the law firm who bid on the request for proposal, Attorney Mike Phillips earlier confirmed that his law firm in the lone bidder.

Phillips represented Lieutenant Governor Moylan in Governor Felix Camacho's request for a declaratory motion before the Supreme Court and interestingly is also the chair of the Guam Democrat Party.

Copyright © 2000-2006 by Pacific Telestations, Inc.



# EXHIBIT B

# Acting Governor, Attorney General announce EITC will be paid over six years

**by Zita Taitano, KUAM News**
**Sunday, June 13, 2004**

A settlement agreement was reached on the Earned Income Tax Credit for eligible taxpayers, as well as for the payment of overtime payments for public safety officers. The announcement was made during a joint press conference between Acting Governor Kaleo Moylan and Attorney General Douglas Moylan at the Office of the Governor at Adelup.

Saying it has always been the Administration's intent to pay the EITC, Acting Governor Moylan announced a settlement in a class action lawsuit to force the Government of Guam to pay out an estimated $120-160 million in tax credits over six years. The acting governor was flanked by the Attorney General, who represented the government in the case, and Attorney Mike Phillips, who was the legal counsel representing the plaintiffs in the class action suit.

The two sides announced they had agreed on terms that called for $60 million in owed EITCs to be paid out over eight years. GovGuam is required to immediately post $3 million to an account for payouts of the tax credit and must put an additional $17 million in over the next year. For the next eight years, $5 million would be set aside. The settlement also calls for the government to pay out the Earned Income Tax Credit in full in from this point on.

The $60 million settlement represents only about half of what is owed to eligible taxpayers. AG Moylan called the settlement "great for the Government of Guam as it means the government will only have to come up with half of what a court might have ordered by paid." At the same time, opposing attorney Phillips said the settlement was good for his clients because it allowed them to finally get at least a portion of the money owed to them.

As for where the public sector is going to come up with $60 million, Department of Revenue and Taxation director Art Ilagan said it is likely that payout of income tax refunds, as well as vendor payments may be slowed down as the government tries to find the cash to come up with the $3 million immediately and the additional $17 million over the next year. In future years the revenue projections will be adjusted to reflect the EITC payments.

According to Attorney Phillips, he was approached by the Attorney General on Thursday about the terms of this settlement and the along with the acting governor and Administration cabinet members worked out the details over the last several days. AG Moylan said today the settlement was not forced by the payment of a single EITC in March of this year. Moylan said the payment did not force the government into the settlement and said it has always been his desire to see the case settled.

It was also announced at this afternoon's press conference that a settlement had been reached between the Camacho Administration and the Guam Attorney General regarding the payment overtime to the Department of Corrections, the Guam Fire Department and the Guam Police Department. Acting Governor Moylan says that with an increase in business license renewals this year the Administration has been able to find the $2.7 million necessary to pay the past due overtime.

It was noted that this is the first time in years that the government does not owe overtime to the agencies.

Copyright © 2000-2004 by Pacific Telestations, Inc.

6/26/04

# EXHIBIT C

D. <u>Notice</u>. Any notice, request, instruction or other document to be given by the Government of Guam to Petitioner, or vice versa, shall be in writing and (a) delivered personally or by Certified Mail, Return Receipt Requested, to counsel for the parties as follows:

If to the Government of Guam:

Honorable Douglas B. Moylan
Attorney General of Guam
Office of the Attorney General
Guam Judicial Center
120 West O'Brien Drive, Suite 2-200E
Hagatna, Guam 96910

If to the Petitioner:

Michael F. Phillips, Esq.
Phillips & Bordallo, P.C.
410 West O'Brien Drive, Suite 102
Hagatna, Guam 96910

E. <u>Attorneys' Fees</u>. The Petitioner and the Government of Guam agree that Counsel for the EIC Class shall recover attorneys' fees ~~and court costs in the amount of~~ *in an amount to be d~~oo~~* ~~ten percent (10%) of the Settlement Amount.~~ The recovery of attorneys' fees and court costs shall be from, and not in addition to, the Settlement Amount, and shall be executed in such manner as provided in the Administration Plan, not inconsistent with this Settlement Agreement. The Settlement Amount is attributed to the efforts of Petitioner and Counsel for the EIC Class. Although the value of the benefit conferred by Petitioner and Counsel for the EIC Class to each member of the EIC Class cannot be determined with complete accuracy until all claims are presented, attorneys' fees awarded against the Settlement will shift the costs of litigation to each member of the EIC Class in the exact proportion that the value of each individual's claim bears to the total recovery.

21

# EXHIBIT D

CIVIL NO. CIV04-00006

JULIE BABAUTA SANTOS, individually, and on behalf of all those similarly situated,

Petitioner.

vs.

FELIX A. CAMACHO, Governor of Guam, ART ILAGAN, Director of Department of Revenue and Taxation, LOURDES M. PEREZ, Director of Department of Administration; and GOVERNMENT OF GUAM,

Respondents.

## NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT

**To:** All individuals who filed Guam income tax returns and qualified for earned income tax credits for any or all of tax years 1996, 1998, 1999, 2000, 2001, 2002 or 2003.

**Summary of the Lawsuit.** This lawsuit sought payment of refundable earned income tax credits for tax years 1996, 1998, 1999, 2000, 2001, 2002, and 2003 (the "applicable tax period"). This lawsuit has been certified by the Court as a class action. The counsel for the petitioner and the class is Michael F. Phillips of Phillips & Bordallo, P.C. The counsel for the respondents is Douglass B. Moylan, Attorney General of Guam.

**Definition of the Class.** You are a member of the class if you (a) filed Guam income tax returns and (b) were and are entitled to be paid refundable earned income tax credits under the Guam Territorial Income Tax and the Earned Income Program for any or all of the following tax years: 1996, 1998, 1999, 2000, 2001, 2002 and 2003.

**Proposed Settlement.** The petitioner and the Government of Guam reached a Settlement of this lawsuit. The Court preliminarily approved the Settlement. The Settlement will provide payments, before Court-ordered deductions, to you of approximately fifty percent (50%) or more of the estimated refundable earned income tax credits you may have claimed for the applicable tax period. The Settlement Amount is $60 Million Dollars. The Settlement Amount will be deposited into an EIC Settlement Fund as follows: At least $3 Million Dollars by July 17, 2004; at least $17 Million Dollars over eleven months following the first installment; and at least Five Million Dollars on or before June 30th of each subsequent year, beginning on June 30, 2006 and ending June 30, 2013. The Settlement also provides that the Government of Guam will fully implement the earned income tax program for tax years 2004 and beyond. The Court awarded attorneys' fees and court costs to petitioner and Class Counsel in the amount of ten percent (10%) of the Settlement Amount. This Settlement will release the Government of Guam from all further liability for refundable earned income tax credits to Class Members for the applicable tax period.

On September 9, 2004, at 10:00 a.m., the Court will hold a hearing at the District Court of Guam before Magistrate Judge Joaquin V.E. Manibusan, Jr. to determine whether the Settlement is fair and reasonable and should be given Final Approval.

**Objections to the Settlement and Requests for Exclusion.** If you believe the Court should not approve the Settlement, you may deliver or mail to the Court written objections to the Settlement no later than August 9, 2004, together with evidence of qualification for earned income tax credits for any tax year within the applicable tax period. You may also appear at the hearing on Final Approval, provided, however, that no Class member shall be heard unless he or she complies with the requirements to file written objections. If you do NOT want to participate in the Settlement Amount of $60 Million Dollars, or if you want to pursue separate claims, you may request exclusion from the class by delivering to the Court a written request to opt out of the class by August 9, 2004. All objections and requests for exclusion shall be personally signed by the Class member and delivered to EIC Settlement, c/o Clerk of Court, 4th Floor, U.S. Courthouse, 520 West Soledad Avenue, Hagatna, Guam 96910.

**Participation in Settlement.** If you want to participate in the Settlement Amount of $60 Million Dollars, you do not have to take any action at this time. If the Settlement becomes final, you will be mailed a notice informing you of the information that must be provided to the Department of Revenue and Taxation and all other procedures necessary to obtain your portion of the Settlement Amount. Those who do NOT request exclusion will be bound by the judgment in this Class Action and by the Settlement if it becomes final. Any person who provides false information in an attempt to obtain a portion of the settlement will be prosecuted to the fullest extent of the law.

**Further Information.** For further details of this Settlement, you may request further information from the Department of Revenue and Taxation at Bldg. 13-1, Mariner Avenue,Tiyan, Guam, 96913, or visit the Attorney General of Guam's website at www.guamattorneygeneral.com.

PLEASE FOLLOW THE PROCEDURES SET OUT ABOVE. DO NOT CONTACT THE COURT FOR QUESTIONS ABOUT THE SETTLEMENT.

PACIFIC SUNDAY NEWS, June 27, 2004, guampdn.com

# EXHIBIT E



## Office of the Governor of Guam

P.O. Box 2950 Hagåtña, Guam 96932
TEL (671) 472-8931 • FAX (671) 477-4826 • EMAIL: governor@mail.gov.gu

**Felix Perez Camacho**
*Governor*

**Kaleo Scott Moylan**
*Lieutenant Governor*



RECEIVED
SEP 17 2004
1:51 A...
A:... GENERAL'S OFFIC

Stephen A. Cohen
Assistant Attorney General
Office of the Attorney General
Guam Judicial Center, Suite 2-200B
120 West O'Brien Drive
Hagåtña, Guam 96910

**1 6 SEP 2004**

Re:   Julie Babauta Santos v. Felix P. Camacho, Governor of Guam, et al:
District Court of Guam, Civil Case No. 04-00006

Dear Steve:

We have reviewed the materials that you forwarded to our offices on September 9 from Mike Phillips. We have concerns regarding Mr. Phillips' proposal. I understand from Ray Souza that you described it as an attempt by Mr. Phillips to get a new settlement under the guise of an administration plan. We agree.

However, we have greater concerns regarding the settlement as a whole that we would like addressed before any consideration is given to Mr. Phillips' proposal. As you know, Governor Camacho was never consulted with regard to the June 2004 settlement agreement entered into by Attorney General Moylan and Acting Governor Moylan. Therefore, we would like this opportunity to raise the concerns the Governor has regarding the agreement.

The Governor's most significant concern is that the settlement is not contingent on legislative funding. This is a concern as a practical matter because the Legislature has failed to make an appropriation since the settlement was executed. However, even if the Legislature had made an appropriation, we would be concerned because we are unsure of whether the contract complies with Guam law.

Guam law forbids any officer of the Government of Guam from involving "the government of Guam in any contract or other obligation, for the payment of money for any purpose, in advance of the appropriation made for such purpose." 5 G.C.A. § 22401(a)(3); *see Pangelinan v. Gutierrez*, 2003 Guam 13 (2003), *reconsidered in part on other grounds* 2004 Guam 16. Further, Guam law forbids the participation in any contract that requires the expenditure of non-appropriated funds. *See* 5 G.C.A. § 22401(a)(2).

Based on these laws, we are concerned that the settlement agreement is invalid. We therefore require an explanation as to how the settlement agreement complies with Section 22401's ("Illegal Expenditures") provisions before we can further respond.

We also are concerned with certain structural problems that we see with the settlement agreement. It appears that under the settlement agreement, and under Mr. Phillips' proposed administrative plan, Mr. Phillips will receive 10% of the $60 million no matter how many prospective class members may opt-out. Given that the settlement has not led to a complete peace for the Government, but instead gave birth to both the intervention motions and the new *Torres* case, we are concerned that the Government will be spending $6 million to purchase a

settlement with only a limited number of plaintiffs while facing future liability to a greater number of plaintiffs. This is another area that we would like to have addressed in your response.

Further, as the agreement is written, the Government could end up paying the opt-in plaintiffs 100% if there are a substantial number of opt-outs. Given the potentially strong defenses that existed to the class action and lack of any litigation in the case, we would like to know what procedural safeguards exist regarding this matter.

We also would like a better understanding of how the determination was made to include what appear to be time-barred claims. Related to this, we would like to know why claims from 1996 were favored in the settlement, even though those claims are arguably less meritorious given the statute of limitations issue.

The final concern we have regarding the settlement is our lack of knowledge of the history of the negotiations of the settlement. We want to review all information concerning the settlement and its negotiations so that we are fully informed prior to the hearing. Therefore, please transmit to us the information you have on the negotiations, including the materials exchanged in negotiating the settlement, how fees were agreed to in the settlement, letters and memos regarding compliance with Guam's illegal expenditure laws (§ 22401), and any other information that may be relevant. We want to review this information to evaluate Mr. Phillips' request and to give your office instructions on how to proceed. Further, we want to ensure that all such information is preserved during any litigation relating to EITC.

Assuming our concerns regarding the settlement are addressed, we also have concerns regarding Mr. Phillips' proposal. The objective of the plan appears to be securing payments of attorneys' fees as each payment is made into the settlement fund. Any condition permitting lawyers to receive fees before amounts are actually disbursed to class members is obviously unacceptable to the Governor.

Next, Mr. Phillips' plan seeks to place the burden of almost one million dollars in administration costs on the Government. This would appear to be another unappropriated expenditure, and on that ground alone the Governor must refuse. Further, one million dollars would be a material change to the settlement at a time when we all know the Government of Guam continues to be strapped for cash.

Lastly, we are concerned that the proposed dates in the administrative plan are all in the immediate future. Given the appeal filed by one of the would-be interveners, it would be of concern to us were the settlement to be approved before the appeal is resolved. It would be unfortunate if funds were distributed, only to have the settlement thrown out based on the appeal.

We realize that we have raised multiple issues, responding to which will require some effort. However, we hope that you are able to respond quickly as some of the issues (particularly with regard to the illegal expenditures issue) place the Governor in a position where he may need to act. Thank you for your time on this matter.

Very truly yours,

Shannon Taitano

# EXHIBIT F

VAN DE VELD SHIMIZU CANTO & FISHER
Suite 101 De La Corte Bldg.
167 East Marine Corps Drive
Hagatna Guam 96910
671.472.1131

TOUSLEY BRAIN STEPHENS PLLC
Kim D. Stephens, P.S., WSBA #11984
Nancy A. Pacharzina, WSBA #25946
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
206.682.5600

*Attorneys for Plaintiffs Christina Naputi and Mary Grace Simpao.*

FILED
DISTRICT COURT OF GUAM

DEC - 3 2004

MARY L. M. MORAN
CLERK OF COURT

## DISTRICT COURT OF GUAM

### TERRITORY OF GUAM

| | |
|---|---|
| MARY GRACE SIMPAO, CHRISTINA NAPUTI on behalf of themselves and a class of others similarly situated, | Civil Case No. **04-00049** |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| GOVERNMENT OF GUAM | **CLASS ACTION** |
| Defendants. | |

## I. INTRODUCTION

1.1     Plaintiffs bring this action on behalf of themselves and all others similarly situated who paid income taxes on Guam.

1.2     . They seek redress for, and to put an end to, the unfairness and uncertainty associated with the income tax Earned Income Credit (the "EIC"), as it has been administered by the government of Guam (the "Government").

- 1
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131• FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-4    Filed 06/22/2007    Page 26 of 46

1.3    Prior to 1995, the Government provided its taxpayers a means to claim the EIC and routinely processed such claims. In tax year 1994 more than 9,400 Guam taxpayers received approximately $11 million in EIC payments.

1.4    But in tax years 1995 and 1996, the Government wrongly represented on its published tax return forms that the EIC was "inapplicable in Guam." Guam tax payers who filed an income tax return and qualified for the EIC in those years were provided no mechanism or procedure to make a claim for their EIC, other than filing their general, income-tax return. Not surprisingly, the Government did not compute or refund any EICs rightfully due qualifying taxpayers in those years.

1.5    In tax years 1997 and 1998, the Government once again provided a mechanism for those filing an income tax return to claim the EIC. As before, the procedure included filling out a section of the income tax form applicable to the EIC, and filing a supplemental form specifically for the EIC claim.

1.6    Based upon information and belief, the Government paid only a portion of the EICs legitimately claimed for 1997 and paid none of the EICs claimed for 1998.

1.7    Then, in tax years 1999 through 2003, the Government returned to its behavior of 1995 and 1996. Once again, the Government wrongly represented on its published tax return forms that the EIC was "Not applicable" and, in some years, obscured or placed cross-hatching over the EIC claims section of the return. Once again, qualifying taxpayers were provided no mechanism or procedure to make a claim for their EIC other than filing their general, income-tax return. And once again, the Government did not compute or refund any EICs rightfully due qualifying taxpayers.

1.8    Inexplicably, however, in 2004 one taxpayer was paid an EIC he had claimed for tax year 1998. The Government also indicated it might pay some claims but not others.

1.9    Through this action, Plaintiffs who qualified for the EIC in 1995–2003 seek to establish they have either (1) already made timely claims for their EICs by filing income tax

COMPLAINT - 2
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131• FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-4    Filed 06/22/2007    Page 27 of 46

returns or that the returns they have already filed are at the least sufficient to allow amendment of an EIC claim; and/or (2) in the alternative, still have the right to make such claims for the tax years 1995, 1996 and 1999–2003.

1.10  In the latter case, Plaintiffs also seek to require the Government to: (1) notify all taxpayers who filed a tax return in 1995, 1996 and 1999-2003 that, if they were eligible for the EIC in any or all of those years, they have a right to file a claim for the EIC; (2) to provide all such taxpayers a procedural mechanism to make a claim for an EIC; and (3) to ensure the Government continues to provide a mechanism for eligible Guam tax payers to make specific claims for an EIC on future income tax return forms.

1.11  Finally, Plaintiffs seek refund of the EIC overpayments due all eligible taxpayers who filed a timely claim for an EIC in any or all of tax years 1995-2003 but did not receive the corresponding EIC refund or offset to their income tax liability; and for those who will file a timely claim for an EIC pursuant to the relief described in Paragraph 1.9, or in the future.

## II.  JURISDICTION AND VENUE

2.1  The Court has original jurisdiction over this matter pursuant to 48 U.S.C. §§ 1421i(h) and 1424, and 28 U.S.C. §§ 1330 and 1361.

## III.  THE PARTIES

3.1  Plaintiff Naputi is a resident of Guam, paid income taxes and filed income tax returns for tax years 2001-2003.  Plaintiff Naputi was eligible for the EIC for tax years 2001-03 and was prevented from making the claim in tax years 2001-2003.  She received her EIC for none of these years.  Plaintiff Naputi expects to qualify for the EIC for tax year 2004.

3.2  Plaintiff Simpao is a resident of Guam, paid income taxes and filed income tax returns for tax years 1996-2003.  Plaintiff Naputi was eligible for the EIC for tax years 1996, 1997, 1998, 2002-03 and was prevented from making the claim in tax years 1996, 2001-2003.

COMPLAINT - 3
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-4    Filed 06/22/2007    Page 28 of 46

1  She received her EIC for none of these years. Plaintiff Simpao expects to qualify for the EIC
2  for tax year 2004.

3      3.3    Defendant the Government of Guam is an organized unincorporated territory of
4  the United States of America, formed August 1, 1950, by enactment of the Organic Act,
5  48 U.S.C. § 1421 *et seq.* Defendant is a sovereign government entity.

## IV. FACTUAL ALLEGATIONS

**A.    History of the EIC in Guam**

8      4.1    The Organic Act provides that the income tax applicable to Guam taxpayers
9  must mirror the income tax applicable to United States citizens under certain provisions of the
10  United States Internal Revenue Service Code (IRC). One of these mirroring provisions,
11  Subtitle A of the IRC, contains the EIC.

12      4.2    The EIC became effective in the U.S., and, therefore, in Guam, in 1975.

13      4.3    On information and belief, the Government provided a mechanism for its
14  citizens to make claims for the EIC and paid the credit due from 1975 through 1994.

15      4.4    In fact, more than 9,400 Guam taxpayers received approximately $11 million in
16  EIC payments for tax year 1994.

17      4.5    On June 23, 1989, the Government, through its Attorney General's office (the
18  "AG"), expressly acknowledged it is obligated to pay the EIC to eligible taxpayers in the same
19  manner as ordinary tax refunds, *i.e.*, from the General Fund. *See* Memorandum Opinion
20  No. DOA 89-0750 (the "1989 AG Opinion").

21      4.6    Six years later, however, the Director of the Department of Revenue and
22  Taxation (the "Department") unilaterally decided to terminate the EIC in Guam.

23      4.7    In direct contradiction to the 1989 AG Opinion, the Department issued Revenue
24  Ruling 96-001 (the "1996 Revenue Ruling") stating the EIC did not apply to Guam and, even if
25  it did, the Department could not certify EICs due for payment because the Legislature had
26  made no appropriation to fund the EIC.

COMPLAINT - 4
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131• FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-4    Filed 06/22/2007    Page 29 of 46

4.8     On January 4, 1996, Guam's AG at the time, issued Memorandum Opinion No. DRT/DOA 96-001 (the "1996 AG Opinion") adopting the Department's misguided 1996 Revenue Ruling.

4.9     As a result of the 1996 AG Opinion and Revenue Ruling, the 1996 tax return forms published by the Government included the words "not applicable in Guam" over the section providing taxpayers a mechanism to claim the EIC. Further, no specific form to claim the EIC was made available to taxpayers. On information and belief this was true of 1995 income tax returns as well.

4.10    The Government did not compute or pay any individual EICs for either tax year 1995 or 1996.

4.11    In response to the Executive Branch's unilateral reversal of tax policy, in 1997 the Legislative Branch of the Government passed several laws to implement the Guam Earned Income Program (the "Guam EIC") and to ensure continuous funding of the Program. *See* Public Law 23-74, 11 Guam Code Ann. §§ 42101 et seq.

4.12    As such, the 1997 and 1998 income tax forms published by the Government included a mechanism for eligible taxpayers to specifically claim the EIC.

4.13    The Government paid some, but not all, EICs for the 1997 tax year.

4.14    The Government did not pay any EICs for the 1998 tax year.

4.15    The 1999-2003 income tax forms published by the Government once again included the words "Not Applicable" over the section providing the mechanism to claim the EIC. Once again the Government did not provide a supplemental form to make a specific claim for the EIC.

4.16    Instead, despite the action of the Legislatures in 1997, the Executive Branch once again refused to implement the EIC.

4.17    The Government did not change its conduct even though in 2001, the Supreme Court of Guam, at the request of the Legislative Branch, published an opinion stating the

COMPLAINT - 5
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006     Document 429-4     Filed 06/22/2007     Page 30 of 46

Organic Act required Guam taxpayers receive the benefits of the EIC and thus, the Director of the Department is obligated to pay the EIC to eligible Guam taxpayers.[1]

4.18     The Government has not calculated or paid any EICs for the 1995, 1996, 1999-2003 tax years with one exception.

4.19     In 2004, the Government paid an EIC to one taxpayer who persistently complained to the Governor he was entitled to the credit and who, upon information and belief, claimed the EIC in 1998. No other taxpayers have received an EIC refund for tax year 1998 or any year subsequent.

**B.     The Plaintiff's Experience With the EIC**

1.     <u>Plaintiff Naputi</u>

4.20     Plaintiff Naputi has been a resident of Guam during all relevant tax years. In 2001 she filed as "single", In 2002 as "married filing jointly" and in 2003 as "single" and had one qualifying child in each tax year. She never had a taxable income greater than that allowed to qualify for the EIC. In each tax year she provided all information requested on the form relevant to her as a taxpayer.

4.21     Naputi estimates she qualified for an EIC of $1,200.00 in 2001, $1,466.00 in 2002 and $1,964.00 in 2003.

4.22     Naputi did not receive an EIC payment or offset against their taxes for any of those tax years.

4.23     Naputi never received a formal notice of disallowance of her claims to an EIC, nor did she waive her right to such notice for any of the tax years.

4.24     Naputi expects she will qualify for the EIC in 2004.

---

[1] *In Re Request of I Mina' Bente Sing'ko Na Liheslaturan Guahan Relative to the Application of the Earned Income Tax Credit Programuto Guam Taxpayers ("the EIC question")*, 2001 Guam 3 at 9.

COMPLAINT - 6
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131● FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 ● FAX 206.682.2992

Case 1:04-cv-00006     Document 429-4     Filed 06/22/2007     Page 31 of 46

4.25   Plaintiff Simpao has been a resident of Guam during all relevant tax years.  In 1996 she filed as "single" with one qualifying child, in 1997 she filed as "married filing jointly" with one qualifying child, in 1998 she filed as "married filing jointly" with two qualifying children, in 1999 she filed as "married filing separately" with one qualifying child, in 2000 she filed as "married filing separately" with one qualifying child, in 2001 she filed as "married filing separately" with two qualifying children, in 2002 as "head of household" with two qualifying children, and in 2003 as "head of household" with three qualifying children. She never had a taxable income greater than that allowed to qualify for the EIC.  In each tax year she provided all information requested on the form relevant to her as a taxpayer.

4.26   In tax years 1997 and 1998 she qualified for an claimed the EIC by completing the provided Guam Earned Income Program Application (GEIPA).

4.27   Simpao estimates she qualified for an EIC of $1,750.00 in 1996, $837.00 in 1997, $868.00 in 1998, $3,128.00 in 2002 and $2,984.00 in 2003.

4.28   Based upon information and belief, Simpao did not receive an EIC payment or offset against her taxes for any of those tax years.

4.29   Simpao never received a formal notice of disallowance of her claims to an EIC, nor did she waive her right to such notices for any of the tax years.

4.30   Simpao expects she will qualify for the EIC in 2004.

**C.   Tax payers' efforts to recover the EIC through litigation**

4.31   On February 12, 2004, Julie Babauta Santos filed a class action complaint seeking to recover the unpaid EICs due Guam taxpayers for tax years 1998 through 2003.[2]  *See Santos v. Camacho, et al.*, No. 04-00006, District Court of Guam, February 12, 2004.

---

[2] *Santos* Complaint

COMPLAINT - 7
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131• FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

4.32    Santos sought to certify a class of "all Guam taxpayers who were and are entitled to be paid . . . [EICs]," presumably for tax years 1998–2003, irrespective of each taxpayer's compliance with administrative income tax filing procedures.

4.33    Santos sought actual refund of the EIC or in the alternative a writ compelling the Government to implement the "EIC" and to pay EICs due for those tax years.[3]

4.34    Approximately five months after the Santos action was filed, the Court entered a "Stipulated Order Granting Preliminary Approval of Class Action Settlement."

4.35    The settlement class was expanded to include: "all persons who (a) filed Guam tax returns and (b) were and are entitled to be paid . . . [EICs] for any or all of the following tax years: 1996, and 1998 . . . [through] 2003."

4.36    Concerned that the *Santos* action was procedurally and substantively flawed, Plaintiff Naputi sought to intervene. Her petition to intervene was denied August 5, 2004. *See* August 5, 2004 Order in *Santos v. Camacho, et al.*, No. 04-00006, District Court of Guam. In the Order denying the Petition, the Court noted the proper procedure for Plaintiff Naputi, and others who sought to intervene, was to participate in the *Santos* action as objectors or to file a parallel action of their own. *Id.* at 5.

4.37    This Complaint in the Nature of a Class Action Petition represents Plaintiffs' efforts (1) to secure specific relief for themselves and other Guam tax payers not addressed in the *Santos* action; and (2) where the claims overlap with those in the *Santos* action, to bring those claims in a procedural posture more likely to produce some or all of the relief, sought for themselves and for the class they seek to represent.

## V. CLASS ACTION ALLEGATIONS

### A. The Proposed Classes

5.1    Plaintiffs seek to certify three separate but related classes: a "Claims Made" Class, a "Refund" Class, and a "Future Refund" Class.

---

[3] *Id.*

COMPLAINT - 8
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-4    Filed 06/22/2007    Page 33 of 46

I. The Claims Made Class

5.2    The Claims Made Class seeks to ensure all its class members have been or are afforded the opportunity to file a timely and allowable administrative claim for any EIC to which they were entitled in tax years 1995, 1996, and 1999-2003.[4]

5.3    The Claims Made Class is defined as:

> All Guam income tax payers who, for any or all of tax years, 1995, 1996 and 1999–2003 were: (1) eligible to claim an EIC pursuant to the Organic Act and/or the Guam EIC; (2) filed a sufficient tax return; and (3) have not received a refund or an overpayment associated with their EIC claim, nor has such overpayment been applied to their tax liability.

5.4    The Claims Made Class includes a subclass consisting of Potentially Time Barred Claims. The subclass is defined as: all members of the Claims Made Class who were eligible for an EIC and filed a tax return for tax years 1995, 1996 and 1999.[5]

5.5    The specific relief sought for the Claims Made Class, as a whole, consists of either: (i) declaratory relief stating the tax returns they have already filed constitute timely and allowable claims for refund of the overpayment associated with their EICs, or are sufficient to allow amendment of such claims; or, alternatively, (ii) injunctive relief requiring the Government to provide class members notice of their entitlement to the EIC and a procedure and schedule under which such claims should be made.

5.6    The additional or alternative relief sought for the Potentially Time Barred Subclass includes declaratory relief that the Government is estopped from asserting the applicable statutory limitations period to bar Plaintiffs from filing claims now for refund of

---

[4] Tax years 1997 and 1998 are excluded from this class because, on information and belief the Government of Guam provided an adequate EIC claims mechanism and procedure for those tax years. Should discovery indicate adequate claims procedures were not provided, Plaintiffs preserve their right to amend the Complaint to include tax payers with claims based on their 1997 and 1998 tax returns to the Claims Made Class.

[5] Tax year 2000 is not included because in the potentially Time Barred Claims Class the Santos action tolled the time period for filing an EIC claim as of February 12, 2004. Absent tolling, the limitations period for tax year 2000 would have expired April 15, 2004. If tolling does not apply, tax payers asserting claims for tax year 2000 should be included in the Potentially Time Barred Subclass.

COMPLAINT - 9
4162001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131• FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-4    Filed 06/22/2007    Page 34 of 46

1 │ 1995, 1996, and 1999-2003 EIC overpayments. Such claims may be filed within a reasonable

2 │ time as set by the Court.

3 │ ## II. The Refund Class

4 │ 5.7 The "Refund Class" is defined as:

all Guam income tax payers who, for any or all of tax years 1995-
2003, were: (1) eligible to receive the EIC pursuant to the
Organic Act and/or the Guam EIC, (2) filed a timely and
allowable administrative claim for refund of the overpayment of
their EIC, and (3) have not received a refund of the overpayment
nor has the overpayment been applied to offset their tax liability.
For purposes of this class definition a "timely and allowable
administrative claim" includes claims filed pursuant to any relief
granted any portion of the "Claims Made Class," as well as
claims timely filed pursuant to applicable provisions of the tax
code.

11 │ 5.8 The relief sought for the Refund Class is payment of the refund due based on the

12 │ EIC claims, with interest, plus attorneys' fees and costs.

13 │ ## III. The Future Refund Class

14 │ 5.9 The Future Refund Class includes:

all Guam citizens who, for any or all of tax year 2000 and any
subsequent year in which the EIC remains authorized by law: (1)
were or will be eligible to receive the EIC pursuant to either the
Organic Act and/or the Guam EIC, (2) have not yet filed a tax
return; (3) are still able to file a timely and allowable
administrative claim, pursuant to 26 U.S.C. § 6511, for refund of
an overpayment associated with an EIC to which they are
entitled; and (4) have not received a refund of an overpayment
associated with an EIC, nor has such an overpayment been
applied to offset their tax liability.

21 │ 5.10 The relief sought for the Future Refund Class includes declaratory relief that the

22 │ EIC applies to Guam taxpayers either through the Organic Act or pursuant to the Guam EIC

23 │ and that the Government is obligated to pay, in a time and manner required by law, class

24 │ members' properly made administrative claims for refund of an overpayment associated with

25 │ an EIC to which they are entitled.

26 │

COMPLAINT - 10
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131• FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-4    Filed 06/22/2007    Page 35 of 46

## B. The Requirements of Fed. R. Civ. P. 23 (a)

5.11    All of these classes meet the prerequisites of Fed. R. Civ. P. 23(a) for a class action.

5.12    The classes consist of thousands of Guam's poorest taxpayers making joinder of all members impracticable.

5.13    There are numerous questions of law or fact common to the classes.

5.14    Questions common to all classes include the following:

5.15    Whether pursuant to the Organic Act or the Guam EIC, the Government was and/or is required to refund income tax overpayments and/or offset income tax liabilities in response to tax payers' administratively sufficient claims made for an EIC.

5.16    Whether the Government has, in the manner and time required by law, refunded Plaintiffs' overpayments associated with properly made claims for an EIC.

5.17    Questions common to the claims made class include, among others, all of the following:

5.18    Whether Guam tax payers are entitled to notice now, that they were entitled to claim the EIC on income tax returns for tax years 1995, 1996 and 1999-2003.

5.19    Whether the Government wrongly represented on published tax forms and through other means that the EUIC was unavailable to Guam taxpayers in any or all of tax years 1995, 1996, 1999-2003.

5.20    Whether the Government provided notice and a process for EIC claims sufficient to satisfy the basic requirements of Due Process for tax years 1995, 1996 and 1999-2003.

5.21    Whether the Government has waived any requirement that taxpayers who filed income tax returns for tax years 1995, 1996 and 1999-2003 are required to make a more sufficient claim for an EIC.

5.22    Whether Plaintiffs are entitled to the declaratory relief requested in ¶5.5.

COMPLAINT - 11
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131• FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-4    Filed 06/22/2007    Page 36 of 46

5.23    Whether the Government acted in bad faith in 1996 when it terminated the EIC made applicable to Guam tax payers through the Organic Act.

5.24    Whether the Government acted in bad faith in 1999 and all years subsequent when it refused to pay EIC claims and/or provide notice and a procedure to make EIC claims despite provisions of the Organic Act and the Guam EIC requiring it to do so.

5.25    Whether the EIC claims of the Potentially Time Barred subclass are, in fact, time barred, in light of the Governments conduct directed toward all subclass members.

5.26    Whether the Government's conduct has caused a serious injustice.

5.27    Whether payment of EIC claims will cause the public's interest to suffer undue damage.

5.28    Whether the Government has provided a clear and certain post-deprivation remedy by which Plaintiffs could have claimed their right to a refund of EIC overpayments to which they were entitled

5.29    Whether Plaintiffs who were denied a post-deprivation remedy have no alternative adequate remedy at law, thus entitling them to the injunctive relief requested in ¶ 5.5 and 5.6.

5.30    The claims of the class representatives proposed for each class are typical of the claims of the class members in each class, in that each named Plaintiff was denied access to their EIC despite having filed a sufficient tax return.

5.31    Because their interests are identically aligned, the proposed class representatives will fairly and adequately protect the interest of the Classes.   In addition, the named plaintiffs have engaged counsel with significant experience prosecuting similar class actions.

C. The Requirements of Fed. R. Civ. P. 23(b)

5.32    ~~The Claims Made Class and Future Refund Classes meet all requirements for~~ class certification under Fed R. Civ. P. 23(b)(1) and (b)(2).

COMPLAINT - 12
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131• FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-4    Filed 06/22/2007    Page 37 of 46

1  5.33  The prosecution of separate actions by individual class members will create a

2 risk of inconsistent or incompatible standards as to which EIC claims already made must be

3 paid to the Government; and which claims, if any, will be paid in the future.

4  5.34  The prosecution of any one individual action could, as a practical matter, be

5 dispositive of the interest of members in both classes, thus substantially impairing or impeding

6 their ability to protect their interests.

7  5.35  The Government has acted and refused to act on grounds applicable to all

8 members of both classes, thereby making appropriate declaratory and injunctive relief with

9 respect to the classes as a whole.

10  5.36  The Refund Class also meets the requirements for certification under Fed R.

11 Civ. P. 23(b)(3).

12  5.37  The questions of law and fact common to the Refund Class predominate over

13 any questions affecting only individual class members.

14  5.38  The class action is superior to other available methods for the fair and efficient

15 adjudication of the controversy.

16  5.39  In particular, individual class members' have little incentive and ability to

17 prosecute this action on their own. By definition these individuals do not have extra resources

18 available to prosecute claims against the Government. Further, each individual's damages are

19 relatively small, ranging from a few hundred dollars to no more than $5000 dollars per tax year.

20 Thus, a class action may be the class members' only way to recover their damages or to at least

21 establish their right to make a claim for a refund. Further, concentration of the individual

22 claims in one action will conserve judicial resources and promote consistency in the treatment

23 of each class members' claim.

24

25

26

COMPLAINT - 13
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006  Document 429-4  Filed 06/22/2007  Page 38 of 46

# VI. CLAIMS

**A.** **Claim One – Action for Declaratory Relief Regarding Sufficiency of Certain EIC Administrative Claims Already Made**

6.1    Plaintiffs incorporate by reference all allegations made in the preceding paragraphs as if fully stated herein.

6.2    Plaintiffs assert this claim on behalf of themselves and all members of the Claims Made Class.

6.3    Unless otherwise stated all allegations are for any or all of tax years 1995, 1996 and 1999-2003.

6.4    The Government assessed and collected income tax from Plaintiffs.

6.5    Plaintiffs filed sufficient income tax returns.

6.6    Plaintiffs were eligible for an EIC in one or all of the tax years for which they filed a sufficient return.

6.7    An EIC represents an overpayment of taxes in the amount of the EIC.

6.8    The Government is required to refund properly claimed overpayments or use them to off set tax liabilities pursuant to 26 U.S.C. § 6402(a).

6.9    The Government provided no notice to Plaintiffs they were entitled to the EIC.

6.10    The Government affirmatively misrepresented to Plaintiffs they were not entitled to the EIC.

6.11    The Government provided no procedural mechanism for Plaintiffs to make a specific claim for an overpayment associated with an EIC consistent with the mechanism the Government provided prior to 1995 and in 1997 and 1998.

6.12    To the extent Plaintiffs' income tax returns were claims for EICs, the Government has investigated and acted on Plaintiffs' claim by (1) affirmatively stating it is not required to pay EIC claims; and (2) not refunding in the time and manner required by law, the amount of overpayment associated with the EICs to which Plaintiffs are entitled.

COMPLAINT - 14
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671-472-1131 Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
206.682.5600 Fax 206.682.2992

Case 1:04-cv-00006    Document 129-4    Filed 06/22/2006    Page 8 of 82

6.13  As such, the Government has waived any regulatory requirement that Plaintiffs must file a more specific claim for their EIC other than the income tax returns already filed.

6.14  Plaintiffs are entitled to a declaratory judgment that the income tax returns they have already filed are adequate to exhaust administration remedies as required by 26 U.S.C. § 7422(a), such that Plaintiffs are eligible to bring a tax refund action for all years they were eligible for the EIC.

**B.  Claim Two — Action for Declaratory Relief Regarding Application of 26 U.S.C.§ 6511 to Certain Plaintiffs' Right to Claim an EIC**

6.15  Plaintiffs incorporate by reference all allegations made in the preceding paragraphs as if fully stated herein.

6.16  Plaintiffs assert this claim on behalf of themselves and all members of the Potentially Time Barred Subclass of the Claims Made Class.

6.17  Unless otherwise stated all allegations are for any or all of tax years 1995, 1996 and 1999.

6.18  The Government affirmatively, and non-negligently, represented to Plaintiffs they were not entitled to the EIC through published rulings, oral comments and by printing "Not applicable in Guam" or "Not applicable" and cross hatching or otherwise obscuring that section of the official government tax return form applicable to the EIC.

6.19  The Government provided no procedural mechanism for Plaintiffs to make a claim for an overpayment associated with an EIC consistent with the mechanism the Government provided prior to 1995 and in 1997 and 1998.

6.20  The Government knew Plaintiffs were entitled to the EIC under the Organic Act and/or the Guam EIC, or at the very least, that there was a dispute as to whether Plaintiffs were entitled to the EIC.

6.21  The Government intended Plaintiffs to refrain from making claims for overpayments associated with EICs based on its conduct; and/or, Plaintiffs had a right to

COMPLAINT - 15
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006     Document 429-4     Filed 06/22/2007     Page 48 of 92

1  believe the Government intended them to refrain from making claims for overpayments

2  associated with EICs based on its conduct.

3      6.22    Plaintiffs did not know if they were entitled to the EIC, even though they

4  believed they were eligible for the EIC.

5      6.23    Plaintiffs relied on the Government's conduct to their detriment in that they did

6  not make timely claims for, and have not received a refund of, overpayments associated with

7  the EIC to which they are entitled, nor has such overpayment been applied to their tax liability.

8      6.24    Absent the relief requested in Claim One or in this Claim, Plaintiffs' EIC claims,

9  for a tax refund are time barred pursuant to 26 U.S.C. § 6511.

10     6.25    The Government's conduct has caused a serious injustice in that Guam's poorest

11 taxpayers have been deprived of their right to claim a tax credit specifically developed for

12 them,

13     6.26    The public's interest will not suffer undue damage by allowing Plaintiffs to

14 claim the EIC they were always entitled to.

15     6.27    Plaintiffs are entitled to a declaratory judgment that the Government is estopped

16 from asserting the applicable statutory limitations periods of 26 USC 6511 to bar them from

17 filing a civil action claim for a refund pursuant to 26 USC § 7422.

18 **C.    Claim Three – For Injunctive Declaratory Relief Providing Notice of the
   Entitlement to the EIC and Availability of a Procedure to Make a Claim for**
19 **Refund of an EIC Overpayment**

20     6.28    Plaintiffs incorporate by reference all allegations made in the preceding

21 paragraphs as if fully stated herein.

22     6.29    Plaintiffs assert this claim on behalf of themselves and all members of the

23 Claims Made Class, in addition, and as an alternative, to Claim One.

24     6.30    Unless otherwise stated all allegations are for any or all of tax years 1995, 1996

25 and 1999-2003.

26

COMPLAINT - 16
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-4    Filed 06/22/2007    Page 41 of 46

1    6.31    Plaintiffs are eligible to file a timely and allowable claim for refund of any EIC

2    overpayments, either pursuant to 26 U.S.C. § 6511 or pursuant to relief granted certain

3    Plaintiffs under Claim Two.

4    6.32    The Government, however, in violation of the Due Process Clause of the Fifth

5    Amendment, has provided no clear and certain post-deprivation remedy by which Plaintiffs

6    could or can claim their right to a refund of any EIC overpayments to which they were or are

7    entitled.

8    6.33    Plaintiffs private property interest in their refund is significant.

9    6.34    The risk Plaintiffs will wrongly be permanently deprived of their overpayment

10   through the procedures used by the Government is substantial.

11   6.35    The value of providing additional specific notice for these Plaintiffs is great as

12   they have no other way of knowing they are entitled to claim an EIC refund.

13   6.36    The Government's interest in not providing the notice is small.

14   6.37    Plaintiffs only remedy at law to recover their overpayment is predicated on

15   exhausting post-deprivation remedies and the Government has prevented them from doing so.

16   Thus, Plaintiffs have no adequate remedy at law.

17   6.38    Plaintiffs are entitled to injunctive relief requiring the Government to notify

18   them of their entitlement to make a claim for a refund of any EIC overpayment to which they

19   were or are entitled, and to inform them of the procedure and schedule under which such claims

20   can be made.

21   6.39    Plaintiffs are entitled to Declaratory Relief stating the Government is required to

22   refund to them any overpayment associated with an EIC properly claimed under the relief

23   provided in ¶ 6.40.

24   D.    Claim Four — Claim for Refund of Tax Overpayment Pursuant to 26 U.S.C. § 7422

25   6.40    Plaintiffs incorporate by reference all allegations made in the preceding

26   paragraphs as if fully stated herein.

COMPLAINT - 17
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-4    Filed 06/22/2007    Page 42 of 46

6.41     Plaintiffs assert this claim on behalf of themselves and all members of the Refund Class.

6.42     Unless otherwise stated all allegations are for any or all of tax years 1995-2003.

6.43     Plaintiffs have complied with 26 USC § 7422 by filing sufficient administrative claims for refund of overpayments associated with EICs to which they are entitled.  The administrative claims are both timely and allowable either pursuant to 26 U.S.C. § 6511, or pursuant to the relief granted in Claims 1, 2, or 3.

6.44     The Government is required to refund Plaintiffs' properly claimed overpayment pursuant to 26 U.S.C. § 6402(a).

6.45     The Government has not, in the manner and time required by law, refunded Plaintiffs' overpayments associated with EICs to which they are entitled, or used the overpayments to offset Plaintiffs' tax liability

6.46     Plaintiffs are entitled to payment of their refund, with interest, plus attorneys fees and costs.

**E.    Claim Five — Claim for Declaratory Relief re Future Refunds of Tax Overpayments Associated with the EIC**

6.47     Plaintiffs incorporate by reference all allegations made in the preceding paragraphs as if fully stated herein.

6.48     Plaintiffs assert this claim on behalf of themselves and all members of the Future Refund Class.

6.49     Unless otherwise stated, all allegations are for any or all of tax year 2000 and any subsequent year in which the EIC remains authorized by law.

6.50     The Government has, or will, assess and collect income tax from Plaintiffs.

6.51     Plaintiffs were, or will be, eligible for an EIC in one or all of the applicable tax years.  The EIC entitles, or will entitle, Plaintiffs to a refund of an overpayment or application of the overpayment to offset their tax liability.

COMPLAINT - 18
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006     Document 429-4     Filed 06/22/2007     Page 43 of 46

6.52    Plaintiffs are still able to file timely and allowable administrative claims, pursuant to either 26 U.S.C. § 6511 or the relief granted in response to Claim Three, for refund of the overpayment associated with EICs to which they are, or will be, entitled.

6.53    The Government is required to refund overpayments for which a proper administrative claim is made pursuant to  26 U.S.C. §6402 and 6511.

6.54    Since 1996, the Government has not, on any consistent basis, provided notice of any taxpayer's entitlement to the EIC, provided a procedural mechanism for taxpayers to make a claim for an EIC overpayment consistent with mechanisms provided in the past, or paid timely and allowable claims for refunds of EIC overpayments.  Some administrative claims have been paid, others have not.

6.55    Since June 23, 1989 , the date of first AG's opinion], the Government has represented that Plaintiffs are both entitled to the EIC and that they are not.

6.56    Absent resolution and notice of the status of the EIC in Guam, Plaintiffs cannot modify their conduct related to taxable income to ensure they take advantage of applicable tax laws.  In addition, Plaintiffs are, or will be, forced to incur time and expense associated with filing a potentially futile administrative claim, or risk losing entitlement to their claim altogether.

6.57    As such, Plaintiffs seek declaratory relief that the EIC applies to Guam taxpayers and the Government will be obligated to pay, in the time and manner required by law, Plaintiffs' properly made administrative claims for refund of overpayments associated with EICs to which they are entitled.

## VII.  PRAYER FOR RELIEF

7.0    Wherefore, Plaintiffs on behalf of themselves and the classes they seek to represent,   request the Court enter judgment against Defendant and in favor of Plaintiffs and Class Members, and to award the following relief:

COMPLAINT - 19
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL 671.472.1131 FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL 206.682.5600  FAX 206.682.2992

Case 1:04-cv-00006    Document 429-4    Filed 06/22/2007    Page 44 of 46

1    7.1    Enter an Order certifying the proposed classes and where applicable, subclasses

2    and/or issues;

3    7.2    Declare that the EIC is applicable in Guam such that the Defendant is obligated

4    to refund to Plaintiffs and all members of the Claims Made, Refund and Future Refund Classes,

5    in the time and manner required by law, the overpayments associated with properly claimed

6    EICs.

7    7.3    Declare that the 1995, 1996 and 1999-2003 income tax returns already filed by

8    Plaintiffs and all members of the Claims Made Class adequately exhaust administrative

9    remedies as required by 26 U.S.C. § 7422(a) such that Plaintiffs and class members are eligible

10   to bring a tax refund action to recover overpayments associated with their EIC, for all years

11   they were eligible for the EIC.

12   7.4    Declare that the 1995, 1996 and 1999-2003 income tax returns already filed by

13   Plaintiffs and the members of the Claims Made Class are sufficient to allow amendment of an

14   EIC claim as of the date of judgment and until a date certain as set by the Court;

15   7.5    Declare that Plaintiffs and all members of the Potentially Time Barred Subclass

16   of the Claims Made Class are not time barred from asserting claims for refunds of the

17   overpayment associated with EICs for which they were eligible in tax years 1995, 1996 and

18   1999.

19   7.6    Enter an order requiring Defendant to notify Plaintiffs and all members of the

20   Claims Made Class of their entitlement to make a claim for any EIC overpayment to which

21   they were or are entitled and establishing a procedure and schedule for such claims to be made.

22   7.7    Award Plaintiffs and all members of the Refund Class income tax refunds in

23   amounts to be proven at trial;

24   7.8    Award pre- and post-judgment interest as allowed by law;

25   7.9    Award attorneys' fees and costs of suit as allowed by law; and

26   7.10   Award any such other relief the Court deems just and equitable.

COMPLAINT - 20
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL 671.472.1131 FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL 206.682.5600 FAX 206.682.2992

Case 1:04-cv-00006    Document 429-4    Filed 06/22/2007    Page 45 of 46

1

2    DATED this __3rd__ day of December, 2004.

3

4                             VAN DE VELD SHIMIZU CANTO & FISHER

5                             TOUSLEY BRAINS STEPHENS PLLC

6                         By:

7                            Thomas J. Fisher, Esq.
                            **Attorneys for Plaintiffs**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT - 21
4162/001/173540.1

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive
Hagatna, Guam 96910
TEL 671.472.1131 - FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL 206.682.5600 - FAX 206.682.2992

Case 1:04-cv-00006    Document 429-4    Filed 06/22/2007    Page 46 of 46

# EXHIBIT G

DISTRICT COURT OF GUAM
TERRITORY OF GUAM

| | |
|---|---|
| MARY GRACE SIMPAO, CHRISTINA NAPUTI on behalf of themselves and a class of others similarly situated<br><br>    Plaintiffs,<br><br>    v.<br><br>GOVERNMENT OF GUAM<br><br>    Defendant. | CV 04-00049<br><br>**ORDER** |

On March 17, 2005, the Court heard Defendant's Motion to Dismiss the First Amended Complaint ("FAC"). Having considered all papers and argument submitted in the matter, the Court now rules as follows:

1

# I. INTRODUCTION

Plaintiffs Mary Grace Simpoa and Christina Naputi, on behalf of themselves and a class of others similarly situated, (collectively "Plaintiffs") bring this action against the Government of Guam for inconsistency in acknowledging the applicability of the Earned Income Credit ("EIC").

Primarily before the Court is Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim upon which relief can be granted pursuant to the Federal Rules of Civil Procedure 12(b)(1) and (6).[1]

# II. BACKGROUND

The Organic Act imposes several Internal Revenue Codes on Guam residents. See 48 U.S.C. § 1421 et seq. Within those tax codes is the EIC, which was enacted in 1975. The EIC provides some tax benefits to low-income workers in the hopes that these benefits will make working more attractive that welfare.

---

[1]In conjunction with their Motion to Dismiss, Defendant filed several other motions including: 1)Defendant's Objection to Plaintiff's Stated Intention to File a Second Opposition to Defendant's Motion to Dismiss FAC and Motion to Strike if Second Opposition is Filed; 2)Motion to Shorten Time for Hearing or Consideration of Defendant's Objection; and 3)Motion to Strike Plaintiffs' March 8, 2004 Opposition for Using Less Than a Standard 12 Point Font Type and Failure to Meet Court's Limitation of 20 pages.

2

Prior to 1995, Defendant allowed Plaintiffs to claim the EIC, and subsequently processed thousands of claims. During the 1995-1996 tax years, Defendant represented on it tax forms that the EIC was "inapplicable in Guam." In thos years, Defendant did not allow Plaintiffs to claim credits and did not issue refunds associated with EIC. During the 1997-1998 tax years, Defendant once again allowed Plaintiff to claim EIC, however they paid only a portion of the 1997 claims and only one 1998 claim.[2] During the 1999-2003 tax years, Defendant again represented that the EIC was inapplicable to Guam residents. Plaintiffs allege there were no other mechanisms for applying for an EIC during those years.

On December 3, 2004, Plaintiffs filed a complaint against Defendant seeking declaratory judgments regarding the applicability of the EIC to Guam residents and refunds from tax overpayments. On February 1, 2005, Plaintiffs filed the FAC with six specific claims: 1) Declaratory relief regarding sufficiency of Certain EIC Administrative Claims already made; 2)Declaratory relief regarding the application of 26 U.S.C. § 6511 to certain Plaintiffs' Right to Claim an EIC; 3) Injunctive Declaratory relief providing notice of the entitlement to the EIC and availability of a

---

[2]The 1998 claim was not paid out until 2004.

3

procedure to make a refund claim; 4) Refund of tax
overpayment; 5) Declaratory relief regarding future refunds
of EIC overpayments; and 6) Injunctive relief requiring
Defendant to establish an EIC reserve and trust fund.

In the instant matter, Defendant contends Plaintiffs'
FAC should be dismissed for lack of subject matter
jurisdiction and failure to state a claim.  Defendant's
contention is based on several distinct arguments including
state immunity, failure to exhaust administrative remedies,
statute of limitations, applicability of the Declaratory
Judgment and Anti-injunctive Acts, and improper proposed
classes.  This matter was originally set for March 11, 2005,
but the Court partially granted the parties' stipulation for
continuance, which moved the hearing to March 17, 2005.

## III.  DISCUSSION

### A.  Subject Matter Jurisdiction

Defendant first contends Plaintiffs' FAC should be
dismissed for lack of subject matter jurisdiction.

### 1. Legal Standard: Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction.
Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374, 98
S. Ct. 2396, 2403 (1978).  A federal court has jurisdiction
over actions that either arise under federal law, or where

4

the amount in controversy exceeds $75,000 and is between (1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and citizens or subjects of a foreign state that are additional parties; or (4) a foreign state as plaintiff and citizens of a State or different States. See 28 U.S.C. §§ 1331, 1332(a).

The plaintiff bears the burden of establishing subject matter jurisdiction, and the court presumes lack of jurisdiction until the plaintiff proves otherwise. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994); Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

Pursuant to Fed. R. Civ. Proc. 12(b)(1), subject matter jurisdiction may be challenged at any time. Albrecht v. Lund, 845 F.2d 193, 194 (9th Cir. 1988). If the court concludes that it lacks jurisdiction over the subject matter of the complaint, it must dismiss the action. See Fed. R. Civ. Proc. 12(h)(3).

## 2. Analysis: Subject Matter Jurisdiction

Plaintiffs have pled sufficient facts to give the Court jurisdiction under 48 U.S.C. § 1424 and 48 U.S.C. § 1421i(h) which states, "the District Court of Guam shall have

5

exclusive original jurisdiction over all judicial proceedings in Guam...with respect to the Guam Territorial income tax." 48 U.S.C. § 1421i(h). This case pertains directly to the income tax filings of Guam residents. Thus as a general matter, this case presents a federal question over which the Court has subject matter jurisdiction.

Defendant also alleges a lack of subject matter jurisdiction in three specific areas. Defendant argues the Court lacks jurisdiction over Plaintiffs' first through fifth claims because: 1) Defendant has sovereign immunity; 2) Plaintiffs failed to exhaust administrative remedies; and, 3) should the Court find that subject matter jurisdiction does not exist with respect to Plaintiffs' first through fifth claims, the Court cannot exercise supplemental jurisdiction over the sixth claim.

### a. Sovereign Immunity

Defendant first contends the Court lacks subject matter jurisdiction because the Defendant has sovereign immunity. Indeed, in Crain v. Gov. of Guam, the Ninth Circuit held that Defendant had sovereign immunity and could not be sued without permission. 195 F.2d 414 (9th Cir. 1952). The Ninth Circuit later found, however, that 28 U.S.C. § 1421i(h), which gives the Court jurisdiction over the Guam Territorial Income Tax ("GTIT"), is effectively a waiver of

6

immichunity, and thereby grants the Court jurisdiction over
Defendant. See Forbes v. Maddox, 339 F.2d 387 (9th Cir.
1964).

Accordingly, the Court can exercise jurisdiction, as
Defendant cannot claim sovereign immunity.

### b. Administrative Remedies

Defendant next contends Plaintiffs' first through fifth
claims should be dismissed for failure to exhaust
administrative remedies.[3]

The tax code states, "no suit or proceeding shall be
maintained in any court for the recovery of any ... [refund]
... until a claim for refund or credit has been duly filed."
26 U.S.C. § 7422(a).

Plaintiffs argue the mere filing of a tax return,
without any specific application for the EIC, constitutes a
claim. This argument is unpersuasive as it effectively
places the burden on Defendant to determine whether someone
is eligible for a refund or credit. See United States v.
Felt & Tarrant Mfg. Co., 283 U.S. 269 (1931).

---

[3]Because Plaintiffs did file EIC requests in 1997 and 1998,
Defendant's argument does not relate to those years.

7

1      Nevertheless, because Defendant affirmatively prevented
2  Plaintiffs from filing EIC claims by blocking out the
3  relevant section on tax returns with the words "inapplicabl[e]
4  in Guam." Any attempt to claim and EIC credit would have
5  been futile. Thus, Defendant's argument is unpersuasive in
6  that there were no additional administrative remedies
7  available, and further exhaustion would have been futile.[4]
8
9          c. **Monetary Relief**
10     Defendant next contends Plaintiffs' fourth claim,
11  refund of tax overpayment, should be dismissed for lack of
12  jurisdiction because the Court cannot grant monetary relief
13  under 26 U.S.C. § 7422(a), unless Plaintiffs first exhaust
14  administrative remedies.
15
16     Again, the tax code states, "no suit or proceeding
17  shall be maintained in any court for the recovery of any ...
18  [refund] ... until a claim for refund or credit has been
19  duly filed." 26 U.S.C. § 7422(a). In their FAC, Plaintiffs
20  allege they did file "sufficient administrative claims for
21
22  _____
23     [4]Curiously, in the declaration of Thomas J. Fisher, Plaintiffs
   submitted Guam's EIC application form for the 1995-1996 and 1999-2004
   tax years. Although it is unclear how these forms support Plaintiffs'
24  arguments as they suggest Plaintiffs should have filled them out, the
   alleged facts taken in light most favorable to the Plaintiffs suggest
25  that Defendant effectively prevented any exhaustion of administrative
   remedies.
26

8

refund of overpayments associated with EIC's to which they are entitled." Complaint at ¶ 6.43. Thus, Plaintiffs allege sufficient facts to support an exhaustion of administrative remedies. Because Plaintiffs pled that a refund claim was filed and Defendant has yet to pay, Plaintiffs' suit is proper under 26 U.S.C. § 7422(a), and the Court may grant monetary relief if deemed appropriate.

### d. Supplemental Jurisdiction

Defendant next contends that Plaintiffs' Sixth Claim, injunctive relief requiring the Defendant to comply with provisions of 11 G.C.A. §§ 50101 and 51101 in establishing an EIC reserve fund and trust fund, should be dismissed for lack of subject matter jurisdiction. Because the Court has jurisdiction of the other claims under 48 U.S.C. §§ 1421i(h) and 1424, Defendant's argument fails in that the Court can exercise supplemental jurisdiction over Plaintiff's Sixth Claim under 28 U.S.C § 1367(a).

## B. Failure to State a Claim

Defendant also contends Plantiffs' first through sixth claims in their FAC should be dismissed for failure to state a claim upon which the Court can grant relief.

### 1. Legal Standard: Failure to State a Claim

9

In a Rule 12(b)(6) motion to dismiss, the Court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party. <u>Klarfeld v. United States</u>, 944 F.2d 583, 585 (9th Cir. 1991). A dismissal can be based on the lack of cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988). A party need not, however, state the legal basis for his claim, only the facts underlying it. <u>McCalden v. California Library Ass'n</u>, 955 F.2d 1214, 1223 (9th Cir. 1990).

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Klarfeld</u>, 944 F.2d at 585; <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987) <u>see also</u>, <u>NL Industries, Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986). The court need not, however, accept conclusory allegations or unreasonable inferences as true. <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).

## 2. Analysis: Failure to State a Claim

Specifically, Defendant argues Plaintiffs' FAC fails to

10

state a claim because: 1) claims are barred by the applicable statute of limitations; 2) declaratory judgments are not available remedies; 3) injunctive relief is not an available remedy; and, 4) Plaintiffs' proposed classes do not meet the requirements of Fed. R. Civ. Pro. 23.

### a. Statute of Limitations

Defendant first contends Plaintiffs' first through fifth claims are barred by the statute of limitations. This contention is primarily based on Defendant's argument that Plaintiffs' claims should be reclassified as a 42 U.S.C. § 1983 Civil Rights action, and therefore be subjected to a two-year limitations period.

Plaintiffs, however, never classified their claims as civil rights violations and have not sought damages for denial of fundamental Constitutional rights. Although they allege that they have been deprived of their rights and privileges granted by law, see 42 U.S.C. § 1983, Defendant may not reclassify Plaintiffs' claims to avoid liability. Accordingly, a two-year statute of limitations period is not appropriate.

Defendant in the alternative, contends that all EIC

11

refund claims prior to 2001 should be barred by the limitations period set forth in 26 U.S.C. § 6511(a). The Internal Revenue Code states that all refund claims "shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." 26 U.S.C. § 6511(a). Furthermore, the Court also notes the Supreme Court's elimination of the possibility of equitable tolling by declaring, "[s]ection 6511's detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions...indicate to us that Congress did not intend courts to read other unmentioned, open-ended, "equitable" exceptions into the statute." United States v. Brockamp, 519 U.S. 347, 352 (1997). Thus, any argument by Plaintiffs that the Statute of Limitations should be tolled due to any action by Defendant cannot survive.

Plaintiffs argue that the mere filing of their tax returns constitutes an EIC claim. Plaintiffs argue that their general filing of a tax return constitutes "a claim" because the tax return contained the relevant information for EIC eligibility. Again, the Court finds this argument unpersuasive because although the Defendant determines how much of an EIC refund is due, it is not their burden to

12

determine whether an individual qualifies for a tax credit. Taken to the extreme, Plaintiffs' argument suggests that taxpayers should simply send any relevant paperwork to the IRS and require the government to play the role of H&R Bloc in determining how best to calculate and individual's tax liability.

Regardless of this argument by Plaintiffs, their FAC alleges that sufficient administrative refund claims associated with EICs were timely filed pursuant to 26 U.S.C. § 6511(a). See Complaint at ¶ 6.43. Although specific facts regarding these administrative claims are lacking in the Complaint, Plaintiffs' conclusory statement is sufficient to survive a motion to dismiss, as the Court must interpret the facts in the light most favorable to Plaintiffs. Therefore, the Court can concludes that the statute of limitations does not bar Plaintiffs' claims.

## b. The Declaratory Judgment Act

Defendant next contends Plaintiffs' FAC should be dismissed for failure to state a claim because declaratory judgments are not available in cases involving federal taxes or the Guam Territorial Income Tax. The Declaratory Judgment Act states,

13

"[i]n a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking declaration, whether or not further relief is or could be sought."

28 U.S.C. § 2201(a). Section 7428 applies to the classification of organizations, which is not at issue in this case. See 28 U.S.C. § 7428.

Defendant first argues declaratory judgment is not available because it is not specifically mentioned in the GTIT as a remedy. The GTIT, however, does not specifically mention available remedies of any kind. See 28 U.S.C. § 2201. Although there are some limitations on enforcing the GTIT, there is no indication these limitations extend beyond the executive branch. See 48 U.S.C. § 1421i(d)(2). Because Plaintiffs' claim falls within the jurisdiction of the Court, declaratory judgment is available. See 28 U.S.C. § 2201(a).

Defendant also argues Plaintiffs cannot receive declaratory judgment because the GTIT is a federal tax, to which the Declaratory Judgement Act does not apply. See 28 U.S.C. § 2201(a). The Ninth Circuit, however, has repeatedly held that the GTIT is a territorial tax, and not a federal tax. See Bank of America v. Chaco, 539 F.2d 1226,

14

1227 (9<sup>th</sup> Cir. 1976); <u>Forbes v. Maddox</u>, 339 F.2d 387, 389
(9<sup>th</sup> Cir. 1964); <u>Phelan v. Taitano</u>, 233 F.2d 117, 118 (9<sup>th</sup>
Cir. 1956).  Thus, the Declaratory Judgment Act is
applicable to Plaintiffs' claim.[5]


## c. The Anti-Injunctive Act

Defendant next contends Plaintiffs' third claim for
Injunctive Declaratory Relief should be dismissed for
failure to state a claim because the Anti-Injunctive Act
bars Plaintiffs' claim.


The Anti-Injunctive acts provides, "no suit for the
purpose of restraining the assessment or collection of any
tax shall be maintained in any court by any person."  26
U.S.C. § 7421(a).  Plaintiffs persuasively argue that their
suit is not brought for the purpose of restraining the
assessment of collection of any tax, but for the enforcement
of the EIC.  Because assessment and collection of taxes has
already taken place, Plaintiffs' suit does not restrain or
interfere in those activities.  <u>See</u> <u>Sorenson v. Sec'y of the</u>
<u>Treasury</u>, 557 F. Supp. 729 (D. Wash. 1982), *aff'd*, 752 F.2d

---

[5]Although Defendant is now contesting the applicability of the
Declaratory Judgment Act, the Court notes that it relied on the same
act to seek relief from the Supreme Court of Guam when Guam's
legislative branch attempted to force the executive branch to
implement the EIC.  <u>See</u> <u>In re Request of I Mina' Bente Sing'ko Na</u>
<u>Lihelaturan Guahna</u>, 2001 Guam 3 (2001).

15

1433 (9th Cir. 1985), *aff'd*, 475 U.S. 851 (1986).
Accordingly, the Anti-Injunctive Act does not bar
Plaintiffs' claim.

### d. Class Certification

Next, Defendant contends Plaintiffs' claims should be
dismissed for failure to state a claim because the proposed
classes do not meet the requirements of commonality and
typicality as required by Fed. R. Civ. Pro. 23(a)(3) and
(b)(3). This argument goes to whether certification of the
proposed classes is proper. As Plaintiffs have not yet
brought a motion to certify the classes, Defendant's
argument is premature.

## IV. CONCLUSION

As a preliminary matter, Defendant has filed the
following additional motions: (1) Objection to Plaintiffs'
stated intention to file a second opposition and Motion to
strike if second opposition is filed; (2) Motion to shorten
time for hearing or consideration of Defendant's Objection
to Plaintiffs' stated intention; (3) Motion to strike
Plaintiffs' March 8, 2005 Opposition for using less than
twelve point font and exceeding page limit; and (4) Motion
to shorten time for hearing or consideration of Defendant's

16

1 motion to strike Plaintiffs' March 8, 2005 Opposition. The
2 Court notes any formatting and procedural deficiencies, but
3 **DENIES** all such motions and accordingly will rule on the
4 substantive merits of the case.
5
6
7 The Court has valid subject matter jurisdiction over
8 Plaintiffs' first through fifth claims under 48 U.S.C §§
9 1421i(h) and 1424. Defendant cannot validly claim sovereign
10 immunity and Plaintiffs have exhausted any administrative
11 remedies which were not deliberately impeded by Defendant.
12 Additionally, because the Court has valid subject matter
13 jurisdiction over the first through fifth claims, it can
14 validly exercise supplemental jurisdiction over Plaintiffs'
15 sixth claim.
16
17 As to Defendant's argument that Plaintiffs' first
18 through third and fifth claims should be dismissed for
19 failure to state a claim upon which relief can be granted,
20 the Court first finds that the statute of limitation does
21 not bar any of Plaintiffs' claims. Second, the Declaratory
22 Judgment and Anti-Injunctive Acts do not bar Plaintiffs'
23 claims and do not prevent the Court from granting
24 declaratory judgments and injunctions in Plaintiffs' case.
25 Third improper class definition does not prevent Plaintiffs'
26 case from proceeding at this stage, and Defendant is

17

1  premature in contesting possible certification.

2  Accordingly, Defendant's Motion to Dismiss is **DENIED** in its

3  entirety.

4  **IT IS SO ORDERED**.

RONALD S.W. LEW
United States District Judge

DATED: March 17, 2005

Notice is hereby given that this document was
entered on the docket on **MAR 1 8 2005**.
No separate notice of entry on the docket will
be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam
By: /s/ Shirlene A. Ishizu   MAR 1 8 2005
Deputy Clerk         Date

18

# EXHIBIT H

**FILED**

DISTRICT COURT OF GUAM

JUN 15 2005

MARY L.M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

MARY GRACE SIMPAO, CHRISTINA
NAPUTI and JANICE CRUZ, on behalf of
themselves and a class of others similarly
situated,

Plaintiffs,

vs.

GOVERNMENT OF GUAM,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Case No. 04-00049

ORDER

This matter is before the Court on the Plaintiffs' Partial Summary Judgment motion. *See*
Docket No. 59. After hearing argument from counsel and reviewing the parties' submissions, as
well as relevant caselaw and authority, the Court hereby memorializes the bases for its rulings
herein.

**BACKGROUND**

In the tax years prior to 1995, Guam taxpayers claimed the Earned Income Tax Credit
("EIC") and the Government of Guam paid it.[1] However, in the years 1995 and 1996, the
Government of Guam stopped paying the EIC. In 1996 the Department of Revenue and Taxation

---

[1]The EIC also referred to as the EITC was first enacted by the United States Congress in
1975 and codified as Section 43 of the U.S. Internal Revenue Code of 1954. *See* U.S. Public
Law 94-12, § 204. The EIC is a refundable Federal income tax credit for low-income working
individuals and families. It allows an eligible individual to claim a tax credit against the amount
of income tax liability, if any, on his or her annual income tax return.

("DRT") issued a ruling ("Revenue Ruling No. 96-001") regarding whether the EIC applied in Guam under the Guam Territorial Income Tax ("GTIT"). *See* Canto Decl., at Exhibit C, attached thereto. It concluded that it did not. The Attorney General of Guam issued his own opinion on the matter and agreed with the DRT's ruling. *Id.*, Exhibit B ("Attorney General of Guam Memorandum Opinion DRT/DOA 96-001 ('1996 AG Opinion')), attached thereto.

In light of the DRT's ruling and Attorney General's opinion, the Government of Guam published that EIC was inapplicable in Guam on its tax return forms for the years 1995 and 1996 and 1999 through 2003.[2] *See* Answer at ¶ 3. For example, the 1999 1040A tax form contained the language "**Not Applicable**" where Earned Income Credit was listed. *See* Canto Decl., Exhibit L, attached thereto.[3] For the years 1997 and 1998, such prohibitory language was not on the Government of Guam's tax forms. *See Id.*, Exhibit E, attached thereto.

For tax years 1995 and 1996, the Government of Guam did not pay refunds associated with EICs. *See* Answer at ¶ 18. In the years 1997 and 1998, qualified Guam taxpayers could claim EIC on their tax returns. However, only some of the EIC claims were paid for the tax year 1997 and with the exception of one individual taxpayer, no EICs were paid for the tax year 1998. *Id.* at ¶s 7, 21 and 23. No EICs were paid for the tax years of 1999 through 2003.

On January 12, 2005, the Governor of Guam issued an Executive Order indicating the Government would establish a procedure whereby EIC claims would become a part of a qualified taxpayer's tax return. *See* Canto Decl., Exhibit F, attached thereto. Shortly after the Governor issued this order, the DRT published forms with which to make claims for the relevant tax years of 1995 though 2004. *Id.*, at Exhibit G, attached thereto.

The plaintiffs have collectively filed individual income tax returns with the Government of Guam during the tax years 1995 through 2003. *See* Canto Decl., at Exhibit L, attached thereto. None of the plaintiffs received an EIC offsetting the taxes paid during those years. Additionally,

---

[2] Guam issues it own 1040 forms.

[3] The plaintiffs in some of the years in question actually used the federal form 1040 which did not black out the EIC portion.

2

1    none of the plaintiffs filed an administrative claim for a refund of overpaid taxes. The plaintiffs,

2    Mary Grace Simpoa, Christiana Naputi and Janice Cruz,[4] on behalf of themselves and a class of

3    other similarly situated, ("plaintiffs") brought this action against the Government of Guam

4    seeking declaratory relief regarding the applicability of the EIC to Guam taxpayers and refunds

5    from tax overpayments.

6                                    **DISCUSSION**

7         The plaintiffs now move for partial summary judgment and seek the following relief: (1)

8    A declaration that, under the GTIT, the EIC applies to Guam and requires refunds of properly

9    claimed EIC claims; (2) A declaration that, by filing income tax returns that contain no claim for

10   the EIC, the plaintiffs have nonetheless exhausted their administrative remedies as required by

11   the GTIT as a condition precedent to bringing suit; (3) A declaration and injunctive relief

12   requiring the Government of Guam to provide notice to plaintiffs of their right to file EIC claims

13   and creating procedures for filing such claims under the GTIT, or alternatively, a declaration that

14   the Government of Guam must refund EIC claims to plaintiffs upon filing proper amended tax

15   returns containing an EIC claim under the GTIT; and (4) A declaration and injunctive relief that

16   the Government of Guam must enforce certain local Guam laws concerning amounts that are

17   alleged to be required to be set aside to pay the EIC.

18        Summary judgment is appropriate when the evidence, read in the light most favorable to

19   the nonmoving party, demonstrates that there is no genuine issue as to any material fact, and the

20   moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party

21   opposing summary judgment cannot rest on conclusory allegations, but must set forth specific

22   facts showing that there is a genuine issue for trial. *Leer v. Murphy*, 844 F.2d 628, 631 (9th Cir.

23   1988). Moreover, to defeat a summary judgment motion, the nonmoving party must come

24   forward with evidence sufficient to establish the existence of any disputed element essential to

25   that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v.*

26   ────────────────────

27        [4]On April 14, 2005, when the summary judgment motion was filed, Janice Cruz, was not
     a named plaintiff. However, on April 18, 2005, plaintiffs filed a Second Amended Complaint
28   wherein, plaintiff Cruz was added.

                                         3

1  *Catrett,* 477 U.S. 317, 322, 102 S.Ct. 2548 (1986).

2       Before addressing the merits of the motion, the defendant makes a number of objections.
3  The defendant first contends that the plaintiffs' motion is premature. The motion is based on the
4  Second Amended Complaint. However, the motion was filed on April 14, 2005 and the Second
5  Amended Complaint was filed on April 18, 2005, four days after the motion. The defendant
6  claims that in filing the motion, the plaintiffs misrepresented that the Second Amended
7  Complaint contained no new facts, "apart from the addition of the plaintiff. All of the
8  defendant's answers therefore to the Second Amended Complaint are required to be identical to
9  its answers to the First Amended Complaint, save for those referring to the newly added Plaintiff
10 Janice Cruz." *See* Motion, p.2. The defendant claims that this is not true. This Court agrees. In
11 comparing the First Amended Complaint with the Second Amended Complaint, the Court notes
12 that there are changes in the Second Amended Complaint that pertain to the original plaintiffs,
13 Ms. Simpao and Ms. Naputi.[5] Notwithstanding the changes to the Second Amended Complaint,
14 the substance of the complaint remains the same. Moreover, the changes have no bearing on the
15 relief sought in the motion requiring this Court to hold the motion in abeyance.

16      The defendant also argues that the Declaratory Judgment Act and Anti-Injunctive Relief
17 Act prohibit the relief sought. The Declaratory Judgment Act states that:

18            [i]n a case of actual controversy within its jurisdiction, except with
             respect to Federal taxes other than actions brought under section
19            7428 of the Internal Revenue Code of 1986 . . . any court of the
             United States . . . may declare the rights and other legal relations of
20            any interested party seeking declaration, whether or not further
             relief is or could be sought.
21
22 28 U.S.C. § 2201(a).
23      The defendant argues that the Declaratory Judgment Act prohibits declaratory relief with
24 respect to *federal taxes*. (Emphasis added.) However, in this instance, the plaintiffs argue that
25 GTIT is not a federal tax so therefore the Declaratory Judgment Act does not bar the relief

26 ─────────────────────

27      [5]The plaintiffs are admonished that they are to exercise care in making representations to
   the Court and are cautioned that any further misrepresentations may result in the imposition of
28 sanctions and/or other action deemed appropriate.

4

1 sought. This Court notes that this issue was discussed and ruled upon in the Court's prior Order

2 concerning the defendant's motion to dismiss.[6] Honorable Ronald S.W. Lew agreed with the

3 plaintiffs and found that the Declaratory Judgment Act did apply. Likewise, the Court addressed

4 the applicability of the Anti-Injunction Act in its prior Order. The Anti-Injunction Act generally

5 prohibits suits "for the purpose of restraining the assessment or collection of any tax." 26

6 U.S.C. § 7421(a). Judge Lew held that the Anti-Injunction Act did not bar the plaintiffs' claims

7 because the suit was not brought for the purpose of restraining the assessment or collection of

8 taxes, but was instead brought for the applicability and enforcement of the EIC. This Court finds

9 Judge Lew's rulings to be the law of the case and will not otherwise disturb them. *See United*

10 *States v. Lummi Indian Tribe,* 235 F.3d 443, 452 (9th Cir.2000) ("Under the law of the case

11 doctrine, 'a court is generally precluded from reconsidering an issue previously decided by the

12 same court, or a higher court in the identical case.'").

13      Turning now to the real issue before the Court, does the EIC apply to Guam and if so,

14 what actions must the Government of Guam take in order to administer it. At the outset of its

15 discussion, the Court notes that this issue has been unsettled for years.

16      Apparently, the issue was first raised in 1989. The Attorney General concluded in

17 Memorandum Opinion No. DOA 89-0750 to the Director of Administration ("DOA"), that Guam

18 was obligated to pay the EIC in excess of the tax owing. *See* Canto Decl., at Exhibit A, attached

19 thereto. The Attorney General stated that:

20          Guam currently uses a mirror image of the Internal Revenue Codes
         as its basis for collecting income taxes. Some time ago, the
21          Territory received the permission of Congress to enact its own tax
         code in the 1986 Tax Reform Act.[7] By Executive Order, we have
22          established the Guam Tax Reform Commission to determine and
         recommend how we will delink from IRC. The Earned Income
23          Credit (EIC) and its applicability to Guam is one of the issues
         currently before the Commission. We have been informed that
24          Guam had previously received an annual reimbursement from the

25 

26      [6]*See* Order, Docket No. 53.

27      [7]In 1986, Congress authorized Guam to "de-link" from the I.R.C. and pass its own tax
laws that would go into effect "upon an exchange of notes" by the governments of Guam and the
28 United States. Tax Reform Act of 1986, §§ 1271, 1277(b), Pub.L. No. 99-514, 100 Stat.2085.

5

federal government amounting to several million dollars, but that the practice was halted during the administration of President Carter.

It appears that because we have the authority to delink from IRC, and yet choose not to do so (if only by our inaction), that we are in a position of being responsible for any shortfall resulting from following federal tax policies which are entirely discretionary upon us. We might be able to attempt to seek reimbursement for the estimated or actual shortfall caused by Earned Income Credit. However, the response of Congress is likely to be that we merely have to rewrite our local tax code to remove this burden.

A few years later, on or about January 4, 1996, the Attorney General revoked its earlier Memorandum Opinion DOA 89-0750 and adopted the DRT's Revenue Ruling 96-001. *See* Canto Decl., at Exhibit B, attached thereto. The Attorney General decided that: (1) EIC was not applicable in Guam and should not be administered by DRT, and (2) DRT should not certify to the DOA for the payment of any amounts owing as refundable EIC. *Id.*

In response to the change in tax policy the Legislature enacted its own program (Guam Earned Income Program) to ensure that Guam's taxpayers would receive the EIC. *See* 11 Guam Code Ann. § 4108. The program mirrored the federal program under 26 U.S.C. § 32. However, the program was never implemented and in 2000, the Legislature filed a declaratory judgment action with Guam's Supreme Court asking for its opinion as to whether Guam's taxpayers were entitled to the EIC, pursuant to Subtitle A of the IRC and applied to Guam by the operation of the Organic Act, 48 U.S.C. § 1421 et seq. *See In re Request of I Mina 'Bente Sing'Kona Liheslaturan Guahan Relative to the Application of the Earned Income Tax Credit Program to Guam Taxpayers ("The EIC question"),* 2001 Guam 3, 2001 WL 113985 (Sup. Ct. Guam 2001). After providing a thorough description of the history of the EIC, the Guam Supreme Court held that the EIC must be applied in mirrored fashion to Guam. This Court agrees.

Guam's tax code is based on the Internal Revenue Code. It is made applicable to Guam by the Organic Act and by the provisions of the Code itself. Organic Act §1421i(k); Internal Revenue Code § 7651. In effect, the Congress established a mirror system of taxation.

The Organic Act of Guam states:

(a) Applicability of Federal laws; separate tax

6

> The income tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in Guam: *Provided,* That notwithstanding any other provision of law, the Legislature of Guam may levy a separate tax on all taxpayers in an amount not to exceed 10 per centum of their annual income tax obligation to the Government of Guam.
>
> (b) Guam Territorial income tax
>
> The income-tax laws in force in Guam pursuant to subsection (a) of this section shall be deemed to impose separate Territorial income tax, payable to the government of Guam, which tax is designated the "Guam Territorial income tax."

48 U.S.C. § 1421i(a) and (b).

Title 48 U.S.C. § 1421i(d) adds:

> (1) The income tax laws in force in Guam pursuant to subsection (a) of this section include but are not limited to the following provisions of the Internal Revenue Code of 1986, where not manifestly inapplicable or incompatible with the intent of this section: Subtitle A [26 U.S.C.A. § 1 et seq.] . . . and all provisions of subtitle F [26 U.S.C.A. § 6001 et. seq.] . . .

Section 31 of the Organic Act specifically lists the mirroring provisions, including Subtitle A of the I.R.C. which creates and defines the EIC.[8] The EIC was enacted in 1975 to provide tax benefits to low-income workers in the hopes that these benefits would make working more attractive than welfare. Since that time, Guam taxpayers applied for and received EICs until 1995 when the Government of Guam had a shift in tax policy and decided that it was not responsible for the payment of the EIC.

However, it would appear that the shift in policy was more attributable to a shortfall in the public coffers than one in legal reasoning. In DRT's Revenue Ruling No. 96-001, the director stated that "[a] definitive ruling by the Director of DRT is necessary at this time because GovGuam has experienced large amounts of lost revenue and cash outlays under the EITC." *See* Canto Decl., at Exhibit C, attached thereto. Guam's taxpayers should not be made to pay for the financial woes of its sovereign. If Guam is unable to pay for the EIC, it alone, has the power to change its tax code by delinking from the IRC in accordance with the Tax Reform Act of

---

[8]Section 6401(a) of Subtitle F directs the taxing authority to refund the EIC to the taxpayer or credit the EIC overpayment against the taxpayer's liabilities.

7

1986, or by enacting an additional tax to cover its expenses. *See* 48 U.S.C. § 1421i(a). Short of those options, the Court finds that as a matter of law, Guam must pay the EIC.

Moreover, the Court notes that the defendant seemingly has conceded that the EIC applies to Guam. The defendant stated in its Clarification of Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment that "[t]he position of the Office of the Attorney General, on behalf of the Government of Guam, with respect to the Earned Income Tax Credit ("EIC") is set forth in the Settlement Agreement entered into on June 14, 2004 . . ."[9] That Settlement Agreement was attached as Exhibit A to a Stipulated Order Granting Preliminary Approval of Class Action Settlement. Some of the positions set forth in the Stipulated Order were as follows:

> 2. "EIC Class" means all persons who (a) filed Guam tax returns and (b) were and are entitled to be paid refundable earned income tax credits under the Guam Territorial Income Tax and the Earned Income Program for any or all of the following tax years: 1996, 1998, 1999, 2000, 2001, 2002 and 2003.
>
> 3. The EIC Class members, otherwise eligible, are entitled to the Earned Income Tax Credit, pursuant to a provision in Subtitle A of the Internal Revenue Code and applied to Guam by operation of the Organic Act, 48 U.S.C. § 1421 et seq.
>
> 4. The Government of Guam is required to pay the Earned Income Tax Credit to eligible taxpayers.[10]

Additionally, the Government of Guam further stated "[t]he Government of Guam does not oppose the Motion for Partial Summary Judgment to the extent it will determine whether the EIC applies to the People of Guam as a matter of law."

Having decided that the EIC applies to Guam, the next question is whether the taxpayers exhausted their administrative remedies in claiming the EIC. According to 26 U.S.C. § 7422(a) a taxpayer is required to file a claim for a tax refund before filing suit.[11] However, in this instance,

---

[9] *See* Clarification of Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment. Docket No. 81.

[10] *See* Certified Copy of Stipulated Order Granting Preliminary Approval of Class Action Settlement With Attached Settlement Agreement in Santos Case, CIV04-00006, Docket No. 82, page 2.

[11] 26 U.S.C. § 7422 states:

8

the plaintiffs argue that the filing of an income tax return acts as a claim for the EIC, since the Government of Guam affirmatively took steps to prohibit a taxpayer from actually filing an EIC claim. The Government of Guam represented to the taxpayers that the EIC was inapplicable or not available on Guam. *See* Canto Decl., Exhibit L, attached thereto. The DRT's policy was to reject claims where individual taxpayers attempted to write EIC claims on their Guam tax forms, submit the U.S. versions of the forms (which did not block out the EIC box), submit the Form 1040 X[12] or submit letters or informal claims. *See* Camacho Decl., at ¶ 9. It was DRT's policy to return such forms to the taxpayer and (sometimes) provide the taxpayer with a copy of the Revenue Ruling stating the EIC did not apply in Guam. This Court is concerned that the Government took actions that discouraged if not actually affirmatively prohibited the filing of a return with the request for the EIC. The Court therefore finds under the circumstances, the filing of the tax returns should be considered a claim satisfying the jurisdictional requirement under 26 U.S.C. § 6511.[13]

The plaintiffs next seek declaratory and injunctive relief requiring the Government of Guam to provide notice to plaintiffs of their right to file EIC claims and creating procedures for filing such claims under the GTIT, or alternatively, a declaration that the Government of Guam must refund EIC claims to plaintiffs upon filing proper amended tax returns containing an EIC

---

(a) No suit prior to filing claim for refund.

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established pursuance thereof.

[12]As used in the federal system, Form 1040 X is used for amended tax claims.

[13]Although the Court has jurisdiction based on the filing of the claims, the Court will refrain at this time from addressing whether the statute of limitations would act as a bar to many of the claims pursued in a refund suit. *See* 26 U.S.C. § 6532(a)(1).

9

claim under the GTIT. The Government of Guam claims that this issue is moot and the request
unnecessary as the Government of Guam is already accepting EIC claims and permitting the
amendment of tax returns to facilitate such claims, to the extent permitted by federal and
territorial law. *See* Camacho Decl., at Exhibit 2, attached thereto.

In January 2005, the Governor of Guam issued Executive Order 2005-001, requiring DRT
to create supplemental EIC forms ("Guam Earned Income Credit Application") and to accept the
submission of the EIC claims under territorial and, to the extent applicable, federal law.
*See* Camacho Decl., at Exhibit 1, attached thereto. It applies to tax years 1995-1996 and 1999-
2004, and into the future. *Id*. There are no forms for the years 1997-1998 because DRT had
already created a form for the those years and had accepted claims. The Order expressly states
that tax returns may be amended as part of such a submission, although amendments are limited
to three years as provided under federal law. *Id*. Accompanying the forms is an EIC brochure
prepared by DRT. *Id*. at Exhibit 4. Pursuant to the Executive Order, the EIC claims submitted
under this procedure shall constitute sufficient claims for the EIC under the GTIT if the EIC is
held to apply to Guam. *Id*. at Exhibit 1, ¶ 2. As of April 26, 2005, DRT has received 15,475
claims for the EIC under the Executive Order. *Id*. at ¶ 14 and Exhibit 5.

The plaintiffs state that they are concerned that the forms contain qualifying language that
would allow the Government of Guam to ignore its obligation to pay the EIC. The offending
language is as follows:

> By providing this form neither the Department of Revenue & Taxation nor any
> other part of the Government of Guam or its officers are agreeing to make any
> payment to any taxpayer or any offset in favor of any taxpayer or waiving any
> applicable law regarding submission of claims.

*See* Camacho Decl., at Exhibit 2.

The plaintiffs claim that since the Government of Guam is claiming there is no obligation
to pay the EIC on the forms, the request for declaratory relief is not moot. This Court has
reviewed the forms and notes that at the time they were created, the issue of the EIC had not been
decided. It seems to reason that in drafting the documents, the Government wanted to preserve
its rights should a Court subsequently rule that it had no legal obligation to pay the EIC. Despite

10

1  a history of non-payment by the Government, the Court finds the Government of Guam has taken

2  efforts to create forms that would allow it to process the claims in the event it is found

3  responsible for paying the claims.

4      Under the circumstances, the Court does not find the need to grant declaratory relief.

5  Should the Government of Guam refuse to pay the claims after they have been found owing, the

6  plaintiffs are free to take steps to enforce the payments. The Court is reluctant to grant

7  declaratory relief where there is only the possibility of future harm. *Hodgers-Durgin v. de la*

8  *Vina* 199 F.3d 1037, 1042 (9th Cir.,1999) ("The Supreme Court has repeatedly cautioned that,

9  absent a threat of immediate and irreparable harm, the federal courts should not enjoin a state to

10  conduct its business in a particular way."). The Court notes that the plaintiffs' complaint is also

11  one for a refund. There is nothing preventing the plaintiffs from proceeding with this action.

12  Accordingly, the Court denies the declaratory and injunctive relief as requested.

13      Lastly, the plaintiffs ask for injunctive relief requiring the Government of Guam to

14  enforce certain local Guam law (11 Guam Code Ann. § 50101 et seq. and 11 Guam Code Ann. §

15  51101 et seq.) concerning amounts that are alleged to be required to be set aside to pay the EIC.

16  In 1999, the Legislature amended the Income Tax Reserve Fund law (the "Reserve Fund"), to

17  create a yearly reserve fund to reserve tax receipts for the payment of income tax refunds, the

18  child tax credit, and the EIC. 11 Guam Code Ann. § 50103. It also requires the DOA, DRT and

19  the Bureau of Budget & Management Research to establish a yearly formula for how much

20  money should be reserved from income tax receipts. *Id.* This formula is to be used by DOA to

21  pay projected income tax refunds, child tax credits, and EIC. 11 Guam Code Ann. § 50104.

22      In addition to the Reserve Fund, the Legislature enacted the Income Tax Refund Efficient

23  Payment Trust Fund Act of 2002 (the "Trust Fund"). The Trust Fund is supposed to receive

24  weekly, quarterly, and monthly deposits (depending on the source) of payroll and other income

25  taxes. 11 Guam Code Ann. § 50102. The formula for such deposits is supposed to be the same

26  formula as the yearly account under the Reserve Fund, except that the money in the Trust Fund

27  account is being reserved for the coming year and is supposed to be earning interest. *Id.* When

28  DOA is ready to release tax refunds, child tax credits, or the EIC, the money is to be transferred

11

1 | from the Trust Fund into the Reserve Fund, and to the taxpayers. *Id.*

2 |       The Government of Guam argues that the plaintiffs have no right to sue for the
3 | enforcement of the Reserve and Trust Fund laws. The Government of Guam states that these
4 | laws are local budget laws designed to benefit the Legislature with regard to expenditures of
5 | public funds. There is nothing in the laws themselves that create a generalized private cause of
6 | action, much less a right to seek injunctive relief. The plaintiffs therefore should be denied
7 | injunctive relief. *See Touche Ross & Co. v. Readington,* 442 U.S. 560, 568 (1979) (an implied
8 | cause of action can only be created under a statute if it is consistent with the intent of the
9 | legislature.)

10 |       The Government of Guam also states that it is complying with the laws to the degree
11 | permitted by the intervening budget laws. In 2004, the Guam Legislature passed its budget for
12 | fiscal year 2005, P.L. 27-106 (Bill 363), creating a tax refund reserve of $72 million. There was
13 | no provision therein for the EIC or other reserves. *See* Guam P.L. 27-106. Based upon the
14 | current financial figures available to the Government, $72 million is not sufficient to pay this
15 | year's estimated tax refunds and EIC. Decl. of Lourdes Perez, at ¶ 4.

16 |       According to the Director of the DOA, an injunction that requires the Government of
17 | Guam to immediately begin to set aside money for the EIC could cause a financial crisis. Decl.
18 | of Lourdes Perez, at ¶ 8. The Court is concerned about the consequences of ordering the
19 | Government of Guam to comply with these laws without a showing of actually how much money
20 | would be required and the effects that would have on the operations of the Government. Under
21 | the circumstances, the Court finds the request premature in light of the fact that the class has not
22 | been certified. There simply are not enough facts to indicate what sum of monies should actually
23 | be set aside. In addition, when the plaintiffs proceed with their refund suit, the Court can revisit
24 | the issue of how refunds are to be paid if found owing. Should the Government of Guam choose
25 | not to take action in paying its obligation, the Court can then take the appropriate action.
26 | Accordingly, the Court denies summary judgment as to this request.

27 | ///
28 | ///

12

In light of the foregoing, the Court grants partial summary judgment as to the issue of whether EIC applies to Guam and that, by filing income tax returns that contain no claim for the EIC, the plaintiffs have nonetheless exhausted their administrative remedies as required by the GTIT as a condition precedent to bringing suit. As to the other requests, the Court denies the relief sought. The plaintiffs are to take action to certify the class and proceed with this matter as a refund suit.[14]

SO ORDERED this _15_ day of June, 2005.

RICARDO S. MARTINEZ[*]
Designated Judge

Notice is hereby given that this document was
entered on the docket on __JUN 1 5 2005__.
No separate notice of entry on the docket will
be issued by this Court.
        Mary L. M. Moran
Clerk, District Court of Guam
By: /s/ Shirlene A. Ishizu        JUN 1 5 2005
        Deputy Clerk        Date

---

[14]The Court notes the conspicuous absence of the United States as a party in this action. The Court questions whether there may be an equal protection argument in light of the fact that Guam taxpayers are not entitled to the Advance EIC and an offset of their social security taxes paid to the federal government.

[*]The Honorable Ricardo S. Martinez, United States District Judge for the Western District of Washington, by designation.

13

# EXHIBIT I

1  VAN DE VELD SHIMIZU CANTO & FISHER
   Suite 101 Dela Corte Building
2  167 East Marine Corps Drive
   Hagåtña, Guam 96910
3  671.472.1131

4  TOUSLEY BRAIN STEPHENS PLLC
   Kim D. Stephens, P.S., *Pro Hac Vice*
5  Nancy A. Pacharzina, *Pro Hac Vice*
   700 Fifth Avenue, Suite 5600
6  Seattle, Washington 98104-5056
   206.682.5600

7

8  *Attorneys for Plaintiffs Mary Grace Simpao, Christina Naputi and Janice Cruz*

FILED
DISTRICT COURT OF GUAM

JUL - 5 2005

MARY L.M. MORAN
CLERK OF COURT

OFFICE OF THE
GOVERNOR
0 5 JUL 2005
DATE
LEGAL OFFICE

9

10                    DISTRICT COURT OF GUAM

11                     TERRITORY OF GUAM

12  MARY GRACE SIMPAO, CHRISTINA
    NAPUTI and JANICE CRUZ on behalf of        Civil Case No. 04-00049
13  themselves and a class of others similarly
    situated,                                  PLAINTIFFS' MOTION FOR CLASS
14                                             CERTIFICATION
15              Plaintiffs,

16        v.

17  GOVERNMENT OF GUAM,

18              Defendant.

19

## I. INTRODUCTION

20

21      This case seeks to establish the right of all eligible Guam citizens to file for and recover

22  Earned Income Credits (EICs) as required by Guam's tax laws. Its primary issues have already

23  been resolved on behalf of the named Plaintiffs through summary judgment. Plaintiffs now ask

24  the Court to extend those results to the Class as a whole and certify this case as a class action

25  pursuant to Fed. R. Civ. P. 23.

26

PLAINTIFFS' MOTION FOR   - 1
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006   Document 429-6   Filed 06/22/2007   Page 2 of 38

## A. Plaintiffs' Claims

Resolution of all claims in this action depends on the threshold holding Plaintiffs sought when the action was filed: an enforceable ruling that EIC provisions of the U.S. Internal Revenue Tax Code are applicable to Guam. The action then seeks various forms of relief to allow Plaintiffs and proposed Class members to file for and recover EICs wrongfully withheld.

Plaintiffs' Claims One, Two and Three seek declaratory and injunctive relief to establish who has timely filed (or still can timely file) an administrative EIC claim for the tax years at issue. This is a condition prerequisite not only to filing a claim for EICs, but also to this Court's jurisdiction over any action challenging denial of an EIC. The proposed Class for these claims consists of taxpayers who filed tax returns in years the Government prevented specific EIC claims from being filed, and affirmatively represented on tax refund forms that such claims were not applicable in Guam. Under statutory limitations periods, some of these claims (claims for tax years 1995, 1996 and 1999) could be time barred. A subclass is proposed for those claimants.

Plaintiffs' Fourth claim is a tax refund action seeking actual payment of EICs due. The proposed class for this claim consists of all taxpayers who timely filed an administrative claim for an EIC for tax years 1995 – 2003 either as declared by the Court in resolution of Claims One through Three, or by actually filing EIC claim forms the Government made available and accepted for tax years 1997 and 1998.

Plaintiffs' Fifth and Sixth claims seek to secure the right to make claims for EICs and efficiently receive EIC refunds for future tax years. The primary relief sought is an injunction ordering the Defendant to establish and fund certain reserve funds mandated by law specifically to ensure prompt and efficient payment of tax refunds and EICs.

## B. Relief Already Obtained

The individual Plaintiffs have already won relief for the Class in two ways. First, they obtained summary judgment holding the following: (1) the EIC applies in Guam; and (2) in light of the Government's conduct in this matter, Plaintiffs are deemed to have exhausted

PLAINTIFFS' MOTION FOR     - 2
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagåtña, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006     Document 429-6     Filed 06/22/2007     Page 3 of 38

administrative remedies for *all* tax years at issue by timely filing tax returns for those years. In other words, the Government is estopped from asserting Plaintiffs did not comply with the time limits prescribed by 26 U.S.C. § 6511 for filing administrative claims.

Second, shortly after Plaintiffs filed their complaint requesting a mechanism be provided for filing EIC claims, the Government implemented an EIC claims application process. Final determination of the need for and scope of injunctive relief for a claims process in light of Government's action remains to be determined.

## C. Class Treatment is Desirable For Plaintiffs' Claims

Tax refund actions like this one have been found suitable for class treatment where, as here, the Class includes only those who have exhausted administrative remedies. Here, such Class members are defined by whether they have or still can file a tax return for the relevant tax years — a fact easily and objectively determinable.

The threshold Rule 23(a) requirements for class certification are also easily met. The number of Class members is in the thousands, and to some degree, they are geographically dispersed. It is most likely not all Class members remain on Guam. Further, the issues presented are common to all claims, and the named Plaintiffs' claims are by definition typical of those of proposed Class members. Finally, Plaintiffs have retained counsel experienced in class actions.

Class treatment is also suitable under Rule 23 (b)(2). All Class members' claims are based on one common course of conduct by Defendant, that is, its uniform policy and practice of refusing to accept, process and pay claims for EICs due. The injury suffered by all class members is categorically the same — denial of their EIC benefit. And, the relief sought by each Class member is the same — the right to properly claim and recover EICs for which they are eligible. Importantly, eligibility for an EIC is objectively determinable through review of each Class members' tax return and EIC claim form. The amount due is prescribed by tax

PLAINTIFFS' MOTION FOR - 3
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-6    Filed 06/22/2007    Page 4 of 36

1    credit tables. It is no hindrance to class certification that the specific amount of EIC due each
2    Class member may vary.

3       Finally, class treatment is not only suitable, it is desirable. Resolution of these claims in
4    a single proceeding will conserve resources of both the parties and the Court. Perhaps most
5    importantly, it may be the only way most Class members will receive any relief at all. The
6    value of each individual claim is too small to justify pursuit on an individual basis, especially
7    where Class members are known to be of limited resources and relatively unsophisticated.

8       This Court should certify this case for class treatment to extend Plaintiffs' summary
9    judgment ruling and provide any further relief obtained to all Class members.

10             **II. STATEMENT OF FACTS**

11    **A.**     **The EIC**

12       The Earned Income Credit provides a tax benefit to low income workers in the hopes
13    the benefit will make working more attractive than welfare. Only taxpayers with an income
14    below a certain level qualify for the credit. Once this threshold requirement is met, additional
15    factors may effect whether a taxpayer qualifies for the credit and the amount of credit due (*e.g.*
16    whether the taxpayer has a qualifying child and whether the taxpayer is a qualifying child of
17    another taxpayer). *See* Declaration of James L. Canto II In Support Of Plaintiffs' Motion For
18    Class Certification (hereinafter Canto Decl.), Exhibit A – 1994 Guam Forms 1040, 1040A,
19    1040EZ; 1994 Schedule EIC; 1994 Form 1040 Instructions.

20       A taxpayer claims the EIC by filling out a specific section of the income tax return form
21    designated for this purpose. *Id.* An additional form is required only if a "qualifying child" is
22    also claimed. By filling out the EIC section of their tax return a taxpayer is attesting they meet
23    all requirements to qualify for the credit. Abuse is deterred by imposing a penalty for false
24    claims. Ineligible taxpayers who take the credit may not be allowed to take the credit for as
25    long as ten years. *Id.* If a taxpayer does not want to compute the actual amount of credit due
26

PLAINTIFFS' MOTION FOR   - 4
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-6    Filed 06/22/2007    Page 5 of 58

they can simply write "EIC" on that portion of their tax return and the Government of Guam will compute the credit owing for them. *Id.*

**B.      The Government's Misconduct In Administration of the EIC in Guam**[1]

By law Guam's tax code mirrors certain provisions of the U.S. Internal Revenue Code, including those sections that create and define the Earned Income Credit. The EIC became effective in the U.S., and, therefore, in Guam, in 1975. The Government of Guam provided a mechanism for its citizens to make claims for the EIC and paid the credit due from 1975 through 1994. In fact, it is estimated more than 9,400 Guam taxpayers received approximately $11 million in EIC payments for tax year 1994.

On June 23, 1989, the Government, through its Attorney General's office (the "AG"), expressly acknowledged it is obligated to pay the EIC to eligible taxpayers in the same manner as ordinary tax refunds, *i.e.*, from the General Fund. *See* Canto Decl., Exhibit C - Memorandum Opinion No. DOA 89-0750 (the "1989 AG Opinion"). Six years later, however, the Director of the Department of Revenue and Taxation (the "DRT") unilaterally decided to terminate the EIC in Guam. In direct contradiction to the 1989 AG Opinion, DRT issued Revenue Ruling 96-001 (the "1996 Revenue Ruling") stating the EIC did not apply to Guam and, even if it did, DRT could not certify EICs due for payment because the Legislature had made no appropriation to fund the EIC. *Id.*, Ex. D – 1996 Revenue Ruling. On January 4, 1996, Guam's AG at the time, issued Memorandum Opinion No. DRT/DOA 96-001 (the "1996 AG Opinion") adopting DRT's misguided 1996 Revenue Ruling. *Id.*, Ex. E – 1996 AG Opinion.

As this Court recently noted:

> . . . [T]he shift in policy was more attributable to a shortfall in the public coffers than one in legal reasoning. In DRT's Revenue Ruling No. 96-001, the director stated that '[a] definitive ruling by the Director of DRT is necessary at this time because

---

[1] The following facts have been admitted by Defendants in their Answer and accepted by the Court in its ruling on summary judgment. *See* Canto Decl., Ex. B – Summ.J Order entered June 15, 2005.

PLAINTIFFS' MOTION FOR      - 5
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006      Document 429-6      Filed 06/22/2007      Page 6 of 38

GovGuam has experienced large amounts of lost revenue and cash outlays under the EITC.'

Summ.J Order at 7.

As a result of the 1996 AG Opinion and Revenue Ruling, the 1995 and 1996 tax return forms published by the Government included the words "not applicable in Guam" over the section providing taxpayers a mechanism to claim the EIC. *See* Canto Decl., Ex. F – Guam Income Tax Return Forms for tax years 1995, 1996 & 1999-2003 (hereinafter "Guam Tax Forms"). Further, no specific form to claim the EIC was made available to taxpayers. The Government did not compute or pay any individual EICs for either tax year 1995 or 1996.

In response to the Executive Branch's unilateral reversal of tax policy, in 1997 the Legislative Branch of the Government passed several laws to implement the Guam Earned Income Program (the "Guam EIC") and to ensure continuous funding of the Program. *See* Public Law 23-74, 11 Guam Code Ann. §§ 42101 et seq. As such, the 1997 and 1998 income tax forms published by the Government included a mechanism for eligible taxpayers to specifically claim the EIC. The Government paid some, but not all, EICs for the 1997 tax year. The Government did not pay any EICs for the 1998 tax year.

The 1999-2003 income tax forms published by the Government once again included the words "Not Applicable" over the section providing the mechanism to claim the EIC. *See* Canto Decl., Ex. F – Guam Tax Forms. Once again the Government did not provide a supplemental form to make a specific claim for the EIC. Instead, despite the action of the Legislature in 1997, the Executive Branch once again refused to implement the EIC.

The Government did not change its conduct even though in 2001, the Supreme Court of Guam, at the request of the Legislative Branch, published an opinion stating the Organic Act required Guam taxpayers receive the benefits of the EIC and thus, DRT is obligated to pay the EIC to eligible Guam taxpayers.[2]

---

[2] *In Re Request of I Mina' Bente Sing'ko Na Liheslaturan Guahan Relative to the Application of the Earned Income Tax Credit Program to Guam Taxpayers ("the EIC question")*, 2001 Guam 3, 9 (S.Ct. Guam 2001) a copy of which is attached hereto as Exhibit G to the Canto Decl.

PLAINTIFFS' MOTION FOR  - 6
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-6    Filed 06/22/2007    Page 7 of 38

**C.** The Income Tax Refund Reserve Fund and Tax Refund Efficient Payment Trust Fund

In 1994 the I Liheslaturan Guahan [the Guam Legislature] mandated a portion of income tax receipts be reserved in a special fund "in order to accumulate sufficient cash reserves to pay projected income tax refunds, earned income tax credits and child tax credits in a timely manner." 11 Guam Code Ann. §§ 50103. *See also* Public Law 22-140:IV:2(b), the Income Tax Refund Reserve Fund Law (the Reserve Fund Law); 11 Guam Code Ann. §§ 50101 et seq. Under the Reserve Fund Law, the Director of Revenue and Taxation, in consultation with the Director of Administration and the Director of the Bureau of Budget and Management, is required every year to establish a formula, based on the statistical average of refunds and credits issued in the prior three years, to determine the portion of tax receipts to deposit in the Income Tax Refund Reserve Fund (the "Reserve Fund"). 11 GCA § 50103.

The Reserve Fund must be maintained in a separate bank account and cannot be commingled with any other government funds. 11 GCA § 50102. Expenditures can be made solely for payment of income tax refunds and specified credits. 11 GCA § 50105. The money placed in the Reserve Fund is not subject to any transfer authority of the I Maga'lahen Guahan [the Governor of Guam] and cannot be pledged by the I Maga'lahen Guahan. *Id. See also* 11 GCA § 51106. Monthly reports to the Legislature on all expenditures from and deposits to the Reserve Fund must be made by the Director of Administration. 11 GCA § 50107.

In 2002 the I Liheslaturan Guahan, passed additional provisions which allow the portion of tax receipts designated for the Reserve Fund to be placed in an interest bearing Tax Efficient Payment Trust Fund (the Trust Fund) as they are collected on a monthly or quarterly basis. *See* 11 GCA § 51101 et seq. When the Tax Commissioner is ready to pay tax refunds and credits, the tax receipts deposited in the Trust Fund must be transferred by the Director of Administration to the Reserve Fund. 11 GCA § 51102.

As with the Reserve Fund, monies in the Trust Fund must be maintained in a separate bank account and cannot be commingled with any other government funds, 11 GCA § 51101;

PLAINTIFFS' MOTION FOR - 7
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-6    Filed 06/22/2007    Page 8 of 36

they are not subject to any transfer authority of the I Maga'lahen Guahan, 11 GCA § 51107;
and cannot be pledged by the I Maga'lahen Guahan. 11 GCA § 51105. Within 15 days of
every deposit made to the Trust Fund the Director of Administration and the Tax
Commissioner must report to both the I Liheslaturan Guahan and the I Maga'lahen Guahan the
amount of the deposit and the current balance of the Trust Fund. 11 GCA § 51106.

Unfortunately for Guam's taxpayers, tax receipts, have not been deposited into either the
Reserve Fund or the Trust Fund pursuant to the formula prescribed in the Reserve Fund Law
and/or the manner prescribed in 11 GCA § 51102. *See* Canto Decl., Ex. H – Correspondence
from Department of Administration dated January 18 and 26, 2005 (hereinafter "DOA
Letters"). *See also id.*, Ex. I – Correspondence from Department of Revenue & Taxation dated
February 8, 2005 (hereinafter "DRT Letter"). Further, neither the Department of
Administration or the Department of Revenue and Taxation have complied with the reporting
requirements of 11 GCA § 50107 and § 51106. *Id.*

**D.     The Plaintiff's Experience With the EIC[3]**

1.     Plaintiff Naputi

Plaintiff Naputi has been a resident of Guam during all relevant tax years. For tax years
2000, 2001, 2002 and 2004 she paid income taxes and timely filed tax returns with the
Government of Guam. For tax year 2002 she filed as "married filing jointly," she had one
qualifying child, and in that tax year Ms. Naputi had a taxable income that qualified her for the
EIC. For these four tax years she provided all information requested on the income tax return
form relevant to her as a taxpayer.

Plaintiff Naputi estimates she qualifies for an EIC of $1,394 in 2002 and an
undetermined amount in 2004. She did not receive an EIC refund payment or offset against her
taxes for any of the tax years at issue. She never received a formal notice of disallowance of her

---

[3] Affidavits of each named Plaintiff submitted with Plaintiffs Reply Brief in Support of Plaintiffs' Motion for Partial Summary Judgment are attached hereto.

PLAINTIFFS' MOTION FOR   - 8
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006     Document 429-6     Filed 06/22/2007     Page 9 of 38

1 claims to an EIC, nor did she waive her right to such notice for any of the tax years at issue.
2 Ms. Naputi expects she will qualify for an EIC in 2004.

### 2. Plaintiff Simpao

Plaintiff Simpao has been a resident of Guam during all relevant tax years. For tax years 1996 through 2004, she paid income taxes and timely filed tax returns with the Government of Guam. In 1996 she filed a tax return as a "single" taxpayer. She had one qualifying child. In 1997 she filed as "married filing jointly" with one qualifying child; in 1998 as "married filing jointly" with two qualifying children; in 1999 as "married filing separately" with one qualifying child; in 2000 as "married filing separately" with one qualifying child, in 2001 "married filing separately" with two qualifying children; in 2002 as "head of household" with two qualifying children; and in 2003 as "head of household" with three qualifying children. In tax years 1996-1998 and 2002-2003 her taxable income qualify her for the EIC and she provided all information requested on the income tax return forms relevant to her as a taxpayer. Specifically, in tax years 1997 and 1998 she completed and filed the Guam Earned Income Program Application (GEIPA) provided by the Government.

Plaintiff Simpao estimates she qualified for an EIC of $1,750 in 1996, $837 in 1997, $836 in 1998, $3,128 in 2002, $2,984 in 2003 and an undetermined amount in 2004. Ms. Simpao did not receive an EIC payment or offset against her taxes for any of those tax years. She never received a formal notice of disallowance of her claims to an EIC, nor did she waive her right to such notices for any of the tax years at issue. Ms. Simpao expects she will qualify for the EIC in 2004.

### 3. Plaintiff Cruz

Plaintiff Cruz has been a resident of Guam during all relevant tax years. For tax years 1995 through 2004, she paid income taxes and timely filed tax returns with the Government of Guam. For tax years 1996 through 2004, based upon income and filing status, she is eligible for the EIC refund. In 1996, 1997, 1998, 1999, 2000, 2001 and 2003 she filed a tax return as a

PLAINTIFFS' MOTION FOR  - 9
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-6    Filed 06/22/2007    Page 10 of 38

1  "head of household" taxpayer and she had one qualifying child. In 2002 she filed as "head of
2  household" with two qualifying children. In tax years 1996-2004 her taxable income and
3  taxpayer status qualify her for the EIC and she provided all information requested on the income
4  tax return forms relevant to her as a taxpayer. Specifically, in tax years 1997 and 1998 she
5  completed and filed the Guam Earned Income Program Application (GEIPA) provided by the
6  Government.

7      Plaintiff Cruz estimates she qualified for an EIC of $855 in 1996, $908 in 1997, $1,022
8  in 1998, $712 in 1999, $789 in 2000, $1,144 in 2001, $2,644 in 2002, $1,005 in 2003 and an
9  undetermined amount in 2004. Ms. Cruz did not receive an EIC payment or offset against her
10 taxes for any of those tax years. She never received a formal notice of disallowance of her
11 claims to an EIC, nor did she waive her right to such notices for any of the tax years at issue.
12 Ms. Cruz expects she will qualify for the EIC in 2004

13

14 E.    Procedural History of This Action and Related Actions

15      1.     Procedural History of This Action

16      This action was filed on December 3, 2004. Five weeks later, in direct response to
17 Plaintiffs' Complaint, the Governor of Guam issued Executive Order No. 2005-01 directing
18 DRT to establish a process by which Guam's taxpayers can submit claims for the EIC for tax
19 years 1995–1996 and 1999–2004. See Canto Decl., Ex. J – Executive Order No. 2005-01,
20 entered January 12, 2005 (hereinafter "2005 Executive Order"). The 2005 Executive Order
21 however, made no commitment those claims would ever be processed or paid. Id. The
22 Government never published any formal announcement through public media to give notice to
23 taxpayers that a claims procedure was now available. Despite the lack of individual notice,
24 over 15,000 claims have been filed, over one third of which are for 2004. See Canto Decl., Ex.
25 K – Copy of Exhibit 5 to the Decl. of John Camacho Submitted in Support of Defendant's
26 Opp. To Plts.' Mot. For Summ.J.

PLAINTIFFS' MOTION FOR  - 10
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagåtña, Guam 96910
TEL 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006   Document 429-6   Filed 06/22/2007   Page 11 of 38

Plaintiffs filed a First Amended Complaint on February 1, 2005, adding an additional named Plaintiff and the claim regarding creation and administration of the Reserve and Trust Funds. On March 17, 2005, this Court denied in its entirety the Government's Motion to Dismiss the First Amended Complaint. The Government then answered the operative complaint on March 28, 2005. A Second Amended Complaint was filed April 18, 2005 adding a third named plaintiff.

On June 15, 2005 this Court granted Plaintiffs partial summary judgment holding:

> Guam's taxpayers should not be made to pay for the financial woes of its sovereign. If Guam is unable to pay for the EIC, it alone, has the power to change its tax code by delinking from the IRC in accordance with the Tax Reform Act of 1986, or by enacting an additional tax to cover its expense. *See* 48 U.S.C. §1421i(a). Short of those options, *the Court finds as a matter of law, Guam must pay the EIC.*

Summ.J Order at 7-8. This Court also held:

> This Court is concerned that the government took actions that discouraged if not actually affirmatively prohibited the filing of a return with the request for the EIC. *The Court therefore finds, under the circumstances, the filing of the tax returns should be considered a claim satisfying the jurisdiction requirement under 26 U.S.C. § 6511* [*i.e.*, the provision prescribing time limits for filing an administrative claim].

Summ.J. Order at 9. The Court noted the Government had implemented an Executive Order establishing a claims procedure for EIC claims as requested in Plaintiffs' Second Amended Complaint. In light of that fact, the Court declined to grant, on summary judgment motion, the injunctive and declaratory relief regarding provision of a claims procedure and payment of claims. Summ.J. Order at 11. The Court then directed:

> *The plaintiffs are to take action to certify the class and proceed with this matter as a refund suit.*

Summ.J. Order at 13.

    2.    Related Cases

Two class actions similar to this case are also pending in this Court:

(1) *Santos v. Camacho*, Civil Docket No. 04-00006; and

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION   - 11

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-6    Filed 06/22/2007    Page 12 of 36

1    (2) *Torres v. Government of Guam* , Civil Docket No. 04-00038.

2    There has been little activity in the *Torres* action. A motion to dismiss was briefed and heard

3    but no order has issued. The Plaintiff in *Torres* has, however, asked its court to take judicial

4    notice of this Court's denial of Defendant's Motion to Dismiss and entry of Partial Summary

5    Judgment for Plaintiffs in the present case.

6         The *Santos* action was filed February 12, 2004 on behalf of a class consisting of persons

7    denied EICs in tax years 1998-2003. It did not cover EIC claimants for tax years 1995-1997

8    nor claimants for 2004 and future tax years. *See* Canto Decl., Ex. L – *Santos* Complaint.

9         Only four months after the Complaint was filed Magistrate Judge Manibusan signed a

10   Stipulated Order Granting Preliminary Approval of Class Action Settlement. *See* Canto Decl.

11   Ex. M. – Copy of *Santos* Stip. Order Granting Prelim. Approval of Class Action Settlement

12   entered June 17, 2005 with Settlement Agreement attached (hereinafter First Settlement

13   Agreement). A few days later Judge Manibusan signed an additional order awarding the

14   *Santos* Plaintiff's counsel stipulated attorneys' fees and costs in the amount of 10% of the

15   Settlement Amount ($6 million dollars). No motion pursuant to Rule 26(a) had been filed. The

16   fees were to be paid from, and not in addition to, the Settlement Amount. He also authorized

17   class notice by publication only. *See* Canto Decl., Ex. O – *Santos* Order Granting Atty's Fees

18   and Costs entered June 24, 2004).

19        The proposed settlement agreement was not signed by the Governor of Guam. Instead

20   it was signed by the Attorney General; the Lieutenant Governor as "Acting Governor of Guam"

21   (the Governor himself was off island); and the Directors of the Department of Revenue and

22   Taxation the Department of Administration. *See* Canto Decl. Ex. M – First Settlement

23   Agreement. Governor Camacho later sought to investigate the circumstances under which the

24   settlement had been reached. He was told by the Attorney General: "there is no written

25   documentation regarding the history of the negotiations leading up to the Settlement

26   Agreement." *See* Canto Decl. Ex. N – Copy of Governor of Guam's Mem. Of P. & A. in

PLAINTIFFS' MOTION FOR   - 12
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-6    Filed 06/22/2007    Page 13 of 38

1   Supp. Of Opp. To Pet'r Mot. For Approval of the Administrative Settlement Plan at 5
2   (hereinafter "Gov's Opp. To Settlement").

3       Under the proposed settlement the class was expanded to include 1996 (but not 1995 or
4   1997 or 2004 and subsequent tax years) and class members would receive, at best, less than
5   50% of EIC credits due ($60,000,000 was offered to settle $112,000,000 in estimated claims,
6   exclusive of accrued interest). *See* Canto Decl., Ex. M – First Settlement Agreement.

7       In response to the proposed settlement Plaintiff Naputi in this action and Plaintiff Torres
8   moved to intervene noting numerous substantive and procedural defects in the proposed
9   settlement. Their motions were denied August 5, 2004. The Court found Plaintiffs Naputi and
10  Torres could protect their interests by opting out of the settlement, filing objections or by filing
11  a separate law suit. Thus, both Torres and Naputi here filed their own class actions.[4]

12      In an attempt to cure some of the defects in the settlement noted in the intervention
13  briefing, Plaintiff's counsel in *Santos* asked for and received an Order appointing him interim
14  class counsel. *See* Canto Decl., Ex. O – *Santos* Order entered July 16, 2004. He also filed a
15  motion for approval of a purported "Administrative Plan" that was, in reality, a revised
16  settlement agreement. *See* Canto Decl. Ex. P – Correspondence between the Office of the
17  Governor and the Attorney General's Office dated September 16, 2004 referring to the
18  Administrative Plan as "a new settlement under the guise of an administrative plan." The
19  Attorney General filed a response to the motion, apparently over the objection of the Governor.

20      As a result, on November 9, 2004, the Governor of Guam sought to appear in the action
21  with his own counsel for purposes of "stating his concerns" regarding the proposed settlement.
22  The Governor contended the Attorney General did not adequately represent his office. As for
23  the settlement, the Governor believed: (1) the settlement was illegal because it was contrary to

24

25  [4] In addition, Plaintiffs filed a Notice of Appearance in the *Santos* action as class members to monitor its progress.
    The notice requested Plaintiffs be served copies of all pleadings and motions. Plaintiff Santos moved to strike the
26  entry of appearance and has not served Plaintiffs copies of her filings. The issue was briefed in the *Santos* action
    but never acted on by the court.

PLAINTIFFS' MOTION FOR   - 13
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006   Document 429-6   Filed 06/22/2007   Page 14 of 38

Guam's Illegal Expenditures Act, 5 G.C.A. § 22401, prohibiting an officer of the Government from obligating the Government to pay money in advance of an appropriation made by the Legislature for such purpose; (2) the complaint was insufficient to establish jurisdiction because it did not allege exhaustion of administrative remedies; and (3) any approval of an "administrative plan" was improper unless and until final approval was given to the settlement. *See* Canto Decl., Ex. N – Gov's Opp. to Settlement. Additional defects noted by the Governor included:

- Numerous deficiencies in the notice;

- Attorney's fees had been resolved by stipulation as opposed to by motion and were disproportionately high ($6 million) given Plaintiff's counsel had done nothing but file a complaint and negotiate a settlement in less than a day;

- A noticeable lack of adversarial proceedings prior to settlement including a complete lack of discovery regarding the value of the claims;

- Conflicts within the class between members whose claims were time barred and those whose were not;

- The settlement was substantively unfair given claimants would receive only 50% of the EICs due (if that); and

- Attorney's fees were guaranteed regardless of how many members opted out of the settlement.

*See* Canto Decl. Ex. N – Gov's Opp. to Settlement.[5]

---

[5] In addition to the predictable disputes regarding such a suspect settlement, the *Santos* action has also been the scene of a battle between the Governor of Guam and the Attorney General over who speaks for Guam in the litigation. The Attorney General filed a motion to strike the appearance made by the Governor arguing he was the "Chief Legal Officer for the Government of Guam" and therefore had the right to control this litigation. Much briefing ensued in which the Attorney General sought to prohibit the Governor from appearing with his own counsel. In the end, Magistrate Judge Manibusan ruled, on February 9, 2005, the Governor had a right to be heard through his own counsel because the Organic Act provides: administration and enforcement of the GTIT shall be performed by or under the supervision of the Governor. But notably, two days later on February 11, 2005, it was

PLAINTIFFS' MOTION FOR - 14
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagåtña, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-6    Filed 06/22/2007    Page 15 of 38

On March 11, 2005, before arguments regarding the settlement were heard, the parties asked the Court to hold the motions in abeyance while they pursued mediation. About this same time, Plaintiffs in this present action defeated the Attorney General's Motion to Dismiss. *See* Order entered March 17, 2005. Plaintiffs here asked the parties in *Santos* if they could join the mediation. *See* Canto Decl., Ex. P - Correspondence Re: Mediation. The request was denied. *Id.* Plaintiff's then asked the *Santos* court to allow and order their participation in the mediation. *See* Canto Decl., Ex. Q – Plts.' Mot. Re: Mediation. The Court declined to do so. *Id.*, Ex. R – Order Re: Mediation. As such, Plaintiffs here proceeded to move for summary judgment in this action.

On June 13, 2005 the day before the hearing on Plaintiffs' motion for summary judgment in this action, the Governor of Guam notified this Court the parties in the *Santos* action (with the notable exception of the Attorney General) had entered into a "term sheet." That did not deter this Court, who acknowledged as much, from hearing and granting Plaintiffs' summary judgment motion. A few days later, after this Court entered summary judgment for Plaintiffs, the parties to the *Santos* action (with the notable exception of the Attorney General) filed:

1. A Motion to Amend Class Action Petition (with the proposed amended petition);

2. A Motion for Conditional Certification Of The EIC Class for Settlement Purposes; and

3. A Joint Motion for Preliminary Approval of Settlement Agreement with a New Settlement Agreement attached. *See* Canto Decl., Ex. S.

---

the Attorney General, not the Governor who moved to dismiss this action. And together the AG's office and the Governor jointly participated in opposing the summary judgment motion.

PLAINTIFFS' MOTION FOR - 15
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagåtña, Guam 96910
TEL 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-6    Filed 06/22/2007    Page 16 of 38

Although the Governor has signed on to the settlement, this time it is the AG who has not. The AG publicly opposes the settlement.

Magistrate Judge Manibusan, who entered all orders in the *Santos* matter to date stated on June 27, 2005 he will not hear the motions. Rather, they will be heard by a visiting District Court Judge with Article III authority. Hearings on the motions are as yet unscheduled.

Whether the new settlement proposed in *Santos* should be given preliminary approval will be determined in a separate proceeding. Suffice it to say here, the new settlement cures few if any of the defects previously noted by the Governor and Plaintiffs. In particular, the Court still has no jurisdiction over the action as the requirement for exhaustion of administrative remedies cannot be waived. Notably two prior District Court judges have held this Court has jurisdiction over the matter solely because the issue of estoppel was adversarially litigated and decided. Further in the new *Santos* settlement the proposed class remains internally conflicted between time barred and non-time barred class members. And, most importantly, the new *Santos* settlement is grossly unfair and unreasonable in light of the results Plaintiffs have obtained here in the present action. Notably, claims for tax years 1995, 1996, 1999 and 2000 are compromised for less than 25% their estimated worth in the settlement agreement.

The Governor of Guam now seeks to intervene and subsequently stay this action pending resolution of a futile motion for preliminary approval of the new but still defective settlement in *Santos*. The matter of the proposed intervention will also be briefed separately. For now Plaintiffs simply note Guam's poorest taxpayers should not be deprived of the victories secured in this action, in particular, the holding regarding exhaustion of administrative remedies. As such, Plaintiffs ask this Court to certify this action and its summary judgment holding for class treatment pursuant to Fed. R. Civ. P. 23(a) and (b)(2).

## III. PROPOSED CLASS DEFINITIONS

To prosecute all claims brought in this action, Plaintiffs seek to certify three separate but related classes: a "Claims-Made Class," a "Refund Class," and a "Future Refund Class."

PLAINTIFFS' MOTION FOR - 16
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagåtña, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006     Document 429-6     Filed 06/22/2007     Page 17 of 38

## A. The Claims-Made Class

Claims One, Two, and Three of Plaintiffs' Second Amended Complaint are brought on behalf of the Claims-Made Class. The named Plaintiffs seeks to ensure all these class members have been or are afforded the opportunity to file a timely and allowable administrative claim for any EIC to which they were entitled in tax years 1995, 1996, and 1999-2003.[6] The Claims-Made Class is defined as:

> All Guam income taxpayers who, for any or all of tax years 1995, 1996, and 1999–2003: (1) meet threshold criteria to claim an EIC pursuant to the Organic Act and/or the Guam EIC; (2) filed a tax return; and (3) have not received a refund or an overpayment associated with their EIC claim, nor has such overpayment been applied to their tax liability. For purposes of this class definition "threshold criteria to claim an EIC" are: (1) an income level within the range of that specified for EIC eligibility pursuant to 26 U.S.C. § 32; and (2) a filing status consistent with eligibility for the EIC pursuant to 26 U.S.C. § 32.

The Claims-Made Class includes a subclass consisting of Potentially Time Barred Claims. The subclass is defined as: all members of the Claims-Made Class who filed a tax return for tax years 1995, 1996 and/or 1999.[7]

Plaintiffs are the named representatives for this class. Plaintiffs Simpao and Cruz are the named representatives for the Potentially Time-Barred subclass.

The specific relief sought for the Claims-Made Class, as a whole, consists of either: (1) declaratory relief stating the tax returns they have already filed constitute timely and allowable claims for refund of the overpayment associated with their EICs, or are sufficient to allow amendment of such claims; or, alternatively, (2) injunctive relief requiring the

---

[6] Tax years 1997 and 1998 are excluded from this class because, on information and belief, the Government of Guam provided an adequate EIC claims mechanism and procedure for those tax years. Should discovery indicate adequate claims procedures were not provided, Plaintiffs preserve their right to seek modification of the Class Definition to include taxpayers with claims based on their 1997 and 1998 tax returns in the Claims-Made Class.

[7] Tax year 2000 is not included because in the potentially Time Barred Claims Class the Santos action tolled the time period for filing an EIC claim as of February 12, 2004. Absent tolling, the limitations period for tax year 2000 would have expired April 15, 2004. If tolling does not apply, taxpayers asserting claims for tax year 2000 should be included in the Potentially Time Barred Subclass.

PLAINTIFFS' MOTION FOR   - 17
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006   Document 429-6   Filed 06/22/2007   Page 18 of 38

1  Government to provide notice to Class members of their entitlement to the EIC and a procedure

2  and schedule under which such claims can be made.

3      The additional or alternative relief sought for the Potentially Time-Barred Subclass

4  includes declaratory relief the Government is estopped from asserting the applicable statutory

5  limitations period to bar Plaintiffs from filing claims now for refund of 1995, 1996, and 1999

6  EIC overpayment. Such claims may be filed within a reasonable time as set by the Court.

7  **B.    The Refund Class**

8      Claim Four is brought on behalf of the Refund Class. The Refund Class is defined as:

9          All Guam income taxpayers who, for any or all of tax years
           1995–2003, were: (1) eligible to receive the EIC pursuant to the
10         Organic Act and/or the Guam EIC; (2) filed a timely and
           allowable administrative claim for refund of the overpayment of
11         their EIC; and (3) have not received a refund of the overpayment
           nor has the overpayment been applied to offset their tax liability.
12         For purposes of this class definition, a "timely and allowable
           administrative claim" includes claims filed pursuant to any relief
13         granted any portion of the "Claims-Made Class," as well as
           claims timely filed pursuant to applicable provisions of the tax
14         code.

15  The relief sought for the Refund Class includes declaratory relief that the EIC applies to Guam

16  taxpayers either through the Organic Act or pursuant to the Guam EIC and payment of the

17  refund due based on the EIC claims. Plaintiffs Simpao, Naputi and Cruz are the named

18  representatives for this Class.

19  **C.    The Future Refund Class**

20      Claims Five and Six are brought on behalf of the Future Refund Class. This proposed

21  Class includes:

22         All Guam citizens who, for any or all of tax year 2000 and any
           subsequent year in which the EIC remains authorized by law:
23         (1) were or will be eligible to receive the EIC pursuant to either
           the Organic Act and/or the Guam EIC; (2) have not yet filed a tax
24         return; (3) are still able to file a timely and allowable
           administrative claim, pursuant to 26 U.S.C. § 6511, for refund of
25         an overpayment associated with an EIC to which they are
           entitled; and (4) have not received a refund of an overpayment
26         associated with an EIC, nor has such an overpayment been
           applied to offset their tax liability.

PLAINTIFFS' MOTION FOR   - 18
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL. 671 472 1131 • FAX 671 472 2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206 682 5600 • FAX 206 682 2992

Case 1:04-cv-00006   Document 429-6   Filed 06/22/2007   Page 19 of 38

The relief sought for the Future Refund Class includes declaratory relief that the EIC applies to Guam taxpayers either through the Organic Act or pursuant to the Guam EIC and injunctive relief requiring the Government to: (1) process and pay EIC claims in the time and manner required by law; and (2) establish and fund the Reserve Fund and Trust Funds mandated by the Legislature in 11 GCA § 50101 and § 51101. Plaintiffs Simpao, Naputi and Cruz are the named representatives for this Class.

Plaintiffs seek to certify this action on behalf of all proposed Classes as a mandatory class pursuant to Rule 23 (b)(1) and (2).

## IV. THE LAW SUPPORTS CERTIFICATION OF THIS ACTION FOR CLASS TREATMENT

### A. The Principles Governing a Class Certification Determination

The decision whether to certify a class is left to the sound discretion of the Court. *Staton v. Boeing*, 327 F.3d 938, 953 (9th Cir. 2003). The Court's determination will be upheld if it appears from the record the Court considered all the criteria of Rule 23. *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1161 (9th Cir. 2001) (reversing denial of class certification where trial court did not apply Rule 23 criteria). Courts favor a liberal interpretation of Rule 23, rather than a restrictive one. *Bower v. Bunker Hill Co.*, 114 F.R.D. 587, 592 (E.D. Wash. 1986) (a "liberal construction [is] intended for Rule 23"). "[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require." *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968); *see also* Fed. R. Civ. P. 23(c)(1) ("An order under this subsection may be conditional, and may be altered or amended before the decision on the merits.").

Application of the Rule 23 criteria is independent of any consideration of the merits of the complaint. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140 (1974). There is "nothing in either the language or the history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be

PLAINTIFFS' MOTION FOR - 19
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-6    Filed 06/22/2007    Page 20 of 38

maintained as a class action." *Id* at 177. To the contrary, "a court is bound to take the substantive allegations of the complaint as true . . . ." *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).

The issue on the instant motion, therefore, is not whether the Class will prevail on the remaining issues. Indeed Plaintiffs have already prevailed on the primary issues. Rather, the Court must decide whether this case raises common issues of law or fact, and whether unitary adjudication of these common issues is manageable and superior to the alternatives of piecemeal litigation or non-redress of claims. *See* Fed. R. Civ. P. 23

For the reasons set forth below, application of Rule 23's requirements demonstrates certification of the Class proposed is both appropriate and necessary in this case.

**B.    All Class Claims Meet Rule 23(a) Requirements for Class Treatment**

   1.    Rule 23(a) Requirements

There are four prerequisites to class certification under Fed. R. Civ. P. 23 (a):

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions or law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

   2.    The Numerosity Requirement is Satisfied in This Action

Rule 23(a)(1) requires a class be sufficiently numerous to make joinder of all members impracticable. Notably, joinder is not required to be impossible — merely impracticable. *Smith v. University of Washington School of Law*, 2 F. Supp. 2d 1324, 1340 (W.D. Wash. 1998) citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964). In addition to the expected number of Class members, other factors to consider include: "geographical dispersion, degree of sophistication, and class members' reluctance to sue individually." *Rodriguez v. Carlson*, 166 F.R.D. 465, 471 (E.D. Wash. 1996). *See also Jordan*

PLAINTIFFS' MOTION FOR    - 20
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-6    Filed 06/22/2007    Page 21 of 38

1 | *v. Los Angeles*, 669 F.2d 1311, 1319 (9th Cir.1982), *vacated on other grounds*, 459 U.S. 810,
2 | 103 S.Ct. 35, 74 L.Ed.2d 48 (1982).

3       Here, the numerosity requirement is easily met. Based on the number of EIC claims
4 | filed in 1994, Plaintiffs estimate the Class numbers in the thousands. Over 9,000 claims were
5 | filed in 1994. Further, over 15,000 claims have been filed in response to the Governor's recent
6 | Executive Order establishing a claims procedure. *See* Canto Decl., Ex. K. In addition,
7 | individuals comprising the putative Classes are likely to be reluctant or unable to bring their
8 | own actions since the majority of them, as shown by their qualification for the EIC, are most
9 | likely unable to front the fees necessary for representation. In addition, individual recoveries
10 | are relatively small ranging from $2 to $4,000, further decreasing the likelihood individual
11 | claims would be pursued.

12       3.    <u>Numerous Questions of Law and Fact Are Common to the Proposed Classes</u>

13       Rule 23(a)(2) requires there be "questions of law or facts common to the class." The
14 | commonality requirement is liberally construed. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011,
15 | 1019 (9th Cir. 1998). "The threshold for commonality is not high." *Mortimore v. Federal*
16 | *Deposit Ins. Corp.*, 197 F.R.D. 432, 436 (W.D. Wash. 2000) citing *Jenkins v. Raymark*
17 | *Industries, Inc.*, 782 F.2d 468, 472 (5th Cir.1986). It "is satisfied when a party has engaged in
18 | a standard course of conduct which adversely affects a group of individuals and gives rise to a
19 | claim for relief." *Bjustrom v. Trust One Management Corp., 199 F.R.D.* 346, 348 (W.D. Wash.
20 | 2001); *see also Mortimore*, 197 F.R.D. at 436 ("Plaintiff's allegations must arise from a
21 | common nucleus of operative fact, and the defendants must have engaged in a common course
22 | of conduct").

23       Here, each Class member's cause of action derives from a single course of conduct by
24 | the Government: its public announcement the EIC was no longer applicable in Guam; its
25 | printing of tax forms that blocked out sections designated to claim the EIC; and its refusal to
26 | process and pay claims made for EICs. Plaintiffs and Class members all seek the same relief:

PLAINTIFFS' MOTION FOR    - 21
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-6    Filed 06/22/2007    Page 22 of 38

an ability to submit claims for EICs and recovery of EICs owed them by the Government. Further, "[c]lass treatment is not precluded by the fact determination of the refund amount might require individualized assessment." *Appoloni v. U.S.*, 218 F.R.D. 556, 562 (W.D. Mich. 2003) (certifying tax refund action for class treatment.) The application of the governing federal and Guam statutes to these claims is uniform. All claims in this case raise uniform issues of law. The common issues include but are not limited to the following:

1.  Whether Guam taxpayers are entitled to notice now that they are entitled to claim the EIC on income tax returns for tax years 1995, 1996, and 1999–2003;

2.  Whether the Government wrongly represented on published tax forms and through other means that the EIC was unavailable to Guam taxpayers in any or all of tax years 1995, 1996, 1999-2003;

3.  Whether the Government provided notice and a process for EIC claims sufficient to satisfy the basic requirements of Due Process for tax years 1995, 1996 and 1999-2003;

4.  Whether the Government has waived any requirement that taxpayers who filed income tax returns for tax years 1995, 1996 and 1999-2003 are required to make a more sufficient claim for an EIC;

5.  Whether Plaintiffs are entitled to declaratory relief;

6.  Whether the Government acted in bad faith in 1996 when it terminated the EIC made applicable to Guam taxpayers through the Organic Act;

7.  Whether the Government acted in bad faith in 1999 and all years subsequent when it refused to pay EIC claims and/or provide notice and a procedure to make EIC claims despite provisions of the Organic Act and the Guam EIC requiring it to do so;

8.  Whether the EIC claims of the Potentially Time Barred subclass are, in fact, time barred, in light of the Government's conduct directed toward all subclass members;

9.  Whether the Government's conduct has caused a serious injustice;

PLAINTIFFS' MOTION FOR - 22
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagåtña, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006 Document 429-6 Filed 06/22/2007 Page 23 of 38

10. Whether payment of EIC claims will cause the public's interest to suffer undue damage;

11. Whether the Government has provided a clear and certain post-deprivation remedy by which Plaintiffs could have claimed their right to a refund of EIC overpayments to which they were entitled; and

12. Whether Plaintiffs who were denied a post-deprivation remedy have no alternative adequate remedy at law, thus entitling them to the injunctive relief.

The proposed class meets the commonality requirement.

### 4. The Claims of the Representative Plaintiffs Are Typical of the Claims of the Classes

Rule 23(a)(3) further requires "the claims and defenses of the representative parties are typical of the claims or defenses of the class." "The typicality requirement . . . is closely related to the commonality requirement . . . ." *Bjustrom*, 199 F.R.D. at 349. *See also General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364 (1982).

> The . . . requirement is designed to assure that the named representative's interests are aligned with those of the class. Where there is such an alignment of interests, a named plaintiff who vigorously pursues his or her own interests will necessarily advance the interests of the class. . . .
>
> The named plaintiff's claim will be typical of the class where there is a nexus between the injury suffered by the plaintiff and the injury suffered by the class. Thus, a named plaintiff's claim is typical if it stems from the same event, practice, or course of conduct that forms the basis of the class claims and is based upon the same legal or remedial theory.

*Jordan v. County of Los Angeles*, 669 F.2d 1311, 1321 (9th Cir.1982), *judgment vacated on other grounds*, 459 U.S. 810, 103 S.Ct. 35 (1982).

> When it is alleged that the same unlawful conduct was directed at or affected both the named Plaintiff and the class sought to be represented, the typicality requirement is usually satisfied, irrespective of varying fact patterns which underlie individual claims. Smith, 2 F. Supp. 2d at 1342. [T]ypicality turns on the defendant's actions toward the Plaintiff class, not particularized defenses against individual class members.

PLAINTIFFS' MOTION FOR   - 23
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006   Document 429-6   Filed 06/22/2007   Page 24 of 38

1    *Id.* (citation omitted).

2       Each of the named Plaintiffs have claims typical of the Classes they represent. All have

3 suffered from the Government's illegal conduct refusing to process and pay EIC claims

4 rightfully due. The claims of Plaintiffs and Class members thus arise from the same course of

5 conduct by Defendant, are based on the same legal theories, and seek the same relief. The

6 typicality requirement is met.

7       5.    <u>The Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the</u>
<u>Interests of the Classes</u>

8

9       Adequate representation 'depends on the qualifications of counsel
for the representatives, an absence of antagonism, a sharing of
interests between representatives and absentees, and the

10       unlikelihood that the suit is collusive.

11 *Molski v. Gleich,* 318 F.3d 937, 955 (9th Cir. 2003) citing *Crawford v. Honig,* 37 F.3d 485, 487

12 (9th Cir. 1995) (amended opinion)

13       The representative Plaintiffs in this case seek to force Defendant to accept, process, and

14 pay all taxpayers' proper claims for EICs as required by law. Thus, Plaintiffs' claims are

15 coextensive with, and not antagonistic to, the claims asserted on behalf of the Classes. Any

16 potential conflicts between Class members with time barred claims and those whose claims are

17 not so barred have been largely eviscerated by the summary judgment holding in this present

18 case that *all* Class members have exhausted administrative remedies. To the extent any such

19 conflicts exist, however, Plaintiffs have addressed the issue through establishment of an

20 appropriate subclass.

21       Plaintiffs are committed to vigorously prosecuting these actions on behalf of their

22 respective Class members. In fact, Plaintiffs have demonstrated that commitment through their

23 prior motion practice establishing Defendant's liability for these claims.

24       Plaintiffs have also retained experience class counsel highly experienced in certifying,

25 litigating, trying, and settling statewide and nationwide class actions, including actions

26 involving consumer fraud, unfair business practices, and defective products. Plaintiff's counsel

PLAINTIFFS' MOTION FOR   - 24
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-6    Filed 06/22/2007    Page 25 of 38

have been found by many state and federal courts to be able, fair, and experienced class advocates. *See* Declaration of Kim D. Stephens submitted in support of this motion. Class counsel have been court-appointed to represent plaintiff classes in numerous complex, multi-state and nationwide class actions.

In sum, the named Plaintiffs and Class counsel readily satisfy the requirements of Rule 23(a)(4).

## C. Certification of all Claims Under Rule 23(b)(1) and (2) is Appropriate

### 1. Rule 23(b) identifies three alternative sets of criteria for class certification

Once the requirements of Rule 23(a) are satisfied, an action may be maintained as a class action under Rule 23(b) if it meets any one of the following criteria:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

PLAINTIFFS' MOTION FOR - 25
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006   Document 429-6   Filed 06/22/2007   Page 26 of 38

Fed. R. Civ. P. 23 (b).

When a class is certified under Rule 23(b)(1) or (2) its members are not entitled to notice and an opportunity to opt out. *See* Rule 23(c)(2) (noting the requirement for notice and an opportunity to opt out is only mandatory for cases certified under Rule 23(b)(3)). Under the discretionary authority provided in Rule 23(d)(2), however, the Court has the discretion to require notice and the right to opt-out even for a (b)(1) or (b)(2) class. *See Molski v. Gleich*, 318 F.3d at 947 (9th Cir. 2003) (noting same).

2. <u>This action meets the definition of a Rule 23(b)(1) or (b)(2) class</u>

Here, the criteria for certification under 23(b)(1) and (b)(2) are easily met. The primary and threshold relief Plaintiffs seek is declaratory and injunctive relief to declare their right to EICs, address issues of whether certain claims are time barred, establish a procedural mechanism to claim EICs, and to receive efficient refund of EICs found due. Thus, as required under Rule 23(b)(1) prosecution of separate actions could create a risk of inconsistent adjudications, *see* Rule 23(b)(1)(A). Specifically, separate actions could result in inconsistent adjudications regarding whether a given plaintiff's claims are time barred. Further, this action will "as a practical matter be dispositive of the interests of the other members not parties." Fed. R. Civ. P 23(b)(1)(B). It is dispositive of all class members' interest in establishing once and for all the EIC applies in Guam. In addition, this action has the characteristics of those generally recognized as suitable for certification under Rule 23(b)(1), *i.e.*, it challenges the conduct or practices of a defendant required by law to deal with all class members in the same way, the relief sought is a combination of injunctive and monetary relief, and other individual suits are reasonably expected to be filed. *See* Newberg on Class Actions, Vol. 2 at 26-33 (discussing characteristics of practical candidates for certification under Rule 23(b)(1)(A)).

These claims also fit the certification category defined by Rule 23(b)(2). Defendants have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as

PLAINTIFFS' MOTION FOR    - 26
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-6    Filed 06/22/2007    Page 27 of 38

a whole . . . ." Fed. R. Civ. P. 23(b)(2). As noted above, the government conduct at issue here was uniformly applied to all class members and the declaratory and injunctive relief sought will be as well. Thus, the claims satisfy the 23(b)(2) criteria.

Courts have certified tax cases under 23(b)(2) in similar circumstances, where the bulk of relief sought is declaratory and injunctive in nature. The holding in *Nelson v. Regan*, 560 F.Supp. 1101, 1105 (D.C. Conn. 1983) *aff'd by* 731 F.2d 105, 110 (2nd Cir. 1984) is instructive:

> An action, such as this, seeking declaratory and injunctive relief against government officials is the archetype of one where class action designation is straightforward, but largely a formality. Rule 23(b)(2) authorizes maintenance of a class action when "the party opposing the class has acted or refused to act on grounds generally applicable to the class." That is clearly the case here. This case may be maintained as a class action, extending to those who have had or will have their tax refunds intercepted and paid over to the State of Connecticut.

Plaintiffs here are similar, their tax credits have been "intercepted" and held hostage by the Government of Guam. *See also Sorenson v. Sec. of Treas.*, 752 F.2d 1433, 1440 (9th Cir. 1985) *aff'd by* 475 U.S. 851, 106 S.Ct. 1600 (1986); *Oatman v. Dept. of Treasury-I.R.S.*, 34 F.3d 787, 789 (9th Cir. 1994).

> 3.   <u>The fact that Claim Four also seeks money damages in the form of the actual refund of EICs does not preclude certification under 23(b)(2).</u>

In the Ninth Circuit:

> Class actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary damages.

*Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003) quoting *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986). Where money damages are sought the appropriateness of certification pursuant to Rule 23(b)(2) depends on two factors: (1) whether money damages are the predominant form of relief sought by the Plaintiffs; and (2) whether "substantial money damages are involved." *See id.* at 946-951 (discussing at length the criteria for (b)(2) certification where money damages are sought). There is no bright-line rule. Rather the

PLAINTIFFS' MOTION FOR     - 27
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006     Document 429-6     Filed 06/22/2007     Page 28 of 38

1  determination depends on examination of the specific facts and circumstances of each case. *Id.*
2  at 950.

3       Here both tests are met. As delineated in their Complaint the relief sought by Plaintiffs
4  in this action includes: a declaration the EIC applies in Guam; a declaration tax returns
5  already filed are sufficient to exhaust administrative remedies for purposes of bringing an EIC
6  tax refund action; an injunction requiring the Government to establish a mechanism whereby
7  class members can submit claims for EICs and requiring the Government to process those
8  claims; an injunction requiring the Government to establish and fund certain Reserve and Trust
9  Funds as mandated by the Legislature specifically to ensure EICs and other tax refunds would
10  be paid in a timely and efficient manner; and actual refund of EICs due. The requests for
11  declaratory and injunctive relief predominate both in number and in substance as no monetary
12  relief can be won absent the declaratory and injunctive relief sought.

13       In addition, this is not a case that involves "substantial" money damages. Although the
14  value of any class member's EIC claim for any given tax year can range from $2 to $4,204,
15  plaintiffs believe discovery will show the majority of claims are in the lower end of this range.

16       Additionally, circumstances in this case ensure class members' due process rights will
17  be adequately protected despite certification of mandatory class. Specifically, class members
18  will have direct input as to the amount of their recovery through their participation in the claims
19  procedure secured by injunctive relief. In addition the amount of money damages due flows
20  naturally and incidentally from the declaratory and injunctive relief sought. Indeed, their
21  calculation is formulaic and governed by existing tax tables.

22       Further, if after all the facts are known, the Court has concerns that individual damage
23  amounts are significant enough to warrant an opt out opportunity for individual class members,
24  the Court can afford appropriate notice be given to the class and provide that opportunity. *See*
25  *Molski*, 318 F.3d at 951 (noting due process concerns raised by (b)(2) certification of money
26  claims can be addressed by giving class members the right to opt out).

PLAINTIFFS' MOTION FOR  - 28
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagåtña, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006    Document 429-6    Filed 06/22/2007    Page 29 of 38

4.    <u>Alternatively, Claim Four Meets the Requirements for Certification Under Rule 23(b)(3)</u>

If the Court perceives Claim Four as primarily a claim for money damages requiring certification pursuant to Rule 23(b)(3), the court can bifurcate the claims and certify Claim Four as a (b)(3) class. Those criteria are easily met by the claim.

a.    *Common Questions of Law and Fact Predominate Over Individual Issues*

A court should grant 23(b)(3) class certification when the questions of law and fact common to all Class members predominate over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 594, 117 S.Ct. 2231 (1997). It focuses on the relationship between common and individual issues. "When common issues present a significant aspect of the case and they can be resolved for all members of the Class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (citations and quotations omitted).

Here, the two main issues presented in this case (whether the EIC applies in Guam, and whether class members have collectively exhausted administrative remedies) are without question central to this case. Their favorable resolution through summary judgment is potentially dispositive of any subsequent individual trials. Thus, the predominance requirement is easily met.

b.    *A Class Action is Superior to a Multiplicity of Litigations as a Means of Fairly and Efficiently Adjudicating Class Members' Claims*

To justify certification under 23(b)(3) this Court must find a "class action is superior to other available methods for fair and efficient adjudication of the controversy." "A class action may be superior if class litigation of common issues will reduce litigation costs and promote greater efficiency, or if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1235 (9th Cir.1996). Thus, a court must "balance, in terms of fairness and

PLAINTIFFS' MOTION FOR   - 29
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagåtña, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006     Document 429-6     Filed 06/22/2007     Page 30 of 38

1  efficiency, the merits of a class action against those of 'alternative available methods' of

2  adjudication." *Georgine v. Amchem Prods. Inc.*, 83 F.3d 610, 632 (3d Cir.1996). Factors the

3  Court should consider in making this determination are prescribed by the Rule:

4  
> The matters pertinent to the findings include: (A) the interest of
5  members of the class in individually controlling the prosecution
   or defense of separate actions; (B) the extent and nature of any
6  litigation concerning the controversy already commenced by or
   against members of the class; (C) the desirability or
7  undesirability of concentrating the litigation of the claims in the
   particular forum; (D) the difficulties likely to be encountered in
8  the management of a class action.

9  Fed. R. Civ. P 23(b)(3).

10  Use of the class device here will conserve scarce judicial and government resources.

11  The alternative is to require thousands of Guam taxpayers to seek their own counsel and

12  individually litigate claims most of which are well under $4,000. Under these circumstances,

13  Class members simply do not have a strong interest in individually controlling the prosecution

14  of a separate action. Notably, while few taxpayers filed suit while the Government wrongfully

15  deprived them of their EICs, over 15,000 have submitted claims for refunds once the

16  Government made a claims procedure available — relief that was sought in this action and

17  arguably brought about by this action. Thus, while there is little question Guam's eligible

18  taxpayers want their EICs, there is also little question they cannot afford to individually litigate

19  their claims.

20  Further, Plaintiffs anticipate discovery will show not all Class members are on Guam.

21  Many may have migrated off island such that adjudication of their claims would occur in a

22  different forum with potentially different results. A class action is also appropriate if

23  duplicative lawsuits with potentially inconsistent results can be avoided. *Mortimore*,

24  197 F.R.D. at 438. Also, there is no difficulty anticipated in managing a class action where the

25  issues are decided on summary judgment and determination of damages is formulaic.

26  Finally, the pendency of two other actions concerning this controversy (the *Santos* and

the *Torres* actions) does not preclude certification here. No other action has, as yet, been

PLAINTIFFS' MOTION FOR   - 30
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagatna, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006   Document 429-6   Filed 06/22/2007   Page 31 of 38

certified for class treatment. The proposed settlement in *Santos* is unlikely to gain court approval. And, unlike this action, no other action has obtained any relief or rulings that benefit the Class.

## V. CONCLUSION

This case meets all requirements of Rule 23 and is especially well suited for class treatment. For all the reasons stated herein, this Court should exercise its discretion to manage what could be tens of thousands of individual actions as a fair and efficient class action. Accordingly, Plaintiffs respectfully request the Court grant Plaintiff's Motion for Class Certification, designate the named Plaintiffs as Class representatives for their respective Classes and Subclasses, appoint Plaintiffs' counsel as Class counsel, and, if necessary, order notice be sent to Class members.

DATED this 5TH day of July, 2005.

VAN DE VELD SHIMIZU CANTO & FISHER

By: _____
James L. Canto II

TOUSLEY BRAIN STEPHENS PLLC
Kim D. Stephens, P.S., *Pro Hac Vice*
Nancy A. Pacharzina, *Pro Hac Vice*
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
206.682.5600

**Attorneys for Plaintiff**

PLAINTIFFS' MOTION FOR   - 31
CLASS CERTIFICATION

VAN DE VELD SHIMIZU CANTO & FISHER
167 East Marine Corps Drive, Suite 101
Hagåtña, Guam 96910
TEL. 671.472.1131 • FAX 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. 206.682.5600 • FAX 206.682.2992

Case 1:04-cv-00006   Document 429-6   Filed 06/22/2007   Page 32 of 38

# TABLE OF CASES AND AUTHORITIES

## CASES

Amchem Products, Inc. v. Windsor,
521 U.S. 591, 117 S.Ct. 2231 (1997) . . . . . . . 28

Appoloni v. United States,
218 F.R.D. 556 (W.D. Mich. 2003) . . . . . . 21

Bjustrom v. Trust One Management Corp.,
199 F.R.D. 346 (W.D. Wash. 2001) . . . . . . 20, 22

Blackie v. Barrack,
524 F.2d 891 (9th Cir. 1975) . . . . . . . 19

Bower v. Bunker Hill,
114 F.R.D. 587 (E.D. Wash. 1986) . . . . . 18

Crawford v. Honig,
37 F.3d 485 (9th Cir. 1995) . . . . . . 23

Eisen v. Carlisle & Jacquelin,
417 U.S. 156, 94 S.Ct. 2140 (1974) . . . . . . 19

Esplin v. Hirschi,
402 F.2d 94 (10th Cir. 1968) . . . . . . 19

General Telephone Co. of Southwest v. Falcon,
457 U.S. 147, 102 S.Ct. 2364 (1982) . . . . 22

Georgine v. Amchem Products, Inc.,
83 F.3d 610 (3rd Cir. 1996) . . . . . 29

Hanlon v. Chrysler Corp.,
150 F.3d 1011 (9th Cir. 1998) . . . . . 20, 28

In re Request of I Mina' Bente Sing'ko Na Liheslaturan Guahan
Relative to the Application of the Earned Income Tax Credit . . 6
Program to Guam Taxpayers,
2001 Guam 3 (S.Ct. Guam 2001)

Jenkins v. Raymark Industries, Inc.,
782 F.2d 468 (5th Cir. 1986) . . . . . 20

Jordan v. Los Angeles,
    669 F.2d 1311 (9ᵗʰ Cir. 1982) · · · · 20, 22-23

Local Joint Exec. Bd. of Culinary/Bartender
    Trust Fund v. Las Vegas Sands, Inc.,
    244 F.3d 1152 (9ᵗʰ Cir. 2001) · · · · · 18

Molski v. Gleich,
    318 F.3d 937 (9ᵗʰ Cir. 2003) · · · · 23, 25, 26-27, 28

Mortimore v. Federal Deposit Ins. Corp.,
    197 F.R.D. 432 (W.D. Wash. 2000) · · · · · 20, 21, 30

Nelson v. Regan,
    560 F. Supp. 1101 (D.C. Conn. 1983) · · · · 26

Oatman v. Dept. of Treas.,
    34 F.3d 787 (9th Cir. 1994) · · · · · 26

Probe v. State Teachers' Ret. Sys.,
    780 F.2d 776 (9ᵗʰ Cir. 1986) · · · · · 27

Rodriguez v. Carlson,
    166 F.R.D. 465 (E.D. Wash. 1996) · · · · · 20

Smith v. University of Washington
    School of Law,
    2 F. Supp. 2d 1324 (W.D. Wash. 1998) · · · · 20

Staton v. Boeing,
    327 F.3d 938 (9th Cir. 2003) · · · · 18

Sorenson v. Sec. of Treas.,
    752 F.2d 1433 (9th Cir. 1985) · · · · · 26

Valentino v. Carter-Wallace, Inc.,
    97 F.3d 1227 (9ᵗʰ Cir. 1996) · · · · · 29

## STATUTES, REGULATIONS AND RULES

Fed. R. Civ. P. Rule 23 · · · · · passim

Fed. R. Civ. P. Rule 23 (a) · · · · · · 19

Fed. R. Civ. P. Rule 23 (b)          .     .     .     .     .     .          24-25

Fed. R. Civ. P. Rule 23 (b)(1)(A)    .     .     .     .     .     .          25

Fed. R. Civ. P. Rule 23 (b)(1)(B)    .     .     .     .     .     .          25

Fed. R. Civ. P. Rule 23 (b)(2)       .     .     .     .     .     .          26

Fed. R. Civ. P. Rule 23 (b)(3)       .     .     .     .     .     .          28, 29

Fed. R. Civ. P. Rule 23 (c)(1)       .     .     .     .     .     .          19

Fed. R. Civ. P. Rule 23 (c)(2)       .     .     .     .     .     .          25

11 Guam Code Annotated §42101              .     .     .     .     .          6

11 Guam Code Annotated §50101              .     .     .     .     .          7

11 Guam Code Annotated §50102        .     .     .     .     .     .          7

11 Guam Code Annotated §50103        .     .     .     .     .     .          7

11 Guam Code Annotated §50105        .     .     .     .     .     .          7

11 Guam Code Annotated §50106        .     .     .     .     .     .          7

11 Guam Code Annotated §50107        .     .     .     .     .     .          7

11 Guam Code Annotated §51101        .     .     .     .     .     .          7

11 Guam Code Annotated §51102        .     .     .     .     .     .          7

11 Guam Code Annotated §51105        .     .     .     .     .     .          8

11 Guam Code Annotated §51106        .     .     .     .     .     .          8

11 Guam Code Annotated §51107        .     .     .     .     .     .          8

## OTHER AUTHORITIES

Attorney General of Guam Memorandum
    Opinion No. DOA 89-0750                 .     .     .     .          5

Attorney General of Guam Memorandum
    Opinion No. DRT/DOA 96-001        .     .     .     .     .          5

Department of Revenue and Taxation
   Revenue Ruling 96-001          .     .     .     .     .          5

Governor of Guam Executive Order No. 2005-01     .     .     .     .          10

Order, J. Martinez, District Court of Guam Civil
   Case No. 04-00049, June 15, 2005     .     .     .     .          5-6, 10-11

Newberg on Class Actions
   Vol. 2 at 26-33          .     .     .     .          25-26

# CERTIFICATE OF SERVICE

I, JAMES L. CANTO II, certify that I caused a copy of the foregoing document here filed to be served on the following individuals or entities on July 5, 2005, via hand delivery at the following addresses:

Counsel for Defendant
Douglas B. Moylan, Esq.
Office of the Attorney General of Guam
Pedro's Plaza
247 West O'Brien Drive
Hagatna, Guam 96910

Office of the Governor of Guam
Governor's Complex
East Marine Corps Drive
Adelup, Guam 96910

Respectfully submitted this _JULY 5, 2005_

VAN DE VELD SHIMIZU CANTO & FISHER
TOUSLEY BRAIN STEPHENS PLLC

James L. Canto II
Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

I, CURTIS C. VAN DE VELD, certify that I caused a copy of the foregoing document here filed to be served on the following individuals or entities on August 25, 2006, via hand delivery at the following addresses:

Counsel for Petitioner
   Charmaine Torres
Peter C. Perez, Esq.
Lujan, Aguigui & Perez, LLP
Pacific News Bldg., Ste. 300
238 Archbishop Flores St.
Hagatna, Guam 96910

Counsel for Respondent
   Felix P. Camacho
Daniel M. Benjamin, Esq.
Calvo & Clark, LLP
655 S. Marine Corps Drive, Ste. 202
Tamuning, Guam 96913

Counsel for Respondent
   Felix P. Camacho
Shannon Taitano, Esq.
Office of the Governor of Guam
Governor's Complex
East Marine Corps Drive
Adelup, Guam 96910

Counsel for Respondents
   Artemio Ilagan and Lourdes Perez
Rawlen M.T. Mantanona, Esq.
Cabot Mantanona LLP
BankPacific Building, 2nd Floor
825 South Marine Corps Drive
Tamuning, Guam 96913

Counsel for Petitioner
   Julie Babauta Santos
Michael F. Phillips, Esq.
Phillips & Bordallo, P.C.
410 West O'Brien Drive
Hagatna, Guam 96910

Respectfully submitted this _25 August 2006_.

VAN DE VELD SHIMIZU CANTO & FISHER
TOUSLEY BRAIN STEPHENS PLLC

_____
Curtis C. Van de veld
Attorneys for Plaintiffs

# EXHIBIT I

| | |
|---|---|
| JULIE BABAUTA SANTOS, *et al.*, | Civil Case No. 04-00006 |
| Petitioners, | |
| -v- | |
| FELIX P. CAMACHO, *et al.*, | |
| Respondents. | |
| CHARMAINE R. TORRES, *et al.*, | |
| Plaintiffs, | Civil Case No. 04-00038 |
| -v- | |
| GOVERNMENT OF GUAM, *et al.*, | |
| Defendants. | |
| MARY GRACE SIMPAO, *et al.*, | |
| Plaintiffs, | Civil Case No. 04-00049 |
| -v- | |
| GOVERNMENT OF GUAM, | |
| Defendant. | |
| -v- | |
| FELIX P. CAMACHO, Governor of Guam, | |
| Intervenor-Defendant. | |

## DECLARATION OF GINA M. INTREPIDO ON ADEQUACY OF SETTLEMENT NOTICE

DECLARATION OF GINA M. INTREPIDO ON ADEQUACY OF SETTLEMENT NOTICE

1. My name is Gina M. Intrepido. I have personal knowledge of the matters set forth herein, and I am competent to testify regarding these matters at a trial or hearing.

## INTRODUCTION

2. I am the Vice President and Media Director of Hilsoft Notifications; a company located near Philadelphia, in Souderton, Pennsylvania, that specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans. I have worked on many of the most significant class action lawsuits in the United States and Canada involving all aspects of notice dissemination.

## OVERVIEW

3. I have been asked by Class members Mary Grace Simpao and Janice Cruz to provide an opinion as to whether the class notice provided for the Santos-Torres settlement represents the best practicable notice under the circumstances and meets the standards widely accepted as necessary to ensure Class members' due process rights are met.

4. To form my opinion I reviewed the following documents: (1) the Notice of Submission of Amended Class Action Settlement Agreement filed January 8, 2007 (the "Settlement Agreement"), including the "Notice Program," the "Class Notice" attached thereto as Exhibit C, and the separate "Cover Letter" referring to the consequences of depositing or not depositing the check attached thereto as Exhibit D; (2) Ex Parte Request

for Approval of Additional Forms filed March 8, 1007 and attachments; and (3) the Joint Motion for Final Approval of the Class Action Settlement Agreement filed on June 8, 2007. Additionally, I reviewed related background materials that I regularly consult in the course of my work.

5. In my opinion, the Notice Program at issue was not the best practicable, and was not reasonably calculated to actually inform those affected by the Settlement. The Notice Program was defective and insufficient to satisfy Class members' due process rights. It suffered from a myriad of problems in a) how it was disseminated; b) the information the Class Notice contained (or did not contain); and c) how the Class Notice was designed. It did not incorporate common practices utilized in the legal notification field—practices that apply not only to worldwide or national class actions, but to all class actions big or small.

6. This declaration, following a summary of the credentials that allow me to provide the opinions expressed in this declaration, will provide detailed observations that support my conclusions.

## EXPERIENCE RELEVANT TO THIS CASE

7. Hilsoft Notifications' c.v., attached as **Exhibit 1**, identifies many of our more than 220 major cases, in the course of which our notices have appeared in more than 209 countries and 53 languages. It also contains numerous judicial comments citing our

expertise, as well as articles and publications that I and other experts on our staff have published on the subject of the adequacy and design of legal notice efforts.

8.     We have been recognized and appointed by courts in many of the largest and most significant cases in history, including *In re Holocaust Victims Assets Litig.* (the Swiss Banks litigation affecting Holocaust survivors and their heirs around the world), No. CV-96-4849, E.D. N.Y.; *In re Domestic Air Transp. Antitrust Litig.* (involving 50 million air travelers in the U.S.), MDL 861, N.D. Ga.; *Avery v. State Farm* (the aftermarket auto parts litigation affecting 30 million policyholders), No. 97-L-114, Ill. Cir. Ct., Williamson Co.; *Cox v. Shell Oil* (the $950 million settlement of the polybutylene pipe litigation), No. 18,844, Tenn. Ch.; *In re Dow Corning Corp.* (the global "Breast Implant" bankruptcy affecting millions of women in many countries), No. 95-20512-11-AJS, E.D. Mich.; *In re Synthroid Marketing Litig.* (involving nine million women in the U.S. and abroad), MDL 1182, N.D. Ill.; *Thompson v. Metropolitan Life Ins. Co.* (the race-based pricing litigation affecting 25 million policyholders and heirs since 1901), No. 00 Civ. 5071 (HB), S.D.N.Y.; *In re Royal Ahold Securities and ERISA Litig.* (the $1.1 billion settlement of the first globally certified and notified shareholder class), MDL 1539, D. Md.; *In re Residential Schools Class Action Litig.* (the approximately $4 billion settlement of numerous class actions in Canada involving century-old abuses of Aboriginal people), No. 00-cv-192059, Ont. S.C.J.; and many others.

9.     More specifically, our qualifications include leadership in both the method

and form of notice, for example:

a)     We brought to courts the methodology they now embrace to help

them determine adequacy of notice: calculating, where possible, the percentage of

class members who will be reached with notice through audience coverage

analyses, *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534 (N.D. Ga.

1992), in order to objectively determine the adequacy of proposed notice plans;

and

b)     We were asked to collaborate with the Federal Judicial Center (the

"FJC") to write and design the illustrative, "model" forms of notices—designed to

be noticed—to embody the satisfaction of the new plain language requirements of

Federal Rule of Civil Procedure 23(c)(2). To assist judges and attorneys, in state

as well as federal courts, the FJC has posted the notices we created, with

attribution, at www.fjc.gov.[1]  Judge Lee H. Rosenthal, now Chair of the Advisory

Committee on Civil Rules of the Judicial Conference of the United States, stated to

Hilsoft Notification President, Todd B. Hilsee, at a January 22, 2002 public

hearing in Washington, D.C. on the proposed changes to Rule 23:

> *I want to tell you how much we collectively appreciate your*
> *working with the Federal Judicial Center to improve the*
> *quality of the model notices that they're developing. That's*
> *a tremendous contribution and we appreciate that very*
> *much . . . You raised three points that are criteria for good*
> *noticing, and I was interested in your thoughts on how the*
> *rule itself that we've proposed could better support the*

---

[1] Mr. Hilsee served as the only notice expert, among other legal and academic commentators, who was invited to testify before the Advisory Committee on Civil Rules of the Judicial Conference of the United States during the comment period on the then proposed amendments to Federal Rule of Civil Procedure 23, calling for "concise, clear, 'plain language' notices."

*creation of those or the insistence on those kinds of notices*
. . . .

10.    Our President, Todd B. Hilsee, was the first notice expert recognized in

published decisions in the United States, and the first notice expert recognized in Canada:

a)    Judge Marvin Shoob stated in his decision in *Domestic Air*, 141

F.R.D. 534, 548 (N.D. Ga. 1992):

> *The Court finds Mr. Hilsee's testimony to be credible. Mr.
> Hilsee's experience is in the advertising industry. It is his
> job to determine the best way to reach the most people.
> Mr. Hilsee answered all questions in a forthright and
> clear manner. Mr. Hilsee performed additional research
> prior to the evidentiary hearing in response to certain
> questions that were put to him by defendants at his
> deposition . . . The Court believes that Mr. Hilsee further
> enhanced his credibility when he deferred responding to
> the defendant's deposition questions at a time when he did
> not have the responsive data available and instead utilized
> the research facilities normally used in his industry to
> provide the requested information.*

b)    Mr. Justice Cumming stated on September 13, 2000 in *Wilson v.*

*Servier* (the national fen/phen litigation"), No. 98-CV-158832, Ont. S.C.J:

> *[A] class-notification expert, Mr. Todd Hilsee, to provide
> advice and to design an appropriate class action notice
> plan for this proceeding. Mr. Hilsee's credentials and
> expertise are impressive. The defendants accepted him as
> an expert witness. Mr. Hilsee provided evidence through an
> extensive report by way of affidavit, upon which he had
> been cross-examined. His report meets the criteria for
> admissibility as expert evidence. R. v. Lavallee, [1990] 1
> S.C.R. 852.*

11.    Our staff has written numerous articles, including law review articles, on

notice and due process, teaching that effective notice and due process depend upon clear

communication with people affected—desiring to actually inform them—not just going through the motions. See, for example, Todd B. Hilsee, Shannon R. Wheatman & Gina M. Intrepido, *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice Is More Than Just Plain Language: A Desire to Actually Inform*, 18 GEO. J. LEGAL ETHICS 1359 (Fall 2005); and Todd B. Hilsee, Gina M. Intrepido, & Shannon R. Wheatman, Hurricanes, *Mobility and Due Process. The "Desire to Inform" Requirement for Effective Class Notice is Highlighted by Katrina*, 80 TULANE L. REV. 1771 (June 2006).

12. Mr. Hilsee, who shares the opinions in this declaration, has been recognized by courts for his testimony as to which method of notification is appropriate for a given case, and has provided testimony on numerous occasions on whether a certain method of notice represents the best notice practicable under the circumstances. No court has ever rejected his opinions or found his testimony to be unreliable or incredible. For example:

a) Judge Eldon E. Fallon stated on January 30, 2007 in *Turner v. Murphy Oil, USA, Inc.* (2007 WL 283431, at *6, E.D. La.), involving environmental damage and remediation of property damage after Hurricane Katrina:

> *Mr. Hilsee is a highly regarded expert in class action notice who has extensive experience designing and executing notice programs that have been approved by courts across the country. Furthermore, he has handled notice plans in class action cases affected by Hurricanes Katrina, Rita, and Wilma, see In re High Sulfur Content Gasoline Products Liability Litigation, MDL 1632, p. 15-*

> 16 (E.D. La. Sept. 6, 2006) (Findings of Fact and
> Conclusions of Law in Support of Final Approval of Class
> Settlement), and has recently published an article on this
> very subject, see Todd B. Hilsee, Gina M. Intrepido, &
> Shannon R. Wheatman, Hurricanes, Mobility, and Due
> Process: The "Desire to Inform" Requirement for Effective
> Class Notice is Highlighted by Katrina, 80 Tul. L. Rev.
> 1771 (2006) (detailing obstacles and solutions to providing
> effective notice after Hurricane Katrina).

b)    Judge Fred Biery stated on September 30, 2003 in *McManus v.*

*Fleetwood Enter., Inc.*, (No. SA-99-CA-464-FB, W.D. Tex.):

> Based upon the uncontroverted showing Class Counsel
> have submitted to the Court, the Court finds that the
> settling parties undertook a thorough notice campaign
> designed by Todd Hilsee of Hilsoft Notifications, a
> nationally-recognized expert in this specialized field . . . .
> The Court finds and concludes that the Notice Program as
> designed and implemented provided the best practicable
> notice to the members of the Class, and satisfied the
> requirements of due process.

c)    Judge James T. Genovese stated on May 27, 2003 in *West v. G&H*

*Seed Co.*, (No. 99-C-4984-A, La. Jud. Dist. Ct. St. Landry Parish), involving

crawfish crop decimation from chemicals:

> The court finds that, considering the testimony of Mr.
> Hilsee, the nature of this particular case, and the
> certifications that this court rendered in its original
> judgment which have been affirmed by the – for the most
> part, affirmed by the appellate courts, the court finds Mr.
> Hilsee to be quite knowledgeable in his field and certainly
> familiar with these types of cases . . . the notice has to be
> one that is practicable under the circumstances. The notice
> provided and prepared by Mr. Hilsee accomplishes that
> purpose . . . .

13.    We have been appointed to serve the United States government, the

Canadian government, as well as numerous international commissions and non-

governmental organizations, to develop and implement effective notice programs, for example, the $10 billion Tobacco Transition Payment Program for the United States Department of Agriculture (the largest claims process in history); the German Slave Labor Fund outreach program for the International Organization for Migration; and the Nazi-era European insurance policy media program for former U.S. Secretary of State Lawrence S. Eagleburger's International Commission on Holocaust Era Insurance Claims (ICHEIC).

14.     Mr. Hilsee has spoken on class action notice at law schools, judges' roundtables, and national and state bar association seminars, institutes, and symposiums. His notice and due process educational materials have been utilized at Columbia Law School, New York University School of Law, Temple Law School, Cleveland-Marshall College of Law, and Tulane Law School.[2]

15.     Numerous other court opinions, and comments as to his testimony and opinions on the adequacy of notice, are included in the attached c.v.

16.     In forming my opinions I draw from other experience in the communications industry. Coming from one of New York's largest "Madison Avenue" advertising agency media departments, my experience includes planning and buying media, the field most relevant for designing notice programs that reach a class effectively.

---

[2] Prof. Arthur R. Miller, Bruce Bromley Professor of Law, Harvard Law School, stated in a letter addressed to Mr. Hilsee dated June 2, 2004: "I read your piece on *Mullane* with great interest and am delighted to learn the details. Indeed, I will probably incorporate some of it in my teaching next fall. I think your analysis is rock solid."

I also have years of advertising media planning, buying, and research experience with dozens of Hilsoft Notifications' cases in which I have worked directly with Todd Hilsee.

## ANALYSIS

17.     Based on the experience outlined above as well as in our c.v., I am qualified to opine on the adequacy of this class action Notice Program including the dissemination of notice and the design and content of the notice materials. The following outlines the deficiencies of the Notice Program.

## *DEFICIENT METHOD OF DISSEMINATION*

18.     The Notice Program did not provide the Court with the proper research and analysis to determine its effectiveness in reaching the Class, including address updating techniques, mobility statistics, and reach calculating methodologies.

19.     ***The Notice Program made no attempt to update addresses prior to mailing.*** It is my understanding that the Class Notice was simply mailed to the last known address of any individual who may have fallen within the earned income credit "EIC" Class at the last known address appearing on the Department of Revenue and Taxation's ("DRT") computerized records. It is also my understanding that these addresses were not updated prior to mailing, even though the DRT's database contained addresses dating back to the 1995-2004 Class period. As the mobility data below will demonstrate, no mailing list is totally accurate and simple steps could and should have been performed to ensure that the mailing was effective.

20.　　　Addresses could have been easily and inexpensively updated prior to mailing by using the National Change of Address ("NCOA")[3] database compiled by the United States Postal Service ("U.S.P.S.") from the change of address information it receives. Further, with such a manageable list other third-party lookup services such as ALLFND, maintained by LexisNexis, could have been utilized. ALLFND uses a variety of third-party sources to compare latest addresses for U.S. adults, and returns updated addresses for them. When social security numbers are available, as they were here, an address updating service should certainly be employed—if not at the offset, than at least on the mailings that were returned as undeliverable—to ensure an effective mailing effort. Such updating efforts are routine practice in class action notice, yet I found no indication that any such steps were taken prior to or after the initial mailing effort—a simple effort that would reduce the number of returns.

21.　　　It is my understanding that one possible reason behind not employing such standard address updating efforts such as the social security number look-up may have been based on concern over disclosing individual taxpayer information to any third party except as authorized by law. This concern need not be an issue in a case such as this because there is no need to disclose any tax information to a third party service such as ALLFND, but rather a social security number. ALLFND would not need nor require any additional information to perform their look-up service. In fact, they would not even need

---

[3] The NCOA database contains records of all permanent changes of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and known address.

Case 1:04-cv-00006　　Document 429-7　　Filed 06/22/2007　　Page 12 of 32

to know that the social security look-up service is being performed for a class action involving tax information.

22. ***The Notice Program failed to address mobility concerns.*** According to the U.S. Census Bureau, 29.7% of persons five years of age and over lived at a different house in Guam over the five year period of 1995 to 2000, and another 17.4% no longer lived in Guam, thereby indicating that nearly half (47.1%) of Guam's population moved to a different address in only a five year period.[4] Considering the Class here dates back twelve years and the Class period covers nine years, it is probable that many Class members may no longer live at the last known address available on the DRT's database for the Class period.

23. ***The Notice Program does not acknowledge the mobility among the lower income Class member demographic.*** U.S. Census Bureau data also indicates that people with incomes below poverty, all of whom would qualify as EIC Class members, were more likely to move (24%) than those above poverty (13%), further intensifying the need for address updating for this particular Class.[5] Compounding this problem even further, individuals in Guam are nearly twice as likely to be below the poverty level versus individuals in the United States—23.0% versus 12.4%.

---

[4] *See* U.S. Census Bureau's *Population and Housing Profile: 2000 for Geography: Guam*, available online at www.census.gov/Press-Release/www/2002/guamstatelevel.pdf (last visited June 20, 2007).
[5] *See* U.S. Census Bureau's *Geographic Mobility: 2002 to 2003 Population Characteristics*, available online at www.census.gov/prod/2004pubs/p20-549.pdf (last visited June 20, 2007).

24. ***The Notice Program failed to acknowledge the military segment of the***

***Class.*** The Notice Program failed to address the likelihood that the military segment of the Class may no longer be stationed in Guam, further supporting the need for an effective address updating effort. The U.S. military maintains jurisdiction over bases comprising approximately one quarter of the island's area. Although only 7.0%-10.9% of Guam's population consisted of the military and their dependents during the Class period of 1995-2004,[6] the military is a population that changes on a regular basis. According to the assistant secretary of defense, accompanied tours in Guam have recently (as of January 1, 2006) increased from 24 to 36 months, and unaccompanied tours increased from 15 to 24 months.[7]

25. ***The Notice Program knowingly failed to provide individual mailed notice***

***to all reasonably identifiable Class members.*** The Notice Program mailing effort failed to include those tax filings not yet entered into the DRT's computer system even though these filings may have included Class members. It is not clear to me why a Class member should be penalized as a result of the DRT's inability to keep its database current. I believe every effort should have been made by the DRT to update its database before potentially binding these Class members by the settlement. The notice expert is guided by case law and statute to provide individual notice when reasonable and practicable. In my opinion, individual mailed notice to these individuals was both reasonable and practicable in this instance.

---

[6] *See* COMNAVMAR (as reported by Guam Department of Commerce and other sources), available online at www.spc.int/prism/country/gu/stats/Census/military.htm. (last visited June 20, 2007).

[7] See *Guam Tour Lengths*, available online at usmilitary.about.com/b/a139665.htm. (last visited June 20, 2007).

DECLARATION OF GINA M. INTREPIDO ON ADEQUACY OF SETTLEMENT NOTICE

13

26.    ***The Notice Program failed to provide any measurable data on the recommended publications.***    It is standard policy for media experts to provide rationale for their media selection, yet the Notice Program did not provide any information on the reader demographics, circulation, audience, etc. of the two local newspapers that were utilized, nor any indication as to the reach that they may have achieved among the Class.

27.    ***The Notice Program failed to provide any details about the mailings.***    In addition to the lack of address updating techniques, the Notice Program did not provide the Court with any details about the mailing, that is, the actual number of mailings that would be sent, information on whether or not they believed that the mailing lists were comprehensive, the date on which mailings were to be distributed, the method for handling mailings returned as undeliverable, a sample or description of how the mailer would actually look, a sample or description of how the outside of the mailer would actually look in order to overcome the perception of junk mail and attract Class members' attention.    It is common practice for a notice program to provide the detailed components of a mailing effort prior to court approval and implementation.

28.    ***The Notice Program failed to provide reach among the Class.***    The Notice Program provided no calculations as to the percentage of potential Class members it intended to reach, even though it is routine practice in notice planning to do so.    Courts have recognized the merits of reach quantification—even when challenged—and leading notice professionals have adopted this model since our introduction of it to the class action

notice field 15 years ago. It is reasonable to undertake reach calculations and provide them to the Court, because advertising media professionals do this work as part of routine media planning, and because courts need, expect, and are regularly provided with this information in notice planning situations.

29. It is extremely important to provide courts with reach statistics, because a notice program can appear to provide effective notice when readily available statistics show that it is actually reaching a small percentage of the class. State and federal courts have embraced and cited notice programs reaching an overwhelming majority (75%-90% or more) of a given class. **Exhibit 2** provides favorable comments on the reach of our notice programs that we have received from numerous state and federal courts.

## *CONCERNS WITH NOTICE DESIGN*

30. Due process requires the notice expert to execute notice the way he would if he "desired to actually inform."[8] Therefore, a class action notice—if it is to reach the people it needs to reach—must be designed to be noticed, with key information readily available, and be easy to act upon.

31. This Class Notice, even if received by any substantial percentage of Class members, is unlikely to have been noticed or understood. The Class Notice does not in any way follow the model notices that we designed in collaboration with the FJC: it

---

[8] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950), "But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."

Case 1:04-cv-00006    Document 429-7    Filed 06/22/2007    Page 16 of 32

contains no callout or headline to capture attention; it is difficult to read with its lengthy, small text; it does not invite response; and in fact, it does not incorporate any design features that are standard practice in the legal notification field, for class actions big or small. A more brief "summary" notice should have been provided, as is common practice, especially considering the lower income, less educated Class demographis for this particular case. In my opinion, it is the notice expert's duty to design a notice that will aspire to capture the attention of potential Class members in a format that is simple to read and follow, so that they can clearly understand their rights and options. That was not done here.

32. ***The Class Notice lacks a headline.*** The Class Notice lacks a true headline. Instead, it provides a case caption that does not even alert readers who may be potential Class members that they should read the Notice and why it is important. The use of the case caption as a headline, in my opinion, did not help gain the attention of readers who had no idea that such a lawsuit affected them in any way, and did not prompt interest in reading the Notice.

33. A headline—an attention-getting lead-in, in a large, noticeable, and bold font—is a critical device on a notice of any type in order to attract the attention of the people the notice is designed to reach. The FJC as well as the advertising industry understand the importance of a headline.

a) The FJC's *Manual for Complex Litigation* advises practitioners to take steps to capture the attention of class members:

> *Published notice should be designed to catch the attention of the class members to whom it applies. In many cases, a one-page summary of the salient points is useful, leaving fuller explanation for a separate document. Headlines and formatting should draw the reader's attention to key features of the notice. A short, informative blurb ("If you were exposed to ___, you may have a claim in a proposed class action settlement") on the outside of a mailing envelope serves a similar purpose.[9]*

b)     A headline must be used to alert the proper individuals that it affects them and why it is important to read. In fact, "[t]he headline is the most important element in most advertisements. It is the telegram which tells the reader whether to read the copy . . ."[10] Without a noticeable headline, your audience may not read the notice at all. You must "[g]et your message in the headline . . . . Research shows that four out of five readers do not get further than the headline.[11]

c)     The FJC's model notices use the same language on the back of the outside of the mailer as they do on their publication notice and individual notice to call to the attention of the intended recipient by letting the reader know why they should read the notice and why it is important. Attached as **Exhibit 3** are the state of the art modern notices that we helped draft with the FJC.

34.     ***The capitalized text is difficult to read.*** If a Class member even came across this Class Notice in the mail or in one of the two newspapers, they would have been met by the case caption and nine lines of bold text in all caps. **HEADLINES AND LONG STRINGS OF TEXT SHOULD NOT BE WRITTEN IN ALL CAPITAL LETTERS BECAUSE IT MAKES READABILITY EXTREMELY DIFFICULT**

---

[9] MANUAL FOR COMPLEX LITIGATION, §21.31(4th ed. 2004).
[10] DAVID OGILVY, CONFESSIONS OF AN ADVERTISING MAN 104 (1976).
[11] KENNETH ROMAN & JANE MAAS, HOW TO ADVERTISE 32 (1976).

Case 1:04-cv-00006     Document 429-7     Filed 06/22/2007     Page 18 of 32

**AND COMPREHENSION LESS LIKELY.** Readers quickly tune out and turn away from such notices. Long sentences written in all capital letters should always be avoided.

35.     *The fine print and wall to wall words are cumbersome to read.* Fine print notices containing wall to wall words, such as we have here, have a high probability of being ignored as a blur amongst a plethora of ads and/or mailed solicitations; therefore, the Class Notice was not reasonably certain to inform the Class, and instead was virtually certain <u>not</u> to inform them. The Class Notice was presented to the Court in a six-page format (8.5" x 11"). It was then reformatted to fit into a two-page spread in tabloid publications, measuring approximately 10.5" x 15". For reference, the size of the Class Notice as it would be printed in the *Marianas Variety* (we were unable to obtain an actual copy) is attached as **Exhibit 4**. In my opinion, this runs afoul of the guidance the Supreme Court provided when it rejected a "bad" publication notice more than 50 years ago—because the word count is way too high to fit into these notices properly.[12] We were unable to obtain a copy of the Class Notice as it was mailed to Class members; therefore, we can only assume that it was mailed in the six-page (8.5" x 11") format that was submitted to the Court. With that in mind, the mailing itself was also in fine print that is cumbersome and undesirable to read.

---

[12] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950), "Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed. The chance of actual notice is further reduced when as here the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention."

36.    ***The mailer envelope did not capture attention.***    It is common practice for a notice program to include the outside of the mailer for courts to see and approve prior to implementation, especially because the outside of the mailing is just as critical as the headline of a publication notice, yet it is my understanding that one was not provided here and that the mailings were sent in a plain, unmarked envelope. Consumers are jaded by so many solicitations that are disguised as "official mail" that they have become distrustful of direct mail solicitations. As such, consumers cannot easily tell the difference between a marketing offer and an official announcement. I have attached, as **Exhibit 5**, just a few illustrations of this sort of "junk mail" that consumers regularly receive, and are likely to disregard or discard. One typical piece of mail is an envelope that reports: "Important Document Enclosed" which turns out to be a pitch from a credit card company. Another typical mailing is a plain brown envelope with official type that says "Rate Overpayment Notification," which is in fact a long distance telephone service offer. A "Final Notice" from Exxon is in fact a credit card offer. Numerous manila envelopes with government-style return address indicia including the standard "penalty for private use . . ." language turn out to be various solicitations.[13]

37.    The U.S.P.S. data confirms that these trends are having a deleterious effect on readership of mail, and very few people read all the mail they get which they perceive

---

[13] Todd Hilsee has testified on these issues many times and the problems here are of the sort that he dealt with in *Ting v. AT&T*. In that case, Judge Bernard Zimmerman stated the following, based on my testimony on the topic: "[f]rom the perspective of affecting a person's legal rights, the most effective communication is generally one that is direct and specific. In this case, that would have been to boldly place on the separate mailing envelope at least the message that a new contract was enclosed rather than the generic 'Important Information' notification." *Ting v. AT&T*, 182 F. Supp. 2d 902, 912-913 (N.D. Cal. 2002), *aff'd in part, rev'd in part on other grounds*, 319 F. 3d 1126 (9th Cir. 2003).

to be solicitations. In 2006, the percentage of recipients who do <u>not</u> usually read all of their advertising mail increased to 89%.[14] Research done on comprehension of class action notices found that only 2% of participants receiving a notice (written in legalistic language like the Class Notice here) would read the notice carefully, while 39% reported they would throw it away or file it.[15]

38. The FJC's model notices were deliberately designed to avoid the perception of a notice being a solicitation, by including a careful return address: "Notice Administrator for U.S. District Court." Research done by the FJC found that the Court's name in the return address would motivate people to open the envelope because the mailing would seem more legitimate.[16]

39. Research done by the FJC also found that a direct declaration of the envelope's content would entice people to read the contents.[17] The model notices we created for, and which were endorsed by, the FJC include appropriate call-outs on the outside of the mailer.[18] For example, the FJC's securities notice states on the front: **"Notice to those who bought XYZ Corp. stock in 1999"** and on the back: **"If you**

---

[14] United States Postal Service, Household Diary Study, at 40 (2006) available at www.usps.com/householddiary/_pdf/usps_fy2006_report_finall_all.pdf (last visited May 17, 2007).

[15] Shannon Wheatman, The Effects of Plain Language Drafting on Layperson's Comprehension of Class Action Notices (2001) (unpublished Ph.D. dissertation, University of Georgia) (on file with the University of Georgia Library).

[16] *See* Shannon Wheatman et al., *Class Action Study: Final Report to the Advisory Committee on Civil Rules*, Federal Judicial Center (2002).

[17] *See* Shannon Wheatman et al., *Class Action Study: Final Report to the Advisory Committee on Civil Rules*, Federal Judicial Center (2002).

[18] *See* FJC's website at www.fjc.gov to see the models, including the envelopes, and for more details on their research (click on "Class Action Notices Page" and go to the link to see more information in the "Overview of Methodology" section).

**bought XYZ Corp. stock in 1999, you could get a payment from a class action settlement."** Numerous courts have approved our notices with such call-outs in actual practice.

40.    *The layout of the Class Notice does not follow the FJC model notices.*
The Class Notice does not follow the format of the FJC model notices. Instead, it is written in a legal style pleading format that would certainly not attract the attention of any lay person, especially the lower income, less educated EIC Class member demographic. It is visually unappealing and extremely lengthy and cumbersome to read. According to the FJC "converting the notice to plain language is not the only way to improve communications with class members . . . experience tells us that attorneys and judges can significantly improve class members' motivation to read and comprehend class action notices by changing the language, organizational structure, format, and presentation of the notice."[19] As mentioned earlier, it is common practice to provide Class members with a "summary" notice that highlights all of the critical information about Class members' rights and options, but this was not done here. The notice format provided in this situation, in my opinion, is completely unacceptable dating class action notices to the *Mullane* era.

41.    *Section breaks are not logical and are difficult to navigate.* The Class Notice is lengthy and illogical in its layout. For instance, the claims process is not clearly

---

[19] *See* FJC's website at www.fjc.gov for more details on their research (click on "Class Action Notices Page" and go to the link to see more information in the "Overview of Methodology" section).

defined in one distinct section, but rather broken into various unnecessary subsections adding confusion for the reader. Additionally, key dates are not clearly identifiable within the different sections, instead the reader is redirected throughout the notice to locate the simple information they desire. A notice must be well organized with categories and sub-headings. Redundancy only makes readers tired, and prevents them from understanding, because many stop reading such a notice altogether. Main points should be summarized early.

42. ***Simple reference mechanisms are not provided.*** The Class Notice does not contain a simple reference regarding Class member rights and options (and the deadline to exercise them). A summary box that clearly outlines Class members' rights and options should have been provided and the deadlines to exercise them should have been highlighted. The Class Notice does not even contain a simple reference regarding who is included in the Class. An easy to read graphical flow chart that asked simple questions, and depending on a "yes" or "no" answer of the reader would prompt them to continue on to the next question or inform them that they are not a Class member would have provided assistance in determining Class membership, however this simple design feature was not employed here. In addition, the last page of the Class Notice contains a "Deadlines" section; however, the entire section is bold and difficult to read. A more effective design feature would have been to bold key dates where ever they are located in the notice and have a summary box of rights, options, and corresponding dates. It is standard practice for notices to include simple summary mechanisms because it is visually

appealing and it allows class members to easily view and understand their rights and options.

## *DEFICIENCIES IN NOTICE CONTENT*

43.     The Class Notice is not written in plain language nor is it designed to be readable and understandable.     Many Class members would have a difficult if not impossible time understanding their rights and options in the lawsuit.     From a communications perspective, the language used to inform Class members of their rights and options—both the words and the way in which they were written—is inadequate. The Class Notice does not follow accepted standards for effectively written notices.

44.     ***The Class Notice does not provide a clear definition of confusing terms.***

Nowhere in the Class Notice are key terms that are not common to the average person defined. Any person who began to read the Class Notice would likely have been confused by the legalistic terminology. Class members do not naturally understand concepts in class actions. For example, the term "class members" will not be understood by most readers.     The FJC found that "class" was a legal term that was often confused by participants in their study investigating comprehension of class action notices.[20]     Other key terms that should be clearly defined include: "Exclusion," "Opt-out," "Objection," "Bound/Barred," "Plaintiff," "Respondent," and "Litigation."

---

[20] Shannon Wheatman, The Effects of Plain Language Drafting on Layperson's Comprehension of Class Action Notices (2001) (unpublished Ph.D. dissertation, University of Georgia) (on file with the University of Georgia Library).

Case 1:04-cv-00006   Document 429-7   Filed 06/22/2007   Page 24 of 32

45. ***The Class Notice uses confusing legalistic (legalese) words and phrases.***

The Class Notice uses complicated, legalistic words and phrases that Class members are

not likely to understand, such as:

  a) Intervene
  b) Disputed claims
  c) Vacated
  d) Waiving any right to interest
  e) Rescission
  f) Divided proportionately among each claimant
  g) Related pending action
  h) Application of Offsets
  i) Asserting various affirmative defenses
  j) Right to contend particular determinations
  k) Compliance with the procedures and deadlines
  l) Respondents admit liability
  m) Commenced reserving money
  n) Monitor compliance with the Settlement
  o) Warranted
  p) Sufficient
  q) Reserved amount is insufficient
  r) Utilize other funding sources
  s) Pursuant to the provisions
  t) Released and waived
  u) Construed
  v) Admission of liability or obligation
  w) Set forth herein
  x) Dismiss the Litigation with prejudice
  y) Forever barred from prosecuting
  z) Expressly and irrevocably release, waive, settle, and discharge
  aa) Equitable
  bb) Covenant not to sue
  cc) Construed and preclude
  dd) In compliance with the procedures set forth herein
  ee) Seek to intervene in the Litigation

ff)    Rescind the previous settlement

gg)    Rendered void

It is important for the notice expert to remember that unlike lawyers, judges, and professionals engaged in the legal field, 83.2% of the 215 million adults in the United States have <u>not</u> graduated from college.[21] Similarly, 75.6% of Guam's adult 25+ population have less than an associated degree or higher.[22] In fact, about half of U.S. adults read at or below an eighth grade level.[23] Writing in plain language is of utmost importance, especially when communicating to a lower income, less educated class.

46.    ***Important points are lost due to confusing language.*** The Class Notice does not explain why no new claims are being accepted for tax years 1997 and 1998. Additionally, the exclusion date is confusing; Section VII. C. states that exclusion requests must be made by May 8, 2007; however, Section IV, E. 3. states that "you will retain the right to opt-out of the Settlement prior to final approval based upon the procedures set forth herein." The terms "exclusion" and "opt-out" are used interchangeably, but never defined as being different terms for the same action. The "Notice of Previous Settlement" discusses the Simpao case, but confuses readers by referring to it both as the "Simpao case" and "Other Litigation."

---

[21] United States Census Bureau, *Educational Attainment of the Population* (Mar. 2005).
[22] *See* U.S. Census Bureau's *2000 Population and Housing Profle: 2000 for Geography: Guam*, available online at www.census.gov/Press-Release/www/2002/guamstatelevel.pdf (last visited June 20, 2007).
[23] National Center for Education Statistics, *Adult Literacy Survey* (1992).

47.    *The Class Notice does not provide a toll free number or website address.*

It is common practice for a notice program to provide both a toll free number and website as a simple, convenient mechanism for class members to obtain additional information about the class action, if desired. An interactive home page on the worldwide web allows class members to obtain additional information and documents about the settlement, including the settlement agreement, answers to common questions, a claim form, notice in different languages (when necessary), and other information. It is common practice for the website address and toll free number to be prominently displayed in all advertising. However, in this case, no convenient response mechanisms were provided for Class members to use to obtain additional information.

## *OTHER NOTICE RELATED PROBLEMS*

48.    *The Notice Program did not address language concerns.* According to the U.S. Census Bureau, only 38.3% of Guam's population of five years of age and older speak only English at home, with 61.7% speaking a language other than English.[24] Of those who speak another language at home, 22.2% speak Chamorro and 22.2% speak Philippine languages. It is common practice to have notices translated into other languages and made readily available to Class members by either calling a toll free phone number and requesting it or visiting a website with a link to translated notice documents.

---

[24] *See* U.S. Census Bureau's *2000 Population and Housing Profile: 2000 for Geography: Guam*, available online at www.census.gov/Press-Release/www/2002/guamstatelevel.pdf (last visited June 20, 2007).

49. ***The Notice Program did not incorporate an informational release.***
Earned media activities (i.e., efforts to present a fair and neutral statement via an informational press release, not via paid advertising) provide an important role and help get the word out through credible news sources about this important matter. Earned media efforts may also generate electronic media coverage. It is common practice for a notice program to incorporate a party-neutral, Court-approved informational release into its efforts. A news release serves a potentially valuable role, providing additional notice exposure beyond that which will be provided through paid media. There is no guarantee that any news stories will result, but if they do, class members gain additional opportunities to learn that their rights are at stake in credible news media, adding to their understanding.


50. ***Procedures are onerous to Class members.*** The objection process is onerous in that it requires an objector to send their objection to six different places. The claims process is even more complex in that eligibility is shifted entirely to the Class member who must file a form for each year in which they were eligible. During the sixty day notice period, these individuals were required to locate each of their qualifying tax returns, and inevitably for most, request copies from the Internal Revenue Service ("IRS") at their own expense. The IRS charges $39 for a copy of each return,[25] which seems ridiculous to pay in order to receive a tax credit withheld by the government.

---

[25] *See* Request for Copy of Tax Return available online at www.irs.gov/pub/irs-pdf/f4506.pdf (last visited June 20, 2007).

51. In addition, Court documents were not readily available to Class members, instead they could only be obtained at the District Court of Guam during regular business hours. Class counsel was only available by mail or email, when in fact it is common practice for a phone number to be provided.

52. *A final report on implementation should be provided to the Court prior to final approval.* Prior to approving any settlement, a court should be informed as to where and when the notices appeared so that the court knows that the plan was actually implemented as promised. It is also routine practice for the court to be provided with the actual "proof of performances" from the publications, that is, copies of the publications containing the notice as it appeared. Too often, courts are provided with a copy of a notice that is then shrunken down into illegible print for appearance in a publication. Also, it is important for the court to see where within the publication the actual notice appeared—upfront in a main reading section or buried in classifieds. Positioning of a notice obviously has an impact on its readership.

53. Prior to approving a settlement, the court should also be informed as to the number of mailings sent successfully, the number returned as undeliverable, and how undeliverable addresses were updated and resent, and on what date mailings were sent. The Court should also be provided with samples of the mailings as actually printed and distributed to ensure that they too were not negatively altered. Considering that no address

updating services were undertaken in this case, the number of mailings that did not reach their intended recipient will likely be significant.

## CONCLUSIONS

54.    In my opinion, based on the reasons stated above, the Class Notice and Notice Program in this case were woefully inadequate, and did not satisfy due process obligations, let alone statutory notice requirements.

55.    In the course of planning our notification efforts, we take into account the guidance that the Supreme Court provided with respect to the communications principles underlying due process as articulated in *Mullane*: "[T]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."[26]  I would not adopt a notification scheme such as the one undertaken here if I truly wished to inform Class members about their rights and options in the settlement. In my view the Class Notice and Notice Program did not satisfy due process of law.

56.    We have studied numerous efforts to communicate important information in other class action cases, which I have identified earlier and listed on our c.v. Of all these experiences, the communication of the Class members' rights and options in the *Santos-Torres* settlement is among the least effective.

---

[26] *Mullane v. Central Hanover Trust*, 339 U.S. 306 at 315.

57. The effort that was undertaken was deficient as to notice method, form and content, and in my opinion does not represent the "best practicable."

I declare under penalty of perjury under the laws of Pennsylvania and the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed at Souderton, Pennsylvania this 21 day of June , 2007.

Gina M. Intrepido

© 2007 Hilsoft Notifications

# Exhibit 1

# Hilsoft Notifications

*Philadelphia Area Office: 123 East Broad Street, Souderton, PA 18964, (215) 721-2120, (215) 721-6886 fax*

*Leading expert firm for large-scale notice plan design, implementation, and analysis, for claims processes, class actions and mass tort bankruptcies ❖ 1st notice expert recognized in the U.S. in published decisions, and 1ˢᵗ in Canada in published decisions ❖ Brought media audience data to courts to quantify "reach" among class members—now the cornerstone for notice adequacy determinations ❖ Only notice expert to testify to Advisory Committee on Rule 23's plain language req. ❖ Asked to write and design the 'model' notices for the FJC, available at www.fjc.gov ❖ More live testimony than any other expert ❖ Court-approved notice plans withstood challenge to U.S. Supreme Court ❖ 65+ favorable judicial comments–0 unfavorable ❖ Only firm with testifying media experts qualified to perform reach calculations ❖ Numerous critiques of opposing expert inconsistencies ❖ $200 million+ in media placement experience ❖ More than 25 published articles including in law reviews ❖ Leading notice and due process speaker ❖ More than 215 cases with notices appearing in 209 countries and 53 different languages ❖ 25 MDL cases ❖ Equal work for defendants and plaintiffs ❖ Case examples include (also see www.hilsoft.com):*

- Most comprehensive notice ever in a securities class action for the $1.1 billion settlement of *In re Royal Ahold Securities and ERISA Litigation.* Hilsee received court recognition upon settlement approval.
- Largest and most complex class action in Canadian history. Designed/implemented groundbreaking notice to disparate, remote aboriginal people in the multi-billion dollar *In re Residential Schools Litigation.*
- Largest race-based pricing case with national settlement notice to 25 million policyholders in *Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55, 62-68 (S.D. N.Y. 2003).
- Most complex notice program in history by providing worldwide notice in the $1.25 billion settlement of *In re Holocaust Victims Assets,* "**Swiss Banks,**" No. CV-96-4849 (E.D.N.Y.). Designed/implemented all U.S. and international media notice with 500+ publications in 40 countries and 27 languages.
- The largest U.S. claims process ever. Designed/implemented multi-media notice campaign for the **U.S. Dept. of Agriculture's** $10 billion tobacco growers' transition payment program.
- National settlement notice to 40 million people in *Scott v. Blockbuster,* No. D 162-535 (Tex., 136th Jud. Dist.). Withstood collateral review, *Peters v. Blockbuster* 65 S.W.3d 295, 307 (Tex. App.-Beaumont, 2001).
- Multi-national claims bar date notice *In re The Babcock & Wilcox Co.,* No. 00-10992 (E.D. La.) to asbestos personal injury claimants. Opposing notice expert's reach methodology challenge rejected by court.
- National publication notice in *Avery v. State Farm,* No. 97-L-114 (Cir. Ct. Ill.) withstood challenges to Illinois Supreme Court and U.S. Supreme Court, and re-affirmed in *Avery v. State Farm,* 321 Ill. App. 3d 269 (5ᵗʰ Dist. 2001). Notice program untouched when Illinois Supreme Court decertified Class.
- National settlement notice *In re Synthroid Marketing Litig.,* MDL 1182 (N.D. Ill.). Notice withstood appellate challenge, 264 F.3d 712, 716 (C.A.7 (Ill.), 2001).
- Scrutinized opposing notice expert opinion in *Parsons/Currie v. McDonalds* resulting in widely reported published decision, 2004 WL 40841 para. 49-58 (Ont. S.C.J. 2004); upheld on appeal *Currie v. McDonald's Rests. of Canada Ltd.,* 2005 CanLII 3360 (ON C.A.).
- *In re Dow Corning Corp.,* No. 95-20512-11-AJS (Bankr. E.D. Mich.). Designed global breast implant media plans (U.S. and foreign), ensuring that millions of additional women received effective notice of the bar date.
- Notice expertise cited in *Cox v. Shell Oil,* 1995 WL 775363, at *6 (Tenn. Ch. 1995). Notice evidence cited when collateral attack rejected, *Hospitality Mgmt. Assoc., Inc. v. Shell Oil* Co., 591 S.E.2d 611, 621 (S.C., 2004).
- National settlement notice, *Williams v. Weyerhaeuser Co.,* No. 995787, "Hardboard Siding Litigation" (Cal. Super. Ct.). Notice withstood appellate challenge, 2002 WL 373578, at 10 (Cal. App. 1 Dist.).

## KEY STAFF

*Todd B. Hilsee, President* ~ Mr. Hilsee was the first to be recognized in the U.S. and Canada as an expert on the design and adequacy of notice, as a result of his work on *In re Domestic Air Transp. Litig.,* 141 F.R.D. 534 (N.D. Ga., 1992), the first of many decisions citing his pioneering use of media audience data to quantify the "net reach" of unknown class members. A leading advocate of "noticeable" notices, he was the only notice expert invited to testify before the Advisory Committee on amendments to Fed. R. Civ. Proc. 23, and subsequently collaborated to write and design the illustrative "model" plain language notices for the Federal Judicial Center, available at www.fjc.gov. Todd has authored numerous articles on notice and due process including law review and journal articles, e.g., the *Georgetown Journal of Legal Ethics,* and the *Tulane Law Review.* His due process and notice educational materials have been utilized at law schools including: Harvard, Columbia, New York University, Temple and Cleveland-Marshall. As a communications professional, he spent the majority of his

advertising career with Foote, Cone & Belding, the largest U.S. domestic advertising firm, where he was awarded the American Marketing Association's award for effectiveness. He received his B.S. in Marketing from the Pennsylvania State University. Todd can be reached at hilsee@hilsoft.com.

**Barbara A. Coyle, Executive Vice President** ~ With 24 years of media advertising experience, Ms. Coyle specializes in complex media planning and is the leading expert in media efforts requiring global or foreign notification dissemination among highly targeted, hard-to-reach audiences, and, when necessary, broadcast media. From finding displaced holocaust survivors throughout the world to locating Aboriginal media vehicles in remote areas of Canada, from reaching minority tobacco farmers in hundreds of rural counties to prompting responses from securities class members globally, she has overcome challenges which attest to her expertise. Her hallmark negotiations in both print and broadcast media have dramatically extended media budgets, affording effective, defensible reach. She is a Cum Laude graduate of Temple University, with a B.A. in Journalism, where she also received the Carlisle Award for Journalism. Barbara can be reached at bcoyle@hilsoft.com.

**Gina M. Intrepido, Vice President, Media Director** ~ Ms. Intrepido is the leading reach and frequency expert in the notifications field. She hails from "Madison Avenue's" BBDO Worldwide advertising agency, where she devised sophisticated media plans for major accounts such as Gillette, GE, DuPont and HBO. With over 14 years of experience in media research, planning, and buying, she has designed scores of judicially approved notice plans. Her plans include meticulous analyses and bullet-proof validation of effective reach to demographically diverse groups such as displaced Hurricane Katrina victims, homeless people, crawfish farmers, and millions of consumers, including computer purchasers, video renters and prescription drug users. Combined with intense negotiating, she crafts media programs that outperform and cost less than typical plans. Her notice plan critiques have caused other experts to revise their plans to better meet due process obligations. She has also authored articles on effective class reach, notice dissemination, and CAFA issues. She holds a B.A. in Advertising from Penn State University, graduating Summa Cum Laude. Gina can be reached at gintrepido@hilsoft.com.

**Shannon R. Wheatman Ph.D., Vice President, Notice Director** ~ Dr. Wheatman joined Hilsoft Notifications after serving in the Research Division of the Federal Judicial Center in Washington, DC, where she worked with the Civil Rules Advisory Committee on class action studies and was instrumental in the development of model notices to satisfy the plain language notice amendment to Rule 23. Her research and notice expertise is further grounded in her education, including her doctorate dissertation: The effects of plain language drafting on layperson's comprehension of class action notices. She is a court-recognized expert who has composed dozens of court-approved notices, tackling the challenges of communicating complex legal content to distinct psychographic groups, ranging from rural, low income homeowners to affluent foreign stock investors, as well as broad sweeps of the U.S. population. She has authored numerous articles on class actions and other legal issues. Her Ph.D. in Social Psychology is from the University of Georgia; she also holds a Masters in Legal Studies from the University of Nebraska-Lincoln. Shannon can be reached at swheatman@hilsoft.com.

**Carla A. Peak, Notice Manager** ~ Ms. Peak oversees creation, production, and appearance of all manner and form of Hilsoft Notifications' notices. She has successfully implemented notice in more than 35 languages involving thousands of media placements and millions of mailings in both national and international markets. She focuses on delivering the highest quality standards of notice production, as well as research into the effectiveness of notification efforts, and ensuring that expert reports are fully and accurately documented. Her consumer notification experience includes high profile notifications worldwide. She is a Cum Laude graduate of Temple University, with a B.A. in Sociology. Carla can be reached at cpeak@hilsoft.com.

## JUDICIAL COMMENTS

**Judge Lee Rosenthal, *Advisory Committee on Civil Rules of the Judicial Conference of the United States*** (Jan. 22, 2002), addressing Mr. Hilsee in a public hearing on proposed changes to Rule 23:

*I want to tell you how much we collectively appreciate your working with the Federal Judicial Center to improve the quality of the model notices that they're developing. That's a tremendous contribution and we appreciate that very much...You raised three points that are criteria for good noticing, and I was interested in your thoughts on how the rule itself that we've proposed could better support the creation of those or the insistence on those kinds of notices . . .*

**Judge Marvin Shoob, *In re Domestic Air Transp. Antitrust Litig.,* 141 F.R.D. 534, 548 (N.D. Ga. 1992):**

*The Court finds Mr. Hilsee's testimony to be credible. Mr. Hilsee's experience is in the advertising industry. It is his job to determine the best way to reach the most people. Mr. Hilsee*

2

*answered all questions in a forthright and clear manner. Mr. Hilsee performed additional research prior to the evidentiary hearing in response to certain questions that were put to him by defendants at his deposition . . . The Court believes that Mr. Hilsee further enhanced his credibility when he deferred responding to the defendant's deposition questions at a time when he did not have the responsive data available and instead utilized the research facilities normally used in his industry to provide the requested information.*

**Mr. Justice Cumming, *Wilson v. Servier Canada, Inc.,* "National Fen/Phen Litigation", 49 C.P.C. (4th) 233, [2000] O.J. No. 3392:**

*[A] class-notification expert, Mr. Todd Hilsee, to provide advice and to design an appropriate class action notice plan for this proceeding. Mr. Hilsee's credentials and expertise are impressive. The defendants accepted him as an expert witness. Mr. Hilsee provided evidence through an extensive report by way of affidavit, upon which he had been cross-examined. His report meets the criteria for admissibility as expert evidence. R. v. Lavallee, [1990] 1 S.C.R. 852.*

**Judge Elaine E. Bucklo, *Carnegie v. Household International,* (Aug. 28, 2006) No. 98 C 2178 (D. Ct. Ill.):**

*Class members received notice of the proposed settlement pursuant to an extensive notice program designed and implemented by Todd B. Hilsee, of Hilsoft Notifications. Mr. Hilsee has worked with the Federal Judicial Center to improve the quality of class notice. His work has been praised by numerous federal and state judges.*

**Judge Eldon E. Fallon, *Turner v. Murphy, USA, Inc.,* 2007 WL 283431, at \*6 (E.D. La.):**

*Mr. Hilsee is a highly regarded expert in class action notice who has extensive experience designing and executing notice programs that have been approved by courts across the country. Furthermore, he has handled notice plans in class action cases affected by Hurricanes Katrina, Rita, and Wilma, see In re High Sulfur Content Gasoline Products Liability Litigation, MDL 1632, p. 15-16 (E.D. La. Sept. 6, 2006) (Findings of Fact and Conclusions of Law in Support of Final Approval of Class Settlement), and has recently published an article on this very subject, see Todd B. Hilsee, Gina M. Intrepido, & Shannon R. Wheatman, <u>Hurricanes, Mobility, and Due Process: The "Desire to Inform" Requirement for Effective Class Notice is Highlighted by Katrina,</u> <u>80 Tul. L.Rev. 1771 (2006)</u> (detailing obstacles and solutions to providing effective notice after Hurricane Katrina).*

**Judge Kirk D. Johnson, *Zarebski v. Hartford Insurance Company of the Midwest,* (February 13, 2007) Cir. Ct. Ark., No. CV-2006-409-3:**

*Having admitted and reviewed the Affidavit of Todd Hilsee, and received testimony from Mr. Hilsee at the Settlement Approval Hearing concerning the success of the notice campaign, including the fact that written notice reached 91.8% of the potential Class Members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual Class Members who had an earlier opportunity to request exclusion but failed to do so. The Court also concludes that the extremely small number of objections to the Stipulation and Proposed Settlement embodied therein supports the Court's decision to not offer a second exclusion window.*

**Judge William A. Mayhew, *Nature Guard Cement Roofing Shingles Cases.,* (June 29, 2006) J.C.C.P. No. 4215 (Cal. Super. Ct.):**

*The method for dissemination of notice proposed by class counsel and described by the Declaration of Todd Hilsee of Hilsoft Notifications which is attached hereto as Exhibit A, constitute the fairest and best notice practicable under the circumstances of this case, comply with the*

**Judge Sarah S. Vance, *In re Educ. Testing Serv. PLT 7-12 Test Scoring Litig.,* 447 F.Supp.2d 612, 617 (E.D. La. 2006):**

*At the fairness hearing, the Court received testimony from the Notice Administrator, Todd Hilsee, who described the forms and procedure used to notify class members of the proposed settlement*

3

*and their rights with respect to it . . . The Court is satisfied that notice to the class fully complied with the requirements of Rule 23.*

**Judge Douglas L. Combs, *Morris v. Liberty Mutual Fire Ins. Co.,* (Feb. 22, 2005), No. CJ-03-714 (D. Okla.):**

*I want the record also to demonstrate that with regard to notice, although my experience – this Court's experience in class actions is much less than the experience of not only counsel for the plaintiffs, counsel for the defendant, but also the expert witness, Mr. Hilsee, I am very impressed that the notice was able to reach – be delivered to 97 ½ percent members of the class. That, to me, is admirable. And I'm also – at the time that this was initially entered, I was concerned about the ability of notice to be understood by a common, nonlawyer person, when we talk about legalese in a court setting. In this particular notice, not only the summary notice but even the long form of the notice were easily understandable, for somebody who could read the English language, to tell them whether or not they had the opportunity to file a claim.*

**Judge Catherine C. Blake, *In re Royal Ahold Securities and "ERISA" Litig.,* (Jan. 6, 2006) MDL-1539 (D. Md.):**

*I think it's remarkable, as I indicated briefly before, given the breadth and scope of the proposed Class, the global nature of the Class, frankly, that again, at least on a preliminary basis, and I will be getting a final report on this, that the Notice Plan that has been proposed seems very well, very well suited, both in terms of its plain language and in terms of its international reach, to do what I hope will be a very thorough and broad-ranging job of reaching as many of the shareholders, whether individual or institutional, as possibly can be done to participate in what I also preliminarily believe to be a fair, adequate and reasonable settlement.*

**Judge John Speroni, *Avery v. State Farm,* (Feb. 25, 1998) No. 97-L-114, "Auto Parts Litigation" (Ill. Cir. Ct. Williamson Co.) (Withstood challenge to Illinois Supreme Court, and the United States Supreme Court denied certiorari on issues including the notice issues):**

*[T]his Court having carefully considered all of the submissions, and reviewed their basis, finds Mr. Hilsee's testimony to be credible. Mr. Hilsee carefully and conservatively testified to the reach of the Plaintiffs' proposed Notice Plan, supporting the reach numbers with verifiable data on publication readership, demographics and the effect that overlap of published notice would have on the reach figure . . . This Court's opinion as to Mr. Hilsee's credibility, and the scientific basis of his opinions is bolstered by the findings of other judges that Mr. Hilsee's testimony is credible.*

**Judge Joseph R. Goodwin, *In re Serzone Products Liability Litig.,* 231 F.R.D. 221, 231 (S.D. W. Va. 2005):**

*The Notice Plan was drafted by Hilsoft Notifications, a Pennsylvania firm specializing in designing, developing, analyzing and implementing large-scale, unbiased legal notification plans. Hilsoft has disseminated class action notices in more than 150 cases, and it designed the model notices currently displayed on the Federal Judicial Center's website as a template for others to follow...To enhance consumer exposure, Hilsoft studied the demographics and readership of publications among adults who used a prescription drug for depression in the last twelve months. Consequently, Hilsoft chose to utilize media particularly targeting women due to their greater incidence of depression and heavy usage of the medication.*

**Judge John D. Allen, *Desportes v. American General Assurance Co.,* (April 24, 2007) Ga. Super. Ct., No. SU-04-CV-3637:**

[T]he Parties submitted the Affidavit of Todd Hilsee, the Court-appointed Notice Administrator and one of the preeminent class action notice experts in North America. After completing the necessary rigorous analysis, including careful consideration of Mr. Hilsee's Affidavit, the Court finds that [the notice] . . .fully satisfied the requirements of the Georgia Rules of Civil Procedure (including Ga. Code Ann. § 9-11-23(c)(2) and (e)), the Georgia and United States Constitutions (including the Due Process Clause), the Rules of the Court, and any other applicable law.

**Judge Michael Maloan,** *Cox v. Shell Oil,* "Polybutylene Pipe Litigation", 1995 WL 775363, at *6, (Tenn. Ch. Ct.):

> *Cox Class Counsel and the notice providers worked with Todd B. Hilsee, an experienced class action notice consultant, to design a class notice program of unprecedented reach, scope, and effectiveness. Mr. Hilsee was accepted by the Court as a qualified class notice expert . . . He testified at the Fairness Hearing, and his affidavit was also considered by the Court, as to the operation and outcome of this program.*

**Judge Marina Corodemus,** *Talalal v. Cooper Tire & Rubber Co.,* (Oct. 30, 2001) No. MID-L-8839-00 MT (N.J. Super. Ct. Middlesex Co.):

> *The parties have crafted a notice program which satisfies due process requirements without reliance on an unreasonably burdensome direct notification process. The parties have retained Todd Hilsee, president of Hilsoft Notification, who has extensive experience designing similar notice programs...The form of the notice is reasonably calculated to apprise class members of their rights. The notice program is specifically designed to reach a substantial percentage of the putative settlement class members.*

***Currie v. McDonald's Rests. of Canada Ltd.,*** 2005 CanLII 3360 (ON C.A.):

> *The respondents rely upon the evidence of Todd Hilsee, an individual with experience in developing notice programs for class actions. In Hilsee's opinion, the notice to Canadian members of the plaintiff class in Boland was inadequate . . . In response to Hilsee's evidence, the appellants filed the affidavit of Wayne Pines, who prepared the Boland notice plan . . . I am satisfied that it would be substantially unjust to find that the Canadian members of the putative class in Boland had received adequate notice of the proceedings and of their right to opt out . . . I am not persuaded that we should interfere with the motion judge's findings . . . The right to opt out must be made clear and plain to the non-resident class members and I see no basis upon which to disagree with the motion judge's assessment of the notice. Nor would I interfere with the motion judge's finding that the mode of the notice was inadequate.*

**Judge Jerome E. Lebarre,** *Harp v. Qwest Commc'ns,* "Arbitration Litigation", (June 21, 2002) No. 0110-10986, (Ore. Cir. Ct. Multnomah Co.):

> *So, this agreement is not calculated to communicate to plaintiffs any offer. And in this regard I accept the expert testimony conclusions of Mr. Todd Hilsee. Plaintiffs submitted an expert affidavit of Mr. Hilsee dated May 23 of this year, and Mr. Hilsee opines that the User Guide was deceptive and that there were many alternatives available to clearly communicate these matters....*

**Judge Dewey C. Whitenton,** *Ervin v. Movie Gallery, Inc.,* (Nov. 22, 2002) No. 13007 (Tenn. Ch.):

> *Based on the evidence submitted and based on the opinions of Todd Hilsee, a well-recognized expert on the distribution of class notices . . . MGA and class counsel have taken substantial and extraordinary efforts to ensure that as many class members as practicable received notice about the settlement. As demonstrated by the affidavit of Todd Hilsee, the effectiveness of the notice campaign and the very high level of penetration to the settlement class were truly remarkable . . . The notice campaign was highly successful and effective, and it more than satisfied the due process and state law requirements for class notice.*

**Judge Joe E. Griffin,** *Beasley v. Hartford Insurance Company of the Midwest,* (June 13, 2006) No. CV-2005- 58-1 (Cir. Ct. Ark.):

> *Additionally, the Court was provided with expert testimony from Todd Hilsee at the Settlement Approval Hearing concerning the adequacy of the notice program. Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Individual Notice and the Publication Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminarily Approval Order, was the best notice practicable under the circumstances . . . and the requirements of due process under the Arkansas and United States Constitutions.*

**Judge Fred Blery, *McManus v. Fleetwood Enter., Inc.*,** (Sept. 30, 2003) No. SA-99-CA-464-FB, (W.D. Tex.):

*Based upon the uncontroverted showing Class Counsel have submitted to the Court, the Court finds that the settling parties undertook a thorough notice campaign designed by Todd Hilsee of Hilsoft Notifications, a nationally-recognized expert in this specialized field . . . The Court finds and concludes that the Notice Program as designed and implemented provided the best practicable notice to the members of the Class, and satisfied the requirements of due process.*

**Judge Richard G. Stearns, *In re Lupron Marketing and Sales Practice Litig.*,** 228 F.R.D. 75, 96 (D. Mass. 2005):

*With respect to the effectiveness of notice, in the absence of any evidence to the contrary, I accept the testimony of Todd Hilsee that the plan he designed achieved its objective of exposing 80 percent of the members of the consumer class…*

**Mr. Justice Cullity, *Parsons/Currie v. McDonald's Rests. of Can.*,** (Jan. 13, 2004) 2004 Carswell Ont. 76, 45 C.P.C. (5th) 304, [2004] O.J. No.83:

*I found Mr. Hilsee's criticisms of the notice plan in Boland to be far more convincing than Mr. Pines' attempts during cross-examination and in his affidavit to justify his failure to conduct a reach and frequency analysis of McDonald's Canadian customers. I find it impossible to avoid a conclusion that, to the extent that the notice plan he provided related to Canadian customers, it had not received more than a perfunctory attention from him. The fact that the information provided to the court was inaccurate and misleading and that no attempt was made to advise the court after the circulation error had been discovered might possibly be disregarded if the dissemination of the notice fell within an acceptable range of reasonableness. On the basis of Mr. Hilsee's evidence, as well as the standards applied in class proceedings in this court, I am not able to accept that it did.*

**Judge Catherine C. Blake, *In re Royal Ahold Securities & "ERISA" Litig.*,** (June 16, 2006) MDL-1539 (D. Md.):

*In that regard, I would also comment on the notice. The form and scope of the notice in this case, and I'm repeating a little bit what already appeared to me to be evident at the preliminary stage, but the form and scope of the notice has been again remarkable . . . The use of sort of plain language, the targeting of publications and media, the website with the translation into multiple languages, the mailings that have been done, I think you all are to be congratulated, and Mr. Hilsee and Claims Administrator as well.*

**Judge Paul H. Alvarado, *Microsoft I-V Cases*,** (July 6, 2004) J.C.C.P. No. 4106 (Cal. Super. Ct., J.C.C.P. No. 4106):

*[T]he Court finds the notice program of the proposed Settlement was extensive and appropriate. It complied with all requirements of California law and due process. Designed by an expert in the field of class notice, Todd B. Hilsee, the notice plan alone was expected to reach at least 80% of the estimated 14.7 million class members. (Hilsee Decl. Ex. 3, ¶28). The Settlement notice plan was ultimately more successful than anticipated and it now appears that over 80% of the class was notified of the Settlement.*

**Judge Marina Corodemus, *Talalai v. Cooper Tire & Rubber Co.*,** (Sept. 13, 2002) No. L-008830.00 (N.J. Super. Ct. Middlesex Co.):

*Here, the comprehensive bilingual, English and Spanish, court-approved Notice Plan provided by the terms of the settlement meets due process requirements. The Notice Plan used a variety of methods to reach potential class members. For example, short form notices for print media were place . . .throughout the United States and in major national consumer publications which include the most widely read publications among Cooper Tire owner demographic groups . . . Mr. Hilsee designed the notification plan for the proposed settlement in accordance with this court's Nov. 1,*

6

*2001 Order. Mr. Hilsee is the president of Hilsoft Notifications and is well versed in implementing and analyzing the effectiveness of settlement notice plans.*

**Judge Lewis A. Kaplan, *In re Parmalat Securities Litig.,* (March 1, 2007) S.D. N.Y., MDL No. 1653 (LAK):**

*The court approves, as to form and content, the Notice and the Publication Notice, attached hereto as Exhibits 1 and 2, respectively, and finds that the mailing and distribution of the Notice and the publication of the Publication Notice in the manner and the form set forth in Paragraph 6 of this Order and in the Affidavit of Todd B. Hilsee meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Securities Exchange Act of 1934, as emended by Section 21D(a)(7) of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons and entities entitled thereto.*

**Judge Richard J. Shroeder, *St. John v. Am. Home Prods. Corp.,* (Aug. 2, 1999) No. 97-2-06368-4 (Wash. Super. Ct. Spokane Co.):**

*[T]he Court considered the oral argument of counsel together with the documents filed herein, including the Affidavit of Todd B. Hilsee on Notice Plan…The Court finds that plaintiffs' proposed Notice Plan is appropriate and is the best notice practicable under the circumstances by which to apprise absent class members of the pendency of the above-captioned Class Action and their rights respecting that action.*

**Judge Carter Holly, *Richison v. Am. Cemwood Corp.,* (Nov. 18, 2003) No. 005532 (Cal. Super. Ct. San Joaquin Co.):**

*The parties undertook an extensive notice campaign designed by a nationally recognized class action notice expert. See generally, Affidavit of Todd B. Hilsee on Completion of Additional Settlement Notice Plan.*

**Judge Elaine E. Bucklo, *Carnegie v. Household International*, (Aug. 28, 2006) No. 98 C 2178 (D. Ct. Ill.):**

*[T]he Notice was disseminated pursuant to a plan consisting of first class mail and publication developed by Plaintiff's notice consultant, Hilsoft Notification and Todd Hilsee, who the Court recognized as experts in the design of notice plans in class actions. The Notice by first-class mail and publication was provided in an adequate and sufficient manner; constitutes the best notice practicable under the circumstances; and satisfies all requirements of Rule 23(e) and due process.*

**Judge James R. Williamson, *Kline v. The Progressive Corp.,* (Nov. 14, 2002) No. 01-L-6 (Cir. Ct. Ill. Johnson Co.):**

*Notice to the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated. The notice contained the essential elements necessary to satisfy due process . . .*

***Williams v. Weyerhaeuser Co.,* 2002 WL 373578, at \*10 (Cal. App. 1 Dist.):**

*The hybrid notice given here--a combination of individual notice and notice by publication--was, as the trial court found, the best practicable method under the circumstances. The mass media campaign in this case appears to have been far more extensive than that approved in Dunk, supra, 48 Cal.App.4th at pp. 1800, 1805, 56 Cal.Rptr.2d 483. Objectors' own experience indicates the campaign was effective. Three of them received individual notices, two learned of the settlement through advertisements, and the others apparently learned of the settlement when one of them went around the neighborhood and told his neighbors about the settlement.*

**Judge Richard G. Stearns, *In re Lupron® Marketing and Sales Practice Litig.*, (Nov. 24, 2004) MDL 1430 (D. Mass.):**

*After review of the proposed Notice Plan designed by Hilsoft Notifications…is hereby found to be the best practicable notice under the circumstances and, when completed, shall constitute due*

*and sufficient notice of the Settlement and the Fairness Hearing to all persons and entities affected by and/or entitled to participate in the Settlement, in full compliance with the notice requirements of Rule 23 the Federal Rules of Civil Procedure and due process.*

**Hospitality Mgmt. Assoc., Inc. v. Shell Oil Co.,** 356 S.C. 644, 663, 591 S.E.2d 611, 621 (Sup.Ct.S.C. 2004):

*Clearly, the Cox court designed and utilized various procedural safeguards to guarantee sufficient notice under the circumstances. Pursuant to a limited scope of review, we need go no further in deciding the Cox court's findings that notice met due process are entitled to deference.*

**Judge Samuel Conti, Ciabattari v. Toyota Motor Sales, U.S.A., Inc.,** (Nov. 17, 2006) No. C-05-04289-SC (N.D. Cal.):

*After reviewing the evidence and arguments presented by the parties . . . the Court finds as follows: . . . The class members were given the best notice practicable under the circumstances, and that such notice meets the requirements of the Due Process Clause of the U.S. Constitution, and all applicable statutes and rules of court;*

**Judge Stuart R. Pollak, Microsoft I-V Cases,** (April 1, 2001) J.C.C.P. No. CJC-00-004106 (Cal. Super. Ct. San Francisco Co.):

*[C]oncerning dissemination of class notice; and I have reviewed the materials that have been submitted on that subject and basically I'm satisfied. I think it's amazing if you're really getting 80 percent coverage. That's very reassuring. And the papers that you submitted responded to a couple things that had been mentioned before and I am satisfied with all that.*

**Judge Thomas M. Hart, Froeber v. Liberty Mutual Fire Ins. Co.,** (April 19, 2006) Cir. Ct. Ore., No. 00C15234:

*The court has found and now reaffirms that dissemination and publication of the Class Notice in accordance with the terms of the Third Amended Order constitutes the best notice practicable under the circumstances.*

**Judge Dudley Bowen, Andrews/Harper v. MCI,** (Aug. 18, 1995) No. CV 191-185, "900 Number Class Action" (S.D. Ga.):

*Upon consideration of the submissions of counsel and the testimony adduced at the hearing, and upon the findings, observations and conclusions expressed from the bench into the record at the conclusion of the hearing, it is hereby ordered that the aforementioned proposed media plan is approved.*

**Judge Ivan L.R. Lemelle, In re High Sulfur Content Gasoline Prods. Liability Litig.,** (Nov. 8, 2006) MDL No. 1632 (E.D. La.):

*The Notice Plan for this Class Settlement was consistent with the best practices developed for modern-style "plain English" class notices; the Court and Settling Parties invested substantial effort to ensure notice to persons displaced by the Hurricanes of 2005; and as this Court has already determined, the Notice Plan met the requirements of Rule 23 and constitutional due process.*

**Judge Catherine C. Blake, In re Royal Ahold Securities & "ERISA" Litig.,** 437 F.Supp.2d 467, 472 (D. Md. 2006):

*The court hereby finds that the Notice and Notice Plan described herein and in the Order dated January 9, 2006 provided Class Members with the best notice practicable under the circumstances. The Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the Settlement and Plan of Allocation, to all persons entitled to such notice, and the Notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.*

8

**Judge Salvatore F. Cozza, *Delay v. Hurd Millwork Co.,*** (Sept. 11, 1998) No. 97-2-07371-0 (Wash. Super. Ct. Spokane Co.):

> I'm very impressed by the notice plan which has been put together here. It seems to be very much a state of the art proposal in terms of notifying class members. It appears to clearly be a very good alternative for notification. The target audience seems to be identified very well, and the Court is very satisfied with the choice of media which has been selected to accomplish this.

**Judge James S. Moody, Jr., *Mantzouris v. Scarritt Motor Group Inc.,*** (Aug. 10, 2004) No. 8:03 CV 0015-T-30 MSS (M.D. Fla.):

> Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the members of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement, it is hereby determined that all members of the Class, except for Ms. Gwendolyn Thompson, who was the sole person opting out of the Settlement Agreement, are bound by this Order and Final Judgment entered herein.

**Judge Marvin Shoob, *In re Domestic Air Transp. Antitrust Litig.,*** 141 F.R.D. 534, 555 (N.D. Ga. 1992):

> The Court is convinced that the innovative notice program designed by plaintiffs not only comports with due process and is sensitive to defendants' res judicata rights, but it is the only notice program suitable for this unique and massive consumer class action.

**Judge Kirk D. Johnson, *Zarebski v. Hartford Insurance Company of the Midwest,*** (February 13, 2007) Cir. Ct. Ark., No. CV-2006-409-3:

> Accordingly, the Class Notice and Claim Form as disseminated are finally approved as fair, reasonable, and adequate notice under the circumstances. The Court finds and concludes that due and adequate notice of the pendency of this Action, the Stipulation, and the Final Settlement Hearing has been provided to members of the Settlement Class, and the Court further finds and concludes that the notice campaign described in the Preliminary Approval Order and completed by the parties complied fully with the requirements of Arkansas Rule of Civil Procedure 23 and the requirements of due process under the Arkansas and United States Constitutions.

**Judge Yada T. Magee, *Spitzfaden v. Dow Corning,*** (March 17, 1997) No. 92-2589, "Breast Implant Litigation" (La. Civ. Dist. Ct. Orleans Parish) (The Louisiana Supreme Court upheld the ruling, finding no error):

> Given the definition of this class and the potential size, the efforts taken to notify potential class members was more than sweeping…Accordingly the Court finds that the notice was adequate.

**Judge Michael J. O'Malley, *Defrates v. Hollywood Entm't Corp.,*** (June 24, 2005) No. 02 L 707 (Ill. Cir. Ct. St. Clair Co.):

> [T]his Court hereby finds that the notice program described in the Preliminary Approval Order and completed by HEC complied fully with the requirements of due process, the Federal Rules of Civil Procedure and all other applicable laws.

**Judge Robert H. Wyatt, Jr., *Gray v. New Hampshire Indemnity Co., Inc.,*** (Dec. 19, 2005) No. CV-2002-952-2-3 (Cir. Ct. Ark.):

> Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated. The Notice contained the essential elements necessary to satisfy due process, including the Settlement Class definition, the identities of the Parties and of their counsel, a summary of the terms of the proposed settlement, Class Counsel's intent to apply for fees, information regarding the manner in which objections could be submitted, and requests for exclusions could be filed.

**Judge Carter Holly,** *Richison v. Am. Cemwood Corp.,* (Nov. 18, 2003) No. 005532 (Cal. Super. Ct. San Joaquin Co.):

> *As to the forms of Notice, the Court finds and concludes that they fully apprised the Class members of the pendency of the litigation, the terms of the Phase 2 Settlement, and Class members' rights and options.*

**Judge Wilford D. Carter,** *Thibodeaux v. Conoco Phillips Co.,* (May 26, 2005) No. 2003-481 F (14th J.D. Ct. La.):

> *Notice given to Class Members . . . were reasonably calculated under all the circumstances and have been sufficient, both as to the form and content...*

**Judge David Flinn,** *Westman v. Rogers Family Funeral Home,* (March 5, 2001) No. C 98-03165 (Cal. Super. Ct. Contra Costa Co.):

> *The Court has determined that the Notice given to potential members of the Settlement Class fully and accurately informed potential Members of the Settlement Class of all material elements of the proposed settlement and constituted valid, due and sufficient notice to all potential members of the Settlement Class, and that it constituted the best practicable notice under the circumstances.*

**Judge Stuart R. Pollak,** *Microsoft I-V Cases,* (March 30, 2001) J.C.C.P. No. 4106 (Cal. Super. Ct. San Francisco Co.):

> *Plaintiffs and Defendant Microsoft Corporation have submitted a joint statement in support of their request that the Court approve the plan for dissemination of class action notice and proposed forms of notice, and amend the class definition. The Court finds that the forms of notice to Class members attached hereto as Exhibits A and B fairly and adequately inform the Class members of their rights concerning this litigation. The Court further finds that the methods for dissemination of notice are the fairest and best practicable under the circumstances, and comport with due process requirements.*

**Judge John R. Padova,** *Rosenberg v. Academy Collection Service, Inc.* (Dec. 19, 2005) No. 04-CV-5585 (E.D. Pa.):

> *[U]pon consideration of the Memorandum of Law in Support of Plaintiff's Proposed Class Questionnaire and Certification of Todd Hilsee, it is hereby ORDERED that Plaintiff's form of class letter and questionnaire in the form appended hereto is APPROVED. F.R.Civ.P. 23(c).*

**Judge Bernard Zimmerman,** *Ting v. AT&T,* "Arbitration Litigation", 182 F.Supp.2d 902, 912-913 (N.D. Cal. 2002) (Hilsee had testified on the importance of wording and notice design features):

> *The phrase 'Important Information' is increasingly associated with junk mail or solicitations . . . From the perspective of affecting a person's legal rights, the most effective communication is generally one that is direct and specific.*

**Judge Robert E. Payne,** *Fisher v. Virginia Electric & Power Co.,* (July 1, 2004) No. 3:02CV431 (E.D. Va.):

> *The record here shows that the class members have been fully and fairly notified of the existence of the class action, of the issues in it, of the approaches taken by each side in it in such a way as to inform meaningfully those whose rights are affected and to thereby enable them to exercise their rights intelligently.*

**Judge Robert H. Wyatt, Jr.,** *Gray v. New Hampshire Indemnity Co., Inc.,* (Dec. 19, 2005) No. CV-2002-952-2-3 (Cir. Ct. Ark.):

> *Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort. Notice was also effected by publication in many newspapers and magazines*

*throughout the nation, reaching a large majority of the Class members multiple times. The Court finds that such notice constitutes the best notice practicable.*

**Judge Carter Holly, *Richison v. Am. Cemwood Corp.,*** (Nov. 18, 2003) No. 005532 (Cal. Super. Ct. San Joaquin Co.):

*The notice was reasonable and the best notice practicable under the circumstances, was due, adequate, and sufficient notice to all Class members, and complied fully with the laws of the State of California, the Code of Civil Procedure, due process, and California Rules of Court 1859 and 1860.*

***In re Synthroid Marketing Litig.,*** 264 F.3d 712, 716 (C.A.7 (Ill.), 2001):

*Although officially in the game, the objectors have not presented any objection to the settlement that was not convincingly addressed by the district court. The objectors contend that the settlement should have been larger, that the notice was not sufficient, and that the release of liabilities is too broad.*

**Judge Harold Baer, Jr., *Thompson v. Metropolitan Life Ins. Co.,*** (Sept. 3, 2002) No. 00 Civ. 5071 (HB) (S.D. N.Y.):

*The Court further finds that the Class Notice and Publication Notice provided in the Settlement Agreement are written in plain English and are readily understandable by Class Members. In sum, the Court finds that the proposed notice texts and methodology are reasonable, that they constitute due, adequate and sufficient notice to all persons entitled to be provided with notice, and that they meet the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law.*

**Judge Dewey C. Whitenton, *Ervin v. Movie Gallery, Inc.,*** (Nov. 22, 2002) No. 13007 (Tenn. Ch.):

*The content of the class notice also satisfied all due process standards and state law requirements . . . The content of the notice was more than adequate to enable class members to make an informed and intelligent choice about remaining in the class or opting out of the class.*

**Judge Edgar E. Bayley, *Dimitrios v. CVS, Inc.,*** No. 99-6209; ***Walker v. Rite Aid Corp.,*** No. 99-6210; **and *Myers v. Rite Aid Corp.,*** No. 01-2771, (Nov. 27, 2002) (Pa. Ct. C.P. Cumberland Co.):

*The Court specifically finds that: fair and adequate notice has been given to the class, which comports with due process of law.*

**Judge Robert E. Payne, *Fisher v. Virginia Electric & Power Co.,*** (July 1, 2004) No. 3:02CV431 (E.D. Va.):

*The success rate in notifying the class is, I believe, at least in my experience, I share Ms. Kauffman's experience, it is as great as I have ever seen in practicing or serving in this job . . . So I don't believe we could have had any more effective notice.*

**Judge Richard G. Stearns, *In re Lupron Marketing and Sales Practice Litig.,*** (Nov. 23, 2004) MDL 1430 (D. Mass.):

*I actually find the [notice] plan as proposed to be comprehensive and extremely sophisticated and very likely be as comprehensive as any plan of its kind could be in reaching those most directly affected.*

**Judge James D. Arnold, *Cotten v. Ferman Mgmt. Servs. Corp.*,** (Nov. 26, 2003) No. 02-08115 (Fla. Cir. Ct. Hillsborough Co.):

> *Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the member of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement . . .*

**Judge David De Alba, *Ford Explorer Cases*,** (Aug. 19, 2005) JCCP Nos. 4226 & 4270 (Cal. Super. Ct., Sacramento Co.):

> *It is ordered that the Notice of Class Action is approved. It is further ordered that the method of notification proposed by Todd B. Hilsee is approved.*

**Judge Judith K. Fitzgerald, *In re Pittsburgh Corning Corp.*,** (Nov. 26, 2003) No. 00-22876-JKF (Bankr. W.D. Pa.):

> *The procedures and form of notice for notifying the holders of Asbestos PI Trust Claims, as described in the Motion, adequately protect the interests of the holders of Asbestos PI Trust Claims in a manner consistent with the principles of due process, and satisfy the applicable requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.*

**Judge Wilford D. Carter, *Thibodeaux v. Conoco Phillips Co.*,** (May 26, 2005) No. 2003-481 F (14th J.D. Ct. La.):

> *Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due process and sufficient notice to all potential members of the Class as Defined.*

**Judge Harold Baer, Jr., *Thompson v. Metropolitan Life Ins. Co.*,** 216 F.R.D. 55, 68 (S.D.N.Y. 2003):

> *The notice provides, in language easily understandable to a lay person, the essential terms of the settlement, including the claims asserted . . . who would be covered by the settlement . . .*

**Judge Catherine C. Blake, *In re Royal Ahold Securities and "ERISA" Litig.*,** (Jan. 6, 2006) MDL-1539 (D. Md.):

> *I do, at least preliminarily, certainly think this is a very extensive and excellent notice program that has been proposed.*

**Judge Thomas A. Higgins, *In re Columbia/HCA Healthcare Corp.*,** (June 13, 2003) No. 3-98-MDL-1227 (M.D. Tenn.):

> *Notice of the settlement has been given in an adequate and sufficient manner. The notice provided by mailing the settlement notice to certain class members and publishing notice in the manner described in the settlement was the best practicable notice, complying in all respects with the requirements of due process.*

**Judge Louis J. Farina, *Soders v. General Motors Corp.*** (Oct. 31, 2003) No. CI-00-04255, (Pa. C.P. Lancaster Co.):

> *In this instance, Plaintiff has solicited the opinion of a notice expert who has provided the Court with extensive information explaining and supporting the Plaintiff's notice plan...After balancing the factors laid out in Rule 1712(a), I find that Plaintiff's publication method is the method most reasonably calculated to inform the class members of the pending action.*

**Judge Eldon E. Fallon, *Turner v. Murphy, USA, Inc.*,** 2007 WL 283431, at *5 (E.D. La.):

> *Most of the putative class members were displaced following hurricane Katrina . . . With this challenge in mind, the parties prepared a notice plan designed to reach the class members*

12

*wherever they might reside. The parties retained Todd Hilsee of Hilsoft Notifications to ensure that adequate notice was given to class members in light of the unique challenges presented in this case.*

**Judge Anna J. Brown, *Reynolds v. The Hartford Financial Services Group, Inc.,* (February 27, 2007) D. Ore., No. CV-01-1529 BR:**

*[T]he court finds that the Notice Program fairly, fully, accurately, and adequately advised members of the Settlement Class and each Settlement Subclass of all relevant and material information concerning the proposed settlement of this action, their rights under Rule 23 of the Federal Rules of Civil Procedure, and related matters, and afforded the Settlement Class with adequate time and an opportunity to file objections to the Settlement or request exclusion from the Settlement Class. The court finds that the Notice Program constituted the best notice practicable under the circumstances and fully satisfied the requirements of Rule 23 and due process.*

**Judge Michael Canaday, *Morrow v. Conoco Inc.,* (May 25, 2005) No. 2002-3860 G (14ᵗʰ J.D. Ct. La.):**

*The objections, if any, made to due process, constitutionality, procedures, and compliance with law, including, but not limited to, the adequacy of notice and the fairness of the proposed Settlement Agreement, lack merit and are hereby overruled.*

**Judge Harold Baer, Jr., *Thompson v. Metropolitan Life Ins. Co.* 216 F.R.D. 55, 68 (S.D. N.Y. 2003):**

*[T]he notice campaign that defendant agreed to undertake was extensive . . . I am satisfied, having reviewed the contents of the notice package, and the extensive steps taken to disseminate notice of the settlement, that the class notice complies with the requirements of Rule 23 (c)(2) and 23(e). In summary, I have reviewed all of the objections, and none persuade me to conclude that the proposed settlement is unfair, inadequate or unreasonable.*

**Judge Ronald B. Leighton, *Grays Harbor Adventist Christian School v. Carrier Corporation,* (May 29, 2007) W.D. Wash., No. 05-05437:**

*The Court has considered this motion, the Affidavit of Todd B. Hilsee on Class Certification Notice Plan and the exhibits attached thereto, and the files and records herein. Based on the foregoing, the Court finds Plaintiffs' Motion for Approval of Proposed Form of Notice and Notice Plan is appropriate and should be granted.*

**Judge Richard J. Holwell, *In re Vivendi Universal, S.A. Securities Litig.,* 2007 WL 1490466, at \*34 (S.D.N.Y.):**

*In response to defendants' manageability concerns, plaintiffs have filed a comprehensive affidavit outlining the effectiveness of its proposed method of providing notice in foreign countries. (See Affidavit of Todd B. Hilsee on Ability to Provide Multi-National Notice to Class Members, Dec. 19, 2005 ("Hilsee Aff.") ¶ 7.) According to this . . . the Court is satisfied that plaintiffs intend to provide individual notice to those class members whose names and addresses are ascertainable, and that plaintiffs' proposed form of publication notice, while complex, will prove both manageable and the best means practicable of providing notice.*

**Judge Catherine C. Blake, *In re Royal Ahold Securities & "ERISA" Litig.,* 2006 WL 132080, at \*4 (D. Md.):**

*The Court further APPROVES the proposed Notice Plan, as set forth in the Affidavit of Todd B. Hilsee On International Settlement Notice Plan, dated December 19, 2005 (Docket No. 684). The Court finds that the form of Notice, the form of Summary Notice, and the Notice Plan satisfy the requirements of Fed.R.Civ.P. 23, due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all members of the Class.*

13

**Judge John Kraetzer,** *Baiz v. Mountain View Cemetery,* (April 14, 2004) No. 809869-2 (Cal. Super. Ct. Alameda Co.):

*The notice program was timely completed, complied with California Government Code section 6064, and provided the best practicable notice to all members of the Settlement Class under the circumstances. The Court finds that the notice program provided class members with adequate instructions and a variety of means to obtain information pertaining to their rights and obligations under the settlement so that a full opportunity has been afforded to class members and all other persons wishing to be heard.*

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55, 62 (S.D. N.Y. 2003):

*In view of the extensive notice campaign waged by the defendant, the extremely small number of class members objecting or requesting exclusion from the settlement is a clear sign of strong support for the settlement.*

**Judge John R. Padova, Nichols v. SmithKline Beecham Corp.,** (April 22, 2005) No. 00-6222 (E.D. Pa.):

*After reviewing the individual mailed Notice, the publication Notices, the PSAs and the informational release, the Court concludes that the substance of the Notice provided to members of the End-Payor Class in this case was adequate to satisfy the concerns of due process and the Federal Rules.*

**Judge John Kraetzer,** *Baiz v. Mountain View Cemetery,* (April 14, 2004) No. 809869-2 (Cal. Super. Ct. Alameda Co.):

*The Court has determined that the Notice given to potential members of the Settlement Class fully and accurately informed potential Members of the Settlement Class of all material elements of the proposed settlement and constituted valid, due, and sufficient notice to all potential members of the Settlement Class, and that it constituted the best practicable notice under the circumstances.*

**Judge Carter Holly,** *Richison v. Am. Cemwood Corp.,* (Nov. 18, 2003) No. 005532 (Cal. Super. Ct. San Joaquin Co.):

*Not a single Class member—out of an estimated 30,000—objected to the terms of the Phase 2 Settlement Agreement, notwithstanding a comprehensive national Notice campaign, via direct mail and publication Notice.*

**Judge Elaine Bucklo,** *In re Synthroid Marketing Litig.,* (Aug. 14, 1998) MDL 1182 (N.D. Ill.) (Ultimately withstood challenge to 7th Circuit Court of Appeals):

*[T]he parties undertook an elaborate notice program…in numerous publications in the United States and abroad which those persons most likely to be class members would read . . . In fact from the affidavits filed, it would appear that notice was designed to reach most of the affected reading public.*

**Judge Joseph R. Goodwin,** *In re Serzone Prods. Liability Litig.* 2004 U.S. Dist. LEXIS 28297, at *10 (S.D. W. Va.):

*The Court has considered the Notice Plan and proposed forms of Notice and Summary Notice submitted with the Memorandum for Preliminary Approval and finds that the forms and manner of notice proposed by Plaintiffs and approved herein meet the requirements of due process and Fed.R.Civ.P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.*

**Judge Marina Corodemus,** *Talalai v. Cooper Tire & Rubber Co.,* (Oct. 29, 2001) No. L-8830-00 MT (N.J, Super. Ct. Middlesex Co.):

*I saw the various bar graphs for the different publications and the different media dissemination, and I think that was actually the clearest bar graph I've ever seen in my life . . . it was very clear of the time periods that you were doing as to each publication and which media you were doing over what market time, so I think that was very clear.*

**Judge John D. Allen,** *Carter v. North Central Life Ins. Co.,* (April 24, 2007) Ga. Super. Ct., No. SU-2006-CV-3764-6:

[T]he Parties submitted the Affidavit of Todd Hilsee, the Court-appointed Notice Administrator and one of the pre-eminent class action notice experts in North America. After completing the necessary rigorous analysis, including careful consideration of Mr. Hilsee's Affidavit, the Court finds that . . . The Notices prepared in this matter were couched in plain, easily understood language and were written and designed to the highest communication standards. The Notice Plan effectively reached a substantial percentage of Class Members and delivered noticeable Notices designed to capture Class Members' attention;

**Judge Louis J. Farina,** *Soders v. General Motors Corp.,* (Oct. 31, 2003) No. CI-00-04255, (Pa. C.P. Lancaster Co.):

*Plaintiff provided extensive information regarding the reach of their proposed plan. Their notice expert, Todd Hilsee, opined that their plan will reach 84.8% of the class members. Defendant provided the Court with no information regarding the potential reach of their proposed plan . . . There is no doubt that some class members will remain unaware of the litigation, however, on balance, the Plaintiff's plan is likely to reach as many class members as the Defendant's plan at less than half the cost. As such, I approve the Plaintiff's publication based plan.*

**Judge Paul H. Alvarado,** *Microsoft I-V Cases,* (July 6, 2004) J.C.C.P. No. 4106 (Cal. Super. Ct., J.C.C.P. No. 4106):

*The notification plans concerning the pendency of this class action were devised by a recognized class notice expert, Todd B. Hilsee. Mr. Hilsee devised two separate class certification notice plans that were estimated to have reached approximately 80% of California PC owners on each occasion.*

**Judge Robert E. Payne,** *Fisher v. Virginia Electric & Power Co.,* (Feb. 12, 2004) No. 3:02-CV-431 (E.D. Va.):

*The expert, Todd B. Hilsee, is found to be reliable and credible.*

**Judge Norma L. Shapiro,** *First State Orthopaedics et al. v. Concentra, Inc., et al.,* (May 1, 2006) No. 2:05-CV-04951-NS (E.D. Pa.):

*The Court finds that dissemination of the Mailed Notice, Published Notice and Full Notice in the manner set forth here and in the Settlement Agreement meets the requirements of due process and Pennsylvania law. The Court further finds that the notice is reasonable, and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, is the best practicable notice; and is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Lawsuit and of their right to object or to exclude themselves from the proposed settlement.*

**Judge Sarah S. Vance,** *In re Educ. Testing Serv. PLT 7-12 Test Scoring Litig.,* 447 F.Supp.2d 612, 627 (E.D. La. 2006):

*At the fairness hearing, class counsel, the Special Master, notice expert Todd Hilsee, and the Court Appointed Disbursing Agent detailed the reasons for requiring claims forms . . . As Todd Hilsee pointed out in his testimony, because plaintiffs had the choice of either individualized damages or an expedited payment, to send the expedited payments with the notice has the potential of encouraging plaintiffs to forego individualized recovery for far less than value, merely*

by cashing the check. The obvious undesirability of this suggestion gives the unmistakable appearance that the objection was captious. The objection to the claims process for expedited payments is overruled.

**Judge Richard G. Stearns,** *In re Lupron® Marketing and Sales Practice Litig.*, 228 F.R.D. 75, 96 (D. Mass. 2005):

I have examined the materials that were used to publicize the settlement, and I agree with Hilsee's opinion that they complied in all respects with the "plain, easily understood language" requirement of Rule 23(c). In sum, I find that the notice given meets the requirements of due process.

**Judge John R. Padova, Nichols v. SmithKline Beecham Corp.,** (Apr. 22, 2005) No. 00-CV-6222 (E.D. Pa.):

As required by this Court in its Preliminary Approval Order and as described in extensive detail in the Affidavit of Todd B. Hilsee on Design Implementation and Analysis of Settlement Notice Program…Such notice to members of the Class is hereby determined to be fully in compliance with requirements of Fed. R. Civ. P. 23(e) and due process and is found to be the best notice practicable under the circumstances and to constitute due and sufficient notice to all entities entitled thereto.

**Judge Sarah S. Vance,** *In re Babcock & Wilcox Co.,* (Aug. 25, 2000) No. 00-0558 (E.D. La.):

Furthermore, the Committee has not rebutted the affidavit of Todd Hilsee, President of Hilsoft Notifications, that the (debtor's notice) plan's reach and frequency methodology is consistent with other asbestos-related notice programs, mass tort bankruptcies, and other significant notice programs…After reviewing debtor's Notice Plan, and the objections raised to it, the Court finds that the plan is reasonably calculated to apprise unknown claimants of their rights and meets the due process requirements set forth in Mullane . . . Accordingly, the Notice Plan is approved.

**Judge Joe E. Griffin,** *Beasley v. Hartford Insurance Company of the Midwest,* (June 13, 2006) No. CV-2005-58-1 (Cir. Ct. Ark.):

[R]eceived testimony from Mr. Hilsee at the Settlement Approval Hearing concerning the success of the notice campaign, including the fact that written notice reached 97.7% of the potential Class members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual Class Members who had an earlier opportunity to request exclusion, but did not do so. The Court also concludes that the lack of valid objections also supports the Court's decision to not offer a second exclusion window . . . Although the Notice Campaign was highly successful and resulted in actual mailed notice being received by over 400,000 Class Members, only one Class Member attempted to file a purported objection to either the Stipulation or Class Counsels' Application for Fees. The Court finds it significant that out of over 400,000 Class Members who received mailed Notice, there was no opposition to the proposed Settlement or Class Counsels' Application for Fees, other than the single void objection. The lack of opposition by a well-noticed Class strongly supports the fairness, reasonableness and adequacy of the Stipulation and Class Counsels' Application for Fees.

**Judge James R. Williamson, Kline v. The Progressive Corp.,** (Nov. 14, 2002) No. 01-L-6 (Cir. Ct. Ill. Johnson Co.):

The Court has reviewed the Affidavit of Todd B. Hilsee, one of the Court-appointed notice administrators, and finds that it is based on sound analysis. Mr. Hilsee has substantial experience designing and evaluating the effectiveness of notice programs.

**Judge Joseph R. Goodwin,** *In re Serzone Products Liability Litig.,* 231 F.R.D. 221, 236 (S.D. W. Va. 2005):

As Mr. Hilsee explained in his supplemental affidavit, the adequacy of notice is measured by whether notice reached Class Members and gave them an opportunity to participate, not by actual participation. (Hilsee Supp. Aff. ¶ 6(c)(v), June 8, 2005)...Not one of the objectors support challenges to the adequacy of notice with any kind of evidence; rather, these objections consist of

16

*mere arguments and speculation. I have, nevertheless, addressed the main arguments herein, and I have considered all arguments when evaluating the notice in this matter. Accordingly, after considering the full record of evidence and filings before the court, I FIND that notice in this matter comports with the requirements of Due Process under the Fifth Amendment and Federal Rules of Civil Procedure 23(c)(2) and 23(e).*

**Judge Kirk D. Johnson**, *Zarebski v. Hartford Insurance Company of the Midwest,* (February 13, 2007) Cir. Ct. Ark., No. CV-2006-409-3:

*Additionally, the court was provided with expert testimony from Todd Hilsee at the Settlement Approval Hearing concerning the adequacy of the notice program . . . Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Class Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminary Approval Order, was the best notice practicable under the circumstances to all members of the Settlement Class.*

**Judge Catherine C. Blake,** *In re Royal Ahold Securities and "ERISA" Litig.,* (Nov. 2, 2006) MDL-1539 (D. Md.):

*The global aspect of the case raised additional practical and legal complexities, as did the parallel criminal proceedings in another district. The settlement obtained is among the largest cash settlements ever in a securities class action case and represents an estimated 40% recovery of possible provable damages. The notice process appears to have been very successful not only in reaching but also in eliciting claims from a substantial percentage of those eligible for recovery.*

**Judge Alfred G. Chiantelli,** *Williams v. Weyerhaeuser Co.,* (Dec. 22, 2000) No. 995787, "Hardboard Siding Litigation" (Cal. Super. Ct. San Francisco Co.):

*The Class Notice complied with this Court's Order, was the best practicable notice, and comports with due process . . . Based upon the uncontroverted proof Class Counsel have submitted to the Court, the Court finds that the settling parties undertook an extensive notice campaign designed by Todd Hilsee of Hilsoft Notifications, a nationally recognized expert in this specialized field.*

**Judge John R. Padova, Nichols v. SmithKline Beecham Corp.,** (April 22, 2005) No. 00-6222 (E.D. Pa.):

*Pursuant to the Order dated October 18, 2004, End-Payor Plaintiffs employed Hilsoft Notifications to design and oversee Notice to the End-Payor Class. Hilsoft Notifications has extensive experience in class action notice situations relating to prescription drugs and cases in which unknown class members need to receive notice.*

**Judge Ivan L.R. Lemelle,** *In re High Sulfur Content Gasoline Prods. Liability Litig.,* (November 8, 2006) MDL No. 1632 (E.D. La.):

*[T]his Court approved a carefully-worded Notice Plan, which was developed with the assistance of a nationally-recognized notice expert, Hilsoft Notifications . . . See Affidavit of Todd B. Hilsee on Motion by Billy Ray Kidwell, attached as Exhibit A; see also, Affidavit of Todd B. Hilsee, attached as Exhibit C to the Joint Motion for Final Approval of Class Settlement (Record Doc. No. 71); Testimony of Todd Hilsee at Preliminary Approval Hearing, Tr. pp 6-17, attached as Exhibit B; Testimony of Todd Hilsee at Final Fairness Hearing, Tr. pp. 10-22, attached as Exhibit C.*

**Regional Senior Justice Winkler,** *Baxter v. Canada (Attorney General),* (March 10, 2006) No. 00-CV-192059 CPA (Ont. Super. Ct.):

*The plaintiffs have retained Todd Hilsee, an expert recognized by courts in Canada and the United States in respect of the design of class action notice programs, to design an effective national notice program . . . the English versions of the Notices provided to the court on this motion are themselves plainly worded and appear to be both informative and designed to be readily understood. It is contemplated that the form of notice will be published in English, French and Aboriginal languages, as appropriate for each media vehicle.*

17

**Judge James T. Genovese, *West v. G&H Seed Co.*,** (May 27, 2003) No. 99-C-4984-A (La. Jud. Dist. Ct. St. Landry Parish):

> *The court finds that, considering the testimony of Mr. Hilsee, the nature of this particular case, and the certifications that this court rendered in its original judgment which have been affirmed by the – for the most part, affirmed by the appellate courts, the court finds Mr. Hilsee to be quite knowledgeable in his field and certainly familiar with these types of cases...the notice has to be one that is practicable under the circumstances. The notice provided and prepared by Mr. Hilsee accomplishes that purpose . . .*

**Judge Milton Gunn Shuffield, *Scott v. Blockbuster Inc.*,** (Jan. 22, 2002) No. D 162-535 (Tex. Jud. Dist. Ct. Jefferson Co.) (Ultimately withstood challenge to Court of Appeals of Texas. *Peters v. Blockbuster* 65 S.W.3d 295, 307 (Tex. App.-Beaumont, 2001):

> *In order to maximize the efficiency of the notice, a professional concern, Hilsoft Notifications, was retained. Todd Hilsee of that firm prepared and oversaw the notification plan. The record reflects that Mr. Hilsee is very experienced in the area of notification in class action settlements...This Court concludes that the notice campaign was the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the settlement and afford them an opportunity to present their objections . . . The notice campaign was highly successful and effective, and it more than satisfied the due process and state law requirements for class notice.*

**Judge Susan Illston** (N.D. Cal.), on Hilsoft Notifications presentation at the ABA's 7th Annual National institute on Class Actions, Oct. 24, 2003, San Francisco, Cal.:

> *The notice program that was proposed here today, I mean, it's breathtaking. That someone should have thought that clearly about how an effective notice would get out. I've never seen anything like that proposed in practice . . . I thought the program was excellent. The techniques available for giving a notification is something that everyone should know about.*

## OTHER COMMENTS

**Geoffrey P. Miller, Max Greenberg Professor at Law, NYU,** testified at the *Scott v. Blockbuster* Fairness Hearing on Dec. 10-11, 2001, before Judge Milton Shuffield:

> *I really have never seen in the many years I've been looking at class actions, a notice campaign in a consumer case that was done with this much care and this much real forethought and imagination. It's very difficult to reach 40 million people, and I can't imagine doing a better job than as what was done in this case.*

**Arthur R. Miller, Bruce Bromley Professor of Law, Harvard Law School,** in a letter addressed to Mr. Hilsee dated June 2, 2004:

> *I read your piece on Mullane with great interest and am delighted to learn the details. Indeed, I will probably incorporate some of it in my teaching next fall. I think your analysis is rock solid.*

## PUBLICATIONS

Todd B. Hilsee, *Canadian Class Action Notice - A Rising Tide of Effectiveness?*, OSGOODE HALL LAW SCHOOL, YORK UNIVERSITY, 4TH NATIONAL SYMPOSIUM ON CLASS ACTIONS, (2007).

Shannon R. Wheatman & Thomas E. Willging, *Does Attorney Choice of Forum in Class Action Litigation Really Make a Difference?* 17 CLASS ACTIONS & DERIVATIVE SUITS 1 (2007).

Todd B. Hilsee, *The "Desire to Inform" Is in Your Hands: Creatively Design Your Notice Program to Reach the Class Members and Satisfy Due Process*, AMERICAN BAR ASSOCIATION, 10th Annual Institute on Class Actions (2006).

18

Todd B. Hilsee, Gina M. Intrepido, & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process: The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV. 1771 (2006); reprinted in course materials for: AMERICAN BAR ASSOCIATION, 10th Annual National Institute on Class Actions (2006); NATIONAL BUSINESS INSTITUTE, Class Action Update: Today's Trends & Strategies for Success (2006).

Thomas E. Willging & Shannon R. Wheatman, *Attorney Choice of Forum in Class Action Litigation: What Difference Does it Make?* 81 NOTRE DAME LAW. REV. 591 (2006).

Gina M. Intrepido, *Notice Experts May Help Resolve CAFA Removal Issues, Notification to Officials*, 6 CLASS ACTION LITIG. REP. 759 (2005).

Todd B. Hilsee, Shannon R. Wheatman, & Gina M. Intrepido, *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice Is More Than Just Plain Language: A Desire to Actually Inform*, 18 GEORGETOWN JOURNAL LEGAL ETHICS 1359 (2005).

Thomas E. Willging & Shannon R. Wheatman, *An Empirical Examination of Attorneys' Choice of Forum in Class Action Litigation,* FEDERAL JUDICIAL CENTER (2005).

Robert T. Reagan, Shannon R. Wheatman, Marie Leary, Natascha Blain, George Cort, & Dean N. Miletich, *Sealed Settlement Agreements in Federal District Courts*, FEDERAL JUDICIAL CENTER (2005).

Todd B. Hilsee, Notice *Provisions in S. 1751 Raise Significant Communications Problems*, 5 CLASS ACTION LITIG. REP. 30 (2004).

Todd B. Hilsee, *Plain Language is Not Enough*, FEDERAL TRADE COMMISSION, Protecting Consumer Interests in Class Actions (2004).

Todd B. Hilsee & Terri R. LeClercq, *The Federal Judicial Center's Model Plain Language Class Action Notices: A New Tool for Practitioners and the Judiciary*, 5 CLASS ACTION LITIG. REP. 182 (2003).

Todd B. Hilsee, *So you think your notice program is acceptable? Beware: it could be rejected*, AMERICAN BAR ASSOCIATION CLASS ACTIONS (2003).

Todd B. Hilsee, *Class Action Notice*, CALIFORNIA CLASS ACTIONS PRACTICE AND PROCEDURE, 8-1 (Elizabeth Cabraser ed., 2003).

Todd B. Hilsee & Terri R. LeClercq, *Creating the Federal Judicial Center's New Illustrative "Model" Plain Language Class Action Notices*, 13 CLASS ACTIONS & DERIVATIVE SUITS 10 (2003).

David Romine & Todd Hilsee, *"It Ain't Over 'Til It's Over"—Class Actions Against Microsoft*, 12 CLASS ACTIONS & DERIVATIVE SUITS 2 (2002).

Todd B. Hilsee, *Class Action Notice—How, Why, When and Where the Due Process Rubber Meets the Road*, LOUISIANA STATE BAR ASSOCIATION, 3rd Annual Class Action/Mass Tort Symposium (2002).

Todd B. Hilsee, *A Communications Analysis of the Third Circuit Ruling in MDL 1014: Guidance on the Adequacy of Notice*, 2 CLASS ACTION LITIG. REP. 712 (2001).

Shannon R. Wheatman & David R. Shaffer, *On finding for defendants who plead insanity: The crucial impact of dispositional instructions and opportunity to deliberate, 25* LAW AND HUMAN BEHAVIOR 165 (2001).

Shannon Wheatman, The Effects of Plain Language Drafting on Layperson's Comprehension of Class Action Notices (2001), (unpublished Ph.D. dissertation, University of Georgia, on file with the University of Georgia Library).

David R. Shaffer & Shannon R. Wheatman, *Does personality influence the effectiveness of judicial instructions?* 6 PSYCH. PUB. POL'Y & LAW 655 (2000).

Todd B. Hilsee, *Off of the Back Pages: The Evolution of Class Action Notice: An Analysis of Notice in Mullane v. Central Hanover Trust more than 50 years later*, MEALEY'S Judges & Lawyers in Complex Litigation Conference (1999).

Todd B. Hilsee, *Class Action Notice to Diet-Drug Takers: A Scientific Approach*, FEN-PHEN LITIG. STRATEGIST (1999).

Sidney Rosen & Shannon Wheatman, *Reactions to the fate of one's brain-child after its disclosure*. 17 CURRENT PSYCH. 135 (1997).

Todd B. Hilsee, *Class Action: The Role of the Media Expert*, EMPLOYMENT LITIG. REP. 19524 (1995); ASBESTOS LITIG. REP. 33279 (1995); AUTOMOTIVE LITIG. REP. 23193 (1995); MEDICAL DEVICES REPORTER 24 (1995); ASBESTOS PROPERTY LITIG. REP. 20845 (1995); TOXIC CHEMICALS LITIG. REP. 22280 (1995); DES LITIG. REP. 24310 (1995); SECURITIES AND COMMODITIES LITIG. REP. 15 (1996); AIDS LITIG. REP. 15559 (1996); LEVERAGED BUYOUTS & ACQUISITIONS LITIG. REP. 24 (1996); WRONGFUL DISCHARGE REPORT 16 (1996); CORPORATE OFFICERS AND DIRECTORS LIABILITY LITIG. REP. 19561 (1996); SEXUAL HARASSMENT LITIG. REP. 22 (1996).

## PANELS, SPEAKING AND EDUCATION

*Notice to Class Members: Is too Little Money Being Spent on Notice and will the Tide Turn?*, OSGOODE HALL LAW SCHOOL, YORK UNIVERSITY, 4TH NATIONAL SYMPOSIUM ON CLASS ACTIONS, (2007). Speaker: Todd B Hilsee.

*"Man on the Street" Interviews with Class Members, Vol. 2: Notice & Settlement Participation*, Educational DVD created and utilized at: AMERICAN BAR ASSOCIATION, 10th Annual National Institute on Class Actions (2006); NATIONAL BUSINESS INSTITUTE, Class Action Update: Today's Trends & Strategies for Success (2006); GEORGETOWN UNIVERSITY LAW SCHOOL (2006); TULANE LAW SCHOOL (2007).

*"Class Action Notice"*, NATIONAL BUSINESS INSTITUTE, Class Action Update: Today's Trends & Strategies for Success (2006). Speaker: Todd B. Hilsee.

*"If You Build It, They Will Come—Crafting Creative, Coupon-Free Settlements*, AMERICAN BAR ASSOCIATION, 10th Annual National Institute on Class Actions (2006). Speaker: Todd B Hilsee.

*"Man on the Street" Interviews with Class Members, Vol. 1: Plain Language*, Educational DVD created and utilized at: COLUMBIA LAW SCHOOL (2005); NEW YORK UNIVERSITY SCHOOL OF LAW (2005); TEMPLE LAW SCHOOL (2006); CLEVELAND-MARSHALL COLLEGE OF LAW (2006); TULANE LAW SCHOOL (2007).

*"How to Construct Effective Notice Campaigns to Best Protect Class Action Settlements"*, Lecture at: CLEVELAND-MARSHALL COLLEGE OF LAW (3/28/06). Guest Lecturer: Todd B. Hilsee.

*"Judges Round Table"*, SUPERIOR COURT OF CALIFORNIA, County of Los Angeles, Central Civil West Court House (3/21/06). Speaker: Todd B. Hilsee.

*"Do You Really Want Me to Know My Rights? The 'Ethics' Behind Due Process in Class Action Notice Is More Than Just Plain Language: A Desire to Actually Inform"*, NATIONAL ASSOCIATION OF SHAREHOLDER AND CONSUMER ATTORNEYS (NASCAT), (2005). Speaker: Todd B. Hilsee.

*"Will the Settlement Survive Notice and Associated Due Process Concerns?"* LOUISIANA BAR ASSOCIATION, 5th Annual Class Action/Mass Tort Symposium (2004). Speaker: Todd B. Hilsee.

*"Let's Talk—The Ethical and Practical Issues of Communicating with Members of a Class"*, AMERICAN BAR ASSOCIATION, 8th Annual National Institute on Class Actions (2004). Speaker: Todd B Hilsee.

*"Clear Notices, Claims Administration and Market Makers,"* FEDERAL TRADE COMMISSION, Protecting Consumer interests in Class Action Workshop (2004). Speaker: Todd B. Hilsee.

*"I've Noticed You've Settled—Or Have You,"* AMERICAN BAR ASSOCIATION, 7th Annual National Institute on Class Action (2003). Speaker: Todd B. Hilsee.

*"Class Action Notice—How, Why, When And Where the Due Process Rubber Meets The Road,"* LOUISIANA BAR ASSOCIATION, 3rd Annual Class Action/Mass Tort Symposium (2002). Speaker: Todd B. Hilsee.

*"Plain English Notices called for in August, 2001, proposed amendments to Rule 23,"* ADVISORY COMMITTEE ON CIVIL RULES OF THE JUDICIAL CONFERENCE OF THE UNITED STATES, Hearing on Rule 23 (2002). Witness: Todd B. Hilsee.

*"Generation X on Trial,"* AMERICAN BAR ASSOCIATION, Section of Litigation Annual Meeting (2001). Speaker: Todd B. Hilsee.

*"Tires, Technology and Telecommunications"*, Class Action and Derivative Suits Committee, AMERICAN BAR ASSOCIATION, Section of Litigation Annual Meeting (2001). Speaker: Todd B. Hilsee.

20

"*Class Actions*," MEALEY'S Judges and Lawyers in Complex Litigation Conference (1999). Speaker: Todd B. Hilsee.

## LEGAL NOTICE CASES

Todd B. Hilsee and Hilsoft Notifications have served as notice experts for planning, implementation and/or analysis in the following partial listing of cases:

| | |
|---|---|
| *In re Domestic Air Transp. Antitrust Litig.* | N.D. Ga., MDL No. 861 |
| *In re Bolar Pharm. Generic Drugs Consumer Litig.* | E.D. Pa., MDL No. 849 |
| *In re Steel Drums Antitrust Litig.* | S.D. Ohio, C-1-91-208 |
| *In re Steel Pails Antitrust Litig.* | S.D. Ohio, C-1-91-213 |
| *In re GM Truck Fuel Tank Prods. Liability Litig.* | E.D. Pa., MDL No. 1112 |
| *In re Estate of Ferdinand Marcos (Human Rights Litig.)* | D. Hawaii, MDL No. 840 |
| *Andrews v. MCI (900 Number Litig.)* | S.D. Ga., CV 191-175 |
| *Harper v. MCI (900 Number Litig.)* | S.D. Ga., CV 192-134 |
| *Kellerman v. MCI Telecomms. Corp (Long Distance Telephone Litig.)* | Cir. Ct. Ill., 82 CH 11065 |
| *In re Bausch & Lomb Contact Lens Litig.* | N.D. Ala., 94-C-1144-WW |
| *In re Ford Motor Co. Vehicle Paint Litig.* | E.D. La., 95-0485, MDL No. 1063 |
| *Castano v. Am. Tobacco* | E.D. La., CV 94-1044 |
| *Cox v. Shell Oil (Polybutylene Pipe Litig.)* | Tenn. Ch., 18,844 |
| *Fry v. Hoercst Celanese (Polybutylene Pipe Litig.)* | Cir. Ct. Fla., 95-6414 CA11 |
| *Meers v. Shell Oil (Polybutylene Pipe Litig.)* | Cal. Super. Ct., M30590 |
| *In re Amino Acid Lysine Antitrust Litig.* | N.D. Ill., MDL No. 1083 |
| *In re Dow Corning Corp. (Breast Implant Bankruptcy)* | E.D. Mich., 95-20512-11-AJS |
| *Kunhel v. CNA Ins. Companies* | N.J. Super. Ct., ATL-C-0184-94 |
| *In re Factor Concentrate Blood Prods. Litig. (Hemophiliac HIV)* | N.D. Ill., MDL No. 986 |
| *In re Ford Ignition Switch Prods. Liability Litig.* | D. N.J., 96-CV-3125 |
| *Jordan v. A.A. Friedman (Non-Filing Ins. Litig.)* | M.D. Ga., 95-52-COL |
| *Kalhammer v. First USA (Credit Card Litig.)* | Cir. Ct. Cal., C96-45632010-CAL |
| *Navarro-Rice v. First USA (Credit Card Litig.)* | Cir. Ct. Ore., 9709-06901 |
| *Spitzfaden v. Dow Corning (Breast Implant Litig.)* | La. Civ. Dist. Ct., 92-2589 |
| *Robinson v. Marine Midland (Finance Charge Litig.)* | N.D. Ill., 95 C 5635 |
| *McCurdy v. Norwest Fin. Alabama* | Cir. Ct. Ala., CV-95-2601 |
| *Johnson v. Norwest Fin. Alabama* | Cir. Ct. Ala., CV-93-PT-962-S |
| *In re Residential Doors Antitrust Litig.* | E.D. Pa., MDL No. 1039 |
| *Barnes v. Am. Tobacco Co. Inc.* | E.D. Pa., 96-5903 |

21

| Small v. Lorillard Tobacco Co. Inc. | N.Y. Super. Ct., 110949/96 |
|---|---|
| Naef v. Masonite Corp (Hardboard Siding Litig.) | Cir. Ct. Ala., CV-94-4033 |
| In re Synthroid Mktg. Litig. | N.D. Ill., MDL No. 1182 |
| Chisolm v. Transouth Fin. | 4<sup>th</sup> Cir., 97-1970 |
| Raysick v. Quaker State Slick 50 Inc. | Dist. Tex., 96-12610 |
| Castillo v. Mike Tyson (Tyson v. Holyfield Bout) | N.Y. Super. Ct., 114044/97 |
| Avery v. State Farm Auto. Ins. (Non-OEM Auto Parts Litig.) | Cir. Ct. Ill., 97-L-114 |
| Walls v. The Am. Tobacco Co. Inc. | N.D. Okla., 97-CV-218-H |
| Tempest v. Rainforest Café (Securities Litig.) | D. Minn., 98-CV-608 |
| Stewart v. Avon Prods. (Securities Litig.) | E.D. Pa., 98-CV-4135 |
| Goldenberg v. Marriott PLC Corp (Securities Litig.) | D. Md., PJM 95-3461 |
| Delay v. Hurd Millwork (Building Products Litig.) | Wash. Super. Ct., 97-2-07371-0 |
| Gutterman v. Am. Airlines (Frequent Flyer Litig.) | Cir. Ct. Ill., 95CH982 |
| Hoeffner v. The Estate of Alan Kenneth Vieira (Un-scattered Cremated Remains Litig.) | Cal. Super. Ct., 97-AS 02993 |
| In re Graphite Electrodes Antitrust Litig. | E.D. Pa., 97-CV-4182, MDL No. 1244 |
| In re Silicone Gel Breast Implant Prods. Liability Litig., Altrichter v. INAMED | N.D. Ala., MDL No. 926 |
| St. John v. Am. Home Prods. Corp. (Fen/Phen Litig.) | Wash. Super. Ct., 97-2-06368 |
| Crane v. Hackett Assocs. (Securities Litig.) | E.D. Pa., 98-5504 |
| In re Holocaust Victims Assets Litig. (Swiss Banks Litig.) | E.D. N.Y., CV-96-4849 |
| McCall v. John Hancock (Settlement Death Benefits) | Cir. Ct. N.M., No. CV-2000-2818 |
| Williams v. Weyerhaeuser Co. (Hardboard Siding Litig.) | Cal. Super. Ct., CV-995787 |
| Kapustin v. YBM Magnex Int'l Inc. (Securities Litig.) | E.D. Pa., 98-CV-6599 |
| Leff v. YBM Magnex Int'l Inc. (Securities Litig.) | E.D. Pa., 95-CV-89 |
| Crawley v. Chrysler Corp. (Airbag Litig.) | Pa. C.P., CV-4900 |
| In re PRK/LASIK Consumer Litig. | Cal. Super. Ct., CV-772894 |
| Hill v. Galaxy Cablevision | N.D. Miss., 1:98CV51-D-D |
| Scott v. Am. Tobacco Co. Inc. | La. Civ. Dist. Ct., 96-8461 |
| Jacobs v. Winthrop Fin. Assocs. (Securities Litig.) | D. Mass., 99-CV-11363 |
| Int'l Comm'n on Holocaust Era Ins. Claims – Worldwide Outreach Program | Former Secretary of State Lawrence Eagleburger Commission |
| Bownes v. First USA Bank (Credit Card Litig.) | Cir. Ct. Ala., CV-99-2479-PR |
| Whetman v. IKON (ERISA Litig.) | E.D. Pa., Civil No. 00-87 |
| Mangone v. First USA Bank (Credit Card Litig.) | Cir. Ct. Ill., 99AR672a |
| In re Babcock and Wilcox Co. (Asbestos Related Bankruptcy) | E.D. La., 00-10992 |
| Barbanti v. W.R. Grace and Co. (Zonolite / Asbestos Litig.) | Wash. Super. Ct., 00201756-6 |

| Brown v. Am. Tobacco | Cal. Super. Ct., J.C.C.P. 4042 No. 711400 |
|---|---|
| Wilson v. Servier Canada Inc. (Canadian Fen/Phen Litig.) | Ont. Super. Ct., 98-CV-158832 |
| Paul and Strode v. Country Mutual Ins. Co. (Non-OEM Auto Parts Litig.) | Cir. Ct. Ill., 99-L-995 |
| In re Texaco Inc. (Bankruptcy) | S.D. N.Y. Nos. 87 B 20142, 87 B 20143, 87 B 20144. |
| Olinde v. Texaco (Bankruptcy, Oil Lease Litig.) | M.D. La., No. 96-390 |
| Gustafson v. Bridgestone/Firestone, Inc. (Recall Related Litig.) | S.D. Ill., Civil No. 00-612-DRH |
| In re Bridgestone/Firestone Tires Prods. Liability Litig. | S.D. Ind., MDL No. 1373 |
| Gaynoe v. First Union Corp. (Credit Card Litig.) | N.C. Super. Ct., No. 97-CVS-16536 |
| Carson v. Daimler Chrysler Corp. (Fuel O-Rings Litig.) | W.D. Tenn., No. 99-2896 TU A |
| Providian Credit Card Cases | Cal. Super. Ct., J.C.C.P. No. 4085 |
| Fields v. Great Spring Waters of Am., Inc. (Bottled Water Litig.) | Cal. Super. Ct., No. 302774 |
| Sanders v. Great Spring Waters of Am., Inc. (Bottled Water Litig.) | Cal. Super. Ct., No. 303549 |
| Sims v. Allstate Ins. Co. (Diminished Auto Value Litig.) | Cir. Ct. Ill., No. 99-L-393A |
| Peterson v. State Farm Mutual Auto. Ins. Co. (Diminished Auto Value Litig.) | Cir. Ct. Ill., No. 99-L-394A |
| Microsoft I-V Cases (Antitrust Litig. Mirroring Justice Dept.) | Cal. Super. Ct., J.C.C.P. No. 4106 |
| Westman v. Rogers Family Funeral Home, Inc. (Remains Handling Litig.) | Cal. Super. Ct., No. C-98-03165 |
| Rogers v. Clark Equipment Co. | Cir. Ct. Ill., No. 97-L-20 |
| Garrett v. Hurley State Bank (Credit Card Litig.) | Cir. Ct. Miss., No. 99-0337 |
| Ragoonanan v. Imperial Tobacco Ltd. (Firesafe Cigarette Litig.) | Ont. Super. Ct., No. 00-CV-183165 CP |
| Dietschi v. Am. Home Prods. Corp. (PPA Litig.) | W.D. Wash., No. C01-0306L |
| Dimitrios v. CVS, Inc. (PA Act 6 Litig.) | Pa. C.P., No. 99-6209 |
| Jones v. Hewlett-Packard Co. (Inkjet Cartridge Litig.) | Cal. Super. Ct., No. 302887 |
| In re Tobacco Cases II (California Tobacco Litig.) | Cal. Super. Ct., J.C.C.P. No. 4042 |
| Scott v. Blockbuster, Inc (Extended Viewing Fees Litig.) | 136th Tex. Jud. Dist. Jefferson Co., No. D 162-535 |
| Anesthesia Care Assocs. v. Blue Cross of Cal. | Cal. Super. Ct., No. 986677 |
| Ting v. AT&T (Mandatory Arbitration Litig.) | N.D. Cal., No. C-01-2969-BZ |
| In re W.R. Grace & Co. (Asbestos Related Bankruptcy) | Bankr. D. Del., No. 01-01139-JJF |
| Talalai v. Cooper Tire & Rubber Co. (Tire Layer Adhesion Litig.) | N.J. Super. Ct., Middlesex County, No. MID-L-8839-00 MT |
| Kent v. Daimler Chrysler Corp. (Jeep Grand Cherokee Park-to-Reverse Litig.) | N.D. Cal., No. C01-3293-JCS |
| Int'l Org. of Migration – German Forced Labour Compensation Programme | Geneva, Switzerland |
| Madsen v. Prudential Federal Savings & Loan (Homeowner's Loan Account Litig.) | 3rd Jud. Dist. Ct. Utah, No. C79-8404 |

23

| | |
|---|---|
| *Bryant v. Wyndham Int'l., Inc. (Energy Surcharge Litig.)* | Cal. Super. Ct., Nos. GIC 765441, GIC 777547 (Consolidated) |
| *In re USG Corp. (Asbestos Related Bankruptcy)* | Bankr. D. Del., No. 01-02094-RJN |
| *Thompson v. Metropolitan Life Ins. Co. (Race Related Sales Practices Litig.)* | S.D. N.Y., No. 00-CIV-5071 HB |
| *Ervin v. Movie Gallery Inc. (Extended Viewing Fees)* | Tenn. Ch. Fayette Co., No. CV-13007 |
| *Peters v. First Union Direct Bank (Credit Card Litig.)* | M.D. Fla., No. 8:01-CV-958-T-26 TBM |
| *National Socialist Era Compensation Fund* | Republic of Austria |
| *In re Baycol Litig.* | D. Minn., MDL No. 1431 |
| *Claims Conference–Jewish Slave Labour Outreach Program* | German Government Initiative |
| *Wells v. Chevy Chase Bank (Credit Card Litig.)* | Cir. Ct. Md. Balt. City, No. C-99-000202 |
| *Walker v. Rite Aid of PA, Inc. (PA Act 6 Litig.)* | C.P. Pa., No. 99-6210 |
| *Myers v. Rite Aid of PA, Inc. (PA Act 6 Litig.)* | C.P. Pa., No. 01-2771 |
| *In re PA Diet Drugs Litig.* | C.P. Pa. Phila. Co., No. 9709-3162 |
| *Harp v. Qwest Communications (Mandatory Arbitration Litig.)* | Circ. Ct. Ore., No. 0110-10986 |
| *Tuck v. Whirlpool Corp. & Sears, Roebuck & Co. (Microwave Recall Litig.)* | Cir. Ct. Ind. Marion Co., No. 49C01-0111-CP-002701 |
| *Allison v. AT&T Corp. (Mandatory Arbitration Litig.)* | $1^{st}$ Jud. D.C. N.M., No. D-0101-CV-20020041 |
| *Kline v. The Progressive Corp.* | Cir. Ct. Ill. Johnson Co., No. 01-L-6 |
| *Baker v. Jewel Food Stores, Inc. & Dominick's Finer Foods, Inc. (Milk Price Fixing)* | Cir. Ct. Ill. Cook Co., No. 00-L-9664 |
| *In re Columbia/HCA Healthcare Corp. (Billing Practices Litig.)* | M.D. Tenn., MDL No. 1227 |
| *Foultz v. Erie Ins. Exchange (Auto Parts Litig.)* | C.P. Pa., No. 000203053 |
| *Soders v. General Motors Corp. (Marketing Initiative Litigation)* | C.P. Pa., No. CI-00-04255 |
| *Nature Guard Cement Roofing Shingles Cases* | Cal. Super. Ct., J.C.C.P. No. 4215 |
| *Curtis v. Hollywood Entm't Corp. (Additional Rental Charges)* | Wash. Super. Ct., No. 01-2-36007-8 SEA |
| *Defrates v. Hollywood Entm't Corp.* | Cir. Ct. Ill. St. Clair. Co., No. 02L707 |
| *Pease v. Jasper Wyman & Son, Merrill Blueberry Farms Inc., Allen's Blueberry Freezer Inc. & Cherryfield Foods Inc.* | Me. Super. Ct., No. CV-00-015 |
| *West v. G&H Seed Co. (Crawfish Farmers Litig.)* | $27^{th}$ Jud. D. Ct. La., No. 99-C-4984-A |
| *Linn v. Roto-Rooter Inc. (Miscellaneous Supplies Charge)* | C.P. Ohio, No. CV-467403 |
| *McManus v. Fleetwood Enter., Inc. (RV Brake Litigation)* | D. Ct. Tex., No. SA-99-CA-464-FB |
| *Baiz v. Mountain View Cemetery (Burial Practices)* | Cal. Super. Ct., No. 809869-2 |
| *Stetser v. TAP Pharm. Prods, Inc. & Abbott Laboratories (Lupron Price Litigation)* | N.C. Super. Ct., No. 01-CVS-5268 |
| *Richison v. Am. Cemwood Corp. (Roofing Durability Settlement)* | Cal. Super. Ct., No. 005532 |
| *Cotten v. Ferman Mgmt. Servs. Corp.* | $13^{th}$ Jud. Cir. Fla., No. 02-08115 |

24

| | |
|---|---|
| *In re Pittsburgh Corning Corp. (Asbestos Related Bankruptcy)* | Bankr. W.D. Pa., No. 00-22876-JKF |
| *Mostajo v. Coast Nat'l Ins. Co.* | Cal. Super. Ct., No. 00 CC 15165 |
| *Friedman v. Microsoft Corp. (Antitrust Litigation)* | Ariz. Super. Ct., No. CV 2000-000722 |
| *Multinational Outreach - East Germany Property Claims* | Claims Conference |
| *Davis v. Am. Home Prods. Corp. (Norplant Contraceptive Litigation)* | Civ. D. Ct. La., Div. K, No. 94-11684 |
| *Walker v. Tap Pharmaceutical Prods., Inc. (Lupron Price Litigation)* | N.J. Super. Ct., No. CV CPM-L-682-01 |
| *Munsey v. Cox Communications (Late Fee Litigation)* | D. Ct., La., Div. E, Sec. 9, No. 97 19571 |
| *Gordon v. Microsoft Corp. (Antitrust Litigation)* | 4th Jud. D. Ct. Minn., No. 00-5994 |
| *Clark v. Tap Pharmaceutical Prods., Inc.* | 5th Dist. App. Ct. Ill., No. 5-02-0316 |
| *Fisher v. Virginia Electric & Power Co.* | E.D. Va., No 3:02-CV-431 |
| *Mantzouris v. Scarritt Motor Group, Inc.* | M.D. Fla., No. 8:03-CV-0015-T-30-MSS |
| *Johnson v. Ethicon, Inc. (Product Liability Litigation)* | Cir. Ct. W. Va. Kanawha Co., Nos. 01-C-1530, 1531, 1533, 01-C-2491 to 2500 |
| *Schlink v. Edina Realty Title* | 4th Jud. D. Ct. Minn., No. 02-018380 |
| *Tawney v. Columbia Natural Res. (Oil & Gas Lease Litigation)* | Cir. Ct. W. Va. Roane Co., No. 03-C-10E |
| *White v. Washington Mutual, Inc. (Pre-Payment Penalty Litigation)* | 4th Jud. D. Ct. Minn., No. CT 03-1282 |
| *Acacia Media Techs. Corp. v. Cybernet Ventures Inc, (Patent Infringement Litigation)* | C.D. Cal., SACV03-1803 GLT (Anx) |
| *Bardessono v. Ford Motor Co. (15 Passenger Vans)* | Wash. Super. Ct., No. 32494 |
| *Gardner v. Stimson Lumber Co. (Forestex Siding Litigation)* | Wash. Super. Ct., No. 00-2-17633-3SEA |
| *Poor v. Sprint Corp. (Fiber Optic Cable Litigation)* | Cir. Ct. Ill. Madison Co., 99-L-421 |
| *Thibodeau v. Comcast Corp.* | E.D. Pa., No. 04-CV-1777 |
| *Cazenave v. Sheriff Charles C. Foti (Strip Search Litigation)* | E.D. La., No. 00-CV-1246 |
| *National Assoc. of Police Orgs., Inc. v. Second Chance Body Armor, Inc. (Bullet Proof Vest Litigation)* | Cir. Ct. Mich. Antrim Co., 04-8018-NP |
| *Nichols v. SmithKline Beecham Corp. (Paxil)* | E.D. Pa., No. 00-6222 |
| *Yacout v. Federal Pacific Electric Co. (Circuit Breaker)* | N.J. Super. Ct., No. MID-L-2904-97 |
| *Lewis v. Bayer AG (Baycol)* | 1st Jud. Dist. Ct. Pa., No. 002353 |
| *In re Educ. Testing Serv. PLT 7-12 Test Scoring Litig.* | E.D. La., MDL-1643 |
| *Stefanyshyn v. Consol. Indus. Corp. (Heat Exchanger)* | Ind. Super. Ct., No. 79 D 01-9712-CT-59 |
| *Barnett v. Wal-Mart Stores, Inc.* | Wash. Super. Ct., No. 01-2-24553-8 SEA |
| *In re Serzone Prods. Liability Litig.* | S.D. W. Va., MDL No. 1477 |
| *Ford Explorer Cases* | Cal. Super. Ct., JCCP Nos. 4226 & 4270 |
| *In re Solutia Inc. (Bankruptcy)* | S.D. N.Y., No. 03-17949-PCB |
| *In re Lupron Marketing & Sales Practices Litig.* | D. Mass., MDL No.1430 |
| *Morris v. Liberty Mutual Fire Ins. Co.* | D. Okla., No. CJ-03-714 |

25

| | |
|---|---|
| *Bowling, et al. v. Pfizer Inc. (Bjork-Shiley Convexo-Concave Heart Valve)* | S.D. Ohio, No. C-1-91-256 |
| *Thibodeaux v. Conoco Phillips Co.* | D. La., No. 2003-481 |
| *Morrow v. Conoco Inc.* | D. La., No. 2002-3860 |
| *Tobacco Farmer Transition Program* | U.S. Dept. of Agric. |
| *Perry v. Mastercard Int'l Inc.* | Ariz. Super. Ct., No. CV2003-007154 |
| *Brown v. Credit Suisse First Boston Corp.* | C.D. La., No. 02-13738 |
| *In re Unum Provident Corp.* | D. Tenn. No. 1:03-CV-1000 |
| *In re Ephedra Prods. Liability Litig.* | D. N.Y., MDL-1598 |
| *Chesnut v. Progressive Casualty Ins. Co.* | Ohio C.P., No. 460971 |
| *Froeber v. Liberty Mutual Fire Ins. Co.* | Cir. Ct. Ore., No. 00C15234 |
| *Luikart v. Wyeth Am. Home Prods. (Hormone Replacment)* | Cir. Ct. W. Va., No. 04-C-127 |
| *Salkin v. MasterCard Int'l Inc. (Pennsylvania)* | Pa. C.P., No. 2648 |
| *Rolnik v. AT&T Wireless Servs., Inc.* | N.J. Super. Ct., No. L-180-04 |
| *Singleton v. Hornell Brewing Co. Inc.* | No. BC 288 754 |
| *Becherer v. Qwest Commc'ns Int'l, Inc.* | Cir. Ct. Ill. Clair Co., No. 02-L140 |
| *Clearview Imaging v. Progressive Consumers Ins. Co.* | Cir. Ct. Fla. Hillsborough Co., No. 03-4174 |
| *Mehl v. Canadian Pacific Railway, Ltd* | D. N.D., No. A4-02-009 |
| *Murray v. IndyMac Bank. F.S.B* | N.D. Ill., No. 04 C 7669 |
| *Gray v. New Hampshire Indemnity Co., Inc.* | Cir. Ct. Ark., No. CV-2002-952-2-3 |
| *George v. Ford Motor Co.* | M.D. Tenn., No. 3:04-0783 |
| *Allen v. Monsanto Co.* | Cir. Ct. W.Va., No 041465 |
| *Carnegie v. Household Int'l, Inc.* | N. D. Ill., No. 98-C-2178 |
| *Daniel v. AON Corp.* | Cir. Ct. Ill., No. 99 CH 11893 |
| *In re Royal Ahold Securities and "ERISA" Litig.* | D. Md., MDL 1539 |
| *In re Pharmaceutical Industry Average Wholesale Price Litig.* | D. Mass., MDL 1456 |
| *Meckstroth v. Toyota Motor Sales, U.S.A., Inc.* | 24th Jud. D. Ct. La., No. 583-318 |
| *Walton v. Ford Motor Co.* | Cal. Super. Ct., No. SCVSS 126737 |
| *Hill v. State Farm Mutual Auto Ins. Co.* | Cal. Super. Ct., No. BC 194491 |
| *First State Orthopaedics et al. v. Concentra, Inc., et al.* | E.D. Pa. No. 2:05-CV-04951-AB |
| *Sauro v. Murphy Oil USA, Inc.* | E.D. La., No. 05-4427 |
| *In re High Sulfur Content Gasoline Prods. Liability Litig.* | E.D. La., MDL No. 1632 |
| *Homeless Shelter Compensation Program* | City of New York |
| *Rosenberg v. Academy Collection Service, Inc.* | E.D. Pa., No. 04-CV-5585 |
| *Chapman v. Butler & Hosch, P.A.* | 2nd Jud. Cir. Fla., No. 2000-2879 |
| *In re Vivendi Universal, S.A. Securities Litig.* | S.D. N.Y., No. 02-CIV-5571 RJH |
| *Desportes v. American General Assurance Co.* | Ga. Super. Ct., No. SU-04-CV-3637 |

26

| In re: Propulsid Products Liability Litig. | E.D. La., MDL No. 1355 |
|---|---|
| Baxter v. The Attorney General of Canada (Residential School Attendees) | Ont. Super. Ct., 00-CV-192059 CPA |
| McNail v. Mastercard Int'l, Inc. (Currency Conversion Fees) | 13th Tenn. Jud. Dist. Ct. Memphis |
| Lee v. Allstate | Cir. Ct. Ill. Kane Co., No. 03 LK 127 |
| Turner v. Murphy Oil USA, Inc. | E.D. La., No. 2:05-CV-04206-EEF-JCW |
| Carter v. North Central Life Ins. Co. | Ga. Super. Ct., No. SU-2006-CV-3764-6 |
| Harper v. Equifax | E.D. Pa., No. 2:04-CV-03584-TON |
| Beasley v. Hartford Insurance Co. of the Midwest | Cir. Ct. Ark., No. CV-2005-58-1 |
| Springer v. Biomedical Tissue Services, LTD (Human Tissue Litig.) | Cir. Ct. Ind. Marion Co., No.1:06-CV-00332-SEB-VSS |
| Spence v. Microsoft Corp. (Antitrust Litig.) | Cir. Ct. Wis. Milwaukee Co., No. 00-CV-003042 |
| Pennington v. The Coca Cola Co. (Diet Coke) | Cir. Ct. Mo. Jackson Co., No. 04-CV-208580 |
| Sunderman v. Regeneration Technologies, Inc. (Human Tissue Litig.) | S.D. Ohio, No. 1:06-CV-075-MHW |
| Peyroux v. The United States of America (New Orleans Levee Breech) | E.D. La., No. 06-2317 |
| Chambers v. DaimlerChrysler Corp. (Neon Head Gaskets) | N.C. Super. Ct., No. 01:CVS-1555 |
| Ciabattari v. Toyota Motor Sales, U.S.A., Inc. (Sienna Run Flat Tires) | N.D. Cal., No. C-05-04289-BZ |
| In re Bridgestone Securities Litig. | M.D. Tenn. No. 3:01-CV-0017 |
| In re Mutual Funds Investment Litig. (Market Timing) | D. Md., MDL No. 1586 |
| Peek v. Microsoft Corporation | Cir. Ct. Ark., No. CV-2006-2612 |
| Reynolds v. The Hartford Financial Services Group, Inc. | D. Ore., No. CV-01-1529 BR |
| Schwab v. Philip Morris USA, Inc. | E.D. N.Y., CV-04-1945 |
| Zarebski v. Hartford Insurance Co. of the Midwest | Cir. Ct. Ark., No. CV-2006-409-3 |
| In re Parmalat Securities Litig. | S.D. N.Y., MDL No. 1653 (LAK) |
| Beasley v. The Reliable Life Insurance Co. | Cir. Ct. Ark., No. CV-2005-58-1 |
| Satterfield v. Simon & Schuster | N.D. Cal., No. C-06-2893-CW |
| Govt. Employees Hospital Assoc. v. Serono Int., S.A. | D. Mass., 06-CA-10613-PBS |
| Gunderson v. Focus Healthcare Management, Inc. | 14th Jud. D. Ct. La., No. 2004-2417-D |
| Gunderson v. F.A. Richard & Associates, Inc., et al. | 14th Jud. D. Ct. La., No. 2004-2417-D |
| Perez v. Manor Care of Carrollwood | 13th Jud. Cir. Fla., No. 06-00574-E |
| Pope v. Manor Care of Carrollwood | 13th Jud. Cir. Fla., No. 06-01451-B |
| West v. Carfax, Inc. | Ohio C.P., No. 04-CV-1898 (ADL) |
| Hunsucker v. American Family Mutual Ins. Company | Cir. Ct. Ark., No., CV-2007-155-3 |
| In re Conagra Peanut Butter Litigation | MDL No. 1845 |
| Burgess v. Farmers Insurance Co., Inc. | Dist. Ct. Comanche Co., Okla., CJ-2001-292 |
| Grays Harbor v. Carrier Corporation | W.D. Wash., No. 05-05437-RBL |

| *Perrine v. E.I. Du Pont De Nemours & Co.* | Cir. Ct. W. Va., No. 04-C-296-2 |
| *In re Alstom SA Securities Litig.* | S.D. N.Y., No. 03-CV-6595 VM |
| *Brookshire Bros. v. Chiquita* | S.D. Fla., No. 05-CIV-21962 |

Hilsoft-cv-83

# Exhibit 2

# JUDICIAL COMMENTS FROM STATE AND FEDERAL COURTS CITING
## THE REACH OF OUR NOTICE PROGRAMS

Judge Stuart R. Pollak, *Microsoft I-V Cases*, noted on April 1, 2001, J.C.C.P. No.

CJC-00-004106 (Cal. Super. Ct. San Francisco Co.):

> *[C]oncerning dissemination of class notice; and I have reviewed the materials that have been submitted on that subject and basically I'm satisfied. I think it's amazing if you're really getting **80 percent** coverage. That's very reassuring. And the papers that you submitted responded to a couple things that had been mentioned before and I am satisfied with all that.*

Judge Louis J. Farina, *Soders v. General Motors Corp.*, stated on October 31,

2003, No. CI-00-04255, (Pa. C.P. Lancaster Co.):

> *Plaintiff provided extensive information regarding the reach of their proposed plan. Their notice expert, Todd Hilsee, opined that their plan will reach **84.8%** of the class members. Defendant provided the Court with no information regarding the potential reach of their proposed plan . . . There is no doubt that some class members will remain unaware of the litigation, however, on balance, the Plaintiff's plan is likely to reach as many class members as the Defendant's plan at less than half the cost. As such, I approve the Plaintiff's publication based plan.*

Judge Joe E. Griffin, *Beasley v. Hartford Insurance Co. of the Midwest*, noted on

June 13, 2006, No. CV-2005-58-1 (Cir. Ct. Ark.):

> *[R]eceived testimony from Mr. Hilsee at the Settlement Approval Hearing concerning the success of the notice campaign, including the fact that written notice reached **97.7%** of the potential Class members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual Class Members who had an earlier opportunity to request exclusion, but did not do so. The Court also concludes that the lack of valid objections also supports the Court's decision to not offer a second exclusion window . . . Although the Notice Campaign was highly successful and resulted in actual mailed notice being received by over 400,000 Class Members, only one Class Member attempted to file a purported objection to either the Stipulation or Class Counsels' Application for Fees. The Court finds it significant that out of over 400,000 Class Members who received mailed Notice, there was no opposition to the proposed Settlement or Class Counsels' Application for Fees, other than the single void objection. The lack of opposition by a well-noticed Class strongly supports the*

> *fairness, reasonableness and adequacy of the Stipulation and Class Counsels' Application for Fees.*

Judge Douglas L. Combs, *Morris v. Liberty Mutual Fire Ins. Co.*, stated on

February 22, 2005, No. CJ-03-714 (D. Okla.):

> *I want the record also to demonstrate that with regard to notice, although my experience – this Court's experience in class actions is much less than the experience of not only counsel for the plaintiffs, counsel for the defendant, but also the expert witness, Mr. Hilsee, I am very impressed that the notice was able to reach – be delivered to 97 ½ percent members of the class. That, to me, is admirable. And I'm also – at the time that this was initially entered, I was concerned about the ability of notice to be understood by a common, nonlawyer person, when we talk about legalese in a court setting. In this particular notice, not only the summary notice but even the long form of the notice were easily understandable, for somebody who could read the English language, to tell them whether or not they had the opportunity to file a claim.*

Judge Richard G. Stearns, *In re Lupron Marketing and Sales Practice Litig.*,

noted on May 12, 2005, 228 F.R.D. 75, 96 (D. Mass. 2005):

> *With respect to the effectiveness of notice, in the absence of any evidence to the contrary, I accept the testimony of Todd Hilsee that the plan he designed achieved its objective of exposing 80 percent of the members of the consumer class . . .*

Judge John Speroni, in *Avery v. State Farm*, specifically cited the conservative

reach calculations we made on February 25, 1998, No. 97-L-114 (Cir. Ct. Ill.):

> *Mr. Hilsee's opinion that Plaintiffs' proposed Notice Plan will have a 'net reach' of at least 76.4% of the potential class members through the publication plan, Hilsee Supp. Aff. at Paragraph 17, is supportable and verifiable. The 'net reach' of Plaintiffs' proposed Notice Plan among State Farm insureds who have had auto parts recently installed is slightly higher at 76.7%. This indicates to the court that the plan developed by Plaintiffs is particularly well-targeted at class members. The conservatism of these 'reach' numbers is highlighted by the fact that they do not include the effect of Plaintiff's proposed media and internet activities as the*

*additional reach those activities provide can not be scientifically verified at this time.*

Judge John R. Padova, in *Nichols v. SmithKline Beecham Corp.*, noted when

approving the notice program on April 22, 2005, No. 00-6222 (E.D. Pa.):

> *As required by this court in its Preliminary Approval Order and as described in extensive detail in the Affidavit of Todd B. Hilsee on Design Implementation and Analysis of Settlement Notice Program . . . The Court finds that the Notice provided in this case satisfies the requirements of due process and Federal Rules of Civil Procedure . . . Pursuant to Order dated October 18, 2004, End-Payor Plaintiffs employed Hilsoft Notifications to design and oversee Notice to the End-Payor Class . . . End-Payor Plaintiffs used published Summary Notice to reach consumer members of the End-Payor Class, not individual mailed Notice . . . Todd Hilsee of Hilsoft Notifications, believes that Notice has reached **81.9% of all Paxil users** . . .*

Chancellor Dewey C. Whitenton, *Ervin v. Movie Gallery, Inc.,* stated on

November 22, 2002, No. 13007 (Tenn. Ch.):

> *Based on the evidence submitted and based on the opinions of Todd Hilsee, a well-recognized expert in the distribution of class notices, the in-store notice alone accounted for an approximate 34% of all MGA class members and the combined efforts of the in-store notice and the other notice mechanisms reached at least **84.5%** of the entire MGA settlement class. According to Mr. Hilsee, the notice effort - including the in-store personal distribution of notice that the MGA store personnel enacted 'was among the most successful and effective that I have observed in all my notification experience '.*

Judge Sarah S. Vance, *In re Educational Testing Services Praxis Principles of*

*Learning and Teaching: Grades 7-12 Litig.,* noted on August 31, 2006, MDL

1643 (D. Ct. La. 2005):

> *At the fairness hearing, the Court received testimony from the Notice Administrator, Todd Hilsee, who described the forms and procedure used to notify class members of the proposed settlement*

## JUDICIAL COMMENTS FROM STATE AND FEDERAL COURTS CITING
## THE REACH OF OUR NOTICE PROGRAMS

> *and their rights with respect to it. The Notice Administrator*
> *testified that the notice was mailed and actually delivered to 96%*
> *of the approximately 27,000 class members, which, according to*
> *Hilsee, was one of the highest success rates with direct mail he had*
> *ever been able to achieve...The Court is satisfied that notice to the*
> *class fully complied with the requirements of Rule 23.*

Judge Marina Corodemus, in *Talalai v. Cooper Tire & Rubber Co.,* stated on

October 30, 2001, No. MID-L-8839-00 MT (N.J. Super. Ct. Middlesex Co.):

> *The notice program is specifically designed to reach a substantial*
> *percentage of the putative settlement class members. Mr. Hilsee's*
> *report reveals that the proposed notice plan is designed to*
> *effectively reach 83.2% of owners of defendant's tires as well as*
> *the broader target of adults 35+, and 82.9% of key groups that*
> *account for the largest share of tire purchases such as men 35+.*

# Exhibit 3

LEGAL NOTICE

# If you are a woman and are or were employed by MNO, a class action lawsuit may affect your rights.

You may be affected by a class action lawsuit about whether MNO, Inc. discriminated against women.

The lawsuit is called *Johnson v. MNO, Inc.*, No. CV-00-1234, and is in the United States District Court for the District of State. The Court decided this lawsuit should be a class action on behalf of a "Class," or group of people, that could include you. This notice summarizes your rights and options before an upcoming trial. More information is in a detailed notice available at the website below. If you're included, you have to decide whether to stay in the Class and be bound by whatever results, or ask to be excluded and keep your right to sue MNO. **There is no money available now and no guarantee that there will be.**

### ARE YOU AFFECTED?

Women employed as account executives by MNO, Inc. at any time from June 6, 1996, through July 15, 2003, are Class members. This includes women currently employed, as long as they were hired on or before July 15, 2003, as well as those no longer employed, but who were employed any time from June 6, 1996, through July 15, 2003. Those who worked at MNO as independent contractors are NOT included.

### WHAT IS THIS CASE ABOUT?

The lawsuit claims that MNO discriminated against female account executives. The suit claims women received less pay than men in similar jobs. It also says that MNO required women to achieve more than men to get promoted. The lawsuit seeks to ensure an equal workplace for women, as well as money or benefits for the Class.

MNO denies it did anything wrong and says it has a fair workplace that gives women the same opportunities as men. **The Court has not decided whether the Class or MNO is right.** The lawyers for the Class will have to prove their claims at a trial set to begin on Month 00, 0000.

> ## Who's affected?
>
> **Women account executives employed by MNO, Inc. any time from June 6, 1996, through July 15, 2003, including current and former employees, and full and part-time employees.**

### WHO REPRESENTS YOU?

The Court asked Lawfirm One, LLP of City, ST and Lawfirm Two, P.C. of City, ST, to represent you as "Class Counsel." You don't have to pay Class Counsel, or anyone else, to participate. Instead, if they get money or benefits for the Class, they may ask the Court for attorneys' fees and costs, which would be paid by MNO or out of any money recovered, before giving the rest to the Class. You may hire your own lawyer to appear in Court for you; if you do, you have to pay that lawyer. Mary Johnson and Louise Smith are Class members like you, and the Court accepted them as the "Class Representatives."

### WHAT ARE YOUR OPTIONS?

You have a choice of whether to stay in the Class or not, and **you must decide this now.** If you stay in the Class, you will be legally bound by all orders and judgments of the Court, and you won't be able to sue, or continue to sue, MNO—as part of any other lawsuit—for gender discrimination that occurred from June 6, 1996, through July 15, 2003. If money or benefits are obtained, you will be notified about how to get a share. To stay in the Class, you do not have to do anything now.

If you ask to be excluded from the Class, you cannot get any money or benefits from this lawsuit if any are awarded, but you will keep any rights to sue MNO for these claims, now or in the future, and will not be bound by any orders or judgments of the Court. To ask to be excluded, send a letter to the address below, postmarked by **Month 00, 0000,** that says you want to be excluded from *Johnson v. MNO, Inc.* Include your name, address, and telephone number.

### HOW CAN YOU GET MORE INFORMATION?

If you have questions or want a detailed notice or other documents about this lawsuit and your rights, visit www.mnoclassaction.com, or write to: MNO Class Action, P.O. Box 000, City, ST 00000-0000.

## www.mnoclassaction.com

# If you are a woman and are or were employed by MNO, a class action lawsuit may affect your rights.

*A court authorized this notice. This is not a solicitation from a lawyer.*

- Female employees have sued MNO, Inc., alleging discrimination against women.

- The Court has allowed the lawsuit to be a class action on behalf of all women employed by MNO as account executives at any time from June 6, 1996, through July 15, 2003.

- The Court has not decided whether MNO did anything wrong. There is no money available now, and no guarantee there will be. However, your legal rights are affected, and you have a choice to make now:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **DO NOTHING** | **Stay in this lawsuit. Await the outcome. Give up certain rights.**<br>By doing nothing, you keep the possibility of getting money or benefits that may come from a trial or a settlement. But, you give up any rights to sue MNO separately about the same legal claims in this lawsuit. |
| **ASK TO BE EXCLUDED** | **Get out of this lawsuit. Get no benefits from it. Keep rights.**<br>If you ask to be excluded and money or benefits are later awarded, you won't share in those. But, you keep any rights to sue MNO separately about the same legal claims in this lawsuit. |

- Your options are explained in this notice. To ask to be excluded, you must act before **Month 00, 0000.**

- Lawyers must prove the claims against MNO at a trial set to start Month 00, 0000. If money or benefits are obtained from MNO, you will be notified about how to ask for a share.

- **Any questions? Read on and visit www.mnoclassaction.com.**

**BASIC INFORMATION**..............................................   PAGE 3
  1. Why did I get this notice?
  2. What is this lawsuit about?
  3. What is a class action and who is involved?
  4. Why is this lawsuit a class action?

**THE CLAIMS IN THE LAWSUIT**...............................   PAGE 4
  5. What does the lawsuit complain about?
  6. How does MNO answer?
  7. Has the Court decided who is right?
  8. What are the Plaintiffs asking for?
  9. Is there any money available now?

**WHO IS IN THE CLASS**.............................................   PAGE 5
  10. Am I part of this Class?
  11. Which current and former employees are included?
  12. Are any women who worked at MNO not included in the Class?
  13. I'm still not sure if I am included.

**YOUR RIGHTS AND OPTIONS**......................................   PAGE 6
  14. What happens if I do nothing at all?
  15. Why would I ask to be excluded?
  16. How do I ask the Court to exclude me from the Class?

**THE LAWYERS REPRESENTING YOU**...............................   PAGE 7
  17. Do I have a lawyer in this case?
  18. Should I get my own lawyer?
  19. How will the lawyers be paid?

**THE TRIAL**............................................................   PAGE 7
  20. How and when will the Court decide who is right?
  21. Do I have to come to the trial?
  22. Will I get money after the trial?

**GETTING MORE INFORMATION**.....................................   PAGE 8
  23. Are more details available?

# BASIC INFORMATION

## 1. Why did I get this notice?

MNO's records show that you currently work, or previously worked, for MNO, Inc. This notice explains that the Court has allowed, or "certified," a class action lawsuit that may affect you. You have legal rights and options that you may exercise before the Court holds a trial. The trial is to decide whether the claims being made against MNO, on your behalf, are correct. Judge Jane Jones of the United States District Court for the District of State is overseeing this class action. The lawsuit is known as *Johnson, et al., v. MNO, Inc.*, Civil Action No. CV-00-1234.

## 2. What is this lawsuit about?

This lawsuit is about whether MNO discriminated against female account executives based on their gender, by making it harder for them to advance in their careers. More information about federal laws prohibiting job discrimination can be found at the website of the U.S. Equal Employment Opportunity Commission, www.eeoc.gov.

## 3. What is a class action and who is involved?

In a class action lawsuit, one or more people called "Class Representatives" (in this case Mary Johnson and Louise Smith) sue on behalf of other people who have similar claims. The people together are a "Class" or "Class Members." The women who sued—and all the Class Members like them—are called the Plaintiffs. The company they sued (in this case MNO, Inc.) is called the Defendant. One court resolves the issues for everyone in the Class—except for those people who choose to exclude themselves from the Class.

## 4. Why is this lawsuit a class action?

The Court decided that this lawsuit can be a class action and move towards a trial because it meets the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts. Specifically, the Court found that:

- There are more than 90,000 women who are or were employed by MNO as account executives;
- There are legal questions and facts that are common to each of them;
- Mary Johnson's and Louise Smith's claims are typical of the claims of the rest of the Class;
- Ms. Johnson, Ms. Smith, and the lawyers representing the Class will fairly and adequately represent the Class' interests;
- The common legal questions and facts are more important than questions that affect only individuals; and
- This class action will be more efficient than having many individual lawsuits.

More information about why the Court is allowing this lawsuit to be a class action is in the Court's Order Certifying the Class, which is available at www.mnoclassaction.com.

# THE CLAIMS IN THE LAWSUIT

## 5. What does the lawsuit complain about?

In the lawsuit, the Plaintiffs say that MNO discriminated against women account executives. They claim that these women received less pay than men in similar jobs. They also say that MNO made promotions to account supervisor positions more difficult for women because they had to demonstrate greater achievements than men. You can read the Plaintiffs' Class Action Complaint at www.mnoclassaction.com.

## 6. How does MNO answer?

MNO denies that it did anything wrong and says that opportunities for hiring and promotion are equally available to women and men. MNO says that its policies are clear and that they neither allow, nor condone, discrimination against women. MNO says that women advanced as often as men, and that greater achievements are not necessary for women to qualify for a promotion. MNO's Answer to the Complaint is also at the website.

## 7. Has the Court decided who is right?

The Court hasn't decided whether MNO or the Plaintiffs are correct. By establishing the Class and issuing this Notice, the Court is not suggesting that the Plaintiffs will win or lose this case. The Plaintiffs must prove their claims at a trial starting Month 00, 0000. (See "The Trial" below on page 7.)

## 8. What are the Plaintiffs asking for?

The Plaintiffs are asking for changes in MNO's policies to ensure that women are treated fairly and equally in the workplace. They want MNO's policies to say that discrimination based on gender is banned. The Plaintiffs also want lost wages and money for emotional distress for Class Members.

## 9. Is there any money available now?

No money or benefits are available now because the Court has not yet decided whether MNO did anything wrong, and the two sides have not settled the case. There is no guarantee that money or benefits ever will be obtained. If they are, you will be notified about how to ask for a share.

# WHO IS IN THE CLASS

You need to decide whether you are affected by this lawsuit.

Judge Jones decided that all women who were employed by MNO, Inc. as account executives (full time or part time) at any time from June 6, 1996, through July 15, 2003, are Class Members. She also specified that "temp" employees and independent contractors are *not* part of the class. See question 12 below.

Former employees are in the Class as long as they were employed by MNO any time from June 6, 1996, through July 15, 2003. If you were hired after July 15, 2003—even if you are a current employee—you are not included. In other words, these women are included:

- **Women account executives currently employed by MNO who were hired on or before July 15, 2003.**
- **Women account executives no longer employed by MNO but who were employed by MNO any time from June 6, 1996, through July 15, 2003.**

If you *worked at* MNO during the time period in question 10, but you were not directly *employed by* MNO, you are NOT a Class Member. Think about whether you were paid for your work at MNO by a temporary staffing service or an independent contractor for MNO. If so, you were not employed by MNO. If you were later hired by MNO after a temporary period, you may be part of the Class as long as MNO hired you on or before July 15, 2003.

If you are still not sure whether you are included, you can get free help at www.mnoclassaction.com, or by calling or writing to the lawyers in this case, at the phone number or address listed in question 23.

# YOUR RIGHTS AND OPTIONS

You have to decide whether to stay in the Class or ask to be excluded before the trial, and you have to decide this now.

## 14. What happens if I do nothing at all?

You don't have to do anything now if you want to keep the possibility of getting money or benefits from this lawsuit. By doing nothing you are staying in the Class. If you stay in and the Plaintiffs obtain money or benefits, either as a result of the trial or a settlement, you will be notified about how to apply for a share (or how to ask to be excluded from any settlement). Keep in mind that if you do nothing now, regardless of whether the Plaintiffs win or lose the trial, you will not be able to sue, or continue to sue, MNO—as part of any other lawsuit—about the same legal claims that are the subject of this lawsuit. This means that if you do nothing, you may only be able to sue for gender discrimination that occurred *before* June 6, 1996 or occurs *after* July 15, 2003 only. You will also be legally bound by all of the Orders the Court issues and judgments the Court makes in this class action.

## 15. Why would I ask to be excluded?

If you already have your own gender discrimination lawsuit against MNO and want to continue with it, you need to ask to be excluded from the Class. If you exclude yourself from the Class—which also means to remove yourself from the Class, and is sometimes called "opting-out" of the Class—you won't get any money or benefits from this lawsuit even if the Plaintiffs obtain them as a result of the trial or from any settlement (that may or may not be reached) between MNO and the Plaintiffs. However, you may then be able to sue or continue to sue MNO for employment discrimination that occurred or occurs at any time. If you exclude yourself, you will not be legally bound by the Court's judgments in this class action.

If you start your own lawsuit against MNO after you exclude yourself, you'll have to hire and pay your own lawyer for that lawsuit, and you'll have to prove your claims. If you do exclude yourself so you can start or continue your own lawsuit against MNO, you should talk to your own lawyer soon, because your claims may be subject to a statute of limitations.

Note that if you exclude yourself from this lawsuit and you are currently employed by MNO, any changes made to MNO's policies about the treatment of women would still apply to you.

## 16. How do I ask the Court to exclude me from the Class?

To ask to be excluded, you must send an "Exclusion Request" in the form of a letter sent by mail, stating that you want to be excluded from *Johnson v. MNO*. Be sure to include your name and address, and sign the letter. You must mail your Exclusion Request postmarked by **Month 00, 0000,** to: Johnson v. MNO Exclusions, P.O. Box 0000, City, ST 00000-0000. You may also get an Exclusion Request form at the website, www.mnoclassaction.com.

# THE LAWYERS REPRESENTING YOU

## 17. Do I have a lawyer in this case?

The Court decided that the law firms of Lawfirm One, LLP, of City, ST, and Lawfirm Two, P.C., of City, ST, are qualified to represent you and all Class Members. Together the law firms are called "Class Counsel." They are experienced in handling similar cases against other employers. More information about these law firms, their practices, and their lawyers' experience is available at www.lawfirmone.com and www.lawfirmtwo.com.

## 18. Should I get my own lawyer?

You do not need to hire your own lawyer because Class Counsel is working on your behalf. But, if you want your own lawyer, you will have to pay that lawyer. For example, you can ask him or her to appear in Court for you if you want someone other than Class Counsel to speak for you.

## 19. How will the lawyers be paid?

If Class Counsel get money or benefits for the Class, they may ask the Court for fees and expenses. You won't have to pay these fees and expenses. If the Court grants Class Counsels' request, the fees and expenses would be either deducted from any money obtained for the Class or paid separately by MNO.

# THE TRIAL

The Court has scheduled a trial to decide who is right in this case.

## 20. How and when will the Court decide who is right?

As long as the case isn't resolved by a settlement or otherwise, Class Counsel will have to prove the Plaintiffs' claims at a trial. The trial is set to start on Tuesday, Month 00, 0000, in the United States District Court for the District of State, 100 Court Street, City, State, in Courtroom 1. During the trial, a Jury or the Judge will hear all of the evidence to help them reach a decision about whether the Plaintiffs or Defendant are right about the claims in the lawsuit. There is no guarantee that the Plaintiffs will win, or that they will get any money for the Class.

## 21. Do I have to come to the trial?

You do not need to attend the trial. Class Counsel will present the case for the Plaintiffs, and MNO will present the defenses. You or your own lawyer are welcome to come at your own expense.

## 22. Will I get money after the trial?

If the Plaintiffs obtain money or benefits as a result of the trial or a settlement, you will be notified about how to participate. We do not know how long this will take.

# GETTING MORE INFORMATION

## 23. Are more details available?

Visit the website, www.mnoclassaction.com, where you will find the Court's <u>Order Certifying the Class</u>, the <u>Complaint</u> that the Plaintiffs submitted, the Defendant's <u>Answer to the Complaint</u>, as well as an <u>Exclusion Request</u> form. You may also speak to one of the lawyers by calling 1-000-000-0000, or by writing to: MNO Class Action, P.O. Box 000, City, ST 00000-0000.

DATE: MONTH 00, 0000.

# If you were exposed to Xbestos or other ABC products, you may have a claim in a proposed class action settlement.

A settlement of a class action lawsuit affects you if you were ever exposed to asbestos in Xinsulation, Xbestos, or other ABC Corporation products. The settlement will pay people who are suffering from an asbestos-related disease, as well as those who were exposed, but not sick, who need medical monitoring. If you qualify, you may send in a claim form to ask for payment, or you can exclude yourself from the settlement, or object.

The United States District Court for the District of State authorized this notice. The Court will have a hearing to consider whether to approve the settlement, so that the benefits may be paid.

## Who's Affected?

Construction workers who installed, or worked around, Xbestos, Xinsulation, and other ABC products (pictured and described to the right) are included in the settlement. Homeowners whose homes have or had Xinsulation are also included, as described in separate notices. *You're a 'Class Member' if you were exposed to asbestos fibers in any ABC Corporation products any time before Month 00, 0000.*

## What's this About?

The lawsuit claimed that ABC made and sold products knowing that the asbestos fibers contained in them posed a danger to the health and safety of anyone exposed to them. The suit claimed that exposure increased the risk of developing Asbestosis, Mesothelioma, Lung Cancer, or other diseases that scientists have associated with exposure to asbestos. ABC denies all allegations and has asserted many defenses. The settlement is not an admission of wrongdoing or an indication that any law was violated.

## What can you Get from the Settlement?

There will be an Injury Compensation Fund of $200 million for Class Members who have been diagnosed with an asbestos-related disease, and a $70 million Medical Monitoring Fund for checking the health of those who were exposed but are not currently suffering from an asbestos-related disease. Compensation for injuries will be in varying amounts for specific diseases:

| Disease | Minimum | Maximum | Average |
|---|---|---|---|
| Mesothelioma | $10,000 | $100,000 | $20,000-$30,000 |
| Lung Cancer | $5,000 | $43,000 | $9,000-$15,000 |
| Other Cancer | $2,500 | $16,000 | $4,000-$6,000 |
| Non-Malignant | $1,250 | $15,000 | $3,000-$4,000 |

Medical monitoring payments will be $1,000 or the amount of your actual medical expenses, whichever is greater.

## How do you Get a Payment?

A detailed notice and claim form package contains everything you need. Just call or visit the website below to get one. **Claim forms are due by Month 00, 0000.** For an injury compensation claim, you'll have to submit a statement from a doctor that describes your current medical condition and confirms that you have one of the diseases in the box above. For a medical monitoring claim, you'll have to show proof of your exposure to an ABC asbestos-containing product.

## What are your Options?

If you don't want a payment and you don't want to be legally bound by the settlement, you must exclude yourself by **Month 00, 0000,** or you won't be able to sue, or continue to sue, ABC about the legal claims in this case. If you exclude yourself, you can't get a payment from this settlement. If you stay in the Class, you may object to the settlement by Month 00, 0000. The detailed notice describes how to exclude yourself or object. The Court will hold a hearing in this case (*Smith v. ABC Corp.,* Case No. CV-00-1234) on Month 00, 0000, to consider whether to approve the settlement and attorneys' fees and expenses totalling no more than $30 million. You may appear at the hearing, but you don't have to. For more details, call toll free 1-800-000-0000, go to www.ABCsettlement.com, or write to ABC Settlement, P.O. Box 000, City, ST 00000.



Did you work around ABC building products?

ABC Corp. made building products such as Xbestos, Xbestos and Zbestos, used in the construction of buildings and homes. You may have been exposed to asbestos by installing them or working at the site. Asbestos fibers on your clothing may have exposed your family. If you're not sure whether you worked around ABC products, call or visit the website below.

## 1-800-000-0000      www.ABCsettlement.com



Notice Administrator for U.S. District Court
P.O. Box 00000
City, ST 00000-0000

## Notice to those who worked around Xbestos and other ABC products.

John Q. Class Member
123 Anywhere Street
Anytown, ST 12345-1234

(Above: Front of outside of Notice mailing)

(Below: Back of outside of Notice mailing)

**If you were exposed to Xbestos or other ABC products,
you could get a payment from a class action settlement.**

# If you were ever exposed to asbestos in ABC Corporation products, you could get a payment from a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- The settlement will provide $270 million to pay claims from those who are currently suffering from an asbestos-related disease, as well as those exposed but not sick, who need medical monitoring.

- To qualify, you must have been exposed to asbestos in ABC Corporation products. Your exposure may have happened in different ways:

  o **Homeowners may have had ABC's Xinsulation in their attics or walls.**

  o **Workers may have installed ABC building products like Xbestos.**

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment. |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that allows you to ever be part of any other lawsuit against ABC, about the legal claims in this case. |
| **OBJECT** | Write to the Court about why you don't like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no payment. Give up rights. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after appeals are resolved. Please be patient.

---

**QUESTIONS? CALL 1-800-000-0000 TOLL FREE, OR VISIT ABCSETTLEMENT.COM**
**PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO WEBSITE**

# WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ................................................... PAGE 3
1. Why did I get this notice package?
2. What is this lawsuit about?
3. Why is this a class action?
4. Why is there a settlement?

**WHO IS IN THE SETTLEMENT** ........................................ PAGE 4
5. How do I know if I am part of the settlement?
6. Which ABC products are included?
7. If I was exposed but do not have any disease, am I included?
8. I'm still not sure if I am included.

**THE SETTLEMENT BENEFITS—WHAT YOU GET** .................. PAGE 5
9. What does the settlement provide?
10. What can I get from the settlement?
11. What if I get sick, or I am exposed to asbestos in ABC products, in the future?

**HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM** ...... PAGE 7
12. How can I get a payment?
13. When would I get my payment?
14. What am I giving up to get a payment or stay in the Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ................. PAGE 7
15. How do I get out of the settlement?
16. If I don't exclude myself, can I sue ABC for the same thing later?
17. If I exclude myself, can I get money from this settlement?

**THE LAWYERS REPRESENTING YOU** ................................ PAGE 8
18. Do I have a lawyer in the case?
19. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ................................... PAGE 8
20. How do I tell the Court that I don't like the settlement?
21. What's the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING** .................................. PAGE 9
22. When and where will the Court decide whether to approve the settlement?
23. Do I have to come to the hearing?
24. May I speak at the hearing?

**IF YOU DO NOTHING** ................................................. PAGE 10
25. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ..................................... PAGE 10
26. Are there more details about the settlement?
27. How do I get more information?

# BASIC INFORMATION

## 1. Why did I get this notice package?

You or someone in your family may have owned or lived in a home or other property with Xinsulation. Or you or a family member may have worked around Xbestos, Xinsulation, or other asbestos-containing products made or sold by ABC Corporation.

The Court sent you this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the settlement. If the Court approves it and after objections and appeals are resolved, an administrator appointed by the Court will make the payments that the settlement allows. You will be informed of the progress of the settlement.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the District of State, and the case is known as *Smith et al v. ABC Corporation*, Case No. CV-00-1234. The people who sued are called Plaintiffs, and the company they sued, ABC, is called the Defendant.

## 2. What is this lawsuit about?

The lawsuit claimed that ABC made and sold products knowing that the asbestos fibers contained in them posed a danger to the health and safety of anyone exposed to them. The lawsuit claimed that exposure increased the risk of developing asbestosis, mesothelioma, lung cancer, or other diseases that scientists have associated with exposure to asbestos. ABC denies they did anything wrong.

## 3. Why is this a class action?

In a class action, one or more people, called Class Representatives (in this case Frederick Smith), sue on behalf of people who have similar claims. All these people are a Class or Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class. U.S. District Judge Jane Jones is in charge of this class action.

## 4. Why is there a settlement?

The Court did not decide in favor of Plaintiffs or Defendants. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and the people affected will get compensation. The Class Representative and the attorneys think the settlement is best for everyone who was injured or exposed.

# WHO IS IN THE SETTLEMENT

To see if you will get money from this settlement, you first have to decide if you are a Class Member.

Judge Jones decided that everyone who fits this description is a Class Member: *All people exposed to asbestos fibers in any ABC Corporation product any time before Month 00, 0000.*

If you're not sure whether you were exposed to ABC products, look at these pictures and captions:

## DID YOU WORK AROUND OR INSTALL ABC BUILDING PRODUCTS?

ABC made Xbestos, Xinsulation, and other building products called Ybestos and Zbestos. These products were sprayed on during the construction of high-rise office buildings and many other structures and homes. You may have been exposed to asbestos by either installing the products directly, or simply by working at the site. You may have brought asbestos fibers home on your clothing, exposing your family.

## DID YOUR HOME EVER HAVE XINSULATION?

Xinsulation is in the attics and walls of older homes. It's loose, white, and fluffy. It's shaped like a small cotton ball, varying from silver-blue to gray-black. It is layered with a glittery, puffy appearance that may have a translucent or brownish hue. After years in the attic, the granules may darken to black or gray. **Be careful not to disturb it.** It may be underneath other types of insulation. The settlement provides for someone to come and test it for you, if you call and ask.




**Did a family member ever work around ABC's asbestos products? He or she may be included.**

**Did your home or property ever have Xinsulation? You're included even if you don't live there anymore.**

Case 1:04-cv-00006    Document 429-9    Filed 06/22/2007    Page 21 of 39

## 7. If I was exposed but do not have any disease, am I included?

Yes. You don't have to have a disease to be part of this settlement. The Class includes all those who have certain asbestos-related diseases. The Class also includes those who were exposed but are not currently suffering from an asbestos-related disease and who may need medical monitoring—even those who haven't visited a doctor. The settlement payments are different for sick and for healthy people.

## 8. I'm still not sure if I am included.

If you are still not sure whether you are included, you can ask for free help. You can call 1-800-000-0000 and ask for an independent inspector to come see if your insulation is Xinsulation. **Some government agencies warn that the asbestos in Xinsulation is dangerous to your health, so do not disturb it.** For more information, you can also visit the website, www.ABCsettlement.com. Or you can fill out and return the claim form described on page 7, in question 12, to see if you qualify.

# THE SETTLEMENT BENEFITS—WHAT YOU GET

## 9. What does the settlement provide?

ABC has agreed to create an Injury Compensation Fund of $200 million for Class Members who have been diagnosed with an asbestos-related disease, and another $70 million Medical Monitoring Fund for assessing the health of those who were exposed but not currently suffering from an asbestos-related disease. ABC will also pay claims for future injuries among Class Members already exposed who request medical monitoring.

## 10. What can I get from the settlement?

### ARE YOU INJURED?

If you have been diagnosed with an asbestos-related disease, you may be eligible for payment from the Injury Compensation Fund. These are the payment amounts for specific asbestos-related diseases:

| INJURY COMPENSATION FUND PAYMENTS | | | |
|---|---|---|---|
| Disease | Minimum | Maximum | Average |
| Mesothelioma | $10,000 | $100,000 | $20,000-$30,000 |
| Lung Cancer | $5,000 | $43,000 | $9,000-$15,000 |
| Other Cancer | $2,500 | $16,000 | $4,000-$6,000 |
| Non-Malignant | $1,250 | $15,000 | $3,000-$4,000 |

If, after everyone sends in claim forms, the injury compensation claims total more than $200 million, the payments will be reduced. If the injury compensation claims are less than $200 million, the payments will be increased.

Your payment will be based on how severe your disease is, your medical expenses, and your lost earnings. To get the minimum payment in the table above, you do not have to detail your expenses or lost earnings. To get larger amounts up to the maximum amount, you'll have to prove your medical expenses and document your lost earnings.

## WERE YOU EXPOSED TO ASBESTOS? HAVE YOU BEEN TESTED?

If you were exposed to one or more of ABC's asbestos-containing products, but you are *not* currently suffering from an asbestos-related disease, you may be eligible for payment from the Medical Monitoring Fund according to this table:

| MEDICAL MONITORING FUND PAYMENTS | | |
|---|---|---|
| **Exposure to Asbestos** | **Medical Expenses** | **Payment** |
| You have evidence of exposure to asbestos in an ABC product. | You *do* have evidence of your medical expenses to test for an asbestos-related disease. | $1,000 or your actual expenses, whichever is greater. |
| | You *don't* have evidence of your medical expenses to test for an asbestos-related disease. | $1,000 |

If, after everyone sends in claim forms, the medical monitoring claims total more than $70 million, the payments will be reduced. If the total medical monitoring claims are less than $70 million, the payments will be increased.

### 11. What if I get sick, or I am exposed to asbestos in ABC products, in the future?

**If you were exposed to asbestos in ABC products before Month 00, 0000, you must send in a claim form now, or you will not be able to get a payment under this settlement for injuries that develop in the future.** If you do send a claim form now, and in the future you develop symptoms of the diseases listed in the table on page 5, in question 10, you will be eligible for a payment as shown in that table.

If, in the future, you determine that you need medical monitoring from exposure that took place *after* Month 00, 0000, then you are not bound by this settlement for those claims. This means you can pursue your claims separately from this settlement with your own lawyer.

# HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM

## 12. How can I get a payment?

To qualify for payment, you must send in a claim form. A claim form is attached to this Notice. You can also get a claim form on the Internet at www.ABCsettlement.com. Read the instructions carefully, fill out the form, include all the documents the form asks for, sign it, and mail it postmarked no later than **Month 00, 0000**.

For an injury compensation claim, you'll have to send in a statement from a doctor with a description of your current medical condition, including a diagnosis of one of the types of diseases in the table on page 5, in question 10. For a medical monitoring claim, you have to show that you were exposed to ABC products. You may be asked for additional documentation. Follow all the instructions on the claim form.

## 13. When would I get my payment?

The Court will hold a hearing on Month 00, 0000, to decide whether to approve the settlement. If Judge Jones approves the settlement after that, there may be appeals. It's always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Everyone who sends in a claim form will be informed of the progress of the settlement. Please be patient.

## 14. What am I giving up to get a payment or stay in the Class?

Unless you exclude yourself, you are staying in the Class, and that means that you can't sue, continue to sue, or be part of any other lawsuit against ABC about the legal issues in *this* case. It also means that all of the Court's orders will apply to you and legally bind you. If you sign the claim form, you will agree to a "Release of Claims," attached to the claim form, which describes exactly the legal claims that you give up if you get settlement benefits.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want keep the right to sue or continue to sue ABC, on your own, about the legal issues in this case, then you must take steps to get out. This is called excluding yourself—or is sometimes referred to as opting out of the settlement Class.

## 15. How do I get out of the settlement?

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *Smith v. ABC*. Be sure to include your name, address, telephone number, and your signature. You must mail your exclusion request postmarked no later than **Month 00, 0000**, to:

ABC Exclusions
P.O. Box 0000
City, ST 00000-0000

Case 1:04-cv-00006    Document 429-9    Filed 06/22/2007    Page 24 of 39

You can't exclude yourself on the phone or by e-mail. If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) ABC in the future.

## 16. If I don't exclude myself, can I sue ABC for the same thing later?

No. Unless you exclude yourself, you give up the right to sue ABC for the claims that this settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. You must exclude yourself from *this* Class to continue your own lawsuit. Remember, the exclusion deadline is **Month 00, 0000**.

## 17. If I exclude myself, can I get money from this settlement?

No. If you exclude yourself, do not send in a claim form to ask for any money. But, you may sue, continue to sue, or be part of a different lawsuit against ABC.

# THE LAWYERS REPRESENTING YOU

## 18. Do I have a lawyer in this case?

The Court asked the law firms of Lawfirm One LLP, of City, ST, and Lawfirm Two P.C., of City, ST, to represent you and other Class Members. Together, the lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 19. How will the lawyers be paid?

Class Counsel will ask the Court for attorneys' fees and expenses up to $23,990,000, and a payment of $10,000 to the Class Representative, Frederick Smith. The Court may award less than these amounts. ABC will separately pay the fees and expenses that the Court awards. These amounts will not come out of the funds for payments to Class Members. ABC has agreed not to oppose these fees and expenses. ABC will also separately pay the costs to administer the settlement.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the settlement or some part of it.

## 20. How do I tell the Court that I don't like the settlement?

If you're a Class Member, you can object to the settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object,

you must send a letter saying that you object to *Smith v. ABC*. Be sure to include your name, address, telephone number, your signature, and the reasons you object to the settlement. Mail the objection to these three different places postmarked no later than **Month 00, 0000**:

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court | Herman Green | Mary Jones |
| United States District Court for the | Lawfirm One LLP | Defensefirm LLP |
| District of State | 100 Main Street | 200 Broad Street |
| 100 Court Street | Suite 100 | Suite 200 |
| City, ST 00000-0000 | City, ST 00000-0000 | City ST, 00000-0000 |

### 21. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

### 22. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at 10:00 a.m. on Tuesday, Month 00, 0000, at the United States District Court for the District of State, 100 Court Street, City, State, in Courtroom One. At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Jones will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

### 23. Do I have to come to the hearing?

No. Class Counsel will answer questions Judge Jones may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

### 24. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Smith v. ABC*." Be sure to include

your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be postmarked no later than **Month 00, 0000,** and be sent to the Clerk of the Court, Class Counsel, and Defense Counsel, at the three addresses on page 9, in question 20. You cannot speak at the hearing if you excluded yourself.

# IF YOU DO NOTHING

## 25. What happens if I do nothing at all?

If you do nothing, you'll get no money from this settlement. But, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against ABC about the legal issues in this case, ever again.

# GETTING MORE INFORMATION

## 26. Are there more details about the settlement?

This notice summarizes the proposed settlement. More details are in a Settlement Agreement. You can get a copy of the Settlement Agreement by writing to Herman Green, Lawfirm One LLP, 100 Main Street, Suite 100, City, ST 00000-0000, or by visiting www.ABCsettlement.com.

## 27. How do I get more information?

You can call 1-800-000-0000 toll free; write to ABC Settlement, P.O. Box 000, City, ST 00000-0000; or visit the website at www.ABCsettlement.com, where you will find answers to common questions about the settlement, a claim form, plus other information to help you determine whether you are a Class Member and whether you are eligible for a payment.

DATE: MONTH 00, 0000.

# If you were exposed to asbestos in Xinsulation, you could get benefits from a class action settlement.

A settlement of a class action lawsuit affects you if you were ever exposed to asbestos in Xinsulation, Xbestos, or other ABC Corporation products. The settlement will pay people who are suffering from an asbestos-related disease, as well as those who were exposed but not sick, who need medical monitoring. If you qualify, you may send in a claim form to ask for payment, or you can exclude yourself from the settlement, or object.

The United States District Court for the District of State authorized this notice. The Court will have a hearing to consider whether to approve the settlement, so that the benefits may be paid.

## Who's Affected?

Homeowners whose homes have or had Xinsulation (pictured and described to the right) are included in the settlement. Construction workers who installed, or worked around, Xbestos and other ABC products are also included, as described in separate notices. *You're a 'Class Member' if you were exposed to asbestos fibers in any ABC Corporation products any time before Month 00, 0000.*

## What's this About?

The lawsuit claimed that ABC made and sold products knowing that the asbestos fibers contained in them posed a danger to the health and safety of anyone exposed to them. The suit claimed that exposure increased the risk of developing Asbestosis, Mesothelioma, Lung Cancer, or other diseases that scientists have associated with exposure to asbestos. ABC denies all allegations and has asserted many defenses. The settlement is not an admission of wrongdoing or an indication that any law was violated.

## What can you Get from the Settlement?

There will be an Injury Compensation Fund of $200 million for Class Members who have been diagnosed with an asbestos-related disease, and a $70 million Medical Monitoring Fund for checking the health of those who were exposed but are not currently suffering from an asbestos-related disease. Compensation for injuries will be in varying amounts for specific diseases:

| Disease | Minimum | Maximum | Average |
|---|---|---|---|
| Mesothelioma | $10,000 | $100,000 | $20,000-$30,000 |
| Lung Cancer | $5,000 | $43,000 | $9,000-$15,000 |
| Other Cancer | $2,500 | $16,000 | $4,000-$6,000 |
| Non-Malignant | $1,250 | $15,000 | $3,000-$4,000 |

Medical monitoring payments will be $1,000 or the amount of your actual medical expenses, whichever is greater.

## How do you Get a Payment?

A detailed notice and claim form package contains everything you need. Just call or visit the website below to get one. **Claim forms are due by Month 00, 0000.** For an injury compensation claim, you'll have to submit a statement from a doctor that describes your current medical condition and confirms that you have one of the diseases in the box above. For a medical monitoring claim, you'll have to show proof of your exposure to an ABC asbestos-containing product.



**Did your home ever have Xinsulation?**

Xinsulation is in the attics and walls of older homes. It's loose, white, and fluffy. Be careful not to disturb it. It may be under other types of insulation. If you're not sure whether your home has or had Xinsulation, you can call toll free or visit the website below.

## What are your Options?

If you don't want a payment and you don't want to be legally bound by the settlement, you must exclude yourself by **Month 00, 0000,** or you won't be able to sue, or continue to sue, ABC about the legal claims in this case. If you exclude yourself, you can't get a payment from this settlement. If you stay in the Class, you may object to the settlement by **Month 00, 0000.** The detailed notice describes how to exclude yourself or object. The Court will hold a hearing in this case (*Smith v. ABC Corp.*, Case No. CV-00-1234) on **Month 00, 0000,** to consider whether to approve the settlement and attorneys' fees and expenses totalling no more than $30 million. You may appear at the hearing, but you don't have to. For more details, call toll free 1-800-000-0000, go to www.ABCsettlement.com, or write to ABC Settlement, P.O. Box 000, City, ST 00000.

## 1-800-000-0000     www.ABCsettlement.com



Notice Administrator for U.S. District Court
P.O. Box 00000
City, ST 00000-0000

## Notice to homeowners and others exposed to asbestos in Xinsulation.

Jane Q. Class Member
123 Anywhere Street
Anytown, ST 12345-1234

(Above: Front of outside of Notice mailing)

(Below: Back of outside of Notice mailing)

**If you were exposed to asbestos in Xinsulation,
you could get a payment from a class action settlement.**

# If you were ever exposed to asbestos in ABC Corporation products, you could get a payment from a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- The settlement will provide $270 million to pay claims from those who are currently suffering from an asbestos-related disease, as well as those exposed but not sick, who need medical monitoring.

- To qualify, you must have been exposed to asbestos in ABC Corporation products. Your exposure may have happened in different ways:

  - **Homeowners may have had ABC's Xinsulation in their attics or walls.**

  - **Workers may have installed ABC building products like Xbestos.**

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment. |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that allows you to ever be part of any other lawsuit against ABC, about the legal claims in this case. |
| **OBJECT** | Write to the Court about why you don't like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no payment. Give up rights. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after appeals are resolved. Please be patient.

---

**QUESTIONS? CALL 1-800-000-0000 TOLL FREE, OR VISIT ABCSETTLEMENT.COM**
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO WEBSITE

**BASIC INFORMATION** .................................................... PAGE 3
1. Why did I get this notice package?
2. What is this lawsuit about?
3. Why is this a class action?
4. Why is there a settlement?

**WHO IS IN THE SETTLEMENT** ........................................ PAGE 4
5. How do I know if I am part of the settlement?
6. Which ABC products are included?
7. If I was exposed but do not have any disease, am I included?
8. I'm still not sure if I am included.

**THE SETTLEMENT BENEFITS—WHAT YOU GET** .................. PAGE 5
9. What does the settlement provide?
10. What can I get from the settlement?
11. What if I get sick, or I am exposed to asbestos in ABC products, in the future?

**HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM** ...... PAGE 7
12. How can I get a payment?
13. When would I get my payment?
14. What am I giving up to get a payment or stay in the Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ................. PAGE 7
15. How do I get out of the settlement?
16. If I don't exclude myself, can I sue ABC for the same thing later?
17. If I exclude myself, can I get money from this settlement?

**THE LAWYERS REPRESENTING YOU** ................................ PAGE 8
18. Do I have a lawyer in the case?
19. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ................................... PAGE 8
20. How do I tell the Court that I don't like the settlement?
21. What's the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING** ................................. PAGE 9
22. When and where will the Court decide whether to approve the settlement?
23. Do I have to come to the hearing?
24. May I speak at the hearing?

**IF YOU DO NOTHING** ................................................ PAGE 10
25. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ..................................... PAGE 10
26. Are there more details about the settlement?
27. How do I get more information?

Case 1:04-cv-00006     Document 429-9     Filed 06/22/2007     Page 31 of 39

# BASIC INFORMATION

## 1. Why did I get this notice package?

You or someone in your family may have owned or lived in a home or other property with Xinsulation. Or you or a family member may have worked around Xbestos, Xinsulation, or other asbestos-containing products made or sold by ABC Corporation.

The Court sent you this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the settlement. If the Court approves it and after objections and appeals are resolved, an administrator appointed by the Court will make the payments that the settlement allows. You will be informed of the progress of the settlement.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the District of State, and the case is known as *Smith et al v. ABC Corporation*, Case No. CV-00-1234. The people who sued are called Plaintiffs, and the company they sued, ABC, is called the Defendant.

## 2. What is this lawsuit about?

The lawsuit claimed that ABC made and sold products knowing that the asbestos fibers contained in them posed a danger to the health and safety of anyone exposed to them. The lawsuit claimed that exposure increased the risk of developing asbestosis, mesothelioma, lung cancer, or other diseases that scientists have associated with exposure to asbestos. ABC denies they did anything wrong.

## 3. Why is this a class action?

In a class action, one or more people, called Class Representatives (in this case Frederick Smith), sue on behalf of people who have similar claims. All these people are a Class or Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class. U.S. District Judge Jane Jones is in charge of this class action.

## 4. Why is there a settlement?

The Court did not decide in favor of Plaintiffs or Defendants. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and the people affected will get compensation. The Class Representative and the attorneys think the settlement is best for everyone who was injured or exposed.

# WHO IS IN THE SETTLEMENT

To see if you will get money from this settlement, you first have to decide if you are a Class Member.

## 5. How do I know if I am part of the settlement?

Judge Jones decided that everyone who fits this description is a Class Member: *All people exposed to asbestos fibers in any ABC Corporation product any time before Month 00, 0000.*

## 6. Which ABC products are included?

If you're not sure whether you were exposed to ABC products, look at these pictures and captions:

### DID YOU WORK AROUND OR INSTALL ABC BUILDING PRODUCTS?

ABC made Xbestos, Xinsulation, and other building products called Ybestos and Zbestos. These products were sprayed on during the construction of high-rise office buildings and many other structures and homes. You may have been exposed to asbestos by either installing the products directly, or simply by working at the site. You may have brought asbestos fibers home on your clothing, exposing your family.



### DID YOUR HOME EVER HAVE XINSULATION?

Xinsulation is in the attics and walls of older homes. It's loose, white, and fluffy. It's shaped like a small cotton ball, varying from silver-blue to gray-black. It is layered with a glittery, puffy appearance that may have a translucent or brownish hue. After years in the attic, the granules may darken to black or gray. **Be careful not to disturb it.** It may be underneath other types of insulation. The settlement provides for someone to come and test it for you, if you call and ask.



**Did a family member ever work around ABC's asbestos products? He or she may be included.**

**Did your home or property ever have Xinsulation? You're included even if you don't live there anymore.**

Case 1:04-cv-00006    Document 429-9    Filed 06/22/2007    Page 33 of 39

## 7. If I was exposed but do not have any disease, am I included?

Yes. You don't have to have a disease to be part of this settlement. The Class includes all those who have certain asbestos-related diseases. The Class also includes those who were exposed but are not currently suffering from an asbestos-related disease and who may need medical monitoring—even those who haven't visited a doctor. The settlement payments are different for sick and for healthy people.

## 8. I'm still not sure if I am included.

If you are still not sure whether you are included, you can ask for free help. You can call 1-800-000-0000 and ask for an independent inspector to come see if your insulation is Xinsulation. **Some government agencies warn that the asbestos in Xinsulation is dangerous to your health, so do not disturb it.** For more information, you can also visit the website, www.ABCsettlement.com. Or you can fill out and return the claim form described on page 7, in question 12, to see if you qualify.

# THE SETTLEMENT BENEFITS—WHAT YOU GET

## 9. What does the settlement provide?

ABC has agreed to create an Injury Compensation Fund of $200 million for Class Members who have been diagnosed with an asbestos-related disease, and another $70 million Medical Monitoring Fund for assessing the health of those who were exposed but not currently suffering from an asbestos-related disease. ABC will also pay claims for future injuries among Class Members already exposed who request medical monitoring.

## 10. What can I get from the settlement?

### ARE YOU INJURED?

If you have been diagnosed with an asbestos-related disease, you may be eligible for payment from the Injury Compensation Fund. These are the payment amounts for specific asbestos-related diseases:

| INJURY COMPENSATION FUND PAYMENTS | | | |
|---|---|---|---|
| Disease | Minimum | Maximum | Average |
| Mesothelioma | $10,000 | $100,000 | $20,000-$30,000 |
| Lung Cancer | $5,000 | $43,000 | $9,000-$15,000 |
| Other Cancer | $2,500 | $16,000 | $4,000-$6,000 |
| Non-Malignant | $1,250 | $15,000 | $3,000-$4,000 |

If, after everyone sends in claim forms, the injury compensation claims total more than $200 million, the payments will be reduced. If the injury compensation claims are less than $200 million, the payments will be increased.

Your payment will be based on how severe your disease is, your medical expenses, and your lost earnings. To get the minimum payment in the table above, you do not have to detail your expenses or lost earnings. To get larger amounts up to the maximum amount, you'll have to prove your medical expenses and document your lost earnings.

## WERE YOU EXPOSED TO ASBESTOS? HAVE YOU BEEN TESTED?

If you were exposed to one or more of ABC's asbestos-containing products, but you are *not* currently suffering from an asbestos-related disease, you may be eligible for payment from the Medical Monitoring Fund according to this table:

| MEDICAL MONITORING FUND PAYMENTS | | |
|---|---|---|
| **Exposure to Asbestos** | **Medical Expenses** | **Payment** |
| You have evidence of exposure to asbestos in an ABC product. | You *do* have evidence of your medical expenses to test for an asbestos-related disease. | $1,000 or your actual expenses, whichever is greater. |
| | You *don't* have evidence of your medical expenses to test for an asbestos-related disease. | $1,000 |

If, after everyone sends in claim forms, the medical monitoring claims total more than $70 million, the payments will be reduced. If the total medical monitoring claims are less than $70 million, the payments will be increased.

### 11. What if I get sick, or I am exposed to asbestos in ABC products, in the future?

**If you were exposed to asbestos in ABC products before Month 00, 0000, you must send in a claim form now, or you will not be able to get a payment under this settlement for injuries that develop in the future.** If you do send a claim form now, and in the future you develop symptoms of the diseases listed in the table on page 5, in question 10, you will be eligible for a payment as shown in that table.

If, in the future, you determine that you need medical monitoring from exposure that took place *after* Month 00, 0000, then you are not bound by this settlement for those claims. This means you can pursue your claims separately from this settlement with your own lawyer.

# How You Get a Payment—Submitting a Claim Form

## 12. How can I get a payment?

To qualify for payment, you must send in a claim form. A claim form is attached to this Notice. You can also get a claim form on the Internet at www.ABCsettlement.com. Read the instructions carefully, fill out the form, include all the documents the form asks for, sign it, and mail it postmarked no later than **Month 00, 0000**.

For an injury compensation claim, you'll have to send in a statement from a doctor with a description of your current medical condition, including a diagnosis of one of the types of diseases in the table on page 5, in question 10. For a medical monitoring claim, you have to show that you were exposed to ABC products. You may be asked for additional documentation. Follow all the instructions on the claim form.

## 13. When would I get my payment?

The Court will hold a hearing on Month 00, 0000, to decide whether to approve the settlement. If Judge Jones approves the settlement after that, there may be appeals. It's always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Everyone who sends in a claim form will be informed of the progress of the settlement. Please be patient.

## 14. What am I giving up to get a payment or stay in the Class?

Unless you exclude yourself, you are staying in the Class, and that means that you can't sue, continue to sue, or be part of any other lawsuit against ABC about the legal issues in *this* case. It also means that all of the Court's orders will apply to you and legally bind you. If you sign the claim form, you will agree to a "Release of Claims," attached to the claim form, which describes exactly the legal claims that you give up if you get settlement benefits.

# Excluding Yourself From the Settlement

If you don't want a payment from this settlement, but you want keep the right to sue or continue to sue ABC, on your own, about the legal issues in this case, then you must take steps to get out. This is called excluding yourself—or is sometimes referred to as opting out of the settlement Class.

## 15. How do I get out of the settlement?

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *Smith v. ABC*. Be sure to include your name, address, telephone number, and your signature. You must mail your exclusion request postmarked no later than **Month 00, 0000**, to:

ABC Exclusions
P.O. Box 0000
City, ST 00000-0000

You can't exclude yourself on the phone or by e-mail. If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) ABC in the future.

### 16. If I don't exclude myself, can I sue ABC for the same thing later?

No. Unless you exclude yourself, you give up the right to sue ABC for the claims that this settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. You must exclude yourself from *this* Class to continue your own lawsuit. Remember, the exclusion deadline is **Month 00, 0000**.

### 17. If I exclude myself, can I get money from this settlement?

No. If you exclude yourself, do not send in a claim form to ask for any money. But, you may sue, continue to sue, or be part of a different lawsuit against ABC.

## THE LAWYERS REPRESENTING YOU

### 18. Do I have a lawyer in this case?

The Court asked the law firms of Lawfirm One LLP, of City, ST, and Lawfirm Two P.C., of City, ST, to represent you and other Class Members. Together, the lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 19. How will the lawyers be paid?

Class Counsel will ask the Court for attorneys' fees and expenses up to $23,990,000, and a payment of $10,000 to the Class Representative, Frederick Smith. The Court may award less than these amounts. ABC will separately pay the fees and expenses that the Court awards. These amounts will not come out of the funds for payments to Class Members. ABC has agreed not to oppose these fees and expenses. ABC will also separately pay the costs to administer the settlement.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the settlement or some part of it.

### 20. How do I tell the Court that I don't like the settlement?

If you're a Class Member, you can object to the settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object,

you must send a letter saying that you object to *Smith v. ABC*. Be sure to include your name, address, telephone number, your signature, and the reasons you object to the settlement. Mail the objection to these three different places postmarked no later than **Month 00, 0000**:

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court | Herman Green | Mary Jones |
| United States District Court for the | Lawfirm One LLP | Defensefirm LLP |
| District of State | 100 Main Street | 200 Broad Street |
| 100 Court Street | Suite 100 | Suite 200 |
| City, ST 00000-0000 | City, ST 00000-0000 | City ST, 00000-0000 |

## 21. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

## 22. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at 10:00 a.m. on Tuesday, Month 00, 0000, at the United States District Court for the District of State, 100 Court Street, City, State, in Courtroom One. At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Jones will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

## 23. Do I have to come to the hearing?

No. Class Counsel will answer questions Judge Jones may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

## 24. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Smith v. ABC*." Be sure to include

QUESTIONS? CALL 1-800-000-0000 TOLL FREE, OR VISIT ABCSETTLEMENT.COM

your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be postmarked no later than **Month 00, 0000,** and be sent to the Clerk of the Court, Class Counsel, and Defense Counsel, at the three addresses on page 9, in question 20. You cannot speak at the hearing if you excluded yourself.

# IF YOU DO NOTHING

## 25. What happens if I do nothing at all?

If you do nothing, you'll get no money from this settlement. But, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against ABC about the legal issues in this case, ever again.

# GETTING MORE INFORMATION

## 26. Are there more details about the settlement?

This notice summarizes the proposed settlement. More details are in a Settlement Agreement. You can get a copy of the Settlement Agreement by writing to Herman Green, Lawfirm One LLP, 100 Main Street, Suite 100, City, ST 00000-0000, or by visiting www.ABCsettlement.com.

## 27. How do I get more information?

You can call 1-800-000-0000 toll free; write to ABC Settlement, P.O. Box 000, City, ST 00000-0000; or visit the website at www.ABCsettlement.com, where you will find answers to common questions about the settlement, a claim form, plus other information to help you determine whether you are a Class Member and whether you are eligible for a payment.

DATE: MONTH 00, 0000.

# Si usted ha estado expuesto al asbesto en productos de la Corporación ABC, podría recibir compensación como parte de un acuerdo legal en una demanda colectiva.

*Un tribunal federal autorizó este aviso. Esta no es una solicitud de un abogado.*

- El acuerdo proporcionará $270 millones para pagar reclamos de aquellos que en la actualidad sufran de alguna enfermedad relacionada con asbesto, al igual que a aquellos expuestos que no estén enfermos, quienes necesiten atención médica.

- Para calificar, usted debe haber estado expuesto a asbesto en productos de la Corporación ABC. Tal exposición podrá haber ocurrido de varias maneras:

  o **Propietarios de casa pueden haber tenido Xinsulation en sus áticos o paredes.**

  o **Obreros pueden haber instalado productos de construcción ABC como Xbestos.**

- Sus derechos legales se verán afectados sea que usted tome acción o no. Lea este aviso cuidadosamente.

| SUS DERECHOS LEGALES Y OPCIONES EN ESTE ACUERDO SON: | |
|---|---|
| **SOMETER UNA FORMA DE RECLAMACIÓN** | Es la única manera de recibir pago. |
| **EXCLUIRSE A SÍ MISMO** | No recibirá pago. Esta es la única opción que le permite formar parte de alguna otra demanda sobre reclamos legales en este caso en contra de ABC. |
| **OBJETAR** | Escriba al Tribunal explicando porqué no le agrada el acuerdo. |
| **COMPARECER A AUDIENCIA** | Pida hablar en el Tribunal acerca de que tan justo es el acuerdo. |
| **NO HACER NADA** | No recibirá pago. Renunciará a sus derechos. |

- Estos derechos y opciones—**y las fechas límite para ejercerlas**—están explicados en este aviso.

- El Tribunal encargado de este caso tiene aún que decidir si aprobará el acuerdo. Los pagos se harán si el Tribunal aprueba el acuerdo y después de que se resuelvan las apelaciones. Por favor sea paciente.

**¿PREGUNTAS? LLAME GRATIS AL 1-800-000-0000 O VISITE ABCSETTLEMENT.COM**

# TABLA DE CONTENIDO DE ESTE AVISO

**INFORMACIÓN BÁSICA** .................................................................. PÁGINA 3
1. ¿Por qué recibí este paquete informativo?
2. ¿De qué se trata esta demanda?
3. ¿Por qué es esta una demanda colectiva?
4. ¿Por qué hay un acuerdo?

**¿QUIÉN ES PARTE DEL ACUERDO?** .............................................. PÁGINA 4
5. ¿Cómo sé si soy parte del acuerdo?
6. ¿Qué productos de ABC se incluyen?
7. Si estuve expuesto pero no tengo ninguna enfermedad, ¿Estoy incluido?
8. Aún no estoy seguro de pertenecer al Colectivo.

**BENEFICIOS DEL ACUERDO–LO QUE GANARÁ** .............................. PÁGINA 5
9. ¿Qué provee el acuerdo?
10. ¿Qué puedo obtener del acuerdo?
11. ¿Qué ocurre si me enfermo o soy expuesto a asbesto en productos ABC en el futuro?

**COMO OBTENER UN PAGO–SOMETIENDO UNA FORMA DE RECLAMACIÓN...** PÁGINA 7
12. ¿Cómo puedo obtener un pago?
13. ¿Cuándo recibiré mi pago?
14. ¿A qué estoy renunciando al recibir un pago o al quedarme en el Colectivo?

**EXCLUIRSE A SÍ MISMO DEL ACUERDO** ....................................... PÁGINA 7
15. ¿Cómo me salgo del acuerdo?
16. Si no me excluyo a mi mismo, ¿podría demandar a ABC por la misma razón más adelante?
17. Si me excluyo a mi mismo, ¿podría recibir dinero del acuerdo?

**ABOGADOS QUE LO REPRESENTAN A USTED** .................................. PÁGINA 8
18. ¿Tengo un abogado en el caso?
19. ¿Cómo se pagará el abogado?

**OBJETANDO AL ACUERDO** ........................................................... PÁGINA 9
20. ¿Cómo le digo al Tribunal que no me agrada el acuerdo?
21. ¿Cuál es la diferencia entre objetar y excluir?

**AUDIENCIA DE EQUIDAD DEL TRIBUNAL** ..................................... PÁGINA 10
22. ¿Cuándo y dónde decidirá el Tribunal acerca de aprobar el acuerdo o no?
23. ¿Tengo que comparecer a la audiencia?
24. ¿Puedo hablar en la audiencia?

**SI USTED NO HACE NADA** ........................................................... PÁGINA 10
25. ¿Qué pasa si no hago nada?

**PARA OBTENER MÁS INFORMACIÓN** ........................................... PÁGINA 11
26. ¿Hay más detalles acerca del acuerdo?
27. ¿Cómo consigo más información?

# INFORMACIÓN BÁSICA

## 1. ¿Por qué recibí este paquete informativo?

Usted o alguien más en su familia puede haber tenido o vivido en una casa u otra propiedad con Xinsulation. O usted u otro miembro de su familia podría haber trabajado alrededor de Xbestos, Xinsulation, o algún otro producto conteniendo asbesto producido o vendido por Corporación ABC.

El Tribunal le envía este aviso porque usted tiene derecho a saber acerca de los acuerdos de demandas colectivas y de sus opciones antes de que el Tribunal decida aprobar el acuerdo. Si el Tribunal lo aprueba y después de que las objeciones y las apelaciones se resuelvan un administrador encargado por el Tribunal hará los pagos según permita el acuerdo. Se le informará acerca del progreso del acuerdo.

Este paquete explica la demanda, el acuerdo, sus derechos legales, los beneficios disponibles, quien es elegible para ellos y como obtenerlos.

El Tribunal encargado del caso es el Tribunal del Distrito de los Estados Unidos en el Distrito del Estado y el caso es conocido como *Smith et al v. ABC Corporation*, Case No. CV-00-1234. Las personas que entablaron la demanda se llamarán demandantes y la compañía a la que demandaron, ABC, se llamará el demandado.

## 2. ¿De qué se trata esta demanda?

La demanda alega que ABC fabricó y vendió productos sabiendo que las fibras de asbesto que contenían amenazaban la salud y la seguridad de quien se expusiera a ellos. La demanda alega que la exposición incrementaba el riesgo de desarrollar asbestosis, mesotelioma, cáncer del pulmón, u otras enfermedades que los científicos han asociado con la exposición a asbesto. ABC niega que hayan hecho nada incorrecto.

## 3. ¿Por qué es esta una demanda colectiva?

En una demanda colectiva, una o más personas, llamadas Representantes del Colectivo (en este caso Frederick Smith), demandan en favor de las personas quienes tengan alegaciones similares. Todas estas personas son un Colectivo o Miembros del Colectivo. Un tribunal resuelve los conflictos de todos los Miembros del Colectivo con excepción de aquellos que se excluyan a sí mismos del Colectivo. La Juez del Distrito de los Estados Unidos Jane Jones está a cargo de esta demanda colectiva.

## 4. ¿Por qué hay un acuerdo?

El Tribunal no decidió a favor de los Demandantes o los Demandados. En lugar de eso, ambas partes llegaron a un acuerdo. De esta manera evitan el costo de un juicio y las personas afectadas recibirán una compensación. El Representante del Colectivo y los abogados creen que el acuerdo es la mejor solución para todos aquellos afectados, heridos o expuestos.

Case 1:04-cv-00006     Document 429-10     Filed 06/22/2007     Page 3 of 30

# ¿QUIÉN ES PARTE DEL ACUERDO?

Para saber si obtendrá dinero de este acuerdo primero tiene que decidir si usted es Miembro del Colectivo.

## 5. ¿Cómo sé si soy parte del acuerdo?

La Juez Jones decidió que todo aquel que encaje en esta descripción es un Miembro del Colectivo: *Todas las personas expuestas a fibras de asbesto en cualquier producto de la Corporación ABC en cualquier fecha antes del 00 de mes del año 0000.*

## 6. ¿Qué productos de ABC se incluyen?

Si no está seguro acerca de si usted estuvo expuesto o no a productos de ABC revise las ilustraciones y subtítulos.

### ¿TRABAJÓ CERCA O INSTALÓ PRODUCTOSDE CONSTRUCCIÓN ABC?

ABC fabricó Xbestos, Xinsulation, y otros productos de construcción llamados Ybestos y Zbestos. Estos productos fueron rociados durante la construcción de edificios de oficinas de techos altos y en muchas otras estructuras y hogares. Usted puede haber sido expuesto a asbesto sea instalando los productos directamente o simplemente al trabajar en el lugar. Usted puede haber llevado fibras de asbesto a casa en su ropa exponiendo así a su familia.

### ¿SU CASA TUVO ALGUNA VEZ XINSULATION?

Hay Xinsulation en los áticos y paredes de casas viejas. Es ligero, blanco y blando. Tiene la forma de una pequeña bola de algodón, varía entre azul plateado y gris muy oscuro. Presenta capas con apariencia blanda y con brillos que puede tener un color translúcido y pardusco. Después de algunos años en el ático, los granulitos pueden oscurecerse a negro o gris. **Tenga cuidado de no esparcirlo.** Puede estar bajo otros tipos de aislamiento. El acuerdo brinda la posibilidad de alguien vaya y lo pruebe en su lugar si usted llama y lo solicita.

 

**¿Un miembro de la familia trabajó alguna vez cerca de productos de asbesto de ABC? Esta persona puede ser incluida.**

**¿Su casa o propiedad tuvo Xinsulation alguna vez? Usted está incluido aún si ya no vive allí.**

Case 1:04-cv-00006    Document 429-10    Filed 06/22/2007    Page 4 of 30

Sí. Usted no tiene que estar enfermo para hacer parte de este acuerdo. El Colectivo incluye todo aquel que haya tenido ciertas enfermedades relacionadas con asbesto. El Colectivo también incluye a aquellos que han estado expuestos aunque en el presente no sufran de ninguna enfermedad relacionada con asbesto y que puedan requerir observación médica—aún aquellos que no hayan visitado a un médico. Los pagos del acuerdo son diferentes para personas enfermas y personas que no lo están.

**8. Aún no estoy seguro de pertenecer al Colectivo.**

Si aún no está seguro de pertenecer al Colectivo, puede solicitar ayuda gratuita. Puede llamar al 1-800-000-0000 y solicitar que un inspector independiente vaya a inspeccionar si su aislamiento es Xinsulation. **Algunas agencias gubernamentales han dado la alerta de que el asbesto en Xinsulation es peligroso para su salud, así que no lo toque.** Para más información, visite la página web www.ABCsettlement.com o puede llenar y regresar la forma de reclamación descrita en la página 7, pregunta 12 para saber si usted califica.

# BENEFICIOS DEL ACUERDO–LO QUE GANARÁ

**9. ¿Qué provee el acuerdo?**

ABC ha acordado crear un Fondo de Compensación por Daños de $200 millones por Miembros del Colectivo que hayan sido diagnosticados con una enfermedad relacionada con asbesto y otros $70 millones de Fondo de Observación Médica para diagnosticar la salud de aquellos que estuvieron expuestos pero no se encuentran enfermos en la actualidad. ABC también pagará reclamos por futuros daños entre los Miembros del Colectivo ya expuestos que requieran observación médica.

**10. ¿Qué puedo obtener del acuerdo?**

**¿ESTÁ USTED AFECTADO?**

Si ha sido diagnosticado con una enfermedad relacionada a asbesto, usted puede calificar para un pago por El Fondo de Compensación por Daños. Estas son las cantidades de pago para enfermedades específicas relacionadas con asbesto:

| PAGOS POR EL FONDO DE COMPENSACIÓN POR DAÑOS | | | |
|---|---|---|---|
| **Enfermedad** | **Mínimo** | **Máximo** | **Media** |
| | | | |
| Mesotelioma | $10,000 | $100,000 | $20,000-$30,000 |
| Cáncer De Pulmón | $5,000 | $43,000 | $9,000-$15,000 |
| Otro Cáncer | $2,500 | $16,000 | $4,000-$6,000 |
| No-Maligno | $1,250 | $15,000 | $3,000-$4,000 |

Case 1:04-cv-00006     Document 429-10     Filed 06/22/2007     Page 5 of 30

Si después de que todos hayan enviado la forma de reclamación las compensaciones por daños suman una cantidad mayor de $200 millones, los pagos serán reducidos. Si las compensaciones por daños son menores de $200 millones, entonces los pagos serán incrementados.

Su pago estará basado en la gravedad de la enfermedad, sus gastos médicos y el total de las pérdidas. Para recibir el pago mínimo como se señala en la tabla anterior, no es necesario detallar sus gastos o pérdidas. Para obtener cantidades mayores que la cantidad máxima, necesitará probar sus gastos médicos y documentar sus pérdidas.

### HA ESTADO EXPUESTO A ASBESTO? HA RECIBIDO UNA PRUEBA MÉDICA?

Si usted ha estado expuesto a uno o más productos que contienen asbesto de ABC, pero en la actualidad no sufre de ninguna enfermedad relacionada al asbesto, puede calificar para un pago por Fondos de Observación Médica, de acuerdo a la siguiente tabla:

| PAGOS POR FONDOS DE OBSERVACIÓN MÉDICA | | |
|---|---|---|
| Exposición a asbesto | Gastos Médicos | Pagos |
| Usted tiene evidencia de haber estado expuesto a asbesto en productos ABC. | Usted **tiene** evidencia de sus gastos médicos de haber realizado pruebas médicas para enfermedades relacionadas con asbesto. | $1,000 o sus gastos reales, cualquier cantidad mayor. |
| | Usted **no tiene** evidencia de sus gastos médicos de haber realizado pruebas médicas para enfermedades relacionadas con asbesto. | $1,000 |

Si después de que todos hayan enviado la forma de reclamación, las compensaciones por observación médica suman una cantidad mayor de $70 millones, los pagos serán reducidos. Si las compensaciones por observación médica son menores de $70 millones, entonces los pagos serán incrementados.

### 11. ¿Qué ocurre si me enfermo o soy expuesto a asbesto en productos ABC en el futuro?

**Si usted ha estado expuesto a asbesto en productos ABC antes del 00 de mes del año 0000, deberá enviar una forma de reclamación ahora, de lo contrario no será posible bajo este acuerdo obtener un pago por daños que se desarrollen en el futuro.** Si usted envía una reclamación ahora y en el futuro los síntomas de las enfermedades mencionadas en la tabla de la página 5 se desarrollan, usted califica para un pago por daños como se muestra en la tabla de Pagos por el Fondo de Compensación por Daños de la pregunta 10.

Si en el futuro usted determina que necesita observación médica por exposición que tuvo lugar después del 00 de mes del año 0000, entonces usted no está obligado a seguir este acuerdo para hacer dicha

Case 1:04-cv-00006    Document 429-10    Filed 06/22/2007    Page 6 of 30

reclamación. Esto quiere decir que usted puede solicitar su reclamo en forma separada al presente acuerdo y con su propio abogado.

# COMO OBTENER UN PAGO–SOMETIENDO UNA FORMA DE RECLAMACIÓN

**12. ¿Cómo puedo obtener un pago?**

Para calificar para un pago debe enviar una forma de reclamación. Dicha forma se encuentra adjunta a este Aviso. También puede obtener una forma de reclamación en la página web www.ABCsettlement.com. Lea las instrucciones cuidadosamente, incluya todos los documentos solicitados en la forma, fírmela, y envíela por correo, fechada no más tarde del **00 de mes del año 0000**.

Para una reclamación de compensación por daños, deberá enviar una constancia médica con la descripción de su condición médica actual, incluyendo el diagnóstico de uno de los tipos de enfermedades como se explica en la tabla de la página 5, pregunta 10. Para una reclamación por observación médica, deberá mostrar que usted estuvo expuesto a productos de ABC. Puede pedírsele documentación adicional. Siga todas las instrucciones de la forma de reclamación.

**13. ¿Cuándo recibiré mi pago?**

El Tribunal hará una audiencia en el 00 de mes del año 0000 para decidir si aprueba el acuerdo. Si la Juez Jones aprueba el acuerdo, después de esto, pueden haber apelaciones. No hay seguridad acerca de si estas apelaciones pueden ser resueltas o no y resolverlas puede tomar tiempo, quizá más de un año. Todo aquel que envíe una forma de reclamación recibirá información acerca del progreso del acuerdo. Por favor, tenga paciencia.

**14. ¿A qué estoy renunciando al recibir un pago o al quedarme en el Colectivo?**

A no ser que se excluya a sí mismo, usted permanecerá en el Colectivo, eso quiere decir que usted no puede demandar, continuar demandado o tomar parte de cualquier otra demanda en contra de ABC relacionada con asuntos legales en este caso. También quiere decir que todas las órdenes del Tribunal aplicarán a usted y lo obligarán legalmente. Al firmar la forma de reclamación, está dando su consentimiento a una "Renuncia de Reclamaciones" ("Release of Claims"). Esta forma, adjunta a la forma de reclamación, describe los derechos legales a los que usted renuncia si recibe beneficios del acuerdo.

# EXCLUIRSE A SÍ MISMO DEL ACUERDO

Si usted no desea recibir ningún pago por este acuerdo, pero desea conservar el derecho a demandar o continuar demandando a ABC por su propia cuenta acerca de asuntos relacionados con este caso, debe tomar

Case 1:04-cv-00006   Document 429-10   Filed 06/22/2007   Page 7 of 30

medidas para salirse del acuerdo. Esto se llama excluirse a uno mismo—o algunas veces se denomina optar por salirse del acuerdo del Colectivo.

## 15. ¿Cómo me salgo del acuerdo?

Para excluirse a sí mismo del acuerdo, debe enviar una carta por correo dejando saber que desea ser excluido de *Smith v. ABC*. Asegúrese de incluir su nombre, dirección, número de teléfono, y su firma. Debe enviar por correo su petición de excluirse fechada no más tarde del **00 de mes del año 0000** a la siguiente dirección:

> ABC Exclusions
> P.O. Box 0000
> City, ST 00000-0000

Usted no puede excluirse a sí mismo por vía telefónica o mensaje electrónico. Si usted solicita ser excluido, no recibirá ningún pago del acuerdo, y tampoco podrá objetar al mismo. No estará obligado legalmente a nada de lo que pase en la demanda legal. Usted podrá demandar (o continuar demandando) a ABC en el futuro.

## 16. Si no me excluyo a mi mismo, ¿podría demandar a ABC por la misma razón más adelante?

No. A no ser que se excluya a sí mismo, usted renuncia al derecho a demandar a ABC por las reclamaciones relacionadas con este acuerdo. Si tiene pendiente una demanda legal, consulte a su abogado acerca de la misma inmediatamente. Debe excluirse a sí mismo de este Colectivo para continuar su propia demanda. Recuerde que la fecha para excluirse es el **00 de mes del año 0000**.

## 17. Si me excluyo a mi mismo, ¿podría recibir dinero del acuerdo?

No. Si se excluye a sí mismo, no envíe una forma de reclamación solicitando compensación monetaria. Sin embargo, puede demandar, continuar demandando, o tomar parte de una demanda legal diferente en contra de ABC.

# ABOGADOS QUE LO REPRESENTAN A USTED

## 18. ¿Tengo un abogado en el caso?

El Tribunal pidió a las firmas de Lawfirm One LLP, de Ciudad, Estado, y Lawfirm Two P. C., de Ciudad, Estado, representarlo a usted y a otros Miembros del Colectivo. Conjuntamente, los abogados reciben el nombre de Consejo del Colectivo (Class Counsel). No se le cobrará por los servicios de estos abogados. Si usted desea ser representado por su propio abogado, deberá contratar uno por su propia cuenta.

## 19. ¿Cómo se pagará el abogado?

El Consejo del Colectivo cobrará al Tribunal los honorarios y gastos que ascienden a $23,900,000 y un pago de $10, 000 para el representante del Colectivo, Frederick Smith. El Tribunal podrá otorgar cantidades menores que éstas. ABC pagará por separado los honorarios y gastos que el Tribunal autorice. Estas cantidades no saldrán de los fondos para los pagos de los Miembros del Colectivo. ABC ha consentido no oponerse a estos honorarios y gastos. Además, ABC pagará por separado los costos para administrar el acuerdo.

## OBJETANDO AL ACUERDO

Usted puede manifestar al Tribunal su oposición al acuerdo o a alguna parte de este.

## 20. ¿Cómo le digo al Tribunal que no me agrada el acuerdo?

Si usted es un Miembro del Colectivo, puede objetar al acuerdo si no le agrada alguna parte del mismo. Puede dar las razones por las cuales usted piensa que el Tribunal no debería aprobarlo. El Tribunal considerará su punto de vista.

Para objetar usted debe enviar una carta comunicando su desacuerdo a *Smith v. ABC*. Asegúrese de incluir su nombre, dirección, número de teléfono, su firma y las razones por las cuales se opone al acuerdo. Envíe por correo su carta de oposición a los siguientes tres lugares, no más tarde del **00 de mes del año 0000**:

| TRIBUNAL | CONSEJO DEL COLECTIVO | CONSEJO DE LA DEFENSA |
|---|---|---|
| Clerk of the Court | Herman Green | Mary Jones |
| United States District Court for the | Lawfirm One LLP | Defensefirm LLP |
| District of State | 100 Main Street | 200 Broad Street |
| 100 Court Street | Suite 100 | Suite 200 |
| City, ST 00000-0000 | City, ST 00000-0000 | City ST, 00000-0000 |

## 21. ¿Cuál es la diferencia entre objetar y excluir?

Objetar es simplemente comunicar al Tribunal que a usted no le agrada algo acerca del acuerdo. Puede objetar solamente si usted permanece en el Colectivo. Al excluirse a sí mismo, está comunicando al Tribunal que no desea tomar parte del Colectivo. Si se excluye a sí mismo, no tiene bases para objetar, porque el caso ya no le afectará a usted.

Case 1:04-cv-00006    Document 429-10    Filed 06/22/2007    Page 9 of 30

# AUDIENCIA DE EQUIDAD DEL TRIBUNAL

El Tribunal oficiará una audiencia para decidir si aprueba el acuerdo. Usted puede asistir y participar, pero no es obligatorio.

## 22. ¿Cuándo y dónde decidirá el Tribunal acerca de aprobar el acuerdo o no?

El Tribunal oficiará una Audiencia de Equidad a las 10:00 am el martes, 00 de mes del año 0000 en el Tribunal del Distrito de los Estados Unidos en el Distrito del Estado. En esta audiencia el Tribunal considerará si el acuerdo es justo, razonable, y adecuado. Si hay objeciones, el Tribunal las considerará. La Juez Jones escuchará a las personas quienes hayan solicitado hablar en la audiencia. El Tribunal también decidirá cuanto pagar al Consejo del Colectivo. Después de la Audiencia el Tribunal decidirá si aprueba el acuerdo. No se sabe cuánto tardarán estas decisiones.

## 23. ¿Tengo que comparecer a la audiencia?

No. El Consejo del Colectivo responderá a las preguntas que la Juez Jones pueda tener. Sin embargo, usted es bienvenido a asistir por su cuenta. Si envía una objeción, no necesita ir al Tribunal para hablar de ella. El Tribunal considerará su objeción mientras la haya enviado a tiempo, en forma escrita y por correo. Usted también puede pagarle a su abogado para que asista, pero no es necesario.

## 24. ¿Puedo hablar en la audiencia?

Usted puede solicitar permiso del Tribunal para hablar en la Audiencia de Equidad. Para hacerlo, necesita enviar una carta notificando y ese es su Aviso de Intención de Comparecer a *Smith v. ABC* ("Notice of Intention to Appear in *Smith v. ABC*"). Asegúrese de incluir su nombre, dirección, número de teléfono y su firma. Su Aviso de Intención de Comparecer a *Smith v. ABC* deberá estar fechado no más tarde del **00 de mes del año 0000**, y enviado al Secretario del Tribunal (Clerk of the Court), al Consejo del Colectivo, al Consejo de la Defensa, a las tres direcciones que aparecen en la página 9, en la pregunta 20. Usted no puede hablar en la Audiencia si se excluyó a sí mismo.

# SI USTED NO HACE NADA

## 25. ¿Qué pasa si no hago nada?

Si no hace nada, no obtendrá ningún dinero de este acuerdo. Sin embargo, a no ser que se excluya a sí mismo, no le será posible empezar una demanda, continuar una demanda, o ser parte de cualquier otra demanda en ninguna otra ocasión en contra de ABC acerca de los asuntos legales relacionados con este caso.

# PARA OBTENER MÁS INFORMACIÓN

**26. ¿Hay más detalles acerca del acuerdo?**

Este aviso resume el acuerdo propuesto. Encontrará más detalles en el Acuerdo Realizado ("Settlement Agreement"). Usted puede obtener una copia de este Acuerdo escribiendo a Herman Green Lawfirm One LLP, 100 Main Street, Suite 100, City, ST 00000-0000, o visitando la página web www.ABCsettlement.com.

**27. ¿Cómo consigo más información?**

Puede llamar en forma gratuita al número 1-800-000-0000; escribir a ABC settlement, P.O. Box 000, City, ST 00000-0000; o visitar la página web www.ABCsettlement.com, donde encontrará: respuestas a las preguntas más comúnmente formuladas acerca del acuerdo, una forma de reclamación e información adicional para ayudarle a determinar si usted es un Miembro del Colectivo y si califica para un pago.

FECHA: 00 mes 0000.

# If you bought XYZ Corp. stock in 1999, you could get a payment from a class action settlement.

**Para una notificación en Español, llamar o visitar nuestro website.**

A settlement has been proposed in a class action lawsuit about the price of XYZ Corporation stock. The settlement will provide $6.99 million to pay claims from XYZ investors who bought the company's stock during 1999. If you qualify, you may send in a claim form to get benefits, or you can exclude yourself from the settlement, or object to it.

The United States District Court for the District of State authorized this notice. Before any money is paid, the Court will have a hearing to decide whether to approve the settlement.

## Who's Included?

You are a Class Member and could get benefits if you bought shares of XYZ stock during 1999. You are a Class Member only if you bought shares of XYZ stock individually, not simply through a mutual fund. If you sold XYZ stock during 1999, you are a Class Member only if those shares you sold were purchased in 1999. XYZ officers and directors, as well as immediate family members of directors of XYZ during 1999, are not Class Members.

Contact your broker to see if you had shares of XYZ stock. If you're not sure you are included, you can get more information, including a detailed notice, at www.XYZsettlement.com or by calling toll free 1-800-000-0000.

## What's this About?

The lawsuit claimed that XYZ and its Chief Executive Officer, Anne Adams, misled investors by intentionally overstating the profits that the company expected to earn in the future. The lawsuit also claimed XYZ issued false and misleading information about income and earnings per share for 1999, and that XYZ executives sold their personal shares at inflated prices during that time. XYZ and Ms. Adams deny they did anything wrong. The Court did not decide which side was right. But both sides agreed to the settlement to resolve the case and get benefits to investors. The two sides disagree on how much money could have been won if the investors had won at a trial.

## What does the Settlement Provide?

XYZ agreed to create a fund of $6.99 million to be divided among all Class Members who send in valid claim forms. A Settlement Agreement, available at the website below, describes all of the details about the proposed settlement.

Your share of the fund will depend on the number of valid claim forms that Class Members send in, how many shares of XYZ stock you bought, and when you bought and sold them. Generally, if you bought more shares and have more Net Recognized Losses (as explained in the detailed notice), you will get more money. If you bought fewer shares and have fewer Net Recognized Losses, you will get less. All of the $6.99 million will be paid out.

If every eligible Class Member sends in a valid claim form, the average payment will be 17½ cents for each share of stock bought in 1999. The number of claimants who send in claims varies widely from case to case. If less than 100% of the Class sends in a claim form, you could get more money.

## How do you Ask for a Payment?

A detailed notice and claim form package contains everything you need. Just call or visit the website below to get one. To qualify for a payment, you must send in a claim form. **Claim forms are due by Month 00, 0000.**

## What are your Other Options?

If you don't want to be legally bound by the settlement, you must exclude yourself by **Month 00, 0000**, or you won't be able to sue, or continue to sue, XYZ about the legal claims in this case. If you exclude yourself, you can't get money from this settlement. If you stay in the settlement, you may object to it by **Month 00, 0000**. The detailed notice explains how to exclude yourself or object.

The Court will hold a hearing in this case (*North v. XYZ Corp.*, Case No. CV-00-5678) on **Month 00, 0000**, to consider whether to approve the settlement and a request by the lawyers representing all Class Members (Lawfirm LLP, of City, ST) for $3,010,000 (7½ cents per share) in attorneys' fees and costs, for investigating the facts, litigating the case, and negotiating the settlement. The fees and costs won't reduce the settlement fund. You may ask to appear at the hearing, but you don't have to. For more information, call toll free 1-800-000-0000, visit the website www.XYZsettlement.com, or write to XYZ Settlement, P.O. Box 000, City, ST 0000-0000.

**1-800-000-0000          www.XYZsettlement.com**

# If you bought XYZ Corporation stock in 1999, you could get a payment from a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- A settlement will provide $6,990,000 (17 ½ cents per share if claims are submitted for each share) to pay claims from investors who bought shares of XYZ Corporation stock during 1999.

- The settlement resolves a lawsuit over whether XYZ misled investors about its future earnings; it avoids costs and risks to you from continuing the lawsuit; pays money to investors like you; and releases XYZ from liability.

- Court-appointed lawyers for investors will ask the Court for up to $3,010,000 (7½ cents per share), to be paid separately by XYZ, as fees and expenses for investigating the facts, litigating the case, and negotiating the settlement.

- The two sides disagree on how much money could have been won if investors won a trial.

- Your legal rights are affected whether you act, or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment. |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that allows you to ever be part of any other lawsuit against XYZ, about the legal claims in this case. |
| **OBJECT** | Write to the Court about why you don't like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no payment. Give up rights. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after appeals are resolved. Please be patient.

**QUESTIONS? CALL 1-800-000-0000 TOLL FREE, OR VISIT XYZSETTLEMENT.COM**

**PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO WEBSITE**

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ......................................................... **PAGE 3**
1. Why did I get this notice package?
2. What is this lawsuit about?
3. Why is this a class action?
4. Why is there a settlement?

**WHO IS IN THE SETTLEMENT**.............................................. **PAGE 4**
5. How do I know if I am part of the settlement?
6. Are there exceptions to being included?
7. I'm still not sure if I am included.

**THE SETTLEMENT BENEFITS—WHAT YOU GET**....................................... **PAGE 4**
8. What does the settlement provide?
9. How much will my payment be?

**HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM** ................... **PAGE 5**
10. How can I get a payment?
11. When would I get my payment?
12. What am I giving up to get a payment or stay in the Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**................................. **PAGE 6**
13. How do I get out of the settlement?
14. If I don't exclude myself, can I sue XYZ for the same thing later?
15. If I exclude myself, can I get money from this settlement?

**THE LAWYERS REPRESENTING YOU**.......................................... **PAGE 7**
16. Do I have a lawyer in the case?
17. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT**............................................ **PAGE 7**
18. How do I tell the Court that I don't like the settlement?
19. What's the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING**........................................... **PAGE 8**
20. When and where will the Court decide whether to approve the settlement?
21. Do I have to come to the hearing?
22. May I speak at the hearing?

**IF YOU DO NOTHING**...................................................... **PAGE 9**
23. What happens if I do nothing at all?

**GETTING MORE INFORMATION**.............................................. **PAGE 9**
24. Are there more details about the settlement?
25. How do I get more information?

**UNDERSTANDING YOUR PAYMENT** ........................................... **PAGE 10**

QUESTIONS? CALL **1-800-000-0000** TOLL FREE, OR VISIT **XYZSETTLEMENT.COM**

Case 1:04-cv-00006     Document 429-10     Filed 06/22/2007     Page 14 of 30

# BASIC INFORMATION

## 1. Why did I get this notice package?

You or someone in your family may have purchased shares of XYZ Corporation stock during 1999.

The Court sent you this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about all of your options, before the Court decides whether to approve the settlement. If the Court approves it and after objections and appeals are resolved, an administrator appointed by the Court will make the payments that the settlement allows. You will be informed of the progress of the settlement.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the District of State, and the case is known as *North et al v. XYZ Corporation and Anne Adams,* Case No. CV-00-5678. The people who sued are called Plaintiffs, and the company and the person they sued, XYZ and Anne Adams, are called the Defendants.

## 2. What is this lawsuit about?

The lawsuit claimed that XYZ and its Chief Executive Officer, Anne Adams, misled investors by intentionally overstating the profits that the company expected to earn in the future. The lawsuit also claimed that XYZ issued press releases and financial statements that had false and misleading information about XYZ's income and earnings per share for 1999, and that XYZ executives sold their personally held shares of XYZ stock at inflated prices during that time. XYZ and Ms. Adams deny they did anything wrong.

## 3. Why is this a class action?

In a class action, one or more people called Class Representatives (in this case Mary North), sue on behalf of people who have similar claims. All these people are a Class or Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class. U.S. District Judge Jane Jones is in charge of this class action.

## 4. Why is there a settlement?

The Court did not decide in favor of Plaintiffs or Defendants. The Plaintiffs think they could have won $3.03 per share if they won a trial. The Defendants think the Plaintiffs would not have won anything from a trial. But there was no trial. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and the people affected will get compensation. The Class Representative and the attorneys think the settlement is best for all Class Members.

# WHO IS IN THE SETTLEMENT

To see if you will get money from this settlement, you first have to decide if you are a Class Member.

## 5. How do I know if I am part of the settlement?

Judge Jones decided that everyone who fits this description is a Class Member: *All people who purchased shares of XYZ Corporation stock during 1999.*

## 6. Are there exceptions to being included?

You are not a Class Member if you are an officer or director of XYZ, or were one during 1999. Also, immediate family members of XYZ officers and directors are not in the Class.

If one of your mutual funds owns shares of XYZ stock, that alone does not make you a Class Member. You are a Class Member only if you purchased shares of XYZ stock individually. Contact your broker to see if you have or held XYZ stock.

If you sold XYZ stock during 1999, that alone does not make you a Class Member. You are a Class Member only if you bought shares in 1999.

## 7. I'm still not sure if I am included.

If you are still not sure whether you are included, you can ask for free help. You can call 1-800-000-0000 or visit www.XYZsettlement.com for more information. Or you can fill out and return the claim form described in question 10, to see if you qualify.

# THE SETTLEMENT BENEFITS—WHAT YOU GET

## 8. What does the settlement provide?

XYZ has agreed to create a $6,990,000 fund to be divided among all Class Members who send in a valid claim form.

## 9. How much will my payment be?

Your share of the fund will depend on the number of valid claim forms that Class Members send in, how many shares of XYZ stock you bought, and when you bought and sold them. Here's how it works:

There were about 40,000,000 shares of XYZ stock bought during 1999. For each day of that year, the settlement specifies that the stock price was "Artificially Inflated" by a certain amount. These amounts per share are listed on pages 11 and 12 of the "Understanding Your Payment" section of this Notice.

By following the instructions on page 10 of this Notice, you can calculate what is called your Net Recognized Loss. It's unlikely that you will get a payment for all of your Net Recognized Loss. After all Class Members have sent in their claim forms, the payment you get will reflect your Net Recognized Loss in relation to everyone's Net Recognized Loss. See the instructions on page 10 for more information on your Net Recognized Loss.

So those who bought more shares and have a larger Net Recognized Loss will get more money, and those who bought fewer shares and have a smaller Net Recognized Loss will get less. All of the $6.99 million available will be distributed.

If every eligible Class Member sends in a valid claim form, the average payment will be 17 ½ cents ($6,990,000 ÷ 40,000,000 shares) for each share bought in 1999. The number of claimants who send in claims varies widely from case to case. If less than 100% of the Class sends in a claim form, you could get more money.

# HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM

### 10. How can I get a payment?

To qualify for payment, you must send in a claim form. A claim form is attached to this Notice. You may also get a claim form on the internet at www.XYZsettlement.com. Read the instructions carefully, fill out the form, include all the documents the form asks for, sign it, and mail it postmarked no later than **Month 00, 0000**.

### 11. When would I get my payment?

The Court will hold a hearing on Month 00, 0000, to decide whether to approve the settlement. If Judge Jones approves the settlement after that, there may be appeals. It's always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Everyone who sends in a claim form will be informed of the progress of the settlement. Please be patient.

### 12. What am I giving up to get a payment or stay in the Class?

Unless you exclude yourself, you are staying in the class, and that means that you can't sue, continue to sue, or be part of any other lawsuit against XYZ about the legal issues in *this* case. It also means that all of the Court's orders will apply to you and legally bind you. If you sign the claim form, you will agree to a "Release of Claims," attached to the claim form, which describes exactly the legal claims that you give up if you get settlement benefits.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue or continue to sue XYZ, on your own, about the legal issues in this case, then you must take steps to get out. This is called excluding yourself—or is sometimes referred to as opting out of the settlement Class.

## 13. How do I get out of the settlement?

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *North v. XYZ*. Be sure to include your name, address, telephone number, and your signature. You must mail your exclusion request postmarked no later than **Month 00, 0000** to:

> XYZ Exclusions
> P.O. Box 0000
> City, ST 00000-0000

If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) XYZ in the future.

## 14. If I don't exclude myself, can I sue XYZ for the same thing later?

No. Unless you exclude yourself, you give up any right to sue XYZ for the claims that this settlement resolves. If you have a pending lawsuit speak to your lawyer in that case immediately. You must exclude yourself from *this* Class to continue your own lawsuit. Remember, the exclusion deadline is **Month 00, 0000**.

## 15. If I exclude myself, can I get money from this settlement?

No. If you exclude yourself, do not send in a claim form to ask for any money. But, you may sue, continue to sue, or be part of a different lawsuit against XYZ.

# THE LAWYERS REPRESENTING YOU

## 16. Do I have a lawyer in this case?

The Court asked the law firm of Lawfirm LLP in City, ST, to represent you and other Class Members. These lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 17. How will the lawyers be paid?

Class counsel will ask the Court to approve payment of up to $3,010,000 (7 1/2 cents per share) to them for attorneys' fees and expenses and payment of $10,000 to Mary North for her services as Class Representative. The fees would pay Class Counsel for investigating the facts, litigating the case, and negotiating the settlement. The Court may award less than these amounts. XYZ will separately pay the fees, expenses and payments that the Court awards. These amounts will not reduce the $6,990,000 available for Class Members. XYZ has agreed not to oppose these fees and expenses. XYZ will also pay the costs to administer the settlement.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the settlement or some part of it.

## 18. How do I tell the Court that I don't like the settlement?

If you're a Class Member, you can object to the settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter saying that you object to *North v. XYZ*. Be sure to include your name, address, telephone number, your signature, and the reasons you object to the settlement. Mail the objection to these three different places postmarked no later than **Month 00, 0000**:

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court | Herman Green | John Simmons |
| United States District Court for the | Lawfirm LLP | Defensefirm LLP |
| District of State | 100 Main Street | 200 Broad Street |
| 100 Court Street | Suite 100 | Suite 200 |
| City, ST 00000-0000 | City, ST 00000-0000 | City ST, 00000-0000 |

## 19. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

## 20. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at 9:00 AM on Tuesday, Month 00, 0000, at the United States District Court for the District of State, 100 Court Street, City, State, in Courtroom One. At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Jones will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay to Class Counsel. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

## 21. Do I have to come to the hearing?

No. Class Counsel will answer questions Judge Jones may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

## 22. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *North v. XYZ*." Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be postmarked no later than **Month 00, 0000,** and be sent to the Clerk of the Court, Class Counsel, and Defense Counsel, at the three addresses in question 18. You cannot speak at the hearing if you excluded yourself.

# IF YOU DO NOTHING

## 23. What happens if I do nothing at all?

If you do nothing, you'll get no money from this settlement. But, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against XYZ about the legal issues in this case, ever again.

# GETTING MORE INFORMATION

## 24. Are there more details about the settlement?

This notice summarizes the proposed settlement. More details are in a Settlement Agreement. You can get a copy of the Settlement Agreement by writing to Herman Green, Lawfirm LLP, 100 Main Street, Suite 100, City, ST 00000-0000, or by visiting www.XYZsettlement.com.

## 25. How do I get more information?

You can call 1-800-000-0000 toll free; write to XYZ Settlement, P.O. Box 0000, City ST 00000-0000; or visit the website at www.XYZsettlement.com, where you will find answers to common questions about the settlement, a claim form, plus other information to help you determine whether you are a Class Member and whether you are eligible for a payment.

DATE: MONTH 00, 0000.

# UNDERSTANDING YOUR PAYMENT

STEP 1: Go to the table on the next page, find the date you bought your XYZ shares, and see what the artificial inflation rate per share ("Artificial Inflation") was on that date.

STEP 2: Multiply the number of shares you bought by the Artificial Inflation for that date. This result is your Recognized Loss. Skip to STEP 6 if you did not sell this stock during the class period. If you sold any of your XYZ stock during 1999, continue with STEP 3.

> STEP 3: Go to the table on the next page, find the date you sold your shares of XYZ stock that you had purchased in 1999, and see the Artificial Inflation for that date.

> STEP 4: Multiply the number of shares you sold by the Artificial Inflation for that date.

> STEP 5: Subtract the amount calculated in STEP 4 from the amount calculated in STEP 2. This is your Net Recognized Loss. If your Net Recognized Loss is less than zero, you do not have a claim in this settlement.

STEP 6: Your Net Recognized Loss is a percentage of the total Net Recognized Losses from all Class Members claims. This percentage is the same percentage of the settlement fund that you will get. This amount can be estimated only after the claims administrator receives all the claim forms. If less than 100% of the Class sends in a claim form, you could get more money.

STEP 7: The claims administrator will calculate your payment from the settlement fund.

| EXAMPLE—PAYMENT CALCULATION | |
|---|---|
| **Suppose John Smith bought 500 shares of XYZ stock on March 31, 1999, and sold 400 shares of XYZ stock on August 27, 1999:** | |
| **STEP 1:** | On 3/31/99 the Artificial Inflation = $8.03 |
| **STEP 2:** | 500 shares bought x $8.03 = $4,015 Recognized Loss |
| **STEP 3:** | On 8/27/99 the Artificial Inflation = $5.89 |
| **STEP 4:** | 400 shares sold x $5.89 = $2,356 to deduct from John Smith's Recognized Loss |
| **STEP 5:** | $4,015 - $2,356 = $1,659, John Smith's Net Recognized Loss |
| **STEP 6:** | Suppose in this example that there is a total Net Recognized Loss of $20 million claimed by all Class Members who send in claim forms: $1,659 ÷ $20,000,000 = John Smith's Net Recognized Loss per share is .0000829 of the total. |
| **STEP 7:** | .0000829 x $6,990,000 = John Smith's payment would be $579.47 |

| Date | Artificial Inflation Rate Per Share | Date | Artificial Inflation Rate Per Share | Date | Artificial Inflation Rate Per Share |
|---|---|---|---|---|---|
| 01/02/1999 | $3.01 | 03/12/1999 | $5.74 | 05/19/1999 | $7.19 |
| 01/05/1999 | $2.67 | 03/13/1999 | $5.74 | 05/20/1999 | $7.08 |
| 01/06/1999 | $2.67 | 03/16/1999 | $5.72 | 05/21/1999 | $7.36 |
| 01/07/1999 | $2.62 | 03/17/1999 | $5.72 | 05/22/1999 | $7.35 |
| 01/08/1999 | $2.50 | 03/18/1999 | $5.93 | 05/26/1999 | $7.36 |
| 01/09/1999 | $2.41 | 03/19/1999 | $5.94 | 05/27/1999 | $7.36 |
| 01/12/1999 | $2.44 | 03/20/1999 | $5.83 | 05/28/1999 | $7.33 |
| 01/13/1999 | $2.52 | 03/23/1999 | $5.93 | 05/29/1999 | $7.38 |
| 01/14/1999 | $2.52 | 03/24/1999 | $6.13 | 06/01/1999 | $7.40 |
| 01/15/1999 | $2.48 | 03/25/1999 | $6.47 | 06/02/1999 | $7.42 |
| 01/16/1999 | $2.45 | 03/26/1999 | $6.95 | 06/03/1999 | $7.54 |
| 01/20/1999 | $4.11 | 03/27/1999 | $7.12 | 06/04/1999 | $7.69 |
| 01/21/1999 | $4.07 | 03/30/1999 | $7.57 | 06/05/1999 | $7.84 |
| 01/22/1999 | $4.15 | 03/31/1999 | $8.03 | 06/08/1999 | $8.29 |
| 01/23/1999 | $4.07 | 04/01/1999 | $7.95 | 06/09/1999 | $8.42 |
| 01/26/1999 | $3.94 | 04/02/1999 | $8.37 | 06/10/1999 | $8.67 |
| 01/27/1999 | $3.88 | 04/03/1999 | $7.95 | 06/11/1999 | $8.90 |
| 01/28/1999 | $4.18 | 04/06/1999 | $8.10 | 06/12/1999 | $9.03 |
| 01/29/1999 | $4.15 | 04/07/1999 | $8.08 | 06/15/1999 | $8.73 |
| 01/30/1999 | $4.09 | 04/08/1999 | $8.08 | 06/16/1999 | $8.67 |
| 02/02/1999 | $3.99 | 04/09/1999 | $8.18 | 06/17/1999 | $8.50 |
| 02/03/1999 | $3.96 | 04/13/1999 | $8.14 | 06/18/1999 | $8.41 |
| 02/04/1999 | $4.09 | 04/14/1999 | $8.16 | 06/19/1999 | $8.75 |
| 02/05/1999 | $4.35 | 04/15/1999 | $8.25 | 06/22/1999 | $8.90 |
| 02/06/1999 | $4.88 | 04/16/1999 | $8.25 | 06/23/1999 | $9.11 |
| 02/09/1999 | $4.94 | 04/17/1999 | $8.31 | 06/24/1999 | $9.64 |
| 02/10/1999 | $5.00 | 04/20/1999 | $8.14 | 06/25/1999 | $9.60 |
| 02/11/1999 | $5.02 | 04/21/1999 | $8.22 | 06/26/1999 | $9.77 |
| 02/12/1999 | $4.96 | 04/22/1999 | $8.07 | 06/29/1999 | $9.56 |
| 02/13/1999 | $5.19 | 04/23/1999 | $8.07 | 06/30/1999 | $8.86 |
| 02/17/1999 | $5.60 | 04/24/1999 | $7.97 | 07/01/1999 | $9.14 |
| 02/18/1999 | $5.53 | 04/27/1999 | $7.46 | 07/02/1999 | $9.20 |
| 02/19/1999 | $5.47 | 04/28/1999 | $7.35 | 07/06/1999 | $9.05 |
| 02/20/1999 | $5.30 | 04/29/1999 | $7.12 | 07/07/1999 | $9.01 |
| 02/23/1999 | $5.45 | 04/30/1999 | $7.50 | 07/08/1999 | $8.97 |
| 02/24/1999 | $5.43 | 05/01/1999 | $7.80 | 07/09/1999 | $8.92 |
| 02/25/1999 | $5.49 | 05/04/1999 | $7.95 | 07/13/1999 | $8.84 |
| 02/26/1999 | $5.87 | 05/05/1999 | $7.88 | 07/14/1999 | $8.90 |
| 02/27/1999 | $5.87 | 05/06/1999 | $7.72 | 07/15/1999 | $8.88 |
| 03/02/1999 | $5.53 | 05/07/1999 | $7.57 | 07/16/1999 | $8.86 |
| 03/03/1999 | $5.60 | 05/08/1999 | $7.46 | 07/17/1999 | $8.86 |
| 03/04/1999 | $5.53 | 05/11/1999 | $7.50 | 07/20/1999 | $9.69 |
| 03/05/1999 | $5.43 | 05/12/1999 | $7.46 | 07/21/1999 | $8.48 |
| 03/06/1999 | $5.41 | 05/13/1999 | $7.46 | 07/22/1999 | $8.25 |
| 03/09/1999 | $5.76 | 05/14/1999 | $7.36 | 07/23/1999 | $7.65 |
| 03/10/1999 | $5.64 | 05/15/1999 | $7.40 | 07/24/1999 | $7.76 |
| 03/11/1999 | $5.49 | 05/18/1999 | $7.42 | 07/27/1999 | $7.76 |

| Date | Artificial Inflation Rate Per Share |
|---|---|
| 07/29/1999 | $7.42 |
| 07/30/1999 | $7.50 |
| 07/31/1999 | $7.27 |
| 08/03/1999 | $7.06 |
| 08/04/1999 | $7.16 |
| 08/05/1999 | $7.46 |
| 08/06/1999 | $7.78 |
| 08/07/1999 | $7.93 |
| 08/10/1999 | $7.86 |
| 08/11/1999 | $7.55 |
| 08/12/1999 | $7.57 |
| 08/13/1999 | $7.55 |
| 08/14/1999 | $7.50 |
| 08/17/1999 | $7.50 |
| 08/18/1999 | $8.03 |
| 08/19/1999 | $8.08 |
| 08/20/1999 | $7.99 |
| 08/21/1999 | $7.82 |
| 08/24/1999 | $7.57 |
| 08/25/1999 | $7.08 |
| 08/26/1999 | $6.27 |
| 08/27/1999 | $5.89 |
| 08/28/1999 | $5.66 |
| 08/31/1999 | $5.13 |
| 09/01/1999 | $5.36 |
| 09/02/1999 | $6.19 |
| 09/03/1999 | $5.83 |
| 09/04/1999 | $5.77 |
| 09/08/1999 | $6.21 |
| 09/09/1999 | $6.02 |
| 09/10/1999 | $5.59 |
| 09/11/1999 | $5.47 |
| 09/14/1999 | $5.74 |
| 09/15/1999 | $6.04 |
| 09/16/1999 | $5.91 |
| 09/17/1999 | $5.93 |

| Date | Artificial Inflation Rate Per Share |
|---|---|
| 09/18/1999 | $6.44 |
| 09/21/1999 | $6.36 |
| 09/22/1999 | $6.78 |
| 09/23/1999 | $6.76 |
| 09/24/1999 | $6.53 |
| 09/25/1999 | $5.89 |
| 09/28/1999 | $5.72 |
| 09/29/1999 | $5.43 |
| 09/30/1999 | $5.15 |
| 10/01/1999 | $3.99 |
| 10/05/1999 | $4.20 |
| 10/06/1999 | $4.18 |
| 10/07/1999 | $3.90 |
| 10/08/1999 | $3.75 |
| 10/09/1999 | $3.64 |
| 10/12/1999 | $4.05 |
| 10/13/1999 | $3.98 |
| 10/14/1999 | $3.86 |
| 10/15/1999 | $3.86 |
| 10/16/1999 | $3.79 |
| 10/19/1999 | $3.84 |
| 10/20/1999 | $4.39 |
| 10/21/1999 | $3.90 |
| 10/22/1999 | $3.94 |
| 10/23/1999 | $3.64 |
| 10/26/1999 | $3.64 |
| 10/27/1999 | $3.84 |
| 10/28/1999 | $4.24 |
| 10/29/1999 | $4.37 |
| 10/30/1999 | $4.54 |
| 11/02/1999 | $4.81 |
| 11/03/1999 | $5.30 |
| 11/04/1999 | $5.60 |
| 11/05/1999 | $5.96 |
| 11/06/1999 | $5.98 |
| 11/09/1999 | $6.06 |

| Date | Artificial Inflation Rate Per Share |
|---|---|
| 11/10/1999 | $5.89 |
| 11/11/1999 | $5.72 |
| 11/12/1999 | $5.45 |
| 11/13/1999 | $5.51 |
| 11/16/1999 | $5.70 |
| 11/17/1999 | $5.76 |
| 11/18/1999 | $5.93 |
| 11/19/1999 | $6.10 |
| 11/20/1999 | $6.04 |
| 11/23/1999 | $6.06 |
| 11/24/1999 | $5.85 |
| 11/25/1999 | $5.76 |
| 11/27/1999 | $5.76 |
| 11/30/1999 | $5.83 |
| 12/01/1999 | $5.72 |
| 12/02/1999 | $5.68 |
| 12/03/1999 | $5.66 |
| 12/04/1999 | $3.49 |
| 12/07/1999 | $1.54 |
| 12/08/1999 | $1.58 |
| 12/10/1999 | $1.58 |
| 12/11/1999 | $1.65 |
| 12/14/1999 | $1.54 |
| 12/15/1999 | $1.61 |
| 12/16/1999 | $1.56 |
| 12/17/1999 | $1.54 |
| 12/18/1999 | $1.64 |
| 12/21/1999 | $1.70 |
| 12/22/1999 | $1.60 |
| 12/23/1999 | $1.63 |
| 12/24/1999 | $1.63 |
| 12/28/1999 | $1.72 |
| 12/29/1999 | $1.74 |
| 12/30/1999 | $1.76 |
| 12/31/1999 | $1.86 |

# Exhibit 4

TUESDAY, FEBRUARY 20, 2007 · MARIANAS VARIETY GUAM EDITION

# Exhibit 5

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
DFS

Important Document Enclosed

1 ••••••••AUTO••3-DIGIT 189

██████████████

║ı║ıl┃ııl┃ıı║ıılıı║ıı║ılıı┃ıılılıılııl┃ıılıılıı║

U.S. Mail: The enclosed documents are intended
solely for the addressee listed and should be opened
by the aforementioned only. Do not bend, fold,
tear or mutilate.

Dated Material. Open Immediately.



USA Bulk Rate

EXXON COMPANY, U.S.A.
P.O. BOX 96426 • HOUSTON, TEXAS 77046-0426

FINAL NOTICE



3200 W. Pleasant Run Rd.
Lancaster, TX 75146

# Rate Overpayment Notification



************** ECRWSS ** C005
0048