

The Law Offices of

# PHILLIPS & BORDALLO

A Professional Corporation
410 West O'Brien Drive, Suite 102 Hagåtña, Guam 96910-5044
Tel: (671) 477-ABCD (2223) • Fax: (671) 477-2FAX (2329)
" I Erensia, Lina'la', Espiritu-ta"

# FILED
DISTRICT COURT OF GUAM

JUN 2 2 2007

MARY L.M. MORAN
CLERK OF COURT

Attorneys for Petitioners

## DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

| JULIE BABAUTA SANTOS, *et al.*, | CIVIL CASE NO. 04-00006 |
|---|---|
| Petitioners, | |
| vs. | **OPPOSITION TO SIMPAO PLAINTIFFS' FEES AND REIMBURSEMENT OF COSTS** |
| FELIX A. CAMACHO, etc., *et al.*, | |
| Respondents. | |

Interim Class Counsel Michael F. Phillips, counsel for the Petitioner, individually and on behalf of the all those similarly situated, submits this Opposition to Simpao Plaintiffs' Application for Attorneys Fees.

### MEMORANDUM OF POINTS AND AUTHORITIES

Though the Court is familiar with the background of this matter, it is necessary to highlight certain benchmarks in this litigation that are particularly relevant and instructive to the instant opposition.

On February 12, 2004, Petitioner Santos initiated this Class Action Petition for the recovery of unpaid refundable earned income tax refunds and to compel the full implementation of the Earned Income Program. On March 11, 2004, Respondents filed an Opposition to the Class Action Petition. This Court issued an expedited Scheduling Order on April 30, 2004, and held a Scheduling Conference on May 26, 2004.

On June 14, 2004, shortly after the local media revealed the government's payment to one taxpayer of his 1998 earned income tax credit refund, Petitioners and then acting Governor Kaleo Moylan, along with other Respondents, entered into negotiations and executed a settlement agreement. The settlement agreement provided for a settlement amount of Sixty Million Dollars ($60,000,000) to pay for earned income tax credit refund claims made by members of the EIC Class for tax years 1996, 1998, 1999, 2000, 2001, 2002, and 2003. The settlement agreement also described Petitioner Santos's claim "as a catalyst motivating the Government of Guam to provide relief originally sought through litigation." *Stipulated Order Granting Prelim Approval of Class Action Settlement* (June 17, 2004), Attachment.

On June 17, 2004, Magistrate Judge Joaquin V.E. Manibusan, Jr. held a settlement conference and issued a Stipulated Order Granting Preliminary Approval of Class Action Settlement. On June 22, 2004, the Magistrate Judge set a fairness hearing for September 9, 2004. On June 24, 2004, the Magistrate Judge issued an order approving attorney's fees and costs in the amount of ten percent (10%) of the amount recovered for the EIC Class. On the same day, the Magistrate Judge also issued an Order Approving Notice of Class Action and Proposed Settlement.

On July 14, 2004, Petitioners filed a Motion for an order appointing class counsel, or for an alternative order designating interim counsel; for an order preliminarily approving the granting of attorneys' fees pursuant to FRCP Rules 54(d) and Rule 23(h); for an order approving additional notices to the proposed class members; and for an order continuing the fairness hearing and extending the objection and opt out date.

On October 25, 2004, Petitioner filed a Motion for Orders Approving the Administration Plan and Amended Notice and For Orders Establishing the Fairness Hearing Date and Objection and Opt Out Date, and Vacating the April 30, 2004 Scheduling Order. However, on November 9, 2004, Respondent Governor and other Respondents entered an appearance through independent counsel and subsequently filed oppositions to Petitioner's Motion for Approval of the Administration Plan and moved to vacate the preliminary approval of the original June 14, 2004 settlement agreement.

After extensive briefings on the issues raised by Respondent Governor and Respondent Directors, on March 10, 2005, all Respondents and their counsel, including the Attorney General, agreed to take the motions to enter the administration plan and to vacate the preliminary approval of the previous settlement off-calendar and to enter mediation before JAMS Mediator Catherine Yanni, Esq. The parties, through their counsels, engaged in extensive face-to-face negotiations with the assistance and active participation of the Mediator, from March 31, 2005 through April 2, 2005. The parties continued to engage in subsequent negotiations with the assistance of the Mediator until they agreed, with the exception of the Attorney General, to a term sheet in May, 2005. On June 20, 2005, after further negotiations, all parties, again with the exception

3

of the Attorney General, entered into a binding proposed settlement agreement for $90
million dollars (the "Second Settlement Agreement"), the litigants' second settlement.

