SHANNON TAITANO, ESQ.
OFFICE OF THE GOVERNOR OF GUAM
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
Telephone: (671) 472-8931
Facsimile: (671) 477-6666

EDUARDO A. CALVO, ESQ.
KATHLEEN V. FISHER, ESQ.
RODNEY J. JACOB, ESQ.
DANIEL M. BENJAMIN, ESQ.
CALVO & CLARK, LLP
Attorneys at Law
655 South Marine Corps Drive, Suite 202
Tamuning, Guam 96913
Telephone: (671) 646-9355
Facsimile: (671) 646-9403

*Attorneys for the Government of Guam
and Felix P. Camacho, Governor of Guam*

**FILED**
DISTRICT COURT OF GUAM
JUN 2 2 2007
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, et. al.,<br><br>                    Petitioners,<br><br>-v-<br><br>FELIX P. CAMACHO, etc., et. al.<br><br>                    Respondents. | CIVIL CASE NO. 04-00006<br>(Consolidated with Civil Case Nos. 04-00038 and 04-00049)<br><br>**THE GOVERNOR AND GOVERNMENT OF GUAM'S POSITION REGARDING APPLICATIONS FOR ATTORNEYS' FEES** |

Governor of Guam Felix P. Camacho and the Government of Guam hereby respectfully submit their positions regarding: (1) the June 6, 2006 "Amended Motion for Attorneys' Fees and Costs Pursuant to Section II(a)(iv) of the May 26, 2006 Class Action Settlement Agreement" filed by plaintiffs' counsel in *Santos* and *Torres* (Docket 331); and (2) the June 8, 2007 "Motion for Attorney Fees, Motion for Bill of Costs" filed by plaintiffs' counsel in *Simpao* (Docket 414).

## **INTRODUCTION**

In a class action, the role of the attorneys who represent the plaintiffs and the class is reversed when it comes to the issue of attorneys' fees and costs. Until now, these lawyers have served as advocates for their respective plaintiffs and the class of persons they represent and have sought to expand the recovery by the class. Now they appear before the Court seeking to diminish that recovery to the class by receiving a portion of the gross recovery. Thus, class counsel and counsel for the *Santos* and *Torres* plaintiffs seek to jointly recover a total of 10% of the proceeds, or up to $9 million. Counsel for the *Simpao* plaintiffs, who have not even supported the settlement of this case, seek another 5% or $4.5 million, either to be taken from the 10% sought by the *Santos* and *Torres* plaintiffs, or as an additional deduction from the net recovery of the EIC Class.

The ultimate determination of whether attorneys' fees and costs should be awarded and the amount of such award rests within the discretion of this Court, which serves as the protector of the interests of the class. The class in this case is one in particular need of judicial protection. It consists of the recipients of the EIC. These are hard working persons, many with dependents, who are making salaries at the lower end of the income scale. They are frequently referred to as the "working poor." This is not some "lottery" settlement recovery to them; the $90 million the Government has agreed to pay to these tens of thousands of persons on Guam is money they need for the necessities of their day-to-day lives. Thus, it is the view of the Governor and the Government that *any* diminishment of this $90 million must be taken with utmost care, and that the current requests to take $9 million to $13.5 million of this and give it to three law firms is unconscionable.

*CIVIL CASE NO. 04-00006* 1
*(Consolidated with Civil Case Nos. 04-00038 and 04-00049)*
Case 1:04-cv-00006   Document 432   Filed 06/22/2007   Page 2 of 15

Rather, the Governor and Government ask that the Court exercise its authority to ensure that any award of attorneys' fees and cost in this case is reasonable and tied to the actual work performed and the results achieved. In that regard, they ask that the Court require the attorneys in these actions to state and justify the hours worked on this case, and the benefit received by the EIC Class. At present, the Court has been given no calculation of hours or expenses by plaintiffs; counsel (although they have stated their willingness to submit such bills). Until such bills are provided, there is no way to ensure that the millions in fees sought is a "reasonable" amount, as required by Ninth Circuit precedent.

This is a case where, for policy reasons based upon the Governor's commitment since he was in the Guam Legislature, the defendants were willing to settle at an early stage, causing proportionally low expenditures of time and money by the plaintiffs' lawyers compared to other large cases. In the three cases, there were but two motions to dismiss, one partial summary judgment motion that accomplished nothing more than had been already agreed to in a previous settlement, and several settlement negotiations with some attendant litigation. That is it. No depositions occurred, no large summary judgment motions were filed, discovery was non-existent, no pre-trial preparations occurred, and there were no trials.

