

**FILED**
DISTRICT COURT OF GUAM

AUG 2 3 2007

**JEANNE G. QUINATA**
**Clerk of Court**

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, *et.al* | Civil Case No. 04-0006 |
| Petitioners, | |
| v. | |
| FELIX P. CAMACHO, et al. | |
| Respondents | |

---

| | |
|---|---|
| CHARMAINE R. TORRES, *et al.* | Civil Case No. 04-00048 |
| Plaintiffs | |
| v. | |
| GOVERNMENT OF GUAM, et al. | |
| Respondents | |

---

MARY GRACE SIMPAO, *et al,*

Civil Case No. 04-00049

Plaintiffs,

**RESPONSE TO THE GOVERNMENT
AND COUNSEL FOR SANTOS AND
TORRES'S REPLIES TO SIMPAO
OBJECTIONS TO THE
SETTLEMENT**

v.

GOVERNMENT OF GUAM

Defendant.

v.

FELIX P. CAMACHO, Governor of Guam

Intervenor-Defendant

**ORIGINAL**

**Shimizu Canto & Fisher**
Suite 101 De La Corte Bldg.
167 East Marine Corps Drive
Hagatna Guam 96910
671.472.1131

**Tousley Brain Stephens PLLC**
Kim D. Stephens, P.S., WSBA #11984
Nancy A. Pacharzina, WSBA #25946
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
206.682.5600

Counsel for Objectors Simpao and Cruz

## Table of Contents

Table of Contents ................................................................................................... i
Table of Authority .................................................................................................. ii
Argument ............................................................................................................... 1
I. Introduction ....................................................................................................... 1
II. Newly produced facts regarding the settlement ............................................... 2
III. The Court should deny final approval ............................................................. 3
    A. Class notice does not meet Rule 23 standards ...................................... 3
        1.Settling Parties failed to employ best methods practicable
        for individual notice ........................................................................ 4
        2. Settling Parties failed to employ best practices for publication
        notice ............................................................................................. 6
        3. The content and form of notice does not comport
        with best practicable standards ...................................................... 7
        4. The Court's preliminary approval of class notice
        is not a factor at final approval .................................................... 9
    B. The claims procedure is overly burdensome ...................................... 10
    C. The settlement is substantively unfair ............................................... 12
        1. The Settling Parties have not rationalized disparate
        treatment between class years ...................................................... 12
            a. Tax year 2000 is treated unfairly ..................................... 13
            b. Tax years 1995, 1996, and 1999 are treated
            unfairly ........................................................................... 14
            c. The payment caps for each year or group of
            years are arbitrary and not rationally based ........................ 14
        2. The early payment scheme was coercive ................................... 15
    D. The Settling Parties have not demonstrated substantive fairness .............. 16
        1. Settling Parties still have not provided the Court
        information on the value of the claims ........................................ 16
        2. The Government Overstates Litigation Risks ............................. 16
            a. The Governor's agreement to obey the
            law is not a benefit to the class ........................................ 16
            b. The Governor's decision to forego
            litigation on jurisdiction offers no benefit to the class ............. 17
            c. The "Government's agreement to proceed as a
            class action" is of little value to the class ......................... 17
        3. The absence of opt-outs does not demonstrate fairness or
        Class approval .............................................................................. 18
    E. The Settling Parties have not demonstrated the settlement and its funding
    mechanism are legal ............................................................................. 19
        1. The Government has no discretion to disobey the law .................... 19
        2. The Governor ignores the Legislature's spending prerogative ......... 21
        3. The Governor's response concerning the Illegal Expenditures Act... 21
IV. Conclusion ...................................................................................................... 22

<u>Table of Authorities</u>

*American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756 (1974) .............13

*Anderson v. Yungkau*, 329 U.S. 482, 67 S.Ct. 428 (1947) .................................20

*Augustine v. United States*, 704 F.2d 1074 (9th Cir. 1983) ..................................17

*Buchet v. ITT Consumer Financial Corp.*, 845 F.Supp. 684 (D. Minn. 1994) ...........9

*Carnegie v. Household Intern, Inc.*, 371 F.Supp.2d 954 ( N.D. Ill. 2005) ...........3, 16

*City of Kenosha Wis. v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222 (1973) ...................17

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156,  94 S. Ct 2140 (1974) ..................3, 6

*Farr v. United States*, 990 F.2d 441 (9th Cir. 1993) .........................................4

*Holmes v. Continental Can Co.*, 706 F.2d 1144 (11th Cir. 1983) ........................12

*In re Educational Testing Service Praxis Principles of Learning
 and Teaching: Grades 7-12 Litigation*, 447 F.Supp. 612(E.D. La 2006) ..............15

*In re General Motors Corp. Pick-Up Tuck Fuel Tank Products
Liability Litigation*, 55 F. 3d 768 (3rd Cir. 1995)............................................18

*In re I Mina' Bente Sing'ko Na Liheslaturan Guahan*,
2001 WL 113985 (Guam 2001) ............................................................ 17

*In re Microsoft Corp. Antitrust Litigation*, 185 F.Supp.2d  519 (D.Md. 2002) ........16

*Levell v. Monsanto Research Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000) ................17

*O'Connor v. Boeing North America, Inc.*, 197 F.R.D. 404 (C.D. Cal. 2000) ..........18

*Parker v. Time Warner Entertainment, Co.*, 239 F.R.D. 318 (E.D.N.Y. 2007) ...4, 9, 18

*Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*,  880 F.Supp. 292 (M.D.Pa.,1995) ....13

