1    Counsel appearing on following page

2                                              **FILED**
                                         DISTRICT COURT OF GUAM
3                DISTRICT COURT OF GUAM        AUG 2 3 2007

4                 TERRITORY OF GUAM         **JEANNE G. QUINATA**
                                              **Clerk of Court**
5    JULIE BABAUTA SANTOS, *et al.,*         Civil Case No. 04-00006

6            Petitioners,

7        v.

     FELIX P. CAMACHO, *et al.,*
8            Respondents.

9    _____

10   CHARMAINE R. TORRES, *et al.,*          Civil Case No. 04-00038

11           Plaintiffs,

12       v.

13   GOVERNMENT OF GUAM, *et al.,*

             Defendants.
14
     _____
15
     MARY GRACE SIMPAO, *et al,*            Civil Case No. 04-00049
16
             Plaintiffs,
17                                          **DECLARATION OF THOMAS J.
         v.                                 FISHER IN SUPPORT OF A
18                                          RESPONSE TO A REPLY TO
     GOVERNMENT OF GUAM,                     OBJECTIONS OF SIMPAO AND
19                                          CRUZ TO GOVERNMENT AND
             Defendant,                      COUNSEL FOR PETITIONER
         v.                                  SANTOS' JOINT MOTION FOR
20                                          FINAL APPROVAL OF A CLASS
     FELIX P. CAMACHO, Governor of Guam     ACTION SETTLEMENT
21                                          AGREEMENT**
             Intervenor-Defendant.

22

23

24
     ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
25                    **SHIMIZU CANTO & FISHER**          **TOUSLEY BRAIN STEPHENS PLLC**
                      East Marine Corps Drive             1700 Seventh Avenue, Suite 2200
     **ORIGINAL**     Hagatna, Guam 96910                 Seattle, Washington 98101-1332
                      Tel. 671.472.1131                   Tel. 206.682.5600
     Page 1          Fax 671.472.2886                     Fax 206.682.2992

1    SHIMIZU CANTO & FISHER
     Suite 101 Dela Corte Bldg.
2    167 East Marine Corps Drive
     Hagåtña, Guam 96910
3    671.472.1131

4
     TOUSLEY BRAIN STEPHENS PLLC
5    Kim D. Stephens, P.S., WSBA #11984
     Nancy A. Pacharzina, WSBA #25946
6    1700 Seventh Avenue, Suite 2200
     Seattle, Washington 98101
7    206.682.5600

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 2

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 463    Filed 08/23/2007    Page 2 of 26

# DECLARATION OF THOMAS J. FISHER

I, Thomas J. Fisher, Esq., hereby declare and state the following under penalty of perjury:

1. I am an attorney for the Plaintiffs in the matter of Plaintiffs *Mary Grace Simpao, et al., vs. Defendant Government of Guam and Intervenor-Defendant Felix P. Camacho, District Court of Guam Civil Case No. CIV04-00049;*

2. The matters stated herein are based upon my personal knowledge or belief and as to those matters I swear that the extent of my knowledge is truthfully stated and as to those matters based on my belief, I believe those matters to be true. I further believe that, if I was called to give testimony upon the matters stated herein, I am competent to testify to those matters.

3. I declare and attest that "Exhibit A" attached to this Declaration is a true and correct copy of a supplemental declaration of Gina M. Intrepido.

4. I declare that "Exhibit B" attached hereto is a true and correct copy of a breakdown by year group of EITC Claims made pursuant to the Governor's Executive Order.

. FURTHER DELCARANT SAYETH NAUGHT this Thursday, 23 August 2007 at Hagåtña, Guam, swearing and affirming the foregoing is true.

By: _____
Thomas J. Fisher

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Page 3

# EXHIBIT A

DISTRICT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, *et al.*, | Civil Case No. 04-00006 |
| Petitioners, | |
| -v- | |
| FELIX P. CAMACHO, *et al.*, | |
| Respondents. | |

| | |
|---|---|
| CHARMAINE R. TORRES, *et al.*, | |
| Plaintiffs, | Civil Case No. 04-00038 |
| -v- | |
| GOVERNMENT OF GUAM, *et al.*, | |
| Defendants. | |

| | |
|---|---|
| MARY GRACE SIMPAO, *et al.*, | |
| Plaintiffs, | |
| -v- | Civil Case No. 04-00049 |
| GOVERNMENT OF GUAM, | |
| Defendant. | |
| -v- | |
| FELIX P. CAMACHO, Governor of Guam, | |
| Intervenor-Defendant. | |

## SUPPLEMENTAL DECLARATION OF GINA M. INTREPIDO ON ADEQUACY OF SETTLEMENT NOTICE

SUPPLEMENTAL DECLARATION OF GINA M. INTREPIDO ON ADEQUACY OF SETTLEMENT NOTICE

1.     My name is Gina M. Intrepido.  I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.     I am the Vice President and Media Director of Hilsoft Notifications.  My firm and I are regularly called upon by courts to write, design, disseminate and testify to the adequacy of notices that best communicate legal information to class members.[1]

3.     I submitted a Declaration on the inadequacies of the notice plan associated with the Santos-Torres settlement on June 21, 2007.

4.     I have since reviewed The Governor's and Government of Guam's Response to *Simpao* Plaintiffs' Objections that was filed July 26, 2007 and I have several observations about the comments made therein.

5.     **The Government's suggestion that an effective notice effort would be astronomically expensive is wrong.**  It is feasible to develop an effective notice program that utilizes the proper address updating techniques along with demographic and media research and analysis at a reasonable cost.

---

[1] We worked with the Advisory Committee on Civil Rules of the Judicial Conference of the United States during the adoption process for the 'new' Federal Rule of Civil Procedure 23 notice requirements.  The Committee notes accompanying Rule 23, which went into effect in December of 2003, make clear that effective communication with Class members is critical:  "The direction that class-certification notice be couched in plain, easily understood language is a reminder of the need to work unremittingly at the difficult task of communicating with Class members. It is difficult to provide information about most class actions that is both accurate and easily understood by Class members who are not themselves lawyers."

