# IN THE DISTRICT COURT OF GUAM
## TERRITORY OF GUAM
## CIVIL MINUTES
## GENERAL

CASE NO.: CV-04-00006                               DATE: September 21, 2007
CAPTION: Santos -vs- Camacho

---

HON. FRANCES M. TYDINGCO-GATEWOOD, Chief Judge, Presiding

Law Clerk: Kim R. Walmsley / Sara Weber          Court Recorder: Leilani Toves Hernandez
Courtroom Deputy: Leilani Toves Hernandez        Electronically Recorded: 9:06:26 - 10:21:08
                                                                          10:42:48 - 11:47:09
                                                                          1:26:08 - 2:43:27
                                                                          3:03:26 - 4:00:35
CSO: N. Edrosa / P. Taijeron

---

**APPEARANCES:**

Counsel for Plaintiff(s)                          Counsel for Defendant(s)
M. Phillips / L. Travis / D. Invencion - Petitioner Santos    D. Benjamin - Felix Camacho, Governor of Guam
P. Perez / D. Lujan - Petitioner Torres           R. Mantanona - L. Perez, Director of Administration
N. Pacharzina / T. Fisher / J. Canto - Objector's Simpao and Cruz    and A. Ilagan, Director of Dept. of Revenue and Taxation

---

**PROCEEDINGS: Continued Fairness Hearing**
- Objector's Exhibit A submitted to the Court.
- Parties were instructed to submit their Findings of Fact and Conclusion of Law by 10/19/2007 .
- In addition, parties shall submit their briefs regarding attorney's fees by 10/12/2007
- Hearing on Attorney's Fees will be held on October 22, 2007 at 9:00 a.m.


NOTES:



# Objections to the Proposed Settlement

Class Members Janice Cruz and
Mary Grace Simpao

# Court's Duty and Role
## In Reviewing Settlement

- Fiduciary and guardian of rights for <u>all</u> absent class members

- High degree of vigilance

- Compare value of claims to proposed settlement amount in light of risks of litigation.

- Cannot rewrite settlement

# Standards for Final Approval

- Fair, reasonable and adequate

- Heightened scrutiny when settlement presented prior to certification

- Preliminary approval does not constrain the Court

- Passivity of class members does not indicate approval

# Court's Discretion

- Review is Abuse of Discretion
- Except . . . .
  - Adequacy of notice to meet due process is *de novo* review. *Torrisi*, 9th Cir.
  - Individualized notice is required where practicable. Rule 23(c)(2); *Eisen*, S.Ct.
  - The Court must show it had adequate facts and performed a rigorous review. *Mandujano*, 9th Cir.

# What's wrong with this settlement ?

- Inadequate Notice
- Disparate Treatment of Class Members
- Overall Unfairness
- Illegal and Uncertain Funding Mechanism

# Inadequate Notice

- What is at stake here?

  - Extinguishing claims w/an average value of $1900

  - Due Process NOT simple fairness

  - *De novo* review

When notice is a person's due, process which is a "mere gesture" is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it

*Eisen v. Carlisle*, 417 U.S. 156 (1949)

# The record on adequacy of notice

- Unchallenged expert opinion says notice was not best practicable.

- Dismal response

| Tax Year | Notice Claims Rate |
|----------|--------------------|
| 2004 | 77% |
| 2003 | 27% |
| 2002 | 25% |
| 2001 | 24% |
| 2000 | 23% |
| 1999 | 20% |
| 1996 | 13% |
| 1995 | 14% |
| Avg | 23% |

# Form of Publication Notice

## Plain, easily understood language, Rule 23(c)(2)

LEGAL NOTICE

### If you bought XYZ Corp. stock in 1999, you could get a payment from a class action settlement.

*Para una notificación en Español, llame o visite nuestro website.*

A settlement has been proposed in a class action lawsuit about the purchase of XYZ Corporation stock. The settlement will provide $6.99 million to pay claims from XYZ investors who bought the company's stock during 1999. If you qualify, you may send in a claim form to get benefits, or you can exclude yourself from the settlement, or object to it.

