

The Law Offices of

# PHILLIPS & BORDALLO

A Professional Corporation
410 West O'Brien Drive, Suite 102 Hagåtña, Guam 96910-5044
Tel: (671) 477-ABCD (2223) • Fax: (671) 477-2FAX (2329)
" I Erensia, Lina'Ia', Espiritu-ta"



**FILED**
**DISTRICT COURT OF GUAM**

OCT 1 2 2007

**JEANNE G. QUINATA**
**Clerk of Court**

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, *et. al.,* | Civil Case No. 04-00006 |
| Petitioners, | |
| -v- | **DECLARATION OF MICHAEL F.** |
| FELIX P. CAMACHO, *et. al.* | **PHILLIPS RE: ATTORNEY FEES** |
| Respondents. | |
| CHARMAINE R. TORRES, *et al.,* | Civil Case No. 04-00038 |
| Plaintiffs, | |
| -v- | |
| GOVERNMENT OF GUAM, *et al.,* | |
| Defendants. | |
| MARY GRACE SIMPAO, *et al.,* | Civil Case No. 04-00049 |
| Plaintiffs, | |
| -v- | |
| GOVERNMENT OF GUAM, | |
| Defendant. | |
| -v- | |
| FELIX P. CAMACHO, Governor of Guam, | |
| Intervenor-Defendant. | |

# ORIGINAL

I, MICHAEL F. PHILLIPS, declare as follows:

1. I am counsel of record for Petitioner, JULIE BABAUTA SANTOS, in the above-entitled matter;

2. I make this declaration based on personal knowledge, and I am prepared and able to testify to all matters contained herein;

3. I, Interim Class Counsel Michael F. Phillips, counsel for the Petitioner, individually and on behalf of the all those similarly situated, submits this Declaration pursuant to the Court's order of September 13, 2007.

**THE COURT SHOULD AWARD ATTORNEYS FEES REQUESTED REGARDLESS OF ACTUAL HOURS SPEND INLIGHT OF CLASS COUNSEL'S CONTRIBUTIONS TO AND EXTRAORDINARY EFFORTS IN LITIGATING AND UNTIMATELY ACHIEVING SETTLEMENT IN THIS MATTER**

4. There is no question that the discretion to award attorneys' fees in this case rests solely with the district court and its decision will not be disturbed absent an abuse of that discretion. Harkless v. Sweeny Indep. Sch. Dist., 608 F.2d 594, 597-598 (5th Cir.1979). In determining what was reasonable the Ninth Circuit adopted 12 "guidelines" that district courts must balance in awarding reasonable attorneys' fees. Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), cert. denied, 425 U.S. 951, 96 S. Ct. 1726, 48 L. Ed. 2d 195 (1976). See also, Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). These guidelines include case by case evaluations of (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained,

PHILLIPS & BORDALLO

(9) the experience, reputation and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." Kerr, at 70. The purpose of the requirement that the trial court articulate its analysis of the Johnson factors is to insure meaningful appellate review of his discretion. Harkless v. Sweeny Indep. Sch. Dist., 608 F.2d 594, 596 (5th Cir. 1979). While it is an abuse of discretion not to consider these guidelines, id., a "statement by the Court that it has considered a Kerr factor suffices. Feuerstein v. Burs, 569 F. Supp. 268, 272 (D. Cal. 1983) quoting, Manhart v. City of Los Angeles, Department of Water & Power, 652 F.2d 904, 908 (9th Cir. 1981), petition for cert. filed 461 U.S. 951, 103 S.Ct. 2420, 77 L. Ed. 2d 1310 (1983).

5. This case is one of first impression here. The case presented novel, difficult, and complex issues and resulted in extensive research and preparation from the time of filing through the latest filings and Court hearings. The record in this case more than substantiates the inherent and diverse nature of this action which includes issues related to federal mandates, the alleged necessity of federal or local government appropriations, the alleged characteristic of EIC as government subsidies, the authority over expenditures by the local government, statute of limitations concerns, jurisdictional requirements, Congressional intent of EIC as it applies to Guam, including allegations as it relates to Congress' passage of the Organic Act of Guam, the alleged supremacy of local tax commissioner revenue rulings, allegations regarding the authority of this Court over tax remedies, ad the intricacies of complex income tax procedures ad regulations regarding the implementation of the EIC program.

