SHANNON TAITANO, ESQ.
OFFICE OF THE GOVERNOR OF GUAM
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
Telephone: (671) 472-8931
Facsimile: (671) 477-6666

EDUARDO A. CALVO, ESQ.
KATHLEEN V. FISHER, ESQ.
RODNEY J. JACOB, ESQ.
DANIEL M. BENJAMIN, ESQ.
CALVO & CLARK, LLP
Attorneys at Law
655 South Marine Corps Drive, Suite 202
Tamuning, Guam 96913
Telephone: (671) 646-9355
Facsimile: (671) 646-9403

*Attorneys for the Government of Guam
and Felix P. Camacho, Governor of Guam*

RAWLEN M.T. MANTANONA, ESQ.
RAYMOND L. SOUZA, JR., ESQ.
CABOT MANTANONA LLP
BankPacific Building, 2nd Floor
825 S. Marine Corps Drive
Telephone: (671) 646-2001
Facsimile: (671) 646-0777
Attorneys for Respondents *Lourdes M. Perez and Artemio B. Ilagan*

**FILED**
DISTRICT COURT OF GUAM
OCT 1 2 2007
JEANNE G. QUINATA
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, et. al., <br><br> Petitioners, <br><br> -v- <br><br> FELIX P. CAMACHO, etc., et. al. <br><br> Respondents. | CIVIL CASE NO. 04-00006 <br> (Consolidated with Civil Case Nos. 04-00038 and 04-00049) <br><br> **BRIEF OF THE GOVERNOR, GOVERNMENT, AND DIRECTORS OF DOA AND DRT REGARDING THE APPLICABILITY OF 26 U.S.C. § 7430** |

**ORIGINAL**

Pursuant to the Court's September 13, 2007 Order, Governor of Guam Felix P. Camacho, the Government of Guam, and the Directors of the Department of Administration and Revenue & Taxation (collectively, the "Government") hereby respectfully submit this brief regarding the applicability of 26 U.S.C. § 7430.

## INTRODUCTION

By its Order dated September 13, 2007, the Court has asked the parties to brief the applicability of 26 U.S.C. § 7430, a fee-shifting statute that permits a prevailing party in a tax refund action to recover costs and fees from the government subject to certain statutory terms. In response thereto, the Government responds as follows:

First, section 7430 can apply to a tax refund action in Guam; the only limitation is that its terms must be strictly met because it is a waiver of sovereign immunity.

Second, although the Court is not mandated to apply a fee-shifting statute when a common fund recovery is sought, the Court *has the discretion to do so* if in the best interest of the class (and assuming such a recovery is supported here). Further, even if the Court does not or cannot apply the fee-shifting statute, the Government believes that, under Ninth Circuit precedent, the Court should calculate the amount of fees that would be awarded under the fee-shifting statute to ensure that any award from the alleged "common fund" is reasonable when compared to any fees available under the statute.

Third, with regard to application of the statute in this case, it is the Government's view that most of the requirements are met. However, one crucial requirement for such fee-shifting cannot be satisfied; such recovery is not permitted where the Government's conduct is "substantially justified." Here, the Government's conduct in this litigation was substantially justified because its defenses to the suit were, at minimum, reasonable in light of novel factual circumstances regarding exhaustion and the statute of limitations. However, the Court can still

look to what the recovery under the fee-shifting statute would have been to help determine what would have been a reasonable fee here.[1]

## ARGUMENT

### I. The Government Does *Not* Contest that 26 U.S.C. § 7430 Can Be Applied, But Because It Is a Waiver of Sovereign Immunity, Its Terms Must Be Strictly Applied

Where an entity enjoys sovereign immunity, such sovereign immunity includes immunity from any award of attorneys' fees and costs against it absent an express waiver of such sovereign immunity. *Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991). The government of Guam enjoys broad sovereign immunity, which cannot be waived unless expressly consented to by the legislature of Guam. *Marx v. Govt. of Guam*, 866 F.2d 294, 298 (9th Cir. 1989) ("controlling authority and the legislative history of the Organic Act compel our holding that the government of Guam has inherent sovereign immunity"). Accordingly, the Government can only be subject to an award of attorneys' fees and cost if authorized by statute.

