FILED
DISTRICT COURT OF GUAM

OCT 1 9 2007 nb

JEANNE G. QUINATA
Clerk of Court

DISTRICT COURT OF GUAM
TERRITORY OF GUAM

1

2

3

| | |
|---|---|
| JULIE BABAUTA SANTOS, *et al.,* | Civil Case No. 04-00006 |
| Petitioners, | |
| v. | |
| FELIX P. CAMACHO, *et al.,* | |
| Respondents. | |

4

5

6

7

8

| | |
|---|---|
| CHARMAINE R. TORRES, *et al.,* | Civil Case No. 04-00038 |
| Plaintiffs, | |
| v. | |
| GOVERNMENT OF GUAM, *et al.,* | |
| Defendants. | |

9

10

11

12

13

| | |
|---|---|
| MARY GRACE SIMPAO, *et al,* | Civil Case No. 04-00049 |
| Plaintiffs, | |
| v. | **OBJECTORS SIMPAO AND CRUZ' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| GOVERNMENT OF GUAM, | |
| Defendant, | |
| v. | |
| FELIX P. CAMACHO, Governor of Guam | |
| Intervenor-Defendant. | |

14

15

16

17

18

19

20

21

22

23

24

25

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 528    Filed 10/19/2007    Page 1 of 34

ORIGINAL

I.    Introduction

1.0.    Before the Court is a motion seeking final approval of a proposed settlement that would effectively resolve three consolidated class actions each asserting claims against the Government of Guam (the "Government") for its decision not to pay Earned Income Tax Credits (EITC).

1.1.    These separate class actions are denominated in part, and the Court will refer to them as, *Santos*, *Torres* and *Simpao,* or collectively as the EITC Actions.

1.3.    The motion is presented and the proposed settlement supported by the *Santos* and *Torres* Plaintiffs and the Defendant, the Government of Guam (hereinafter the "Settling Parties").[1]

1.4.    The *Simpao* Plaintiffs object to the settlement and ask the Court to deny final approval and appoint their counsel as lead counsel to further pursue these consolidated matters through an alternative settlement or litigation.

1.5.    The Court finds that the proposed settlement, when viewed as a whole, is not "fair, reasonable and adequate." As such, the Settling Parties' Motion for Final Approval is denied.

1.6.    The Court also finds that at this juncture in the case, and in consideration of the totality of the circumstances, the proposed classes in these consolidated actions will be best served by appointment of *Simpao* counsel as Class Counsel.

---

[1] Although the Santos and Torres actions name the Governor of Guam and several agencies as defendants in addition to the Government of Guam, pursuant to          , only the later is properly named as a defendant in tax refund cases such as these. The Court recognizes, however, that it is the Governor of the Guam who has assumed the role of defending these cases on behalf of the Government.

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 528    Filed 10/19/2007    Page 2 of 34

1.7.    The Court notes its prior appointment of *Santos* counsel as interim class counsel was for the purpose of pursuing the proposed settlement at issue here. That effort having concluded, it is appropriate for the Court to reconsider its appointment of Class Counsel at this time.

1.8.    As such the Court removes *Santos* counsel from its role as Interim Class Counsel and appoints *Simpao* counsel as Class Counsel for these consolidated actions.

1.9.    The Court directs Class Counsel to work with the other Plaintiffs counsel and the Government to prepare a Joint Case Management Plan and Schedule recommending how these actions should proceed. The Plan shall be submitted to this Court by _____.

1.10.    Additionally, the Court finds the following Facts to be true;

II.    Facts of the Case

    *A. The Earned Income Credit Program*

2.0.    The background facts underlying this case are largely undisputed. They have been summarized by Guam's Supreme Court in *In Re Request of I Mina' Bente Sing 'ko Na Liheslaturan Guahan Relative to the Application of the Earned Income Tax Credit Program to Guam Tax Payers ("the EIC question")*, 2001 Guam 3 (Guam Terr. 2001)(hereinafter "*In Re the EIC Question*") and in this Court's opinion granting the Simpao Plaintiffs summary judgment.

2.1.    Guam has not promulgated its own income tax code. Instead, the federal Internal Revenue Code is "mirrored" on Guam and is designated the Guam Territorial Income Tax (GTIT).

2.2.    This mirroring includes any modification, enactment or repeal of revenue code sections that the United States may make.

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 3

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

1  2.3.    The EITC  program that is the subject of this litigation was enacted in part to

2  provide special tax benefits to low-income workers. *See Sorensen v. Secretary of the*

3  *Treasury of the United States, 475 U.S. 851, 106 S.Ct. 1600 (1986).*

4  2.4.    The EOTC is a part of the federal code and therefore mirrored on Guam.

5  2.5.    In 1989 the Attorney General of Guam issued an opinion that the EITC was

6  applicable on Guam and the government was obligated to pay it. *See Attorney General*

7  *Memorandum Opinion No. DOA 89-0750.*

8  2.6.    In 1996 however the Attorney General reversed his opinion and concluded that

9  the EITC does not apply on Guam and that the government need not pay it.

10  *Memorandum Opinion No. DRT/DOA 96-001.*

11  2.7.    Predictably, Guam stopped paying the EITC refunds.

12  2.8.    In apparent response to this reversal, the Guam Legislature enacted a public law

13  enacting the EITC program on Guam as part of the Guam law.  Additionally, the

14  Legislature established two funds to finance the EITC program; the  Income Tax Refund

15  Reserve Fund Law (the *Reserve*) and the Income Tax Refund Efficient Payment Trust

16  Fund (the *Trust*).

17  2.9.    In response to these acts of the Legislature the Government allowed qualified

18  Guam tax payers to file EIC claims for tax years 1997 and 1998 and the tax return forms

19  provided a mechanism to do so.

20  2.10.   From 1999 onward however, the means to claim an EITC was removed from

21  return forms by placing cross hatching over the EITC line and/or stating that the EITC

22  does not apply on Guam .

23

24

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 4

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

25

1 2.11. In May 2000, the Guam Legislature sought and received declaratory judgment

2 from Guam's Supreme Court that Guam taxpayers are entitled to the EITC and that the

3 government must pay it.

4 2.12. Although the federal EITC program was mirrored on Guam, that it was codified

5 in Guam law and that the Supreme Court stated it applied on Guam, the government

6 continued its practice of obliterating the EIC section on its tax forms and refused to pay

7 the EITC.

8   *B. The Reserve and Trust Funds*

9 2.13. In 1994 the Guam Legislature mandated a portion of income tax receipts be

10 reserved in a special fund "in order to accumulate sufficient cash reserves to pay

11 projected income tax refunds, earned income tax credits and child tax credits in a timely

12 manner." *11 Guam Code Ann. § 50101 et seq (the Reserve)*.

