SHANNON TAITANO, ESQ.
OFFICE OF THE GOVERNOR OF GUAM
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
Telephone: (671) 472-8931
Facsimile: (671) 477-6666

EDUARDO A. CALVO, ESQ.
KATHLEEN V. FISHER, ESQ.
RODNEY J. JACOB, ESQ.
DANIEL M. BENJAMIN, ESQ.
CALVO & CLARK, LLP
Attorneys at Law
655 South Marine Corps Drive, Suite 202
Tamuning, Guam 96913
Telephone: (671) 646-9355
Facsimile: (671) 646-9403

*Attorneys for the Government of Guam
and Felix P. Camacho, Governor of Guam*

RAWLEN M.T. MANTANONA, ESQ.
CABOT MANTANONA LLP
BankPacific Building, 2nd Floor
825 S. Marine Corps Drive
Telephone: (671) 646-2001
Facsimile: (671) 646-0777
Attorneys for Respondents *Lourdes M. Perez and Artemio B. Ilagan*

FILED
DISTRICT COURT OF GUAM
NOV - 5 2007
JEANNE G. QUINATA
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, et. al., <br><br> Petitioners, <br><br> -v- <br><br> FELIX P. CAMACHO, etc., et. al. <br><br> Respondents. | CIVIL CASE NO. 04-00006 <br> (Consolidated with Civil Case Nos. 04-00038 and 04-00049) <br><br> **RESPONSE BY THE GOVERNOR, GOVERNMENT, AND DIRECTORS OF DOA AND DRT TO ATTORNEYS' FEE STATEMENTS** |

ORIGINAL

The Governor of Guam Felix P. Camacho, the Government of Guam, and the Directors of the Department of Administration and Revenue & Taxation (collectively, the "Government") file this response to the attorneys' fees billing statements submitted by the plaintiffs' attorneys in these consolidated proceedings. The response is divided in two sections, the first considering the bills submitted by *Santos* and *Torres* counsel, and second considering Objectors' billings.

**I.    Response to the Billings Submitted by *Santos* and *Torres* Counsel**

    **A.    The Lodestar Figures Show that a 10% fee Is Not Reasonable Here**

As has been briefed, whether attorneys' fees are awarded based upon a percentage of the fund method or lodestar method, the key requirement is an award of attorneys' fees be reasonable. *Wash. Public Power Supply System Securities Litig.*, 19 F.3d 1291, 1295 n.2 (9th Cir. 1994). Thus, the Court may either apply a lodestar, or determine the lodestar as a cross-check on the reasonableness of fees sought. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Young v. Polo Retail, LLC*, 2007 WL 951821, *5 (N.D. Cal. 2007). The lodestar approach multiplies the number of hours reasonably expended on the litigation times a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar fee presumptively reasonable, although it is subject to an upward or downward adjustment in certain circumstances. *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

As will be discussed *infra,* the Government has some concerns as to the number and types of hours submitted by *Santos* and *Torres* counsel. However, **even taking the bills submitted by on their face value, it is immediately obvious that the $9 million fees sought is not reasonable.** The law firms of Phillips & Bordallo and Lujan, Aguigui & Perez have submitted bills totaling approximately $840,000. However, they are seeking a fee award of 10% of the Class' recovery, or $9 million dollars. That would create an unconscionable lodestar multiplier of 9.5. By way of comparison, a multiplier (where permissible at all) of even 2.0 is reserved for "rare cases," with only occasional higher multipliers (and none approaching 9.5 that the Government could locate) in calculating a lodestar. *Guam Society of Obstetricians and Gynecologists v. Ada*, 100 F.3d 691, 695 (9th Cir. 1996) (upholding multiplier where district

court "concluded that this was a 'rare and exceptional case' which warranted a multiplier of 2.0 to the lodestar figure"); *George v. Bay Area Rapid Transit Dist.*, 2007 WL 2778784 (N.D. Cal. 2007) (refusing to apply requested multiplier of 2.0 or 3.0 because case was not "rare" or "exceptional").

Accordingly, either the lodestar should apply or a much lower percentage fee should be awarded to be consistent with the lodestar figures submitted by the Settling Parties' attorneys. As the Government will explain, in either case, the lodestar calculation here should also be further modified to remove some improper hours and costs that have been included (after which reductions, it becomes even more apparent that the 10% fee award sought here is unreasonable).