The Second Settlement Agreement would have provided for $90 million to be
paid to the EIC Class, as defined in the Settlement Agreement, by devoting at least 15%
of any amount placed into the Government of Guam's tax refund reserve funds, which
are the funds used to pay general tax refunds, including the assurance of an immediate
reservation of at least $15 million See Settlement Agreement §§ V(a) and VIII. The
Settlement Agreement covers tax years 1995-1996 and 1998-2004, and also provides
for the full implementation of the EIC beginning with tax year 2005. See Settlement
Agreement §§ I(b)) and IV(d).

On June 20 and June 21, 2005, the parties filed pleadings to request preliminary
approval of the settlement agreement and conditional certification of the EIC Class for
purposes of class notice. In addition, Petitioner filed a motion for leave to amend the
Petition. On June 28, 2005, this Court held a Status Conference to discuss the effect of
the new Settlement Agreement on the various pending motions in the case. The Court
determined it would address the Attorney General's March 11, 2005 Motion to Amend
March 2, 2005 Order Denying Reconsideration of February 9, 2005 Order to Certify
Interlocutory Appeal to the Court of Appeals for the Ninth Circuit. On August 12, 2005,
United States District Court Judge Consuelo B. Marshal, sitting by designation, denied
the Attorney General's motion.

On September 19, 2005, the Magistrate Judge, recognizing the parties' desire to
proceed with the June 20, 2005 Settlement Agreement, denied pending motions related
to the earlier June 14, 2004 (first) settlement agreement, including Petitioner's Motion

for an order Preliminarily Approving the Granting of Attorneys' Fees; Petitioner's Motion for Orders Approving the Administration Plan and Amended Notice, for Orders Establishing the Fairness Hearing Date and Objections and Opt Out Date, and Vacating the April 30, 2004 Scheduling Order; and Respondent Governor's Motion to Vacate the Stipulated Order of June 17, 2004 Preliminarily Approving Settlement.

On July 29, 2004, Applicant for Intervention Christina M.S. Naputi ("Naputi"), represented by the law firm Van De Veld Shimizu Canto & Fisher ("Van De Veld"), filed a motion to intervene. This Court issued an Order on August 5, 2004 denying the motion for intervention.

On or about December 3, 2004, a class action complaint was filed in this Court by Mary Grace Simpao ("Simpao") and Christina M.S. Naputi, seeking "redress for, and to put an end to, the unfairness and uncertainty associated with the income tax Earned Income Credit . . ." See Simpao v. Government of Guam, Civil Case No. 04-00049, Complaint, ¶1.2.

On June 29, 2004, Applicant for Intervention Christina M.S. Naputi filed a motion to intervene. On July 6, 2004, Applicant for Intervention Charmaine Torres also filed a motion to intervene. In addition to basing their motions on their desire to obtain more compensation, Counsel for Applicant Naputi, Curtis Van De Veld, raised several unfounded accusations of collusion among the parties to the settlement agreement and also sought the disqualification of the Magistrate Judge. On July 16, 2004, the Magistrate Judge vacated the original objection and opt out date and the hearing date for final approval of the settlement agreement, pending resolution of the two Motions for

Intervention. The Magistrate Judge also appointed Michael F. Phillips as the Interim Counsel for the EIC Class.

After extensive briefing on the Motions for Intervention, on August 5, 2004, the Honorable John C. Coughenour, United States Chief District Judge for the Western District of Washington, sitting by designation, denied the motions filed by Applicants Naputi and Torres. Santos v. Camacho, 2004 U.S. Dist. LEXIS 19365 (D.C. Guam 2004). The Court found in part that "the applicants have failed to demonstrate that their allegedly unique interests could not be adequately represented by Petitioner Santos and her experienced counsel." Id. at 17.

In addition, the Court expressed disappointment in Applicant Naputi Counsel Van De Veld's "baseless allegations" regarding the impartiality of the Magistrate Judge, and also found that Van De Veld's attempts to cast a shadow on the settlement negotiations by alleging collusion between the parties was unfounded and without merit. Id. at n.3; p.12. Applicant Naputi subsequently filed her own putative EIC class action with plaintiffs Mary Simpao and Janice Cruz. See Simpao v. Government of Guam, Guam Dist. Ct. Civil Case No. CV04-00049. Applicant for Intervention Torres also filed her own putative EIC class action. See Torres v. Government of Guam, et. al., Guam Dist. Ct. Civil Case No. CV04-00038.