Under these circumstances, the Governor and Government believe it would be proper that a lodestar be applied, or that at least a lodestar figure be calculated and compared to any percentage recovery, so as to ensure that the recovery of any fees or costs is reasonable. They ask that the Court, in its role as guardian for the unrepresented EIC Class members, exercise its oversight abilities to ensure that the ultimate award of fees and costs is not an arbitrary percentage, but rather a careful calculation that ensures fairness to the EIC Class. Finally, they also ask that the Court carefully consider whether the *Simpao* plaintiffs' attorneys application has any merit at all, given that most of their claims of "contributions" to the resolution of this case are dubious at best, and that they most particularly have not promoted the $90 million settlement from which they now seek to recover at the expense of the EIC Class.

*CIVIL CASE NO. 04-00006*　　　　2
*(Consolidated with Civil Case Nos. 04-00038 and 04-00049)*
Case 1:04-cv-00006　　Document 432　　Filed 06/22/2007　　Page 3 of 15

# ARGUMENT

Ninth Circuit precedent establishes that this Court has a clear mandate to act as the protector of the interests of the EIC Class in evaluating the pending attorneys' fees and costs motions: "In a common fund case, the judge must look out for the interests of the beneficiaries, to make sure that they obtain sufficient financial benefit after the lawyers are paid. Their interests are <u>not represented</u> in the fee award proceedings by the lawyers seeking fees from the common fund." *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 109 F.3d 602, 608 (9th Cir. 1997) (emphasis added) (citing *Wash. Public Power Supply System Securities Litig.*, 19 F.3d 1291, 1300-01 (9th Cir. 1994)). As one court has stated: "The interest of class counsel in obtaining fees is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class. In addition, there is often no one to argue for the interests of the class (that their recovery should not be unfairly reduced), since it is to be expected that class members with small individual stakes in the outcome will not file objections, and the defendant who contributed to the fund will usually have scant interest in how the fund is divided between the plaintiffs and class counsel." *In re DPL Inc., Securities Litigation*, 307 F. Supp. 2d 947, 951 (S.D. Ohio 2004).

## I. Under Ninth Circuit Precedent, the Court Has the Discretion to Apply the Lodestar or Percentage-of-the-Fund Methods Should It Determine to Award Fees, but Must Ensure that Any Fee Award Is Reasonable

If this Court determines it will award fees and costs as to this class action litigation, it has the discretion to base that award either on the "lodestar" or "percentage-of-the-fund" basis. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method."); *Fischel v. Equitable Life Assur. Society*, 307 F.3d 997, 1006 (9th Cir. 2002) (same). The Ninth Circuit has "made it clear that 'no presumption in favor of either the percentage or the lodestar method encumbers the district court's discretion to choose one or the other.'" *Wininger v. SI Management L.P.*, 301 F.3d 1115, 1123 (9th Cir. 2002) (quoting *In re Wash. Public Power*, 19 F.3d at 1296).

*CIVIL CASE NO. 04-00006*  3
*(Consolidated with Civil Case Nos. 04-00038 and 04-00049)*
Case 1:04-cv-00006   Document 432   Filed 06/22/2007   Page 4 of 15

Under the percentage method, the court awards the attorneys a percentage of the fund sufficient to provide plaintiffs' attorneys with a **reasonable** fee. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir.1989). Under the lodestar method, the court should "multipl[y] the number of hours **reasonably** spent *in achieving the results obtained* by a **reasonable** hourly rate." *Wininger*, 301 F.3d at 1125 (quoting *Friend v. Kolodzieczak*, 72 F.3d 1386, 1389 (9th Cir.1995) (emphasis altered from original). The court may then enhance the lodestar with a "multiplier," if necessary, to arrive at a reasonable fee. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).[1]

Whichever method is applied, "[b]ecause **a reasonable fee award is the hallmark of common fund cases, and because arbitrary, and thus unreasonable, fee awards are to be avoided, neither method should be applied in a formulaic or mechanical fashion.**" *In re Washington Public Power*, 19 F.3d at 1295 n.2.; *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990)). "Reasonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel*, 307 F.3d at 1007. Indeed, the requirement that fees be reasonable is mirrored in Guam's Rules of Professional Conduct, which state that "[a] lawyer's fee shall be reasonable." Guam R. Prof. Cond. 1.5.