*7-Eleven Owners for Fair Franchising v. Southland Corp.*,
85 Cal. App. 4th 1135 (2000)...............................................................12

*Sylvester v. Cigna Corp.*, 369 F.Supp.2d 34 (D. Me. 2005) ...............................19

*Synfuel Technologies Inc. v. DHL*, 643 F.3d 646 (7th Cir. 2006) ........................16

Case 1:04-cv-00006     Document 461     Filed 08/23/2007     Page 4 of 27

*United States v. Quirante*, 486 F.3d 1273 (11th Cir. 2007) …………………………20

*26 U.S.C. §6103* …………………………………………………………………..4

*48 U.S.C. §1422* …………………………………………………………………..19

# I. INTRODUCTION

The Settling Parties (hereinafter SPs) have failed to demonstrate this settlement is procedurally or substantively fair or reasonable for all Class Members. While some, but not all data needed to assess the settlement have been provided by the Defendant, these data serve only to demonstrate the ineffectiveness of class notice and the resultant unfairness to the class. The numbers tell the story. Class notice resulted in a subscription rate of only 23% based on the Government's own estimate of Class Members' valid claims. In addition, on average, 27% of claims filed have been denied. Thus, even when claims filed pursuant to the Governor's Executive Order are added to the claims made pursuant to notice, the number of claims that will be paid in whole or in or part represents less than 28% of claims estimated to exist for the Class. This gross under subscription will result in estimated payments to the Class (after offsets) of only two thirds of the funds "made available" for settlement (i.e., approximately $62 million of the $90 million pledged).

The under subscription is a testament to the inadequacies of notice. And the Government's only response is to assert notice was "good enough for Guam." The assertion begs two indisputable points: (1) constitutional protections and rights apply as equally on Guam as they do anywhere else in the United States; and (2) off-island class members are as deserving of due process and the protections afforded by civil procedure as those still on-island.

Faced with the reality of this significant under subscription to the settlement, the Government and class counsel tout the fact that some claims (but not all) will be paid at 100% of their principal value. This payout however, is a testament only to the low participation by Class Members, not the adequacy of the settlement. Further, because the funds are unfairly distributed,

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Page 1

1  approximately $8.0 million in approved claims will never be paid while, even after attorney's

2  fees are accounted for, almost $20 million in promised funds revert back to the Government.

3  These numbers show the settlement is neither fair, reasonable nor adequate. In addition

4  the SPs have still failed to provide the Court the basic information needed to asses the

5  substantive fairness of the settlement (i.e., an estimate of what the class could obtain at trial). SPs

6  have also failed to demonstrate the legality of the proposed settlement structure and funding.  As

7  such final approval of the settlement should be denied.

## II. NEWLY PRODUCED FACTS REGARDING THE SETTLEMENT

The recently provided data on the number of claims filed by the Class show that for tax

years 1995, 1996, 1999 and 2000 only 17% of potential claims were filed and 31% of the claims

filed were denied.  For tax years 2001-2004, 30% of EITC claims that could have been asserted

were filed and, on average, 24% of all claims filed were denied. No data has been provided as to

what percentage of filed claims should reasonably be expected to be denied based on the

Department of Revenue and Taxation's (DRT's) prior experience and there is no indication Class

Counsel has performed any review or audit of these denials.

Data on the monetary value of all EITC claims filed by the Class show that almost $1/3^{rd}$

of the funds made available for settlement will never reach the Class (*i.e.,* approximately $60M

of the $90M settlement fund will actually be paid out to Class Members). *See* Declaration of

John P. Camacho In Support of the Government's Reply (hereinafter Camacho Decl.).

Page 2

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 461    Filed 08/23/2007    Page 7 of 27

## III. THE COURT SHOULD DENY FINAL APPROVAL

**A.    Class Notice Does Not Meet Rule 23 Standards**

The Supreme Court held long ago that the Court has no discretion to relieve parties of their duty to provide the best notice practicable in the form of individual mailings to all names and addresses obtainable through reasonable effort. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175, 94 S. Ct 2140, 2140 (1974).  That Court also noted nothing in the rule suggests the notice requirement be tailored to fit the pocketbooks of particular plaintiffs. *Id.* at 176.  Further, at final approval, SPs bear the burden to prove the notice was the best practicable by showing the extent to which notice could be expected to, or actually did, reach class members. *See Carnegie v. Household Intern, Inc.,* 371 F.Supp.2d 954, 957(N.D. Ill. 2005)(denying even preliminary approval because counsel could not tell the court how many class members would actually get notice or provide assurance the notice given was likely to reach the greatest number of class members).

Here SP's have failed to rebut the expert testimony provided by *Simpao's* recognized notice expert regarding the standards applicable to the method, content and form of Rule 23 notices; and her assessment that the Santos-Torres settlement notice does not, "by any measure," meet those standards. Intrepido Decl. ¶ 13.  Specifically, SPs have failed to demonstrate they were diligent in their efforts to achieve individual notice or that publication notice would adequately reach class members – especially off-island class members. SPs have also failed to demonstrate the effectiveness of notice through any meaningful post-notice data.  For these reasons alone final approval of the proposed settlement must be denied.