6. **The Government's suggestion that off-island notice professionals are not qualified to opine on how to effectively communicate and disseminate information to these Class members is wrong.** As outlined in our c.v., Hilsoft Notifications has been involved in the design and implementation of notice programs targeting all types of class members in various regions of the world—209 countries in all—from crawfish farmers in Louisiana's Bayou region to Aboriginals in Canada's Nunavut region. Just because Guam is an island does not mean it is not held to the same notice standards as the rest of the world. A qualified notice expert would apply the same principals and standards to reach class members on Guam as it would to reach class members elsewhere.

7. **The form and content of the notice used here was not the best notice practicable.** Simply holding the Santos-Torres settlement notice next to the FJC's model notices provided as exhibits to my earlier Declaration proves this point even with only a brief inspection.

      a) The settlement notice lacks virtually all of the content and design features of the model notices created by the FJC to insure that proper notice is in fact provided to Class members. These are simple and easy to employ and do not cost anything to implement. Therefore, the settlement notice cannot possibly represent the "best notice practicable" as is required.

      b) The settlement notice lacks a true headline (a case caption is not a headline that will attract the attention of its readers), utilizes fine print and wall to wall words, is difficult to read and navigate, and incorporates confusing legalistic terms and phrases; all of which are features that the FJC model notices purposely avoid.

      c) As can be seen in the attached articles that experts at my firm and others have published, the Santos-Torres notice violated the best practices prescribed and undertaken by notice professionals today. See Attached **Exhibit 1**.

8.     **The form and content of the notice was inadequate to inform Class members of their rights, options, and ability to be heard.** The notice was not written and designed to attract the attention of Class members nor did it simply and clearly inform them of their rights and options.

a)     A notice that aspires to be as good as normal tax filing instructions does not meet Rule 23's standards for class notice. Tax forms are notoriously difficult to read and understand and they do not comport with the standard of clear, concise and easily understood language. The model notices at www.fjc.gov are obviously unlike tax forms.

b)     Legalistic words and phrases, uncommon to a lay person, let alone a lower income, less educated individual, is not an effective or reasonable means of communicating. It is almost certain that little to no comprehension will result. Compounding this concern, the layout and design of the settlement notice makes readership and comprehension even less likely. As noted above, a case caption is in no way a headline designed to attract the attention of its readers. It certainly would not be expected to gain the attention of readers who had no idea that such a lawsuit affected them in any way, or prompt any interest in reading the rest of the notice.

c)     The problems with the poorly written notice are exacerbated by the lack of any additional aids for Class members. Simple response mechanisms—a toll free number or website where questions can be simply and easily answered—are routinely used in class notices when one truly wants to inform class members; yet, neither was recommended or used here. There is no downside to a toll free number or website. They simply make public information freely available and easily accessible, allowing Class members the assistance they need to make an informed decision. The failure to provide adequate assistance to Class members here does not meet class notice standards.

SUPPLEMENTAL DECLARATION OF GINA M. INTREPIDO ON ADEQUACY OF
SETTLEMENT NOTICE
Page 4

9. **The method of publication notice was not the best practicable.**

a)     The Government's suggestion that readily available media and demographic research data can be ignored simply because Class members reside on an island, is simply ridiculous. If one truly desires to reach and inform class members—as due process law requires the notice expert to do[2]—media research and analysis is critical in order to make an informed decision on which media vehicles best reach class member demographics.

b)     In particular, just because there are only two daily papers on the island of Guam, one cannot infer that they reach the entire island's population. In fact, based on 2000 Census data, Guam's total estimated population for 2007 is 173,456, while the circulation of *Pacific Daily News* (the largest daily paper on the island) is only 20,116, or only 13% of Guam's total population. Compounding this problem further, industry standard communications data (Mediamark Research Inc. 2007 Doublebase Study) shows that newspaper readership is very low among the lower income adults that comprise this Class. Adults with a household income (HHI) of less than $40,000 are 15% less likely to be newspaper readers and they are 29% more likely to be light newspaper readers as compared to the general adult population. Therefore, these vehicles would be expected to do very a poor job of reaching these Class members. Additional media, such as radio or television (not to mention military publications), should have been investigated and considered. These media are known to be more effective and efficient in reaching a lower income target.

---

[2] "But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it..." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).

SUPPLEMENTAL DECLARATION OF GINA M. INTREPIDO ON ADEQUACY OF
SETTLEMENT NOTICE
Page 5

10.     **The method of individual notice was not the best practicable.** In a situation, as here, in which mailed notice is the primary, if not the only, method of reaching Class members, the adequacy of the mailed notice effort is extremely critical.

a)      Address updating techniques and evaluation of mobility statistics are critical to ensure mailed notice reaches Class members. The fact that both of these factors were ignored here demonstrates the mailed notice program was not the best practicable. As outlined in my prior Declaration: 1) Military personnel move with great frequency and Guam has an extraordinarily high composition of military personnel; 2) Lower income people move more often and this Class is centered upon lower income individuals. These issues of mobility cannot be ignored and most likely would explain in part why 2004 (the last year of the settlement period) had the greatest claims participation, with participation dropping off every year prior.

b)      It is well accepted in the notice profession that Social Security Number (SSN) address updating is a reasonable and practicable means of updating old and outdated addresses. SSN address updating has in fact been used in numerous class action cases without privacy issues being a concern. This is because third party address updating sources (*e.g.*, LexisNexis) often use SSNs in their address updating process without violating any of the privacy issues related to SSN matters, and commercially marketed products such as its ALLFND service prove it. In my personal experience, our firm has used SSN lookups in many cases. The failure to update addresses here falls below well accepted and easily achievable standards. Considering that no address updating services were undertaken in this case, the number of mailings that did not reach their intended recipient is likely significant.

SUPPLEMENTAL DECLARATION OF GINA M. INTREPIDO ON ADEQUACY OF
SETTLEMENT NOTICE
Page 6

11. **The Government has not provided the Court any post-notice implementation analysis on which the Court can base final approval.**

      a)     Prior to a final fairness hearing it is standard practice to provide the Court basic information on the number of mailings that were sent successfully, the number returned as undeliverable, how undeliverable addresses were updated and resent, and on what date mailings were sent. Here the Court should also be informed on how many mailings were sent outside of Guam.

      b)     Typically, the Court should be provided with a report from a qualified notice expert supporting the adequacy of the notice effort as implemented. Absent this standard information and analysis, the Court has no basis to find the individual mailing program the best practicable.