The United States District Court for the District of Guam authorized this notice. Before any money is paid, the Court will have a hearing to decide whether to approve the settlement.

**Who's Included?**

You are a Class Member and could get benefits if you bought shares of XYZ stock during 1999. You are a Class Member only if you bought shares of XYZ stock and held them, or simply bought to resell. If you sold XYZ stock during 1999, you are a Class Member only if you have shares that you sold purchased in 1999. XYZ officers and directors are not Class Members.

Contact your broker to see if you had shares of XYZ stock. If you are unsure if you qualify, you can get more information, including a detailed notice, at www.XYZsettlement.com or by calling toll free 1-800-000-0000.

**What's the Settlement?**

The lawsuit claimed that XYZ and its Chief Executive Officer made false statements to investors by intentionally misstating the profits that the company expected to earn in the future. The lawsuit also claimed that XYZ misstated future revenue. As a result, the lawsuit claimed, the price of XYZ stock was inflated. The two sides disagree on how much money could have been won if investors had won at trial. The defendants deny they did anything wrong. The two sides disagree on how much money could have been won if the lawsuit had won at trial.

**What can you get from the Settlement?**

XYZ agreed to create a fund of $6.99 million in the settlement of this lawsuit. The details of the settlement are in a detailed notice, available on the website and elsewhere. A Settlement Agreement, available at the website, describes

all of the details about the proposed settlement.

Your share of the fund will depend on the number of valid claim forms that Class Members send in, how many shares of XYZ stock you bought, and when you bought and sold them. If only a few claimants send in claim forms, you will get more than if many people send in claims. If you had a valid claim, Lawyers are explained in the detailed notice, you will get your money. If you bought a few shares and lose a small amount, you will get less. All of the $6.99 million will be paid out.

If every eligible Class Member sends in a valid claim form, the average payment will be 17% cents for each share of stock bought in 1999. The number of claimants who send in claim forms widely from year to year. If less than 100% of the Class sends in a form, you could get more money.

**How do you Ask for a Payment?**

A detailed notice and claim form package contains everything you need. Just call or visit the website to get one. To qualify for a payment, you must send in a claim form. Claim forms are due by March 31, 1999.

**What are your Other Options?**

If you don't want to be legally bound by the settlement, you must exclude yourself by March 31, 1999, or you will not be able to sue, or continue to sue, XYZ about any legal claims in this case. If you exclude yourself, you cannot get money from this settlement, but you may object to it by March 31, 1999. The detailed notice explains how to exclude yourself or object.

The Court will hold a hearing in this case (No.01-XYZ Corp., Case No. CV-00-501 Fran Smith 01, 1999), to consider whether to approve the settlement and a request by the lawyers representing all Class Members (Lawfirm 1 LLP, et City, ST) for $1,000,000 (fees and reimbursement of expenses). You may ask to appear at the hearing, but you don't have to. For more information, call toll free 1-800-000-0000, visit the website at www.XYZsettlement.com, or write to XYZsettlement, P.O. Box 000, City, ST 00000-0000.

**1-800-000-0000**          **www.XYZsettlement.com**

[court filing — notice document image, In the United States District Court District of Guam, Civil Case No. — Notice of Pendency and Proposed Settlement of Class Action]

# Form of Mailing

## Plain, easily understood language, Rule 23(c)(2)

Case 1:04-cv-00006    Document 494    Filed 09/24/2007    Page 10 of 38

---

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF GUAM

JULES BABAUTA SANTOS and CHARMAINE R.
TORRES, on behalf of themselves and a class of others
similarly situated,

Petitioners,

v.

FELIX P. CAMACHO, etc., et al.,

Respondents.