6. My office extensively researched and followed the EIC developments at the Department of Revenue and Taxation, Supreme Court of Guam, and the Guam Legislature

from early 1998 to the present. Initially, we intended to file this action in 1998 and then learned the administration at the time intended to (and did) pay EIC refunds that year for tax year 1997, reversing their policy position and appearing to commit to compliance with EIC mandates. Since then, the Guam Legislature has mandated and authorized payment of the refunds on a yearly basis. In 2001, the Guam Legislature sued the Governor of Guam in the Supreme Court and received a declaratory judgment interpreting the EIC program as applicable to Guam.

7.     After allowing applications for EIC refunds for tax year 1998, and after the Supreme Court of Guam held in In re Request of I Mina Bente Singko Na Liheslaturan Guahan Relative to the Application of the Earned Income Tax Credit Program to Guam Taxpayers, 2001 Guam 3 (2001) that the substantive provisions of the Internal Revenue Code enlisted in the Organic Act, including the EIC, must be applied in mirrored fashion to Guam, and that the Governor is required to enforce and administer the EIC, the Government of Guam still failed to implement and pay earned income tax refunds.

8.     Although I was not directly involved in an official capacity during the Supreme Court case above, I had the benefit of presentations by both sides of the argument, attended the hearing, reviewed all submissions and briefs, listened to arguments, and reviewed the Supreme Court decision.

9.     Before completing the original June 14, 2004 settlement agreement in this case, I extensively reviewed information regarding the current Government of Guam deficit, debt, cash shortfall, economic and cash flow projections, and other information relating to the Government's ability to pay past refundable earned income tax refunds and commence full

payment of all future refunds (e.g. GPA expected bond payments and projected individual taxpayer refunds).

10. Because the Government had consistently opposed paying the EIC since the middle 1990's, I and other attorneys in my firm spent numerous hours reviewing researching issues related to the Government's defenses including the lack of federal or local appropriations (unfunded mandate), the financial inability of the Government to pay the EIC refunds, a lack of Congressional intent to have the EIC applicable to Guam, the EIC is inorganic as it undermines the Government's ability to control expenditures as provided in section 1423j of the Organic Act, statute of limitations issues, challenges to the Supreme Court of Guam's jurisdiction, the supremacy of local tax commissioner Revenue Rulings, and allegations that a remedy could not be secured from the District Court of Guam because it is not an Article III court.

11. It was within this climate of financial crisis that I negotiated and completed the original settlement of $60 million plus full implementation of the EIC program estimated to cost the Government an additional $15 to $20 million each year for subsequent years. The parties were meticulous in analyzing and considering the government's financial condition in arriving at the original settlement, and during the initial settlement conference with this Court, the government expressed confidence in its ability to meet the obligations of the settlement agreement.

12. After two applicants for Intervention sought to derail the original settlement agreement, I defended the settlement agreement as providing a resolution of claims in the best interest of the EIC Class, and was successful in obtaining a decision denying the applicants' intervention. Shortly after Petitioners moved the Court for approval of the Administration Plan

PHILLIPS & BORDALLO

and other procedural issues, Respondent Governor and Respondent Directors made appearances to vacate the preliminary approval of the original settlement agreement. Respondent Governor and Respondent Directors asserted a variety of legal arguments ranging from statute of limitation concerns to the lack of legislative appropriation.

13.    I continued to vigorously defend the legality of the settlement agreement in the interests of the EIC Class. During this period, Respondent Governor and the Office of the Attorney General also entered into a conflict over the legal authority of the first-elected Attorney General of Guam.  In the best interests of the EIC Class, on behalf of my clients, I agreed to enter Mediation with all Respondents, including the Attorney General, in the hope that all legal issues could be resolved in favor of furthering payments of EIC to the EIC Class.