In the present case, the Government of Guam does not dispute that 26 U.S.C. § 7430 is an applicable statute waiving its sovereign immunity from an award of attorneys' fees and costs because it provides that, under certain delineated circumstances and terms, a taxpayer can recover attorneys fees and costs in, *inter alia*, a tax refund action. *See* 26 U.S.C. § 7430(a). Further, 48 U.S.C. § 1421i(d) and 41 U.S.C. § 1421h make such sections of the Internal Revenue Code (Title 26 of the U.S.C.) applicable to Guam as part of the Guam Territorial Income Tax, subject only to certain exceptions that the Government does not contend could apply here. *See Gumataotao v. Director of Dept. of Revenue and Taxation*, 236 F.3d 1077 (9th Cir. 2001). Thus, the Government does not contest that a taxpayer seeking a tax refund who meets the requirements of section 7430 can obtain an award of attorneys' fees and costs.

---

[1] Should the defense be overcome, the Government wishes to emphasize its right to review and challenge the specific billings being submitted concurrent with this brief by plaintiffs' counsel, and *does seek the opportunity to submit formal written objections*, if necessary, to any improper billings to ensure that all such billings are reasonable and otherwise in compliance with the governing statutory requirements.

However, it is vital to note that: (1) such an award is only possibly *if all requirements of that statute are met*; and (2) such an award can only issue *on the terms permitted by the statute*. The reason for this is that it is a waiver of sovereign immunity, and such waivers must be strictly construed in favor of the sovereign. *Ardestani*, 502 U.S. at 137; *see also Smith v. Brady*, 972 F.2d 1095, 1100 (9th Cir. 1992) (setting aside award of attorney's fees against government in tax-related case under alternative statute because in tax cases section 7430 is the "exclusive method" and its requirement of exhaustion was not met).

## II. The Existence of a Fee-Shifting Statute Does Not Per Se Foreclose Recovery from the Class, but on these Facts, the Court Should Consider Its Application

Given the existence of 26 U.S.C. § 7430 as a fee shifting statute, the next issue is what impact that statute has on plaintiffs' counsel's effort to recover fees, not under the fee-shifting statute, but instead from the $90 million settlement amount being paid to the EIC Class. That analysis should begin with *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003), which is the leading Ninth Circuit case on the issue of the availability of recovery of attorneys' fees from the class where there is a fee-shifting statute – but a case that considered the question under very different circumstances, as will be discussed.

In *Staton*, a class of plaintiffs sued Boeing for discrimination and settled for $7 million, certain injunctive relief, and $4 million in attorneys' fees that were justified in the settlement (based on a construction of a "putative" common fund valuing the relief in the case) as being around 28% of the relief obtained. *Id.* at 944-45, 966. This agreement as to attorneys' fees was reached even though the plaintiffs could have instead asserted a claim under a fee shifting statute, but agreed to waive that claim as part of the settlement. *Id.* at 966.

The Ninth Circuit reached a number of holdings in that case discussing why agreeing to this fee award was improper, but a few are key here. To begin with, the court established that there is no *per se* prohibition on a plaintiffs' attorney seeking a recovery from the class even if a fee-shifting statute exists, absent a Congressional ban on such a recovery. *Id.* at 967-68. Accordingly, it is permissible, at least in theory, for plaintiffs' counsel in this case to seek recovery from the class even though there is a fee-shifting statute.

*CIVIL CASE NO. 04-00006* 3
*(Consolidated with Civil Case Nos. 04-00038 and 04-00049)*

*However*, that does not mean that plaintiffs' counsel can simply disregard the fee-shifting statute, and it does not mean that this Court is forbidden from choosing to apply the fee-shifting statute of its own accord in lieu of the recovery sought from the $90 million. In *Staton*, the Ninth Circuit went on to hold that the particular arrangement in that case was unlawful because the agreed-upon amount of fees was not shown to be properly related to the amount of fees available under the fee shifting statute: "By negotiating fees as an integral part of the settlement rather than applying to the district court to award fees from the fund created, Boeing and class counsel employed a procedure permissible **if fees can be justified as statutory fees payable by the defendant**." *Id.* at 945 (emphasis added). The problem was that "Boeing and class counsel did not, however, seek to justify the attorneys' fees on this basis" and, for this and other reasons, the award (and the settlement agreeing to the award) was overturned. *Id.* In other words, where the plaintiffs' counsel and the defendant had agreed to eschew using a fee-shifting statute in favor of the plaintiffs, but had agreed to a set amount of fees, they had a duty to nonetheless show the court what the calculation of attorneys' fees would have been under the fee-shifting statute, and that the amount sought equaled that amount. *Id.*