13 2.14. Under the Reserve Fund Law, the Director of Revenue and Taxation, in

14 consultation with the Director of Administration and the Director of the Bureau of

15 Budget and Management, is required every year to establish a formula, based on the

16 statistical average of refunds and credits issued in the prior three years, to determine the

17 portion of tax receipts to deposit in the Reserve.

18 2.15. Monies deposited in the *Reserve* are not subject to the Governor's transfer

19 authority and may not be commingled or otherwise pledged.

20 2.16. In 2002 the Legislature enacted additional provisions which allow the portion of

21 tax receipts designated for the *Reserve* to be placed in an interest bearing Income Tax

22 Refund Efficient Payment Trust Fund (the *Trust* Fund) as they are collected on a monthly

23 or quarterly basis. *See 11 GCA § 51101 et seq.*

24

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 5

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

25

1   2.17.   As with the *Reserve*, monies in the *Trust* cannot be commingled and cannot be

2   transferred or otherwise pledged by the Governor.

3   2.18.   Historically, the government has not complied with the law relative to the *Trust* or

4   *Reserve*.

5           *C. The History of This Litigation*

6   2.19.   The *Santos* action was filed by attorney Mike Phillips on February 12, 2004, three

7   years after the Guam Supreme Court held the EITC program applied on Guam.

8   2.20.   The action sought recovery of EITCs only for tax years 1998–2003. It did not

9   cover EITC claims for tax years 1995–1997, nor claims for 2004 and future tax years.

10  Neither did it allege exhaustion of administrative remedies for either the named plaintiff

11  or the class. *See Santos v. Camacho, CV 04-00006 at Docket No. 1.*[2]

12  2.21.   Less than four months after he filed the petition and while the Governor was off-

13  island, Mr. Phillips negotiated his first EITC Settlement (*Santos I*) with the then Lt.

14  Governor and the then Attorney General ("AG").

15  2.22.   At the time of negotiating the settlement, Mr. Phillips had conducted little or no

16  discovery.

17  2.23.   Under the terms of *Santos I,* the proposed Class was expanded to include 1996

18  (but not 1995 or 1997 or 2004 and subsequent tax years). Class members would receive

19  a $60,000,000 fund to pay what *Santos* estimated was $112,000,000 in claims. The

20

21  [2] On December 3, 2004, Plaintiffs Mary Grace Simpao and Christina Naputi filed a separate complaint.
    Unlike Santos', Simpao's complaint sought recovery for tax years 1995 to the present. Additionally
22  Simpao, also unlike Santos, pled and established jurisdiction, standing, and interest in each class year.
    Simpao sought relief for each year, sought a mechanism for making claims, sought adequate individual
23  notice for each class year, sought payment of EIC refunds for each year, and enforcement of the EIC
    program in future years.

24  SHIMIZU CANTO & FISHER            TOUSLEY BRAIN STEPHENS PLLC
    East Marine Corps Drive          1700 Seventh Avenue, Suite 2200
    Hagatna, Guam 96910              Seattle, Washington 98101-1332
25  Tel. 671.472.1131                Tel. 206.682.5600
    Fax 671.472.2886                 Fax 206.682.2992
    Page 6

1  settlement waived all accrued interest and attempted to convey subject mater jurisdiction

2  by stipulation .

3  2.24.    On June 14, the *Santos I* parties filed a Stipulated Order of Preliminary Approval

4  in this Court.

5  2.25.    The settlement agreement attached to the Stipulated Order contained a provision

6  that Phillips be awarded 10% of the recovery as attorneys' fees ($6 million dollars).

7  2.26.    On June 17, 2004, the magistrate signed the Stipulated Order Granting

8  Preliminary Approval of Class Action Settlement.  Mr. Phillips' fee, however, had been

9  crossed out and replaced with a provision that the Court would determine attorneys' fees.

10  2.27.    The next day (June 18th ), Mr. Phillips submitted a separate stipulated order

11  signed by himself and the AG awarding Mr. Phillips $6 million dollars in attorney's fees.

12  *Santos v. Camacho at Docket No. 16.*

13  2.28.    That Order was signed and entered in the *Santos* action on June 24, 2004.  *Id.*

14  2.29.    At the time, no class had been certified, Mr. Phillips had never moved for or been

15  appointed lead counsel, no notice had been made to the class, nor had a  motion for

16  attorneys' fees compliant with FRCP Rule 23(h)(1) or 54(d)(2) been filed.

17  2.30.    *Santos I* provided for notice to the class solely through publication (one notice per

18  week for three weeks) even though the parties fully acknowledged the Government had

19  mailing addresses on file for the putative class claimants.

20  2.31.    *Santos I* did not provide for individual notice.

21  2.32.    Published notice was inaccurate in several respects.  The notice told class

22  members they would recover approximately 50% of their claim when, for some years,

23  *Santos I* provided less than a 20% recovery.  The notice also stated the class had already

24  ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 7

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 528    Filed 10/19/2007    Page 7 of 34

1   been certified when it had not. Additionally, although he held himself out as class

2   counsel, Phillips provided no contact information for himself and directed class

3   members' inquiries to the Defendant.

4   2.33.   In response to *Santos I*, the *Simpao* Plaintiffs (then consisting only of Plaintiff

5   Christine Naputi) and the *Torres* Plaintiffs moved to intervene in *Santos* noting numerous

6   substantive and procedural defects in the proposed settlement.

7   2.34.   Only then did Mr. Phillips file a belated motion to be appointed class counsel in

8   *Santos*. He also re-requested his already court-approved award of attorney fees.

9   2.35.   Mr. Phillips stated he did so because "a number of attorneys are seeking to

10  intervene and share in any recovery" and he wanted "to ensure a clear record in this

11  matter."

12  2.36.   Mr. Phillips also acknowledged the *Santos I* settling parties had failed to

13  accomplish even the minimal notice they had promised (it was published only once) and

14  now realized individual notice "would be best for all parties involved."

15  2.37.   Mr. Phillips also acknowledged that it had been improper for the *Santos* notice to

16  state the class had been certified and that the Court had already approved the attorneys'

17  fee award.

18  2.38.   The revised notice Mr. Phillips proposed, however, still contained a statement that

19  the Court had "preliminarily" approved a 10% attorney fee. It did not inform class

20  members they could enter an appearance in the action through counsel if they desired, nor

21  did it inform the class there were two motions for intervention pending which cited

22  deficiencies in the settlement.

23

24

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 8

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

25

Case 1:04-cv-00006   Document 528   Filed 10/19/2007   Page 8 of 34

1   2.39.   The magistrate signed an order appointing Phillips interim class counsel in *Santos*

2   on July 16, 2004 but took no action on Phillips' second motion for attorneys' fees.

3   2.40.   On August 4th 2004 the *Simpao* and *Torres* motions to intervene were denied and

4   the Court found these plaintiffs could protect their interests by opting out of *Santos I,*

5   filing objections or by filing a separate law suit.

6   2.41.   The *Simpao* Plaintiff filed a notice of appeal of the order denying intervention.