## II. Adjustments to the Lodestar Amount for *Santos* and *Torres* Counsel

In calculating a lodestar, it is the fee claimant's burden to demonstrate that the number of hours spent was "reasonably necessary" to the litigation and that counsel made "a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir.1995) (lodestar includes the number of hours the prevailing party reasonably expended on the litigation); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1557 (9th Cir.1989) ("[p]laintiffs bear the burden of showing the time spent and that it was reasonably necessary to the successful prosecution of their [ ] claims); *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir.1986) (district court determines numbers of hours reasonably expended in furtherance of the successful aspects of a litigation). Additionally, "[i]t is not sufficient for prevailing counsel to opine that all of the time claimed was usefully spent, and the district court should not uncritically accept counsel's representations concerning the time expended." *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 n. 8 (9th Cir.1987).

The Government discusses below the defects it believes exist in some of the billings, which include excessive time spent on particular tasks, redundant billing, and billing for administrative tasks. All such hours should be deducted from the lodestar. *Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10 (1989) (improper to bill for administrative tasks); *Hensley*, 461 U.S. at

434 (hours should be adjusted downward for overstaffing); *Hart v. Bourque*, 798 F.2d 519, 523 (1st Cir.1986) ("[t]he time for two or three lawyers in a courtroom or conference, when one would do, 'may obviously be discounted.'") (quotation omitted). An additional problem is caused where entries are vague as to the task performed or there is block billing that makes it difficult to assess the reasonableness of time spent on particular tasks. Under Ninth Circuit case law, the Court can adjust number of hours for problems in documentation and block billing. *Frevach Land Co. v. Multnomah County, Dept. of Environmental Services, Land Use Planning Div.*, 2001 WL 34039133, *11 (D. Or. 2001) (citing *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484, 487 (9th Cir. 1988)) ("Plaintiff misapprehends the "adjustment" here. I do not rely on the block billing problem to adjust the lodestar because, at this point, I have not performed the lodestar calculation of multiplying the reasonable number of hours by a reasonable hourly rate. I deduct the block billing entries as part of assessing the reasonable number of hours, which is in accordance with *Cunningham* and similar cases.").

### A. The *Santos* Counsel Lodestar Should Be Adjusted to Remove Time Not Reasonably Spent

The law firm of Phillips & Bordallo has submitted bills totaling $524,629.15. The Government believes a limited number of hours should be reduced from this to reflect unnecessary or inappropriate billings.

#### 1. Compensation to *Santos* Counsel for Time Spent from 1996 to November 2003 Is Not Reasonable

At the very beginning of the Phillips & Bordallo billing statement, in sections I-V, Phillips & Bordallo seeks attorneys' fees for a time period from January 1996 to October 2003 concerning various "false starts" where that law firm considered initiating this lawsuit, but did not actually do so. (Phillips Bill at pp. 1-2). The firm seeks to bill 312 hours of attorney Phillips' time from this seven year time period and another 208 hours by attorney Bordallo. The Government does not believe that billing the Class for that time is reasonable on three grounds, and thus suggests it be excluded from the lodestar calculation.

First, to the degree that any of the hours from 1996 until November 2003 would have benefited the Class, it would have been by preparing Phillips & Bordallo to be able to file the

complaint and proceed with the suit. However, *separate* entries from November 2003 to February 2004 record that Phillips & Bordallo undertook just such an analysis right before they filed suit, expending approximately 140 hours researching and drafting the complaint. (*See* Phillips Bill at p. 3). Thus, Phillips & Bordallo already is being compensated for the time it took to prepare this lawsuit – without any need to account for prior work done from 1996 to November 2003. The Class should not have to pay for these previous "false starts" at conducting research and preparing complaints from 1996 to November 2003, as the work simply had to be duplicated between November 2003 and February 2004 when the actual complaint was researched and filed. It is not reasonable to bill a client for performing the same work twice. Accordingly, on this ground alone, the 1996 to November 2003 time should be excluded from the lodestar.

Second, not all of the work done from 1996 to November 2003 even related to the ultimate lawsuit that was brought. For example, 60 hours are billed for drafting a complaint for a Superior Court action back in 1998 that quite obviously was never filed. (Phillips Bill at p. 1). Similarly, from November 1999 to January 2001, 52 hours are devoted to research regarding the Legislature's action against the Governor regarding the EIC, an action in which Phillips & Bordallo was not counsel, and accordingly where it is hard to understand how this research benefited the Class. (*See id.* at 2). The Class should not be required to pay for pre-litigation activities that did not benefit them.