## I. ARGUMENT

In the Ninth Circuit, the standard for awarding attorneys fees in common fund cases is as follows: "The equitable common fund/common benefit doctrine "authorizes attorney fees only when the litigants preserve or create a common fund for the benefit of

others as well as themselves." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1051-1052 (9th Cir. 2002). See also Chemical Bank v. Jaffe & Schlesinger, P.A., 19 F.3d 1306, 1308 (9th Cir. 1994) ("It is well established that an award of attorneys' fees from a common fund depends on whether the attorneys' specific services benefitted the fund-whether they tended to create, increase, protect or preserve the fund").

The standard is strained in circumstances such as the instant, wherein the attorneys claiming are not counsel to the Class. However, it is not a matter of first impression in this Circuit. In Chemical Bank, the Ninth Circuit considered the issue of awarding attorneys fees to Counsel in a parallel but separate case that, while not itself resulting in judgment or settlement, nonetheless may have indirectly benefited members of the settling Class. As in the instant matter, Non-Class Counsel enumerated the various ways in which proceeding in litigation in their own case purportedly advanced the interests of the settling Class. [1] The Ninth Circuit determined that notwithstanding

---

[1]     The district court described the benefits asserted by Haberman counsel as follows: (a) Their activities eliminated any potential for res judicata or collateral estoppel defenses that might be raised as a result of the Washington State Supreme Court's decision in Chemical Bank v. Washington Public Power Supply System ("Chemical Bank II"), 102 Wash. 2d 874, 691 P.2d 524 (1984), cert. den Haberman v. Chemical Bank, 471 U.S. 1065, 85 L. Ed. 2d 497, 105 S. Ct. 2140 (1985), and cert. den Chemical Bank v. Public Utility Dist. No. 1, 471 U.S. 1075, 85 L. Ed. 2d 510, 105 S. Ct. 2154 (1985). (b) They established an expansive definition of "seller" for purposes of the Washington State Securities Act (WSSA) that would encompass the Supply System, its 23 members, the 88 participating utilities, and professional defendants, and ensure the Act's applicability to them in MDL 551. (c) They were first to name Ernst & Whinney, in May 1984, as a party defendant in either action. Later sued in MDL, as well, this defendant contributed $ 6.5 million in settlement. (d) They alleged derivative negligence claims against the Professional defendants that were eventually assigned to Class Plaintiffs in MDL as part of the settlement. (e) They helped organize the WPPSS 4/5 Bondholders' Committee which later brought an action, known as Hoffer v. State, against the State of Washington. In Hoffer the Washington Supreme Court, relying in large part on its prior Haberman decision, held that bondholders had the right to establish liability against the State on certain claims. As a result, the State later contributed $ 10

any incidental benefits the Class might have derived from the litigation in the parallel, related case, the benefit was too attenuated to warrant an award of attorneys fees out of the common fund generated on the Class's behalf. Specifically the Court found

> [a]lthough the district court conceded that the Haberman counsels' efforts may have benefited the Class Plaintiffs, it concluded that the litigation undertaken by the Haberman counsel was not sufficiently related to the class action involving Class Counsel. The court found that the state court proceeding was an independent, somewhat parallel action in a different forum. It was not undertaken by MDL Counsel. It was not waged on behalf of the entire Class, and the entire Class would not have shared all potentially attainable benefits. The two actions were distinct and detached. Thus, while the cases may have been "related," the relationship was attenuated. WPPSS II, 779 F. Supp. at 1225 (footnote omitted). Counsel do not inform us how this conclusion was erroneous. The Haberman counsel did not represent the Class Plaintiffs in MDL 551, but represented distinct plaintiffs in another proceeding in state court. No money judgment or settlement fund was generated in that litigation. <u>We know of no authority which mandates an award of fees to attorneys not formally representing the class, whose activities in representing others incidentally benefit the class.</u>

Chemical Bank v. Jaffe & Schlesinger, P.A., 19 F.3d 1306, 1308-1309 (9th Cir. 1994)(emphasis supplied). Similarly, as further detailed below, Simpao Plaintiffs may not recover attorneys fees from the EIC Common Fund on the basis of benefits conferred upon the EIC class that were incidental at best.