## II. The Facts of this Case Support the Court's Exercise of the Lodestar Method in Calculating Attorney Fees under Ninth Circuit Precedent

The circumstances in this case make a lodestar award much more reasonable. Directly on point is the Ninth Circuit's decision in *Fischel v. Equitable Life Assur. Society*, 307 F.3d 997 (9th

---

[1] Following Supreme Court precedent, the Ninth Circuit has recognized eleven factors that "are relevant to the determination of the amount of attorney's fees: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) time limitations imposed by the client or the circumstances; (7) the amount involved and the results obtained; (8) the experience, reputation and ability of the attorneys; (9) the 'undesirability' of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases." *Van Gerwen*, 214 F.3d at 1045 n.2 (citation omitted). The contingent nature of a case should *not* be considered. *Id.* (citation omitted). Further, "the Supreme Court has held that novelty or complexity of the issues should not be considered at the multiplier stage, and that quality of representation and results obtained are ordinarily subsumed in the lodestar determination and in most cases should not be considered in the multiplier step." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 898-901 (1984)).

*CIVIL CASE NO. 04-00006*  4
*(Consolidated with Civil Case Nos. 04-00038 and 04-00049)*
Case 1:04-cv-00006   Document 432   Filed 06/22/2007   Page 5 of 15

Cir. 2002). In that case, as here, there was an "early settlement," with "no discovery, no lengthy settlement negotiations, no protracted litigation of any kind." *Id.* at 1003. After entry of judgment, just as in this case, "Plaintiffs' counsel applied for an award of attorney's fees and costs, requesting 10 percent, or $1,847,500, of the settlement fund." *Id.* at 1004.

But the District Court denied this request for 10% of the fund (having already once before denied a request for 25%). *Fischel*, 307 F.3d at 1004. Instead, "the court reaffirmed its determination of a 'generous' combined hourly rate [for staff and counsel] of $300." *Id.* "After noting that the use of a multiplier is the exception rather than the rule, the district court awarded a 1.5 multiplier for counsel's 100 percent success rate." *Id.* After applying the multiplier, the court awarded $686,226.25, or approximately 3% of the settlement fund. *Id.* The attorneys appealed.

The Ninth Circuit held that the district court had acted properly on the facts of the case in awarding fees and costs using the lodestar in an amount that ultimately equaled 3% of the fund. *Fischel*, 307 F.3d at 1007. As it explained, "[t]he fact that the case was settled early in the litigation support[ed] the district court's ruling...." Indeed, as the Ninth Circuit stated, to apply a percentage-of-the-fund recovery in such a case "**might very well have been a 'windfall**.'" *Id.* (emphasis added). "[D]espite Plaintiffs' counsel's assertion that they should have been compensated for the size of the fund they obtained, the district court compensated counsel for this achievement when the district court applied a 1.5 multiplier for their 100 percent success rate. *Id.*

Nor was the Ninth Circuit convinced that a 10% fee award was merited simply because there was no objection. "[W]e are not persuaded that the district court abused its discretion by failing to award 10 percent of the fund when no class member objected to that percentage." *Fischel*, 307 F.3d at 1007. As the court explained, "this factor is not outcome determinative; it must be considered in light of all of the other factors. Here, the district court did not abuse its discretion by failing to increase the attorney's fee award to account for the class members' view of the requested fee award because (1) there was an early settlement, (2) the district court used the lodestar rather than the percentage-of-the-fund approach to calculate fees, and (3) the district court applied a 1.5 multiplier for counsel's 100 percent success rate." *Id.* at 1008.

*CIVIL CASE NO. 04-00006* 5
*(Consolidated with Civil Case Nos. 04-00038 and 04-00049)*
Case 1:04-cv-00006   Document 432   Filed 06/22/2007   Page 6 of 15

Application of the lodestar in this case makes sense for the same reason it did in *Fischel* – litigation was minimal, with an early settlement that obviated the need for any extensive expenditures. Thus, an examination of the docket and record in the *Santos*, *Torres*, and *Simpao* cases reveals the following record:

- No depositions were conducted;
- No written discovery was conducted;[2]
- No pre-trial proceedings were held;
- No trial proceedings were conducted.