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

1.    *SP's failed to employ best methods practicable for individual notice.*

Both the courts and Simpao's notice expert make it clear that best practices for individual notice require class member's addresses to be updated where reasonable. *See Parker v. Time Warner Entertainment, Co.*, 239 F.R.D. 318, 325(E.D.N.Y. 2007)(denying final approval because SPs had not demonstrated updating addresses was unreasonable). *See also Declaration of Thomas J. Fisher, Supplemental Intrepido Reply Decl. at 10* ("It is well accepted in the notice profession that Social Security Number (SSN) address updating is a reasonable and practicable means of updating old outdated addresses.") Updating addresses is especially critical where, as here, mailed notice is the primary means of reaching the class and class members include two highly mobile groups (military personnel and low income individuals). *Id.*

Here, there is no dispute the SPs ignored the mobility characteristics of this Class and staunchly refused to employ readily available address updating techniques despite having the SSNs needed to so. And SPs have offered no valid argument that the effort required  would have been unreasonable.  Specifically, the Government's claim that § 26 USC 6103(a) prevents it from using SSN information to employ this accepted practice is specious.  *See 26 USC 6103(k)(6) and Farr v. United States,* 990 F. 2d 441, 455 (9th Cir. 1993) *internal citations omitted* (noting confidentiality restrictions are not unlimited. "Section 6103 provides for a number of exceptions. Among them is 6103(k)(6) which provides that the IRS may 'disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available ... with respect to the enforcement of any other provision of this title.'"). Further, Ms. Intrepido, like the notice experts present in *Parker*, testified there are numerous reputable SSN look up services that do not implicate privacy concerns. Supplemental Intrepido Decl. at ¶10.  Thus, Ms. Intrepido concludes:

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Page 4

Case 1:04-cv-00006    Document 461    Filed 08/23/2007    Page 9 of 27

> The failure to update addresses here falls below well accepted and easily achievable standards. Considering that no address updating services were undertaken in this case, the number of mailings that did not reach their intended recipient is likely significant.

*Id.*

Notably, the SPs have also failed to provide the Court standard post-notice data which might possibly (although it is unlikely) show the mailing program was effective despite the deviation from accepted practice. *See* Supplemental Intrepido Reply Decl. at ¶11(noting submission of post-notice data is standard practice). Specifically, SPs have not identified how many mailings were made, how many were sent off-island, how many of each were returned as undeliverable and what steps if any were made to find a better address for class members whose notice was returned. SPs failure to provide this basic data is especially egregious given the *Simpao* plaintiffs specifically identified the need for it in their objections. *See* Simpao Objection brief at 23) [1].

SPs claim that is was "very successful" in obtaining a high percent of estimated claims for Tax Year 2004 is both misleading and insufficient to demonstrate adequate notice. Notably the vast majority of 9,351 claims filed for 2004 were not the product of class notice – almost 7000 of those claims were made long before settlement pursuant the existing Executive Order. *See Fisher Decl., Ex. B* (Showing 6,932 2004 claims already made as of March 2006). Further, the Government announced the Executive Order in early 2005 the very time when tax payers were preparing their 2004 returns. Finally, the fact that a better claims rate was obtained for

---

[1] Other types of information that would be useful should be available as well. For example, SPs could identify what percent of claims were made by Class members who received a mailing; or, were made by claimants living off island. They could reveal what percent of Class Members who cashed a check for a 1998 claim did or did not make claims for the additional claim years. Nor has any information been provided on telephone queries made by class members of either the government or class counsel. All of this information could provide some indication of the effectiveness of notice – none of it has been provided.

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagåtña, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Page 5

1  recent years, where addresses are more likely to remain valid, does nothing to alleviate concerns

2  associated with inadequate notice for each later years' claims.

3      2.    *SPs failed to employ best practices for publication notice*

4

5      SPs argue inadequacies in individual notice do not matter because Class members were

6  still receiving notice by publication. *Gov's Bf. at 4*. But SPs have provided this Court none of

7  the standard information normally used to demonstrate a given publication notice was the best

8  practicable. *See Supplemental Intrepido Decl at ¶ 9*("media research and analysis is critical in

9  order to make an informed decision on which media vehicles best reach class member

10  demographics.") Instead SPs claim a challenge to their notice "makes no sense to anyone who

11  has ever lived on Guam" and "demographic analysis" is not needed to know "what daily

12  newspapers the people of Guam read." They then ask the Court to take "judicial notice" that

13  publication notice was "good enough for Guam." Gov's. Bf. at 4-5[2]. Under *Eisen,* however, the

14  Court is not free to do so.  417 U.S. at 175(assuring notice was the best practicable is non-

15  discretionary).  The Court must look at the evidentiary record before it. That record is not only

16  insufficient to demonstrate best practical methods were used it affirmatively shows they were

17  not.

18      First, no aspect of publication notice was designed to reach off island Class members.

19  And, despite the fact that Guam's population has "an extraordinarily high composition of

20  military personnel," *Intrepido Decl. at ¶10*, no notice was published in military publications.

21

22

23      [2] Contrary to the SPs' unsupported assertion, review of demographic information and development of a
    responsive notice plan does not require hundreds of thousands of dollars.  Intrepido Decl. at 5.

24

25

Page 6

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam  96910
Tel.  671.472.1131
Fax  671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
Tel.  206.682.5600
Fax  206.682.2992

Case 1:04-cv-00006    Document 461    Filed 08/23/2007    Page 11 of 27

Second, as Ms. Intrepido notes: "just because there are only two daily papers on the island of Guam, [the Court] cannot infer that they reach the entire island's population.  In fact, . . . the circulation of the *Pacific Daily News* (the largest daily paper on the island) is only 20,116, or 13% of Guam's total population."  *Intrepido Decl. at ¶ 9.*  In addition, what papers "the people of Guam read" is not at issue – what matters is what form of notice is likely to reach these *Class Members.*  Notably, standard industry data show newspaper readership is low among lower income adults which comprise the bulk of this Class. *Id.*  As such, Ms. Intrepido concludes newspaper notices "would be expected to do a very poor job of reaching these Class members." *Id.*  She also notes radio and television "are known to be more effective and efficient in reaching a low income target. *Id.*

Finally, SPs again fail to provide any post-notice data which demonstrate publication notice was effective.  In fact, SPs are completely silent as to how this Court should meet its responsibilities to Class members who have moved off-island; and, those who do not read English. Nor do they provide information on how many claimants did not receive a mailing.