12. **Mailing settlement checks with class notice defeats the essential purpose of the notice program.** The purpose of a settlement notice is to inform class members of their rights and options, including the right to exclude themselves from the class, object to the settlement, or file a claim. If a check is dangled in front of a class member, especially one of a lower income target segment, prior to a settlement being approved, it will bias that individual from making an informed decision. The class member in a sense is being "bought" to technically opt-in to the class. If the reason for providing a check here is solely to get the benefits into the hands of qualified Class members, than checks should have been mailed to qualified Class members *after* final approval, not before. In my experience, I, as well as all associates at my firm, do not know of any settlement situation in which class members were provided checks (or any benefit for that matter) prior to final approval.

13.    In sum, by any measure, the notice program undertaken here does not represent the best notice practicable and was not sufficient to satisfy due process requirements for this Class.

I declare under penalty of perjury under the laws of Pennsylvania and the United States of American that the foregoing is true and correct to the best of my knowledge.

Executed at Souderton, Pennsylvania this 21 day of AUGUST, 200 7.

Gina M. Intrepido

© 2007 Hilsoft Notifications

SUPPLEMENTAL DECLARATION OF GINA M. INTREPIDO ON ADEQUACY OF SETTLEMENT NOTICE

# Exhibit 1



# CLASS ACTION LITIGATION

## REPORT

Reproduced with permission from Class Action Litiga-
tion Report, Vol. 4, No. 5, 03/14/2003, pp. 182-186.
Copyright © 2005 by The Bureau of National Affairs,
Inc. (800-372-1033) http://www.bna.com

**PLAIN LANGUAGE NOTICES**

The Federal Judicial Center has developed sample class action notices that apply the plain language requirements set out in the proposed revision to Federal Rule of Civil Procedure 23(c)(2). In this article, notice expert Todd B. Hilsee and legal writing professor Terri R. LeClercq, who worked with the Center in developing the model notices, explain the problem of poorly designed notices and the methods used to develop the models.

Hilsee and LeClercq point out some of the errors in notice programs, including placing the notices in places where they are unlikely to be read and using convuluted "legalese." They cite three important objectives: The notice must get to the class; it must be noticed; and it must be understandable.

As the authors observe, the model notices "should advance the movement toward clear noticeable notices."

## The Federal Judicial Center's Model Plain Language Class Action Notices: A New Tool for Practitioners and the Judiciary

BY TODD B. HILSEE AND TERRI R. LECLERCQ

Closet detectives who love a good mystery may want to check out a recent class action settlement notice approved by the New Mexico Circuit Court, Santa Fe County, First Judicial Circuit, in *McCall v. John Hancock,* No. CV-2000-2818. The notice attempted to inform class members about the benefits they could get from a proposed settlement—so they could decide whether to accept those benefits, exclude themselves, or exercise other rights. It asks:

■ "What Does the Settlement Provide?"

And answers,

COPYRIGHT © 2003 BY THE BUREAU OF NATIONAL AFFAIRS, INC., WASHINGTON, D.C. 20037    ISSN 1529-0115

■ "The Settlement Death Benefit will provide to one Payee a single payment for a Policy if the Measuring Life dies within the Settlement Death Benefit Period. . ."

Readers wondering whether they themselves are a Measuring Life (or perhaps whether a Measuring Life is a person) then had to scan the document for an answer. Instead, they found how many Measuring Lives there will be for each Settlement Death Benefit: one. Readers who had the patience to persist got another nugget:

■ "a Measuring Life is a Policy Insured." To complete the circle, the reader also learned that "a Measuring Life is only a Policy Insured if that person is alive on the Benefit Start Date."

The authors of this perplexing thriller did not explain or define many terms within the notice. Instead, the notice directs the reader outside the notice to a Settlement Agreement that purports to explain the terms. However, the Settlement Agreement, available to those who go to the Web site and download it, does not carry a definition of a Measuring Life. Instead, it explains a Measuring Life Table as

■ "the table set forth in Section 4.3.1.3. by which the Measuring Life is determined if the Policy Insured is deceased on the Benefit Start Date."

Mystery solved: The Benefit Start Date is explained as the "Effective Date of Settlement." If all that doesn't satisfy curious readers, they can jump back into the circle.

This whimsical look at one class action notice—unfortunately not atypical—illustrates the need for communications guidance in developing, implementing, and approving the basic protection for known and unknown class members. It is essential that readers are given an adequate opportunity to understand their rights in class action cases brought and settled on their behalf; it is our premise, as well as that of the courts, that effective notices are readable notices. Back in 1950, the United States Supreme Court, in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), guided those of us charged with designing and giving notice to act as if we truly want to inform people.[1] Unfortunately, since 1950, the procedural rules that govern class action notice practice, whether federal or state, have not mandated understandable and plain language notices, and courts have been largely silent on this issue.[2]

In this vacuum, traditional notices are often hard to read and uninviting. To make matters worse, business considerations often drive how notices are disseminated. Some parties attempt to use notice as a "tool" to

serve their purposes in the litigation. Defendants may wish to use a lack of effective notice to minimize "negative" publicity. Plaintiffs, for their part, may seek to avoid a costly campaign when it's on their dime. Parties may also see limited notice as an elastic mechanism to reduce objections or class participation—and therefore cost—in a claims-made settlement. The reality is, though, that adequate notice need not create any short- or long-term business effect for defendants, nor threaten the continuation of a case for plaintiffs.

Often, those charged with creating and issuing legal notices make the errors of:

1. Placing a consumer notice in the legal section of a newspaper written for business executives;
2. Mailing a notice to an out-of-date, inaccurate, or incomplete list of class members;
3. Relying on "window-dressing" techniques like publication in the *USA Today* alone, purporting to provide "national" notice, but realistically exposing some 3 percent of a class,[3] based on easily calculated data. Then, even if that 3 percent happens to skim the newspaper page, the notice may be missed as a result of poor design.
4. Resorting to a "legal pleading" format, which readers interpret as legal mumbo-jumbo, and ignore.
5. Using long, convoluted sentences, legal terminology, and obscure placement of essential information.

Plain language is just one of the things a bad notice program avoids!