CIVIL CASE NO. 04-00006 and 04-00038

NOTICE OF PENDENCY AND PROPOSED
SETTLEMENT OF CLASS ACTION

TO: ALL PERSONS WHO CLAIMED OR COULD HAVE CLAIMED AN EARNED INCOME TAX CREDIT UNDER THE GUAM TERRITORIAL INCOME TAX OR GUAM TERRITORIAL LAW FOR TAX YEARS 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004; AND

ALL PERSONS WHO FILED AN EARNED INCOME TAX CREDIT CLAIM UNDER THE GUAM EARNED INCOME PROGRAM OR THE GUAM TERRITORIAL INCOME TAX FOR TAX YEAR 1997 AND HAVE YET TO RECEIVE PAYMENT IN FULL FOR TAX YEAR 1997; AND

ALL PERSONS WHO FILED AN EARNED INCOME TAX CREDIT CLAIM UNDER THE GUAM EARNED INCOME PROGRAM OR THE GUAM TERRITORIAL INCOME TAX FOR TAX YEAR 1998 AND HAVE YET TO RECEIVE PAYMENT IN FULL FOR TAX YEAR 1998.

The above-captioned proceeding (the "Litigation") is pending before the District Court of Guam (the "Court"). In the Litigation, Jules B. Santos and Charmaine R. Torres (the "Plaintiffs") claim that they and other Class members have been denied the right to the claims for earned income tax credit (the "EIC") and have been denied the right to receive a refund of the EIC. The two were covered by the Litigation ...

[text heavily degraded]

The Court has conditionally ruled that the Litigation may be maintained on behalf of the following Class:

All persons who do not elect to request exclusion from the class under the procedures described below and: (1) were subject to the Guam Territorial Income Tax ("GTIT") established in 48 U.S.C. § 1421i [§ 31] for tax years 1995–1999 under 1995–2004 and would have been eligible to file for the EIC established in 26 U.S.C. § 32 (as it applies to Guam by virtue of being part of the GTIT) whether they actually were eligible to file for ...

[text heavily degraded]

This definition of persons who fall within or are excluded from the Class is referred to as the "Class Definition."

## I.    PURPOSE OF THIS NOTICE

The purpose of this notice is to advise you, as a potential member of the Class, of: (1) the existence of the Litigation; (2) the proposed Class Action Settlement of the Litigation, described below; and (3) your rights with respect to the proposed Settlements. These rights include the right to be excluded from the Class and the Settlement. If you are a Class Member and do not request exclusion in compliance with the procedures described in this notice, you will be bound by the Settlement terms.

Plaintiffs' Counsel has investigated and evaluated the claims asserted in the Litigation and has determined that the proposed Settlement is fair, reasonable, and adequate for the Class as a whole, in light of the benefits of the Settlement and the disadvantages of continuing the Litigation. The proposed Settlement is a compromise of disputed claims and does not mean that Respondents admit liability.

---

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF STATE

## If you bought XYZ Corporation stock in 1999, you could get a payment from a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- A settlement will provide $X,000,000 (17½ cents per share if claims are submitted for each share) to pay claims from investors who bought shares of XYZ Corporation stock during 1999.

- The settlement resolves a lawsuit over whether XYZ misled its investors about its future earnings. It avoids costs and risks to you from continuing the lawsuit; pays money to investors like you; and releases XYZ from liability.

- Our experienced lawyers for investors will ask the Court for up to $3,010,000 (7½ cents per share), to be paid separately by XYZ, as fees and expenses for investigating the facts, litigating the case, and negotiating the settlement.

- The two sides disagree on how much money could have been won if investors won at trial.

- Your legal rights are affected whether you act, or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| The only way to get a payment | The only way to get a payment |
| Get no payment. This is the only option that allows you to ever be part of any other lawsuit against XYZ, about the legal claims in this case. | Get no payment. This is the only option that allows you to ever be part of any other lawsuit against XYZ, about the legal claims in this case. |
| Write to the Court about why you don't like the settlement. | Write to the Court about why you don't like the settlement. |
| Ask to speak in Court about the fairness of the settlement. | Ask to speak in Court about the fairness of the settlement. |
| Get no payment. Give up rights. | Get no payment. Give up rights. |

- These rights and options — and the deadlines to exercise them — are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after appeals are resolved. Please be patient.