14.    The June 20, 2005 Settlement Agreement is the culmination of extensive negotiations between the parties to finally resolve all disputes in this matter.  I prepared extensively to both defend the legality of the original settlement agreement and to keep the interests of the EIC Class primary in any further settlement of the case.  I diligently researched the financial condition of the government, sought and utilized expert assistance, including continued discussions with administrators from the Department of Revenue and Taxation, and participated in Mediation with an experienced negotiation team capable of analyzing and discussing all outstanding legal and economic issues, and, most importantly, resolving such issues in favor of the EIC Class.

15.    I believe the proposed Settlement is in the best interests of the EIC Class.  The Settlement Agreement will provide for $90 million to be paid to the EIC Class, including the assurance of an immediate reservation of at least $15 million. The proposed Settlement

Agreement also provides for the full implementation of the EIC beginning with tax year 2005 and includes relief to EIC claimants for tax years 1995 and 2004.

16.     Even if settlement had not proceeded in this class action, my office was prepared early on to try this matter. I successfully negotiated an expedited trial schedule with the Government of Guam. During the Scheduling Conference, I informed this Court that I was prepared to file a Motion for Summary Judgment. However, soon after the expedited scheduling order was issued by this Court, an apparent change in policy by the administration occurred, and meaningful settlement negotiations commenced resulting in the original settlement agreement of June 14, 2004, which was preliminarily approved by this Court, and now the June 20, 2005 proposed Settlement Agreement.

17.     My intense determination to succeed throughout this litigation demonstrates that my office and I possess now and have possessed throughout this litigation the requisite competence, experience, dedication, knowledge, training, interest, objectivity and resources to adequately litigate the claims and defenses raised by the parties to this class action.

18.     My office prosecuted this action from its inception and settled the action on two separate occasions against the power struggles of Respondents, yet has always acted in the best interests of the EIC Class. My office tracked the progress of the EIC program for years before filing this action, and extensively worked to identify and investigate all claims raised by the Petition and proposed Amended Petition and ultimately resolved by the proposed Settlement Agreement. Despite unfounded public allegations of collusion by counsel for an applicant for Intervention, and the continued public scrutiny of his office, initially by Respondent Governor over the original settlement, and more recently by the Office of the Attorney General regarding the proposed Settlement Agreement, my office remained and will continue to remain

steadfast in defending the best interests of the EIC Class, and expended, and will continue to expend, the resources necessary to obtain the benefits due EIC claimants under the law. From the inception of this action through its defense against two applicants for intervention, and further through the negotiation and execution of two separate complex settlement agreements, my office demonstrated considerable and superior knowledge of the applicable law in this action.

19. As a result of my work on this case, I have had to refuse opportunities to work on other cases and have declined many opportunities to accept "paying clients" so that I may continue to effectively prosecute this matter through to completion. I was at time the only attorney in my firm and at most our firm consists of two to three attorneys. In addition to declining cases, this litigation has on many occasions prevented me from beginning or completing pending work for other clients.

20. My currently hourly fee is $250.00. I have been litigating cases since 1988.

21. Before taking on this case, I discussed in detail my client's option to pay on an hourly basis or on a contingency basis. My client informed me she did not think she could afford an hourly rate and chose instead to agree to a contingency agreement. I agreed to take this case for a contingency of 10% of recovery. I have advanced all costs in this case. As the Court described in O'Sullivan v. City of Chicago, the amount of itemization and detail in billing records is market-based. 484 F. Supp. 2d 829, 839 (D. Ill. 2007) (citing In re Synthroid Marketing Litigation, 264 F.3d 712 (7th Cir. 2001)). "If counsel submits bills with the level of detail that paying clients find satisfactory, a federal court should not require more." Id. (quoting In re Synthroid, supra at 722).

22. The settlement agreement, if approved, is 90 Million Dollars ($90,000,000.00). The ultimate result obtained is an important factor in determining the reasonableness of fees. Scarborough v. Nicholson, 19 Vet. App. 253 (U.S. App. Vet. Cl. 2005) (citing Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).

23. As a result of bringing this case forward, I have had to prosecute this matter against the Governor and numerous government officials and cabinet members.