It is important to acknowledge that the Ninth Circuit in *Staton* did not require that the calculation of what would be owed under the fee-shifting statute be made in all cases. But it is equally important to understand why that exception that permits the amount not to be calculated does not apply here. Specifically, in *Staton*, the Ninth Circuit went on to recognize that the parties to a settlement can create a lump sum, agree that the plaintiffs waive their rights to statutory fees, and then agree to have the plaintiffs' counsel petition the court for a common fund recovery -- which could be by the percentage or lodestar methods, and would be governed simply by the normal rules in such cases. *See Staton*, 327 F.3d at 971. This is acceptable because, where the defendant has obtained a waiver of the fee-shifting statute under which the fees can be recovered, it can be ***presumed on those facts that the lump sum includes the value of the statutory fees that were waived.*** *Id.* Thus, so long as the Court can assume that the lump sum

includes the value of the waived statutory fee-shifting claim, the exact value of that claim need not be calculated.[2]

Thus, what is crucial here is the unique nature of this settlement, where the Government did not require a release of the statutory fee-shifting statute as part of the Settlement. Unlike a corporate defendant, the Governor of Guam has always prized ensuring the maximum recovery for the working class of Guam that he believed the Government could afford (but limited by his duty to assert meritorious defenses to protect the Government if needed). Accordingly, this led to a rather unusual fact pattern not considered in *Staton* – the Government parties never sought and never obtained any assurance that the lump sum recovery of $90 million would include any claim for attorneys' fees and costs from the Government. They did this because they were never willing to reach any agreement as to the amount of fees to be paid, as they always wanted to be in a position to contest any request for attorneys' fees they believed was excessive so that they could ensure the maximum recovery for the EIC Class.

---

[2] As the court had explained earlier, in ordinary settlement negotiations, "the defendant's determination of the amount it will pay into a common fund will necessarily be informed by the magnitude of its potential liability for fees under the fee-shifting statute, as those fees will have to be paid after successful litigation and could be treated at that point as part of a common fund against which the attorneys' fees are measured. Conversely, the prevailing party will expect that part of any aggregate fund will go toward attorneys' fees and so can insist as a condition of settlement that the defendants contribute a higher amount to the settlement than if the defendants were to pay the fees separately under a fee-shifting statute." *Id.* at 969. Thus, based on these assumptions, the court summarized as follows:

> We hold, therefore, that in a class action involving both a statutory fee-shifting provision and an actual or putative common fund, the parties may negotiate and settle the amount of statutory fees along with the merits of the case, as permitted by *Evans*. In the course of judicial review, the amount of such attorneys' fees can be approved if they meet the reasonableness standard when measured against statutory fee principles. Alternatively, the parties may negotiate and agree to the value of a common fund (which will ordinarily include an amount representing an estimated hypothetical award of statutory fees) and provide that, subsequently, class counsel will apply to the court for an award from the fund, using common fund fee principles. In those circumstances, the agreement as a whole does not stand or fall on the amount of fees. Instead, after the court determines the reasonable amount of attorneys' fees, all the remaining value of the fund belongs to the class rather than reverting to the defendant.

*Staton*, 327 F.3d at 972.

As a result, the $90 million at issue here cannot be deemed (without further analysis as to whether fee-shifting could apply) to already include compensation to the EIC Class for waiver of the fee-shifting statute because the statute was never waived. For this reason, plaintiffs' counsel in their petitions cannot simply apply the general rules of fee recovery from a common fund, and disregard the existence of the statutory fee mechanism; that would be the same error committed in *Staton*, where a set amount was assessed for attorneys fees from the alleged common fund without any consideration of the available recovery under the fee-shifting statute. *See Staton*, 327 F.3d at 945. Instead, consideration must be given to what the reasonable fee would be under the statutory fee-shifting statute, since it has only plaintiffs' counsel's apparent choice to disregard the statute that is preventing such a claim from at least being asserted, much as is *Staton* the claim was prevented solely by the plaintiffs' and defendant's agreement. *See id.* (holding that on such facts, any recovery from the alleged common fund must be justified by comparison to the recovery possible under the fee-shifting statute).[3]

### III. Application of Section 7403 in This Case

The next question is whether section 7403 actually would support fee shifting in this case. The Governor believes it would not, because its actions in the litigation were substantially justified.