7   Counsel for *Simpao*, Van De Veld, Shimizu, Canto & Fisher, currently Shimizu, Canto &

8   Fisher (hereinafter "SCF"), then associated with Tousley Brain Stephens, PLLC (TBS).

9   2.42.   Tousley Brain Stephens, PLLC is a Seattle, Washington firm with a national

10  reputation for complex class action litigation.

11  2.43.   Shimizu Canto & Fisher is a Guam firm formed by attorneys of ability with whom

12  this Court is well familiar.

13  2.44.   *Simpao* ultimately abandoned her appeal, and on December 3, 2004 filed her own

14  class action complaint.

15  2.45.   The *Simpao* action sought recovery for tax years 1995 to the present, a

16  mechanism for making claims, adequate individual notice for each class year, and

17  enforcement of the EIC program in future years.

18  2.46.   *Simpao* proposed subclasses, pled and established jurisdiction and standing.

19  2.47.   In addition, *Simpao* filed a Notice of Appearance in the continuing *Santos* action

20  as a class member to monitor its progress.  The notice requested *Simpao* be served copies

21  of all pleadings and motions.

22  2.48.   *Santos* moved unsuccessfully to strike *Simpao's* appearance.

23

24

**SHIMIZU CANTO & FISHER**
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 9

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

2.49.   Potential class members were not the only ones to oppose *Santos I*.  The Governor of Guam also expressed his concerns with procedural aspects of the settlement and sought to investigate the circumstances under which *Santos I* had been reached.

2.50.   After inquiring, he was told by the Attorney General that "there is no written documentation regarding the history of the negotiations leading up to the Settlement Agreement."

2.51.   In an attempt to cure defects in the settlement, *Santos* filed a motion for approval of a purported "Administrative Plan" that was, in reality, a revised settlement agreement.

2.52.   On November 9, 2004, the Governor of Guam sought to appear in the *Santos* action with his own counsel for purposes of "stating his concerns" regarding the proposed settlement.

2.53.   The Governor contended the Attorney General did not adequately represent his office.

2.54.   As for the settlement, the Governor believed: (1)  the settlement was illegal because it was contrary to Guam's Illegal Expenditures Act, 5 G.C.A. § 22401, prohibiting an officer of the Government from obligating the Government to pay money in advance of an appropriation made by the Legislature for such purpose;  (2) the complaint was insufficient to establish jurisdiction because it did not allege exhaustion of administrative remedies; and (3) any approval of an "administrative plan" was improper unless and until final approval was given to the settlement.

2.55.   Additional defects noted by the Governor included:

- Numerous deficiencies in the notice;

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 10

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 528    Filed 10/19/2007    Page 10 of 34

- Attorney's fees were resolved by stipulation as opposed to by motion and were disproportionately high ($6 million) given Plaintiff's counsel had done nothing but file a complaint and negotiate a settlement in less than a day;

- A lack of adversarial proceedings prior to settlement including a complete lack of discovery regarding the value of the claims;

- Conflicts within the class between members whose claims were time barred and those whose were not;

- The settlement was substantively unfair given claimants would receive only 50% of the EITCs due (if that); and

- Attorney's fees were guaranteed regardless of how many members opted out of the settlement.

2.56.   Thus, by the end of 2004 there were three putative EITC class actions pending in this Court against a Government that was struggling with itself over who represented it, the Governor of the Attorney General it.

*D. The Simpao Litigation and Events Leading to Santos II*

2.57.   The *Simpao* action also sought establishment of a claims procedure for the recovery of EITC claims.

2.58.   A little over a month after *Simpao* was filed, the Governor issued Executive Order No. 2005-01 directing the Department of Revenue and Taxation (DRT) to establish a process by which Guam's taxpayers could submit claims.

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 11

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

1  2.59.   The Government (through both the AG's and the Governor's counsel) also began

2  litigating against *Simpao* while it explored a second settlement with *Santos*.[3]

3  2.60.   On March 17th, 2005 *Simpao* defeated the Government's motion to dismiss her

4  complaint for lack of jurisdiction and failure to state a claim.

5  2.61.   *Simpao* also amended her complaint to add two new representative Plaintiffs and

6  additional claims seeking enforcement of the *Reserve* fund statutes.

7  2.62.   On June 15, 2005 *Simpao* won partial summary judgment in the case.  The Court

8  held: (1) as a matter of law, Guam must pay the EIC; and (2) under the circumstances, the

9  filing of a tax returns should be considered a claim satisfying the jurisdictional

10 requirement under 26 U.S.C. §6511.[4]

11 2.63.   *Simpao's* summary judgment holding resolved two issues fundamental to all

12 EITC claims by establishing  (1)  the EIC applies to Guam; and (2) plaintiffs who filed

13 timely tax returns in the relevant tax years has exhausted administrative remedies thus

14 conferring jurisdiction on the Court to hear their tax refund claim.

15 2.64.   Shortly thereafter, *Santos* and the Defendant came to the Court with a new class

16 action petition and a second settlement agreement ("*Santos II*").

17 2.65.   On July 5th, 2005, *Simpao*  filed a motion for class certification which the

18 Governor successfully moved to stay pending resolution of *Santos II*.

19

20

---

21 [3] *Simpao* had requested the parties in *Santos* allow them to participate  in the scheduled mediation that
   produced *Santos II*. The request was denied.. *Simpao* even asked the *Santos* court to allow and order their
22 participation in the mediation but the Magistrate, who at that time was still presiding over *Santos*, declined
   to do so.

23 [4] The Court noted that it made no decision as to whether class members' claims could be time barred by
   operation of 26 U.S.C. § 6532.

24 SHIMIZU CANTO & FISHER          TOUSLEY BRAIN STEPHENS PLLC
   East Marine Corps Drive         1700 Seventh Avenue, Suite 2200
   Hagatna, Guam 96910             Seattle, Washington 98101-1332
   Tel. 671.472.1131               Tel.  206.682.5600
25 Fax 671.472.2886                Fax  206.682.2992
   Page 12

*E. Santos II*

2.66. *Santos'* amended complaint now alleged exhaustion of administrative remedies but did not explain how she had done so.

2.67. The *Santos II* settlement included tax year 1995, but still did not include unpaid claims for tax year 1997.[5] Despite the victories *Simpao* had obtained since *Santos I*, the terms of *Santos II* were no better for each tax year than *Santos I*.

2.68. The *Santos II* parties filed a joint motion for preliminary approval as opposed to a stipulated order and, as required by the *Santos II* agreement, Mr. Phillips filed a motion for conditional certification of a settlement class.

2.69. Although the Governor had signed on to *Santos II*, this time the Attorney General did not. The EITC litigation then disintegrated into a morass of procedural battles centered around the AG and the Governor's struggle for control of the action and the various procedural postures of the three pending class actions.

2.70. Ultimately, the Court ordered the three cases consolidated and stayed them all until such time as the Court could rule on the dispute between the AG and the Governor.