Third, the fact is that from 1996 to November 2003, Phillips & Bordallo was considering bringing lawsuits, but did not. As a result, the Class' claims became impaired by the statute of limitations, which of course was a factor in reducing the class recovery in the ultimate Settlement. This is not to unfairly single out this law firm; it remains true that Phillips & Bordallo is the first firm that did bring an EIC lawsuit, and hence all other firms impaired the Class' claims even more by waiting even longer. Nonetheless, this suit could just as easily have brought in 1996 and as in 2004, and had it been brought then, the statute of limitations issue would have been less of a threat. It thus seems to the Government unreasonable to actually compensate Phillips & Bordallo for their many false starts in bringing this suit by compensating them for time spent prior to November 2003, when they actually started to research and draft the actual complaint in this case.

If the Class was adversely affected by these many "false starts," it is only reasonable that their attorneys receive equal treatment by not receiving compensation for times when they researched and considered bringing this lawsuit, but did not in fact do so (especially when, as stated above, such research and preparation ultimately were re-done when the suit was brought).

### 2. Compensation to *Santos* Counsel for Time Spent on Attorneys Fees and Administrative Tasks Is Not Reasonable

The Government also believes a few other entries are unreasonable and should not be included in a calculation of the total reasonable hours spent by Phillips & Bordallo.

To begin with, Phillips & Bordallo have included the time spent petitioning for fees. That time was of no benefit at all to the Class; it is actually time spent trying to benefit the attorneys at the Class' expenses. Thus, the Government believes the entries on the following dates should be removed:

- 6/17/05 MP 1 hour
- 6/24/05 MP .25[1]
- 7/12/04 MP 6.0 & RB 6.0
- 11/14/05 MP 3.0
- 5/31/06 MP 6.0
- 6/01/06 MP 2.0
- 6/02/06 MP 1.0
- 6/06/06 MP 1.0
- 6/22/07 MP .5
- 6/25/07 MP .25
- 10/12/07 MP 1.5

In total, this represents 22.5 hours by Mr. Phillips, and 6.0 hours by Mr. Bordallo that the Government does not believe should be reasonably assessed to the Class in calculating the lodestar.

The Government also believes that a few entries unreasonably charge the Class for administrative tasks. These are as follows:

---

[1] There is a typographical error on this entry where it appears the intent was to bill for "0.25 hours," but instead it appears as "80.25 hours."

*CIVIL CASE NO. 04-00006*      5
*(Consolidated with Civil Case Nos. 04-00038 and 04-00049)*

- 3/11/04 .25 MP reviewing proof of service.
- 7/26/04 – Two different entries for 1.0 hour & another 1.0 hour by RB for preparing a motion to exceed page limit. The government suggests the reasonable total attorney time here is .25.
- 8/2/04 .25 RB reviewing order granting excess pages.
- 6/22/05 .25 MP prepare certificate of service.
- 6/22/05 .25 MP reviewed certificate of service.
- 11/30/06 .25 MP reviewing order re: telephonic appearance
- 12/28/06 .25 MP reviewing order on using Court electronic equipment
- 9/18/07 .25 MP Reviewing request to utilize equipment
- 9/18/07 .25 MP reviewing order granting request.

The Government would suggest that these are administrative, not billable tasks and that accordingly this time should be removed or adjusted so as to reduce the calculation of Mr. Phillips' reasonable hours by 1.75, and Mr. Bordallo's reasonable hours by 2.0.[2]

**B.      The *Torres* Counsel Lodestar Should Be Adjusted to Remove Some Time that Was Not Reasonably Spent**

The law firm of Lujan, Auguigui, & Perez (counsel in *Torres*) has submitted bills for $316,604.06. As will be explained, these bills are somewhat more difficult to assess as in some cases it is not possible to determine on what task time was spent. However, the Government does believe adjustments are warranted.