---

> million to the settlement of MDL 551. (f) They supported state appellate arguments by counsel for the Haberman Intervenors concerning common law negligent misrepresentations and fraud claims. Such claims were later certified in MDL 551. (g) They challenged the constitutionality of the "Scienter Amendment" to the WSSA before the Washington State Supreme Court and the United States Supreme Court, preserving the issue for review in the event plaintiffs (in MDL 551 or in Haberman) were unsuccessful in establishing liability under a scienter standard.

Chemical Bank v. Jaffe & Schlesinger, P.A., 19 F.3d 1306, 1308 (9th Cir. 1994)

8

Although Counsel for Simpao Plaintiffs were certainly present following announcement of the EITC class's potential settlement, their presence and involvement did not facilitate settlement or recovery in this matter. Rather, Counsel's involvement had the opposite effect of encumbering meaningful and speedy recovery by the working poor that Counsel now conveniently claims to have been protecting with their incessant meritless objections and thinly-veiled attempts at delaying or altogether hindering the settlement process. For Counsel to now claim that the class is somehow better off for Counsel's participation in this matter is disingenuous at best, and at worst a contemptible, shameless and borderline insulting effort to manipulate the law and the facts to aid Counsel's malicious pursuit of undeserved fees. Indeed, a brief review of the filings in this matter, particularly those filed in preparation for the March 2005 hearings, will reveal that most if not all of the issues Simpao Plaintiffs now claim credit for were litigated and relitigated before the Simpao court even considered them.

## A. Institution of the Simpao Action Did Not Aid In the Settlement of the Santos and Torres Actions

Counsel for Simpao Plaintiffs now alleges that institution of the Simpao action and the procedural steps inherent therein somehow effected resolution in the instant settlement between Petitioners Santos and Torres and Respondents. In support of this claim, Counsel has submitted a timeline vaguely implying a questionable correlation between the actions taken by Counsel and fulfillment of the elements necessary for proper settlement.

First, Counsel suggests that prior to institution of the Simpao action, Plaintiffs Naputi and Simpao attempted to intervene in the Santos matter, purportedly highlighting

defects such as the lack of individual notice, which deprived class members of constitutional due process. Counsel has implied that the ultimate action by Respondent Government adopting individual class notice in proposed settlement agreements somehow occurred in response to Counsel's actions. This is not the first time the Simpao Plaintiffs have asserted this ludicrous claim and Petitioner Santos has had to defend against it. Simpao Plaintiffs previously attempted to use the purportedly inadequate notice as basis to intervene in the Santos matter. What Counsel neglects to mention, and what Petitioner Santos pointed out for the first time nearly three years ago, is that the original notice by publication was agreed upon by the parties and approved by the Court:

> This matter was discussed with the Government and the Court, and the Court approved and ordered notice by publication. Since then, the Government and Petitioner have agreed to provide an increased level of notice. This does not make the original notice procedure "defective." All contents of the original published notice were reviewed by the Government and the Court. Nevertheless, Naputi's arguments are misplaced. See In re Vitamins, 215 F.3d at 30 ("Appellants' alternative tack invokes their right to opt out, starting with the notice protections of Rule 23(c)(2). But the rule by its terms is purely procedural. Any substantive right to be free of ancillary effects flowing from a class settlement must be found elsewhere").

Petitioners' Amended Opposition to Applicants for Intervention Naputi and Torres' Motions to Intervene with Memorandum of Points and Authorities in Support Thereof. P. 28 (July 26, 2004)(emphasis in original). As described above, notice in this matter was subject to revision with input from the parties and approval from the Court. This purely procedural requirement has been met in the natural progression of this matter without regard for Simpao Plaintiffs' opinions or urgings, which were never fully developed or

Case 1:04-cv-00006    Document 430    Filed 06/22/2007    Page 10 of 21

litigated for merit. Simpao Plaintiffs cannot now claim credit for the parties and the Court's deliberations and ultimate decisions regarding notice.