Instead, the litigation of the three cases has consisted largely of the following that might be considered to have some way benefited the EIC Class:

- The filing of complaints;
- Limited litigation regarding the first *Santos* settlement (resolved without a hearing or judicial determination by the subsequent *Santos* and *Torres* settlements);
- Opposition to one motion to dismiss each in *Torres* and *Simpao*;
- The participation of *Santos* counsel in three mediations occupying around five or six days total, and *Torres* and *Simpao* counsel in one mediation lasting a couple days;
- Participation in drafting of settlement agreements by *Santos* and later *Torres* counsel;
- The filings to obtain approval of the three settlements and class certification by *Santos*, and later *Torres*, counsel.

Indeed, looking at the docket in these cases, it is plain that much of the litigation that did occur concerned the Governor and Attorney General's dispute as to who represented the Government of Guam, an issue that did not require the involvement of the plaintiffs' counsel.[3]

---

[2] The *Simpao* plaintiffs sought to serve certain discovery, but only after *Santos* settled. They never obtained responses because it was improper, and therefore cannot claim to have benefited the class thereby.

[3] The *Simpao* plaintiffs' counsel did attempt to intervene in that portion of the litigation. But (1) it is unclear how this ever could have been of benefit to the class; and (2) *Simpao* plaintiffs' counsel sided with the Attorney General, who ultimately lost this dispute, and so *Simpao* plaintiffs' counsel did not even prevail on this issue, assuring that these efforts were without benefit to the class. *See infra* Part V (objectors must show efforts benefited the class).

*CIVIL CASE NO. 04-00006* 6
*(Consolidated with Civil Case Nos. 04-00038 and 04-00049)*
Case 1:04-cv-00006   Document 432   Filed 06/22/2007   Page 7 of 15

Thus, the record bears out what the Court already knows: There was an early settlement of this case, which, while it may be of substantial benefit of the EIC Class, makes any effort to obtain a $9 million (much less $13.5 million) recovery wholly unreasonable because it is not reasonably tied to the effort expended. *In re Wash. Pub. Power*, 19 F.3d at 1295 n.2. (award of attorneys' fees may not be unreasonable); *accord Florida v. Dunne*, 915 F.2d at 545. Under such circumstances, the efforts by Plaintiffs' counsel to obtain a 10%-15% award consists of nothing less than an attempt to obtain an unwarranted windfall. *See Fischel*, 307 F.3d at 1007.

Indeed, here the size of the recovery has little to do with the efforts of plaintiffs' counsel, which have required no special effort as to individual claims, and much more to do with the fact that tens of thousands of claims have been aggregated together and processed by DRT and the Government (which have assumed the duty of individually administering the claims under the Settlement Agreement). Where the size of a recovery "is due to the fact that it resolves not just one claim, but large numbers of identical claims, and the services of the attorney are essentially the same as would have been required if there had been only one claim, it makes no sense to gear the fee award to the total dollar amount of the [recovery]." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 49 n.16 (2000) (quoting *Reasonable Fees: A Suggested Value-Based Analysis for Judges*, 184 F.R.D. 131, 141-42 (1999)).

Of course, plaintiffs' counsel have argued that their 10-15% request is reasonable because there is a "benchmark" of 25% that makes their request for millions of dollars look reasonable. But, the Ninth Circuit has actually rejected even much lower figures, such as 6%, where unreasonable on the facts of this case, and instead ordered that on remand the district court apply the lodestar method. *See Wininger*, 301 F.3d 1115, 1125 n.9 (9th Cir. 2002) (Prior precedent "does not set a floor under which a district court cannot award attorneys' fees in common fund cases, ... , nor does it require utilization of the percentage of the fund method. .... In any event, <u>our conclusion that the 6% fee award was unreasonable under the circumstances</u> necessarily indicates that Plaintiffs' counsels' request for a 25% fee award must be rejected.") (emphasis added) (quoting *In re Wash. Public Power*, 19 F.3d at 1296; *Vizcaino*, 290 F.3d at 1047, 1052-55; *see also In re Coordinated Pretrial Proceedings*, 109 F.3d at 607 ("Reasonableness is the

*CIVIL CASE NO. 04-00006*     7
*(Consolidated with Civil Case Nos. 04-00038 and 04-00049)*
Case 1:04-cv-00006    Document 432    Filed 06/22/2007    Page 8 of 15

goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion. [citation omitted]. A 25% benchmark might be reasonable in some cases, <u>but arbitrary if the fund were extremely large</u>.") (emphasis added).