3.  *The Content and Form of Notice Does Not Comport With Best Practicable Standards*

Contrary to the Government's assertion, *see Government Bf. at 5, Simpao* does claim class notice failed to adequately inform Class members of their rights, options and ability to be heard.  She does not argue the notice is simply not in the form she would like.  What she claims and what Ms. Intrepido testifies to is that the notice "violates the best practices prescribed and undertaken by notice professionals today" and "lacks virtually all of the content and design features of the model notices created by the [Federal Judicial Center] (FJC)." Intrepido Supplemental Decl. at 7. Ms. Intrepido also notes the obvious, "a notice that aspires [as the

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

1  Government claims here] to be only as good as normal tax filing instructions does not meet Rule

2  23's standard (i.e.that it be clear, concise and easily understood). *Id.* at ¶8. Notably, all of the

3  Government's cited authority predates FRCP 23's amendment in 2003 requiring "plain, easily

4  understood language."

5      Ms. Intrepido also notes: "The problems with the poorly written notice are exacerbated

6  by the lack of any additional aids for Class members. Simple response mechanisms—a toll free

7  number or website where questions can be simply and easily answered—are routinely used in

8  class notices when one truly wants to inform class members; yet, neither was recommended or

9  used here." Intrepido Decl. ¶ 8. She concludes: "The failure to provide adequate assistance to

10  Class members here does not meet class notice standards." *Id.*

11      Finally, according to Ms. Intrepido, the inclusion of settlement checks with the notice for

12  tax year 1998 defeats the essential purpose of the notice program. *Intrepido Decl. at 12.* The

13  purpose of a settlement notice is to inform Class members of their rights and options, including

14  the right to exclude themselves from the class, object to the settlement, or file a claim. If a check

15  is dangled in front of a class member, especially one of a lower income target segment, prior to a

16  settlement being approved, it will bias that individual from making an informed decision. The

17  class member in a sense is being "bought" to technically opt-in to the class. *Id.* If the reason for

18  providing a check here is solely to get the benefits into the hands of qualified Class members,

19  than checks should have been mailed to qualified Class members *after* final approval, not before.

20  *Id.* Notably Ms. Intrepido does not know of any settlement situation in which Class members

21  were provided checks (or any benefit for that matter) prior to final approval. *Id.*

22

23

24

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

25

Page 8

2        *4. The Court's Preliminary Approval of Class Notice Is Not a Factor at Final Approval*

3        Faced with the reality that the notice used in this case was abysmal the SPs repeatedly

4  attempt to rely on this Court's preliminary approval of notice as a basis for final approval now.

5  But the Court's preliminary approval is of no moment here. In *Parker v. Time Warner*

6  *Entertainment, Co.*, 239 F.R.D. 318, 325(E.D.N.Y. 2007) the District Court had also granted

7  preliminary approval of a class notice consisting of individual mailings and a publication

8  program. Notably, even at the preliminary approval stage those settling parties provided the

9  Court expert testimony on how many members they expected to reach by individual mailings and

10  the expected reach of publication notice. They also indicated the mailing list applicable to

11  certain class members (but not others) would be updated through the National Change of

12  Address data base. *Id.* at 326-27.

13        At final approval, objectors in *Parker*, like *Simpao* here, claimed the parties were

14  obligated to update the old addresses of all class members so individual notice could reach those

15  with dated addresses as well. *Id.* at 335. The objectors provided expert testimony as to the

16  effectiveness and reasonableness of such measures. *Id.* The Court denied final approval noting:

17  > The burden is upon the proponents of the settlement to show that
18  > certification requirements have been complied with. With respect
18  > to notice, that burden has not been met, and therefore the Court
19  > ***must*** deny final approval of a settlement under 23(b)(3).

*Id.* at 336 (emphasis added). *See also Buchet v. ITT Consumer Financial Corp.*, 845 F.Supp.

684, 688 (D. Minn. 1994)(noting preliminary approval of the settlement "in no way limits this

Court's ability to deny final approval of the settlement at the final hearing.")

22        In addition, in its order granting preliminary approval of the settlement, the Court itself

23  noted it "conditionally approve[d] the class notice," and specifically noted that concerns raised

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Page 9
Case 1:04-cv-00006     Document 461     Filed 08/23/2007     Page 14 of 27

by the *Simpao* Plaintiff (which included concerns regarding the adequacy of notice) "are better addressed at a fairness hearing." *Id.* at n5.

In sum, SPs have not met their burden to show they used the best means practicable to ensure Class members received adequate notice before forfeiting substantial rights.[3] Nor have the SPs otherwise demonstrated notice was effective. As it stands now, the only data the SPs have put before the Court shows a subscription rate of 23% in response to notice. Thus, while final approval must be denied solely because SPs failed to meet their burden, it is worth noting the only inference available supports a finding that notice was, in fact, not effective. In any event, final approval must be denied here unless and until SPs make the best notice practicable and demonstrate that fact to this Court.