### Where We Are Now

In December of 2003 the rules will change, at least in federal courts. Unless Congress or the Supreme Court acts otherwise, newly revised Federal Rule of Civil Procedure 23 will become effective and, with it, a prescription for clear, concise, plain language notices.[4] Revised Rule 23(c)(2) reads:

---

[1] "But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected." *Mullane v. Central Hanover Bank & Trust Co.* 339 U.S. 306, 315, 70 S. Ct. 652, 657 (U.S. 1950).

[2] Very little appears in published decisions about the need for plain language notices, but courts have recently recognized the merits of simple wording, e.g., "The substance of the pre-settlement notice was adequate, as was the Settlement Notice. The Settlement Notice contained a detailed explanation of the terms in plain language." *In re Ikon Office Solutions Inc. Securities Litigation* 209 F.R.D. 94, 101 (E.D.Pa. 2002).

---

[3] Well-established audited circulation data from the Audit Bureau of Circulations, and statistically significant readership data employed in advertising media analyses, including Simmons and Mediamark Research, document the small number of U.S. adults who skim and read *USA Today*. Federal and state courts have regularly accepted these data and analyses of net reach.

[4] Revised Rule 23(c)(2) was approved by the Standing Committee on Rules of Practice and Procedure, and by the Judicial Conference in September 2002, for transmittal to the U.S. Supreme Court for action by May 1, 2003. (This provision will be

---

Mr. Hilsee and Dr. LeClercq collaborated with the Federal Judicial Center to write and design illustrative class action notices that would reflect the pending changes to Federal Rule of Civil Procedure 23 calling for plain language notices. Following on the heels of an enormous amount of research and early draft notices prepared and studied by the FJC, Hilsee and LeClercq began in earnest in March of 2001, and proposed numerous drafts and revisions, incorporating many reviewers and outside comments. The resulting illustrative notices are available at www.fjc.gov (click on the Class Action Notices item).

---

    COPYRIGHT ® 2003 BY THE BUREAU OF NATIONAL AFFAIRS, INC., WASHINGTON, D.C.    CLASS    ISSN 1529-0115

- (A) For any class certified under Rule 23(b)(1) or (2), the court may direct appropriate notice to the class. (B) For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

The notes accompanying the rule change make clear the intentions of the Advisory Committee on Civil Rules:

- The direction that class-certification notice be couched in plain, easily understood language is a reminder of the need to work unremittingly at the difficult task of communicating with class members. It is difficult to provide information about most class actions that is both accurate and easily understood by class members who are not themselves lawyers. Factual uncertainty, legal complexity, and the complication of class-action procedure raise the barriers high. The Federal Judicial Center has created illustrative clear-notice forms that provide a helpful starting point for actions similar to those described in the forms.[5]

As the notes suggest, the Federal Judicial Center (FJC) was charged with creating illustrative notice forms, or what some will call "Model" notices. The FJC's research division developed an enormous body of research on the need for plain language, problems researchers have observed in communicating legal information, evidence that class action notices are hard to understand, and what laypeople think about class action notices, among other data.[6]

After the FJC developed and studied some early draft notices, they received a wide spectrum of comments from outside reviewers. We agreed to collaborate with the FJC to address those comments and to write and design the illustrative notices that would exemplify the new plain language notice rule.

## Framework for the Future

The illustrative notices we ultimately developed are now available at www.fjc.gov (click on the Class Action Notices item). In creating them, we recognized three key notice objectives:

1. Notice must get to the class. Notice first has to effectively reach an appropriate percentage of people. Plain English notices provide no benefit if few class members have

a chance to see them. "Net reach" and "frequency of exposure" methodology are tools that communications professionals use to mathematically determine how many persons will be potentially exposed to notice messages within notification "vehicles." These tools have become well established in class action litigation. These methodologies allow Courts to study notice adequacy from a scientific basis: how many class members will be notified, and what percentage of the total class does that represent? Calculations reveal to the court what percentage of a class will be reached with notice.

2. A notice must be "noticed." Incredibly, there have been situations where parties have argued (unsuccessfully) that a notice would be too noticeable. To the contrary, the logical intention behind ordering notice is for it to be "noticed." A notice must be allowed to come to the attention of class members, or else the exercise is fruitless. Potential class members receive their notice within an environment loaded with other messages during their day. Notice drafters can't pretend readers get these official notices in a "clean room" without distractions.

3. A notice must be readable and understandable. Any class action notice must be simple, clear, and easy to act upon. The wording and content are critical, once you reach the class member and have his/her attention. Without notices in plain English, all of the efforts to reach class members, and to gain their attention will be for naught.

## Illustrative Notices—Strategic Approach

Strategically, the illustrative notices address the issues that many of today's problematic notices present:

**Wording and content.** Sufficient information must conform to the requirements for notice as identified in the rules and as suggested in the *Federal Judicial Center's Manual for Complex Litigation, 3d.*[7] The information must explain the rights and options that class members have: What's this about? Who is included? Why should you read this? What can you get from the settlement? What are your options? What if you do nothing? What does it mean to exclude yourself? When do you have to take action? How can you find out more?

These are questions class members have and should be explained in simple terms. Soon, this *must* be accomplished in plain language in federal courts, i.e., by writing and setting out essential information in a way that gives a cooperative, motivated person a good chance of understanding the document at the first reading, and in the same sense that the writer meant it to be understood.[8]

---

effective December 1, 2003, unless the Supreme Court rejects it before May 1, 2003, or Congress rejects it before December 1, 2003.) There is little or no dispute about these or other proposed changes in Rule 23.

[5] Advisory Committee notes accompanying proposed amendments to Federal Rule of Civil Procedure 23 in the rules that passed the Standing Committee on Rules of Practice and Procedure and the Judicial Conference in September 2002.

[6] Shannon Wheatman, Robert Niemic, and Thomas Willging, *Class Action Notice Study: Final Report to the Advisory Committee on Civil Rules,* Federal Judicial Center, (2002).

[7] See the requirements for notice content in the new Rule 23(c)(2) above. *The Manual for Complex Litigation, 3d,* at 30.212, similarly suggests, "settlement notices announce the proposed settlement and state that, if approved, it will bind all class members. Notices should describe the essential terms of the proposed settlement; disclose any special benefits provided to the class representatives; provide information regarding attorneys' fees; indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to (or, if permitted, for opting out of) the settlement; explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations; and prominently display the address and phone number of class counsel and the procedure for making inquiries." *The Manual for Complex Litigation* is currently being revised. The 4th edition is projected to be available during 2003.