QUESTIONS? CALL 1-800-000-0000 TOLL FREE, OR VISIT XYZSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO WEBSITE

---

NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION, PAGE 1 OF 6

# What's missing from the record

- Any expert testimony assuring notice is adequate
  - Language Barriers
  - Form and Content
- Any demonstration of reach
  - Notice to off-island class members
  - Class mobility (low-income and military)
- Any procedure for returned mailings
- Any information on mailings
  - How many (on v. off-island)
  - How many returned (on v. off-island)
  - How many different class members
  - 1998 mailings (number v. checks cashed v. additional claims filed)

# Information on Reach

"What is troubling . . . [is] class counsel [has] done no research and have not even attempted to present the court with information as to what type of notice would be reasonably likely to reach the most individual class members."

*Carnegie v. Household International, 371 F.Suup.2d 954 (N.D. Illinois, 2005)*

# Address Updating

Failure to update addresses, where practicable, "would almost certainly" violate notice requirement.

*Parker v. Time Warner., 239 F.R.D. 318 (E.D. New York, 2005)*

Even in case cited by Governor, addresses were updated for returned mailings.

*In re Cherry's Petition to Intervene, 164 F.R.D 630 (E.D. Michigan, 1996)*

Information regarding mailing and returned mailings is needed.

*In Integra Realty Resources, Inc., 262 F.3d 1089 (10th Cir. 2001)*

There is no basis on this record to find notice was the best practicable

# What's wrong with this settlement ?

- Inadequate Notice
- Disparate Treatment of Class Members
- Overall Unfairness
- Illegal and Uncertain Funding Mechanism

# Disparate Treatment of Classes

■ Heightened Scrutiny When Settlement is Pre-Certification.

■ Legitimate Basis for Differences

"The distinction between the two groups . . . is legitimate because they are differently situated"

7-Eleven Owners v. Southland, 85 Cal.App.4th 1135

(2000)

# Arbitrary Caps For Each Tax Year $8M Left Unpaid

| Tax Year | Amount Available to Pay Claims | Value of Approved Claims | Amount Paid w/ Caps | Percent Recovery w/ Caps | Amount Returned to Gov. w/ Caps |
|---|---|---|---|---|---|
| 1998 | $15,000,000.00 | $20,607,153.00 | $15,000,000.00 | 73.00% | $5,607,153.00 |
| 1995, 1996, 1999 and 2000 | $15,000,000.00 | $17,520,013.00 | $15,000,000.00 | 86.00% | $2,520,013.00 |
| 2001 | $15,000,000.00 | $6,814,932.00 | $6,814,932.00 | 100.00% | |
| 2002 | $15,000,000.00 | $8,543,750.00 | $8,543,750.00 | 100.00% | |
| 2003 | $15,000,000.00 | $8,839,433.00 | $8,839,433.00 | 100.00% | |
| 2004 | $15,000,000.00 | $15,575,586.00 | $15,575,586.00 | 100.00% | |
| **Totals** | **$90,000,000.00** | **$77,900,867.00** | **$69,773,701.00** | | **$20,226,299.00** |

| Tax Year | Amount Available to Pay Claims | Value of Approved Claims | Amount Paid w/out Caps | Percent Recovery w/out Caps | Amount Returned to Gov. w/out Caps |
|---|---|---|---|---|---|
| 1998 | $15,000,000.00 | $20,607,153.00 | $20,607,153.00 | 100.00% | |
| 1995, 1996, 1999 and 2000 | $15,000,000.00 | $17,520,013.00 | $17,520,013.00 | 100.00% | |
| 2001 | $15,000,000.00 | $6,814,932.00 | $6,814,932.00 | 100.00% | |
| 2002 | $15,000,000.00 | $8,543,750.00 | $8,543,750.00 | 100.00% | |
| 2003 | $15,000,000.00 | $8,839,433.00 | $8,839,433.00 | 100.00% | |
| 2004 | $15,000,000.00 | $15,575,586.00 | $15,575,586.00 | 100.00% | |
| **Totals** | **$90,000,000.00** | **$77,900,867.00** | **$77,900,867.00** | | **$12,099,133.00** |

# Waiver of Interest
## Unfair to 2001-2004 Claims

**"An advantage to the class, no matter how great, simply cannot be bought by the uncompensated sacrifice of claims of [other class] members"**

*National Super Spuds, Inc. v. New York Mercantile Exch.*, 660 F.2d 9, 19 (2nd Cir. 1981).