24. It is standard and customary on Guam for attorneys to charge 33% for contingency cases.

25. This case presented great risk of failure at the beginning of these proceedings. Aside from the merits of the case being difficult, Respondents have raised numerous defenses ranging from jurisdictional issues to the applicability of EIC on Guam.

26. I have had great success during my years of litigating these types of cases and other public interest matters and leave my reputation as a lawyer to the Court. I have also lost many related cases and because they are either all taken pro bono or on a contingency basis this has caused great financial hardship for myself and my firm.

**THOUGH CLASS COUNSEL IS EXTREMELY FAMILIAR WITH THE HISTORY AS WELL AS THE EXTENT OF EFFORTS HE AND HIS FIRM EXPENDED IN PURSUIT OF SETTLEMENT IN THIS MATTER, CLASS COUNSEL IS UNABLE TO SUBMIT CONTEMPORANEOUS BILLING STATEMENTS**

27. Due in part to the contingency basis of the fee agreement in this matter, as well as the fact that class action matters such as the instant case are atypical and billing practice in class actions in this jurisdiction is not standardized, Class Counsel cannot in good faith submit billing statements as none were prepared contemporaneously. As detailed further below, Class Counsel awaits further instruction from the Court regarding how best to proceed in the event

the Court continues to require additional information regarding hours Counsel worked in this matter.

28. While the Court in Harkless recognized that Plaintiff's counsel did not keep daily time records through out the litigation, the Court nevertheless awarded counsel attorney fees based on counsel's testimony of the time and labor spent litigating the case. The Fifth Circuit explained:

> The trial judge thoroughly reviewed the record of this protracted litigation, and recorded his views of the relevance of the various Johnson criteria in an opinion which could not have been so well written had it not been the reflection of a correct understanding of the policies underlying Johnson and its progeny. In his "Findings of Fact and Conclusions of Law Relating to Back Pay and Attorney's Fees" of December 7, 1978, noting that "computation of attorney's fees in this case has been difficult," he undertook to "describe the various factors which the court has taken into consideration in determining the amount of attorney's fees," 466 F. Supp. 457, 464-65. He specifically found that the quality of the work and the results obtained by the plaintiffs' counsel were superior, and that the standing of the plaintiffs' counsel at the bar is similarly excellent. Id. at 465. These conclusions are indisputably correct. In discussing the contingent nature of the fees, he noted that, during most of the thirteen years the case was pending, it must have appeared that "there was a strong possibility, if not a probability, that all of the extensive work done in this case would be without remuneration." Id. The district court also found that "(a) case which requires as much time as did the case at bar in effect precludes the lawyers who are doing the work from accepting other employment or performing other legal services." Supplemental Findings, Id. at 467.

> The troublesome features in computing fees in this instance, and the one upon which we must focus, is counsel's failure to keep daily time records. Cognizant of this problem, the trial judge, in formulating an estimate of the time spent, insisted upon hearing deposition testimony of all counsel involved in the case to any significant extent, and for this reason he held two evidentiary hearings. In the Second Supplemental Findings of Fact and Memorandum Opinion, the trial court states that it is comfortable with and believes the estimates of time testified to by counsel for the following reasons: First, the lawyers giving the testimony appear to this court to be honest and candid, and appear to have

made a good faith effort to make a conservative and accurate estimate of the time expended in connection with the performance of the work done in this case. Second, this court has reviewed the file in the light of the undersigned's (I. e., the judge) experience as a practitioner, the estimates of time spent in performing the various tasks seem to this court to be inherently reasonable. Third, as indicated in the earlier findings, the fact that counsel for plaintiffs spent materially larger amounts of time on this case than did counsel for the defendant is not surprising for many reasons. One of the most cogent of the reasons is that during the entire course of this litigation until the recent decision of the Fifth Circuit Court of Appeals, the plaintiffs clearly had the uphill side of this case. . . . A lawyer with an intense determination to win will, simply by his virtue of the essential facts of human nature, spend enormous amounts of time on a case to make certain that he is presenting his client's views and arguments in the best possible light. A review of this file reveals the intense determination to win of counsel for plaintiffs, and it was this intense determination to win which ultimately produced a successful result, and which resulted in the expenditure of the very large amount of time established by the credible testimony.