#### A. Whether the Four Basic Requirements For Applying Section 7403 Are Met

The first issue is whether a section 7403 recovery is possible in this case. The "An award of litigation costs may be made where the taxpayer (1) is the "prevailing party", (2) exhausted

---

[3] As will be explained below, the Government does not believe that the fee-shifting statute ultimately can be successfully applied to this case because its litigation position was substantially justified. In the event, however, the Court disagreed, the Government acknowledges that the Court would then have the discretion to choose between an award from the common fund (either as a percentage or lodestar) or an award under the fee-shifting statute. *Brytus v. Spang & Co.*, 203 F.3d 238, 247 (3d Cir. 2000) (district court acted within its discretion in utilizing a fee-shifting statute over common fund recovery because of its concern that "an award of fees from the common fund would deprive the beneficiaries of a portion of the award, whereas it was defendant Spang who was responsible for the statutory fee.").

available administrative remedies, (3) did not unreasonably protract the judicial proceeding, and (4) claimed reasonable litigation costs. Sec. 7430(a), (b)(1), (3), and (c). These requirements are conjunctive, and failure to satisfy any one will preclude an award of costs to petitioner." *Caspian Consulting Group, Inc. v. C.I.R.*, T.C. Memo. 2006-85, WL 1083443, at *1 -3 (U.S. Tax Ct. 2006) (citing *Minahan v. Com'r*, 88 T.C. 492, 497, 1987 WL 49279 (1987)).

### 1. The Class (and Their Counsel) May Be a Prevailing Party – *Simpao* Counsel Are Not; However, the Government's Position Was Substantially Justified

The initial issue is whether the plaintiffs are "prevailing parties." *See* 26 U.S.C. § 7430(a). The answer depends upon which group of plaintiffs' attorneys.

As to counsel for *Santos* and *Torres*, they can meet the definition of a "prevailing party" because they obtained a settlement agreement that "materially altered" the legal relationship between the parties and that will be subject to the Court's continued enforcement. *See Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 604 (2001) ("In addition to judgments on the merits, we have held that settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees.") (citing *Maher v. Gagne*, 448 U.S. 122 (1980)). However, *Simpao* counsel did not obtain a settlement or a judgment on the merits in their favor. No doubt, they may argue that they participated in settlement discussion; however, these "settlement efforts did not bear fruit; they [thus] cannot be compensated for that time." *Cobell v. Norton*, 407 F. Supp. 2d 140, 156 (D.D.C. 2005) (decision under EAJA).[4]

---

[4] This case, and certain others cited in the brief, were decided under the Equal Access to Justice Act ("EAJA"). Such cases are cited because "the reasoning employed by the courts under the attorneys' fees provision of the [EAJA] applies equally to review under section 7430." *Huffman v. C.I.R.*, 978 F.2d 1139, 1143 (9th Cir. 1992). However, one important difference is that the EAJA contains language permitting an award at market rates, instead of statutory rates, where there is a finding of "bad faith," *Brown v. Sullivan*, 916 F.2d 492, 495-96 (9th Cir. 1990), whereas section 7430 does not.

But that does not complete the analysis. 26 U.S.C. § 7403(c)(4)(B) provides that fees and costs cannot be recovered by a prevailing party if the position of the Government was "substantially justified."

In *Pierce v. Underwood,* 487 U.S. 552, 565 (1988), the United States Supreme Court defined "substantially justified" as "justified in substance or in the main-that is, justified to a degree that could satisfy a reasonable person." The Ninth Circuit has held that the burden to demonstrate substantial justification rests on the government. *Pacific Fisheries Inc. v. United States,* 484 F.3d 1103, 1107-08 (9th Cir. 2007). However, the Ninth Circuit also has held that the relevant standard is whether the position in the litigation was reasonable, not whether the pre-litigation conduct was reasonable. *Id.* at 1108 ("Although we acknowledge that there is a serious question whether this prelitigation conduct was arguably unreasonable, the applicable statutory subsection pertains to "a judicial proceeding," not to the government's prelitigation conduct.") (citing 26 U.S.C. § 7430(c)(7)(A)). Thus, the question here is whether the Government's litigation conduct was reasonable.