2.71. Despite the stay, however, the Court directed Plaintiffs' counsel in all three actions to file motions for appointment of lead counsel. *Santos v. Camacho*, *Docket No. 300*.

2.72. In response, the Governor requested and was granted time to conduct a "global" settlement conference.

---

[5] Other defects associated with *Santos II* are presented in the discussion of Simpao's Objections to *Santos III*. As noted in that pleading, there is not much difference between *Santos II* and *Santos III*. *See docket at 426*.

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 13

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006     Document 528     Filed 10/19/2007     Page 13 of 34

2.73.    The result of that mediation, which included Plaintiffs counsel for all three
actions, was *Santos III*.

2.74.    *Santos III* is substantively no different from *Santos II* with the exception that class
year 1997 is now included.  In addition, *Torres* and her counsel, which represented a
putative class including EITC claimants who wanted more than *Santos I or II* offered,
abandoned that Class and joined with *Santos* and Mr. Phillips in supporting *Santos III*.

        F.  *Santos III*

2.75.    On May 26, 2006 *Santos* and *Torres* moved for preliminary approval of *Santos
III*.

2.76.    *Simpao* filed an opposition.

2.77.    This Court then asked for additional briefing on whether it had jurisdiction over
tax payers included in the *Santos III* settlement class but who had never filed a tax return.

2.78.    The Court noted that in its prior summary judgment ruling in *Simpao*, it expressly
held Plaintiffs' exhausted administrative remedies by filing a tax return, thus a class
which included members who never filed a tax return may be impermissibly broad.

2.79.    The Court also sought briefing on whether 26 U.S.C. §6532(a)(1) served to time
bar some plaintiffs claims; again stripping the court of jurisdiction.

2.80.    The Court further sought briefing on the propriety of the proposed payment of
claims for 1997 and 1998 immediately after preliminary approval.

2.81.    On January 4th, 2007, the Court held a hearing on the Settling Parties motion for
Preliminary Approval.  At the hearing, all parties, including *Simpao*, were heard.

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 14

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

1    2.82.    At the outset of the hearing the Court indicated it was inclined to find the Class

2    definition in *Santos III* was overbroad to the extent it included claimants over which it

3    had no jurisdiction, i.e., claimants who had never filed a tax return.

4    2.83.    In response, the Settling Parties changed the definition of the Class to require a

5    Class member to have filed a tax return.

6    2.84.    On January 9th, 2007, this Court granted preliminary approval to *Santos III* and

7    noted many of the issues raised by *Simpao* would be better addressed at a hearing on

8    final approval.

9    2.85.    In *Santos III*, in consideration of dismissal of claims made against it for non-

10   payment of the EITC, Defendant settled the lawsuit but did not admit it was obligated to

11   pay the EITC.

12   2.86.    Guam's Organic Act requires that final judgments against the government in suits

13   brought pursuant to 48 U.S.C. §1422 shall be paid from unencumbered funds in the

14   treasury of Guam. *48 U.S.C. § 1422i.*

15   2.87.    *Santos III*  is funded through the *Reserve* and *Trust*.

16   2.88.    As has been noted, the *Reserve* and *Trust* are created by the Guam Legislature to

17   pay income tax refunds, earned income tax credits and child tax credits only.  Neither

18   fund is subject to the Governor's transfer authority.

19   2.89.    This Court also notes that the Organic Act of Guam, *at 48 U.S.C. §1423j*, leaves

20   to the Guam Legislature the power to appropriate funds from the public purse.

21   2.90.    Guam law also prohibits a public official from "involving the government of

22   Guam in any contract or other obligation, for the payment of money for any purpose, in

23   advance of the appropriation made for such purpose." *5 G.C.A. §22401, Illegal*

24   ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
     SHIMIZU CANTO & FISHER                    TOUSLEY BRAIN STEPHENS PLLC
     East Marine Corps Drive                   1700 Seventh Avenue, Suite 2200
     Hagatna, Guam 96910                       Seattle, Washington 98101-1332
25   Tel. 671.472.1131                         Tel. 206.682.5600
     Fax 671.472.2886                          Fax 206.682.2992
     Page 15

     Case 1:04-cv-00006    Document 528    Filed 10/19/2007    Page 15 of 34

1 *Expenditures.* Under this law, a public official may not "make or authorize any

2 expenditure from, or create or authorize any obligation under any appropriation or fund in

3 excess of the amount available therein, or for other than an authorized purpose."

4 2.91. Defendant, through its public officials, has agreed to pay certain sums in

5 consideration of the dismissal of claims against it but does not admit any liability to pay

6 the EITC.

7 2.92. Under the settlement, which is a contract, Defendant is obligated to pay as much

8 as $90 million dollars to the class.

9 2.93. No party asserts that the Guam Legislature has appropriated funds to meet any

10 obligation under the settlement. The settlement is instead funded through the *Reserve* and

11 *Trust* funds created by the Guam Legislature to pay income tax refunds, earned income

12 tax credits and child tax credits.

13 2.94. This Court, in granting preliminary approval to *Santos III*, ordered notice be made

14 to the class members pursuant to the notice plan in the Settlement Agreement.

15 2.95. Notice to the class consisted of publication in two newspapers of local circulation

16 on four separate occasions and mailing of the notice to prospective class members using

17 whatever address was currently on file with DRT for each class member. [6]

18      *G. Simpao's Objections*

19 2.96. On June 22, 2007 *Simpao* filed her objections to *Santos III* and raised both

20 procedural and substantive objections.

21 2.97. *Simpao* argued that;

22 [6] On March 8th, 2007 Respondent and class representative realized that as to a significant number of class members a mistake had been made in notice (they failed to notify thousands of taxpayers as to the off set provisions of the tax laws) and moved the Court to allow revised notice. This Court allowed them to do so on March 12th, 2007.

24 SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
25 Fax 671.472.2886
Page 16

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 528    Filed 10/19/2007    Page 16 of 34

1 • The record before the Court is inadequate to support a finding of fairness

2 • The record before the Court on the effectiveness of notice is inadequate

3 • Notice to the class was Constitutionally inadequate

4 • The claims filing procedure is unduly burdensome

5 • The settlement creates conflicts among the class

6 • The funding is illusory

7 • Early payment for 1997 and 1998 is coercive

8 • The compensation is inadequate

9 • The funding mechanism violates Guam's Organic Act

10 • The Settlement violates Guam's Illegal Expenditures Act

11 2.98. In support of her objection, *Simpao* provided this Court with a declaration of an

12 acknowledged expert in the field of notice, Ms. Gina Intrepido of HilSoft Notifications.

13 2.99. The Court has examined her credentials and notes the many cases in which her

14 firm has assisted the state and federal benches.

15 2.100. Additionally, the Court is aware that it was her firm which assisted the Federal

16 Judicial Center in designing model notices for class actions that comport with FRCP 23.

17 The Court notes that this model notice is freely available to litigants via the world wide

18 web.