**1.      Unclear and Vague Entries and Block Billing Have Made It Very Difficult to Determine the Reasonableness of the Hours Submitted**

At the outset, the Government notes that *Torres* counsels' bills are replete with entries as to which no subject of a task is specified, making it difficult or impossible to determine on what task time was spent and whether billing for such a task is reasonable. In many cases, entries do not state what the purpose of a meeting, conference, or telephone call was; in other cases, a meeting, conference, or telephone call is simply described as "regarding case" or "regarding

---

[2] The Government notes that *Santos* counsel has previously stated that then-Former Speaker (now Senator) Ben Pangelinan was a consulting expert on this case (and, indeed, he participated in at least two of the mediations). It has never been clear whether he was being paid. As fee-splitting with a non-lawyer is prohibited, if Senator Pangelinan has been paid, this needs to be disclosed as an expert retention and his rate of renumeration examined. If he is not being paid, but instead participated *pro bono*, this should be confirmed by the Court.

strategy." This is illustrated by the entries on August 14, 2004 on page 5 of the *Torres* billing statements, which contain both defects. But it is a pattern that can be found on far too many other dates to be possibly all identified here. Such descriptions do not give the Court or parties any meaningful opportunity to determine whether particular billings were reasonable.

This defect is particularly important where there might be some question as to accuracy. To take an easy example, on February 25, 2005, attorney Perez billed .25 for a *single* meeting with Attorney Aguigui regarding "case status," whereas Attorney Aguigui billed *twice* for meetings lasting .25 on that same date with Attorney Perez without providing an explanation for the meeting. It is thus unclear why they met, and unclear whether there were two separate meetings, with only Attorney Perez forgetting to bill for one, or whether Attorney Aguigui inadvertently billed for the same meeting twice. Were any meaningful description given of the meeting(s), this could be sorted out, but without an explanation, the only proper course would be to reduce the amount of time to a reasonable rate based on the information provided.

Further, the Government notes that *Torres* counsel has made extensive use of "block billing." Although in some instances all of the tasks appear related, in others diverse tasks are strung together. For example, the August 5, 2004 entry on pages 4-5 by attorney Aguigui combine the tasks of preparing for a hearing together with a conference with counsel, legal research, and interviews with reporters. The bill for such time is 8.75 hours, which might be reasonable, but is hard to determine since it is not known how the time is allocated between tasks; obviously, if 6.0 hours turned out to be devoted to reporter interviews, the Court might deem such entries excessive.

All of these factors make it very difficult to assess the reasonableness of the total hours claimed. There are simply too many such entries to list in this brief. But, as stated previously, the Court may reduce the total number of hours under such circumstances. *Frevach Land Co.*, 2001 WL 34039133, at *11. The Government believes that course may be appropriate here, especially as it would appear that the claim by *Torres* counsel that they spent 1226.65 hours on this case appears excessive given the more limited nature of their contributions in the case (which

primarily consist of expanding the class definition to reach a few more years, and helping to guide the Settlement to approval along with Class counsel).[3]

### 2. The Amount of Time Spent by *Torres* Counsel Opposing the Motion to Dismiss Is Excessive and Should be Discounted

Although as to most tasks the Government simply could not determine how much time was spent due to the defects in the *Torres* billing, it was possible to isolate the time spent opposing the motion to dismiss, and it does appear that these billings were excessive. From March 2, 2005 through May 23, 2005, *Torres* counsel's billing statement states that they devoted approximately 190.5 hours (over fifty hours on argument preparation alone) valued at $39,688.25 to researching, drafting, and arguing the motion to dismiss that case. Although that motion was no doubt of importance to the case, 190 hours on a motion to dismiss opposition, which represents almost five full weeks of attorney time, cannot be justified as reasonable. Indeed, the Government would direct the Court's attention to the record on that motion, which confirms that it did not require that amount of hours. The Government accordingly believes that reduction should be made in the number of hours for this matter, and also believes that this further demonstrates why the *Torres* hours should be reduced overall as it shows that (if the other billings were clearly identifying tasks) there was excessive billing on certain tasks.

### 3. Administrative Time Should Be Discounted

The *Torres* bills include a number of entries by an "EOL" for work that almost always consists of "processing" various papers. Although this is billed at a very low rate, this "processing" of documents is an administrative task that should be excluded from the lodestar. Accordingly, all "EOL" entries, which total $505.00, should be discounted from the total hours.

---

[3] The Government is not, of course, challenging the veracity of the billings; it is simply questioning whether all of that time was reasonably spent such that it can be reasonably deducted from the Class' recovery – and pointing out that the billings are too unclear to make such a determination.