Second, Counsel for the Simpao Plaintiffs credits themselves with expanding the class to include claimants from tax year 1995. In Plaintiffs' Application for Attorneys' Fees and Reimbursement of Costs, the Simpao Plaintiffs allege that it is strictly due to the allegations they made in their initial Complaint in the Simpao matter that claimants from tax year 1995 were included in the EIC class. Such claim is erroneous and misleading. Simpao Plaintiffs, in their Motion to Intervene in the Santos matter, took the position that as initially pled, Petitioners Santos' description of the affected class included claims that were outside the statute of limitations. Simpao Plaintiffs continued to criticize Petitioner Santos' inclusion of these claimants as it purportedly damaged the claims of the Simpao Plaintiffs. "Petitioner Santos again seeks to blind this Court to the more intrinsic injury inflicted on the class by her defining assertion as to whom she claims to represent: legally disqualified claimants of years 1998 and 1999." *Reply to Petitioner's and Respondents' Oppositions to Applicant for Intervention Naputi's Motion to intervene with Memorandum of Points and Authorities* (July 30, 2004), p. 6. Simpao Plaintiffs were primarily concerned with what they felt was their duty to protect claims that arose in tax year 2000, which they argued were vulnerable in settlement disposition due to issues the Simpao Plaintiffs perceived in the applicable statute of limitations.

If any party is to be credited for the earliest inclusion of claimants from tax year 1995 into the class, it would be Petitioner Torres, a party to the settlement, who raised the potential for inclusion of tax year 1995 in her Motion to Intervene. Petitioner Torres initially alleged that even years preceding 1995 might meritoriously claim EITC refunds.

11

"...Applicant Torres is informed and believes that the government's EIC liability extends to tax years prior to 1996. Applicant Torres has EIC claims as far back as the early 1990s." *Reply to Petitioner's and Respondents' Opposition to Motions for Leave to Intervene* (August 2, 2004), p. 9. It is all too convenient for the Simpao Plaintiffs to now claim credit for inclusion of 1995 claimaints when from the outset they had vehemently opposed such inclusion. Their decision to include that tax year in their ultimate complaint was not a result of their own research, but rather as a result of Petitioner Torres's work and Petitioner Santos's attorney repeatedly explaining the merits of classes for earlier years. The Court should not credit Simpao Plaintiffs for their belated recognition of meritorious claimants as appropriately included in the EITC class.

Counsel next claims that the Simpao Complaint ensured viability of the EITC class by requiring that potential members filed a tax return in compliance with jurisdictional requirements. This claim is addressed below in Section F. Fourth, the Simpao Complaint purportedly "sought an immediate claims filing procedure previously denied in order to ensure jurisdictionally capable claims." *Plaintiffs' Application for Attorneys' Fees and Reimbursement of Costs* (June 8, 2007), p. 6. This claim is addressed more fully below in Section B. Finally, Counsel claims that the Amended Complaint in Simpao "secured a funding source for EITC payments by seeking that the Government comply with the Tax Reserve Fund and Trust Fund Laws and withhold tax receipts to ensure future EITC payment funds." *Id.* at 6.

While Simpao Plaintiffs may have overlooked the importance of full implementation of the EITC Program, including the obligations of the respective government agencies involved, instead focusing their efforts on recovering funds owed,

Petitioner Santos was, from inception of this matter, concerned with full implementation of the program to preserve the rights of future claimants, not just financial recovery. In her Complaint, Petitioner Santos fully articulated the respective obligations of the Department of Administration and the Department of Revenue and Taxation in reserving income tax receipts to pay for earned income tax credits. In her prayer for relief, Petitioner Santos begs alternatively for a writ compelling Respondents to implement the EIC. Clearly, Simpao Plaintiffs' subsequent interest in implementation of the EIC program does not entitle them to claim attorneys fees as the issue of implementing the proper funding source for EIC has always been paramount to Petitioner Santos and the EIC Class.

## B. Executive Order 2005-01 Did Not Result from the Filing of the Simpao Action

Simpao Counsel boldly claims that the EITC class "reaped an important benefit" out of the mere filing of the Simpao complaint. According to Counsel, the Complaint underscored the lack of a mechanism by which claimants can file EITC claims. On January 12, 2005, Respondent Governor Camacho issued Executive Order 2005-01, which created a mechanism by which EITC claimants can file claims.[2] While Simpao

---

[2] In relevant part, Executive Order 2005-01 provides:

**RELATIVE TO FILING EARNED INCOME TAX CREDIT CLAIMS WITHTHE DEPARTMENTOF REVENUE AND TAXATION**

**WHEREAS,** the use of a new simplified claim form for EITC claims, which requires only information not already known to DRT from taxpayers' previously submitted tax returns. would minimize the burden on taxpayers of making EITC claims and would allow DRT to determine the eligibility and calculate the amount of the legitimate claims of each taxpayer submitting the simplified form in the fastest possible time; and