### III. Counsel Have Yet to Supply Adequate Information for Calculation of a Lodestar Because They Have Yet to Provide the Court with Their Hourly Bills (although Counsel Have Offered to Do So)

Unfortunately, as of this point, plaintiffs' counsel have yet to supply the Court with the required information to calculate a loadstar. Yet, what is required of counsel is not onerous; it is the same requirement any attorney faces – they need to present the Court (as proxy for their client) with their hourly bills. "The party petitioning for attorneys' fees '**bears the burden of submitting detailed time records justifying the hours claimed to have been expended**.'" *In re Wash. Pub. Power*, 19 F.3d at 1305 (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir.1986)) (emphasis added). If the hours are not submitted, then the Court should require their submittal (or in the alternative, reduce the hours credited). *Wininger*, 301 F.3d at 1125-26 ("Giving counsel the benefit of the doubt even in light of apparently improperly claimed hours, however, runs counter to the rule in *Chalmers* that the burden to submit *detailed* records justifying hours *reasonably* expended falls upon the claiming attorneys. The district court should have required greater specificity or reduced the hours further by those the firm had not proved to have been reasonably expended.") (emphasis in original).

Here, giving counsel the benefit of the doubt, the matter can be addressed simply by requiring submission of counsel's hours. Indeed, *Santos* and *Torres* counsel have already indicated their willingness to supply such information.[4] (Docket No. 331 at 15-16). Similarly, *Simpao* counsel have indicated they are willing to submit such information as well (assuming they show any entitlement to recovery). (Docket No. 415 at ¶ 4; Docket No. 418 at ¶ 8).[5]

---

[4] In all fairness, counsel for *Santos* and *Torres* could not have supplied their complete bills in June 2006 when they filed their initial motion for attorneys' fees and costs since work remained to be done at that time. But, they could have supplemented that filing with their up-to-date bills on June 8, 2007 under section II(c)(iv) of the Settlement Agreement.

[5] *Simpao* counsel have requested permission to submit their bills *in camera*. However, attorney bills are not ordinarily privileged. *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127,

*CIVIL CASE NO. 04-00006* 8
*(Consolidated with Civil Case Nos. 04-00038 and 04-00049)*
Case 1:04-cv-00006   Document 432   Filed 06/22/2007   Page 9 of 15

Of course, in submitting the hours, counsel do have an obligation to remove any hours not attributable to the successful settlement of the case; otherwise, the Court can remove them. *Wininger*, 301 F.3d at 1125-26. However, hopefully in this case that would not be an issue. Instead, assuming only properly attributable hours are presented, the Court can then make the necessary decision on a lodestar factor, and whether a multiplier is appropriate.[6]

IV. **Even if a Percentage-of-Recovery Fee Is Awarded, the Lodestar Cross-Check Should Be Utilized to Meet the Requirement that Fees Be Shown to be Reasonable**

Although the "windfall" nature of the recovery sought here urges the direct application of the lodestar, if it is not utilized, then at minimum it should be used to "cross-check" the common fund recovery and ensure compliance with the Ninth Circuit's mandate that any fee award be reasonable: "[T]he best practice is to assess a percentage fee award not only by using the usual litany of factors bearing on the reasonableness of a fee, *see, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 (9th Cir.2002), **but also by cross-checking the percentage fee award against a rough fee computation under the lodestar method**." *Young v. Polo Retail, LLC*, 2007 WL 951821, *5 (N.D. Cal. 2007) (emphasis added) (citing *Vizcaino*, 290 F.3d at 1050-51 (approving district court's use of a lodestar cross-check); *In re GMC Pick-Up Tuck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 820-21 & n.40 (3d Cir. 1995); *In re HPL Techs, Inc., Sec Litig.*, 366 F Supp 2d 912 (N.D. Cal.2005)); *accord In re Coordinated Pretrial Proceedings*, 109 F.3d at 607 (approving of comparison of lodestar with percentage to judge reasonableness of fee).