**B. The Claims Procedure Is Overly Burdensome**

At its core, Simpao's objection to the claims procedure is that, in light of the lengthy and complex notice, neither the Government nor Class Counsel provided Class Members a process that made it likely they would or could file a proper claim. As Ms Intrepido notes: the responsive aids typically provided Class members are noticeably absent here despite the Government's recognition that tax claims can be complex. *Intrepido Decl. at ¶8.*

The Government argues the claims filing process was adequate because it tracks and poses the same burdens as "normal tax filing procedures." Gov's Bf. at 7. That is not the standard nor is it true. Typically, tax payers file their tax claims contemporaneously with the tax

[3] The value of the claims filed average almost $2000 per claim – a recovery the average low income family is unlikely to forfeit lightly if they know about it.

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

1    year for which they are made not several years after the fact when much of their qualifying

2    information has long since been discarded.

3        Notably in 1998, a year in which EITC claims were filed contemporaneously, over

4    13,000 claims were filed and apparently only 500-1000 or so (4-9%) have been denied. Whereas

5    even for a tax year as recent as 2003 only 5,755 claims were filed and 27% of those were denied.

6    While lower claims rates would be expected for later years the drop off is dramatic. Only 2,500

7    claims were filed for 1995 and over 35% of those were denied. SPs have not explained the

8    increasing denial rates and Class Counsel has not performed any audits or checks to determine if

9    they reflect a systematic problem with the claims filing procedure.

10       The SPs' attempt to dismiss the financial burden placed on Class Members who must pay

11   DRT to obtain a copy of their past tax returns misses the point. While claimants are not required

12   to attach copies of old returns to their EITC claim form, they are quite likely to need their old

13   returns to determine if they qualify for the EITC and thus can properly (and safely) submit

14   claims. Notably, the Government does not dispute that under federal law ineligible Class

15   Members who file improper claims may forfeit their right to future EITCs. Gov's Bf. at 8. In

16   fact class notice reiterates this danger. And SPs do not dispute that it does, in fact, cost Class

17   members $35 a piece to obtain copies of their old tax returns.[4]

18       The SP's attempt to rely on this Court's prior approval of the claims procedure is again

19   misguided. As noted above, preliminary approval does not dictate final approval. Further, the

20   Government's insinuation that the adequacy of this claims filing procedure was litigated and

21   approved in *Simpao* is incorrect. Gov's Bf. at 7. When *Simpao*, won summary judgment that

22

---

23       [4] Why Class Counsel did not insist this fee be waived for claimants is a mystery.

24

.        SHIMIZU CANTO & FISHER          TOUSLEY BRAIN STEPHENS PLLC
25       East Marine Corps Drive          1700 Seventh Avenue, Suite 2200
         Hagatna, Guam 96910              Seattle, Washington 98101-1332
         Tel. 671.472.1131               Tel. 206.682.5600
         Fax 671.472.2886                Fax 206.682.2992

Page 11

1 the EIC applies to Guam, she also asked the Court to order the Government to implement an

2 EITC claims filing procedure. Judge Martinez observed the Government had recently

3 implemented a claims filing procedure through Executive Order 2005-001. He also noted federal

4 injunctions that dictate particular ways a state must conduct its business are disfavored and that

5 Plaintiffs would be proceeding with their action. *See Order at* 11. Thus he held the Executive

6 Order was adequate to prevent irreparable harm and additional injunctive relief was unnecessary

7 at that time. *Id.* He also directed *Simpao* to take action to certify the class. *Id.* at 13.

8        The context here is entirely different than that faced by Judge Martinez. Here, an order

9 directing the parties how to provide an adequate claims procedure is not only not disfavored, it is

10 required.

11 **C. The Settlement Is Substantively Unfair**

12

13        1. *The Settling Parties have not Rationalized Disparate Treatment Between Class Years*

14

15        The Government misapplies its cited cases regarding disparate treatment of class

16 members. Those cases involve disparity between only the named plaintiffs and the class or do

17 not involve situations, as here, where one group's recovery is diminished to benefit another.

18 Disparity in class treatment is a signal of unfairness. *See 7-Eleven Owners for Fair Franchising*

19 *v. Southland Corp.*, 85 Cal. App. 4th 1135, 1162 (2000). This perception of unfairness may be

20 rebutted by a showing that the treatment is based on legitimate considerations. *Id.* But, "such

21 disparities must be regarded as *prima facie* evidence that the settlement is unfair to the class, and

22 a heavy burden falls on those who seek approval of such a settlement" *Holmes v. Continental*

23 *Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983). SP's cannot show legitimate considerations here.

24

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

25

Page 12

"[T]he gain of one segment of a class should not be premised on the sacrifices of the other segment." *Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*, 880 F.Supp. 292, 300 (M.D.Pa.,1995).

a.    *Tax Year 2000 is treated unfairly*

SPs claim their disparate treatment of tax year 2000 is permissible because a possible time bar may apply, but whether Tax Year 2000 may be time barred under either 26 U.S.C. § 6511 or under 26 U.S.C. § 6532 is debatable. *Simpao* (and presumably all Plaintiffs) dispute either section bars these claims or any other claim.   The Court has already held § 6511 does not bar any claims.  The Court has never ruled on the § 6532 issue.[5]

But even if § 6511 could bar these claims its application to Tax Year 2000 would be barred by the tolling provision of *American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974) as the statutory periods did not run until after *Santos* was filed.  The Government's claim that *American Pipe's* tolling provision does not apply in this context is simply wrong. But more importantly, if *American Pipe* cannot toll these statutes, then §6532 threatens all tax years as claims for all years would be barred by its application.   Simply put the Government cannot have it both ways - if *American Pipe* does not protect tax year 2000 from §6511 then it does not protect any tax year from §6532 and all years should be treated the same.  And if tax years 2001 through 2004 are protected from operation of §6532 by *American Pipe* then tax year 2000 is protected from operation of §6511 as well, and again all tax years should be treated the same.