[8] Matthew Cutts, *Unspeakable Acts Revisited,* 9 Info. Design J., at 39 (1998).

Strung-together legal "CYA" sentences arguably protect the parties by technically making obscure legal facts and definitions available; now, though, these "protections" are finally understood to hinder, not help, the provision of adequate notice to class members.[9] When we are choosing which words our "motivated class members may understand in the first reading," we must remember that unlike lawyers, judges, and professionals engaged in the legal field, 76.8 percent of the 201 million adults in the United States have not graduated from college.[10] Wording and content should be readable for all of the intended audience.

**Location of essential information.** Notices—however disseminated— have only a fleeting chance of attracting attention and readership. Traditionally, the space and typography has focused on words like "ATTENTION, " or the name of the Court, or the legal caption for the case, or the title of the document "Notice of Class Action Settlement." But these do not convey the main message of a notice. The main message, i.e., who is affected and why the notice should be important to them, must be the first items that draw their attention, even at a glance.

**Format.** Uninviting visual clues feed the perception that traditional notices are either "lawyer-driven" solicitations, disseminated just for legal protection; not necessary to read; or simply boring. A common use of the legal "pleading" style obfuscates the topic and message of the notice and results in few people reading notices. The illustrative notices use prominent headlines (or appropriate envelope callouts) and other well-established, reader-friendly, and inviting design features. The name of the court does provide substantial credibility and should be prominent in the notice—even at the top or on the outside of a mailing. Nevertheless, the message is who/what/where, not the court or case title or case number. Focusing on the Court deemphasizes the main message of the notice and will thus not enhance readership.

**Length.** Notices need to be short and not cumbersome. They should not imply that a detailed legal background is necessary or that expensive and complicated administrative techniques are required. Research reveals that in mailings, readers will simply not take the time to focus on lengthy explanations, even in plain English. People are just not interested in absorbing all of the information that courts and lawyers deal with daily.

## Illustrative Notices—Hypotheticals

The illustrative notices provide concrete hypothetical examples of how to communicate information. The cases selected by the FJC are fictitious; however, the legal information contained in each is plausible. It is significant to remember that every notice, for every case, will require careful examination of the circumstances unique to it; the wording and designs appropriate for other cases may differ from the FJC's illustrative notices. Currently, the FJC Web site presents two hypothetical cases: an asbestos case and a securities case.

**Hypothetical Asbestos Case.** The Web site offers 1) a detailed notice that could be mailed to known class members, posted to a Web site, or otherwise individually provided to known class members, 2) the outside of a mailing, and 3) summary notices that could be published to reach unknown class members.

This hypothetical settlement includes two distinctly different "target audiences": homeowners and construction workers. Because a concise publication notice cannot adequately address both of these particular messages effectively, we developed two different summary notices.

**Hypothetical Securities Case.** The site offers 1) a detailed notice that could be mailed to known class members, posted to a Web site, or otherwise individually provided to known class members; 2) the outside of a mailing; and 3) a summary notice that could be published to reach unknown class members.

## Illustrative Notices—Directional Notes

Drafters of class action notices should examine and study the illustrative notices for the guidance they provide; for any particular case, the drafters can then develop a custom notice that suits the needs of that case. Simply copying the notices and filling in the blanks could result in inadequate notice for a given case. However, directional notes that help explain the thematic aspects of the notices may be helpful.

**Notice Designs.** No simple, clear notice will be useful if the notice does not capture attention and invite the reader—through reader-friendly design—to read through the notice. The graphic design of any given notice should be made to fit the particular, important features of that case. The design should enhance the understanding of the content by helping the reader find his/her way through the notice. The illustrative notices, for instance, include a table of contents, headings in question and answer format, reader-friendly organization, plus tables, and graphics.

**Headlines.** The illustrative notices display headlines designed to quickly highlight who should read the notices and why the notices are important. The headlines ensure that even casual readers of publications or mailings will "notice" the notice and help them determine up front if it affects them. The wording of a headline for any particular case or situation will differ depending on the circumstances of each case. Despite the fact that a class member has numerous different legal rights, a headline that focuses on possible benefits is often useful; it serves to get the interest of the class member and invite him/her into the notice.

**Graphics.** We included graphics in several of the illustrative notices to illustrate how relevant graphics can highlight important features of a given notice situation. Pictures or graphics will not always be necessary or helpful, but they can aid the reader in determining class membership.

**Detailed Notices.** The detailed or "full" illustrative notice is designed to contain a substantial summary of necessary information for class members. It does not replace other documents that class members may need access to (e.g., a Settlement Agreement, a Claim Form, a Release of Claims, the Complaint, the Defendant's Answer, and/or other documents that contain information relevant to the class members' decisions about their

---

[9] For specific suggestions for editing legalese into plain language, visit any of theses Web sites:
www.archives.gov/federal_register/plain_language/tools.html;
www.Plainlanguage.org;
www.PlainLanguageNetwork.org;
www.Clarity-International.net.

[10] U.S. adults with less than a Bachelor's degree, U.S. Census Bureau, Educational Attainment of the Population, March 2000.

COPYRIGHT © 2003 BY THE BUREAU OF NATIONAL AFFAIRS, INC., WASHINGTON, D.C.    CLASS    ISSN 1529-0115

rights). Notably, the full notice carries a headline to identify that it is important and significant to the recipient. The notice should prominently identify that it comes from the Court while avoiding the older ineffective legal "case-captioned" header style. Also:

- The illustrative notices begin with a summary page providing a concise overview of the important information.

- The introduction also offers a simple table showing the different rights and options that class members have.

- A table of contents can help organize the information into relevant topics.

- The question and answer format breaks up the content and offers a quick heading that allows readers to understand what the few, brief paragraphs under each question relate to.

Overall, the "full" illustrative notices remain as concise as possible for these particular cases but avoid unnecessary redundancy.

**Outside of Mailing.** The sample outside mailing shows how mailer design can help the expected reader recognize the importance of its contents amid the other solicitations that class members receive every day. Much research has been done on the reaction to mailings, the volume of mail received by the average household, the risk of official mail being perceived as a solicitation, and other problems with notice mailings.[11] The illustrative notices suggest 1) an "Official Seal" that drafters can ask courts to authorize, and 2) a return address such as "Notice Administrator for U.S. District Court." Although it is impossible to cure all the junk mail and list-accuracy ills, when mailings must be done, these suggestions are designed to help lend credibility to the mailing when a reader first sees it in the mailbox.