" …the decision to forgo a claim for interest was weighed and leveraged in the settlement negotiations, <u>particularly against the backdrop of a potential statute of limitations bar to recovery for the earlier class years.</u>"

Santos Reply to Objections at 4

# Waiver of Interest
## Unfair to older tax years

- Conflict between subclasses
  - Potentially time barred claims (already discounted for risk) are affected more than non-time barred claims
- Conflict w/in subclasses
  - 2001 claims are no different than 2004 claims but suffer more loss of interest
  - Nothing in the record supports Government's claim that waiver of past and future interest balances out these disparities.

# Potentially Time Barred Claims Overly Discounted

- Waiver of interest is a greater loss for these claims

- Available settlement funds for these claims are only 25% of funds available for non-time barred years

- Yearly caps mean no opportunity for funds from undersubscribed years to cover over subscription.

# Tax Year 2000 Claims Are No Different Than 2001-2004 Claims

- Tax year 2000 claims are not potentially time barred

- §6511– Tolled under *American Pipe*

  *American Pipe* is procedural not equitable

  *Brockamp's* bar of equitable tolling does not apply

- §6532–Bars all tax years or none

  If waived , Government cannot selectively waive.

# The Settlement Creates Conflict

- ■ Conflict Is Unfair
- ■ Conflict Prevents Class Certification

# What's wrong with this settlement ?

- Inadequate Notice
- Disparate Treatment of Class Members
- Overall Unfairness
- Illegal and Uncertain Funding Mechanism

# Actual Settlement Payout

| Tax Year | No. of Claims Approved | Value of Approved Claims | Average Value of Claims | Amount Available Under the Settlement | Total Paid Out After Application of Caps | Total Paid Out After Application of 20% Offsets |
|---|---|---|---|---|---|---|
| 1998 | 12,616 | $20,607,153.00 | 1,633.41 | $15,000,000.00 | 15,000,000.00 | 12,000,000.00 |
| 1995 | 1,693 | $2,510,356.00 | 1,482.79 | $3,750,000.00 | | |
| 1996 | 1,880 | $3,063,445.00 | 1,629.49 | $3,750,000.00 | | |
| 1999 | 3,185 | $5,793,109.00 | 1,818.87 | $3,750,000.00 | | |
| 2000 | 3,347 | $6,153,103.00 | 1,838.39 | $3,750,000.00 | | |
| Sum of 1995, 1996,1999, and 2000 | 10,105 | $17,520,013.00 | 1,733.80 | $15,000,000.00 | 15,000,000.00 | 12,000,000.00 |
| 2001 | 3,617 | $6,814,932.00 | 1,884.14 | $15,000,000.00 | 6,814,932.00 | 5,451,945.60 |
| 2002 | 4,124 | $8,543,750.00 | 2,071.71 | $15,000,000.00 | 8,543,750.00 | 6,835,000.00 |
| 2003 | 4,185 | $8,839,433.00 | 2,112.17 | $15,000,000.00 | 8,839,433.00 | 7,071,546.40 |
| 2004 | 7,406 | $15,575,586.00 | 2,103.10 | $15,000,000.00 | 15,575,586.00 | 12,460,468.80 |
| **Totals** | **42,053** | **$77,900,867.00** | **1,852.44** | **$90,000,000.00** | **69,773,701.00** | **55,818,960.80** |

# Inadequate Record to Find the Settlement Fair and Adequate

■ The Court may not approve a settlement if the record presented by the settling parties does not allow the Court to give due consideration to the relevant facts.

*Mandujano v. Basic Vegetable Products, Inc.*, 541 F. 2d 832 (9th Cir. 1976)

"the court must first compare the likely recovery that plaintiffs would have realized if they had gone to trial with the terms of the settlement."

*Pigford v. Veneman*

# The Settlement Is Unfair

■ Inclusion of 1998 checks with notice is coercive and defeats the essential purpose – to inform class members so they can make a reasoned choice.