The undersigned is totally persuaded that counsel for plaintiffs did spend the time working on this case which they indicated they did by their sworn testimony. 466 F. Supp. 473-74.

While it is by far the better practice for attorneys to keep time sheets, such documentation is not always essential. Here the representation was not rendered by a law firm primarily engaged in providing services to paying clients, but by a group of lawyers motivated by their conception of the public interest, who make it a practice not to accept compensation from their clients. As the court below noted, throughout much of this litigation it was extremely doubtful that the plaintiffs would prevail, or that attorney's fees would be available if they did. In this connection we note that this Act did not become operative until most of the work in this case had already been performed. (But see S.Rep.No.94-1011, Supra, which points out that prior to Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975), numerous federal courts had been willing to award successful plaintiffs' attorney's fees in civil rights cases.) As the Court of Appeals for the First Circuit suggests, the ends of justice would not be well served by demanding detailed documentation of the expenditure of time made prior to the passage of the statute. Souza v. Southworth, 564 F.2d 609 (1st Cir. 1977). Of course, HN3the district court's conclusion of the amount of time spent in a case in

which detailed time records are not available is entitled to deference, and will not be overturned absent an abuse of discretion. Davis v. Bd. of School Comm'rs of Mobile County, 526 F.2d 865 (5th Cir. 1976).

The appellants also urge that even if the plaintiffs' counsel had in fact spent all this time, it was not well spent and therefore the defendant should not be required to foot the bill. It is true that the plaintiffs' counsel may not recover for all their work, but only for time reasonably expended. However, the record supports the findings of the trial judge that the time spent by plaintiffs' counsel had been utilized efficiently. Conclusions of Law of December 7, Supplemental Findings, and Second Supplemental Findings, 466 F. Supp. 457, Passim.

29.    The lack of contemporaneous records does not justify an automatic reduction in

the hours claimed. Johnson v. University College of University of Alabama, 706 F.2d 1205,

1207 (11th Cir. 1983) quoting Harkless v. Sweeny Independent School District, 608 F.2d 594,

597 (5th Cir.1979) (affirming award despite absence of time records).

**CLASS COUNSEL MAY SUPPLY THE COURT WITH ALTERNATIVES TO CONTEMPORANEOUS BILLING STATEMENTS THAT MAY PROVE INSTRUCTIVE IN THE COURT'S ASSESSMENT OF REASONABLE ATTORNEY'S FEES**

30.    The Court has reserved decision on the issue of whether to apply the lodestar or percentage-of-the-fund method in calculating attorney's fees. In the event the Court still deems it necessary to consider the actual number of hours expended in pursuit of the settlement in this matter to formulate its initial determination regarding which calculation method to employ, Class Counsel requests an opportunity to further supplement this Declaration pending further orders from the Court regarding the best method available to meet the Court's desire for more information regarding the actual ours expended. Class counsel understands the Court's Order of September 13, 2007 as requiring filings of contemporaneous billing statements. Because, as described above, Class Counsel cannot provide the Court with contemporaneous billing

statements, Class Counsel seeks further guidance from the Court regarding alternative briefing the Court may in its discretion require.