The Government believes its conduct was justified to a degree that could satisfy a reasonable person. Here, although the case was settled, such a settlement is by no means conclusive of the issue. *See Pierce,* 487 U.S. at 568 ("Respondents contend that the lack of substantial justification for the Government's position was demonstrated by its willingness to settle the litigation on unfavorable terms. Other factors, however, might explain the settlement equally well-for example, a change in substantive policy instituted by a new administration. The unfavorable terms of a settlement agreement, without inquiry into the reasons for settlement, cannot conclusively establish the weakness of the Government's position. To hold otherwise would not only distort the truth but penalize and thereby discourage useful settlements.").

The Government will not burden the Court with a complete re-capitulation of its arguments on the merits barring a formal motion under section 7430. However, the facts show that there was justification at law and in the facts for the Government's position. For example, this Court (through the various prior judges who have sat on this case) repeatedly recognized that the statute of limitations defense in this case might well succeed. (*E.g. Simpao* Docket No. 148-1

(Sept. 14, 2005 Order) at 6 n.5; *Torres* Docket No. 64 (Sept. 29, 2005 Report and Recommendations of Magistrate Judge) at 9:24-27). Indeed, the issue of the statute of limitations under section 6532 was ultimately resolved by the Government's voluntary waiver, and not an adverse finding. (*See* Dock. 384 at 2). As has been repeatedly briefed, the issue of class certification in a tax refund action also was extremely novel. (*See* Dock. Nos. 448 at 25-26). And, finally, even the issue of exhaustion of remedies is one that certainly led to an unprecedented ruling that a tax form that does not contain an EIC claim nonetheless preserved that claim – a novel ruling on admittedly novel facts. (*See Simpao* Dock. 76 (summarizing this and other defenses)). The Government thus believes its positions were substantially justified under the law.

**2.    Exhaustion Is Not Contested for Settlement Purposes**

Assuming, *arguendo*, that the other requirements were met, the next requirement is exhaustion. 26 U.S.C. § 7403(b)(1). The Government is not contesting exhaustion of claims for purposes of this settlement.

**3.    Protraction of Litigation Cannot Be Fully Addressed Absent the Detailed Billings that Are Only Now Being Submitted**

Again, assuming, *arguendo*, that the other requirements were met for an award under section 7430, under section 7430(b)(3), "[n]o award for reasonable . . . costs may be made . . . with respect to any portion of the . . . court proceeding during which the prevailing party has unreasonably protracted such proceeding." Here, the plaintiffs' counsel have yet to submit detailed billings (which are due concurrently with this brief), and so the Government cannot know for sure whether plaintiffs' counsel will seek recovery of costs with respect to portions of the litigation that were protracted.

However, more than a few examples do exist. For instance, both *Torres* counsel and *Simpao* counsel[5] protracted the litigation with their unsuccessful and unmerited motions to intervene that were denied in August of 2004. They continued to protract the litigation with

---

[5] Assuming *arguendo Simpao* counsel could qualify under section 7403, which as stated they cannot as they are not a prevailing party.

numerous unnecessary motions even after Governor Camacho's entry into a term sheet, and then, settlement in May and June 2005. *Simpao* counsel in particular sought relief in its partial summary judgment that was denied as unwarranted; filed for class certification after a settlement was reached; unsuccessfully obstructed the Governor's ability to be heard and intervene in the *Simpao* action; and unsuccessfully opposed preliminary certification. Indeed, as previously detailed in opposing *Simpao* counsel's motion for attorneys' fees, virtually every action they claim they took to benefit the class achieved no such benefit, but rather only unnecessarily increased costs. Thus, after bills are submitted, and before any award could be entered under section 7430, the Government should receive an opportunity to respond to those bills and identify any billings for matters that protracted the litigation, assuming any fees were to be awarded under the statute.