19 2.101. This Court finds Ms. Intrepido to be credible and is persuaded by her observations

20 concerning notice in this case.

21 2.102. In particular, Ms. Intrepido notes among a host of inadequacy, that;

22 • dissemination of the notice was insufficient,

23 • there was no attempt to update addresses

24

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 17

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

25

1    • The notice program did not account for mobility in the class

2    • The notice program did not address the military population

3    • The program knowingly excluded certain class members

4    • The Program failed to provide any data on recommended publications

5    • The notice, even if received, was unlikely to be understood

6    • The notice was difficult to read

7    • Mailer envelopes did not capture the recipient's attention

8    • The notice does not follow the Federal Judicial Centers model

9    • The content of the notice is deficient

10   • The notice does not define confusing terms

11   • The overall language is confusing

12   • No easy access to class counsel is provided

13   • Reader language concerns are not addressed

14   • Procedures to respond to notice are onerous

15   • That the notice program does not meet accepted standards in the legal notice

16   community.

17   2.103. The Court notes that the burden for final approval of a settlement is on its

18   proponent.

19   2.104. No party has provided any competent evidence to rebut Ms. Intrepido's

20   conclusions.

21       *H.  The Settling Parties Motion for Final Approval*

22

23

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 18

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

1  2.105. This Court has been presented no evidence of, and is therefore entirely unaware of

2  the value of the claims that could have been made in this matter. Therefore this Court has

3  no amount against which to judge the adequacy of the settlement.

4  2.106. In their motion for final approval, the Settling Parties indicated notice was

5  effected as required by the Notice Plan but provided the Court no proof or

6  documentation. Thus, no information was available as to the number of notices actually

7  mailed; the number of mailed notices returned as undeliverable or the procedure

8  followed, if any, to resend notices returned as undeliverable. Similarly, regarding the

9  early payment of 1997 and 1998 claims, no information was provided as to the number of

10 checks or offset notices that were mailed, the total value in claims those checks and

11 notices represented; the number of mailings returned as undeliverable, or the number of

12 checks cashed and offset notices returned.

13 2.107. The Parties have provided this Court the following information;

14

| | Claims Filed (Total) | Claims Filed (prior to notice) | Theoretically possible |
|---|---|---|---|
| 1995 | 2699 | 1033 | 13212 |
| 1996 | 2932 | 1143 | 14518 |
| 1999 | 4438 | 1798 | 14828 |
| 2000 | 4678 | 1982 | 13881 |
| 2001 | 5028 | 2271 | 13816 |
| 2002 | 5331 | 2570 | 13542 |
| 2003 | 5761 | 3018 | 13084 |
| 2004 | 9355 | 6932 | 10191 |
| **Total** | **40222** | **20747** | **107072** |

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 19

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

2.108. No information was provided in the motion as to the value of the claims filed; the number of claimants who filed the claims; the distribution of the claims over the various tax years at issue; or the amount of offsets that would be applied against those claims.

2.109. The Settling parties also failed to provide the Court any estimate of the value of the claims so the Court could determine the extent to which the claims were discounted.

2.110. At a fairness hearing held in this matter, some, but not all of this information was provided.

2.111. On June 21, 2007 the Deputy Director of the DRT filed a declaration in support of the settling parties' motion for preliminary approval which provided some information as to the value of the claims made and their distribution over the various tax years covered by the settlement.

2.112. The declaration also attests that both the publication notice and mailings required by the notice plan had been made.

2.113. At the fairness hearing, DRT produced information as to the effectiveness of notice. DRT indicates that 49,378 notices were sent out. Of this number, 2,027 notices were sent to off-island addresses. Of the notices sent, 9,351 were returned as undelivered and of this number, 613 had returned from off-island addresses and 7 notices were sent without an address.

2.114. Thus approximately 18% of those notices mailed to Guam addresses were returned and 30% of those mailed off-island.

2.115. No evidence has been presented that those that were not returned were sent to a last known address, or that they were received by a class member.

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 20

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

1  2.116. DRT declares that for tax year 1998, 7,356 individual cashed checks sent to them

2  pursuant to preliminary approval. Of these people, 3,265 individuals filed claims in other

3  years, or less that 45%. No information was provided as to when these claims were

4  made.

5  2.117. The Court notes that many class members are eligible for refunds in multiple

6  years.

7  2.118. By its terms, *Santos III* provided for class notice by publication in two local

8  newspapers and mailing to the last known address of the class member.

9  2.119. DRT defines last known address as that address which is produced after a

10  comparison with an address held by the United States Postal Service.

11  2.120. Despite this, DRT determined a last known address by comparing a social

12  security number to an address in DRT's computer. No party alleges, and there is no

13  evidence, that DRT uses or used any updating service or program whatsoever to

14  determine a more accurate or current address.

15  2.121. The Court finds as a matter of fact that DRT did not, therefore, mail notice to a

16  class member's last known address.

17  2.122. No evidence is presented to the Court as to why publication in two local

18  newspapers is the best practicable publication.

19  III. Conclusions of Law

20      *A. Standard of Approval for Settlement*

21  3.0.    This Court may grant final approval to the *Santos III* settlement if it determines it

22  to be fair, reasonable and adequate. *Torrisi v. Tucson Electric, 8 F.3d 1370, 1375 (9th*

    *Cir. 1993)*.

23  3.1.    However, where a settlement is presented to the Court prior to certification of the

24  SHIMIZU CANTO & FISHER          TOUSLEY BRAIN STEPHENS PLLC
    East Marine Corps Drive         1700 Seventh Avenue, Suite 2200
    Hagatna, Guam 96910             Seattle, Washington 98101-1332
    Tel. 671.472.1131               Tel. 206.682.5600
25  Fax 671.472.2886                Fax 206.682.2992
    Page 21

class, the Court will exercise heightened scrutiny. *In re General Motors Corporation Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768, 805 (3rd Cir. 1995)*

3.2.     A court balances several factors in its analysis: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." The most important of these factors is the amount offered in settlement compared to the strength of plaintiff's case. *See In re General Motors Corporation Engine Interchange Litigation, 594 F.2d 1106, 1132(7th Cir. 1979)*

**B.  The Settlement is Procedurally Inadequate**

**1.  Class Notice Did Not Meet Rule 23 or Constitutional Due Process Standards**

3.3.     Notice and an opportunity to be heard are fundamental requisites of the constitutional guarantee of due process. *Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657 (1950).* When notice is a persons due, process which is a mere gesture is not due process. *Id.* Here, where unnoticed low-income tax payers will lose their right to assert claims that average $1900 in value, the importance of effective notice cannot be overstated.

3.4.     The Settling Parties have failed to rebut the expert testimony provided by *Simpao's* recognized notice expert that the Santos-Torres settlement notice does not, "by any measure," meet the standards applicable to the method, content and from of Rule 23 notices. Specifically, Settling Parties have failed to demonstrate they were diligent in their efforts to achieve individual notice or that publication notice would adequately reach class members – especially off-island class members.