### 4. Time Spent on Attorneys' Fees

Also included in the *Torres* time is time spent on the attorneys' fees motion. Because the class derives no benefit from preparation of a fee request that they have to pay, it is not proper that the class pay for the time spent by counsel obtaining fees from the class. In total, the Government identified the following hours relating to attorneys' fees in the *Torres* billings:

- June 5, 2006 ICA 4.25
- June 25 and 29, 2007 PCP 1.0 & 1.0 (note: these were block-billed time for reviewing the oppositions to the fee requests along with other tasks).
- July 26, 2007 ICA 5.00 (note: part of a block-bill for drafting a joinder in the *Santos* fee filing, along with other tasks)
- September 27, 2007 ICA 1.25
- October 9, 2007 2.0 PCP
- October 10, 2007 2.5 PCP

The Government believes this time also should be deducted from the total hours by *Torres* counsel.

## III. The Bills by Objectors Are Not Reasonable

### A. Objectors Bills Are Unreasonable Taken as a Whole

Objectors seek to have the Court order the Class to pay them $1.22 million together with another $46,909.88 in costs. This completely unjustified amount is several hundred thousand dollars more than the billings of *Santos* and *Torres* counsel combined. Indeed, even taken separately, the bills of each of objectors' two law firms (approximately $540,000 for Shimizu, Canto, & Fisher and another approximately $726,000 for Tousley Brain Stephens PLLC) exceed the amount sought by lead Class counsel (approximately $524,000). This is inherently unreasonable.

The Government has already extensively briefed why it believes Objectors are entitled to no attorney fees in this matter absent a showing that a particular task benefited the Class – and that even then any billing has to be limited to the specific tasks that actually benefited the Class. *E.g. Wininger v. SI Management, L.P.*, 301 F.3d 1115, 1125 (9th Cir. 2002) (affirming district court's exclusion from lodestar calculation all time spent by objectors' counsel "in unsuccessful efforts unrelated to their success challenging Plaintiffs' counsels' fee request"); *In re Veritas*

*Software Corp. Securities Litig.*, 2006 WL 463509 at *5 (N.D. Cal. 2006) (excluding from lodestar for objector's fees all time except that spent on single objection that actually benefited the class) It also has already briefed why it believes that objectors have not accomplished anything of benefit to the Class. Thus, it believes that the Objectors bills are, in their entirety unreasonable for the reasons already stated in the Government's June 22, 2007 brief.

However, Objectors' billing submission does further demonstrate just how unreasonable their position is because much of their fees concerns their unsuccessful attacks on the Settlement or the *Santos* case that led to the Settlement. Some of the more egregious examples include:

- Seeking to bill the Class hours from June to August 2004 for the failed intervention motion;
- Seeking to then bill more hours from August through November 2004 for researching and drafting an opening brief for the appeal from the denial of intervention – *when Objectors ultimately dismissed that appeal without even filing that brief*;
- Seeking to bill dozens more hours for filing a class certification motion in the summer of 2005 that was not even heard because Judge Martinez held it might endanger the Settlement to the potential detriment of the Class (*see Simpao* Docket No. 148 at 7);
- Seeking to bill even more hours for work unsuccessfully opposing the Governor's right to enter into the Settlement and to remove the Attorney General in the summer and fall of 2005;
- Seeking to bill hundreds more hours opposing preliminary and final approval of the Settlement from which they now seek to receive over a million dollars.

Had any of these tactics succeeded, there would be no $90 million fund from which Objectors counsel might get paid because there would be no Settlement. Thus, for Objectors' counsel to now turn around and demand payment from the fund for those tactics is unreasonable in the extreme, and certainly contrary to the rule that they may only recover for specific tasks (if any) that benefited the Class.

B. **The Specifics of How Objectors' Counsel Reached Their Billings Are Equally Unreasonable**

Even if Objectors' billing were considered as to certain issues (should the Court find the Objectors' benefited the Class on those issues), Objectors' billing contain numerous defects. Given their length, it is not possible to identify every such instance. But it is possible to demonstrate a trend of excessive and unjustified billing.