WHEREAS, a new simplified claim form can be designed to support a computerized tracking system that will automatically identify duplicative, mutually inconsistent, and otherwise

Counsel attempts to claim credit for the issuance of this Executive Order, Counsel proffers no evidence demonstrating that the Executive Order was in fact issued as a result of Simpao Plaintiffs' Complaint, save for the faintest possible hint at correlation due to the fact that the Governor issued the Executive Order a little over a month after the filing of the Complaint. With all due respect to Counsel, it seems a little optimistic for Counsel to suggest that the Governor would and could coordinate the efforts of three executive agencies (the Department of Administration, the Department of Revenue and Taxation and the Bureau of Budget and Management Research) to implement a broad and intensive claims process solely for the purpose of immediately and directly quelling the concerns of "Johnny-come-lately" Plaintiffs, as expressed in general statements in their Initial Complaint. It would indeed be a modern miracle for this or any government

---

improper claims (specifically including fraudulent claims regarding qualifying children and head of household status) thereby preventing overpayments and facilitating the prosecution of false or fraudulent claims; …

…

**NOW, THEREFORE, I, FELIX P. CAMACHO,** *I Maga'l&hen Guahan,* Governor of Guam, by virtue of the authority vested in me by the Organic Act of Guam, as amended, do order as follows:

1. The Department of Revenue and Taxation ("DRT") shall begin accepting claims for the Earned Income Tax Credit pursuant to the Guam Earned Income Program, 11 G.C.A. §§ 42101-04, as soon as forms described in paragraph 2 below can promulgated and printed, and in no event later than January 31, 2005.

2. Pursuant to the authority vested in it by 11 G.C.A.§§ 42102 and 42103, DRT shall prepare simplified forms to permit submission of EITC claims for tax years 1995-1996 and 1999-2004, together with explanatory materials as necessary to inform taxpayers about the procedures and plans for administration of such claims. The simplified forms shall require only information not already provided to DRT in tax returns and necessary for DRT to determine taxpayers' eligibility, calculate the amount of taxpayers' legitimate claims, and detect duplicative, mutually inconsistent, and fraudulent claims. Submission of a claim under the Guam Earned Income Program shall constitute submission of a claim for the federal EITC to the extent the federal EITC applies to Guam. However, any taxpayer who has not yet filed a tax return as to a given tax year shall be required to file that tax return for that tax year along with the simplified EITC claim form in order to be eligible for the EITC under the Guam Earned Income Program for that tax year.

…

to respond so urgently to Plaintiffs' unlitigated claims. More likely, the Governor had deliberated for longer than the forty (40) days that had passed since the filing of the Simpao Complaint. In any event, the Simpao Plaintiffs contentions to this end are insufficient to meet the burden applicable to any attorney seeking fees from the common fund. "An attorney submitting an application for an award of fees and expenses has the burden of establishing entitlement to such monies." In re Heritage Bond Litig., 2005 U.S. Dist. LEXIS 13555 (D. Cal. 2005). Here, Simpao Plaintiffs have simply not sustained their burden.

## C. The Issues Resolved in Summary Judgment in Simpao Were Previously Pleaded by Petitioner Santos

Simpao Plaintiffs' Counsel next offers as justification for their request for attorneys fees the fact that Partial Summary Judgment was awarded in the Simpao matter on the issue of whether the filing of a tax return satisfies the jurisdictional requirement of 26 U.S.C. § 6511 and whether the government must pay the EIC as a matter of law. According to Plaintiffs Simpao, this ruling "greatly advanced the class by being the only judgment mandating their EITC claims being paid, placing the class in a superior position in the litigation and undeniably leveraging the ensuing settlement by the Government." Plaintiffs' Application for Attorneys Fees, supra at 7. There are multiple reasons why this claim is overblown.