---

130 (9th Cir. 1992) ("We have examined the attorney billing statements ordered disclosed by the district court. We conclude that they do not contain privileged communications between attorney and client. The statements contain information on the identity of the client, the case name for which payment was made, the amount of the fee, and the general nature of the services performed. Our previous decisions have held that this type of information is not privileged.") (emphasis added and citations omitted). To the degree any portions of the otherwise non-privileged bills are privileged, the proper procedure is to redact the publicly filed copy of any truly privileged matters, not to entirely deprive the class of any notice of the contents. This is especially important here, where so much of the *Simpao* plaintiffs' counsel's work has so plainly not generated any benefits for the class as discussed *infra*, and thus scrutiny is required to determine which work, if any, benefited the class.

[6] The lodestar amount is presumptively the reasonable fee amount, and a multiplier may be used to adjust the lodestar amount upward or downward only where supported by "specific evidence" on the record that the lodestar amount is unreasonably low or unreasonably high. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (citation omitted); *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir.1988).

*CIVIL CASE NO. 04-00006* 9
*(Consolidated with Civil Case Nos. 04-00038 and 04-00049)*
Case 1:04-cv-00006   Document 432   Filed 06/22/2007   Page 10 of 15

A cross-check is not a difficult process. It simply requires "sworn declarations from the attorney(s) in charge of billing records for the case attesting to (1) the experience and qualifications of the attorneys who worked on the case; (2) those attorneys' customary billing rates during the pendency of the case; and (3) the hours reasonably expended (reduced if necessary in the exercise of professional billing judgment) by those attorneys in prosecuting the case." *Young*, 2007 WL 951821, at *5. Indeed, notable in the *Young* case, application of the lodestar cross-check proved to more than justify the fees sought on a percentage-of-recovery basis, where before that cross-check the court was concerned the award was excessive. *Id.* at *8 ("This outcome also shows that relying on percentages without reference to these other factors can be, like blind reliance on benchmarks, an 'all too tempting substitute for the searching assessment that should properly be performed.'") (citation omitted).

Again, however, the plaintiffs' attorneys have yet to supply such information to the Court, thereby making it impossible for the Court to asses at this time how reasonable or unreasonable the requested fees are. Thus, even if the Court determines to apply the percentage-of-the-fund method, the Governor and Government urge that the Court require submission by counsel (as they have offered to do) of sufficient information to permit a lodestar "cross-check" such that the Court is assured that the amount of attorneys' fees and cost awarded is a reasonable award, and not merely the result of a mechanical process divorced from the realities of the litigation. *Fischel*, 307 F.3d at 1007; *see also* Guam R. Prof. Cond. at 1.5(a)(1) (first factor to be considered when determining the reasonableness of a fee is "the time and labor required.").

V. ***Simpao* Plaintiffs' Counsel Should Not Recover Fees or Costs Because They Have Accomplished Little to Nothing for the Class**

The forgoing discussion has not separately considered the application by *Simpao* counsel. But, putting aside all other issues, the request for fees and costs by the *Simpao* plaintiffs' counsel should be denied even without calculation of a lodestar.

*Simpao* plaintiffs' counsel did not join the settlement; they are objectors who opposed the settlement. Now, however, having arrived in this litigation only after the first settlement, having failed in their effort to intervene in *Santos*, having failed to achieve any results not accomplished

*CIVIL CASE NO. 04-00006*      10
*(Consolidated with Civil Case Nos. 04-00038 and 04-00049)*
Case 1:04-cv-00006    Document 432    Filed 06/22/2007    Page 11 of 15

by the settlement, having delayed implementation of the settlement though their objections (and thus delayed the EIC Class members' receipt of money under the settlement), *Simpao* plaintiffs' counsel seeks $4.5 million dollars from the settlement. This is exceedingly unreasonable.

If counsel for an objector is to be permitted to recover from a settlement, such a recovery must be limited solely to the time spent on <u>tasks that actually benefited the class</u>. *E.g. Wininger v. SI Management, L.P.*, 301 F.3d 1115, 1125 (9th Cir. 2002) (affirming district court's exclusion from lodestar calculation all time spent by objectors' counsel "in unsuccessful efforts unrelated to their success challenging Plaintiffs' counsels' fee request"); *In re Veritas Software Corp. Securities Litig.*, 2006 WL 463509 at *5 (N.D. Cal. 2006) (excluding from lodestar for objector's fees all time except that spent on single objection that actually benefited the class).