---

[5] To find jurisdiction the Court also found the Government can and has waived § 6532 for purposes of settlement. As fully briefed in the context of preliminary approval the *Simpao* Plaintiffs do not believe § 6532 can be waived nor that it could pose a time bar to any of these claims.

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

1          *b. Tax Years 1995, 1996, and 1999 are treated unfairly*

2          The Government's justification for disparate treatment of these years is also the potential

3      time bars posed by § 6511 and § 6532. Here the Government misses the point. What *Simpao*

4      objects to regarding claims for these tax years is the fact that they are too heavily discounted

5      given *Simpao*'s ruling on § 6511, the limited risk represented by § 6532, and given they are

6      overly discounted a second time by the waiver of interest. In fact *Santos* counsel claims the

7      waiver of interest was agreed to for all tax years because of the time bar risk associated only with

8      these tax years. *See Phillips Reply to Opposition to Final Certification at 4* ("the decision to

9      forego a claim for interest was weighed and leveraged in the settlement negotiations, particularly

10     against the backdrop of a potential statue of limitations bar to recovery for the earlier class

11     years.") This is improper and unfair to tax years 2001 – 2004.  There is no justification for

12     discounting these claims twice. As shown in *Simpao*'s objection brief, the combined effect is

13     that these claims are discounted to only 12-16% of their value while the remaining years (except

14     1998) are only discounted to 83-97% of their potential value. *Simpao Bf. at 10*. Further, the

15     conflicts created by disparate treatment threaten the propriety of class certification.

16          b.        *The payment caps for each year or group of years are arbitrary*
17                    *and not rationally based.*

18          Under the current claims experience, $2.5 million of the claims filed for the 1995, 1996,

19     1999 and 2000 tax year group and over $ 5.5 million in claims for tax year 1998 will not be paid

20     because the SPs established an arbitrary $15 million cap for each tax year or tax year group as

21     opposed to a single $90 million dollar cap for all claims collectively. These monies will not be

22     paid out even though $20-$30 million of the settlement fund will revert back to the Government.

23

24

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

1    There is no legitimate basis to apply separate but identical caps to each tax year

2    regardless of expected or actual claims experience.   As the Government acknowledges, its

3    estimate of the number of potential claims that could be filed varies for each tax year, *see*

4    *Camacho Decl. ¶7,* and the number of claims actually filed were expected to and do vary by tax

5    year. *Id.* Ex. A. As such, there is no legitimate basis to apply identical caps (or any individual

6    caps) for each year. Further, there is no benefit to the Class from capping each year separately.

7    The only party to benefit is the defendant Government where, as here, claims for certain years

8    exceed the individual cap allowing the Government to avoid full payment even though total

9    claims do not exceed the overall $90 million cap.  In sum, the settlement is unfair because tax

10   years 2001-2004 are recovering 100% of the value of their claims, while the oversubscribed

11   years (1998 and the 1995, 1996, 1999 and 2000 tax group) are recovering less than full value

12   (73% and 86% respectively) for no legitimate reason.

13       2. *The Early Payment Scheme Was Coercive*

14

15       The Government maintains the inclusion of settlement checks with tax year 1998 notices

16   was not coercive.  It believes that offering poor people money up front will not bear upon their

17   ultimate decision to stay in the class.[6]  That proposition, however, does not bear scrutiny.

18   Neither does the Government's position enjoy the support of the Federal courts. *See In re*

19   *Educational Testing Service Praxis Principles of Learning and Teaching: Grades 7-12*

20   *Litigation,* 447 F.Supp. 612, 627 (E.D. La 2006)("As Todd Hilsee pointed out in his testimony,

21   because plaintiffs had the choice of either individualized damages or an expedited payment, to

22   send the expedited payments with the notice has the potential of encouraging plaintiffs to forego

23   ----
     [6] Considering the difficulty of the notice, it is more likely that class members were not aware of the dangers in
     cashing the checks.

24

25

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Page 15

individualized recovery for far less than value, merely by cashing the check. The obvious undesirability of this suggestion gives the unmistakable appearance that the objection was captious.")

**D.      The SPs Have Not Demonstrated Substantive Fairness**

   1. *SPs have not provided the Court information on the value of the claims*

   The law could not be clearer - the Court cannot find a settlement is fair and adequate if the record does not reflect the undiscounted value of the Class' claims. See *In re Microsoft Corp. Antitrust Litigation*, 185 F.Supp.2d 519 , 526-527 (D.Md. 2002). *See also* Objections at 17-19(citing numerous cases). In her objections *Simpao* specifically noted this information must be provided and the Court directed SPs to respond.   Yet the SPs continue to fail to provide it.

   The Court simply does not have the discretion to approve the settlement in the absence of such crucial information. *See Synfuel Technologies Inc. v. DHL*, 643 F.3d 646 (7th Cir. 2006)(finding an abuse of discretion where court failed to adequately evaluate fairness of settlement) SPs have provided no authority to the contrary. *See  Government's  Brief at 8*(citing *Synfuels* only for the proposition that the estimate of claim value need not be exact).   Thus, final approval of this settlement must be denied. *Carnegie v. Household Intern Inc.*, 371 F.Supp. 2d 954 (N.D. Ill. 2005)(denying preliminary approval where counsel could not say how much the settlement was worth to any individual).