**Summary Notice.** The illustrative summary notices are designed for mailings in appropriate cases or for publication in print media. The notices show a range of designs and graphics that may be useful and helpful—depending on the circumstances of a particular case. With headlines designed to be noticed and to draw the attention of the readers who are affected, they give simple, concise summary information. The notices provide substantial information about all of the class members' rights and options. Readers can subsequently call a toll-free number or respond via Web site for more detailed information. The notices open with a simple overview and break the information in logical sections, avoiding redundancy while maintaining clarity.

[11] See, for example, United States Postal Service, Household Diary Study, 2001, for statistics on treatment and volume of mail.

Summary notices are often critical tools for a notice effort. Drafters need to use great care in both wording and design. Because publication budgets are always a concern, the summary notices show litigants that they can place detailed information in a "full notice" rather than squeeze text into a small size for publication. We must get away from the small-type, back-page newspaper notices criticized long ago in *Mullane*.[12] Conversely, the summary notices also show how to avoid another mistake: greatly abbreviated and uninformative published summaries that do not provide the substance of legal rights.

## Conclusion

The Federal Judicial Center's illustrative notices should advance the movement towards clear noticeable notices. *The Manual for Complex Litigation, 3d* already advocates: "notice should be accurate, objective, and understandable to class members . . . ." Courts have already shown a preference for simple, noticeable notices.

The illustrative notices—properly adapted and customized for each unique case—will help parties in federal courts satisfy the requirements of new Rule 23(c)(2) (if it becomes effective in December 2003), and we hope will contribute to more understandable class action notices in state courts too. As courts continue to be shown—and expect—what is "*practicable*" with modern notice techniques, "*reasonable*" notice will be more consistent, and serve everyone's goal of improving communication with large numbers of class members.

[12] "Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed. The chance of actual notice is further reduced when as here the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention." *Mullane v. Central Hanover Bank & Trust Co.* 339 U.S. 306, 315, 70 S.Ct. 652, 658 (U.S. 1950).

The authors wish to recognize the Plain English class action notice project work by the Federal Judicial Center's Research Division under the direction of James Eaglin, in particular Shannon Wheatman, Robert Niemic, and Thomas Willging.


# BNA, INC.

# CLASS ACTION LITIGATION

**VOL. 3, NO. 20**    PAGES 688-691       **REPORT**                      **OCTOBER 25, 2002**

## Analysis&Perspective

Under the proposed revisions to Federal Rule of Federal Procedure 23, class action notices must be written in "plain, easily understood language." But the plain language requirement calls for more than just simplified language, notice expert Katherine Kinsella says.

The author of the notice must take into consideration both the content and the format of a document so that it will be understandable by the widest possible audience. Certain kinds of language, and certain typefaces, layouts, and other composition tools, make notices much easier to read.

Notice authors should also avoid legalese and other wordy text, Kinsella says. In this article, she guides class action lawyers through the maze of developing effective plain language notice.

# The Plain Language Tool Kit for Class Action Notice

By Katherine Kinsella

The Judicial Conference of the United States has approved proposed revisions to Rule 23 of the Federal Rules of Civil Procedure prepared by the Conference's Committee on Rules of Practice and Procedure. If these revisions are approved by the Supreme Court and the Congress, which is likely given the unanimous approval of the Judicial Conference, they will become law. The proposed change to Rule 23(c)(2) would require that class notices be written in "plain, easily understood language."

## What Is Plain Language?

Although the draft Committee Notes focus entirely on language, plain language, or "plain English," as defined by practitioners is not just simplified language, which eliminates legalese, jargon and complex language. It is an approach to communicating with a reader based on who the reader is and how to deliver an understandable message to that individual.

*Katherine Kinsella is president of Kinsella Communications Ltd., a Washington, D.C.-based legal advertising agency specializing in class action and bankruptcy notice programs. She can be reached at kkinsella@kinsella.com.*

Plain language is the "marriage of content and format"[1] to create documents that can be understood by the widest possible audience.

"It is the use of language stripped of archaic forms and vocabulary, aided by design, layout and typography of the text. . . . [It] takes into account the empirical research of the past 30 years about how the mind works—how people read and assimilate information."[2]

Plain language is also an international movement, which seeks to make documents understandable to the general public. Plain language organizations are rewriting laws, regulations and other public documents in Canada, the United Kingdom, New Zealand, Australia, Sweden, South Africa and the United States. (See Web site information in the References section.)

In a plain language document, the effective organization of information, presentation, design and layout are as important as clear and understandable writing. This article explores the principles of plain language as it is broadly defined and advocates its use in notice documents. As a notice provider, specializing in media-based notice, I focus my comments on the development of summary notices for publication purposes. These comments, however, have obvious implications for structuring and writing long form notices.

---

[1] Gail Dykstra, *What is Plain Legal Language?*, http://www.plainlanguagenetwork.org/Legal/lawdefn.html.

[2] Cheryl Stephens, Address to the Wills and Estates Section, Canadian Bar Association (Nov. 27, 1990).

COPYRIGHT    2002 BY THE BUREAU OF NATIONAL AFFAIRS, INC., WASHINGTON, D.C.    CLASS    ISSN 1529-0115

## Organizing and Formatting the Notice Document

There are four basic questions that need to be posed before drafting the notice:
- Who is the audience?
- What is the essential information a class member needs to know?
- What is the logical organization or flow of that information?
- How should the information be formatted for ease of access?

### Who is the audience?

The demographics—age, level of education and the like—of class members are readily ascertainable through consumer research data. These demographics are important in targeting media to reach the class. However, in writing a legal notice, they are important only to a point. In actuality, the education and comprehension levels of class members in consumer, product liability, mass tort and employment cases vary so widely that notice must be written in the simplest conversational English without legal jargon, complex language or unwieldy grammatical structures. When the majority of the class is composed of elderly or minimally educated individuals, comprehension as well as document format requires even more simplification.