  In re Educational Testing Service, 447 F.Supp. 612 (E.D. La. 2006)

■ Treatment of Offsets – 20% of claims value is retiring Government debt AND accumulated interest

# The Settlement Is Not Adequate

- 72% of the estimated potential claims will be extinguished for no compensation

- $8M of filed and approved claims will not be paid

- 27% of claims have been denied with no oversight

- $20-30M of the Settlement Fund reverts back to the Government

- Government cannot transform harm to the class as a whole from a low subscription rate to a benefit of greater recovery for the few who filed claims

# What's wrong with this settlement ?

- Inadequate Notice
- Disparate Treatment of Class Members
- Overall Unfairness
- Illegal and Uncertain Funding Mechanism

# The Funding Mechanism is Illegal

■ 48 U.S.C. §1421i provides:

"When any judgment against the government of Guam under this paragraph has become final, the Governor shall order the payment of such judgments out of any unencumbered funds in the treasury of Guam."

"The word 'shall' is ordinarily the language of command"

*Anderson v. Yungkau*, 320 U.S. 482 (1947)

"…the term 'shall' normally creates an obligation impervious to judicial discretion."

*U.S. v. Quirante*, 486 F.3d 1273 (11th Cir. 2007)

# The Settlement Funds Are Encumbered

- ■ … An encumberence [is …] a legal obligation … to pay creditors other than the government … or "restrictions imposed by a creditor."

  *Purcell v. U.S.*, 1 F.3d 932 (9th Cir. 1993)

  e.g. Farmers Home Loan for courthouse requires fines received by the government to be used to discharge the debt

- ■ Mere appropriation by the Legislature is not an encumberence.

# Uncertainty of Funding
## Will Claims Be Paid ?

■ The Government failed to reserve $15 million by the date of the fairness hearing.

■ Under the current rate it will take 5-10 years to pay all claims.

■ Trust Fund laws ca be repealed.

# Will The Claims Be Paid?

- "No promise is made that any particular amount will be in the funds at any time or paid at any time."

  Governor's Reply at 30

- According to Black's Law Dictionary this is an Illusory promise:

  "A purported promise that actually promises nothing because it leaves to speaker the choice of performance or nonperformance."

# EXTRA SLIDES

# Inadequate compensation

- Settlement value is only 30% of claim value (based on $278M claim value and $90M made available)

- Settlement Value is only 20% of claim value (based on $ 56M to actually be paid out)

- No basis to assume probability of success is only 20- 30% in light of *Simpao* summary judgment

# Court Must "Explore these factors Comprehensively:"

1) The risk, expense and complexity and duration of continued litigation

2) Risk of maintaining class action through trial

3) Amount of Settlement Offer

4) Extent of Discovery Completed

5) The Experience and Views of Counsel

6) Class Member Reactions

7) All other relevant factors

# What is known indicates settlement not "fair, reasonable and adequate"

■ Only 2/3 of "Settlement Fund" actually being paid, Government keeps $20 million

■ Under subscription: only 28% of (estimated) class of taxpayers denied EITC will be paid at all

■ All claims are substantially compromised due to denial of interest and time

# Prior To Objections Settling Parties Had Not Told Court:

1) Value of Claims and amount discounted
2) Amount Government would actually pay and offset amount
3) Number of Claimants vs. Claims
4) Distribution of claims over years
5) Government's ability to fund settlement
6) Strength of Class' case and risks of continued litigation
7) Reach of notice publications
8) Number of mailings
9) Number of mailings undeliverable
10) Procedures for dealing with undeliverable
11) Sample of mailings including envelopes
12) Experience of 1998 class

# Compare information regarding notice reach here to case cited by Governor:

- Record indicated:
  - Number of mailings
  - Number and time period of TV commercials and directed at potential class members
  - Number and time period of radio advertisements and directed at potential class members
  - Facilitator's reach data including estimation that media notice reached 87% of class members with an average frequency of 2.4 times
  - Number of phone calls fielded from class members
  - Number of information meetings held
  - Class counsel's testimony that "I don't know of any class action where notice was more complete than in this case."

        *Pigford v. Veneman*