31.     In the absence of contemporaneous billing statements, the Court may require Class Counsel to reconstruct hours based upon notes and other data available to Counsel. With the Court's permission and direction, my office is prepared to reconstruct time records based on the extensive litigation files and other records in this case. The Ninth Circuit has held that "basing the attorneys' fee award in part on reconstructed records developed by reference to litigation files and other records is not an abuse of discretion." United States v. $12,248 U.S. Currency, 957 F.2d 1513, 1521 (9th Cir. 1992), quoting, Bonnette v. California Health and Welfare Agency, 704 F.2d 1465, 1473 (9th Cir. 1983). Further, where the Court accepts a party's calculations of reasonable attorneys' fees upon reconstructed records based upon material such as agendas, summaries of meeting and notes and time sheets of co-counsel, such conclusion is not an abuse of discretion. Davis v. City of San Francisco, 976 F.2d 1536 (9th Cir. 1992). Although contemporaneous time keeping is preferable, a court may rely on reconstructed time records so long as the court concludes that the record are accurate and the time billed does not appear to be inflated. Defenbaugh v. BC & Asssocs., 2004 U.S. Dist. LEXIS 16256, 34-35 (D. Cal. 2004); see also Jean v. Nelson, 863 F.2d 759, 771 (11th Cir. 1988) ("contemporaneous time records are not indispensable where there is other reliable evidence to support a claim for attorney's fees"); Dennis v. Warren, 779 F.2d 245, 249 (5th Cir. 1985) ("...we have not held that contemporaneous time sheets are indispensable"); United States v. Mueller, 2004 U.S. Dist. Lexis 29152 (D.N.Y 2004) (Court awarded attorneys fees where it was "clear that [the attorney] invested some time working on the plaintiff's case,"

1

2  though counsel did not provide contemporaneous time record or billing statements). The

3  absence of these records is not fatal to counsel's fee claim. Defenbaugh, supra at 34-35.

4  32.    The Court may further consider the record before it, which the Court itself has

5  repeatedly noted is quite extensive, as well as the credibility of counsel when assessing the

6  reasonableness of claimed fees. Heasley v. Commissioner, 967 F.2d 116, 124 (5th Cir. 1992).

7  Indeed, the Court may award fees despite apparent vagueness regarding the exact breakdown

8  of fees claimed, based in part upon the Court's familiarity with the case, including the quality of

9  the attorneys' work. Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 327 (5th Cir. 1995).

10  See also In re Marriage of Cueva, 86 Call.App.3d 290, 301 (Cal. Ct. App. 1978) ("when the trial

11  court is informed of the extent and nature of the services rendered, it may rely on its own

12  experience and knowledge in determining their reasonable value"); Jones v. Jones, 135 Cal.

13  App. 2d 52, 63 (Cal. Ct. App. 1955) ("Direct evidence of the reasonable value of the attorney's

14  fee did not have to be introduced. Evidence as to such reasonable value of the services is

15  necessarily before the trial court when it hears a case. The trial judge, being a lawyer, can

16  readily ascertain from the presentation of the case the approximate time spent in preparation

17  and trial, and the relative financial circumstances of the parties").

18  33. In addition, at the Court's direction, I and other attorneys who participated in

19

20  preparation for this case are prepared to testify as to the amount of time and labor expended to

21  achieve the results obtained in this case on behalf of the EIC class. See Glendora Cmty.

22  Redevelopment Agency v. Demeter, 155 Cal. App. 3d 465 (Cal. Ct. App. 1984) (where the

23  Court accepted as sufficient evidence to support an award of attorneys fees testimony of an

24  attorney as to the number of hours worked, even in the absence of detailed time records);

25  Margolin v. Regional Planning Com., 134 Cal. App. 3d 999 (Cal. Ct. App. 1982) (where Court

26

27

28

PHILLIPS & BORDALLO

held there was sufficient evidence to support an award of fees despite the lack of detailed time records where attorneys attested under oath to hours worked); Steiny & Co. v. California Electric Supply Co., 79 Cal.App.4th 285, 293 (2000) ("[a]n attorney's testimony as to the number of hours worked is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records"). Intuitively, testimony regarding hours worked must be based on the attorney's personal knowledge. Mandirossian & Associates, Inc. v. Ersoff, 153 Cal. App. 4th 257, 270-273 (Cal. Cat. App. 2007).

34. Class Counsel intends to comply with this Court's orders on how best to supply the Court with information it deems necessary to its determination regarding attorneys' fees. The lack of contemporaneous billing statements notwithstanding, Counsel will, in good faith, prepare any and all additional information the Court requires, pending further direction by the Court regarding what means available will be best suited to the Court's inquiry.

35. Further your affiant sayeth naught.

Respectfully submitted this 12th day of October, 2007.

MICHAEL F. PHILLIPS