### 4. Only *Reasonable* Litigation Costs Can Be Reimbursed, But This also Cannot Be Addressed Absent the Detailed Billings that Are Only Now Being Submitted

Finally, again assuming, *arguendo*, that the other requirements were met, any award under section 7403 can only include <u>reasonable</u> court costs, expert costs, necessary reports, and attorneys fees (at the statutory rate applicable for each year). *See* 26 U.S.C. § 7403(c)(1). Thus, fee requests must be scrutinized for hours that are "excessive, redundant, or otherwise unnecessary." *United States v. Real Property Known As 22249 Dolorosa St.*, 190 F.3d 977, 985 (9th Cir.1999) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 434. Indeed, an outright denial of fees "may be justified when the party seeking fees declines to proffer any substantiation in the form of affidavits, timesheets or the like." *Jordan v. United States Dep't. of Justice*, 691 F.2d 514, 518 (D.C. Cir. 1982)

Here, the Court has ordered that plaintiffs' counsel submitted detailed billing statements on the same date as this brief is due, and presumably they will do so. But, of course, until it reviews those statements, it is impossible for the Government to anticipate what objections it may

have to the billing statements, which is why it requests an opportunity to respond if the Court were to determine that any fees should be awarded under section 7430.[6]

### B. No Special Factors Support an Enhancement Here

Assuming 26 U.S.C. § 7403 was applied, or assuming it is examined as a comparison, there is one final issue – what the hourly billing rate for attorneys' fees will be. Under section 7403(c)(1)(B)(iii), the statutory rate of recovery is fixed at $125 per hour, as then adjusted for inflation. The Ninth Circuit has held that fees must be compensated at the rate applicable to the year. *Sorenson*, 239 F.3d at 1149. For example, for 2006 the rate was $160 per hour, *see* Rev. Proc. 2005-70 (available at http://www.irs.gov/pub/irs-drop/rp-05-70.pdf), thus all fees for 2006 are compensated at that rate.

This rate of $125 per hour as adjusted for inflation is the rate that applies, "unless the court determines that a special factor, such as the limited availability of qualified attorneys for such proceeding, the difficulty of the issues presented in the case, or the local availability of tax expertise, justifies a higher rate." 26 U.S.C. § 7403(c)(1)(B)(iii). The question, then, in this case

---

[6] Even without reviewing the bills, several considerations should be kept in mind. To begin with, the court "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. Further, certain fees that may not be "unreasonable between a first class law firm and a solvent client, are not [always] supported by indicia of reasonableness sufficient to allow us justly to tax the same against the United States." *In re North (Shultz Fee Application)*, 8 F.3d 847, 852 (D.C.Cir.1993) (per curiam). Hours to be excluded from reimbursement calculations also include hours that are poorly documented or the result of overstaffing are also excludable. *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001). Bills thus must have a required degree of specificity. *Cabrera v. Fischler*, 814 F. Supp. 269, 289-90 (E.D.N.Y.1993), *aff'd in part, remanded in part on other grounds*, 24 F.3d 372 (2d Cir.1994) (for entries such as "staff meeting," "talk w/," and "processed documents the court should not award the full amount requested"); *Weinberger v. Great Northern Nekoosa Corp.*, 801 F. Supp. 804, 829 (D.Me.1992) ("The Court will disallow hours for such activities as 'research,' 'attention to matter,' 'draft letter,' and 'strategize' in the absence of more detailed time entries"). The Government also would object to any "block billing." *See Cobell*, 407 F. Supp. 2d at 159-60 (surveying responses to block billing by various courts, which have ranged from outright denial to blanket or percentage reductions in the amount of fees allowed). Finally, certain categories are per se unacceptable in the fee-shifting context. For example, "purely clerical or secretarial tasks should not be billed at a paralegal rate regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). Whether any specific time or costs in this case will fall within any unacceptable categories would, of course, depend upon review of such bills.

is whether a "special factor" exists here that would justify a fee in excess of the statutory cap. No such factor does.

Under the comparable provisions of EAJA, the Supreme Court has held that an award in excess of the statutory rate is ***not*** permissible simply because of an extraordinary generalized knowledge or ability, or because the market rate is higher:

> If "the limited availability of qualified attorneys for the proceedings involved" meant merely that lawyers skilled and experienced enough to try the case are in short supply, it would effectively eliminate the [statutory] cap-since the "prevailing market rates for the kind and quality of the services furnished" are obviously determined by the relative supply of that kind and quality of services.