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 22

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006   Document 528   Filed 10/19/2007   Page 22 of 34

3.5.    Individual notice to identifiable class members is an "unambiguous requirement of Rule 23." *Eisen v Carlisle &Jacquelin, et al.*, 417 U.S. 156, 174, 94 S. Ct. 2140, 2151 (1974).    Best practices for individual notice require class member's addresses to be updated where reasonable. *See Parker v. Time Warner Entertainment, Co.*, 239 F.R.D. 318, 325(E.D.N.Y. 2007.  Updating addresses through either the NCOA or readily available SSN address look-up services is a reasonable and practicable means of updating old outdated addresses.  Updating addresses is especially critical where, as here, mailed notice is the primary means of reaching the class, and class members include two highly mobile groups (military personnel and low income individuals).

3.6.    Settling Parties did not account for the mobility characteristics of this Class and did not employ readily available address updating techniques despite having the SSNs needed to so.  Settling Parties did not even take steps to find a better address for class members whose notice was returned as undeliverable.  Settling Parties failure to update addresses falls below well accepted and easily achievable notice standards.  Because no address updating services were undertaken in this case, the number of mailings that did not reach their intended recipient is likely significant.

Settling Parties have offered no argument that the effort required to update addresses would have been unreasonable.  Instead Settling Parties argue the Government is prevented from using these means to update addresses by § 26 USC 6103(a), a statute requiring it to keep taxpayer information confidential.  The argument is not persuasive given I.R.S. regulations, which guide DRT, indicate the I.R.S. routinely updates addresses through NCOA and in fact define "last known address" as the address provided by an NCOA update.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
SHIMIZU CANTO & FISHER          TOUSLEY BRAIN STEPHENS PLLC
East Marine Corps Drive         1700 Seventh Avenue, Suite 2200
Hagatna, Guam 96910             Seattle, Washington 98101-1332
Tel. 671.472.1131               Tel. 206.682.5600
Fax 671.472.2886                Fax 206.682.2992
Page 23

3.7.    Settling Parties argue inadequacies in individual notice do not matter because Class members were still receiving notice by publication. But Settling Parties have provided this Court no information to demonstrate the publication notice was the best practicable. Instead they ask the Court to take "judicial notice" that publication notice in Guam's two local newspapers was adequate. The Court declines to do so and will rule based on the evidentiary record before it. That record is not only insufficient to demonstrate best practical methods were used it affirmatively shows they were not.

3.8.    First, no aspect of publication notice was designed to reach off island Class members.  And, despite the fact that Guam's population has "an extraordinarily high composition of military personnel," no notice was published in military publications.

3.9.    Second, just because there are only two daily papers on the island of Guam, does not mean publication there is the best notice for these *Class Members*.  The uncontroverted expert testimony before the Court shows newspaper readership is expected to be low among lower income adults which comprise the bulk of this Class. As such, radio and television would be expected to be more effective and efficient in reaching this low income target.

3.10.    Finally, it is apparent Settling Parties did not seek out or engage any qualified help in designing an effective notice program.  In making this observation the Court does not hold that in every case retention of a notice expert is required to meet Rule 23's best practicable notice standard.  Here, however Settling Parties bear the burden of demonstrating their notice plan will adequately protect the due process rights of over 50,000 class members regarding their stake in a potential Government liability of over $200 million (and an award to their counsel of millions in attorneys' fees).  Under these

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 24

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 528    Filed 10/19/2007    Page 24 of 34

1  circumstances the use of appropriate expertise would be prudent. SPs have not argued it
2  would have been unreasonable to retain a notice expert. Rather, they argue it was
3  unnecessary based on their apparent assumption that what constitutes effective
4  publication notice on Guam should be intuitively obvious to those who live here. This
5  Court, however, will rely on the qualified expert testimony presented to it. That
6  testimony indicates media research and analysis is critical to making an informed
7  decision on which media vehicles will best reach class member demographics. Absent
8  such evidence from the Settling Parties and faced with credible expert testimony that this
9  publication notice was inadequate, this Court has no choice but to hold Settling Parties
10 have not met their burden to demonstrate notice was the best practicable under the
11 circumstances.

12 3.11. Rule 23 requires class action notices be concisely and clearly stated in plain easily
13 understood language. Both the publication notice and the mailing here fail to meet this
14 standard. A comparison of the notices used here to the model notices created by the
15 Federal Judicial Center (FJC) quickly demonstrates the inadequacy. As Ms. Intrepido
16 noted, these notices lacks virtually all of the content and design features of the FJC
17 models. But more troubling to this Court is the lack of any additional aids for Class
18 members. Ms. Intrepido testified that simple response mechanism such as a toll free
19 number or websites where questions can be simply and easily answered are routinely
20 used in class notices when one truly wants to inform class members. Yet, neither was
21 used here. Settling Parties have no explanation as to why not. This failure to provide
22 adequate assistance to Class members, especially under the circumstances of this case,
23 does not meet class notice standards.

24
25

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 25

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

3.12    The post-notice data Settling Parties provided the Court do not change the

conclsion notice was inadequate. As for individualized mailings, nineteen percent of the

notices mailed to class members were returned as undeliverable. Settling Parties

argument that this "success" rate meets the 75-90% standard for a successful reach cited

by notice expert Intrepido misconstrues her testimony and misrepresents the data. Ms.

Intrepido testified court's embrace notice programs that *are predicted to or actually do*

reach 75-90% of the class. Here, Settling Parties have provided no qualified testimony on

the expected reach of their notice plan. Further, the fact that 81% of the mailings were

not returned as undeliverable does not mean all 81% reached the intended class member.[7]

Class participation data similarly do not demonstrate an effective notice program. Under

the circumstances of this case, the estimated subscription rate of 50% of class members is

not impressive (where as it might be in a typical consumer class action). The Court

would expect a much higher rate of participation where, as here, most class members

should have received individual notice informing them of their right to make claims

worth, on average, $1900. Further the number of claims that will be paid in whole or in

or part represents less than 28% of claims estimated to exist for the Class. This gross

under subscription will result in estimated payments to the Class (after offsets) of only

two thirds of the funds "made available" for settlement (i.e., approximately $62 million

of the $90 million pledged).

Settling Parties assertion that is was "very successful" in obtaining a high percent of

estimated claims for Tax Year 2004 is both misleading and insufficient to demonstrate

---

[7] It is also worth noting that only 70% of notices mailed to off island addresses were returned where 82% of notices mailed to address on Guam were returned. It is not surprising that someone moving off island would be more likely to update their address with DRT. Thus, the deficiency in this aspect of the notice plan harmed one group of class members more than another.