### 1. The Tousley Brain Billing Rate Is Unreasonable

One sizeable defect is the billing rates. The Tousley Brain firm has submitted bills at rates up to $750 per hour. Calculation of a lodestar requires determining "a reasonable hourly rate" for the attorneys' services. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In reviewing the reasonableness of an attorney's rate, the court is guided by the "prevailing market rates <u>in the relevant community</u>." *Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984) (emphasis added); *Hensley*, 461 U.S. at 433; *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir.1996). The Court also should "consider[] the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210 (9th Cir.1986), *amended* 808 F.2d 1373 (9th Cir.1987). This determination "is not made by reference to rates actually charged the prevailing party." *Id.* Rather, the court must look to the prevailing market rate in the community for similar services of lawyers of reasonably "comparable skill, experience, and reputation." *Id.* at 1210-11; *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995).

Here, local billing rates in this community for even the most experienced attorneys do not begin to approach $750 per hour. Indeed, the billing rates for all three attorneys at Shimizu, Canto, & Fisher – co-counsel to the Tousley firm – are only $200 per hour. *Torres* counsel is billing $250 per hour for two of its partners (Ike Aguigui and Pete Perez), $195 per hour for its associates, and $325 for one other (David Lujan, who certainly is one of the most well-known lawyers in the region. And *Santos* counsel is billing $250 per hour for Mr. Phillips (again a well-known lawyer in the region) and $150 for Mr. Bordallo. All of this – and the Court's own knowledge – demonstrates that the billing rates sought by the Tousley firm are inherently unreasonable in this community.[4]

---

[4] One solution is for the Court to set flat rates for all attorneys in a case based on years of experience. Further, all of this assume reference is not made to 26 U.S.C. § 7430; if that statute has application, then it determines the billing rate.

### 2. The Vagueness of the Shimizu, Canto & Fisher Entries and Use of Block Billing by the Tousley Firm Make Any Determination of Reasonableness Extremely Difficult

A second defect in the bills submitted by Objectors is the vagueness of entries, as well as the use of block billing. This is an even more serious issue as to Objectors than it was as to the *Torres* billings because it is incumbent on Objectors' counsel to justify what specific tasks they worked on that benefited the Class; yet, in many cases the vagueness of entries or the use of block billing makes determination of a purpose or number of hours impossible.

It is the Shimizu firm's billing that most suffer from vagueness. For example, on March 2, 2005, Attorney Canto bills as follows: "Review email from N. Pacharzina"; "Review email #2 from N. Pacharzina"; and "Review email # 3 from N. Pacharzina." He further bills that same day for "Meeting with TJF, CCV re: EITC strategy status." The Court is not being told what any of the emails are (which would inform the Court as to whether such emails benefited the Class), and the description of the meeting as simply being in regard to "EITC strategy" is similarly impossible to evaluate. As with the *Torres* billing, it is not practical to identify all such instances. However, unlike *Torres*, Objectors' entire right to fees is much more narrow as it can only apply to specific tasks that benefited the Class. Thus, where no specific task is identified, Objectors have made it easy for the Court as there is no possibility at all that they have met their burden to shown how such time benefited the Class.

Equally difficult is the tendency by the Tousley firm to engage in extensive block billing. For example, much of attorney Pacharzina's entries from November 2004 through March of 2005 are block billed. Assuming *arguendo* any portion of that time was spent on tasks that the Court did find benefited the Class, it would be extremely difficult to sort out which time could properly be allocated where multiple tasks are block billed together. An illustrative example is Ms. Pacharzina's November 17, 2004 entry, where she blocked billed 8.5 hours for various tasks including conducting research on becoming lead counsel and conducting a conference on a class definition. The Government does not view either as having benefited the Class, but hypothetically, if one did and not the other, it would be difficult in the extreme to allocate time. Thus, even if the Court does identify specific tasks that benefited the Class, only entries where the

time spent on the task can be clearly and fairly allocated should reasonably be assessed against the Class.

### 3. Objectors' Bills Suggest a Lack of Billing Discretion

As has been stated, attorneys submitting their bills for a lodestar (or lodestar cross-check) are expected to exercise billing discretion to eliminate hours not reasonably expended on the litigation. *Hensley*, 461 U.S. at 434. However, it is obvious in reviewing Objectors bills that inadequate billing discretion was used. To the contrary, the $1.22 million in fees sought shows that Objectors are billing the Class for everything but the kitchen sink.