From a procedural standpoint, Plaintiffs Simpao's technical litigation of these issues were belated. For the most part, these issues were already litigated in the Supreme Court of Guam and/or conceded by the government in settlement. Over four years prior to Simpao Plaintiffs litigated their "novel" and "groundbreaking" claims in a

15

Motion for Summary Judgment, and years prior to the filing of Petitioner Santos' original complaint, the issue of the applicability of the Earned Income Tax Credit Program to Guam had already been litigated in the Supreme Court of Guam, triggering the first instance of precedent addressing this issue. In In Re Request of I Mina' Bente Sing'ko Na Liheslaturan guahan Relative to the Application of the Earned Income Tax Credit Program to Guam Taxpayers ("The EIC question"), 2001 Guam 3, the Supreme Court of Guam held that Guam taxpayers are entitled to the EIC and the Governor is required to enforce and administer the EIC. Further, as the Supreme Court of Guam pointed out, applicability of the EIC to Guam was addressed for the first time in an Attorney General opinion dating back to 1989.

Simpao Plaintiffs cited to the Supreme Court of Guam decision in their Motion for Summary Judgment. ("The question presented to the [Supreme] Court [of Guam] was the same as that presented here...The Court's ruling was straightforward: We hold that eligible taxpayers are entitled to credit and that the Executive Branch must enforce it...") *Memorandum of Points & Authorities in Support of Plaintiffs' Motion for Partial Summary Judgment* (June 14, 2005), p.12. In granting Partial Summary Judgment, this Court noted the Supreme Court of Guam opinion with approval and also noted that "defendant [Government of Guam] seemingly has conceded that the EITC applies to Guam." *Order* (June 15, 2005), p. 8. As the Court pointed out in its decision, the settlement agreement at issue at the time of its decision also reflected the Government's position that EITC applied to Guam.

Though no official determination regarding the applicability of EITC to Guam has been made in Santos, the same factors the Court in Simpao relied upon in forming its

decision regarding Summary Judgment are and have always been present in Santos. In Petitioner Santos' original Class Action Petition for Recovery of Income Tax Refunds or in the Alternative for a Writ in the Nature of Mandamus, filed on February 12, 2004, Petitioner Santos cited to the Supreme Court EIC decision. Petitioner Santos's Counsel has worked on this issue even prior to the Supreme Court's ruling. Similarly, the instant settlement agreement demonstrates an agreement between Petitioners and Respondents that EITC does in fact apply to Guam.

Simpao Plaintiffs now attempt to overinflate the effect of their efforts in Motion for Partial Summary Judgment, wherein they advanced arguments that are virtually identical to those Petitioner Santos made as early as in her initial Petition. The arguments the Court deemed meritorious in its decision were not novel; they had been made repeatedly throughout the instant litigation process. To reward the Simpao Plaintiffs for merely echoing claims already made by other parties would be fundamentally unfair and would arbitrarily assign value to Counsel's labor where only minimal efforts were necessary to accomplish the purported feat. This is an improper basis for awarding attorneys fees of any kind to Simpao Plaintiffs.

### D. Result of Defendants' Motion to Dismiss in Simpao Would Not Have Res Judicata or Collateral Estoppel Effect in Santos

Simpao Plaintiffs characterize their defense against Defendant's Motion to Dismiss as "perhaps the most important contribution to the class: had they lost the motion, the Court would not have jurisdiction to approve the present proposed settlement, or any settlement, of this case." P. 14. This is a grand misstatement of basic civil procedure. Notwithstanding the potential precedent the Decision on the Motion to Dismiss might have represented should the Santos matter proceed to trial, the success

of Simpao Plaintiffs in copying Petitioner Santos's arguments and thereby opposing the Motion to Dismiss would have the same effect on Santos as the potential failure Simpao Plaintiffs could have faced: it would not have had the effect of res judicata or collateral estoppel. Petitioner Santos would have had the opportunity to speak to any Motion to Dismiss in this matter, just as Respondents would have the opportunity to move for Dismissal regardless of the outcome of their Motion to Dismiss in Simpao. To suggest that a Motion to Dismiss in Simpao would somehow be dispositive in Santos would unfairly join the cases in a manner contrary to this Court's denial of Simpao Plaintiffs' Motion to Intervene. Though Simpao is a related matter, it remains a separate matter. While surviving a Motion to Dismiss may advance the Simpao claims, it does not have the same effect in Santos.

## E. Court Concerns Regarding Exhaustion of Administrative Remedies Were Raised at Various Points in Litigation and Simpao Plaintiffs May Not Be Credited with Resolution.

Simpao Plaintiffs are quick to point out the singular objection they raised to the settlement that the Court weighed in its decision whether or not to grant Preliminary Approval of the Settlement reached by the parties in this matter. Specifically, Simpao Plaintiffs raised the issue of whether the Court lacked jurisdiction over class members who never filed a tax return. Following briefing of the issue by both parties, the parties modified the Class definition to exclude members who did not file tax returns.