Here, it is questionable if anything the *Simpao* plaintiffs' counsel did benefited the EIC Class. The *Simpao* plaintiffs continue to take credit for the partial summary judgment Order. Yet, this Court has held that what little was achieved by the Order was in part the results of the Attorney General's unauthorized concession of issues. (*Simpao* Docket No. 148 at 3 ("Based in part on the Attorney General's concession on the issue, the Court granted the plaintiffs summary judgment on the issue of whether EIC applies to Guam.")). Indeed, the *Simpao* plaintiffs' "achievement" of a holding that the EIC applied to Guam had no discernable benefit to the EIC Class – before that Order issued, the Governor had already signed a term sheet for the initial $90 million settlement that (with some modifications and joinder of the *Torres* plaintiff) now underlies the final settlement before the Court. (*See Simpao* Docket No. 96). Thus, by the time the Order was rendered, the issue was already resolved in the EIC Class' favor (assuming they wished to be members of the settlement, which they have in overwhelming numbers).

*Simpao* plaintiffs' counsel also claim credit for the Executive Order and EIC forms issued by the Governor to start accepting EIC claims (the "EIC-GU forms"). (*See* Docket No. 414 at 6). This is rather ironic since the *Simpao* plaintiffs' counsel actually spent their time and money challenging those procedures and forms and moving unsuccessfully for a partial summary judgment order requiring alternative procedures they sought; it was this Court that upheld the

*CIVIL CASE NO. 04-00006* 11
*(Consolidated with Civil Case Nos. 04-00038 and 04-00049)*
Case 1:04-cv-00006   Document 432   Filed 06/22/2007   Page 12 of 15

Government's arguments and approved the Governor's Executive Order and forms over *Simpao* plaintiffs' counsel's objections. (*See Simpao* Docket No. 99 at 9-12).

And, there is no evidence that the Executive Order and forms that the *Simpao* plaintiffs tried to defeat were a response to the *Simpao* litigation. The Governor issued them consistent with his campaign promises to implement the EIC. And *Santos* and *Torres* counsel, having filed suit first, have much better claims that the Executive Order and forms responded to their suits.

The fact is that an evaluation of what *Simpao* counsel state they spent their time on shows virtually nothing of any value to the EIC Class. Specifically, on paragraph 3 of the Canto Declaration (Docket No. 415) and paragraph 7 of the Stephens Declaration (Docket No. 418), *Simpao* counsel list in bullet point fashion what they spent their thousands of hours accomplishing. Going through those same bullet points, it is quite clear that these thousands of hours have minimal to no benefit for the EIC Class that joined this settlement:

- *Simpao* counsel cite their motion to intervene in *Santos*. That motion was denied and thus of no benefit to the EIC Class. (Docket No. 76).

- *Simpao* counsel cite their filing of a separate action. By the time it was filed in December 2004, it was the third, duplicative action to be brought (after *Santos* and *Torres*) and thus of no benefit on its own to the EIC Class unless it achieved something (which, as discussed, it did not).

- *Simpao* counsel cite their defense of the motion to dismiss and the partial summary judgment motion. By the time these occurred, the same results already were contained in the first *Santos* settlement and, as to the partial summary judgment, the second *Santos* settlement's terms sheet. It is hard to see how this duplicative work benefited the EIC Class.

- *Simpao* counsel cite their filing of a motion for class certification. That motion was never heard, was recognized by this Court to be a *danger* to the $90 million settlement from which *Simpao* counsel now seek to benefit (*see Simpao* Docket No. 148 at 7), and now will be moot if the settlement is approved since there have been to few opt-outs to justify certification of a second class.[7] Therefore, this motion too did not benefit the EIC Class.

- *Simpao* counsel cite their briefing on the motion for preliminary approval of the settlement. The sole achievement of that briefing (which sought to scuttle the settlement in its entirety) was to slightly narrow the class definition to exclude those

---

[7] Indeed, only one of the three *Simpao* plaintiffs opted out of the settlement, meaning that the other two have joined this case as class members (assuming approval of the settlement) and therefore mooting out the *Simpao* class certification motion.

*CIVIL CASE NO. 04-00006* 12
*(Consolidated with Civil Case Nos. 04-00038 and 04-00049)*
Case 1:04-cv-00006    Document 432    Filed 06/22/2007    Page 13 of 15

members of the working poor who had yet to file timely tax returns. (*See* Docket No. 384). At most, this was of minimal value to the EIC Class, and cannot have required all that many hours work.