   2.    *The Government Overstates Litigation Risks*

      a.    *The Governor's agreement to obey the law is not a benefit to the class*

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Page 16

1  |  The Government argues its decision to forego litigation on the applicability of the EITC

2  |  to Guam is a significant value to the class. *See Gov Bf. at, 20-21*. It claims the applicability of

3  |  the EITC to Guam is still an open question but both Guam's Supreme Court and this Court have

4  |  held otherwise. *See In re I Mina' Bente Sing'ko Na Liheslaturan Guahan*, 2001 WL 113985

5  |  (Guam 2001), *see also Simpao* Summary Judgment. Thus, the Government's "agreement" not to

6  |  litigate the issue is of no substantial benefit to the class. *See Levell v. Monsanto Research Corp.,*

7  |  191 F.R.D. 543, 554 (S.D. Ohio 2000) (Ordinarily, a defendant's promise to do that which the

8  |  law already requires is not a valuable benefit.)

9  |

10 |          b.    *The Governor's decision to forego litigation on jurisdiction offers*

11 |              *no  benefit to the class.*

12 |  This Court's jurisdiction cannot be extended by stipulation and a court always examines

13 |  its own jurisdiction. *See City of Kenosha Wis. v. Bruno*, 412 U.S. 507, 511, 93 S.Ct. 2222, 2225-

14 |  26 (1973)("Neither party to the appeal has questioned the jurisdiction of the District Court, but it

15 |  is the duty of this court to see to it that the jurisdiction of the (district court), which is defined

16 |  and limited by statute, is not exceeded.") *See also Augustine v. United States*, 704 F.2d 1074,

17 |  1077(9th Cir. 1983)("The defense of lack of subject matter jurisdiction cannot be waived, and the

18 |  court is under a continuing duty to dismiss an action whenever it appears that the court lacks

19 |  jurisdiction.")  The Governor's decision not to press the issue is of no consequence; the Court

20 |  will make the inquiry whether the lawyers ask or not.

21 |          c.    *The "Government's agreement to proceed as a class action" is of*

22 |              *little value to the class.*

23 |

24 |

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Page 17

The Government claims its decision to not oppose class certification is of value to the class since " . . . . under most circumstances courts confronted with the question have held that a tax refund action cannot be handled as a class action because of individualized issues." Gov's Bf. at 25. But, like jurisdiction, the appropriateness of certification is always in the Court's mind and " . . . . a district court must conduct a 'rigorous analysis' into whether the prerequisites of Rule 23 are met." *O'Connor v. Boeing North America, Inc., 197 F.R.D. 404, 409 (C.D. Cal. 2000) citing Valentino v. Carter-Wallace, Inc., 97 F.3d 1227 (9th Cir. 1996).* Like the question of jurisdiction, the Court satisfies itself. Further, except for trial manageability concerns, Rule 23 standards apply equally in the settlement context as well. *Parker*, 239 F.R.D. at 328. Thus the Governor's concession offers little.

3.   *The absence of opt-outs does not demonstrate fairness or Class approval*

SPs claim the low number of Class members who opted out of the settlement should support final approval. The law holds otherwise. It is well settled that acquiescence to a bad settlement does not improve its character. *See In re General Motors Corp. Pick-Up Tuck Fuel Tank Products Liability Litigation*, 55 F. 3d 768, 812 (3rd Cir. 1995)( "In a class action case involving securities litigation, this court has recognized the possibility that the assumption that silence constitutes tacit consent understates potential objectors since many shareholders have small holdings or diversified portfolios, ... and thus have an insufficient incentive to contest an unpalatable settlement agreement because the cost of contesting exceeds the objector's pro rata benefit.")

Significantly, while there are few opt outs, there are also relatively few claims. Under these conditions Courts tend to discount the reaction of the Class as an approval factor. *See*

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Page 18

*Sylvester v. Cigna Corp.*, 369 F.Supp.2d 34, 49 (D.Me. 2005)( " . . . in considering the "reaction

of the class," the Court also considers the relatively small percentage of class members (19.7

percent) who have expressed implicit support for the proposed settlement by returning claim

forms as well as the vast majority that have remained silent and essentially expressed a reaction

of utter indifference to the settlement. Given that the large majority of Class Members fall into

this latter category, the Court finds the reaction of the Class is a factor that weighs neither in

favor of approving or rejecting the proposed settlement." )

## E. The SPs have Not Demonstrated the Settlement and Its Funding Mechanism Are Legal

Class counsel states that the "funding mechanism provided in the settlement agreement is

the most efficient method by which the Class can be ensured compensation." *Reply at 9*. Why

he is satisfied with this "mechanism" is not clear. The 15% set aside has thus far produced only

$3,395, 623.15 for the class and the year is half gone. *See Declaration of Lourdes Perez filed 26

July 2007 at paragraph 3*. At this rate, tax year 2004 will not see payment until 2018[7] and they

won't have gained one penny in interest for the wait.

*1. The Government has no discretion to disobey the law*

The Governor "shall be responsible for the faithful execution of the laws of Guam and

the laws of the United States applicable in Guam." *48 U.S.C. §1422*. His duty is to comply with

the provisions of 48 USC 1421i; he cannot avoid it because it is inconvenient. This section

provides "the Governor shall order the payment of such judgments out of any unencumbered

funds in the treasury of Guam." *Id at (h)(2)*. Contrary to the Governor's assertion, objectors do

---

[7] $75 million divided by $6.79 million per annum.

Page 19

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 461    Filed 08/23/2007    Page 24 of 27

1   not argue that this section provides "a means of paying" the judgment, *Reply at 27*, objectors

2   point out that this section provides the means of paying the judgment.