### What is the essential information a class member needs to know?

Published notice, whether as a print ad or a television spot, is a summary of the most important information in the long form notice. It should not include all the details of the litigation or the settlement. Answering the following questions easily provides the necessary information:
- What is the litigation about?
- Am I affected by this litigation?
- What is the product and how was it used? (if applicable)
- What are the terms of the settlement? (if applicable)
- What are my rights?
- Do I need to take an action?
- How do I get more information?

Examples of information that can be eliminated from the summary notice are the formal case caption as a headline; the names and addresses of the plaintiff and defendant counsel, unless required for a specific communication function; *detailed* instructions on the procedures for opting-out or objecting; *the details* of the settlement and claims process; and determination of attorneys' fees.

### What is the logical organization or flow of that information?

Think in terms of a hierarchy of information. Start with the general and move to the more specific. A Q and A format is the most effective way to guide a reader through the notice information, particularly the long form notice. Anticipate a reader's questions and organize the information to answer those questions. The suggested structure that follows leads the class member through progressively more detailed information.
- Headline
- Introduction to what the litigation is about
- Class definition

- Sections—(legal rights, product description, settlement terms)
- Subsections under legal rights (opting-out, objecting)
- Contact information

### The Headline
- Use the headline to alert the reader that the notice may affect them. An advertisement has only a few seconds to get the attention of the reader and research shows headlines are read first.
- *Never use a formal case caption as a headline in any notice to consumers.* Potential class members are not perusing newspapers and magazines looking for legal notices that might affect them. The case caption is a reference for the judicial system.

For example, headlines such as "If you have a breast implant . . . If you have an asbestos disease . . . If you purchased or took prescription diet drugs . . ." target the consumer personally, directly and quickly.
- Headlines should be simple. When necessary, use an overly inclusive headline that encompasses a larger potential audience and let the class definition provide the parameters of class membership. For example:

Use this:

> **If You Own a Home with Cedar Shingles**
> **Please Read this Legal Notice – It May Affect Your Rights**

Don't use this:

> **If You Own a Home as of June 5, 2002, with Real or Simulated**
> **Cedar Shingles Manufactured or Sold by Housetop Roofing and**
> **Supply Company Installed after January 1, 1989,**
> **Please Read this Legal Notice – It May Affect Your Rights**

Unless a product is well known or carries the name of the manufacturer, most consumers will not necessarily know the brand. Putting information that is too specific in the headline can be an impediment to the reader. In the above example, consumers will know if they have cedar shingles, but not necessarily if they are real or simulated and who sold or manufactured them.

### Subheads

Use subheadings to provide additional information. But get the targeting information into the main headline. For example:

> **If You Purchased or Used an Aerosol Inhaler**
> **Please Read This Legal Notice, It May Affect Your Rights**
> **Inhalers were Manufactured or Distributed by Schering-Plough**
> **Corp., Schering Corp, Warrick Pharmaceuticals Corp., Schering**
> **Laboratories, and related companies**

In this case, the notice headline provides the essential information to grab the attention of the reader, and the subheading provides additional qualifying information that would have been too complex and confusing if used in the headline.

### Introduction

The opening paragraphs of the summary notice should orient the reader to the litigation. Provide the name of the case and court, the fact that it has been certified and whether or not there is a settlement and generally what the case is about.

### Notice Text

Use subheads and descriptive headers to break up the document into manageable sections grouping related information. In product liability cases, graphics

such as a picture of the product or the product mark-
ings or label can help class members determine if they
have the product. Following are examples of subheads:

- Am I a Member of the Class?
- What are My Legal Rights?
- What is Polybutylene Pipe?
- What is EIFS Synthetic Stucco?

**Contact Information**

The telephone number, Web site and post office box
for requesting or accessing additional information
should not be buried in the text. The prominence of the
contact information should be secondary only to the
headline.

### How should the information be formatted for ease of access?

**Typography and Space**

**Type:** There are two kinds of type—serif and san
serif. Serif has small strokes at the beginning and end-
ing of each letter, which links one letter to another mak-
ing the words and sentences easy to read. It is therefore
recommended for text. San serif type is recommended
for headlines and subheads.
An example of serif type is:
Imperial Roman.
An example of san serif type is:

Franklin Gothic Condensed.

**Font Size:** Font size should usually be between 10 and
12 point. However, there is variation among font types
and adjustments should be made. What is 12 point in
one font may be as small as 10 point in another font.

**Spacing:** White space around the notice and between
sections is important for readability. The space between
lines, or "leading," is also important. Notices in 6 point
type with little leading is a disservice to class members.
Once again, a summary notice is a summary, and read-
able type can be used when less detail is included. If
readers are elderly, type size and leading should be in-
creased.

**Paragraphs and Sentences**

Paragraphs should be short. Long blocks of copy dis-
courage reading. Sentences also should be reasonable
and not paragraph length, which is often the case in le-
gal documents.

**Emphasizing Text**

Use bullets, underlining, and/or italics to emphasize
key points. *Never use all uppercase type for sentences
or paragraphs—it is the most difficult type to read.*
Bolding, italics or initial caps are type treatments that
are far more readable than all caps. For example:
Hard to Read:
IF YOU ARE ONE OF THE PERSONS DESCRIBED
ABOVE, YOU MAY BE A MEMBER OF THE SETTLE-
MENT CLASS, AND YOU MAY BE ENTITLED TO
PARTICIPATE IN AND/OR OBJECT TO THE FAIR-
NESS, REASONABLENESS AND ADEQUACY OF THE
PROPOSED SETTLEMENT.
Easier to Read:
If You Are One Of The Persons Described Above, You
May Be A Member Of The Settlement Class, And You
May Be Entitled To Participate In And/Or Object To The

Fairness, Reasonableness And Adequacy Of The Pro-
posed Settlement.
**If you are one of the persons described above, you may
be a member of the Settlement Class, and you may be en-
titled to participate in and/or object to the fairness, reason-
ableness and adequacy of the proposed settlement.**
*If you are one of the persons described above, you
may be a member of the Settlement Class, and you may
be entitled to participate in and/or object to the fair-
ness, reasonableness and adequacy of the proposed
settlement.*

### Simplifying the Language: Writing in Plain English

A widespread consensus exists among plain language
experts regarding the basic guidelines that make docu-
ments accessible and understandable:

**Use short sentences**

Complex sentences especially in legal documents
may be traditional but are hard to understand. Many le-
gal sentences are paragraph length. Break the defini-
tion of complex material into digestible segments and
use bullets and other formatting aids.
The following is a class definition that uses all too
common legal jargon:

"All persons in the United States who purchased or used an
aerosol inhaler manufactured or distributed by Shering-
Plough Corporation, Shering Corporation, Warrick Phar-
maceuticals Corporation, or any of their subsidiaries or Af-
filiates from September 20, 1997 through July 2, 2002 and
their Representatives, successors, assignees and Subro-
gees."