*Pierce*, 487 U.S. at 571. Rather,

> [T]he "special factor" formulation suggests Congress thought that the statutory rate] was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be. If that is to be so, the exception for "limited availability of qualified attorneys for the proceedings involved" must refer to attorneys "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question-as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language. Where such qualifications are necessary and can be obtained only at rates in excess of the $75 cap, reimbursement above that limit is allowed.

*Id*. at 572.

Thus, the Ninth Circuit has held that the concept of distinctive knowledge of skill does not mean ordinary specialization in tax cases (though none of the plaintiffs' lawyers claim such knowledge here anyway). *Huffman v. C.I.R.*, 978 F.2d 1139, 1150 (9th Cir. 1992) (upholding a Tax Court ruling that "general tax expertise does not qualify as a 'special factor' warranting an enhancement of the statutory fee award...."). Indeed, as the Fifth Circuit has held, a "special factor" means "nonlegal or technical abilities possessed by, for example, patent lawyers and experts in foreign law, as distinguished from other types of substantive specializations currently proliferating within the profession." *Powers v. C.I.R.*, 43 F.3d 172, 183 (5th Cir. 1995) (emphasis added); *see United States v. Guess*, 425 F. Supp. 2d 1143, 1155-56 (S.D. Cal. 2006) (following *Powers*).

Here, none of the attorneys have claimed anything more than broad level of general lawyerly knowledge, a factor that has been expressly held to be insufficient in tax cases. *See Powers*, 43 F.3d at 183 ("Although the Tax Court found that Powers needed the services of a tax attorney as well as an attorney with 'an extraordinary level of general lawyerly knowledge,' these findings do not justify an increased award under § 7430."); *see Guess*, 425 F.Supp.2d at 1153 ("It is beyond dispute that the Foundation was required to engage litigation counsel with tax law expertise and a high level of legal competence in complex litigation matters, and that a number of its billing attorneys were eminently suited to the task, but neither a tax specialty nor counsel's litigation skills is among the 'special factors' adequate to support an upward departure from the Section 7430 hourly rate cap.").

Next, plaintiffs' counsel could assert that the statutory rate is below the market rate. As stated, however, the Supreme Court has held that this factor is inadequate, and that the statutory rate must instead apply. *Pierce*, 487 U.S. at 572 (whatever the local or national market might be, Congress set a cap it determined was sufficient public reimbursement for lawyers fees); *Huffman*, 978 F.2d at 1149 (applying this rule in context decided under 26 U.S.C. § 7430) ("In *Pierce*, the Supreme Court interpreted a substantially identical provision of the EAJA and held that 'the prevailing market rate' is not a 'special factor' which would justify an upward departure from the [statutory rate] rate set by Congress."); *Guess*, 425 F.Supp.2d at 1155 (same).

Finally, plaintiffs' counsel may request an enhancement based upon the "contingency" nature of their recovery. However, in *City of Burlington v. Dague*, 505 U.S. 557, 562-67 (1992), the Supreme Court held that such enhancement is not permissible in the fee-shifting context. *See Staton*, 327 F.3d at 965 & n.17 (interpreting *City of Burlington* as applicable to federal fee-shifting statutes, but not common fund recoveries). In sum, there is then nothing that would support an enhancement under 26 U.S.C. § 7430 or governing precedent here, and any award of fees would be at the statutory rate should such an award be considered.

## CONCLUSION

Based on the forgoing discussion, the Government believes that section 7403 has application to this action as a comparison to ensure any common fund recovery (whether

percentage of the fund or lodestar) is reasonable when measured against the statutory fee-shifting recovery that plaintiffs' counsel have declined to pursue, although the Government also believes that such pursuit would be unsuccessful.

Dated this 12th day of October, 2007.

**OFFICE OF THE GOVERNOR OF GUAM**
**CALVO & CLARK, LLP**
Attorneys for Respondents Felix P. Camacho,
Governor of Guam and the Government of Guam

By: _____
　　　DANIEL M. BENJAMIN

**CABOT MANTANONA LLP**
Attorneys for Respondents Lourdes M. Perez and Artemio B. Ilagan

By: _____
　　　RAYMOND L. SOUZA, JR.