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 26

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

1  adequate notice.  Notably the vast majority of the 9,351 claims filed for 2004 were not

2  the product of class notice – almost 7000 of those claims were made long before

3  settlement pursuant the existing Executive Order.  See Fisher Decl., Ex.___(Showing

4  6,932 2004 claims already made as of March 2006). A similar analysis for tax years

5  1995, 1996, 1999 and 2000 shows only 17% of potential claims were filed pursuant to

6  notice.  For tax years 2001-2004, 30% of EIC claims that could have been asserted were

7  filed.  The fact that a better claims rate was obtained for recent years, where addresses

8  were more likely to remain valid, does nothing to alleviate concerns associated with

9  inadequate notice for later years' claims.[8]

10              *2. The Procedures for the Settlement Were Coercive and Burdensome*

11  3.13.  *Santos III* provided for immediate payment of two tax years upon preliminary

12  approval.  This Court granted such approval and, accordingly, checks were disbursed to

13  class  years 1997 and 1998.

14  3.14.  *Simpao* plaintiffs object to this mechanism and believe it had the effect of pre-

15  empting a class member's ability to independently assess the adequacy of the settlement.

16  This is supported by Ms. Intrepido's evidence as well as case law.

17  3.15.  The Court notes that the class members considered are by and large economically

18  disadvantaged.

19  3.16.  The Court concludes that the mechanism was coercive.  It defies logic and

20  common sense to believe a person laboring under financial strain will not take advantage

21

22  [8] SPs wrongly attempt to rely on this Court's prior approval of notice as a basis for final approval now.
    Preliminary approval of the settlement "in no way limits this Court's ability to deny final approval.  *Buchet*
23  *v. ITT Consumer Financial Corp.,* 845 F.Supp. 684, 688 (D. Minn. 1994).  The Court's preliminary
    approval was conditional and based on the record before it at the time.

24
SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
25  Fax 671.472.2886
Page 27

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

1  of immediate payment when the alternative is uncertainty. This is certainly true when the

2  inadequacy of notice is considered.

3  3.17.    The Court concludes that this mechanism did in fact influence the ability of a

4  class member to adequately assess the settlement.

5  3.18.    The Court also notes that of the persons cashing checks, less than 45% submitted

6  claims in other class years. This is extraordinary considering many, perhaps most of

7  these claimants could have claimed in multiple years.

8  3.19. The Court also notes that the notice provided in this action, the directions by which

9  a class member could file a claim, were woefully inadequate. The Court also notes that

10  the class members were not provided with a meaningful method by which they could

11  contact the class counsel. Additionally, the Court is also aware that a class member was

12  required to pay DRT for each return he or she wanted to review. The Court concludes

13  that these factors were both overly burdensome to the class and could easily have been

14  ameliorated.

15         *C. The Settlement is Substantively Inadequate*

16              *1. There exist Conflicts Within the Class*

17  3.20.    Disparity in class treatment is a signal of unfairness. *See 7-Eleven Owners for*

18  *Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1162 (2000). This

19  perception of unfairness may be rebutted by a showing that the treatment is based on

20  legitimate considerations. *Id.* But, "<u>such disparities must be regarded as *prima facie*</u>

21  <u>evidence that the settlement is unfair to the class, and a heavy burden falls on those who</u>

22  <u>seek approval of such a settlement</u>" Holmes v. Continental Can Co., 706 F.2d 1144, 1148 (11[th]

23  Cir. 1983). Settling Parties have not shown legitimate considerations here.

24  ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
25  Fax 671.472.2886
Page 28

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 528    Filed 10/19/2007    Page 28 of 34

1          *1.      The payment caps for each year or group of years are arbitrary
                    and not rationally based.*

2    3.21.    There is no legitimate basis to apply separate but identical caps to each tax year

3    regardless of expected or actual claims experience.   As the Government acknowledges,

4    its estimate of the number of potential claims that could be filed varies for each tax year,

5    *see Camacho Decl.* ¶7, and the number of claims actually filed were expected to and do

6    vary by tax year. *Id.* Ex. A. As such, there is no legitimate basis to apply identical caps

7    (or any individual caps) for each year. Further, there is no benefit to the Class from

8    capping each year separately.  Under the current claims experience, $2.5 million of the

9    claims filed for the 1995, 1996, 1999 and 2000 tax year group and over $ 5.5 million in

10   claims for tax year 1998 will not be paid because the arbitrary $15 million/year cap is

11   exceeded. These monies will not be paid out even though total claims are well below the

12   overall  $90million cap such that $20-$30 million of the settlement fund will revert back

13   to the Government.  Thus, the only party to benefit is the defendant Government where,

14   as here, claims for certain years exceed the individual cap allowing the Government to

15   avoid full payment even though total claims do not exceed the overall $90 million cap.

16   In sum, the settlement is unfair because tax years 2001-2004 are recovering 100% of the

17   value of their claims, while the oversubscribed years (1998 and the 1995, 1996, 1999 and

18   2000 tax group) are recovering less than full value (73% and 86% respectively) for no

19   legitimate reason.

20   3.22.    The settlement's blanket waiver of interest unfairly disadvantages older tax years.

21   Thus class members can only recover only 12% of their claims real value while claimants

22   for 2003 and 2004 can recover over 90% of their real value.  This is especially unfair

23   given the older claims have already been more severely discounted than more recent tax

24   ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

     SHIMIZU CANTO & FISHER                    TOUSLEY BRAIN STEPHENS PLLC
     East Marine Corps Drive                   1700 Seventh Avenue, Suite 2200
     Hagatna, Guam  96910                      Seattle, Washington  98101-1332
25   Tel. 671.472.1131                         Tel. 206.682.5600
     Fax 671.472.2886                          Fax  206.682.2992
     Page 29

1   years.  Further, the record shows Class counsel agreed to the waiver of interest was for

2   all tax years because of the time bar risk associated only with the early years.  *See*

3   *Phillips Reply to Opposition to Final Certification at 4* ("the decision to forego a claim

4   for interest was weighed and leveraged in the settlement negotiations, particularly against

5   the backdrop of a potential statue of limitations bar to recovery for the earlier class

6   years.")  This is improper and unfair to tax years 2001 – 2004.  "[T]he gain of one

7   segment of a class should not be premised on the sacrifices of the other segment."

8   *Petruzzi's, Inc. v. Darling-Delaware Co., Inc.,* 880 F.Supp. 292, 300 (M.D.Pa.,1995).

9   3.23    The settlement wrongly treats tax year 2000 as potentially time barred.  First, this

10  Court has already held § 6511 does not bar any claims.  But even if § 6511 could bar

11  these claims its application to Tax Year 2000 would be barred by the tolling provision of

12  *American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974) as the statutory periods did

13  not run until after *Santos* was filed.  The Court rejects SPs argument that *American Pipe*

14  does not apply to toll a statutory time bar that is jurisdictional in nature.