For example, after intervention in *Santos* was denied in 2004, Objectors had filed an appeal of the Order, only to dismiss it and instead opt to file a new case. Yet, as already previously referenced, if the Court looks at the November 2004 entries by the Shimizu, Canto & Fisher, it will see that Objectors are billing for dozens of hours for drafting this appellate brief that was not filed. How could Objectors believe the Class should pay for an appellate strategy and opening brief that Objectors themselves disregarded without even filing?

A similar failure to adequately review the bills is shown by examining attorney Stephens' billing. He is billing a total of just over 267 hours at a total cost of just over $200,000. Yet, if the Court examines his entries, it will realize that almost 30% of his total time billed is attributable to travel time to and from Guam for two trips to attend a status conference and then the mediation in 2006 billed at 78.7 total hours. (*See* entries for March 12 and 13, 2006 (22.8 hours), March 15, 2006 (16 hours), April 3, 2006 (20 hours), and April 8 and 12, 2006 (19.9 hours)).[5] Especially given that this was time used to attend a status conference (which could have been attended by telephone) and then a mediation (which did not actually lead to Objectors joining the Settlement), inclusion of this type of time is very illustrative of the lack of billing discretion. (It might be noted that similar entries can be found in Ms. Pacharzina's bills for her travel time, constituting tens of thousands of dollars more in time).

---

[5] Some of this time is block-billed, but some is pure travel time, and of course there is no allocation in the block billing to be able to determine what portion constitutes pure travel time.

Another example of a lack of billing discretion is that the Class is billed for the time spent actually establishing the retention itself, as opposed to time spent working on the retention. If the Court examines the Tousley Braun bills on page 4, it will note that almost all of the time spent by attorney David Huff – 16 hours at $750 per hour for a total of $12,000 – was spent simply establishing the Tousley Braun representation. Similar, corresponding entries can be found in July and August of 2004 in the Shimizu, Canto, & Fisher billings (e.g. JLC on July 20 and 22, 2004; CVV on July 23 and 27, 2004, etc.). Billing the Class tens of thousands of dollars for simply retaining co-counsel and negotiating the terms of the retention between the two law firms is inherently unreasonable.

It also is apparent that administrative costs were improperly included in Objectors' bills. For example, on p. 15 of the Tousley firm's billing, all of the entries by Eden Norby are for updating pleading files and printing out document – administrative tasks that being billed to the Class at $105 per hour. Similarly, the billing statements of attorney Canto show time billed for "faxing" documents, formatting a brief, and even reviewing an email from the Tousley firm regarding an address change. (*E.g.* JLC entries on August 2, 2004; November 2, 2004; February 1, 3, and 25, 2005, and April 5, 2005).

The failure to exercise billing discretion also extends to the costs sought. Not only does Shimizu, Canto, & Fisher seek to pass on almost $9,433.34 in costs for their unsuccessful participation in the mediation, but Tousley Braun then piles another approximately $7,000 in travel costs for that same unsuccessful participation, including $100 taxi rides, $766 for Kim Stephens' meals, and even the cost of Wifi access. Indeed, for a later trip, Attorney Pacharzina appears to have passed on her passport renewal charges. But, perhaps the most unconscionable charge appears on page 5 of the Tousley's firms costs, where they seek to charge the Class $229.75 for "Roaming charges while KDS [attorney Kim Stephens] was in Guam." While the monetary total here may not be nearly as large as many of the other improper charges, the fact that *cell phone roaming charges* are being passed on to the Class is indicative of the lack of billing discretion used by Objectors.

## CONCLUSION

The bills submitted have demonstrated that the lodestar should apply or a much lower percentage fee should be awarded, and that either award should only take place after the fees submitted are adjusted to remove certain fees that are unreasonably sought. Additionally, the Objectors' fee request is not reasonable in its entirety or in its particulars, and the Government believes it should be denied outright or at least drastically narrowed down solely to focus on any work that actually benefited the Class.

Dated this 5th day of November, 2007.

| | |
|---|---|
| **OFFICE OF THE GOVERNOR OF GUAM**<br>**CALVO & CLARK, LLP**<br>Attorneys for Respondents Felix P. Camacho, Governor of Guam and the Government of Guam<br><br>By: _____<br>DANIEL M. BENJAMIN | **CABOT MANTANONA LLP**<br>Attorneys for Respondents Lourdes M. Perez and Artemio B. Ilagan<br><br><br>By: _____<br>RAWLEN M.T. MANTANONA |