The issue of exhaustion of administrative remedies, and whether tax returns qualified as a "claim for EIC funds" so as to satisfy the jurisdictional requirement under 26 U.S.C. § 6511, was before the Court in Simpao when it considered Plaintiffs' Motion for Summary Judgment. Respondent Government argued that there appeared to be a

18

jurisdictional bar by virtue of the fact that Plaintiffs had failed to file EIC claims. The Court was "concerned that the Government took actions that discouraged if not actually affirmatively prohibited the filing of a return with the request for the ETC." *Order* (June 15, 2005) p. 9. The Court continued to hold that the filing of a return satisfied the jurisdictional requirements.

Indeed the issue of satisfying administrative remedies did not begin in the Simpao litigation. Rather, it had been raised by both Petitioners and Respondents in Santos. In opposing Respondent Governor's Motion to Vacate Stipulated Order of June 17, 2004 Preliminarily Approving Settlement, Petitioner Santos herself lamented government practice of prohibiting the filing of EIC claims and subsequently claiming that the Class had failed to exhaust administrative remedies. Simpao Plaintiffs cannot take credit for discovering this crucial issue.

## CONCLUSION

Not only is the Simpao Plaintiffs' Counsel straining to take credit for work performed by other parties and for decisions independently reached by the Court in aid of settlement, Counsel strangely contend they should also be rewarded for their strenuous efforts to *block* recovery of the EIC class through settlement. Counsel claims that they performed duties of "devil's advocates," and through their virtually indiscriminate shotgun-spray opposition to even the simplest and least controversial progressions in this litigation somehow exposed what they claim are "defects" in the settlement agreements effected in this matter. By dubious extension, at least according to Simpao Plaintiffs, this entitles them to an award of attorneys fees out of the common fund. In support of their "devil's advocate" argument, Counsel cite to law in various

19

jurisdictions such as New Mexico or Kentucky, completely disregarding the standards set forth in the Ninth Circuit.

In order to successfully claim attorney's fees from the common fund, an attorney must create or preserve the fund. While it is entirely in the discretion of the Court to award attorneys fees, guided by the 25% Ninth Circuit benchmark, Petitioners submit that the Simpao Plaintiffs did not contribute in any meaningful way to the settlement in this case so as to entitle them to benefit from it in the form of attorneys fees. We urge that the Court consider the fact that Simpao Plaintiffs frustrated the efforts of the Class as much as possible at every juncture. Their objections were rarely if ever meritorious, and appear to have been effected for the sole purpose of causing as much delay and disruption as possible to the parties who were willing to engage in negotiations. The Court may note, for example, that Counsel for Simpao Plaintiffs appeared on KUAM News expressing disappointment at the pending settlement and essentially soliciting for potential class members to join his clients' quest for top dollar recovery. By contrast, Petitioner Torres wisely engaged in fruitful settlement negotiations and accepted the equivalent of approximately 1% of the total award in attorneys fees. To award a non-settling plaintiff a higher amount of attorneys fees would set a negative precedent and be unjust.

On the other hand, Simpao Plaintiffs were uncooperative, and rather than engaging in open-minded negotiations with Respondents elected to isolate themselves from the rest of the parties in negotiations and pursue a pie-in-the-sky ideal while carelessly declining reasonable and immediate compromise. Their roll of the dice did not pay off, and now Counsel is attempting to recover fees from the settlement of the

parties who meticulously negotiated a reasonable settlement for their own clients, which Counsel for Simpao Plaintiffs had the opportunity to themselves secure but stubbornly decided against. To plead to the Court now for a portion of the settlement that should properly be allocated to the parties that *worked* for the settlement is an unfortunate and sorry showing of overinflated self-worth in the face of self-indulgent inflexibility. Counsel should not be rewarded for their many failures. They opposed settlement and probably still oppose it today. They should *certainly* not benefit to the detriment of Counsel for the parties who successfully negotiated on behalf of the Class. Based on the foregoing, Petitioner Santos respectfully requests that this Court deny Simpao Plaintiffs' Application for Attorneys Fees and Costs.

Respectfully submitted this 22nd day of June, 2007.

**PHILLIPS & BORDALLO, P.C.**
Attorneys for Petitioners

By: _____
Michael F. Phillips