- *Simpao* counsel cite their "interviews of fact witnesses." The Governor is unaware of when those interviews have ever been of any benefit in this litigation to the EIC Class – as far as the record reveals, there is nothing in the dockets of any of the cases even mentioning any interviews, much less showing their value to the EIC Class.

- *Simpao* counsel cite their retention of experts. The only time of which the Governor is aware that such expert testimony was ever utilized was when *Simpao* counsel cited a calculation of interest as Exhibit C to Docket No. 346 in opposing preliminary approval of the settlement on the ground that interest should be included in the settlement amount. Notably, the Court granted preliminary approval without accepting this argument, so this too did not benefit the EIC Class.

- *Simpao* counsel cite their legal research efforts, but that simply begs the question of whether such research translated into results that benefited the EIC Class.

- *Simpao* counsel cite their "analyzing and formulating a strategy to meet the Government of Guam's challenges," but it is not clear at all when that (whatever it is) benefited the EIC Class.

- *Simpao* counsel cite their "gathering of evidence," but as with the interviews, it is unclear if this information was ever used, much less used to benefit the EIC Class.

- *Simpao* counsel cite their participation in hearings, but again this begs the question of how the results of those hearing benefited the EIC Class.

- *Simpao* counsel cite their participation in settlement negotiations; yet, they plainly did not join the settlement, and so this participation did not benefit the EIC Class (which has chosen to accept the settlement).

- *Simpao* counsel cite winning "two motions," an apparent effort to yet again cite the motion to dismiss and partial summary judgment motions discussed above (and notably, the partial summary judgment was also not at all a clean "win," as discussed).

- *Simpao* counsel cite "communications" with the Government regarding the availability of funds to pay the EIC. Again, the benefit of this to the EIC Class is not addressed.

- *Simpao* counsel cite the assembly of research and evidence for "an eventual trial," but this is of no benefit to the class, which has settled and to avoid the risk of trial.

In sum, this long litany of work provides no justification for the fees sought because there is no showing of how this benefited the EIC Class' recovery.

Further, it bears mentioning that the hourly rate sought by *Simpao*'s off-island counsel of up to $750 per hour are scandalous. First, their fees ought to be governed by what is reasonable in Guam, not what they might charge in Seattle. *See Young*, 2007 WL 951821, at *7-8 (utilizing

*CIVIL CASE NO. 04-00006*    13
*(Consolidated with Civil Case Nos. 04-00038 and 04-00049)*
Case 1:04-cv-00006    Document 432    Filed 06/22/2007    Page 14 of 15

market rates in San Francisco to determine proper rates for San Francisco case). Second, the rates suggested even for Seattle have to be substantially above that market's average; consider that in *Young*, the court concluded that in San Francisco (which is probably a more expensive market than Seattle) as of March 28, 2007 the average fees were substantially lower. *Id.* at *8 (setting out attorney rates of $200-$425 an hour, depending on experience). Thus, while in the view of the Government and Governor, no grounds for fees and costs being awarded to *Simpao* counsel has been given, if any amount is awarded, it should be based on actual hours spent benefiting the EIC Class, at the commercially reasonable rates presently existing in Guam.

## CONCLUSION

Consistent with their duties to the people and taxpayers of Guam, including the recipients of the EIC settlement, the Governor and Government of Guam respectfully ask that before this Court awards any attorneys' fees and costs, it exercise its authority to safeguard the interests of the EIC Class by applying a lodestar analysis or, alternatively, otherwise obtaining sufficient information regarding the hours reasonably expended by counsel to ensure that the EIC Class is not subject to an undue or unconscionable deduction of costs and fees.

Dated this 22nd day of June, 2007.

OFFICE OF THE GOVERNOR OF GUAM
CALVO & CLARK, LLP
Attorneys at Law
*Attorneys for the Government of Guam
and Felix P. Camacho, Governor of Guam*

By: _____
**DANIEL M. BENJAMIN**

*CIVIL CASE NO. 04-00006* 14
*(Consolidated with Civil Case Nos. 04-00038 and 04-00049)*
Case 1:04-cv-00006    Document 432    Filed 06/22/2007    Page 15 of 15