3          Section 1421i(h)(2) states "[w]hen any judgment against the government of Guam under

4   this paragraph has become final, the Governor shall order the payment of such judgments out of

5   any unencumbered funds in the treasury of Guam." There is not much weasel room in this

6   phrase. "The word 'shall' is ordinarily 'The language of command'. And when the same Rule

7   uses both 'may' and 'shall', the normal inference is that each is used in its usual sense-the one

8   act being permissive, the other mandatory."[8] *Anderson v. Yungkau*, 329 U.S. 482, 485, 67 S.Ct.

9   428, 430 (1947). "The word "shall" does not convey discretion. It is not a leeway word. The

10  Supreme Court has said that the term "shall" "normally creates an obligation impervious to

11  judicial discretion." That is, where Congress uses the word "shall" to describe a party's

12  obligation, Congress intends to command rather than suggest. The one commanded must follow

13  the command. *see also Black's Law Dictionary* 1407 (8th ed.2004) ("shall" defined as "Has a

14  duty to; more broadly, is required to"). We follow the plain language of statutes." *United States*

15  *v. Quirante*, 486 F.3d 1273, 1275 (11th Cir. 2007), *internal citations, quotations omitted.*

16  Clearly, the Governor shall pay the judgment from unencumbered funds, and not the Reserve or

17  Trust.

18

19

20  ────────────────

[8] This section reads "Suits for the recovery of any Guam Territorial Income Tax alleged to have been erroneously or
21  illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum
    alleged to have been excessive or in any manner wrongfully collected, under the income tax laws in force in Guam,
22  pursuant to subsection (a) of this section, **may**, regardless of the amount of the claim, be maintained against the
    government of Guam subject to the same statutory requirements as are applicable to suits for the recovery of such
    amounts maintained against the United States in the United States district courts with respect to he United States
23  Income Tax. When any judgment against the government of Guam under this paragraph has become final, the
    Governor **shall** order the payment of such judgments out of any unencumbered funds in the treasury of Guam."

24  ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

         SHIMIZU CANTO & FISHER              TOUSLEY BRAIN STEPHENS PLLC
         East Marine Corps Drive             1700 Seventh Avenue, Suite 2200
25       Hagatna, Guam 96910                 Seattle, Washington 98101-1332
         Tel: 671.472.1131                   Tel. 206.682.5600
         Fax 671.472.2886                    Fax 206.682.2992

Page 20

1    Simpao objectors do not say the Governor cannot settle this matter. He can, but he must

2    do so in accordance with law, which means he must adhere to the Organic Act and the Illegal

3    Expenditures Act.

4        2. *The Governor ignores the Legislature's spending prerogative.*

5        The Governor states that the amount reserved in the Trust and Reserve can be increased

6    in order to meet the demands of his settlement. *Reply at 28.* This is based on a reading of 11

7    GCA §50103 in which he discovers two independent sections. His first section provides for

8    amounts to be reserved based upon a "statistical average of income tax refunds, earned income

9    tax credits, and child tax credits issued in the previous three (3) years" and the second allows that

10   the Reserve "shall further provide for reserving income tax receipts, on a percentage basis, in

11   order to accumulate sufficient cash reserves to pay projected income tax refunds, earned income

12   tax credits, and child tax credits in a timely manner." This reading does not have any textual

13   support. The "first section" is meaningless unless the average is somehow employed, and that is

14   the purpose of the "second section". After all, once you've discovered your statistical average,

15   something must be done with it.

16       The Legislature stated that the Department of Revenue and Taxation was to look to the

17   past to see how much money should be set aside for current year payment. The Governor argues

18   that the section allows for a reserve of funds enhanced beyond the statistical average of the prior

19   three years to meet the debt he contracted for. The Legislature determines how government

20   funds are spent; the Governor's reading allows him to both determine how much money is to be

21   collected and how it is to be spent. This is not an executive function.

22       3. *The Governor's response concerning the Illegal Expenditures Act.*

23

24   ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

     SHIMIZU CANTO & FISHER          TOUSLEY BRAIN STEPHENS PLLC
     East Marine Corps Drive         1700 Seventh Avenue, Suite 2200
25   Hagatna, Guam 96910              Seattle, Washington 98101-1332
     Tel. 671.472.1131               Tel. 206.682.5600
     Fax 671.472.2886                Fax 206.682.2992

Page 21

According to the Governor, the "present settlement only guarantees 15% of whatever is placed in [the Reserve and Trust funds] –whether that is 15% of $10 million or $100 million. No promise is made that any particular amount will be in the funds at any time or paid at any time . . . ." *Reply at 29-30*. How this is consistent with the Governor's assurance that the settlement is not illusory because "for the Government to not pay anything at all over time it either would have to breach the settlement by paying tax refunds through other means than the Revenue or Trust Funds, or to stop paying all tax returns indefinitely – which would pretty much assure a citizen revolt at the next election" *Reply at 19*, is anybody's guess.

The Governor's argument ignores the prohibition preventing him from contracting debt. Guam has never admitted that it owes the EITC. It has entered a settlement in order to make the class "go away." This is new debt, not a result of a judicial order to pay the EITC, and not funded by the Legislature. It is therefore illegal.

## IV. CONCLUSION

The people who should benefit as a result of this litigation are not abstractions. The one immutable truth in this case is that the Government wrongly withheld money which belongs to them and now fights tooth and nail (with a great measure of success) to hold on to it. Class counsel should vigorously resist this fleecing, not be complicit in it.

Dated 23 August 2007

By: _____

James L. Canto II
Attorney for Objectors

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Page 22