The following class definition is more readable:

"All persons who purchased or used an aerosol inhaler
from September 20, 1997, through July 2, 2002, manufac-
tured or distributed by:

- Shering-Plough Corporation,
- Shering Corporation,
- Warrick Pharmaceuticals Corporation, or
- related representatives and companies.

To identify the brands or companies that sold these inhal-
ers, go to www.inhaler.com for information."

**Use positive language and reduce negatives, particularly
double negatives**

Positive language communicates a clearer message
than negative language. For example, the following two
sentences communicate the same message, but the
positive language sentence is easier to understand.
Negative:
"If you fail to timely file a claim, you will not partici-
pate in the settlement distribution."
Positive:
"You must file a claim by the deadline to participate
in the settlement distribution."

**Use active voice—use passive voice sparingly**

The active voice eliminates ambiguity and it requires
fewer words to express a thought. The subject of the
sentence performs the action rather than being acted
upon.
Active:
The court will hold a Fairness Hearing on December
12, 2002.

Case 1:04-cv-00006     Document 463     Filed 08/23/2007     Page 22 of 26

Passive:
A Fairness Hearing will be held by the court on December 12, 2002.

**Omit superfluous words.**
Pare the sentences down to the essential thought. Replace wordy phrases with simple words. For example:

| Instead of | Use |
|---|---|
| In order to | to |
| subsequent to | after |
| with regard to | about |

**Omit legal jargon**
Words such as *heretofore, pursuant to, null and void* and *herein* can be replaced with *before, following, void,* and *here* without losing their meaning in most circumstances.

**Limit defined terms**
Sometimes a defined term can be helpful. For example, if there are multiple defendants, using the defined term *Defendants* after they have been initially identified is simpler and can save repetition and space. In many instances, defined terms originating in the settlement agreement are incorporated into the long form notice and are repeated in the summary notice, even when they are not needed. If the defined terms do not have a specific use in a particular document, do not use them.

**Eliminate unnecessary details**
As discussed earlier, think in terms of what the reader needs to know at the summary notice level: What is the litigation about? Am I involved? What are my rights and how do I get complete information?

**Personalize the notice by using personal pronouns**
Addressing the notice to the reader using "you," especially in the headline, communicates that the message is specifically for that reader. The Q & A format allows personalization with questions like "What are My Legal Rights?" and "Do I Need to Take Action?"

**Avoid nominalization—make nouns into verbs**
Nominalization expresses a thought as a noun requiring a supporting verb. When possible, use a verb instead of a noun. For example:
"If you made an application" reads better as "if you applied."

**Eliminate redundant information**
In a simple, well-written notice, give the information once. Avoid repeating the names of multiple defendants, the Web site, telephone number or other information.

**Use parallel constructions**
Similar construction should be used in phrases, sentences and lists. Use the same tense for verbs in a sentence.

"The purpose of the notice is to: (a) *inform* class members of the litigation, (b) *outline* the terms of the settlement, (c) *explain* the legal rights of class members, and (d) *provide* telephone and Web site contact information to request the complete notice."

## Conclusion

The purpose of notice is to inform class members of pending litigation and their legal rights. In far too many cases, the summary and long form notices confuse rather than inform. Plain language documents provide clear and effective communication of complex and important information to individuals with basic education. Simple, clear writing and effective presentation ensures understanding, promotes informed decision-making and advances due process.

## References

**Books**
William Strunk Jr. and E.B. White, *The Elements of Style* (Macmillan 3d Ed 1979).
Richard C. Wydick, *Plain English for Lawyers* at 25 (Carolina Academic 4th Ed 1998).
Office of Investor Education and Assistance, *A Plain English Handbook: How to create Clear SEC Disclosure Documents* (U.S. Securities and Exchange Commission 1998).

**Web Sites**
Clarity, http://www.adler.demon.co.uk/clarity.htm (last modified July 5, 2002).
Northwest Territories Literacy Council, http://www.nwt.literacy.ca.
Plain English Committee, State Bar of Michigan, http://www.plainlanguagenetwork.org/Organizations/Michigan.html.
Plain Language Action Network, *Writing User Friendly Documents*, http://www.plainlanguage.gov/pen.html.
   http://www.plainlanguagenetwork.org.
Gail Dykstra, *What is Plain Legal Language?*
Cheryl Stevens, *A Crash Course in Plain Language.*
Cheryl Stevens, *What is Really Wrong with Legal Language?*
PlainTrain, *Introducing Plain Language*, http://www.web.net/~plain/PlainTrain.
Carol Ann Wilson, *Be on the Cutting Edge: Learn These Seven Plain Language Principles Now*, http://www.wwlia.org/plainlan.html.

## Acknowledgement

The topic and title of this article was graciously suggested by John Isbister.

Reproduced with permission from *Class Action Litigation Report*, Vol. 3, No. 20, pp. 688-691 (Oct. 25, 2002). Copyright 2002 by The Bureau of National Affairs, Inc. (800-372-1033) <http://www.bna.com>

# EXHIBIT B

EXECUTIVE ORDER CLAIMS ON FILE

@027/027

03/22/06  15:52:50

EIC-GU Series Returns Summary
(Status Code = A, E)
Tax Years 1995,1996,1999,2000-2004

PAGE   1

| Tax Year | Tax Form | Status Code | Status Total | EIC Total |
|---|---|---|---|---|
| 1995 | EIC-GU | | 1,033 | .00 |
| 1996 | EIC-GU | | 1,949 | .00 |
| 1999 | EIC-GU | | 1,798 | .00 |
| 2000 | EIC-GU | | 2,847 | .00 |
| 2001 | EIC-GU | | 2,610 | .00 |
| 2002 | EIC-GU | | 3,578 | .00 |
| 2004 | EIC-GU | | 6,932 | .00 |

FINAL TOTALS   20,747 $

TOTAL   .00

* * * E N D   O F   R E P O R T * * *