15  3.24.    The Settling Parties claim that this tax year is more vulnerable to a time bar under

16  §6532 because *American Pipe* cannot protect it from operation of this statute, does not

17  justify disparate treatment.  First, he Government has waived applicability of §6532 for

18  purposes of settlement.  It cannot do so selectively for various tax years. There is no

19  legitimate basis to treat Tax year 2000 as potentially time barred.  It should treated the

20  same as tax years 2001-2004.

21

22

23

24  SHIMIZU CANTO & FISHER          TOUSLEY BRAIN STEPHENS PLLC
    East Marine Corps Drive        1700 Seventh Avenue, Suite 2200
    Hagatna, Guam 96910            Seattle, Washington 98101-1332
25  Tel. 671.472.1131              Tel. 206.682.5600
    Fax 671.472.2886               Fax 206.682.2992
    Page 30

*2. The Court Cannot Find that the Amount Offered in Settlement is Adequate*

3.25    The Court cannot find a settlement is fair and adequate if the record does not reflect the undiscounted value of the Class' claims. See *In re Microsoft Corp. Antitrust Litigation,* 185 F.Supp.2d 519 , 526-527 (D.Md. 2002).  In her objections *Simpao* specifically noted this information must be provided and the Court directed SPs to respond.   Yet the SPs have not provide it.

The Court simply does not have the discretion to approve the settlement in the absence of such crucial information. *See Synfuel Technologies Inc. v. DHL*, 643 F.3d 646 (7th Cir. 2006)(finding an abuse of discretion where court failed to adequately evaluate fairness of settlement)  SPs have provided no authority to the contrary. *See Government's Brief at 8*(citing *Synfuels* only for the proposition that the estimate of claim value need not be exact).  Thus, final approval of this settlement must be denied. *Carnegie v. Household Intern Inc.*, 371 F.Supp. 2d 954 (N.D. Ill. 2005)(denying preliminary approval where counsel could not say how much the settlement was worth to any individual).

*3. The Funding is  illusory*

3.26.    Santos III is funded exclusively through two legislatively created funds, the *Reserve* and the *Trust*.  No payment flows to a class member unless it first enters the Funds.

3.27.    The Court notes that the Defendant has stated that it does not promise when a particular payment will be made, nor that money will actually enter the funds.

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 31

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

Case 1:04-cv-00006    Document 528    Filed 10/19/2007    Page 31 of 34

1  3.28.   The Court believes, and therefore concludes, that the Defendant has essentially

2  bound himself to do something (pay a class member) only in the event a contingency

3  arises (money enters a fund and the fund exists).  This amounts to a statement that it will

4  perform if there is an intervening event and is illusory in nature.

5      *D. The Settlement is Illegal*

6      *a. The funding mechanism violates Guam's Organic Act*

7  3. _.    In consideration of dismissal of claims made against it for non-payment of the

8  EITC, Defendant Government of Guam has settled this lawsuit but does not admit it is

9  obligated to pay the EITC.

10  3._.    The Organic Act of Guam requires that final judgments against the government in

11  suits brought pursuant to 48 U.S.C. §1422 shall be paid from unencumbered funds in the

12  treasury of Guam. *48 U.S.C. § 1422i.*

13  3._.    Pursuant to the settlement, the EITC class is paid from the *Reserve* and *Trust*

14  funds. These funds are created by the Guam Legislature to pay income tax refunds,

15  earned income tax credits and child tax credits only.  Neither fund is subject to the

16  Governor's transfer authority.

17  3._.    The Organic Act of Guam, *at 48 U.S.C. §1423j*, leaves to the Guam Legislature

18  the power to appropriate funds from the public purse.  The Court concludes that the

19  monies placed in the *Reserve* and *Trust* are devoted exclusively to specific denominated

20  purposes, i.e. income tax refunds, earned income tax credits and child tax credits, and are

21  therefore encumbered by an obligation to meet those purposes.

22

23

24  SHIMIZU CANTO & FISHER          TOUSLEY BRAIN STEPHENS PLLC
East Marine Corps Drive         1700 Seventh Avenue, Suite 2200
Hagatna, Guam 96910             Seattle, Washington 98101-1332
25  Tel. 671.472.1131               Tel. 206.682.5600
Fax 671.472.2886                Fax 206.682.2992
Page 32

Case 1:04-cv-00006   Document 528   Filed 10/19/2007   Page 32 of 34

3._. The Court concludes that the Organic Act requires the settlement to be paid from unencumbered funds. The Court concludes that because this settlement is paid from encumbered funds, it violates 48 U.S.C. § 1422i, and is therefore inorganic.

3._. The Court further concludes that payment of the settlement from the *Reserve* and *Trust,* even where its essence (but not substance) is an earned income tax credit, is not a purpose for which the *Reserve* and *Trust* are created.

3._. The settlement therefore inorganically encroaches upon the Legislature's plenary power to appropriate. For this reason also, the settlement is illegal. *See 48 U.S.C. §1423j.*

### b. The Settlement violates Guam's Illegal Expenditures Act

3._. Guam law prohibits a public official from "involving the government of Guam in any contract or other obligation, for the payment of money for any purpose, in advance of the appropriation made for such purpose." *5 G.C.A. §22401, Illegal Expenditures.* Additionally, under this law, a public official may not "make or authorize any expenditure from, or create or authorize any obligation under any appropriation or fund in excess of the amount available therein, or for other than an authorized purpose." *Id.*

3._. Defendant Government of Guam, through public officials, has agreed to pay certain sums in consideration of the dismissal of claims against it but does not admit it is liable for, otherwise obligated to pay the EITC, or that there existed such an obligation outside of the settlement.

3._. Under the settlement, Defendant is obligated to pay as much as $90 million dollars to the class. No party asserts that the Guam Legislature has appropriated funds to meet any obligation under the settlement.

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 33

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992

3.__.    This Court concludes that a settlement agreement is a contract and therefore subject to restrictions on the illegal expenditure of funds under Guam law.

3.__.    This Court concludes that the settlement agreement obligates the Government of Guam to pay certain funds for which there has been no prior appropriation and, because there is no admission of an extant or pre-existing obligation by the Defendant to pay the EITC, that the Defendant has contracted for and subjected the Government of Guam to an expenditure prior to an appropriation therefore.  The settlement is therefore illegal.

3.__.    This Court concludes that the *Trust* and *Reserve* funds used to finance the settlement are created for a particular purpose; the payment of income tax refunds, earned income tax credits and child tax credits.  This Court concludes that payment of a settlement of a lawsuit from these funds is not an authorized purpose.

3.__.    Further, that the settlement creates an additional, different burden upon the funds in excess of any amount that could ever be in them.  The settlement therefore violates Guam law and is illegal.

Respectfully Submitted,
Thomas J. Fisher
Counsel for Objectors

SHIMIZU CANTO & FISHER
East Marine Corps Drive
Hagatna, Guam 96910
Tel. 671.472.1131
Fax 671.472.2886
Page 34

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Tel. 206.682.5600
Fax 206.682.2992